UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 18-24190-CIV-MORENO

WILLIAM O. FULLER and MARTIN PINILLA II,
      *Plaintiffs*,

**versus**

JOE CAROLLO, THE CITY OF MIAMI,
MARIA LUGO, and JOHN DOES 1-10,
      *Defendants*.
_____/

## DEFENDANT COMMISSIONER CAROLLO'S MOTION TO DISMISS AMENDED COMPLAINT ON ALL COUNTS, WITH INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Commissioner Joe Carollo seeks dismissal of the Amended Complaint ("Complaint") as to all allegations against him (Counts I and III). Plaintiffs lack standing to assert allegations against Commissioner Carollo. The Complaint fails to state a legally recognized claim against him. Additionally, Commissioner Carollo is protected by the doctrines of qualified immunity and legislative immunity, since the conduct is alleged to have occurred during the scope of his official authority as a City of Miami elected public official. Accordingly, this Court should dismiss with prejudice Counts I and III since repleading will not address the fatal deficiencies as to Commissioner Carollo.

## SUPPORTING MEMORANDUM OF LAW

### I.     FACTUAL BACKGROUND.[1]

#### A.     Alleged Motivation Behind Carollo's First Amendment Retaliation Efforts.

Plaintiffs William O. Fuller ("Fuller") and Martin Pinilla II ("Pinilla") (collectively the "Plaintiffs") are business partners who purportedly own or control real estate properties in and around Miami, Florida. Amended Complaint [DE #43] ¶ 1. As to Defendant Commissioner Joe

---

[1] Commissioner Carollo disputes most of the allegations, but the Court must accept all well-pled facts solely for purposes of considering the motion to dismiss. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

Carollo, Plaintiffs alleged that in the summer of 2017, Carollo, then a private citizen, publicly announced his campaign for Commissioner for City of Miami District 3. *Id.* at ¶ 30. On November 18, 2017, a rally in support of electing Carollo's opponent, Alfie Leon, was held on Plaintiffs' property. *Id.* at ¶ 41. Plaintiffs claim that in response to this rally, "Carollo and others acting at his direction worked their contacts at the City and engineered a shut down of the rally by Code Enforcement Officers and the police, who forced all attendees to leave." ¶ 43 (footnote omitted). Plaintiffs allege that a second rally was held the following day on November 19, 2017, that private citizen Carollo and his agents likewise stopped. *Id.* at ¶¶ 44, 53.

Carollo won the District 3 election and was sworn in as the Commissioner on December 2, 2017. ¶ 58. Plaintiffs allege he maintained a grudge against the Plaintiffs and targeted them for their support of Leon, despite winning the District 3 Commission seat. Commissioner Carollo allegedly targeted Fuller, "that there were many people involved in this effort, and that…Carollo and his allies were trying to use Code Enforcement resources for political retribution." *Id.* at ¶ 88.

**B.    Commissioner Carollo's Retaliation Against Plaintiffs and Their Tenants.**

Plaintiffs allege that Commissioner Carollo and his "agents" engaged in a systematic and prolonged effort of harassment against Plaintiffs' businesses and tenants, all in the name of revenge for hosting a rally in support of losing candidate Alfie Leon. They assert that Commissioner Carollo and city officials committed the following retaliatory acts: (1) attempt to shut down a 2017 Christmas Party Plaintiffs held for their employees, tenants, and families; (2) enact legislation preventing Plaintiffs from using shipping containers without proper City permits; (3) shut down a 2018 party hosted by Union Beer, Plaintiff's tenant, with multiple police and code enforcement personnel; (4) prevent construction of a kiosk market Plaintiffs had planned; (5) disrupt and create a competing entity to Viernes Culturales; (6) trespass on Plaintiffs' properties and conduct illegal searches and government surveillances. Plaintiffs also allege that Commissioner Carollo fabricated

information that Plaintiffs are involved with illegal organizations, and specifically received financial funding for their various business investments from corrupt Venezuelan criminals.

## II.     LEGAL STANDARD TO DISMISS FOR FAILURE TO STATE A CLAIM.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." While the court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (internal quotation marks omitted). "[C]ourts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id*. at 1290 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.    LEGAL AUTHORITY FOR DISMISSING COMMISSIONER CAROLLO.

Counts I and III fail to state a claim under 42 U.S.C. § 1983 ("§ 1983"). Section 1983 provides a private cause of action for individuals deprived of a federal right by a person acting under the color of law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). To survive a motion to dismiss, Plaintiffs must establish two essential elements for a § 1983 action: (1) a violation of a constitutional right; and (2) that the violation was committed by a "person acting under the color of law." *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016). Counts I and III fail to state a § 1983 claim because Commissioner Carollo has not deprived Plaintiffs of any constitutional rights, nor do certain allegations demonstrate that Commissioner Carollo was acting under color of state law.

Plaintiffs assert that their First Amendment rights to freedom of speech and association were violated from retaliatory efforts by Commissioner Carollo. For a First Amendment retaliation claim to survive dismissal, a plaintiff must show that (1) "his speech or act was constitutionally protected;" (2) "the defendant's retaliatory conduct adversely affected the protected speech;" and

(3) "there is a causal connection between the retaliatory actions and the adverse effect on speech."
*Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005) (citations omitted).

Because Counts I and III do not state a claim upon which relief may be granted, this Court should dismiss the action with prejudice as to Commissioner Carollo for five primary reasons. First, Plaintiffs lack standing to assert a First Amendment Retaliation claim. Second, even if Plaintiffs have standing, their allegations do not state a First Amendment retaliation claim because Commissioner Carollo's alleged "retaliatory conduct" would not chill the speech of an objective person in Plaintiffs' position. Third, Plaintiffs failed to establish a causal connection between Commissioner Carollo's alleged actions and First Amendment speech. Fourth, the allegations of legislative retaliation based on Commissioner Carollo's subjective motivations fail as a matter of law. Finally, Commissioner Carollo is entitled to qualified immunity. Accordingly, this Court should dismiss Counts I and III as to Commissioner Carollo with prejudice.

**A.      Plaintiffs Lack Standing to Assert a First Amendment Claim Against Carollo.**

Plaintiffs must satisfy the constitutional requirement of Article III standing. *See* Art. III, § 1, U.S. Const. In that regard, a plaintiff must demonstrate that "(1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs must also overcome the prudential limitation of standing self-imposed by the courts. *See Kowalski v. Tesmer*, 543 U.S. 125, 128–29 (2004) ("third-party standing" asks "whether [plaintiffs should] have standing to raise the rights of others"). The Supreme Court has long held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Bound

by these precedents, Plaintiffs do not have standing to state a claim for retaliation against Commissioner Carollo because (1) they did not suffer a cognizable injury for First Amendment Retaliation, (2) the alleged harm is not fairly traceable to Commissioner Carollo's conduct, and (3) Plaintiffs' requested relief may not be redressed through court intervention.

1. **Plaintiffs' Alleged Injuries Are Speculative and at Best Assert the Claims of Third-Parties Not Involved in this Litigation.**

Plaintiffs' attempt to portray themselves as persons targeted by Commissioner Carollo and the City of Miami for their alleged political support of Leon and for filing an ethics complaint against Commissioner Carollo that was dismissed by the Miami-Dade Commission on Ethics and Public Trust. But the Plaintiffs, who are themselves public figures in the City of Miami and Little Havana community, assert the rights of third parties who differ from them. Plaintiffs do not have Article III standing or third-party standing to assert a claim for First Amendment retaliation when the rights of others not named in the complaint are purportedly impacted by the alleged conduct.

"The objective 'ordinary firmness' test requires plaintiffs to allege that the retaliatory acts of the defendants adversely affected *them*, which is an injury sufficiently adverse to give rise to Article III standing." *Bennett*, 423 F.3d at 1254 (emphasis added). The Complaint, however, seeks recovery for alleged harm to third parties merely associated with the Plaintiffs. As a representative example, the Complaint alleges the following injuries that did not actually occur to the Plaintiffs:

- "On November 26, 2017, just one week after Carollo discovered Plaintiffs supporting his competitor Leon ... Sanguich was 'raided' by 25-30 City enforcement personnel including police, fire, building, and Code Enforcement officers." *See* Am. Comp. at ¶102.

- "The Gay 8 Festival took place on Calle Ocho on Sunday, February 18, 2018 ... Carollo's target at the Gay 8 Festival was Sanguich ..." Commissioner Carollo attempted to shut down their kiosk at the day of the festival. *Id.* at ¶133-134.

- "On February 10, 2018, Union Beer held its one-year anniversary party in the parking lot behind their business. Carollo suddenly appeared at the property with several police officers with flashing lights and approximately 15-20 Code

Enforcement officers." Union Beer allegedly was hosting an outdoor party/event and serving alcohol without receiving the proper event permits. *Id.* at ¶118.

- "Domino Plaza reopened on August 29, 2018, and on Friday, August 31, 2018, just two hours before Viernes Culturales was set to begin, he ordered it shut again. The excuse was "pothole repair," but in reality there were only a few tiles that had been removed (probably at the order of Carollo)." *Id.* at ¶215.

These allegations do not assert concrete injuries suffered by the Plaintiffs. Neither Fuller nor Pinilla are personally impacted even if Commissioner Carollo attempted to shut down Sanguich for failing to receive required building or licensing permits; nor are they affected if Commissioner Carollo allegedly retaliated by attempting to shut down the Sanguich kiosk at the Gay 8 Festival; nor are they personally affected if an illegal Union Beer party was shut down for not having required City event permits; nor are they personally injured if the Commissioner decided to compete with Viernes Culurales. Plaintiffs are not personally injured by this conduct. Plaintiffs cannot claim retaliation for alleged retaliation that did not occur to them. *Warth*, 422 U.S. at 518 ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers").

The Complaint even fails to explain how Commissioner Carollo's alleged retaliation directed to these third parties for associating with Plaintiffs Fuller and Pinilla confers them standing. Indeed, the Complaint directly asserts that Commissioner Carollo targeted various businesses such as Sanguich for associating with Plaintiffs Fuller and Pinilla. *See* Am. Compl. at ¶107. Plaintiffs are not the proper party to bring a retaliation claim against Commissioner Carollo on behalf of Barlington Group's tenants when those businesses have the ability to assert their own rights. *See Duran v. City of Corpus Christi*, 240 F. App'x 639, 643 (5th Cir. 2007) (holding that the plaintiff "does not have third-party standing to pursue a claim against the City on behalf of" a nonparty who is capable of pursing its own rights in court).

## 2.  Plaintiffs' Alleged Injuries are Not Traceable to Commissioner Carollo.

The allegations of "retaliation" are not fairly traceable to Commissioner Carollo. "For Article III standing purposes, then, the 'plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Bennett*, 423 F.3d at 1253 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Plaintiffs' cannot rely on general assumptions that Carollo is to blame for a variety of government functions not within his control. For example, Plaintiffs make no factual averment that Commissioner Carollo had the ability to command "police, fire, building and Code Enforcement officers" at a time when he was merely a private citizen and not even an elected City Commissioner. Am. Compl. at ¶ 104. Plaintiffs' conclusory assertions that Carollo controlled city officials is suspect at best, but simply implausible when considering the alleged retaliation occurred before he was even sworn in as City Commissioner. Plaintiffs fail to state the manner by which these officials took "orders" from citizen Carollo at a time when he was not a Commissioner or even public official.

What is even less plausible and not factually demonstrated is the allegation that City Manager Daniel Alfonso "had no power to stop" the Sanguich raid orchestrated by then-Commissioner-elect Carollo, who was still not yet a City official. *Id.* at ¶ 106. This supposed legal conclusion need not be accepted by the Court at the motion to dismiss stage, and is not supported by any significant facts. While Plaintiffs concede that only the City Manager may direct enforcement officials pursuant to the City's Charter, there is no plausible explanation that Carollo could hold the City Manager powerless and subvert the City's municipal functions before even being sworn into office. The essence of the claims complain of normal city functions and processes that are not Commissioner Carollo's responsibility, and with which all City businesses operating are obliged to follow. Plaintiffs simply lack standing to sue Commissioner Carollo for alleged conduct neither directed at them nor traceable to him.

### 3. **Plaintiffs' Injuries Cannot Be Remedied by Court Intervention.**

Plaintiffs seek a sweeping permanent injunction of Commissioner Carollo to prevent him from exercising his authority as an elected public official, including: (a) participating in any decision of the Board of Commissioners; (b) soliciting any complaints regarding Plaintiffs; (c) contacting Plaintiffs, their properties, employees, tenants, or affiliates; (d) making requests to, or providing any instructions or suggestions to, any City employees concerning Plaintiffs, (e) entering any of Plaintiffs' properties that are otherwise open to the public. *See* Am. Compl. ¶¶ 277-281.

Plaintiffs' effectively seek immunity from City of Miami authorities concerning their property, business operations, and associates, and further ask this Court to prevent Commissioner Carollo from exercising his lawful municipal functions as the District 3 City Commissioner. Noting that the Plaintiffs assert they are significant land owners and important businessmen within Commission District 3, it is inevitable that Carollo's duties as an elected official will coincide with and possibly implicate Plaintiffs' stated business and community interests.

Indeed, during the October 17, 2018 status hearing, Your Honor questioned the judicial authority to enjoin the Commissioner for the alleged conduct asserted by the Plaintiffs:

> If you call the witnesses, Mr. Gutchess, and you prove that Commissioner Carollo targeted the plaintiffs because of the political rally in favor of his opponent, he's doing all of this for politics – let's say you prove that with all the witnesses, the City employees, the neighbors, everybody comes in and says that and you convince me…what you want me to do is to tell a commissioner of the City of Miami that he cannot have any contact with plaintiffs, plaintiffs' properties, tenants, employees, partners, or any affiliates of the plaintiff. He cannot make any requests or provide any instructions or suggestions to a City employee concerning all of that, and he cannot enter into any of the plaintiffs' property. Even if you win, could I do that?

[D.E. #19], p. 4-5. While federal courts may certainly issue injunctions in First Amendment cases, "federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976). The Plaintiffs are seeking an order requiring the City to cease enforcement

of its municipal laws and regulations. This remedy is neither legally available nor within the authority of this Court. The judicial branch cannot issue a judgment against Commissioner Carollo that would prevent municipal government officials such as City Code Officers, Fire Inspectors, Police Officers, and other public officials from performing their ordinary municipal government functions within the City of Miami. The Plaintiffs cannot seek redress of their alleged injuries by enjoining the City Commissioner from performing his duties pursuant to the City charter.

**B.    Carollo's "Retaliatory Conduct" Did Not Adversely Affect Plaintiffs' Speech.**

Plaintiffs do not allege that Commissioner Carollo acted with "retaliatory conduct" that would adversely affect a person of ordinary firmness from exercising their right to support a political candidate or their right to file an ethics complaint—despite Plaintiffs' conclusory allegations stating otherwise. "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1252. "Specifically, private citizens must establish that the retaliatory acts would deter a person of ordinary firmness from exercising his or her First Amendment rights." *Id*. However, "to recover for retaliation, the [plaintiffs] must show that the defendants' conduct resulted in something more than a 'de minimis inconvenience' to the exercise of their First Amendment rights." *Bethel v. Town of Loxley*, 221 F. App'x 812, 813 (11th Cir. 2006) (quoting *Bennett*, 423 F.3d at 1253).

Before analyzing whether Plaintiffs alleged they suffered an "adverse" effect from Carollo's alleged retaliatory conduct, the Court must consider the relationship between Plaintiffs, who concede they are significant commercial real estate investors and business operators in Little Havana, and Commissioner Carollo, who is the elected Commissioner for City of Miami District 3 that includes Little Havana. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2002) (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)) ("Determining whether a

plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts"). Plaintiffs describe themselves as "curators and caretakers of the neighborhood" in Little Havana, offering a rather inflated and speculative opinion of themselves that is neither a fact nor a matter this Court must accept as true. ¶ 17. Their self-anointed title may give Plaintiffs' a belief that they can operate above the law with impunity from government oversight or scrutiny, but the opposite is true. Because Plaintiffs' have a large presence and many commercial holdings in the Little Havana community,[2] they objectively command considerably more attention from government officials than would an ordinary citizen, and consume far more City resources. Commissioner Carollo is the elected government official in that area, despite the Plaintiffs' assertion they supported Commissioner Carollo's opponent. As the elected Commissioner for the Little Havana neighborhood, Commissioner Carollo, not the Plaintiffs, is responsible as a matter of law and public policy for safeguarding the community and monitoring public-impact actions taken by the Plaintiffs and all others in the District. This is the necessary backdrop for the Court's analysis whether Commissioner Carollo's conduct could adversely affect and chill the speech of an objective person in the Plaintiffs' position.

## 1. Commissioner Carollo Did Not Adversely Affect the First Amendment Right to Support a Political Candidate.

Plaintiffs do not allege that Commissioner Carollo deterred a person of ordinary firmness in their position from supporting a different political candidate. *See Thompson v. Hall*, 426 F. App'x 855, 859-60 (11th Cir. 2011) (holding that the level of harassment and intimidation alleged, including intimidation of non-parties and allegations against unnamed police deputies who followed plaintiffs and patrolled their neighborhood, would not deter a person of ordinary firmness

---

[2] The Ethics Investigative Report attached to the Complaint states "Fuller indicated their firm owns approximately 20 properties along the SW 7th and 8th Street Corridor" in Little Havana. *See* Ethics Report, **Exhibit A**, p. 8.

from engaging in protected speech); *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995) ("Not every restriction is sufficient to chill the exercise of First Amendment rights, nor is every restriction actionable, even if retaliatory"). While Plaintiffs attempt to heighten Carollo's alleged harassment as a significant threat to their First Amendment speech, in reality the stated conduct is nothing more than a "de minimis inconvenience" at best. *Bennett*, 423 F.3d at 1253.

For example, a significant claim of retaliation occurred when Commissioner Carollo allegedly attempted to shut down Plaintiffs' Christmas party on December 15, 2017. *See* Am. Compl. at ¶ 71. Plaintiffs describe their annual Christmas party as an "event [] hosted by Plaintiffs for the benefit of employees, tenants, and their families, including young children and other guests for five straight years…" *Id.* ¶72. Although Plaintiffs assume without demonstrating that Commissioner Carollo "conspired" to shut down this party, Plaintiffs allegations of harassment are quite insignificant for commercial business operators. Plaintiffs make no allegation that they obtained the required City permits for the large-scale event, complied with the necessary health and safety requirements, or even arranged for the presences of the necessary security and police assistance. As the sponsors of this supposedly significant and well-attended event, Plaintiffs, as would all other business operators, necessarily understood that City Code Enforcement Officers would act to ensure public safety and compliance with City Code requirements.

Moreover, and as stated in the Complaint, no "harassment" occurred. According to the Complaint, a code enforcement officer entered "the event, verified that it was an ordinary holiday party and that no violations were evident." *Id.* at ¶83. Plaintiffs failed to demonstrate that the allowable presence of a code enforcement officer for inspection of a commercial event would chill speech or cause more than a de minimis inconvenience. *See Briecke v. Jones*, No. 03-21054-CIV-MOORE, 2005 U.S. Dist. LEXIS 39973, at *15 (S.D. Fla. Dec. 30, 2005) ("Plaintiff has not demonstrated that the denial of access to the law library injured him in some material way or that

it was more than a de minimis inconvenience"). Indeed, the majority of Plaintiffs allegations amount to nothing more than routine scrutiny from regular government functions.  This type of routine government activity would not chill the political speech of a person of ordinary firmness.

### 2.   Carollo Did Not Adversely Affect the Right to File an Ethics Complaint.

Plaintiffs failed to plausibly allege that Commissioner Carollo deterred a person of ordinary firmness from filing an Ethics Complaint. Plaintiffs claim Commissioner Carollo retaliated against them for their Ethics filing. *See* Am. Compl. at ¶ 267. However, Plaintiffs' conclusion is not plausible because they further claim that Commissioner Carollo's retaliatory actions "ceased upon Plaintiff Fuller's filing of the Ethics Complaint against Carollo." *Id.* Plaintiffs state that after filing the Ethics Complaint, Commissioner Carollo became "eerily quiet" and received "nothing" in terms of harassment. *Id.* at ¶169. Plaintiffs' allegations of non-interference and non-harassment are not actionable under the First Amendment. *See ACLU v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993) ("a showing of adversity is essential to any retaliation claim"). The fact that Commissioner Carollo ceased harassment after Plaintiffs filed their Ethics Complaint would not deter, but *encourage* a person of ordinary firmness from exercising the right to speech and file a grievance. Indeed, if anyone was deterred or chilled when Plaintiffs filed the Complaint, it was arguably Commissioner Carollo. Nonetheless, Plaintiffs failed to allege that Commissioner Carollo adversely impacted Plaintiffs' First Amendment rights after the Ethics Complaint was filed. *Bennett*, 423 F.3d at 1252 ("private citizens must establish that the retaliatory acts would deter a person of ordinary firmness from exercising his or her First Amendment rights").

### C.   Plaintiffs Fail to Assert a Causal Connection Between Carollo's Alleged Retaliatory Actions and an Adverse Effect on Speech.

Plaintiffs failed to assert that the Leon rally was the motivation for the alleged retaliation. "In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Keeton v.*

*Anderson-Wiley*, 664 F.3d 865, 868 (11th Cir. 2011) (quoting *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011)); *see Ala. Educ. Ass'n v. Bentley (In re Hubbard)*, 803 F.3d 1298, 1310 (11th Cir. 2015) ("The core of a First Amendment retaliation claim, its factual heart, is the subjective motivation to retaliate"). "However, an inference based on speculation and conjecture is not reasonable." *City of Riviera Beach v. That Certain Unnamed Gray, Two-Story Vessel Approximately Fifty-Seven Feet in Length*, 649 F.3d 1259, 1271 (11th Cir. 2011). "[O]nce the plaintiff shows that the protected conduct was a motivating factor, the burden shifts to the defendant to show that she would have taken the same action in the absence of the protected conduct, in which case the defendant cannot be held liable." *Appalachian Tech.*, 631 F.3d at 1197.

The Complaint disingenuously and without specific factual support claims that all of Commissioner Carollo's alleged retaliatory conduct is directly related to Plaintiffs' political speech in supporting Alfie Leon. Yet, in the Ethics Investigative Report attached to the Complaint, Plaintiffs concede they did not support any specific candidate and even contributed to Carollo's campaign. The Court must, of course, accept these factual averments as true. And as for the purported political rally for Alfie Leon, Fuller stated then that "he had not been aware of the nature of the event prior to its shutdown. He said he thought it was a non-partisan 'Get Out the Vote' (GOTV) rally… Fuller stated that once he found out it was a GOTV rally for Leon, he also asked to [] shut down" the event. Ethics Investigative Report, p. 9. Plaintiff Fuller conceded that they "didn't want to choose sides, further stating that he even called Carollo's aide, Steve Miro, to congratulate Carollo after his victory." *Id.* Only now in this litigation do Plaintiffs change their position by contending Commissioner Carollo's motivation in enforcing City Code provisions on some of their properties and business ventures is directly related to this political rally.

Additionally, Plaintiffs totally ignore the number of code violations and questionable business practices that might motivate the alleged "retaliation." Plaintiffs have a variety of

business practices and issues warranting appropriate municipal government scrutiny. Their Complaint does not assert the absence of any Code violations or un-permitted events. Yet, the Plaintiffs self-servingly attribute all their problems to a political rally which admittedly was not an event they even supported. As such, these litigants may not use the First Amendment as a shield when under scrutiny for violations of city regulations, codes, ordinances, and health and safety requirements. Nor may the First Amendment be used as a shortcut to seek building, zoning, and event permits for their businesses. While Plaintiffs may be frustrated by Commissioner Carollo's lack of support for their business interests and his effort to assure that City laws are enforced, the Plaintiffs have not demonstrated that the City and Commissioner Carollo are treating the Plaintiffs differently from all other similar business ventures. Plaintiffs cannot base their First Amendment retaliation claims by assuming that Commissioner Carollo is motivated by their political speech.

## 1.  <u>Carollo's Alleged Involvement and Retaliation of Plaintiffs' Tenants.</u>

Plaintiffs' first retaliation allegation occurred on November 26, 2017, when Carollo, who was not the Commissioner at the time, commanded 25-30 City enforcement personnel to raid Sanguich, Plaintiffs' tenant. ¶ 104. It implausible to assume that Commissioner-elect Carollo commanded the City's police, fire, building, and Code Enforcement Officers to harass Sanguich in retaliation for a political rally when Commissioner wielded no political power. *Am. Dental*, 605 F.3d at 1290 ("courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer"). Indeed, Plaintiffs provide an obvious alternative explanation in their Complaint—that Sanguich received City scrutiny "because they lacked a Certificate of Use" to operate the business. Am. Compl. at ¶107. The issues with Sanguich further come to light in Plaintiffs' Ethics Investigative Report. Former Assistant City Manager Alberto Parjus testified that "they [Sanguich] were not operating legally. He said complaints came from Carollo's Office and

also from some of the local 'brick and mortar' businesses that felt that it was unfair to compete against a business that didn't have to pay property taxes and abide by the City's Building Code." Ethics Investigative Report, p. 20. Parjus' statement captures the reality of Plaintiff's allegations of retaliation towards them and their tenants. Plaintiffs own multiple commercial properties in which some, like the properties used by Sanguich, Union Beer, and the Valet service, house businesses that fail to operate in accordance with the City's rules and procedure. Carollo's alleged "retaliation" has nothing to do with Leon's political rally, but has everything to do with his legitimate efforts to prevent unfair and unsafe business practices and municipal violations. Commissioner Carollo's efforts to clean up his district is at odds with Plaintiffs' business philosophy, underlying their true request for relief in this litigation: to penalize and prevent Commissioner Carollo from doing his job.

### 2.   Carollo's Alleged "Retaliation" For Parking and Noise Violations.

Plaintiffs fail to show a causal connection between the protected speech and the parking and noise violations committed by Plaintiff's tenants or related entities. For example, Plaintiffs rely on a text message to presume Carollo targeted them for their political speech a year earlier. *See* Am. Compl. at ¶198. Even accepting at the motion to dismiss stage that Commissioner Carollo authored this message, it fails to show that he was motivated by Plaintiffs' political speech. Commissioner Carollo alerted the City Manager to five separate properties with illegal parking. Simply because Plaintiffs' property was one of many properties to be cited for parking violations does not establish a causal link for retaliation specifically to the Plaintiffs' protected speech. Plaintiffs have not demonstrated that their political speech was the motivating factor for being cited for parking violations when it is clear that the Commissioner reported various parking violations to the City Manager regardless of the vehicle owner's political point of view. Plaintiffs' speculation that Commissioner Carollo's conduct is specifically related to the political rally from

a year earlier, instead of the result of an ordinary government function. *See Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1248 (S.D. Fla. 2013) (finding that an "obvious alternative explanation…that is the normal functioning of government, as opposed to the alleged purposeful retaliation due to political belief in the Complaint, retaliation is not a plausible conclusion.").

> **D.      Plaintiffs' Legislative Retaliation Claims Fail as a Matter of Law Because Lawmakers are Not Liable for Subjective Motivations behind Constitutional Acts.**

Plaintiffs allege that Carollo retaliated when making legislative decisions as a Commissioner, including voting to remove Temporary Use Permits ("TUPS") and abolishing the special master. *See, e.g.*, ¶ 108; ¶¶ 233-37. As a matter of law, these claims may not be considered to prove that Carollo retaliated against the Plaintiffs. The Eleventh Circuit held that "when a statute is facially constitutional, a plaintiff cannot bring a free-speech challenge by claiming that the lawmakers who passed it acted with a constitutionally impermissible purpose." *re Hubbard*, 803 F.3d at 1312. Since Plaintiffs do not allege that these legislative acts are unconstitutional,[3] Commissioner Carollo's subjective motivations may not be considered to prove the retaliation claim. *See id.* ("What we are saying is that, as a matter of law, the First Amendment does not support the kind of claim [plaintiffs] makes here: a challenge to an otherwise constitutional statute based on the subjective motivations of the lawmakers who passed it"). Moreover, approval of any of these legislative initiatives required an affirmative vote of a majority of the five (5) elected City

---

[3] Plaintiffs make implausible assertions that the legislation "violate[d] the United States Constitution's ban on bills of attainder." ¶ 233. However, Plaintiffs notably do not claim that the legislative acts are facially unconstitutional. Nor can any of the identified matters be considered bills of attainder. The City Ordinances approved by the Commission and authorized by the Mayor do not inflict punishment upon an identifiable individual as is required for a bill of attainder. *See Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, 846-47 (1984) ("a law that legislatively determines guilt and inflicts punishment upon an identifiable individual"). This contention, despite what the Plaintiffs subjectively believe, is both legally unfounded and made in bad faith. The undisputedly plain impact of these City Ordinances is that all City residents, businesses, taxpayers, and license holders are subject to their application. Plaintiffs have not been singled out and have no standing to challenge ordinances that affect them in the same manner as all other City business owners.

Commissioners and approval by the elected Mayor. The Complaint alleges no retaliation by any of these other elected officials who are responsible for the approval of the legislation at issue.

*O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1373 (S.D. Fla. 2016), is directly on point. There, the plaintiff claimed that an ordinance enacted to regulate where people may park their cars "violated his First Amendment rights because the motivation for its enactment was to suppress his" protected speech. *Id.* at 1373. The plaintiff's retaliation claims failed because an improper subjective motivation for enacting an otherwise neutral ordinance may not serve as a basis for First Amendment retaliation. *Id.* Similarly in this case, Plaintiffs' allege that Commissioner Carollo discharged his legislative obligations by voting on legislation to retaliate against them, but otherwise fails to make a constitutional challenge to the legislation in question. Therefore, it would be improper for this Court to evaluate any of the City of Miami commissioners' subjective motivations behind constitutional legislative decisions in order to parse for evidence of retaliation. *See id.* at 1374 (noting that an "inquiry into legislative motive is" not permitted in "'a free-speech retaliation challenge to an otherwise constitutional statute'") (quoting *In re Hubbard*, 803 F.3d at 1312 n.14). As a matter of law, Plaintiffs may not attack Commissioner Carollo's subjective motivations in his legislative capacity as Commissioner. Accordingly, Plaintiffs' retaliation claim based on any legislative acts must be dismissed with prejudice.

> **E.    Commissioner Carollo Is Entitled To Qualified Immunity.**

Even if Plaintiffs' Complaint sufficiently states a claim for First Amendment Retaliation against Commissioner Carollo, Counts I and III must still be dismissed under the doctrine of qualified immunity. Qualified immunity "is intended to 'allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Brown v. City of Huntsville*, 608 F.3d 724, 733 (11th Cir. 2010) (quoting *Lee v. Ferraro*, 284 F.3d

1188, 1194 (11th Cir. 2002)). For qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). "After the defendant has established that he was acting in a discretionary capacity, 'the burden shifts to the plaintiff to show that qualified immunity is not appropriate.'" *Brooks v. Powell*, 800 F.3d 1295, 1306 (11th Cir. 2015) (quoting *Lee*, 284 F.3d at 1194). "To meet this burden, a plaintiff must establish that (1) his complaint pleads a plausible claim that the defendant violated his federal rights (the 'merits' prong), and that (2) precedent in this Circuit at the time of the alleged violation 'clearly established' those rights (the 'immunity' prong)." *Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016). Here, Commissioner Carollo is entitled to qualified immunity because (1) he was acting in his discretionary role as Commissioner, (2) Carollo was not on notice that his conduct as Commissioner violated a "clearly established right, and (3) the Plaintiffs failed to state a plausible claim for First Amendment retaliation.[4]

### 1.   <u>Carollo was Acting in his Discretionary Role as Commissioner.</u>

Carollo was acting within his discretionary function as the City Commissioner under the facts alleged by the Plaintiffs.  "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Int'l v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). This "inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act." *Id.* at 1282. "Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Id.* (internal quotations omitted).

---

[4] Commissioner Carollo addressed Plaintiffs' failure to state a plausible claim for First Amendment retaliation (the "merits" prong) above. He now addresses the discretionary function element and the clearly established right (the "immunity prong") for qualified immunity. *St. George v. Pinellas Cnty*, 285 F.3d 1334 (11th Cir. 2002).

Clearly, Commissioner Carollo's alleged conduct was undertaken in performance of his duties and within the scope of his authority. Section 4(a) of the City of Miami Charter empowers the Commissioner to exercise the corporate and political powers conferred upon the City by the Florida Constitution, Florida laws, and the Miami-Dade County Home Rule Charter. The Commissioner is authorized act accordingly through the adoption of ordinances and regulations. *See Alsop v. Pierce*, 19 So.2d 799 (Fla. 1944). As the "governing body" of the City of Miami, the Commission, through its Commissioners, has the ultimate power to determine the City's policies and control its activities, all of which may be exercised by all divisions as prescribed in the Charter and City Code. *See Turk v. Richard*, 47 So.2d 543 (Fla. 1950). Commissioners also are empowered to make "inquiry" into matters of concern. *See* Miami, Fla. Charter Part I.A. § 4(d).

The Complaint asserts that Commissioner Carollo made inquiry with the City Manager, other City officials, and even City residents about noise complaints and various parking violations. This conduct clearly falls "within, or reasonably related to, the outer perimeter of" Carollo's broad authority to make inquiry into matters of public concern. *Harbert*, 157 F.3d. at 1282. Plaintiffs also allege that Commissioner Carollo conspired with City officials, holding meetings and discussions with subordinates and constituents is well within his discretionary function as Commissioner. *See O'Boyle v. Sweetapple*, No. 9:14-CV-81250-KAM, 2015 U.S. Dist. LEXIS 192278, at *37-38 (S.D. Fla. June 4, 2015) (finding allegations that the defendants "held 'meetings' and had 'conversations' in which they 'devised their plan to defame, harass, intimidate, and antagonize Plaintiff'" was within their discretionary functions"). Whether Commissioner Carollo acted with a proper or improper purpose is irrelevant in determining if he was acting in a discretionary capacity. To the extent Carollo was acting under the color of law as alleged by the Plaintiffs, he was also acting within his discretionary functions as the Commissioner.

### 2.   <u>Commissioner Carollo Did Not Violate a Clearly Established Right.</u>

"[T]o survive a defense of qualified immunity, it 'must be obvious to every reasonable person in [the defendant's] place that [the defendant's conduct] would violate federal law.'" *Building Empowerment by Stopping Trafficking, Inc. v. Jacobo*, No. 12-23925-CIV, 2013 U.S. Dist. LEXIS 139336, at \*10-11 (S.D. Fla. Sep. 27, 2013) (citing *Beauregard v. Olson*, 84 F.3d 1402, 1404 (11th Cir. 1996)). For First Amendment retaliation claims, a defendant "will only rarely be on notice that his actions are unlawful" because it requires balancing "legal determinations that are intensely fact-specific and do not lend themselves to clear, bright-line rules." *Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000). "Likewise, in determining contested issues of causation, the defendant is entitled to qualified immunity [w]here the facts assumed . . . show mixed motives (lawful and unlawful motivations)." *Brannon v. Finkelstein*, 754 F.3d 1269, 1278-79 (11th Cir. 2014) (internal quotations omitted).

Here, based on the allegations in the Complaint and exhibits, Commissioner Carollo would not have notice that his actions would be construed as retaliation for the exercise of free speech.. In *Jacobo*, Your Honor found that the plaintiff failed to allege that the defendants, who sent out emails challenging the plaintiff's point of view, would be on notice of violating a federal right. 2013 U.S. Dist. LEXIS 139336, at \*11. Similarly, Plaintiffs cannot show that Commissioner Carollo would know that enforcing the City's zoning codes, permits, and parking and noise ordinances, would chill a person of ordinary firmness in the Plaintiffs' shoes. It cannot be said that Commissioner Carollo violated the Plaintiffs' "clearly established" right against First Amendment retaliation. Carollo's duties as Commissioner will inevitably become entangled with Plaintiffs' many business interests in District 3. Commissioner Carollo would not be on notice that he would be liable to Plaintiffs free speech due to the nature of his position. Accordingly, the Commissioner is entitled to qualified immunity.

S/ Thomas E. Scott
**Thomas E. Scott**
Florida Bar No. 149100
Thomas.scott@csklegal.com
**COLE, SCOTT & KISSANE P.A.**
Cole, Scott & Kissane Building, Suite 1400
9150 South Dadeland Blvd.
Miami, FL 33156
Tel: 305-350-5381
Fax: 305-373-2294

S/ Benedict P. Kuehne
**Benedict P. Kuehne**
Florida Bar No. 233293
ben.kuehne@kuehnelaw.comn
efiling@kuehnelaw.com
**Michael T. Davis, Esq.**
Florida Bar No. 63374
mdavis@kuehnelaw.com
**KUEHNE DAVIS LAW, PA.**
Miami Tower, Suite 3550
100 SE 2 Street
Miami, FL 33131-2154
Tel: 305-789-5987
Fax: 305-789-5987

*Counsel for Defendant Commissioner
Carollo*

## CERTIFICATE OF SERVICE

I certify that on January 31, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

S/ Thomas Scott
**THOMAS E SCOTT**