UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 18-cv-24190-FAM

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

        Plaintiffs,

    vs.

JOE CAROLLO, THE CITY OF
MIAMI, MARIA LUGO, and
JOHN DOES 1-10,

        Defendants.
_____/

## CITY OF MIAMI'S MOTION TO DISMISS THE AMENDED COMPLAINT

This is a section 1983 civil rights action alleging First Amendment retaliation claims.  In their amended complaint, Plaintiffs have sued the City of Miami alleging the City had a custom, practice and culture of allowing Defendant Joe Carollo, an elected City of Miami Commissioner representing District 3, to retaliate against them in violation of their First Amendment rights to free speech, peaceably assembly, and to petition the government for redress of grievances.  [D.E. 43, ¶ 296].   Defendant City of Miami, ("City"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves to dismiss the second amended complaint [D.E. 43] for failing to state a claim upon which relief can be granted.

The City contends Plaintiffs do not state a plausible claim of First Amendment retaliation for several reasons.  First, the Investigative Report of the Miami-Dade Commission on Ethics ("COE") & Public Trust attached as exhibit A to the amended complaint contradicts and defeats Plaintiffs' allegations.  The Court may consider the exhibit on the City's motion to dismiss without transforming the motion into a summary judgment motion.  Secondly, to the extent

Plaintiff references alleged violations of the City of Miami Charter, section 1983 does not provide a remedy and the injunctive relief sought by Plaintiffs is overly-broad in scope. In this federal civil rights action Plaintiffs seek to enjoin the City from future violations of its own Charter. Moreover, the injunctive relief requested by Plaintiffs would essentially grant them immunity for future code violations arising from their businesses located in the City's District 3. Finally, the City submits Plaintiffs lack standing to assert claims on behalf of Viernes Culturales and other individuals who are identified in the pleadings but not named as parties to this suit. Any damages allegedly suffered by third parties cannot be recovered by Plaintiffs. With respect to Viernes Culturales/Cultural Friday's Inc., the limited scope of their intervention ended when Plaintiffs withdrew their motion for temporary injunction, and the deadline for amending the pleadings has expired.

## MEMORANDUM OF LAW

### I.      Motion to dismiss standard.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1949. A plausible entitlement to relief exists "when the allegations in the complaint traverse the thresholds separating the 'conclusory' from the 'factual' and the 'factually neutral' from the 'factually suggestive.'" *Barton v. Florida*, 2007 WL 1724943 (N.D. Fla. 2007) (citing *Bell Atlantic Corp.*, 127 S.Ct. at 1958, n. 5). The Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint. *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022

1108805

(11th Cir. 2001).  Finally, when the exhibits to a complaint contradict the general and conclusory allegations of the pleadings, the exhibits govern.  *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

"On a motion to dismiss, '[c]onclusory allegations and unwarranted deductions of fact are not admitted as true," particularly "when the conclusory allegations contradict the other facts alleged in the complaint." *See Berry v. Coleman*, 172 Fed. App'x 929 (11th Cir. 2006); *see also Battle v. Cent. State Hosp.*, 898 F.2d 126, 130 n.3 (11th Cir. 1990)("allegations that are contradicted by other allegations in the complaint may also constitute grounds for dismissal"). Indeed, the district court is not required to ignore specific factual details of the pleading in favor of general or conclusory allegations set forth later therein. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).  Moreover, "[a] district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. *See Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1278 (11th Cir. 1999).  Public records are among the permissible facts that a district court may consider."  *Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. App'x 52, 53 (11th Cir. 2006).  The City submits the COE's Investigative Report attached as exhibit A to the amended complaint is a public record and the Court may rely upon it as grounds for dismissing Plaintiffs' amended complaint.

## II.     Plaintiffs do not state a plausible claim for section 1983 relief.

42 U.S.C. section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in

any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

"The Supreme Court has placed strict limitations on municipal liability under § 1983." *Grech v. Clayton Cnty, Ga.*, 335 F. 3d 1326, 1329 (11th Cir. 2003). One such limitation is that a municipality's liability under § 1983 cannot be based on the doctrine of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); and *McMillian v. Johnson*, 88 F. 3d 1573, 1577 (11th Cir. 1996).

Thus, in order to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *Monell,* 436 U.S. at 694–95; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Additionally, to state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Here, the City submits the pleadings do not state a plausible *Monell* First Amendment retaliation claim when the investigative report attached as exhibit A is considered with the other pleadings. Specially, the allegations taken as a whole do not show the City engaged in retaliatory conduct.

Plaintiffs claim that for ten months[1], Commissioner Carollo has engaged in a campaign of harassment and retaliation against them because they supported Carollo's opponent in a run-off election and because they filed a complaint against him with the County's Commission on Ethics.  [D.E. 43, pp. 1-2].  However, when questioned by investigators for the Commission on Ethics, Plaintiff Fuller stated that he did not actively support any candidate for the City's District 3 Commission race, the race in which Carollo was a candidate.  [D.E. 43-1, p. 9].  Additionally, Plaintiffs allege that on November 18, 2017, a rally was held on Plaintiffs' property for District 3 candidate Alfie Leon which was later shut down by Code Enforcement officers and other agents of the City.  [D.E. 43, ¶¶ 41 and 53].  In response to questions from ethics investigators, Plaintiff Fuller stated he was not aware of the Leon rally prior to its shutdown and once he found out it was a "Get Out the Vote" rally for Leon he asked to shut it down.  [D.E. 43-1, p. 9].  According to the investigative report Fuller said, "we didn't want to choose sides."  [D.E. 43-1, p. 9].  On this point, the investigative report contradicts Plaintiffs' allegations.

It is noteworthy that Plaintiff Fuller owns approximately 20 properties along the S.W. 7th and 8th Street corridor.  [D.E. 43-1, p. 9].  The likelihood of him having multiple, legitimate code compliance issues is greater given the number of properties he owns in a small area.

The investigative report further shows that the City properly routed code violation complaints through the City Manager's office and administrators were not pressured by Defendant Carollo to target Plaintiffs' properties.  For example, Carollo directed concerns about the S.H. Valet company at Ball & Chain to Arthur Noriega, the Executive Director of the Miami

---

[1] The amended complaint was filed January 8, 2018.  If Plaintiffs' allegation of "ten months" is taken as true, the alleged campaign of retaliation did not commence until March of 2018, thereby precluding the Court's consideration of any actions taken prior to that date.

Parking Authority.  According to the report, an investigation revealed that Carollo's concerns were valid and S.H. Valet was using an unauthorized lot to park cars. [D.E. 43-1, p. 17]. The Miami Parking Authority, also know as the Department of Off-street Parking, is *sui juris*, and not a party to this action.  *See* City of Miami Code of Ordinances § 23.  The City submits the Miami Parking Authority acted appropriated in response to Carollo's concerns.  Assuming *arguendo* that the Miami Parking Authority's investigation of S.H. Valet served some improper or retaliatory motive, its conduct cannot be imputed to the City for purposes of section 1983 liability as it is capable of being sued in its own capacity.

The investigative report further reflects that former Assistant City Manager Alberto Parjus was not involved in responding to the Leon rally or directing code enforcement officers to take action against Plaintiffs.  [D.E. 43-1, p. 19].  Parjus told investigators he did not allow selective code enforcement.  [D.E. 43-1, p. 19].  Parjus further stated that he received calls from City Manager Daniel Alfonso regarding noise violations at Ball & Chain and he contacted the former director of Code Compliance to dispatch a code enforcement officer.  [D.E. 43-1, p. 19]. In addition, the report reflects that James Bernat, the Acting Code Enforcement Director, told investigators he did not feel Carollo was giving him direct orders and Carollo did not direct Bernat to do anything.  [D.E. 43-1, p. 23].  Bernat told investigators he had not observed any pattern of selective enforcement by Carollo and never received any specific complaints from staff regarding undue influence by Carollo.  [D.E. 43-1, p. 23].

The report also mentions the statement of Angela Roberts, Director of Human Resources for the City, who said City Manager Emilio Gonzalez sent an email dated March 16, 2018, to all City employees indicating that pursuant to the City Charter, all communications from elected

officials or their respective staff must be routed to the Office of the City Manager.  [D.E. 43-1, p. 37].   Contrary to the allegations in the amended complaint, the report attached as exhibit A reflects the City took measures to insure code violation complaints from elected officials such as Carollo were properly routed through the City Manager's office to the Code Compliance office. Consequently, the City submits Plaintiffs have failed to state a plausible claim for section 1983 relief for alleged First Amendment retaliation.

### III.     Section 1983 does not provide a remedy for alleged violations of the City Charter.

"Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right."  *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002).  "While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under section 1983."  *Id.*

At paragraph 302 of the amended complaint, Plaintiffs seek a permanent injunction against "…further retaliation against them and further violations of the Miami City Charter…" [D.E. 43, ¶ 302].  The City submits the request for injunctive relief is overly-broad in scope for two reasons.  First, the relief is vague in terms of what "retaliation" means.  Liberally construed one could interpret this to mean Plaintiffs would get a free pass on any future code violations for their properties that fall within the City's District 3.  It could also be construed as usurping the responsibility of a sitting City Commissioner to respond to complaints from his constituents. Secondly, the law is clear that section 1983 only provides a remedy for violations of federal law. Alleged violations of state and municipal laws do not give rise to relief under section 1983.  To the extent Plaintiffs allege the City permitted violations of section 4(d) of its Charter, section

1108805

1983 does not provide them with a remedy. Accordingly, Plaintiffs are not entitled to the injunctive relief sought in paragraph 302.

**IV.    Plaintiffs lack standing to asserts claims on behalf of Viernes Culturales or other individual business owners referenced in the amended complaint.**

"Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redressability. Specifically, '[t]o have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision.'" *L.S. by Hernandez v. Peterson*, 2018 WL 6573124 (S.D. Fla. 2018) (internal citations omitted). Many of the alleged injuries asserted in the amended complaint were suffered by third parties, not the Plaintiffs.

Plaintiffs' amended complaint is replete with references to businesses owned by third parties who are not named plaintiffs in this action. The amended complaint refers to Sanguich owners, Rosa Romero and Daniel Figueredo; Union Beer owners, David Rodriguez and Cecilia Rodriguez; S.H. Valet operator Alain Garcia; and Viernes Culturales, a nonprofit organization. [D.E. 43]. To the extent these third parties claim damages from alleged First Amendment retaliation, those injuries were not suffered by Plaintiffs and Plaintiffs do not have standing to allege claims on their behalf. Consequently, Plaintiffs fail to state claims for relief on behalf of these non-parties.

With respect to Intervenor Viernes Culturales, they were only granted intervention on an emergency motion to intervene and join Plaintiffs' motion for temporary restraining order. [D.E. 28]. Subsequently, Plaintiffs withdrew their motion for preliminary injunction [D.E. 36] and the

Court enter an Order denying the motion for preliminary injunction as withdrawn [D.E. 38]. Pursuant to Rule 24, a motion to intervene must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought. Fed. R. Civ. P. 24(c).  The only "pleading" filed by Viernes Culturales was a motion for temporary restraining order which has been denied as withdrawn. Therefore, Viernes Culturales' intervention has terminated since it has filed no further pleadings in this matter[2].  Accordingly, Plaintiffs lack standing to assert any claims on behalf of Viernes Culturales and those claims must be dismissed.

WHEREFORE, the City of Miami requests the Court grant its motion to dismiss the amended complaint with prejudice.

VICTORIA MÉNDEZ, City Attorney
CHRISTOPHER A. GREEN,
Senior Assistant City Attorney
Attorneys for **City of Miami**
444 S.W. 2nd Avenue, Suite 945
Miami, FL  33130-1910
Tel.: (305) 416-1800
Fax: (305) 416-1801
Email:  cagreen@miamigov.com
Secondary Email:  dbailey@miamigov.com

By: */s/ Christopher A. Green*
Christopher A. Green, Senior Assistant City
Attorney
Florida Bar No. 957917

---

[2] The Court's Scheduling Order established January 8, 2019 as the deadline for amending the pleadings.  [D.E. 39].

1108805

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 31, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Christopher A. Green*
Christopher A. Green
Assistant City Attorney
Florida Bar No. 343811

**Jeffrey W. Gutchess, Esq.**
**Brandon P. Rose, Esq.**
AXS Law Group, PLLC
2121 NW 2nd Avenue
Miami, Florida 33127
Jeff@axslawgroup.com
Brandon@axslawgroup.com

**Benedict P. Kuehne, Esq.**
Kuehne Davis Law, P.A.
Miami Tower, Suite 3550
100 S.E. 2nd Street
Miami, Florida 33131
Ben.kuehne@kuehnelaw.com

**Thomas E. Scott, Esq.**
Cole, Scott & Kissane P.A.
Cole, Scott & Kissane Building, Suite 1400
9150 South Dadeland Blvd.
Miami, Florida 33156
Thomas.scott@csklegal.com

**Robert Zarco, Esq.**
**Alejandro Brito, Esq.**
Zarco Einhorn Salkowski & Brito, P.A.
One South Biscayne Tower
2 South Biscayne Blvd., 34th Floor

Miami, Florida 33131
rzarco@zarcolaw.com
abrito@zarcolaw.com
apiriou@zarcolaw.com

1108805