UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-24190-CIV-MORENO/LOUIS

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

      Plaintiffs,

vs.

JOE CAROLLO, THE CITY OF
MIAMI, MARIA LUGO, AND
JOHN DOES 1-10,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**

This cause came before the Court upon the Motions to Dismiss Plaintiffs' Amended Complaint brought by Defendants Joe Carollo (ECF No. 53), The City of Miami (ECF No. 54), and Maria Lugo (ECF No. 64). This matter was referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Federico A. Moreno, United States District Judge, to take all necessary and proper action with respect to any and all pretrial matters. (ECF No. 49). Having carefully considered the briefs, the record as a whole, and being otherwise fully advised in the premises, the undersigned recommends that Carollo's Motion to Dismiss be GRANTED; that the City's Motion be GRANTED; and that Lugo's Motion be GRANTED, in part; and that Plaintiffs be afforded leave to amend.

I.     **BACKGROUND**

Plaintiffs William O. Fuller and Martin Pinilla, II bring this action under 42 U.S.C. § 1983,

against Defendants Joe Carollo, the City of Miami (the "City"), Maria Lugo, and John Does 1 through 10.[1] Plaintiffs are local businessmen, who own several properties in Little Havana located in District 3 of the City.

In the summer of 2017, Defendant Carollo announced his intention to run for a vacant City of Miami District 3 Commissioner position. *See* Amended Complaint (ECF No. 43 at ¶ 30). On November 18, 2017, during the run-off election period, Plaintiffs allege that they allowed a group Carollo's opponent's supporters to host a rally at one of Plaintiffs' commercial properties. (*Id*. at ¶ 41). Plaintiffs allege that after becoming aware of the rally, Carollo used his political connections to shut down the rally. (*Id*. at ¶ 45). The next day, Plaintiffs once again permitted a second rally at the same location which was, likewise, shutdown by City Code Enforcement. Plaintiff Pinilla was spotted at the rally by Steve Miro, a staff campaign member of Carollo; Miro reported Pinilla's presence at the rally to Carollo and phoned Fuller to instruct him to shut the rally down. (*Id*. at ¶¶ 33, 49, 51).

Carollo won the run-off election and was sworn in as a City of Miami Commissioner on December 2, 2017.

Plaintiffs allege that for a period of ten months following those rallies, Carollo has engaged in retaliatory efforts targeted at Plaintiffs, their tenants, and business affiliates, as a consequence of Plaintiffs' support of Carollo's political opponent. (*Id*. at p. 1-2). The first alleged event occurred immediately after Carollo took office. Carollo instructed Defendant Lugo, a City employee, to direct Code Enforcement officers to inspect Plaintiffs' holiday party on the basis that Plaintiffs did

---

[1] The facts recited herein are taken from the Second Amended Complaint. The factual allegations contained in the Second Amended Complaint are taken as true for purposes of Defendants' Motion pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. For Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

not obtain the necessary permit. (*Id.* at ¶¶ 73-76). Plaintiffs allege that their annual holiday party is a well-attended event, which the City Commissioners have attended in past years. Carollo allegedly learned of Plaintiffs' party and conspired with Lugo to shut it down. Lugo allegedly contacted the Director of Code Enforcement directly, instructing him to shut the party down for special permitting violations. (*Id.* at ¶¶ 72-74). Director Diez did as instructed and sent a Code Officer to the party. After Director Diez reported to Lugo that no violations were identified, Lugo allegedly contacted the Chief of Code Enforcement, who then sent the Code Officer to the party a second time. With no violations still identified, the Code Officer was instructed to stand outside the party until it was over, which she did, allegedly intimidating the guests in the process. (*Id.* at ¶¶ 82-84). Plaintiffs allege that the Code Enforcement officers made their guests uneasy and concerned. (*Id.* at ¶ 78). Director Diez later contacted Plaintiff Fuller and confirmed Plaintiffs' suspicion that Carollo and Lugo had orchestrated the interference by Code Enforcement at the party. (*Id.* at ¶ 93).

Diez allegedly told Fuller that he was a "political target," (*Id.* at ¶ 90), a sentiment allegedly echoed by Carollo's campaign staff member Miro, who has made statements that when he took office, Carollo "went after" Fuller for supporting Carollo's opponent in the run off. (*Id.* at ¶¶ 64, 70). Miro further stated that Carollo created a spreadsheet itemizing properties owned by Plaintiffs to track their businesses. (*Id.* at ¶¶ 63-68).

Plaintiffs allege that in early 2018, Carollo targeted them by harassing their tenants Sanguish de Miami ("Sanguish") and Union Beer, a company of which Plaintiff Fuller was an investor. Carollo purportedly harassed Sanguish by revoking all temporary use permits ("TUPs"), which was necessary for Sanguish to operate, from District 3. (*Id.* at ¶ 108). Additionally, Code Enforcement officers continuously visited the sandwich shop. Sanguish ultimately relocated its

business to another location not owned by Plaintiffs. (*Id*. at ¶ 108). Carollo also shut down Union Beer's anniversary party because it had failed to obtain the required event permit. (*Id*. at ¶ 120).

Later, in March 2018, Carollo contacted a Code Enforcement supervisor and requested that an officer be sent to District 3 because Carollo had concerns regarding building permits at five businesses, three of which were owned by Plaintiffs. (*Id*. at ¶ 148). Carollo also toured District 3, including Plaintiffs' properties, with numerous City employees, including the Mayor and Deputy City Manager, and members of an organization, of which Lugo was a board member, in search of potential code violations. (*Id*. at ¶ 158).

On March 12, 2018, Plaintiff Fuller, through his company The Barlington Group, filed an ethics complaint against Carollo with the Miami-Dade Commission on Ethics and Public Trust for Carollo's retaliatory actions. (*Id*. at ¶ 165). Plaintiffs allege that while the ethics complaint was being investigated, Carollo stopped targeting Plaintiffs, their businesses, and their tenants. On August 13, 2018, Fuller withdrew the ethics complaint with the intention to amend and include additional charges against Carollo. (*Id*. at ¶¶ 171-173).

Plaintiffs allege that after Fuller withdrew the ethics complaint, Carollo's retaliation continued. In August 2018, the City, at Carollo's direction, informed Plaintiffs that kiosks related to one of Plaintiffs' business ventures – a farmer's market – were in violation of the City Code and issued a citation. (*Id*. at ¶ 176). The City also informed Plaintiffs that it was revoking their TUP in light of new legislation. TUP permits were no longer available in District 3, and because the building permit that allowed the kiosks was dependent on the TUP, the City would also be revoking the building permit. (*Id*. at ¶ 182).

Plaintiffs further allege that after the ethics complaint had been filed and withdrawn, Carollo reported false noise complaints and parking violations related to the night club Ball and

Chain, of which Fuller was a part owner, and the valet company the night club hired. (*Id.* at ¶¶ 158-164, 124-134). Plaintiffs also allege that the retaliatory actions include the City Commission's passing of an ordinance abolishing special masters, and Carollo's statements to local radio shows that Plaintiffs were associated with corrupt governments and investors, and that Plaintiffs were attempting to make District 3 less diverse.

On January 8, 2019, Plaintiffs filed their three-count Amended Complaint, alleging First Amendment retaliation claims against Carollo and the City pursuant to 42 U.S.C. §1983 (Counts I and II, respectively); and a conspiracy to commit First Amendment retaliation claim against Carollo and Lugo (Count III). Plaintiffs seek injunctive relief and monetary damages for business disruption, emotional distress, and reputational harm.

## II.    DISCUSSION

In their Motions to Dismiss,[2] Defendants assert three grounds for dismissal: (1) Plaintiffs fail to allege Article III standing; (2) the Amended Complaint fails to comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure because it is a shotgun pleading; and (3) Plaintiffs fail to state a claim for which relief can be granted in violation of Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### A.    <u>Article III Standing</u>

All Defendants argue that Plaintiffs fail to allege facts sufficient to show that they have standing to bring their First Amendment retaliation claims. Defendants aver that Plaintiffs have not suffered an injury in fact and instead improperly seek damages incurred (if at all) by non-parties such as Union Beer, Ball and Chain, and Viernes Culurales. Additionally, the City and

---

[2] Although all Defendants bring separate Motions to Dismiss, the Motions are substantively identical in their arguments for dismissal. Moreover, Carollo moved to adopt all of Lugo's and the City's arguments (ECF No. 82); which this Court granted (ECF No. 88).

Carollo aver that Plaintiffs' injuries cannot be redressed by this Court.

To sufficiently plead Article III standing, a plaintiff must plead a plausible injury in fact, causation, and redressability by the reviewing court. *L.S. by Hernandez v. Peterson*, No. 18-cv-61577, 2018 WL 6573124, at *5 (S.D. Fla. Dec. 13, 2018) (citing *Dermer v. Miami-Dade Cty.*, 599 F.3d 1217, 1220 (11th Cir. 2010)). If a plaintiff cannot satisfy these constitutional standing requirements, then the case lies outside of the district court's jurisdiction. *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1038 (11th Cir. 2008). Injuries that satisfy the Article III standing requirement are distinct, palpable, and concrete. *Harris v. Evans*, 20 F.3d 1118, 1122 (11th Cir. 1994). At the initial pleading stage, a plaintiff may establish standing by pleading general factual allegations of injury. *Young Apartments*, 529 F.3d at 1038. However, while the plaintiff's allegations at this stage are presumed sufficient to establish the facts alleged in the complaint, the Court is not required to speculate concerning plaintiff's injuries if he has not pled one. *Eland v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006).

In the Amended Complaint, Plaintiffs allege that they have suffered injuries as a result of conduct made in retaliation for Plaintiffs' exercise of their First Amendment rights, including monetary damages as a result of Defendants' retaliatory conduct, specifically damages for "business disruption" and "reputational harm." (ECF No. 43 at ¶ 232). Plaintiffs also allege that they have suffered emotional distress and mental anguish as a result of retaliatory conduct against the Plaintiffs individually. (*Id*. at ¶ 273).

In their Motions, Defendants aver that Plaintiffs lack standing to bring claims against the Defendants because Plaintiffs were not individually injured, and instead, seek damages as a result of injuries purportedly suffered by non-party organizations. In their opposition, Plaintiffs clarified that they do not seek economic injuries suffered by any business entity as a result of the retaliatory

actions against those entities, but rather allege direct injuries suffered by Plaintiffs in their individual capacity. Though Plaintiffs seek no monetary damages arising from these acts, the conduct alleged to have impacted non-party entities are examples of Carollo's retaliatory conduct towards Plaintiffs, as he allegedly targeted all businesses that Plaintiffs are associated with. *See* Plaintiffs' Response in Opposition to City of Miami's Motion to Dismiss (ECF No. 66 at p. 19-20). Additionally, at the hearing, Plaintiffs explained that despite their reference to the retaliatory actions towards third parties and their allegations of economic losses due to business disruption, Plaintiffs are not seeking monetary damages for business losses. Plaintiffs' counsel made an *ore tenus* motion for leave to amend to better plead the Plaintiffs' injuries.

Plaintiffs have alleged a personal injury sufficient to demonstrate standing. Nonetheless, the Court recognizes the lack of clarity in the Amended Complaint with respect to the damages sought. As it stands, the Amended Complaint fails to allege a distinct injury to the individual Plaintiffs as they allege their injuries in two conclusory paragraphs of the Amended Complaint (ECF No. 43 at ¶¶ 232, 273) and in the "wherefore" clause; without more the Court is unable to determine what injuries Plaintiffs specifically suffered or what specific actions caused said injuries. Accordingly, the undersigned recommends that Plaintiff be afforded leave to amend to clarify the injury or injuries for which Plaintiffs seek redress. *See Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (noting the Eleventh Circuit's preference for granting leave to amend a complaint dismissed for failure to state a claim absent a "substantial reason" to deny leave to amend).

Carollo and the City also argue that Plaintiffs lack constitutional standing because the Court cannot provide redress for the injuries alleged. The Amended Complaint seeks "a permanent injunction against further retaliation against them and further violations of the Miami City

Charter." (ECF No. 43 at ¶ 276). Defendants argue that the request sought is overly broad. The Court agrees.

Plaintiffs respond in opposition that courts have repeatedly granted injunction relief in First Amendment cases. Plaintiffs rely primarily on *Hoyfe v. Nye Cty.*, 18-CV-01492-RFB-GWF, 2018 WL 4107897, at *1 (D. Nev. Aug. 28, 2018), in support of their request for a permanent injunction. In *Hoyfe*, the plaintiff brought a First Amendment retaliation claim against a municipality and sought a temporary injunction enjoining the municipality from making decisions regarding plaintiff's license applications during the pending litigation. In that case, the court granted plaintiff's request for a temporary injunction. However, Plaintiffs' reliance on *Hoyfe* is misplaced because the plaintiff in that case sought a temporary injunction preventing the defendant from partaking in specific conduct during an identified period of time frame. Here, Plaintiffs' request for a permanent injunction is overly broad. Plaintiffs seek an order enjoining Carollo from "participating in any decision of the Board of Commissioners in relation to any matters that directly affect the Plaintiffs…" (*Id*. at ¶ 227). Plaintiffs also request that the Court enjoin the City "from taking further retaliatory action against Plaintiffs…" (*Id*. at ¶ 303). As it stands, the Amended Complaint essentially asks the Court to prohibit Carollo and the City from performing their official functions if they could affect Plaintiffs. It is impossible for the Court to determine what types of conduct Plaintiffs deem "retaliatory" for purposes of their request for an injunction. Accordingly, Carollo's and the City's Motions should be granted on this basis.

Because leave to amend is recommended, the Court further analyzes the deficiencies raised in Defendants' motions to dismiss based on Rule 12(b)(6), as repetition of such deficiencies would again warrant dismissal. *See Fox*, 309 F. Supp. 3d at 1245 ("Nevertheless, the Court addresses the Amended Complaint's five claims and the parties' arguments in order to give Plaintiff direction

8

on how to proceed with a final, amended pleading…").

**B.  Shotgun Pleading – Rule 8(a)(2)**

Defendants challenge the Amended Complaint as a shotgun pleading, arguing that Plaintiffs allege vague and immaterial facts that make it impossible for this Court or Defendants to understand what conduct by each Defendant gave rise to the claims alleged in the Amended Complaint.

Rule 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief" using allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). The Supreme Court has explained that Rule 8 does not require "detailed factual allegations," but rather demands "more than unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Shotgun pleadings violate Rule 8 by failing to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests on. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018).

A complaint containing multiple counts, each count incorporating by reference the allegations of previous counts, is fairly characterized as a shotgun pleading if it results in a situation where it impossible for the court or the defendant to know which allegations are intended to support the respective claims for relief. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015) ("the most common type [of shotgun pleading] …is a complaint containing multiple counts where each count adopts the allegations of all preceding counts causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."); *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014) ("The complaint, through its incorporation into successive counts all preceding allegations and counts, is a

quintessential 'shotgun' pleading…"). Courts in the Eleventh Circuit have little tolerance for shotgun pleadings as they waste judicial resources, inescapably broaden the scope of discovery, and ultimately wreak havoc on judicial dockets. *Vibe Micro, Inc.*, 878 F.3d at 1294-95.

While the Court notes that the Amended Compliant suffers from one of the characterizes of a shotgun pleading – incorporation of superfluous allegations into three counts – the undersigned does not recommend dismissal on this ground, as the allegations are decipherable with respect to the individual defendants named. As the Eleventh Circuit noted in *Weiland*, which all the parties cite to, the incorporation of unnecessary facts and allegations into all counts is not *per se* dispositive of whether a complaint is a shotgun pleading. 792 F.3d at 1316. In *Weiland*, the appellate court concluded that while the complaint at issue was not ideal, it did "a good enough job" in giving the defendants notice of the claims against them, and therefore, did not constitute a shotgun pleading. *Id*.

Moreover, as noted above, the primary argument advanced by Defendants is the failure of the Amended Complaint to specify the injury suffered by the various business entities described in the complaint, and to allege Plaintiffs' interests in those entities with sufficient specificity to demonstrate Plaintiffs' standing to seek redress on behalf of those businesses – not Plaintiffs' inability to put Defendants on notice was to what conduct gave rise to the claims against them. The undersigned accordingly recommends denying the motions to dismiss on this basis.

### C. Carollo's and the City's Motions to Dismiss for Failure to State a Claim

In Counts I and II, Plaintiffs claim that Carollo and the City violated their First Amendment rights. Plaintiffs contend that Carollo's action were pretextual and undertaken with improper retaliatory motives, adversely affecting the Plaintiffs' protected speech. In their Motions, Defendants challenge the Amended Complaint on the grounds that Plaintiffs fail to state a claim

because they do not allege an adverse action or that there is a causal connection between the retaliatory actions and the adverse effect on speech. Moreover, Carollo and the City argue that they are entitled to qualified and sovereign immunity, respectively.

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court's consideration is limited to the allegations in the complaint. *See GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. For Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). While a plaintiff need not provide "detailed factual allegations," a plaintiff's complaint must provide must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* Rule 12(b)(6) does not permit dismissal of a complaint because the court anticipates "actual proof of those facts is improbable;" however, "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545). A court evaluating a motion to dismiss for failure to state a claim must focus its analysis on the four corners of the complaint but may also consider any attachments to the complaint in making its determination. *Watson v. Bally Mfg. Corp.*, 844 F. Supp. 1533, 1535 n.1 (S.D. Fla. 1993), *aff'd mem.*, 84 F.3d 438 (11th Cir. 1996). Additionally, any documents that are referenced in the complaint and are central to the plaintiff's case may be considered. *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1335 (S.D. Fla.

1999).

To state a claim under Section 1983, a plaintiff must allege that a person, acting under color of state law, deprived him of "rights, privileges, or immunities secured by the Constitution and laws." *Blanton v. Griel Mem'l Psychiatric Hosp.*, 758 F.2d 1540, 1542 (11th Cir. 1985). The Plaintiffs in this action bring claims of First Amendment retaliation against Defendants Carollo, and the City, and allege that Defendant Lugo conspired to commit those constitutional violations.

To survive a Rule 12(b)(6) motion to dismiss based on a claim of First Amendment retaliation under Section 1983, a plaintiff must allege facts establishing that: (1) his speech or act was constitutionally protected by the First Amendment; (2) a state actor's retaliatory conduct adversely affected the protected speech; and (3) that there is an actual causal connection between retaliatory actions and the adverse speech. *Abella v. Simon*, 522 F. App'x 872, 874 (11th Cir. 2013). *Jones v. Robinson*, 665 F. App'x 776, 778 (11th Cir. 2016) (citing *Keeton v. Anderson-Wiley*, 664 F.3d 865, 878 (11th Cir. 2011)). With regard to the second element, a plaintiff suffers an adverse action if the defendant's purported retaliatory conduct would likely deter a person of ordinary firmness from the exercise of their First Amendment rights. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). The third element requires the plaintiff to adequately allege that his protected speech was the motivating factor behind the defendants' conduct. *Smith v. Mosely*, 532 F.3d 1270, 1278 (11th Cir. 2008). A plaintiff must allege a sequence of events from which a retaliatory motive can be plausibly inferred, notwithstanding other non-retaliatory motives the defendant may harbor. *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1344 (S.D. Fla. 2014).

### 1. Constitutional Violations

In the Amended Complaint, Plaintiffs allege that Carollo has violated their First

Amendment rights by retaliating against them by: (1) shutting down the rallies on Plaintiffs' properties; (2) sending Code Enforcement officers to Plaintiffs' holiday party for the purpose of harassing their guests and issuing a bogus citation; (3) intimidating their tenants and business affiliates; (4) revoking their temporary use permit to participate in a local farmer's market; and (5) enacting the passing of retaliatory legislation.

With respect to the first allegation of misconduct – the shutting down of the rallies – Carollo was not yet a government actor and, therefore, the conduct is not actionable against Carollo or the City under Section 1983. 42 U.S.C. § 1983. Nor is the last allegation actionable, arising from the enactment of an ordinance banning temporary use permits in District 3; Plaintiffs have not stated a cognizable claim because they do not challenge the constitutionality of the ordinance on its face. *See In re Hubbard*, 803 F.3d 1298, 1313-14 (11th Cir. 2015) (holding that a plaintiff cannot bring a First Amendment challenge against an otherwise facially constitutional ordinance by claiming that the lawmakers who passed it acted with an unconstitutional purpose).

With respect to the remain alleged acts, the undersigned has considered the three-prong test set forth above and recognizes that Plaintiffs have satisfied the first prong: that their speech was protected by the First Amendment. *Abella v. Simon*, 522 F. App'x 872, 874 (11th Cir. 2013) (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995)). Plaintiffs allege they were engaged in protected activity by permitting a political rally on their property and by filing an ethics complaint with Miami-Dade County. (ECF No. 43 at p. 2). Defendants do not challenge Plaintiffs' contention that their activities constitute protected speech.

As to the second prong, a plaintiff suffers an adverse action if the defendant's purportedly retaliatory behavior would likely deter a person of ordinary firmness from the exercise of their First Amendment rights. *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005) (finding

retaliatory acts, including, a prolonged "campaign of harassment" by local police officers, where defendants repeatedly followed, stopped, cited, and intimidated plaintiffs, and disseminated flyers depicting plaintiffs as criminals). In applying the ordinary firmness test, courts liberally interpret whether the alleged conduct had an adverse effect, thus while "'the effect on freedom of speech may be small…there is no justification for harassing people for exercising their constitutional rights.'" *Eisenberg*, 1 F. Supp. at 1343 (quoting *Bennett*, 423 F.3d at 1254); *Garcia v. City of Trenton,* 348 F.3d 726, 729 (8th Cir. 2003) (noting that the adverse effect on speech "need not be great in order to be actionable," where the retaliatory issuance of parking tickets for a nominal total amount would be sufficient to chill the speech of a person of ordinary firmness).

In *Eisenberg*, the plaintiffs, a development company and its individual president (Eisenberg), brought a First Amendment retaliation claim against a municipality for retaliatory conduct – the issuance of unfounded citations at one of the plaintiffs' commercial properties, unflattering statements to plaintiffs' mortgagee, the shutting down of one of the commercial properties, and Eisenberg's arrest – in response to statements that Eisenberg made regarding a kickback scheme which the City and its officials were purportedly involved in. *Eisenberg*, 1 F. Supp. at 1343. The court determined that conduct, "improperly motivated as alleged, would likely be sufficient to deter a person of ordinary firmness, especially as the adverse effect need not be substantial." *Id.*

The Amended Complaint amply states and describes activities constituting retaliatory conduct directed by Carollo that satisfy the second prong of the ordinary firmness test. The Amended Complaint alleges that in response to Plaintiffs' exercise of constitutionally protected political speech, Carollo effectuated a Code Enforcement raid of Plaintiffs' holiday party to intimidate Plaintiffs' guests (ECF No. 43 at ¶ 84); performed Code Enforcement "drive-bys" by

looking for violations at Plaintiffs' businesses on multiple occasions; and representing to employees and independent contractors that there were parking and noise violations (*Id*. at ¶ 148); and revocation of Plaintiffs' TUP permit to prevent Plaintiffs' participation in a local farmer's market (*Id*. at ¶¶ 183-185). The Amended Complaint also alleges that Carollo made defamatory statements on local radio stations suggesting that Plaintiffs were attempting to make District 3 less culturally diverse and support radical governments (*Id*. at ¶224); and that Carollo made intimidating statements to Plaintiffs' tenants to encourage the tenants to relocate (*Id*. at ¶¶ 97, 107). The facts as alleged and viewed in the light most favorable to the Plaintiffs sufficiently represent the type of conduct that would likely have an adverse effect upon a person of ordinary firmness. *Eisenberg*, 1 F. Supp. at 1343.

Moreover, Defendants urge this Court to find that Plaintiffs fail to meet their burden to show an adverse effect because some of the code violations and drive-bys were aimed at Plaintiffs' tenant and corporate affiliates, instead of Plaintiffs individually. However, the fact that some of the alleged retaliatory acts did not directly impact Plaintiffs individually does not defeat the sufficiency of the factual allegations supporting the second prong of the ordinary firmness test. *See Cuevas v. City of Sweetwater*, No. 15-22785-CIV, ECF No. 38 (S.D. Fla. Oct. 28, 2015). In *Cuevas*, the plaintiff, owner of a gas station, alleged that the municipality and a city commissioner violated his First Amendment rights by harassing him personally as well as intimidating the gas station employees who were employed by an unrelated company after the plaintiff displayed support for the commissioner's political opponent. *Id*. In determining the issues of whether plaintiff had standing to allege an injury rising from the retaliatory conduct aimed at the gas station employees and the independent contractor that operated the gas station, the court concluded that it was "fairly obvious" how Cuevas as the owner of the gas station might be dissuaded from his

continued support for a political candidate despite some of the retaliatory conduct being aimed at other related parties. *Id*. (citing *Ranize v. Town of Lady Lake, Florida*, No. 5:11-CV-646, 2012 WL 4856749 (M.D. Fla. Oct. 12, 2002)). Likewise, under the facts alleged in the Amended Complaint, it is plausible that the retaliatory conduct aimed at Plaintiffs, their tenants, and business affiliates may discourage a person of ordinary firmness from exercising their First Amendment rights.

With regard to the third prong of a First Amendment retaliation claim, Plaintiffs plausibly allege a causal connection between the described retaliatory actions and the adverse effects on speech. To establish a causal connection at the motion to dismiss stage, a plaintiff must allege that his protected speech was a motivating factor behind the alleged retaliatory conduct. *Bennett*, 423 F.3d at 1250; *Eisenberg*, 1 F. Supp. 3d at 1344. A plaintiff must plead a series of events from which a retaliatory motive can be plausibly inferred. *Id*. Causation may be shown by pleading "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory act, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lozman v. City of Riviera Beach*, 39 F. Supp. 1392, 1405-06 (S.D. Fla. 2014).

Plaintiffs allege that their protected speech occurred on two occasions at the rallies in November 2017, and when Plaintiff Fuller filed the ethics complaint in March 2018. Taken in the light most favorable to Plaintiffs, the alleged retaliatory conduct occurred within close temporal proximity of Plaintiffs' expression of their protected speech. Plaintiffs allege that in December 2017, within a month of the rallies, Carollo orchestrated Code Enforcement officers to investigate Plaintiffs' holiday party. Later, in January and February 2018, Carollo intimidated Plaintiffs' tenant by directing Code Enforcement to "raid" the tenant's business and by purportedly explaining that "my problem is not as much with you as it is with your landlord." (ECF No. 43, ¶¶

112, 113). The Amended Complaint also alleges that in February 2018, three months after the rallies, Carollo and two City employees investigated Ball and Chain, a business of which Fuller is in an investor, and took pictures of the cars parked in the parking lot adjacent to the business (*Id.* at ¶¶ 112, 113). Likewise, Carollo alleged appeared at an anniversary party hosted by Union Beer, another business in which Fuller is an investor, and stated that "you need a temporary event permit…but even if you had applied for one, I would have denied it." (*Id.* at ¶ 120).

Subsequently, the Amended Complaint alleges that Fuller filed an ethics complaint against Carollo in March 2018. (*Id.* at ¶ 165). Plaintiffs allege that while the complaint was being investigated, the retaliatory conduct ceased, but that once the complaint was withdrawn in August 2018, the conduct commenced again. Plaintiffs allege that seven days after the complaint was withdrawn, Plaintiffs received a letter from the City advising them of a code violation regarding kiosks Plaintiffs intended to use at a local farmer's market, for which they had previously obtained temporary use permits. (*Id.* at ¶¶ 178-181). Plaintiffs further allege that within weeks of the withdrawal of the complaint, the investigations and drive-bys at Ball and Chain recommenced. (*Id.* at ¶ 175). Plaintiffs allege that their political speech against Carollo was the motivation for all retaliatory conduct and substantiate their allegations of motive with statements Carollo allegedly made, admitting that he was targeting Fuller. "'Numerous courts have found that harassment in the form of constant monitoring, investigating or issuance of violations can contravene First Amendment rights.'" *See Cuevas v. City of Sweetwater*, No. 15-22785-CIV, ECF No. 38 (S.D. Fla. Oct. 28, 2015) (quoting *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood, Fla.*, 430 F. Supp. 2d 1296, 1316 (S.D. Fla. 2006)). The undersigned finds that the Amended Complaint sufficiently allege the necessary causal relationship between the Plaintiffs' speech and the alleged retaliatory conduct.

### 2.   Plausibility of Constitutional Violation and Investigative Report

In its Motion, the City's main argument for dismissal under Rule 12(b)(6) is that Plaintiffs fail to plausibly allege that Carollo's retaliatory conduct was plausible, let alone causally connected, to Plaintiffs' protected speech. In support of its argument, which Carollo adopted by motion, the City relies on the Investigative Report attached to the Amended Complaint, arguing that the Report contradicts the allegations of the Amended Complaint, and therefore must be accepted as true. The City directs the Court to Fuller's statements that he was unaware that the rally taking place was in support of the candidate opposing Carollo; Defendants' argue that if the Plaintiffs did not intend to exercise their speech in support of Carollo's opponent, they cannot now claim a violation of their First Amendment right. The City further argues that the Investigative Report represents that Plaintiffs own at least twenty properties in District 3 and that the likelihood of there being legitimate code violations is high, and as such, the Court should find that the investigations and citations were justified.

At the motion to dismiss stage, the Court may consider attachments to the Amended Complaint; however, it is not bound to accept the hearsay statements and representations in the Investigative Report as true to affirmatively disprove the allegations in the Amended Complaint. *See Bryant v. Miami-Dade Cty.*, No. 10-23768, 2011 WL 13223543, at *3 n.3 (S.D. Fla. Mar. 20, 2015) ("Moreover, taking judicial notice of a document does not mean that the Court accepts the contents of the documents as true."); *Barron v. Snyder's-Lance, Inc.*, No. 13-62496, 2015 WL 1182066, at *4 (S.D. Fla. Mar. 20, 2015) (citing *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were true.'"). Accordingly, the undersigned recommends denial of the City's Motion on

this basis.

### 3. Qualified Immunity

Carollo argues that even if Plaintiffs are able to plead a claim for First Amendment retaliation against him, the claim should be dismissed because he is shielded from suit by the doctrine of qualified immunity. Qualified immunity shields government officials sued in their individual capacities so long as their conduct does not violate a clearly established constitutional right. *Lozman v. City of North Bay Village*; No. 07-23357-CIV, 2009 WL 10699944, at *5 (S.D. Fla. 2009); *Oliver v. Fiorino*, 586 F.3d 898, 904 (11th Cir. 2009) (quoting *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009)). The doctrine is intended to allow government officials to perform their discretionary duties without fear of personal liability or harassing litigation, "protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Grider v. City of Aubern Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010). The initial burden is on the defendant to establish that he was acting within the scope of his discretionary authority. *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting *Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1194 (11th Cir. 2003)). If the defendant is unable to show he was acting within his discretionary authority, he is ineligible for the benefit of qualified immunity. *Lozman*, 2009 WL 10699944, at *5 (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). However, if the defendant meets his burden, the burden shifts to the plaintiff to show that qualified immunity is not appropriate under the circumstances. *Grey*, 458 F.3d at 1303.

In order to prevent the granting of a motion to dismiss on claims challenged under the doctrine of qualified immunity, the plaintiff must allege sufficient facts to allege that: (1) the defendant violated a constitutional right; and (2) the right was clearly established at the time of the alleged violation. *Wall-DeSousa v. Florida Dep't of Highway Safety and Motor Vehicles*, 691 F.

App'x 584, 589 (11th Cir. 2017) (citing *Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014)). In suits brought pursuant to Section 1983, such as this one, the question of qualified immunity and the Rule 12(b)(6) standard become intertwined. *GJR Invs., Inc. v. Cty. Of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998) *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). In other words, where a defendant raises the qualified immunity defense in a Rule 12(b)(6) motion, the court should grant the motion if the complaint fails to allege a violation of a clearly established constitutional right. *Williams v. Bd. Of Regents of the Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007).

In his Motion, Carollo argues that he was acting within his discretionary duties in all instances alleged in the Amended Complaint. The initial burden is on Carollo to show that he was engaged in a discretionary function at the time of the alleged misconducts. Carollo argues that the Amended Complaint alleges that he made repeated inquiries regarding noise complaints and parking violations, which were well within his discretionary authority. *See* Carollo's Motion to Dismiss (ECF No. 53 at p. 19). The Motion further avers that the Amended Complaint alleges that Carollo held meetings with other government employees and constituents regarding Plaintiffs' businesses and that all of those discussions were also within his discretionary authority. *Id.* Plaintiffs contend that Carollo did not have the authority to direct Code Enforcement officers to investigate Plaintiffs' businesses because the City Charter requires that the City Manager, not the Commission, direct and manage Code Enforcement.

A public official can show that he was acting within his discretionary authority by showing that the facts as alleged would result in the conclusion that his actions were (1) undertaken pursuant to the performance of his duties; and (2) were within the scope of his authority. *Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011). The Court must examine the "general nature of the

defendant's action" to determine if the conduct was within the government actor's discretionary authority. *Holloman ex. rel. Hollman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).

Carollo argues that his conduct of reporting potential code violations to Code Enforcement constitutes proper encouragement of enforcement of municipal law. On the other hand, Plaintiffs argue that the City Manager, not Carollo, should have been the person directing the Code Enforcement Department. Plaintiffs allege that Carollo played a central role and was the driving force behind the harassing investigations and issuance of bogus citations. However, when determining whether a public official is acting within his discretionary authority, the Court must consider a "government's official's actions at the minimum level of generality necessary to remove the constitutional taint." *Holloman*, 370 F.3d at 1266. The inquiry is not whether Carollo had the authority to direct Code Enforcement officers to retaliate against Plaintiffs. *Id.* ("[T]he inquiry is not whether the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology."). Rather, the question is whether Carollo had the authority to report his suspicion of code violations and encourage enforcement of the Code. *Id.* ("[W]e look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or other conditionally inappropriate circumstances.").

The relevant section of the City of Miami Charter that governs the City Commission, cited by both parties, provides that "[e]xcept for the purpose of inquiry and as may be necessary as provided in the section the mayor, the city commission, any committees and members thereof shall deal with the administrative service solely through the city manager [...]." *See* Miami, Fla. Charter, Subpart A, Section 4(d) (emphasis added). Therefore, in his ardent reporting and investigation of potential code violations as alleged, Carollo was acting within his discretionary authority.

Because Carollo met his burden to show that his actions were within his discretionary authority, the burden shifts to Plaintiffs to show that qualified immunity is not appropriate under the circumstances. *Bryant v. Jones*, 575 F.3d 1281, 1295 (11th Cir. 2009). To meet their burden, Plaintiffs must allege that Carollo violated a constitutional right, and that this constitutional right was clearly established at the time of the wrongful act. Because the Court has already determined that Plaintiffs plausibly allege with supporting and detailed facts the three elements of a First Amendment retaliation claim, the only inquiry is whether that right was established at the time of the misconduct. The undersigned finds that it was.

It is well-settled that the government may not retaliate against its citizens for the expression of their First Amendment rights. *Kollin v. Dorsett*, No. 15-62728-CIV, 2016 WL 4385356, at *4 (S.D. Fla. Apr. 14, 2016) ("The undersigned has little difficulty in concluding that the right to exercise free speech without fear of retaliation by governmental officials was clearly established law at the time of [the] alleged conduct in 2013."); *Bennett*, 423 F.3d at 1256; *Cuevas v. City of Sweetwater*, No. 15-22785-CIV, ECF No. 38 (S.D. Fla. Oct. 28, 2015). Accordingly, the undersigned recommends denying Carollo's Motion on the basis of qualified immunity.

#### 4. Sovereign Immunity

In its Motion, the City argues that the First Amendment retaliation claim against it should be dismissed because Plaintiffs fail to allege a claim that would survive the doctrine of sovereign immunity. *See* City's Motion to Dismiss (ECF No. 54 at p. 4).

Municipalities and other local government entities are subject to liability for the actions of government officials under Section 1983 and may be sued directly for relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436

U.S. 658, 690 (1978); *Reyes v. City of Miami Beach*, No. 07-22680-CIV, 2007 WL 4199606, at *4 (S.D. Fla. Nov. 26, 2007) ("As an initial matter, it is clearly established that a municipality…cannot be held liable under Section 1983 for the acts of its employees under a theory of *respondeat* superior."). A municipality may only be held liable under Section 1983 where there is a direct and causal link between the municipality policy or custom and the alleged connotational violation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

To avoid dismissal of his claim against a municipality, a plaintiff must allege sufficient facts showing either: (1) an officially promulgated policy; (2) an unofficial custom or practice of the municipality shown through repeated acts of a final policy maker for the government entity; or (3) through a showing of the municipalities deliberate indifference to the constitutional rights of an individual, or by a repeated failure to make any meaningful investigation into multiple complaints of constitutional violations. *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003); *German v. Broward Cty. Sheriff's Office*, 315 F. App'x 773, 776 (11th Cir. 2009) (noting that a policy or custom "is established by showing a persistent and widespread practice and an entity's actual or constructive knowledge of such customs, though the custom need not receive formal approval."). On the undersigned's finding that Plaintiffs sufficiently alleged a constitutional violation, the only inquiry that remains is whether Plaintiffs sufficiently allege a policy or custom of deliberate indifference.

Plaintiffs argue that the City is liable under the third alternative of *Monell* liability: a custom of deliberate indifference. Plaintiffs argue that many City officials, including the Mayor and the City Manager permitted a custom of "permitting and condoning" unconstitutional retaliation as they were aware of Carollo's conduct against the Plaintiffs. (ECF No. 43 at ¶ 286). In support of their argument, Plaintiffs represent that the Mayor, City Manager, Deputy City

Manager, and Code Enforcement Director participated in a walkthrough of District 3 to search for code violations at Plaintiffs' properties, and therefore, were aware of the unconstitutional conduct (*Id.* at ¶ 286); and that code enforcement officers followed Carollo's orders, thereby carrying out his retaliatory conduct.

Plaintiffs rely primarily on *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392 (S.D. Fla. 2014), in support of their argument against sovereign immunity. In *Lozman*, the plaintiff brought a First Amendment retaliation claim against a municipality, alleging years of constitutional violations after plaintiff spoke out against the local government. 39 F. Supp. at 1400-01. After the court determined that a constitutional violation had been established, the court denied the municipality's sovereign immunity defense on the basis that plaintiff sufficiently showed a custom of indifference. *Id.* at 1408. In that case, the record showed that the municipality – through a majority of its city council members – was aware and in fact participated in repeated constitutional violations, including repeated arrests and expulsion of council meetings, against the plaintiff. *Id.* at 1408. Here, no such body of government officials have been identified. That Plaintiffs alleged that a couple City officials, all belonging to different offices, were aware that Carollo raised code violations occurring at Plaintiffs' properties does not amount to the custom of indifference identified in *Lozman*. Additionally, *Lozman* alleged constitutional violations that spanned for a period of three years. Plaintiffs allege misconduct – primarily at the behest of one individual – over the span of ten months. Accordingly, the undersigned recommends that the City's Motion be granted, and Plaintiffs claims against the City dismissed.

### D.  Motion to Dismiss Conspiracy Claim Against Carollo and Lugo

Plaintiffs allege that Carollo and Lugo agreed to deprive Plaintiffs of their First Amendment rights. (ECF No. 43 at ¶ 305). Specifically, Plaintiffs allege that Lugo conspired with

Carollo: (1) to shut down the November 2017 rallies; (2) by calling Code Enforcement to report unfounded violations at Plaintiffs' holiday party; and (3) by investigating and reporting false noise complaints against Ball and Chain. In support of her argument under Rule 12(b)(6), Lugo argues that Plaintiffs fail to allege an underlying constitutional violation and that Plaintiffs' claim against her are barred by the intracorporate conspiracy doctrine. Carollo adopted this argument by motion.

To survive a motion to dismiss of a Section 1983 conspiracy, a plaintiff must allege that the parties reached an agreement to deprive plaintiff of his constitutional rights and committed an act in furtherance of that conspiracy. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010) (citing *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) ("The plaintiff attempting to prove such conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actional wrong to support the conspiracy.").

The intracorporate conspiracy doctrine holds that corporate agents are an extension of the same corporation, thereby defeating the element of the claim that requires *two* persons enter into an agreement to deny a plaintiff of a constitutional right. *See McAndrew v. Lockheed Martin, Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). Under the doctrine, a corporation cannot conspire with its own employees; and employees, acting within the scope of their employment, cannot conspire among themselves. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010). The Eleventh Circuit has extended the doctrine to public entities, such as the City and its employees. *Id.* (citing *Denney v. City of Albany*, 247 F.3d 1172, 1190-91 (11th Cir. 2001)). An exception to the intracorporate conspiracy doctrine exists when a plaintiff shows that the conspiring employees were acting outside the scope of their employment. *Id.* at 1261.

The Amended Complaint alleges that, at Carollo's direction, Lugo agreed to use her

political contacts to shut down the rallies. (ECF No. 43 at ¶ 55). With respect to this alleged misconduct, Lugo and Carollo argue that the shutting down of the rallies cannot constitute a Section 1983 violation because Carollo was not acting under state color.  *See* Lugo's Motion to Dismiss (ECF No. 64 at p. 9). The Court notes that while this is true for the claim against Carollo, it is not the case for the conspiracy claim against her since, as she alleges, Lugo was a government actor at <u>all</u> relevant times. Plaintiffs' conspiracy claim against Lugo and Carollo is independent from Plaintiffs' claims against Carollo. Accordingly, the Court must examine whether Plaintiffs have alleged sufficient facts to maintain their conspiracy claim against Lugo for this conduct. Plaintiffs specifically allege that Carollo, after becoming aware of the rallies, contacted Lugo who agreed to aid in the shutting down of the rallies. Lugo does not dispute that the rallies constitute protected speech or raise any other challenge to this misconduct. Therefore, Lugo's Motion should be denied as to this misconduct.

With regard to the remaining events alleged, including investigation of the holiday party, Lugo's participation in the walkthrough of Plaintiffs' businesses, and subsequent investigation of Ball and Chain, the undersigned finds that the conduct alleged occurred solely between City employees and therefore, are barred by the intracorporate conspiracy doctrine. Additionally, the doctrine bars Plaintiffs' claim because Lugo and Carollo were both City employees acting within the scope of their employment as the subject of their alleged conspiracy – retaliating against Plaintiff for expression of constitutionally protected speech – involves job-related functions within their scope of employment. As discussed above, Carollo had the authority to report and inquire about potential code violations, and likewise, Lugo, as an employee of the Code Enforcement Department, was well-within her scope of employment by investigating potential code violations. *See Girder*, 618 F.3d at 1261 ("We recognize that one might reasonably believe that violating

someone's constitutional right is never a job-related function or within the scope of [employment]…The scope-of-employment inquiry is whether the employee…was performing a unction that, but for the alleged constitutional infirmity, was within the ambit of [their] authority (i.e., job-related duties)…"). Accordingly, the undersigned recommends that Lugo's Motion be granted, in part.

## III.   RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Carollo's Motion to Dismiss be **GRANTED**, with leave to amend; that the City's Motion to Dismiss be **GRANTED**, with leave to amend; and that Lugo's Motion to Dismiss be **GRANTED**, in part.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections by that date may bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, No. 16-10492, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, No. 16-11238, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**RESPECTFULLY SUBMITTED** in Chambers this 30th day of April, 2019.

_____
LAUREN LOUIS
United States Magistrate Judge

Copies to:
The Honorable Federico A. Moreno
Counsel of Record