UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:18-24190-CIV-SMITH
_____

WILLIAM O. FULLER AND
MARTIN PINILLA, II,
PLAINTIFFS,

V.

JOE CAROLLO,
DEFENDANT.
_____

DEFENDANT COMMISSIONER CAROLLO'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT, WITH INCORPORATED
MEMORANDUM OF LAW; MOTION TO STRIKE; REQUEST FOR
HEARING
_____

THOMAS E. SCOTT
COLE, SCOTT & KISSANE
9150 S. DADELAND BLVD., STE 1400
MIAMI, FL 33156
TEL: 305-350-5381
FAX: 305-373-2294
THOMAS.SCOTT@CSKLEGAL.COM
*COUNSEL FOR DEFENDANT JOE CAROLLO*

BENEDICT P. KUEHNE
MICHAEL T. DAVIS
KUEHNE DAVIS LAW, P.A.
100 S.E. 2 ST., SUITE 3550
MIAMI, FL 33131-2154
TEL: 305.789.5989
FAX: 305.789.5987
EFILING@KUEHNELAW.COM
*COUNSEL FOR DEFENDANT JOE CAROLLO*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................... iii

MOTION TO DISMISS SECOND AMENDED COMPLAINT ............................. 1

I.    LEGAL STANDARD TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM. ...................... 1

II.    INTRODUCTION. ................................................................................ 2

III.    FACTUAL ASSERTIONS IN THE SAC DO NOT SUPPORT A PLAUSIBLE FEDERAL CIVIL RIGHTS VIOLATION FOR FIRST AMENDMENT RETALIATION. ............................................ 3

    A.    Asserted Motivation behind Allegations of Commissioner Carollo's First Amendment Retaliation Efforts Fail to Support a Federal Claim. ............................................................ 4

    B.    Alleged Retaliation by Commissioner Carollo Against Plaintiffs and Tenants. ................................................................ 5

    C.    Code Enforcement Targeting of Other Properties. .................... 8

    D.    The Ethics Complaint Undermines the Validity of the SAC by Demonstrating the Implausibility of the First Amendment Retaliation Claim. ................................................. 8

    E.    Targeting of Calle Ocho Marketplace. ..................................... 10

    F.    Retaliation for Use of 7th Street Parking Lot. .......................... 11

    G.    Commissioner Carollo Allegedly "Lurking" Behind Ball & Chain. .................................................................................. 11

    H.    Alleged Retaliation Against Viernes Culturales. ...................... 11

    I.    Commissioner Carollo's Alleged Defamation. ......................... 12

    J.    Official Action at Valentine's Day Commission Meeting. ...... 12

    K.    First Amendment Retaliation, Not Code Violations. ................ 13

IV.    GROUNDS FOR DISMISSAL. ......................................................... 13

i

A.   Plaintiffs Do Not State a Plausible Claim for a Section 1983 Violation..............................................................13

B.   Plaintiffs Lack Standing to Assert Claims on Behalf of Non-Parties..............................................................14

C.   Plaintiffs' City Charter Violations Do Not State a Civil Rights Claim. ..........................................................14

D.   Commissioner Carollo, in his Capacity as a Municipal Elected Official, Is Entitled to Qualified Immunity. ...............14

E.   Commissioner Carollo Is Entitled to Legislative Immunity for Actions Taken in the Course of his Legislative Function. ..................................................................22

V.   MOTION TO STRIKE..........................................................24

CONCLUSION ........................................................................25

REQUEST FOR HEARING ...................................................26

CERTIFICATE OF COMPLIANCE.......................................26

CERTIFICATE OF SERVICE ...............................................27

ii

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Alsop v. Pierce*,
    19 So. 2d 799 (Fla. 1944) ................................................................. 17

*Am. Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ...................................................... 9, 3

*Anderson v. Creighton*,
    483 U.S. 635, 107 S. Ct. 3034 (1987) ............................................. 19

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................. 18

*Bailey v. Wheeler*,
    843 F.3d 473 (11th Cir. 2f016) ...................................................... 20

*Barton v. Florida*,
    2007 WL 1724943, 2007 U.S. Dist. Lexis 100486 (N.D. Fla. 2007) ................ 9

*Battle v. Cent. State Hosp.*,
    898 F.2d 126 (11th Cir. 1990) ......................................................... 2

*Bennett v. Hendrix*,
    423 F.3d 1247 (11th Cir. 2005) ................................................. 13, 20

*Berry v. Coleman*,
    172 Fed. App'x 929 (11th Cir. 2006) .......................................... 2, 18

*Brannon v. Finkelstein*,
    754 F.3d 1269 (11th Cir. 2014) ....................................................... 19

*Brooks v. Powell*,
    800 F.3d 1295 (11th Cir. 2015) ....................................................... 15

*Brown v. City of Huntsville*,
    608 F.3d 724 (11th Cir. 2010) ........................................................ 15

*Brown v. Crawford County*,
    960 F.2d 1002 (11th Cir. 1992) ....................................................... 23

*Bryant v. Avado Brands, Inc.*,
    187 F.3d 1271 (11th Cir. 1999) ........................................................ 2

*Building Empowerment by Stopping Trafficking v. Jacobo*,
  No. 12-23925-CIV, 2013 U.S. Dist. Lexis 139336,
  2013 WL 5435729 (S.D. Fla. Sep. 27, 2013).............................................. 19, 21

*Butz v. Economou*,
  438 U.S. 478, 98 S. Ct. 2894 (1978) ..................................................... 11

*Carollo v. Boria*,
  833 F.3d 1322 (11th Cir. 2016) ......................................................... 16

*Crawford-El v. Britton*,
  523 U.S. 574, 118 S. Ct. 1584 (1998) .................................................. 15

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  140 S. Ct. 1891 (2020) .................................................................. 4

*Dermer v. Miami-Dade Cnty.*,
  599 F.3d 1217 (11th Cir. 2010) ......................................................... 18

*Eastland v. United States Servicemen's Fund*,
  421 U.S. 491, 95 S. Ct. 1813 (1975) ................................................... 24

*Ellis v. Coffee Cnty. Bd. of Registrars*,
  981 F.2d 1185 (11th Cir. 1993) ................................................. 22, 23, 24

*Emory v. Peeler*,
  756 F.2d 1547 (11th Cir. 1985) ......................................................... 12

*Espanola Way v. Meyerson*,
  690 F.2d 827 (11th Cir. 1982) .......................................................... 20

*Executive 100, Inc. v. Martin County*,
  922 F.2d 1536 (11th Cir.) .............................................................. 22

*Fletcher v. Miller*,
  2016 U.S. Dist. Lexis 155598 (S.D. Fla. 2016) ......................................... 12

*Forrester v. White*,
  484 U.S. 219, 108 S. Ct. 538 (1988) ................................................... 24

*Gill v. Judd*,
  941 F.3d 504 (11th Cir. 2019) ........................................................... 8

*Gray ex rel. Alexander v. Bostic*,
  458 F.3d 1295 (11th Cir. 2006) ......................................................... 15

iv

*Gregoire v. Biddle*,
  177 F.2d 579 (2d Cir. 1949) ............................................................................ 15

*Grider v. City of Auburn, Ala.*,
  618 F.3d 1240 (11th Cir. 2010) ..................................................................... 15

*Griffin Indus., Inc. v. Irvin*,
  496 F.3d 1189 (11th Cir. 2007) ................................................................... 9, 2

*Hafer v. Melo*,
  502 U.S. 21, 112 S. Ct. 358 (1991) ........................................................ 22-23

*Harbert Int'l, Inc. v. James*,
  157 F.3d 1271 (11th Cir. 1998) ........................................................ 16, 17, 18

*Harlow v. Fitzgerald*,
  457 U.S. 800, 102 S. Ct. 2727 (1982) ...................................................... 15, 22

*Harris v. Deveaux*,
  780 F.2d 911 (11th Cir. 1986) ....................................................................... 22

*Hernandez v. City of Lafayette*,
  643 F.2d 1188 (5th Cir. 1981), *cert. denied*,
  455 U.S. 907, 102 S. Ct. 1251 (1982) ..................................................... 22, 23

*Hill v. Allianz Life Ins. Co.*,
  2015 U.S. Dist. Lexis 198933 (M.D. Fla. June 17, 2015) ............................... 25

*Jenkins by Hall v. Talladega City Bd. of Educ.*,
  115 F.3d 821 (11th Cir. 1977) ....................................................................... 19

*Johnson v. Clifton*,
  74 F.3d 1087 (11th Cir. 1996) ....................................................................... 21

*Kelly v. Harris*,
  331 F.3d 817 (11th Cir. 2003) ....................................................................... 14

*Knight v. Jacobson*,
  300 F.3d 1272 (11th Cir. 2002) ..................................................................... 14

*Kowalski v. Tesmer*,
  543 U.S. 125–29 (2004) ................................................................................. 14

*Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*,
  440 U.S. 391, 99 S. Ct. 1171 (1979) .............................................................. 22

*Maggio v. Sipple*,
211 F.3d 1346 (11th Cir. 2000) ........................................................ 19

*Marsh v. Butler County, Ala.*,
268 F.3d 1014 (11th Cir. 2001) ........................................................ 9

*McInerney v. Moyer Lumber & Hardware, Inc.*,
244 F. Supp. 2d 393 (E.D. Pa. 2002) ............................................... 25

*Mitchell v. Forsyth*,
472 U.S. 511, 105 S. Ct. 2806 (1985) ............................................. 22

*Moheb, Inc. v. City of Miami*,
756 F.Supp. 2d 1370 (S.D. Fla. 2010) .............................................. 5

*O'Boyle v. Sweetapple*,
187 F. Supp. 3d 1365 (S.D. Fla. 2016) ............................................ 23

*O'Boyle v. Sweetapple,* No. 9:14-CV-81250-KAM,
2015 U.S. Dist. Lexis 192278 (S.D. Fla. June 4, 2015) ............................ 17-18

*Palmer Trinity Private Sch. v. Vill. of Palmetto Bay*,
802 F. Supp. 2d 1322 (S.D. Fla. 2011) .............................................. 5

*Progressive Express Ins. Co. v. McGrath Cmty. Chiropractic*,
913 So. 2d 1281 (Fla. 2d DCA 2005) ................................................ 7

*Randall v. Scott*,
610 F.3d 701 (11th Cir. 2010) ......................................................... 19

*Rigdon v. Georgia Bd. of Regents*,
2008 WL 11348453 (S.D. Ga. June 27, 2008) ................................... 21

*Scott v. Harris*,
550 U.S. 372, 127 S. Ct. 1769 (2007) ............................................. 15

*Scott v. Taylor*,
405 F.3d 1251 (11th Cir. 2005) ....................................................... 22

*Siegert v. Gilley*,
500 U.S. 226, 111 S. Ct. 1789 (1991) ............................................. 12

*Stanton v. Sims*,
571 U.S. 3, 134 S. Ct. 3 (2013) ....................................................... 15

*Tenney v. Brandhove*,
341 U.S. 367, 71 S. Ct. 783 (1951) ..................................................... 22

*Tower v. Glover*,
467 U.S. 914, 104 S. Ct. 2820 (1984) ............................................... 22

*Turk v. Richard*,
47 So. 2d 543 (Fla. 1950) .................................................................. 17

*Universal Express, Inc. v. U.S. S.E.C.*,
177 Fed. App'x 52 (11th Cir. 2006) ..................................................... 2

*Von Stein v. Brescher*,
904 F.2d 572 (11th Cir. 1990) ........................................................... 12

*Wall-DeSousa v. Florida Dep't of Highway Safety and Motor Vehicles*,
691 F. App'x 584 (11th Cir. 2017) ..................................................... 16

*Williams v. Bd. of Regents of the Univ. Sys. of Ga.*,
477 F.3d 1282 (11th Cir. 2007) ......................................................... 16

*Yeldell v. Cooper Green Hosp., Inc.*,
956 F.2d 1056 (11th Cir. 1992) ......................................................... 24

**Statutes**

42 U.S.C. § 1983 ..................................................................................... 2

**Rules**

Federal Rules of Civil Procedure, Rule 12(b)(6) ................................... 3, 9

Federal Rules of Civil Procedure, Rule 12(f) ................................... 24, 25

<u>**MOTION TO DISMISS SECOND AMENDED COMPLAINT**</u>

The Eleventh Circuit dismissed the appeal from the prior Order on the motion to dismiss (DE99, 118) for jurisdictional reasons because the dismissal was from the Amended Complaint and not the Second Amended Complaint (SAC) (DE140). Therefore, Commissioner Carollo's dismissal motion is now directed to the SAC and raises the immunity defenses not decided by the Eleventh Circuit as well as the failure to state a valid claim and the lack of standing.

**I.     LEGAL STANDARD TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM.**

Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." While the court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff[,]" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (internal quotation marks omitted), "courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id*. at 1290 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, *id*. at 1949. A *plausible entitlement to relief* exists "when the allegations in the complaint traverse the thresholds separating the 'conclusory' from the 'factual' and the 'factually neutral' from the 'factually suggestive.'" *Barton v. Florida*, 2007 WL 1724943, 2007 U.S. Dist. Lexis 100486 (N.D. Fla. 2007)). The Court need not accept unsupported conclusions of law or mixed law and fact. *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001). When exhibits to a complaint contradict the general and conclusory allegations of the pleadings, the exhibits govern. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

"On a motion to dismiss, '[c]onclusory allegations and unwarranted deductions of fact are not admitted as true," particularly "when the conclusory allegations contradict the other facts

1

alleged in the complaint." *See Berry v. Coleman*, 172 Fed. App'x 929 (11th Cir. 2006); *see also Battle v. Cent. State Hosp.*, 898 F.2d 126, 130 n.3 (11th Cir. 1990) ("allegations that are contradicted by other allegations in the complaint may also constitute grounds for dismissal"). The Court is not required to ignore factual details of the pleading in favor of general or conclusory allegations separately set forth. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). "A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). "Public records are among the permissible facts that a district court may consider." *Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. App'x 52, 53 (11th Cir. 2006). The COE Investigative Report, attached as Exhibit A to the SAC, undermines the conclusory allegations in the SAC and provides affirmative reasons to dismiss the SAC with prejudice.

## II.   INTRODUCTION.

City of Miami Commissioner Joe Carollo is being sued for a single federal civil rights violation (42 U.S.C. § 1983) asserting a claim of First Amendment retaliation. The  two businessmen plaintiffs allege that Commissioner Carollo retaliated against them for their supposed political support of his electoral opponent (Alfonso Leon) during Carollo's successful November 2017 general and run-off election (SAC ¶52). They seek monetary damages and injunctive relief, including an order preventing Commissioner Carollo from faithfully discharging his duties and authority as a commissioner in any matter that might arguably impact the plaintiffs and their unnamed "properties, employees, tenants, or any affiliates." (SAC ¶321).

While the unsworn and unverified SAC is replete with false facts, misdirected invective, *ad hominem* attacks against Commissioner Carollo, and implausibly speculative claims, Commissioner Carollo and this Court must nevertheless take these assertions as true for purposes of testing the sufficiency of the complaint. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288

(11th Cir. 2010). Even with that permissive standard, the SAC is subject to dismissal with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because it fails "to state a claim upon which relief can be granted." Dismissal is required for these reasons: (1) the SAC does not state a plausible claim of First Amendment retaliation and fails to state a legally recognized claim against the Commissioner; (2) plaintiffs lack standing to assert  allegations against Commissioner Carollo on behalf of non-parties; (3) Commissioner Carollo is protected by the doctrines of qualified immunity and legislative immunity since his conduct occurred during the scope and course of his  authority as an elected public official; (4) for the conduct that preceded his time as a City  Commissioner, his actions as a private citizen cannot provide a basis for a civil rights violation requiring a showing that the putative defendant acted under color of law.

## III.   FACTUAL ASSERTIONS IN THE SAC DO NOT SUPPORT A PLAUSIBLE FEDERAL CIVIL RIGHTS VIOLATION FOR FIRST AMENDMENT RETALIATION.

Failing to adhere to the instructions in the Magistrate Judge's Report and Recommendation (DE99) regarding repleading the civil rights violations (DE99, pp. 7-8), the plaintiffs essentially doubled-down on their accusations against Commissioner Carollo without detailing the concise injuries they allegedly incurred and in the absence of any specification of the precise retaliatory conduct that supposedly forms the basis of their claims.[1] Throughout the SAC, the plaintiffs continue to accuse Commissioner Carollo of causing regulatory and enforcement actions to be initiated against their businesses without making a single factual demonstration that they did not in fact engage in the behavior justifying the investigations.

In its simplest reading, the SAC attempts to immunize the plaintiffs from complying with

---

[1]  The Summary of Damages in SAC ¶¶ 283-298 is merely a series of speculative and untethered assertions of emotional distress and business impacts flowing from other non-party business entities in direct violation of the directives in the dismissal order allowing repleading.

3

City of Miami law and regulations, all because they claim to have supported a losing candidate in the Commission election. The SAC offers nothing more than the plaintiffs' subjective speculations that they should not be held to the same standard as all other businesses in the City merely because they dislike and disrespect their district Commissioner. As objectors to a legitimate exercise of municipal authority, their storyline simply does not support a claim for a civil rights First Amendment retaliation claim. Coupled with the abundant facts included in Exhibit A to the SAC, the plaintiffs' allegations are so deficient in stating an allowable cause of action as to require this Court to dismiss this third iteration of the complaint with prejudice.

### A.     Asserted Motivation behind Allegations of Commissioner Carollo's First Amendment Retaliation Efforts Fail to Support a Federal Claim.

As an initial justification for the complaint, plaintiffs tell of their political support for Alfonso Leon, an unsuccessful candidate for City of Miami Commission District 3 in the November 2017 election (DE125, ¶¶38, 43, 52). Then-candidate Carollo, not as a government official but merely in his capacity as a private citizen, won the election and was sworn in on December 2, 2017 (DE125, ¶54). Despite involving no governmental action, the SAC includes pre-election allegations for which the plaintiffs seek to hold Commissioner responsible (DE125, ¶¶8-54), notwithstanding that none of the actions can give rise to a civil rights violation.[2]

Plaintiffs purport that Commissioner Carollo held a grudge against them and targeted them and their business interests for harassment and "political retribution" (DE125, ¶¶33 n.7, 59-66, 86), but the only harassment alleged in the SAC involved the use of allowable municipal enforcement authority by City officials and inspectors in connection with health, safety, and quality of community life administrative regulations, including licensing, code enforcement, and

---

[2] *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1916 (2020) (pre-election statements by President Trump, "remote in time and made in unrelated contexts" do not advance a plausible constitutional claim challenging government action).

zoning requirements. Asserting in conclusory fashion that Commissioner Carollo's actions conflict with the City of Miami Charter, the SAC cites no administrative,  judicial, or legal determination whatsoever that Commissioner Carollo violated municipal law, instead leaving it to this federal court to engage in purely local decision-making when the plaintiffs initially presented this very matter to the Miami-Dade Commission on Ethics and Public Trust, but then abandoned that litigation in favor of bringing their related claims to federal court (DE125, ¶¶165-175).[3]

Plaintiffs' construction of the Charter has no validity and is contrary to its actual implementation. The City of Miami Charter, Part 1.A § 4(d), gives commissioners wide authority and discretion when inquiring into matters of public concern. The Magistrate Judge acknowledged that the power of municipal commissioners to make inquiries consistent with their municipal power is within a commissioner's discretionary authority. (DE99, p. 21). Even the plaintiffs' allegations of a "bogus permitting citation" and arbitrary enforcement (DE125, ¶50) do not provide factual support for any violation of municipal law giving rise to a federal civil rights violation. Importantly, the SAC admits in ¶ 199 that Commissioner Carollo proceeded in compliance with the Charter by contacting the City Manager about neighborhood complaints and parking violations.

**B.     Alleged Retaliation by Commissioner Carollo Against Plaintiffs and Tenants.**

Plaintiffs' allegations of retaliation and harassment by Commissioner Carollo misdirect the Court by overlooking their own violations of the municipal code that are appropriately enforced.

---

[3] This court should not entertain the plaintiffs' strategic decision to present an unsettled question of municipal law for federal court review. As the court explained in *Palmer Trinity Private Sch. v. Vill. of Palmetto Bay*, 802 F. Supp. 2d 1322, 1325 (S.D. Fla. 2011) (King, J.), federal courts ordinarily give "scrupulous regard for the rightful independence of the state governments and for the smooth working of the federal judiciary" in declining to rule on state law matters when a state resolution is readily available. Plaintiffs' decision to engineer the avoidance of a state resolution of the underlying Charter review interpretation undermines the validity of its conclusion as to the scope of the Charter provision. *See Moheb, Inc. v. City of Miami*, 756 F.Supp. 2d 1370, 1372-73 (S.D. Fla. 2010) (Gold, J.) (application of *Pullman* abstention doctrine).

The SAC cries out against City enforcement of its laws and claims without a factual showing that the plaintiffs were not engaged in conduct that is rightfully the subject of municipal enforcement. The SAC does not identify a single administrative, municipal, or judicial finding of improper action by the City or Commissioner Carollo, or of allowable conduct by the plaintiffs and their businesses. The SAC does not point to even one municipal citation or investigation that has been reversed or overruled by any governmental ruling. To the contrary, the absence of any showing confirms that the City's (and Commissioner Carollo's) actions are entirely proper and consistent with the public interest. Exhibit A as an attachment to the SAC contains abundant facts documenting that the City of Miami investigations were fact-based and reasonably undertaken.

The SAC's description of the allegedly retaliatory acts does not show a First Amendment retaliation in the absence of impropriety by the City and Commissioner Carollo. Instead, the SAC leaves it to this court to conduct its own determination of the illegality of the plaintiffs' violations, all of which the SAC identifies as pending matters.

### 1.    *Plaintiffs' Christmas Party.*

For instance, plaintiffs assert that City Code Enforcement officials "shut down" their "annual office holiday party at the historic Tower Hotel." (DE125, ¶67). The allegations, however, concede that Code Enforcement conducted the inquiry based on "complaints originated from Carollo's office" and not by reason of any specific "order" from Commissioner Carollo (DE125, ¶88). Plainly, City Code Enforcement is entirely permitted to investigate and enforce its Code provisions, no matter the source of the complaint.

### 2.    *Alleged Retaliation Against Barlington Group and Sanguich.*

The claim of retaliation against "Sanguich" does not raise a claim that can be pursued by the plaintiffs, who concede in SAC ¶100 that Barlington Group, LLC is a separate entity and

Sanguich is an independent company owned, operated, and controlled by others.[4] The use of "shipping containers" is, as the SAC asserts, governed by the City Code, with no determination having been made that their use was proper (SAC ¶104 n.16). To the contrary, the Report of Investigation (Exhibit A) underscores that the use was a violation of the Code.

### 3.    Alleged Retaliation Against Union Beer.

Similarly, the claims raised on behalf of Union Beer (SAC ¶¶113-119) arise from an investigation conducted by Code Enforcement, not Commissioner Carollo. The business, separately owned and operated (SAC ¶114), was not shut down. Plaintiffs' damages of "mental anguish and emotional distress" fails to state any federal violation that the plaintiffs have a right to assert (SAC ¶119). Nor can the plaintiffs' assert a violation on behalf of this non-party.

### 4.    Alleged Retaliation Against Valet Operations.

Plaintiffs attempt to claim a civil rights violation on behalf of the separately owned and operated valet service (SAC ¶¶120-131) arising from a Miami Parking Authority investigation. This does not give rise to a retaliation claim for which the plaintiffs can allege "mental anguish and emotional distress" (SAC ¶131). Consistent with his duties to serve the public interest, Commissioner Carollo is entirely authorized to make the inquiries asserted in the SAC.

### 5.    Retaliatory Actions at the Gay 8 Festival.

Plaintiffs take aim at Commissioner Carollo's presence at the Gay 8 Festival, a public event in his district (SAC ¶¶ 132-144) that is neither owned nor controlled by the plaintiffs and for which the plaintiffs have no standing to complain. Importantly, at issue here are potential health and safety concerns investigated "by the Fire Department, the Police Department, the Special Events

---

[4] Plaintiffs assert they received an assignment of all claims from the owners (DE125, ¶111), but attach no assignment or document establishing their ownership of any non-party claims. The failure to attach the purported assignment precludes their standing to assert the interests of these non-parties. *See Progressive Express Ins. Co. v. McGrath Cmty. Chiropractic*, 913 So. 2d 1281, 1285 (Fla. 2d DCA 2005).

Department and Code Enforcement …" (SAC ¶134). The inspected businesses "passed the surprise inspection" according to SAC ¶139, and no enforcement action occurred. The damages of "mental anguish and emotional distress" because others were inspected for compliance with health and safety regulations do not make out a federal civil rights claim.

### C.     Code Enforcement Targeting of Other Properties.

The SAC seeks to hold Commissioner Carollo accountable for targeting other properties identified during a "ride along" or "park and walk" by Commissioner Carollo and City officials (SAC ¶¶145-164). Key to these allegations is that the SAC concedes Commissioner Carollo "asked if he could ride with him in the Code Enforcement vehicle," and *never ordered* any subordinate to take action whatsoever (SAC ¶148-149). Similarly, "Carollo arranged for a 'park and walk' with numerous City employees" in his district (SAC ¶157), with the SAC offering no allegation that he "ordered" any City employee to do anything or take any action. Plaintiffs' disagreement with the ability of a district commissioner to accompany City staff during a community survey of the neighborhood does not raise any potential federal civil rights claim, no matter what obvious violation of municipal code provisions are encountered.

### D.     The Ethics Complaint Undermines the Validity of the SAC by Demonstrating the Implausibility of the First Amendment Retaliation Claim.

Plaintiffs' withdrawn "ethics complaint" does not advance their civil rights claim, especially the speculative and conclusory assertion of "both ethics and possible criminal complaints" that have never been lodged or found to exist (SAC ¶173). The ensuing Ethics Commission Investigative Report attached to the SAC as Exhibit A undermines and discredits the bulk of the SAC's allegations, making the SAC entirely implausible. The Eleventh Circuit decision in *Gill v. Judd*, 941 F.3d 504, 512 (11th Cir. 2019), is controlling on this point. The *Gill* court held that once an attachment is appended to a complaint, its averments must be accepted as true unless the plaintiff identifies with specificity those portions of the attachment that are untrue. Thus,

8

pursuant to the *Gill* precedent, allegations in an attachment are presumed true unless the complaint specifically denies facts with precision, something entirely omitted from the SAC. The SAC does not contest the factual accuracy of the Investigative Report, obligating this Court to conclude, as did the Report, that the plaintiffs' conduct was in fact unlawful and appropriately the subject of City investigations, thus rendering First Amendment retaliation claims implausible.

The Investigative Report confirms that plaintiff Fuller denied actively supporting any District 3 candidate (DE125-1, p. 9). Fuller admitted he was unaware of the Leon rally occurring on his property, and once he learned of it, "he also asked to shut it down." (DE125, p. 9). According to Fuller, "we didn't want to choose sides." (DE125-1, p. 9). These admissions, taken as true, obliterate the accusation of official retaliation for political expression.

Significantly, because the plaintiffs conceded ownership of approximately 20 properties in Little Havana in the Investigative Report (DE125-1, p. 9), the likelihood of having multiple, legitimate code compliance issues is significantly enhanced given the number of properties owned in such a small area. The Investigative Report  demonstrates that despite the SAC's assertions to the contrary, the City  routed the code violation complaints through the City Manager's office and administrators were not pressured by Commissioner Carollo to target the plaintiffs' properties. For example, Commissioner Carollo directed concerns about the valet company to the Executive Director of the Miami Parking Authority, resulting in an administrative determination the Code concerns were legitimate because the valet was using an unauthorized lot to park cars (DE125-1, p. 17). The Miami Parking Authority is empowered to enforce the Code in its capacity as an independent City agency. *See* City of Miami Code of Ordinances § 23. SAC ¶ 199 adds that Commissioner Carollo contacted the City Manager about parking issues. In summary, the parking valet investigation was done properly and with a valid public purpose.

9

Code Compliance Inspector Morua confirmed she ticketed the Christmas Party for violations independent of involvement by Commissioner Carollo (DE125-1, p. 18). The Sanguich inspections, directed by a Compliance supervisor (DE125-1, p. 19), confirmed the business was "not operating legally" out of the shipping container (DE125-1, p. 20). At the Gay 8 Festival, "that sandwich place was a nightmare" and "they were not to open" by inspectors (DE125-1, p. 20).

 The Investigative Report details that former Assistant City Manager Alberto Parjus, discussed in SAC ¶¶83-89, 106, 141, was *not involved* in responding to the Leon rally or directing code enforcement officers to take any action (DE125-1, p. 19). Parjus did not allow selective code enforcement (DE125-1, p. 19). He received calls from City Manager Alfonso regarding noise violations at Ball & Chain and contacted the then-Director of Code Compliance to dispatch a code enforcement officer, all in compliance with City practices (DE125-1, p. 19). Ride-alongs commonly occur and are approved by the City Manager (DE125-1, p. 21). A Task Force conducts unannounced inspections on a regular basis (DE125-1, p. 21), and Commissioner Carollo's "park and walk" was implemented by Acting Code Enforcement Director Bernat (DE125-1, p. 22). The Investigative Report confirmed that Director Bernat did not believe Commissioner Carollo gave him direct orders and never directed him to do anything (DE125-1, p. 23).

The Investigative Report additionally confirmed that City Manager Emilio Gonzalez sent a March 16, 2018 email to all City employees indicating that pursuant to the Charter, all communications from elected officials or their respective staff are properly routed to the City Manager's Office (DE125-1, p. 37), thus contradicting the SAC's speculative and false assertion that code violations were enforced by order of Commissioner Carollo.

In light of the detailed facts in the Investigative Report, the SAC is implausible on its face.

### E.    Targeting of Calle Ocho Marketplace.

Plaintiffs do not own the Calle Ocho Marketplace, but nonetheless complain about a City-

issued Emergency Motion for Injunctive Relief to remove the plaintiffs' kiosks from an open-air lot not owned by the plaintiffs (SAC ¶181). This City-initiated litigation, not involving Commissioner Carollo according to the SAC, was handled by the City Attorney in furtherance of the City Attorney's municipal authority to enforce the law. Plaintiffs' claim of "mental anguish and emotional distress" are speculative and do not result from any conduct by Commissioner Carollo. The plaintiffs, like all businesses, are subject to legitimate municipal enforcement efforts.[5]

### F.      Retaliation for Use of 7th Street Parking Lot.

Regarding the complaint about retaliatory parking enforcement on the 7th Street lot (SAC ¶191), the allegations do not involve Commissioner Carollo but emanate from City Code Enforcement investigations of noise violations. The plaintiffs' lot was issued a citation for violating parking regulations (SAC ¶204). Whether "obviously" manufactured by Commissioner Carollo is neither a factual allegation nor supportive of any civil rights claim, since violations of the City Code are and should be the subject of municipal enforcement.

### G.      Commissioner Carollo Allegedly "Lurking" Behind Ball & Chain.

Commissioner Carollo's presence on public property within his Commission District is neither actionable nor improper. No part of Commissioner Carollo taking photographs or associating with private citizens or City personnel in the process supports a civil rights claim (SAC ¶¶208-211). Commissioner Carollo is entitled to exercise his discretionary authority to engage in fact-finding for the purpose of protecting the quality of life for his constituent residents and businesses. Finding fault with Commissioner Carollo's activism is misplaced.

### H.      Alleged Retaliation Against Viernes Culturales.

In alleging retaliation against Viernes Culturales, an independent institution whose

---

[5] "No man in this country is so high that he is above the law." *Butz v. Economou*, 438 U.S. 478, 506, 98 S. Ct. 2894, 2910 (1978).

continued operation is dependent on a City permit (SAC ¶238), the plaintiffs complain that the festival's use of public space cannot be decided by the City, including when the public plaza is closed for maintenance and repair (SAC ¶220). But plaintiffs neither own nor manage Viernes Culturales, an independent organization that is not a party to this lawsuit.

I.      **Commissioner Carollo's Alleged Defamation.**

In support of their civil rights claim, the plaintiffs contend they were defamed by Commissioner Carollo in his capacity as a City Commissioner (SAC ¶¶225-236), notwithstanding that defamation is a state law tort not governed by the civil rights statute. *See Emory v. Peeler*, 756 F.2d 1547, 1554 (11th Cir. 1985) (a claim of defamatory damage to reputation does not state a protected liberty interest). Defamation is not a constitutional deprivation. *See Siegert v. Gilley*, 500 U.S. 226, 111 S. Ct. 1789 (1991) (defamation by government actor that causes injury to professional reputation does not violate due process); *Von Stein v. Brescher*, 904 F.2d 572, 580-81, 584 (11th Cir. 1990) (police officer who made a defamatory statements to media did not result in federal claim because statements did not extinguish or significantly alter any guaranteed right); *Fletcher v. Miller*, 2016 U.S. Dist. Lexis 155598, *16 (S.D. Fla. 2016) (White, Magistrate J.).

J.      **Official Action at Valentine's Day Commission Meeting.**

The SAC asserts that official Commission action at the February 14, 2019 City Commission meeting constitutes a basis for a First Amendment retaliation claim (SAC ¶¶255-268), notwithstanding that any official conduct is absolutely immunized from litigation. Although the plaintiffs assert the Commission targeted their properties, the complaint concedes the City Attorney explained that City administrators were engaged in a task force review of "all city records for multiple properties" of which only seven (7) involved the plaintiffs' properties or were "associated" with the plaintiffs (SAC ¶264). The conduct at issue, moreover, included the City Chief of Police and Deputy City Manager for which the plaintiffs are attempting to hold

Commissioner Carollo responsible. This is a legitimate and protected exercise of municipal authority proving that Commissioner Carollo's fact-finding in his district was a necessary component of his legislative function since it formed the legislative discussion at the meeting.

### K.    First Amendment Retaliation, Not Code Violations.

To further impugn Commissioner Carollo's reputation, plaintiffs resort to a series of spurious assertions that accuse Commissioner Carollo of personal Code Enforcement violations that are proceeding through the official City administrative process (SAC ¶¶269-274). None of these allegations violations involve the plaintiffs, although the plaintiffs claim responsibility for publicizing the violations (SAC ¶271), but Commissioner Carollo is not alleged to have acted against the plaintiffs as a result.

The SAC also asserts  the City intended to buy properties that plaintiffs were interested in purchasing, thus "preventing" plaintiffs from purchasing additional properties (SAC 275-282) and "harming plaintiffs' "overall business strategy." This contention that the City is utilizing its financial resources to secure real estate for the City's benefit can hardly state a civil rights violation when it is not directed at the plaintiffs' property.

## IV.    GROUNDS FOR DISMISSAL.

### A.    Plaintiffs Do Not State a Plausible Claim for a Section 1983 Violation.

To state a retaliation claim, the plaintiffs must establish the existence of constitutionally protected speech, that the defendant's conduct adversely affected the protected speech, and the existence of a causal connection between the retaliatory actions and the adverse effect on speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Here, the SAC and its attachments do not state a plausible First Amendment retaliation claim when the Investigative Report is considered. Specifically, the allegations do not show that Commissioner Carollo engaged in retaliatory conduct through selective enforcement. The detailed facts presented in the Investigative

Report demonstrate that the plaintiffs did not engage in protected First Amendment speech, that the investigations of their properties by City officials were lawful and resulted from reasonable enforcement of the City Code, that the Commissioner did not act in derogation of his municipal authority, and that the plaintiffs actually committed a host of code enforcement violations.

**B.      Plaintiffs Lack Standing to Assert Claims on Behalf of Non-Parties.**

Despite being cautioned by the Magistrate Judge in the Report and Recommendation, plaintiffs continue to assert claims of non-parties including Viernes Culturales, Sanguich, Calle Ocho Marketplace, and Union Beer. The injuries to these entities do not satisfy Article III standing because plaintiffs' assertions of mental anguish and emotional distress (SAC ¶¶283-298) are neither concrete and particularized nor traceable to the defendant's conduct. *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see Kowalski v. Tesmer*, 543 U.S. 125, 128–29 (2004) ("third-party standing" asks "whether [plaintiffs should] have standing to raise the rights of others."). Therefore, the claims arising from conduct directed at others must be dismissed with prejudice.

**C.      Plaintiffs' City Charter Violations Do Not State a Civil Rights Claim.**

Plaintiffs seek damages and injunctive relief arising from Commissioner Carollo's alleged violations of the City Charter (SAC ¶¶318, 320-321), even though the Investigative Report attached to the complaint clarifies that Commissioner Carollo did not violate the Charter. More importantly, the assertion that Commissioner Carollo violated municipal law does not give rise to a violation of a federal civil right. *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002).

**D.      Commissioner Carollo, in his Capacity as a Municipal Elected Official, Is Entitled to Qualified Immunity.**

The doctrine of qualified immunity compels dismissal of the SAC with prejudice. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

14

which a reasonable person would have known." *Stanton v. Sims*, 571 U.S. 3, 5-6, 134 S. Ct. 3, 4-5 (2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009)). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Scott v. Harris*, 550 U.S. 372, 376, 127 S. Ct. 1769, 1773-74 (2007). The immunity recognizes the "strong public interest in protecting public officials from the costs associated with the defense of damages actions." *Crawford-El v. Britton*, 523 U.S. 574, 590, 118 S. Ct. 1584, 1592-93 (1998). These costs, as explained in *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S. Ct. 2727, 2736 (1982), can be insurmountable, with life and career consequences. *See Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949), *cert. denied*, 339 U.S. 949, 70 S. Ct. 803 (1950). Qualified immunity "is intended to 'allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Brown v. City of Huntsville*, 608 F.3d 724, 733 (11th Cir. 2010) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)); *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010).

For qualified immunity to apply, the public official must first establish that actions were taken within the allowable scope of discretionary authority. *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting *Lumley v. City of Dade Cty., Fla.*, 327 F.3d 1186, 1194 (11th Cir. 2003)). "After the defendant has established that he was acting in a discretionary capacity, 'the burden shifts to the plaintiff to show that qualified immunity is not appropriate.'" *Brooks v. Powell*, 800 F.3d 1295, 1306 (11th Cir. 2015) (quoting *Lee*, 284 F.3d at 1194). "To meet this burden, a plaintiff must establish that (1) his complaint pleads a plausible claim that the defendant violated his federal rights (the 'merits' prong), and that (2) precedent in this Circuit at

the time of the alleged violation 'clearly established' those rights (the 'immunity' prong)." *Wall-DeSousa v. Florida Dep't of Highway Safety and Motor Vehicles*, 691 F. App'x 584, 589 (11th Cir. 2017); *Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016). A complaint should be dismissed for failing to allege a violation of a clearly established right. *Williams v. Bd. of Regents of the Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007).

The SAC demonstrates that Commissioner Carollo's actions came well within the allowable duties and functions of a City policymaker, particularly when measured with the fact determinations in the Investigative Report. Commissioner Carollo (1) acted in his discretionary role as Commissioner, (2) was not on notice that his conduct violated a "clearly established right," and (3) the SAC does not state a plausible claim for First Amendment retaliation.

### 1.    Commissioner Carollo Was Acting in His Discretionary Role as Commissioner.

The SAC does not alter the Magistrate Judge's earlier conclusion that "in his ardent reporting and investigation of potential code violations as alleged, [Commissioner] Carollo was acting within his discretionary authority." (DE99, p. 21). All his actions came within the broad authority of a City of Miami commissioner empowered to conduct fact-finding, pursue citizen inquiries and complaints, report life, safety, and health issues to City administration, and overall serve the interests of the public in making his community and district a better place. "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). This "inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act." *Id*. at 1282. "Instead, a court must ask whether the act complained of, *if done for a proper purpose*, would be within, or reasonably related to, the outer perimeter of an official's

16

discretionary duties." *Id*. (emphasis added).

City Commissioners, as explained in the Investigative Report, have wide discretion when inquiring into matters of public concern. Part 1.A § 4(d), City of Miami Charter. The district court already acknowledged the authority of commissioners to make such inquiries (DE99, p. 21); the conduct attributable to Commissioner Carollo is well within that allowable authority empowering commissioners to exercise all corporate and political power conferred upon the City by the Florida Constitution, Florida laws, and the Miami-Dade County Home Rule Charter. *See Turk v. Richard*, 47 So. 2d 543, 544 (Fla. 1950) (recognizing authority of legislative members to act in matters affecting the public interest in addition to the official decisions of the legislature).

While the Commission itself acts through the adoption of ordinances and regulations, *see Alsop v. Pierce*, 19 So. 2d 799 (Fla. 1944), commissioners have the power to pursue inquiries that inform them as to their legislative decisions. As the City's "governing body," the Commission, through its commissioners, has the ultimate power to determine the City's policies and control its activities, all of which may be exercised as prescribed in the Charter and City Code. *See Turk v. Richard*, 47 So. 2d at 544. The accusations leveled against Commissioner Carollo are representative of what local officials are and must be empowered to do when making "inquiry" into matters of concern. Dealing with the City Manager, staff, residents, and businesses about noise complaints, parking violations, code enforcement, and the plaintiffs' questionable activities fall "within, or [are] reasonably related to, the outer perimeter of" Commissioner Carollo's authority to make inquiry into and investigate matters of public concern. *Harbert Int'l*, 157 F.3d at 1282. Meetings and discussions with City officials, staff, and subordinates are the very essence of the discretionary function of a commissioner. *See O'Boyle v. Sweetapple*, No. 9:14-CV-81250-KAM, 2015 U.S. Dist. Lexis 192278, at *12, 2015 WL 13574304, at *12-13 (S.D. Fla. June 4, 2015)

17

(allegations that defendants "held 'meetings' and had 'conversations' in which they 'devised their plan to defame, harass, intimidate, and antagonize Plaintiff' was within their discretionary functions"). Commissioner Carollo's "purpose" when acting within his discretionary authority is immaterial. *Harbert Int'l*, 157 F.3d at 1282 ("Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity should be determined by the relation of the [injury] complained of to the duties entrusted to the officer.").

The conduct described in the SAC and attachments is within a commissioner's authority and does not state a plausible claim of First Amendment retaliation as required by *Ashcroft v. Iqbal*, 556 U.S. at 677-678, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010). When the bulk of the conduct at issue was done by City administrative and enforcement staff who have the authority and duty to investigate and enforce Code violations, Commissioner Carollo's alleged role in conducting his factual inquiry and providing information, but not ordering staff, does not state a plausible claim for a First Amendment retaliation, especially since the SAC and its attachments demonstrate the existence of genuine code violations (DE125-1). Plaintiffs' conclusory allegations suggesting otherwise do not buttress the implausible. *See Berry v. Coleman*, 172 Fed. App'x 929 (11th Cir. 2006) ("On a motion to dismiss, '[c]onclusory allegations and unwarranted deductions of fact are not admitted as true,' particularly "when the conclusory allegations contradict the other facts alleged in the complaint").

### 2. Commissioner Carollo Did Not Violate a Clearly Established Right.

"[T]o survive a defense of qualified immunity, it 'must be obvious to every reasonable

person in [the defendant's] place that [the defendant's conduct] would violate federal law."' *Building Empowerment by Stopping Trafficking, Inc. v. Jacobo*, No. 12-23925-CIV, 2013 U.S. Dist. LEXIS 139336, at *4, 2013 WL 5435729, at *4 (S.D. Fla. Sep. 27, 2013) (citing *Beauregard v. Olson*, 84 F.3d 1402, 1404 (11th Cir. 1996)). For First Amendment retaliation claims, a defendant "will only rarely be on notice that his actions are unlawful" because it requires balancing "legal determinations that are intensely fact-specific and do not lend themselves to clear, bright-line rules." *Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000). "Likewise, in determining contested issues of causation, the defendant is entitled to qualified immunity [w]here the facts assumed for summary judgment purposes . . . show mixed motives (lawful and unlawful motivations)." *Brannon v. Finkelstein*, 754 F.3d 1269, 1278-79 (11th Cir. 2014).

The SAC does not establish that Commissioner Carollo's conduct unlawfully retaliated against the plaintiffs for their protected exercise of free speech. It is not enough for the complaint to claim a retaliatory violation. Instead, the right must be clearly established in a "particularized" sense, so that "the contours of the right" are clear enough for any reasonable official in the defendant's position to know that what the official is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). Courts must "look for a case based on materially similar facts." *Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010).

Plaintiffs cite no controlling decision of the U.S. Supreme Court, the Eleventh Circuit, or the Florida Supreme Court containing facts similar to their allegations. *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1977) ("the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."). The plaintiffs' cases cited to the Eleventh Circuit on appeal in Case No. 19-12439-CC are not factually

19

or legally similar, and do not stand as precedent for their claim.

*Bennett v. Hendrix*, 423 F.3d 1247, 1248-1249 (11th Cir. 2005), for instance, involved allegations of police harassment in retaliation for supporting an initiative opposed by the sheriff. *Bailey v. Wheeler*, 843 F.3d 473 (11th Cir. 2016), is another police misconduct case involving a claimed abuse of authority (issuance of a BOLO) in retaliation for filing a complaint. These cases do not involve an official's legislative and policymaking function and cannot be analogized to the scope of allowable conduct by an elected official.

The plaintiffs' reference to *Espanola Way v. Meyerson*, 690 F.2d 827 (11th Cir. 1982), is far from similar. There, during the Mariel refugee crisis, Miami Beach Commissioners formed a task force to drive hotels catering to Cuban refugees out of business. The ensuing civil rights complaint raised facts alleging *the taking of property without due process of law*. Those plaintiffs did not assert a First Amendment retaliation, as is present in the SAC. The Eleventh Circuit concluded that the factual record needed to be better developed before ruling on qualified immunity because, among other reasons, "a conscious attempt to deprive property owners of property without due process of law clearly contravenes established law." *Id.* at 830.

Contrast *Meyerson* with this case, in which the plaintiffs' claim is limited to First Amendment retaliation. The SAC does not allege the Commission acted as a public body to deprive property owners of due process. Nor does *Meyerson* characterize legislative inquiry as beyond the authority of elected officials. In short, *Meyerson* does not put Commissioner Carollo on notice that his actions were contrary to law and known to be so.

The SAC does not give rise to an actionable First Amendment retaliation claim to overcome the qualified immunity defense. No reasonable elected official would be on notice that acting within given authority could subject the official to litigation for violating clearly established

law. Just as in *Building Empowerment by Stopping Trafficking v. Jacobo*, *supra*, 2013 WL 5435729, at *3-4, in which the plaintiff failed to identify a single fact-specific case to put the defendants on notice that sending emails challenging the plaintiff's point  constituted a violation of a federal right, the SAC here does not provide any foundation on which to conclude that Commissioner Carollo's efforts as a  legislator to promote effective enforcement of the City's zoning codes, permit requirements, parking and noise ordinances, and other quality of life conduct occurring would chill a person of ordinary firmness. To the contrary, business and residents expect a municipality to enforce compliance with local laws.

> **3.**     ***Commissioner Carollo Was Not on Notice that His Actions Violated a Clearly Established Right.***

An objective analysis of the SAC provides no allowable basis for a reasonable public official to conclude the conduct violated well-established law. *Rigdon v. Georgia Bd. of Regents*, 2008 WL 11348453, at *6 (S.D. Ga. June 27, 2008) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2783 (1982) ("We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.")). As a matter of law for this "core qualified immunity analysis[,]" *Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996), the SAC offers no basis upon which to conclude Commissioner Carollo was on actual notice of a civil rights violation. Although it may be "well-settled that the government may not retaliate against its citizens for the expression of their First Amendment rights[,]" (DE99, p. 22), a legislator's action investigating legitimate violations of law is not suspect. In view of the conclusively clarifying Investigative Report, Commissioner Carollo's actions were not known to be a violation of clearly established law. Because the SAC does not counter Commissioner Carollo's showing that his conduct was within the scope and

furtherance of his discretionary authority, the SAC must be dismissed with prejudice.

> **E.**   **Commissioner Carollo Is Entitled to Legislative Immunity for Actions Taken in the Course of his Legislative Function.**

Legislative immunity is a form of absolute immunity protecting a legislator from having to answer for conduct in a civil lawsuit. *Mitchell v. Forsyth*, 472 U.S. 511, 525, 105 S. Ct. 2806, 2815 (1985); *see Harris v. Deveaux*, 780 F.2d 911, 913 (11th Cir. 1986) ("Absolute immunity is meant to protect not only from liability, but from going to trial at all."). Legislative immunity protects lawmakers from suit for their legislative acts. *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005). The absolute immunity protecting legislative functions is not limited to merely the passing of bills and ordinances but also encompasses "conduct in the furtherance of their duties." *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1193 (5th Cir. 1981), *cert. denied*, 455 U.S. 907, 102 S. Ct. 1251 (1982). "The absolute immunity of legislators, in their legislative functions, ... now is well settled." *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S. Ct. 2727, 2732 (1982) (citations omitted); *see Tower v. Glover*, 467 U.S. 914, 920, 104 S. Ct. 2820, 2824 (1984) ("The Court has recognized absolute §1983 immunity for legislators acting within their legislative roles...."). The Supreme Court extended absolute immunity to state and local legislators. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S. Ct. 1171 (1979); *Tenney v. Brandhove*, 341 U.S. 367, 71 S. Ct. 783 (1951). "[L]ocal legislators are entitled to legislative immunity in this Circuit." *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.), *cert. denied*, 502 U.S. 810, 112 S. Ct. 55 (1991); *Ellis v. Coffee Cnty. Bd. of Registrars*, 981 F.2d 1185, 1189 (11th Cir. 1993).

"[O]fficials seeking absolute immunity must show that such immunity is justified for the governmental function at issue." *Hafer v. Melo*, 502 U.S. 21, 27, 112 S. Ct. 358, 363 (1991) (citation omitted). The Eleventh Circuit "has decided that 'the absolute immunity inquiry' is

determining whether the local legislators were engaging in legislative activity in the particular case under consideration." *Brown v. Crawford County*, 960 F.2d 1002, 1011 (11th Cir. 1992) (quoting *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir. 1982), *cert. denied*, 460 U.S. 1039, 103 S. Ct. 1431 (1983)). And "subjective motivations are irrelevant to absolute legislative immunity." *Ellis v. Coffee Cnty. Bd. of Registrars*, 981 F.2d at 1192.

Because the SAC objectively denotes "conduct in furtherance of [Commissioner Carollo's] duties" involving the legislative function, he is protected by legislative immunity. *Hernandez v. City of Lafayette*, 643 F.2d at 1193. His legislatively immunized conduct encompasses the introduction of legislation and all commentary made during a City Commission meeting (SAC ¶¶255-264), as well as the entirety of Commissioner Carollo's alleged district inquiries, fact-findings, and investigations as an extension of his policy-making function.

*O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1373 (S.D. Fla. 2016), is analogous to this case. There, the plaintiff claimed that an ordinance enacted to regulate where people may park their cars "violated his First Amendment rights because the motivation for its enactment was to suppress his" protected speech. *Id.* at 1373. The retaliation claims failed because an allegedly improper motivation for enacting an otherwise neutral ordinance is not First Amendment retaliation. *Id.* Similarly, in this case, the SAC describes actions in furtherance of Commissioner Carollo's discharge of his legislative obligations, including fact-finding, making inquiries, conducting district inspections, speaking out about the perceived violations of zoning and code enforcement ordinances, and voting on legislation viewed as retaliatory. These actions, all taken within the scope of his duties, were part and parcel of his legislative responsibilities as a commissioner. Those duties are not limited to merely voting on legislation but also encompass conduct intended to further his legislative responsibilities. Because an objective reading of the

23

identified conduct is consistent with the "legitimate sphere of legislative activity[,]" absolute legislative immunity applies here. *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503, 95 S. Ct. 1813, 1821 (1975).

The Eleventh Circuit "has construed legislative acts as 'an integral part of the deliberative and communicative processes' regarding the consideration and action of a legislative body for matters statutorily placed within its jurisdiction." *Ellis v. Coffee Cnty. Bd. of Registrars*, 981 F.2d at 1192 (quoting *Gravel v. United States*, 408 U.S. 606, 625, 92 S. Ct. 2614, 2627 (1972)). As the Supreme Court explained, "immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227, 108 S. Ct. 538, 544 (1988); *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992) ("It is the nature of the act which determines whether legislative immunity shields the individual from suit."). The nature of the challenged conduct is objectively consistent with Commissioner Carollo's exercise of his legislative mandate such that Commissioner Carollo is protected from suit by absolute legislative immunity. Accordingly, the complaint based on conduct in furtherance of the legislative prerogative must be dismissed with prejudice.

## V.    MOTION TO STRIKE.

In accordance with Rule 12(f) of the Federal Rules of Civil Procedure, Commissioner Carollo seeks the striking of ¶¶269-274 that raise allegations completely beyond the limited scope of the order allowing the plaintiffs to replead the complaint to specifically identify the facts underlying their retaliation claims and damages (DE99, p. 7-9). The inclusion of allegations that Commissioner Carollo personally violated provisions of the City Code involving his own residence at unspecified time periods that have nothing to do with retaliation  against the plaintiffs. They are "immaterial, impertinent, or scandalous matter" designed to embarrass and damage Commissioner Carollo individually without offering a factual or legal connection to the retaliation.

Striking these paragraphs pursuant to Rule 12(f) is proper here since the allegations have no possible relation to the controversy and are merely inserted to embarrass and prejudice Commissioner Carollo.

The purpose of a motion to strike is "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). As did District Judge Mendoza when striking portions of an amended complaint that went well beyond the limits of the order allowing repleading, this Court should strike the plainly immaterial allegations that have no conceivable connection to the plaintiffs' federal claim. *Hill v. Allianz Life Ins. Co.*, 2015 U.S. Dist. Lexis 198933, *8-9, 2015 WL 12838838 (M.D. Fla. June 17, 2015) (Mendoza, J.) ("[I]t is mistaken, if not misleading, for Plaintiff[] to interpret the Court's ruling as [a] carte blanche grant of authority to reformulate the proposed First Amended Civil Complaint to not only add Lifestyles, but to add additional legal theories and claims for relief.") (citing *Helms v. Nationwide Ins. Co. of Am.*, 280 F.R.D. 354, 359, 360-62 (S.D. Ohio 2012) (striking amended complaint containing new allegations and claims exceeding the grant of leave to amend)).

## CONCLUSION

Commissioner Carollo is entitled to the protections of qualified and legislative immunity at the earliest stage of the case. Dismissal for reasons of immunity should be ordered because a fair and plausible reading of the SAC establishes that Commissioner Carollo acted within the discretionary scope and authority of his responsibilities. His alleged conduct did not violate clearly established laws. His actions as a legislator were within the legitimate sphere of his policy-making authorization. This Court should dismiss the SAC with prejudice for reasons of qualified and legislative immunity, for lack of standing, and for failure to state a claim.

## **REQUEST FOR HEARING**

Defendant Commissioner Carollo seeks a hearing pursuant to Local Rule 7.1(b)(2) for one (1) hour. For the reasons in this motion, a hearing will allow the parties to present the complex issues raised in the motions and responses. The court will be able to seek input from the parties as to any concerns raised by the pleadings. The plaintiffs do not oppose a hearing.

## **CERTIFICATE OF COMPLIANCE**

In accordance with Local Rule 7.1, counsel confirms that the plaintiffs oppose this relief.

Respectfully submitted,

*S/ Thomas E. Scott*
**THOMAS E. SCOTT**
Florida Bar No. 149100
**COLE, SCOTT & KISSANE**
9150 S. Dadeland Blvd., Suite 1400
Miami, FL 33156
Tel: 305.350.5381
Fax: 305.373.2294
Thomas.scott@csklegal.com

*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**MICHAEL T. DAVIS**
Florida Bar No. 63374
**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2 St., Suite 3105
Miami, FL 33131-2154
Tel: 305.789.5989
Fax: 305.789.5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

**CERTIFICATE OF SERVICE**

I certify on November 10, 2020, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify this document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

By:      _S/ Benedict P. Kuehne_
         **BENEDICT P. KUEHNE**

27