## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No.: 1:18-cv-24190

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

      Plaintiffs,

  v.

JOE CAROLLO,

      Defendant.

_____/

## PLAINTIFFS' OPPOSITION TO DEFENDANT
## JOE CAROLLO'S MOTION TO DISMISS [DE 154]

**AXS LAW GROUP, PLLC**
2121 NW 2nd Avenue, Suite 201
Miami, FL 33127
Tel:  305.297.1878
Jeffrey W. Gutchess (FBN 702641)
jeff@axslawgroup.com
Rossana Arteaga-Gomez, Esq.
Florida Bar No. 0014932
rossana@axslawgroup.com
Joshua A. Shore, Esq.
Florida Bar No. 031894
josh@axslawgroup.com
eservice@axslawgroup.com


*Counsel for Plaintiffs*

**BACKGROUND**

As alleged in the complaint, Plaintiffs William O. Fuller and Martin Pinilla, II have been subjected to a vicious, three-year campaign of harassment at the hands of their City Commissioner, Defendant Joe Carollo, merely because they supported his opponent in a recent election. This Court "has already determined that Plaintiffs plausibly allege with supporting and detailed facts the three elements of a First Amendment retaliation claim," and already concluded that Carollo is not entitled to qualified immunity because "[i]t is well settled that the government may not retaliate against its citizens for the expression of their First Amendment rights." DE 99 at 22 (R&R) (citing cases); DE 118 (Order adopting R&R).

Although Carollo immediately appealed this Court's qualified immunity ruling, his arguments drew an extraordinary degree of skepticism from the Eleventh Circuit panel, which was supportive of this Court's Order, observing that "at least some of [Carollo's] actions" were "outside his discretionary authority" as required to trigger qualified immunity. *Fuller v. Carollo*, No. 19-12439, Sept. 22, 2020 Oral Arg. Recording ("**11th Cir. Oral Arg.**"), at 3:05. Indeed, Chief Judge Pryor remarked that this case "looks a lot like *Bennett v. Hendrix* to me." *Id*. at 11:16. *Bennett. v. Hendrix*, of course, is a seminal Eleventh Circuit case denying qualified immunity to government officials, based on facts that are materially identical to those at issue in this case.

Ultimately, however, the Eleventh Circuit concluded that it had "no choice but to" dismiss Carollo's "appeal for lack of jurisdiction," without reaching its merits, due to a procedural quirk. *Fuller v. Carollo*, 977 F.3d 1012, 1013 (11th Cir. 2020). Specifically, when this Court denied Carollo's motion to dismiss on qualified immunity grounds, it also granted Plaintiffs leave to amend their complaint to address other claims, issues, and parties, which meant that this Court's Order was not a "final order" for purposes of appeal. *See* DE 99.

Because Carollo acknowledges that none of the changes reflected in the amended complaint affect the qualified immunity analysis, Chief Judge Pryor foreshadowed the sensible course of the proceedings on remand. Chief Judge Pryor asked whether "the case is framed in such a way" that he could "reassert the defense of qualified immunity and have it denied again," and the appeal "would just be identical." Carollo's counsel responded: "Yes, that's what I'm saying to the court. . . . [T]he major emphasis on the amendment was on cleaning up the damages and things like that." 11th Cir. Oral Arg. at 29:44.

Thus, Carollo's core arguments relating to the adequacy of Plaintiffs' complaint and Carollo's entitlement to immunity have already been presented to numerous federal judges on this Court and the Eleventh Circuit without success. And none of Carollo's remaining arguments have any merit. Accordingly, Plaintiffs respectfully request that this Court follow the Eleventh Circuit's implicit guidance and once again deny Carollo's motion to dismiss, as it has already done before based on a materially identical complaint.

## DISCUSSION

This Court has already denied the primary arguments in Carollo's motion to dismiss – including the adequacy of Plaintiff's complaint and Carollo's entitlement to immunity – and Carollo does not suggest that there is any basis for reconsidering those rulings. Thus, Plaintiffs summarize and incorporate by reference the analysis that they set forth in the relevant briefs and hearings that already appear on this Court's docket. *See* DE 65; DE 102; DE 107; DE 112.

As Plaintiffs explained in those briefs and hearings, their complaint describes in detail how Carollo responded to their support of his political opponent by launching a barrage of retributory acts designed to chill their First Amendment rights, including, for example: (a) disrupting and shutting down various events hosted by or associated with Plaintiffs, *see* DE 125 at ¶¶ 35-54,

67-90, 176-90, 216-24; (b) orchestrating false complaints and code violations affecting Plaintiffs' tenants, businesses, and properties, *see id*. at ¶¶ 157-164, 191-207; (c) conducting bogus raids and other retaliatory actions to disrupt and shut down Plaintiffs' tenants, businesses and properties, *see id*. at ¶¶ 59-66, 91-131, 145-56, 255-68, 275-82; and (d) appearing on popular radio shows to defame Plaintiffs, their tenants, and their businesses. *See id*. at ¶¶ 225-236.

Responding to Carollo's improper use of City personnel and resources, Miami's Chief of Police, Jorge Colina, sent a letter to the City Manager to express his concern that Carollo's obsessive focus on perpetrating a perverse retaliation campaign against Plaintiffs "gives the impression that the city is selectively targeting [Plaintiffs] business for new investigations," and "may amount to an unsanctioned and unlawful exercise of powers beyond the limits of his [Carollo's] legislative power as a city commissioner to intentionally cause harm to [Plaintiffs]." DE 125 at ¶ 265. The letter concluded by opining that Carollo was advocating actions that "may be in violation of the code of ethics ordinance," and represent "selective enforcement against [Plaintiffs'] properties." *Id*. Or, as one City Commissioner succinctly stated in another context, Carollo was engaging the machinery of government "to 'f\*ck with [Plaintiffs].'" DE 125 at ¶ 223.

A. <u>**This Court Already Held that Plaintiffs' Complaint States a Claim**</u>

"[T]he Court has already determined that Plaintiffs plausibly allege with supporting and detailed facts the three elements of a First Amendment retaliation claim." *See* DE 99 at 22. Carollo admits, as he must, that Plaintiffs' operative complaint does not alter any of the allegations relevant to his argument, which has already been carefully considered and soundly rejected by this Court. *See* 11th Cir. Oral Arg. at 29:44 ("[T]he major emphasis on the amendment was on cleaning up the damages and things like that.").

It is almost too obvious to mention that the First Amendment prohibits government officials from retaliating against their opponents' supporters, *see Perry v. Sindermann*, 408 U.S. 593, 597 (1972), and that a private right of action for such retaliation exists under 42 U.S.C. § 1983 "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). Plaintiffs properly alleged that, as retribution for supporting his political opponent, Carollo sought to inhibit Plaintiffs' First Amendment rights, including by (a) lodging anonymous and false complaints against them; (b) directing government officials beyond their chain of command to conduct inspections and enforcement actions against them; (c) appearing on radio programs to make defamatory accusations against them; and (d) engaging in obstructive acts to cover up his misconduct. *See generally* DE 125.

Thus, as this Court already concluded, Plaintiffs have satisfied the three-pronged test necessary to state a plausible claim for relief under 42 U.S.C. § 1983. *First*, Carollo does "not challenge" the fact that Plaintiffs allege that they were engaged in "protected speech." DE 99 at 13. *Second*, "under the facts alleged" by Plaintiffs, "it is plausible that" Carollo's "retaliatory conduct . . . may discourage a person of ordinary firmness from exercising their First Amendment rights. *Id*. at 13-15. *Third*, "Plaintiffs plausibly allege a causal connection between the described retaliatory actions and the adverse effects on speech." *Id*. at 16-17.

Although Carollo attempts to revive his argument that the incomplete results of an investigative report render Plaintiffs' claims implausible, this Court already rejected that argument in express terms. As this Court observed, it is not required to "accept the hearsay statements and representations in the Investigative Report as true to affirmatively disprove the allegations in the . . . Complaint." DE 99 at 18 (citing, *inter alia*, *Bryant v. Miami-Dade Cty.*, No. 10-23768,

2011 WL 13223543, at *3 n.3 (S.D. Fla. Mar. 20, 2015); *Barron v. Snyder's-Lance, Inc.*, No. 13-62496, 2015 WL 1182066, at *4 (S.D. Fla. Mar. 20, 2015)); *accord F.D.I.C. v. Aultman*, 2013 WL 3357854, at *5 (M.D. Fla. July 3, 2013) ("Because the Defendants ask the Court to take judicial notice of the statements made in the criminal cases for the truth of the matters asserted therein, the Court will not take judicial notice of the statements").

This Court's holding is not only undoubtedly correct, but its reasoning is particularly compelling for two reasons. First, the partial findings in the investigative report *confirm* (rather than *refute*) Plaintiffs' allegation that Carollo did, in fact, "target" Plaintiffs' tenants to retaliate against Plaintiffs and chill the exercise of their First Amendment rights. *See, e.g.*, DE 125-1 at 13. Second, the investigative report does not reach all of the acts of retaliation alleged in the complaint, since it was based on an ethics complaint that was filed only three months into Carollo's term before it was ultimately withdrawn as "too narrowly drafted" after it became clear that Carollo intended to continue his harassment while the investigation was pending. *See* DE 125 at ¶¶ 171-173. Thus, even if the Court were to take judicial notice of the content of the investigative report, it would not provide a basis for dismissal. *See Asia Telco Techs. v. Brightstar Int'l Corp.*, 2015 WL 10853904, at *3 (S.D. Fla. Aug. 21, 2015) ("[T]he Court does not . . . resolve factual disputes at the motion to dismiss stage"). Indeed, it is well settled that the allegations in Plaintiffs' complaint would prevail over any perceived contradictions in the investigative report. *See Gomez v. Lozano,* 2010 WL 11505113, at *2 (S.D. Fla. Dec. 30, 2010) ("I cannot and will not consider" an "offense incident report" to resolve a motion to dismiss a Section 1983 claim to the extent that it "contradicts [Plaintiff's] allegations, which I must accept as true").

**B.**     __This Court Already Held that Carollo Is Not Entitled to Qualified Immunity__

Carollo also fails to provide any basis for this Court to reconsider its well-reasoned conclusion that Carollo is not entitled to qualified immunity. While this Court found that Carollo satisfied his "initial burden to establish that he was acting within the scope of his discretionary authority," it ultimately concluded that dismissal was not appropriate because his actions nevertheless violated Plaintiffs' "clearly established right" to "'exercise free speech without fear of retaliation by government officials.'" DE 99 at 22 (quoting *Kollin v. Dorsett*, 2016 WL 4385356, at \*4 (S.D. Fla. Apr. 14, 2016), and citing *Bennett v. Hendrix*, 423 F.3d 1247, 1256 (11th Cir. 2005); *Cuevas v. City of Sweetwater*, No. 15-22785-CIV, ECF No. 38 (S.D. Fla. Oct. 28, 2015)).

1.     *Carollo Exceeded His "Discretionary Authority"*

Plaintiffs respectfully disagree with this Court's finding that Carollo satisfied his initial burden of proof. While this Court agreed with Carollo's assertion that he satisfied his initial burden of proof because "reporting and investigat[ing] potential code violations" was a proper exercise of his discretionary authority, DE 99 at 21, that conclusion both conflicts with Eleventh Circuit precedent and overlooks the fact that Carollo's retaliation went beyond merely reporting and investigating potential code violations.

The Eleventh Circuit has held that an official acting in violation of the state law exceeds his discretionary authority, *see Estate of Cummings v. Davenport*, 2018 WL 4705723, at \*4 (11th Cir. Oct. 2, 2018), and that "an undertaking of repeated harassment is not within the scope of the Commissioners' discretionary authority." *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 830 (11th Cir. 1982). That is precisely what Plaintiffs allege in their complaint, and "[i]t is not appropriate at the motion to dismiss stage for [this Court] to interpret the Municipal Charter's ambiguous job description" for purposes of deciding the exact contours of Carollo's

responsibilities as Commissioner. *Carollo v. Boria*, 833 F.3d 1322, 1330 (11th Cir. 2016); *St. George v. Pinellas County*, 285 F.3d 1334, 1338 (11th Cir. 2002) (requiring the complaint to be construed in "favor of the plaintiffs").

There is no dispute that the City of Miami Charter delineates the outer bounds of Carollo's discretionary authority as a legislator, including a prohibition against giving orders to executive branch agents, the violation of which can give rise to criminal sanctions:

> Except for the purpose of inquiry and as may be necessary as provided in section 14, the mayor, the city commission, any committees and members thereof shall deal with the administrative service solely through the city manager, and neither the mayor nor the city commission, nor any committees nor members thereof shall give orders to any of the subordinates of the city manager, city attorney, city clerk and independent auditor general, either publicly or privately.
>
> Any such dictation, prevention, orders or other interference or violation of this section on the part of the mayor or a member of the city commission or committees shall be deemed to be violation of the Charter, and upon conviction before a court of competent jurisdiction any individual so convicted shall be subject to a fine not exceeding five hundred dollars ($500.00) or imprisonment for a term of not exceeding sixty days or both, and in the discretion of the court shall forfeit his or her office. Any willful violation of the provisions to this section by the mayor or any city commissioner shall be grounds for his or her removal from office by an action brought in the Circuit Court by the state attorney of this county.

City of Miami Charter, Part I.A § 4(d).

As the Eleventh Circuit observed during oral arguments, properly construing the allegations in the light most favorable to Plaintiffs reflects that Carollo's actions exceeded his discretionary authority as it is defined in the City Charter. During oral argument, the Eleventh Circuit observed that "[i]t does seem . . . that at least some of [Carollo's] actions . . . would have been outside his discretionary authority." After all, "[a]n inquiry is eliciting information, asking questions," but "not directing some subordinate to go a particular place and do something," as Carollo is alleged to have done. In short, Plaintiffs alleged that Carollo was not engaged in a proper *legislative* inquiry when he commandeered *executive* officials outside his chain of command and

directly ordered them, for example, to: (a) conduct bogus "raids" on Plaintiffs' properties and affiliated businesses, *see* DE 125 at ¶¶ 113-119; (b) fabricate code compliance complaints against Plaintiffs that they "knew to be false," *see id.*, at ¶¶ 67-90); and (c) "shut down" a monthly arts and culture festival associated with Plaintiff Fuller. *See id.* at ¶¶ 216-24.

It is specific allegations like these that set this case apart from the cases cited in Carollo's motion to dismiss. For instance, Plaintiffs do not allege that Carollo merely abused his office by "improper[ly] handling" a matter that he "had the authority to decide," or merely acted for an "improper purpose" in carrying out a "job-related goal." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1283 (11th Cir. 1998); *O'Boyle v. Sweetapple*, 2015 WL 13574304, at *11 (emphases added) (cited in DE 154 at 17). Rather, Plaintiffs allege that Carollo stepped entirely outside the boundaries of his official role as Commissioner and "exercise[d] authority" that was delegated to other government officials under the law. *Estate of Cummings v. Davenport*, 906 F.3d 934, 942-43 (11th Cir. 2018). To illustrate the point, Carollo – who lacked the authority to approve or deny special events permits – threatened one of Plaintiffs' tenants by claiming that it "need[ed] a temporary events permit" and making it clear that, "even if [it] had applied for one, [he] would have denied it." DE 125 at ¶ 115.

Finally, contrary to Carollo's conclusory argument otherwise, Plaintiffs are not seeking to equate a violation of the City Charter with "a violation of a federal right." DE 154 at 14 (citing *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002)). Rather, Plaintiffs are following Eleventh Circuit precedent by showing that Carollo is not entitled to qualified immunity for taking actions – including commandeering executive branch officials – in excess of his legislative authority as defined under applicable law. *See Cummings*, 906 F.3d at 940 ("We look to state law to determine the scope of a state official's discretionary authority"); *accord Robinson v. Ash*, 374

F. Supp. 3d 1171, 1179 (M.D. Ala. 2019) ("In determining the scope of an officer's discretionary authority, the court looks to state law," which reflects that "[m]uncipal police officers do not have free-floating jurisdiction"). As Chief Judge Pryor observed during oral argument, "the City Charter would not allow" Carollo to direct "administrative staff of the City" except for the purpose of conducting an inquiry, and thus, based on his understanding of "the City Charter," at "least some of [Carollo's] actions" were "outside his discretionary authority."

2.  *Carollo Violated Plaintiffs' Clearly Established Constitutional Rights*

Regardless of whether Carollo was acting within his "discretionary authority," this Court correctly concluded that he ultimately does not enjoy qualified immunity for his retaliation campaign because he was on notice that it violated Plaintiffs' clearly established First Amendment rights. DE 99 at 22 (quoting *Kollin v. Dorsett*, 2016 WL 4385356, at *4 (S.D. Fla. Apr. 14, 2016) and citing *Bennett v. Hendrix*, 423 F.3d 1247, 1256 (11th Cir. 2005); *Cuevas v. City of Sweetwater*, No. 15-22785-CIV, ECF No. 38 (S.D. Fla. Oct. 28, 2015)).

This is not a close question. For instance, in *Bennett v. Hendrix*, the Eleventh Circuit reiterated that it has been the "settled law" of this Circuit "since at least 1988" that "the government may not retaliate against citizens for the exercise of First Amendment rights." *Id.*, 423 F.3d at 1256. And, as Chief Judge Pryor recently observed, this case "looks a lot like *Bennett v. Hendrix* to me." 11th Cir. Oral Arg. at 11:16. Chief Judge Pryor is not wrong. Just as the officers in *Bennett* were alleged to have "surveilled the plaintiffs' homes and businesses," so too did Carollo "surveil[ ]" and "lurk" around Plaintiffs' properties and businesses. As the officers in *Bennett* "set up roadblocks" to harass and inconvenience the plaintiffs in that case, Carollo set up "physical[ ] barricade[s]" to retaliate against Plaintiffs here. The plaintiffs in *Bennett* were subjected to "false . . . citations" and "trumped-up charges." The same goes for Plaintiffs Fuller and Pinilla,

who were subjected to "bogus . . . citations," "false noise violation[s]," and other "false accusations." And while the officers in *Bennett* "mailed flyers" to defame the plaintiffs and compare them to criminals, Carollo engaged in a similar defamation campaign over the radio, calling Plaintiffs criminals and attempting to associate them with dictators, mobsters, and prostitutes. *Compare Bennett*, 423 F.3d at 1249 *with* DE 125 at ¶¶ 50, 205, 225-36, 259-60.

Carollo's analysis is misguided for at least two reasons. *First*, Carollo continues to rely on an outdated legal standard for identifying clearly established law, implying that he is entitled to qualified immunity if there are no "decisions of the U.S. Supreme Court, the Eleventh Circuit, or the Florida Supreme Court containing facts similar" to the allegations in the complaint. DE 154 at 19 (citing *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1977)). But the Supreme Court removed such a "'rigid gloss' on the qualified immunity standard," holding that "general statements of the law" are capable "of giving fair and clear warning" of a constitutional violation "even though the very action in question has not previously been held unlawful" in an identical case. *Akins v. Fulton Cty., Ga.*, 420 F.3d 1293, 1307 (11th Cir. 2005) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances")). Thus, Carollo badly misses the point by magnifying picayune distinctions between this case and other cases which reaffirm the principle that his First Amendment retaliation was clearly unlawful. For instance, Carollo suggests that this case is distinguishable from *Bennett* because he is a Commissioner and not a police officer, DE 154 at 19-21. But that is a distinction without any difference that helps

Carollo. To the contrary, the fact that Carollo commandeered police officers outside his chain of command to commit identical retaliatory acts only makes his conduct that much worse.[1]

*Second*, Carollo continues to rely on cases involving retaliation against government employees. DE 154 at 18-21 (citing, *inter alia*, *Maggio v. Sipple*, 211 F.3d 1346 (11th Cir. 2000); *Brannon v. Finkelstein*, 754 F.3d 1269 (11th Cir. 2014); *Rigdon v. Ga. Bd. of Regents*, 2008 WL 11348453 (S.D. Ga. June 27, 2008)). But the Eleventh Circuit has made it clear that the "balance of interests is different" when the Plaintiffs are "private citizen[s]" who are entitled to expect government officials to nurture, not undermine, their First Amendment rights. *Bennett*, 423 F.3d at 1252 ("[T]here is no justification for harassing people for exercising their constitutional rights"). Accordingly, Carollo cannot escape the fact that his retaliatory conduct contravened Plaintiffs' clearly-established Constitutional rights, a principle derived from several strikingly similar cases in this Circuit, including *Bennett*, 423 F.3d 1247 (a "campaign of police harassment and retaliation" for "support[ing] a county referendum" constitutes a clearly established violation), *Bailey*, 843 F.3d 473 (a "campaign of petty harassments" constitutes a clearly established violation), and *Espanola Way v. Meyerson*, 690 F.2d 827 (11th Cir. 1982) (a campaign to "harass and drive [the plaintiff's hotel] out of business" constitutes a clearly established violation).[2]

---

[1] Because the precedents of this Court and others "would be of little value if government officials were free to disregard fairly specific statements they contain and focus their attention solely on the particular factual scenarios in which they arose," *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1278 (11th Cir. 2004), clearly established law can now be ascertained by identifying either (a) "a materially similar case from relevant precedent; (b) a "broader, clearly established principle that should control the novel facts of the situation"; or (c) conduct by the government official that "lies so obviously at the core of what the First Amendment prohibits that the unlawfulness of the conduct was readily apparent." *Bailey v. Wheeler*, 843 F.3d 473, 484 (11th Cir. 2016).

[2] The remaining cases cited by Carollo are so obviously distinguishable from this case that they do not warrant further discussion. For example, Carollo attempts to rely on one case that is distinguishable from this case in virtually every relevant respect, involving a plaintiff alleging that it was deprived of an "alleged right to partner with the Department of Children and families,"

### C.      **This Court Has Already Held that Plaintiffs Have Standing**

This Court already concluded that "Plaintiffs have alleged a personal injury sufficient to demonstrate standing." DE 99 at 7. While the Court noted that Plaintiffs were permitted to "establish standing by pleading general factual allegations of injury" at "the initial pleading stage," DE 99 at 6 (citing *Harris v. Evans*, 20 F.3d 1118, 1122 (11th Cir. 1994)), it nevertheless granted them "leave to amend the complaint consistent with the Report and Recommendation," DE 118, recommending that they further "clarify the injury or injuries for which [they] seek redress." DE 99 at 7; *accord Bennett*, 423 F.3d at 1253 ("For Article III standing purposes, . . . the plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. As long as the injury is distinct and palpable rather than abstract, conjectural, or hypothetical, it is sufficient to confer standing.").

In accordance with this Court's recommendation, Plaintiff amended their complaint to add a two-page section entitled "Summary of Damages," clarifying that the basis for their damages included: "emotional distress and mental anguish"; lost business opportunities with partners who expressed a "reluctance to do[ing] business with Plaintiffs for fear of becoming targets of Carollo"; and other claims for monetary damages that "have been assigned by the relevant business entit[ies] to Plaintiffs in their individual capacities." DE 125 at ¶¶ 283-98. Carollo's conclusory, nine-line rebuttal that these detailed factual allegations are "neither concrete and particularized nor traceable to [his] conduct," is nonsensical. DE 154 at 22. In fact, Article III standing is regularly established under those precise theories of relief. *See Speaker v. U.S. Dept. of Health and Human Servs.*, 623

---

without alleging that "Defendants took official action against [plaintiff] because of its views," and without alleging that "Defendants acted in a retaliatory way to adversely affect protected speech." *Bldg. Empowerment by Stopping Trafficking, Inc. v. Jacobo*, 2013 WL 5435729, at *3 (S.D. Fla. Sept. 27, 2013) (cited in DE 154 at 17-18, 21).

F.3d 1371, 1382 (11th Cir. 2010) ("mental anguish and emotional distress"); *Native Am. Arts, Inc. v. Bud K Worldwide, Inc.*, 2011 WL 2692962, at *2 (M.D. Ga. July 11, 2011) ("lost sales and sales opportunities"); *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1217 ("assign[ment] of a claim").

### 1.   *Plaintiffs Allege that Carollo Inflicted an Injury*

The complaint in this case clearly alleges that Plaintiff suffered injuries as a result of the retaliation campaign that Carollo directed against them. To the extent that Carollo *also* collaterally damaged other individuals and entities does not deprive Plaintiffs of standing.

To take just a few examples out of many, the complaint alleges that Plaintiffs were individually harmed by Carollo because he: (a) led a tour exclusively of properties owned by Plaintiffs, and no other properties, instructing City officials to focus on issuing citations only on those properties, *see* DE 126 at ¶¶ 59-66, 145-56; (b) orchestrated a campaign of unwarranted harassment that drove away the tenants on Plaintiffs' properties to deprive them of rental payments, *see id.* at ¶¶ 91-112, 132-44; (c) interfered with businesses in which Plaintiffs are partners, in addition to landlords, such as Ball & Chain and Union Beer, to deprive Plaintiffs of the revenues from those businesses, *see id.* at ¶¶ 113-31, 157-64; and (d) disrupted a cultural event associated with Fuller that had been operating for the past 18 years. *See id.* at ¶¶ 216-24. These unlawful actions inflicted direct financial and emotional distress injuries on Plaintiffs.

Carollo is wrong to challenge Plaintiffs' standing on the grounds that they supposedly seek "to raise the rights of other[ ]" third parties. DE 154 at 22. To the contrary, Plaintiffs "clearly ha[ve] standing" both because they allege that Carollo's "actions were taken in retaliation for [their] exercise of first amendment rights," and because they allege that they "suffered mental and emotional distress as a result of th[ose] actions." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310,

-13-

1318-19 (9th Cir. 1989). The complaint set forths "[t]wo separate personal injuries to the individual" Plaintiffs, and the "fact that these injuries arose from the same conduct as the corporate injuries" is immaterial because "the same conduct can result in both corporate and individual injuries." *Id*.

Or, to put it another way, "[c]laims of retaliation by the government for exercise of a constitutional rights depend . . . on the harassment plaintiff received for exercising the right," and thus Plaintiffs have "standing to assert" claims that Carollo retaliated against them "through adverse actions directed at" third-party individuals and entities with whom they do business. *Nash-Utterback v. Sch. Bd. of Palm Beach Cty.*, 2012 WL 12865852, at *14 (S.D. Fla. June 8, 2012) ("Plaintiff has alleged an injury sufficient to confer standing in alleged harm that Defendant caused to her" associated entity which "could have a chilling effect on [her] desire to exercise her rights to free speech"). Plaintiffs accordingly have standing to prevent Carollo from inhibiting their rights by putting undue pressure on their business partners and associates. *See* DE 125 at ¶ 107 (alleging that Carollo admitted to retaliating against one of Plaintiffs' tenants by stating that "my problem is not as much with you as it is with your landlord"); DE 125 at ¶¶ 128-129 (alleging that Carollo admitted to retaliating against the valet operator for one of Plaintiffs' businesses by stating that he was targeted because he was "working for a millionaire").

Finally, to remove any doubt that Carollo's targeting of Plaintiffs' business interests caused harm to Plaintiffs, the complaint also alleges that "**[a]ll claims related to monetary damages have been assigned by the relevant business entit[ies] to Plaintiffs in their individual capacities**," DE 125 at ¶ 298 (emphasis added), confirming Plaintiffs' standing to pursue those claims. *See MSP Recovery*, 965 F.3d at 1217 ("The assignee of a claim has standing to assert an injury in fact suffered by the assignor") (quoting cases; brackets omitted).

2.       *Plaintiffs Allege "Traceability" and "Redressability"*

Because Carollo's retaliation *both* directly targets Plaintiffs personally *and* indirectly targets Plaintiffs through their businesses and associates, it is apparent that Plaintiffs have alleged injuries that are "fairly traceable" to Carollo's conduct and are "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Carollo's motion to dismiss does not even bother to explain why he thinks that Plaintiffs allegations are not sufficient, particularly under the forgiving standards applicable at the motion to dismiss stage. *See* DE 154 at 14.

*First*, as this Court already concluded, there is no doubt that the complaint alleges that Plaintiff's injuries are "traceable" to Carollo's intentional retaliation campaign against them. DE 99 at 6 ("Plaintiffs allege that they have suffered injuries as a result of conduct made in retaliation for Plaintiffs' exercise of their First Amendment rights, including monetary damages as a result of [Carollo's] retaliatory conduct, specifically damages for 'business disruption' and 'reputational harm,'" as well as "emotional distress and mental anguish as a result of retaliatory conduct against the Plaintiffs individually").

*Second*, Plaintiffs' amended complaint now clarifies in detail the monetary "injuries for which Plaintiffs seek redress," DE 99 at 7, by removing any doubt that Carollo's retaliation campaign caused them to suffer direct business losses and emotional distress damages, caused them to suffer indirect "chilling" effects by targeting their business associates, and caused third parties to incur claims that have now been assigned to Plaintiffs to pursue "in their individual capacities." DE 125 at ¶ 298.

*Third*, Plaintiffs have also alleged that their injuries are redressable through injunctive relief in addition to monetary damages. Courts across the country, including this Court, recognize

that evaluating "the appropriateness of injunctive relief" requires "a fact-specific determination [that] is not appropriately made on the pleadings alone." *Gordon v. Jenne*, 2006 WL 8431520, at *4 (S.D. Fla. Oct. 30, 2006) (denying motion to dismiss despite the defendant's argument that the "prayer for injunctive relief is . . . overbroad and unworkable"); *accord Devon Robotics v. DeViedma*, 2010 WL 300347, at *6 (E.D. Pa. Jan. 25, 2010) (denying "motion to dismiss the claim for permanent injunctive relief" because "it is inappropriate for the Court to limit the remedies available to [p]laintiffs at this time"); *Cmty. Programs of Westchester of Jewish Cmty. Servs. v. City of Mount Vernon*, 2007 WL 29819155, at *6 (S.D.N.Y. Oct. 9, 2007) (denying motion to dismiss "plaintiff's prayer for injunctive relief" based "upon the Court's conclusion that plaintiff's federal claims are viable at this stage of litigation").[3]

---

[3] On remand, Carollo does not appear to renew his argument challenging Plaintiffs' claim for injunctive relief. *Compare* DE 53 at 8-9 *with* DE 154. To the extent that Carollo intends to advance such a misguided argument, Plaintiffs respectfully request an opportunity to fully brief the issue. After all, the Eleventh Circuit has made it clear that "prospective injunctive relief" is available in cases like this one, even against defendants who may "enjoy[ ] official immunity from suits for damages." *Executive 100, Inv. Martin Cty.*, 922 F.2d 1536, 1539 (11th Cir. 1991). Virtually identical forms of injunctive relief under materially identical circumstances as those at issue in this case. *See, e.g.*, *id.*; *Blankenship v. Manchin*, 410 F. Supp. 2d 483, 488 (S.D. W. Va. 2006) ("Permanently enjoining [Governor] from any form of retaliation against Plaintiff . . . in response to Plaintiff's exercise of his First Amendment right to free speech"); *Hoyfe v. Nye County*, 2018 WL 4107897, at *7-8 (D. Nev. Aug. 28, 2018) ("[County] may take any actions it deems appropriate to enforce its own ordinances, but . . . must provide written documentation to Plaintiffs regarding existing or future Code violations before it takes action"); *Booher v. Marion Cty.*, 2007 WL 9684182, at *4 (M.D. Fla. Sept. 21, 2007) ("County" and "Sheriff" are "enjoined from enforcing . . . Marion County Code of Ordinances" at issue in the litigation). *See generally Broward Coalition of Condo., Homeowners Ass'n and Cmty. Org. Inc. v. Browning*, 2008 WL 4791004, at *14 (N.D. Fla. Oct. 29, 2008) ("[I]n any conflict between First Amendment rights and regulation, courts 'must give the benefit of any doubt to protecting rather than stifling speech.'")

### D.   Carollo's New Arguments on Remand Are Meritless

Sensing that the Eleventh Circuit was hostile to the unsuccessful arguments he raised in his motion to dismiss Plaintiffs' first amended complaint, Carollo raises two new arguments attacking Plaintiffs' second amended complaint on remand. Neither of Carollo's new arguments have merit.

1.   *Carollo Is Not Entitled to Absolute Legislative Immunity*

Carollo's ever-expanding conception of legislative immunity is absurd. After initially arguing that that he was entitled to legislative immunity for "voting on legislation to retaliate against" Plaintiffs, DE 53 at 17, he now argues on remand that legislative immunity is "not limited to merely voting on legislation," but rather "encompasses . . . the entirety of [his] inquiries, fact-findings, and investigations." DE 99 at 31.

Carollo's expansive view of the scope of his legislative immunity is at odds with Supreme Court and Eleventh Circuit precedent. *See, e.g.*, *Hutchinson v. Proxmire*, 443 U.S. 111, 127 (1979) ("Whatever imprecision there may be in the term 'legislative activities,' it is clear that" it does not "create an absolute privilege from liability or suit for defamatory statements made outside the Chamber"); *Gravel v. United States*, 408 U.S. 606, 625-26 (1972) ("That [legislators] generally perform certain acts in their official capacity ... does not necessarily make all such acts legislative in nature."); *Crymes v. DeKalb County , Ga.*, 923 F.2d 1482, 1485 (11th Cir. 1991) ("Acts of zoning enforcement rather than rulemaking are not legislative," and any other "decision [that] impacts specific individuals, rather than the general population, is more apt to be administrative," rather than legislative, "in nature").

Because absolute legislative immunity is such strong medicine, the "Supreme Court has construed the legislative capacity narrowly." *Hansen v. Bennett*, 948 F.2d 397, 402 (7th Cir. 1991) (citing *United States v. Brewster*, 408 U.S. 501, 528 (1972)). The Eleventh Circuit has even

"expressly rejected the argument that the act of voting, in itself, constitutes legislative action giving rise to immunity" under certain circumstances. *Smith v. Lomax*, 45 F.3d 402, 406 (11th Cir. 1995). Given that legislative immunity does not even necessarily cover the act of voting in all instances, it certainly does not cover Carollo's roving campaign of harassment and abuse against Plaintiffs throughout the City and far outside the legislative chamber, which included everything from ordering law enforcement officers to "intimidat[e]" Appellees' children at a Christmas party, DE 125 at ¶¶ 67-90; to lodging fabricated complaints against Appellees' businesses under the shroud of anonymity, *see id.* at ¶¶ 91-207; to appearing on radio programs to attack Plaintiffs' reputations by associating them with dictators, mobsters, and criminals. *See id*. at ¶¶ 225-36.

2.      *Plaintiffs' Complaint Is Not Subject to Being Stricken*

Relying on three out-of-District cases, Carollo finally argues that the Court should strike five paragraphs in the second amended complaint that supposedly went "beyond the limits" of the Court's Order granting leave to amend and are supposedly not "connect[ed] to [P]laintiffs' federal claim." DE 154 at 32-33. Carollo is incorrect.

First of all, notwithstanding Carollo's reliance on out-of-District cases, this Court "does not construe" orders granting leave to amend "so narrowly." *Rousseau v. Ass'n of Cmty. Organizations for Reform Now, Inc.*, 2005 WL 8155411, at *2 n.2 (S.D. Fla. June 28, 2005). Thus, under similar circumstances in a Section 1983 case, this Court permitted the addition of a new claim that was neither expressly permitted nor prohibited by the order granting leave to amend. Other cases in this District likewise reject efforts to strike claims, parties, or allegations on the grounds that they purportedly "exceed[ ] the express scope of the Court's Order granting . . . leave to amend [the] Complaint," while declining to rely on contrary precedent from "a different district

that is not binding upon this Court." *McIntosh v. Royal Caribbean Cruises Ltd.*, 2019 WL 1116194, at *5 (S.D. Fla. Jan. 4, 2019).

Second, the five paragraphs of challenged allegations in the complaint represent a minor addition to their "narrowly construed claim" for First Amendment retaliation that has been the focus of "all of Plaintiffs' previous complaints," *Alhassid v. Bank of Am., N.A.*, 2015 WL 11216719, at *5 (S.D. Fla. Jan 21, 2015), and will not cause one whit of "prejudice [to Carollo] given the facts and posture of this case," in which discovery has not even begun. *McIntosh, supra*, at *6. After all, Carollo's primary theory of defense is that he is entitled to qualified immunity because his retaliatory acts were nothing more than a proper exercise of his authority to investigate potential code violations within his community. *See* DE 154 at 24. "Otherwise lawful government action may nonetheless be unlawful if motivated by retaliation or having engaged in activity protected under the First Amendment." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). And Carollo's extensive history of tolerating glaring code violations – including on his own property – are a powerful indication that his retaliation campaign against Plaintiffs was animated by a retaliatory purpose which provides support for the notion that he was motived to violate the laws that constrained his authority as Commissioner. *See Brien v. Romine*, 2013 WL 2285070, at *2 (M.D. Fla. May 23, 2013) (denying "Motion to Dismiss on the Basis of Qualified Immunity" where "Plaintiff's complaint alleges numerous examples of pretext"); *Smith v. City of Oak Hill, Fla.*, 2013 WL 140232, at *7 (M.D. Fla. Jan. 11, 2013) (denying motion for summary judgment because, if "a factfinder were to determine that the stop was pretextual, [it] would at least arguably lend support to [the] claim that the subsequent search . . . was also based on a false premise").

**CONCLUSION**

Carollo acknowledges that, as a City Commissioner, he was duty-bound to "serve the interests of the public in making his community and district a better place." DE 154 at 24. But Carollo overlooks the fact that it is "completely antithetical to those sworn duties . . . to use his position to harness the power" of the City government "to teach a lesson" to Plaintiffs for having "the temerity to speak up" in support of his political opponent. *Bailey v. Wheeler*, 843 F.3d 473, 485 (11th Cir. 2016). By "engag[ing] the punitive machinery of government" and embarking on a "campaign of petty harassments" in "order to punish [Plaintiffs] for speaking out," Carollo violated clearly-established law and made his community and district a worse place for those who cherish robust First Amendment protections. *Id.* (internal quotation marks omitted). In the course of his wide-ranging retaliation campaign, Carollo harassed a valet operator associated with Plaintiffs' business and, in an effort to intimidate him, declared: "I am the law." *See* DE 125 at ¶¶ 129-31. This lawsuit is necessary to correct Carollo's misunderstanding. The City Code, the Constitution, and the U.S. Code are the law, and Carollo violated all three by targeting Plaintiffs for abuse as retaliation for exercising their First Amendment rights in the context of an election.

WHEREFORE, Plaintiffs William O. Fuller and Martin Pinilla, II respectfully request that this Court deny Defendant Joe Carollo's Motion to Dismiss and Motion to Strike. [DE 154].

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Plaintiffs respectfully request oral argument on this matter.  Oral argument is necessary for two main reasons.  First, the claims alleged in the SAC concern multiple parties, multiple actors, and significant factual allegations. Therefore, Plaintiffs believe an oral argument would assist this Court in understanding the legal and factual arguments presented by the parties.  Second, Plaintiffs believe it would also be helpful for the Court if the parties had an opportunity to answer any questions this Court may have in person regarding this case.  Plaintiffs expect that oral argument on this matter would require no longer than 1-2 hours.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the forgoing was served via CM/ECF on counsel of record in this action on this 15th day of December, 2020.


Respectfully submitted,

**AXS LAW GROUP, PLLC**
2121 NW 2nd Avenue, Suite 201
Miami, FL 33127
Tel:  305.297.1878

By: /s/ Jeffrey W. Gutchess
Jeffrey W. Gutchess
Florida Bar No. 702641
jeff@axslawgroup.com
Rossana Arteaga-Gomez, Esq.
Florida Bar No. 0014932
rossana@axslawgroup.com
Joshua A. Shore, Esq.
Florida Bar No. 031894
josh@axslawgroup.com
eservice@axslawgroup.com

*Counsel for Plaintiffs*