# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# CASE NO. 1:18-24190-CIV-SMITH

---

## WILLIAM O. FULLER AND MARTIN PINILLA, II, PLAINTIFFS,

### V.

## JOE CAROLLO, DEFENDANT.

---

## DEFENDANT COMMISSIONER CAROLLO'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT [DE162]

---

THOMAS E. SCOTT
FLORIDA BAR NO. 149100
COLE, SCOTT & KISSANE
9150 S. DADELAND BLVD., STE 1400
MIAMI, FL 33156
TEL: 305-350-5381
FAX: 305-373-2294
THOMAS.SCOTT@CSKLEGAL.COM
*COUNSEL FOR DEFENDANT COMMISSIONER CAROLLO*

BENEDICT P. KUEHNE
FLORIDA BAR NO. 233293
MICHAEL T. DAVIS
FLORIDA BAR NO. 63374
KUEHNE DAVIS LAW, P.A.
100 S.E. 2 ST., SUITE 3105
MIAMI, FL 33131-2154
TEL: 305.789.5989
FAX: 305.789.5987
EFILING@KUEHNELAW.COM
*COUNSEL FOR DEFENDANT COMMISSIONER CAROLLO*

## DISCUSSION

Instead of presenting concrete and plausible factual allegations, the Second Amended Complaint ("SAC") is an inflated account accusing Commissioner Carollo of a pattern of wrongdoing, notwithstanding that the documentation accompanying the SAC conclusively undermines all claims. Other than sensationalized outrage, the plaintiffs offer no facts or a contemporaneous account of the conduct corroborating their accusations. When examined against the factually detailed Report of the Miami-Dade Commission on Ethics (MDCOE Report) that plaintiffs incorporated into the SAC, only one conclusion is possible: Commissioner Carollo acted in the scope and course of his official position as he pursued reasonable inquiry and investigation into plaintiffs' ongoing disregard of City ordinances, rules, and requirements. Consistent with his legislative and policy-making responsibilities, Commissioner Carollo is protected from suit by qualified and legislative immunity. Plaintiffs cannot seek absolution for their own wrongdoing by claiming Commissioner Carollo engaged in a witch-hunt when the allegations show otherwise.

This matter is before this Court on a remand from the Eleventh Circuit ruling that the prior appeal of the court's qualified and legislative immunity determination was premature because the plaintiffs had amended their claims in the SAC.[1] Now, in response to the dismissal motion,

---

[1] Plaintiffs unpersuasively argue that Circuit Judge Pryor's oral argument comments have the force of law (DE162:4, 8-9), when that is decidedly contrary to what occurred on appeal. The only law of the case resulting from the dismissed appeal is that the' SAC required this court to rule on the legal sufficiency of the amendment before appellate review could commence. The judges' questions and comments during oral argument, including on appeal, do not have precedential value or utility when not a part of the written decision, and are not precedent. *See Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1331 (Fed. Cir. 2004) (reliance on decision, not oral comments); *Dellew Corp. v. United States*, 855 F.3d 1375, 1381 (Fed. Cir. 2017) (same); *Griswold v. Coventry First LLC*, No. 10-5964, 2015 U.S. Dist. LEXIS 19455, at *33 n.3 (E.D. Pa. Feb. 18,

plaintiffs incorrectly assert that this "Court has already determined that Plaintiffs plausibly allege with supporting and detailed facts the three elements of a First Amendment retaliation claim …." (DE162:2). But the prior ruling was not based on the allegations comprising the SAC, but instead looked at the significantly different First Amended Complaint (DE43) that included allegations against the City of Miami and Commissioner Carollo, and included an individual plaintiff, Mary Lugo. The SAC, by contrast, significantly altered the claims and allegations, and dropped both the City of Miami and Mary Lugo as defendants, effectively conceding by their rewriting that Commissioner Carollo was in fact and in law furthering legitimate municipal interests by his legitimate inquiries into the plaintiffs' actionable wrongdoing. Thus, the predecessor court's ruling on the immunity invocations and the plausibility standards has no application to or influence on this pending dismissal motion, and most certainly does not support its denial.[2]

## I.     LEGAL STANDARD TO DISMISS FOR FAILURE TO STATE A CLAIM.

The Rule 12(b)(6) standard for dismissal is not as broad as the plaintiffs claim. To the contrary, courts have imposed an exacting pleading requirement to demonstrate the "plausibility" of a complaint. That means simply that, while the court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff[,]" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010), "courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id*. at 1290 (citing *Ashcroft v.*

---

2015) ("Given the overall record, the Court declines to give undue weight to Judge Hardiman's comments on oral argument that were not otherwise reflected in the four corners of the Court's final opinion."); *In re Canopy Fin., Inc.*, 708 F.3d 934, 935 (7th Cir. 2013) ("This court would not like to be bound by judges' statements at oral argument, as opposed to our written opinions.").

[2] This court should reject the erroneous argument that "Carollo acknowledges that none of the changes reflected in the amended complaint affect the qualified immunity analysis" (DE162:3) as untrue and because the SAC presented an entirely different factual calculus for application of the qualified and legislative immunity doctrines.

*Iqbal*, 556 U.S. 662, 678 (2009)). This court need not accept the plaintiffs' broad, hyperbolic, and unsupported conclusions of law or of mixed law and fact. *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001). Of utmost importance in this instance is that, when the exhibits to a complaint contradict the general and conclusory allegations of the pleadings, *the exhibits govern*. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

"On a motion to dismiss, '[c]onclusory allegations and unwarranted deductions of fact are not admitted as true," particularly "when the conclusory allegations contradict the other facts alleged in the complaint." *Berry v. Coleman*, 172 Fed. Appx. 929 (11th Cir. 2006); *see also Battle v. Cent. State Hosp.*, 898 F.2d 126, 130 n.3 (11th Cir. 1990) ("allegations that are contradicted by other allegations in the complaint may also constitute grounds for dismissal"). "Public records are among the permissible facts that a district court may consider." *Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006). The MDCOE Report, a public record attached as SAC Exhibit A, undermines the SAC's conclusory allegations, justifying dismissal with prejudice.

## II.    THE SAC DOES NOT STATE VALID CLAIMS FOR RELIEF.

The SAC is riddled with unsupported conclusions, and SAC Exhibit A persuasively contradicts the material allegations, providing a straight and narrow pathway for dismissal, this time with prejudice. Against the plaintiffs' argument that they satisfied the three-pronged "plausible relief" test, the entirety of the SAC, including the MDCOE Report, underscores the abject speculation that describes the whole of the plaintiffs' attack on Commissioner Carollo.

To start, plaintiffs are completely wrong in stating that "Carollo does 'not challenge' the fact that plaintiffs allege they were engaged in 'protected speech.'" (DE162:5). Commissioner Carollo rejects every conclusory allegation in the SAC and offers the plaintiffs' own MDCOE Report as a persuasive showing that the allegations are internally inconsistent and entirely unfounded. That plaintiffs have asserted in speculative and conclusory fashion that they supported

Commissioner Carollo's election opponent is conclusively refuted by the MDCOE Report in which plaintiff Fuller stated he "did not actively support any candidate" for the City's District 3 race (DE125-1:9). Also disputing plaintiffs' allegations (DE125, ¶¶ 43, 50-51, 53) that on November 18, 2017, a rally was held on plaintiffs' property for District 3 candidate Leon that was shut down by Code Enforcement officers and other agents, plaintiff Fuller informed MDCOE investigators he "had not been aware of the nature of the event prior to its shutdown." Once he found out it was a "Get Out the Vote (GOTV) rally" for Leon, "*he also asked to shut it down. We didn't want to choose sides, further stating that he even called Carollo's aide, Steve Miro, to congratulate Carollo after his victory.*" (DE125-1:9). Here, the Investigative Report conclusively rebuts the assertion of protected speech that led to retaliation, thereby demonstrating the SAC does not satisfy the first prong of the plausibility test.

The second plausibility prong requires a plaintiff to present facts showing the retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights. Plaintiffs rely exclusively on the Magistrate Judge's Report and Recommendation (DE99) analyzing a substantially different complaint that included the City as a codefendant. The actions described in the SAC as having been taken by Commissioner Carollo do not satisfy this second prong. All actions occurred during Commissioner Carollo's role as District Commissioner and were within his legislative and policy-making mandate to assure the health, safety, and welfare of his constituents and businesses. His inquiries and legislative positions were those elected commissioners are expected to pursue. Plaintiffs have not identified even one act taken by the Commissioner that has been found to be in violation of the law or his municipal authority. To the contrary, the proof of Commissioner Carollo's lawful exercise of authority is contained in the MDCOE Report that debunks the plaintiffs' accusations and that led to the plaintiffs' voluntary

dismissal of their MDCOE complaint.[3] Since then, there has been no finding of inappropriate or retaliatory conduct made by any agency or decision-making tribunal. At the same time, plaintiffs remain responsible for numerous City Code violations.

Plaintiffs are using the SAC to outflank the City from its efforts to compel the plaintiffs to comply with municipal law. In their abject defiance of municipal governance, plaintiffs attack Commissioner Carollo for the sole purpose of obtaining protection against having to follow the same laws otherwise applicable to every City business and resident. But no person or company is above the law; equally, every person and business are subject to having the law enforced against their transgressions. Thus, plaintiffs' accusations that enforcement actions were initiated at Commissioner Carollo's instigation cannot pose a valid First Amendment retaliation claim without the plaintiffs having first shown they did not violate the law. That is precisely because they are in fact responsible for numerous violations of laws applicable to all businesses, as explained in the MDCOE Report. Thus, the SAC suffers from a lack of plausibility, supported as it is by only the plaintiffs' subjective speculations of being "targeted" because of non-existent political activities.

Plaintiffs misapply the authority cited in the Report and Recommendation (DE99) in arguing the third "causal connection" prong. Plaintiffs urge this court to discount the contrary facts

---

[3] Consider, as several representative examples, the conclusive impact of the MDCOE Report in refuting plaintiffs' claims. The SAC's falsely asserts the parking lot valet company was illegally targeted and hounded for no reason except retaliation (DE125:22, ¶126), when the MDCOE Report conclusively shows the valet company (and plaintiffs as the contracting user of the valet services) was engaged in wholesale violations of parking and life/safety regulations (DE125-1:16-17, 22-23). Sanguich of Miami was not illegally targeted as the SAC contends (DE125:15-20 ¶¶91-112), but in fact was "shut down" for illegal electrical wiring violations that threatened public safety (DE125-1:20). Ball & Chain (plaintiffs' business) did not have "only one noise complaint" (DE125:5 ¶18) but was the subject of numerous citizen complaints directed at noise violations (DE125-1: 19-22, 34-36). Perhaps most importantly, while the SAC alleges Commissioner Carollo gave orders to City personnel in violation of the Charter (DE125:26-30), the MDCOE Report provides detailed facts showing he neither directed staff nor attempted to unduly pressure them or sought selective enforcement against plaintiffs (DE125-1:22-23).

contained in the MDCOE Report but instead accept at face value their own conclusory statements. The Eleventh Circuit has announced as binding law that a complaint ***and its attached documents*** are presumed to be true for purposes of a dismissal motion. *Crumpton v. Stephens (In re Northlake Foods, Inc.)*, 715 F.3d 1251, 1256 (11th Cir. 2013) ("The facts raised in the complaint and its exhibits, taken as true"); *Transglobal Airways Corp. v. JAF, LLC,* No. 06-22592-CIV-UNGARO, 2007 U.S. Dist. LEXIS 110274, at \*54 (S.D. Fla. Nov. 13, 2007) ("The Court has already determined, *supra*, that accepting the allegations in the ... Complaint and the exhibits attached thereto as true ...."); *Muhammad v. Ocwen Loan Servicing*, No. 1:17-CV-0964-LMM-JSA, 2018 U.S. Dist. LEXIS 239403, at \*4 (N.D. Ga. Jan. 23, 2018) ("The allegations set forth below are taken from the Plaintiffs' Amended Complaint and its attached documents, and are assumed to be true for the purpose of resolving the Defendants' Motions to Dismiss, unless otherwise noted.").

Plaintiffs rely on *Bryant v. Miami-Dade Cty.*, No. 10-23768, 2011 WL 13223543, at \*3 n.3 (S.D. Fla. Mar. 20, 2015), for the proposition that this court is not required to "accept the hearsay statements and representations in the Investigative report as true to affirmatively disprove the allegations in the … Complaint." (DE162:5-6). That case is distinguishable. Those defendants relied on a police report ***attached to a motion to dismiss***. Here, the plaintiffs attached the MDCOE Report to the SAC, intending that this court consider the allegations as well-pled facts. This is entirely different from a defendant adding material supporting a dismissal. Guided by Eleventh Circuit precedent, the attachment to the SAC, when viewed as true for purposes of this motion to dismiss, requires the court to find the conflicting evidence sufficient to undermine the complaint.

This "third bite at the apple" should end this misdirected effort to blame Commissioner Carollo for the plaintiffs' own misconduct. The SAC should be dismissed with prejudice.

**III.    COMMISIONER CAROLLO IS PROTECTED BY QUALIFIED IMMUNITY.**

This court already determined Commissioner Carollo was acting within his discretionary

role as a commissioner. Case law shows that, contrary to plaintiffs' assertions, Commissioner

Carollo did not violate clearly established law and was unaware of any violation.

### A.       Commissioner Carollo Acted in His Discretionary Role as Commissioner.

Plaintiffs assert that this court earlier erred in finding Commissioner Carollo acted within

his discretionary authority, citing no relevant or supportive case law (DE162:7-10). The Magistrate

Judge's determination that Commissioner Carollo acted within his discretion is consistent with

precedent (DE99:21), the allegations in the SAC, and the expansive legislative inquiry authorized

for City commissioners to best represent their Districts.

Plaintiffs argue Commissioner Carollo overstepped the scope of the Charter, asking the

court to accept their conclusory allegations of violations of municipal law that have never been

adjudicated by a judicial or administrative authority, and that are contradicted by the MDCOE

Report. First, "Section 1983 does not create a remedy for every wrong committed under the color

of state law, but only for those that deprive a plaintiff of a federal right." *Knight v. Jacobson*, 300

F.3d 1272, 1276 (11th Cir. 2002). "While the violation of state law may (or may not) give rise to

a state tort claim, it is not enough by itself to support a claim under section 1983." *Id*. Second,

since the assertions are not facts that must be taken as true, it is the court's role to presume at this

stage of the proceedings that a public official acted in a manner consistent with allowable authority.

*Panama Ref. Co. v. Ryan*, 293 U.S. 388, 446, 55 S. Ct. 241, 259 (1935) ("Every public officer is

presumed to act in obedience to his duty, until the contrary is shown."); *United States v. Chem.

Found., Inc.*, 272 U.S. 1, 14-15, 47 S. Ct. 1, 6 (1926) ("The presumption of regularity supports the

official acts of public officers and, in the absence of clear evidence to the contrary, courts presume

that they have properly discharged their official duties."); *Elk Assocs. Funding Corp. v. United

States SBA*, 858 F. Supp. 2d 1, 24 (D.D.C. 2012) (same). No reasonable interpretation of the

Charter supports the plaintiffs' truncated accusation that Commissioner Carollo's actions were

outside his discretionary authority. The Charter allows commissioners to direct "inquiry" into matters of public interest. City of Miami Charter, Part I.A § 4(d). The Report and Recommendation aptly noted "the question is whether Carollo had the authority to report his suspicion of code violations and encourage enforcement of the Code." (DE99:21).

### B.    *Commissioner Carollo Did Not Violate a Clearly Established Right.*

The Magistrate Judge's conclusion, in the context of the predecessor complaint, is not controlling on whether Commissioner Carollo violated a clearly established right. Not only are Commissioner Carollo's actions consistent with his authority, but the Magistrate Judge never found he was on notice of a violation of a clearly established right (DE99:22).

Plaintiffs' submission of *Bennett v. Hendrix,* 423 F.3d 1247 (11th Cir. 2005), in support of their argument is not persuasive. This case is materially different from *Bennett*, a case involving retaliatory police action. Here, Commissioner Carollo did not take any executive action, did not bring regulatory or other charges against the plaintiffs, did not close any business, did not deprive the plaintiffs of any license, and did not stop the plaintiffs from pursuing their business interests. As explained in *Akins v. Fulton Cty., Ga.*, 420 F.3d 1293, 1307 (11th Cir. 2005), a defendant must be on notice that a particular action is a constitutional violation. No Eleventh Circuit case or controlling decision provided any direct or meaningful guidance to Commissioner Carollo on the restrictive use of his legislative and policy-making authority to inquire on matters in the public interest. *See Randall v. Scott,* 610 F.3d 701, 715 (11th Cir. 2010) (application of similarity analysis). The SAC identified no right that is clearly established in a "particularized" sense so that "the contours of the right" are clear enough for any reasonable official to know of a violation of that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). Legislative investigation of legitimate violations is not constitutionally suspect.

## IV.     PLAINTIFFS LACK STANDING TO ASSERT CLAIMS OF NON-PARTIES.

Plaintiffs ignored the order allowing a limited amendment of the complaint (DE118) by including the claims of non-parties, including Viernes Culturales, Sanguich, Calle Ocho Marketplace, and Union Beer.[4] Without offering any support, plaintiffs insist they have the right to "prevent Carollo from inhibiting their rights by putting undue pressure on their business partners and associates." (DE162:15). None of the non-parties have raised First Amendment conduct for which Commissioner Carollo allegedly retaliated. As a result, the purported "assignment" of a non-existent federal civil rights claim does not present any actionable civil rights violation that can be asserted by the plaintiffs. The federal civil rights remedies are exclusively personal to the victim. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 116 (3d Cir. 2009) (creation of personal right to vindicate civil rights violation); *United States v. City of Philadelphia*, 644 F.2d 187, 198 (3d Cir. 1980). Plaintiffs do not have standing to sue for alleged injuries to others and offer no precedent allowing an assignment of a federal civil rights cause of action. Their inapplicable reference to *MSP Recovery Claims v. QBE Holdings, Inc.*, 965 F.3d 1210, 1218 (11th Cir. 2020), allowing the assignment of a contract in accordance with Florida law, is completely immaterial here, where there is no contract at issue and the federal civil rights statute is limited to recovery for personal constitutional wrongs. As such, the claims of non-parties must be stricken.

## V.      CAROLLO IS ENTITLED TO LEGISLATIVE IMMUNITY.

The Eleventh Circuit legislative immunity precedent applies to Commissioner Carollo for acts allegedly taken in his legislative capacity (DE154:22-24). Plaintiffs have not discounted the

---

[4] Contradicting the SAC assertion that plaintiffs were "partners" in Union Beer (DE125:21, ¶113), the MDCOE Report conclusively states that Union Beer was "co-owned" by David and Celia Rodriguez – not plaintiffs (DE125-1:13). Similarly, the "co-owners" of Sanguich were Rosa Romero and Daniel Figueredo – not plaintiffs (DE125-1:10). Thus, the MDCOE Report conclusively eliminates any factual "standing" by plaintiffs.

precedent requiring application of legislative immunity, allowing this court to disregard their inapplicable citations. Plaintiffs cite to *Hutchinson v. Proxmire*, 443 U.S. 111, 127 (1979) ("Whatever imprecision there may be in the term 'legislative activities,' it is clear that" it does not "create an absolute privilege from liability or suit for defamatory statements made outside the Chamber"), but Commissioner Carollo never argued for blanket immunity. Instead, he indicated his actions furthered a legislative purpose, were within his discretionary authority, and are protected by legislative immunity. The general statements in *Gravel v. United States*, 408 U.S. 606, 625-26 (1972), and *Crymes v. DeKalb County, Ga.,* 923 F.2d 1482, 1485 (11th Cir. 1991), are not relevant here. Accordingly, the SAC's description of Commissioner Carollo's fact-finding, making inquiries, conducting inspections, speaking about the perceived violations of zoning and code enforcement ordinances, and voting on legislation are within his protected legislative ambit.

## VI.     THE COURT SHOULD GRANT THE MOTION TO STRIKE.

Plaintiffs' inclusion of immaterial and irrelevant accusations that are outside the scope of the allowed amendment and are "immaterial, impertinent, or scandalous matter" designed to embarrass and damage Commissioner Carollo individually without a factual or legal connection to the retaliation (SAC ¶¶269-274) should be stricken.

## CONCLUSION

Commissioner Carollo is entitled to the protections of qualified and legislative immunity at the earliest stage of the case. Dismissal for reasons of immunity should be ordered because a fair and plausible reading of the SAC establishes that Commissioner Carollo acted within the discretionary scope and authority of his responsibilities. His alleged conduct did not violate clearly established laws. His actions as a legislator are within the legitimate sphere of his policy-making authorization. This Court should dismiss the SAC with prejudice for reasons of qualified and legislative immunity, for lack of standing, and for failure to state a claim.

Respectfully submitted,

*S/ Thomas E. Scott*
**THOMAS E. SCOTT**
Florida Bar No. 149100
**COLE, SCOTT & KISSANE**
9150 S. Dadeland Blvd., Suite 1400
Miami, FL 33156
Tel: 305.350.5381
Fax: 305.373.2294
Thomas.scott@csklegal.com

*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**MICHAEL T. DAVIS**
Florida Bar No. 63374
**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2 St., Suite 3105
Miami, FL 33131-2154
Tel: 305.789.5989
Fax: 305.789.5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I certify on December 29, 2020, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify this document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

By:    <u>*S/ Benedict P. Kuehne*</u>
       **BENEDICT P. KUEHNE**

12