**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 18-24190-CIV-SMITH

WILLIAM O. FULLER and
MARTIN PINILLA, II,

    Plaintiffs,
v.

JOE CAROLLO,

    Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION TO DISMISS**

    This matter is before the Court on Defendant Commissioner Carollo's Motion to Dismiss Second Amended Complaint; Motion to Strike; Request for Hearing [DE 154], Plaintiff's Opposition [DE 162], and Defendant's Reply [DE 167]. This case arises from Defendant's alleged retaliatory conduct towards Plaintiffs after they supported Defendant's opponent in an election for City Commissioner. Defendant ultimately won the election and Plaintiffs allege that since the election Defendant has subjected Plaintiffs to a campaign of harassment in retaliation for Plaintiffs' exercise of their First Amendment right, thereby violating 42 U.S.C. § 1983. For the reasons set forth below, the Motion is granted in part and denied in part.

**I.    THE SECOND AMENDED COMPLAINT[1]**

    The Second Amended Complaint ("SAC") alleges a single count of First Amendment retaliation against Defendant, in violation of § 1983. Plaintiffs seek monetary damages, including punitive damages, attorneys' fees, and injunctive relief. Plaintiffs are local businessmen who own

---

[1] The Second Amended Complaint is fifty-seven pages long and contains 321 numbered paragraphs. Set forth below is a summary of the allegations.

properties and businesses in the Little Havana neighborhood of Miami.  One of Plaintiff Fuller's businesses is the Ball & Chain nightclub.  Together Plaintiffs are working on redevelopment and restoration of the Tower Hotel.

In the summer of 2017, Defendant announced his campaign for Commissioner for the City of Miami's District 3, which includes Little Havana.  The election required a run-off election between Defendant and another candidate, Alfie Leon.  In November 2017, during the early voting period for the run-off election, a rally in support of Defendant's opponent was held on property that Plaintiffs owned and which was located near a voting center.  Defendant allegedly used his contacts at the City to have Code Enforcement Officers and police shut down the rally.  The following day, the same thing happened.  Defendant won the election.

Under section 4(d) of the City of Miami Charter:

> Except for the purpose of inquiry and as may be necessary as provided in section 14, the mayor, the city commission, any committees and members thereof shall deal with the administrative service solely through the city manager, and neither the mayor nor the city commission, nor any committees nor members thereof shall give orders to any of the subordinates of the city manager, city attorney, city clerk and independent auditor general, either publicly or privately.

Thus, under the terms of the Charter, a commissioner cannot give orders to any subordinates of the City Manager; all orders should be directed to the City Manager who has the authority to give direction to the City departments.

According to the SAC, after Defendant won the election, he began a campaign of retaliation against Plaintiffs.  Defendant immediately drew up a list of Plaintiffs' properties and associated businesses in District 3.  Steve Miro, who had worked on Defendant's campaign, stated that "when [Defendant] took office . . . he went after Mr. Fuller, obviously."  Orlando Diez, the Director of Code Compliance, Construction Manager, Officer of Capital Improvements for the City of Miami

at the time, believed that Defendant, in an indirect way, told him to selectively target Fuller's properties.

On December 15, 2017, Plaintiffs held their annual office holiday party at the Tower Hotel. Defendant conspired with another City employee, Maria Lugo, to shut the party down. Lugo repeatedly called and texted Diez, as the Director of Code Enforcement, insisting that he shut down the event because the party lacked a Special Events Permit. Diez sent a Code Officer to the Tower Hotel to investigate. The Code Officer did not identify any violations but was instructed to wait outside until the party ended. Diez also received a call from Assistant City Manager Alberto Parjus who directed Diez to go to the event himself because complaints were "coming from a Commissioner's office." Diez went to the property with additional Code Enforcement Officers. When Diez spoke to Fuller, he told Fuller that this was a political target and Defendant was behind it.

In fall 2017 a sandwich shop, Sanguish de Miami ("Sanguish"), opened on Plaintiffs' property in a refurbished shipping container. Under the City Code the use of shipping containers for retail business was permitted using Temporary Use Permits ("TUPs"). On November 26, 2017, less than a week after Defendant won the election, Sanguish was raided by 25-30 City enforcement personnel. After the raid, Fuller was contacted by City Manager Daniel Alfonso, who advised that Code Enforcement had been summoned to the property and, when asked if this was retaliation from Defendant, Alfonso replied "si." The owners of Sanguish also contacted Alfonso, who confirmed to them that the raid was performed at the direction of Defendant. In December 2017, Defendant met with Sanguish's owners and he told them they should relocate from Plaintiffs' property. Thereafter, at a December 14, 2017 City Commission meeting, Defendant inserted a provision into another commissioner's legislation that would prevent TUPs from being used in District 3, Ordinance 13733. After additional run-ins with Code Enforcement Officers, Sanguish

ultimately relocated to another location not owned by Plaintiffs. As a result, Plaintiffs have suffered a loss of rental income and other monetary damages.

Plaintiffs are the landlords of and partners in the Union Beer Store in District 3. On February 10, 2018, Union Beer held its one-year anniversary party in the parking lot behind the store. Defendant appeared at the property with police officers and approximately 15-20 Code Enforcement Officers. Defendant then ordered Code Enforcement to shut the party down.

On February 18, 2018, Defendant, and others, entered a parking lot used by the valet operator for Ball & Chain, the nightclub owned by Plaintiff Fuller and others. Defendant informed the valet attendant that he was performing an "official investigation" of the valet operation. When the operator of the valet business arrived, he told Defendant that the lot had been approved by the Miami Parking Authority and that the valet service had a valid lease with the lot owner. Defendant then told the valet operator that "I am the law" and that the operator was "working for a millionaire," meaning Fuller, which was not acceptable to Defendant.

On March 3, 2018, Defendant called a Code Enforcement supervisor and requested that an Officer be sent to District 3 because Defendant had concerns about building permits. When the Officer arrived, Defendant asked to ride along with the Officer to point out five locations, three of which belonged to Plaintiffs, at which Defendant wanted the Officer to search for code violations. After the ride along, Defendant followed up with the Officer to see if any violations had been issued. On March 14, 2018, Defendant arranged for a "park-and-walk" with numerous City officials and employees, in search of code violations.

On March 12, 2018, Plaintiff Fuller, through his company The Barlington Group, filed an Ethics Complaint against Defendant with the Miami-Dade Commission on Ethics and Public Trust.

While the Ethics Complaint was pending, the alleged harassment of Plaintiffs stopped. On August 13, 2018, Fuller withdrew the Ethics Complaint and the harassment began again.[2]

On August 20, 2018, just after withdrawal of the Ethics Complaint, Plaintiffs received a letter from the city which included notice of a Code violation at one of their properties where Plaintiffs intended to put a kiosk marketplace using retrofitted containers. Plaintiffs had a lawful Farmer's Market TUP for the marketplace. On September 4, 2018, the City informed Plaintiffs that it was revoking the TUP that allowed the kiosks on the property. On September 12, 2018, an emergency hearing was held at the Code Enforcement Board Meeting, where the Board granted the City permission to enter the property and remove the kiosks.

Also, after the Ethics Complaint was withdrawn, Defendant reported false noise complaints and parking violations related to the Ball and Chain. Plaintiffs maintain that Defendant also attempted to stop a monthly neighborhood festival, with which they were associated, by closing the venue, Domino Plaza, and then reserving the plaza on the same days as future festivals. Defendant has gone on local radio shows and defamed Plaintiffs, claiming they are associated with corrupt governments and investors.

At a February 14, 2019 City Commission meeting, Defendant raised the issue of Code compliance but only focused his presentation on Plaintiff's properties in District 3. The presentation included false and misleading information about various Code violation on Plaintiffs' properties. The Commissioners passed a resolution calling for a task force to investigate Code compliance issues. After the meeting, the City Attorney asked City administrators to inspect eleven properties, seven of which were owned or affiliated with Fuller. Several City officials expressed concern that this was selective enforcement aimed against a business owner. Plaintiffs

---

[2] Attached to the SAC as Exhibit A is the Miami-Dade Commission on Ethics & Public Trust Investigative Report ("Investigative Report") that resulted from the Ethics Complaint.

have also learned that Defendant has engaged in a campaign to direct City officials to use City resources and funds to purchase properties Plaintiffs were attempting to purchase.

## II. PROCEDURAL HISTORY

On October 11, 2018, Plaintiffs filed their Complaint against multiple defendants, including Defendant Carollo. Thereafter, Plaintiffs filed an Amended Complaint. The defendants filed motions to dismiss the Amended Complaint, which were referred to Magistrate Judge Louis for a Report and Recommendation. On April 30, 2019, Magistrate Judge Louis issued her Report and Recommendation [DE 99] ("R&R").

The R&R, among other things, recommended that Defendant's motion to dismiss the Amended Complaint be granted, with leave to amend. The R&R found that Plaintiffs have standing to bring their First Amendment retaliation claim but recommended that Plaintiffs be granted leave to amend to clarify the injuries for which Plaintiffs seek redress and to clarify the nature of the injunction sought. The R&R also found that Plaintiffs stated a claim upon which relief can be granted for First Amendment retaliation. However, the R&R found that Defendant's actions prior to winning the election were not actionable and neither were Defendant's action regarding the enactment of Ordinance 13733.

The R&R also declined to accept as true the hearsay statements contained in the Investigative Report that resulted from the Ethics Complaint. While those hearsay statements contradict some of the allegations in the Amended Complaint, the R&R declined to consider them to disprove the allegations in the Amended Complaint. The R&R also addressed Defendant's defense of qualified immunity. The R&R found that, while Defendant was acting within his discretionary authority, Plaintiffs had alleged that Defendant violated their constitutional rights, which were clearly established at the time of his wrongful acts. Thus, Defendant was not entitled to qualified immunity. On June 12, 2019, the district court affirmed and adopted the R&R, granted

Defendant's Motion to Dismiss, denied Defendant qualified immunity, and permitted Plaintiffs to file a second amended complaint.

On June 26, 2019, Defendant filed a Notice of Appeal as to the denial of qualified immunity. On June 28, 2019, Plaintiffs filed the SAC, dropping the other defendants and leaving only Defendant Carollo. As to Defendant Carollo, the SAC is nearly identical to the Amended Complaint except for additional allegations regarding Plaintiffs' injuries and damages and the injunctive relief sought. On October 26, 2020, the Eleventh Circuit issued its mandate, in which it dismissed the appeal for lack of jurisdiction because the district court had granted the motion to dismiss with leave to amend.

## III.   MOTION TO DISMISS STANDARD

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. *Id.* It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that

7

is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A complaint can only survive a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555. However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556.

## IV. DISCUSSION

Defendant seeks to dismiss the SAC because: (1) it does not state a claim upon which relief can be granted; (2) Plaintiffs lack standing to assert allegations against Defendant on behalf of non-parties; (3) Defendant is protected by the doctrines of qualified immunity and legislative immunity; and (4) Defendant's actions prior to his election as a City Commissioner cannot give rise to a civil rights claim. Defendant previously raised several of these arguments when he sought to dismiss Plaintiffs' Amended Complaint. Specifically, Defendant previously argued that Plaintiffs lack standing, that Plaintiffs fail to state a claim, and that he is entitled to qualified immunity. The Court, by adopting the R&R, denied Defendant's prior motion to dismiss on these grounds. In addition to the Motion to Dismiss, Defendant also seeks to strike the allegations in six paragraphs of the SAC because they are "immaterial, impertinent, or scandalous matter." The Court will address each of these arguments.

### A. Standing

Defendant argues that the SAC should be dismissed to the extent that it asserts claims on behalf of non-parties. Plaintiffs respond that this Court has already determined that they have standing and, as far as the claims of non-parties, Plaintiffs respond that the SAC alleges the non-parties have assigned their claims to Plaintiffs. Even if the non-parties have assigned their claims to Plaintiffs, there are no claims of First Amendment retaliation pled as to the non-parties.

8

Plaintiffs have not pled that the non-parties exercised their First Amendment rights and were then retaliated against by Defendant. Thus, there is no alleged "claim" for the non-parties to assign. However, as the Court has previously determined, Plaintiffs have adequately pled that they have standing and that the damages Plaintiffs seek are not for the harm suffered by non-parties but for the injuries suffered by Plaintiffs. As the R&R noted, "the conduct alleged to have impacted non-party entities are examples of [Defendant's] retaliatory conduct towards Plaintiffs, as he allegedly targeted all business that Plaintiffs are associated with." (R&R at 7.) Consequently, Defendant's Motion is granted to the extent Plaintiffs seek to recover monetary damages allegedly suffered by non-parties; otherwise, the Motion is denied.

### B. Failure to State a Claim

Defendant contends that the SAC fails to state a claim for violation of § 1983 when the Investigative Report is considered. The Court has already held, in the Order adopting the R&R, that it is not required to accept the statements and representations in the Investigative Report as true and that virtually the same allegations in the Amended Complaint stated a valid claim for First Amendment retaliation. The Court will not revisit this ruling based on Defendant's vague and conclusory statement that the Investigative Report shows that Defendant did not engage in retaliatory conduct. In the instant motion, Defendant points to nothing specific in the Investigative Report that would undermine Plaintiffs' claim. Given that the allegations of the Amended Complaint and the SAC make virtually identical allegations in support of Plaintiffs' claim, Defendant's Motion is denied on this ground.

Defendant also argues that Defendant's alleged violations of the City Charter do not state a civil rights violation. Plaintiffs, however, do not allege that the violation of the City Charter alone constitutes a civil rights violation; instead, the SAC alleges that the violations along with Defendant's other actions amount to a civil rights violation.

9

### C. Qualified Immunity

Defendant maintains that he is entitled to qualified immunity for actions taken in his role as an elected City Commissioner. The Court also previously held that Defendant was not entitled to qualified immunity. In adopting the R&R, the Court found that while Defendant was acting within his discretionary authority, Plaintiffs had met their burden of showing that Defendant had violated a constitutional right and that it was well-settled law that the government may not retaliate against its citizens for expressing their First Amendment rights; therefore, Defendant was not entitled to qualified immunity.

In his Motion, Defendant agrees with the R&R's finding that he was acting in his discretionary role as City Commissioner but again argues that he did not violate Plaintiffs' constitutional rights, nor did he violate clearly established law. Thus, he maintains that he is entitled to qualified immunity. Plaintiffs argue that not only did Defendant violate their clearly established constitutional rights, but Defendant's actions also exceeded his discretionary authority. As noted earlier, the Amended Complaint and the SAC make nearly identical allegations. Because the allegations remain essentially the same and neither side has offered any reason for the Court to reconsider its earlier adoption of the R&R as to the issue of qualified immunity, Defendant's Motion to Dismiss based on qualified immunity is denied. Defendant is not entitled to qualified immunity for the reasons set forth in the R&R.

### D. Legislative Immunity

Defendant argues that he is entitled to legislative immunity, which gives him absolute immunity from suit, because the SAC states that Defendant's actions were in furtherance of his duties. Defendant argues that his immunized conduct encompasses the introduction of legislation, all commentary made during a City Commission meeting, his alleged district inquiries, fact-findings, and investigations as an extension of his policy-making function. While it is not entirely

clear from Defendant's Motion whether he seeks to dismiss the entire SAC based on legislative immunity or whether he seeks to dismiss only portions of it, what is clear is that Defendant has an overly broad view of legislative immunity.

While a defendant performing a legislative function has absolute immunity, merely being a legislator does not confer absolute immunity. *See Crymes v. DeKalb Cty., Ga.*, 923 F.2d 1482, 1485 (11th Cir. 1991). It is the function performed, not the status of the acting officer that determines the degree of immunity. *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir. 1982) (citation omitted). The Eleventh Circuit has explained how to determine whether an act was legislative, and thus entitled to immunity, or whether it was administrative, and thus not entitled to immunity:

> A legislative act involves policy-making rather than mere administrative application of existing policies. *Minton v. St. Bernard Parish School Bd.*, 803 F.2d 129, 135 (5th Cir. 1986) (citing *Hornsby v. Allen*, 326 F.2d 605, 608–09 (5th Cir. 1964)). Acts of zoning enforcement rather than rulemaking are not legislative. *Front Royal & Warren County Industrial Park Corp. v. Front Royal*, 865 F.2d 77, 79 (4th Cir. 1989). If the facts utilized in making a decision are specific, rather than general, in nature, then the decision is more likely administrative. Moreover, if the decision impacts specific individuals, rather than the general population, it is more apt to be administrative in nature. *See Cutting v. Muzzey*, 724 F.2d 259, 261 (1st Cir. 1984). *See generally Developments in the Law–Zoning*, 91 Harv. L. Rev. 1427, 1510–11 (1978).

*Crymes*, 923 F.2d at 1485. Thus, immunity has been found in cases involving the vetoing of an ordinance passed by the city's legislative body, the examining of a person before a legislative committee, and voting on legislation. *Espanola Way*, 690 F.2d at 830.

Based on this, Defendant is not entitled to legislative immunity. Plaintiffs allege that Defendant took multiple actions directed solely at them or directed at others who did business with Plaintiffs, solely for the purposed of harming them. Thus, Defendant's actions were directed at specific individuals, not the general population. Further, many of the allegations in the SAC involve code enforcement, something the Eleventh Circuit has stated is administrative, not

legislative. The only allegations that would fall within the legislative ambit are those concerning the passage of Ordinance 13733, which disallowed TUPs in District 3 only. Thus, as to the allegations directly relating to the passage of Ordinance 13733, Defendant is entitled to legislative immunity.

### E.  Motion to Strike

Defendant moves to strike six paragraphs from the SAC, paragraphs 269-274, that allege Defendant himself has violated City Code. Defendant argues that these allegations are irrelevant to Plaintiffs' claim of retaliation and are included in the SAC to embarrass and damage Defendant individually. Thus, Defendant seeks to strike these allegations pursuant to Federal Rule of Civil Procedure 12(f). Plaintiffs contend that these allegations are not to embarrass or damage Defendant but, instead, help demonstrate Defendant's retaliatory motive. Plaintiffs argue that Defendant's own failure to comply with City Code shows that his actions towards Plaintiffs may not have been solely based on his desire to avoid code violations within his community.

The Court agrees with Plaintiffs. Defendant has maintained that he was just doing his job to ensure code compliance. However, Defendant's own alleged multiple failures to comply with the City Code undermine this contention. Consequently, the allegations are not irrelevant to Plaintiffs' claim and the Motion to Strike is denied.

Accordingly, it is

**ORDERED** that:

1. Defendant Commissioner Carollo's Motion to Dismiss Second Amended Complaint; Motion to Strike; Request for Hearing [DE 154] is **GRANTED in part and DENIED in part:**

    a. The Motion to Dismiss Second Amended Complaint is **GRANTED in part and DENIED in part.** The Motion is granted as to the allegations concerning the passage of

Ordinance 13733 and as to any non-party claims asserted by Plaintiffs.  The Motion is denied in all other respects.

    b.  The Motion to Strike is **DENIED.**

    c.  The Request for Hearing is **DENIED as moot.**

 2. Defendant shall file an answer to the Second Amended Complaint by **May 24, 2021.**

 3. Defendant Commissioner Carollo's Motion to Continue Stay of Discovery Pending Resolution of Motion to Dismiss Second Amended Complaint [DE 172] is **DENIED as moot.**

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 13th day of May, 2021.

_____
RODNEY SMITH
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record