UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:18-cv-24190

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

     Plaintiffs,

v.

JOE CAROLLO,

     Defendant.

_____/

**PLAINTIFFS' VERIFIED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendant Commissioner Carollo is once again misusing his public position as City of Miami District 3 Commissioner in his ongoing retaliation campaign against Plaintiffs – this time, by manipulating the redistricting of the City of Miami to protect his home from being subject to a judgment in this case. On March 11, 2022, the City of Miami Commissioners plan to vote on proposed redistricting maps. If Commissioner Carollo succeeds in creatively redrawing the boundaries of the district he represents to include the only home he owns, he can continue retaliating against Plaintiffs with impunity. His only asset will be shielded from the execution of a judgment through Florida's Homestead Exemption law.

Plaintiffs have had to endure years of retaliation from Carollo in the form of incessant and baseless building code enforcement actions simply for espousing core democratic values of fair and free elections. In Carollo's eyes, Plaintiffs committed

an unpardonable sin when they agreed to support one of Carollo's political opponents. Since that day, Carollo has mercilessly wielded the power of his office to harm Plaintiffs' business interests in Carollo's district. Carollo's retaliation campaign against Plaintiffs has been publicly confirmed by former City of Miami employees. Now Carollo is attempting to wield the power of his office to protect his home from the judgment Plaintiffs will inevitably obtain in this case. Doing so will irreparably harm Plaintiffs who will be further subjected to Commissioner Carollo's unbridled retaliation. Plaintiffs, William O. Fuller ("Fuller") and Martin Pinilla, II ("Pinilla"), therefore, file this motion on an emergency basis seeking to enjoin Carollo from voting on or participating in any way in the redistricting of the City of Miami.

## I. BACKGROUND

Commissioner Carollo is an elected official of District 3 of the City of Miami. District 3 is comprised of Little Havana, East Shenandoah, West Brickell, parts of Silver Bluff, and the Roads.[1] District 3 does not include Coconut Grove. For years, Commissioner Carollo has foregone declaring as his residence the only home he owns in Florida – a home in Coconut Grove that Zillow.com estimates to be worth $2,783,100.00 – so that he can run for Commissioner of District 3. When this lawsuit

---

[1] https://www.miamigov.com/My-Government/City-Officials/District-3-Commissioner-Joe-Carollo.

was initiated, Plaintiffs' counsel publicly stated that Plaintiffs would seek to execute a judgment on Carollo's Coconut Grove home since it is not homestead property. On March 12, 2021, the City's insurance carrier informed Commissioner Carollo that it would not provide him coverage under the City's policy if he was found to have acted outside the scope of his duties as Commissioner for the City of Miami. Ex. 1, Brit Global Specialty 3/12/21 Ltr to J. Carollo at 4. Nearly one year later, on February 4, 2022, the Eleventh Circuit issued an opinion affirming the trial court's denial of Commissioner Carollo's motion to dismiss based on qualified immunity. Ex. 2, *William O. Fuller and Martin A. Pinilla v. Joe Carollo*, et al., No. 21-11746 (11th Cir. Feb. 4, 2022).

Knowing that he has a pending lawsuit against him for which he has no insurance coverage, Commissioner Carollo is actively participating in the City of Miami redistricting efforts and is advocating to extend the district he represents to his property in Coconut Grove. The first proposed redistricting map (shown below) did not include in District 3 Commissioner Carollo's home on Morris Lane. The map largely left Coconut Grove intact, setting natural boundaries at South Bayshore Drive and 17th Avenue.



The new proposed redistricting map includes Commissioner Carollo's Coconut Grove home in District 3 and splits Coconut Grove into three districts. The new map has been criticized not only for disenfranchising Black voters in the West Grove, but also for the nonsensical district boundaries it would create.[2] For example, the new proposed District 3 boundaries would cross over U.S.1 to include Commissioner Carollo's Coconut Grove home and, in the process, split Ransom Everglades School's middle and high school into two separate districts. *Id.*

---

[2] https://www.miaminewtimes.com/news/new-miami-redistricting-proposal-moves-joe-carollos-coconut-grove-house-into-his-district-14018218



## II.  ANALYSIS

Plaintiffs urge the Court to enjoin Commissioner Carollo from further participating in redistricting discussions and from voting on any proposed redistricting maps. To determine whether it should issue injunctive relief, a court considers "(1) whether there is a substantial likelihood that the party applying for preliminary relief will succeed later on the merits; (2) whether the applicant will suffer an irreparable injury absent preliminary relief; (3) whether the harm that the applicant will likely suffer outweighs any harm that its opponent will suffer as a result of an injunction; and (4) whether preliminary relief would disserve the public

interest." *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010) (internal citations omitted).

1. **Plaintiffs Are Likely to Succeed on the Merits of Their First Amendment Retaliation Claim.**

The Eleventh Circuit has already denied Commissioner Carollo's qualified immunity defense. For Plaintiffs to state a claim under 42 U.S.C. § 1983, they must prove that Commissioner Carollo was acting under color of state law. *Jeanty v. City of Miami*, 876 F. Supp. 2d 1334, 1340 (S.D. Fla. 2012). Commissioner Carollo is only able to carry out his retaliation campaign against Plaintiffs because, as a Commissioner, he is able to wield the power of municipal agencies. "A person acts under color of state law by acting with power possessed by-virtue of the defendant's employment with the state." *Id.* (citing *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995)). His retaliatory acts involved the misuse of Code Enforcement, the Police Department, and the Fire Department. And, this latest act of retaliation, involves his position as a commissioner involved in redistricting in the City of Miami. Commissioner Carollo has always meted out his retaliation under color of state law.

To demonstrate that the deprivation of a constitutional right was as a result of retaliation, Plaintiffs must establish that (1) their speech was constitutionally protected; (2) the retaliatory conduct "would likely deter a person of ordinary firmness" from engaging in the protected speech; and (3) there is a causal connection

between the retaliatory conduct and the protected speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250-51 (11th Cir. 2005).

Plaintiffs' support of a political opponent and their filing of an Ethics Complaint Against Commissioner Carollo is speech protected under the First Amendment. Plaintiffs' protected speech included allowing Commissioner Carollo's opponent to hold rallies on Plaintiffs' property during the November 2017 run-off election. "Indeed, the First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989) (citing *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971)). The First Amendment "prohibits government retaliation against a person for exercising his rights to free speech and association, including supporting the political party and candidates of his choice." *Rodriguez v. City of Doral*, 863 F.3d 1343, 1345 (11th Cir. 2017). "The speech component of the First Amendment is far-reaching and includes various methods of communication, including a political speech or rally." *Pritchard v. Carlton*, 821 F. Supp. 671, 674 (S.D. Fla. 1993) (citing *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 390 (1969)). Moreover, Plaintiffs' filing of an ethics complaint is also protected under the First Amendment. *Thomas v. Ragland*, 324 F. Supp. 2d 950, 971 (W.D. Wis. 2004) (holding the filing of the "plaintiff's ethics complaint was protected conduct under both the First Amendment and Title VII.").

Soon after Plaintiffs showed their support for Commissioner Carollo's political opponent, Commissioner Carollo began his retaliation campaign. Commissioner Carollo developed a list of Plaintiffs' properties,[3] walked up and down 8th Street with Code Enforcement and other City officials pointing out properties that had violations and "obviously, they were [Fuller's] businesses,"[4] and instructed code enforcement officers to find violations.[5] His misuse of power to retaliate against Plaintiffs was widely known amongst City of Miami employees. Commissioner Carollo's former employee, Steve Miro, said in a sworn statement: "When [Carollo] took office, . . . he went after Mr. Fuller, obviously." *Id*. After Plaintiffs' holiday party was raided by code enforcement officers, Director of Code Enforcement Orlando Diez told Fuller that the raid had been politically motivated. D.E. 125 at ¶¶ 86-87. City Manager Daniel Alfonso also confirmed for Fuller that the code enforcement raid on Sanguich – a business being operated out of Plaintiffs' property – was politically motivated. D.E. 125 at ¶ 99. The raid on Sanguich consisted of 25 to 30 City employees from the police, fire, and building departments. *Id* at ¶ 98.

Most recently, former City of Miami Police Chief Hubert Arturo "Art" Acevedo sued Commissioner Carollo and gave a detailed description of

---

[3] Ex. 3, 8/3/2018 S. Miro Sworn Statement at 6:22-7:16.
[4] *Id.* at 8:16-20.
[5] *Id.*

Commissioner Carollo's retaliation efforts against Plaintiffs. Acevedo explains in his Complaint that, shortly after he was sworn in as Chief of Police, numerous City of Miami officials made comments to him about Fuller. Ex. 4, *Hubert Arturo Acevedo v. City of Miami, et al.*, No. 22-20224 (S.D. Fla. Jan. 19, 2022) at ¶ 43. City Manager Arthur Noriega told Acevedo that "Commissioner Carollo did not like Mr. Fuller[,]" *id.* at ¶ 44, and explained that "Carollo's dislike of Mr. Fuller stemmed from Mr. Fuller's public support of a Carollo political opponent[,]" *id.* at ¶ 46. Noriega, Mayor Francis Suarez, and Commissioner Alex Diaz de la Portilla warned Acevedo to "stay away from" and "avoid patronizing [any Fuller-owned businesses] to avoid incurring the wrath of Commissioner Carollo." *Id.* at 47-49. Commissioner Diaz de la Portilla warned that Commissioner Carollo would "go crazy" if he caught Acevedo going into any Fuller-owned businesses. *Id.* at 48.

Acevedo quickly learned that the warnings were no exaggeration. He was sworn in as Chief of Police on April 5, 2021. *Id.* at ¶ 5. Two days prior, on April 3, 2021, Noriega asked Acevedo to go to one of Plaintiffs' businesses – Taquerias – where, upon arrival, Acevedo saw Noriega "personally looking into possible 'violations' by Taquerias and conducting certain measurements of the property." *Id.* at ¶ 54. Noriega explained that he was acting at Carollo's direction "who had an 'absolute disdain' for Fuller." *Id.* at ¶ 55. Approximately two weeks later, on April 22, 2021, the Commission held a meeting, during which Commissioner Carollo

introduced a "pocket item." *Id.* at ¶¶ 56, 58. The pocket item was a Commission resolution directing the City Manager to create an operational task force to combat criminal activities. *Id.* at ¶ 59. Afterward, the Miami Police Department ("MPD") conducted three unannounced inspections of Taquerias. *Id.* at ¶ 79. During the last inspection, MPD officers arrested Taquerias' general manager for allegedly operating a nightclub – a charge that the State Attorney's Office ultimately dropped. *Id.* During another meeting with Acevedo, Noriega, and MPD Officer Morales, Commissioner Carollo focused "almost exclusively on Fuller-owned businesses," emphasizing "the need to investigate Fuller-owned businesses and claimed that Fuller was bribing code enforcement officials and police officers." *Id.* at ¶¶ 80-82. Acevedo, as well as two high-ranking officers in the Internal Affairs Department, saw no evidence to support Carollo's bribery allegations. *Id.* at ¶ 83.

      In addition to Acevedo, Miro, and Diez, there are other former City of Miami officials who confirm that Commissioner Carollo engaged in a public (amongst City of Miami officials) retaliation campaign against Plaintiffs. Given the independent testimony that these witnesses will offer at trial and the clearly established First Amendment protection afforded to political speech, Plaintiffs are very likely to succeed on the merits of their First Amendment claim.

      Any citizen facing the prospect of being subjected to the retaliatory acts that Plaintiffs have had to endure would be deterred from exercising his or her First

Amendment rights. A citizen of ordinary firmness would cower at the prospect of being harassed by the Police, the Fire Department, and Code Enforcement. Commissioner Carollo's blatant and publicly known misuse of municipal resources to harass constituents who dared to support a political opponent will undoubtedly serve to deter other people from exercising their First Amendment rights to challenge Commissioner Carollo in any way. *See Bennett v. Hendrix*, 423 F.3d 1247, 1252 (11th Cir. 2005) (holding that a plaintiff need not show that his speech was actually deterred, but only that "the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights").

The close temporal proximity between Plaintiffs' protected speech and Commissioner Carollo's retaliatory acts establish a causal connection. *Alvarez v. Sec'y Florida Dept. of Corr.*, 646 Fed. App'x 858, 865 (11th Cir. 2016). "The causal-connection inquiry asks whether the defendants were subjectively motivated to retaliate because the plaintiffs engaged in protected speech." *Indigo Room, Inc. v. City of Fort Myers, et al.*, 589 Fed. App'x 938, (11th Cir. 2014) (citing *O'Bryant v. Finch*, 637 F.3d 1207, 1217 (11th Cir. 2011)). And, "[s]ubjective motivation in turn requires that the defendants had actual knowledge of the plaintiffs' protected speech, which can be established by circumstantial evidence." *Id.* (citing *Brungart v. BellSouth Telecomms., Inc,*, 231 F.3d 791, 798-800 (11th Cir. 2000)). Here, Miro, while he was still working for Commissioner Carollo, confronted Fuller by phone

and demanded that he shut down the rally that Commissioner Carollo's political rival was holding on Plaintiffs' property during their run-off election. D.E. 125 at ¶ 48. Commissioner Carollo and others acting at his direction worked their contacts at the City and engineered a shutdown of the rally by Code Enforcement Officers and the police, forcing all attendees to leave. *Id.* at ¶ 42. Then, Miro testified that Commissioner Carollo "went after" Fuller as soon as he took office. *Id.* at ¶ 60. This small sampling of facts alone is sufficient to establish the causal connection between Plaintiffs' protected speech and Commissioner Carollo's retaliatory conduct.

Commissioner Carollo's participation in the City of Miami redistricting is a continuation of his constant misuse of power and a natural extension of his retaliation campaign against Plaintiffs. The redistricting of District 3 is the mechanism that will allow Commissioner Carollo to continue retaliating with impunity. Under Florida Statute § 112.3143(3)(a), Commissioner Carollo is prohibited from voting on the proposed redistricting plan. The statute reads: "No county, municipal, or other local public officer shall vote in an official capacity upon any measure which would inure to his or her special private gain or loss . . . ." His vote on redistricting maps that include in District 3 – the district he represents as a commissioner – the only property he owns in the City of Miami is a clear violation of Florida law. Despite the prospect of another investigation by the Commission on Ethics, Commissioner Carollo has participated in the redistricting proposals and

12

plans to vote on the redistricting map on March 11. If the Commission approves the proposed redistricting maps, Commissioner Carollo will be able to claim homestead exemption on his Coconut Grove home and shield that home from a judgment in this case. Without any prospect of having to face the financial consequences for his behavior, Commissioner Carollo will be further emboldened to mete out more retaliation.

### 2. Without a Preliminary Injunction, Plaintiffs Will Suffer Irreparable Injury.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The loss of First Amendment freedoms "constitutes irreparable injury justifying the grant of a preliminary injunction." *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983); *see also KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) (explaining that "the injury in this case constituted 'direct penalization, as opposed to incidental inhibition' of First Amendment rights and thus could not be remedied absent an injunction."). Once Commissioner Carollo succeeds in including his only home in the City of Miami into District 3 and can protect it through homestead exemption without losing his job, there will be no check whatsoever on the retaliation he will inflict on Plaintiffs. Plaintiffs business interests, which have already suffered tremendously due to Commissioner Carollo's retaliation, will suffer even greater harm.

### 3. The Harm to Plaintiffs Will Outweigh Any Harm to Commissioner Carollo, Plus a Preliminary Injunction Under These Facts Can Only Serve the Public Interest.

The harm to Plaintiffs and their business interests outweighs any harm to Commissioner Carollo who has, for years, been elected in a district that he has been accused of not living in and misused his public office to retaliate against Plaintiffs and others for their exercise of First Amendment rights. All that an injunction would require of Commissioner Carollo is that he comply with the law. Furthermore, "the public interest is always served in promoting First Amendment values . . ." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1276 (11th Cir. 2001); *Univ. Books & Videos, Inc. v. Metro. Dade County*, 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999) (explaining that "[t]he public interest is always served when constitutional rights, especially free speech, are vindicated."). Preventing an elected official from manipulating the legislative process to gain a personal benefit is also of the greatest public interest, as evidenced by clear Florida law – Florida Statute § 112.3134 – enacted to prevent such self-dealing and abuse of power.

### 4. The Preliminary Injunction Should Issue Without a Bond.

Although Federal Rule of Civil Procedure 65(c) contemplates that the movant will pay a bond, district courts have discretion to waive bond and frequently do so in cases raising constitutional issues. *See, e.g., Broward Coalition of Condo. Homeowners Assoc. & Community Org., Inc. v. Browning*, 2008 WL 4791004, at

\*15 (N.D. Fla. Oct. 29, 2008) (waiving bond requirement where restrictions imposed by regulation violated plaintiffs' First Amendment rights of free speech). This discretion has been regularly exercised by federal courts in Florida. *See*, *e.g.*, *Complete Angler, LLC v. City of Clearwater, Fla.*, 607 F. Supp. 2d 1326, 1335-36 (M.D. Fla. 2009) (granting preliminary injunction as to plaintiffs' First Amendment claim and waiving bond); *FF Cosmetics FL Inc. v. City of Miami Beach, Florida*, 129 F. Supp. 3d 1316, 1336 (S.D. Fla. 2015), aff'd, 866 F. 3d 1290 (11th Cir. 2017) (waiving bond because "to preliminarily enjoin the challenged ordinances is to vindicate the public interest in the freedom of speech); *Gilio ex rel. J.G. v. Sch. Bd. of Hillsborough County, Fla.*, 905 F. Supp. 2d 1262, 1276 (M.D. Fla. 2012) (holding that, where a plaintiff's fundamental constitutional right of free speech is at issue, it is appropriate to waive bond requirement). Accordingly, Plaintiffs request that the court waive the posting of a bond.

### III.   CONCLUSION

Commissioner Carollo's attempt to redraw the boundaries of District 3 to include his Coconut Grove home is another move in support of his retaliation against Plaintiffs. Plaintiffs William O. Fuller and Martin A. Pinilla respectfully urge the Court to enter an emergency temporary restraining order prohibiting Commissioner Carollo from participating in any further discussions concerning the redistricting of the City of Miami, prohibiting Commissioner Carollo from voting on any proposed

redistricting maps at the commission meeting scheduled for March 11, 2022, allowing Plaintiffs discovery prior to a preliminary injunction hearing, and affording Plaintiffs an evidentiary hearing on their motion for preliminary injunction. Plaintiffs also urge the Court to enter any alternative relief necessary to protect the court's authority, such as delaying the vote on any proposed redistricting maps.

## EMERGENCY MOTION CERTIFICATION

After reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical, non-routine issue after the expiration of seven days. I understand that an unwarranted certification may lead to sanctions.

## NOTICE TO OPPOSING PARTY

This motion was emailed to counsel for Defendant Joe Carollo via CM/ECF.

## VERIFICATION

I, William O. Fuller, verify under penalty of perjury that I have read the above Motion and its contents. As to the allegations in the Motion of which I have personal knowledge, I verify that those allegations are true and correct. As to any allegations stated in the Motion of which I do not have personal knowledge, I verify that I believe those allegations to be true based on the specified information and documents contained in and attached to the Motion.

Dated: 3/8/2022                    _____
                                    William O. Fuller

I, Martin Pinilla, II, verify under penalty of perjury that I have read the above Motion and its contents. As to the allegations in the Motion of which I have personal knowledge, I verify that those allegations are true and correct. As to any allegations stated in the Motion of which I do not have personal knowledge, I verify that I believe those allegations to be true based on the specified information and documents contained in and attached to the Motion.

Dated: 3/8/2022                    _____
                                    Martin Pinilla, II


Respectfully submitted,

**AXS LAW GROUP, PLLC**
2121 NW 2nd Avenue, Suite 201
Miami, FL 33127
Tel:  305.297.1878

By: */s/ Jeffrey W. Gutchess*
Jeffrey W. Gutchess
Florida Bar No. 702641
jeff@axslawgroup.com


*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the forgoing was served via CM/ECF on counsel of record in this action on this 8th day of March 2022.

*/s/ Jeffrey W. Gutchess*
Jeffrey W. Gutchess