**Defendant, Joe Carollo's Motion to Strike - Index to Exhibits**
**CASE NO. 18-24190-CIV-SMITH**

| Exhibit No. | Date | Description |
|---|---|---|
| 1 | 11/2/2019 | Order Granting Defendants' Motion to Dismiss Pursuant to Florida's Anti-SLAPP Statute, in *Lam v. Univision Communications, Inc.*, Miami-Dade County Circuit Court Case No.: 2019-016891-CA-01 (Trawick, J.) |
| 2 | 01/21/2021 | Opinion of three-judge panel of the Miami-Dade County Circuit Court in the case styled, *Calle Ocho Marketplace, LLC v. City of Miami, Code Enforcement*, Case No. 2018-299 AP 01 (Trawick, Walsh, and Santovenia, JJ.) |
| 3 | 11/9/2020 | Defendants' Motion to Dismiss, in *The Mad Room, LLC v. El Paraiso Home, Inc., and Gustavo E. Perez*, Miami-Dade County Circuit Court Case No. 2020-22085 |
| 4 | 11/24/2020 | Plaintiff's Notice of Dismissal, in *The Mad Room, LLC v. El Paraiso Home, Inc., and Gustavo E. Perez*, Miami-Dade County Circuit Court Case No. 2020-22085 |
| 5 | 06/05/2012 | Repair or Demolish – First Notice as to 1450 SW 7th Street, Unsafe Structures Case No. BB2012010271 with 5/31/2012 photos |
| 6 | 06/25/2012 | Stop Work Order as to 1450 SW 7th Street, with 6/25/2012 photos |
| 7 | 08/24/2012 | Repair or Demolish – Final Notice and Notice of Violation – Pending Lien, as to 1450 SW 7th Street, Unsafe Structures Case No. BB2012010271 |
| 8 | 07/27/2022 | Screenshot of Status of 1450 SW 7th Street |
| 9 | 01/08/2018 | Stop Work Order as to 1450 SW 7th Street with 1/8/2018 photos |
| 10 | 02/23/2018 | Order of the Unsafe Structures Panel to Repair or Demolish Unsafe Structure as to 1450 SW 7th Street, Unsafe Structures Case No. BB2012010271 |
| 11 | 07/23/2018 | Compliance Agreement as to 1450 SW 7th Street, Unsafe Structures Case No. BB2012010271 |
| 12 | 02/14/2019 | City of Miami Commission Meeting Minutes |
| 13 | 03/08/2018 | City of Miami's Petition for Injunctive Relief with exhibits, in *City of Miami v. Futurama, LLC and Brush and Bristle Corporation*, Miami-Dade County Circuit Court Case No.: 2018-006898 |
| 14 | 10/10/2018 | City of Miami's Notice of Voluntary Dismissal Due to Compliance, in *City of Miami v. Futurama, LLC and Brush and Bristle Corporation*, Miami-Dade County Circuit Court Case No.: 2018-006898 |
| 15 | 02/27/2018 | Letter to Commissioner Carollo from Brad Cohen |
| 16 | 05/22/2017 | Notice of Violation as to 1380 SW 8th Street, Calle Ocho Marketplace, Case No. CE2017009206 |
| 17 | 09/24/2018 | City's Motion to Dismiss for Lack of Jurisdiction with exhibits in *Calle Ocho Marketplace, LLC vs. City of Miami Unsafe Structures Panel*, Miami-Dade County Circuit Court Case No: 2018-3172 |

| Exhibit No. | Date | Description |
|---|---|---|
| 18 | 09/19/2018 | Verified Complaint for Injunctive Relief executed by Fuller with exhibits in *Calle Ocho Marketplace, LLC vs. City of Miami Unsafe Structures Panel*, Miami-Dade County Circuit Court Case No: 2018-3172 |
| 19 | 05/12/2022 | City of Miami Notice of Immediate Demolition |
| 20 | 09/25/2018 | Order Granting City's Motion to Dismiss in *Calle Ocho Marketplace, LLC vs. City of Miami Unsafe Structures Panel*, Miami-Dade County Circuit Court Case No: 2018-3172 (Ruiz, J.) |
| 21 | Various | Noise complaints as to Ball & Chain, Plaintiffs' nightclub |
| 22 | 09/10/2018 | Transcript of radio program of Raul Martinez and Ronald Acha interview with William Fuller |
| 23 | 10/13/2020 | Plaintiffs' Complaint in *The Mad Room, LLC v. El Paraiso Home, Inc., and Gustavo E. Perez*, Miami-Dade County Circuit Court Case No. 2020-22085 |
| 24 | Multiple | Compliance Agreement dated July 23, 2018 as to 1460 SW 7th Street, Unsafe Structures Case No. BB2018000468, and Compliance Agreement dated October 12, 2021 as to 1460 SW 7th Street, Unsafe Structures Case No. BB2020012200 |
| 25 | | Offstreet Parking Guides and Standards found in Public Works |
| 26 | 09/27/2016 | Viernes Culturales Applications |
| 27 | 05/18/2022 | Hearing transcript, *Tower Hotel LLC, Piedra Villas, LLC, Beatstik LLC El Shopping LLC, and Yo Amo Calle Ocho Siete LLC v. City of Miami*, Miami-Dade County Circuit Court Case No. 2022-8069 (Fine, J.) |
| 28 | 11/18/2017 | Notice of Violation, failure to obtain temporary use permit for rally, Case No. CE2017019529 |
| 29 | Multiple | Composite Exhibit as to 300 SW 12th Avenue (Folio No. 01-4102-006-3850), Unsafe Structures Case No. BB2020017697<br>9/30/2020 – First Notice – Repair or Demolish; Unsafe Structure<br>4/12/2021 – Notice of Unsafe Structure Violation<br>4/16/2021 – Notice of Hearing before Unsafe Structures Panel<br>5/21/2021 – Order of Unsafe Structures Panel<br>10/12/2021 – Compliance Agreement |
| 30 | Multiple | Composite Exhibit as to 439 NW 4th Avenue (Folio No. 01-0107-040-1090), Unsafe Structures Case No. BB2016017191<br>9/6/2016 – Notice of Violation; Unpermitted Work<br>1/12/2022 – Unsafe Structure Violation – First Notice; Unpermitted Work<br>1/14/2022 – Notice of Hearing before Unsafe Structures Panel<br>2/18/2022 – Order of the Unsafe Structures Panel |

| Exhibit No. | Date | Description |
|---|---|---|
| 31 | Multiple | Composite Exhibit as to 1450 SW 7th Street (Folio No. 01-4102-006-6270), Unsafe Structures Case No. BB2012010271<br>6/1/2012 – Stop Work Order (part of Exhibit 5)<br>6/5/2012 – Repair or Demolish – First Notice; Unsafe Structure; Unpermitted Work (part of Exhibit 5)<br>6/25/2012 – Stop Work Order (part of Exhibit 6)<br>8/24/2012 – Repair or Demolish - Final Notice; Unpermitted Work; Failure to Comply with Stop Order<br>8/24/2012 – Notice of Violation – Pending Lien; Unsafe Structure<br>1/8/2018 – Stop Work Order; Unpermitted Work; Unsafe Structure (part of Exhibit 9)<br>1/22/2018 – Notice of Hearing before Unsafe Structures Panel<br>2/23/2018 – Order of the Unsafe Structures Panel<br>7/23/2018 – Compliance Agreement |
| 32 | Multiple | Composite Exhibit as to 1460 SW 7th Street (Folio No. 01-4102-006-6280); multiple structures, adjacent to the Tower Hotel<br>   1. Unsafe Structures Case No. BB2018000468<br>1/9/2018 - Repair or Demolish – First Notice; Unsafe Structure; Unpermitted Work<br>1/22/2018 – Notice of Hearing before Unsafe Structures Panel for hearing on 2/23/2018<br>2/13/2018 – Notice of Unsafe Structure Violation<br>7/23/2018 – Compliance Agreement<br>   2. Unsafe Structures Case No. BB2020012200<br>7/2/2020 – Notice of Violation; Unpermitted Work<br>10/5/2020 – Final Notice – Repair or Demolish; Unpermitted Work<br>10/19/2020 – Notice of Hearing before Unsafe Structures Panel for hearing on 11/20/2020<br>11/20/2020 – Order of the Unsafe Structures Panel<br>10/12/2021 – Compliance Agreement |
| 33 | Multiple | Composite Exhibit as to 1444 SW 7th Street (Folio No. 01-4102-006-6260), adjacent to the Tower Hotel<br>1/9/2018 – Repair or Demolish – First Notice; Unsafe Structure; Unpermitted Work, BB2018000467<br>7/23/2018 – Compliance Agreement, BB2012021798<br>7/24/2019 – Stop Work Order |
| 34 | Multiple | Composite Exhibit as to 1558 SW 7th Street and 1568 SW 7th Street (Folio No. 01-4102-006-6130), Unsafe Structures Case No. BB2020017396<br>9/25/2020 – Notice of Violation for Unsafe Structure and Unpermitted Work<br>7/23/2021 – Order of the Unsafe Structures Panel<br>1/13/2022 –Notice of Demolition<br>2/7/2022 – Compliance Agreement |

| Exhibit No. | Date | Description |
|---|---|---|
| 35 | Multiple | Composite Exhibit as to <u>2610 SW 8th Street and 2614 SW 8th Street</u> (Folio No. 01-4110-009-0010), Unsafe Structures Case Nos. BB2019009159 and BB2020022008<br>5/9/2019 – Stop Work Order and Repair or Demolish – First Notice, Unpermitted Work<br>7/23/2021 – Repair or Demolish – Final Notice, Unpermitted Work<br>8/4/2021 – Notice of Hearing before Unsafe Structures Panel<br>9/1/2021 – Compliance Agreement<br>2/4/2022 – Compliance Agreement |
| 36 | Multiple | Composite Exhibit as to <u>1380 SW 8th Street</u> (Folio No. 01-4111-014-0170), Code Enforcement Case No. CE2017009206<br>5/22/2017 – Notice of Violation<br>1/21/2021 – Opinion of three-judge panel of the Miami-Dade County Circuit Court, *Calle Ocho Marketplace, LLC v. City of Miami*, Code Enforcement, Case No. 2018-299 AP 01 (Trawick, Walsh, and Santovenia, JJ.) (<u>Exhibit 2</u>) |
| 37 | Multiple | Composite Exhibit as to <u>827 SW 14th Avenue</u> (Folio No. 01-4111-014-0150), Unsafe Structures Case No. BB2018006046<br>3/30/2018 – Repair or Demolish – First Notice; Unsafe Structure; Unpermitted Work<br>4/23/2018 – Notice of Hearing before Unsafe Structures Panel<br>5/25/2018 – Order of the Unsafe Structures Panel<br>9/7/2018 – Final Notice to Vacate Unsafe Structure for Demolition |
| 38 | Multiple | Composite Exhibit as to <u>1530 SW 7th Street</u> (Folio No. 01-4102-006-6070), Code Enforcement Case No. CE2019002515 (parking lot) |
| 39 | Multiple | Composite Exhibit as to <u>1501 SW 8th Street</u> (Folio No. 01-4102-006-6210)<br>   1. Work performed without a permit Case No. CE2019005418<br>3/27/2019 – First Inspection; Violation Date; Construction work completed without a permit<br>3/28/19 – Notice of Violation Posted<br>12/5/19 – Found guilty<br>   2. Unsafe Structures Case No. BB2021005979<br>3/26/2021 – First Inspection; Unsafe Structure; Permits Required<br>3/29/2021 – First Notice<br>   3. Erection of a Sign without a Permit Case No. CE2021013580<br>7/13/2021 – First Inspection; First Notice Violation Date; Unpermitted Work |
| 40 | Multiple | Composite Exhibit as to <u>1530 SW 7th Street</u> (Folio 01-4102-006-6070)<br>   1. Work performed without a permit; illegally operating a business in a residential zone Case No. CE2019009230<br>5/9/2019 – First Inspection; Violation Date; First Notice<br>5/22/2019 – Notice of Hearing, set hearing for 9/5/2019 |

4

| Exhibit No. | Date | Description |
|---|---|---|
| | | 2. No Certificate of Use; illegally operating a business in a residential zone Case No. CE2018019722<br>9/15/2018 – First Inspection; Violation Date; Notice of Violation |
| 41 | Multiple | Composite Exhibit as to <u>1549 SW 8th Street</u> (Folio 01-4102-006-6170 Unsafe Structures Case No. BB2022001843<br>4/12/2022 – First Inspection; Violation Date; First Notice |
| 42 | Multiple | Composite Exhibit as to 1521 SW 8th Street – Folio 01-4102-006-6200 Unsafe Structure, Failure to Obtain Permit Case No. BB2016023422<br>12/5/2016 – Demolition/construction taking place without permits<br>12/5/2016 – Stop Work Order<br>12/7/2016 – Notice of Violation<br>1/13/2022 – Notice of Violation<br>1/20/2022 – Compliance Agreement |
| 43 | Multiple | Composite Exhibit as to 1247 SW 4th Street – Folio 01-4102-006-3970 Unsafe Structures Case No. BB2022001883<br>4/14/2022 – First Inspection; Violation Date; First Notice<br>4/26/2022 – Lien recorded; Notice of Violation<br>4/27/2022 – Posting of Notice; Inspection |
| 44 | Multiple | Composite Exhibit as to 1551 SW 8th Street – Folio 01-4102-006-6160 Unsafe Structures Failure to obtained 40-50 year recertification Case No. BB2022002451<br>4/30/2022 – First Inspection; Violation Date<br>8/24/22 – Posted Notice |
| 45 | Multiple | Composite Exhibit as to <u>1378 SW 8th Street</u> (Folio 01-4111-014-0170)<br>   1. Unsafe Structures Case No. BB2018002766<br>2/9/2018 –Violation Date; First Inspection<br>   2. Work performed without a permit Case No. CE2018009457<br>5/4/2018 –Violation Date; First Inspection<br>6/13/2018 – Hearing Date<br>9/12/2018 – Hearing date; adjudicated guilty<br>10/11/2018 – Lien recorded<br>   3. Failure to obtain Temporary Use Permit Case No. 2017018176<br>10/26/2017 – Violation Date; First Inspection<br>10/30/2017 – Posted Notice of Violation<br>12/13/2017 – Hearing<br>   4. Unsafe Structures; Failure to Obtain Permit Case No. BB2018005372<br>3/21/2018 – First Inspection; Violation Date<br>5/18/2018 – Notice of Hearing<br>6/22/2018 – Hearing Date |
| 46 | 10/16/2018 | Letter from owner of Velvet Crème Doughnut & Coffee Company |

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2019-016891-CA-01
SECTION: CA25
JUDGE: Daryl E Trawick

**Carlos ENRIQUE Luna LAM et al**

Plaintiff(s) / Petitioner(s)

vs.

**Univision Communications, Inc. et al**

Defendant(s) / Respondent(s)

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FLORIDA'S ANTI-SLAPP STATUTE, FLA. STAT. § 768.295

This case is before the Court on a motion to dismiss brought pursuant to Florida's Anti-SLAPP statute, Fla. Stat. § 768.295, by Defendants Univision Communications Inc., Univision Interactive Media, Inc., The Univision Network Limited Partnership (collectively, "Univision"), and journalist Gerardo Reyes (collectively, with Univision, "Defendants"). Defendant Peniley Ramírez has not yet been served, has not yet appeared before this Court, and did not join in the instant motion.

The case arises from a series of news reports (the "News Reports") that Univision published beginning December 2, 2018, about, among other things, a Guatemalan mega-church known as Iglesia Cristiana Casa de Dios ("Casa de Dios" or the "church") and its internationally famous pastor Carlos Enrique Luna Lam ("Luna"), who goes by "Cash."

Casa de Dios and Luna (collectively, "Plaintiffs") sued Defendants for defamation arising out of the News Reports. In particular, their Complaint identifies 68 allegedly false and defamatory statements, all of which center on the allegation that the News Reports falsely accused them of accepting significant sums of money from a well-known Guatemalan drug trafficker named Marllory Chacón, also known as

the "Queen of the South."

As is clear from the face of the News Reports, Defendants based them on information they obtained from multiple sources, both human and documentary. One of their sources was Jorge Mauricio Herrera Bernal, an informant for the Drug Enforcement Administration ("DEA"). He appears on camera in the News Reports stating that he witnessed several conversations between Chacón and Luna concerning her financial support of Plaintiffs. Defendants also interviewed on camera (though they concealed his identity) a second source who said he personally delivered a bag of Chacón's money to Luna. As a result of the News Reports, the Guatemalan Attorney General opened an investigation into Plaintiffs that remains ongoing. Compl. ¶ 10.

The only issue before the Court is whether Plaintiffs have, consistent with the requirements of Florida's Anti-SLAPP statute, adequately pleaded facts that, if proven, would establish "actual malice"—*i.e.*, that Defendants published the News Reports either knowing they were false or with a high degree of subjective awareness that they were probably false. *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). The precise contours of the many challenged statements and whether Plaintiffs can prove they are materially false is not currently at issue, nor is Plaintiffs' public or private status at issue because they concede they are public figures who must meet the actual malice threshold for their case to go forward. The Court will first address the standard of review for a motion to dismiss brought pursuant to the Anti-SLAPP statute. It will then address whether Plaintiffs have satisfied their burden to plead facts that, if proven, would establish that Defendants published the News Reports with actual malice.

I. **The Anti-SLAPP statute requires Plaintiffs—not Defendants—to prove their claims are not "without merit."**

Florida's Anti-SLAPP statute provides, in pertinent part, that no person may file any lawsuit against another "without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue." Fla. Stat. § 768.295(3). Florida law

has long recognized that defamation claims warrant special vigilance in order to protect First Amendment values. *See Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997); *Smith v. Cuban Am. Nat'l Found*, 731 So. 2d 702, 704 (Fla. 3d DCA 1999). The Anti-SLAPP statute heightens that vigilance and shields individuals and entities from the often-crushing expense of lawsuits brought by powerful, moneyed plaintiffs for no other reason than to silence criticism and stifle dissent. The statute itself states that "[i]t is the intent of the Legislature to protect the right in Florida to exercise the rights of free speech in connection with public issues," that prohibiting SLAPPs ("strategic lawsuits against public participation") will "preserve the constitutional rights of persons in Florida," and that such suits must be "expeditiously disposed of by the courts." Fla. Stat. § 768.295(1).

The News Reports at issue here are precisely the sort of speech the Anti-SLAPP statute was enacted to protect. Investigated over the course of at least six months by Defendant Reyes, a Pulitzer Prize winning journalist, the News Reports address issues of utmost public interest and concern: the rise of extravagant mega-churches in impoverished countries such as Guatemala based on the "prosperity gospel," a theology that espouses wealth as a blessing from God. The Anti-SLAPP statute applies to a "television program," "news report," or "other similar work," Fla. Stat. § 768.295(2)(a), and Plaintiffs concede it applies here. They argue, however, that the Anti-SLAPP standard of review on a motion to dismiss is identical to that under Florida Rule of Civil Procedure 1.140 and that, as such, the Court must accept Plaintiffs' allegations as true and may not look beyond the four corners of Plaintiffs' complaint. *See* Opp. at 18-20.

Plaintiffs' argument contravenes the plain language of *Gundel v. AV Homes, Inc.*, 264 So. 3d 304 (Fla. 2d DCA 2019), which controls this Court's analysis. In *Gundel*, Florida's Second DCA agreed that the Anti-SLAPP statute requires courts to "***do more*** than accept as true the factual allegations in the four corners of the complaint and draw all reasonable inferences therefrom in favor of the claimant." *Id.* at 314 (emphasis added). The *Gundel* court acknowledged that the Anti-SLAPP statute "is silent as to the

burden or procedure for considering a motion to dismiss." *Id.* It nevertheless concluded that the statute's language "supports requiring the claimant to meet a burden," that the burden is to "demonstrate that the claims are not 'primarily' based on First Amendment rights" and not 'without merit,'" and that the lower court should have considered an affidavit the defendants had submitted in support of their Anti-SLAPP motion. *Id.* at 314-15.

In sum—and in contrast to the standard under 1.140—*Gundel* stands for the following propositions:

- Rather than defendants having to show that plaintiffs have failed to state a claim, plaintiffs faced with an Anti-SLAPP motion have the burden to show their claims are not "without merit,"
- As a result, courts need *not* accept their factual allegations as true or draw all inferences in their favor, and
- Courts may look beyond the four corners of the complaint.

Bearing in mind the Plaintiffs' heightened burden and the Court's obligation to subject their claims to increased scrutiny, the Court turns to whether Plaintiffs have adequately alleged facts showing actual malice, such that their defamation claim against Defendants is not "without merit."

## II. Plaintiffs did not adequately plead facts that, if proven, would establish actual malice.

The actual malice inquiry looks to Defendants' subjective belief as to the truth or falsity of the News Reports at the time of publication and requires Plaintiffs to establish that Defendants published the News Reports with actual knowledge that they were false or with a "high degree of awareness" of "probable falsity." *Garrison*, 379 U.S. at 74. Actual malice is an "overwhelming" standard. *Demby v. English*, 667 So. 2d 350, 354 (Fla. 1st DCA 1995). By design, it protects false speech and gives journalists breathing space to investigate and report on matters of public concern like those at issue here. *See New York Times v. Sullivan*, 376 U.S. 254, 272 (1964). Findings of actual malice are typically limited to those cases where a "story is fabricated by the defendant, is the product of his imagination, or

is based wholly on an unverified anonymous telephone call." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Actual malice is *not* presumed—not even in libel *per se* cases—but must be proved by clear and convincing evidence. *See Sullivan*, 376 U.S. 254; *Mid.-Fla. Telev. Corp. v. Boyles*, 467 So.2d 282, 283 (Fla. 1985). Similarly, while Plaintiffs contend that actual malice may be "averred generally," Opp. at 20, *Gundel* confirms the Anti-SLAPP statute's requirement that, once averred, Plaintiffs must show the allegation has merit.

Plaintiffs' allegations of actual malice can be found in Paragraphs 6-8, 35-37, and 60-65 of their Complaint. Those allegations fall generally into two categories: First, Plaintiffs allege that Defendants published with actual malice because they relied on information from Herrera Bernal, an admitted drug trafficker whose competency was questioned in an unrelated criminal case and who, while incarcerated, made a series of what Plaintiffs call "outrageous" allegations in *pro se* lawsuits and other documents filed with government entities. Second, they allege that Defendants acted with actual malice by publishing the News Reports despite Plaintiffs' denials of wrongdoing.

The latter argument can be dealt with swiftly: Florida courts consistently hold that a defendant's decision to publish despite a plaintiff's denials is not actual malice as a matter of law. *See Silvester v. Am. Broad. Cos.*, 560 F. Supp. 766, 780 (S.D. Fla. 1986), *aff'd*, 839 F.2d 1491 (11th Cir. 1988); *Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 296 (Fla. 2d DCA 2001). In any event, the News Reports included Plaintiffs' denials, which negates a finding of actual malice. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016).

With regard to reliance on Herrera Bernal, Plaintiffs' allegation at Paragraph 63 of their Complaint that Defendants were "obligated to undertake a basic investigation" of Herrera Bernal is contrary to the law. The law is well-established that actual malice "is not measured by whether a reasonably prudent man . . . would have investigated before publishing," *St. Amant*, 390 U.S. at 731. Indeed, actual malice requires more than "highly unreasonable conduct constituting an extreme

departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 US 657, 666 (1989) (explaining that Justice Harlan's plurality opinion in *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 155 (1967), which had advocated for such a standard and which Plaintiffs invoke, is not the law).

Plaintiffs' arguments regarding Herrera Bernal and what Defendants "should" have known about him also gloss over key facts in records properly before the Court and fatal to Plaintiffs' actual malice allegations. *First*, judicial records (of which, by agreement of the parties, the Court takes judicial notice of) show Herrera Bernal was *twice* adjudicated to be competent after examination by two experts. Walker Aff. Exs. 11a, 11b, 12a &12 b. Surely when a judge says a criminal defendant is competent, journalists are entitled to believe what the judge has found and are not required to second guess that finding. *Cf. Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971) (journalist entitled to adopt "one of a number of possible rational interpretations of a document that bristled with ambiguities"). *Second*, a jury ultimately acquitted Herrera Bernal of the criminal charges against him. *Id.* Exs. 13a, 13b. And *third*, his *pro se* complaints, Harder Decl. Exs. I-Q, and other public filings, Walker Aff. Ex. 14-15, repeat his claims that, among other allegations, he was a DEA informant (which claims Plaintiffs do not dispute) and that Chacón gave money to Luna. Even if some other allegations in the *pro se* complaints might, in a vacuum, raise questions about Herrera Bernal's reliability, the totality of these records—especially the two judicial findings of competency, supported by two experts—completely undermine any determination that Defendants subjectively doubted Herrera Bernal's story, yet published it anyway.

Plaintiffs' actual malice allegations also ignore the full scope of Defendants' investigation, which Plaintiffs concede took place over the course of six months. *See* Compl. ¶ 25. Defendants arguably could have relied on Herrera Bernal alone. *See Woods v. Evansville Press Co.*, 791 F.2d 480, 488 (7th Cir. 1986) ("Reliance on a single source, in the absence of a high degree of awareness of probable falsity, does not constitute actual malice."); *Pacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028,

20145 (10th Cir. 2013). However, the Court need not entertain this question because Herrera Bernal was not Defendants' only source, as Plaintiffs also concede. The facts of this case are thus distinguishable from those relied upon by Plaintiffs, all of which involved single-source stories. They are particularly distinguishable from the facts of *Butts*, 388 U.S. 130, a single-source case Plaintiffs discussed at length in their briefs and at oral argument.

*Butts* involved a news report about a college football coach who allegedly "fixed" a game. Defendants there relied upon a single source, known for writing bad checks, who eavesdropped on a conversation between the plaintiff and a coach from a competing school and then described that conversation to defendants. A journalist who was not a football expert then wrote a story about the conversation without looking at the source's notes or at film from the allegedly fixed game and without talking to another source who also overheard the conversation between the coaches.

In contrast, Reyes is a Pulitzer Prize winning journalist who leads Univision's investigative unit. The News Reports make clear that they were based on a months-long investigation and that Defendants' investigation included interviews of multiple sources and review of numerous documents. It is also undisputed that Defendants tried multiple times to interview Luna (he declined), and Plaintiffs do not allege anywhere in their Complaint that Defendants purposefully avoided speaking to individuals who would have contradicted Herrera Bernal's account.

Defendants rely on cases that are more on point. Those cases hold that relying upon an imperfect source is not actual malice, especially where, as here, a defendant corroborates the source's account. *See, e.g., Talley v. Time, Inc.*, 923 F.3d 878, 902-03 (10th Cir. 2019); *Campbell v. Citizens for an Honest Gov't, Inc.*, 255 F.3d 560, 574-75 (8th Cir. 2001); *Desnick v. Am. Broad. Cos.*, 233 F.3d 514, 519 (7th Cir. 2000); *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1509 (D.D.C. 1996); *Secord v. Cockburn*, 747 F. Supp 779, 794 (D.D.C. 1990); *Pemberton v. Birmingham News Co.*, 483 So. 2d 256, 257 (Ala. 1985); *Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40 (Fla 4th DCA 2010); *Kidder v.*

*Anderson*, 354 So. 2d 1306, 1309 (La. 1978). Sources do not have to be "paragons of virtue." *See Talley*, 923 F.3d at 903. Rather, journalists may rely on compromised sources, especially when they corroborate what those sources tell them.

Finally, based on four news articles, Defendants point to numerous other factors in arguing that Herrera Bernal's account was not so "inherently improbable" that they were required to discount what he told them, *see St. Amant*, 390 U.S. at 732, including:

- Prior to Univision's News Reports, another reputable publication reported that Chacón had given Luna expensive gifts, including a Mercedes Benz and a Rolex.
- Luna has a reputation for associating with powerful, but corrupt, politicians. In support of this point Defendants note that the first of the News Reports at issue in this case shows Guatemala's former president Otto Pérez Molina speaking at the inauguration of Plaintiffs' church complex, and they cite a *New York Times* article reporting that Molina was later jailed as a result of his role in a multi-million-dollar customs fraud cause. They also reference another article linking Luna both to current Guatemalan president Jimmy Morales, under investigation for illicit campaign financing, and to former vice president Ingrid Roxana Baldetti Elías, who gave a $50,000 flag to the Plaintiffs, who is now serving fifteen years in jail, and who has been indicted by U.S. officials on drug charges.
- In addition to the Guatemalan Attorney General finding Herrera Bernal's account sufficiently credible to open an investigation into Plaintiffs, Defendants rely on an interview with Chacón's attorneys in which they explain that, faced with testimony from Herrera Bernal, she opted to plead guilty to drug trafficking charges.

Plaintiffs unsuccessfully argue that the Court may not properly consider these four articles on this motion. To begin with, Plaintiffs themselves seek to rely on the many exhibits attached to their own counsel's declaration, including numerous printouts from Herrera Bernal's Facebook account. More important, Plaintiffs correctly point to *Hoyte v. Stauffer Chem. Co.*, 2002 WL 31892830, at *43 n.59 (Fla. Cir. Ct. Pinellas Cty., Nov. 6, 2002), for the principle that "[a] court may judicially notice . . . contents of a website." *See* Opp. at 19. Plaintiffs' argument is also unconvincing given the parties' agreement—memorialized in the Court's September 17, 2019 order—that Defendants could submit with their motion papers not only materials "referenced in the Complaint" but also "items capable of judicial

notice." In support of their position, Plaintiffs rely on *Norwich v. Global Financial Assoc., LLC*, 882 So. 2d 535, 536 (Fla. 4th DCA 2004). But *Norwich* was not an Anti-SLAPP case, and it was decided before the 2015 amendments to the Anti-SLAPP statute and before *Gundel*'s on-point holding that courts may consider items beyond the four corners of the complaint on an Anti-SLAPP motion. *Gundel* controls.

The Court believes that if it is proper to consider a substantive affidavit submitted by the movant on a motion to dismiss filed under the Anti-SLAPP statute, *see Gundel,* 264 So. 3d at 314-15, it is also proper to consider publicly available newspaper articles. Moreover, consideration of these articles is in line with the Parties' agreement, memorialized in the Court's prior order, that Defendants could submit not only materials referenced in the Complaint but also items subject to judicial notice, as demonstrated by Plaintiffs' own reliance on *Hoyte* and the many exhibits they themselves have submitted in opposition to Defendants' motion.

In any event, this Court does not need to consider the outer bounds of what *Gundel* permits. Nor does it even need to consider the four newspaper articles Defendants offer. With or without them, Plaintiffs have failed to adequately plead facts that would establish actual malice—*i.e.*, that the News Reports' description of Luna accepting money from his drug-trafficking neighbor was so "inherently improbable" that Defendants necessarily knew it was false, yet published anyway. The Court's conclusion is based on (1) Plaintiffs' admission that Defendants spent six months investigating their News Reports, (2) a court twice finding Herrera Bernal to be competent, (3) the DEA's reliance on Herrera Bernal as an informant, (4) corroboration of Herrera Bernal's account by at least one other source shown on camera, and Plaintiffs' admission that this is not a single-source case, (5) Defendants' inclusion of Plaintiffs' denials in the News Reports, and (6) Plaintiffs' failure in their Complaint to point to any source who Defendants refused to interview or any information contradicting Herrera Bernal's claims that Defendants willfully ignored.

In sum, Plaintiffs have not met either their burden under the Anti-SLAPP statute nor the

"overwhelming" burden under the actual malice standard. Accordingly, Plaintiffs' lawsuit is dismissed. Because amendment to the Complaint would be futile given the analysis set forth above—including the deliberate and extensive nature of Defendants' investigation, the judicial findings of Herrera Bernal's competency, and the existence of corroborating sources—it is dismissed with prejudice and without leave to amend. *See Broz v. R.E. Reece*, 272 So. 3d 512, 513-14 (Fla. 3d DCA 2019) (dismissal with prejudice is appropriate when "further amendment would be futile").

**IT IS SO ORDERED.**

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 2nd day of November, 2019.

2019-016891-CA-01 11-02-2019 10:36 AM
Hon. Daryl E Trawick

**CIRCUIT COURT JUDGE**
Electronically Signed

---

Final Order as to All Parties SRS #: **12** (Other)

THE COURT DISMISSES THIS CASE AGAINST ANY PARTY NOT LISTED IN THIS FINAL ORDER OR PREVIOUS ORDER(S). THIS CASE IS CLOSED AS TO ALL PARTIES.

---

**Copies Furnished To:**
Alissa Del Riego , Email : aturk@podhurst.com
Alissa Del Riego , Email : afeurtado-pedron@podhurst.com
Alissa Del Riego , Email : adelriego@podhurst.com
Amy Steele Donner, Esq. , Email : janel.gonzalez@nelsonmullins.com
Amy Steele Donner, Esq. , Email : amy.steeledonner@nelsonmullins.com
Charles J. Harder , Email : charder@harderllp.com
Charles J. Harder , Email : mmoreno@harderllp.com
Jason Gordon , Email : lvu@harderllp.com

Jason Gordon , Email : jg@jgordonlegal.com
Jason Gordon , Email : service@jgordonlegal.com
Lan P. Vu , Email : SFrackman@harderllp.com
Lan P. Vu , Email : LVu@harderLLP.com
Lan P. Vu , Email : MMoreno@harderllp.com
Mark Raymond , Email : stacy.smith@nelsonmullins.com
Mark Raymond , Email : mark.raymond@nelsonmullins.com
Matthew Weinshall , Email : aturk@podhurst.com
Matthew Weinshall , Email : mweinshall@podhurst.com
Peter Prieto Mr. , Email : WalkerL@ballardspahr.com
Peter Prieto Mr. , Email : aturk@podhurst.com
William Baldwin, Esq. , Email : traci.lewis@nelsonmullins.com
William Baldwin, Esq. , Email : william.baldwin@nelsonmullins.com
William Everett Baldwin , Email : traci.lewis@nelsonmullins.com
William Everett Baldwin , Email : william.baldwin@nelsonmullins.com