NOT FINAL UNTIL DISPOSITION
OF TIMELY-FILED MOTION FOR
REHEARING OR CLARIFICATION

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

APPELLATE DIVISION

CASE NO. 2018-299 AP 01
L.T. CASE NO. CE2017-9206

CALLE OCHO MARKETPLACE, LLC.,
    Appellant,
v.

CITY OF MIAMI, FLORIDA, CODE ENFORCEMENT,
    Appellee.
_____/

## OPINION

Opinion filed: January 21, 2021

On Appeal from and Order of the City of Miami Code Enforcement Board

The Orlofsky Law Firm and Alexander S. Orlofsky, Esq. for Appellant.

City of Miami Attorney's Office, Victoria Mendez, City Attorney and John A. Greco, Deputy City Attorney for Appellee.

Before: TRAWICK, WALSH and SANTOVENIA, JJ.

    PER CURIAM

    Calle Ocho Marketplace, LLC ("Owner") appeals the September 12, 2018

Order ("Order") of the City of Miami Code Enforcement Board ("CEB" or "Appellee") that authorized the City of Miami ("City") to remove unpermitted structures from the Owner's commercial property ("Property") and to secure the Owner's payment of the costs of such removal by imposing a lien upon the Property.

The Property was cited by the City under Case number CE2017009206 for the open and unsecured storage of unpermitted cargo shipping containers that had been cut and re-fastened to make sheds or kiosks ("container kiosks"). These container kiosks were apparently intended to be installed at the Property for use as vendor stalls for a farmer's market. The record reflects that the City wanted these items removed because they were unsafe, not properly fastened or stored, and could cause a hazard during a hurricane.

The September 12, 2018 CEB Order, which is the subject of this appeal, states that "the City of Miami shall have the authority to remove the container/kiosks" located at the Property and "lien any costs associated with such removal against the Property" pursuant to City Code. It also notes that "[t]he property owner was previously ordered to remove all the 'container/kiosks' by Midnight, Sunday, September 9, 2018." In this appeal,[1] the Owner argues that the CEB denied it

---

[1] The City asserts in its answer brief that this appeal is moot because the container kiosks were removed from the Property in 2018 and there is no related lien on the Property. An issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect. *Godwin v. State*, 593 So. 2d 211, 212 (Fla.1992) (citing *DeHoff v. Imeson*, 153 Fla. 553, 15 So. 2d 258 (1943)). "A case is 'moot' when it presents no actual controversy

procedural due process and departed from the essential requirements of the law.

## FACTUAL BACKGROUND

While the Appellant's initial brief contains very few facts, a review of the record indicates a history of City code enforcement involvement with the Property. In a nutshell, the Owner was first cited for the violation regarding the container kiosks in May of 2017, following which the CEB granted the Owner multiple extensions of time to cure the violation. For more than a year before the CEB's September 12, 2018 hearing, the Owner failed to cure the violations. Part of the Property, which was purchased by the Owner in 2015, was in the process of being developed for use as a farmer's market or an outdoor vendor market. The City inspectors found several violations on the Property, at least one of which existed before the Owner's purchase. Each of the violations was cited under a different case number with separate hearings and orders issued for each violation. The other violations are not the subject of this appeal.

In this case, the Owner was cited for "Work Performed Without Finalized

---

or when the issues have ceased to exist." *Id.* (citing Black's Law Dictionary 1008 (6th ed. 1990)). "A moot case generally will be dismissed." *Id.* However, mootness does not destroy an appellate court's jurisdiction when the questions raised are of great public importance, are likely to recur, or if collateral legal consequences that affect the rights of a party flow from the issue to be determined. *Id.* (citing *Holly v. Auld*, 450 So. 2d 217, 218 n.1 (Fla. 1984); *Keezel v. State*, 358 So. 2d 247 (Fla. 4th DCA 1978)). While the City's argument would appear to be meritorious, Owner did not file a reply brief responding to the City's mootness argument. Accordingly, this court cannot determine whether the mootness argument is dispositive of this appeal because it is not clear whether any "collateral legal consequences that affect the rights of a party flow from the issue to be determined" and remain, especially given the various proceedings regarding the Property.

Permit" in violation of Section 2104 of the Miami 21 Code, which provides as follows:

> Structures and uses to be as provided in applications, plans, building permits, certificates of use, and special permits in relation thereto. Building permits or certificates of use issued by the zoning administrator on the basis of plans and applications authorize only the use, arrangement, and construction set forth in the approved plans and applications, subject to any conditions or safeguards attached thereto, and no other. Use, arrangement, or construction at variance with that authorized, or failure to observe conditions and safeguards, shall be deemed a violation of this zoning ordinance.

## STANDARD OF REVIEW

In an appeal of a decision of an administrative agency, this Court reviews whether procedural due process was accorded, whether the essential requirements of law have been observed, and whether the administrative findings and judgment are supported by competent substantial evidence.[2] *Haines City Cmty. Dev. v. Heggs*, 658 So. 2d 523, 530 (Fla. 1995), *citing City of Deerfield Beach v. Vaillant*, 419 So. 2d 624, 626 (Fla. 1982); *Dusseau v. Metropolitan Dade County Bd. of C'ty Comm'rs*, 794 So. 2d 1270, 1274 (Fla. 2001).

## PROCEDURAL DUE PROCESS

Procedural due process requires that the agency provide reasonable notice and

---

[2] Appellant only argues that procedural due process was not accorded and that the essential requirements of the law were not observed and does not challenge the existence of competent, substantial evidence to support the subject Order. The record, as cited *infra.*, shows that the subject Order is supported by competent substantial evidence.

a fair opportunity to be heard. *Housing Authority of the City of Tampa v. Robinson*, 464 So. 2d 158, 164 (Fla. 2d DCA 1985). A quasi-judicial hearing generally meets basic due process requirements if the parties are provided notice of the hearing and an opportunity to be heard. *Jennings v. Dade County*, 589 So. 2d 1337, 1340-41 (Fla. 4th DCA 1991).

**Opportunity to Be Heard**

In the instant case, it is undisputed that the Owner received notice of the hearing. Instead, the Owner argues that the CEB "refused to even hear argument from the Appellant" and thereby failed to accord procedural due process.

This allegation mischaracterizes the record of the September 12, 2018 CEB hearing ("Hearing"). The Owner appeared at the Hearing through counsel, who requested additional time to comply. In response to the CEB's inquiry as to why the Owner had not removed even one of the container kiosks, the Owner's attorney responded that it was the Owner's intent to re-permit the Property. The CEB listened to the Owner's arguments and discussed them, but ultimately was not persuaded to grant additional time for compliance. The CEB found that the Owner did not demonstrate a good faith effort to remove the container kiosks even after the deadline for compliance had been extended multiple times. The Owner had ample opportunity to present arguments and was fully heard.

The Owner's allegation that it did not receive an opportunity to be heard also

ignores the record history of the violation. The Owner received the first Notice of Code Violation from the City on May 22, 2017, under Case Number CE2017009206, regarding the presence of container kiosks on the Property. The notice directed the Owner to correct the violation by June 1, 2017. On September 28, 2017, a summons to appear before the CEB was issued to Owner for a hearing on October 11, 2017 because an inspection of the Property revealed that the Owner had failed to correct the violation. Following the October 11, 2017 hearing, the CEB entered a Final Administrative Enforcement Notice ordering the Owner to correct the violation by January 11, 2018 or be fined $250 per day. No notice of compliance was submitted by Owner, resulting in the City's Affidavit of Non-Compliance entered on January 4, 2018.

A CEB hearing was held on January 30, 2018 because the violation had still not been corrected. At that hearing, Owner requested an extension of time and the CEB entered an Order on January 31, 2018 extending the compliance date to March 2, 2018. Thereafter, two additional extensions of time were granted for the Owner to correct the violation. The time for compliance was extended to May 24, 2018. Notices of violation were posted at the Property on May 26, 2018 and photos were taken of the container kiosks still at the Property. Correspondence was also exchanged between the City's Building Director and a representative for the Owner which explained why the container kiosks were a violation of the City Code and why

they needed to be removed.

On August 20, 2018, the City Attorney's Office sent a letter to the Owner explaining why the existence of the container kiosks on the Property is a violation of the City's Temporary Use Permit which had been issued for the Property ("TUP"), and why the container kiosks needed to be removed during the hurricane season. The letter stated:

> At this time it appears there are 'container kiosks' on site which are not fastened down and sitting tilted on cement blocks. The Farmer's Market TUP approved in July, by the office of Zoning, has a building requirement that any of this equipment have anchorage. As you know, this requirement is due to a very real possibility of hurricane force winds and the type of container you have decided to use. Any of this equipment on the property that is not anchored as required by any approved permit is a violation of section 3.63(3) of Miami 21, the Zoning Code of the City of Miami, Florida. This section does not allow equipment to be stored in anything other than a "storage facility or other approved places where they are concealed from public view." The photographs taken last week, and which were provided to you previously, show the particular issues and the equipment should be removed or stored appropriately no later than Wednesday, August 22, 2018, by 5pm.

On September 6, 2018, a CEB hearing was held regarding the violation where the City requested that the CEB enter an order for the removal of the container kiosks from the Property, allowing 24-48 hours for compliance. The Owner requested 30 days for compliance. At the conclusion of the hearing, the CEB granted 36 hours for the Owner to remove the container kiosks from the Property. The CEB stated that if the Owner did not remove the container kiosks, the CEB would enter an order

allowing the City to remove them and that the City could charge for the costs of such removal by placing a lien on the Property. The CEB announced that the deadline for compliance was midnight on Sunday, September 9, 2018.

On September 10, 2018, an Affidavit of Noncompliance was filed confirming that the Owner had not removed the container kiosks. The matter was then set for the September 12, 2018 CEB calendar.

The foregoing history does not evidence lack of either notice or an opportunity to be heard regarding the violation, but rather a record of notice and multiple opportunities to correct the violation over an extended period of time.

**Non-disclosure of Alleged Ex Parte Communication with CEB**

Owner next argues that it was denied an opportunity for hearing and is entitled to a new hearing because the CEB failed to disclose timely its alleged ex parte communication with a City Commissioner regarding the Property. However, Owner provides no record support that any such ex parte communication took place.

Appellant's initial brief references and the record does reflect that a City Commissioner spoke at the CEB hearing on September 6, 2018 against granting Owner any additional extensions. However, Appellant points to no impropriety regarding the Commissioner's expression of his opinion on the record at a public hearing where there was an opportunity to rebut the Commissioner's opinion. Accordingly, Appellant's argument on this point is without merit.

**Selective Enforcement**

The Owner also alleges that the CEB violated its due process rights by refusing to hear any evidence of selective enforcement by the City of Miami. At the September 12, 2018 CEB meeting, there were two hearings regarding two separate violations on the Owner's Property. The hearing regarding the container kiosks at which the CEB entered the subject Order authorizing the City to remove the container kiosks was held first. Following the hearing on the subject violation, the CEB conducted a separate hearing on an unrelated violation. This other violation, cited under a different case number, CE2017018184, involved a non-permitted overhang over the alleyway between two buildings on the Property.

For that separate violation, the CEB entered a separate order granting the Owner three weeks to comply. It was during the second CEB hearing on September 12, 2018 that the Owner raised the issue of "selective enforcement." Thus, by the time the Owner raised the selective enforcement issue, the CEB had already heard and voted on the violation regarding the container kiosks, and had already entered the ruling reflected in the Order regarding the removal of the container kiosks[3].

---

[3] Even assuming *arguendo* that the selective enforcement argument were pertinent to the Order in this appeal, the CEB *did* consider the issue of selective enforcement as to the separate violation and explained why it did not find the argument to be persuasive. One of the CEB members asked the Owner's attorney, multiple times, to elaborate on his assertion that the City or CEB was targeting the Property specifically. The Owner's counsel did not elaborate, seek to enter evidence to support his general allegation, or present a case on this issue. Moreover, the Owner admitted that the code violations existed on the Property. The CEB did not find the selective enforcement argument to be convincing, considering that the Property Owner admitted to the existence of the code violations on the Property which

Nor does *Powell v. City of Sarasota*, 953 So. 2d 5, 7-8 (Fla. 2d DCA 2006) support Appellant's argument. The procedural posture in *Powell* was the following:

> In the hearing before the Board, the Powells asserted a defense of selective enforcement. They attempted to introduce evidence that the City's nuisance abatement efforts targeted predominantly African-American neighborhoods. The Board refused to consider this evidence, and it refused to allow the Powells to make a proffer of the excluded evidence. In the circuit court certiorari review proceeding, the Powells argued that those refusals denied them procedural due process.
> The circuit court rejected this claim. In so doing, it failed to apply the correct law. Section 893.138(3) provides that in a nuisance abatement proceeding the property owner "shall have an opportunity to present evidence in his or her defense[.]" The Equal Protection Clause prohibits selective enforcement of the law based on considerations such as race. *Glock v. Moore*, 776 So. 2d 243, 252 (Fla.2001); see also *Polk County v. Mitchell*, 931 So. 2d 922, 926 n. 4 (Fla. 2d DCA 2006) (describing selective enforcement defense to ordinance as "deliberately based on an unjustifiable standard such as race, religion, or other arbitrary classification"). Thus, under the law, the Powells' defense to the nuisance abatement charge was legally cognizable, and they were entitled to present evidence in proof of it. The circuit court failed to apply this law when ruling that the Board afforded procedural due process to the Powells.

Unlike *Powell*, the Owner here did not raise the issue of selective enforcement during the Hearing on the subject violation involving the container kiosks, nor does Owner even allege that the City's enforcement actions against Owner or the Property were "deliberately based on an unjustifiable standard such as race, religion, or other arbitrary classification." *See Polk County v. Mitchell*, 931 So. 2d 922, 926

---

the City and CEB had a duty to address. Lastly, the Owner's counsel expressed that the CEB was not the proper venue to raise this issue.

n. 4 (Fla. 2d DCA 2006). Because selective enforcement was never raised to contest this violation, it may not provide grounds to quash the order on review.

## ESSENTIAL REQUIREMENTS OF THE LAW

The applicable standard of review also requires that this Court must determine whether the lower tribunal applied the correct law. *Valliant*, 419 So. 2d at 624. A departure from the essential requirements of the law occurs when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice. *Combs v. State*, 436 So. 2d 93, 96 (Fla. 1983).

### Vested Rights

In the instant case, the Owner is not challenging the City ordinance or the existence of the violation regarding the container kiosks. Rather, the Owner challenges the revocation of the Owner's permits. Appellant alleges generally that it had an open building permit issued for the development of the Property which was set to expire on October 14, 2018, as well as a TUP allowing for the use of the Property as a farmer's market and the temporary structures to be used for such events.

The factual history regarding the TUP, while not mentioned in Appellant's brief, is relevant to refute the Owner's argument that the permits were revoked suddenly and prematurely by the City.

On December 11, 2017, the Owner applied for a temporary use permit. On

July 11, 2018, the City issued the TUP. On April 17, 2018, the City approved Owner's building plans to anchor the container kiosks.

Significantly, the record indicates that written notice was issued by the City's Zoning Department to the Owner regarding the TUP permit revocation. On September 4, 2018, the City Zoning Director and Administrator sent the Owner a notice that the TUP for the farmer's market was being rescinded. That notice states:

> City records indicate that code violations were issued and pending prior to issuance of Temporary Use Permit (TUP) 18-021 on July 11, 2018 for a Farmer's Market located at 1380 SW 8th St. These violations remain open to-date and as such, require that TUP 18-021 be rescinded pursuant to City of Miami code Section 62-622 (c). This Section mandates that, 'no temporary farmers' market permit shall be issued to a property that has any outstanding code enforcement violations or city liens.' These violations must be complied prior to the submittal of a new application.

The revocation of the TUP was a separate decision by the City's Zoning Department, in response to multiple open and pending violations that continued to exist on the Property. Thus, the revocation of the TUP is not the subject of this Court's review because it was a decision made by the Zoning Department, rather than the Code Enforcement Board. Furthermore, the Zoning Department's revocation of the TUP occurred prior to the CEB's Order to remove the container kiosks from the Property. The Order in this appeal pertinent to CEB action on the container kiosks does not involve the revocation of the TUP or of any permit.

Ignoring that the TUP had been rescinded, Appellant argues that the CEB

departed from the essential requirements of law because the Owner had a vested interest in the Property based on the permits issued by the City. Appellant cites, without any analysis, case law defining when a vested right arises. *See Monroe Cty. v. Ambrose,* 866 So. 2d 707 (Fla. 3d DCA 2003). Appellant also cites *Bay Point Club, Inc. v. Bay Cty.*, 890 So. 2d 256 (Fla. 1st DCA 2004), in which the court held that "developer's vested rights in previously approved DRI did not include proposed changes, and thus developer's changes had to be approved by county board of commissioners."

In arguing that the CEB interfered with the Owner's vested rights, the Owner states that Owner "relied on the City's actions and substantially changed its position in reliance to make earnest efforts in securing the container kiosks." However, no factual foundation whatsoever is provided – nor does one exist-- to support this statement. Furthermore, there is no citation to any part of the record where this argument was raised at the Hearing or in the proceeding below. "As a general rule, it is not appropriate for a party to raise an issue for the first time on appeal." *Sunset Harbour Condo. Ass'n v. Robbins*, 914 So. 2d 925, 928 (Fla. 2005); see *Robins v. Columbo*, 253 So. 3d 94, 97 (Fla. 3d DCA 2018).

**Equitable Estoppel**

The Owner also argues that the City is equitably estopped from changing its position on the approvals of the building permit and TUP. The doctrine of equitable

estoppel will preclude a municipality from exercising its administrative power where a "property owner (1) in good faith (2) upon some act or omission of the government (3) has made such a substantial change in position or has incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the right the acquired." *Hollywood Beach Hotel Co. v. City of Hollywood,* 329 So. 2d 10, 15-16 (Fla. 1976) *citing Salkolsky v. City of Coral Gables,* 151 So. 2d 433 (Fla. 1963).

The Owner points to its "good faith reliance on the City's Temporary Use Permit, Building Permit, as well as the Code Enforcement Order entered on September 10, 2018."

No order was entered on September 10, 2018, and thus, it is unknown to what order the Owner refers. Similar to its argument on vested rights, no factual analysis whatsoever is provided in support of the equitable estoppel argument. Nor is there any citation to the record where this argument was raised at the Hearing or in the proceeding below. As noted above, "[a]s a general rule, it is not appropriate for a party to raise an issue for the first time on appeal." *Sunset Harbour Condo. Ass'n v. Robbins,* 914 So. 2d 925, 928 (Fla. 2005); see *Robins v. Columbo,* 253 So. 3d 94, 97 (Fla. 3d DCA 2018).

**Concurrent Prosecution Under Section 162.13 of the Florida Statutes**

Appellant's last argument on appeal is that the CEB erred in allowing the

subject case to proceed while the injunction suit was pending in the Circuit Court. In its Initial Brief, the Owner argues that the City lacked authority to prosecute the same violation against Owner concurrently through the court system and the CEB. The record reflects that there were simultaneous cases pending before different tribunals regarding the container kiosks on the Property. However, each case sought to enforce a different code violation.

On August 23, 2018, the City filed a lawsuit in Circuit Court under Section 3.6 of the Miami Code seeking an emergency injunction to remove the container kiosks. The injunction motion was heard on September 6, 2018 by a Circuit Court judge who made no substantive ruling on the motion, but instead dismissed the petition for injunction without prejudice because it was not filed as a verified motion. Notably, the injunction motion in the Circuit Court case was premised on a different code violation than the violation before the CEB (the Circuit Court case alleged that the Owner was in violation of a City Code provision that requires inoperable vehicles to be stored out of public view).

Code enforcement proceedings are governed by Chapter 162 of the Florida Statutes. Section 162.13, Fla. Stat. provides: "It is the legislative intent of ss. 162.01-162.12 to provide **an additional or supplemental means** of obtaining compliance with local codes. Nothing contained in ss. 162.01-162.12 shall prohibit a local governing body from enforcing its codes by any other means." (emphasis

added). This provision is unambiguous. *Goodman v. Cty. Court in Broward Cty.*, 711 So. 2d 587, 589 (Fla. 4th DCA 1998). Accordingly, our sole function "is to enforce [the statute] according to its terms." *Dodd v. United States*, 545 U.S. 353, 359, 125 S. Ct. 2478, 2483, 162 L.Ed. 2d 343 (2005) (citation omitted). Thus, our analysis "begins with 'the language of the statute,'" and because the "statutory language provides a clear answer, it ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S. Ct. 755, 760, 142 L.Ed. 2d 881 (1999) (citations omitted).

The plain meaning of the terms "additional" and "supplemental" in the statute evidences that it is intended to be an additional, as opposed to an exclusive, means of compliance. A local government is permitted to enforce its ordinances through means other than code enforcement boards or by invoking cumulative remedies. For example, the local government may pursue enforcement by bringing a civil action or even through criminal prosecution. *See* § 162.22, Fla. Stat.; *Goodman, supra.*, 711 So. 2d at 589 ("The creation of the code enforcement board and the assignment to it of the enforcement of housing code violations does not prohibit the City from bringing a charge in county court for a municipal code violation.").

Appellant argues that Chapter 162, Fla. Stat. does not provide "a means by which a local governing body may bring multiple lawsuits against one of its citizens under Chapter 162 **and** through the courts", citing *Deehl v. Weiss*, 505 So. 2d 529

(Fla. 3d DCA 1987). The court in *Deehl* held that:

> there is no basis for the circuit court's determination on appeal that the City of Miami, by virtue of having created a board to hear some of its technical code violations, is presently deprived of access to the Dade County Court for enforcement of technical code violations it chooses not to bring before its municipal board.

*Id.* at 531. *Deehl* does not support the proposition for which it is cited, nor does it address the same circumstance in the instant case where compliance was sought in both the court and in an administrative proceeding.

Quite simply, no legal authority cited by Appellant supports that the Order should be quashed because the City had a venue other than the CEB to pursue legal action as to the violation involving the container kiosks.[4]

---

[4] Appellant also relies on *City of Tampa for Use & Benefit of City of Tampa Code Enf't Bd. v. Braxton*, 616 So. 2d 554 (Fla. 2d DCA 1993), which held that:

> We conclude that once the City opted for a code enforcement board under chapter 162, it was prohibited by article 1, section 18 of the state constitution to enforce its ordinance by any other manner except that described in chapter 162. We therefore affirm the trial court's order dismissing the City's action for a money judgment.

*Id.* at 556. *Braxton* pertains to a city's attempt to collect fines via a money judgment. *Id.* at 555. The *Braxton* court held that since no statutory provision permitted enforcement by way of a money judgment, such relief was unavailable. *Braxton* did not address the issue here; ie; whether two legally available avenues for the City to enforce its code provisions can be pursued concurrently.

The Owner also relies on *Goodman, supra.*, incorrectly citing the holding therein. However, *Goodman* actually supports the Appellee's position. The issue in *Goodman* was whether a city could elect to prosecute a code violation in county court rather than through the code enforcement board. The *Goodman* court held the following:

> We think the provisions of the statute [Section 162.13, Fla. Stat.] are clear and unambiguous and fully address the petitioner's arguments. The City may elect either method of prosecution. The creation of the code enforcement board and the assignment to it of the enforcement of housing code violations does not prohibit the City from bringing a charge in county court for a municipal code violation. The Legislature has provided that the code enforcement board procedure is supplemental to other means of securing code compliance. The City was therefore authorized to bring the county court action....

Appellee relies on *Rudge v. City of Stuart*, 65 So. 3d 645 (Fla. 4th DCA 2011) in support of the Order. There, the court determined that "[t]he City was not foreclosed from obtaining injunctive relief simply because monetary civil infraction fines for code enforcement violations were also available to the City." *Id.* at 647. While Appellant correctly points out that *Rudge* does not mention Section 162.13, Fla. Stat., *Rudge* (decided after the 1994 addition of Section 162.22, Fla. Stat. to the statutory code enforcement scheme) governs and is on point regarding the specific factual scenario presented in this appeal.

Furthermore, Section 162.30, Fla. Stat. (2003) allows for the civil action filed by the City. That statute, which governs "Civil actions to enforce county and municipal ordinances", provides, in pertinent part, that:

> In addition to other provisions of law authorizing the enforcement of county and municipal codes and ordinances, a county or municipality may enforce any violation of a county or municipal code or ordinance by filing a civil action in the same manner as instituting a civil action. The action shall be brought in county or circuit court, whichever is appropriate depending upon the relief sought.

---

711 So. 2d at 589. *Goodman* also does not address a local government's concurrent attempts to enforce compliance through both the court and the administrative board. It should also be noted that the *Goodman* court highlighted that:

> in 1994, after the decisions in *City of Tampa* and *Deehl,* the Legislature added section 162.22, which specifically provides, in pertinent part:
>
> The governing body of a municipality may designate the enforcement methods and penalties to be imposed for the violation of ordinances adopted by the municipality. These enforcement methods may include, but are not limited to, the issuance of a citation, a summons, or a notice to appear in county court or arrest for violation of municipal ordinances as provided for in chapter 901.

*Id.* at 589.

Notably, Appellant's argument nowhere addresses that the injunction motion in the Circuit Court case was premised on a different code violation than the violation before the CEB. Moreover, the subject case before the CEB existed long before the case in the Circuit Court and was active and ongoing since May of 2017. For 16 months, the Owner did not challenge the subject violation or the CEB's authority to address it. It is undisputed that the CEB had jurisdiction and properly exercised its authority to enter the Order.

As procedural due process and the essential requirements of the law were observed, the Code Enforcement Board's Order is AFFIRMED.

TRAWICK, WALSH and SANTOVENIA, JJ. concur.

COPIES FURNISHED TO COUNSEL
OF RECORD AND TO ANY PARTY
NOT REPRESENTED BY COUNSEL.

Copies Furnished to:
vmendez@miamigov.com
mgomezchen@miamigov.com
alex@orlofskylawfirm.com
meghan@orlofskylawfirm.com
jagreco@miamigov.com
kjones@miamigov.com
gcarby@miamigov.com
meghan@orlofskylawfirm.com
alex@orlofskylawfirm.com