**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 18-24190-CIV-SMITH**

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

     Plaintiffs,

v.

JOE CAROLLO,

     Defendant.

_____/

## DEFENDANT, JOE CAROLLO'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant, City of Miami Commissioner Joe Carollo (the "Commissioner"), through his counsel, pursuant to Florida's Anti-SLAPP Statute, § 768.295, Fla. Stat., and Federal Rule of Civil Procedure 12(c), files his Motion for Judgment on the Pleadings as follows:

**I.**     **Introduction**

Plaintiffs' Second Amended Complaint ("Complaint" or "SAC") is a blatant effort to silence the City of Miami and the Commissioner in their efforts to protect the health, safety and welfare of the citizens of Miami. Plaintiffs' First Amendment retaliation claim is based on a fabricated narrative that the Commissioner is retaliating against them as "political payback" for Plaintiffs allowing two rallies to be held on their properties for the Commissioner's political opponent. In fact, Plaintiffs' claim, brought under Federal Question jurisdiction, is a mere wolf in sheep's clothing, as the allegations of the Complaint are nothing more than a standard defamation claim.

Plaintiffs seek to enjoin the Commissioner from performing his job duties and the City of Miami from its efforts to enforce the Florida Building Code, the Miami-Dade County Building

Code, and the City of Miami Code and Ordinances (the "Code") against Plaintiffs' properties. Ultimately Plaintiffs' suit is a strategic lawsuit against the Commissioner, based on his public participation in the duties of his elected office.

Plaintiffs' Complaint unequivocally establishes, through their own actions and admissions, that Plaintiffs' actions have not been adversely affected by any of the alleged conduct of the Commissioner. Additionally, no person of ordinary firmness would be chilled by the alleged conduct. As such, Plaintiffs cannot prevail on their First Amendment Retaliation claim as a matter of law. Defendant is entitled to judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## II.      Defendant is entitled to Judgment on the Pleadings pursuant to Federal Rule 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment*, 140 F.3d 1367 (11th Cir. 1998). Similar to a motion to dismiss, the Court accepts all of the allegations in the complaint as true and views them in the light most favorable to the nonmoving party. *See id*. Similarly, Florida's Anti-SLAPP Statute permits a party to "move the court for an order dismissing the action or granting final judgment in favor of that person or entity." Section 768.295(4), Fla. Stat.

By bringing what is, in effect, a defamation claim against the Commissioner (*see, e.g.*, SAC ¶¶ 186-187, 225-236, 259-261), Plaintiffs are trying to chill the Commissioner's right of free expression and to silence political discourse. In fact, look no further than Plaintiffs' prayer for relief seeking to permanently enjoin the Commissioner from participating in public issues and

seeking government redress for his constituents' grievances as it relates to Plaintiffs and their properties, employees, tenants, and affiliates (SAC ¶¶ 320-321(a-c)).

Plaintiffs have improperly brought their political dispute with the Commissioner into the judicial arena contrary to the legislative intent behind the Anti-SLAPP Statute. *See* Ch. 2000-174, § 1, Laws of Fla. ("'Strategic Lawsuits Against Public Participation' … are an abuse of the judicial process and are used to censor, intimidate, or punish citizens, businesses, and organizations for involving themselves in public affairs"). Indeed, "[i]f every citizen were to have a right to insist that no one paid by public funds express a view with which he disagreed, debate over issues of great concern to the public would be limited to those in the private sector, and the process of government as we know it radically transformed." *Storms v. Shinseki*, 319 F. Supp. 3d 348, 355 (D.D.C. 2018), aff'd, 777 F. App'x 522 (D.C. Cir. 2019) (quoting *Keller v. State Bar of Cal.*, 496 U.S. 1, 12-13, 110 S. Ct. 2228, 110 L. Ed. 2d 1 (1990)).

A final judgment on the pleadings, pursuant to Rule 12(c), is proper because no material facts are in dispute, and judgment may be rendered by considering the substance of the pleadings and the judicially noticed facts. Rendering a final judgment on the pleadings under these circumstances would preserve, and enforce, the strong public policy against SLAPP suits like the one at hand here.

### III.   Plaintiffs' Complaint is a Strategic Lawsuit Against Public Participation and is therefore prohibited by Florida's Anti-SLAPP Statute

Plaintiffs' Complaint for First Amendment retaliation alleges that the Commissioner has selectively targeted Plaintiffs' businesses as "political payback". SAC at 1. Ironically, Plaintiffs' allegations of supposed retaliation are based solely upon the Commissioner's exercising *his* constitutional right of free speech. SAC ¶¶ 59-268. As alleged in the Complaint, the Commissioner's speech at issue is comprised of his statements to: other government officials, his

- 3 -

constituents, the media, and statements made at public hearings. Plaintiffs' Complaint seeks damages and injunctive relief against the Commissioner for these statements. Plaintiffs' Complaint seeks to bar the Commissioner from performing his job duties. SAC ¶ 321(a-c).

Specifically, the Commissioner was elected to protect the life, health, safety, and welfare of his constituents, City of Miami residents of District 3, and to redress their grievances. The Commissioner has spoken on behalf of his constituents to petition for redress of their grievances and to protect their interests relating to the City's enforcement of the Code against Plaintiffs, who are one of the largest property owners in his District. The Commissioner's constituents include neighborhood residents and visitors who are entitled to be free of dangerous conditions caused by the repeated refusal of Plaintiffs' businesses to comply with the law, and Plaintiffs' employees who are entitled to safe places to work.

Plaintiffs are using this lawsuit to silence the Commissioner from speaking on behalf of his constituents.

**A.  The Commissioner's speech constitutes his "[f]ree speech in connection with public issues" as defined in Subsection (2) of the Anti-SLAPP Statute**

The alleged retaliation that Plaintiffs are complaining about are instances of the Commissioner engaging in protected speech including:

a.  The Commissioner's speech on the radio that Plaintiffs claim constitutes "false and defamatory statements" (SAC ¶¶ 225-236),

b.  The Commissioner's "defamatory and false speech" at a Code Enforcement hearing (SAC ¶ 186),

c.  The Commissioner's speech at a Commission meeting at which he "raised" issues, "presented false and misleading documents and photographs", "advocated to have the City shut down a number of Plaintiffs' businesses claiming they had 'life safety' issues", and "convinced" other Commissioners "to pass a resolution calling for a 'task force' to investigate code compliance issues" (SAC ¶¶ 255-263), and

    d. The Commissioner's speech to other City officials including his calls, requests, and statements during a "ride along" with Code Enforcement and during a "park and walk" with City employees; the Commissioner telling a City fire inspector, "that the City had 'issues' in the past with the vendor in question and that he wanted the inspectors 'to follow up' with the vendor"; the Commissioner sending a text to Code Enforcement officials about illegal parking and noise violations; and the Commissioner telling a Code Enforcement Officer that the Commissioner "believed the construction at the property lacked permits." (SAC ¶¶ 137, 145-156, 157-164, 199).

In fact, Plaintiffs' Complaint is replete with allegations conclusively demonstrating that their cause of action is based solely upon the Commissioner's speech. *See, e.g.,* ¶¶ SAC ¶ 61 ("Carollo told"), 62 ("Carollo said"), 101 ("Carollo expressed"), 106 ("repeated calls from Carollo"), 107 ("Carollo told"), 115 (Carollo "told them"), 127 ("Carollo told"), 130 ("Carollo told"), 135 ("Carollo asked"), 136 ("Carollo spoke"), 137 ("Carollo told"), 141 ("Carollo was in constant contact with City Attorney"), 146 ("Carollo called … and asked"), 147 ("Carollo said"), 148 ("Carollo then asked"), 151 ("Carollo called"), 154 ("Carollo pointed out"), 159 ("Carollo explained"), 167 ("Carollo asked"), 186 ("Carollo argued"), 200 ("Carollo had contacted"), 211 ("Carollo went over to the apartments and began knocking on doors to ask"), 212 (Carollo "took out his phone and started filming"), 243 ("Carollo submitted"), 247 ("Carollo sent out the following advertisement"), 252 ("Carollo has told the Miami Herald"). Plaintiffs are expressly seeking to enjoin and prohibit the Commissioner from engaging in free speech as to Plaintiffs' properties and businesses.[1] SAC ¶¶ 320-321.

    The injunctive relief sought by Plaintiffs lays bare their motive for filing and prosecuting this lawsuit – to silence the Commissioner and prevent him from speaking on behalf of his

---

[1] Plaintiffs' claim is based on the Commissioner's speech because the Commissioner himself is not the final decisionmaker as to Plaintiffs' allegations. The Commissioner is but one Commissioner out of five and in order for the Commission to make a final decision, a majority of the Commissioners must agree. Plaintiffs make no such allegations but rather allege that the Commissioner acting on his own ordered that a party be shut down or that a business be raided. *See, e.g.,* SAC at 26, ¶¶ 100, 116, 218, 220. That is simply not how the City government works. The Commissioner was not the final decisionmaker for the alleged retaliatory action.

constituents and to stop the City's enforcement of the Code against Plaintiffs' properties. Plaintiffs request that the Court permanently enjoin "further retaliation against them" and that the Court permanently enjoin the Commissioner from the following (SAC ¶¶ 320-321):

    a. making any requests to, or providing any instructions or suggestions to, any City employees that target Plaintiffs, Plaintiffs' properties, employees, tenants, or any affiliates of Plaintiffs;

    b. directly soliciting any complaints and/or demands regarding Plaintiffs, Plaintiffs' properties, employees, tenants, or any affiliates of Plaintiffs, including but not limited to, directly contacting, or going door-to-door to the surrounding neighbors of Plaintiffs, Plaintiffs' properties, employees, tenants, or any affiliates of Plaintiffs to seek complaints for noise or other violations; and

    c. participating in any decision of the Board of Commissioners in relation to any matters that target the Plaintiffs, Plaintiffs' properties, employees, tenants, or any affiliates of Plaintiffs, including but not limited to noise violations, permits, zoning, or licenses for Plaintiffs, Plaintiffs' properties, employees, tenants, or any affiliates of Plaintiffs.

It is clear from the totality of Plaintiffs' allegations and the overbroad injunctive relief they seek that they are using this lawsuit as a sword to stop the Commissioner from doing his job – protecting the health, safety and welfare of the citizens of Miami, and being the voice of his constituents as it relates to specific Florida Building Code violations and Code compliance by businesses in his District.

Plaintiffs' Complaint is the epitome of a SLAPP suit and the reason that Florida's Anti-SLAPP statute was enacted.

    **B.**  <u>**The express language and legislative intent of Florida's Anti-SLAPP Statute support its application in this case**</u>

Subsection (1) of Florida's Anti-SLAPP Statute sets forth the Legislative intent to prohibit strategic lawsuits against public participation:

    **It is the intent of the Legislature to protect the right in Florida to exercise the rights of free speech in connection with public issues, and the rights to**

peacefully assemble, instruct representatives, and **petition for redress of grievances before the various governmental entities** of this state as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution. It is the public policy of this state that **a person** or governmental entity **not engage** in SLAPP suits because such actions are inconsistent with the right of persons to exercise such **constitutional rights of free speech in connection with public issues**. Therefore, the Legislature finds and declares that **prohibiting such lawsuits** as herein described will preserve this fundamental state policy, preserve the constitutional rights of persons in Florida, and **assure the continuation of representative government in this state**. It is the intent of the Legislature that such lawsuits be expeditiously disposed of by the courts.

Section 768.295(1), Fla. Stat. (emphasis added).

Historically, Florida, as well as other states throughout the United States, have enacted Anti-SLAPP Statutes in order to protect defendants, such as the Commissioner, from being sued into silence, and to bar plaintiffs, such as Fuller and Pinilla, from preventing public debate through the judiciary. *See, e.g.,* Jerome I. Braun, *Increasing SLAPP Protection: Unburdening the Right of Petition in California*, 32 U.C. DAVIS L. REV. 965, 969-972 (1999). Indeed, the pendency of this lawsuit chills the First Amendment rights of the Commissioner and others. *See* U.S. Const. Amend. I; Fla. Const. Decl. of Rights § 4. Plaintiffs' lawsuit is nothing short of an attempt to "chill the right of free expression and free access to government, a double-barreled assault on the core values of our society." *Id.* at 971.

### C.  <u>The Commissioner's speech at issue in the Complaint falls squarely into the type of speech protected by the Anti-SLAPP Statute</u>

Subsection (2)(a) of the Anti-SLAPP statute broadly defines, "[f]ree speech in connection with public issues", used in subsections (1) and (3), as "any written or oral statement that is protected under applicable law and is made before a governmental entity in connection with an issue under consideration or review by a governmental entity, or is made in or in connection with

a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work." § 768.295(2)(a), Fla. Stat.

Here, the Commissioner's speech, as set forth above, including his speech with other City employees, with his constituents, with the media, and at public hearings, all falls squarely within the Anti-SLAPP Statute's protection of "free speech in connection with public issues." The speech at issue in the Complaint made by the Commissioner was made "before a governmental entity in connection with an issue under consideration or review by a governmental entity".

Plaintiffs are complaining about the Commissioner's statements primarily to other government officials in his efforts on behalf of his constituents to encourage adherence to the Florida Building Code. *See, e.g.*, SAC ¶¶ 61, 62, 136, 137, 147, 148, 151, 199, 255, 259, 261, 262. Plaintiffs also take issue with who the Commissioner spoke to, when, where, and why. Plaintiffs complain that the Commissioner failed to adhere to lines of authority in the City Charter, and that he spoke to government officials at night, during walks, and during ride alongs in his District. SAC ¶¶ 63, 131, 145-159, 199, 208.

Government officials have the right to talk to each other in order for the government to take action to promote compliance with the law. As explained by the United States Supreme Court in *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-468, 129 S. Ct. 1125, 1131, 172 L. Ed. 2d 853, 861 (2009):

> A government entity has the right to "speak for itself." *Board of Regents of Univ. of Wis. System v. Southworth*, 529 U.S. 217, 229, 120 S. Ct. 1346, 146 L. Ed. 2d 193 (2000). "[I]t is entitled to say what it wishes," *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 833, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995), and to select the views that it wants to express, *see Rust v. Sullivan*, 500 U.S. 173, 194, 111 S. Ct. 1759, 114 L. Ed. 2d 233 (1991); *National Endowment for Arts v. Finley*, 524 U.S. 569, 598, 118 S. Ct. 2168, 141 L. Ed. 2d 500 (1998) (Scalia, J., concurring in judgment) ("It is the very business of government to favor and disfavor points of view").

> Indeed, it is not easy to imagine how government could function if it lacked this freedom. "If every citizen were to have a right to insist that no one paid by public funds express a view with which he disagreed, debate over issues of great concern to the public would be limited to those in the private sector, and the process of government as we know it radically transformed." *Keller v. State Bar of Cal.*, 496 U.S. 1, 12-13, 110 S. Ct. 2228, 110 L. Ed. 2d 1 (1990).

As expressed by the U.S. Supreme Court, it is not easy to imagine how the City government could function and how the Commissioner could act in furtherance of his mandate to carry out the Code on behalf of his constituents if he could not make the statements at issue to other government officials.  As further set forth in *Bd. of Regents of Univ. of Wisconsin Sys. v. Southworth*, 529 U.S. 217, 235, 120 S. Ct. 1346, 146 L. Ed. 2d 193 (2000), "[w]hen the government speaks, for instance to promote its own policies or to advance a particular idea, it is, in the end, accountable to the electorate and the political process for its advocacy. If the citizenry objects, newly elected officials later could espouse some different or contrary position."

As set forth in *Mulligan v. Nichols*, 835 F.3d 983, 989 (9th Cir. 2016) (emphasis added):

> Retaliation claims involving government speech warrant a cautious approach by courts. **Restricting the ability of government decisionmakers to engage in speech risks interfering with their ability to effectively perform their duties. It also ignores the competing First Amendment rights of the officials themselves**. The First Amendment is intended to "preserve an uninhibited marketplace of ideas in which truth will ultimately prevail." *McCullen v. Coakley*, 134 S. Ct. 2518, 2529, 189 L. Ed. 2d 502 (2014) (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 377, 104 S. Ct. 3106, 82 L. Ed. 2d 278 (1984)).  That marketplace of ideas is undermined if public officials are prevented from responding to speech of citizens with speech of their own. *See Bond v. Floyd*, 385 U.S. 116, 136, 87 S. Ct. 339, 17 L. Ed. 2d 235 (1966) ("The interest of the public in hearing all sides of a public issue is hardly advanced by extending more protection to citizen-critics than to legislators.").

Regardless of Plaintiffs' focus on irrelevancies, the Commissioner's speech at issue in the Complaint is undoubtedly "free speech in connection with public issues", "protected under applicable law" and "made before a governmental entity in connection with an issue under consideration or review by a governmental entity."  § 768.295(2)(a), Fla. Stat. Plaintiffs' efforts

through this Complaint to stop the Commissioner from speech is the very reason the Anti-SLAPP

Statute exists.

    **D.** **Plaintiffs' suit is "without merit" and it was filed "primarily" because the Commissioner "exercised the constitutional right of free speech in connection with" a public issue, instruction to government representatives, or petitions for redress of grievances as set forth in Subsection (3) of the Statute**

Subsection (3) of the Anti-SLAPP statute sets forth what is prohibited:

> A person or governmental entity in this state may not file or cause to be filed, through its employees or agents, any lawsuit, cause of action, claim, cross-claim, or counterclaim against another person or entity **without merit** and **primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue, or** right to peacefully assemble, **to instruct representatives of government, or to petition for redress of grievances** before the various governmental entities of this state, as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.

§ 768.295(3) (emphasis added), Fla. Stat.

The statute prohibits "a person" such as Fuller and Pinilla from filing a lawsuit "against

another person" such as the Commissioner that is "without merit". § 768.295(3), Fla. Stat. This

case is without merit because Plaintiffs are using a fabricated civil rights claim to chill the

Commissioner's speech and enjoin him from doing his job to protect his constituents from unsafe

properties that are not in compliance with the Florida Building Code.

The second statutory requirement is that Plaintiffs' suit was filed primarily because the

Commissioner "exercised the constitutional right of free speech in connection with a public issue,

**or** right to peacefully assemble, to instruct representatives of government, **or** to petition for redress

of grievances before the [government]". § 768.295(3), Fla. Stat. (emphasis added). The second

prong lists several alternative types of speech that qualify. Any of the listed speech is sufficient.

The second prong is met here because the Commissioner's speech constitutes "free speech

in connection with a public issue," as set forth above. *See* Section III.A., *supra*. "Florida's anti-

SLAPP statute prohibits a person from filing a suit that is (a) 'without merit' and (b) 'primarily' because the person against whom the suit was filed 'exercised the constitutional right of free speech in connection with a public issue....' Fla. Stat. § 768.295(3). "The Florida legislature enacted the statute to deter such suits, finding they are 'inconsistent' with the constitutional right of free speech—the preservation of which is a 'fundamental state policy[.]'" *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1321 (S.D. Fla. 2020) (citing Fla. Stat. § 768.295(1)).

Here, as set forth above, the Commissioner has engaged in protected speech, including inquiry to government representatives, petitions for grievances before the government, and to facilitate government redress of constituents' complaint. § 768.295(3), Fla. Stat.

Similarly, in *Levy v. City of Santa Monica*, 114 Cal. App. 4th 1252, 1255, 8 Cal. Rptr. 3d 507, 510 (Cal. App. 2004), the court struck a complaint under the state anti-SLAPP statute, brought against a city and city council member based on the council member's statements to the city planning department about a citizen's building permit. The court found that the action arose from the council member's constitutionally protected speech on behalf of his constituent, a neighbor who complained about the plaintiff's backyard playhouse. *See Levy*, 114 Cal. App. 4th at 1255 ("Garai's act of contacting her representative and Genser's act of contacting planning staff are petitions for grievances against the government protected by the First Amendment.").

### E.  Florida's Anti-SLAPP Statute applies to speech by a public official including the Commissioner

Florida enacted the Anti-SLAPP statute to "preserve the constitutional rights of persons in Florida, and assure the continuation of representative government in this state". As discussed, all of the Commissioner's speech at issue in the Complaint is solely constitutionally protected free speech in furtherance of his duties in promoting the health, safety, and welfare of his constituents and assuring the continuation of representative government.

There is nothing in the language of Florida's Anti-SLAPP Statute that would preclude government officials from filing a motion for judgment on the pleadings pursuant to the statute. The statute draws no distinction between public or private defendants. Indeed, cases across the country have readily applied the protections of state anti-SLAPP statutes to government officials based on the express language of the statutes.

i.   **The growing trend is application of Anti-SLAPP statutes to protect government officials' speech**

In *Vargas v. City of Salinas*, 46 Cal. 4th 1, 17, 205 P.3d 207, 216, 92 Cal. Rptr. 3d 286, 297 (Cal. 2009), the court stated:

> we believe it is clear, in light of both the language and purpose of California's anti-SLAPP statute, that the statutory remedy afforded by section 425.16 extends to statements and writings of governmental entities and public officials on matters of public interest and concern that would fall within the scope of the statute if such statements were made by a private individual or entity.

*See also Levy*, 114 Cal. App. 4th at 1258-1259 (striking complaint against city and city council member based on council member's statements made to planning department about a citizen's building permit).

In analyzing Anti-SLAPP protection for government officials, the Connecticut Superior Court in *Reid v. Harriman*, No. CV196083510S, 2019 Conn. Super. LEXIS 2803, *11, fn. 5, 2019 WL 5960521 (Conn. Super. Ct. Oct. 28, 2019), stated:

> Again, nothing in the statutes suggests that public officials acting in their official capacities are excepted. The court agrees with the California court's assessment of that state's statute in *Schaffer* that 'the salient question in this case is not whether respondents' acts are protected as a matter of law under the [state or federal constitutions] in some other context, but whether they fall within the statutory definition of conduct that the [l]egislature deemed appropriate for anti-SLAPP motions.' *Schaffer v. City and County of San Francisco*, [168 Cal. App. 4th 992, 1001, 85 Cal.Rptr.3d 880 (2008)]. The court concludes that they do.

*See also Graves v. Chronicle Printing Co.*, No. CV185010056S, 67 Conn. L. Rptr. 442, 2018

Conn. Super. LEXIS 3795, *14-16 2018 WL 6264070 (Conn. Super. Ct. Nov. 7, 2018) ("Connecticut's statute applies to any 'party' and the 'right of free speech' is defined as 'communicating or conduct furthering communication, in a public forum on a matter of public concern.' Based on the language of the statute, the court concludes that public officials are not excluded from the protection of the statute when they are 'communicating or . . . furthering communication, in a public forum on a matter of public concern.'").

Further, courts in Texas, Louisiana, Rhode Island, and Nevada have also afforded the protections of those states' Anti-SLAPP Statutes to government officials. *Roach v. Ingram*, 557 S.W.3d 203, 220, 2018 Tex. App. LEXIS 3982, *28-29, 2018 WL 2672546 (Tex. App. June 5, 2018) (citations omitted) ("The TCPA requires only that the communications at issue relating to the exercise of the right of free speech are 'in connection with' 'issues related to' matters of public concern. Further, courts are instructed to construe the TCPA liberally 'to effectuate its purpose and intent fully.' The Parents point to nothing in the TCPA or Texas law compelling otherwise, and we thus hold that the TCPA's plain language does not preclude its application to government officials sued in their official capacity."); *Wainwright v. Tyler*, 253 So. 3d 203, 223-224 (La. 2d Cir. 2018) (citations omitted) ("The plaintiffs have cited no authority from this state to support their argument that Louisiana's anti-SLAPP statute cannot be used by governmental officials or entities to defeat meritless claims that would suppress their exercise of free speech and the right to petition. … Our jurisprudence contains several examples of the use of La. C.C.P. art. 971 by governmental or public entities or public officials. Accordingly, we reject the plaintiffs' argument that La. C.C.P. art. 971 should not be applied to the present case."); *Shire Corp. v. R.I. Dep't of Transportation*, C.A. No. PB 09-5686, 2012 R.I. Super. Lexis 32 at *47 (Sup. Ct. R.I. 2012) ("Therefore, this Court is persuaded that the Anti-Slapp statute protects government employees'

statements made in connection with an issue of public concern."); *John v. Douglas County Sch. Dist.*, 219 P.3d 1276, 1286 (Nev. 2009) ("Nevada's anti-SLAPP statute can be used by private individuals or a government entity to seek dismissal of a SLAPP complaint").

The courts have long recognized that government officials need to be able to speak to each other to carry out their elected mandates on behalf of their constituents. *Pleasant Grove*, 555 U.S. at 467-468. A growing trend of courts across the country have held that state Anti-SLAPP statutes apply to protect government officials sued by citizens based on government speech on matters of public concern. *See, e.g.*, *Vargas*, 46 Cal. 4th at 17; *Levy*, 114 Cal. App. 4th at 1258-1259; *Reid*, 2019 Conn. Super. LEXIS 2803 at *11, fn. 5; *Graves*, 2018 Conn. Super. LEXIS 3795 at *14-16; *Roach*, 557 S.W.3d at 220; *Wainwright*, 253 So. 3d at 223-224; *Shire Corp.*, 2012 R.I. Super. Lexis at *47; *John*, 219 P.3d at 1286.

### ii.  Florida's Anti-SLAPP Statute's express intention warrants protection of government officials' speech

While no Florida case has yet addressed the issue, the express language of Florida's Anti-SLAPP Statute clearly contemplates its intention to protect government officials and their speech. Florida enacted the Anti-SLAPP statute to "assure the continuation of representative government in this state".  § 768.295(1), Fla. Stat.

The *Levy* case is instructive and warrants application here. In *Levy*, 114 Cal. App. 4th at 1260, the court reversed a trial court's order denying a city council member's motion to strike under the Anti-SLAPP Statute an action filed by property owners who were seeking a declaration that their property was conforming and seeking to enjoin city council members from engaging in actions designed to influence city administrative staff with respect to zoning enforcement matters. The court noted that the purpose behind the charter section "is to define the lines of authority within City government, not to prohibit protected speech." *Levy*, 114 Cal. App. 4th at 1262. The

court explained that the charter section has to be interpreted consistent with that purpose and the First Amendment. *Id.*

Similarly, in this case, the Commissioner has a right to free speech in connection with public issues including compliance with the Code for the safety of his constituents. The Commissioner's exercise of that right by speaking with other government officials is protected speech. *Levy*, 114 Cal. App. 4th at 1255 (citation omitted) ("The First Amendment protects everyone, even politicians.").

Another significant similarity between *Levy* and the case at bar is the unreasonably broad injunctive relief sought by the property owners in both cases. The court in *Levy*, 114 Cal. App. 4th at 1261, concluded that the requested injunction "is an overly broad restraint on speech which would inhibit constitutionally protected activity." The court rejected the homeowners' requested injunction based on language of the city charter because under the homeowners' interpretation, "virtually all inquiries [by council members] would be suspect" and "council members could be inhibited from calling City agencies about matters crucial to the community". *Levy*, 114 Cal. App. 4th at 1262. The court noted council members who may make inquiries "might refrain from doing so because of fear of being sued or held in contempt." *Id.*

The injunction Plaintiffs seek in the instant case is much broader than that sought in *Levy*. Here, Plaintiffs basically seek a "get out of jail free card", forever, relating to all of Plaintiffs' properties, employees, tenants, employees, partners, and affiliates. SAC ¶ 321(a-c). The Court recognized that Plaintiffs are seeking extremely broad injunctive relief implicating the Commissioner's First Amendment rights:

> …what you want me to do is to tell a commissioner of the City of Miami that he cannot have any contact with plaintiffs, plaintiffs' properties, tenants, employees, partners, or any affiliates of the plaintiff. He cannot make any requests or provide any instructions or That's what you're asking me to do. He

> can't talk to anybody related to it. Even if you're right, I mean, he probably has some First Amendment and other rights …

10/17/2018 Status Conference at 4:21-5:7 (Moreno, J.).

In line with California, Connecticut, Texas, Louisiana, and Nevada, this Court should apply Florida's Anti-SLAPP Statute to protect the Commissioner's speech and to assure the Legislature's intent that Plaintiffs' SLAPP suit does not interfere with the continuity of representative government for the City of Miami and its residents.

**F.** <u>**Application of Florida's Anti-SLAPP Statute is warranted under the circumstances**</u>

Florida's Anti-SLAPP statute is properly applied based upon the facts and circumstances of this case. In fact, the question of whether a federal court sitting in Federal Question jurisdiction should apply Florida's Anti-SLAPP statute appears to an issue first impression in the Eleventh Circuit. "Where a federal court's jurisdiction is based on a federal question, and disposition of a federal question requires reference to state law, federal courts are not bound by the forum state's choice of law rules, but are free to apply the law considered relevant to the pending controversy." *Produce Pay v. Agrosale, Inc.*, 2021 U.S. Dist. LEXIS 150343 (S.D. Fla. 2021). To that end, it is repeatedly held that Florida's anti-SLAPP statute does not conflict with the Federal Rules of Civil Procedure, but instead "fuses" with the Federal Rules. *See Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110 (S.D. Fla. 2021); *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310 (S.D. Fla. 2020).

As set forth herein, the Florida Legislature's intent was clear, and permitted a defendant to "move the court for an order dismissing the action or granting final judgment" to preserve the fundamental state policy of free speech in connection with public issues, "preserve constitutional rights of persons in Florida, and assure the continuation of representative government in this state."

*Lam v. Univision Communs., Inc.*, 329 So. 3d 190 (Fla. 3d DCA 2021) (analyzing the Florida anti-SLAPP statute's language and intent). To that end, the Florida anti-SLAPP statute does not provide for a burden shift, nor does it heighten the burden on Plaintiffs. *Id*.

Additionally, this Court has previously applied the Florida Anti-SLAPP statute while sitting in diversity jurisdiction. *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110 (S.D. Fla. 2021). In *Corsi*, the Court explained that Florida's anti-SLAPP statute "does not require a plaintiff to establish a probability that he or she will prevail on the claim(s) asserted in the complaint. *Id*. (internal citations omitted). "***Florida's statute does not conflict with any Federal Rule of Civil Procedure***." *Id*. (Emphasis added). "Instead, it ***fuses with Rules 8, 12, and 56***." *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310 (S.D. Fla. 2020) (Emphasis added). In sum, "Florida's statute is a garden variety fee shifting provision, which the Florida legislature enacted to accomplish a fundamental state policy—deterring SLAPP suits." *Id.* "The result, then, is a statute that does not answer the same question as the Federal Rules." *Corsi*, 519 F. Supp 3d at 1128.

A final judgment entered under Rule 12(c) is not only proper, but specifically contemplated pursuant to the statute, by fusing Rules 8, 12, and 56 into its language and intent. *See Bongino*, 477 F. Supp. 3d 1310.

Notably, in this case, there is a key distinction from the cases refusing to apply Anti-SLAPP statutes (often outside of Florida), which analyze the statute with respect to the awarding of attorneys' fees. The Commissioner has not asserted a right to fees under the Anti-SLAPP statute, nor has the Commissioner alleged or sought any sort of heightened standard or burden shift. Overall, the mere fact that this Court is sitting in Federal Question, rather than diversity jurisdiction, is no bar to application of Florida's anti-SLAPP statute. This is especially true when

considering that Plaintiffs' claim for defamation, masked as a First Amendment Retaliation claim, invokes this Court's Federal Question jurisdiction in an attempt to subvert the anti-SLAPP statute.

**IV.**     **The alleged retaliatory conduct has not adversely affected Plaintiffs' protected speech and it would not likely deter a person of ordinary firmness from the exercise of First Amendment rights**

To prevail on its claim for First Amendment retaliation, Plaintiffs must establish: (1) his or her speech "was constitutionally protected," (2) the "retaliatory conduct adversely affected the protected speech," and (3) "there is a causal connection between the retaliatory action[] and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). The Eleventh Circuit adopted the following definition of an adverse action, the second element of a retaliation claim: "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1254. Plaintiffs' claim that they are "reluctant to participate in the political process by supporting candidates for office" as a result of the Commissioner's retaliatory actions. SAC ¶¶ 313, 314. That is blatantly false. In fact, nothing could be further from the truth. In actuality, Plaintiffs have actively "participate[d] in the political process" after the alleged retaliatory actions, by, *inter alia*, supporting an effort to recall the Commissioner from his elected position.

The Eleventh Circuit in *Bethel v. Town of Loxley*, 221 Fed. App'x 812, 813 (11th Cir. 2006) (quoting *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 500 (4th Cir. 2005)) (emphasis added), concluded that "[w]hile it is not dispositive, **the plaintiff's actual response to the defendant's conduct provides some evidence of the tendency of that conduct to chill First Amendment activity**."

If anything, Plaintiffs' conduct has been bolstered, rather than chilled. Plaintiffs have aggressively pursued the Commissioner in numerous forums including this Court, state court, and

the media, clearly demonstrating that Plaintiffs have not been deterred in any way from exercising their First Amendment rights.  It cannot be said that the Commissioner's actions have chilled Plaintiffs, nor any ordinary person. *See Hernandez v. City of Homestead*, No. 21-cv-21536-COOKE/DAMIAN, 2022 U.S. Dist. LEXIS 141622, *29 ("Perhaps most telling is the fact that after the threatening statement was made to her, Plaintiff alleges she went ahead and testified truthfully nonetheless."). Among many others, Plaintiffs have (1) engaged in a verbal diatribe against the Commissioner during a February 14, 2019 public commission meeting, SAC ¶255; (2) held a press conference in front of City Hall "to make the City aware of Carollo's failure to follow the city Code…," ¶271; (3) continued to hold rallies and other events for the Commissioner's political opponents; and many other actions that exhibit that a person of ordinary firmness would not be chilled. From calling Code enforcement on the Commissioner, to participating in a recall campaign against the Commissioner, to holding press conferences at City Hall, to posting videos on YouTube, to disseminating their positions on Twitter, to filing numerous lawsuits, etc., Plaintiffs are engaging in a nonstop battle against the Commissioner because he has the audacity to speak on behalf of his constituents to try to encourage adherence to the law.

Plaintiffs' actual response to the alleged retaliatory acts evidences that Plaintiffs have in no way been chilled in their speech or participation in the political process, but rather, they have actively and continuously participated in the political arena by holding a press conference at City Hall to criticize the Commissioner (SAC ¶ 271) and giving media interviews. Accordingly, Final Judgment on the Pleadings, pursuant to Rule 12(c) is properly awarded in Defendant's favor.

Wherefore, City of Miami Commissioner Joe Carollo respectfully requests that this Court:

(a) Grant Defendant's Motion for Judgment on the Pleadings pursuant to Rule 12(c) and Florida's Anti-SLAPP Statute, § 768.295, Fla. Stat.;

(b) Enter an Order granting any and all sanctions deemed appropriate including the Court's

inherent power and authority to fashion appropriate sanctions for abuses of the judicial

process due to Plaintiffs' bad faith litigation conduct;

(c) Award Defendant's attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

(d) Grant such other and further relief as the Court deems just, equitable, and proper.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of October, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

KRINZMAN HUSS LUBETSKY
   FELDMAN & HOTTE
Co-Counsel for Defendant, Joe Carollo
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, Florida 33131
Telephone: (305) 854-9700
Primary email:  map@khllaw.com
Primary email:  mschneider@khllaw.com
Secondary:  eservicemia@khllaw.com

By:  /s/ Mason A. Pertnoy
      Mason A. Pertnoy, Esq.
      Florida Bar No. 18334
And

SHUTTS & BOWEN
Co-Counsel for Defendant, Joe Carollo
200 S. Biscayne Boulevard, Suite 4100
Miami, FL 33131
Telephone: (305) 415-9072
Email: msarnoff@shutts.com

By:  /s/ Marc D. Sarnoff
Marc D. Sarnoff, Esq.
Florida Bar No. 607924

And

KUEHNE DAVIS LAW, P.A.
Co-Counsel for Defendant, Joe Carollo
100 S.E. 2nd Street, Suite 3105
Miami, FL 33131-2154
Telephone: (305)789-5989
Email: ben.kuehne@kuehnelaw.com;
mdavis@kuehnelaw.com
efiling@kuehnelaw.com


By:  /s/ Benedict P. Kuehne
Benedict P. Kuehne, Esq.
Florida Bar No. 233293


**SERVICE LIST**

| Jeffrey W. Gutchess, Esq. | Robert Zarco, Esq. |
|---|---|
| **Brandon P. Rose, Esq.** | **Alejandro Brito, Esq.** |
| AXS Law Group PLLC | Zarco Einhorn Salkowski & Brito, P.A. |
| 2121 N.W. 2nd Avenue | One South Biscayne Tower |
| Miami, FL 33127 | 2 South Biscayne Boulevard, 34th Floor |
| Email: Jeff@axslawgroup.com; | Miami, FL 33131 |
| Brandon@axslawgroup.com | Email: rzarco@zarcolaw.com; abrito@zarcolaw.com; |
| *Counsel for Plaintiffs* | apiriou@zarcolaw.com |
| | *Counsel for Viernes Culturales/Cultural Fridays, Inc.* |
| **Thomas E. Scott, Esq.** | |
| Cole, Scott & Kissane | |
| 9150 S. Dadeland Blvd., Suite 1400 | |
| Miami, FL 33156 | |
| Email: Thomas.Scott@csklegal.com | |
| *Counsel for Defendant Joe Carollo* | |