**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 18-24190-CIV-SMITH**

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

      Plaintiffs,

v.

JOE CAROLLO,

      Defendant.

_____ /

**DEFENDANT, JOE CAROLLO'S MOTION**
**FOR SANCTIONS FOR FRAUD UPON THE COURT**

Defendant, City of Miami Commissioner Joe Carollo (the "Commissioner"), through his counsel and pursuant to the Court's inherent power and authority to fashion appropriate sanctions for abuses of the judicial process, files his Motion for Sanctions for Fraud Upon the Court.

## I.      <u>Introduction</u>

Plaintiffs' Second Amended Complaint (the "Complaint" and "SAC") is a blatant effort to silence the City of Miami and the Commissioner in their efforts to protect the health, safety and welfare ("welfare") of the citizens of Miami. Plaintiffs' First Amendment retaliation claim is based on a fabricated narrative that the Commissioner is retaliating against them as "political payback" for Plaintiffs allowing two rallies to be held on their properties for the Commissioner's political opponent. Plaintiffs seek to enjoin the Commissioner from performing his job duties and the City of Miami from its efforts to enforce the Florida Building Code, the Miami-Dade County Building Code, and the City of Miami Code and Ordinances (the "Code") against Plaintiffs' properties.

As described herein, Plaintiffs have failed to disclose and have intentionally concealed from this Court their admitted Code violations on their properties, instead perpetrating a fraudulent narrative of alleged retaliation by the Commissioner. Plaintiffs' Complaint is full of fabrications, intentional concealment of pertinent facts, and factual misrepresentations, including, *inter alia*:

> Since 2012, the Tower Hotel has been declared an Unsafe Structure, and therefore it has been uninhabitable and it could not be occupied by the public, including on December 15, 2017, the date of Plaintiffs' Christmas party;
>
> All of the properties referenced in the Complaint (*e.g.*, Tower Hotel, Sanguich, and Calle Ocho Marketplace, among others), received Code violations for work performed without permits and other Code violations; and
>
> Plaintiffs routinely concede Code violations and have entered into at least nine Compliance Agreements with the City to cure work performed without permits (*e.g.*, Compliance Agreements dated July 23, 2018, September 1, 2021, October 12, 2021, January 20, 2022, February 4, 2022, and February 7, 2022); and
>
> The Circuit Court sitting in its appellate capacity, has considered and rejected

Plaintiffs' argument that they are subject to selective enforcement and lack of due process (*see* Opinion dated January 21, 2021 of three-judge panel of the Miami-Dade County Circuit Court, *Calle Ocho Marketplace, LLC v. City of Miami, Code Enforcement*, Case No. 2018-299 AP 01 (Trawick, Walsh, and Santovenia, JJ.) (the "*Marketplace* Opinion") (Exhibit 2)).[1]

As set forth herein, Plaintiffs' claim should be stricken as a fraud on this Court.

**II.**     **Plaintiffs' Complaint is a multi-level fraud on the Court**

Plaintiffs' Complaint constitutes a multi-level fraud on the Court and it should be stricken pursuant to the Court's inherent power. *Oniha v. Delta Air Lines*, No. 21-13532, 2022 U.S. App. LEXIS 5192, *5-6, 2022 WL 580933 (11th Cir. Feb. 25, 2022) ("Courts have the inherent power to fashion appropriate sanctions for abuses of the judicial process, including the severe sanction of outright dismissal of a lawsuit.").

**A.**     **This Court has the inherent authority to strike Plaintiffs' Complaint for putting forth a fraudulent narrative of retaliation**

The Complaint is nothing more than bad faith litigation for the purpose of enjoining the City's enforcement of the Code on Plaintiffs' properties. "It is firmly established that this court has the inherent power to dismiss an action when a party conducts litigation in 'bad faith' and in an abusive manner." *Vargas v. Peltz*, 901 F. Supp. 1572, 1581 (S.D. Fla. 1995) (citations omitted).

Plaintiffs' claim in this case constitutes "bad faith." Plaintiffs have defiled this "temple of justice" by bringing and continuing to prosecute this strategic lawsuit against public participation based on a fabrication and for the purpose of silencing the Commissioner, stopping him from protecting the welfare of his constituents, and preventing him from representing his constituents in their petitions for redress of their grievances. *Bpi Sports v. Thermolife Int'l*, No. 19-60505-CIV-SMITH, 2021 U.S. Dist. LEXIS 130892, *7, 2021 WL 2946170 (S.D. Fla. July 14, 2021) (Smith,

---

[1] Per Rule 201, Fed. R. Evid., Defendant requests the Court take judicial notice of attached Exhibits, comprised of judicial and government public records. *See, e.g., Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006) ("Public records are among the permissible facts that a district court may consider."). *See* Exhibit 1 (Index).

J.) (Court affirmed recommendation to impose sanctions based on defendants' bad faith litigation conduct including fabrication of license agreement for use in the litigation).

> **B.   The foundation for Plaintiffs' First Amendment retaliation claim is their false narrative that the Commissioner is retaliating against Plaintiffs for "political payback" due to Plaintiffs' support of the Commissioner's opponent, Leon**

Plaintiffs claim the Commissioner is retaliating against them for "pure political *payback*—targeting Plaintiffs simply because they dared to support Carollo's opponent in a run-off election". ECF No. 1, ECF No. 125 at 1. Plaintiffs' alleged support of the Commissioner's opponent is the linchpin of speech upon which their entire First Amendment retaliation claim is based. Plaintiffs' theory is unequivocally *false* per Fuller's public statement to the world one month <u>before</u> he filed the Verified Complaint in this case.

Fuller flatly *denied* that the reason for hostility between him and the Commissioner was because Fuller supported the Commissioner's political opponent (<u>Exhibit 22</u> at 9):

> Rolando Acha:  A, a question is, this, and **going back to, to the animosity that may have originated between you. Mr. Bill Fuller, and, and Joe Carollo, could it be because you supported Alfie León, who was his opponent,** the one who was right at the end of the ballot? Because from then on, starting with some statements made in the newspapers, this persecution against you started, following you, to the valet parking area, later, I believe that there was a party on… on December fifteenth, a Christmas party, … Which he also wanted to ruin the Christmas party for you, and there was a confrontation, saying he was the law. This started since then, do you believe or do you suppose? Or are you not totally sure?
> William Fuller:  I, the truth is, in reference to that, **some people say that it was for that political reason, but <u>no</u>, … the people themselves don't know.**

Yet a month later, Plaintiffs swore under oath the exact opposite. Additionally, attached to the Complaint is a sworn statement that Fuller took from Steve Miro on August 3, 2018. *See* ECF No. 125-2. It is clear that two months before filing the Complaint, Fuller did not believe "targeting" by the Commissioner was based on Fuller's exercise of free speech, but rather Fuller believed it was based on "personal issues … about the vision of Calle Ocho" between Fuller and Mario

Murgado, a campaign supporter of the Commissioner, who Fuller believed "might have had influence in [sic] him [the Commissioner] creating problems because I [Fuller] want more Cuban culture and Mario [Murgado] wants to sell more cars."  ECF 125-2 at 23-24. "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). Plaintiffs' claim that the Commissioner was retaliating against them for their support of Leon is a legal fiction created to bring this action to sue the Commissioner into silence. Fuller was asked to give the reason for the fight between him and the Commissioner and he responded, "**the truth is, I don't know exactly**…". <u>Exhibit 22</u> at 6.

This perpetrated fraud cannot stand. Plaintiffs' fraudulent litigation conduct is akin to the plaintiff's fabrication of critical evidence in *Oniha*, 2022 U.S. App. LEXIS 5192, *5-6. In *Oniha*, the Eleventh Circuit affirmed the district court's dismissal with prejudice, concluding:

> The court properly found that Oniha's fabrication of critical evidence and false statements when questioned about that fabrication constitute bad faith. These actions also constitute a "clear pattern" of "contumacious conduct" sufficient to warrant dismissal with prejudice. *Betty K Agencies*, 432 F.3d at 1338.

Similarly, in this case, Plaintiffs' version of events changed 180 degrees from pre-suit when they flatly denied that the Commissioner's animus was based on Plaintiffs' support of the Commissioner's opponent, to their sworn complaint one month later and their operative complaint still being litigated which are *entirely based on that manufactured claim*. As in *Oniha*, in the utmost bad faith, Plaintiffs are trying to pass off a fabricated, after-the-fact version as accurate, and they are relying on it as the entire underlying basis of their 42 U.S.C. § 1983 retaliation claim. *See also Vargas*, 901 F. Supp. at 1580 ("Where, as here, the fabricated evidence undermines the theory in the case, dismissal is particularly appropriate.").

**C.** **<u>Plaintiffs have violated the Code in their construction of the Tower Hotel without permits and have held public events despite the fact that the Tower Hotel has been declared an Unsafe Structure since 2012</u>**

Plaintiffs allege that the initial act of the Commissioner's "retaliation" was his "attack" on their Christmas party at the Tower Hotel, located at 1450 SW 7th Street.[2] SAC ¶¶ 67-90. The undisputed fact which Plaintiffs blatantly ignore is that the Tower Hotel was declared an Unsafe Structure and was unusable for the public since 2012. This fact alone ought to end the debate as to retaliation or targeting with respect to this issue.

### i.  The Tower Hotel was uninhabitable on December 15, 2017 and no Christmas party was permitted

The Tower Hotel was declared an Unsafe Structure by the City on June 5, 2012, five and a half years prior to the Commissioner taking office. Exhibit 5 (First Repair or Demolish Notice, Unsafe Structures Case No. BB2012010271 ("Case #0271")). As such, the Tower Hotel has been *per se* uninhabitable since June 5, 2012. Pursuant to Sections 10-101(c), 10-101(b)(2)(a-l) of the City Code, as an operation of law, the Tower was no longer available to the general public for occupancy upon issuance of the June 5, 2012 Notice of Unsafe Structure. Thus, at all times from June 2012 through the party in December 2017, the Tower Hotel was designated an Unsafe Structure and as a matter of law, could not be used or occupied by the public. Exhibit 8.

On May 31, 2012, the City took photos evidencing both the magnitude of construction and the unsafe condition of the Tower Hotel, including extensive removal of floor, electrical, and plumbing, exposure of structural bracing and beams, and unharnessed electrical wires, all without permits. Exhibit 5.  On June 5, 2012, the City notified the owner of Code Violations for performing unpermitted work, noting it was "concealed after stop-work-order was issued". *Id.*  Plaintiffs

---

[2] Plaintiffs' Complaint intentionally attempts to deceive the Court by conflating five structures located on three Folios as the "Tower Hotel." SAC ¶¶ 19, 20, 67. For clarification, what Plaintiffs refer to as the "Tower Hotel" is comprised of (i) a multi-family structure with another structure in the back located at 1444 SW 7th Street, Folio #0141020066260, (ii) a hotel structure located at 1450 SW 7th Avenue, Folio #0141020066270, and (iii) a structure with a pool structure located at 1460 SW 7th Avenue, Folio #0141020066280. To be clear, no part of what Plaintiffs refer to as the "Tower Hotel" possessed a valid Certificate of Occupancy on December 15, 2017 based on the level of work therein ongoing.

continued working on the Tower Hotel without permits.

On June 25, 2012 the City again issued a Stop Work order for non-permitted work. Exhibit 6. Again, the photos show significant work being performed without a permit. *Id.* On August 24, 2012, the City issued a Repair or Demolish - Final Notice in Case #0271. Exhibit 7.

When a structure is declared Unsafe, the City and County Codes require that it be "vacated" and it "shall not be occupied." City Code §10-101(c)(1) ("Unsafe Building. This building or structure is, in the opinion of the City of Miami, unsafe. This Building Shall Be Vacated-Shall Not Be Occupied."), §10-101(c)(2) ("Entry to any structure posted with such a notice shall be prohibited except by an order issued by a court of competent jurisdiction, until such time as all necessary inspections listed in subsection (4) have been completed."). At no time since 2012 was the property allowed to be occupied except for performing permitted construction work. Ex. 8.

On January 8, 2018, three weeks after Plaintiffs' Christmas party, photographs taken by the City Building Inspector show Plaintiffs' Christmas party decorations still hanging and they show that the Tower Hotel remained an Unsafe Structure:



Exhibit 31. There is simply no justifiable way a party could legally occur in the Tower Hotel on December 15, 2017. The pictures above and attached as Exhibit 9 speak a thousand words.

The conditions of the Tower Hotel evidence Plaintiffs actively performing work without a permit in violation of the Code. Despite the property being declared an Unsafe Structure, Plaintiffs placed peoples' safety at stake by holding their Christmas party there. Plaintiffs' false assertion that the Commissioner shut down their party as an act of "political payback" is indisputably contradicted by the photographic evidence showing that the Tower Hotel posed a significant risk to the welfare of the public. Thus, Plaintiffs' Complaint is nothing more than a fraud upon this Court in an effort to silence the Commissioner from protecting welfare of his constituents.

> **ii.** **After the Christmas party, the Tower Hotel continued to be an Unsafe Structure, and Plaintiffs continued to violate the Code by performing unpermitted work**

On January 8, 2018, the City issued a Stop Work Order. Exhibit 9. However Plaintiffs continued to perform unpermitted work. The photographic evidence supporting the Stop Work Order shows unpermitted installation of electrical lines, floor rot, bathroom plumbing and exterior scaffolding. *Id.* On February 23, 2018, the Unsafe Structures Panel issued an Order to Repair or Demolish Unsafe Structure, further stating the "property is not to be used as an event venue", and no work shall be performed until the permits have been pulled. Exhibit 10.

On July 23, 2018, Plaintiffs' company entered into a Compliance Agreement as to Case #0271 with the City, **personally executed by Fuller**, in which the owner **conceded** the "**Property is in violation of the City of Miami Code.**" Exhibit 11. The owner agreed it "desires to make a voluntary binding commitment to assure the property shall be in compliance with the provisions of the Florida Building Code, Fire prevention Code and all other federal, state, or local ordinances." *Id.* Also on July 23, 2018, Plaintiff's company entered into a separate Compliance Agreement as to the property located at 1460 SW 8th Street, adjacent to the Tower Hotel.

Plaintiffs violated the Compliance Agreements. Plaintiffs' breach of the Agreement as to

the property located at 1460 SW 8th Street (structure with pool) is the subject of pending proceedings in State Court in front of the Honorable Judge Alan Fine.  *See Tower Hotel, LLC, et al. v. City of Miami*, Miami-Dade County Circuit Court Case No. 2022-8069 ("*Tower v. City*").

Plaintiffs' actions with respect to the Tower Hotel property are emblematic of their business practices.  Despite the Tower Hotel being continuously deemed uninhabitable and unsafe for public use since 2012, Plaintiffs, with no regard to the public's safety, and with reckless disregard to the Code, are using this lawsuit to cry wolf. Tellingly, Plaintiffs attempt to do so without disclosing critical evidence which unequivocally demonstrates that all of the issues they complain of concerning the Tower Hotel were in fact lawful protection of the public. Plaintiffs' hyperbolic assertions of "political payback" are nothing more than a false cover.

### D.   Sanguich was an illegal structure that did not have proper permits and it had no Certificate of Use

Plaintiffs' Complaint alleges that the Commissioner targeted Sanguich. SAC ¶¶ 91-110. Plaintiffs have concealed from this Court that Sanguich was an illegal structure that had no Certificate of Use, it improperly was receiving power from its neighbor through an extension cord, and it had dangerously placed propane tanks directly adjacent to a gas station. Exhibit 12 (February 14, 2019 Commission Meeting Minutes ("2/14/2019 Comm. Mtg. Mins.") at 66-67).

#### i.   Sanguich's numerous violations of the Code, of which Plaintiffs failed to advise this Court, are astounding

As set forth in the City's Final Administrative Enforcement Notice and its Affidavit of Non-Compliance in March 2018, Sanguich did not have a Certificate of Use under the Zoning Code of the City of Miami. Exhibit 13 (City's March 8, 2018 Petition for Injunctive Relief with exhibits, in *City of Miami v. Futurama, LLC and Brush and Bristle Corporation*, Miami-Dade County Circuit Court Case No.: 2018-006898). Further, Sanguich failed to obtain a Business Tax

Receipt (BTR) for the type of business conducted under Chapter 31 of the City Code. *Id.* Sanguich, in conformity with Plaintiffs' business practices, performed work without a permit in violation of § 10-3 of the City Code. Sanguich also failed to obtain a Temporary Use Permit under § 65-535 of the City Code, nor did Sanguich obtain a warrant under Article 7 of Miami 21. *Id.* There was a finding of guilt as to the property on March 1, 2018. Exhibit 13 (exhibits D, K).

Rather than own up to the undisputable facts that Sanguich did not comply with the Code, Plaintiffs seek to improperly shift blame and levy weak excuses to fit the perpetration of their false narrative. For instance, Plaintiffs assert that Sanguich did obtain a TEP for use between January 15, 2018 and February 2, 2018, but fail to disclose that the TEP was predicated upon submission of plans to the City Building Department with which Sanguich did not comply. Plaintiffs also try to falsely assert that Sanguich was a food truck, but intentionally ignore the fact that Sanguich was built in a shipping container and critically, was not on wheels; Plaintiffs fabricated and photo shopped axles that were impossible to be placed on a container in a ruse to claim it is a food truck. Exhibit 13 (exhibit G); Exhibit 12 (2/14/2019 Comm. Mtg. Mins. at 66-67).

The City opened Unsafe Structures Case No. BB2018000406 on January 8, 2018 as the container is not a legal structure under the City Code and no permits were obtained in the placing of its electrical, mechanical, or plumbing mechanisms. Exhibit 13 (exhibit G).

The City brought a Petition against Plaintiffs' company and the tenant in March 2018 seeking injunctive relief. Exhibit 13. The City's Petition attached evidence describing the "unsafe conditions" at Sanguich including "non-compliant utility connections, all installations completed without proper permits/inspections" and required that the operator "start process to bring structures into compliance, submit plans and obtain required permits/inspections per F.B.C. [Florida Building Code] and local ordinances", which had not been done.  Exhibit 13 (exhibit H).

The container was thereafter removed, and the City filed a Notice of Voluntary Dismissal Due to Compliance on October 10, 2018. Exhibit 14. Sanguich now operates out of a brick and mortar location without interruption.[3] SAC ¶ 110.

As set forth herein, the violations and the City's efforts to obtain compliance as to Plaintiffs' property and their tenant, Sanguich, have nothing to do with retaliation, and have already been fully litigated and finally determined against Plaintiffs. Plaintiffs' claim that a "raid" by the City on Sanguich, their tenant, constitutes "retaliation" against them by the Commissioner (SAC ¶¶ 91-112) is tantamount to fraud on the Court.

### E.   **Plaintiffs' Code violations and the City's efforts to get Plaintiffs to comply with the law as to the Calle Ocho Marketplace property predate the Commissioner, have nothing to do with retaliation, and have already been fully litigated and finally determined against Plaintiffs**

Plaintiffs allege the Commissioner retaliated by targeting their Calle Ocho Marketplace property. Verif. Comp. ¶¶ 174-187; SAC ¶¶ 176-190. Plaintiffs complain of a Notice of Violation dated August 20, 2018 regarding kiosks on the property, and Plaintiffs claim the timing of the Notice shows it is retaliation by the Commissioner. Verif. Comp. ¶ 176; SAC ¶ 178.

Once again, Plaintiffs are engaging in bad faith litigation.  Plaintiffs are well aware that the Calle Ocho Marketplace property was cited by Code Enforcement on May 22, 2017 relating to the same issue, kiosks on the property, in Case No. CE2017009206, *over six months before* the Commissioner was sworn in. Exhibit 16 (Notice of Violation dated May 22, 2017). In fact, Plaintiffs litigated **and lost** this exact issue. Exhibit 2 (*Marketplace* Opinion).

The Circuit Court affirmed the Code Enforcement Board's Order which authorized the City

---

[3] The Commissioner received an explanation and apology dated February 27, 2018 from Brad Cohen, a part owner and financier of Sanguich. Exhibit 15. In his letter, Mr. Cohen stated: "We thought all necessary details had been handled. We later learned that was not the case. To make matters worse, we now learned that our partner in the venture did not comport himself appropriately with you and your office. We are sorry to have learned of this unfortunate incident and wish to apologize to you through this letter. We are willing, of course, to do so in person if you prefer."

to remove unpermitted structures from the property and to secure Plaintiffs' payment of the costs of removal by imposing a lien on the property. Exhibit 2 (*Marketplace* Opinion).

The Circuit Court, sitting in its appellate capacity, described the history of Plaintiffs' Code violations, the City's efforts to get Plaintiffs to comply with the law, and Plaintiffs' repeated failures to comply. The court found, *inter alia*:

> The record reflects that the City wanted these items removed because they were **unsafe, not properly fastened or stored, and could cause a hazard during a hurricane**.
>
> \*                              \*                              \*
>
> For more than a year before the CEB's September 12, 2018 hearing, **the Owner failed to cure the violations**.
>
> \*                              \*                              \*
>
> The CEB found that **the Owner did not demonstrate a good faith effort** to remove the container kiosks even after the deadline for compliance had been extended multiple times.
>
> \*                              \*                              \*
>
> **The foregoing history does not evidence lack of either notice or an opportunity to be heard regarding the violation, but rather a record of notice and multiple opportunities to correct the violation over an extended period of time.**

Exhibit 2 (*Marketplace* Opinion at 2, 3, 5-6, 8 (emphasis added)).  The Circuit Court further found that Plaintiffs **admitted** to the existence of the Code violations on their property (*id.* at 9-10 n. 3):

> Moreover, the Owner admitted that the code violations existed on the Property. The CEB [Code Enforcement Board] did not find the selective enforcement argument to be convincing, considering that the Property Owner admitted to the existence of the code violations on the Property which the City and CEB had a duty to address.

As to Plaintiffs' argument that they were the victim of "selective enforcement", which they repeat in this case (ECF No. 125-1 at 4, 9, 13), Judges Trawick, Walsh, and Santovenia flatly rejected Plaintiffs' refrain (Exhibit 2 (*Marketplace* Opinion at 9, 19)).

It is in the utmost bad faith that Plaintiffs initially included and continue to include the Calle Ocho Marketplace property as an instance of "Carollo's Retaliation Against Plaintiffs" in

their pleadings. Verif. Comp. at 2, 11, ¶¶ 174-187; SAC at 2, 11, ¶¶ 176-190.

**F.** **Plaintiffs unlawfully performed unpermitted work on a wood structure on their Calle Ocho Marketplace property**

Plaintiffs allege that the Commissioner retaliated by targeting a portion of their Calle Ocho Marketplace property, which is a one story wood frame building located at 827 SW 14 Avenue. Verif. Comp. ¶¶ 174-187; SAC ¶¶ 176-190.   Again, Plaintiffs fail to disclose to the Court the undisputable fact that the work was done without permits.

On March 30, 2018, the City opened Unsafe Structures Case No. BB2018006046 providing Plaintiffs First Notice to Repair or Demolish the wood frame structure. Exhibit 17 (City's Motion to Dismiss in *Calle Ocho Marketplace, LLC vs. City of Miami Unsafe Structures Panel*, Miami-Dade County Circuit Court Case No: 2018-3172 ("*Calle Ocho v. City*"), exhibit A). The Notice set forth that the structure was "Unsafe, Unsanitary, or Deficient", and "Constitutes a Fire or Windstorm Hazard" pursuant to County Code § 8-5. *Id.* The photos supporting the City's Unsafe Structures Case depict the deplorable and unsafe condition of Plaintiffs' property. Exhibit 37.

On April 23, 2018, the City served a Notice of Hearing for Plaintiffs' company to appear in front of the Unsafe Structures Panel for May 25, 2018. Exhibit 17 (exhibit B). On May 25, 2018, the Unsafe Structures Panel entered an Order declaring the one story wood frame structure unsafe and ordering that it be demolished. Exhibit 17 (exhibit C). Despite being duly noticed, Plaintiffs' company failed to appear. Exhibit 17 at 2. On September 7, 2018, the City issued a 10-Day Final Notice to Vacate Unsafe Structure for Demolition. Exhibit 17 (exhibit D).

On September 19, 2018, Plaintiffs' company filed a Verified Complaint for Injunctive Relief executed by Fuller in *Calle Ocho v. City*. Exhibit 18. Fuller freely admitted that the installation of all the new windows, doors, floors, etc., was done without permits or plans, and was seeking the court to order the City of Miami Building Department to accept the after-the-fact plans.

Exhibit 18 (¶¶ 11-12, exhibit E). Essentially, as here, Fuller was seeking to have the Circuit Court bypass the City of Miami's rules and requirements regarding permitting and plan review. *Id.*

On September 25, 2018, Judge Rodolfo A. Ruiz denied Plaintiffs' company's demand for injunctive relief by ordering that the court does not have subject matter jurisdiction. Exhibit 20. On May 12, 2022, the City transmitted a notice of Immediate Demolition. Exhibit 19.

The Marketplace is another example of Plaintiffs' pattern of serial violations of the Code which Plaintiffs have intentionally concealed from this Court to perpetrate their fraudulent narrative of targeting and retaliatory conduct by the Commissioner.[4]

### G. Plaintiffs' properties routinely violate the Code and concede violations by entering into Compliance Agreements

Plaintiffs have a history of receiving Stop Work Orders and Notices of Violation on their properties for unpermitted work. Plaintiffs routinely enter into Compliance Agreements in which they **admit their guilt as to unsafe structures for failure to obtain proper permits and Code violations**. The following are just the tip of the iceberg of Plaintiffs' business pattern and practice of violating the Code. For example, *inter alia*, the following:

> **1450 SW 7th Street** – Folio No. 01-4102-006-6270; Unsafe Structures Case No. BB2012010271 (Exhibit 5, 6 and 31). *See* Section II.C.i, *supra*.

> **1460 SW 7th Street** – Folio No. 01-4102-006-6280; multiple structures, adjacent to Tower Hotel (Exhibit 32) (including photographs evidencing the magnitude of unpermitted work)
> 1.       Unsafe Structures Case No. BB2018000468
> 1/9/2018 - Repair or Demolish – First Notice; Unsafe Structure; Unpermitted Work
> 1/22/2018 – Notice of Hearing before Unsafe Structures Panel
> 2/13/2018 – Notice of Unsafe Structure Violation
> 7/23/2018 – Compliance Agreement (Exhibit 24)
> 2.       Unsafe Structures Case No. BB2020012200
> 7/2/2020 – Notice of Violation; Unpermitted Work

---

[4] Plaintiffs rented their building, despite it being an Unsafe Structure, not having a certificate of occupancy, and illegally hooking up to power. Exhibit 37 at 12-14, 58-64. The photographs of the residence/art studio evidence the poster child of an unsafe structure. *Id.*

10/5/2020 – Final Notice – Repair or Demolish; Unpermitted Work
10/19/2020 – Notice of Hearing before Unsafe Structures Panel
11/20/2020 – Order of the Unsafe Structures Panel
10/12/2021 – Compliance Agreement (Exhibit 24)

**1444 SW 7th Street** - Folio No. 01-4102-006-6260, adjacent to Tower Hotel; Unsafe Structures Case No. BB2012021798 and BB2018000467 (Exhibit 33) (including photographs evidencing the magnitude of unpermitted work)
1/9/2018 – Repair or Demolish – First Notice; Unsafe Structure; Unpermitted Work, BB2018000467
7/23/2018 – Compliance Agreement, BB2012021798
7/24/2019 – Stop Work Order

**1558 SW 7th Street and 1568 SW 7th Street** - Folio No. 01-4102-006-6130; Unsafe Structures Case No. BB2020017396 (Exhibit 34) (including photographs evidencing the magnitude of unpermitted work)
9/25/2020 – Notice of Violation for Unsafe Structure and Unpermitted Work
7/23/2021 – Order of the Unsafe Structures Panel
1/13/2022 – Final Notice to Vacate Unsafe Structure for Demolition
2/7/2022 – Compliance Agreement

**2610 SW 8th Street and 2614 SW 8th Street** – Folio No. 01-4410-009-0010; Unsafe Structures Case Nos. BB2019009159 and BB2020022008 (Exhibit 35)
8/4/2021 – Notice of Hearing before Unsafe Structures Panel
9/1/2021 – Compliance Agreement
2/4/2022 – Second Compliance Agreement

**300 SW 12th Avenue** – Folio No. 01-4102-006-3850; Unsafe Structures Case No. BB2022017697 (Exhibit 29) (including photographs evidencing heavy unpermitted structural work)
9/30/2020 – First Notice – Repair or Demolish; Unsafe Structure
4/12/2021 – Notice of Unsafe Structure Violation
4/16/2021 – Notice of Hearing before Unsafe Structures Panel
5/21/2021 – Order of Unsafe Structures Panel
10/12/2021 – Compliance Agreement

**439 NW 4th Avenue** - Folio No. 01-0107-040-1090; Unsafe Structures Case No. BB2016017191 (Exhibit 30)
9/6/2016 – Notice of Violation; Unpermitted Work
1/12/2022 – Unsafe Structure Violation – First Notice; Unpermitted Work
1/14/2022 – Notice of Hearing before Unsafe Structures Panel
2/18/2022 – Order of the Unsafe Structures Panel

**1380 SW 8th Street** – Folio No. 01-4111-014-0170; Code Enforcement Case No. CE2017009206 (Exhibit 36)
5/22/2017 – Notice of Violation; Unpermitted Work

1/21/2021 – *Marketplace* Opinion (Exhibit 2)

**1378 SW 8th Street** – Folio 01-4111-014-0170 (Exhibit 28); multiple structures
    1.  Unsafe Structures Case No. BB2018002766
2/9/2018 –Violation Date; First Inspection
    2.  Work performed without a permit Case No. CE2018009457
5/4/2018 –Violation Date; First Inspection
9/12/2018 – Hearing date; adjudicated guilty
10/11/2018 – Lien recorded
    3.  Failure to obtain Temporary Use Permit Case No. 2017018176
10/26/2017 – Violation Date; First Inspection
10/30/2017 – Posted Notice of Violation
12/13/2017 – Hearing
    4.  Unsafe Structures; Failure to Obtain Permit Case No. BB2018005372
3/21/2018 – First Inspection; Violation Date
5/18/2018 – Notice of Hearing for 6/22/2018

**827 SW 14th Avenue** – Folio No. 01-4111-014-0150; Unsafe Structures Case No. BB2018006046 (Exhibit 37) (including photos evidencing the magnitude of repair, unpermitted work, voids in space so as to be uninhabitable)
3/30/2018 – Repair Demolish First Notice; Unsafe Structure; Unpermitted Work
4/23/2018 – Notice of Hearing before Unsafe Structures Panel
5/25/2018 – Order of the Unsafe Structures Panel
9/7/2018 – Final Notice to Vacate Unsafe Structure for Demolition

**1501 SW 8th Street** – Folio No. 01-4102-006-6210 (Exhibit 39)
    1.  Work performed without a permit Case No. CE2019005418
3/27/2019 – First Inspection; Violation Date; Construction work completed without a permit
3/28/19 – Notice of Violation Posted
12/5/19 – Found guilty
    2.  Unsafe Structures Case No. BB2021005979
3/26/2021 – First Inspection; Unsafe Structure; Permits Required
3/29/2021 – First Notice
    3.  Erection of a Sign without a Permit Case No. CE2021013580
7/13/2021 – First Inspection; First Notice Violation Date; Unpermitted Work

**1530 SW 7th Street** – Folio 01-4102-006-6070 (Exhibit 40)
    1.  Work performed without a permit; illegally operating a business in a residential zone Case No. CE2019009230
5/9/2019 – First Inspection; Violation Date; First Notice
5/22/2019 – Notice of Hearing, set hearing for 9/5/2019
    2.  No Certificate of Use; illegally operating a business in a residential zone Case No. CE2018019722
9/15/2018 – First Inspection; Violation Date; Notice of Violation

**1549 SW 8th Street** – Folio 01-4102-006-6170 (Exhibit 41) Unsafe Structures
Case No. BB2022001843
4/12/2022 – First Inspection; Violation Date; First Notice

**1521 SW 8th Street** – Folio 01-4102-006-6200 (Exhibit 42) Unsafe Structure,
Failure to Obtain Permit Case No. BB2016023422
12/5/2016 – Demolition/construction taking place without permits
12/5/2016 – Stop Work Order
12/7/2016 – Notice of Violation
1/13/2022 – Notice of Violation
1/20/2022 – Compliance Agreement

**1247 SW 4th Street** – Folio 01-4102-006-3970 (Exhibit 43) Unsafe Structures
Case No. BB2022001883
4/14/2022 – First Inspection; Violation Date; First Notice
4/26/2022 – Lien recorded; Notice of Violation
4/27/2022 – Posting of Notice; Inspection

**1551 SW 8th Street** – Folio 01-4102-006-6160 (Exhibit 44) Unsafe Structures
Failure to obtained 40-50 year recertification Case No. BB2022002451
4/30/2022 – First Inspection; Violation Date
8/24/22 – Posted Notice

### H. **Plaintiffs routinely violate City of Miami Code Quality of Life Requirements**

In addition to Plaintiffs' violations of the Florida Building Code, Plaintiffs' properties and

tenants are repeatedly in violation of the City Code relating to quality of life issues, including the

Ball & Chain Nightclub, Union Beer, and Viernes Culturales on Calle Ocho.[5] All of these examples

are alleged in the Complaint as instances of the Commissioner's supposed "retaliation" against

Plaintiffs due to their alleged support of Leon. Verif. Comp. at 1-2; SAC at 1-2, 11.

---

[5] Plaintiffs' allegation that Union Beer was illegally shut down by the Commissioner is false. SAC ¶ 116. Plaintiff's tenant Union Beer held an open air party and constructed an outdoor wrestling ring, without obtaining a temporary events permit, in violation of Code § 62-521. As such, the City Manager confirmed that he personally instructed Code and police to shut down the event. Exhibit 12 (2/14/2019 Comm. Mtg. Mins.at 68). One of the owners of Velvet Crème Doughnut & Coffee, a business located at 1555 SW 8th Street, which is directly in front of Plaintiffs' tenant's outdoor wrestling ring, was concerned about large crowds drinking beer in the dirt area with no designated entrance or exit in the back of his store, in the alley, on the sidewalk, and on the street in front of his store. Exhibit 27 (10/16/2018 letter). Plaintiffs failed to obtain permits for Viernes Culturales on Calle Ocho as required by the City's Special Events permits and requirements in City Code § 54-6.3. Viernes Culturales did not have any exemptions from the City's Special Events permits and requirements. Plaintiffs fabricate that the event never previously had to apply for or obtain a special event permit. Viernes Culturales previously applied for and received special events permits. Exhibit 26. In 2018, Viernes Culturales under Fuller's leadership, did not apply for nor obtain the required special events permits.

i.  **Plaintiffs' nightclub, Ball & Chain routinely violates noise Code requirements**

Plaintiffs falsely assert that they only received one noise complaint regarding their nightclub Ball & Chain before the Commissioner was elected, but in fact, there were six noise complaints **in the year before the Commissioner** was elected and six noise complaints in the four years after. *Cf.* SAC ¶ 18; Exhibit 21. As seen below, Plaintiffs' assertion that the complaints all arise after the Commissioner was elected is patently false and they have intentionally failed to disclose noise complaints predating the Commissioner.

| Before the Commissioner was sworn in | After the Commissioner was sworn in |
|---|---|
| 3/24/2017 noise complaint, Case No. CE2017004711 | 2/18/2018 noise complaint, Case No. CE201800334, 8/13/2019 lien recorded, 9/18/2020 payment |
| 6/3/2017 noise complaint, Case No. CE2017009953 (music heard a block away) | 9/15/2018 noise complaint, Case No. CE2018019909, Ball & Chain attended trial and found guilty, 7/22/2020 payment |
| 6/10/2017 noise complaint, Case No. CE2017010342 | 5/15/2019 noise complaint, Case No. CE2019009687 |
| 6/11/2017 noise complaint, Case No. CE20177010377 ("Loud music could be heard from over a block away for the second night. Loud music could also be heard in the rear of the property"), 8/9/2018 payment | 11/20/2019 noise complaint, Case No. CE2019022329 |
| 7/2/2017 noise complaint, Case No. CE2017011914 (same), lien recorded 11/16/2017, 2/2/2018 payment check signed by Fuller | 2/16/2020 noise complaint, Case No. CE2020003774 |
| 8/5/2017 noise complaint, Case No. CE201701479 | 11/21/2021 noise complaint, Case No. CE2021024272, 2/17/2022 Ball & Chain plead not guilty and found guilty, after 4 hours of hearing, 3 lawyers, sound engineer, and sound expert, 2/22/2022 payment |

ii.  **Plaintiffs have a pattern and practice of violating noise ordinances and when parties complain, Plaintiffs attempt to intimidate them by engaging in SLAPP suits**

Ball & Chain's neighbors, including El Paraiso Home, Inc. (the "Assisted Living Facility"), have complained about noise violations for years. On September 13, 2020, the Assisted Living Facility sent a letter to City Dept. of Planning and Zoning (Exhibit 3) objecting to Plaintiffs'

application for the expansion of the nightclub's use of the outdoor space behind it. The Letter

summarizes Plaintiffs' serial violations and states, *inter alia* (emphasis added):

> A satellite view taken from Google Maps may assist in understanding the relative positions of the applicant, El Paraiso Home, Inc., and where the proposed activity is to take place.



> **[W]e have concerns about noise levels. These concerns are well-founded. After all, Ball & Chain already has a frankly terrible track record not only in terms of maintaining acceptable noise levels, but also in terms of exceeding the permissible hours during which these noise emissions may be permitted at any level. In sum, the applicant has demonstrated its inability to comply with the limits placed upon its existing usage of the site, yet now comes to the City asking to expand these uses**.

> Furthermore, **noise levels from existing activities are already fairly intolerable and have a deleterious effect not only upon the health of the residents of El Paraiso Home, Inc., but also upon the residents of the two multi-family structures east of the SW 7th property owned by applicant. See image, supra. In fact, noise levels are often so high that even two or more blocks away it is intolerable to residents of Little Havana, whether they are trying to sleep or simply hold a conversation.** You are no doubt aware of this as the myriad complaints are all a matter of public record.

> Of public record also is applicant's flagrant disregard of the law in still other areas. As you likely already know, the applicant has apparently, at times, even **arrogated to itself parking spaces on public thoroughfares and then charged for their use and occupancy. In sum, the applicant has displayed a fairly staggering disregard for the law**, and there is no reason to believe it will spend any time whatsoever before exceeding any limitations placed upon its proposed expanded usage.

> If our understanding of this proposal is correct, **all of this noise-generating

**activity will now occur even closer to El Paraiso Home**, perhaps even spilling over into – if not occupying altogether – the **parking area in the back of applicant's SW 7th Street property, so to place it directly outside the ALF's windows. This is not acceptable, especially given Ball & Chain's established track record of noncompliance with any of the noise ordinances and the apparent inability of law enforcement to do much about the problem.**

One month after the Assisted Living Facility Letter, Plaintiffs' company sued the Assisted Living Facility for, *inter alia*, defamation per se, and seeking a permanent injunction barring the Assisted Living Facility from ever complaining about noise from the nightclub. Exhibit 23 (Plaintiffs' Complaint dated October 13, 2020). The Assisted Living Facility moved to dismiss Plaintiffs' Complaint for infringing on its free speech to oppose Plaintiffs' expansion. Exhibit 3.

Clearly, like this lawsuit, the sole purpose of Plaintiff's Complaint was to bully, intimidate, and silence the Assisted Living Facility. Exhibit 3. Fifteen days after receiving the Assisted Living Facility's motion, Plaintiffs' company filed a voluntary dismissal of its lawsuit. Exhibit 4.

### iii.    Plaintiffs' nightclub routinely violates parking Code requirements[6]

Plaintiffs' Complaint intentionally conceals that Plaintiffs' valet operator was in violation of its permit by using parking lots that were not assigned to the permit. SAC ¶¶ 121, 126. Plaintiffs conceal that the lots used were unimproved surfaces in a residential neighborhood in violation of the Offstreet Parking Guides and Standards for the City of Miami (the "Standards"). Exhibit 25.

Art Noriega, former Miami Parking Authority (MPA) Director, now City Manager, confirmed to the Commission on Ethics, that the Commissioner was correct in reporting to the City that Plaintiffs' valet's use of unimproved residential parking lots was improper and violated the Standards. ECF No. 125-1 at 16-17 (Report at 15-16). Furthermore, Humberto Escandon,

---

[6] Plaintiffs falsely claim "Carollo's retaliation against the Plaintiffs' use of the 7th Street Parking Lot". SAC at 34, ¶ 191, *et seq.* This lot is an unimproved parking lot, single family home, in violation of the Standards. Exhibit 25. Plaintiffs were cited by Code Enforcement for parking on unimproved surfaces, ticket #296660. The citation was not appealed by Plaintiffs and it was paid on May 16, 2019. Exhibit 38.

senior manager of Operation of MPA and head of enforcement, determined Plaintiffs' valet was not using a legal lot. The lot Plaintiffs' valet was using was an unimproved residential lot that was not up to Code. None of the lots being operated by Plaintiffs' entities were compliant with the requirements under the City's parking ordinance, *i.e.*, no striping, potholes, construction materials, and in the case of the church lot, not properly zoned or paved. Escandon explained directly to Fuller the reasons the lots were lawfully shut down. ECF No 125-1 at 23-24 (Report at 22-23).

Plaintiffs' lots were illegal both in placement and operation, and importantly, the MPA had informed Fuller of same, yet despite these omitted facts, Plaintiffs filed this Complaint perpetrating their false narrative of targeting and retaliation.

### III.   <u>Conclusion – Plaintiffs' Complaint is a Fraud Upon the Court and therefore it should be Stricken</u>

Plaintiffs' Complaint <u>is</u> a fraud upon this Court. Plaintiffs' Complaint is a blatant effort to silence the Commissioner's efforts to protect the welfare of the citizens of Miami. Plaintiffs have intentionally deceived and concealed from the Court their lengthy history and business practice of violating the Code and failing to follow the law in connection with their properties, to the detriment of the health, safety, and welfare of the citizens of Miami. Plaintiffs come into this Court with unclean hands and seek broad injunctive relief to stop the Commissioner from fulfilling his mandate to protect residents of Miami. Plaintiffs have engaged in bad faith litigation conduct which dictates the Court exercise its discretionary authority to sanction Plaintiffs.

Wherefore, Commissioner Joe Carollo respectfully requests this Court Grant Defendant's Motion for Sanctions; Enter an Order striking Plaintiffs' Complaint (in whole or in part); Enter an Order granting any and all sanctions deemed appropriate including the Court's inherent power to fashion sanctions for abuses of the judicial process due to Plaintiffs' bad faith litigation conduct; Award Defendant's attorneys' fees per 42 U.S.C. § 1988(b); and Grant such relief as is just.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of October, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

KRINZMAN HUSS LUBETSKY
   FELDMAN & HOTTE
Co-Counsel for Defendant, Joe Carollo
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, Florida 33131
Telephone: (305) 854-9700
Primary email:  map@khllaw.com
Primary email:  mschneider@khllaw.com
Secondary:  eservicemia@khllaw.com

By:  /s/ Mason A. Pertnoy
     Mason A. Pertnoy, Esq.
     Florida Bar No. 18334
And

SHUTTS & BOWEN
Co-Counsel for Defendant, Joe Carollo
200 S. Biscayne Boulevard, Suite 4100
Miami, FL 33131
Telephone: (305) 415-9072
Email: msarnoff@shutts.com

By:  /s/ Marc D. Sarnoff
Marc D. Sarnoff, Esq.
Florida Bar No. 607924

And

KUEHNE DAVIS LAW, P.A.
Co-Counsel for Defendant, Joe Carollo
100 S.E. 2nd Street, Suite 3105
Miami, FL 33131-2154
Telephone: (305)789-5989
Email: ben.kuehne@kuehnelaw.com;
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

By:  /s/ Benedict P. Kuehne
Benedict P. Kuehne, Esq.
Florida Bar No. 233293

## SERVICE LIST

| Jeffrey W. Gutchess, Esq.<br>Brandon P. Rose, Esq.<br>AXS Law Group PLLC<br>2121 N.W. 2nd Avenue<br>Miami, FL 33127<br>Email: Jeff@axslawgroup.com;<br>Brandon@axslawgroup.com<br>*Counsel for Plaintiffs* | Robert Zarco, Esq.<br>Alejandro Brito, Esq.<br>Zarco Einhorn Salkowski & Brito, P.A.<br>One South Biscayne Tower<br>2 South Biscayne Boulevard, 34th Floor<br>Miami, FL 33131<br>Email: rzarco@zarcolaw.com; abrito@zarcolaw.com;<br>apiriou@zarcolaw.com<br>*Counsel for Viernes Culturales/Cultural Fridays, Inc.* |
|---|---|
| Thomas E. Scott, Esq.<br>Cole, Scott & Kissane<br>9150 S. Dadeland Blvd., Suite 1400<br>Miami, FL 33156<br>Email: Thomas.Scott@csklegal.com<br>*Counsel for Defendant Joe Carollo* | |