**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 1:18-cv-24190**

WILLIAM O. FULLER, and
MARTIN PINILLA, II,
                Plaintiffs,

      v.

JOE CAROLLO,
             Defendant.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

      Fascism is not only characterized by the forcible oppression of political opposition, but also by "a consistent and total substitution of lies for factual truth" that aims to destroy the very "sense by which we take our bearings in the world." Hannah Arendt, *The Origins of Totalitarianism* at 78 (Cleveland: Meridian Books 1951). Plaintiffs William O. Fuller and Martin Pinilla, II alleged a textbook case of First Amendment retaliation based on their political activity in opposition to their City Commissioner, Defendant Joe Carollo. It is cynical in the extreme for Carollo to now seek a judgment on the pleadings based on the novel theory that it is **Plaintiffs** who are "trying to chill [**Carollo's**] right of free expression and to silence political discourse" in violation of Florida's anti-SLAPP statute. DE 268 at 3. At the very least, Carollo's motion raises a factual dispute as to who is attempting to silence whom, which cannot possibly be decided as a matter of law on a motion for judgment on the pleadings. At worst, Carollo's effort to substitute the obvious truth for such a blatant lie helps to explain how he has earned the nickname "Crazy Joe" for engaging in outrageous political antics and rampant corruption since the 1980s. *See* THE ECONOMIST, *Joe Carollo, still crazy,* at (May 11, 2000).

## DISCUSSION

Carollo's motion does not attempt to justify the entry of judgment on the pleadings based on any applicable Federal Rule. Instead, Carollo urges this Court to enter a judgment on the pleadings based on Florida's anti-SLAPP statute. But, as Plaintiffs explained just last month, the Supremacy Clause of the Constitution prohibits the application of Florida's anti-SLAPP statute to a claim arising under federal law. *See* DE 256 at 1-2. And, as even Carollo is forced to admit, Florida's anti-SLAPP statute is a "garden variety fee shifting statute" that does not impose "any sort of heightened standard or burden shift" that would warrant the entry of a judgment on the pleadings in this case. DE 268 at 17. Because Plaintiffs have stated a viable claim, particularly when "the facts alleged in the complaint" are taken "as true and view[ed] in the light most favorable to the[m]," a judgment on the pleadings is not appropriate. *S.E.D. Int'l, Inc. v. ADT Sec. Servs., Inc.*, No. 07-21614-CIV, 2008 WL 11331653, at *2 (S.D. Fla. Sept. 19, 2008) (citing *Boyd v. Peet*, 249 F. App'x 155, 157 (11th Cir. 2007)).

A.    **Carollo Is Not Entitled to Apply Florida's Anti-SLAPP Statute to a Federal Claim**

Plaintiffs' complaint asserts a single federal-law cause of action alleging First Amendment retaliation in violation of 28 U.S.C. § 1983, which renders Florida's anti-SLAPP statute inapplicable as a matter of law. As Plaintiffs already explained, "it might be debatable whether anti-SLAPP statutes apply to state-law causes of action arising under federal courts' diversity or pendent jurisdiction," but an anti-SLAPP statute unequivocally "cannot apply in any case like this one which is based exclusively on a single federal-law claim arising under this Court's federal-question jurisdiction." DE 256 at 1-2 (citing cases).

Carollo's observation that this question "appears to be an issue of first impression in the Eleventh Circuit" is too clever by half, given that seemingly every court to have addressed the

matter has rejected it. DE 268 at 16. Just as there is no need for the Eleventh Circuit Court of Appeals to confirm that it is dangerous to run with scissors or to fly a kite in a thunderstorm, it is equally clear that "[f]ederal law governs both the substance and procedure in the litigation of federal claims" under the Supremacy Clause of the Constitution. *S. Middlesex Opportunity Council, Inc. v. Town of Framingham*, 2008 WL 4595369, at *9 (D. Mass. Sept. 30, 2008). Other than the fact that the Eleventh Circuit has not had any occasion to weigh in on this settled principle, Carollo does not provide a single reason for this Court to stand alone in opposing it. *See, e.g.*, *id.* (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 776 (1992)) ("There is no support for applying the anti-SLAPP statute to federal claims," as the "'doctrine of *Erie R.R. Co. v. Tompkins* is inapplicable to claims created and governed by federal law'") (ellipses omitted)); *Fielder v. Sterling Park Homeowners Ass'n*, 914 F. Supp. 2d 1222, 1231 (W.D. Wa. 2012) ("Plaintiff correctly argues that anti-SLAPP statutes are not applicable to federal claims," and "Defendants offer no challenge to the argument that the Supremacy Clause preempts application of [the] anti-SLAPP statute to Plaintiffs' [federal] claims"); *Jiang v. Porter*, 2016 WL 193388, at *1 n.1 (E.D. Mo. Jan. 15, 2016) ("It is clear" that the "anti-SLAPP statute does not entitle defendants to dismissal of the federal claims in the complaint," despite the split of authority as to whether anti-SLAPP statutes apply "to state law claims in federal court"); *ProCare Hospice of Nevada, LLC v. OneCare Hospice, LLC*, 340 F.R.D. 174, 178-79 (D. Nev. 2021) ("[A] state's anti-SLAPP law does not does not apply to . . . federal causes of action" based on the "foundational principle" that the "procedures for litigating federal claims in federal court are determined by federal law," and there is "no legal authority or meaningfully developed argument that the manner in which th[e] federal claims are adjudicated in federal court should be controlled by a state's statutory provision"); *Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 342, 366 (S.D.N.Y. 2010) ("In

every other case this Court has located, federal courts have declined to apply Anti-SLAPP statutes to federal claims," and "I see no reason to apply a state law pleading standard to a federal claim brought in federal court"); *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("[A]s the parties agree, the anti-SLAPP statute does not apply to federal law causes of action").

Though Carollo does not clearly articulate the rationale in favor of applying Florida's anti-SLAPP statute to Plaintiffs' federal-law claim, he repeatedly asserts the off-the-wall refrain that Plaintiffs' cause of action for First Amendment retaliation in violation of 28 U.S.C. § 1983 is, "in effect, a defamation claim." DE 268 at 1, 2, 4-5, 17-18. Without fully explaining his reasoning, it appears that Carollo is attempting to lure this Court into drawing a series of unreasonable conclusions, none of which has any merit:

First, whatever point Carollo is attempting to make by equating Plaintiffs' cause of action under 28 U.S.C. § 1983 with a claim for defamation under state law stumbles out of the gate because Plaintiffs' allegations are not "based **solely** upon [Carollo]'s speech." DE 268 at 5 (emphasis added). Though it should not be necessary for Plaintiffs to endure the inconvenience and expense of correcting such an easily disprovable misrepresentation, even the most cursory glance at the complaint reveals that Plaintiffs' complaint is not based **solely** on Carollo's speech, as Carollo claims, but rather based on Carollo's affirmative acts of illegal retaliation—including his "blatant violation of the City of Miami Charter's prohibition on Commissioners providing direct orders to City employees," which he did to shut down businesses, disrupt cultural events, and trespass on Plaintiffs' properties, among very many other things. DE 125 at 2. The fact that Carollo perpetrated some of his illegal acts by dispensing verbal instructions or admitted his illegal acts by talking about them in no way forces Plaintiffs to assert a claim for state-law defamation in lieu of their federal-law claim for First Amendment retaliation. And even the cases Carollo cites

recognize that Plaintiffs are "not required to plead and prove a state-law cause of action for defamation in setting forth [their] First Amendment retaliation claims." *Hernandez v. City of Homestead, Fla.*, No. 21-21536-CIV, 2022 WL 6569684, at *17 (S.D. Fla. Aug. 8, 2022) (cited in DE 268 at 19).

Second, even if Plaintiffs could have asserted an alternative state-law claim for defamation alongside their federal-law claim for First Amendment retaliation, that would not give Carollo the authority to rewrite Plaintiffs' complaint to assert a different cause of action over Plaintiffs' objection. "In determining whether federal-question jurisdiction exists the plaintiff is the 'master of his claim,' and the plaintiff's 'well-pleaded complaint' determines whether a cause of action arises under federal law." *Loyola Univ. New Orleans v. McMeans*, No. 05-6315-CIV, 2006 WL 286066, at *1 (E.D. La. Feb. 6, 2006) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Carollo does not—and cannot—advance "any statutory basis to deviate from the well-pleaded complaint rule," and thus "the Court determines whether federal question jurisdiction exists solely by reference to [Plaintiffs'] pleadings." *Timber Treatment Techs., LLC v. Hagstrom*, No. 13-2070-CIV, 2013 WL 2066776, at *3 (E.D. Va. May 14, 2013).[1]

Third, as an alternative to rewriting Plaintiffs' complaint to assert a state-law claim, Carollo

---

[1] Obviously, if there were any basis to rewrite Plaintiffs' federal-question complaint on the grounds that it somehow alleges a state-law claim for defamation, Carollo would have waived or forfeited this argument long ago. This case has been pending on this Court's docket for four years, in which every party and every Court (including the Eleventh Circuit) has operated with the shared understanding that this case asserts a claim for First Amendment retaliation in violation of federal law. If there were ever a basis for Carollo to assert that this case is somehow a defamation case arising under state law, then the time to do so has surely expired. *See generally Boat Owners Ass'n of U.S. v. Flagship Towing LLC*, No. 15-197-CIV, 2015 WL 4548698, at *5 (M.D. Fla. July 28, 2015) (quoting *Air Prods. & Chems., Inc. v. Louisiana Land & Exploration Co.*, 867 F.2d 1376, 1379 (11th Cir.1989)) ("Waiver is either an intentional or voluntary relinquishment of a known right, or conduct giving rise to an inference of the relinquishment of a known right"); *Shipley v. Helping Hands Therapy*, 996 F.3d 1157, 1160 n.3 (11th Cir. 2021) ("[F]orfeiture refers to the 'failure to make the timely assertion of a known right").

miscites a since-vacated R&R out of context to suggest that this Court might apply the anti-SLAPP statute if the "disposition of [the] federal question" raised by Plaintiffs' complaint "requires reference to state law." DE 268 at 16 (quoting *Produce Pay v. Agrosale, Inc.*, 2021 WL 5054482, at *4 (S.D. Fla. Aug. 10, 2021)). In *Produce Pay*, however, Judge Torres was tasked with determining whether, unlike here, the federal or state "standard applies for determining a prevailing party when the Court has federal question jurisdiction over the case **and supplemental jurisdiction over the Florida state law claims**." *Produce Pay*, 2021 WL 5054482, at *4 (emphasis added). In this case, of course, there are no supplemental state law claims at issue, and thus no "reference to state law" is required in the first instance. Moreover, even if it were necessary to follow Carollo deeper into this rabbit hole, it would not lead to a different result, since Judge Torres ultimately emphasized that the defendants in *Produce Pay* "failed to present the Court with any reasons or analysis that permits an award of attorney's fees pursuant to a state statute where jurisdiction is based on solely a federal question." *Id*. at *5 ("Defendants . . . have failed to meet their burden of showing why the Florida standard of a prevailing party should apply in a case where the Court only has federal question jurisdiction"). Accordingly, Carollo's counsel have seemingly fallen short of their duty of candor to the Court yet again by misciting *Produce Pay* out of context and by failing to acknowledge its relevant holding, much less the fact that the defendant raising the losing argument "withdrew its motion" following the entry of Judge Torres's R&R, resulting in its vacatur. *Produce Pay*, 2021 WL 5050398, at *1 (Nov. 1, 2021).

<u>Fourth</u> and finally, Carollo apparently resorts to a fallback argument that, in the absence of any legal basis to apply a state anti-SLAPP statute to an exclusively federal-law cause of action, the Court should ignore the law and act on its own volition to "preserve . . . the public policy against SLAPP suits" under the "facts and circumstances" of this case. DE 268 at 3, 16. Once

again, Carollo does not cite any legal authority to support such an extraordinary abuse of judicial authority. As Carollo is "fully aware, [Florida]'s anti–SLAPP statute is simply inapplicable to federal claims, and defendants are not entitled to circumvent the inapplicability of the statute itself to federal law by applying its underlying public policy rationale to achieve the same impermissible result." *Consumer Cellular, Inc. v. ConsumerAffairs.com*, 2016 WL 7238919, at *4 (D. Or. Sept. 26, 2016), *aff'd*, 2016 WL 7242547 (D. Or. Dec. 13, 2016). In other words, the Supremacy Clause dictates that federal-law claims are governed by federal law, and it is inappropriate for Carollo to urge the Court to usurp Congress's role and act on its own to impose the purported "public policy" of Florida or any other state in federal court. In fact, to the extent that the Court were inclined to accept Carollo's invitation to conduct its own freewheeling assessment of "public policy" based on the "facts and circumstances" of the case, then it should deny Carollo's motion all the same. After all, as other courts have observed, applying "the SLAPP statute . . . to provide extra protection to state officials who are alleged to have misused state power to violate plaintiffs' constitutional and statutory rights[ ] seems to contradict the intent of the law," and would "stand the purpose of . . . legislation" designed to foster constituents' First Amendment political activity without fear of retribution "on its head." *Yeshiva Chofetz Chaim Radin, Inc. v. Vill. Of New Hempstead*, 98 F. Supp. 2d 347, 360 (S.D.N.Y. 2000).

**B.**   **Carollo Is Not Entitled to Any Relief**

Regardless of whether Florida's anti-SLAPP statute could ever apply to this federal-question case, Carollo concedes—as he must—that it is merely "a garden variety fee shifting provision" that does not impose "any sort of heightened standard or burden shift" warranting dismissal or a judgment on the pleadings. DE 268 at 17 (quoting *Bongino v. Daily Beast Co.,* 477 F. Supp. 3d 1310 (S.D. Fla. 2020)). Yet, Carollo is also forced to concede that he

does not "assert[ ] a right to fees under the Anti-SLAPP statute." *Id*. Thus, Carollo's dual concessions remove the possibility of any cognizable remedy under the Florida anti-SLAPP statute and leave the Court without any judicial labor to perform.[2]

Without the benefit of "any heightened standard or burden shift" that another jurisdiction's anti-SLAPP statute might otherwise provide—but which Carollo expressly disclaims here—all that remains of Carollo's motion is an empty husk. After devoting the bulk of his briefing to a discussion of the anti-SLAPP statute and then conceding that it has no role to play in this case, Carollo does not bother to explain why a judgment on the pleadings would be warranted under the ordinary standards and burdens applicable under the Federal Rules. "A complaint may not be dismissed on a motion for judgment on the pleadings 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *S.E.D. Int'l, Inc.*, 2008 WL 11331653 at *2 (quoting *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). And here, of course, Carollo has sought dismissal of the complaint multiple times; this Court concluded that it "will not revisit" its holding that Plaintiffs' "stated a valid claim for First Amendment retaliation," DE 186 at 9; and the Eleventh Circuit agreed that "Carollo identifies no legal error in the ruling that the complaint against him alleged that he violated settled

---

[2] Other jurisdictions have promulgated different anti-SLAPP statutes that do not merely shift fees, but rather impose a heightened standard or burden-shifting requirement that provides an alternative basis for dismissing a case or awarding judgment in favor of the defendant. But even in an imaginary alternative universe where Plaintiffs asserted a pendent state-law claim in a federal court sitting in one of those jurisdictions, Carollo's attempt to rely on such an anti-SLAPP statute to secure a dismissal or judgment in his favor would not take him very far. Any anti-SLAPP act imposing a "likelihood of success standard [that] is different from and more difficult for plaintiffs to meet than the standards imposed by Federal Rules" would conflict with the Federal Rules and would thus be rendered inapplicable as a matter of law. *See Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1335 (D.C. Cir. 2015); *accord id*. at 1337 ("A federal court exercising diversity jurisdiction therefore must apply Federal Rules 12 and 56 instead of the D.C. Anti-SLAPP Act's special motion to dismiss provision").

law." *Fuller v. Carollo*, 2022 WL 333234, at *3 (11th Cir. Feb. 4, 2022). "Because the standard of review for judgment on the pleadings is almost identical to the standard used to decide motions to dismiss," Carollo offers no justification for the Court to reach a different result today. *Lee v. Perez*, 2018 WL 6308704, at *1 (S.D. Fla. Nov. 19, 2018).

Nor does Carollo satisfy his burden of establishing grounds for this Court to reconsider its prior Orders denying Carollo's motions to dismiss or to disregard the law of the case established by the Eleventh Circuit's affirmance of those Orders. *See This That and the Other Gift and Tobacco, Inc. v. Cobb County, Ga.*, 439 F.3d 1275, 1283 (11th Cir. 2006) ("[T]he law-of-the-case doctrine bars relitigation of issues that were decided either explicitly or by necessary implication," and "are generally binding in all subsequent proceedings in the same case"). Carollo's motion does not provide any basis to conclude that Plaintiffs' complaint lacks merit, except to suggest in conclusory terms that it comprises "a fabricated civil rights claim to chill [Carollo]'s speech." DE 268 at 10. But this inchoate argument has no relationship to the actual standard for granting a motion for a judgment on the pleadings, which "only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." *Ctr. for Individual Rts. v. Chevaldina*, No. 16-20905-CIV, 2017 WL 7355332, at *1 (S.D. Fla. Aug. 2, 2017), *aff'd*, 2017 WL 7355323 (S.D. Fla. Oct. 6, 2017) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed.)). In a case like this one, where "a comparison of the averments in the competing pleadings reveals a material dispute of fact," Defendant's Motion for "judgment on the pleadings must be denied." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citing *Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir.1956)); *accord Am. Residential Equities, LLC v. GMAC Mortg., LLC*, No. 1:10-CV-21943, 2011 WL 13100213, at *3 (S.D. Fla. Mar. 8, 2011) ("Federal courts are generally

reluctant to grant a motion for judgment on the pleadings where a case presents ambiguous factual circumstances that necessitate proper factual findings by a jury."); *S.E.D. Int'l, Inc.*, 2008 WL 11331653 at *2 (quoting *Hawthorne*, 140 F.3d at 1370 ("A complaint may not be dismissed on a motion for judgment on the pleadings 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'").

Strangely, Carollo concludes his motion by asserting a standalone argument that he is entitled to a judgment as a matter of law because no one of "ordinary firmness" would have been deterred from continuing to engage protected First Amendment political activity despite his vicious retaliation campaign. DE 268 at 2. Carollo is wrong once again.

Construing the allegations of the complaint in the light most favorable to Plaintiffs reveals a litany of retaliatory conduct that would deter a person of ordinary firmness from exercising their First Amendment rights. For example, among very many other things, the complaint alleges that Carollo used "the power and influence of his government office to engage in a campaign of harassment, retribution and retaliation" that included disrupting multiple events and businesses with which Plaintiffs are associated, driving away their business partners, shutting down a collection of small businesses, and engaging in trespassing and harassment. DE 125 at 1. As a result, Plaintiffs not only suffered staggering monetary damages, but also "mental anguish and emotional distress, including sleeping difficulties and other physical ailments." DE 125 at ¶¶ 156, 283-98 ("Summary of Damages," including damages to "Plaintiffs' ability to conduct their daily business," their "stellar reputation in the community," and their "livelihood and . . . ability to provide for [their] kids"). While a person of ordinary firmness might not be deterred by mere "harassing, derogatory, and humiliating comments," it is different when the "Defendant, in his capacity as" a government official, goes beyond making "mere speech, however offensive," and

instead "engage[s] the punitive machinery of government in order to punish" a constituent for "speaking out." *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003).

Accordingly, where the retaliation consists of a government official's conduct, as opposed to his mere remarks, even the assessment of "only petty offenses"—e.g., parking tickets totaling $35.00—represents the imposition of "concrete consequences" that creates a genuine issue of material facts as to whether a person of ordinary firmness would be deterred from continuing to engage in protected First Amendment political activity. *Id*.; *accord Bennett v. Hendrix*, 423 F.3d 1247, 1255 (11th Cir. 2005) (citing, *inter alia*, *Garcia* for the proposition that "a prolonged and organized campaign of harassment" satisfies the ordinary-firmness test, as do other "similar or less harassing acts"); *Pesci v. Beloff*, 2017 WL 11475269, at *6 (M.D. Fla. Dec. 14, 2017) ("[E]ven a small deterrent effect can create a genuine issue of material fact").

Thus, the sole case Carollo cites involving dismissal is not at all illuminating here because it merely concluded that a "remark, although troubling, [wa]s isolated, and [not] made in a threatening tone or manner," meaning that it was "not sufficient to satisfy the test for a retaliatory adverse action." DE 268 at 19 (quoting *Hernandez v. City of Homestead*, 21-21536-CIV, 2022 WL 6569684, at *10 (Aug. 8, 2022)). But in every other case remotely similar to this one, courts across the country agree that "it is up to the trier of fact to determine whether, under the circumstances, the acts were capable of deterring a person of ordinary firmness from engaging in the protected conduct," and not a question of law for the court to decide. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citing *Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3d Cir. 2000)); *accord, e.g.*, *Potter v. Williford*, 712 F. App'x 953, 955 (11th Cir. 2017) ("P[laintiff] presented a genuine issue of material fact as to whether [Defendant's] actions were likely to deter a person from exercising their First Amendment rights"); *Taylor v. Sikes*, 2016 WL 4703867, at *5 (N.D. Fla. Aug. 3, 2016)

("[A] jury could find that the" alleged retaliatory act[s] would chill a person of ordinary firmness from exercising his First Amendment rights"); *Taylor v. Crews*, 2015 WL 5042721, at *8 (N.D. Fla. July 27, 2015) ("[A]ccepting" plaintiff's allegations "as true, supports finding that Defendant . . . yelled at Plaintiff" and "was then punished by not being allowed to eat breakfast," which "would likely deter a prisoner" from exercising his First Amendment rights); *S. Atl. Cos., LLC v. School Board of Orange County*, 2016 WL 3746373, at *4 (M.D. Fla. July 13, 2016) ("The Court cannot conclude, as a matter of law, that a potential protestor, fearful of facing an unjustified bond claim . . . would never opt to remain silent"); *King v. Williams*, No. 12-15116, 2013 WL 4718335, at *3 (E.D. Mich. Sept. 3, 2013) ("Whether action is sufficiently adverse to deter a person of ordinary firmness is generally a question of fact and thus reserved for the jury").

As a final note, Carollo invites error by proposing that Plaintiffs' "pursu[it]" of their claim against "the Commissioner in . . . this Court" constitutes conduct "demonstrating that Plaintiffs have not been deterred in any way from exercising their First Amendment rights." DE 268 at 18-19. Even Carollo acknowledges that this issue "is not dispositive" at the summary judgment stage where it is appropriate to consider the factual record, *id*. at 18, and so it could never form a basis for granting a judgment on the pleadings which requires construing the allegations in the complaint in the light most favorable to Plaintiffs. In all events, the ordinary-firmness test is weighed on an objective scale, not a subjective one, meaning that dismissal or judgment on the pleadings is not appropriate even if Plaintiffs had continued to engage in **some** First Amendment activity despite Carollo's retaliation. *See, e.g.*, *Lozman v. City of N. Bay Village*, 2009 WL 10699943, at *5 (S.D. Fla. Feb. 4, 2009) ("Even if [plaintiff] was not himself deterred from continuing his campaign against various public officials as a result of" the alleged retaliatory acts, "a trier of fact may conclude that a person of 'ordinary firmness' would likely be deterred by such

-12-

acts, if the acts are found to be retaliatory"). And it is particularly offensive for Carollo to suggest that Plaintiffs have forfeited the legal rights by attempting to enforce them in this Court. Plaintiffs have been forced to devote four years of their life in court to vindicate their First Amendment right to engage in political activity that has threatened their mental, physical, and financial well-being, which is obviously not a reason to deny them the relief from Carollo's retaliation that they are afforded under federal law.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant Joe Carollo's Motion for Judgment on the Pleadings (DE 268).

Respectfully submitted,

**AXS LAW GROUP, PLLC**
2121 NW 2nd Avenue, Suite 201
Miami, FL 33127
Tel:  305.297.1878

By: /s/ *Jeffrey W. Gutchess*
Rossana Arteaga-Gomez, Esq.
Florida Bar No. 0014932
rossana@axslawgroup.com
Jeffrey W. Gutchess, Esq.
Florida Bar No. 702641
jeff@axslawgroup.com
Joshua A. Shore, Esq.
Florida Bar No. 031894
josh@axslawgroup.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the forgoing was served via CM/ECF on counsel of record in this action on this 21st day of November, 2022.

*/s/ Jeffrey W. Gutchess*
Jeffrey W. Gutchess