UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 18-24190-CIV-SMITH

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

    Plaintiffs,

v.

JOE CAROLLO,

    Defendant.
_____/

**DEFENDANT COMMISSIONER JOE CAROLLO'S REPLY TO
PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS**

Defendant, City of Miami Commissioner Joe Carollo, files his Reply to Plaintiffs' Response (DE 304), to Defendant's Motion for Judgment on the Pleadings (DE 268).

The Motion asserts the Anti-SLAPP Statute (the "Statute") applies here. *See* Mtn. at 3-18. Plaintiffs' Response does not refute that the statutory elements are met, or directly address the points in the Motion. Instead, Plaintiffs assert the Statute is inapplicable because their sole claim is a federal law claim arising under the Court's federal question jurisdiction; and that the Statute "has no role to play in this case". *See* Resp. at 2-7, 7-10. Plaintiffs' arguments are unavailing.

**A. Judgment against Plaintiffs on their First Amendment retaliation claim is proper**

    **1. Plaintiffs concede the Statute can apply in diversity cases, and that there is no case law in the Eleventh Circuit rejecting applying the Statute here**

In their Response, Plaintiffs concede the Statute can apply in diversity cases, and they concede there is no Eleventh Circuit case law rejecting applying the Statute to claims in federal question jurisdiction cases. *See* Resp. at 2-3.[1]

---

[1] Plaintiffs attempt to minimize the fact that there is no Eleventh Circuit authority supporting their position by likening it to the lack of Eleventh Circuit authority confirming it is dangerous to fly a kite in a thunderstorm. *See* Resp. at 2-3. Of course, Benjamin Franklin did exactly that with memorable and successful results.

## 2. Federal courts often apply an anti-SLAPP doctrine to determination of First Amendment retaliation cases involving speech by government officials

As set forth in the Motion and Plaintiffs' allegations, Defendant is being sued solely based on his speech. *See* Mtn. at 4-5, 8.² In response, Defendant seeks to protect his constitutional rights of free speech against Plaintiffs who are asserting a fabricated claim of First Amendment retaliation. Plaintiffs are seeking to silence Defendant from protecting the health, safety, and welfare of his constituents and helping them petition for redress of their grievances against Plaintiffs' long-standing pattern and practice of Code violations.³

Federal courts have developed a federal anti-SLAPP doctrine protecting government officials from First Amendment retaliation claims arising from the government officials' speech.⁴ *See, e.g., South Middlesex Opportunity Council, Inc. v. Town of Framingham*, 2008 U.S. Dist. LEXIS 85764, 2008 WL 4595369 (D. Mass. Sept. 30, 2008); *Najas Realty, LLC v. Seekonk Water Dist.*, 68 F.Supp.3d 246, 256 (D. Mass. 2014); *Currier v. Town of Gilmanton*, 2022 U.S. Dist. LEXIS 144983, – F.Supp.3d –, 2022 WL 3359156 (D.N.H. Aug. 15, 2022). This doctrine is summarized by *South Middlesex*, 2008 U.S. Dist. LEXIS 85764, at *58-59 (citing *Brandywine-Main Line Radio, Inc. v. F.C.C.*, 473 F.2d 16, 62 (D.C. Cir. 1972)), holding that, "[t]o suggest that the Plaintiffs' activities are shielded by the First Amendment, but that the Defendants' activities

---

² Plaintiffs' claim is based on the Commissioner's speech in that, *inter alia*, the Commissioner himself is not the final decisionmaker as to the allegations. The Commissioner is but one of five and in order for the Commission to make a final decision, a majority of the Commissioners must agree. Plaintiffs make no such allegations but rather allege the Commissioner acting on his own ordered a party be shut down or a business be raided. *See, e.g.*, SAC (DE 125) at 26, ¶¶ 100, 116, 218, 220. The Commissioner was not the final decisionmaker for the alleged retaliatory action. Moreover, any citation, inspection, Code violation, unsafe structures notice, and other such actions would have been issued by police officers, Code enforcement officers, fire marshalls, and the like, not by the Commissioner, individually.
³ Plaintiffs concede they are trying to silence the Commissioner's speech when they assert there is a question as to "who is attempting to silence whom". *See* Resp. at 1. The answer to that question is irrelevant. The fact that Plaintiffs pose the question concedes they are trying to silence the Commissioner's speech on public issues and their cause of action violates the federal anti-SLAPP doctrine.
⁴ *See* Mtn. at 3 (quoting *Keller v. State Bar of Cal.*, 496 U.S. 1, 12-13, 110 S. Ct. 2228, 110 L. Ed. 2d 1 (1990)); 7-9 (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-468, 129 S. Ct. 1125, 1131, 172 L. Ed. 2d 853, 861 (2009)); *Bd. of Regents of Univ. of Wisconsin Sys. v. Southworth*, 529 U.S. 217, 235, 120 S. Ct. 1346, 146 L. Ed. 2d 193 (2000); *Mulligan v. Nichols*, 835 F.3d 983, 989 (9th Cir. 2016)), 16-18.

are prohibited by that same constitutional rule, would allow the Plaintiffs to use the First Amendment both as a shield and as a sword." The federal doctrine is in accordance with the public policy and intent behind state anti-SLAPP statutes including the Florida Statute.

Federal courts often apply the anti-SLAPP doctrine to determine First Amendment retaliation cases involving speech by government officials such as the case at bar. In fact, the only First Amendment retaliation case Plaintiffs rely on in support of their position that the Statute does not apply is a case applying the doctrine to First Amendment retaliation claims. *See* Resp. at 3 (quoting *South Middlesex*, 2008 U.S. Dist. LEXIS 85764, at \*26)). In that case, despite declining to apply the state anti-SLAPP statute to federal claims, *id.* at \*26, the court granted summary judgment and dismissed the First Amendment retaliation claim, concluding the defendants' responses to the plaintiffs' activities did not constitute unconstitutional retaliation. *Id.* at \*58 ("I am not persuaded that the defendant's responses are prohibited as unconstitutional retaliation.").[5]

In *South Middlesex*, 2008 U.S. Dist. LEXIS 85764, at \*55, plaintiffs, like here, sued a town and town officials, for First Amendment retaliation based on plaintiffs' petition to relocate their residential treatment program, application for site plan review, attendance at public hearings, and opposition to town policies on permit applications and housing. The town and town officials' responses to the plaintiffs' conduct, like here, "involved public hearings, legal discussions among governmental bodies, and internal debates about the Plaintiffs' applications." *Id.* at \*58.

---

[5] The other cases cited by Plaintiffs are unavailing as they **do not** involve First Amendment retaliation claims by plaintiffs. *See* Resp. at 3-4 (citing *Fielder v. Sterling Park Homeowners Ass'n*, 914 F.Supp.2d 1222, 1231 (W.D. Wa. 2012) (Fair Housing Act, Washington Law Against Discrimination, state law torts); *Jiang v. Porter*, 2016 U.S. Dist. LEXIS 5244, 2016 WL 193388 (E.D. Mo. Jan. 15, 2016) (claims set forth in *Jiang v. Porter*, 2015 U.S. Dist. LEXIS 172215 (E.D. Mo. Dec. 28, 2015) (religious discrimination, selective enforcement and prosecution based on religion, race and national origin; conspiracy to violate civil rights; willful and reckless official acts under state law; vicarious liability, *Monell* claims; abuse of process; intentional infliction of emotional distress; defamation); *ProCare Hospice of Nevada, LLC v. OneCare Hospice, LLC*, 340 F.R.D. 174, 178-179 (D. Nev. 2021) (trademark infringement); *Ginx, Inc. v. Soho Alliance*, 720 F.Supp.2d 342, 366 (S.D.N.Y. 2010) (tortious interference, racial discrimination violating 42 U.S.C. § 1981, Fourteenth Amendment lack of due process, fraud); *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) (misappropriation of publicity; false designation; federal trademark infringement)).

The court concluded both the plaintiffs' activities and the defendants' responses involved First Amendment interests. *Id.* at *58. Specifically, the court held, *id.* at *58-59 (emphasis added):

> But even if the Plaintiffs' conduct could be characterized as falling under the First Amendment, I am not persuaded that the Defendants' responses are prohibited as unconstitutional retaliation. First Amendment retaliation cases typically involve the employment context, in which speech by an employee precedes an employer's response of termination or sanction. The Defendants' response complained of in this case, by contrast, involved public hearings, legal discussions among governmental bodies, and internal debates about the Plaintiffs' applications.
>
> This distinction convinces me that the First Amendment interests at issue in this case are arrayed on both sides of the public discourse regarding SMOC's facilities in Framingham. The Complaint makes clear that the Defendants viewed the Plaintiffs' requests and activities as a matter of public concern. The public discourse about this matter involved not only participation by the Plaintiffs, but also by members of the Planning Board, Board of Selectmen, and the Town Meeting. **To suggest that the Plaintiffs' activities are shielded by the First Amendment, but that the Defendants' activities are prohibited by that same constitutional rule, would allow the Plaintiffs to use the First Amendment both as a shield and as a sword.** *See Brandywine-Main Line Radio, Inc. v. F.C.C.*, **153 U.S. App. D.C. 305, 473 F.2d 16, 62 (D.C. Cir. 1972) ("The first amendment was never intended to protect the few while providing them with a sacrosanct sword and shield with which they could injure the many."). I will therefore dismiss so much of the § 1983 claim as is based on the First Amendment.**

As in *South Middlesex*, 2008 U.S. Dist. LEXIS 85764, at *58-59, Plaintiffs in this case are impermissibly using the First Amendment as both a shield and as a sword.

In *Najas Realty*, 68 F.Supp.3d at 256, the court granted judgment on the pleadings and dismissed a First Amendment retaliation claim under an anti-SLAPP doctrine. The court noted the general rule that courts apply a "cautious approach" in cases of government officials' speech:

> As a general statement, "[c]ourts have not been receptive to retaliation claims arising out of government speech." *Goldstein*, 719 F.3d at 30, and cases cited. "This cautious approach to limiting government speech is warranted. Not only do public officials have free speech rights, but they also have an obligation to speak out about matters of public concern." *Id.*

*Najas Realty*, 68 F.Supp.3d at 255 (quoting *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013)). The court then concluded the plaintiffs were impermissibly using the First Amendment as both a shield and as a sword, relying on *South Middlesex*. *Id.* at 255-256. The court discussed the legislative purpose behind the state anti-SLAPP statute, and concluded the plaintiffs failed "to state a claim for unconstitutional retaliation." *Id.* at 255.

The conduct of the defendant in *Najas Realty*, a Water District Superintendent, is similar to the alleged conduct of the Commissioner in this case. The plaintiffs alleged the Superintendent appeared, expressed concerns, and presented graphs against plaintiffs' project at a Seekonk Board of Health meeting, he repeated his allegations against the project at a Board of Selectmen meeting, he spoke against the project at a Planning Board meeting, he spoke with Board of Health members outside of meetings expressing his opposition to the project, he engaged in a publicity campaign against the project, he engaged in a retaliatory campaign including defamation, he challenged the plaintiffs' conclusions, and he opposed, expressed concerns, and made arguments against the project. *Najas Realty*, 68 F.Supp.3d at 250-252. *Cf.* SAC (DE 125) ¶¶ 185-186 (Commissioner's speech at Code Enforcement Board meeting), ¶¶ 255-263 (Commissioner's speech and presentation of documents and photos at Commission meeting), ¶¶ 225-233 (Commissioner's defamation and retaliatory campaign against Plaintiffs), ¶¶ 61-62, 106, 135-137, 146-148, 151, 154 (Commissioner's speech with other government officials against Plaintiffs, their businesses, and their tenants), ¶¶ 247, 252 (Commissioner's advertising and speech to the media to gather public support to retaliate against Plaintiffs).

In *Chongris v. Board of Appeals of the Town of Andover*, 811 F.2d 36 (1st Cir. 1987), relied on by *Najas Realty*, property owners sued the Town of Andover, its Zoning Board, individual Board members, and the elected governing body (Selectmen) under 42 U.S.C. § 1983 for

rescinding a building permit in violation of the plaintiffs' constitutional rights. The court in *Chongris*, 811 F.2d at 46 (citation omitted) (emphasis added), affirmed dismissal:

> We can understand, if not appreciate, the appellants' frustration. As they view the mise-en-scene, it is long since past "time to make the donuts" -- but remodelling of the facility was stalled for several years while the battle over the building permit was waged. Yet, as we have repeatedly cautioned, the expenditure of time and money is "an unfortunate but unavoidable aspect of all litigation." The plaintiffs have little choice but to accept that reality. They cannot be allowed to prolong their ill-conceived attempts to punish the Town, or the Board, or municipal officials in general for simply doing their jobs -- even if tasks were imperfectly performed. **The Civil Rights Acts cannot be used as a rack upon which every disappointed developer can stretch a community that fails to roll out the red carpet for him.**

As in *Najas Realty*, 68 F.Supp.3d at 249, and *Chongris*, 811 F.2d 36, Plaintiffs, serial violators of the Florida Building Code, are not entitled to assert a claim under 42 U.S.C. § 1983 based on their perception that the City failed to "roll out the red carpet" for them.

In *Currier v. Town of Gilmanton*, 2022 U.S. Dist. LEXIS 144983, *53-54, – F.Supp.3d –, 2022 WL 3359156 (D.N.H. Aug. 15, 2022), the court granted summary judgment as to all instances of alleged First Amendment retaliation premised on government officials' speech. The court explained, *id.* at *51-52 (quoting *Mulligan*, 835 F.3d at 989) (emphasis added):

> This is because government officials themselves retain First Amendment rights and because "[r]estricting the ability of government decisionmakers to engage in speech risks interfering with their ability to effectively perform their duties." Courts recognize that one of the overarching purposes of the First Amendment— promoting a marketplace of ideas—would hardly be promoted if public officials were "prevented from responding to speech of citizens with speech of their own." *Id.* Thus, **courts impose a higher bar for stating a First Amendment retaliation claim based on government speech**. *See, e.g., Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000) ("[W]here a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory.").[6]

---

[6] There is no allegation that Defendant made a threat, coerced Plaintiffs, or intimidated Plaintiffs intimating that punishment, sanction, or adverse regulatory action will imminently follow.

*See also Echols v. Lawton*, 913 F.3d 1313, 1322-1323 (11th Cir. 2019) (quoting *Dixon v. Burke Cty.*, 303 F.3d 1271, 1275 (11th Cir. 2002)) ("we have acknowledged that special concerns arise when an official's 'own First Amendment rights are implicated' in the commission of an alleged constitutional tort").

### 3. **Plaintiffs' claim is a defamation claim dressed as a Constitutional claim**

Plaintiffs' sole cause of action for First Amendment retaliation, brought under federal question jurisdiction, is a mere wolf in sheep's clothing, as the allegations of the Complaint are nothing more than a standard, state law defamation claim. *See* SAC (DE 125) ¶¶ 186-187, 225-236, 259-261. Plaintiffs argue their retaliation claim is not a defamation claim, because it is not based solely on Defendant's speech. *See* Resp. at 4. However, the sole example Plaintiffs rely on is Defendant's speech: "providing direct orders to City employees". *Id.*

Thus, the federal anti-SLAPP doctrine applies against Plaintiffs' defamation claim dressed as a retaliation claim. In *Currier*, 2022 U.S. Dist. LEXIS 144983, at *50-51, the court concluded, "many of the adverse actions the Curriers allege are speech acts by defendants. In essence, the Curriers attempt to restate their defamation claims as First Amendment claims." The court held, "similarly, the undisputed facts show that the alleged defamatory statements do not rise to the level of adverse action for the purposes of § 1983." *Id.* at *53.[7]

### 4. **Public policy considerations favor applying the Statute in this case**

---

[7] Plaintiffs assert the Statute is inapplicable as they are not required to plead a defamation claim within or instead of their First Amendment retaliation claim. *See* Resp. at 5. That argument misses the point. Defendant did not contend Plaintiffs were required to do either. Defendant pointed out that Plaintiffs' claim, masked as a First Amendment retaliation claim, is nothing more than standard defamation claim. *See* Mtn. at 1-2, 17-18. Neither is Defendant seeking to rewrite the Complaint. *See* Resp. at 5-6. Plaintiffs claim lack of candor in citing *Produce Pay v. Agrosale, Inc.*, No. 20-22585-Civ-Scola/Torres, 2021 U.S. Dist. LEXIS 209994, 2021 WL 5050398 (S.D. Fla. Aug. 10, 2021) (denying motion for fees and costs) (Torres, Mag. J.), later vacated because fees motion was withdrawn. *Produce Pay*, 2021 U.S. Dist. LEXIS 209994, at *4; 2021 WL 5050398 (S.D. Fla. Nov. 1, 2021) (Scola, J.). *See* Resp. at 6. The Magistrate Judge framed the issue as, "what standard applies for determining a prevailing party when the Court has federal question jurisdiction over the case and supplemental jurisdiction over the Florida state law claims" and in that context, noted, "[w]here a federal court's jurisdiction is based on a federal question, and 'disposition of a federal question requires reference to state law, federal courts are not bound by the forum state's choice of law rules, but are free to apply the law considered relevant to the pending controversy.'" *Id.* at *11.

Plaintiffs seek to have the Court disregard public policy favoring application of the Statute in this case. *See* Resp. at 6-7. As set forth in the Motion, and not rebutted by Plaintiffs, Defendant was elected to protect the life, health, safety, and welfare of his constituents and to redress their grievances. Defendant has spoken on behalf of his constituents to petition for redress of their grievances and to protect their interests relating to the City's enforcement of the Code against Plaintiffs, who are one of the largest property owners in his District. Plaintiffs are using this lawsuit to silence Defendant from speaking on behalf of his constituents, as shown by the broad injunctive relief they seek. *See* SAC (DE 125) ¶¶ 320-321.

The language and legislative intent of the Statute support application here and are in accord with the federal doctrine protecting government officials from First Amendment retaliation claims arising from officials' speech. *Cf.* Mtn. at 6-7 (quoting § 768.295(1), Fla. Stat.), with Sec. A.2., *supra*. Application of the federal doctrine is supported by the legislative intent and public policy behind the Statute, and Plaintiffs' arguments to the contrary are unavailing.

Plaintiffs contend applying the Statute would stand the purpose of the legislation "on its head." *See* Resp. at 7 (quoting *Yeshiva Chofetz Chaim Radin, Inc. v. Vill. of New Hempstead*, 98 F.Supp.2d 347, 360 (S.D.N.Y. 2000)).[8] However, government officials have the right to talk to each other in order for the government to take action to promote compliance with the law. *See* Mtn. at 8-10. It is not easy to imagine how the City government could function and how Defendant could act in furtherance of his mandate to carry out the Code on behalf of his constituents if he

---

[8] Moreover, *Yeshiva* is unavailing and distinguishable because there, the court noted the defendants' rights to free exercise of speech were not implicated, and the defendant did not dispute the plaintiffs' contention that there were no known cases in which the SLAPP statute was invoked by or applied to a suit against a government entity or government officials. *Yeshiva*, 98 F.Supp.2d at 360-361. In contrast, here, Plaintiffs' allegations of retaliation are based solely upon Defendant exercising his constitutional right of free speech, and Defendant cited numerous cases in which such Statutes have been applied to government officials, and Plaintiffs did not address same. *See* Mtn. at 3-5, 11-16.

could not make the statements at issue to other government officials. *See* Mtn. at 8-9 (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-468 (2009)).[9]

**B. <u>Plaintiffs' First Amendment retaliation claim is entirely premised on a false narrative</u>**

In Plaintiffs' Response to Defendant's Motion for Sanctions for Fraud on the Court (DE 303), they fail to deny or rebut any of the detailed facts in the Motion for Sanctions and exhibits, thus conceding that the premise of the Complaint, First Amendment retaliation, is fabricated. Plaintiff Fuller flatly *denied* that the reason for hostility between him and Defendant was because Fuller supported Defendant's political opponent (DE 279-22 at 9), and when Fuller was asked to give the reason for the hostility, he responded, "the truth is, I don't know exactly…" (*id.* at 6). Plaintiffs failed to rebut and therefore conceded their intentional concealment of evidence of their pattern and practice of violating the Code, required to protect the health, safety, and welfare of the citizens of Miami. *See* Motion for Sanctions (DE 279), Response (DE 303), Reply (DE 310).

There can be no claim for First Amendment retaliation when probable cause exists for violations. *See, e.g.*, *Carminucci v. Pennelle*, 2022 U.S. Dist. LEXIS 50145 *6, 2022 WL 837090 (S.D.N.Y. March 21, 2022) ("Because there was probable cause for Defendant Pennelle to issue a violation regarding non-compliance with the Town Code site plan requirement, Plaintiffs cannot proceed on their First Amendment retaliation claim on that basis.").[10] Here, Plaintiffs' allegations

---

[9] Plaintiffs' claim that applying the Statute would turn the law on its head ignores Section III.E. of the Motion setting forth that the Statute applies to speech by public officials including Defendant. There is nothing in the language of the Statute that would preclude government officials from filing a motion for judgment on the pleadings; the statute draws no distinction between public or private defendants; and a growing trend of courts have held such statutes apply to protect government officials sued by citizens based on government speech. See Mtn. at 11-16 (citing cases).

[10] *See also DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1306 (11th Cir. 2019) ("the presence of probable cause will generally defeat a plaintiff's § 1983 First Amendment retaliation claim predicated on an underlying civil lawsuit, or counterclaim for that matter."); *O'Boyle v. Town of Gulf Stream*, No. 19-80196-CIV-Cannon/Reinhart, 2022 U.S. Dist. LEXIS 56144 *45-46, 2022 WL 866756 (S.D. Fla. Jan. 24, 2022) (Cannon, J.) ("although it does not answer the precise question now at issue—whether a First Amendment retaliation suit based on ethics complaints to a professional licensing organization requires a lack of probable cause showing—the Court's best guidance remains *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277 (11th Cir. 2019). … Applying the same method of inquiry in this case, the Court finds that the reasoning in *DeMartini* militates strongly in favor of a lack of probable cause requirement.").

concede probable cause exists. *See, e.g.*, SAC (DE 125) at 33-34, ¶¶ 110, 117, 178, 203.

### C. The alleged retaliatory conduct would not likely deter a person of ordinary firmness

As alleged in the Complaint, Plaintiffs were not deterred, and a person of ordinary firmness would not be deterred, from exercise of First Amendment rights in that they actively participated in the political process after the alleged retaliation, including attending Commission and other public meetings, supporting a recall effort, holding a press conference in front of City Hall, and filing an ethics complaint. *See* Mtn. at 18-19; SAC (DE 125) at 1, 7, 47, ¶¶ 165, 271. Plaintiffs do not address these facts.[11]

### D. Judgment on the pleadings is appropriate and warranted

Plaintiffs do not dispute that the Court can enter a judgment on the pleadings if the ordinary standards and burdens are met, although they argue the Statute "has no role to play in this case". *See* Resp. at 7-10. Here, Defendant seeks a judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P., as set forth in the Motion at 1-3, 17, 19. Plaintiffs conflate a motion to dismiss with a motion for judgment on the pleadings and assert Defendant seeks reconsideration of the Court's prior rulings on dismissal. *See* Resp. at 8-9. Not so. The Motion asserts that entering a judgment on the pleadings under the circumstances of this case would preserve, and enforce, the strong public policy against SLAPP suits like the Complaint in the instant case. *See* Mtn. at 3.

Commissioner Carollo respectfully requests this Court grant his Motion (DE 268), and grant such other and further relief as the Court deems just, equitable, and proper.

---

[11] Contrary to Plaintiffs' argument misconstruing the Motion (Resp. at 12), there is no invited error in stating that Plaintiffs have pursued the Commissioner in many forums "including this Court" (in a parallel proceeding involving many of the same allegations against the Commissioner) and the state court. Plaintiffs' barrage of cases involving allegations against Defendant demonstrate that Plaintiffs have not been deterred from exercising their First Amendment rights. *See* Mtn. at 18-19.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of December, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

KRINZMAN HUSS LUBETSKY
   FELDMAN & HOTTE
Co-Counsel for Commissioner Joe Carollo
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, Florida 33131
Telephone: (305) 854-9700
Primary email: map@khllaw.com
Primary email: mschneider@khllaw.com
Secondary: eservicemia@khllaw.com

By: /s/ Mason A. Pertnoy
    Mason A. Pertnoy, Esq.
    Florida Bar No. 18334
And

SHUTTS & BOWEN
Co-Counsel for Commissioner Joe Carollo
200 S. Biscayne Boulevard, Suite 4100
Miami, FL 33131
Telephone: (305) 415-9072
Email: msarnoff@shutts.com

By: /s/ Marc D. Sarnoff
Marc D. Sarnoff, Esq.
Florida Bar No. 607924

And

KUEHNE DAVIS LAW, P.A.

        Co-Counsel for Commissioner Joe Carollo
        100 S.E. 2nd Street, Suite 3105
        Miami, FL 33131-2154
        Telephone: (305)789-5989
        Email: ben.kuehne@kuehnelaw.com;
        mdavis@kuehnelaw.com
        efiling@kuehnelaw.com

        By:  /s/ *Benedict P. Kuehne*
        Benedict P. Kuehne
        Florida Bar No. 233293

## SERVICE LIST

| | |
|---|---|
| **Jeffrey W. Gutchess, Esq.**<br>**Brandon P. Rose, Esq.**<br>AXS Law Group PLLC<br>2121 N.W. 2nd Avenue<br>Miami, FL 33127<br>Email: Jeff@axslawgroup.com;<br>Brandon@axslawgroup.com<br>*Counsel for Plaintiffs* | **Robert Zarco, Esq.**<br>**Alejandro Brito, Esq.**<br>Zarco Einhorn Salkowski & Brito, P.A.<br>One South Biscayne Tower<br>2 South Biscayne Boulevard, 34th Floor<br>Miami, FL 33131<br>Email: rzarco@zarcolaw.com; abrito@zarcolaw.com;<br>apiriou@zarcolaw.com<br>*Counsel for Viernes Culturales/Cultural Fridays, Inc.* |
| **Thomas E. Scott, Esq.**<br>Cole, Scott & Kissane<br>9150 S. Dadeland Blvd., Suite 1400<br>Miami, FL 33156<br>Email: Thomas.Scott@csklegal.com<br>*Counsel for Commissioner Joe Carollo* | |