**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 18-24190-CIV-SMITH**

WILLIAM O. FULLER and
MARTIN PINILLA, II,

Plaintiffs,
v.

JOE CAROLLO,

Defendant.
_________________________________/

**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

This matter is before the Court on Defendant, Joe Carollo's Motion for Judgment on the Pleadings [DE 268], Plaintiffs' Response [DE 304], and Defendant's Reply [DE 311]. This case arises from Defendant's alleged retaliatory conduct towards Plaintiffs after they supported Defendant's opponent in an election for City Commissioner. Defendant ultimately won the election and Plaintiffs allege that since the election Defendant has subjected Plaintiffs to a campaign of harassment in retaliation for Plaintiffs' exercise of their First Amendment rights, thereby violating 42 U.S.C. § 1983. For the reasons set forth below, the Motion is denied.

## I. THE SECOND AMENDED COMPLAINT[1]

The Second Amended Complaint ("SAC") alleges a single count of First Amendment retaliation against Defendant, in violation of § 1983. Plaintiffs seek monetary damages, including punitive damages, attorneys' fees, and injunctive relief. Plaintiffs are local businessmen who own properties and businesses in the Little Havana neighborhood of Miami. One of Plaintiff Fuller's

[1] The Second Amended Complaint is fifty-seven pages long and contains 321 numbered paragraphs. Set forth below is a summary of the allegations.

businesses is the Ball & Chain nightclub. Together, Plaintiffs are working on redevelopment and restoration of the Tower Hotel.

In the summer of 2017, Defendant announced his campaign for Commissioner for the City of Miami's District 3, which includes Little Havana. The election required a run-off election between Defendant and another candidate, Alfie Leon. In November 2017, during the early voting period for the run-off election, a rally in support of Defendant's opponent was held on property that Plaintiffs owned and which was located near a voting center. Defendant allegedly used his contacts at the City to have Code Enforcement Officers and police shut down the rally. The following day, the same thing happened. Defendant won the election.

Under section 4(d) of the City of Miami Charter:

> Except for the purpose of inquiry and as may be necessary as provided in section 14, the mayor, the city commission, any committees and members thereof shall deal with the administrative service solely through the city manager, and neither the mayor nor the city commission, nor any committees nor members thereof shall give orders to any of the subordinates of the city manager, city attorney, city clerk and independent auditor general, either publicly or privately.

Thus, under the terms of the Charter, a commissioner cannot give orders to any subordinates of the City Manager; all orders should be directed to the City Manager who has the authority to give direction to the City departments.

According to the SAC, after Defendant won the election, he began a campaign of retaliation against Plaintiffs. Defendant immediately drew up a list of Plaintiffs' properties and associated businesses in District 3. Steve Miro, who had worked on Defendant's campaign, stated that "when [Defendant] took office . . . he went after Mr. Fuller, obviously." Orlando Diez, the Director of Code Compliance, Construction Manager, Officer of Capital Improvements for the City of Miami at the time, believed that Defendant, in an indirect way, told him to selectively target Fuller's properties.

On December 15, 2017, Plaintiffs held their annual office holiday party at the Tower Hotel. Defendant conspired with another City employee, Maria Lugo, to shut the party down. Lugo repeatedly called and texted Diez, as the Director of Code Enforcement, insisting that he shut down the event because the party lacked a Special Events Permit. Diez sent a Code Officer to the Tower Hotel to investigate. The Code Officer did not identify any violations but was instructed to wait outside until the party ended. Diez also received a call from Assistant City Manager Alberto Parjus who directed Diez to go to the event himself because complaints were "coming from a Commissioner's office." Diez went to the property with additional Code Enforcement Officers. When Diez spoke to Fuller, he told Fuller that this was a political target and Defendant was behind it.

In fall 2017 a sandwich shop, Sanguish de Miami ("Sanguish"), opened on Plaintiffs' property in a refurbished shipping container. Under the City Code the use of shipping containers for retail business was permitted using Temporary Use Permits ("TUPs"). On November 26, 2017, less than a week after Defendant won the election, Sanguish was raided by 25-30 City enforcement personnel. After the raid, Fuller was contacted by City Manager Daniel Alfonso, who advised that Code Enforcement had been summoned to the property and, when asked if this was retaliation from Defendant, Alfonso replied "si." The owners of Sanguish also contacted Alfonso, who confirmed to them that the raid was performed at the direction of Defendant. In December 2017, Defendant met with Sanguish's owners and he told them they should relocate from Plaintiffs' property. Thereafter, at a December 14, 2017 City Commission meeting, Defendant inserted a provision into another commissioner's legislation that would prevent TUPs from being used in District 3, Ordinance 13733. After additional run-ins with Code Enforcement Officers, Sanguish ultimately relocated to another location not owned by Plaintiffs. As a result, Plaintiffs have suffered a loss of rental income and other monetary damages.

Plaintiffs are the landlords of, and partners in, the Union Beer Store in District 3. On February 10, 2018, Union Beer held its one-year anniversary party in the parking lot behind the store. Defendant appeared at the property with police officers and approximately 15-20 Code Enforcement Officers. Defendant then ordered Code Enforcement to shut the party down.

On February 18, 2018, Defendant, and others, entered a parking lot used by the valet operator for Ball & Chain, the nightclub owned by Plaintiff Fuller and others. Defendant informed the valet attendant that he was performing an "official investigation" of the valet operation. When the operator of the valet business arrived, he told Defendant that the lot had been approved by the Miami Parking Authority and that the valet service had a valid lease with the lot owner. Defendant then told the valet operator that "I am the law" and that the operator was "working for a millionaire," meaning Fuller, which was not acceptable to Defendant.

On March 3, 2018, Defendant called a Code Enforcement supervisor and requested that an Officer be sent to District 3 because Defendant had concerns about building permits. When the Officer arrived, Defendant asked to ride along with the Officer to point out five locations, three of which belonged to Plaintiffs, at which Defendant wanted the Officer to search for code violations. After the ride along, Defendant followed up with the Officer to see if any violations had been issued. On March 14, 2018, Defendant arranged for a "park-and-walk" with numerous City officials and employees, in search of code violations.

On March 12, 2018, Plaintiff Fuller, through his company The Barlington Group, filed an Ethics Complaint against Defendant with the Miami-Dade Commission on Ethics and Public Trust. While the Ethics Complaint was pending, the alleged harassment of Plaintiffs stopped. On August 13, 2018, Fuller withdrew the Ethics Complaint and the harassment began again.[2]

[2] Attached to the SAC as Exhibit A is the Miami-Dade Commission on Ethics & Public Trust Investigative Report ("Investigative Report") that resulted from the Ethics Complaint.

On August 20, 2018, just after withdrawal of the Ethics Complaint, Plaintiffs received a letter from the City which included notice of a Code violation at one of their properties where Plaintiffs intended to put a kiosk marketplace using retrofitted containers. Plaintiffs had a lawful Farmer's Market TUP for the marketplace. On September 4, 2018, the City informed Plaintiffs that it was revoking the TUP that allowed the kiosks on the property. On September 12, 2018, an emergency hearing was held at the Code Enforcement Board Meeting, where the Board granted the City permission to enter the property and remove the kiosks.

Also, after the Ethics Complaint was withdrawn, Defendant reported false noise complaints and parking violations related to the Ball and Chain. Plaintiffs maintain that Defendant also attempted to stop a monthly neighborhood festival, with which they were associated, by closing the venue, Domino Plaza, and then reserving the plaza on the same days as future festivals. Defendant has gone on local radio shows and defamed Plaintiffs, claiming they are associated with corrupt governments and investors.

At a February 14, 2019 City Commission meeting, Defendant raised the issue of Code compliance but only focused his presentation on Plaintiff's properties in District 3. The presentation included false and misleading information about various Code violations on Plaintiffs' properties. The Commissioners passed a resolution calling for a task force to investigate Code compliance issues. After the meeting, the City Attorney asked City administrators to inspect eleven properties, seven of which were owned or affiliated with Fuller. Several City officials expressed concern that this was selective enforcement aimed against a business owner. Plaintiffs have also learned that Defendant has engaged in a campaign to direct City officials to use City resources and funds to purchase properties Plaintiffs were attempting to purchase.

## II. MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trail. "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). In considering a motion for judgment on the pleadings, a court must accept the facts in the complaint as true and must view them in the light most favorable to the nonmoving party. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). Judgment on the pleadings should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998) (citations omitted).

## III. DISCUSSION

Defendant argues that it is entitled to judgment on the pleadings because (1) Plaintiffs' suit is a strategic lawsuit against public participation ("SLAPP") and is, therefore, prohibited by Florida's anti-SLAPP statute, Fla. Stat. § 768.295, and (2) Plaintiffs' allegations do not establish one of the elements of their claim, specifically that Plaintiffs suffered an adverse action such that Defendant's retaliatory actions would deter a person of ordinary firmness from the exercise of his First Amendment rights. As to Defendant's first argument, Plaintiffs respond that Florida's anti-SLAPP statute is inapplicable to a federal law claim. As to the second argument, Plaintiffs point out that this Court has already held that Plaintiffs have adequately alleged a claim for First Amendment retaliation. The Court agrees that the issue of whether Plaintiffs have adequately pled a claim for First Amendment retaliation has been resolved and the Court will not revisit it now. Thus, the only issue the Court will address is whether Plaintiffs' claim is barred by Florida's anti-SLAPP statute.

Plaintiffs' sole claim for First Amendment retaliation is based on federal law. When the Court's jurisdiction is based on a federal question, the Court applies federal law, not state law. *See Burks v. Lasker*, 441 U.S. 471, 476 (1979) ("Since we proceed on the premise of the existence of a federal cause of action, it is clear that 'our decision is not controlled by *Erie R. Co. v. Tompkins*, 304 U.S. 64,' and state law does not operate of its own force." (internal modifications and citation omitted)). Further, under the Supremacy Clause of the United States Constitution, courts "must not give effect to state laws that conflict with federal laws." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015). Thus, "[a]s a matter of federal constitutional law, regulation by federal [law] may not be undermined by conflicting state law." *Trustees of Laborers Loc. Union 800 Health & Welfare Tr. Fund v. Pump House, Inc.*, 821 F.2d 566, 568 (11th Cir. 1987).

Here, Defendant is asking the Court to do just that—give effect to a state law that undermines Plaintiffs' federal cause of action. Defendant is seeking to use a procedural tool found in Florida's anti-SLAPP statute to dismiss what has already been held to be a well-pled complaint of First Amendment retaliation. Unlike many of the federal cases cited by Defendant that applied state anti-SLAPP statutes, this case is not here on diversity jurisdiction. Plaintiffs brought a federal claim and Defendant's numerous attempts in his motion papers to recast the claim as a run-of-the-mill state law defamation claim does not make it so.

Further, Defendant's attempt to argue that Florida's anti-SLAPP statute is applicable here because it "fuses" with the Federal Rules of Civil Procedure fails. The cases on which Defendant relies involve attempts to use the anti-SLAPP statute to recover attorneys' fees, not as a basis for dismissal. *See Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110 (S.D. Fla. 2021), *appeal dismissed in part*, No. 21-10480, 2022 WL 3353776 (11th Cir. July 1, 2022), and *appeal dismissed in part*, No. 21-10480, 2022 WL 3350519 (11th Cir. July 7, 2022); *Bongino v. Daily Beast Co.*,

*LLC*, 477 F. Supp. 3d 1310 (S.D. Fla. 2020). Moreover, these cases did not involve federal claims; they involved only state law claims brought pursuant to the federal court's diversity jurisdiction.

Defendant's attempt to argue that there is a federal anti-SLAPP doctrine also fails. The cases cited by Defendant are all district court cases outside of the Eleventh Circuit. Further, in those cases, the courts found that the plaintiffs had failed to allege a First Amendment retaliation claim. *See Currier v. Town of Gilmanton*, No. 18-CV-1204-LM, 2022 WL 3359156, at *17 (D.N.H. Aug. 15, 2022), *reconsideration denied*, No. 18-CV-1204-LM, 2022 WL 11961748 (D.N.H. Oct. 20, 2022) (finding that "none of the alleged instances of retaliation based only on government speech rises to the level of adverse action under the First Amendment"); *Najas Realty, LLC v. Seekonk Water Dist.*, 68 F. Supp. 3d 246, 254 (D. Mass. 2014), *aff'd*, 821 F.3d 134 (1st Cir. 2016) (finding that it is unclear whether plaintiffs' conduct was protected by the First Amendment and that the complaint fails to establish that the defendants engaged in unconstitutional retaliatory conduct); *S. Middlesex Opportunity Council, Inc. v. Town of Framingham*, No. CIVA 07-12018-DPW, 2008 WL 4595369, at *19 (D. Mass. Sept. 30, 2008) (finding that "even if the Plaintiffs' conduct could be characterized as falling under the First Amendment, I am not persuaded that the Defendants' responses are prohibited as unconstitutional retaliation."). Here, the Court has already found that Plaintiffs have adequately alleged a claim for First Amendment retaliation. Thus, this argument is nothing more than an attempt to get the Court to revisit that decision. Finally, if the Court were to adopt Defendant's arguments and apply Florida' anti-SLAPP statute, or any anti-SLAPP doctrine, it would leave members of the public with little to no recourse when a government official uses his position and the powers of the government to retaliate against the public for exercising their First Amendment rights.

Accordingly, it is

**ORDERED** that Defendant, Joe Carollo's Motion for Judgment on the Pleadings [DE 268] is **DENIED.**

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 28th day of February, 2023.

**RODNEY SMITH**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record