UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 18-24190-CIV-SMITH

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

    Plaintiffs,

v.

JOE CAROLLO,

    Defendant.
_____/

## **DEFENDANT, JOE CAROLLO'S MOTION FOR MISTRIAL**

Defendant, Joe Carollo, by and through his undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, hereby files this Motion for Mistrial, as follows:

**I.     Factual Background**

1. On April 24, 2023, at the commencement of the day's proceedings, the Court disclosed to counsel for both parties that Juror 3 reported being followed at the conclusion of trial on Thursday, April 20, 2023. The Court read a two-page note Juror 3 had provided to the Court. The note has not yet been marked as an exhibit.

2. The note disclosed that Juror 3 had been followed into the Miami Parking Garage, just south of the courthouse, by a tan-skinned male in his late 30's with short, dark brown hair, whom Juror 3 associated with the Plaintiffs.

3. The male followed Juror 3, walked into the elevator with Juror 3, and did not select a floor in the elevator.

4. The male then got off the elevator on the same floor Juror 3 parked.

CASE NO.: 18-24190-CIV-SMITH

5. At that time, the male approached Juror 3 and stated, "You need to go on social media, on the internet, and see that people have been followed and you need to see what this defendant is capable of."

6. Juror 3 confirmed that the person who approached Juror 3 wore a bright orange shirt and black blazer to Friday's trial, sat alongside the Plaintiffs, and confirmed his association with the Plaintiffs.

7. Juror 3 also confirmed that Juror 3 could identify the male, who had been seen in the courtroom throughout the trial.

8. The person wearing the bright orange shirt with black blazer is known to the Defendant as the Plaintiffs' business partner, Zack Bush. *See* Declarations of Brandon Fernandez and Kurtis Huntsinger, attached as Exhibits 1 and 2 respectively.

9. Juror 3 confirmed to the Court that Juror 3 did not engage with Mr. Bush and drove to the exit.

10. Juror 3 noticed that Mr. Bush was driving the same car that Juror 3 owns, a Black BMW 7 Series.

11. In the Court's *voir dire* of Juror 3, Juror 3 disclosed speaking with several jurors about this incident, who convinced Juror 3 to disclose the issue to the Court.

12. The Court performed an in-camera examination of the jurors. The examination revealed that Jurors 2, 5, 6, 7, 8, and 9 were all made aware by Juror 3 of being followed and the attempts by Mr. Bush to have Juror 3 violate the Court's Order to remain off social media or listen to news events of the trial.

CASE NO.: 18-24190-CIV-SMITH

13. The Court then requested curative instructions from the Parties. After failed attempts to create a joint curative instructive, the Parties submitted competing proposed instructions.

14. The Court determined that the Plaintiffs' curative instruction would be read to the jury.

15. At the close of Day 7 of trial, Monday, April 24, 2023, Defendant moved *ore tenus* for a mistrial.

16. As part of the motion for mistrial, the Defense brought to the Court's attention:

  a. Mr. Bush was listed as a witness in the Plaintiffs' pretrial witness list.

  b. Mr. Bush testified at deposition, in the Madroom matter, on September 19, 2022 at page 146, "I am invested in that lawsuit [referring to *Fuller v. Carollo*]." At page 147, Mr. Bush revealed that he is funding the case, and is "vested in the outcome of that lawsuit."

  c. According to the Florida Department of Motor Vehicle Records, Mr. Bush owns a 2020 Black BMW 740I, VIN WBA7T2C07LCD31643.

  d. Mr. Bush was present on Day 1 when the Court charged the jury to stay off social media and not read news events of this trial.

17. In contacting Juror 3, Mr. Bush, as the Plaintiffs' partner, deliberately sought to engage with one of the jurors in a way that would have been impossible through inadvertence or accidental meeting.

18. It required effort to follow and get on the elevator with Juror 3 in order to expressly violate the Court's charge to jurors to avoid learning facts that have not been placed before the Court, all with the purpose of tainting Juror 3's impartiality and/or intimidating Juror 3.

19. In making the motion for mistrial, Defense counsel asked the Court to perform a *voir dire* of Mr. Bush, which the Court stated it would when it became aware of his presence in the courtroom or if counsel is aware that Mr. Bush is in the building.

20. Defense counsel requested the Court to compel Mr. Bush's attendance, however the Court declined to do so, suggesting Judge Altman could make a ruling in the related litigation against the City in connection with the incident involving Mr. Bush.[1]

21. Accordingly, the Defense renews it motion for mistrial.

## II. Memorandum of Law

In *United States v. Harry Barfield Co.*, 359 F.2d 120 (5th Cir. 1966),[2] the Fifth Circuit reversed the judgment after the district court's failure to grant a mistrial after the president of a corporate taxpayer deliberately approached several jurors about conversations which covered a family relationship. *Id.* at 121-23. The facts of *Harry Barfield* are strikingly similar to Mr. Bush's attempts at juror tampering and/or intimidation. However, the situation is more egregious here in that the company's president in *Harry Barfield* spoke to the juror in question about matters *unrelated* to the case. *Id.*

In *Harry Barfield*, when the district court adjourned for noon recess following the charge to the jury and prior to submission of case to the jury, the president and his brother's wife entered an elevator with three jurors for the purpose of leaving the building. *Id*. Certain conversations took place between the president and two of the jurors on the elevator and just after leaving the elevator.

---

[1] While sanctions might be imposed in a different proceeding involving Mr. Bush, such sanctions would have no effect at all on the harm caused by Mr. Bush in *these* proceedings.

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Id*. The district court declined to declare a mistrial or grant a new trial, believing no harm to have been done by the occurrence. *Id.* at 123.

In reversing the trial court, the Fifth Circuit stated, "[T]he occurrence is such as to be so inherently unfair as to reflect on the jury system, we think a mistrial should be declared or, as the matter was handled by the court here, a new trial should be granted. Over and above the rights of the litigants, the jury system could not long survive abuse of the type here made out." *Id*. at 123. As the Court clearly stated, this was no inadvertent or accidental meeting, it required effort.

"We think the harm is inherent in the deliberate contact or communication which exists under the facts of this case." *Id*. at 124. "Every case turns on its own peculiar facts, but the harm here appears to a degree that cannot be overcome, and thus prejudice or harm appears as a matter of law." *Id*. Indeed, the Fifth Circuit explained, "We treated the conduct as being prejudicial per se, and not subject to being overcome by a showing of harmlessness." *Id.* The court observed the unlikelihood of getting a juror to acknowledge that he or she had, in fact, been influenced by the improper conduct. *Id.* The conduct in *Harry Bailey* was "deliberate and intentional as distinguished from a mere accidental or inadvertent contact…." *Id*. The Fifth Circuit went on to explain that our system of trial by jury "presupposes that the jurors be accorded a virtual vacuum wherein they are exposed only to those matters which the presiding judge deems proper for their consideration." *Id*.

In this case, Mr. Bush was present when this Court charged the jury to avoid social media and internet information about this case. He willfully violated this Court's instruction, followed a juror, entered an elevator with a juror, and asked a juror to violate their oath and do exactly what this Court ordered not to occur. The harm was compounded by the fact that Juror 3 then

communicated the information relayed by Mr. Bush to several of the other jurors. For the foregoing reasons, this Court is impelled to grant Defendant's Motion for Mistrial.

WHEREFORE, Defendant, Joe Carollo, respectfully requests that this Court enter an Order granting a mistrial, enter an Order to show cause as to why Zack Bush should not be held in contempt of Court, and for such other and further relief this Court deems just and proper.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of April, 2023, a true and correct copy of the foregoing was served on all counsel of record via the CM/ECF.

Respectfully submitted,

KRINZMAN HUSS LUBETSKY
   FELDMAN & HOTTE
Co-Counsel for Defendant, Joe Carollo
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, Florida 33131
Telephone: (305) 854-9700
Primary email:  map@khllaw.com
Primary email:  mschneider@khllaw.com
Secondary:  eservicemia@khllaw.com

By:  */s/ Mason A. Pertnoy*
      Mason A. Pertnoy, Esq.
      Florida Bar No. 18334

And

SHUTTS & BOWEN
Co-Counsel for Defendant, Joe Carollo
200 S. Biscayne Boulevard, Suite 4100
Miami, FL 33131
Telephone: (305) 415-9072
Email: msarnoff@shutts.com

By: */s/ Marc D. Sarnoff*
      Marc D. Sarnoff, Esq.
      Florida Bar No. 607924

CASE NO.: 18-24190-CIV-SMITH

And

KUEHNE DAVIS LAW, P.A.
Co-Counsel for Commissioner Joe Carollo
100 S.E. 2nd Street, Suite 3105
Miami, FL 33131-2154
Telephone: (305)789-5989
Email: ben.kuehne@kuehnelaw.com;
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

By:  /s/ *Benedict P. Kuehne*
       Benedict P. Kuehne
       Florida Bar No. 233293

And

COLE, SCOTT & KISSANE
Co-counsel for Commissioner Joe Carollo
9150 S. Dadeland Blvd., Suite 1400
Miami, FL 33156
Email: Thomas.Scott@csklegal.com
Amber.Dawson@csklegal.com

By:  /s/ Thomas E. Scott
       Thomas E. Scott
       Florida Bar No. 149100

**SERVICE LIST**

| **Jeffrey W. Gutchess, Esq.**<br>**Brandon P. Rose, Esq.**<br>AXS Law Group PLLC<br>2121 N.W. 2nd Avenue<br>Miami, FL 33127<br>Email: Jeff@axslawgroup.com;<br>Brandon@axslawgroup.com<br>*Counsel for Plaintiffs* | **Robert Zarco, Esq.**<br>**Alejandro Brito, Esq.**<br>Zarco Einhorn Salkowski & Brito, P.A.<br>One South Biscayne Tower<br>2 South Biscayne Boulevard, 34th Floor<br>Miami, FL 33131<br>Email: rzarco@zarcolaw.com; abrito@zarcolaw.com;<br>apiriou@zarcolaw.com<br>*Counsel for Viernes Culturales/Cultural Fridays, Inc.* |
|---|---|