**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:18-cv-24190-SMITH**

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

       Plaintiffs,

v.

JOE CAROLLO,
       Defendant.

_____ /

## DEFENDANT, JOE CAROLLO'S SEALED MOTION FOR NEW TRIAL AND RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant, Commissioner Joe Carollo, under Fed.R.Civ.P. 50(b) and 59(a), and Local Rule 7.1(c), hereby files his Sealed Motion for New Trial and Renewed Motion for Judgment as a Matter of Law, and requests a new trial, that the Final Judgment be vacated, and judgment in his favor.

**I. The Verdict is Against the Weight of Evidence and Therefore Either a Judgment as a Matter of Law or a New Trial is Required[1]**

      **a. Plaintiffs failed to prove they engaged in protected activity**

In order to establish their sole claim of First Amendment retaliation, Plaintiffs were required to adduce evidence that they *each, individually*, engaged in protected activity, and they each failed to do so at trial. "[W]hether that personal right has been abridged depends crucially on whose speech is at issue." *Leake v. Drinkard*, 14 F.4th 1242, 1247 (11th Cir. 2021). To state a First Amendment retaliation claim, "a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

To satisfy the first prong, the plaintiff must prove he individually engaged in constitutionally protected speech. *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003) (plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"); *Falco v. Zimmer*, 767 Fed. Appx. 288, 307 (3d Cir. 2019); *Colonies v.*

---

[1] The Court has discretion to grant new trial if the verdict is against the weight of evidence, the damages are excessive, the trial was not fair, or based on questions of law from substantial errors in evidence or jury instructions. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 25 (1940).

*County of San Bernardino*, 2020 U.S. Dist. LEXIS 160672, *78-79 (C.D. Cal. July 28, 2020) ("Plaintiffs cannot assert retaliation claims based on one-another's protected conduct").[2]

The evidence established that the two instances of protected activity at issue – two political rallies and filing an ethics complaint – were not Fuller or Pinilla's individual speech or activity.[3] First, the rallies were held on property owned by 1393 LLC, not Plaintiffs individually. Tr. 5/8/23 (Pinilla) 215:13-22.[4] The rallies were hosted by Jenny Lee Molina, her company JLPR, and/or the campaign of the candidate, not either Plaintiff individually. Pl. Ex. 314, 315, 413. Fuller did not attend the rallies. Tr. 5/9/23 (Fuller) 182:22-23. Pinilla's claimed presence at the rallies is not evidence that he adopted the speech of the rally organizers, *Gathright v. City of Portland*, 439 F.3d 573, 577 (9th Cir. 2006), and therefore does not suffice to establish individual speech or activity by Pinilla. Second, the ethics complaint was filed by the Barlington Group, LLC, not Plaintiffs individually. Pl. Ex. 34; Def. Ex. 126; Tr. 5/8/23 (Pinilla) 209:11-18; Tr. 5/9/23 (Pinilla) 79:21-22; Tr. 5/11/23 (Fuller) 214:21-215:5.

The First Amendment protects only "conduct that is inherently expressive." *Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.*, 547 U.S. 47, 65-66 (2006) (host accommodating message of another does not equate to speech by the host). To determine if conduct is expressive, the law requires both an "intent to convey a particularized message" and "the likelihood must be great that the message would be understood by those who viewed it." *Zinman v. Nova SE. Univ., Inc.*, 2023 U.S. App. LEXIS 7402, *14-15, 2023 WL 2669904 (11th Cir. Mar. 29, 2023). The second prong asks whether the reasonable person would interpret the conduct as some sort of message, not whether an observer would necessarily infer a specific message. *Zinman*, 2023 U.S. App. LEXIS 7402, *15. Here, there is no evidence to establish either (i) an intent of Fuller or Pinilla to convey any message, or (ii) a likelihood that a reasonable passerby observing the rallies would interpret them as an attempt to convey any message by Fuller or Pinilla. Rallies on property owned by 1393

---

[2] In § 1983 cases, plaintiffs cannot individually sue for injury sustained by entities in which they hold membership interests even if the value of their interests has decreased. *See, e.g.*, *Gregory v. Mitchell*, 634 F.2d 199, 202 (5th Cir. 1981); *Callaway v. Hornbake*, 2012 U.S. Dist. LEXIS 12011, *10-12, 2012 WL 333769 (M.D. Fla. Feb. 1, 2012); *Cherry v. D.B. Zwirn Special Opportunities Fund, L.P.*, 2009 U.S. Dist. LEXIS 124114, *12-13 (M.D. Fla. Dec. 23, 2009). *See also* §§ 605.0108, 605.0110, Florida Statutes.

[3] The Court correctly ruled Plaintiffs were limited to the political rallies and the ethics complaint, the two instances of protected activity they alleged. *See* Court's Jury Instructions at 7 (DE 475).

[4] References to the trial transcript are: Tr. date (name of witness if any) page:line.

LLC are not "inherently expressive" speech of either Plaintiff individually. Moreover, Plaintiffs' support of Leon was purposefully concealed to avoid public disclosure. Tr. 5/9/23 (Fuller) 167:2-4, 170:12-14, 181:13-17. Fuller and Pinilla's names were deliberately kept off promotional materials and no publicly available signs or information in connection with the rallies identified Fuller or Pinilla as having any association with the rallies. Tr. 5/8/23 (Pinilla) 217:8-16, 217:22-25, 218:21-24; Tr. 5/5/23 (Bernheim) 184:6-8; Pl. Ex. 314, 315, 413.

As to Plaintiffs' alleged support of Leon by helping with a campaign video and buying a lion costume, there was no evidence they paid individually, nor are these instances protected speech as they are not inherently expressive. As to campaign contributions, same were made by their LLCs not individually. Tr. 5/8/23 (Pinilla) 211:3-212:24; Def. Ex. 186. The defense was not allowed to ask Pinilla about the need to report such support. Tr. 5/8/23 (Pinilla) 213:12-214:3. Plaintiffs failed to rebut Fuller's radio interview one month before this suit in which he flatly denied the animosity with Defendant was because of supporting Leon. Tr. 5/11/23 (Fuller) 220:11-221:12; Def. Ex. 22.

The corporate veil of Plaintiffs' entities cannot be discarded for the purpose of claiming First Amendment protected speech. Campaign contributions are a clear area where corporate entities and individuals are not interchangeable. Florida law prohibits an individual from contributing to a campaign, directly or indirectly, in the name of another. *See* § 106.08, Fla. Stat. (2023). The evidence established Plaintiffs gave campaign contributions through their companies, the campaign treasury reports do not show any individual contributions by Plaintiffs, and the rallies were paid for by Jenny Lee Molina and reimbursed to her. Tr. 5/8/23 (Pinilla) 211:18-212:24, 216:14-217:16; Tr. 5/9/23 (Pinilla) 80:25-81:6; Def. Ex. 186. Plaintiffs did not introduce any documentary evidence that either of them individually provided any money supporting any of the alleged First Amendment activity. Rather, Pinilla testified "[w]e reimbursed Jenny Lee Molina". Tr. 5/9/23 (Pinilla) 80:25-81:6. The defense argued that such secret financial support of a candidate was prohibited by campaign finance law and sought to impeach Fuller, however the Court prohibited that line of questioning.  Tr. 5/11/23 (Fuller) 4:11-6:18, 8:12-11:1, 61:22:-67:11.

Plaintiffs' claims fail because the evidence showed neither individually engaged in protected activity. Each was precluded from compensatory damages based on alleged violation of 1393 LLC's or Barlington Group LLC's rights. *Spinelli v. City of New York*, No. 02 Civ 8967, 2010 U.S. Dist. LEXIS 116133, *4, 2010 WL 4323267 (S.D.N.Y. Nov. 10, 2010) ("Olinville was the licensee whose due process rights were violated, and Spinelli may not claim emotional damages

based on the violation of Olinville's rights."). Based on Plaintiffs' failure to prove they engaged in protected activity, and their resulting lack of entitlement to compensatory damages, this Court should grant judgment as a matter of law in favor of Defendant or, at least, a new trial.

### b. <u>Plaintiffs failed to prove a causal connection</u>

For the third prong of a First Amendment retaliation claim, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's subsequent injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citation omitted). To meet the causation element, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Id.* "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*. In other words, if the government takes adverse action against someone based on an official's prohibited motive, but there are non-retaliatory grounds that cause the adverse consequences, then the retaliatory animus is not the "but-for" cause of the injury. *Id*.

"In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011); *Indigo Room, Inc. v. City of Ft. Myers*, 589 F. App'x 938, 947 (11th Cir. 2014). Courts analyze "subjective motivation" using the burden-shifting formula in *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274 (1977). The burden is initially on the plaintiff to establish a First Amendment violation. After showing the individual plaintiff engaged in protected speech, he must establish "his protected conduct ***itself*** was a "motivating factor" of the retaliatory conduct. *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1344 (S.D. Fla. 2014). Only after the plaintiff has met this burden, does the defendant need to show he would have engaged in the same conduct in the absence of the protected speech. *Id*.

Here, Plaintiffs failed to meet their burden to prove that Fuller or Pinilla's protected individual conduct, if any, was itself a motivating factor of the retaliatory conduct, which was comprised of actions of the entire City Commission (requiring a majority vote of five Commissioners) in passing legislation and actions of City officials in carrying out their administrative functions. The evidence showed Defendant and the City would have taken the same actions notwithstanding alleged retaliatory animus. Defendant introduced voluminous evidence that Plaintiffs were serial violators of the Florida Building Code and the City of Miami Code and that the Commission passed ordinances and City officials took administrative actions based on Plaintiffs' Code violations,

which Plaintiffs deemed to be retaliatory acts. *E.g.*, Plaintiffs' Compliance Agreements with the City, including Def. Ex. 11 ("The Owner agrees the above described Property is in violation of the City of Miami Code."), Def. Ex. 69, 73, 78, 80; *see also* Def. Ex. 5, 6, 9, 10, 11, 13, 16, 24, 28-30, 32-34, 37, 39, 41, 43, 45, 63-79, 89, 90, 98, 100, 101, 111, 603, 604, 716, 719.

Plaintiffs had no direct evidence of Defendant "ordering" any City official to take retaliatory action. The direct evidence established that Defendant did not order City employees to take action. Tr. 4/19/23 (Blom) 95:13-18; Tr. 5/12/23 (Marrero) 122:22-23; Tr. 5/15/23 (Salvatierra) 246:6-7; 5/16/23 (Lugo) 29:19-21, 34:2-4; Tr. 5/16/23 (Goldberg) 143:7-9; Tr. 5/17/23 (Dooley) 88:16-20. In their closing, Plaintiffs cited Gonzalez's testimony that Defendant allegedly ordered him and his office to target Plaintiffs' businesses (Tr. 5/31/23 39:8-11), however Gonzalez testified he was not ordered by Defendant to do anything, and that as of August 2018, Defendant had done nothing wrong (Tr. 4/11/23 (Gonzalez) 24:13-25:7, 77:17-23, 138:22-24; Def. Ex. 330, 331), although the retaliatory acts complained of (DE 125) occurred before then. Plaintiffs also cited testimony of Diez in their closing (Tr. 5/31/23 43:1-3), however Diez testified that Defendant never ordered him to do anything (Tr. 4/24/23 (Diez) 186:21-23; Tr. 5/2/23 (Diez) 162:24-163:1, 178:1-4).

Instead of direct testimony, over objection, Plaintiffs elicited inadmissible hearsay statements that "everyone knows" the retaliatory conduct was ordered by Defendant. *E.g.*, Tr. 4/18/23 (Acevedo) 102:22-103:8 ("openly known throughout the city", "wide open knowledge in Miami"); Tr. 5/8/23 (Pinilla) 106:16-24 ("widely known … in the city"), 144:18-24 (unnamed tenants are "very much aware of the targeting"). As set forth in Defendant's trial brief (Tr. 5/15/23 1:6-3:7; DE 463, DE 427), testimony as to what "everybody knows" and that a fact is "common knowledge" is hearsay. *Evans v. McClain*, 131 F. 3d 957 (11th Cir. 1997) ("The district court correctly dismissed this evidence as 'not significantly probative' because it was based on gossip, common knowledge, and the hearsay statement of an unidentified representative."); *Alexander v. U.S.*, 2022 U.S. App. LEXIS 34669 (11th Cir. 2022) (affirming exclusion of "common knowledge" evidence, stating, "we don't try cases on rumors."). Although the Court belatedly gave a brief curative instruction (*see* Tr. 5/31/23 8:14-18), the prejudice was incurable and Plaintiffs alluded to "everyone knows" testimony in their closing. Tr. 5/31/23 37:11-12. *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir. 1977) ("the cleansing effect of the cautionary instructions in this case is dubious for, as the trial judge himself observed during the trial, 'you can throw a skunk into the jury box and instruct the jurors not to smell it, but it doesn't do any good.'").

Given that Plaintiffs relied on inadmissible hearsay statements to prove Defendant's alleged retaliatory intent — hearsay statements that should have been forbidden from trial — a judgment as a matter of law in favor of Defendant is appropriate.  Plaintiffs failed to provide any other evidence of intent.  If this Court believes that the Plaintiffs did have other evidence (they did not), it should still recognize that the belated curative instruction was insufficient to cure the harm.  In that case, a new trial would be more appropriate.

### c.  <u>Plaintiffs failed to introduce evidence of emotional distress or reputation damages other than self-serving testimony</u>

With respect to emotional distress damages, Plaintiffs claimed to have proven they suffered "severe and extreme" emotional harm (Tr. 5/31/23 63:18-22), yet they relied solely on self-serving testimony of standard stress such as sleepless nights during years when they had young children, and anxiety. Tr. 5/8/23 (Pinilla) 151:10-11; Tr. 5/10/23 (Fuller) 196:1-2.

With respect to reputational harm, Plaintiffs failed to quantify how they were harmed, other than general assertions about how difficult it has been to negotiate or engage in transactions. *See, e.g., Habitat for Humanity Int'l, Inc. v. Morris*, No. 2:19-cv-456, 2021 U.S. Dist. LEXIS 205990, *15 (M.D. Fla. 2021) ("the Court is not prepared to award reputation damages absent evidence that rises above mere speculation."); *Rosenberg v. DVI Receivables XIV, LLC*, No. 12-CV-22275, 2012 U.S. Dist. LEXIS 196857, *6 (S.D. Fla. Dec. 18, 2012) ("Scherf was unable to quantify the amount of damage sustained by Plaintiff as a result of the harm to his reputation. Therefore, Scherf's opinion on this issue will not assist the jury in determining Plaintiff's damages."); *Boris v. Choicepoint Servs.*, 249 F. Supp. 2d 851, 861 (W.D. Ky. 2003) ("damage to credit or business reputation must rest upon some extrinsic evidence, not just upon Plaintiff's opinion.").

Plaintiffs' failure to prove their own damages — a critical element in their claim — should result in a judgment as a matter of law in favor of Defendant.  *See, e.g., CE N. Am., LLC v. Certain Underwriters at Lloyds'*, 20-20446-CIV, 2023 U.S. Dist. LEXIS 55440, *23, n.6, 2023 WL 2714024 (S.D. Fla. Mar. 30, 2023) ("[Defendant] is entitled to judgment as a matter of law on the failure to satisfy the Plaintiff's burden of supporting its damages.").

### II.  <u>The Damages are Excessive and a Product of Several Harmful Errors Committed by Plaintiffs, Necessitating a New Trial</u>
#### a.  <u>Plaintiffs improperly suggested specific damages amounts to the jury despite never providing a computation</u>

Defendant submitted a trial brief and argued that since Plaintiffs did not present any damages

computation, they were precluded from suggesting specific amounts to the jury. Tr. 5/8/23 4:15-20; 5/31/23 2:1-4:23; DE 465. However, the Court permitted Plaintiffs to suggest specific amounts of emotional distress and reputation damages and "to pick a number out of thin air" in closing. *Pier 1 Cruise Experts v. Revelex Corp.*, 929 F.3d 1334, 1342-1343 (11th Cir. 2019). Plaintiffs had no computation of damages[5] and instead relied solely on speculative, self-serving testimony. Since Plaintiffs did not provide any damages computation they were "precluded from suggesting any specific amount of intangible damages to the jury." *Carter v. BPCL Management, LLC*, No. 19-60887, 2021 U.S. Dist. LEXIS 256256, *23, 2021 WL 7502558 (S.D. Fla. May 10, 2021). *See also Nagele v. Delta Air Lines, Inc.*, No. 17-22559, 2017 U.S. Dist. LEXIS 210335, *5, 2017 WL 6398337 (S.D. Fla. Dec. 13, 2017) ("if Plaintiff decides not to disclose a computation for non-economic damages at the initial disclosure phase, then Plaintiff is precluded from suggesting any amount of non-economic damages to the jury at any point or manner during the trial."); *Avrett v. Festival Fun Parks, LLC*, No. 15-80526, 2016 U.S. Dist. LEXIS 5285, *9-10 (S.D. Fla. Jan. 15, 2016) ("because Avrett has not disclosed a computation for intangible damages, Avrett is precluded from suggesting any specific amount of intangible damages to the jury."); *Gray v. Florida Dept. of Juvenile Justice*, No. 3:06-cv-990, 2007 U.S. Dist. LEXIS 6649, *5, 2007 WL 295514 (M.D. Fla. Jan. 30, 2007) ("Plaintiff may not suggest to the jury a suggested amount of compensatory damages for her emotional distress.").

### b. **Plaintiffs' closing argument suggesting damages amounts based on "civil rights cases like this" necessitates a new trial**

In closing, Plaintiffs improperly argued that, "[i]n civil rights cases like this, a range of ten million to 15 million is appropriate for the severe emotional harm to Mr. Fuller and Mr. Pinilla each individually. Ten million to 15 million", and "[i]n civil rights cases like this where their reputational harm has been severe and long lasting, and it's resulted from both the targeting and harassment and also defamation from a public official. A range of ten million to 20 million dollars each for Mr. Fuller and Mr. Pinilla will be the appropriate amount to compensate them for the severe and lasting reputational harm". Tr. 5/31/23 69:20-23, 74:5-11 (emphasis added). These

---

[5] The Magistrate Judge struck "Plaintiffs' amended initial disclosures on damages sought", finding Plaintiffs "fail[ed] to provide any substantiated basis for the computation for the monetary amount claimed as damages". DE 313 at 5 (citing *Marine Depot, Int'l, Inc. v. James River Grp., Inc.*, No. 19-CV-24821, 2020 U.S. Dist. LEXIS 244385, *8, 2020 WL 7864100, *3 (S.D. Fla. 2020)).

numbers were picked "out of thin air," not based on trial evidence. *Pier 1 Cruise*.

Plaintiffs' counsel's argument to the jury suggesting specific amounts as "appropriate" based on what other juries in "cases like this" awarded is "clearly objectionable" and necessitates a new trial. *See Nichols v. Fannin*, No. 1:16-CV-4700-JSA, 2018 U.S. Dist. LEXIS 238782, *49-50 (N.D. Ga. Apr. 16, 2018) (emphasis added) (citation omitted) ("several statements by Plaintiff's lawyers during closing were objectionable. The most **clearly objectionable**, in the Court's view, was counsel's statement, 'I've got friends who try **cases like this** and they're $10 million cases.' Obviously, there was no evidence in the record as to the results or any information about any of these other cases, and the result of any other case was entirely irrelevant to any question before the jury in this case."). As in *Nichols*, "there was no evidence in the record as to the results or any information about any of these other cases, and the result of any other case was entirely irrelevant to any question before the jury in this case." In *Nichols*, the court declined to grant a new trial where it immediately issued a "direct and specific curative instruction with regard to this particular statement." *Id.* at *49-50. Contrastingly, here, a new trial is required because the defense objected, and no curative instruction on this point was given. Tr. 5/31/23 82:25-83:5, 84:21-85:2, 87:21-88:4, 89:11-15. *See also JGR, Inc. v. Thomasville Furn. Indus.*, 2005 U.S. Dist. LEXIS 55413 *4 (N.D. Ohio Mar. 16, 2005) ("courts have also held that reference by counsel of the amounts of verdicts in similar cases (*e.g.*, counsel in a personal injury case advising the jury of the amount of the verdicts in similar personal injury cases) is improper or even reversible error.").

Adding to the prejudicial effect of Plaintiffs' statements, not only were they riddled with hearsay, but they were factually inaccurate: A cursory review of jury awards in 1983 cases does not reveal a single similar case awarding intangible or punitive damages remotely close to the runaway awards in the instant case which were based on Plaintiffs' counsel's improper argument.

### c.   Plaintiffs' improper golden rule and send a message arguments

Plaintiffs' closing asked the jurors to put themselves in the shoes of Fuller and Pinilla by grouping the jurors together with Plaintiffs, and asked the jurors to send a message in the section of the closing on liability and compensatory damages, not punitive damages:

> We need to encourage people like Bill and Martin to fight back by bringing civil rights cases just like this one for **all of us**. … This case is why these civil rights laws exist to protect **all of us** from abusive power and political pay back. … But in November 2017, just like **all of us** can do, Bill Fuller and Martin Pinilla exercised **our most powerful right** in the United States of America, **our First**

- 8 -

**Amendment right** to support the political candidate of **our choice**. … This is the United States of America. **Our elected officials cannot muzzle our free speech. Today on May 31st, 2023, we ask you to give Mr. Fuller and Mr. Pinilla their lives back by telling the 21 million citizens in the State of Florida and the 320 million citizens in the United States of America protected by our great constitution that our elected officials cannot abuse their power to punish citizens who publicly oppose them**. Tr. 5/31/23 23:22-24, 25:3-4, 26:13-16, 32:10-17 (emphasis added).

Plaintiffs' counsel recognized "send a message" argument is improper, incorrectly claimed she left such argument to the punitive damages section, and denied making the argument that the jurors should stand up for all 21 million citizens in the State of Florida. Tr. 5/31/23 86:9-92:17. Plaintiffs' closing containing golden rule and "send a message" argument caused prejudicial error. *Cooper v. Miami-Dade County*, No. 01-976, 2004 U.S. Dist. LEXIS 17542, *49-50, 2004 WL 2044288 (S.D. Fla. July 9, 2004) (granting new trial due to prejudicial golden rule argument); *Caudle v. District of Columbia*, 707 F.3d 354, 363 (D.C. Cir. 2013) (reversing jury verdict due to "golden rule" and "send a message" closing arguments). The Court's brief curative instruction was insufficient to cure the prejudice. Tr. 5/31/23 96:11-16.

### d.  Refusal to give a curative instruction to correct striking of defense closing argument of Defendant's salary

The Court erred in striking the statement in the defense closing as to the amount of Defendant's salary and instructing the jury to disregard it. The error was compounded by refusal to give a curative instruction that the evidence of Defendant's salary should not be disregarded, particularly because the jury specifically asked about what information to consider to determine Defendant's financial resources as to punitive damages. The Jury Instructions provide, "[i]f you find that punitive damages should be assessed, you may consider the evidence regarding Joe Carollo's financial resources in fixing the amount of punitive damages to be awarded." *See* DE 475 at 11.

Defense counsel argued in closing that Defendant makes $57,000 a year, Plaintiffs objected that it was not in evidence, and the Court sustained the objection. Tr. 5/31/23 134:13-20. At sidebar, the defense argued Defendant's salary is public record in the City Code. Tr. 5/31/23 142:19-143:2. The Court decided, "I'll instruct the jury to disregard any statement made by defense counsel as to Mr. Carollo's salary as a commissioner. That's improper. **Had it been in evidence, no problem**." Tr. 5/31/23 143:10-13 (emphasis added). The Court then instructed the jury that "during the defendant's closing arguments, any statement that was made as to Joe Carollo's salary

as a commissioner, $57,000 shall be stricken, shall not be considered by you as evidence in this case." Tr. 5/31/23 144:4-8.

Shortly after closing arguments, the jury asked the question, "[w]hat information do we consider or use to determine Joe Carollo's Financial's resources, as it pertains to punitive damages?" *See* Question/Note from the Jury to the Court (DE 469 at 3). The Court responded, "[y]ou should rely on the evidence and the instructions given in court." *Id.* at 2.

The next morning, Plaintiffs raised the above-quoted portion of the Jury Instructions and requested that the court "instruct the jury to either disregard that portion of the jury instructions or instruct them not to consider or speculate on the defendant's net worth because now they're left with no evidence and they're just speculating back there about what defendant Carollo is worth." Tr. 6/1/23 1:21-2:16. The defense pointed out that **Defendant's salary of $58,200 is in evidence in Plaintiffs' Exhibit 303**, § 4(h) of the City Charter, and requested a curative jury instruction. *E.g.,* Tr. 6/1/23 2:19-3:19, 11:6-16, 14:11-22, 15:1-17:8. The Court gave Plaintiffs opportunities to avoid giving Defendant a "point on appeal" and a basis for "a new trial" and Plaintiffs rejected same. Tr. 6/1/23 11:18-12:2, 16:12-15. The Court erred in refusing to give a curative instruction to the jury to correct the Court's striking of defense closing argument of Defendant's salary.

### e.   The damages are so grossly excessive as to shock the conscience

"[A] grossly excessive award may warrant a finding that the jury's verdict was swayed by passion and prejudice and thus necessitate a new trial." *Martinez v. Brinks, Inc.*, 410 F. Supp. 2d 1202, 1215 (quoting *Goldstein v. Manhattan Industries., Inc.*, 758 F.2d 1435, 1447 (11th Cir. 1985). A "new trial should be ordered only where the verdict is so excessive as to shock the conscience of the court." *Id.* That applies here to the compensatory and punitive damages awards.

### III. Substantial Errors in Admission and Rejection of Evidence Warrant a New Trial

The inquiry in granting a new trial "is always directed to the same central question - how much of an effect did the improperly admitted or excluded evidence have on the verdict? To answer this question, we look to a number of factors, including the number of errors, the closeness of the factual disputes (*i.e.*, the strength of the evidence on the issues affected by the error), and the prejudicial effect of the evidence at issue. We also consider whether counsel intentionally elicited the evidence, whether counsel focused on the evidence during the trial, and whether any cautionary or limiting instructions were given." *PEAT, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162

(11th Cir. 2004). All of these factors support granting a new trial here based on the numerous substantial and prejudicial errors in admission and rejection of evidence.

### a. <u>Admission of prejudicial testimony that Defendant is a racist</u>

Over objection, the Court allowed Plaintiffs to repeatedly introduce prejudicial and irrelevant testimony that Defendant is a racist. Tr. 4/11/23 (Gonzalez) 21:20-22:7 (Defendant "made disparaging remarks and said that the mural had too many black people in it."); Tr. 4/11/23 (Gonzalez) 22:9-20 (Defendant "didn't want people to think that Calle Ocho as a very iconic neighborhood was essentially a black neighborhood."); Tr. 4/21/23 AM (Miro) 29:6-30:2 (Defendant did not like Afro Cuban murals and "stated that he doesn't want Liberty City to come down to Little Havana"); Tr. 4/18/23 (Acevedo) 165:20-166:7 (Defendant "took exception to the fact that I stood up to a proud boy and he shared in the kind of the same attitude him and the other two that I was out there Black Lives Matter"); 4/18/23 (Acevedo) 108:24-115:8 (Acevedo was brought in to reform City Police Department relating to "disproportionate nature of deadly force against communities of color, more specifically African Americans", and his efforts to reform the department were "impeded by defendant"). The Court overruled defense objections, denied motions to strike, denied a motion for mistrial, and refused to give curative instructions. *Id.*

Under Rule 403, Fed. R. Evid., the Court erred in failing to exclude testimony that Defendant is a racist because it had no probative value and there was a substantial danger of unfair prejudice. *See, e.g.*, *Stewart v. Daimler Chrysler Fin. Servs. Ams.*, No. 07-60510, 2008 U.S. Dist. LEXIS 145564, *4-5 (S.D. Fla. June 18, 2008) (excluding evidence of racial slur under Rule 403 in race discrimination and retaliation case); *Rauh v. Coyne*, 744 F. Supp. 1181, 1183 (D.D.C. 1990) (excluding evidence of racial discrimination in gender discrimination case, as irrelevant "and because it would cause unfair prejudice outweighing any probative value. Rule 403.").

This error was compounded because the Court precluded Defendant from counterbalancing the testimony of racial bias by introducing Defendant's artwork replete with Afro Cubans and African Americans in his public Commission office, evidencing he is not a racist.  Tr. 5/30/23 20:4-22.

### b. <u>Exclusion of Defendant's witnesses necessitates a new trial</u>

At calendar call and during trial, the defense argued Plaintiffs were seeking to introduce evidence beyond the allegations of the complaint relating to matters in Plaintiffs' companies' pending case against the City, *Mad Room LLC, et al. v. City of Miami*, Case No.: 21-cv-23485-

Altman. At calendar call, the Court stated the trial would be limited to the allegations in this case and not any other case. Tr. 4/4/23 20:18-21:20. The defense reasonably relied upon the Court's ruling to its detriment. The parties filed a list of anticipated witnesses (DE 381) based on the rulings at calendar call, without waiver of witnesses previously listed or necessitated by unanticipated evidence at trial. During trial, due to hearsay testimony elicited by Plaintiffs, the Court's allowance of matters beyond the complaint at issue in *Mad Room*, and allowance of Plaintiffs' late-disclosed witnesses, the defense sought to call witnesses including ten who were listed during the case but not in the last witness list (DE 401), and including Mayor Suarez and Asst. Police Chief Carroll to refute hearsay testimony of Acevedo. The Court refused to allow any of the witnesses, and the defense submitted a proffer further detailing their anticipated testimony (DE 467).

Contrastingly, the Court overruled defense objections to Plaintiffs' late-disclosed witnesses (Michael Kunert, Melissa Bernheim, Matt Malone), and allowed them to testify. Tr. 4/4/23 25:22-26:2. Kunert and Bernheim were not identified as witnesses until March 3, 2023 (DE 332), a month before trial, and Malone not until March 28. On April 4, the Court told the defense they could depose the witnesses, but doing so the week before trial is prejudicial. *Lawson v. Plantation Gen. Hosp., L.P.*, No. 08-61826, 2010 U.S. Dist. LEXIS 151994, *13, 2010 WL 11504835 (S.D. Fla. May 3, 2010). Malone did not show at deposition but was allowed to testify. The Court also erred in allowing Plaintiffs to call Tanjha Quintana, not disclosed until fifth day of trial.

### c.   Preclusion of evidence of Plaintiffs' reputation and practices

The Court prohibited Defendant from eliciting testimony of Plaintiffs' business practices, reputation, and character trait for truthfulness. Tr. 5/17/23 (Dooley) 110:22-111:8, 121:15-123:10; Tr. 5/17/23 (Noriega) 279:21-280:2; Tr. 5/15/23 (Marrero) 111:6-11; 5/15/23 165:12-15. However, Plaintiffs' business practices, reputation, and character trait for truthfulness could not have been more relevant as the jury's compensatory damage award (DE 470) may have been based in part on reputation damages. Tr. 5/31/23 (Plaintiffs' closing) 74:5-11 (asking for $10-20 million each for reputational harm). Contrastingly, Plaintiffs' witnesses were permitted to testify about Defendant's reputation, pattern and practice, and to call him "demonic" and his actions "evil". *E.g.*, 4/18/23 (Acevedo) 138:22; 4/19/23 (Diez) 250:13-18; Tr. 4/21/23 AM (Miro) 23:5-16; Tr. 5/8/23 (Pinilla) 58:23-59:4; 5/10/23 (Fuller) 80:23-81:8.

### d.   Admission of Acevedo's testimony requires a new trial

The Court permitted testimony from Hubert Acevedo despite his lack of personal knowledge. Acevedo's employment with the City began in 2021, well after the allegations of the complaint (DE 125). Before Acevedo testified, the defense submitted a trial brief with case law objecting to his testimony and admission of his memo. Tr. 4/18/23 61:23-66:11, 70:5-71:7. On cross, Acevedo confirmed he had no personal knowledge of the matters at issue in the operative complaint. Tr. 4/18/23 (Acevedo) 115:25-116:24, 118:20-119:21. Admission of Acevedo's testimony caused irreparable prejudice as he had no personal knowledge and he admitted that "I do have an axe to grind" against Defendant. Tr. 4/18/23 (Acevedo) 138:3-9.

### e.   Denial of opportunity for Defendant to testify in his case-in-chief

The Court denied Defendant an opportunity to testify in his case-in-chief. Tr. 5/30/23 4:16-32:6. The Court required the defense to identify each anticipated topic and, sustaining cumulative and relevance objections, precluded Defendant from testifying as to issues pertinent to his defenses including failure to mitigate, lack of causation, lack of bad faith (DE 201); his motivation for doing what he did; the reason for his information gathering that he passed on to City officials; his personal history, background, and upbringing, including his arrival in the United States as a Pedro Pan which identifies who he is and what his values are; his involvement with business and community organizations whether or not they supported his campaign; how he treated specific individuals and businesses that were not supportive of his campaign; that specific individuals associated with Plaintiffs received fair treatment; Plaintiffs' participation in a recall of Defendant; and Defendant's acquisition of probable cause to report information regarding Plaintiffs' properties. *Id.* The only matter allowed was Plaintiffs' active involvement in opposing Defendant's reelection. Tr. 5/30/23 27:9-17, 30:7-14. By severely limiting Defendant's testimony, the Court placed him in a Hobson's choice. If he would have taken the stand merely to make that point, it would have appeared to the jury he was choosing not to address other matters. Defendant was compelled to rely on his prior testimony. The Court's unfair prohibition requires a new trial.

### f.   Admission of evidence as to matters not at issue in this case

The defense submitted a trial brief and repeatedly objected to evidence beyond the complaint in this case relating to matters directly at issue in the *Mad Room* case in which Plaintiffs' businesses are suing the City for damages for targeting, including audits, raids and shutting down their companies' nightclubs/bars, Taquerias and Ball & Chain. *E.g.*, Tr. 4/25/23 2:24-3:17; Tr.

4/25/23 (Green) 17:21-19:11, 21:14-22:13; Tr. 5/8/23 2:11-19; Tr. 5/12/23 70:15-71:2; DE 466. At the calendar call, the Court stated the trial would be limited to the allegations in this case and not any other case. Tr. 4/4/23 20:18-24. During trial the Court allowed in the evidence, ruling the issues were "inextricably intertwined" and that the pleadings would be amended to conform to the evidence although Plaintiffs had not even moved for such relief yet. *E.g.*, Tr. 5/10/23 (Fuller) 143:22-145:2 (City audit of Ball & Chain); 5/10/23 (Fuller) 151:25-152:10 (City revocation of CU of Ball & Chain); 5/10/23 (Fuller) 166:22-167:13 (City audit of Taquerias as to liquor license); 5/10/23 (Fuller) 181:15-182:8 (City revocation of CU of Taquerias). Despite allowing Plaintiffs' evidence, the Court precluded defense from eliciting testimony about the *Mad Room* case. Tr. 4/25/23 (Green) 54:12-25; Tr. 4/25/23 (Del Bosque) 100:7-11. At the end of the trial, Plaintiffs *ore tenus* moved to amend the pleadings to conform to the evidence and the Court granted the relief over objection. Tr. 5/30/23 120:23-121:5. The Court allowed Plaintiffs to broadly expand the alleged retaliatory acts to far beyond those alleged well past the deadline to amend.

This error was extremely prejudicial and requires a new trial. The matters were not at issue and could result in double recovery. Tr. 5/8/23 3:11-20. Under Rule 403, the Court erred in failing to exclude this evidence because it was irrelevant and any probative value was substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury.

### g.  Admission of highly prejudicial testimony of Tanjha Quintana

The Court erred in denying defense motion for mistrial based on the erroneous admission of highly prejudicial and irrelevant testimony from undisclosed witness Tanjha Quintana. Tr. 4/21/23 PM 51:1-3; Tr. 4/26/23 60:4-15. Over objection, the Court allowed Quintana to testify that Defendant coerced her into testifying falsely that Miro and Blom sexually assaulted her. Tr. 4/26/23 (Quintana) 23:25-30:5, 33:19-34:3, 53:4-55:13. Additionally, Quintana was permitted to testify over objection about the effect the coercion had *on her* which is extremely prejudicial and irrelevant to Plaintiffs' First Amendment retaliation claim against Defendant. Tr. 4/26/23 (Quintana) 33:19-34:3 ("It broke me completely."). The Court ruled the defense opened the door on cross of Miro (Tr. 4/21/23 PM 44:21-54:12), however the defense did not ask Miro about sexual harassment involving Quintana. Even if the defense had opened the door as to reasons for Miro's termination, the Court should have kept the testimony out under Rule 403 in that it was only admitted as to Miro's credibility yet the extremely prejudicial effect could not be overcome. The defense also objected to Quintana's testimony that Defendant coerced her to lie about another

witness, Blom and the effect it had *on her*. Tr. 4/26/23 (Quintana) 53:4-56:17. Under Rule 403, the Court erred in allowing her testimony as to both Miro and Blom because any probative value (there was none) was substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury, and erred in denying a mistrial. This damaging testimony undoubtedly resulted in "inducing decision on a purely emotional basis" by the jury. Fed. R. Evid. 403 Advisory Committee Notes (1972 Proposed Rules). "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.*   Compounding these errors, the Court refused to allow the defense to present evidence of Quintana's DUI which was the reason she resigned.  Tr. 4/26/23 16:3-20. The defense also objected based on Rule 404 because Quintana's testimony was improper character evidence. Tr. 4/21/23 (Quintana) 54:23-56:17.

### h.  The Court's disparate treatment of Plaintiffs and Defendant as to evidence and argument requires a new trial

The Court did not call balls and strikes equally.  Viewing the Court's rulings on several similar, and at times identical, evidentiary rulings, it is clear that the Court disparately treated Plaintiffs and Defendant, and that disparate treatment was prejudicial to Defendant. On one hand, Plaintiffs introduced writings over defense hearsay objections. *E.g.*, 4/11/23 4:18-5:14, 51:27 (Gonzalez memoranda to self); 5/2/23 106:4-12 (Diez email including text); 5/2/23 108:17-113:13 (Diez email including statements on radio). Contrastingly, the Court sustained Plaintiffs' hearsay objections to writings including letters Defendant personally received from his constituents and local business owners complaining about Plaintiffs' business practices and praising Defendant for doing his job.  Tr. 5/5/23 35:7-36:25; Tr. 5/16/23 (Goldberg) 133:9-134:8; Tr. 5/30/23 12:4-13:9. Plaintiffs were allowed to introduce the entire Ethics Complaint over objection, Tr. 5/5/23 151:23-153:7, but Defendant was not allowed to introduce his Response. Tr. 5/11/23 70:13-75:4.

Plaintiffs called nineteen witnesses over eighteen days; Defendant called seven witnesses over five days. The Court barely mentioned the parties' pretrial time estimates (DE 381) in Plaintiffs' case, yet on the first day of Defendant's case, the Court started strictly enforcing them. Tr. 5/15/23 106:21-22 ("This Court is strictly going to enforce to time on this defendant case.").

The Court permitted Plaintiffs to elicit extensive, detailed background information as to their witnesses including military service and prior employment but precluded the defense from doing so. *Compare* Plaintiffs' witnesses: Tr. 4/11/23 (Gonzalez) 9:17-15:2; 4/18/23 (Acevedo) 72:11-

81:9; *with* defense witnesses: Tr. 5/15/23 (Alfonso) 173:2-21; 5/16/23 (Dooley) 200:2-18.

Plaintiffs were permitted to introduce on redirect two letters which were not identified on Plaintiffs' exhibit list and were not shown to the witnesses during direct or cross exam. 4/20/23 51:18-56:19 (Pl. Ex. 448); Tr. 4/24/23 144:11-146:1 (Pl. Ex. 461). This was a trial by ambush. In fact, before trial Plaintiffs listed 430 exhibits (DE 380) and their last trial exhibit was Plaintiffs' Exhibit 738, reflecting over 300 new possible Plaintiffs' exhibits during trial. Tr. 5/30/23 58:1-9.

The Court erred in ruling the defense opened the door on cross of Acevedo, allowing him to read his memoranda to the jury, and allowing him to testify that he reported Defendant to the Department of Justice, the United States Attorney, the FBI, and the State Attorney. Tr. 4/18/23 150:2-155:9, 160:24-162:6. Contrastingly, the Court refused to allow the defense to introduce evidence of harassment of Defendant based on the Court's exclusion of anything relating to Plaintiffs' business associate who engaged in jury tampering although Plaintiffs opened the door by repeatedly accusing Defendant of harassment. *See, e.g.*, Tr. 5/3/23 57:7-64:19.

Fuller claimed an instance of targeting was Plaintiffs had to remove kiosks from Calle Ocho Marketplace immediately due to the City's emergency injunction. Tr. 5/10/23 (Fuller) 99:8-12. The defense was precluded from asking City Attorney Dooley about the final adjudication with res judicata effect which rejected Plaintiffs' claim they were subject to selective enforcement and was unable to introduce the Opinion. Tr. 5/17/23 (Dooley) 31:10-33:1; DE 379 (identifying Def. Ex. 2: 1/21/21 Opinion of three-judge panel of Circuit Court (Trawick, Walsh, and Santovenia, JJ.)). The defense was also precluded from introducing many other final adjudications.

The Court prohibited the defense in closing from referring to Plaintiffs' "pattern and practice", "business practice", and "business as usual", but permitted Plaintiffs to refer to Defendant's pattern, practice, and "playbook to break people". Tr. 5/30/23 174:21-23, 175:6-10, 178:22-179:19; Tr. 5/31/23 79:3, 84:7-15. The disparate treatment also included denial of the defense motions for continuance, to conduct trial in Miami, and *in limine*. DE 355, 360, 365.

These rulings cannot be reconciled.  And the cumulative effect of the individual instances of disparate treatment is a trial that was unfairly balanced against Defendant, warranting a new trial.

## IV. <u>There were Substantial Errors in the Jury Instructions Necessitating a New Trial</u>
### a.   <u>Refusal to give a jury instruction on probable cause</u>

The evidence adduced in this case, including the admitted and repeated Code violations on Plaintiffs' entities' properties, showed that the City had probable cause to take actions and that

Defendant had probable cause to make inquiries and raise concerns. Therefore, Plaintiffs' First Amendment retaliation claim failed as a matter of law. In *O'Boyle v. Commerce Grp., Inc.*, 2023 U.S. App. LEXIS 6665, *10, 2023 WL 2579134 (11th Cir. Mar. 21, 2023), the court held:

> To meet the causation element of a First Amendment retaliation claim, "a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019) (marks and citation omitted). But where the government actor can show it had probable cause to take legal action against the plaintiff's protected activity, a retaliation claim will usually "fail[] as a matter of law." *Id.* at 1728.

The evidence established Plaintiffs were serial violators of the Code and they repeatedly and admittedly performed work without a permit. *E.g.,* Def. Ex. 5, 6, 9, 10, 11, 13, 16, 24, 28, 29, 30, 32, 33, 34, 37, 39, 41, 43, 45, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 89, 90, 98, 100, 101, 111, 603, 604, 716, 719. Defendant had probable cause to make inquiries and raise concerns and the City had probable cause to take actions, based on voluminous evidence. The Court's denial of Defendant's requested Jury Instruction and question on the Verdict (DE 445 at 16, 34) as to the probable cause issue requires a new trial.[6]

### b.  <u>The First Amendment retaliation instruction and verdict form</u>

The Court adopted Plaintiffs' proposed instruction which included a lengthy, prejudicial recitation of the claimed retaliatory acts in No. 5.1. *See* DE 475 at 7-8; *cf.* DE 445 at 10-12. The instruction on whether Defendant retaliated against Plaintiffs thereby "baked in" Plaintiffs' inflammatory allegations, which was prejudicial and emphasized in Plaintiffs' closing. Tr. 5/31/23 38:8-18 ("This jury instruction provides that Joe Carollo retaliated against Bill Fuller and Martin Pinilla by trespassing, by lodging, fabricating anonymous complaints against them, by causing or commandeering City of Miami officials to selectively target Bill Fuller's and Martin Pinilla or properties, businesses, tenants, festivals or events associated with them for inspections, violations, and enforcement actions and/or by making false and defamatory statements to harm them.").

Defendant proposed that the first question of the verdict for each Plaintiff should be whether he engaged in speech or conduct that was protected under the First Amendment. *See* DE 445 at 33, 36. Instead, the first question of the Verdict contains a prejudicial presumption that Plaintiffs

---

[6] The Court prohibited Defendant from testifying as to his probable cause and prohibited the defense from referring to probable cause in closing. Tr. 5/30/23 30:25-32:2, 181:18-182:10.

proved the first required element of their claim, which they did not. *See* DE 470.

## V. **The Court's Denial of Defendant's Motion for Mistrial based on Jury Tampering by Plaintiffs' Business Associate and Prejudice to Defendant Requires a New Trial**

Defendant moved for a mistrial based on record evidence that Plaintiffs' business associate followed and intimidated a juror, that the juror spoke with six other jurors about the incident, and that the Court refused to give Defendant's proposed curative instruction to the jury. *See* DE 397, 409. The Court turned a blind eye to the issues, declined to require Plaintiffs' business associate to appear in Court to answer for his actions, and ultimately denied the motion. Defendant provided record evidence including videos of the Miami Parking Authority and affidavits showing Plaintiffs' business associate intentionally following the juror into an elevator. *See* DE 397, 409, 437, 481. It was undisputed that Plaintiffs' business associate who engaged in jury tampering is entitled to receive 20% of Plaintiffs' recovery in this case (DE 425-3) and that he was listed by Plaintiffs as a trial witness in the Pretrial Stipulation (DE 332).

The theme of Plaintiffs' case was that Defendant threatened and intimidated City employees and others to target and retaliate against Plaintiffs. Tr. 4/10/23 (Plaintiffs' opening) 18:14-16; Tr. 5/31/23 (Plaintiffs' closing) 43:14-19, 55:7-9. Defendant requested a curative instruction to make it clear to the jury that the man who approached the juror was "associated with the Plaintiffs" and that "this contact had nothing to do with Defendant, Commissioner Joe Carollo, and the contact is not directly or indirectly associated with Commissioner Carollo." *See* DE 413, 438. The Court denied Defendant's instruction and instead instructed the jury by reading them a curative instruction that was virtually identical to Plaintiffs'. Tr. 4/24/23 201:19-202:19.

Mistrial was supported by similar binding precedent, *U.S. v. Harry Barfield Co.*, 359 F.2d 120 (5th Cir. 1966). Further, "courts will not suffer a party to profit by his own wrongdoing." *U.S. v. Houlihan*, 92 F.3d 1271, 1279 (1st Cir. 1996). It is well-established that a party may not benefit from his own misconduct. *U.S. v. Cunningham*, 194 Fed. Appx. 582, 585 (11th Cir. 2006).

The Court compounded the decision to turn a blind eye to Plaintiffs' associate's jury tampering by repeatedly (i) prohibiting the defense from introducing defense evidence relating to Plaintiffs' harassment and intimidation tactics merely because they involved Plaintiffs' business associate, (ii) concluding that the defense was engaging in an improper strategy to raise Plaintiffs' business associate's name and image to prejudice the jury; (iii) prohibiting the name of Plaintiffs' business associate from being used. Tr. 5/3/23 56:21-67:4; Tr. 5/15/23 159:16-161:17, 164:22-167:14,

168:4-169:6. The evidence involving Plaintiffs' business associate was listed by the defense long before the trial when he engaged in jury tampering. *See* DE 379. Indeed, in opening, defense counsel showed a video of Plaintiffs' business associate harassing Defendant and a constituent and told the jury that a theme of the defense would be "who was harassing who?" Tr. 4/10/23 50:3-6. The Court's rulings precluded Defendant from presenting evidence he told the jury he would introduce. However, the Court allowed Plaintiffs to show a video allegedly showing harassment by Defendant of Plaintiffs' tenant, Sanguich. Tr. 4/20/23 (Miro) 105:5-6; Tr. 4/24/23 (Romero) 61:11-62:15; Pl. Ex. 295. The Court's refusal to permit Defendant to prove his defense and the Court's allowing Plaintiffs to champion the misconduct of their partner requires a new trial.

## VI. <u>The Court's Denial of Defendant's Motion for Mistrial and/or Disqualification</u>

Defendant filed a sealed legally sufficient motion for mistrial and/or disqualification. Tr. 5/30/23 117:5-118:11; DE 458, 461, 462. The Court exhibited objective bias against Defendant since the filing of the mistrial motion based on Plaintiffs' business associate's jury tampering. DE 397, 404, 409. Thereafter the Court's erroneous belief that the defense was engaging in an improper strategy to raise Plaintiffs' business associate's name and image to prejudice the jury prevented the defense from proving its case. The Court also exhibited bias against the defense due to their filing under seal a response containing two photos of Plaintiffs' counsel speaking with reporters at the courthouse,[7] including raising the specter of prison nine times, accusing the defense of reprehensible, unthinkable, unfathomable and egregious conduct, disrespecting the Court, compromising the safety of the Court, and refusing to follow the law. Tr. 5/17/23 1:15-20:23. The Court accused the defense of willful and intentional fabrication and misrepresentation as to the mistrial motion based on Plaintiffs' business associate's jury tampering. Tr. 5/30/23 123:13-127:4. While the Court acknowledged Plaintiffs' business associate's actions were inappropriate, the Court never compelled his attendance to answer for his actions.

---

[7] The Court stated, *inter alia*, "I'm really saddened and really, for the very first time personally hurt, and I've never felt that way. … [Y]ou all are facing federal prison time because it's serious. … I warned you over and over and over again and this type of tactic caused you to put you in a position where you are today. … And penalties you are now facing said knowingly or willful violation 30 days in jail. And/or a fine $5,000 and a punishment for contempt if I go with a contempt, 30 days doesn't even scratch the surface here based on what I have seen here. And it's unfortunate for you guys. You've tied my hands here. I'm really disappointed to the utmost. And I went home and I saw this I had to pray about this here, couldn't believe it." Tr.5/17/23 6:23-9:10.

The defense learned after trial of further disparate treatment. On 5/17/23, the Court invited submission of closings under seal for the Court's review. Tr. 5/17/23 294:20-22. The defense sent its closing on 5/29/23. On 5/30/23, the Court met with the defense *ex parte* on the closing. The proceedings were supposed to be unavailable to Plaintiffs, but were inadvertently transmitted to them on 5/30/23 via live feed and transcript. *See* Exhibit A. Prior to the parties' closing arguments on 5/31/23 the Court was aware of the fact that the daily transcript provided to Plaintiffs' counsel on the evening of 5/30/23 contained the *in camera* conversation regarding defense closing. At no point has the Court advised the defense of this issue. Plaintiffs' access to the discussion and rulings gave them a prejudicial advantage. During defense objections to Plaintiffs' closing, the Court stated Plaintiffs "were not privy to the conversation that was discussed with you," "I guess they anticipated your argument", and "[d]uring the closing arguments, they were not aware of your closing arguments with respect to business as usual." Tr. 5/31/23 82:19-21, 84:13-14, 87:7-12. Plaintiffs received and reviewed the 5/30/23 transcript before their closing, as evidenced by references in their closing to Noriega's 5/30/23 testimony. Tr. 5/31/23 51:18-20, 151:19-20.

The Court denied a motion for mistrial based on Pinilla's incurably prejudicial testimony that Defendant should be "abolished from earth". Tr. 5/8/23 162:10-14, 163:19-164:10. While the Court struck Plaintiffs' testimony that Defendant engaged in a "campaign of destruction", the Court then allowed it. Tr. 5/8/23 (Pinilla) 110:4-17, 111:19-24. The Court permitted Plaintiffs to show pictures of Plaintiffs and their witnesses with bullseyes imposed over them which implies violence and is inflammatory and prejudicial. Tr. 5/31/23 83:12-15. The Court told the defense not to call anyone a "liar" but permitted Plaintiffs to do so.  Tr. 5/30/23 178:10-22; Tr. 5/31/23 51:1.

### VII. <u>Defendant is entitled to Judgment as a Matter of Law</u>

For the reasons set forth herein, and as set forth in Defendant's Motion for Judgment as a Matter of Law (DE 455), Motion to Dismiss (DE 154), and Answer and Defenses (DE 201), including but not limited to qualified immunity and legislative immunity and privilege, which are incorporated herein, Defendant is entitled to entry of judgment as a matter of law in his favor.

### VIII. <u>Conclusion</u>

The cumulative effect of these errors including allowing evidence beyond the complaint and improper character assassination of Defendant without any curative instructions allowed the skunk in the jury box, requiring a new trial. Defendant is also entitled to judgment as a matter of law.

Case No. 1:18-cv-24190-SMITH

<u>LOCAL RULE 7.1 CERTIFICATION</u>

Undersigned counsel for the movant, Mason A. Pertnoy, certifies that on June 27, 2023, at 3:30 p.m., he spoke to counsel for Plaintiffs, Jeffrey W. Gutchess, in a good faith effort to resolve the issues raised herein and has been unable to do so.

WHEREFORE, Defendant, Joe Carollo, respectfully requests this Court grant his Motion for New Trial and Renewed Motion for Judgment as a Matter of Law, and grant such further relief as the Court deems just, equitable and proper.[8]

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 28th day of June, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record.

Respectfully submitted,

KRINZMAN HUSS LUBETSKY
   FELDMAN & HOTTE
Co-Counsel for Commissioner Joe Carollo
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, Florida 33131
Telephone: (305) 854-9700
Primary email:  map@khllaw.com
Primary email:  mschneider@khllaw.com
Secondary:  eservicemia@khllaw.com

By: _/s/ Mason A. Pertnoy_
      Mason A. Pertnoy, Esq.
      Florida Bar No. 18334
and

SHUTTS & BOWEN
Co-Counsel for Commissioner Joe Carollo
200 S. Biscayne Boulevard, Suite 4100
Miami, FL 33131
Telephone: (305) 415-9072
Email: msarnoff@shutts.com

---

[8] Defendant sought an enlargement of the twenty-page limitation to adequately address in this Motion all of the errors necessitating granting a new trial and granting the renewed judgment as a matter of law, but the Court denied Defendant's request.

- 21 -

Case No. 1:18-cv-24190-SMITH

By: /s/ Marc D. Sarnoff
       Marc D. Sarnoff, Esq.
       Florida Bar No. 607924
and

KUEHNE DAVIS LAW, P.A.
Co-Counsel for Commissioner Joe Carollo
100 S.E. 2nd Street, Suite 3105
Miami, FL 33131-2154
Telephone: (305)789-5989
Email: ben.kuehne@kuehnelaw.com;
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

By: /s/ Benedict P. Kuehne
       Benedict P. Kuehne, Esq.
       Florida Bar No. 233293