**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:18-cv-24190-SMITH**

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

       Plaintiffs,

v.

JOE CAROLLO,

       Defendant.

_____/

**DEFENDANT, JOE CAROLLO'S SEALED ALTERNATIVE MOTION FOR**
**REMITTITUR**

Defendant, Commissioner Joe Carollo, pursuant to Rule 59(a), Fed. R. Civ. P., and in compliance with Local Rule 7.1(c), hereby files his Sealed Alternative Motion for Remittitur and Incorporated Memorandum of Law.

### I.   Legal Standard Applicable to Motion for Remittitur

The Court should remit a jury award that is excessive and improper. "A court which believes the jury's verdict is excessive may order a new trial unless the plaintiff agrees to remit a portion of the jury's award." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 (11th Cir. 1999) (citing *Dimick v. Schiedt*, 293 U.S. 474, 486-87, 55 S. Ct. 296, 79 L. Ed. 603 (1935)).

Courts have discretion to grant remittitur when damages are excessive. *Johnson v. Clark*, 484 F. Supp. 2d 1242, 1256 (M.D. Fla. 2007), aff'd, 294 F. App'x 502 (11th Cir. 2008) (citing *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1310 (11th Cir. 1990)).

"As a general rule, 'a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence.'" *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1266 (11th Cir. 2008) (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985)).

The damages awards in this case are so grossly excessive as to shock the conscience of the Court. "[A] grossly excessive award may warrant a finding that the jury's verdict was swayed by passion and prejudice and thus necessitate a new trial." *Martinez v. Brinks, Inc.*, 410 F. Supp. 2d 1202, 1215 (quoting *Goldstein v. Manhattan Industries., Inc.*, 758 F.2d 1435, 1447 (11th Cir.

1985). A "new trial should be ordered only where the verdict is so excessive as to shock the conscience of the court." *Id.* That applies in this case to both the compensatory and the punitive damages awards.

Here, the damages awards should be remitted because they are excessive and based on the Court's erroneous instructions to the jury, Plaintiffs' counsel's impermissible presentation of damages amounts and golden rule arguments during closing argument, erroneous legal and evidentiary rulings, and bias.

## II. Remittitur is warranted because the compensatory damages awards are excessive and exceed any amounts established by the evidence

The jury awarded $8.6 million to Fuller and $7.3 million to Pinilla in compensatory damages comprised of damages for emotional distress and reputational harm. DE 470. These amounts are excessive and far exceed any amounts arguably established by the evidence. "If a jury awards damages exceeding the evidentiary maximum, the Court may grant remittitur and '[reduce] a jury's award to the outer limit of the proof.'" *Vmx-Global USA, LLC v. Noble Env't Tech*, No. 1:19-cv-22545-LFL, 2022 U.S. Dist. LEXIS 132865, *6, 2022 WL 2912644 (S.D. Fla. July 13, 2022) (Louis, Mag. J.) (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985)) (granting remittitur "in an effort to prevent Plaintiff from receiving a substantial windfall"). In this case, the compensatory damages awards far exceed the evidentiary maximum and remittitur is warranted.

With respect to emotional distress damages, Plaintiffs claimed to have proven they suffered "severe and extreme" emotional harm (Tr. 5/31/23 63:18-22), yet they relied solely on self-serving testimony of standard stress such as sleepless nights during years when they had young children, and anxiety. Tr. 5/8/23 (Pinilla) 151:10-11; Tr. 5/10/23 (Fuller) 196:1-2.

With respect to Plaintiffs' claims for reputational harm, they failed to *quantify* in any manner how they have been harmed. *See, e.g., Habitat for Humanity Int'l, Inc. v. Morris*, No. 2:19-cv-456-JLB-MRM, 2021 U.S. Dist. LEXIS 205990, *15, 2021 WL 4974837 (M.D. Fla. 2021) ("But the Court is not prepared to award reputation damages absent evidence that rises above mere speculation."); *Rosenberg v. DVI Receivables XIV, LLC*, No. 12-CV-22275-SEITZ, 2012 U.S. Dist. LEXIS 196857, *6, 2012 WL 12915304, *2 (S.D. Fla. Dec. 18, 2012) ("Scherf was unable to quantify the amount of damage sustained by Plaintiff as a result of the harm to his reputation. Therefore, Scherf's opinion on this issue will not assist the jury in determining Plaintiff's

damages."); *Purdy v. Experian Info. Solutions, Inc.*, No. CV-04-RRA-2676S, 2005 WL 8157972, * 9 n.19 (N.D. Ala. Nov. 3, 2005) ("Plaintiff's belief cannot show reputation damage."); *Boris v. Choicepoint Servs.*, 249 F. Supp. 2d 851, 861 (W.D. Ky. 2003) ("damage to credit or business reputation must rest upon some extrinsic evidence, not just upon Plaintiff's opinion.").

Plaintiffs provided no *computation* of damages and were therefore precluded from suggesting a specific amount to the jury. *See, e.g.*, *Carter v. BPCL Management, LLC*, No. 19-60887-CIV-Dimitrouleas/Snow, 2021 U.S. Dist. LEXIS 256256, *23, 2021 WL 7502558 (S.D. Fla. 2021) (where plaintiff had not provided a computation of his intangible damages, he left the computation of intangible damages to the jury, and consequently he was "precluded from suggesting any specific amount of intangible damages to the jury."); *Nagele v. Delta Air Lines, Inc.*, No. 17-22559-CIV-King/Garber, 2017 U.S. Dist. LEXIS 210335, *5, 2017 WL 6398337 (S.D. Fla. Dec. 13, 2017) ("if Plaintiff decides not to disclose a computation for non-economic damages at the initial disclosure phase, then Plaintiff is precluded from suggesting any amount of non-economic damages to the jury at any point or manner during the trial."); *Avrett v. Festival Fun Parks, LLC*, No. 15-80526-CIV-Middlebrooks/Brannon, 2016 U.S. Dist. LEXIS 5285, *9-10 (S.D. Fla. Jan. 15, 2016) ("because Avrett has not disclosed a computation for intangible damages, Avrett is precluded from suggesting any specific amount of intangible damages to the jury."); *Gray v. Florida Dept. of Juvenile Justice*, No. 3:06-cv-990, 2007 U.S. Dist. LEXIS 6649, *5, 2007 WL 295514 (M.D. Fla. Jan. 30, 2007) ("Plaintiff may not suggest to the jury a suggested amount of compensatory damages for her emotional distress.").

Contrary to these requirements, Plaintiffs suggested specific amounts of intangible damages to the jury despite their failure to disclose a computation. *Carter*; *Nagele*; *Avrett*; *Gray*. Plaintiffs presented absolutely no evidence attempting to quantify an amount of compensatory damages for emotional distress or reputational harm. Instead, in closing, Plaintiffs improperly argued that, "**[i]n civil rights cases like this**, a range of ten million to 15 million is appropriate for the severe emotional harm to Mr. Fuller and Mr. Pinilla each individually. Ten million to 15 million", and "**[i]n civil rights cases like this** where their reputational harm has been severe and long lasting, and it's resulted from both the targeting and harassment and also defamation from a public official. A range of ten million to 20 million dollars each for Mr. Fuller and Mr. Pinilla will be the appropriate amount to compensate them for the severe and lasting reputational harm". Tr. 5/31/23 69:20-23, 74:5-11 (emphasis added). These numbers were picked "out of thin air," and were not

based on any evidence at trial. *Pier 1 Cruise Experts v. Revelex Corp.*, 929 F.3d 1334, 1342-1343 (11th Cir. 2019).

Plaintiffs' counsel's argument to the jury suggesting specific amounts as "appropriate" based on what other juries in "cases like this" awarded is "clearly objectionable", does not constitute evidence of damages, and relies wholly on matters outside of the record evidence. *See Nichols v. Fannin*, 1:16-CV-4700-JSA, 2018 U.S. Dist. LEXIS 238782, *49-50 (N.D. Ga. Apr. 16, 2018) (emphasis added) (citation omitted) ("several statements by Plaintiff's lawyers during closing were objectionable. The most **clearly objectionable**, in the Court's view, was counsel's statement, 'I've got friends who try **cases like this** and they're $10 million cases.' Obviously, there was no evidence in the record as to the results or any information about any of these other cases, and the result of any other case was entirely irrelevant to any question before the jury in this case."). As in *Nichols*, "there was no evidence in the record as to the results or any information about any of these other cases, and the result of any other case was entirely irrelevant to any question before the jury in this case." In *Nichols*, the court declined to grant a new trial on this basis where the court had immediately issued a "direct and specific curative instruction with regard to this particular statement." *Id.* at *49-50. Contrastingly, here, a new trial is required because the defense objected, and no curative instruction on this point was given. Tr. 5/31/23 84:23-85:2, 87:21-88:4, 89:11-15. *See also JGR, Inc. v. Thomasville Furniture Indus.*, No. 1:96 CV 1780, 2005 U.S. Dist. LEXIS 55413 *4 (N.D. Ohio Mar. 16, 2005) (citations omitted) ("courts have also held that reference by counsel of the amounts of verdicts in similar cases (*e.g.*, counsel in a personal injury case advising the jury of the amount of the verdicts in similar personal injury cases) is improper or even reversible error.").

Adding to the prejudicial effect of Plaintiffs' statements, not only were they riddled with hearsay, but they were factually inaccurate: A cursory review of jury awards in 1983 cases does not reveal a single similar case awarding intangible or punitive damages remotely close to the runaway awards in the instant case which were based on Plaintiffs' counsel's improper argument.

As set forth in the Motion for New Trial which is incorporated herein, the compensatory damages awards are based on improper closing arguments, erroneous legal and evidentiary rulings, and bias. Defendant respectfully submits that substantial remittitur is required as to the compensatory damages awards of $8.6 million to Fuller and $7.3 million to Pinilla. DE 470.

### III. Remittitur is warranted because the punitive damages awards are excessive

The jury awarded $25.7 million to Fuller and $21.9 million to Pinilla in punitive damages. DE 470. As set forth in the Motion for New Trial which is incorporated herein, the compensatory damages awards are based on improper closing arguments, erroneous legal and evidentiary rulings, and bias. Thus the punitive damages awards which are apparently based on the excessive and unsupported compensatory awards are also improper.[1]

#### a. Due Process requires the punitive damages awards be set aside

The punitive damages awards must be set aside because they violate due process. There are procedural and substantive constitutional limitations on these awards. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S. Ct. 1513, 1519, 155 L. Ed. 2d 585 (2003). The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments. *Id.* The Court has a "mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause." *Peer v. Lewis*, No. 06-60146-CIV, 2008 U.S. Dist. LEXIS 38908, *42-43, 2008 WL 2047978 (S.D. Fla. May 13, 2008), aff'd, No. 08-13465, 2009 U.S. App. LEXIS 2428, 2009 WL 323104 (11th Cir. Feb. 10, 2009) (citing *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999).

"A review of a punitive damage award must include consideration of three guideposts to determine whether the award is unconstitutionally excessive: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Peer v. Lewis*, 2008 U.S. Dist. LEXIS 38908, *41 (quoting *State Farm*, 538 U.S. at 418 (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996)).

Consideration of these factors leads to the conclusion that the punitive damages awards in this case of 3 times the excessive compensatory awards are not warranted. *Zedan v. Bailey*, 522 F. Supp. 3d 1363, 1379-1380 (M.D. Ga. 2021) (reducing "punitive damages of 3.3 to 4 times the general and special damages" to "a punitive damages ratio of 1:1 with the general and special damages" where "[a]t most, Plaintiff suffered mild distress, some damage to his reputation, and

---

[1] The jury's punitive damages awards appear to be a result of the jury's multiplying its excessive and unsupported compensatory awards by three. $8.6 x 3 = $25.8; and $7.3 x 3 = $21.9.

loss of some business opportunities. Furthermore, at least some of the defamatory statements may have been published with a good faith, reasonable belief in their truth (rather than with trickery and deceit), and Defendant is a student who has previously indicated he does not have large financial means.").

### b.  <u>Lack of reprehensibility favors significant remittitur</u>

The first *BMW* guidepost - the degree of reprehensibility of the defendant's misconduct - is the most important indicator of the reasonableness of a punitive damages award. *Peer v. Lewis*, 2008 U.S. Dist. LEXIS 38908, *43 (citing *State Farm*, 538 U.S. at 419).

The reprehensibility determination "must begin with the identification of the state's interest and an assessment of the strength of that interest". *Peer v. Lewis*, 2008 U.S. Dist. LEXIS 38908, *43-44 (citing *Action Marine, Inc. v. Continental Carbon, Inc.*, 481 F.3d 1302, 1318 (11th Cir. 2007)). Among the factors to consider in determining a party's degree of reprehensibility are whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Peer v. Lewis*, 2008 U.S. Dist. LEXIS 38908, *43-44 (quoting *State Farm*, 538 U.S. at 419).

Consideration of these factors favors Defendant. The alleged harm caused was solely economic not physical harm. Plaintiffs clearly limited their damages to emotional distress and reputational harm. *E.g.*, Tr. 5/8/23 114:10-11. Over objection, Plaintiffs were allowed to testify regarding unsubstantiated, alleged physical effects of emotional distress, and the Court's jury instructions included references to possible physical pain and suffering. *E.g.*, Tr. 5/8/23 (Pinilla) 196:2-10; Tr. 5/30/23 158:23-159:23; DE 475 at 10. The alleged retaliation did not evince an indifference to or a reckless disregard of the health or safety of others. Rather, Defendant was concerned with the health, safety and welfare of his constituents. *E.g.*, Tr. 4/19/23 (Russell) 146:8-18; Tr. 5/5/23 (Carollo) 79:20-23. Plaintiffs did not have financial vulnerability. Rather, they are millionaire real estate developers living in expensive houses and neighborhoods. *E.g.*, Tr. 4/19/23 (Malone) 166:6-167:1; Tr. 4/19/23 (Garcia) 232:14-21; Tr. 4/20/23 (Miro) 79:21-22; Tr. 4/25/23 (George) 149:16-23; Tr. 5/5/23 (Bernheim) 228:12-14; Tr. 5/8/23 (Pinilla) 60:10-13, 76:1-6, 214:19-23; Tr. 5/9/23 (Pinilla) 60:20-23, 69:4-16; Tr. 5/9/23 (Fuller) 125:20-21. The alleged instances of retaliation were isolated incidents, and the alleged harm was not the result of intentional malice, trickery, or deceit.

Rather, Defendant was doing his job including following up on resident complaints relating to quality of life issues such as noise and valet parking. Tr. 5/5/23 (Carollo) 29:19-34:3.

### c. **Disparity between actual or potential harm suffered by Plaintiffs and the punitive damages awards**

As to the second *BMW* guidepost, there is a significant disparity between the actual or potential harm suffered by Plaintiffs and the punitive damages awards. The actual harm in this case is limited to emotional distress and reputational harm. *E.g.*, Tr. 5/8/23 114:10-11. There was *no evidence* at trial of any dollar amounts of damages for actual or potential harm relating to emotional distress or reputational harm, the only components of damages. The first time any dollar amounts were asserted was in Plaintiffs' closing and those amounts were ranges claimed by Plaintiffs' counsel to be amounts awarded by other juries in "civil rights cases like this". Tr. 5/31/23 69:20-23, 74:5-11. Thus, for purpose of comparing actual or potential harm and the punitive damages awards, the amount of actual or potential harm is zero. There is a significant disparity between $0 in actual or potential harm and $25.7 million and $21.9 million in punitive damages.

Even if the amounts awarded for actual or potential harm of $8.6 and $7.3 are compared to the amounts awarded for punitive damages of $25.7 million and $21.9 million, there is a significant disparity in that the punitive damages awards are three times the compensatory damages awards.

The punitive damages awards of $25.7 million to Fuller and $21.9 million to Pinilla ($47.6 million) far exceed any similar First Amendment retaliation or civil rights cases.

For example, in *Jennings v. Town of Stratford*, 263 F. Supp. 3d 391, 397 (D. Conn. 2017), a First Amendment retaliation case, the jury awarded $1 million in compensatory and $1.5 million in punitive damages and the court "conditionally grant[ed] a new trial unless plaintiff accepts remittitur of the punitive damages award to an amount of $500,000."

Additionally, *Grassilli v. Barr*, 142 Cal. App. 4th 1260, 1295, 48 Cal. Rptr. 3d 715 (2006), involved a plaintiff's § 1983 claim that highway patrol officers violated his constitutional rights due to his complaint about an officer's improper conduct. A second trial resulted in awards including $210,000 in economic damages, $290,000 in noneconomic damages, and punitive damages awards of $3 million against an officer and $1 million against a supervisor. The court reduced the punitive damages to $35,000 and $20,000.

Further, in *Hare v. Zitek*, 2006 U.S. Dist. LEXIS 94200, *17-20, 2006 WL 4069052 (N.D. Ill. Dec. 28, 2006), a § 1983 First Amendment retaliation claim, the jury awarded a former officer

$1,767,497.56 in compensatory damages and $2 million in punitive damages ($1 million each against the Chief of Police and the Mayor). The court vacated the judgment against the Mayor, and reduced the punitive damages award against the Chief from $1 million to $90,000, one year of his salary, stating, "the Court understands that Chief Zitek is not a particularly wealthy man; he has been a public servant his entire career, making just $90,000 per year currently, and he is nearing retirement, when he will have to live on a fixed income. The payment of one year's salary to Mr. Hare should suffice." *Id.* at *20.

Moreover, as set forth above and in the Motion for New Trial, the awards of $8.6 million to Fuller and $7.3 million to Pinilla in compensatory damages comprised of damages for emotional distress and reputational harm are excessive and far exceed any amounts established by the evidence. Thus, the actual or potential harm suffered by Plaintiffs is substantially less than the collective $15.9 million awarded.

### d. The disparity between the punitive damages award and the civil penalties authorized or imposed in comparable cases

"The third guidepost is the disparity between the punitive damages award and the 'civil penalties authorized or imposed in comparable cases.'" *Sepulveda v. Burnside*, 432 Fed. Appx. 860, 867 (11th Cir. 2011) (quoting *BMW*, 517 U.S. at 575). The third factor is accorded less weight in the reasonableness analysis than the first two guideposts. *Kemp v. Am. Telephone & Telegraph Co.*, 393 F.3d 1354, 1364 (11th Cir. 2004). This factor demonstrates the Supreme Court's concern with according proper deference to "legislative judgments concerning appropriate sanctions for the conduct at issue." *BMW*, 517 U.S. at 583. Some courts have found the third guidepost of limited utility in assessing the reasonableness of a punitive damages award for a First Amendment or other civil rights violation. *Styers v. Pennsylvania*, 2008 U.S. Dist. LEXIS 15684, *10, 2008 WL 598285 (M.D. Pa. Feb. 29, 2008); *Sherman v. Kasotakis*, 314 F. Supp. 2d 843, 875-876 (N.D. Iowa 2004) (citing *Williams v. Kaufman County*, 352 F.3d 994, 1016, n.77 (5th Cir. 2003)).

### IV. Remittitur is warranted because the compensatory and punitive damages awards are based on errors as to jury instructions

#### a. Refusal to give a curative instruction to correct striking of defense closing argument of Defendant's salary pertaining to punitive damages supports remittitur

The Court erred in striking the statement in the defense closing as to the amount of Defendant's salary and instructing the jury to disregard it. The error was compounded when the Court refused

to give a curative instruction that the evidence of Defendant's salary should not be disregarded, particularly because the jury specifically asked about what information to consider to determine Defendant's financial resources pertaining to punitive damages.

The Jury Instructions provide, "[i]f you find that punitive damages should be assessed, you may consider the evidence regarding Joe Carollo's financial resources in fixing the amount of punitive damages to be awarded." *See* DE 475 at 11.

Defense counsel argued in closing that Defendant makes $57,000 a year, Plaintiffs objected that it was not in evidence, and the Court sustained the objection. Tr. 5/31/23 134:13-20. At sidebar, the defense argued Defendant's salary is public record in the City Code. Tr. 5/31/23 142:19-143:2. The Court decided, "I'll instruct the jury to disregard any statement made by defense counsel as to Mr. Carollo's salary as a commissioner. That's improper. **Had it been in evidence, no problem**." Tr. 5/31/23 143:10-13 (emphasis added). The Court then instructed the jury that "during the defendant's closing arguments, any statement that was made as to Joe Carollo's salary as a commissioner, $57,000 shall be stricken, shall not be considered by you as evidence in this case." Tr. 5/31/23 144:4-8.

Shortly after closing arguments, the jury asked the question, "[w]hat information do we consider or use to determine Joe Carollo's Financial's resources, as it pertains to punitive damages?" *See* Question/Note from the Jury to the Court (DE 469 at 3). The Court responded, "[y]ou should rely on the evidence and the instructions given in court." *Id.* at 2.

The next morning, Plaintiffs raised the above-quoted portion of the Jury Instructions and requested that the court "instruct the jury to either disregard that portion of the jury instructions or instruct them not to consider or speculate on the defendant's net worth because now they're left with no evidence and they're just speculating back there about what defendant Carollo is worth." Tr. 6/1/23 1:21-2:16. The defense pointed out that **Defendant's salary of $58,200 is in evidence in Plaintiffs' Exhibit 303**, § 4(h) of the City Charter, and requested a curative jury instruction. *E.g.,* Tr. 6/1/23 2:19-3:19, 11:6-16, 14:11-22, 15:1-17:8. The Court gave Plaintiffs opportunities to avoid giving Defendant a "point on appeal" and a basis for "a new trial" and Plaintiffs rejected same. Tr. 6/1/23 11:18-12:2, 16:12-15. The Court erred in refusing to give a curative instruction to the jury to correct the Court's striking of defense closing argument of Defendant's salary.

The jury specifically asked what information to consider or use to determine Defendant's financial resources in connection with awarding punitive damages. DE 469. The Court's erroneous

decision not to give the requested curative instruction led the jury to award combined punitive damages of $47.6 million. The punitive damages of $47.6 million is 14,870% greater than $320,100, which is Defendant's total salary for the five and a half years Plaintiffs assert is at issue in their closing.

Defendant's salary was in evidence, the defense properly referred to it in closing, and the jury should have been able to consider it. *E.g.*, *Woods v. Reeve*, No. 21-14001, 2022 U.S. Dist. LEXIS 72666, 2022 WL 1166318 (S.D. Fla. Apr. 20, 2022) (citation omitted) ("In a claim brought under 42 U.S.C. § 1983, 'evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded.'").

Defendant therefore respectfully submits that substantial remittitur is required as to the punitive damages awards.

### b. Refusal to give a jury instruction on probable cause based on *O'Boyle v. Commerce Grp., Inc.* supports remittitur

The evidence adduced in this case, including the admitted and repeated Code violations on Plaintiffs' entities' properties, showed that the City had probable cause to take actions and that Defendant had probable cause to make inquiries and raise concerns. Therefore, Plaintiffs' First Amendment retaliation claim failed as a matter of law. In *O'Boyle v. Commerce Grp., Inc.*, 2023 U.S. App. LEXIS 6665, *10, 2023 WL 2579134 (11th Cir. Mar. 21, 2023), the court held:

> To meet the causation element of a First Amendment retaliation claim, "a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019) (marks and citation omitted). But where the government actor can show it had probable cause to take legal action against the plaintiff's protected activity, a retaliation claim will usually "fail[] as a matter of law." *Id.* at 1728.

The evidence established Plaintiffs were serial violators of the Code and they repeatedly and admittedly performed work without a permit. *E.g.,* Def. Ex. 5, 6, 9, 10, 11, 13, 16, 24, 28, 29, 30, 32, 33, 34, 37, 39, 41, 43, 45, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 89, 90, 98, 100, 101, 111, 603, 604, 716, 719. Defendant had probable cause to make inquiries and raise concerns and the City had probable cause to take actions, based on voluminous evidence. The Court's denial of Defendant's requested Jury Instruction and question on the Verdict (DE 445 at

16, 34) as to the probable cause issue requires a new trial.[2]

### c. The Court's First Amendment retaliation jury instruction and verdict form contain errors which support remittitur

The Court adopted Plaintiffs' proposed instruction which included a lengthy, prejudicial recitation of the claimed retaliatory acts in No. 5.1. *See* DE 475 at 7-8; *cf.* DE 445 at 10-12. The instruction on whether Defendant retaliated against Plaintiffs thereby "baked in" Plaintiffs' inflammatory allegations, which was prejudicial and emphasized in Plaintiffs' closing. Tr. 5/31/23 38:8-18 ("This jury instruction provides that Joe Carollo retaliated against Bill Fuller and Martin Pinilla by trespassing, by lodging, fabricating anonymous complaints against them, by causing or commandeering City of Miami officials to selectively target Bill Fuller's and Martin Pinilla or properties, businesses, tenants, festivals or events associated with them for inspections, violations, and enforcement actions and/or by making false and defamatory statements to harm them.").

Defendant proposed that the first question of the verdict for each Plaintiff should be whether he engaged in speech or conduct that was protected under the First Amendment. *See* DE 445 at 33, 36. Instead, the first question of the Verdict contains a prejudicial presumption that Plaintiffs proved the first required element of their claim, which they did not. *See* DE 470.

### d. The Court's curative jury instruction as to Plaintiffs' "everyone knows" evidence was insufficient, supporting remittitur

Instead of direct testimony, over objection, Plaintiffs elicited inadmissible hearsay statements that "everyone knows" the retaliatory conduct was ordered by Defendant. *E.g.*, Tr. 4/18/23 (Acevedo) 102:22-103:8 ("openly known throughout the city", "wide open knowledge in Miami"); Tr. 5/8/23 (Pinilla) 106:16-24 ("widely known … in the city"), 144:18-24 (unnamed tenants are "very much aware of the targeting"). As set forth in Defendant's trial brief (Tr. 5/15/23 1:6-3:7; DE 463, DE 427), testimony as to what "everybody knows" and that a fact is "common knowledge" is hearsay. *Evans v. McClain*, 131 F. 3d 957 (11th Cir. 1997) ("The district court correctly dismissed this evidence as 'not significantly probative' because it was based on gossip, common knowledge, and the hearsay statement of an unidentified representative."); *Alexander v. United States*, 2022 U.S. App. LEXIS 34669 (11th Cir. 2022) (affirming exclusion of "common knowledge" evidence, stating, "we don't try cases on rumors."). Although the Court belatedly gave

---

[2] The Court prohibited Defendant from testifying as to his probable cause and prohibited the defense from referring to probable cause in closing. Tr. 5/30/23 30:25-32:2, 181:18-182:10.

a brief curative instruction (*see* Tr. 5/31/23 8:14-18), the prejudice was incurable and Plaintiffs alluded to "everyone knows" testimony in their closing. Tr. 5/31/23 37:11-12. *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir. 1977) ("the cleansing effect of the cautionary instructions in this case is dubious for, as the trial judge himself observed during the trial, 'you can throw a skunk into the jury box and instruct the jurors not to smell it, but it doesn't do any good.'").

e. **The Court's refusal to give Defendant's curative instruction regarding jury tampering by Plaintiffs' business associate supports remittitur**

Defendant moved for a mistrial based on record evidence that Plaintiffs' business associate followed and intimidated a juror, that the juror spoke with six other jurors about the incident, and that the Court refused to give Defendant's proposed curative instruction to the jury. *See* DE 397, 409. The Court turned a blind eye to the issues, declined to require Plaintiffs' business associate to appear in Court to answer for his actions, and ultimately denied the motion. Defendant provided record evidence including videos of the Miami Parking Authority and affidavits showing Plaintiffs' business associate intentionally following the juror into an elevator. *See* DE 397, 409, 437, 481. It was undisputed that Plaintiffs' business associate who engaged in jury tampering is entitled to receive 20% of Plaintiffs' recovery in this case (DE 425-3) and that he was listed by Plaintiffs as a trial witness in the Pretrial Stipulation (DE 332).

The theme of Plaintiffs' case was that Defendant threatened and intimidated City employees and others to target and retaliate against Plaintiffs. Tr. 4/10/23 (Plaintiffs' opening) 18:14-16; Tr. 5/31/23 (Plaintiffs' closing) 43:14-19, 55:7-9. Defendant requested a curative instruction to make it clear to the jury that the man who approached the juror was "associated with the Plaintiffs" and that "this contact had nothing to do with Defendant, Commissioner Joe Carollo, and the contact is not directly or indirectly associated with Commissioner Carollo." *See* DE 413, 438. The Court denied Defendant's instruction and instead instructed the jury by reading them a curative instruction that was virtually identical to Plaintiffs'. Tr. 4/24/23 201:19-202:19.

The motion for mistrial was supported by the factually similar, binding precedent, *United States v. Harry Barfield Co.*, 359 F.2d 120 (5th Cir. 1966).

Further, "courts will not suffer a party to profit by his own wrongdoing." *U.S. v. Houlihan*, 92 F.3d 1271, 1279 (1stCir. 1996). It is well-established that a party may not benefit from his own misconduct. *U.S. v. Cunningham*, 194 Fed. Appx. 582, 585 (11th Cir. 2006).

The Court compounded the error of its decision to turn a blind eye to Plaintiffs' business associate's jury tampering by repeatedly (i) prohibiting the defense from introducing defense evidence relating to Plaintiffs' harassment and intimidation tactics merely because they involved Plaintiffs' business associate, (ii) concluding that the defense was engaging in an improper strategy to raise Plaintiffs' business associate's name and image to prejudice the jury; (iii) prohibiting the name of Plaintiffs' business associate from being used. Tr. 5/3/23 56:21-67:4; Tr. 5/15/23 159:16-161:17, 164:22-167:14, 168:4-169:6. However, the evidence involving Plaintiffs' business associate was listed by the defense long before the trial when he engaged in jury tampering. *See* DE 379. Indeed, in opening, defense counsel showed a video of Plaintiffs' business associate harassing Defendant and a constituent and told the jury that a theme of the defense would be "who was harassing who?" Tr. 4/10/23 50:3-6. The Court's rulings therefore precluded Defendant from presenting evidence he told the jury he would introduce. Contrastingly, the Court allowed Plaintiffs to show a video with Romero and Miro allegedly showing harassment by Defendant of Plaintiffs' tenant, Sanguich. Tr. 4/20/23 (Miro) 105:5-6; Tr. 4/24/23 (Romero) 61:11-62:15; Pl. Ex. 295. The Court's refusal to permit Defendant to prove his defense and the Court's allowing Plaintiffs to champion the misconduct of their partner supports remittitur.

This Court's ruling allowed a jury tamperer to profit from his illegal acts by precluding the defense from raising his pretrial threats to Defendant captured on video and testimony. This Court's ruling encourages the jury tampering misconduct because Plaintiffs profited from the rulings of this Court despite the jury tamperer's direct financial interest in the outcome of this matter.

The Court's ruling allows Plaintiffs to champion their partner's misconduct (jury tampering) 6 days into the trial, by precluding the Defendants long established defense and evidence of Plaintiffs harassing Defendant. No court should allow a party to profit from its misconduct. *U.S. v. Houlihan*; *U.S. v. Cunningham*.

Defendant requests remittitur because the compensatory damages awards are excessive and exceed any amounts arguably established by the evidence. The evidence does not support the jury's award of $8.6 million to Fuller and $7.3 million to Pinilla in compensatory damages. DE 470.

## V. <u>Conclusion</u>

For these reasons and the cumulative nature of the deficiencies at trial, Defendants respectfully request that the Court use its discretion to remit the damage awards to the outer limit of proof

Case No. 1:18-cv-24190-SMITH

based only on proper evidence.  The Alternative Motion for Remittitur should be granted.

<u>LOCAL RULE 7.1 CERTIFICATION</u>

Undersigned counsel for the movant, Mason A. Pertnoy, certifies that on June 27, 2023, at 3:30 p.m., he spoke to counsel for Plaintiffs, Jeffrey W. Gutchess, in a good faith effort to resolve the issues raised in the motion. Plaintiffs advised they are not in agreement with the relief sought but the parties will continue to discuss the issues raised herein in an effort to narrow or resolve the issues.

WHEREFORE, Defendant, Joe Carollo, respectfully requests this Court grant his Alternative Motion for Remittitur, and grant such further relief as the Court deems just, equitable and proper.

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 28th day of June, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record.

Respectfully submitted,

KRINZMAN HUSS LUBETSKY
  FELDMAN & HOTTE
Co-Counsel for Commissioner Joe Carollo
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, Florida 33131
Telephone: (305) 854-9700
Primary email:  map@khllaw.com
Primary email:  mschneider@khllaw.com
Secondary:  eservicemia@khllaw.com

By:  */s/ Mason A. Pertnoy*
      Mason A. Pertnoy, Esq.
      Florida Bar No. 18334
and

SHUTTS & BOWEN
Co-Counsel for Commissioner Joe Carollo
200 S. Biscayne Boulevard, Suite 4100
Miami, FL 33131
Telephone: (305) 415-9072
Email: msarnoff@shutts.com

By:  */s/ Marc D. Sarnoff*

Case No. 1:18-cv-24190-SMITH

- 15 -

           Marc D. Sarnoff, Esq.
           Florida Bar No. 607924
and

KUEHNE DAVIS LAW, P.A.
Co-Counsel for Commissioner Joe Carollo
100 S.E. 2nd Street, Suite 3105
Miami, FL 33131-2154
Telephone: (305)789-5989
Email: ben.kuehne@kuehnelaw.com;
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

By: */s/ Benedict P. Kuehne*
           Benedict P. Kuehne, Esq.
           Florida Bar No. 233293