

PLAINTIFF'S EXHIBIT

449







**City of Miami**
**Building Department**
**Permit Application**

Process #: BD2003194 00
Total Due: 358.00
Permit #: BD2003194 00

| Job Location | |
|---|---|
| Folio Number: | 01-4102-006-6270 |
| Job Address: | 450 SW 7 St   Zip: 33135 |
| Legal Address: | |
| Unit No: | |

☑ Commercial  ☐ Residential  ☐ Dry Run
☐ Owner  ☑ Contractor  ☐ Lessee

| Contractor Information | |
|---|---|
| Contractor's License/Registration No: | EC13003054 |
| Contractor's Social Security Number: | |
| Qualifier's Name: | ATWALDO TEXIDOR |
| Company's Name: | ATEXI SERVICES CORP. |
| Address: | 13375 N.E 4 ct. |
| City: N.Mia  State: FL  Zip: 33161 | |
| Phone: 786-251-1604 | |
| E-Mail: | |

If this is related to another permit, you must provide:

| Threshold Inspector | |
|---|---|
| Name: | |
| Address: | |
| Phone: | |

| Owner/Lessee Information | |
|---|---|
| Owner's Name: | Tower Hotel, LLC |
| Owner's Address: | 1624 SW 8 St. Miami, Fl |
| Phone: | E-Mail: |
| Lessee: | |
| Lessee Address: | |
| Phone: | E-Mail: |

| General Information | |
|---|---|
| Proposed Use of Building: | Commercial |
| Current Use: | Commercial |
| Job Description: | ELECTRICAL Fixtures & Devel. |
| New Construction Total Cost: | |
| New Construction Sq. Ft:  Lineal Ft: | |
| Remodeling Total Cost: | 500.00 |
| Remodeling Sq. Ft:  Lineal Ft: | |
| Units:  Floors:  Height:  Gallons: | |
| Master Permit Number:  Plan No: | |

| Bonding Company | |
|---|---|
| Name: | |
| Address: | |
| Phone: | |

| Permit Type | |
|---|---|
| ☐ Building | ☐ Plumbing |
| ☐ Mechanical/AC | ☐ Plumbing/Gas |
| ☑ Electrical | ☐ Roofing |
| ☐ Landscaping | ☐ Sign |
| ☐ Electrical | ☐ Roofing |
| ☐ Fire | ☐ Mechanical Elevator |

| Engineer/Architect Information | |
|---|---|
| Engineer's Name: | |
| Address: | |
| Phone:  E-Mail: | |
| Architect's Name: | |
| Address: | |
| Phone:  E-Mail: | |

| Change to Existing Permit | |
|---|---|
| ☐ Change of Contractor (CR)  ☐ Change of Qualifier (CQ) | |
| ☐ Re-certification of Plans (RC)  ☐ Plans revision (RV) | |
| ☐ Completion Permit (CP) | |

| Building Permit only | |
|---|---|
| ☐ New Construction  ☐ Addition | |
| ☐ General Repair/Remodeling  ☐ Misc. Building | |
| ☐ Change of Occupancy  ☐ Demolition | |
| ☐ Change of Use | |

I understand that separate permits must be obtained for other items (i.e. electrical, plumbing, roofing, etc.), unless specifically covered by this permit. In signing this application, I am responsible for the supervision and completion of the construction in accordance with the plans and specifications and for compliance with all federal, state, and county laws applicable.

**Owner's Affidavit:** I certify that all the forgoing information is correct. Owner Certifies that the aforementioned Contractor has the authorization to perform the work as specified above.

**Lessee's Affidavit:** Lessee certifies that he has full consent and authorization from owner of subject property to perform the above-mentioned work and to hire above captioned contractor.

I have read the information contained in this permit and understand that any misrepresentation may constitutes fraud and could void the permit.

Signature of Owner/Lessee                    Signature of Qualifier

Print Name                                    Print Name

State of Florida, County of Miami-Dade        State of Florida, County of Miami-Dade
Sworn to and subscribed before me this        Sworn to and subscribed
Day of _____, 20__                           Day of
By _____                                     By
(SEAL)                                        (SEAL)
Personally known or Produced Identification,  Personally known or Produced Identification,
Type of Identification produced               Type of Identification produced

AMAT FERNANDEZ
Notary Public - State of Florida
My Comm. Expires Aug 25,
Commission # EE 1036
Bonded Through National Notary

| FOR BUILDING DEPARTMENT USE ONLY | | | |
|---|---|---|---|
| Job Code: | Certificates Required: ☐ C.O. ☐ C.C. | Plans: ☐ Yes ☐ No | No. Of Sheets: |
| Tracking required | | | |

Application Received by:           Date: 7/1/1     Permit Authorized by:          Date 7/6/1

Rev 2/02

**PLAINTIFF'S EXHIBIT**
**453**

**City of Miami**
**BUILDING DEPARTMENT**
**PERMIT APPLICATION**

*A CP*

| DEPARTMENT USE ONLY | |
|---|---|
| Process #: | BD12-003194-001 8001 |
| Total Due | $ 100.00 |
| Permit #: | BD12003194-001 1 |

*3001*

## JOB LOCATION

Folio Number: 01-4102-006-6270
Job Address: 1450 SW 7 St.    Zip:
Legal Address:
Unit No:

☐ Commercial    ☐ Residential    ☐ Dry Run
☐ Owner/Builder    ☐ Contractor    ☐ Lessee

## OWNER LESSEE INFORMATION

Owner:
Owner's Address:
Phone:    E-Mail:
Lessee:
Lessee Address:
Phone:    E-Mail:

## CONTRACTOR INFORMATION

Contractor's License/Registration No: EC13003054
Contractor's Social Security Number:
Qualifier's Name: ARNALDO TEXIDOR
Company's Name: ATEXI SERVICES CORP
Address: 19375 NE 4 CT
City: MIAMI    State: FL    Zip: 33161
Phone: 786-251-1604
E-Mail: oswrior@gmail.com
If this is related to another permit, you must provide:

## GENERAL INFORMATION

Proposed Use of Building:
Current Use:
Job Description: DEMOLITION    CP
New Construction Total Cost:
New Construction Sq. Ft:    Lineal Ft:
Remodeling Total Cost: $2,500
Remodeling Sq. Ft:    Lineal Ft:
Units:    Floors:    Height:    Gallons:

**MASTER PERMIT NUMBER:**

## THRESHOLD INSPECTOR

Name:
Address:
Phone:

## BONDING COMPANY

Name:
Address:
Phone:

## PERMIT TYPE

☐ Building    ☐ Plumbing    ☐ LIMP
☐ Mechanical/AC    ☐ Plumbing/Gas    ☐ Foundation
☐ Electrical    ☐ Roofing
☐ Landscaping    ☐ Sign
☐ Electrical    ☐ Roofing
☐ Fire    ☐ Mechanical Elevator

## ENGINEER/ARCHITECT INFORMATION

Engineer's Name:
Address:
Phone:    E-Mail:
Architect's Name:
Address:
Phone:    E-Mail:

## CHANGE TO EXISTING PERMIT

☐ Change of Contractor (CR)    ☐ Change of Qualifier (CQ)
☐ Re-certification of Plans (RC)    ☐ Plans revision (RV)
☒ Completion Permit (CP)

## BUILDING PERMIT ONLY

☐ New Construction    ☐ Addition
☐ General Repair/Remodeling    ☐ Misc. Building
☐ Change of Occupancy    ☐ Demolition
☐ Change of Use

I understand that separate permits must be obtained for other items (i.e. electrical, plumbing, roofing, etc.), unless specifically covered by this permit. In signing this application, I am responsible for the supervision and completion of the construction in accordance with the plans and specifications and for compliance with all federal, state, and county laws applicable.

**Owner's Affidavit:** I certify that all the forgoing information is correct. Owner Certifies that the aforementioned Contractor has the authorization to perform the work as specified above.

**Lessee's Affidavit:** Lessee certifies that he has full consent and authorization from owner of subject property to perform the above mentioned work and to hire above captioned contractor.

I have read the information contained in this permit and understand that any misrepresentation may constitutes fraud and could void the permit.

Signature of Owner/Lessee

Print Name

State of Florida, County of Miami-Dade
Sworn to and subscribed before me this
Day of _____ , 20___.
By _____
(SEAL)
Personally known or Produced Identification.
Type of Identification produced _____

Signature of Qualifier

Print Name: ARNALDO TEXIDOR

State of Florida, County of Miami-Dade
Sworn to and subscribed before me this 27
Day of March , 20 14
By _____
(SEAL) MY COMMISSION # DD 959056
EXPIRES
Personally known or Produced Identification.
Type of Identification produced _____

## FOR BUILDING DEPARTMENT USE ONLY

| Job Code: | Certificates Required: ☐ C.O. ☐ C.C. | Plans: ☐ Yes ☐ No | No. of Sheets: |
|---|---|---|---|
| Tracking Required | | | |

Application Received By    Date: 3 27 13
Permit Authorized By    Date: 3 27 13

D | BZ/IS414 Rev. 05/05

City of Miami
# BUILDING DEPARTMENT
## PERMIT APPLICATION

| DEPARTMENT USE ONLY | |
|---|---|
| Process #: | BD12003 A4001 |
| Total Due | 176.00 |
| Permit # | BP1200319000001 |

## JOB LOCATION

Folio Number: 01-41-02006-6270

Job Address: 1450 SW 7th STREET   Zip: 33135

Legal Address: 1450 SW 7th STREET

Unit No:

☒ Commercial   ☐ Residential   ☐ Dry Run
☐ Owner/Builder   ☐ Contractor   ☐ Lessee

## OWNER LESSEE INFORMATION

Owner: TOWER HOTEL, LLC

Owner's Address: 1637 SW 8th STREET MIAMI, FL 33135

Phone: 305 7938616   E-Mail:

Lessee:

Lessee Address:

Phone:   E-Mail:

## CONTRACTOR INFORMATION

Contractor's License/Registration No: CGC 1518735

Contractor's Social Security Number:

Qualifier's Name: Mario Andres Pons

Company's Name: Pons Estimating Service, Inc.

Address: 50 NW 22 Avenue

City: Miami   State: FL   Zip: 33195

Phone: 305-562-4726

E-Mail: mapons@ponsestimating.com

If this is related to another permit, you must provide:

## GENERAL INFORMATION

Proposed Use of Building: HOTEL

Current Use: HOTEL

Job Description: PARTIAL DEMO (Incidental Repair)

New Construction Total Cost:

New Construction Sq. Ft:   Lineal Ft:

Remodeling Total Cost: $2500   Lineal Ft: 25

Remodeling Sq Ft:

Units: 50   Floors: 3   Height:   Gallons:

MASTER PERMIT NUMBER:

## THRESHOLD INSPECTOR

Name:

Address:

Phone:

## BONDING COMPANY

Name:

Address:

Phone:

## PERMIT TYPE

| | |
|---|---|
| ☒ Building | ☐ Plumbing | ☐ LIMP |
| ☐ Mechanical/AC | ☐ Plumbing/Gas | ☐ Foundation |
| ☐ Electrical | ☐ Roofing | |
| ☐ Landscaping | ☐ Sign | |
| ☐ Electrical | ☐ Roofing | |
| ☐ Fire | ☐ Mechanical Elevator | |

## ENGINEER/ARCHITECT INFORMATION

Engineer's Name:

Address:

Phone:   E-Mail:

Architect's Name:

Address:

Phone:   E-Mail:

## CHANGE TO EXISTING PERMIT

☐ Change of Contractor (CR)   ☐ Change of Qualifier (CQ)
☐ Re-certification of Plans (RC)   ☐ Plans revision (RV)
☐ Completion Permit (CP)

## BUILDING PERMIT ONLY

☐ New Construction   ☐ Addition
☒ General Repair/Remodeling   ☐ Misc. Building
☐ Change of Occupancy   ☒ Demolition
☐ Change of Use

NOT A VALID PERMIT. COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by: (illegible)
Building Department of Microfilm

NO PLUMBING WORK APPROVED BY THIS PERMIT AND/OR PLANS

I understand that separate permits must be obtained for other items (i.e. electrical, plumbing, roofing, etc.), unless specifically covered by this permit. In signing this application, I am responsible for the supervision and completion of the construction in accordance with the plans and specifications and for compliance with all federal, state, and county laws applicable.

**Owner's Affidavit:** I certify that all the forgoing information is correct. Owner Certifies that the aforementioned Contractor has the authorization to perform the work as specified above.

**Lessee's Affidavit:** Lessee certifies that he has full consent and authorization from owner of subject property to perform the above-mentioned work and to hire above captioned contractor.

I have read the information contained in this permit and understand that any misrepresentation may constitutes fraud and could void the permit.

Signature of Owner/Lessee

MARTIN PINILLA
Print Name

State of Florida, County of Miami-Dade
Sworn to and subscribed before me this
Day of June, 2012.
By Martin Pinilla
(SEAL) Janeth Lopez
Personally known or Produced Identification
Type of Identification produced

NOTARY PUBLIC STATE OF FLORIDA
Janeth Lopez
Commission # DD844878
Expires: DEC. 11, 2012
BONDED THRU ATLANTIC BONDING CO., INC.

Signature of Qualifier

MARIO A. PONS
Print Name

State of Florida, County of Miami-Dade
Sworn to and subscribed before me this 6
Day of June, 2012.
By Angelica Ferro
(SEAL)
Personally known or Produced Identification
Type of Identification

ANGELICA LAVIN
MY COMMISSION # DD 959056
EXPIRES: April 7, 2013
Bonded Thru Budget Notary Services

## FOR BUILDING DEPARTMENT USE ONLY

| Job Code: | Certificates Required: ☐ C.O. ☐ C.C. | Plans: ☐ Yes ☐ No | No. of Sheets: |
|---|---|---|---|
| Tracking Required | B | X X X | |
| | $ | 6/8/12 | |
| Application Received By | | Date | Permit Authorized By   EC   6/12/2   Date |

D   BZ/IS414 Rev. 05/05

# City of Miami



## Data Summary

Plan Number: **BD12-003194-001**

### Job Location

| | |
|---|---|
| Job Address: **1450 SW 7 ST** | Unit / Suite #: |
| Legal Address: **1450 SW 7 ST** | Building Name: |
| Folio Number: 0141020066270 | Building #: |
| Additional Address Information: | FEMA Flood Zone: **X** |
| FEMA Elevation: | M21 Zone: **T5-O** |
| Development Name: | |

### Owner Information

Name:
Address 1:   **1450 SW 7 ST**
Address 2:
City, State Zip:   **MIAMI, FL 33125**
Phone:  (305)562-4726
Email:  **MAPOS@PONSTIMATINY.COM**

### Tenant/Lessee Information

Name:
Address 1:
Address 2:
City, State Zip:
Phone:
Email:

### Contractor Information

Contractor License: CGC1518735
Company: **PONS ESTIMATING SERVICES INC.**
Name:  **MARIO PONS**
Address 1:   **80 NW 22 AVE**
Address 2:
City, State Zip:   **MIAMI, FL 33133**
Phone:  **(305)562-4726**
Email:  **mapons@ponsestimating.com**

THIS IS A TRUE AND CERTIFIED
COPY OF THE RECORDS ON FILE IN
THE CITY OF MIAMI.

Certified by: Vivian Fuster
Building Dept. Office of Microfilm

# City of Miami



## Data Summary (continued)

Plan Number: **BD12-003194-001**

### Job Description

Job Category: **DEMOLITION**

Permit Type: **BUILDING**

Job Description:
**DEMOLITION – PARTIAL (ATTACHED)**

Required Certificate:

Plans Required: **YES**

Plans Review Discipline Tracking List:

| | |
|---|---|
| **BUILDING** | **ELECTRICAL** |
| **FIRE** | **PLUMBING** |
| **ZONING** | |

Applicant Role: **Contractor**

Property Type: **Commercial**

### Project Totals

| | |
|---|---|
| New/Addition Sq Ft | 0 |
| Remodeling Sq Ft | 0 |
| Total Sq. Ft. | 0 |

| | | |
|---|---|---|
| New/Addition Cost: | | $0.00 |
| Remodeling Cost: | + | $0.00 |
| **Total Cost:** | **=** | **$2,500.00** |

### Additional Options

# City of Miami



## Fee Summary

**Financial Transaction ID: 7195**
**LM Reference Number: BD12-003194-001**
**Job Address: 1450 SW 7 ST**

### Owner Information

Name:
Address 1:   **1450 SW 7 ST**
Address 2:
City, State Zip:   **MIAMI, FL 33125**
Phone:   **(305)562-4726**
Email:   **MAPOS@PONSTIMATINY.COM**

### Upfront Fee

Below please find your upfront fee(s) that are to be paid as part of application acceptance. Please be aware that no credit of your upfront or dry run fee will be given if after review, a substantial new design is resubmitted for review or if a permit is not issued within 180 days of last review. No refunds will be allowed of the upfront, dry run or application fee

| Fee Category | Fee Description | Quantity | Unit Type | Amount |
|---|---|---|---|---|
| UPFRONT | UPFRONT / DRY RUN FEES (BASED ON COST) | 2500.00 | DOLLARS | $100.00 |
| | | | **Total:** | **$100.00** |

Rev. 12/Mar/2012

Generated on Jun/08/2012 11:54 AM

## Location Sketch N.T.S.          Sheet 1 of 2
## CITY OF MIAMI COPY

SOUTHWEST 7th STREET

SOUTHWEST 15th AVENUE

| 10 | 9 | 8 | 7 | 6 | 5 | 4 | 3 | 2 | 1 |

104

| 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |

SOUTHWEST 14th AVENUE

SOUTHWEST 8th STREET

### ABBREVIATIONS

### PROPERTY ADDRESS:
1450 Southwest 7th Street
Miami, Florida 33135

### SURVEYOR NOTES
#1 Lands Shown Hereon were not abstracted for Easement and/or Right of Way Records. The Easement / Right of Way that are shown on survey as per plat of record unless otherwise noted.
#2 Benchmark: Miami-Dade County Public Works Dep. N/A
#3 Bearings as Shown hereon are Based upon Southwest 8th Street, S89°44'07"W
#4 Please See Abbreviations
#5 Survey is incomplete Without Sheet 2 of 2
#6 Drawn By. A. Torres   Date: 04-25-2012
#7 Complete Field Survey Date: 04-18-2012
#8 Disc No 2012. Station Surveying Scion
#9 Last Revised:
#10 Legal Description Furnished by client.
#11 This Certification is only for the land as described. It is not a certification of Title, Zoning, Easements, or Freedom of Encumbrances. ABSTRACT NOT REVIEWED.
#12 There may be additional Restrictions not shown on this survey that may be found in the Public Records of Miami-Dade County., examination of ABSTRACT OF TITLE will have to be made to determine record instruments, if any affecting this property.
#13 ACCURACY: The expected use of the land, as classified in the Minimum Technical Standard (5J-17.050), is "Residential". The Minimum relative distance accuracy for this type of boundary survey is 1 foot in 10,000 feet. The accuracy obtained by measurement and calculation of a closed geometric figure was found to exceed this requirement
#14 Foundations and/or footings that may cross beyond the boundary lines of the parcel herein described are not shown hereon
#15 Not Valid without one signature and the original raised seal of a Florida Licensed Surveyor and Mapper. Additions or deletions to Survey maps or reports by other than the signing party or parties is prohibited without written consent of the signing party or parties

NO PLUMBING WORK APPROVED BY THIS PERMIT AND/OR PLANS

### ELEVATION INFORMATION
National Flood Insurance Program
FEMA Elev. Reference to NGVD 1929

| Comm Panel | 120650 |
| Panel # | 0313 |
| Firm Zone: | "X" |
| Date of Firm: | 09-11-2009 |
| Base Flood Elev. | N/A |
| F.Floor Elev. | N/A |
| Garage Elev. | N/A |
| Suffix: | "L" |

Elev. Reference to NGVD 1929

### CERTIFIED ONLY TO:
Barlington Group

### LEGAL DESCRIPTION:
Lot 7, Block 104 of: "LAWRENCE ESTATE LAND COMPANY'S SUBDIVISION" according to the Plat Thereof as Recorded in Plat Book 2, Page 46 of the Public Records of Miami-Dade County, Florida.

Reviewed for CODE COMPLIANCE City of Miami

| | Signature | Date |
| P. Works | | |
| Fire Prev. | | |
| Planning | | |
| Zoning | | |
| Building | | 6-12-12 |
| Structural | | |
| Electrical | | |
| Plumbing | | |
| Mech. | | |
| S. Waste | | |



# Boundary Survey
## Sheet 2 of 2

Remove river rock on fascade to restore original arched windows under separate permit.

1ST FLOOR

Scope of Work.

① Remove 30' lineal feet of partitions and remove 750' square feet of dropped ceiling replace with 5/8" type X drywall

② Patch and paint walls as needed

③ Restore drywall arch in opening

④ Remove 12' lineal feet of partition and restore 11' lineal feet of 5/8" Type X drywall

**Floor plan labels:** Lobby, 49.88', Lobby, 16.60', 4.0', #102, Bath, #101, Bath, #103, #104, Closet, Closet, #105, #106, Bath, Bath, #107, Hallway, Closet, Closet, #108, #109, #110, Bath, Bath, #111, #112, Closet, #113, Bath, Bath, #115, Bath, Kitchen

ELECTRICAL PERMIT IS REQUIRED FOR ALL ELECTRICAL WORK

12003196001

NO PLUMBING WORK APPROVED BY THIS PERMIT AND/OR PLANS

| Reviewed for CODE COMPLIANCE City of Miami | | |
| --- | --- | --- |
| | Signature | Date |
| P. Works | | 06/08/12 |
| Fire Prev. | | |
| Planning | | |
| Zoning | | 8 12 |
| Building | | 6/12/12 |
| Struct. | | |
| Electrical | | 6/8/12 |
| Plumbing | | |
| Mech. | | |
| S. Waste | | |

# Boundary Survey

Sheet 2 of 2

MIAMI

06·08·12

BLDG DEPT

## 2ND FLOOR

Scope of work

1. Remove and replace plaster on interior side

2. Interior demolition remove 24' lineal feet of partition and restore 18' lineal feet of 5/8" type x drywall

3. Remove and cap existing plumbing

49.88'

| Bath #202 | Bath #201 |
| Closet | Closet |

15.00'  21.00'  27.0'  21.00'  66.60'  12.5'

17.00'  #203  4.0'  12.10'

Closet
Closet

#204  17.00'  #205  Bath
Closet  Bath
Closet
#206  Bath  #207
Bath  Closet
#208  Closet  #209
Bath
Hallway  Bath  #211
9.00'  2.50'  Closet
Closet
#210  #213
Bath  Bath
Bath  Bath
#212  #25
Closet  Closet
Closet  Closet
#215  #218
Bath  Bath
#216  Bath  Bath  #219

41.93'

Reviewed for CODE COMPLIANCE
City of Miami

Signature     Date

P. Works
Fire Prev.
Planning
Zoning
Building
Structure
Electrical
Plumbing
Mech.
S. Waste

NO PLUMBING IN THIS PERMIT
APPROVED IN THIS PLANS

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

# Boundary Survey

## 3RD FLOOR

06·08·12

BLDG DEPT



Scope of work:
① Interior demolition remove 24' lineal feet of partition and restore 12' lineal feet of 5/8" type X drywall

② Remove & recap existing plumbing.

Reviewed for CODE COMPLIANCE
City of Miami

| | Signature | Date |
|---|---|---|
| P. Works | | |
| Fire Prev. | RY | 06/08/12 |
| | | 6/12/12 |

# City of Miami

## Previous Business Usage

**Address No. From: 1450**          **Address No. To: 1450**          **Street Quad: SW**

**Street Name: 7**          **Street Type: ST**          **Suite:**

| Business Name | Business Status | Certificate Number | Issued Date | Business Status Date | CU Usage | CU Property Class | CU Units | Application Status |
|---|---|---|---|---|---|---|---|---|
| 1450 SW 7 ST | | | | | | | | |
| D/B/A TOWER HOTEL | Closed | 0000-000878 | | 1900-01-01 | CU02 -Lodging | 428-> 20 UNITS W/O BUS | 50 Unit | Inactive |
| TOWER HOTEL LLC DBA TOWER | Active | 121166 | 2012-05-30 | 2012-06-11 | CU02 -Lodging | 443-20-99 UNITS YR-RND | 50 Unit | Paid |

PLAINTIFF'S EXHIBIT

**456**

5/25/2022 10:03:15 AM



# City of Miami

## Permit Issuance

Financial Transaction ID: **132816**
LM Reference Number: BD14-004470-001-B001
Job Address: 1450 SW 7 ST

### FEE SUMMARY

| Fee Category | Fee Description | Quantity | Unit Type | Amount |
|---|---|---|---|---|
| BASE FEE | ADMINISTRATIVE | | | $4.00 |
| BASE FEE | APPLICATION | | | $40.00 |
| SOLID WASTE | SOLID WASTE COMMERCIAL (COST < 1 MIL) | 20,000.00 | DOLLARS | $500.00 |
| DADE COUNTY | CODE COMPLIANCE | 20,000.00 | DOLLARS | $12.00 |
| STATE OF FLORIDA | BUILDING CODE ADM & INSP | 200.00 | DOLLARS | $3.00 |
| STATE OF FLORIDA | DCA / FLORIDA BUILDING COMMISSION | 200.00 | DOLLARS | $3.00 |
| REVIEW PW | PW PLAN REVIEWS: OTHER THAN BUILDINGS | | | $13.00 |
| BUILDING PERMIT | COMMERCIAL PROJECTS UP TO 30 MILLION | 20,000.00 | DOLLARS | $200.00 |
| PERMIT MISC | DOUBLE FEE | 200.00 | DOLLARS | $200.00 |
| PERMIT MISC | FINE | | | $110.00 |
| PERMIT MISC | ENR - BCI INFLATION RATE | 200.00 | DOLLARS | $7.96 |
| CREDIT | Upfront Fees | | | ($100.00) |

**Total:** **$992.96**

PLAINTIFF'S
EXHIBIT
**457**

Rev. Mar/09/2011

Generated on Jun/10/2014 10:40 AM

---

City of Miami
Building Department
Permit Application

Process #: BD14004470-00
Total Due: 992.96
Permit #: BD14-004470-001
B001

PLAINTIFF'S
EXHIBIT
**457**




# City of Miami



## Permit Issuance



THIS IS A TRUE AND CERTIFIED
COPY OF THE RECORDS ON FILE IN
THE CITY OF MIAMI

Certified by _Vustin_

Vivian Fusier
Building Dept. Office of Microfilm

Financial Transaction ID: **73786**
LM Reference Number: BD13-020903-001-B001
Job Address: 1450 SW 7 ST

### FEE SUMMARY

| Fee Category | Fee Description | Quantity | Unit Type | Amount |
|---|---|---|---|---|
| BASE FEE | ADMINISTRATIVE | | | $4.00 |
| BASE FEE | APPLICATION | | | $40.00 |
| DADE COUNTY | CODE COMPLIANCE | 75,000.00 | DOLLARS | $45.00 |
| BUILDING PERMIT | COMMERCIAL PROJECTS UP TO 30 MILLION | 75,000.00 | DOLLARS | $750.00 |
| PERMIT MISC | ENR - BCI INFLATION RATE | 750.00 | DOLLARS | $7.64 |
| CREDIT | Upfront Fees | | | ($210.00) |
| | | | **Total:** | **$636.64** |



Rev. Mar/09/2011

Generated on Aug/06/2013 9:35 AM

---

City of Miami
## BUILDING DEPARTMENT
## PERMIT APPLICATION

DEPARTMENT USE ONLY
Process #: BD13-020903-001
Total Due $636.64
Permit #: BD13-020903-001-B001

**JOB LOCATION**
Folio Number: 01-4120-006-6270
Job Address: 1450 SW 7 St. Zip: 33135
Legal Address:
Unit No:
☒ Commercial ☐ Residential ☐ Dry Run
☐ Owner/Builder ☒ Contractor ☐ Lessee

**OWNER LESSEE INFORMATION**
Owner: Trump Hotel LLC.
Owner's Address: 1450 SW 7 St. Ste 200
Phone: 305-467-1617 E-Mail:
Lessee:
Lessee Address:
Phone: E-Mail:

**CONTRACTOR INFORMATION**
Contractor's License/Registration No: CGC-1518735
Contractor's Social Security Number:
Qualifier's Name: Mario A. Pou
Company's Name: Pou's Estimating Services
Address: 50 NW 22 Avenue
City: Miami State: Fl Zip: 3125
Phone: 305-962-4726
E-Mail: mario Pou @ Pou's estimating.com
If this is related to another permit, you must provide:

**GENERAL INFORMATION**
Proposed Use of Building: Hotel
Current Use: Hotel
Job Description: Remove & Replace Windows
New Construction Total Cost:
New Construction Sq. Ft: Lineal Ft:
Remodeling Total Cost: $75,000.00
Remodeling Sq. Ft: 6,750 Lineal Ft:
Units: Floors: Height: Gallons:
MASTER PERMIT NUMBER:

**THRESHOLD INSPECTOR**
Name:
Address:
Phone:

**BONDING COMPANY**
Name:
Address:
Phone:

**PERMIT TYPE**
☒ Building ☐ Plumbing ☐ LPM
☐ Mechanical/AC ☐ Plumbing/Gas ☐ Foundation
☐ Electrical ☐ Roofing
☐ Landscaping ☐ Sign
☐ Electrical ☐ Roofing
☐ Fire ☐ Mechanical Elevator

**ENGINEER/ARCHITECT INFORMATION**
Engineer's Name: Michael Brito
Address: 14146 SW 60 St.
Phone: 786-287-3912 E-Mail:
Architect's Name:
Address:
Phone: E-Mail:

**CHANGE TO EXISTING PERMIT**
☐ Change of Contractor (CR) ☐ Change of Qualifier (CQ)
☐ Re-certification of Plans (RC) ☐ Plans revision (RV)
☐ Completion Permit (CP)

**BUILDING PERMIT ONLY**
☐ New Construction ☐ Addition
● General Repair/Remodeling ☐ Misc. Building
☐ Change of Occupancy ☐ Demolition
☐ Change of Use

I understand that separate permits must be obtained for other items (i.e. electrical, plumbing, roofing, etc.) unless specifically covered by this permit. In signing this application, I am responsible for the supervision and completion of the construction in accordance with the plans and specifications and for compliance with all federal, state, and county laws applicable.

**Owner's Affidavit:** I certify that all the forgoing information is correct. Owner Certifies that the aforementioned Contractor has the authorization to perform the work as specified above.

**Lessee's Affidavit:** Lessee certifies that he has full consent and authorization from owner of subject property to perform the above-mentioned work and to hire above captioned contractor.

I have read the information contained in this permit and understand that any misrepresentation may constitute fraud and could void the permit.

Signature of Owner/Lessee
Print Name: William Filler mmr.
State of Florida, County of Miami-Dade
Sworn to and subscribed before me this
Day of 16 April 2013
By W. Fuller
(SEAL)
Personally known ☐ or Produced Identification ☐
Type of Identification produced

Signature of Qualifier
Print Name: Mario Pou
State of Florida, County of Miami-Dade
Sworn to and subscribed before me this 12
Day of April 2013
By
(SEAL)
Personally known ☐ or Produced Identification ☐
Type of Identification produced

**FOR BUILDING DEPARTMENT USE ONLY**
Job Code: | Certificates Required: ☐ CO ☐ CC | Plans ☐ Yes ☐ No | No. of Sheets:
Tracking Required | BISICC
EK 7/11/13 | RC B/6/13
Application Received By | Date | Permit Authorized By | Date
☐ BZ25414 Rev. 05/05 | Distribution: Original - Department Section File, Canary - Department File

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 135/5 | Fire Pump | | | | | | | |
| 135/7 | Fire Sprinklers | | 135/1 | Jockey Pump | | | | |
| 135/1 | Fire Sprinkler Sys | | | | | | | |
| 135/8 | Flow Test | | | | | | | |
| D | BZ/IS 415 Rev. 08/03 | | | | | | | |

# City of Miami



## Permit Issuance



Financial Transaction ID: **9595**
LM Reference Number: BD12-003194-001-E001
Job Address: 1450 SW 7 ST

## FEE SUMMARY

| Fee Category | Fee Description | Quantity | Unit Type | Amount |
|---|---|---|---|---|
| BASE FEE | ADMINISTRATIVE | | | $4.00 |
| BASE FEE | APPLICATION | | | $40.00 |
| STATE OF FLORIDA | BUILDING CODE ADM & INSP | 100.00 | DOLLARS | $2.00 |
| STATE OF FLORIDA | DCA / FLORIDA BUILDING COMMISSION | 100.00 | DOLLARS | $2.00 |
| BUILDING PERMIT | COMMERCIAL PROJECTS UP TO 30 MILLION | 2,500.00 | DOLLARS | $100.00 |
| PERMIT MISC | DOUBLE FEE | 100.00 | DOLLARS | $100.00 |
| PERMIT MISC | FINE | | | $110.00 |
| | | | **Total:** | **$358.00** |



Rev. Mar/09/2011

Generated on Jul/06/2012 10:30 AM



REAL PROPERTY RECORD

CITY OF MIAMI, FLORIDA

CITY ASSESSOR

Towers Hotel

ADDRESS 1450 SW 7 St
SECTION 1 TOWNSHIP 54 RANGE 41

DESCRIPTION

LAWRENCE ESTATE LAND CO'S SUB 2-46
LOT 7 BLK 104
3-45-2527

01-4102-006-6270

SCALE 40' = 1"
SCALE 40' = 1-INCH

DIAGRAM OF STRUCTURES

| | BUILDING |
|---|---|
| | STORES |
| | OFFICES |
| | APARTMENTS |
| | GARAGES |
| | STORIES |
| | FLOORS |
| | HT. IN FEET |
| | YEAR BUILT |
| | REMODELED |
| | ORIGINAL COST |
| | ADDED COST |
| | ESTIMATED LIFE |
| | RATE NEW |
| | % CONDITION |

131.8
168.9
113.3
100.8
27.4
H-34

FOLIO 3-45-2527

TAX MAP

NO. OF CARDS 1 of 1

KIND OF STRUCTURE

USE

CONSTRUCTION

COND. CLASS 30

ROOF MATERIAL NO. TYPE

| | | | BUILDING | | | | | BUILDING | | | | | BUILDING |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | PLAIN | | | | | WOOD | | | | | NATIVE ROCK |
| | | | DECORATED | | | | | STONE | | | | | CONCRETE |
| | | | | FINISH | | | | METAL | | | | | CON. BLOCK |
| | | | SOFT WOOD | | | | | TERRA-COTTA | | | | | WOOD POSTS |
| | | | HARD WOOD | TRIM | | | | PLAIN | | | | | PIERS |
| | | | METAL | | | | | ORNAMENTAL | | | | | PILES |
| | | | | | | | | PAINT | | | | | CONDITION |
| | | | FINISHED | | | | | CONDITION | | | | | |
| | | | UNFINISHED | ATTIC | | | | WOOD | WINDOWS | | | | WOOD |
| | | | NO. OF ROOMS | | | | | METAL | | | | | METAL |
| | | | CEDAR CLOSET | | | | | | | | | | CONCRETE |
| | | | NONE | | | | | WOOD | | | | | CON. BLOCK |
| | | | OLD STYLE | | | | | METAL | DOORS | | | | BRICK SOLID |
| | | | MODERN | PLUMBING | | | | FIRE | | | | | STONE |
| | | | GRADE | | | | | MIRROR | | | | | TILE |
| | | | CONDITION | | | | | WOOD | | | | | NATIVE ROCK |
| | | | SINKS | | | | | BRICK | | | | | STUCCO |
| | | | LAVATORIES | | | | | CONCRETE | | | | | BRICK VENEER |
| | | | TOILETS | | | | | OPEN | PORCHES | | | | KIND OF BRICK |
| | | | TUBS | | | | | SEMI-ENCLOSED | | | | | COMPO. SIDING |
| | | | SHOWER | | | | | SCREENED | | | | | WOOD SIDING |
| | | | TUB & SHOWER | | | | | CONDITION | | | | | BOARD & BATTEN |
| | | | URINALS | | | | | PART | | | | | SHEATHING |
| | | | CONDITION | | | | | FULL | BASEMENT | | | | CONDITION |
| | | | ELEC. STOVE | | | | | FINISHED | | | | | FLAT |
| | | | ELEC. HOT WATER HEATER | | | | | UNFINISHED | | | | | HIP |
| | | | NONE | | | | | WOOD JOIST | | | | | GABLE |
| | | | FIREPLACE | | | | | STEEL JOIST | FLOOR TYPE | | | | IRREGULAR |
| | | | STEAM | HEATING | | | | CONCRETE | | | | | TRUSS |
| | | | ELECTRIC | | | | | SUB FLOOR | | | | | SHINGLE WOOD |
| | | | GAS | | | | | SOFT WOOD | FLOOR MATERIAL | | | | SHINGLE CLAY |
| | | | OIL LAMPS | LIGHTING | | | | HARD WOOD | | | | | SHIN. CEMENT |
| | | | | | | | | TILE-MARBLE | | | | | SHIN. ASPHALT |
| | | | | | | | | CEMENT | | | | | SHINGLE METAL |
| | | | | | | | | COMPOSITION | | | | | SHINGLE SLATE |
| | | | | | | | | | | | | | SH. RIGID ASPH |
| | | | | | | | | UNFINISHED | | | | | BUILT-UP |
| | | | | | | | | PLASTERED | WALLS | | | | GRAVEL |
| | | | | | | | | FURRED | | | | | METAL |
| | | | | | | | | WOOD CEILED | | | | | ROLLED SLATE |
| | | | | | | | | WALLBOARD | | | | | CANVAS DECK |
| | | | | | | | | | | | | | CONDITION |

FOUNDATION
EXTERIOR TRIM
EXTERIOR FEATURES
INTERIOR FEATURES
PLUMBING FIXTURES
HEATING
WIRED
EXTERIOR WALLS AND FINISH
PORCHES
BASEMENT
FLOOR TYPE
FLOOR MATERIAL
INTERIOR FEATURES
WALLS
ROOF TYPE
ROOF MATERIAL

BUILDING COMPUTATIONS

| NO. | Size | SQ. FT. | HT. | Cubic FT. | RATE | Cost | % CON. | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| A | 4 x 43.5 | 174.00 | | | | | | |
| B | 42 x 127.5 | 5367.00 | | 9.19 | 50.098 | | 60 | |
| | | 5541.00 | 34. | 47.48 | | | 70 | 3.5770 |
| | | | | 3.00 | 120 | | | 365.37 |

REMARKS: PART INFO. FROM CARD
AUTO FIRE ALARM SYSTEM 2 LES

| | INTERIOR PLUMBING FIXTURES | | | |
|---|---|---|---|---|
| | SINKS | | | |
| | LAVATORIES | | | |
| | TOILETS | | | |
| | TUBS | | | |
| | SHOWER | | | |
| | TUB & SHOWER | | | |
| | BATH | | | |
| | ROOMS | | | |
| | DINING ROOM | | | |
| | KITCHEN | | | |

| | EQUIPMENT |
|---|---|
| | ELEVATORS |
| | SPRINKLER SYSTEM |
| | SOLAR HEATER |
| | LAUNDRY TRAYS |
| | AIR CONDITIONING |
| | INSULATED ROOF |
| | INSULATED WALLS |
| | GUTTER AND DOWNSPOUT |
| | NO. OF ELECTRIC OUTLETS |
| | NO. OF ELECTRIC FIXTURES |
| | TYPE OF WIRING |
| | NO. OF WIRING |
| | WROUGHT IRON |
| | BUILT-IN CABINETS |

TOTALS

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI.

BY: V.F.O    Date: 1/23/18
Building & Zoning Dept. - Office: MICROFILM

| LAND FEATURES | | LAND COMPUTATIONS | | | | | | YEAR | LAND VALUE | BUILDING VALUE | TOTAL VALUE | CHANGE | TAXABLE VALUE | REASON FOR CHANGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WATER | ✓ | REGULAR | CORNER | IRREGULAR | TRIANGLE | MERGER | | 1938 | | | | | | |
| GAS | | FRONT | DEPTH | D. F. | A. I. F. | % C. I. | F. E. L. | UNIT | AMOUNT | | | | | |
| ELECTRIC | ✓ | 50. | 132.8 | 1.1524 | | | | | | 1939 | | | | | |
| TELEPHONE | ✓ | | | | | | | | | 1940 | | | | | |
| PAVED STREET | ✓ | | | | | | | | | 1941 | | | | | |
| IMPROVED ST. | | | | | | | | | | 1942 | | | | | |
| UNIMPROVED ST. | | | | | | | | | 1943 | | | | | |
| PAVED ALLEY | | | | | | | | | 1944 | | | | | |
| CURBING | ✓ | | | | | * | | | 1945 | | | | | |
| SIDEWALK | ✓ | | | | | | | | 1946 | | | | | |
| WHITE WAY | | | | | | | | | 1947 | | | | | |
| STREET LIGHTING | ✓ | | | | | | | | 1948 | | | | | |
| SEAWALL | | | | | | | | | 1949 | | | | | |
| SAN. SEWER | ✓ | | | | | | | | 1950 | | | | | |
| STORM SEWER | ✓ | | | | | | | | 1951 | | | | | |
| TOPOGRAPHY | G | | | | | | | | 1952 | | | | | |
| LANDSCAPING | G | | | | | | | | 1953 | | | | | |
| WELL | | | | | | | | | 1954 | | | | | |
| LAWN SPRINKLER | | | | | | | | | 1955 | | | | | |
| | | | | | | | | | 1956 | | | | | |
| | | | | | | | | | 1957 | | | | | |
| ZONED FOR | | | | | | | | | 1958 | | | | | |
| R-1 | | SUMMARY | 1940 | | | | | | 1959 | | | | | |
| R-2 | | | AMOUNT | AMOUNT | AMOUNT | AMOUNT | AMOUNT | AMOUNT | 1960 | | | | | |
| R-3 | | GROSS LAND VALUE | | | | | | | 1961 | | | | | |
| B-1 | | ENHANCING % | | | | | | | 1962 | | | | | |
| B-2 | | DETRACTING % | | | | | | | 1963 | | | | | |
| B-3 | | NET LAND VALUE | | | | | | | 1964 | | | | | |
| I-1 | | BUILDINGS | | | | | | | 1965 | | | | | |
| I-2 | | ITEM  AMOUNT | | | | | | | 1966 | | | | | |
| | | A | | | | | | | 1967 | | | | | |
| MISCELLANEOUS | | B | | | | | | | 1968 | | | | | |
| SCHOOLS | G | C | | | | | | | 1969 | | | | | |
| CHURCHES | G | | | | | | | | 1970 | | | | | |
| SHOPS | G | GROSS BLDG. VALUE | | | | | | | 1971 | | | | | |
| TRANSPORTATION | G | ENHANCING % | | | | | | | 1972 | | | | | |
| DIST. TREND | S | DETRACTING % | | | | | | | 1973 | | | | | |
| | | NET BLDG. VALUE | | | | | | | 1974 | | | | | |
| | | TOTAL VALUE . . . | | | | | | | 1975 | | | | | |

| MARKET—INCOME—MISCELLANEOUS DATA | | | | BUILDING PERMITS | | | | REMARKS: |
|---|---|---|---|---|---|---|---|---|
| YEAR | | | | NO. | DATE | KIND | AMOUNT | |
| FAIR ANNUAL GROSS | | | | B 5086 | 7-28- | Res. Grg. | 3500 | |
| FAIR ANNUAL NET | | | | 8774 | 1/9/45 | P. Alt. | 7.= | |
| RATE | | | | 80=2 | 4-25-51 | . 17. | 600= | |
| CAPITALIZED VALUE | | | | | | | | |
| SALE, LEGITIMATE | | | | | | | | |
| SALE OTHERWISE | | | | | | | | |
| DETRACTING INFL. | OWNER'S ESTIMATE | | | | | | | |
| | FAIR MARKET VALUE | | | | | | | |
| | MORTGAGE | | | | | | | |
| | FIRE INSURANCE | | | | | | | |

# PERMIT NUMBER

92-13244

920007905

# ADDRESS

1450 S.W. 7th St.

50

| City of Miami **BUILDING AND ZONING PERMIT APPLICATION** | DEPARTMENT USE ONLY |
|---|---|
| | Plan Numbers: 92000790 |

Folio No: 0102 0006 0270
Application Status: ☒ Actual Application ☐ Dry Run
Total Due: 2150

Job Address: 1450 S.W. 7th St Miami Fl.
Suite No:
Permit No: 92001324

Legal Description: Lot: # 7
Block: 104

Subdivision: Lawrance Estate Land Co's

Lessee Name:

Owner's Name: H. Schectman

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN

Certified By: _____
Vivian Fisher
Building Dept. Office of Microfilm

Owner's Address: 1450 S.W 7th St.
Owner's Telephone: 305-858-0144

Contractor's Name: Accurate Fire Sprinkler Inst. Inc.
Contractor's No: 70816100040

Contractor's Address: 208 N. U.S.I. Tequesta Fl. S.8

Qualifier's Name: Frank T Smith

Architect: _____ Address: _____

Engineer: Bob Marshall
Address: 18270 Jupiter Landings Fl.

Threshold Inspector: _____

Bonding Company: _____ Address: _____

Permit Type: ☐ Building ☐ Electrical ☐ Landscape ☒ Mechanical/AC ☐ Mechanical/Boiler
☐ Mechanical/Elevator ☐ Mechanical/Gas ☒ Plumbing ☐ Sign

For Building Permits check appropriate type: ☐ New Construction ☐ Addition ☐ Demolition ☐ Remodeling ☐ Repair
☐ Conversion ☐ Roofing ☐ Foundation ☐ Fumigation

Proposed Use: Comm
Gallons: _____
Estimated Cost: 16,000
Height:

Feet: _____ Type: _____ Units: _____ Floors: _____
Purpose: Plumbing Work / Fire Sprinkler

Check all applicable boxes: ☐ Change of Contractor (RV) ☐ Recertification of Plans (RC) ☐ Plans Revision (RV)
☐ Completion Permit ☐ Change of Qualifier (RV)

If you checked any of the above items, you must provide the following:
Building Permit No: _____ Plans No: _____ OK

I understand that separate permits must be obtained for other items, unless specifically covered by this permit. In signing this application, I am responsible for the supervision and completion of the construction in accordance with the plans and specifications and for compliance with all federal, state, and county laws applicable.

I certify that: ☐ there are no trees to be removed or relocated on this site as a result of the construction for which this application is submitted.
or ☐ that a tree removal permit application has been approved.

I have read the information contained in this permit and understand that any falsification constitutes fraud and could void the permit.

Frank T Smith
Signature of Qualifier or Owner Builder

Frank T. Smith
Print Name

Proof of Ownership: _____ Date Accepted: _____ Clerk Accepted: _____

Signed and Sealed before me this 3rd day of August 1992
_____ Notary Public

My Commission Expires: _____

**FOR PLANNING, BUILDING AND ZONING DEPARTMENT USE ONLY**

Legal Address: 1450 SW 7 St.
Dupl: 0000

Current Use: _____ Job Name: _____

Census Code: _____
Certificates Required: ☐ C.O. ☐ C.U. ☐ C.C.
Plans: ☒ Yes ☐ No
No. of Sheets: _____

As built survey with elevation and setbacks is required after completion of lowest floor slab before any further inspection. ☐ Yes ☐ No
Lowest Habitable Finished Floor Elevation (including basement)

| | SFH | CHH | OTHERS |
|---|---|---|---|
| Shall be at least ___ inches above crown of street. | Group Occupancy: | DISTRICTS | | |
| Building Height: | Quadruple Fee: ☐ Yes ☒ No | REQUIRED | | |
| | | PROPOSED | | |

Application Received By _____ Date 8/4/92
Permit Authorized By _____ Date 4/4/92

D | BZ/IS 414/Rev. 10/91 | Distribution: Original - Department Section File; Canary - Applicant's Copy; Pink - Department File.

**City of Miami**
**ITEMIZED LIST FOR PERMITS**

Permit No:
Folio No:

INSTRUCTIONS: This list is required for processing Electrical, Mechanical, and Plumbing permits. Please attach to your permit application.

Job Address: 1450 S.W. 7th St Miami Fl.   Suite:

| PLUMBING | Rough | Set |
|---|---|---|
| **Fixtures** | | |
| Bathtub | | |
| Bidet | | |
| Dishwasher | | |
| Disposal | | |
| Drinking Fountain | | |
| Laundry Tray | | |
| Laundry Washer | | |
| Lavatory | | |
| Shower | | |
| Sink Pot 3 - Comp | | |
| Sink | | |
| Sink - Residence | | |
| Urinal | | |
| Water Closet | | |
| **Facilities** | | |
| Air Cond. Safe Waste | | |
| Cap Fixture | | |
| Discharge Well | | |
| Elc. Water Htr. (below 200,000 BTU) | | |
| Floor Drain | | |
| Grease Trap (Interceptor) | | |
| Hose Bib | | |
| Indirect Waste | | |
| Lawn Sprinkler System | | |
| Liftstation Sump Pump | | |
| Pool Piping | | |
| Roof Drain | | |
| Solar Water Heater | | |
| Storm Sewer LF | | |
| Water Service | | |
| **Sewers** | Number | |
| Pump/Abandon Septic Tank | | |
| Repairs & Misc. | | |
| Search Fee | | |
| Septic Tank   G/S | | |
| Sewer Cap | | |
| Sewer Connection/Sanitary | | |
| Sewer Conn. Septic Tank | | |
| Temporary Water Closet | | |
| **Paving** | | |
| Area Drain Inlet | | |
| Area Drain or Catch Basin | | |
| French Drain SF | | |
| French Drain Inlet | | |
| Manhole | | |
| Paved Area  SF | | |
| **Fire Protection** | | |
| Fire Pump | | |
| Fire Sprinkler | 170 | |
| Flow Test | | |
| Hose Rack/Fire Dept. Outlet | | |
| Hydrant (Miami Island Only) | | |

| PLUMBING (con't) | NUMBER |
|---|---|
| Jockey Pump | |
| Roof Manifold | |
| Siemese | |
| Standpipe | |
| Water Supply | |

| ELECTRICAL | No. | Units |
|---|---|---|
| Outlets, Rough Wiring | | |
| Ranges, Ovens, Range Tops | | |
| Water Heaters | | |
| Refrigerators | | |
| Dryers | | |
| Clothes Washers | | |
| Dishwashers | | |
| Disposals | | |
| Space Heaters | | |
| Air Conditioners | | |
| Fans | | |
| Motors | | |
| Service | cs 3.4 | |
| Sub Feeds | | |
| Fixtures &/or Bulbs | | |
| Parking Lot Lt. Fixture Heads | | |
| Sign | | |
| Time Clocks | | |
| Alarm Systems | | |

| MECHANICAL | No. | Specs | Value |
|---|---|---|---|
| Smoke Removal | | | |
| Air Conditioning | | | |
| Commercial Hood Vents | | | |
| Refrigeration | | | |
| Boiler | | | |
| Shop Insp. (Boiler) | | | |
| Elevator/Escalator | | | |
| Transp. Assembly | | | |
| Elv. (1st Yr. Insp.) | | | |
| Certificate Fee | | | |
| Amusement Rides | | | |
| Casing/Jack Fee | | | |
| Add. Meter/Tank | | | |
| L.P. Fuel Tank | | | |
| Generator Test | | | |
| Duct Work | | | |
| Process/Press Piping | | | |
| Mechanical Ventilation | | | |
| Cooling Towers | | | |
| Fire Supp. Systems | | | |
| Steam Equipment | | | |
| Turbines | | | |

| MECHANICAL (con't) | No. | Specs | Value |
|---|---|---|---|
| Heating | | | |
| Reinspection | | | |
| Elevator Hoistway | | | |
| Medical Gas | | | |
| Range | | | |
| Internal Comb. Engine | | | |
| Unfired Press Vessels | | | |
| Dryer | | | |
| Central Heater | | | |
| Water Heater | | | |
| Boiler | | | |
| Space Heater | | | |
| Fryalator | | | |
| Range Top | | | |
| Oven | | | |
| Bunsen Burner | | | |
| Individual Meter | | | |
| Master Meter | | | |
| Change of Company | | | |
| Reinspection | | | |
| Service | | | |
| Tank for Retail | | | |

| MISCELLANEOUS | No. | Sq.Ft. |
|---|---|---|
| **Signs** | | |
| Sign Single Faced | | |
| Sign Double Faced | | |
| Painted Wall | | |
| Sign Repair   Sign | | |
| Promotional Special Event Sign | | |
| Temp. Banners, Flag, Balloons | | |
| Gen. Adv. New Const. | | |
| Gen. Adv. Repairs   Sign | | |
| Gen. Adv. Embellishment | | |
| Electrical ☐ Yes ☐ No | | |

| Landscaping | No. | Items |
|---|---|---|
| Ground Cover S.F. | | |
| Trees  ea. | | |
| Hedges L/F | | |
| Roof | | |
| Slab | | |
| Pools | | |
| Curtain Wall | | |
| Insulation | | |

D   BZ/IS 415 Rev. 02/92   Distribution: Original - Department Section File; Canary - Applicant's Copy; Pink - Department File.

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

THIS IS A TRUE AND CERTIFIED
COPY OF THE RECORDS ON FILE IN
CITY OF MIAMI

HYDRAULIC DESIGN INFORMATION SHEET

NAME                TOWER HOTEL
                    1450 S.W. 7th STREET
                    MIAMI, FLORIDA

CONTRACTOR          ACCURATE FIRE SPRINKLER INSTALLATIONS, INC
                    208 N U.S. 1, TEQUESTA, FLORIDA 33469

ENGINEER            ROBERT W. MARSHALL, P.E.
                    18270 JUPITER LANDINGS DRIVE
                    JUPITER, FLORIDA 33458
                    (407)747-6841

LOCATION            THIRD FLOOR

                    -DESIGN DATA-

OCCUPANCY CLASSIFICATION                         LIGHT HAZARD

DENSITY REQUIRED                                 .10 GPM/SQ FT

DENSITY ACTUAL                                   .20 GPM/SQ FT

DESIGN AREA                                      420 SQ.FT.

COVERAGE PER SPRINKLER                            84 SQ.FT.

NUMBER OF HEADS CALCULATED                        5 HEADS

TOTAL SPRINKLER WATER FLOW REQUIRED               84.71 GPM

TOTAL WATER FLOW REQUIRED (INCLUDING HOSES)      184.71 GPM

FLOW & PRESSURE (AT BASE OF RISER)                84.71 GPM @ 49.1 PSI

SYSTEM TYPE                                      WET



LIGHT HAZARD. SYSTEM

Scale: B

TOWER HOTEL

THIRD FLOOR

SPRINKLER SYSTEM HYDRAULIC ANALYSIS

THIS IS ... ...
COPY OF THE ... ...
THE CITY OF MIAMI

Certified by: Vivian Fuster
Building Dept. Office of Microfilm

THIRD FLOOR

WATER SUPPLY DATA

| SOURCE | STATIC PRESS. (PSI) | RESID. PRESS. @ (PSI) | FLOW (GPM) | AVAIL. PRESS. @ (PSI) | TOTAL DEMAND (GPM) | REQ'D PRESS. (PSI) |
|---|---|---|---|---|---|---|
| SOURCE | 64.0 | 62.0 | 1500 | 64.0 | 184.71 | 52.21 |

AGGREGATE FLOW ANALYSIS:

| | |
|---|---|
| TOTAL FLOW AT SOURCE | 184.7 GPM |
| TOTAL HOSE STREAM ALLOWANCE AT SOURCE | 100.0 GPM |
| TOTAL DISCHARGE FROM ACTIVE SPRINKLERS | 84.7 GPM |

HYDRAULIC ANALYSIS WITH REQUIRED FLOW AT REMOTE HEAD

THE FOLLOWING SPRINKLERS ARE OPERATING

| LOCATION | SPRINKLER K | ELEVATION | FLOW | PRESSURE |
|---|---|---|---|---|
| 1 | 5.60 | 30.0 | 15.03 | 7.20 |
| 2 | 5.60 | 30.0 | 15.26 | 7.43 |
| 3 | 5.60 | 30.0 | 16.10 | 8.26 |
| 4 | 5.60 | 30.0 | 17.79 | 10.09 |
| 5 | 5.60 | 30.0 | 20.53 | 13.43 |

THE TOTAL SPRINKLER FLOW DELIVERED = 84.71 GPM

THE OUTSIDE HOSESTREAM FLOW OF 100 GPM OPERATES AT 52.21 PSI

-SUMMARY OF HYDRAULIC CALCULATIONS-

IS A TRUE AND CERTIFIED
PY OF THE RECORDS ON FILE IN
HE CITY OF MIAMI

Certified by: _Vivian Fuster_
Vivian Fuster

| NODES FROM-TO | FLOW (GPM) | PIPE (FT) | EQV. (FT) | H-W -C- | DIA (IN) | ELEV (PSI) | START (PSI) | END (PSI) | DIFF (PSI) |
|---|---|---|---|---|---|---|---|---|---|
| 1   2 | 15.03 | 14.0 | 0.0 | 150 | 1.44 | 0.0 | 7.20 | 7.43 | 0.23 |
| 2   3 | 30.29 | 14.0 | 0.0 | 150 | 1.44 | 0.0 | 7.43 | 8.26 | 0.83 |
| 3   4 | 46.39 | 14.0 | 0.0 | 150 | 1.44 | 0.0 | 8.26 | 10.09 | 1.83 |
| 4   5 | 64.18 | 14.0 | 0.0 | 150 | 1.44 | 0.0 | 10.09 | 13.43 | 3.34 |
| 5-RIS | 84.71 | 47.0 | 9.0 | 150 | 1.44 | 0.0 | 13.43 | 35.78 | 22.35 |
| RISER | 84.71 | 30.0 | 7.0 | 120 | 3.26 | 12.99 | 35.78 | 49.05 | 13.27 |
| | | FIXED PRESSURE DEVICE | | | | | 49.05 | 52.05 | 3.00 |
| SOURCE | 184.71 | 67.0 | 36.0 | 140 | 4.26 | 0.0 | 52.05 | 52.21 | 0.16 |







City of Miami
Building Department
Permit Application



Process #: BD14004470 OU
Total Due: $9972.96
Permit #: BD14-004 70.001
B001

| Job Location | Owner/Lessee Information |
|---|---|
| Folio Number: 01-4102-006.-6270 | Owner: Tower Hotel LLC |
| Job Address: 1470 Sw 7 ST   Zip: 33135 | Owner's Address: 1637 Sw 8st Miami FL 33135 |
| Legal Address: | Phone:          E-Mail: |
| Unit No: | Lessee: |
| ☐ Commercial    ☐ Residential    ☐ Dry Run | Lessee Address: |
| ☐ Owner    ☐ Contractor    ☐ Lessee | Phone:          E-Mail: |

| Contractor Information | General Information |
|---|---|
| Contractor's License Registration No: CGC1519904 | Proposed Use of Building: Hotel |
| Contractor's Social Security Number: | Current Use: |
| Qualifier's Name: David Bradley | Job Description: Replaces Windows  Window |
| Company's Name: Speed Corp | New Construction Total Cost:          Reinforcement |
| Address: 800 VR 125  St | New Construction Sq. Ft:     Lineal Ft:  Structual |
| City: Miami  State: FL  Zip: 33161 | Remodeling Total Cost: $20,000  Concrete |
| Phone: 305-472-103 | Remodeling Sq. Ft:    Lineal Ft:   Repair |
| E-Mail: David @Depeeccorp.com | Units:  Floors:  Height:  Gallons: |
| If this is related to another permit, you must provide : | Master Permit Number:     Plan No: |

| Threshold Inspector | Bonding Company |
|---|---|
| Name: | Name: |
| Address: | Address: |
| Phone: | Phone: |

| Permit Type | Engineer/Architect Information |
|---|---|
| ☒ Building    ☐ Plumbing | Engineer's Name: |
| ☐ Mechanical/AC    ☐ Plumbing/Gas | Address: |
| ☐ Electrical    ☐ Roofing | Phone:          E-Mail: |
| ☐ Landscaping    ☐ Sign | Architect's Name: |
| ☐ Electrical    ☐ Roofing | Address: |
| ☐ Fire    ☐ Mechanical Elevator | Phone:          E-Mail: |

| Change to Existing Permit | Building Permit only |
|---|---|
| ☐ Change of Contractor (CR)    ☐ Change of Qualifier (CQ) | ☐ New Construction    ☐ Addition |
| ☐ Re-certification of Plans (RC)   ☐ Plans revision (RV) | ☒ General Repair/Remodeling    ☐ Misc. Building |
| ☐ Completion Permit (CP) | ☐ Change of Occupancy    ☐ Demolition |
|  | ☐ Change of Use |

UNOFFICIAL COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by:
Vivian Fuster
Building Dept. Office of Microfilm

I understand that separate permits must be obtained for other items (i.e. electrical, plumbing, roofing, etc ), unless specifically covered by this permit. In signing this application, I am responsible for the supervision and completion of the construction in accordance with the plans and specifications and for compliance with all federal, state, and county laws applicable

Owner's Affidavit: I certify that all the forgoing information is correct Owner Certifies that the aforementioned Contractor has the authorization to perform the work as specified above.

Lessee's Affidavit: Lessee certifies that he has full consent and authorization from owner of subject property to perform the above-mentioned work and to hire above captioned contractor

I have read the information contained in this permit and understand that any misrepresentation may constitutes fraud and could void the permit.

Signature of Owner/Lessee

William O Keller
Print Name

State of Florida, County of Miami-Dade
Sworn to and subscribed before me this 21
Day of March, 2017
By
(SEAL)
Personally known or Produced Identification
Type of Identification produced

Signature of Qualifier

David Bradley
Print Name

State of Florida, County of Miami-Dade
Sworn to and subscribed before me this
Sworn to and subscribed before me this
VINCENZO BRUNO
MY COMMISSION # EE 017169
EXPIRES May 15, 2017
Personally known or Produced Identification
Type of Identification produced

ORESTE IMBROGNI
Notary Public - State of Florida
My Comm. Expires May 17, 2017
Commission # EE 174613

| For Building Department Use Only | | | |
|---|---|---|---|
| Job Code: | Certificates Required:  ☐ C.O.  ☐ C.C. | Muust  ☐ Yes  ☐ No | No. Of Sheets: |
| Tracking required | | | |

Application Received by: a   Date: 4-28-14   Permit Authorized by: FL   Date 6/10/14

Paid on 6-11-14

Rev 2/02

# TOWER HOTEL
## 1450 SW 7th ST
### MIAMI, FLORIDA, 33130

— AREA OF WORK



1450 SW 7th St, Miami, FL 33130, USA


## LOCATION PLAN
N.T.S.

## INDEX

### COVER SHEET
C-1  SITE PLAN

### STRUCTURAL
S-1  NOTES
S-2  ELEVATIONS
S-3  ELEVATIONS
S-4  REPAIR DETAILS
S-5  STANDARD DETAILS

## SCOPE OF WORK
### ALTERATION LEVEL II

1. CONCRETE REPAIR EXTERIOR WINDOW OPENINGS.
2. NEW FILLED CELLS AND LINTEL AT NEW DOOR OPENINGS.
3. CONCRETE SPALLING & CRACKS.


Reviewed for CODE COMPLIANCE
City of Miami

## NOTE
IF MAYOR STRUCTURAL REPAIRS ARE REQUIRED (CONCRETE BEAMS, COLUMNS, SLABS THAT REQUIRE STRUCTURAL STEEL REPLACEMENT, THE ENGINEER OR ARCHITECT OF RECORD WILL SUBMIT SHOP DRAWINGS SHOWING EXACT LOCATION OF THE REPAIRS, DETAILS AND SPECIFICATIONS TO BE USED FOR APPROVAL PREVIOUS REPAIRS ARE DONE. THIS PERMIT IS ONLY FOR MINOR REPAIRS.



Edward A. Linders, P.E.
CONSULTING ENGINEERS

CONCRETE REPAIR DETAILS

PERMIT SET

1413380

TOWER HOTEL
1450 SW 7th ST
MIAMI, FLORIDA, 33130

C-1

# G E N E R A L:

1. THE DRAWINGS ARE INTENDED TO SHOW THE GENERAL ARRANGEMENT, DESIGN AND EXTENT OF THE WORK AND ARE PARTIALLY DIAGRAMMATIC. THEY ARE NOT INTENDED TO BE SCALED FOR ROUGH-IN MEASUREMENTS, OR TO SERVE AS SHOP DRAWINGS OR PORTIONS THEREOF.

2. ALL DETAILS AND SECTIONS SHOWN ON THE DRAWINGS ARE INTENDED TO BE TYPICAL AND SHALL BE CONSTRUED TO APPLY TO ANY SIMILAR SITUATION ELSEWHERE ON THE PROJECT, EXCEPT WHERE A DIFFERENT DETAIL OR SECTION IS SHOWN.

3. PRIOR TO START OF CONSTRUCTION, THE CONTRACTOR AND ALL THE SUBCONTRACTORS SHALL VERIFY ALL GRADES, LINES, LEVELS, DIMENSIONS AND COORDINATE EXISTING CONDITIONS AT THE JOB SITE WITH THE PLANS AND SPECIFICATIONS. THEY SHALL REPORT ANY INCONSISTENCIES OR ERRORS TO THE ENGINEER, THE AND SHOP DRAWINGS. THE CONTRACTOR AND HIS SUBCONTRACTORS SHALL LAY OUT THEIR WORK FROM ESTABLISHED REFERENCE POINTS AND BE RESPONSIBLE FOR ALL LINES, ELEVATIONS AND MEASUREMENTS IN CONNECTION WITH THEIR WORK.

4. IF ANY ERRORS OR OMISSIONS APPEAR IN THE DRAWINGS, GENERAL NOTES OR OTHER DOCUMENTS, THE CONTRACTOR SHALL NOTIFY THE ENGINEER IN WRITING OF SUCH OMISSION OR ERROR PRIOR TO PROCEEDING WITH ANY WORK WHICH WILL BE AFFECTED. IN THE EVENT OF THE CONTRACTOR'S FAILURE TO GIVE SUCH AN ADVANCED NOTICE, HE SHALL BE HELD RESPONSIBLE FOR THE RESULTS OF ANY SUCH ERRORS OR OMISSIONS AND THE COST OF RECTIFYING THE SAME.

5. THE CONTRACTOR SHALL USE THE STRUCTURAL DRAWINGS AND SPECIFICATIONS TOGETHER WITH THE ARCHITECTURAL, MECHANICAL, ELECTRICAL AND OTHER WORK DRAWINGS AND SHOP DRAWINGS, TO LOCATE DEPRESSED SLABS, SLOPES, DRAINS, OUTLETS, OPENINGS, BOLT SETTING, SLEEVES, DIMENSIONS, ETC. NOTIFY ARCHITECT/ENGINEER, IN WRITING, OF ANY POTENTIAL CONFLICTS BEFORE PROCEEDING WITH THE WORK.

## SHOP DRAWINGS & DELEGATED ENGING:

1. ALL SHOP DRAWINGS SHALL BE SUBMITTED FOR ENGINEER'S REVIEW ONLY AFTER THEY HAVE BEEN THOROUGHLY REVIEWED BY THE CONTRACTOR FOR CONSTRUCTION METHODS, DIMENSIONS AND OTHER TRADE REQUIREMENTS. AND STAMPED WITH THE CONTRACTOR'S APPROVAL STAMP. THE ENGINEER ASSUMES NO RESPONSIBILITY FOR DIMENSIONAL QUANTITIES, ENGINEERING DESIGN BY DELEGATED ENGINEERS, ERRORS OR OMISSIONS AS A RESULT OF REVIEWING ANY SHOP DRAWINGS. ANY ERRORS OR OMISSIONS MUST BE MADE GOOD BY THE CONTRACTOR, IRRESPECTIVE OF ACCEPT, CUSTOMS OR REVIEW OF DRAWINGS BY THE ENGINEER AND EVEN THOUGH WORK IS DONE IN ACCORDANCE WITH SUCH DRAWINGS.

2. BEFORE STRUCTURAL INSPECTIONS CAN BE MADE ON A PORTION OF THE STRUCTURE, ALL RELATED SHOP DRAWINGS, DELEGATED ENGINEERING, PRODUCT APPROVAL, MANUFACTURER'S DATA AND OTHER RELATED INFORMATION, MUST BE REVIEWED AND ACCEPTED BY THE ENGINEER-OF-RECORD AND APPROVED BY THE BUILDING DEPARTMENT.

3. ALL SHOP DRAWINGS SHALL CONTAIN THE MINIMUM INFORMATION OUTLINED IN THE FLORIDA BUILDING CODE.

4. ALL DELEGATED ENGINEER'S SHOP DRAWINGS SHALL COMPLY WITH ALL THE REQUIREMENTS OF THE FLORIDA BUILDING CODE. SHOP DRAWINGS SHALL CONTAIN ALL INFORMATION SHOWN ON THE STRUCTURAL PLANS (RELATED TO THE DELEGATED DESIGN) INCLUDING ALL DESIGN LOADS, IN ADDITION TO THE INFORMATION REQUIRED BY THE DELEGATED ENGINEER'S DESIGN.

5. THE ENGINEER OF RECORD SHALL REVIEW ALL SHOP DRAWINGS, PREPARED AND SIGNED AND SEALED BY THE CONTRACTOR'S DELEGATED ENGINEER, ONLY FOR GENERAL COMPLIANCE WITH THE DESIGN INTENT AND REQUIRED LOADINGS AND COORDINATION WITH THE STRUCTURE DESIGNED BY THE ENGINEER OF RECORD.

6. CONTRACTOR SHALL SUBMIT TO THE ENGINEER OF RECORD, ONLY ONE SET OF SEPIA AND ONE SET OF BLUE PRINTS OF THE STRUCTURAL SHOP DRAWINGS FOR ENGINEER'S REVIEW. BEFORE STARTING FABRICATION. THE ENGINEER WILL RETAIN THE MARKED-UP AND STAMPED SEPIA TO THE ARCHITECT. THESE SEPIA COPIES SHALL BE USED TO MAKE PRINTS AS REQUIRED FOR THE SHOP DRAWING DISTRIBUTION. SETS OF BLUE PRINTS (WITHOUT SEPIA) WILL NOT BE ACCEPTED.

## CONSTRUCTION MEANS AND METHODS:

1. THE CONTRACTOR IS RESPONSIBLE AND SHALL COMPLY WITH THE SAFETY REQUIREMENTS OF THE FLORIDA BUILDING CODE AND ALL LOCAL, STATE AND FEDERAL LAWS.

2. PROVIDE ALL SHORING, BRACING AND SHEETING AS REQUIRED FOR SAFETY, STRUCTURAL STABILITY AND FOR THE PROPER EXECUTION OF THE WORK. REMOVE WHEN WORK IS COMPLETED.

3. PROVIDE AND MAINTAIN GUARD LIGHTS AT ALL BARRICADES, RAILINGS, OBSTRUCTIONS IN THE STREETS, ROADS OR SIDEWALKS AND ALL TRENCHES OR PITS ADJACENT TO PUBLIC WALKS OR ROADS.

4. AT ALL TIMES, PROVIDE PROTECTION AGAINST WEATHER (RAIN, WIND, STORMS OR THE SUN), SO AS TO MAINTAIN ALL WORK, MATERIALS, APPARATUS AND FIXTURES FREE FROM INJURY OR DAMAGE.

5. AT THE END OF THE DAYS WORK, COVER ALL WORK LIKELY TO BE DAMAGED ANY WORK DAMAGED BY FAILURE TO PROVIDE PROTECTION SHALL BE REMOVED AND REPLACED WITH NEW WORK AT THE CONTRACTOR'S EXPENSE.

6. THE CONTRACTOR SHALL PAY FOR ALL DAMAGES TO ADJACENT PROPERTY

## STRUCTURAL DESIGN CRITERIA

WIND DESIGN: ASCE 7-10
U = 175 MPH
I = 1.0
GCPI = 0.918
EXPOSURE "C"
BUILDING CATEGORY II
GRADE STEEL (50 KSI)
BOLTS: (A325)
CONCRETE : (3000 PSI)
REBAR : GRADE 60

## GENERAL STRUCTURAL NOTES
(Florida Building Code— 2010 Edition)

## STRUCTURAL OBSERVATIONS:

1. THE ENGINEER-OF-RECORD SUBMIT A STATEMENT, AT THE COMPLETION OF THE CONSTRUCTION WORK, REGARDING THE COMPLIANCE OF THE WORK WITH THE APPROVED PERMIT PLANS (F.B.C.

2. IN THE EVENT THAT THE ENGINEER-OF-RECORD WERE NOT RETAINED TO PERFORM STRUCTURAL OBSERVATIONS, THE OWNER AND THE CONTRACTOR MUST NOTIFY THE BUILDING DEPARTMENT AND OBTAIN AN APPROVAL OF THE ENGINEER ENGAGED TO PERFORM THE INSPECTIONS, BEFORE START OF ANY STRUCTURAL WORK.

3. IT IS UNDERSTOOD THAT THE ENGINEER WILL NOT BE HELD RESPONSIBLE AND LIABLE FOR ANY OF THE CONTRACTOR'S WORK WHO HAS NOT PROPERLY FOLLOWED OR CONSTRUCTED (OR OMITTED) WORK AS REPRESENTED OR FOR ANY WORK, APPROVED BY THE INSPECTING ENGINEER (OTHER THAN THE ENGINEER-OF-RECORD) WHICH MODIFIES OR CHANGES THE STRUCTURAL PERMIT RECORD DOCUMENTS.

## STRUCTURAL DESIGN CRITERIA:

1. THE DESIGN COMPLIES WITH THE REQUIREMENTS OF THE FLORIDA BUILDING CODE – (2010 EDITION) AND OTHER REFERENCED CODES AND SPECIFICATIONS. ALL CODES AND SPECIFICATIONS SHALL BE LATEST EDITION AT TIME OF PERMIT.

2. WIND LOAD CRITERIA: GCPI = ±0.18

   BASED ON ANSI/ASCE 7-10 BASIC WIND VELOCITY 175 MPH.
   OCCUPANCY CATEGORY II (AT HURRICANE OCEANLINE), EXPOSURE "D"

3. ROOF DESIGN LOADS: (SUPERIMPOSED)
   DEAD LOADS . . . . . . . . . . 25 PSF
   LIVE LOADS . . . . . . . . . . 30 PSF

4. FLOOR DESIGN LOADS: (SUPERIMPOSED)
   DEAD LOADS . . . . . . . . . 25 PSF
   LIVE LOADS . . . . . . . . . 40 PSF

## CONCRETE AND REINFORCING:

1. CONCRETE DESIGN AND REINFORCEMENT IN ACCORDANCE WITH "BUILDING CODE REQUIREMENTS FOR REINFORCED CONCRETE" AND WITH "DETAILS AND DETAILING OF CONCRETE REINFORCEMENT"

2. ALL CONCRETE TO BE REGULAR WEIGHT WITH A DESIGN STRENGTH OF 5,000 P.S.I. AT 28 DAYS. MAXIMUM SLUMP 4".

3. ALL REINFORCING TO BE NEW BILLET STEEL CONFORMING TO THE LATEST A.S.T.M. A-615 GRADE 60, FABRICATED IN ACCORDANCE WITH C.R.S.I. MANUAL OF STANDARD PRACTICE AND PLACED IN ACCORDANCE WITH LAP SPLICE PER ACI 318-08 CHAPTER 12.

4. CONCRETE COVER UNLESS OTHERWISE DETAILED ON DRAWINGS:

   GRADE BEAMS: (BOTTOM) . . . . . . . . . . . . . . . 3"
                 (TOP & SIDES) . . . . . . . . . . . 2"

   EXTERIOR SLABS ON GRADE: (BOTTOM) . . . . . . . . 1-1/2"
                              (TOP) . . . . . . . . . 3/4"

   COLUMNS AND BEAMS (TO THE TIES) . . . . . . . . . 1-1/2"

5. COLUMN REINFORCEMENT: DOWELS TO BE SAME SIZE AND NUMBER AS VERTICAL REBARS ABOVE. PROVIDE DOWELS TO BE FULL DEVEL LOCATION. PROVIDE STANDARD HOOKS AT TOP OF ALL VERTICAL REINFORCEMENT AT BENDED/DOWELS FOR H.ACL 318-08 SEC.12.5. USE STANDARD TIE AT CENTER OF THE COLUMN LAP SPLICES FOR BEAMS AND COLUMNS PER ACI 318-08 CHAPTER 12

6. ALL DOWELS FOR COLUMNS SHALL BE SECURED IN POSITION PRIOR TO CONCRETING. PUSHING THE DOWELS INTO POSITION IN WET CONCRETE IS NOT PERMITTED.

7. BEAM REINFORCEMENT: TIRE BEAM DIAPHRAGM (FL BEAMS), BOTTOM BARS SPLICED ONLY AT SUPPORTS, TOP BARS SPLICED ONLY AT MID-SPAN. ALL TOP BARS HOOKED AT DISCONTINUOUS EDGES (U.O.N.). ALL HOOKS TO BE STANDARD 90 DEGREE HOOKS AS REQUIRED (U.O.N.). SEE ATTACHED TABLE FOR SPLICE LENGTH.

8. ADDED REINFORCEMENT: PROVIDE ADDITIONAL CORNER BARS BENT 38 INCHES MINIMUM EACH WAY AT "L" AND "T" CORNERS IN OUTER FACES OF ALL BEAMS (TO MATCH ALL HORIZONTAL BAR (TOP, BOTTOM AND INTERMEDIATE REBARS))

9. SEE PLAN FOR MINIMUM SIZE CONCRETE TIE BEAM REQUIREMENTS

10. THE BEAM & GRADE BEAM SHALL HAVE CORNER BARS W/ 30 BENDS

## SOIL STATEMENT

THE NATURE AND CHARACTER OF THE SOIL CONDITION BENEATH THE STRUCTURAL FOOTING HAS BEEN OBSERVED TO HAVE UNDISTURBED SAND AND ROCK PRESUMED TO HAVE AN ALLOWABLE BEARING CAPACITY OF 2,000 PSF AT THE TIME OF CONSTRUCTION. A FLORIDA REGISTERED ENGINEER SHALL CONFIRM IN WRITING AND SEALED WRITTEN REPORT VERIFYING ACTUAL SOIL BEARING VALUES STATING THAT THE SOIL BEARING ARE AS ASSUMED.

## TERMITE PROTECTION COMPLIANCE

GENERAL CONTRACTOR TO PROVIDE A CERTIFICATE OF OR PLANNED/OF LICENSED PEST CONTROL COMPANY THAT CONTAINS THE FOLLOWING STATEMENT AS PER FBC 2010 SECTION 1816.1.7

"THE BUILDING HAS RECEIVED A COMPLETE TREATMENT FOR THE PREVENTION OF SUBTERRANEAN TERMITE. TREATMENT IS IN ACCORDANCE WITH RULES AND LAWS ESTABLISHED BY THE FLORIDA DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES"

## REINFORCED MASONRY WALLS:

1. HOLLOW LOAD-BEARING MASONRY UNITS SHALL CONFORM TO ASTM C-90, TYPE I, GRADE N, SQUARE END, WITH A MINIMUM AVERAGE COMPRESSIVE STRENGTH ON NET AREA OF f'c=1,500 (PSI)

2. SPECIAL INSPECTOR SERVICES ARE REQUIRED FOR ALL REINFORCED MASONRY CONSTRUCTION. THE SPECIAL INSPECTOR SHALL INSPECT THE PLACING OF THE REBARS IN THE CELLS, VERIFY CLEANLINESS OF THE CELLS TO BE GROUTED, AND OBSERVE THE PLACING OF THE GROUT OF CONCRETE INTO THE CELLS.

3. MORTAR SHALL CONFORM TO ASTM C-270, TYPE "M" OR "S"

4. LAY ALL MASONRY WITH FULL FACE HEAD JOINTS AND WITH FACE SHELL MORTAR BEDDING.

5. MASONRY ANCHORAGE TO SUPERSTRUCTURE SHALL BE PROVIDED IN ACCORDANCE WITH STRUCTURAL DRAWINGS AND DETAILS

6. THE USE OF ADMIXTURES SHALL NOT BE PERMITTED WITHOUT PRIOR REVIEW OF THE ENGINEER.

7. VERTICAL REINFORCING
   (A) ASTM A-615 PER REINFORCING SECTION

   (B) WHEN A FOUNDATION DOWEL DOES NOT LINE UP WITH A VERTICAL CORE IT SHALL NOT BE SLOPED MORE THAN ONE HORIZONTAL INCH TO SIX INCHES VERTICAL. FOR ALIGNMENT EVEN THOUGH IT IS IN A CELL ADJACENT TO THE VERTICAL REBAR POSITION

   (C) VERTICAL REINFORCING STEEL SHALL BE PLACED CENTERED IN THE CELL LAP 48 BAR-DIAMETERS. PROVIDE BAR SPACERS AS REQUIRED TO MAINTAIN REINFORCING SECURED IN POSITION

   (D) VERTICAL REINFORCEMENT SHALL BE PROVIDED AT EACH SIDE OF OPENINGS IN WALL, AT WALL INTERSECTIONS, CORNERS AND ENDS. THIS REINFORCING CONTINUOUS FROM THE SAME SIZE AS THE SCHEDULED WALL REINFORCING FOR PARTICULAR WALL BUT NEVER LESS THAN A #5 REBAR. SPECIAL CARE SHALL BE TAKEN TO ENSURE THAT CELLS TO BE GROUTED LAP UP PROPERLY AND ARE CLEAN OF EXCESS MORTAR.

   (E) #5-2 REINFORCING SHALL BE #4 VERTICAL IN CONCRETE FILLED CELLS WHERE INDICATED ON PLANS. REINFORCE MASONRY LAPS ARE TO BE CALCULATED PER ACI SECT. 318.1.9 & CG 3-9

   (F) ALL VERTICAL REINFORCING SHALL BE HOOKED INTO THE BOND BEAMS AT THE NON-CONTINUOUS END OF THE BEAMS.

8. HORIZONTAL REINFORCING

   PROVIDE GALVANIZED #5 GAGE, LADDER TYPE HORIZONTAL JOINT REINFORCING EVERY SECOND BLOCK COURSE (1'-4" O.C.) VERTICALLY LAPPED 7+1/2". PROVIDE SPECIAL HORIZONTAL REINFORCING AT "T" AND "L" INTERSECTION. ANCHOR 16 COLUMNS WITH MINIMUM 4" EXTENSION INTO AREA OF POUR.

9. PROVIDE "DOVE-TAIL" ANCHORS AT 16" O.C. VERTICALLY FOR ALL MASONRY PLACED ADJACENT TO ALREADY IN PLACE COLUMNS

10. CELL FILLING CONCRETE SHALL BE "PEA-GRAVEL" CONCRETE MIX OF 3/8" SLUMP OR GROUT WITH f'c=3,000 PSI MIN. AT 28 DAYS.

11. LINTELS

    A. THE CONTRACTOR SHALL PROVIDE PRECAST CONCRETE OR CAST-IN-SITE LINTELS AT THE HEADS OF ALL OPENINGS IN MASONRY WALLS NOT EX- CEEDING SIX (6) FEET IN WIDTH WHERE BEAMS HAVE NOT BEEN SPECIFIED. FOR OPENINGS ADJACENT TO CONCRETE COLUMNS. DOWEL THE LINTEL INTO THE COLUMN WITH #4 REBARS

    B. LINTEL MAY BE INTEGRAL WITH THE STRUCTURAL OR TIE BEAM WHEN HEAD OF THE OPENING IS IN HEAD OR LESS BELOW. CONTINUE BEAM'S TYPICAL BOTTOM REBARS THROUGH AND ADD #5 BOTTOM TRUSS BARS AT EACH END. PUT 3 STIRRUPS AT 6 INCHES O.C. EACH END AT EACH SIDE OF OPENING.

    C. MINIMUM BEARING FOR ALL LINTELS 8 INCHES EACH SIDE OR PROVIDE DOWELS AND POCKETS IN ADJACENT CONCRETE COLUMNS.

    D. LINTEL TO BE MINIMUM OF 8 INCHES DEEP WITH 2-#4 TOP AND BOTTOM FOR CLEAR SPANS LESS THAN 8 FEET, 12 INCHES DEEP WITH 2-#5 TOP AND BOTTOM AND 2-#5 STIRRUPS AT 6 INCHES O.C. EACH WAY FOR SPANS GREATER THAN 8 FEET (UP TO 8 FEET). CELL ENGINEER FOR SPANS LARGER THAN 8 FEET (WILL NO SPECIFIED BEAMS OR LINTELS OVER.

| BAR SIZE | SPLICE LENGTH PER ACI 318-08 | |
|---|---|---|
| | BOTTOM BARS | TOP BARS |
| #10 | 70" | 91" |
| #8 | 62'2" | 80.8" |
| #6 | 55.1" | 71.8" |
| #4 | 48.2" | 62.6" |

(CLASS B SPLICES)

## APPLICABLE CODES

1. FLORIDA BUILDING CODE 2010 EDITION
2. A.C.I. 318-08 FOR REINFORCED CONCRETE
3. A.C.I. 315-08 DETAILS AND DETAILING OF CONCRETE REINFORCEMENT
   MANUAL OF STANDARD PRACTICE FOR DETAILING REINFORCED CONCRETE STRUCTURES
4. A.C.I. 530-08 AND A.C.I. 530-1-08 FOR REINFORCED MASONRY
5. A.I.S.C. STEEL CONSTRUCTION A.S.D. FOR STRUCTURES STEEL NINTH EDITION
6. A.W.S. D1.1 AND D1.4
7. A.S.C.E. 7-10 FOR WIND ANALYSIS AND DESIGN
8. A.S.T.M STANDARDS AND SPECIFICATIONS AMERICAN SOCIETY FOR TESTING AND MATERIALS
9. AMERICAN FOREST AND PAPER ASSOCIATION. NATIONAL DESIGN SPECIFICATION FOR WOOD CONSTRUCTION (N.D.S.)
10. APA. THE ENGINEERED WOOD ASSOCIATION (H.0.0.)
11. NATIONAL PEST CONTROL. ASSOCIATION STANDARDS



Edward A. LEANDERS, P.E.
CONSULTING ENGINEERS

THIS IS A CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by

Building Dept. ... of Microfilm

CONCRETE REPAIR DETAILS

PERMIT SET

1413380

TOWER HOTEL

1450 SW 7th ST
MIAMI, FLORIDA, 33130

S-1



SOUTH ELEVATION
SCALE: 1/4" = 1' - 0"

NORTH ELEVATION
SCALE: 1/4" = 1' - 0"

CONCRETE REPAIR DETAILS

PERMIT SET

1413380

TOWER HOTEL

1450 SW 7th ST
MIAMI, FLORIDA, 33130

S-2



## EAST ELEVATION
SCALE: 1/4" = 1' - 0"

## WEST ELEVATION
SCALE: 1/4" = 1' - 0"

DETAIL "A"

NOTE:

1. WINDOWS TO BE NEW AND INSTALLED INTO EXISTING OPENINGS.
2. NEW TIE COLUMNS AND TIE BEAM @ NEW DOOR OPENINGS (DETAIL "A")

CONCRETE REPAIR DETAILS

PERMIT SET

DWG NO.
1413380

TOWER HOTEL
1450 SW 7th ST
MIAMI, FLORIDA, 33130

S-3
SHEET NUMBER



CONCRETE REPAIR NOTES

1. Gunite (As Required) ................. 5000psi
2. Prepackaged Concrete Repair ........ 3000psi
3. Rebar ................................. Grade 60
4. Do not remove any re-bar with less than 10%
   Corrosion, sandblast and coat per attached
   Specifications.
5. Make all cuts square.
6. Trowel finish all repaired surfaces.
7. Add epoxy bonding agent to surfaces prior
   To concrete application.

SIDE                    BOTTOM

B  LINTEL REPAIR DETAILS
S-5  SCALE: 1-1/2" = 1' - 0"

C  TYP  COLUMN REPAIR DETAIL
S-5  SCALE: 1-1/2" = 1' - 0"

D  TYP  SILL REPAIR DETAIL
S-5  SCALE: 1-1/2" = 1' - 0"

F  HORIZONTAL  REPAIRS
S-5  SCALE: 1-1/2" = 1' - 0"

G  BEAM REPAIR
S-5  SCALE: 3/4" = 1' - 0"

E  CRACK REPAIR
S-5  SCALE: 1-1/2" = 1' - 0"

DETAIL A  WALL REINFORCEMENT
@ NEW DOOR OPENINGS
SCALE: 1-1/2" = 1' - 0"

Edward A.
LANDERS, P.E.
CONSULTING ENGINEERS

Tel ( 305)  623- 2938
Fax  (305)  623- 9355

Certified by:

CONCRETE REPAIR DETAILS

PERMIT
SET

1413380

TOWER HOTEL

1450 SW 7th ST
MIAMI, FLORIDA, 33130

S-4

## Exposing and Undercutting of Reinforcing Steel

These details are applicable to horizontal, vertical, and overhead locations. They are also applicable to removal by hydro-demolition, hydro-milling, and electric, pneumatic or hydraulic impact breakers.

1. Remove loose or delaminated concrete above corroded reinforcing steel.
2. Once initial concrete are made, proceed with the undercutting of all exposed corroded bars. Undercutting will provide clearance for under bar cleaning and full bond development between surrounding concrete, and will insure the repair material. Provide minimum ¾ inch (19 mm) clearance between exposed rebar and surrounding concrete or ¼ inch (6 mm) larger than largest aggregate in repair material, whichever is greater.
3. Concrete removal shall extend along the bars to locations along the bar free of bond inhibiting corrosion, and where the bar is well bonded to surrounding concrete.
4. If non-corroded reinforcing steel is exposed during the undercutting process, care shall be taken not to damage the bar's bond to surrounding concrete. If bond between bar and concrete is broken, undercutting of the bar shall be required.
5. Any reinforcement which is loose shall be secured in place by tying to other secured bars or by other approved methods.






## Cleaning and Repair of Reinforcing Steel

### Cleaning of Reinforcing Steel
1. All heavy corrosion and scale should be removed from the bar as necessary to promote maximum bond of replacement material. Oil free abrasive blast is the preferred method. A tightly bonded light rust build up on the surface is usually not detrimental to bond, unless a protective coating is being applied to the bar surface, in which case the coating manufacturer's recommendations for surface preparation should be followed.

### Repair of Reinforcing Steel Due to Loss of Section
If reinforcing steel has lost significant cross section, a structural engineer should be consulted. If repairs are required to the reinforcing steel, one of the following repair methods should be used:
- Complete bar replacement, or
- Additional supplemental bars over affected section.

New bars may be mechanically spliced to old bars or placed parallel to and approximately ½ in (13 mm) from existing bars. Lap lengths shall be determined in accordance with ACI 318, also refer to CRSI and AASHTO manual.




## Edge and Surface Conditioning of Concrete

These details are applicable to horizontal, vertical, and overhead locations. They are also applicable to removal by hydro-demolition, hydro-milling, and electric, pneumatic or hydraulic impact breakers.

*Do not use these details for shotcrete applications—for shotcrete repairs refer to ACI 506 Guide Preparation Guidelines.*

1. Remove delaminated concrete, unsound reinforcing steel (refer to "Exposing and Undercutting of Reinforcing Steel" on page 3), remove additional concrete as required to provide adequate required chloride area all exposed rebar.
2. At edge location, provide slight angle cut to the concrete surface with either of the following methods:
   - Sawcut ½" (13 mm) or less is required to avoid cutting into flexing steel.
   - Use power equip. or a mechanically demolition or impact breaker. Avoid feather edges.
3. Repair configuration can mold to any simple as possible, preferably with square inside corners.
4. After concrete are edge conditioning are complete, remove bond inhibiting materials (dirt, corrosion slurry, loosely bonded aggregate) by abrasive blasting or high pressure waterblasting with or without a washer. Clean the concrete surfaces after cleaning to insure that surface is free from additives. Loose aggregate, or that additional delaminations are not present.
5. If hydrodemolition is used, remove and pre-clean slurry since the must not blow the prepared surfaces before slurry hardens.




## Removal Geometry



### ACI CODE REQUIREMENTS
ACI 315 and ACI Manual of Standard Practice
ACI 318 Building Code Requirements for Reinforced Concrete
ACI 506 Edge Preparation Guidelines
ACI 504.2 Specification for Materials, Proportioning, and Application of Shotcrete
ACI 506.4R-94 Guide for the Evaluation Of Shotcrete
ACI 546R-96 Concrete Repair Guide
ACI 224.1-93 (98) Causes, Evaluation & Repair of Cracks in Concrete Structures
ACI 228.1R In-Place Methods for Determining of Concrete Strength









## Concrete Repair Recommendations

The following is our recommended repair procedure for all spalled concrete areas. The specific areas include concrete slabs, concrete columns, beams or any additional observed conditions. We recommend concrete repair for the structural elements and submit the following procedure described as follows:

1. Remove all loose and deteriorated concrete with a light-chipping hammer in all areas that exhibit concrete cracks and areas that are spalled
2. Randomly test areas with a hammer to determine any additional areas for removal. Do not remove any sound concrete from around rebar
3. Tie-up and secure any sagging re-bar and support as required. Do not remove any existing re-bar without prior authorization.
4. Replace deteriorated re-bar only as required by the Engineer.
5. Have Engineer review exposed re-bar to remove any loose scale, concrete and rust
6. All cleaned re-bar should be coated with a rust inhibitor as soon as possible after cleaning. The following are acceptable coatings:
   a. Sika Top 110 Armatek, by Sika Chemical Co.
   b. Zinc Rich Epoxy Primer, by delta Lube
   c. Corr-bond Euclid Chemical Co
   d. Sonnoborn "Sonoprep"
   e. Approved Equals.
7. The patching material should be a cement-based product designed specifically for a patching material. The following are recommended products that must be mixed, applied, etc., in accordance with the manufacturer's recommendations:
   (Coastal Construction Products, 305-757-2121)
   a. Thorite, by Thoro Products.
   b. Euco Verticoat, by Euclid Chemical,
   c. Sonnoborn "Getpatch"
   d. Sikacrete 211, by Sika Chemical.
   e. sika top 122 plus, by Sika chemical.
8. Apply patching to all prepared surfaces either by hand or sprayed finished sufficiently to match the adjacent concrete surfaces. Concrete may be used to repair the undersides of the main beams. All work to be performed by a qualified application contractor in accordance with approved procedures and recommendations





Edwin A.
LANDERS, P.E.

Tel. (305) 823-3938
Fax (305) 823-9339

THIS IS A TRUE
COPY OF ... 
THE CITY OF MIAMI

Certified by _____ Vivian _____
Building Dept. of Microfilm

CONCRETE REPAIR DETAILS

PERMIT
SET

1413380

Reviewed for CODE COMPLIANCE
City of Miami



TOWER HOTEL

1450 SW 7th ST
MIAMI, FLORIDA. 33130

S-5

City of Miami
# BUILDING AND ZONING PERMIT FORM

PIN: 1256

| Permit No: 10-5009786 | Permit Type: PLUMBING 01 | Folio No: 01-4102-006-6270/0000 | Date: 08/12/2010 | Plan No: 10-0008330 |
|---|---|---|---|---|

Owner/Lessee Name: LUGER REALTY INC

Contractor: HABER & SONS PLUMBING INC

| Qualifier's Name: HABER JOSE | Certification/Registration No: CFC059165 | Telephone: (305)970-9800 |
|---|---|---|

Owner/Lessee Address: 1450 SW 7 ST
MIAMI
FL

Legal Description: LAWRENCE ESTATE LAND COS SUB
PB 2-46
LOT 7            BLK 104
LOT SIZE        6650 SQUARE FEET

| Contractor's Address: 9171 SW 5 TERR MIAMI , FL, 331340000 | Phone No: 305-461-8653 |
|---|---|

| Engineer: | Architect: |
|---|---|

| Job Address: 1450 SW 7 ST | | Unit/Location: |
|---|---|---|
| Prop. Building Type: | Prop. Group Occupancy: | Prop. Building Ht: 0 | Primary Zone: SD-14.1 | Fire Zone: |

Job Description: MISC. PLUMBING WORK

Plan Type:

| APPROVED BY | DATE | CONDITIONS OF APPROVAL |
|---|---|---|

| Threshold Inspector: | Job Name: 0020 | Certificates Required: ☐ C.O. ☐ C.C. ☐ C.U. | Estimated Cost: $3,500 |
|---|---|---|---|

MASTER PERMIT NO.

| FEE DESCRIPTION | UNIT TYPE | UNITS | FEE |
|---|---|---|---|
| BACKFLOW 2" OR LESS/WATER | CONNECT | 1.0000 | 48.00 |
| ADDITIONAL FEE | UNIT | 15.0000 | 15.00 |
| ADMINISTRATIVE FEE | | 1.0000 | 3.00 |
| SOLID WASTE SURCHARGE | DOLLARS | 3,500.0000 | 54.00 |
| DADE CO. CODES COMPLIANCE FEES | DOLLARS | 3,500.0000 | 2.40 |
| | | TOTAL FEES | 122.40 |
| | | CHK NO.   5431 | 122.40 |
| | | CREDIT CARD | 0.00 |
| | | CASH | 0.00 |
| | | TOTAL PAID | 122.40 |
| | | TOTAL DUE | 0.00 |

General Conditions:
1. Permit expires if construction is not begun within 180 days, or as required with applicable Codes.
2. Contact each section (building, electrical, mechanical, plumbing, elevator and zoning) for required inspections.
3. Approved plans and notice of commencement must be on the job with permit posted before inspections will be performed.
4. Reinspection fees will be charged if work is not approved or not ready when called for, or if approved plans are not on job site at time of inspections.
5. Obtain Certificates from department when required, before occupying completed building.
PLEASE NOTE: Failure to comply with mechanics lien law can result in the property owner paying twice for building improvements.

| D | BZ/IS 413 Rev. 7/04 | Distribution: Original - Department Section File; Canary - Applicant's Copy. |
|---|---|---|

City of Miami
# BUILDING DEPARTMENT
## PERMIT APPLICATION

**DEPARTMENT USE ONLY**

| Process #: | 0000 8330 |
|---|---|
| Total Due | 122.40 |
| Permit #: | 1500 89786 |

## JOB LOCATION

Folio Number: 01-4109-006-6270

Job Address 1450 SW 7th ST    Zip: 33135

Legal Address:

Unit No:

☑ Commercial   ☒ Residential   ☐ Dry Run

☐ Owner/Builder   ☐ Contractor   ☐ Lessee

## OWNER LESSEE INFORMATION

Owner: LOUJEN REALTY, INC

Owner's Address: 1450 SW 7th ST MIAMI, FL

Phone (305) 970-9800 E-Mail:

Lessee:

Lessee Address:

Phone:    E-Mail:

## CONTRACTOR INFORMATION

Contractor's License/Registration No: CFC057165

Contractor's Social Security Number:

Qualifier's Name: JOSE HABER

Company's Name: HABER & SON'S PLUMBING, INC

Address: 41016 NW 37th AVE

City: MIAMI    State: FL    Zip: 33142

Phone: (305) 461-8653

E-Mail: haberandplumbing@bellsouth.net

If this is related to another permit, you must provide:

## GENERAL INFORMATION

Proposed Use of Building:

Current Use:

Job Description: INSTALLATION OF BACKFLOW PREVENTER

New Construction Total Cost $3500.00

New Construction Sq. Ft:    Lineal Ft:

Remodeling Total Cost:

Remodeling Sq. Ft:    Lineal Ft:

Units:    Floors:    Height:    Gallons:

MASTER PERMIT NUMBER:

## THRESHOLD INSPECTOR

Name:

Address:

Phone:

## BONDING COMPANY

Name:

Address:

Phone:

## PERMIT TYPE

| ☐ Building | ☐ LIMP |
|---|---|
| ☐ Mechanical/AC | ☒ Plumbing/Gas | ☐ Foundation |
| ☐ Electrical | ☐ Roofing |
| ☐ Landscaping | ☐ Sign |
| ☐ Electrical | ☐ Roofing |
| ☐ Fire | ☐ Mechanical Elevator |

☒ Plumbing

## ENGINEER/ARCHITECT INFORMATION

Engineer's Name:

Address:

Phone:    E-Mail:

Architect's Name:

Address:

Phone:    E-Mail:

## CHANGE TO EXISTING PERMIT

☐ Change of Contractor (CR)    ☐ Change of Qualifier (CQ)

☐ Re-certification of Plans (RC)    ☐ Plans revision (RV)

☐ Completion Permit (CP)

## BUILDING PERMIT ONLY

☐ New Construction    ☐ Addition

☐ General Repair/Remodeling    ☐ Misc. Building

☐ Change of Occupancy    ☐ Demolition

☐ Change of Use

I understand that separate permits must be obtained for other items (i.e. electrical, plumbing, roofing, etc.), unless specifically covered by this permit. In signing this application, I am responsible for the supervision and completion of the construction in accordance with the plans and specifications and for compliance with all federal, state, and county laws applicable.

**Owner's Affidavit:** I certify that all the forgoing information is correct. Owner Certifies that the aforementioned Contractor has the authorization to perform the work as specified above.

**Lessee's Affidavit:** Lessee certifies that he has full consent and authorization from owner of subject property to perform the above-mentioned work and to hire above captioned contractor.

I have read the information contained in this permit and understand that any misrepresentation may constitutes fraud and could void the permit.

Signature of Owner/Lessee

Print Name: David Schechtman

State of Florida, County of Miami-Dade

Sworn to and subscribed before me

Day of 12 7 2 ...    Notary Public State of Florida
Candad Hernandez
My Commission DD938993
Expires 11/08/2013

By

(SEAL)

Personally known or Produced Identification,

Type of Identification produced S235-177-59-343-0

Signature of Qualifier

Print Name: Joss Haber

State of Florida, County of Miami-Dade

Sworn to and subscribed before me

Day of 12 Nov    Notary Public State of Florida
Candad Hernandez
My Commission DD938993
Expires 11/08/2013

By

(SEAL)

Personally known or Produced Identification,

Type of Identification produced

## FOR BUILDING DEPARTMENT USE ONLY

| Zip Code: | Certificates Required: | Plans: | No. of Sheets: |
|---|---|---|---|
| | ☐ C.O. ☐ C.C. | ☐ Yes ☐ No | |
| Tracking Required | | | |

Application Received By    Date    Permit Authorized By    Date

D   BZ/IS414 Rev 05/05    **Distribution: Original** - Department Section File; **Canary** - Department File.



## City of Miami
## Building Department
# SUPPLEMENTAL ITEMIZED LIST



PROCESS # 100008330

Note: Code(s) are for internal use and only represent internal computer codes.

| Code | Description | Rough | Set | Code | Description | Rough | Set | Code | Description | Rough | Set |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | **PLUMBING** | | | | | | | | | | |
| | FIXTURES | | | 100/1 | Urinal | | | 125/5 | Repairs & Misc. | | |
| 100/1 | Bathtub | | | 100/1 | Toilet | | | 110/5 | Sewer Cap | | |
| 100/1 | Bidet | | | 150/1 | Discharge Well | | | 110- | Sewer Conn. | | |
| 100/1 | Cap Fixture | | | 105/1 | Interceptor | | | 160/1 | Temp Toilet | | |
| 100/1 | Dishwasher | | | 170/2 | Hose Bib | | | | | | |
| 100/1 | Disposal | | | 130/1 | Lawn Sprinkler Sys. | | | | DRAINAGE | | |
| 100/1 | Drinking W/Fountain | | | 150/1 | Wells | | | 115/1 | Roof Drain | | |
| 100/1 | Electric Water Heater | | | 155- | L.Station/Sump. Pump. | | | 115/3 | Area Drain/Catch B. | | |
| 100/1 | Floor Drain | | | 140/4 | Pool Piping | | | 115/5 | French Drain Ln/Ft | | |
| 100/1 | Indirect Waste | | | 125/3 | Solar Water Heater | | | 115/6 | French Drain Inlet | | |
| 100/1 | Lavatory | | | 124/1 | Water Service | | | 115/7 | Manhole | | |
| 100/1 | Shower | | | 125- | Sub Meters/Water Ext. | | | 115/8 | Storm Sewer Ln/FT | | |
| 100/1 | Sink | | | | | | | | | | |
| 100/1 | Laundry Tray/Wash | | | | | | | | | | |
| 125- | Backflow | | | | | | | | | | |
| | **PLUMBING GAS** | | | | | | | | | | |
| 125/7 | Add Meter Tank | | | 125/4 | Change of Company | | | 100/1 | Salamander | | |
| 125/1 | Boiler | | | 125/2 | Dryer | | | 100/1 | Space Heater | | |
| 125/2 | Bunsen Burner | | | 125/2 | Fryalator | | | 100/1 | Water Heater | | |
| 125/2 | Central Heater | | | 100/1 | Oven | | | 125/9 | LP Fuel Tank | | |
| | | | | 100/1 | Range | | | 125/1 | Medical Gas | | |
| | **ELECTRICAL** | | | | | | | | | | |
| 100/1 | Outlet, rough wiring | | | 105/3 | Sub-feeds | | | | SIGNS | | |
| 110/1 | Clothes Washers | | | 105/7 | Temp for Const. | | | 145/1 | Bulbs for Signs | | |
| 110/1 | Dish Washer | | | 105/9 | Temp for Testing | | | 145/2 | Transformers | | |
| 110/1 | Disposals | | | 120/1 | Motors | | | 145/2 | Ballast | | |
| 110/1 | Dryers | | | 125/1 | Machine-X-Ray | | | 145/3 | Flasher or Control | | |
| 100/3 | Empty Conduit | | | 130/2 | Generator | | | 145/4 | Time Clock | | |
| 110/1 | Fans | | | 150/1 | Light Fixt/Bulbs | | | 145/5 | Repair Conn/Disconn. | | |
| 110/1 | Ovens, Range Tops | | | 155/3 | Plug Mold Lighting | | | | LOW VOLTAGE | | |
| 110/1 | Refrigerators | | | 180/1 | Pool/Spa | | | 165/1 | Control Panels | | |
| 110/1 | Space Heaters | | | 110/1 | Water Heater | | | 166/3 | Data-Comm/TV/Phone | | |
| 105/1 | Service | | | 150/2 | P. Lot Fixt/Heads | | | | | | |
| | | | | | BURGLAR ALARM | | | | FIRE ALARM | | |
| | | | | 165/2 | Devices | | | 165/2 | Devices | | |
| | | | | 165/3 | Control Panel | | | 165/3 | Control Panel | | |
| | **MECHANICAL** | | | | | | | | | | |
| | MECH. AIR | | | | MECH. BOILER | | | | OTHERS | | |
| 100/1 | A/Conditioning-Tons | | | 120/2 | Boiler-BTU | | | 100/6 | Fire Suppression | | |
| 100/1 | Comm. Refrigeration | | | 100/8 | Ventilation | | | 130/1 | Fuel Tank | | |
| 103/1 | Chiller Tons | | | 120/7 | Furnace | | | 130/1 | Fuel Piping | | |
| 105/1 | Duct Work | | | 120/6 | Steam Equipment | | | 100/2 | A/C Wall Unit | | |
| 103/4 | Ventilation | | | 120/8 | Unfire Vessel | | | 120/1 | A/C Safe Waste | | |
| 100/4 | Pressure Piping | | | 130/1 | Process Piping | | | | | | |
| 110/1 | Heating-KW | | | 130/2 | Inter. Comb. Gen. | | | | | | |
| 103/3 | Cooling Tower | | | | | | | | | | |
| 103/5 | Commercial Hood | | | | | | | | | | |
| | **FIRE** | | | | | | | | | | |
| 135/5 | Fire Pump | | | 135/9 | Hydrant | | | | | | |
| 135/7 | Fire Sprinklers | | | 135/1 | Jockey Pump | | | | | | |
| 135/1 | Fire Sprinkler Sys | | | | | | | | | | |
| 135/8 | Flow Test | | | | | | | | | | |

D | BZ/IS 415 Rev. 08/03

# City of Miami



## Permit Issuance

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by: _Fuster_

Vivian Fuster
Building Dept. Office of Microfilm

**Financial Transaction ID: 9595**
LM Reference Number: BD12-003194-001-E001
Job Address: 1450 SW 7 ST

## FEE SUMMARY

| Fee Category | Fee Description | Quantity | Unit Type | Amount |
|---|---|---|---|---|
| BASE FEE | ADMINISTRATIVE | | | $4.00 |
| BASE FEE | APPLICATION | | | $40.00 |
| STATE OF FLORIDA | BUILDING CODE ADM & INSP | 100.00 | DOLLARS | $2.00 |
| STATE OF FLORIDA | DCA / FLORIDA BUILDING COMMISSION | 100.00 | DOLLARS | $2.00 |
| BUILDING PERMIT | COMMERCIAL PROJECTS UP TO 30 MILLION | 2,500.00 | DOLLARS | $100.00 |
| PERMIT MISC | DOUBLE FEE | 100.00 | DOLLARS | $100.00 |
| PERMIT MISC | FINE | | | $110.00 |

**Total: $358.00**

THIS IS A TRUE AND CERTIFIED
COPY OF THE RECORDS ON FILE IN
THE CITY OF MIAMI

Certified by: _____
Vivian Fuster
Building Dept. Office of Microfilm

**City of Miami**
**Building Department**
**Permit Application**



Process #: BD20031940
Total Due: 358.00
Permit #: BD12003129400/E001

| Job Location | | | Owner/Lessee Information | |
|---|---|---|---|---|
| Folio Number: 01-4102-006-6270 | | | Owner: Tower Hotel LLC | |
| Job Address: 1450 SW 7 St   Zip: 33135 | | | Owner's Address: 1634 SW 8 St. Miami, Fl | |
| Legal Address: | | | Phone:          E-Mail: | |
| Unit No: | | | Lessee: | |
| ☒ Commercial   ☐ Residential   ☐ Dry Run | | | Lessee Address: | |
| ☐ Owner   ☒ Contractor   ☐ Lessee | | | Phone:          E-Mail: | |

| Contractor Information | General Information |
|---|---|
| Contractor's License/Registration No: EC13003054 | Proposed Use of Building: Commercial |
| Contractor's Social Security Number: | Current Use: Commercial |
| Qualifier's Name: Atowaldo Texidor | Job Description: Electrical Fixtures & Dead. |
| Company's Name: Atexi Services Corp. | New Construction Total Cost: |
| Address: 13375 N.E 4 Ct. | New Construction Sq. Ft:          Lineal Ft: |
| City: N. Mia.   State: FL   Zip: 33161 | Remodeling Total Cost: 500.00   Lineal Ft: |
| Phone: 786 · 251 - 1604 | Remodeling Sq. Ft:          Lineal Ft: |
| E-Mail: | Units:   Floors:   Height:   Gallons: |
| If this is related to another permit, you must provide : | Master Permit Number:          Plan No: |

| Threshold Inspector | Bonding Company |
|---|---|
| Name: | Name: |
| Address: | Address: |
| Phone: | Phone: |

| Permit Type | | Engineer/Architect Information |
|---|---|---|
| ☐ Building | ☐ Plumbing | Engineer's Name: |
| ☐ Mechanical/AC | ☐ Plumbing/Gas | Address: |
| ☒ Electrical | ☐ Roofing | Phone:          E-Mail: |
| ☐ Landscaping | ☐ Sign | Architect's Name: |
| ☐ Electrical | ☐ Roofing | Address: |
| ☐ Fire | ☐ Mechanical Elevator | Phone:          E-Mail: |

| Change to Existing Permit | | Building Permit only |
|---|---|---|
| ☐ Change of Contractor (CR)   ☐ Change of Qualifier (CQ) | | ☐ New Construction      ☐ Addition |
| ☐ Re-certification of Plans (RC)   ☐ Plans revision (RV) | | ☐ General Repair/Remodeling   ☐ Misc. Building |
| ☐ Completion Permit (CP) | | ☐ Change of Occupancy    ☐ Demolition |
| | | ☐ Change of Use |

I understand that separate permits must be obtained for other items (i.e. electrical, plumbing, roofing, etc.), unless specifically covered by this permit. In signing this application, I am responsible for the supervision and completion of the construction in accordance with the plans and specifications and for compliance with all federal, state, and county laws applicable.

**Owner's Affidavit**: I certify that all the forgoing information is correct. Owner Certifies that the aforementioned Contractor has the authorization to perform the work as specified above.

**Lessee's Affidavit**: Lessee certifies that he has full consent and authorization from owner of subject property to perform the above-mentioned work and to hire above captioned contractor.

I have read the information contained in this permit and understand that any misrepresentation may constitutes fraud and could void the permit.

Signature of Owner/Lessee

Print Name

State of Florida, County of Miami-Dade
Sworn to and subscribed before me this
Day of _____, 20 __.
By _____
(SEAL)
Personally-known or Produced Identification,
Type of Identification produced

Signature of Qualifier

Print Name

State of Florida, County of Miami-Dade
Sworn to and subscribed before me this
Day of _____, 20 __.
By _____
(SEAL)
Personally known or Produced Identification,
Type of Identification produced

AMAT FERNANDEZ
Notary Public - State of Florida
My Comm. Expires Aug 25, 2015
Commission # EE 103605
Bonded Through National Notary Assn.

| FOR BUILDING DEPARTMENT USE ONLY | | | |
|---|---|---|---|
| Job Code: | Certificates Required:   ☐ C.O.  ☐ C.C. | Plans:   ☐ Yes  ☐ No | No. Of Sheets: |
| Tracking required | | | |

Application Received by: _____   Date: 7/1/1   Permit Authorized by: _____   Date 7/0/1

Rev 2/02



THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by: Vivian Fuster
Building Dept. Office of Microfilm



AMAT FERNANDEZ
Notary Public - State of Florida
My Comm. Expires Aug 25, 2015
Commission # EE 103609
Bonded Through National Notary Assn.

# City of Miami
## BUILDING AND ZONING PERMIT FORM

| Permit No. 93-5013593 | Permit Type: ELECTRICAL | Folio No: 01-4102-006-6270/0000 | | Date: 07/06/1993 | Plan No: 93-0013364 |
|---|---|---|---|---|---|
| Owner/Lessee Name: LOUJEN REALTY INC | | Contractor: F & F ELECTRIC INC | | | |
| Qualifier's Name: FLINGOS GERALD | | | Certification/Registration No: 000019043 | | Telephone: (000)000-0000 |
| Owner/Lessee Address: 1450 SW 7 ST MIAMI FLA | | | Legal Description: LAWRENCE ESTATE LAND COS SUB LOT 7 LOT SIZE | PB 2-46 BLK 104 6650 SQUARE FEET | |
| Contractor's Address: 1520 NW 31 AVE MIAMI , FL, 331250000 | | Phone No: 305-934-5999 | | | |
| Engineer: | | | Architect: | | Unit/Location: |

**A TRUE AND CERTIFIED**
**RECORDS ON FILE IN**

Certified by: Vivian Fuster
Building Dept. Office of Microfilm

| Job Address: 1450 SW 7 ST | | | | | |
|---|---|---|---|---|---|
| Prop. Building Type: | Prop. Group Occupancy: | Prop. Building Ht: | | Primary Zone: | Fire Zone: 3A |
| | | O | | B | |
| Job Description: SERVICE REPAIRS | | | | | Plan Type |

| APPROVED BY | 07/06/93 | CONDITIONS OF APPROVAL |
|---|---|---|

0103                                                                $300

| Threshold Inspector: | Job Name: | Certificates Required: ☐C.O. ☐C.C. ☐C.U. | Estimated Cost: |
|---|---|---|---|

**MASTER PERMIT NO.**

| SERVICE/SUB FEE DESCRIPTION PUNCHBOARD | UNITS . 0000 | FEE 9.00 |
|---|---|---|
| ADDITIONAL FEE | UNIT    31.0000 | 31.00 |
| DADE CO. CODES COMPLIANCE FEES | DOLLARS   300.0000 | 0.50 |
| | TOTAL FEES | 40.50 |
| | CHK NO. : 2026 | 40.50 |
| | CREDIT CARD | 0.00 |
| | CASH | 0.00 |
| | TOTAL PAID | 40.50 |
| | TOTAL DUE | 0.00 |

**General Conditions:**
1. Permit expires if construction is not begun within 180 days, or as is consistent with South Florida Building Code.
2. Call each division (structural, electrical, mechanical, plumbing, and zoning) for inspections.
3. Approved plans and notice commencement must be on job with permit posted before inspections will be made.
4. Reinspection fees will be charged if work is not approved or not ready when called for, or if approved plans are not on job site at time of inspections.
5. Obtain Certificate of Occupancy from department when required, before using completed building.
PLEASE NOTE: Failure to comply with mechanics lien law can result in the property owner paying twice for building improvements.

D BZ/IS 413 Rev. 11/92  Distribution: Original - Department Section File; Canary - Applicant's Copy.

City of Miami
**BUILDING AND ZONING PERMIT APPLICATION**

**DEPARTMENT USE ONLY**

Plan Numbers: 930013364

Total Due: $40.50

Permit No: 935013593

Folio No: 410200662270

Application Status: ☑ Actual Application ☐ Dry Run

Job Address: 1450 NW 7 STREET   Suite No:

Legal Description: Lot   Block:

Subdivision:

Lessee Name:

Owner's Name: DAVID SCGECHTMAN

Owner's Address: 1450 NW 7 ST   Owner's Telephone: 649-5300

Contractor's Name: F & P Electric   Contractor's No: 934-5999   19043

Contractor's Address: 1520 NW 31 AVE

Qualifier's Name: GERALD W FLINFOS   Social Security No:

Architect:   Address:

Engineer:   Address:

Threshold Inspector:

Bonding Company:   Address:

Permit Type: ☐ Building ☑ Electrical ☐ Landscape ☐ Mechanical/AC ☐ Mechanical/Boiler
☐ Mechanical/Elevator ☐ Mechanical/Gas ☐ Plumbing ☐ Sign

For Building Permits check appropriate type: ☐ New Construction ☐ Addition ☐ Demolition ☐ Remodeling ☐ Repair
☐ Conversion ☐ Roofing ☐ Foundation ☐ Fumigation

Proposed Use: Temporary for Trailer   PO (# thru Gallons): Store Check   Estimated Cost: 300.—   Height:

Feet:   Type: Comm.   Units:   Floors:   Purpose:

Check all applicable boxes: • ☐ Change of Contractor (RV) ☐ Recertification of Plans (RC)
☐ Completion Permit ☐ Change of Qualifier (RV) ☐ Plans Revision (RV)

If you checked any of the above items, you must provide the following:
Building Permit No: ___   Plans No: ___

I understand that separate permits must be obtained for other items, unless specifically covered by this permit. In signing this application, I am responsible for the supervision and completion of the construction in accordance with the plans and specifications and for compliance with all federal, state, and county laws applicable.
I certify that: ☐ there are no trees to be removed or relocated on this site as a result of the construction for which this application is submitted.
or ☐ that a tree removal permit application has been approved.

I have read the information contained in this permit and understand that any falsification constitutes fraud and could void the permit.

_Gerald W Flinfos_   GERALD W FLINFOS

Signature of Qualifier or Owner Builder   Print Name

Proof of Ownership:   Date Accepted:   Clerk Accepted:

Signed and Sealed before me this _FRANK CHACON_ day of JULY Year 1993
OFFICIAL NOTARY SEAL
FRANK CHACON
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC209566
MY COMMISSION EXP. JAN. 3.1997

My Commission Expires: ___   _[signature]_   Notary Public

**FOR PLANNING, BUILDING AND ZONING DEPARTMENT USE ONLY**

Legal Address:   Dupt:

Current Use:   Job Name: 0103

Census Code:   Certificates Required: ☐ C.O. ☐ C.U. ☐ C.C.   Plans: ☐ Yes ☑ No   No. of Sheets:

As built survey with elevation and setbacks is required after completion of lowest floor slab before any further inspection. ☐ Yes ☐ No

| | Lowest Habitable Finished Floor Elevation (including basement) | | |
|---|---|---|---|
| | SFH | CHH | OTHERS |
| Shall be at least ___ Inches above crown of street. | Group Occupancy: | | |
| Building Height: | Quadruple Fee: ☑ Yes ☐ No | DISTRICTS | |
| | | REQUIRED | |
| | | PROPOSED | |

_FC_ 7,6,93   _FC_ 7,6,93

Application Received By   Date   Permit Authorized By   Date

THIS IS A TRUE AND CERTIFIED [COPY OF] THE RECORDS ON FILE IN [CITY OF] MIAMI
Certified by: _Vivian Fuster_
Vivian Fuster
Building Dept. Office of Microfilm

D   BZ/IS 414 Rev. 10/91   Distribution: Original - Department Section File; Canary - Applicant's Copy; Pink - Department File.

**City of Miami**
**ITEMIZED LIST FOR PERMITS**

Permit No. 955013595

Folio No:

INSTRUCTIONS: This list is required for processing Electrical, Mechanical, and Plumbing permits. Please attach to your permit application.

Job Address: 1450 NW 7 STREET          Suite:

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by: Vivian Fuster
Building Dept. Office of Microfilm

| PLUMBING | NUMBER Rough | NUMBER Set | PLUMBING (con'l) | NUMBER | | MECHANICAL (con'l) | No. | Specs | Value |
|---|---|---|---|---|---|---|---|---|---|
| Fixtures | | | | | | Heating | | | |
| Bathtub | | | Jockey Pump | | | Reinspection | | | |
| Bidet | | | Roof Manifold | | | Elevator Hoistway | | | |
| Dishwasher | | | Siamese | | | Medical Gas | | | |
| Disposal | | | Standpipe | | | Range | | | |
| Drinking Fountain | | | Water Supply | | | | | | |
| Laundry Tray | | | | | | | | | |
| Laundry Washer | | | | | | | | | |
| Lavatory | | | **ELECTRICAL** | No. | Units | | | | |
| Shower | | | Outlets, Rough Wiring | | | Internal Comb. Engine | | | |
| Sink Pot 3 - Comp | | | Ranges, Ovens, Range Tops | | | Unfired Press Vessels | | | |
| Sink | | | Water Heaters | | | Dryer | | | |
| Sink - Residence | | | Refrigerators | | | Central Heater | | | |
| Urinal | | | Dryers | | | Water Heater | | | |
| Water Closet | | | Clothes Washers | | | Boiler | | | |
| Facilities | | | Dishwashers | | | Space Heater | | | |
| Air Cond. Safe Waste | | | Disposals | | | Fryalator | | | |
| Cap Fixture | | | Space Heaters | | | Range Top | | | |
| Discharge Well | | | Air Conditioners | | | Oven | | | |
| Elc. Water Htr. (below 200,000 BTU) | | | Fans | | | Bunsen Burner | | | |
| Floor Drain | | | Motors | | | Individual Meter | | | |
| Grease Trap (Interceptor) | | | Service | 125A | 1 | Master Meter | | | |
| Hose Bib | | | Sub Feeds | | | Change of Company | | | |
| Indirect Waste | | | Fixtures &/or Bulbs | | | Reinspection | | | |
| Lawn Sprinkler System | | | Parking Lot Lt. Fixture Heads | | | Service | | | |
| Liftstation Sump Pump | | | Sign | | | Tank for Retail | | | |
| Pool Piping | | | Time Clocks | | | | | | |
| Roof Drain | | | Alarm Systems | | | | | | |
| Solar Water Heater | | | | | | | | | |
| Storm Sewer LF | | | | | | | | | |
| Water Service | | | **MECHANICAL** | No. | Specs | Value | **MISCELLANEOUS** | No. | Sq.Ft. |
| Sewers | Number | | Smoke Removal | | | | Signs | | |
| Pump/Abandon Septic Tank | | | Air Conditioning | | | | Sign Single Faced | | |
| Repairs & Misc. | | | Commercial Hood Vents | | | | Sign Double Faced | | |
| Search Fee | | | Refrigeration | | | | Painted Wall | | |
| Septic Tank   G/S | | | Boiler | | | | Sign Repair     Sign | | |
| Sewer Cap | | | Shop Insp. (Boiler) | | | | Promotional Special Event Sign | | |
| Sewer Connection/Sanitary | | | Elevator/Escalator | | | | Temp. Banners, Flag, Balloons | | |
| Sewer Conn. Septic Tank | | | Transp. Assembly | | | | Gen. Adv. New Const. | | |
| Temporary Water Closet | | | Elv. (1st Yr. Insp.) | | | | Gen. Adv. Repairs   Sign | | |
| Paving | | | Certificate Fee | | | | Gen. Adv. Embellishement | | |
| Area Drain Inlet | | | Amusement Rides | | | | Electrical ☐ Yes  ☐ No | | |
| Area Drain or Catch Basin | | | Casing/Jack Fee | | | | | | |
| French Drain  SF | | | Add. Meter/Tank | | | | Landscaping | No. | Items |
| French Drain Inlet | | | LP. Fuel Tank | | | | Ground Cover S.F. | | |
| Manhole | | | Generator Test | | | | Trees   ea. | | |
| Paved Area  SF | | | Duct Work | | | | Hedges L/F | | |
| Fire Protection | | | Process/Press Piping | | | | | | |
| Fire Pump | | | Mechanical Ventilation | | | | Roof | | |
| Fire Sprinkler | | | Cooling Towers | | | | Slab | | |
| Flow Test | | | Fire Supp. Systems | | | | Pools | | |
| Hose Rack/Fire Dept. Outlet | | | Steam Equipment | | | | Curtain Wall | | |
| Hydrant (Miami Stand Only) | | | Turbines | | | | Insulation | | |

D | B2/IS 415 Rev. 02/92 | **Distribution: Original** - Department Section File; **Canary** - Applicant's Copy; **Pink** - Department File.

```
RUN DATE 07/06/19  RUN TIME 19:18:44           C I T Y   O F   M I A M I               PAGE    89
                                          BUILDING AND ZONING DEPARTMENT      PGM-ID: PV/PP/PO/INSPCT
                                        DAILY PERMITS ISSUED INSPECTIONS REPORT   JOB NAME: PV/PP/PJ/DAILY
NET DISTRICT: 08 LITTLE HAVANA      901 ZONE: 0574   FOR DATE:  07/06/1993
```

```
PERMIT TYPE                                                                                  ESTIMATED
  NUMBER      OWNER NAME / PRIMARY ADDRESS           APPLICANT          FOLIO / DUPL   FEET  HEIGHT   COST
=========== ==============================  ======================  =================== ====== ====== ===========
    E        LOUJEN REALTY INC              C F & F ELECTRIC INC    4102-006-6270 / 0000    0    0 &       300
93-5013593  1450 SW 7 ST                    1620 NW 31 AVE          QUALIFIER: FLINGOS GERALD
PLAN NUMBER: 93-0013364                     MIAMI
                                            FL
                                            331250000
                                            305-934-5998
                                                                COMMERCIAL  OLD PERMIT:          BASE PLAN:
  PURPOSE:   ELECTRICAL SERVICE FOR TEMP. TRAILER
  UNIT/LOC:                           PROPOSED BLDG USE:      PROPOSED BLDG TYPE:
  CERTIFICATES REQUIRED: NONE         FIRE ZONE:        3A    EXPIRED: 01/02/1994
  BUILDING PERMIT NBR: NONE           PRIMARY ZONE: 0000      NBR OF SHEETS:    0

  TRACKING:       DIVISION     APPROV    APPROV DATE    REVIEWER
                  ========     ======    ===========    ========
                     E            U      07/06/1993        FC
```

```
FEES FOR PERMIT:
                                                                 UNIT
  CODE . . . . CLASS DESCRIPTION . . . . . . . . . . . SUBCLASS DESCRIPTION . . . .  TYPE       UNITS    QUANTITY      AMOUNT

   E    105  SERVICE/SUBFEED/SWITCHBOARD      002 101 AMPS THRU 200 AMPS       SERVICE    1.0000       1         9.00
   E    144  ADDITIONAL FEE                   655 TO COMPLETE MINIMUM FEE      UNIT      31.0000       1        31.00
   E    199  DADE CO. CODES COMPLIANCE FEES   001 DADE CO. CODES COMPLIANCE FEES DOLLARS 300.0000      1         0.50

                                                                               TOTAL              40.50
```

```
BUILDING LEDGER INFORMATION:

  METERS: ____    MAINS:    0   SERVICE SIZE:    0   METER ROOMS:   0   VOLTAGE: _____
```

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by:
Vivian Fuster
Building Dept. Office of Microfilm

DATE: 07/13/93 01:24:37 

CITY OF MIAMI
BUILDING AND ZONING DEPARTMENT
PERMIT INSPECTORS DAILY LOG
INSPECTION DATE 07/13/1993

PAGE 1
REPORT TYPE 2

DIVISION: ELECTRICAL        INSPECTOR:     UNASSIGN

| PERMIT NO | TYPE | JOB ADDRESS | UNIT/LOC | JOB CODE | JOB NAME | ORIGINAL PERMIT |
|---|---|---|---|---|---|---|
| 93-5013593 | E | 1450 SW 7 ST | | 103 | SERV/REPA | |

CONTRACTOR: F & F ELECTRIC INC        QUALIFIER: FLINGOS GERALD
OWNER:     LOUJEN REALTY INC          FIRE ZONE: 3A
ISSUED: 07/06/1993   EXPIRES: 01/02/1994
PURPOSE: ELECTRICAL SERVICE FOR TEMP. TRAILER

INSPECTIONS COMPLETED:
SEQ  DV CODE   DATE    . . . TIME . . .  APP RSN INSP REINSP FEE     PAID

SCHEDULED INSPECTIONS:
SEQ  DV CODE CALL DATE  REQ TIME    CALLER          APPRVL    REASON    TIME FROM    TIME TO

   1  E  001  07/12/1993 00:00   C TERESA          DATE: _____  _____ IF NOT 07/13/1993  _____
FINAL

INST:
CONTACT PHONE: _____        REINSPECTION FEE: _____

COMMENTS: _____

_____

_____

_____

— NOK — DS — 7-14-93 —  This is an apartment
bldg.. Can't find any
trailer

𝒥edee

Certified by:
Vivian Fuster
Building Dept. Office of Microfilm

# City of Miami



## Permit Issuance



THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by: _____ Vivian Fuster
Building Dept. Office of Microfilm

Financial Transaction ID: **73786**
LM Reference Number: BD13-020903-001-B001
Job Address: 1450 SW 7 ST

## FEE SUMMARY

| Fee Category | Fee Description | Quantity | Unit Type | Amount |
|---|---|---|---|---|
| BASE FEE | ADMINISTRATIVE | | | $4.00 |
| BASE FEE | APPLICATION | | | $40.00 |
| DADE COUNTY | CODE COMPLIANCE | 75,000.00 | DOLLARS | $45.00 |
| BUILDING PERMIT | COMMERCIAL PROJECTS UP TO 30 MILLION | 75,000.00 | DOLLARS | $750.00 |
| PERMIT MISC | ENR - BCI INFLATION RATE | 750.00 | DOLLARS | $7.64 |
| CREDIT | Upfront Fees | | | ($210.00) |
| | | | **Total:** | **$636.64** |

Rev. Mar/09/2011

Generated on Aug/06/2013 9:35 AM

# City of Miami
## BUILDING DEPARTMENT
## PERMIT APPLICATION

| DEPARTMENT USE ONLY | |
|---|---|
| Process #: | BD13-020903-001 |
| Total Due | $636.64 |
| Permit #: | BD13-020903-001 |

### JOB LOCATION

| | |
|---|---|
| Folio Number: | 01-4120-006-6270 |
| Job Address: | 450 SW 7 St. | Zip: 33135 |
| Legal Address: | |
| Unit No: | |

☒ Commercial ☐ Residential ☐ Dry Run
☐ Owner/Builder ☒ Contractor ☐ Lessee

### OWNER LESSEE INFORMATION

| | |
|---|---|
| Owner: | Tower Hotel LLC. |
| Owner's Address: | 1450 SW 7 St. Ste 200 |
| Phone: | 305-407-1677 | E-mail: |
| Lessee: | |
| Lessee Address: | |
| Phone: | | E-Mail: |

### CONTRACTOR INFORMATION

| | |
|---|---|
| Contractor's License/Registration No: | CGC-1518735 |
| Contractor's Social Security Number: | |
| Qualifier's Name: | Mario A. Pous |
| Company's Name: | Pous Estimating Services |
| Address: | 80 NW 22 Avenue |
| City: | Miami | State: | Fl | Zip: 33125 |
| Phone: | 305-562-4726 |
| E-Mail: | maPous@Pousestimating.com |
| If this is related to another permit, you must provide : | 0 |

### GENERAL INFORMATION

| | |
|---|---|
| Proposed Use of Building: | Hotel |
| Current Use: | Hotel |
| Job Description: | Remove & Replace Windows |
| New Construction Total Cost: | |
| New Construction Sq. Ft: | Lineal Ft: |
| Remodeling Total Cost: | $75,000.00 |
| Remodeling Sq. Ft: | 1,250 | Lineal Ft: |
| Units: | Floors: | Height: | Gallons: |

MASTER PERMIT NUMBER:

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by: Vestor Fuster
Building Dept. Office of Microfilm

### THRESHOLD INSPECTOR

| | |
|---|---|
| Name: | |
| Address: | |
| Phone: | |

### BONDING COMPANY

| | |
|---|---|
| Name: | |
| Address: | |
| Phone: | |

### PERMIT TYPE

☒ Building ☐ Plumbing ☐ LIMP
☐ Mechanical/AC ☐ Plumbing/Gas ☐ Foundation
☐ Electrical ☐ Roofing
☐ Landscaping ☐ Sign
☐ Electrical ☐ Roofing
☐ Fire ☐ Mechanical Elevator

### ENGINEER/ARCHITECT INFORMATION

| | |
|---|---|
| Engineer's Name: | Michael Brito |
| Address: | 14746 SW 60 St. |
| Phone: | 786-287-3922 | E-Mail: |
| Architect's Name: | |
| Address: | |
| Phone: | | E-Mail: |

### CHANGE TO EXISTING PERMIT

☐ Change of Contractor (CR)   ☐ Change of Qualifier (CQ)
☐ Re-certification of Plans (RC)   ☐ Plans revision (RV)
☐ Completion Permit (CP)

### BUILDING PERMIT ONLY

☐ New Construction   ☐ Addition
☒ General Repair/Remodeling   ☐ Misc. Building
☐ Change of Occupancy   ☐ Demolition
☐ Change of Use

I understand that separate permits must be obtained for other items (i.e. electrical, plumbing, roofing, etc.), unless specifically covered by this permit. In signing this application, I am responsible for the supervision and completion of the construction in accordance with the plans and specifications and for compliance with all federal, state, and county laws applicable.

**Owner's Affidavit:** I certify that all the forgoing information is correct. Owner Certifies that the aforementioned Contractor has the authorization to perform the work as specified above.

**Lessee's Affidavit:** Lessee certifies that he has full consent and authorization from owner of subject property to perform the above-mentioned work and to hire above captioned contractor.

I have read the information contained in this permit and understand that any misrepresentation may constitutes fraud and could void the permit.

| Signature of Owner/Lessee | Signature of Qualifier |
|---|---|
| *William Fuller McMur.* | *Mario Pous* |
| Print Name | Print Name |
| State of Florida, County of Miami-Dade | State of Florida, County of Miami-Dade |
| Sworn to and subscribed before me this | Sworn to and subscribed before me this 12 |
| Day of 16 April , 2013 | Day of July , 2013 |
| By W. Fuller | By Anigaba Aus |
| (SEAL) Yanet Lopez | (SEAL) |
| Personally known or Produced Identification, | Personally known or Produced Identification, |
| Type of Identification produced | Type of Identification |

*JANET LOPEZ — MY COMMISSION EE 855900 — EXPIRES: December 16, 2016*

*ANGELICA LARA — MY COMMISSION EE 860784 — EXPIRES: April 7, 2017*

### FOR BUILDING DEPARTMENT USE ONLY

| Job Code: | Certificates Required: ☐ C.O. ☐ C.C. | Plans: ☐ Yes ☐ No | No. of Sheets: |
|---|---|---|---|
| Tracking Required | B S CC | | |

| | EK' | 7/11/13 | | RC | 8/6/13 |
|---|---|---|---|---|---|
| Application Received By | | Date | Permit Authorized By | | Date |

D | BZ/iS414 Rev. 05/05 | Distribution: Original - Department Section File; Canary - Department File

# City of Miami



## Data Summary

**Plan Number: BD13-020903-001**


THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by: _Vivian_
Vivian Fuste
Building Official / Chief of Records

### Job Location

Job Address: **1450 SW 7 ST**
Legal Address: **1450 SW 7 ST**
Folio Number: **0141020066270**
Additional Address Information:
FEMA Elevation:
Development Name:

Unit / Suite #:
Building Name:
Building #:
FEMA Flood Zone: **X**
M21 Zone: **T5-O**

### Owner Information

Name:
Corporation:    **TOWER HOTEL LLC**
Address 1:    **1450 SW 7 ST**
Address 2:    **200**
City, State Zip:    **MIAMI, FL 33135**
Phone:    **(305)407-1677**
Email:

### Tenant/Lessee Information

Name:
Address 1:
Address 2:
City, State Zip:
Phone:
Email:

### Contractor Information

Contractor License: **CGC1518735**
Company: **PONS ESTIMATING SERVICES INC.**
Name:    **MARIO PONS**
Address 1:    **80 NW 22 AVE**
Address 2:
City, State Zip:    **MIAMI, FL 33133**
Phone:    **(305)562-4726**
Email:    **mapons@ponsestimating.com**

# City of Miami





## Data Summary (continued)

Plan Number: **BD13-020903-001**

### Job Description

Job Category: **REMODELING/ALTERATIONS/REPAIRS**

Permit Type: **BUILDING**

Job Description:
**WINDOWS / DOORS**

Required Certificate:

Plans Required: **NO**

Plans Review Discipline Tracking List:

| BUILDING | STRUCTURAL |
| CODE COMPLIANCE | |

Applicant Role: **Contractor**

Property Type: **Commercial**

### Project Totals

New/Addition Sq Ft
Remodeling Sq Ft
Total Sq. Ft.

| New/Addition Cost: | | $0.00 |
| Remodeling Cost: | + | $75,000.00 |
| **Total Cost:** | = | **$75,000.00** |

### Additional Options

Exterior Remodeling

Rev. 12/Mar/2012                                    Generated on Jul/11/2013 10:48 AM

## COVER SHEET

# Wind Pressure Calculations

THIS IS A CERTIFIED
COPY OF THE RECORDS ON FILE IN
THE CITY OF MIAMI

Certified by: _____ *Vuslev*

Vivian Fuster
Building Dept. Office of Microfilm

### Project:

**Tower Hotel**
1450 SW 7th St
Miami, FL



### Infinity Engineering Services, Inc.

14746 SW 60 St
Miami, FL 33193
Tel: 786-287-3922

www.InfinityEng.us
CA# 26963

Michael Brito, PhD, PE
PE# 66360

# DESIGN WIND PRESSURE FOR WALL COMPONENTS & CLADDING
## ASCE 7-10 ( C&C < 60 ft )

Wind speed (mph)                   $V = 175 \cdot mph$

Mean Roof Height                   $h = 40 \cdot ft$

Risk_Category := "II"

Exposure_Category = "C"

$K_{zt} = 1.00$            $K_d = 0.85$            $K_z = 1.04$

$q_z := 0.6 \cdot 0.00256 \cdot K_z \cdot K_{zt} \cdot K_d \cdot V^2 \cdot \dfrac{lb}{ft^2} = 41.73 \cdot psf$

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by: _____
Vivian Fuster
Building Dept. Office of Microfilm

## WALL   PRESSURES

|  | Zone 4 | | | Zone 5 | |
|---|---|---|---|---|---|
| $A_j =$ | $P4p_j =$ | $P4n_j =$ | | $P5p_j =$ | $P5n_j =$ |
| 1.00 | 49.2 ·psf | -53.4 ·psf | | 49.2 ·psi | -65.9 ·psf |

## FIND DISTANCE "a":

Length of Building (ft):                   $L := 125 \cdot ft$

Width of Building (ft):                    $w := 50 \cdot ft$

$a_0 := min[(0.1 \cdot min(w, L)), (0.4 \cdot h)] = 5.00 \, ft$

$a := max[(3 \cdot ft), a_0, 0.04 \cdot min(w, L)] = 5.00 \, ft$

## DISTANCE "a"  (ft):                     $a = 5.00 \, ft$



**MIAMI·DADE COUNTY**

DEPARTMENT OF REGULATORY AND ECONOMIC RESOURCES (RER)
BOARD AND CODE ADMINISTRATION DIVISION

**MIAMI-DADE COUNTY**
**PRODUCT CONTROL SECTION**
11805 SW 26 Street, Room 208
T (786) 315-2590   F (786) 315-2599
www.miamidade.gov/economy

**THIS IS A TRUE AND CERTIFIED**
**COPY OF THE RECORDS ON FILE IN**
**THE CITY OF M**

Certified by: _____
Vivian Fuster
Building Dept. Office of Microfilm

## NOTICE OF ACCEPTANCE (NOA)

Titan Glass & Aluminum, LLC
450 West 27th Street
Hialeah, FL 33010

**SCOPE:**

This NOA is being issued under the applicable rules and regulations governing the use of construction materials. The documentation submitted has been reviewed and accepted by Miami-Dade County RER - Product Control Section to be used in Miami Dade County and other areas where allowed by the Authority Having Jurisdiction (AHJ).

This NOA shall not be valid after the expiration date stated below. The Miami-Dade County Product Control Section (In Miami Dade County) and/or the AHJ (in areas other than Miami Dade County) reserve the right to have this product or material tested for quality assurance purposes. If this product or material fails to perform in the accepted manner, the manufacturer will incur the expense of such testing and the AHJ may immediately revoke, modify, or suspend the use of such product or material within their jurisdiction. RER reserves the right to revoke this acceptance, if it is determined by Miami-Dade County Product Control Section that this product or material fails to meet the requirements of the applicable building code.

This product is approved as described herein, and has been designed to comply with the Florida Building Code, including the High Velocity Hurricane Zone.

**DESCRIPTION: Series "TSH-2750" Aluminum Single Hung Window – L.M.I.**

**APPROVAL DOCUMENT:** Drawing No. **AD10–05**, titled "TSH-2750 Aluminum Single Hung Window (LMI)", sheets 1 through 6 of 6, dated 11/14/12, with revision #1 dated 03/15/12, prepared by MCY Engineering, Inc., signed and sealed by Yiping Wang, P.E., bearing the Miami–Dade County Product Control Revision stamp with the Notice of Acceptance number and expiration date by the Miami–Dade County Product Control Section.

**MISSILE IMPACT RATING: Large and Small Missile Impact Resistant**

**LABELING:** Each unit shall bear a permanent label with the manufacturer's name or logo, city, state, model/series, and following statement: "Miami-Dade County Product Control Approved", unless otherwise noted herein.

**RENEWAL** of this NOA shall be considered after a renewal application has been filed and there has been no change in the applicable building code negatively affecting the performance of this product.

**TERMINATION** of this NOA will occur after the expiration date or if there has been a revision or change in the materials, use, and/or manufacture of the product or process. Misuse of this NOA as an endorsement of any product, for sales, advertising or any other purposes shall automatically terminate this NOA. Failure to comply with any section of this NOA shall be cause for termination and removal of NOA.

**ADVERTISEMENT:** The NOA number preceded by the words Miami-Dade County, Florida, and followed by the expiration date may be displayed in advertising literature. If any portion of the NOA is displayed, then it shall be done in its entirety.

**INSPECTION:** A copy of this entire NOA shall be provided to the user by the manufacturer or its distributors and shall be available for inspection at the job site at the request of the Building Official.

This NOA **revises NOA# 12-0326.06** and consists of this page 1 and evidence pages E-1 and E-2, as well as approval document mentioned above.

The submitted documentation was reviewed by **Manuel Perez, P.E.**

**MIAMI-DADE COUNTY**
**APPROVED**

12/21/12

NOA No. 12-1128.02
Expiration Date: June 24, 2014
Approval Date: December 27, 2012
Page 1

**Titan Glass & Aluminum, LLC**

NOTICE OF ACCEPTANCE:      EVIDENCE SUBMITTED

*THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI*

Certified by: *Vuster*

Vivian Fuster

**A.    DRAWINGS**
1.    Manufacturer's die drawings and sections.
2.    Drawing No **AD10–05**, titled "TSH-2750 Aluminum Single Hung Window (LMI)", sheets 1 through 6 of 6, dated 11/14/12, with revision #1 dated 03/15/12, prepared by MCY Engineering, Inc., signed and sealed by Yiping Wang, P.E.

**B.    TESTS**
1.    Test reports on: 1) Uniform Static Air Pressure Test, Loading per FBC TAS 202–94
              2) Large Missile Impact Test per FBC, TAS 201–94
              3) Cyclic Wind Pressure Loading per FBC, TAS 203–94
       along with marked–up drawings and installation diagram of series FIW 2009–80 aluminum single hung window, prepared by Fenestration Testing Laboratory, Inc., Test Report No. **FTL–6057**, dated 10/05/09, signed and sealed by Julio E. Gonzalez, P.E.
       *(Submitted under previous NOA# 10-0422.06)*
2.    Test reports on: 1) Air Infiltration Test, per FBC, TAS 202–94
              2) Uniform Static Air Pressure Test, Loading per FBC TAS 202–94
              3) Water Resistance Test, per FBC, TAS 202–94
              4) Large Missile Impact Test per FBC, TAS 201–94
              5) Cyclic Wind Pressure Loading per FBC, TAS 203–94
              6) Forced Entry Test, per FBC 2411 3.2.1, TAS 202–94
       along with marked–up drawings and installation diagram of series FIW 2008 aluminum single hung window, prepared by Fenestration Testing Laboratory, Inc., Test Report No. **FTL–5743**, dated 12/30/08, signed and sealed by Michael R. Wenzel, P.E.
       *(Submitted under previous NOA# 09-0413.06)*

**C.    CALCULATIONS**
1.    Anchor verification calculations and structural analysis, complying with FBC–2007, prepared by MCY Engineering, Inc., dated 04/07/10, signed and sealed by Yiping Wang, P.E.
       *(Submitted under previous NOA# 10-0422.06)*
2.    Glazing complies with ASTM E1300-04

**D.    QUALITY ASSURANCE**
1.    Miami-Dade Department of Regulatory and Economic Resources (RER)

Manuel Perez, P.E.
Product Control Examiner
NOA No. 12-1128.02
Expiration Date:  June 24, 2014
Approval Date:  December 27, 2012

E - 1

**Titan Glass & Aluminum, LLC**

NOTICE OF ACCEPTANCE:        EVIDENCE SUBMITTED

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THIS OFFICE

Certified by

THE CITY OF MIAMI

**E.    MATERIAL CERTIFICATIONS**
1. Notice of Acceptance No. **11–0624.02** issued to **E.I. DuPont DeNemours & Co.,** Inc. for their **"DuPont SentryGlas® Interlayer"** dated 08/25/11, expiring on 01/14/17.
2. Notice of Acceptance No. **11–0624.01** issued to **E.I. DuPont DeNemours & Co., Inc.** for their **"DuPont Butacite® PVB Interlayer"** dated 09/08/11, expiring on 12/11/16.

**F.    STATEMENTS**
1. Statement letter of conformance and compliance with FBC 2010, dated March 15, 2012 and updated on November 18, 2012, signed and sealed by Yiping Wang, P.E. *(Submitted under previous NOA# 12-0326.06)*
2. Statement letter of no financial interest, dated April 14, 2010, signed and sealed by Yiping Wang, P.E. *(Submitted under previous NOA# 10-0422.06)*
3. Laboratory compliance letter for Test Report No. **FTL–6057**, issued by Fenestration Testing Laboratory, Inc., dated October 05, 2009, signed and sealed by Julio E. Gonzalez, P.E. *(Submitted under previous NOA# 10-0422.06)*
4. Laboratory compliance letter for Test Report No. **FTL–5743**, issued by Fenestration Testing Laboratory, Inc., dated December 30, 2008, signed and sealed by Michael R. Wenzel, P.E. *(Submitted under previous NOA# 09-0413.06)*
5. Letter from owner of existing NOA relinquishing rights to same, dated 10/18/12, signed by Enrique "Henry" Revilla.
6. Letter from applicant specifically stating that they have legally purchased all assets and requesting that a new NOA be issued under their name, dated 10/18/12, signed by Luis Navia.
7. Purchase/Sale Agreement of Assets dated October 12, 2012, signed by Mr. Luis Navia and Mr. Henry Revilla.

**G.    OTHERS**
1. Notice of Acceptance No. **12-0326.06**, issued to Florida Coastal Impact Window, LLC for their Series "2009–SH" Aluminum Single Hung Window – L.M.I.", approved on 06/07/12 and expiring on 06/24/14.

Manuel Perez, P.E
Product Control Examiner
NOA No. 12-1128.02
Expiration Date: June 24, 2014
Approval Date: December 27, 2012

E - 2



GENERAL NOTES:

- THIS PRODUCT HAS BEEN DESIGNED AND TESTED TO COMPLY WITH THE REQUIREMENTS OF THE FLORIDA BUILDING CODE INCLUDING HIGH VELOCITY HURRICANE ZONE (HVHZ).

- WINDOWS RATED FOR LARGE MISSILE IMPACT AND DO NOT REQUIRE SHUTTERS.

- THESE WINDOWS ARE APPROVED FOR AIR AND WATER INFILTRATION.

- ANCHORS SHALL BE AS LISTED. SPACED AS SHOWN ON DETAILS. ANCHORS EMBEDMENT TO BASE MATERIAL SHALL BE BEYOND WALL DRESSING OR STUCCO.

- ANCHORING OR LOADING CONDITIONS NOT SHOWN IN THESE DETAILS ARE NOT PART OF THIS APPROVAL.

- WOOD BUCKS BY OTHERS MUST BE SOUTHERN PINE, G = 0.55 AND MUST BE ANCHORED PROPERLY TO TRANSFER LOADS TO THE STRUCTURE.

- A LOAD DURATION FACTOR IN ALLOWABLE STRESS IS USED IN DESIGN OF ANCHORS INTO WOOD ONLY.

- PROVIDE 1/4" MAX. LOAD BEARING SHIM SPACE (TYP.).

- MATERIALS INCLUDING BUT NOT LIMITED TO STEEL/METAL SCREWS THAT COME INTO CONTACT WITH OTHER DISSIMILAR MATERIALS SHALL MEET THE FLORIDA BUILDING CODE REQUIREMENTS.

- METAL STRUCTURES BY OTHERS MUST SUPPORT LOADS IMPOSED BY WINDOW SYSTEM AND TRANSFER THEM TO THE BUILDING STRUCTURE.

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN DADE COUNTY OF MIAMI

TYPICAL ELEVATION

TYPICAL ELEVATION

EYEBROW OPTION (FOR ORIAL OR EQUAL SASH)

DEC 2 0 2012

TSH-2750 ALUMINUM SINGLE HUNG WINDOW (LMI)

TITAN GLASS & ALUMINUM, LLC.
450 WEST 27th STREET
HIALEAH, FL 33010
P: (305) 888 - 0911    F: (305) 671 - 3840

MCY ENGINEERING, INC.
GLAZING CONSULTANTS
8501 SW 124 AVE STE 205A   P: 305.271.0117
MIAMI FL 33183              F: 305.921.4788
www.MCYEngineering.com   MCY.Engineering@Atl.net

SHEET 1 OF 4

A010 - 05





THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI
Certified by: Vivian Fraser
Building Dept. Office of Microfilm

## SINGLE HUNG WINDOW SCHEDULE

| | GLASS TYPE A | GLASS TYPE B | GLASS TYPE C |
|---|---|---|---|
| MAXIMUM DESIGN LOAD | +110.0 PSF -150.0 PSF | +110.0 PSF -150.0 PSF | +80.0 PSF -80.0 PSF |
| MAX. FIXED LITE GLASS AREA ( w*h ) | 2640 $IN^2$ | 1729 $IN^2$ | 2640 $IN^2$ |

NOTE:
SCHEDULE FOR UNEQUAL SASH HEIGHT ORIEL AND EQUAL SASH HEIGHT SINGLE HUNG WINDOW.
ALSO FOR RECTANGULAR OR EYEBROW.

GLASS TYPE "A"

GLASS TYPE "B"

GLASS TYPE "C"

## GLAZING OPTIONS

NOTE:
GLASS CAPACITIES ARE BASED ON ASTM E1300-02/04 ( 3 SEC. GUSTS)

GLAZING COMPLY WITH ASTM E1300-04

PRODUCT REVISED as complying with the Florida Building Code
Acceptance No 12-1128.05
Expiration Date June 28, 2016
By Manuel Perez
Miami Dade Product Control
MIAMI DADE COUNTY

YIPING WANG, P.E. FLORIDA REGISTRATION No PE 55983 C.A.N. 26877
STATE OF FLORIDA PROFESSIONAL ENGINEER

DEC 20 2012

TSH-2750 ALUMINUM SINGLE HUNG WINDOW (LMI)
TITAN GLASS & ALUMINUM, LLC.
450 WEST 27th STREET
HIALEAH, FL 33010
P: (305) 888 - 0911 F: (305) 671 - 3840

MCY ENGINEERING, INC.
GLAZING CONSULTANTS
8501 SW 124 AVE STE 205A MIAMI, FL 33183
P: 305.271.0117 F: 305.921.4786
www.MCYEngineering.com MCY.Engineering@Att.net

| DATE | 11/14/12 |
|---|---|
| SCALE | AS SHOWN |
| DRAWN | W.L |
| PROJECT | 10-012 |
| DRAWING NO. | AD10-05 |
| SHEET | 2 OF 6 |

REVISIONS

| NO | DATE | DESCRIPTION |
|---|---|---|
| 1 | 3/15/13 | UPDATE TO 2010 FBC |

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by ... Building Department of the City of Miami

CONCRETE/MASONRY

TYPICAL ANCHOR
SEE ELEVATION
FOR SPACING

1x WOOD BUCK

EDGE DIST.

EDGE DIST

2 BY WOOD BUCK OR
WOOD STRUCTURE

EDGE DIST

STEEL MEMBER

MIAMI DADE COUNTY
APPROVED MULLION
(UNDER SEPARATE
APPROVAL)
EDGE DIST

TYPICAL ANCHOR
SEE ELEVATION
FOR SPACING

TYPICAL ANCHOR
SEE ELEVATION
FOR SPACING

TYPICAL ANCHOR
SEE ELEVATION
FOR SPACING

EXTERIOR

FOR DESIGN LOAD
> 80 PSF ONLY

(OPTIONAL TO (15))

CONCRETE/MASONRY

EDGE DIST

## TYPICAL ANCHORS: SEE ELEV. FOR SPACING

TYPE 'A'  1/4" DIA. HILTI KWIK-CON II  (Fy=157 KSI,  Fu=163 KSI)

- INTO 2BY WOOD BUCKS OR WOOD STRUCTURES
  1-1/2" MIN. WOOD PENETRATION
- THRU 1BY WOOD BUCKS INTO MASONRY OR CONC.
  1-5/8" MIN. EMBED INTO MASONRY OR CONC.
- DIRECTLY INTO MASONRY OR CONCRETE
  1-5/8" MIN. EMBED INTO MASONRY OR CONCRETE

TYPE 'B'  1/4" DIA. TEKS OR SELF DRILLING SCREWS  (Fy=92 KSI, Fu=120 KSI)

- INTO METAL STRUCTURES
  STEEL : 12 GA. MIN. (Fy = 36 KSI MIN.)
  ALUMINUM : 1/8" THK. MIN. (6063-T5 MIN.)
  (STEEL IN CONTACT WITH ALUMINUM TO BE PLATED OR PAINTED)

TYPICAL EDGE DISTANCE:
INTO CONCRETE AND MASONRY:  .
2" MIN. AT JAMB & 1-1/2" AT HEAD & SILL
INTO WOOD STRUCTURE = 1" MIN
INTO METAL STRUCTURE = 3/4" MIN.

SEALANT:
ALL FRAME CORNERS, VENT CORNERS AND
EACH END OF THE FIXED MEETING RAILS

WEEP HOLES:
1/4" LONG WEEP HOLES NOTCH ONE AT EACH END.

PRODUCT REVISED
as complying with the Florida
Building Code
Acceptance No 12-1128.02
Expiration Date June 26, 2013
By Manuel Jun
Miami Dade Product Control

MIAMI DADE COUNTY

MCY ENGINEERING, INC.
GLAZING CONSULTANTS
8501 SW 124 AVE  STE.  205A
MIAMI FL . 33183
P.  305.271.0117
F.  305.271.0118
www.MCYEngineering.com
MCY.Engineering@att.net

TSH-2750 ALUMINUM SINGLE HUNG WINDOW (LMI)
TITAN GLASS & ALUMINUM, LLC.
450 WEST 27th STREET
HIALEAH, FL. 33010
P: (305) 888 - 0511   F: (305) 871 - 3840

DATE  11/14/12
SCALE  AS SHOWN
DRAWN  W.L.
PROJECT  10-052
DRAWING NO.
AD10-05
SHEET 3 OF 8

DEC 2 0 2012



THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by _____ printing, photostat, or microfilm



## BILL OF MATERIAL

| ITEM # | PART | DESCRIPTION | MATERIAL |
|---|---|---|---|
| 01 | FSP 015 | FRAME JAMB | 6063-T6 |
| 02 | FSP 041 | FIXED MEETING RAIL | 6063-T6 |
| 03 | FSP 018 | VENT MEETING RAIL | 6063-T6 |
| 04 | FSP 042 | VENT BOTTOM RAIL | 6063-T6 |
| 05 | FSP 017 | GLAZING BEAD | 6063-T6 |
| 06 | FSP 014 | FRAME HEAD | 6063-T6 |
| 07 | FSP 040 | FRAME SILL | 6063-T6 |
| 08 | FSP 016 | VENT STILE | 6063-T6 |
| 9 | SILICONE | SEALANT, AT FRAME CORNERS, VENT CORNERS AND EACH END OF THE FIXED MEETING RAIL. | NON STRUCTURAL SILICONE |
| 10 | | VINYL BULB | |
| 11 | FASTENER | #8 X 1 1/2" PH SMS (SS) VENT CORNER FASTENERS | " |
| 12 | | WEATHER STRIP | |
| 13 | FASTENER | #8 X 5/8" PH SMS (SS) LATCH LOCK FASTENER | " |
| 14 | FASTENER | #8 X 1 1/2" PH SMS (SS) FRAME CORNER FASTENERS | " |
| 15 | | LATCH LOCK | |
| 16 | | WEATHER STRIP | |
| 17 | SILICONE | PECORA 896 | STRUCTURAL SILICONE |
| 18 | NYLON GUIDES | (4) NYLON GUIDES LOCATED AT 3 1/2" AND 36 3/4" FROM BOTTOM OF VENT STILE USING (1) #8X3/8" F.H. S.M.S. | - |
| 19 | NYLON GUIDES | (2) NYLON GUIDES LOCATED AT EACH END OF VENT MEETING RAIL USING (2) #8X 1/2" P.H. S.M.S. | - |
| 20 | | VENT VINYL BULB | - |
| 21 | FSP 021 | VENT LOCK | - |
| 22 | | BALANCE | - |
| 23 | SURFACE MOUNT METALLIC CLIPS | (2) CLIPS AT EACH VENT BOTTOM RAIL CONNECTED USING (2) #8X3/8" F.H. S.M.S. | - |
| 24 | | 7/8" X 7/8"  CONT. STEEL BAR, ZINC PLATED USED WHEN DESIGN LOAD = 80 PSF | ASTM A-26 |

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI
Certified by the Building Dept.

PRODUCT REVISED
as complying with the Florida
Building Code
Acceptance No _____
Expiration Date _____
By _____
Miami Dade Product Control

MIAMI DADE COUNTY

DEC 20 2012

MCY ENGINEERING, INC.
GLAZING CONSULTANTS
8501  S.W. 124  AVE.  STE.  205A
MIAMI, FL 33183
P: 305.271.0117
F: 305.271.0766
MCY.Engineering@att.net
www.MCYEngineering.com

TSH-2750 ALUMINUM SINGLE HUNG WINDOW (LMI)
TITAN GLASS & ALUMINUM, LLC.
450 WEST 27th STREET
HIALEAH, FL 33010
P: (305) 885-9811   F: (305) 871-3840

| DATE | 11/14/12 |
|---|---|
| SCALE | AS SHOWN |
| DRAWN | WL |
| PRODUCT | 10-012 |

DRAWING NO.
AD10-05
SHEET 5 OF 6



CORNER CONNECTION
AT FRAME HEAD AND SILL
SCALE          4"=1'-0"

CORNER CONNECTION
AT OPERABLE VENT (X)
SCALE          4"=1'-0"

THIS IS A TRUE AND CERTIFIED
COPY OF THE RECORDS ON FILE IN
THE CITY OF MIAMI

Certified by: Vivian Fuster
Building Dept Office on Microfilm

MCY ENGINEERING, INC.
GLAZING CONSULTANTS

8500 SW 124 AVE STE 206A   P: 305.271.0117
MIAMI, FL 33183   F: 305.921.4708
www.MCYEngineering.com   MCYEngineering@AOL.net

TSH-2750 ALUMINUM SINGLE HUNG WINDOW (LMI)
TITAN GLASS & ALUMINUM, LLC.
450 WEST 27th STREET
HIALEAH, FL 33010
P:(305) 885-6911   F:(305) 871 - 3940

PRODUCT REVISED
as complying with the Florida
Building Code
Acceptance No 12-1128.07
Expiration Date
By Manuel Perez
Miami Dade Product Control
MIAMI DADE COUNTY

| DATE | 11/14/12 |
| SCALE | AS SHOWN |
| DRAWN | W.L. |
| PROJECT | 10-012 |
| DRAWING NO | AD10-05 |
| SHEET | 8 OF 8 |

DEC 2 0 2012

**MIAMI·DADE COUNTY**

DEPARTMENT OF REGULATORY AND ECONOMIC RESOURCES (RER)
BOARD AND CODE ADMINISTRATION DIVISION

## NOTICE OF ACCEPTANCE (NOA)

**MIAMI-DADE COUNTY**
**PRODUCT CONTROL SECTION**
11805 SW 26 Street, Room 208
T (786) 315-2590   F (786) 315-2599
www.miamidade.gov/economy

Titan Glass & Aluminum, LLC
450 West 27th Street
Hialeah, FL 33010

### SCOPE:

This NOA is being issued under the applicable rules and regulations governing the use of construction materials. The documentation submitted has been reviewed and accepted by Miami-Dade County RER - Product Control Section to be used in Miami Dade County and other areas where allowed by the Authority Having Jurisdiction (AHJ).

This NOA shall not be valid after the expiration date stated below. The Miami-Dade County Product Control Section (In Miami Dade County) and/or the AHJ (in areas other than Miami Dade County) reserve the right to have this product or material tested for quality assurance purposes. If this product or material fails to perform in the accepted manner, the manufacturer will incur the expense of such testing and the AHJ may immediately revoke, modify, or suspend the use of such product or material within their jurisdiction. RER reserves the right to revoke this acceptance, if it is determined by Miami-Dade County Product Control Section that this product or material fails to meet the requirements of the applicable building code.

This product is approved as described herein, and has been designed to comply with the Florida Building Code, including the High Velocity Hurricane Zone.

### DESCRIPTION: Series "TFX-2750" Aluminum Fixed Window – L.M.I.

### APPROVAL DOCUMENT: Drawing No. AD10–06, titled "TFX-2750 Alum. Fixed Window System (LMI)", sheets 1 through 5 of 5, dated 11/14/12, with revision #1 dated 03/15/12, prepared by MCY Engineering, Inc., signed and sealed by Yiping Wang, P.E., bearing the Miami–Dade County Product Control Revision stamp with the Notice of Acceptance number and expiration date by the Miami–Dade County Product Control Section.

### MISSILE IMPACT RATING: Large and Small Missile Impact Resistant

**LABELING:** Each unit shall bear a permanent label with the manufacturer's name or logo, city, state, model/series, and following statement: "Miami-Dade County Product Control Approved", unless otherwise noted herein.

**RENEWAL** of this NOA shall be considered after a renewal application has been filed and there has been no change in the applicable building code negatively affecting the performance of this product.

**TERMINATION** of this NOA will occur after the expiration date or if there has been a revision or change in the materials, use, and/or manufacture of the product or process. Misuse of this NOA as an endorsement of any product, for sales, advertising or any other purposes shall automatically terminate this NOA. Failure to comply with any section of this NOA shall be cause for termination and removal of NOA.

**ADVERTISEMENT:** The NOA number preceded by the words Miami-Dade County, Florida, and followed by the expiration date may be displayed in advertising literature. If any portion of the NOA is displayed, then it shall be done in its entirety.

**INSPECTION:** A copy of this entire NOA shall be provided to the user by the manufacturer or its distributors and shall be available for inspection at the job site at the request of the Building Official.

This NOA revises NOA# 12-0326.07 and consists of this page 1 and evidence pages E-1 and E-2, as well as approval document mentioned above.

The submitted documentation was reviewed by **Manuel Perez, P.E.**

**MIAMI-DADE COUNTY APPROVED**

12/21/12

**NOA No. 12-1128.03**
**Expiration Date:  March 11, 2014**
**Approval Date:  December 27, 2012**
**Page 1**

Titan Glass & Aluminum, LLC

## NOTICE OF ACCEPTANCE:     EVIDENCE SUBMITTED

**A.     DRAWINGS**

    **1.**    Manufacturer's die drawings and sections.

    **2.**    Drawing No **AD10–06**, titled "TFX-2750 Alum. Fixed Window System (LMI)", sheets 1 through 5 of 5, dated 11/14/12, with revision #1 dated 03/15/12, prepared by MCY Engineering, Inc., signed and sealed by Yiping Wang, P.E.

**B.     TESTS**

    **1.**    Test reports on: 1) Air Infiltration Test, per FBC, TAS 202-94
                        2) Uniform Static Air Pressure Test, Loading per FBC TAS 202-94
                        3) Water Resistance Test, per FBC, TAS 202-94
                        4) Small Missile Impact Test per FBC, TAS 201-94
                        5) Cyclic Wind Pressure Loading per FBC, TAS 203-94
                        6) Forced Entry Test, per FBC 2411 3.2.1, TAS 202-94
along with marked-up drawings and installation diagram of series 747 high performance aluminum single hung window, prepared by Fenestration Testing Laboratory, Inc., Test Report No. **FTL-5222**, dated 04/26/07, signed and sealed by Carlos S. Rionda, P.E.
***(Submitted under previous NOA# 10-0719.13)***

    **2.**    Test reports on: 1) Air Infiltration Test, per FBC, TAS 202-94
                        2) Uniform Static Air Pressure Test, Loading per FBC TAS 202-94
                        3) Water Resistance Test, per FBC, TAS 202-94
                        4) Large Missile Impact Test per FBC, TAS 201-94
                        5) Cyclic Wind Pressure Loading per FBC, TAS 203-94
                        6) Forced Entry Test, per FBC 2411 3.2.1, TAS 202-94
along with marked-up drawings and installation diagram of series 2007 aluminum picture window, prepared by Fenestration Testing Laboratory, Inc., Test Report No. **FTL 5282**, dated 07/23/07, signed and sealed by Carlos S. Rionda, P.E.
***(Submitted under previous NOA# 08-0919.02)***

    **3.**    Test report No. **FTL 5635** on Drop Load Test per FBC and per ANSI Z 97.1, prepared by Fenestration Testing Laboratory, Inc., dated 08/06/08, signed and sealed by Carlos S. Rionda P.E.
***(Submitted under previous NOA# 10-0719.13)***

**C.     CALCULATIONS**

    **1.**    Anchor verification calculations and structural analysis, complying with FBC–2007, prepared by MCY Engineering, Inc., dated 06/30/10, signed and sealed by Yiping Wang, P.E.
***(Submitted under previous NOA#10-0719.13)***

    **2.**    Glazing complies with ASTM E1300-04

                                              **Manuel Perez, P.E.**
                                        **Product Control Examiner**
                                        **NOA No. 12-1128.03**
                                    **Expiration Date:  March 11, 2014**
                                    **Approval Date:  December 27, 2012**

**Titan Glass & Aluminum, LLC**

THIS IS A TRUE AND CERTIFIED
COPY OF THE RECORDS ON FILE IN
THE CITY OF MIAMI

**NOTICE OF ACCEPTANCE:      EVIDENCE SUBMITTED**

Certified by:

Building Dept. Office of Microfilm

**D.    QUALITY ASSURANCE**
   1.    Miami-Dade Department of Regulatory and Economic Resources (RER)

**E.    MATERIAL CERTIFICATIONS**
   1.    Notice of Acceptance No. **11–0624.02** issued to **E.I. DuPont DeNemours & Co., Inc.** for their **"DuPont SentryGlas® Interlayer"** dated 08/25/11, expiring on 01/14/17.
   2.    Notice of Acceptance No. **11–0624.01** issued to **E.I. DuPont DeNemours & Co., Inc.** for their **"DuPont Butacite® PVB Interlayer"** dated 09/08/11, expiring on 12/11/16.

**F.    STATEMENTS**
   1.    Statement letter of conformance and compliance with FBC 2010, dated March 15, 2012 and updated on November 15, 2012, signed and sealed by Yiping Wang, P.E.
   2.    Statement letter of no financial interest, dated June 22, 2010, signed and sealed by Yiping Wang, P.E.
   *(Submitted under previous NOA# 10-0719.13)*
   3.    Laboratory compliance letter for Test Report No. **FTL–5282**, issued by Fenestration Testing Laboratory, Inc., dated August 10, 2007, signed and sealed by Carlos S. Rionda, P.E.
   *(Submitted under previous NOA# 08–0919.02)*
   4.    Laboratory compliance letter for Test Report No. **FTL–5743**, issued by Fenestration Testing Laboratory, Inc., dated December 30, 2008, signed and sealed by Michael R. Wenzel, P.E.
   *(Submitted under previous NOA# 09–0413.06)*
   5.    Letter from owner of existing NOA relinquishing rights to same, dated 10/18/12, signed by Enrique "Henry" Revilla.
   6.    Letter from applicant specifically stating that they have legally purchased all assets and requesting that a new NOA be issued under their name, dated 10/18/12, signed by Luis Navia.
   7.    Purchase/Sale Agreement of Assets dated October 12, 2012, signed by Mr. Luis Navia and Mr. Henry Revilla.

**G.    OTHERS**
   1.    Notice of Acceptance No. **10–0719.13**, issued to Florida Coastal Impact Window, LLC for their Series "2009" Aluminum Fixed Window – L.M.I., approved on 06/07/12 and expiring on 03/11/14.

Manuel Perez, P.E.
**Product Control Examiner**
NOA No. 12-1128.03
**Expiration Date:  March 11, 2014**
**Approval Date:  December 27, 2012**

E - 2



THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

TYPICAL ELEVATION

TYPICAL ELEVATION

GLASS TYPE A COMPLIES WITH REQUIREMENTS OF ANSI Z97.1.

GENERAL NOTES:

- THIS PRODUCT HAS BEEN DESIGNED AND TESTED TO COMPLY WITH THE REQUIREMENTS OF THE FLORIDA BUILDING CODE INCLUDING HIGH VELOCITY HURRICANE ZONE (HVHZ).

- WINDOWS RATED FOR LARGE MISSILE IMPACT AND DO NOT REQUIRE SHUTTERS.

- THESE WINDOWS ARE APPROVED FOR AIR AND WATER INFILTRATION.

- ANCHORS SHALL BE AS LISTED, SPACED AS SHOWN ON DETAILS. ANCHORS EMBEDMENT TO BASE MATERIAL SHALL BE BEYOND WALL DRESSING OR STUCCO.

- ANCHORING OR LOADING CONDITIONS NOT SHOWN IN THESE DETAILS ARE NOT PART OF THIS APPROVAL.

- WOOD BUCKS BY OTHERS MUST BE SOUTHERN PINE, G = 0.55 AND MUST BE ANCHORED PROPERLY TO TRANSFER LOADS TO THE STRUCTURE.

- A LOAD DURATION FACTOR IN ALLOWABLE STRESS IS USED IN DESIGN OF ANCHORS INTO WOOD ONLY.

- PROVIDE 1/4" MAX. LOAD BEARING SHIM SPACE (TYP.).

- MATERIALS INCLUDING BUT NOT LIMITED TO STEEL/METAL SCREWS THAT COME INTO CONTACT WITH OTHER DISSIMILAR MATERIALS SHALL MEET THE REQUIREMENTS OF FLORIDA BUILDING CODE SECTION 2003.8.4.

- METAL STRUCTURES BY OTHERS MUST SUPPORT LOADS IMPOSED BY WINDOW SYSTEM AND TRANSFER THEM TO THE BUILDING STRUCTURE.

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by: Vivian Fuster
Building Dept. Office of Miami

# FIXED WINDOW

**DESIGN LOAD CAPACITY - PSF**

NOTE:
GLASS CAPACITIES ARE BASED ON ASTM E1300-02/04 ( 3 SEC. GUSTS)

GLASS TYPE "A"

GLASS TYPE "B"

EXT.

NOTE:
GLAZING COMPLY WITH ASTM E1300-04

NOTE:
WIDTH AND LENGHT DIMENSIONS CAN BE ORIENTED VERTICALLY OR HORIZONTALLY AS SHOWN ABOVE

TFX-2750 ALUM. FIXED WINDOW SYSTEM (LMI)

TITAN GLASS & ALUMINUM, LLC.
450 WEST 27th STREET
HIALEAH, FL 33010
P: (305) 688 - 0911    F: (305) 671 - 3840

**MCY ENGINEERING, INC.**
GLAZING CONSULTANTS

8501 SW 124 AVE STE. 205A   P: 305.271.0117
MIAMI, FL 33183    F: 305.921.4786
www.MCYEngineering.com    MCY.Engineering@Att.net

DEC 20 2012

PRODUCT REVISED
as complying with the Florida
Building Code
Acceptance No
Expiration Date

SHEET 2 OF 5



TYPICAL ANCHORS: (SEE ELEVATIONS FOR SPACE)

TYPE 'A' - 1/4" KWIKCONS II BY 'HILTI' (Fu = 163 KSI, Fy = 157 KSI)
- INTO 2BY WOOD BUCKS OR WOOD STRUCTURE
  1-1/2" MIN. PENETRATION INTO WOOD
- THRU 1BY BUCKS INTO CONC. OR MASONRY
  1-1/4" MIN. EMBED INTO CONC. OR MASONRY
- DIRECTLY INTO CONC. OR MASONRY
  1-5/8" MIN. EMBED INTO CONC. OR MASONRY

TYPE 'B' - 1/4" TEKS OR SELFDRILLING SCREWS (GRADE 5 CRS)
  INTO METAL STRUCTURES
- STEEL    : 1/8" THK MIN (Fy = 36KSI MIN.)
- ALUMINUM: 1/8" THK. MIN. (6063-T5 MIN.)
  (STEEL IN CONTACT WITH ALUMINUM TO BE
  PLATED OR PAINTED)

TYPE 'C' - #14 SMS OR STAINLESS STEEL SCREWS (GRADE 2 CRS)
- INTO FLORIDA STATE APPROVED MULLIONS

MASONRY
- ASTM C90 GROUT FILLED CONCRETE BLOCK
- HOLLOW CONCRETE BLOCK

CONCRETE
- fc= 3,000 PSI

ANCHOR EDGE DISTANCES
INTO CONCRETE AND MASONRY = 2" MIN.
INTO WOOD STRUCTURE      = 1" MIN.
INTO METAL STRUCURE      = 3/4" MIN.

SEALANT:
ALL FRAME CORNERS, FIXED PANELS AND
FRAME ALL AROUND TO BE SEALED WITH SILICONE.

ALL ANCHOR OPTIONS CAN APPLY TO HEAD, SILL
AND JAMB ANCHORS.

MCY ENGINEERING, INC.
GLAZING CONSULTANTS
8501 S.W. 124 AVE. STE. 206A
MIAMI, FL 33183
P: 305.271.0117
F: 305.901.4766
www.MCYEngineering.com
MCYEngineering@ATL.net

TFK-2750 ALUM. FIXED WINDOW SYSTEM (LMI)
TITAN GLASS & ALUMINUM, LLC.
450 WEST 27th STREET
HIALEAH, FL 33010
P: (305) 883-0811   F: (305) 671-3840

PRODUCT REVISED
as complying with the Florida
Building Code
Acceptance No 12-1128.03
Expiration Date March 14, 2017
By Manuel Jara
Miami Dade Product Control

DATE: 11/14/12
SCALE: N.T.S
DRAWN: W.L.
PROJECT: 10-012
DRAWING NO.
AD10-06
SHEET 3 OF 5

DEC 20 2012



This is a true and correct copy of THE ORIGINAL maintained by the County

Certified by: Vivian Gallo, Building Director

DEC 20 2012



## BILL OF MATERIALS

| ITEM # | QTY. | PROFILE | DESCRIPTION | MATERIAL | MANUFACTURER/REMARKS |
|---|---|---|---|---|---|
| 1 | AS REQD. | FSP 014 | FRAME HEAD/SILL OR JAMBS | ALUM. 6063-T6 | — |
| 2 | AS REQD. | FSP 015 | FRAME HEAD/SILL OR JAMBS | ALUM. 6063-T6 | — |
| 3 | 4 | FSP 017 | GLAZING BEAD | ALUM. 6063-T6 | — |
| 4 | AS REQD. | SEAL01-1 | DOW 995 SILICONE | SILICONE | DOW CORNING |
| 5 | AS REQD. | - | #8X1" PH SMS | STEEL | — |
| 6 | AS REQD. | - | PECORA 896 | SILICONE | PECORA |
| 7 | AS REQD. | - | DOW 899 SILICONE | SILICONE | DOW CORNING |

01  FRAME HEAD, SILL OR JAMB
FSP 014

02  FRAME HEAD, SILL OR JAMB
FSP 015

03  GLAZING BEAD
FSP 017

NOTCH (TYP.)

(2) #8 X 1" PH
SMS (SS)

CONT. SILICONE

NOTCH (TYP.)

(2) #8 X 1" PH
SMS (SS)

FRAME CORNER
SCALE 3/4 = 1"

NOTCH (TYP.)

CONT. SILICONE

FRAME CORNER
SCALE 3/4 = 1"

SPOT WELD,
ER-4043

FRAME CORNER
SCALE 3/4 = 1"

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE OFFICE

Certification / Value From the Original on Microfilm

MCY ENGINEERING, INC.
GLAZING CONSULTANTS
8501 SW 124 AVE. STE. 205A
MIAMI, FL 33183
P: 305.271.0117
F: 305.271.4766
www.MCYEngineering.com
MCY.Engineering@att.net

TFX-2750 ALUM. FIXED WINDOW SYSTEM (LMI)
TITAN GLASS & ALUMINUM, LLC.
450 WEST 27th STREET
HIALEAH, FL 33010
P: (305) 888-0911   F: (305) 871-3840

PRODUCT REVISED
as complying with the Florida
Building Code
Acceptance No 12-1120.05
Expiration Date March 11, 2014
By Manuel Ins
Miami Dade Product Control

| DATE | 11/14/12 |
| SCALE | N.T.S. |
| DRAWN | W.L. |
| PROJECT | 10-012 |
| DRAWING NO. | AD10—06 |
| SHEET | SHEET 5 OF 5 |

DEC 20 2012

**MIAMI-DADE**
**COUNTY**

DEPARTMENT OF PERMITTING, ENVIRONMENT, AND REGULATORY
AFFAIRS (PERA)
BOARD AND CODE ADMINISTRATION DIVISION

## NOTICE OF ACCEPTANCE (NOA)

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORD

MIAMI-DADE COUNTY
PRODUCT CONTROL SECTION
11805 SW 26 Street, Room 208
Miami, Florida 33175-2474
T (786) 315-2590   F (786) 315-2599
www.miamidade.gov/pera/

Certified by: _Vusop_
Vivian Foster
Building Dept. Office of Microfilm

THE CITY OF

SMI Aluminum Systems, LLC
11305 NW 128 Street
Medley, FL 33178

**SCOPE:**
This NOA is being issued under the applicable rules and regulations governing the use of construction materials. The documentation submitted has been reviewed and accepted by Miami-Dade County PERA - Product Control Section to be used in Miami Dade County and other areas where allowed by the Authority Having Jurisdiction (AHJ).
This NOA shall not be valid after the expiration date stated below. The Miami-Dade County Product Control Section (In Miami Dade County) and/or the AHJ (in areas other than Miami Dade County) reserve the right to have this product or material tested for quality assurance purposes. If this product or material fails to perform in the accepted manner, the manufacturer will incur the expense of such testing and the AHJ may immediately revoke, modify, or suspend the use of such product or material within their jurisdiction. PERA reserves the right to revoke this acceptance, if it is determined by Miami-Dade County Product Control Section that this product or material fails to meet the requirements of the applicable building code.
This product is approved as described herein, and has been designed to comply with the Florida Building Code, including the High Velocity Hurricane Zone.

**DESCRIPTION: Series "K2LM" 10'0" Outswing Glazed Aluminum Entrance Door – L.M.I.**

**APPROVAL DOCUMENT:** Drawing No. W04-91, titled "Series K2LM Alum. Out-Swing Entrance Door", sheets 1 through 11 of 11, prepared by Al-Farooq Corporation, dated 10/25/04 with revision D dated 10/21/11, signed and sealed by Javad Ahmad , P.E., bearing the Miami-Dade County Product Control Revision stamp with the Notice of Acceptance number and expiration date by the Miami-Dade County Product Control Section.

**MISSILE IMPACT RATING: Large and Small Missile Impact Resistant**

**LABELING:** Each unit shall bear a permanent label with the manufacturer's name or logo, city, state, model/series, and following statement: "Miami-Dade County Product Control Approved", unless otherwise noted herein.

**RENEWAL** of this NOA shall be considered after a renewal application has been filed and there has been no change in the applicable building code negatively affecting the performance of this product.

**TERMINATION** of this NOA will occur after the expiration date or if there has been a revision or change in the materials, use, and/or manufacture of the product or process. Misuse of this NOA as an endorsement of any product, for sales, advertising or any other purposes shall automatically terminate this NOA. Failure to comply with any section of this NOA shall be cause for termination and removal of NOA.

**ADVERTISEMENT:** The NOA number preceded by the words Miami-Dade County, Florida, and followed by the expiration date may be displayed in advertising literature. If any portion of the NOA is displayed, then it shall be done in its entirety.

**INSPECTION:** A copy of this entire NOA shall be provided to the user by the manufacturer or its distributors and shall be available for inspection at the job site at the request of the Building Official.
This NOA revises NOA # 11-0316.05 and consists of this page 1 and evidence pages E-1 and E-2, as well as approval document mentioned above.
The submitted documentation was reviewed by **Manuel Perez, P.E.**

 

NOA No. 11-1208.01
Expiration Date: May 12, 2016
Approval Date: February 23, 2012
Page 1

**SMI Aluminum Systems, LLC**

## NOTICE OF ACCEPTANCE; EVIDENCE SUBMITTED

THIS IS A TRUE AND CERTIFIED
COPY OF THE RECORDS ON FILE IN
THE CITY OF MIAMI

Certified by: *Vivian Fuster*
Vivian Fuster
Building Dept. Office of Microfilm

**A.   DRAWINGS**
   1.   Manufacturer's die drawings and sections.
   2.   Drawing No **W04-91**, titled "Series K2LM Alum. Out-Swing Entrance Door", sheets 1 through 11 of 11, prepared by Al-Farooq Corporation, dated 10/25/04 with revision D dated 10/21/11, signed and sealed by Javad Ahmad , P.E.

**B.   TESTS**
   1.   Test reports on: 1) Air Infiltration Test per FBC, TAS 202-94
                              2) Uniform Static Air Pressure Test Loading per FBC, TAS 202-94
                              3) Water Resistance Test per FBC, TAS 202-94
                              4) Large Missile Impact Test per FBC, TAS 201-94
                              5) Cyclic Wind Pressure Loading per FBC, TAS 203-94
                              6) Forced Entry Test, per FBC 2411.3.2.1 (b) and TAS 202-94
        along with marked-up drawings and installation diagram of a aluminum outswing door, prepared by Fenestration Testing Laboratory, Inc., Test Reports No. **FTL-4267, FTL-4238, FTL-4257** and **FTL-4276**, dated 06/18/04, 06/30/04, 08/12/04 and 08/13/04 respectively, all signed and sealed by Edmundo Largaespada, P.E. *(Submitted under previous NOA #05-0301.04)*

**C.   CALCULATIONS:**
   1.   Anchor verification calculations and structural analysis, complying with FBC-2007 and FBC-2010, prepared by Al-Farooq Corporation, dated 02/02/11 and updated on 10/24/11, signed and sealed by Javad Ahmad, P.E.
   2.   Glazing complies with ASTM E1300-04

**D.   QUALITY ASSURANCE**
   1.   Miami-Dade Department of Permitting, Environment, and Regulatory Affairs (PERA).

**E.   MATERIAL CERTIFICATIONS**
   1.   Notice of Acceptance No. **11-0325.05** " issued to Solutia, Inc. for their "Saflex and Vanceva clear and color interlayers" dated 05/05/11, expiring on 05/21/16
   2.   Notice of Acceptance No. **08-0206.01** issued to **Solutia, Inc.** for their "**Saflex HP Glass Interlayer**" dated 04/17/08, expiring on 04/14/13.
   3.   Notice of Acceptance No. **10-0331.02** issued to **Cytec Industries, Inc.** for their "**Uvekol S Laminated Glass Interlayer**", dated 05/05/10, expiring on 02/08/14.

Manuel Perez, P.E.
**Product Control Examiner**
**NOA No. 11-1208.01**
**Expiration Date:  May 12, 2016**
**Approval Date:  February 23, 2012**

E - 1

**SMI Aluminum Systems, LLC**

### NOTICE OF ACCEPTANCE: EVIDENCE SUBMITTED

**F.    STATEMENTS**

    **1.**    Statement letter of conformance, no financial interest and compliance with the FBC 2010, dated 10/24/11, signed and sealed by Javad Ahmad, P.E.

    **2.**    Laboratory compliance letter for Test Reports No. **FTL-4267**, **FTL-4238**, **FTL-4257**, **FTL-4276**, issued by Fenestration Testing Laboratory, Inc., dated 16/18/04, 06/30/04, 08/12/04 and 08/13/04 respectively, all signed and sealed by Edmundo Largaespada, P.E.   *(Submitted under previous NOA No. 05-0301.04)*

    **3.**    Name change documentation, dated September, 2010, was submitted under previous **NOA# 11-0316.05**.

**G.    OTHERS**

    **1.**    Notice of Acceptance No. **11-0316.05**, issued to SMI Aluminum Systems, LLC for their Series "K2LM" 10'0" Outswing Glazed Aluminum Entrance Door - L.M.I., approved on 05/12/11 and expiring on 05/12/16.

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by: Vivian
Building Dept. Office of Microfilm

Manuel Perez, P.E.
Product Control Examiner
NOA No. 11-1208.01
Expiration Date:  May 12, 2016
Approval Date:  February 23, 2012

E - 2



THESE DOORS ARE RATED FOR LARGE & SMALL MISSILE IMPACT.
SHUTTERS ARE NOT REQUIRED.

### SERIES K2LM ALUMINUM OUT-SWING DOOR

USE BUMPER THRESHOLD (#5A+5B) WHEN WATER
INFILTRATION REQUIREMENTS ARE NOT APPLICABLE.

USE HIGH-RISE THRESHOLD COVER (#5A+5C) WHEN WATER
INFILTRATION REQUIREMENTS MUST BE MET.

SEE CHARTS ON SHEET 2 FOR DESIGN LOAD CAPACITY OF
SINGLE (X) AND DOUBLE (XX) LEAF DOORS W/O TRANSOMS.

SEE CHARTS ON SHEET 3 FOR DESIGN LOAD CAPACITY OF
SINGLE (O/X) OR DOUBLE (O/XX) LEAF DOORS WITH TRANSOMS.

SEE CHARTS ON SHEETS 5 & 6 FOR DESIGN LOAD CAPACITY
OF DOOR MULLION.

USE LOWER VALUES OF DOOR MULLION CHARTS (SHEETS 5 & 6)
OR DOOR CAPACITY CHARTS (SHEETS 2 & 3).

**TYPICAL ELEVATIONS**

#### NOTES:

THIS PRODUCT HAS BEEN DESIGNED AND TESTED TO COMPLY WITH THE
REQUIREMENTS OF THE FLORIDA BUILDING CODE INCLUDING HIGH VELOCITY
HURRICANE ZONE (HVHZ).

WOOD BUCKS BY OTHERS, MUST BE ANCHORED PROPERLY TO TRANSFER
LOADS TO THE STRUCTURE.

ANCHORS SHALL BE AS LISTED, SPACED AS SHOWN ON DETAILS, ANCHORS
EMBEDMENT TO BASE MATERIAL SHALL BE BEYOND WALL DRESSING OR STUCCO.

ANCHORING OR LOADING CONDITIONS NOT SHOWN IN THESE DETAILS ARE
NOT PART OF THIS APPROVAL.

A LOAD DURATION INCREASE IS USED IN DESIGN OF ANCHORS INTO WOOD ONLY.

MATERIALS INCLUDING BUT NOT LIMITED TO STEEL/METAL SCREWS, THAT
COME INTO CONTACT WITH OTHER DISSIMILAR MATERIALS SHALL MEET THE
REQUIREMENTS OF THE FLORIDA BLDG. CODE SECTION 2003.8.4.

**LAMINATED GLASS
LARGE MISSILE IMPACT**

drawing no.
**W04-91**

sheet 1 of 11



NOTE:
GLASS CAPACITIES ON THIS SHEET ARE BASED ON ASTM E1300-04 (3 SEC. GUSTS) AND FLORIDA BUILDING COMMISSION DECLARATORY STATEMENT DCA05-DEC-219

( X )

( XX )   ( XX )

TRANSOM JAMB

GLASS TYPE 'A'    GLASS TYPE 'B'

GLAZING DETAILS TRANSOM

GLASS TYPE 'A'    GLASS TYPE 'B'

GLAZING DETAILS DOOR LEAF

#12-24 X 3/4" FH SCREWS AT 4" FROM CORNERS AND 12" O.C. MAX. SPACING

1/2" MIN. TYP.
GLASS BITE

SILICONE DOW CORNING 795

**SINGLE OR DOUBLE ENTRANCE DOORS W/O TRANSOM**

| NOMINAL DIMS. | | DESIGN LOAD CAPACITY-PSF | |
|---|---|---|---|
| OPNG. HEIGHT INCHES | LEAF WIDTH INCHES | EXT.(+) | INT.(−) |
| 80 | 30 | 100.0 | 120.0 |
| | 36 | 100.0 | 120.0 |
| | 42 | 100.0 | 120.0 |
| | 48 | 100.0 | 120.0 |
| 84 | 30 | 100.0 | 120.0 |
| | 36 | 100.0 | 120.0 |
| | 42 | 100.0 | 120.0 |
| | 48 | 100.0 | 120.0 |
| 96 | 30 | 100.0 | 120.0 |
| | 36 | 100.0 | 120.0 |
| | 42 | 100.0 | 120.0 |
| | 48 | 100.0 | 120.0 |
| 108 | 30 | 100.0 | 120.0 |
| | 36 | 100.0 | 120.0 |
| | 42 | 100.0 | 120.0 |
| | 48 | 100.0 | 120.0 |
| 120 | 30 | 100.0 | 100.0 |
| | 36 | 100.0 | 100.0 |
| | 42 | 100.0 | 100.0 |
| | 48 | 100.0 | 100.0 |

AL-FAROOQ CORPORATION
ENGINEERS & PRODUCT DEVELOPMENT
4235 S. W. 87 AVE
MIAMI, FLORIDA 33174
TEL (305) 264-8100   FAX (305) 262-6978

SERIES KCM ALUM OUT-SWING ENTRANCE DOOR

SMI Aluminum Systems, LLC.
1355 N.W. 128 STREET
MEDLEY, FL 33178
TEL (305) 688-6288   FAX (305) 688-6289

PRODUCT REVISED
as complying with the Florida Building Code
Acceptance No 11-1208.01
Expiration Date
By
Miami Dade Product Control

OCT 25 2011

Engr: JAVAD AHMAD
FLA. PE # 70592
C.A.N. 3538

drawing no.
W04-91
sheet 2 of 11

## SINGLE ENTRANCE DOORS WITH TRANSOM
### DESIGN LOAD CAPACITY

| NOMINAL DIMS. | | | WITHOUT REINF. | |
|---|---|---|---|---|
| OPNG. WIDTH INCHES | DOOR HEIGHT INCHES | TRANSOM HEIGHT INCHES | EXT. (+) | INT. (−) |
| 48 MAX. | 108 MAX. | 60 | 100.0 | 120.0 |



( O/X )

## DOUBLE ENTRANCE DOORS WITH TRANSOM
### DESIGN LOAD CAPACITY

| NOMINAL DIMS. | | | WITHOUT REINF. | | WITH REINF. | |
|---|---|---|---|---|---|---|
| OPNG. WIDTH INCHES | DOOR HEIGHT INCHES | TRANSOM HEIGHT INCHES | EXT. (+) | INT. (−) | EXT. (+) | INT. (−) |
| 80 | 60 | 24 | 100.0 | 120.0 | 100.0 | 120.0 |
| | | 30 | 100.0 | 120.0 | 100.0 | 120.0 |
| | | 36 | 100.0 | 120.0 | 100.0 | 120.0 |
| | | 42 | 100.0 | 120.0 | 100.0 | 120.0 |
| | | 48 | 100.0 | 120.0 | 100.0 | 120.0 |
| | | 54 | 100.0 | 113.7 | 100.0 | 120.0 |
| | | 60 | 100.0 | 106.0 | 100.0 | 120.0 |
| | 72 | 24 | 100.0 | 104.3 | 100.0 | 120.0 |
| | | 30 | 97.6 | 97.6 | 100.0 | 120.0 |
| | | 36 | 91.5 | 91.5 | 100.0 | 120.0 |
| | | 42 | 86.0 | 88.0 | 100.0 | 120.0 |
| | | 48 | 81.0 | 81.0 | 100.0 | 120.0 |
| | | 54 | 76.5 | 76.5 | 100.0 | 120.0 |
| | 84 | 24 | 75.4 | 75.4 | 100.0 | 120.0 |
| | | 30 | 70.2 | 70.2 | 100.0 | 120.0 |
| | | 36 | 65.6 | 65.6 | 100.0 | 120.0 |
| | | 42 | 61.4 | 61.4 | 100.0 | 120.0 |
| | | 48 | 57.8 | 57.8 | 100.0 | 120.0 |
| | 96" | 24 | 56.7 | 56.7 | 100.0 | 120.0 |
| | | 30 | 52.5 | 52.5 | 100.0 | 120.0 |
| | | 36 | 48.8 | 48.8 | 100.0 | 120.0 |
| | | 42 | 45.4 | 45.4 | 100.0 | 120.0 |
| 84 | 60 | 24 | 100.0 | 120.0 | 100.0 | 120.0 |
| | | 30 | 100.0 | 120.0 | 100.0 | 120.0 |
| | | 36 | 100.0 | 120.0 | 100.0 | 120.0 |
| | | 42 | 100.0 | 120.0 | 100.0 | 120.0 |
| | | 48 | 100.0 | 116.3 | 100.0 | 120.0 |
| | | 54 | 100.0 | 110.4 | 100.0 | 120.0 |
| | | 60 | 100.0 | 105.0 | 100.0 | 120.0 |
| | 72 | 24 | 100.0 | 100.5 | 100.0 | 120.0 |
| | | 30 | 94.1 | 94.1 | 100.0 | 120.0 |
| | | 36 | 88.4 | 88.4 | 100.0 | 120.0 |
| | | 42 | 83.3 | 83.3 | 100.0 | 120.0 |
| | | 48 | 78.6 | 78.6 | 100.0 | 120.0 |
| | | 54 | 74.3 | 74.3 | 100.0 | 120.0 |
| | 84 | 24 | 72.6 | 72.6 | 100.0 | 120.0 |
| | | 30 | 67.8 | 67.8 | 100.0 | 120.0 |
| | | 36 | 63.4 | 63.4 | 100.0 | 120.0 |
| | | 42 | 59.4 | 59.4 | 100.0 | 120.0 |
| | | 48 | 55.8 | 55.8 | 100.0 | 120.0 |
| | 96" | 24 | 54.6 | 54.6 | 100.0 | 120.0 |
| | | 30 | 50.7 | 50.7 | 100.0 | 120.0 |
| | | 36 | 47.1 | 47.1 | 100.0 | 120.0 |
| | | 42 | 43.9 | 43.9 | 100.0 | 120.0 |

## DOUBLE ENTRANCE DOORS WITH TRANSOM
### DESIGN LOAD CAPACITY

| NOMINAL DIMS. | | | WITHOUT REINF. | | WITH REINF. | |
|---|---|---|---|---|---|---|
| OPNG. WIDTH INCHES | DOOR HEIGHT INCHES | TRANSOM HEIGHT INCHES | EXT. (+) | INT. (−) | EXT. (+) | INT. (−) |
| 96 | 60 | 24 | 100.0 | 120.0 | 100.0 | 120.0 |
| | | 30 | 100.0 | 120.0 | 100.0 | 120.0 |
| | | 36 | 100.0 | 116.2 | 100.0 | 120.0 |
| | | 42 | 100.0 | 112.1 | 100.0 | 120.0 |
| | | 48 | 100.0 | 108.6 | 100.0 | 120.0 |
| | 72 | 24 | 90.4 | 90.4 | 100.0 | 120.0 |
| | | 30 | 85.2 | 85.2 | 100.0 | 120.0 |
| | | 36 | 80.4 | 80.4 | 100.0 | 120.0 |
| | | 42 | 76.0 | 76.0 | 100.0 | 120.0 |
| | | 48 | 72.0 | 72.0 | 100.0 | 120.0 |
| | 84 | 24 | 65.4 | 65.4 | 100.0 | 120.0 |
| | | 30 | 61.3 | 61.3 | 100.0 | 120.0 |
| | | 36 | 57.6 | 57.6 | 100.0 | 120.0 |
| | | 42 | 54.2 | 54.2 | 100.0 | 120.0 |
| | | 48 | 51.2 | 51.2 | 100.0 | 120.0 |
| | 96" | 24 | 46.1 | 46.1 | 100.0 | 120.0 |
| | | 30 | 45.8 | 45.8 | 100.0 | 120.0 |
| | | 36 | 42.8 | 42.8 | 100.0 | 120.0 |
| | | 42 | 40.1 | 40.1 | 100.0 | 120.0 |
| 108 | 60 | 24 | 100.0 | 120.0 | 100.0 | 120.0 |
| | | 30 | 100.0 | 113.9 | 100.0 | 120.0 |
| | | 36 | 100.0 | 108.3 | 100.0 | 120.0 |
| | 72 | 24 | 82.2 | 82.2 | 100.0 | 120.0 |
| | | 30 | 77.8 | 77.8 | 100.0 | 120.0 |
| | | 36 | 73.7 | 73.7 | 100.0 | 120.0 |
| | 84 | 24 | 59.4 | 59.4 | 100.0 | 120.0 |
| | | 30 | 56.0 | 56.0 | 100.0 | 120.0 |
| | | 36 | 52.8 | 52.8 | 100.0 | 120.0 |
| | 96" | 24 | 44.7 | 44.7 | 100.0 | 120.0 |
| | | 30 | 41.8 | 41.8 | 100.0 | 120.0 |
| | | 36 | 39.3 | 39.3 | 100.0 | 120.0 |



( O/XX )

TRANSOM WITHOUT REINF.

TRANSOM WITH REINF.

**AL-FAROOQ CORPORATION**
ENGINEERS & PRODUCT DEVELOPMENT
12555 S.W. 87 AVE.
MIAMI, FLORIDA 33174
TEL. (305) 264-8100    FAX (305) 262-6978

SERIES K2LN ALUM OUT-SWING ENTRANCE DOOR
SMI Aluminum Systems, LLC.
11,305 N.W. 128 STREET
MEDLEY, FL. 33178
TEL. (305) 888-5289    FAX. (305) 888-4289

PRODUCT REVISED
as complying with the Florida
Building Code
Acceptance No 11-1208.01
Expiration Date

PRODUCT RENEWED
as complying with the Florida
Building Code
Acceptance No 11-1208.01
Expiration Date

Certified by:

NOTE:
GLASS CAPACITIES ON THIS SHEET ARE
BASED ON ASTM E1300−04 (3 SEC. GUSTS)
AND FLORIDA BUILDING COMMISSION
DECLARATORY STATEMENT DCA05−DEC−219

drawing no. W04−91
sheet 3 of 11





THIS IS A TRUE AND CERTIFIED COPY ON FILE IN THE CITY OF MIAMI

Vivian Fuster
Building Dept. Office of Microfilm



THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI
Certified by: Vivian Fuster
Building Dept. Office of Microfilm

**DOOR MULLION LOAD CAPACITY**

| DOOR WIDTH W1 | SIDELITE WIDTH W2 | DOOR HEIGHT A | FRAME SPAN L | LOADS-PSF EXT. (+) INT. (-) |
|---|---|---|---|---|
| 60" | 30" | 80" | 108" | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 100.0 |
| 72" | 30" | | | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 100.0 |
| 84" | 30" | | | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 97.3 |
| | 42" | | | 94.7 |
| 96" | 30" | | | 96.7 |
| | 33" | | | 94.2 |
| | 39" | | | 89.4 |
| | 42" | | | 87.3 |
| 60" | 30" | 80" | 114" | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 99.5 |
| 72" | 30" | | | 100.0 |
| | 33" | | | 98.4 |
| | 39" | | | 92.7 |
| | 42" | | | 90.1 |
| 84" | 30" | | | 91.6 |
| | 33" | | | 89.1 |
| | 39" | | | 84.4 |
| | 42" | | | 82.2 |
| 96" | 30" | | | 83.5 |
| | 33" | | | 81.4 |
| | 39" | | | 77.4 |
| 60" | 30" | 80" | 120" | 99.7 |
| | 33" | | | 98.4 |
| | 39" | | | 90.4 |
| | 42" | | | 87.6 |
| 72" | 30" | | | 88.8 |
| | 33" | | | 86.1 |
| | 39" | | | 81.3 |
| | 42" | | | 79.1 |
| 84" | 30" | | | 80.0 |
| | 33" | | | 77.9 |
| | 39" | | | 73.9 |
| | 42" | | | 72.1 |
| 96" | 30" | | | 72.7 |
| | 33" | | | 71.0 |

**DOOR MULLION LOAD CAPACITY**

| DOOR WIDTH W1 | SIDELITE WIDTH W2 | DOOR HEIGHT A | FRAME SPAN L | LOADS-PSF EXT. (+) INT. (-) |
|---|---|---|---|---|
| 60" | 30" | 84" | 108" | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 100.0 |
| 72" | 30" | | | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 100.0 |
| 84" | 30" | | | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 97.8 |
| 96" | 30" | | | 100.0 |
| | 33" | | | 97.7 |
| | 39" | | | 92.6 |
| | 42" | | | 90.3 |
| 60" | 30" | 84" | 114" | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 100.0 |
| 72" | 30" | | | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 95.4 |
| | 42" | | | 92.6 |
| 84" | 30" | | | 94.7 |
| | 33" | | | 92.0 |
| | 39" | | | 87.0 |
| | 42" | | | 84.7 |
| 96" | 30" | | | 86.5 |
| | 33" | | | 84.2 |
| | 39" | | | 80.0 |
| 60" | 30" | 84" | 120" | 100.0 |
| | 33" | | | 99.0 |
| | 39" | | | 92.6 |
| | 42" | | | 89.7 |
| 72" | 30" | | | 91.4 |
| | 33" | | | 88.8 |
| | 39" | | | 83.5 |
| | 42" | | | 81.2 |
| 84" | 30" | | | 82.5 |
| | 33" | | | 80.3 |
| | 39" | | | 76.0 |
| | 42" | | | 74.1 |
| 96" | 30" | | | 75.2 |
| | 33" | | | 73.3 |

**DOOR MULLION LOAD CAPACITY**

| DOOR WIDTH W1 | SIDELITE WIDTH W2 | DOOR HEIGHT A | FRAME SPAN L | LOADS-PSF EXT. (+) INT. (-) |
|---|---|---|---|---|
| 60" | 30" | 96" | 108" | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 100.0 |
| 72" | 30" | | | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 100.0 |
| 84" | 30" | | | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 100.0 |
| 96" | 30" | | | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 100.0 |
| 60" | 30" | 96" | 114" | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 100.0 |
| 72" | 30" | | | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 100.0 |
| 84" | 30" | | | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 95.8 |
| | 42" | | | 92.8 |
| 96" | 30" | | | 96.5 |
| | 33" | | | 93.7 |
| | 39" | | | 88.5 |
| 60" | 30" | 96" | 120" | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 99.8 |
| | 42" | | | 96.5 |
| 72" | 30" | | | 100.0 |
| | 33" | | | 96.8 |
| | 39" | | | 90.7 |
| | 42" | | | 87.9 |
| 84" | 30" | | | 91.0 |
| | 33" | | | 88.2 |
| | 39" | | | 83.1 |
| | 42" | | | 80.7 |
| 96" | 30" | | | 83.3 |
| | 33" | | | 81.0 |

**DOOR MULLION LOAD CAPACITY**

| DOOR WIDTH W1 | SIDELITE WIDTH W2 | DOOR HEIGHT A | FRAME SPAN L | LOADS-PSF EXT. (+) INT. (-) |
|---|---|---|---|---|
| 60" | 30" | 108" | 114" | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 100.0 |
| 72" | 30" | | | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 100.0 |
| 84" | 30" | | | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 100.0 |
| 96" | 30" | | | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 98.3 |
| 60" | 30" | 108" | 120" | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 100.0 |
| | 42" | | | 100.0 |
| 72" | 30" | | | 100.0 |
| | 33" | | | 100.0 |
| | 39" | | | 98.8 |
| | 42" | | | 95.5 |
| 84" | 30" | | | 100.0 |
| | 33" | | | 97.4 |
| | 39" | | | 91.1 |
| | 42" | | | 88.3 |
| 96" | 30" | | | 92.9 |
| | 33" | | | 89.9 |

DOOR MULLION

| SUBSTRATE | NO. OF ANCHORS AT DOOR MULLION |
|---|---|
| WOOD | 12 |
| CONCRETE | 6 |
| METAL | 6 |

Engr: JAVAD AHMAD
CIVIL
FLA. PE # 70592
C.A.N. 3538
OCT 25 2011

PRODUCT REVISED
as complying with the Florida Building Code
Acceptance No 11-1209.01
Expiration Date Jul 10 2016
By Manuel Perez
Miami-Dade Product Control

| revisions: | | | |
|---|---|---|---|
| no | date | by | description |
| A | 03.30.05 | | REV. PER BOCO COMMENTS |
| B | 08.05.10 | | UPDATED TO 2007 FBC |
| C | 02.02.11 | | NO CHANGE THIS SHEET |
| D | 10.21.11 | | NO CHANGE THIS SHEET |

SERIES K2LM ALUM OUT-SWING ENTRANCE DOOR

SMI Aluminum Systems, LLC.
11305 N.W. 128 STREET
MEDLEY, FL 33178
TEL. (305) 888-8288 FAX. (305) 888-6289

AL-FAROOQ CORPORATION
ENGINEERS & PRODUCT DEVELOPMENT
1238 S.W. 87 AVE
MIAMI, FLORIDA 33174
TEL. (305) 264-8100 FAX. (305) 262-6978
afc

COMP-ANL\W04-91SM

date: 10-25-04
scale: 1/2"=1'-0"
dr. by: HAMID
chk. by:

drawing no. W04-91
sheet 6 of 11

THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI



WOOD BUCKS AND METAL STRUCTURE NOT BY 'SMI SYSTEMS' MUST SUSTAIN LOADS IMPOSED BY GLAZING SYSTEM AND TRANSFER THEM TO THE BUILDING STRUCTURE.

**TYPICAL ANCHORS:** SEE ELEV. FOR SPACING

TYPE 'A'– 1/4" DIA. ULTRACON BY 'ELCO' (Fu=177 KSI, Fy=155 KSI)
   INTO 2BY WOOD BUCKS OR WOOD STRUCTURES
   1–3/8" MIN. PENETRATION INTO WOOD

   THRU 1BY BUCKS INTO CONC. OR MASONRY
   1–1/4" MIN. EMBED INTO CONC. OR MASONRY

TYPE 'B'– 1/4" DIA. ULTRACON BY 'ELCO' (Fu=177 KSI, Fy=155 KSI)
   DIRECTLY INTO CONC. OR MASONRY
   1–1/4" MIN. EMBED INTO MASONRY
   1–3/4" MIN. EMBED INTO CONCRETE

TYPE 'C'– #14 SMS OR SELF DRILLING SCREWS (GRADE 2 CRS)
   INTO MIAMI–DADE COUNTY APPROVED MULLIONS (MIN. THK.=1/8")
   INTO METAL STRUCTURES
   STEEL : 12 GA. MIN. (Fy = 36 KSI MIN.)
   ALUMINUM : 1/8" THK. MIN. (6063–T5 MIN.)
   (STEEL IN CONTACT WITH ALUMINUM TO BE PLATED OR PAINTED)

TYPICAL EDGE DISTANCE
   INTO CONCRETE AND MASONRY = 2–1/2" MIN.
   INTO WOOD STRUCTURE = 1" MIN. .
   INTO METAL STRUCTURE = 3/4" MIN.

TYPICAL CL TO CL DISTANCE
   INTO CONCRETE AND MASONRY = 3" MIN.
   INTO WOOD STRUCTURE = 1" MIN.
   INTO METAL STRUCTURE = 1" MIN.

CONCRETE AT HEAD, SILL OR JAMBS f'c = 3000 PSI MIN.
C–90 HOLLOW/FILLED BLOCK AT JAMBS f'm = 2000 PSI MIN.

PRODUCT REVISED
as complying with the Florida
Building Code
Acceptance No 11-1209.01
Expiration Date JULY 14, 2016
By [signature]
Miami Dade Product Control

AL-FAROOQ CORPORATION
ENGINEERING AND PRODUCT DEVELOPMENT
1235 S.W. 87 AVE
MIAMI, FLORIDA 33174
TEL. (305) 264-8100    FAX. (305) 264-5075

SERIES KS1N ALUM OUT-SWING ENTRANCE DOOR

SMI Aluminum Systems, LLC.
11305 N.W. 128 STREET
MEDLEY, FL. 33178
TEL. (305) 884-9686    FAX. (305) 884-0266

drawing no.
W04-91

sheet 7 of 11







1 FRAME HEAD
1A ALT. FRAME HEAD
2 FRAME TRANSOM
3 FRAME JAMB
17 FLAT FILLER
6 TOP RAIL
7 BOTTOM RAIL
11 EXTERIOR GLASS STOP (DOOR)
13 EXTERIOR GLASS STOP (TRANSOM)
8 DOOR STILE
9 ASTRAGAL STILE
40 41 REINFORCING CHANNELS
12 INTERIOR GLASS STOP (DOOR)
14 INTERIOR GLASS STOP (TRANSOM)
15 GLASS STOP (TRANSOM HEAD/SILL)
16A DOOR STOP COVER
16 DOOR STOP
42 43 REINFORCING CHANNELS
5A BUMPER THRESHOLD
5B STD. THRESHOLD COVER
5C HI-RISE THRESHOLD COVER
Engr: JAVAD AHMAD
CIVIL
FLA. PE # 70592
C.A.N. 3538
OCT 25 2011
PRODUCT REVISED
as complying with the Florida Building Code
Acceptance No 11-1208.01
Expiration Date May 12, 2016
By
Miami Dade Product Control
AL-FAROOQ CORPORATION
ENGINEERS & PRODUCT DEVELOPMENT
1235 S.W. 87 AVE
MIAMI, FLORIDA 33174
TEL (305) 264-8100
FAX (305) 262-6978
COMP-ANL W04-91SM
SERIES K2LM ALUM OUT-SWING ENTRANCE DOOR
SMI Aluminum Systems, LLC.
11305 N.W. 128 STREET
MEDLEY, FL 33178
TEL (305) 888-6288 FAX (305) 888-6289
revisions:
drawing no.
W04-91
sheet 9 of 11

## LOCK OPTIONS:

### OPTION 1:

**SINGLE LEAF DOORS:**

ALL SINGLE LEAF DOORS TO BE FITTED WITH 3 POINT LOCK

**DOUBLE LEAF DOORS:**

**ACTIVE LEAF:**

THREE POINT LOCK SYSTEM WITH 5 PLY HOOK LOCK REGENT #222, KEY OPERATED ON EXTERIOR AND THUMB-TURN ON INTERIOR, LOCATED AT 34" FROM BOTTOM OF PANEL

**INACTIVE LEAF:**

TWO POINT LOCK SYSTEM SULLIVAN CH 103 WITH THUMB TURN ON THE INTERIOR, LOCATED AT 34" FROM BOTTOM OF PANEL

### OPTION 2:

**SINGLE LEAF DOORS:**

ALL SINGLE LEAF DOORS TO BE FITTED WITH 3 POINT LOCK

**DOUBLE LEAF DOORS:**

**ACTIVE LEAF:**

THREE POINT LOCK SYSTEM WITH 4 PLY HOOK LOCK REGENT NO. 206-3P, KEY OPERATED ON EXTERIOR AND THUMB-TURN ON INTERIOR, LOCATED AT 36" FROM BOTTOM OF PANEL

**INACTIVE LEAF:**

TWO POINT LOCK SYSTEM SULLIVAN CH 103 WITH THUMB TURN ON THE INTERIOR, LOCATED AT 36" FROM BOTTOM OF PANEL

3/8" HEX STEEL TIP
BOLT GUIDE
STEEL ROD WITH THREADED ENDS
THRESHOLD BOLT

3/8" HEX STEEL TIP
BOLT GUIDE
STEEL ROD WITH THREADED ENDS
THRESHOLD BOLT

## HINGES:

4-1/2 x 4" TWO PIECE STAINLESS STEEL BUTT HINGES AT 6" FROM TOP AND BOTTOM AND 28" O.C. MAX.

#12X1/2" FH SELF TAPPING SCREWS 4 PER HASP

1-1/2" X 1/2" THK.
7-1/2" LONG ALUM PLATE AT HINGE LOCATIONS

## SEALANTS:

ALL FRAME AND LEAF CORNERS AND INSTALLATION SCREWS SEALED WITH SILICONE.

| ITEM # | PART # | SMIS EXT. # | REQD. | DESCRIPTION | MATERIAL | MANF./SUPPLIER/REMARKS |
|---|---|---|---|---|---|---|
| 1 | 5806 | SMI-001 | 1 | FRAME HEAD | 6063-T6 | – |
| 1A | SMM-006 | SMI-006 | 1 | ALT. FRAME HEAD | 6063-T6 | – |
| 2 | 5710 | SMI-018 | AS REQD. | FRAME TRANSOM | 6063-T6 | – |
| 3 | SMM-6007 | SMI-005 | 1 | FRAME JAMB | 6063-T6 | – |
| 5A | SMM-023 | SMI-023 | 1 | BRIDGE THRESHOLD | 6063-T6 | – |
| 5B | SMM-024 | SMI-024 | 1 | STD. THRESHOLD COVER | 6063-T6 | – |
| 5C | SMM-025 | SMI-025 | 1 | HI-RISE THRESHOLD COVER | 6063-T6 | – |
| 6 | SMM-5984 | SMI-012 | 1/ LEAF | TOP RAIL | 6063-T6 | – |
| 7 | SMM-5987 | SMI-013 | 1/ LEAF | BOTTOM RAIL | 6063-T6 | – |
| 8 | SMM-5986 | SMI-011 | 2/ LEAF | DOOR STILE | 6063-T6 | – |
| 9 | SMM-030 | SMI-030 | 1/ LEAF | ASTRAGAL | 6063-T5 | – |
| 11 | SMM-5981 | SMI-007 | 4/ LEAF | EXTERIOR GLASS STOP (DOOR) | 6063-T6 | – |
| 12 | SMM-5982 | SMI-008 | 4/ LEAF | INTERIOR GLASS STOP (DOOR) | 6063-T5 | – |
| 13 | SMM-003 | SMI-016 | – | EXTERIOR GLASS STOP (TRANSOM JAMB) | – | – |
| 14 | SMM-004 | SMI-017 | – | INTERIOR GLASS STOP (TRANSOM JAMB) | – | – |
| 15 | SMM-5712 | SMI-002 | 2/ LITE | GLASS STOP (TRANSOM HEAD/SILL) | – | – |
| 16 | SMM-002 | SMI-014 | 3/ DOOR | DOOR STOP | 6063-T5 | – |
| 16A | SMM-001 | SMI-015 | 3/ DOOR | DOOR STOP COVER | 6063-T5 | – |
| 17 | SMM-5807A | SMI-004 | OPTIONAL | FLAT FILLER | 6063-T6 | – |
| 18 | SMI-003 | – | AS REQD. | INTERMEDIATE SNAP-IN | 6063-T5 | – |
| 19 | H-63 | SMI-001 | AS REQD. | WEDGE-IN GASKET | NEOPRENE | DUROMETER 66 SHORE A |
| 24 | – | SMI-003 | AS REQD. | BULB W/STRIPPING | VINYL | DUROMETER 83 SHORE A |
| 26 | – | – | 3/8" THREADED ROD WITH NUT | | STEEL | – |
| 27 | – | – | 2/ LEAF | FLUSH BOLT GUIDE | ST. STEEL | – |
| 28 | – | – | AS REQD. | PUSH BAR | – | – |
| 29 | – | – | AS REQD. | PULL HANDLE | ALUMINUM | – |
| 30 | – | – | 2 | THRESHOLD CLIP | ALUMINUM | 2" X 2" X 1/8" X 7/8" LONG |
| 31 | – | – | 4/ LEAF | SUPPORT PLATE (1-1/2" X 3-3/8" X 3/16") | ALUMINUM | – |
| 33 | #12 x 1-1/2" | – | AS REQD. | FRAME ASSEMBLY SCREWS | – | HEX H TEKS |
| 35 | #12 X 3/4" | – | AS REQD. | THRESHOLD CLIP SCREWS | – | FH SELF DRILLING |
| 37 | #10 < 5/16" | – | 2/ GUIDE | GUIDE INSTALLATION SCREWS | – | FH MS |
| 40 | – | – | – | REINFORCING CHANNEL (DOOR MULL) | STEEL | 1" X 3-15/16" X 1" X 3/16" THK. |
| 41 | – | – | – | REINFORCING CHANNEL (DOOR MULL) | STEEL | 3/4" X 3-1/2" X 3/4" X 1/8" THK. |
| 42 | – | – | OPTIONAL | REINFORCING CHANNEL (TRANSOM) | STEEL | 1" X 4-1/8" X 1" X 3/16" THK. |
| 43 | – | – | OPTIONAL | REINFORCING CHANNEL (TRANSOM) | STEEL | 3/4" X 3-11/16" X 3/4" X 1/8" THK. |

Engr: JAVAD AHMAD
CIVIL
FLA. PE # 70592
C.A.N. 3538

OCT 25 2011

PRODUCT REVISED
as complying with the Florida
Building Code
Acceptance No. 11-1003.01
Expiration Date 12/12/2016
By
Miami Dade Product Control

ALFADOOR CORPORATION
ENGINEERING PRODUCT DEVELOPMENT
1235 S.W. 87 AVE
MIAMI, FLORIDA 33174
TEL (305) 264-6900
FAX (305) 262-6979
COMP-0441 W04-91.SM

SMI Aluminum Systems, LLC.
11305 N.W. 128 STREET
MEDLEY, FL 33178
TEL. (305) 885-6288   FAX. (305) 885-6289
SERIES KSLM ALUM OUT-SWING ENTRANCE DOOR

date 10-26-04
scale 3/8" = 1'
dr. by: JAVAD
chk. by:

drawing no.
W04-91
sheet 10 of 11



THIS IS A TRUE AND CERTIFIED COPY OF THE RECORDS ON FILE IN THE CITY OF MIAMI

Certified by:
Vivian Rodriguez
Building Dept. Office of Microfilm

FRAME BOTTOM CORNER

TRANSOM CORNER

FRAME TOP CORNER

DOOR CORNER

DOOR LEAF CORNER

PRODUCT REVISED
as complying with the Florida
Building Code
Acceptance No. 11-1008.01
Expiration Date 4-13-2016
By Vivian Rodriguez
Miami Dade Product Control

| | SERIES K2LM ALUM OUT-SWING ENTRANCE DOOR | AL-FAROOQ CORPORATION |
|---|---|---|
| | SMI Aluminum Systems, LLC. | ENGINEERS & PRODUCT DEVELOPMENT |
| | 11305 N.W. 128 STREET | 1235 S.W. 87 AVE |
| | MEDLEY, FL. 33178 | MIAMI, FLORIDA 33174 |
| | TEL. (305) 888-6288   FAX. (305) 888-6289 | TEL. (305) 264-8100   FAX. (305) 262-6978 |

date: 10-25-04
scale: 3/8" = 1'
d. by: HAMID
chk. by:

drawing no. W04-91    sheet 1 of 11

revisions:
| no | date | by | description |
|---|---|---|---|
| A | 03.30.05 | | NO CHANGE THIS SHEET |
| B | 05.05.10 | | UPDATED TO 2007 FBC |
| C | 02.02.11 | | NO CHANGE THIS SHEET |
| D | 10.21.11 | | NO CHANGE THIS SHEET |

COMP-ANL\W04-91SM

# City of Miami



## Permit Issuance

Financial Transaction ID: **132816**
LM Reference Number: BD14-004470-001-B001
Job Address: 1450 SW 7 ST

THIS IS A TRUE AND CERTIFIED
COPY OF THE RECORDS ON FILE IN
THE CITY OF MIAMI

### FEE SUMMARY

Released by:
Vivian Fuster

| Fee Category | Fee Description | Quantity | Unit Type | Amount |
|---|---|---|---|---|
| BASE FEE | ADMINISTRATIVE | | | $4.00 |
| BASE FEE | APPLICATION | | | $40.00 |
| SOLID WASTE | SOLID WASTE COMMERCIAL (COST < 1 MIL) | 20,000.00 | DOLLARS | $500.00 |
| DADE COUNTY | CODE COMPLIANCE | 20,000.00 | DOLLARS | $12.00 |
| STATE OF FLORIDA | BUILDING CODE ADM & INSP | 200.00 | DOLLARS | $3.00 |
| STATE OF FLORIDA | DCA / FLORIDA BUILDING COMMISSION | 200.00 | DOLLARS | $3.00 |
| REVIEW PW | PW PLAN REVIEWS: OTHER THAN BUILDINGS | | | $13.00 |
| BUILDING PERMIT | COMMERCIAL PROJECTS UP TO 30 MILLION | 20,000.00 | DOLLARS | $200.00 |
| PERMIT MISC | DOUBLE FEE | 200.00 | DOLLARS | $200.00 |
| PERMIT MISC | FINE | | | $110.00 |
| PERMIT MISC | ENR - BCI INFLATION RATE | 200.00 | DOLLARS | $7.96 |
| CREDIT | Upfront Fees | | | ($100.00) |

**Total:** **$992.96**

**City of Miami**
**Building Department**
**Permit Application**



Process #: BD14004470-001
Total Due: $992.96
Permit #: B014-004470-001

B001

| Job Location | | Owner Lessee Information | |
|---|---|---|---|
| **Folio Number:** 01-4102-006-6270 | | **Owner:** Tower Hotel LLC | |
| **Job Address:** 1632 SW 7 St   **Zip:** 33135 | | **Owner's Address:** 1637 SW 8ct Miami, FL 33135 | |
| **Legal Address:** | | **Phone:**                **E-Mail:** | |
| **Unit No:** | | **Lessee:** | |
| ☐ Commercial   ☐ Residential   ☐ Dry Run | | **Lessee Address:** | |
| ☐ Owner   ☐ Contractor   ☐ Lessee | | **Phone:**              **E-Mail:** | |
| **Contractor Information** | | **General Information** | |
| **Contractor's License/Registration No:** CGC1519904 | | **Proposed Use of Building:** Hotel | |
| **Contractor's Social Security Number** | | **Current Use:** | |
| **Qualifier's Name:** David Bradley | | **Job Description:** Replacing Windows | Window Reinforcement |
| **Company's Name:** Pocca Corp | | **New Construction Total Cost:** | Structural |
| **Address:** 800 NE 125 St. | | **New Construction Sq. Ft:**      **Lineal Ft:** | Concrete |
| **City:** Miami **State:** FL **Zip:** 33161 | | **Remodeling Total Cost:** 20,000 | Repair |
| **Phone:** 305 785103 | | **Remodeling Sq. Ft:**        **Lineal Ft:** | |
| **E-Mail:** David@Poccacorp.com | | **Units:**   **Floors:**   **Height:**   **Gallons:** | |
| **If this is related to another permit, you must provide :** | | **Master Permit Number:**        **Plan No:** | |
| **Threshold Inspector** | | **Bonding Company** | |
| **Name:** | | **Name:** | |
| **Address:** | | **Address:** | |
| **Phone:** | | **Phone:** | |
| **Permit Type** | | **Engineer/Architect Information** | |
| ☒ Building   ☐ Plumbing | | **Engineer's Name:** | |
| ☐ Mechanical/AC   ☐ Plumbing/Gas | | **Address:** | |
| ☐ Electrical   ☐ Roofing | | **Phone:**            **E-Mail:** | |
| ☐ Landscaping   ☐ Sign | | **Architect's Name:** | |
| ☐ Electrical   ☐ Roofing | | **Address:** | |
| ☐ Fire   ☐ Mechanical Elevator | | **Phone:**            **E-Mail:** | |
| **Change to Existing Permit** | | **Building Permit only** | |
| ☐ Change of Contractor (CR)   ☐ Change of Qualifier (CQ) | | ☐ New Construction   ☐ Addition | |
| ☐ Re-certification of Plans (RC)  ☐ Plans revision (RV) | | ☒ General Repair/Remodeling   ☐ Misc. Building | |
| ☐ Completion Permit (CP) | | ☐ Change of Occupancy   ☐ Demolition | |
| | | ☐ Change of Use | |

I understand that separate permits must be obtained for other items (i.e. electrical, plumbing, roofing, etc.), unless specifically covered by this permit. In signing this application, I am responsible for the supervision and completion of the construction in accordance with the plans and specifications and for compliance with all federal, state, and county laws applicable.

**Owner's Affidavit:** I certify that all the forgoing information is correct. Owner Certifies that the aforementioned Contractor has the authorization to perform the work as specified above

**Lessee's Affidavit:** Lessee certifies that he has full consent and authorization from owner of subject property to perform the above-mentioned work and to hire above captioned contractor.

I have read the information contained in this permit and understand that any misrepresentation may constitutes fraud and could void the permit.

Signature of Owner/Lessee                Signature of Qualifier

William O Puller                        David Bradley
Print Name                              Print Name

State of Florida, County of Miami-Dade          State of Florida, County of Miami-Dade
Sworn to and subscribed before me this          Sworn to and subscribed before me this
Day of March , 20 14                            Day of
By                                              By                VINCENZO BRUNO
(SEAL)                                          ORESTE INNOCENTI      MY COMMISSION # EE 017169
Personally known or Produced Identification     Notary Public - State of Florida    EXPIRES: May 15, 2017
Type of Identification produced                 My Comm. Expires May 15, 2017   Bonded Thru Budget Notary Services
                                                Commission # EE   Type of Identification produced

| FOR BUILDING DEPARTMENT USE ONLY | | | |
|---|---|---|---|
| **Job Code:** | **Certificates Required:** ☐ C.O.  ☐ C.C. | **Plans:** ☐ Yes  ☐ No | **No. Of Sheets:** |
| **Tracking required** | | | |
| **Application Received by:** ___ **Date:** 4-18-14 | | **Permit Authorized by:** ___ **Date** 6/10/14 | |

Rev 2/02

# City of Miami



## Data Summary



THIS IS A TRUE AND CERTIFIED
COPY OF THE RECORDS ON FILE
THE CITY OF MIAMI

Certified by: _Vivian Fuster_
Building Dept. Office of Microfilm

Plan Number: **BD14-004470-001**

### Job Location

Job Address: **1450 SW 7 ST**
Legal Address: **1450 SW 7 ST**
Folio Number: 0141020066270
Additional Address Information:
FEMA Elevation:
Development Name:

Unit / Suite #:
Building Name:
Building #:
FEMA Flood Zone: **X**
M21 Zone: **T5-O**

### Owner Information

Name:
Corporation:   **TOWER HOTEL LLC**
Address 1:   **1637 sw 8 st**
Address 2:
City, State Zip:   **miami, FL 33135**
Phone:   **(000)000-0000**
Email:

### Tenant/Lessee Information

Name:
Address 1:
Address 2:
City, State Zip:
Phone:
Email:

### Contractor Information

Contractor License: **cgc1519904**
Company: **EPOCA CORP**
Name:   **DAVID BRADLEY**
Address 1:   **800 NE 125 ST**
Address 2:
City, State Zip:   **MIAMI, FL 33181**
Phone:   **(305)332-0130**
Email:   **INFO@EPOCACORP.COM**

# City of Miami



### Data Summary (continued)

Plan Number: **BD14-004470-001**

THIS IS A TRUE **AND CERTIFIED** ~~OF~~ THE **RECORDS** ON FILE IN ~~THE~~ CITY OF **MIAMI**

Certified by: _Vuster_

Vivian Fuster
Building Dept. Office of Microfilm

## Job Description

Job Category: **REMODELING/ALTERATIONS/REPAIRS**

Permit Type: **BUILDING**

Job Description:
**CONCRETE RESTORATION
STRUCTURAL REPAIRS**

Required Certificate:

Plans Required: **YES**

Plans Review Discipline Tracking List:

| | |
|---|---|
| **STRUCTURAL** | **ZONING** |
| **FLOOD PLAIN** | **PUBLIC WORKS** |
| **BUILDING** | **CODE COMPLIANCE** |

Applicant Role: **Contractor**

Property Type: **Commercial**

## Project Totals

New/Addition Sq Ft
Remodeling Sq Ft
Total Sq. Ft.

| | | |
|---|---|---|
| New/Addition Cost: | | $0.00 |
| Remodeling Cost: | + | $20,000.00 |
| **Total Cost:** | **=** | **$20,000.00** |

## Additional Options

Exterior Remodeling

# CITY OF MIAMI
## Building Department

I (We) have been retained by _OWNERS_ to perform special inspector services under the Florida Building Code at the _1450 SW 7TH STREET_ project on the below listed structures as of _3-24-14_ (date). I am a registered architect or professional engineer licensed in the State of Florida.

PROCESS NUMBERS: _____    _____

SPECIAL INSPECTOR FOR PILING, FBC 1822.1.20 (R4404.6.1.20)
SPECIAL INSPECTOR FOR TRUSSES >35' LONG OR 6' HIGH 2319.17.2.4.2 (R4409.6.17.2.4.2)
\* SPECIAL INSPECTOR FOR REINFORCED MASONRY, FBC 2122.4 (R4407.5.4)
SPECIAL INSPECTOR FOR STEEL CONNECTIONS, FBC 2218.2 (R4408.5.2)
SPECIAL INSPECTOR FOR SOIL COMPACTION, FBC 1820.3.1 (R4404.4.3.1)
SPECIAL INSPECTOR FOR PRECAST UNITS & ATTACHMENTS, FBC 1927.12 (R4405.9.12)
SPECIAL INSPECTOR FOR CURTAIN WALL FBC 2414.7 (R4410.5.7)
SPECIAL INSPECTOR FOR STRUCTURAL GLAZING FBC 2415.7.2 (R4410.6.6.2)
✗ SPECIAL INSPECTOR FOR _Concrete Repairs_

*Note: Only the marked boxes apply.*

The following individual(s) employed by this firm or me are authorized representatives to perform inspections \*

1. _DANIEL GONZALEZ_    2. _____

*Special Inspectors utilizing authorized representatives shall insure the authorized representative is qualified by education or licensure to perform the duties assigned by the Special Inspector. The qualifications shall include licensure as a professional engineer, or architect; graduation from an engineering education program in civil or structural engineering; graduation from an architectural education program; successful completion of the NCEES Fundamentals Examination; or registration as building inspector or general contractor.*

I, (we) will notify the City of Miami Building Department of any changes regarding authorized personnel performing inspection services.

I, (we) understand that a Special Inspector inspection log for each building must be displayed in a convenient location on the site for reference by the City of Miami Building Department Inspector. All mandatory inspections, as required by the Florida Building Code, must be performed by the City. The City building inspections must be called for on all mandatory inspections. *Inspections performed by the Special Inspector hired by the Owner are in addition to the mandatory inspections performed by the Department.*

Further, upon completion of the work under each Building Permit I will submit to the Building Inspector at the time of final inspection the completed inspection log form and a sealed statement indicating that, to the best of my knowledge, belief and professional judgment those portions of the project outlined above meet the intent of the Florida Building Code and are in substantial accordance with the approved plans.

**Engineer/Architect**

Name _EDWARD A. LANROS, P.E._
(PRINT)

038393

**Signed and Sealed**

Date: _3-24-14_

Address _7850 NW 146 ST. #509_
_MIAMI LAKES, FL. 33016_

Phone No. _305-823-3938_



**Edward A. LANDERS, P.E.**
CONSULTING ENGINEERS

March 24, 2014

City of Miami
Building and Zoning Department
444 SW 2nd Street
Miami, Florida

Attn: Building Official

Re: Structural Report on Concrete Repairs

Project:  Tower Hotel
1450 SW 7th Street
Miami, Florida

Dear Sir;

We inspected the current condition of the existing walls, tie columns and tie beams at the above referenced project.  The investigation of repairs was limited to the exterior elements of the building structure at this time. The existing concrete structural elements exhibit spalled and deteriorated concrete at the window lintels and sills, support beams and columns of the building.  The concrete surfaces require removal of all spalled and deteriorated concrete, the cleaning and coating of rebar, crack repair and the application of hand applied repair materials. In addition, several new doors are proposed (into revised openings) which require new filled cells at sides of openings and extended lintels.

We recommend, therefore, that the following repair procedure be implemented to repair the existing concrete walls, cracks, tie beams and tie columns on all designated surfaces, to prevent further deterioration.  All repairs shall be made in accordance with approved methods and procedures and per the manufacturers' material recommendations

**Work under this permit application will not reduce the structural strength of the building or any member thereof.**

**The Structure has less than Substantial Structural Damage.**

### CONCRETE REPAIR RECOMMENDATIONS

The following is our recommended repair procedure for all spalled concrete areas as well as cracks in concrete surfaces. The specific areas include the concrete spalling at window and door lintels and sills, support beams and columns, or any additional observed conditions.  We

7850 NW 146TH STREET, SUITE 509 * MIAMI LAKES FL 33016 * PHN: (305)823-3938 * FAX: (305)823-9355



Edward A.
LANDERS, P.E.
CONSULTING ENGINEERS

recommend concrete repair for the structural elements and submit the following procedure described as follows:

1. Remove all loose and deteriorated concrete with a light-chipping hammer in all areas that exhibit concrete cracks and spalling.
2. Randomly test areas with a hammer to determine any additional areas for removal. Do not remove any sound concrete from around rebar.
3. Tie-up and secure any sagging re-bar and support as required. Do not remove any existing re-bar without prior authorization.
4. Replace deteriorated re-bar only as required by the Engineer.
5. Wire brush all exposed re-bar to remove all loose scale, concrete and rust.
6. All cleaned re-bar should be coated with a rust inhibiter as soon as possible after cleaning. The following are acceptable coatings:

   a. Sika Armatek 110 EpoCem, by Sika Chemical Co.
   b. Zinc Rich Epoxy Primer, B-6270, by Delta Labs
   c. Corr-bond Euclid Chemical Co.
   d. Sonnoborn "Sonoprep"
   e. Approved Equals.

7. The patching material should be a cement-based product designed specifically as a patching material. The following are recommended products that must be mixed, applied, etc., in accordance with the manufacturer's recommendations; ( Coastal Construction Products, 305-757-2121)

   a. Thorite, by Thoro Products,
   b. Euco Verticoat, by Euclid Chemical,
   c. Sonnoborn "Gelpatch"
   d. Sikacrete 211, by Sika Chemical.
   e. Sika Top 122 Plus, by Sika Chemical.

8. Apply patching to all prepared surfaces either by hand or sprayed finished sufficiently to match the adjacent concrete surfaces. Concrete may be used to repair the undersides of the main beams. All work to be performed by a qualified application contractor in accordance with approved procedures and recommendations.

9. All cracks should be "V'd" out to sound and secure material. The crack must be filled with a Sonneborn NP1 primer and polysulfide sealant per the Manufacturers recommendations. The wall surface may then be applied with stucco and painted.



Please call if we can provide any additional information or assistance.

Very truly yours,

Edward A. Landers, P.E.

# TOWER HOTEL
## 1450 SW 7th ST
### MIAMI, FLORIDA, 33130

AREA OF WORK



1450 SW 7th St, Miami, FL 33130, USA



## LOCATION PLAN
N.T.S.

---

**CITY OF MIAMI**
**PUBLIC WORKS DEPARTMENT**

Date 5/1/14   Plan #/Purpose BV4004470001

☑ APPROVED

☐ APPROVED SUBJECT TO NOTATIONS AND CORRECTIONS
  AS INDICATED

☐ DISAPPROVED, REVISE AS INDICATED BY NOTATIONS
  AND CORRECTIONS, AND RESUBMIT

Checking of plans and submittals is limited to conformance with general design standards only. It is not intended to be a verification of the items, or total material required. Approval shall not relieve the applicant, design professional, or contractor of the responsibility for details of design, correct dimensions for proper fitting, capacity, performance, permitting, construction, or any other requirements of the project.

REVIEWER: _____   CHECKED: _____

NPDES City Permit #: _____   Area (acres): _____

FDEP Permit #: _____   NPDES Reviewer: _____

---

## INDEX

### COVER SHEET
C-1 SITE PLAN

### STRUCTURAL
S-1 NOTES
S-2 ELEVATIONS
S-3 ELEVATIONS
S-4 REPAIR DETAILS
S-5 STANDARD DETAILS

---

## SCOPE OF WORK
ALTERATION LEVEL II

1. CONCRETE REPAIR EXTERIOR WINDOW OPENINGS.

2. NEW FILLED CELLS AND LINTEL AT NEW DOOR OPENINGS.

3. CONCRETE SPALLING & CRACKS.



Edward A. LINDERS, P.E.
CONSULTING ENGINEERS
Tel. (305) 823-3938
Fax (305) 823-9335

CONCRETE REPAIR DETAILS

PERMIT SET

1413380

TOWER HOTEL

1450 SW 7th ST
MIAMI, FLORIDA, 33130

C-1
SHEET NUMBER

# GENERAL STRUCTURAL NOTES
(Florida Building Code - 2010 Edition)

## GENERAL:

1. THE DRAWINGS ARE INTENDED TO SHOW THE GENERAL ARRANGEMENT, DESIGN AND EXTENT OF THE WORK AND ARE PARTIALLY DIAGRAMMATIC. THEY ARE NOT INTENDED TO BE SCALED FOR ROUGH-IN MEASUREMENTS, OR TO SERVE AS SHOP DRAWINGS OR PORTIONS THEREOF.

2. ALL DETAILS AND SECTIONS SHOWN ON THE DRAWINGS ARE INTENDED TO BE TYPICAL, AND SHALL BE CONSTRUED TO APPLY TO ANY SIMILAR SITUATION ELSEWHERE ON THE PROJECT, EXCEPT WHERE A DIFFERENT DETAIL OR SECTION IS SHOWN.

3. PRIOR TO START OF CONSTRUCTION, THE CONTRACTOR AND ALL THE SUBCONTRACTORS SHALL VERIFY ALL GRADES, LINES, LEVELS, DIMENSIONS AND COORDINATE EXISTING CONDITIONS AT THE JOB SITE WITH THE PLANS AND SPECIFICATIONS. THEY SHALL REPORT ANY INCONSISTENCIES OR ERRORS IN THE ABOVE TO THE ARCHITECT/ENGINEER BEFORE COMMENCING WORK. THE CONTRACTOR AND HIS SUBCONTRACTORS SHALL LAY-OUT THEIR WORK FROM ESTABLISHED REFERENCE POINTS AND BE RESPONSIBLE FOR ALL LINES, ELEVATIONS AND MEASUREMENTS IN CONNECTION WITH THEIR WORK.

4. IF ANY ERRORS OR OMISSIONS APPEAR IN THE DRAWINGS, GENERAL NOTES OR OTHER DOCUMENTS, THE CONTRACTOR SHALL NOTIFY THE ENGINEER IN WRITING OF SUCH OMISSION OR ERROR PRIOR TO PROCEEDING WITH ANY WORK WHICH APPEARS IN QUESTION. IN THE EVENT OF THE CONTRACTOR'S FAILURE TO GIVE SUCH ADVANCE NOTICE, HE WILL BE HELD RESPONSIBLE FOR THE RESULTS OF ANY SUCH ERRORS OR OMISSIONS AND THE COST OF RECTIFYING THE SAME.

5. THE CONTRACTOR SHALL USE THE STRUCTURAL DRAWINGS AND SPECIFICATIONS TOGETHER WITH THE ARCHITECTURAL, MECHANICAL, ELECTRICAL AND OTHER TRADE DRAWINGS AND SHOP DRAWINGS, TO LOCATE DEPRESSED SLABS, SLOPES, DRAINS, OUTLETS, RECESSES, OPENINGS, BOLT SETTING, SLEEVES, DIMENSIONS, ETC. NOTIFY ARCHITECT/ENGINEER, IN WRITING, OF ANY POTENTIAL CONFLICTS BEFORE PROCEEDING WITH THE WORK.

## SHOP DRAWINGS & DELEGATED ENGING:

1. ALL SHOP DRAWINGS SHALL BE SUBMITTED FOR ENGINEER'S REVIEW ONLY AFTER THEY HAVE BEEN THOROUGHLY REVIEWED BY THE CONTRACTOR FOR CONSTRUCTION METHODS, DIMENSIONS AND OTHER TRADE REQUIREMENTS, AND STAMPED WITH THE CONTRACTOR'S APPROVAL STAMP. THE ENGINEER ASSUMES NO RESPONSIBILITY FOR DIMENSIONS, QUANTITIES, ENGINEERING DESIGN BY DELEGATED ENGINEERS, ERRORS OR OMISSIONS AS A RESULT OF REVIEWING SHOP DRAWINGS. APPROVAL OF SHOP DRAWINGS IS MADE IN GOOD BY THE CONTRACTOR, IRRESPECTIVE OF NEGLECT, ENTAILING THE REVIEW OF DRAWINGS BY THE ENGINEER AND EVEN THOUGH WORK IS DONE IN ACCORDANCE WITH SUCH DRAWINGS.

2. BEFORE STRUCTURAL INSPECTIONS CAN BE MADE ON A PORTION OF THE STRUCTURE, ALL RELATED SHOP DRAWINGS, DELEGATED ENGINEERING, PRODUCT APPROVAL, MANUFACTURER'S DATA AND OTHER RELATED INFORMATION, MUST BE REVIEWED AND APPROVED BY THE ENGINEER-OF-RECORD AND APPROVED BY THE BUILDING DEPARTMENT.

3. ALL DRAWINGS SHALL CONTAIN THE MINIMUM INFORMATION OUTLINED IN THE FLORIDA BUILDING CODE

4. ALL DELEGATED ENGINEER'S SHOP DRAWINGS SHALL COMPLY WITH ALL THE REQUIREMENTS OF THE FLORIDA BUILDING CODE SHOP DRAWINGS SHALL CONTAIN ALL INFORMATION SHOWN ON THE STRUCTURAL PLANS (RELATED TO THE DELEGATED DESIGN) INCLUDING ALL DESIGN LOADS, IN ADDITION TO THE INFORMATION REQUIRED BY DELEGATED ENGINEER'S DESIGN.

5. THE ENGINEER OF RECORD SHALL REVIEW ALL SHOP DRAWINGS, PREPARED AND SIGNED AND SEALED BY THE CONTRACTOR'S DELEGATED ENGINEER, ONLY FOR GENERAL COMPLIANCE WITH THE DESIGN INTENT, REQUIRED LOADING AND COORDINATION WITH THE STRUCTURE DESIGNED BY THE ENGINEER-OF-RECORD.

6. CONTRACTOR SHALL SUBMIT TO THE ENGINEER OF RECORD, ONLY ONE SET OF SEPIA AND ONE SET OF BLUE PRINTS OF THE STRUCTURAL SHOP DRAWINGS FOR ENGINEER'S REVIEW. BEFORE STARTING FABRICATION. THE ENGINEER WILL RETURN THE REVIEWED SEPIAS STAMPED SHOP DRAWINGS. A REVISED COPIES SHALL BE USED TO MAKE PRINTS AS REQUIRED FOR HE SHOP DRAWING DISTRIBUTION. SETS OF BLUE PRINTS (WITHOUT SEPIAS) WILL NOT BE REVIEWED.

## CONSTRUCTION MEANS AND METHODS:

1. THE CONTRACTOR IS RESPONSIBLE AND SHALL COMPLY WITH THE SAFETY REQUIREMENTS OF THE FLORIDA BUILDING CODE AND ALL LOCAL, STATE AND FEDERAL LAWS.

2. PROVIDE ALL SHORING, BRACING AND SHEETING AS REQUIRED FOR SAFETY, STRUCTURAL STABILITY AND FOR THE PROPER EXECUTION OF THE WORK. REMOVE WHEN WORK IS COMPLETED.

3. PROVIDE AND MAINTAIN GUARD LIGHTS AT ALL BARRICADES, RAILINGS, OBSTRUCTIONS IN THE STREETS, ROADS OR SIDEWALKS AND ALL TRENCHES OR PITS ADJACENT TO PUBLIC WALKS OR ROADS.

4. AT ALL TIMES, PROVIDE PROTECTION AGAINST WEATHER (RAIN, WIND, STORMS OR THE SUN), SO AS TO MAINTAIN ALL WORK, MATERIALS, APPARATUS AND FIXTURES FREE FROM INJURY OR DAMAGE.

5. AT THE END OF THE DAYS WORK, COVER ALL WORK LIKELY TO BE DAMAGED. ANY WORK DAMAGED BY FAILURE TO PROVIDE PROTECTION SHALL BE REMOVED AND REPLACED WITH NEW WORK AT THE CONTRACTOR'S EXPENSE.

6. THE CONTRACTOR SHALL PAY FOR ALL DAMAGES TO ADJACENT PROPERTY

## STRUCTURAL DESIGN CRITERIA

WIND DESIGN: ASCE 7-10
U = 175 MPH
I = 1.0
GCPI = ± 0.18
EXPOSURE "C"
BUILDING CATEGORY II
CONCRETE : (5000 PSI)
BOLTS: (A325)
CONCRETE : (5000 PSI)
REBAR : GRADE 60

## STRUCTURAL OBSERVATIONS:

1. THE ENGINEER-OF-RECORD SUBMIT A STATEMENT, AT THE COMPLETION OF THE CONSTRUCTION WORK, REGARDING THE COMPLIANCE OF THE WORK WITH THE APPROVED PERMIT PLANS (F.B.C.

2. IN THE EVENT THAT THE ENGINEER OF RECORD WERE NOT RETAINED TO PERFORM STRUCTURAL OBSERVATIONS, THE OWNER AND THE CONTRACTOR MUST NOTIFY THE BUILDING DEPARTMENT AND OBTAIN AN APPROVAL OF THE ENGINEER RETAINED TO PERFORM SUCH OBSERVATIONS, BEFORE START OF ANY STRUCTURAL WORK.

3. IT IS UNDERSTOOD THAT THE ENGINEER WILL NOT BE HELD RESPONSIBLE AND LIABLE FOR ANY OF THE CONTRACTOR'S WORK WHICH WAS NOT PROPERLY OBSERVED BY THE ENGINEER-OF-RECORD (OR HIS REPRESENTATIVE) OR FOR ANY WORK PERFORMED BY THE INSPECTING ENGINEER (OTHER THAN THE ENGINEER-OF-RECORD) WHICH WERE/WERE OR CHANGES THE STRUCTURAL PERMIT RECORD DOCUMENTS.

## STRUCTURAL DESIGN CRITERIA:

1. THE DESIGN COMPLIES WITH THE REQUIREMENTS OF THE FLORIDA BUILDING CODE — (2010 EDITION) AND OTHER REFERENCED CODES AND SPECIFICATIONS. ALL LOADS AND SPECIFICATIONS SHALL BE LATEST EDITION AT TIME OF PERMIT.

2. WIND LOAD CRITERIA: ISPY = ± 0.18

BASED ON ANSI/ASCE- 7-10 BASIC WIND VELOCITY 175 MPH, OCCUPANCY CATEGORY II (147 ALDRINGV, OCEANLINE), EXPOSURE "D".

3. ROOF DESIGN LOADS (SUPERIMPOSED)
   DEAD LOADS : . . . . . . . . 25 PSF
   LIVE LOADS : . . . . . . . . 30 PSF

4. FLOOR DESIGN LOADS (SUPERIMPOSED)
   DEAD LOADS . . . . . . . . 25 PSF
   LIVE LOADS . . . . . . . . 45 PSF

## CONCRETE AND REINFORCING:

1. CONCRETE DESIGN AND REINFORCEMENT IN ACCORDANCE WITH "BUILDING CODE REQUIREMENTS FOR REINFORCED CONCRETE". AND WITH "DETAILS AND DETAILING OF CONCRETE REINFORCEMENT"

2. ALL CONCRETE WORK IN ACCORDANCE WITH "SPECIFICATIONS FOR STRUCTURAL CONCRETE FOR BUILDING" PRODUCTION OF CONCRETE, DELIVERY, PLACING AND CURING TO BE IN ACCORDANCE WITH "HOT WEATHER CONCRETING"

3. ALL CONCRETE TO BE REGULAR WEIGHT WITH A DESIGN STRENGTH OF 5,000 P.S.I. AT 28 DAYS.   MAXIMUM SLUMP 4".

4. ALL REINFORCING TO BE NEW BILLET STEEL CONFORMING TO THE LATEST A.S.T.M. A-615 GRADE 60, FABRICATED IN ACCORDANCE WITH C.R.S.I. MANUAL OF STANDARD PRACTICE AND PLACED IN ACCORDANCE WITH LAP SPLICE PER A.C.I. 318-02 SEC. 12.2.3,30,61 AND

5. CONCRETE COVER UNLESS OTHERWISE DETAILED ON DRAWINGS:

GRADE BEAMS (BOTTOM) . . . . . . . . . . . 3"

EXTERIOR SLABS ON GRADE (BOTTOM) . . . . . 2"
                                    (TOP) . . . . . 1-1/2"

COLUMNS AND BEAMS (TO THE TIES) . . . . . 1-1/2"

6. COLUMN REINFORCEMENT. DOWELS TO BE SAME SIZE AND NUMBER AS VERTICAL REBARS ABOVE. PROVIDE DOWEL BARS AT THE DOWEL LOCATION, PROVIDE STANDARD HOOKS AT TOP OF ALL VERTICAL REINFORCEMENT AT NONCONTINUOUS COLUMNS (U.O.N.). SEE ATTACHED TABLE FOR SPLICE LENGTH LAP SPLICES FOR BEAMS AND COLUMNS PER ACI 318-08 CHAPTER #11

7. ALL DOWELS FOR COLUMNS SHALL BE SECURED IN POSITION PRIOR TO CONCRETING. PUSHING THE DOWELS INTO POSITION IN WET CONCRETE IS NOT PERMITTED.

8. BEAM REINFORCEMENTS:
(SEE BEAM DIAGRAM ON PLAN). BOTTOM BARS SPLICED ONLY AT SUPPORTS, TOP BARS SPLICED ONLY AT MID-SPAN.  ALL TOP BARS HOOKED AT NONCONTINUOUS EDGES (U.O.N.). ALL HOOKS TO BE STANDARD 90 DEGREE HOOKS AS REQUIRED (U.O.N.). SEE ATTACHED TABLE FOR SPLICE LENGTH

9. ADDED REINFORCEMENT: PROVIDE ADDITIONAL CORNER BARS BENT 3# INCHES MINIMUM EACH WAY AT "L" AND "T" CORNERS IN BOTTOM FACES OF ALL BEAMS TO MATCH ALL HORIZONTAL BARS (TOP, BOTTOM AND INTERMEDIATE REBARS).

10. SEE PLAN FOR MINIMUM SIZE CONCRETE TO BEAM REQUIREMENTS.

11. TIE BEAM & GRADE BEAM SHALL HAVE CORNER BARS W/30'BENDS

## SOIL STATEMENT

THE NATURE AND CHARACTER OF THE SOIL CONDITION BENEATH THE STRUCTURAL FOOTING HAS BEEN OBSERVED TO HAVE UNDISTURBED SAND AND ROCK PRESUMED TO HAVE AN ALLOWABLE BEARING CAPACITY OF 2,000 PSF AT THE TIME OF CONSTRUCTION. A FLORIDA REGISTERED GEOTECHNICAL ENGINEER SHALL CERTIFY IN WRITING THAT SOIL BEARING CAPACITIES, SOIL BEARING VALUES, STATING THAT THE SOIL BEARING ARE AS ASSUMED.

## TERMITE PROTECTION COMPLIANCE

GENERAL CONTRACTOR TO PROVIDE A CERTIFICATE OF COMPLIANCE BY LICENSED PEST CONTROL COMPANY THAT CONTAINS THE FOLLOWING STATEMENT AS PER THE 2010 BUILDING CODE:

"THE BUILDING HAS RECEIVED A COMPLETE TREATMENT FOR THE PREVENTION OF SUBTERRANEAN TERMITE TREATMENT IS IN ACCORDANCE WITH RULES AND LAWS ESTABLISHED BY THE FLORIDA DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES"

## REINFORCED MASONRY WALLS:

1. HOLLOW LOAD-BEARING MASONRY UNITS SHALL CONFORM TO ASTM C-90, TYPE I, GRADE N, SQUARE END, WITH A MINIMUM AVERAGE COMPRESSIVE STRENGTH ON NET AREA OF f'm=1,500 (PSI).

2. SPECIAL INSPECTOR SERVICES ARE REQUIRED FOR ALL REINFORCED MASONRY CONSTRUCTION.  THE SPECIAL INSPECTOR SHALL INSPECT THE PLACING OF ALL THE REBARS IN THE CELLS, VERIFY THE POSITION OF THE CELLS TO BE GROUTED, AND OBSERVE THE PLACING OF THE GROUT OR CONCRETE INTO THE CELLS.

3. MORTAR SHALL CONFORM TO ASTM C-270, TYPE "M" OR "S".

4. LAY ALL MASONRY WITH FULL FACE HEAD JOINTS AND WITH FACE SHELL MORTAR BEDDING.

5. MASONRY ANCHORAGE TO SUPERSTRUCTURE SHALL BE PROVIDED IN ACCORDANCE WITH STRUCTURAL DRAWINGS AND DETAILS.

6. THE USE OF ADMIXTURES SHALL NOT BE PERMITTED WITHOUT PRIOR REVIEW OF THE ENGINEER.

7. VERTICAL REINFORCING:
(A)  ASTM A-615 PER REINFORCING SECTION.

(B)  WITH A FOUNDATION DOWEL DOES NOT LINE UP WITH A VERTICAL CORE IT SHALL NOT BE SLOPED MORE THAN ONE HORIZONTAL INCH TO SIX INCHES VERTICAL FOR ALIGNMENT.   EVEN THOUGH IT IS IN A CELL ADJACENT TO THE VERTICAL WALL REINFORCING.

(C)  VERTICAL REINFORCING STEEL SHALL BE PLACED CENTERED IN THE CELL LAP 48 BAR-DIAMETERS. PROVIDE BAR SPACERS AS REQUIRED TO MAINTAIN REINFORCING  SECURED IN POSITION.

(D)  VERTICAL REINFORCEMENT SHALL BE PROVIDED AT EACH END OF OPENINGS IN WALL, AT WALL INTERSECTIONS, CORNERS AND ENDS.  THIS REINFORCING SHALL BE THE SAME SIZE AS THE SCHEDULED WALL REINFORCING FOR THE PARTICULAR WALL BUT NEVER LESS THAN A #5 REBAR.  SPECIAL CARE SHALL BE TAKEN TO INSURE THAT CELLS TO BE GROUTED LINE UP PROPERLY AND ARE CLEAN OF EXCESS MORTAR.

(E)  TIE-2 REINFORCING SHALL BE #8 VERTICAL IN CONCRETE FILLED CELLS WHERE INDICATED ON PLANS. REINFORCE MASONRY LAPS ARE TO BE CALCULATED PER ACI 530 SECT. 2.1.10.7 & EQ. 2-9

(F)  ALL VERTICAL REINFORCING SHALL BE HOOKED INTO THE BOND BEAMS AT THE NON-CONTINUOUS END OF THE REBARS.

(G)  PROVIDE INSPECTION HOLES AT THE BOTTOM OF EACH REINFORCED MASONRY CELL. LIFTS SHALL NOT BE HIGHER THAN 5' FEET PER FBC R4407.5.10.8

8. HORIZONTAL REINFORCING

PROVIDE GALVANIZED #9 GAGE, LADDER TYPE HORIZONTAL JOINT REINFORCING EVERY SECOND BLOCK COURSE (f'm-4" O.C. VERTICALLY) LAPPED 7"-1/2", PROVIDE SPECIAL HORIZONTAL REINFORCING AS "T" AND "L" INTERSECTIONS. ANCHOR TO COLUMNS WITH MINIMUM 4" EXTENSION INTO AREA OF POUR.

9. PROVIDE "DOVE-TAIL" ANCHORS AT 16" O.C. VERTICALLY FOR ALL MASONRY PLACED ADJACENT TO ALREADY IN PLACE COLUMNS.

10. PROVIDE STEEL BEAMS OR "PCA DOCK" CONCRETE MIX (8" TO 6" SLUMP) OR GROUT WITH f'm=3,000 PSI MIN. AT 28 DAYS.

11. LINTELS:

a. THE CONTRACTOR SHALL PROVIDE PRECAST CONCRETE OR CAST-IN-SITE LINTELS AT THE HEADS OF ALL OPENINGS IN MASONRY WALLS NOT (D> CEILING 6X (8) FEET IN WIDTH WHERE BEAMS HAVE NOT BEEN SPECIFIED.  FOR OPENING ADJACENT TO CONCRETE COLUMNS — THE LINTEL SHALL BE CAST-IN-PLACE WITH THE COLUMN.

b. LINTEL MAY BE INTEGRAL WITH THE STRUCTURAL OR TIE BEAM WHICH HEAD OF THE OPENING IS 18 INCHES OR LESS BELOW. CONTINUE BEAM'S-TYPICAL BOTTOM REBARS THROUGH AND ADD 2—#5 BOTTOM TRUSS BARS AT DROPS AND 2—#3 STIRRUPS AT 8 INCHES O.C. EACH END AT DROP.

c. MINIMUM BEARING FOR ALL LINTELS 8 INCHES EACH SIDE OR PROVIDE DOWELS AND POCKETS IN ADJACENT CONCRETE COLUMNS.

d. LINTEL TO BE MINIMUM OF 8 INCHES DEEP WITH 2—#5 TOP AND BOTTOM FOR CLEAR SPANS LESS THAN 8 FEET, 12 INCHES DEEP WITH 2—#5 TOP AND BOTTOM AND 2—#5 STIRRUP'S AT 8 INCHES O.C. EACH END, FOR SPANS GREATER THAN 8 FEET (UP TO 16 FEET).  CALL ENGINEER FOR SPANS LARGER THAN 8 FEET WITH NO SPECIFIED BEAMS OR LINTELS SHOW.

### SPLICE LENGTH PER ACI 318-08

| BAR SIZE | SPLICE LENGTH | |
|----------|---------------|---------------|
|          | BOTTOM BARS   | TOP BARS      |
| #10      | 70"           | 91"           |
| #9       | 62.2"         | 80.8"         |
| #8       | 55.1"         | 71.6"         |
| #7       | 48.3"         | 62.8"         |

(CLASS B SPLICES)

## APPLICABLE CODES

1. FLORIDA BUILDING DODE 2010 EDITION
2. A.C.I. 316-08 FOR REINFORCED CONCRETE
3. A.C.I. 315-08 DETAILS AND DETAILING OF CONCRETE REINFORCEMENT MANUAL OF STANDARD PRACTICE FOR DETAILING REINFORCED CONCRETE STRUCTURES.
4. A.C.I. 530-06 AND A.C.I. 530-1-06 FOR REINFORCED MASONRY
5. A.I.S.C. STEEL CONSTRUCTION A.S.D. FOR STRUCTURES STEEL NINTH EDITION.
6. ANSI / AWS D.6.4.
7. A.S.C.E. 7-10 FOR WIND ANALYSIS AND DESIGN
8. A.S.T.M. STANDARDS AND SPECIFICATIONS AMERICAN SOCIETY FOR TESTING AND MATERIALS
9. AMERICAN FOREST AND PAPER ASSOCIATION: NATIONAL DESIGN SPECIFICATION FOR WOOD CONSTRUCTION (N.D.S.)
10. APA, THE ENGINEERED WOOD ASSOCIATION
11. NATIONAL PEST CONTROL ASSOCIATION STANDARDS.



CONSULTING ENGINEERS
Edward A.
DANIERS, P.E.
Tel (305) 823-3928
Fax (305) 823-4388

PERMIT SET

1413380

CONCRETE REPAIR DETAILS

Certified by: _____
Vivian Pus
Building Dept. City of Miami

TOWER HOTEL

1450 SW 7th ST
MIAMI, FLORIDA, 33130

S-1



SOUTH ELEVATION
SCALE: 1/4" = 1' - 0"

NORTH ELEVATION
SCALE: 1/4" = 1' - 0"

Edward A.
LAMBERS, P.E.
CONSULTING ENGINEERS

Tel. (305) 823-3030
Fax (305) 823-9303

CONCRERTE REPAIR DETAILS

PERMIT
SET

1413380

TOWER HOTEL

1450 SW 7th ST
MIAMI, FLORIDA, 33130

S-2



**EAST ELEVATION**
SCALE: 1/4" = 1' - 0"

DETAIL "A"   DETAIL "A"   DETAIL "A"

**WEST ELEVATION**
SCALE: 1/4" = 1' - 0"

DETAIL "A"   DETAIL "A"   DETAIL "A"   DETAIL "A"   DETAIL "A"   DET

NOTE:

1. WINDOWS TO BE NEW AND INSTALLED INTO EXISTING OPENINGS.
2. NEW TIE COLUMNS AND TIE BEAM @ NEW DOOR OPENINGS (DETAIL "A")

Edward A. LANDERS, P.E.
CONSULTING ENGINEERS
Tel. (305) 823-3938
Fax (305) 823-9355

CONCRETE REPAIR DETAILS

PERMIT SET

1413380

TOWER HOTEL
1450 SW 7th ST
MIAMI, FLORIDA, 33130

S-3
SHEET NUMBER

Certified by:
Vivian Foster
Building Dept. Office of Microfilm

# City of Miami



DANIEL J. ALFONSO
City Manager

November 16, 2017

Mr. Carlos Lago
Greenberg Traurig
333 SE 2nd Avenue
Miami, FL 33131

**RE:**   1641 SW 8 ST                    **Folio# :**   01-4102-012-0100

Dear Mr. Carlos Lago:

Pursuant to your letter dated November 06, 2017 requesting zoning verification for the above-mentioned property, and in response to said request, please be advised of the following:

- The current zoning designation on the site is T6-8-O (Urban Core Zone).

- General Commercial and Food Service Establishment Use are permitted in T6 Transect Zone by right, pursuant to Miami 21, Article 4 Table 3.

- A temporary structure is permitted at the property per the City Code Ordinance.

- A fixed Food Service Establishment may be permitted within a temporary structure through a process of a Temporary Use Permit (T.U.P.) or Temporary Event Permit (T.E.P.) as delineated in the City Code.

For your convenience, additional information regarding Miami 21 regulations may be obtained by visiting the Miami 21 website at www.Miami21.org. If further zoning information is required on this matter, please contact our zoning information counter at (305) 416-1499.

Sincerely,

Devin Cejas
Zoning Administrator

PLAINTIFF'S
EXHIBIT

**461**



PLAINTIFF'S EXHIBIT

462









**CITATION INFORMATION**

**Citation No.:** 2017 - B208657
**Issue Date:** 12/12/2017
**Status:** * CLOSED *
**Total Due:** $0.00

| | | | |
|---|---|---|---|
| **Violator:** CAROLLO, JOE | | **Folio:** 01-4115-011-0100 | |
| **Mailing Address:** 3230 MORRIS LN | **City:** MIAMI | **State:** FL | **Zip:** 33133 |

**Code Section:** 32-160
**Description:** UNREASONABLE DENIAL OF ACCESS TO PREMISES
**Issuing Department:** 16 MIAMI-DADE WATER & SEWER DEPT (305) 665-7477

**VIOLATION INFORMATION**

| | | |
|---|---|---|
| **Violation Date:** 12/12/2017 | **Repeat Violation:** NO |
| **Violation Time:** 11:15 A M | **Comply Due Date:** 1/11/2018 |
| **Violation Location:** 3230 MORRIS LN | **Complied Date:** |
| **Inspector:** 877 ENRIQUE J. RODRIGUEZ | **Appeal Filed:** |
| **Serve Method:** POSTED | **Appeal Due Date:** 1/22/2018 |
| **Serve Date:** | **Lien Placed:** |
| **Penalty Must be Paid by:** 1/11/2018 | **Lien Satisfied:** |

**PARTIES**

| Name | Type | Address |
|---|---|---|
| CAROLLO, JOE | VIOLATOR | 3230 MORRIS LN<br>MIAMI FL 33133 |

**PAYMENT HISTORY**

| Date | Amount | Receipt | Register | Cashier |
|---|---|---|---|---|
| 01/04/2018 | $210.00 | 1227 | 200 | WEBPROD |

**DISCLAIMER:** Manual Adjustments and Cancellation of Payments due to returned checks are not reflected in these results.

PLAINTIFF'S EXHIBIT

**464**

Message
_____

**From:**      Martin Pinilla [martin@barlingtongroup.com]
**Sent:**      11/5/2020 6:46:28 PM
**To:**        avalencia@miamigov.com
**Subject:**   Code Complaint 3230 MORRIS LN


Dear Ms .Valencia,
I would like to submit a formal complaint regarding the address referenced above.
This property is in disrepair and is unsightly.
The carports were removed without permits and the materials left on property causing a concern of potential flying objects during Hurricane season. The fallen garage doors reflected in the photos are creating water intrusion and mold issues that create a health hazard. The property is blighted and creating devaluation to the surrounding property values. Please send code inspector to review and issue a code violation.

See pictures below for your reference





Confidential – Subject to Protective Order                    MADROOM0240864



Confidential – Subject to Protective Order



Martin Pinilla II
305.793.8696

Confidential – Subject to Protective Order

MADROOM0240866

# NOTICE
· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·
# POSTED

## THIS PROPERTY IS IN VIOLATION
## OF THE CODE OF THE CITY OF MIAMI



**City of Miami**

November 18, 2017

1393 LLC

1637 SW 8 ST STE 200
MIAMI, FL 33135

CR: CE2017019529

1393 LLC

1637 SW 8 ST STE 200
MIAMI, FL 33135

### TICKET / CITATION

Subject Property: 120 SW 14 AV    Folio: 0141020100010

Name of Violator(s): 1393 LLC,
Ticket Number: 293686

Location of Violation: 120 SW 14 AV
Folio: 0141020100010

Legal Description of Property:
PB 6-92 RE-SUB OF BLK 78 OF LAWRENCE EST LOT 1 BLK 78 LOT SIZE 50.000 X 135 OR 10227-2202
1178-2

Violation Date: Nov 18, 2017  Violation Time: 01:46 PM
Code Section(s) Violated: VIOL REF# 2235-FAILURE TO OBTAIN A CLASS I SPECIAL PERMIT.    CC
Chapt 62

Fine Amount: 200.00 * 1 = 200.00

Name of Inspector: Henry Andelo de Armas
Division: South West
Office Address: 444 SW 2 AV Miami, FL 33130
Office Phone Number: (305) 329-4770
Email: hdearmas@miamigov.com

If you have any questions, please contact the inspector at the above listed office phone number, Monday through
Friday.

_____
Henry Andelo de Armas
City of Miami Code Enforcement Inspector



**CITY OF MIAMI
CODE COMPLIANCE**

Handwritten annotations: TKT, TKT, 120 SW 14 AVE, CE2017019529, 11/18/17



PLAINTIFF'S
EXHIBIT
**468**







PLAINTIFF'S
EXHIBIT

541













# ≡ iBuild Miami

Search by Address, Process Number, Per... 🔍     Hi Claudia 

## Global Inquiry

[Print]

Property Address: **1450 SW 7 ST**
Folio Number: **01-4102-006-6270**

Job Category: **REMODELING/REPAIRS**

### Process Plans

| | Process Number | Plan Status | Work Items |
|---|---|---|---|
| − | **BD14-004470-001** | Final - Master permit is final | • OTHER COMPONENTS - CONCRETE RESTORATION<br>• OTHER COMPONENTS - STRUCTURAL REPAIRS |

| Permit Types | Required Inspections | Why Not Final |

| | Permit Type | Permit Number | Permit Status | Issued Date |
|---|---|---|---|---|
| + | **BUILDING (Master)** | BD14-004470-001-B001 | Final - All Inspections are finalized. | Jun/11/2014 |

PLAINTIFF'S EXHIBIT 542

 Search by Address, Process Nu...  Log Off

 

## Permit Inquiry: BD14-004470-001-B001 (1450 SW 7 ST)

| General Info | Events | Required Inspe |
|---|---|---|

| Date | Permit Status | Permit Status Reason |
|---|---|---|
| Jun/10/2014, 10:40:17 | Pending | Unpaid Permit Fees |
| Jun/11/2014, 15:13:13 | Active | Permit is Active. Ready for Inspections. |
| Dec/09/2014, 00:10:01 | Expired | Permit is Expired |
| Apr/28/2015, 11:35:09 | Active | Permit is Active. Ready for Inspections. |
| Oct/26/2015, 00:10:02 | Expired | Permit is Expired |
| May/11/2016, 12:16:06 | Active | Permit is Active. Ready for Inspections. |
| Nov/08/2016, 00:10:02 | Expired | Permit is Expired |
| Dec/06/2016, 15:15:16 | Active | Permit is Active. Ready for Inspections. |
| Jun/05/2017, 00:10:22 | Expired | Permit is Expired |
| Jul/12/2017, 15:01:52 | Active | Permit is Active. Ready for Inspections. |

1 2 3   Displaying items 1 - 10 of 25

 Search by Address, Process Nu...    Log Off

   

## Permit Inquiry: BD14-004470-001-B001 (1450 SW 7 ST)

| General Info | Events | Required Inspe |
|---|---|---|

| Date | Permit Status | Permit Status Reason |
|---|---|---|
| Jun/01/2022, 00:10:02 | Expired | Permit is Expired |
| Jul/27/2022, 18:30:30 | Active | Permit is Active. Ready for Inspections. |
| Jan/24/2023, 00:10:03 | Expired | Permit is Expired |
| Mar/06/2023, 11:09:56 | Active | Permit is Active. Ready for Inspections. |
| Mar/16/2023, 16:04:55 | Final | All Inspections are finalized. |

 ◄ ◄  1  2  3  ► ►|       Displaying items 21 - 25 of 25

   AA   🔒 apps.miamigov.com   ↻

<   >             



Search by Address, Process Nu...     Log Off

 

## Permit Inquiry: BD14-004470-001-B001 (1450 SW 7 ST)

| General Info | Events | Required Inspe |
|---|---|---|

| Date | Permit Status | Permit Status Reason |
|---|---|---|
| Jan/09/2018, 00:10:04 | Expired | Permit is Expired |
| Jan/19/2018, 14:24:03 | Active | Permit is Active. Ready for Inspections. |
| Jul/19/2018, 00:10:04 | Expired | Permit is Expired |
| Aug/22/2018, 15:21:16 | Active | Permit is Active. Ready for Inspections. |
| Feb/19/2019, 00:10:01 | Expired | Permit is Expired |
| Mar/13/2019, 09:30:40 | Active | Permit is Active. Ready for Inspections. |
| Sep/10/2019, 00:10:01 | Expired | Permit is Expired |
| Nov/12/2019, 14:52:12 | Active | Permit is Active. Ready for Inspections. |
| Sep/11/2021, 00:10:05 | Expired | Permit is Expired |
| Dec/02/2021, 16:36:56 | Active | Permit is Active. Ready for Inspections. |

|◀ ◀ 1 [2] 3 ▶ ▶|   Displaying items 11 - 20 of 25

AA   🔒 apps.miamigov.com   ↻

# ☰ iBuild Miami

Search by Address, Process Number, Per... 🔍 

Hi Claudia 

## Global Inquiry

**Print**

Property Address: **1450 SW 7 ST**

Job Category: **DEMOLITION**

Folio Number: **01-4102-006-6270**

## Process Plans

| | Process Number | Plan Status | Work Items |
|---|---|---|---|
| ⊟ | **BD12-003194-001** | Final - Master permit is final | • DEMOLITION – PARTIAL (ATTACHED) |

| Permit Types | Required Inspections | Why Not Final |
|---|---|---|

| | Permit Type | Permit Number | Permit Status | Issued Date |
|---|---|---|---|---|
| ⊞ | **BUILDING (Master)** | BD12-003194-001-B001 | Final - All Inspections are finalized. | Jun/12/2012 |
| ⊞ | **ELECTRICAL** | BD12-003194-001-E001 | Final - All Inspections are finalized. | Jul/09/2012 |

# ≡ iBuild Miami

Search by Address, Process Number, Per...   

  Hi Claudia

**Global Inquiry**

**Print**

Property Address: **1450 SW 7 ST**  Job Category:  **STAND-ALONE - PLUMBING**

Folio Number: **01-4102-006-6270**

## Process Plans

| | Process Number | Plan Status | Work Items |
|---|---|---|---|
| − | **BD12-004330-001** | Final - Master permit is final | • CAPPED OFF - CAPPED OFF: FIXTURE |

| Permit Types | Required Inspections | Why Not Final |
|---|---|---|

| | Permit Type | Permit Number | Permit Status | Issued Date |
|---|---|---|---|---|
| + | **PLUMBING (Master)** | BD12-004330-001-P001 | Final - All Inspections are finalized. | Jul/06/2012 |

8:56



Search by Address, Process Nu...

Log Off

| | |
|---|---|
| Process Number: | **BD12-003194-001** *(Master Plan)* |
| Job Category: | **DEMOLITION** |
| Master Permit Type: | **BUILDING** |
| Number of Plan Sheets: | **1** |
| Threshold Building: | **No** |
| Required Permits: | **B, E** |
| Required Disciplines: | **B, E, F, P, Z** |
| Required Certificate: | **N/A** |
| Shell Only: | **No** |
| Easy Permit: | **No** |
| **Electronic Plan:** | **No** |
| Number of Fire Alarms: | |
| City Project: | |
| Plan Status: | **Final** |
| Status Reason: | **Master permit is final** |
| Application Creation Date: | **Jun/08/2012** |
| Initial Submission Date: | **Jun/08/2012** |
| Plan Acceptance Date: | **Jun/08/2012** |
| Initial Approved Date: | **Jun/12/2012** |
| Interior Remodeling: | **No** |
| Exterior Remodeling: | **No** |
| Permit By Affidavit: | **No** |
| Private Provider: | **No** |
| Legalization Required: | **No** |
| Number of Fire Sprinklers: | |

🔒 apps.miamigov.com

# ≡ iBuild Miami

Search by Address, Process Number, Per... 🔍   Hi Claudia 

## Review Results: BD12-003194-001  (1450 SW 7 ST)

| General | Plan History | Review Status | Result/Remarks | Work Items | AOR/EOR | Contacts | Contractors |
|---------|--------------|---------------|----------------|------------|---------|----------|-------------|

| P&Z | Shop Drawings | Fees | Events |
|-----|---------------|------|--------|

| | Discipline | Status | Reviewer | Date In | Time In | Complete |
|---|-----------|--------|----------|---------|---------|----------|
| + | (B) - BUILDING | Approved | ReD | Jun/08/2012 | 14:27 | Jun/08/2012 14:34 |
| + | (E) - ELECTRICAL | Approved | LA | Jun/08/2012 | 14:54 | Jun/08/2012 14:57 |
| + | (F) - FIRE | Approved | RTM | Jun/08/2012 | 13:16 | Jun/08/2012 13:21 |
| + | (P) - PLUMBING | Review Unnecessary | | Jun/08/2012 | 14:12 | Jun/08/2012 14:13 |
| + | (Z) - ZONING | Review Unnecessary | CAH | Jun/08/2012 | 14:03 | Jun/08/2012 14:05 |

🔄

 Print

8:57

 Search by Address, Process Nu... 🔍    Log Off



## Permit Inquiry: BD12-003194-001-B001 (1450 SW 7 ST)

| General Info | Events | Required Inspe |
|---|---|---|

| Date | Permit Status | Permit Status Reason |
|---|---|---|
| Jun/12/2012, 14:35:20 | Pending | Unpaid Permit Fees |
| Jun/12/2012, 14:38:32 | Active | Permit is Active. Ready for Inspections. |
| Dec/10/2012, 02:00:01 | Expired | Permit is Expired |
| Mar/27/2013, 14:02:22 | Active | Permit is Active. Ready for Inspections. |
| Nov/08/2013, 09:04:24 | Final | All Inspections are finalized. |

 |◄ ◄ [1] ► ►| Displaying items 1 - 5 of 5

AA 🔒 apps.miamigov.com

8:59

≡  Search by Address, Process Nu...   🔍     Log Off

## Permit Inquiry: BD12-003194-001-E001 (1450 SW 7 ST)

| General Info | Events | Required Inspe |
|---|---|---|

### General Information

| | |
|---|---|
| Permit Number: | **BD12-003194-001-E001** |
| Job Category: | **DEMOLITION** |
| Job Address: | **1450 SW 7 ST** |
| Folio Number: | **01-4102-006-6270** |
| Status: | **Final** |
| Status Reason: | **All Inspections are finalized.** |
| Status Date: | **Sep/20/2013** |
| | |
| Permit Type: | **ELECTRICAL** |
| Pulled By: | **RIVERSIDE\Prodriguez** |
| Issued Date: | **Jul/09/2012** |
| Expiration Date: | **Apr/15/2014** |
| Total Cost: | **$2,500.00** |
| Total SQFT: | **N/A** |

| Permit Work Items: |
|---|
| PARTIAL DEMOLITION ELECTRICAL |

### Permit Holder

| | |
|---|---|
| Qualifier License: | **EC13003054** |
| First Name: | **ARNALDO** |
| Email: | **atexidor@dadeschools.net** |
| | |
| Company Name: | **ATEXI SERVICES CORP.** |
| Last Name: | **TEXIDOR** |
| Phone: | **(786)251-1604** |

🔒 apps.miamigov.com



## Permit Inquiry: BD12-003194-001-E001 (1450 SW 7 ST)

| General Info | Events | Required Inspe |
| --- | --- | --- |

| Date | Permit Status | Permit Status Reason |
| --- | --- | --- |
| Jul/06/2012, 10:29:58 | Pending | Unpaid Permit Fees |
| Jul/09/2012, 09:57:05 | Active | Permit is Active. Ready for Inspections. |
| Dec/10/2012, 02:00:01 | Expired | Permit is Expired |
| Mar/27/2013, 14:02:22 | Active | Permit is Active. Ready for Inspections. |
| Sep/20/2013, 15:01:35 | Final | All Inspections are finalized. |

|◀ ◀ [1] ▶ ▶|    Displaying items 1 - 5 of 5

9:01 

☰  Search by Address, Process Nu...  🔍    Log Off

## Permit Inquiry: BD12-004330-001-P001 (1450 SW 7 ST)

| General Info | Events | Required Inspe... |

### General Information

| | |
|---|---|
| Permit Number: | **BD12-004330-001-P001** |
| Job Category: | **PLUMBING** |
| Job Address: | **1450 SW 7 ST** |
| Folio Number: | **01-4102-006-6270** |
| Status: | **Final** |
| Status Reason: | **All Inspections are finalized.** |
| Status Date: | **Oct/16/2013** |
| Permit Type: | **PLUMBING** |
| Pulled By: | **RIVERSIDE\lmorla** |
| Issued Date: | **Jul/06/2012** |
| Expiration Date: | **Apr/11/2014** |
| Total Cost: | **$500.00** |
| Total SQFT: | **0** |

| Permit Work Items: |
|---|
| CAPPED OFF: FIXTURE |

### Permit Holder

| | |
|---|---|
| Qualifier License: | **CFC1427442** |
| First Name: | **Eduardo F.** |
| Email: | **INFO@DESMARPC.COM** |
| Company Name: | **Desmar PC Inc** |
| Last Name: | **Angel** |
| Phone: | **(305)876-6761** |



9:02



≡  Search by Address, Process Nu...  🔍        Log Off

## Permit Inquiry: BD12-004330-001-P001 (1450 SW 7 ST)

| General Info | Events | Required Inspe |
|---|---|---|

| Date | Permit Status | Permit Status Reason |
|---|---|---|
| Jul/06/2012, 11:46:39 | Pending | Unpaid Permit Fees |
| Jul/06/2012, 11:53:21 | Active | Permit is Active. Ready for Inspections. |
| Jan/03/2013, 02:00:01 | Expired | Permit is Expired |
| Apr/16/2013, 11:49:59 | Active | Permit is Active. Ready for Inspections. |
| Oct/16/2013, 15:47:53 | Final | All Inspections are finalized. |

🔄  ◁◁ ◁  1  ▷ ▷▷        Displaying items 1 - 5 of 5



🔒 apps.miamigov.com

Message

---

**From**: Dooley, Rachel S. [RSDooley@miamigov.com]
**Sent**: 1/29/2018 3:03:20 PM
**To**: Mendez, Victoria [VMendez@miamigov.com]
**Subject**: FW: Sanguich De Miami: BTR / Documents

**Importance**: High

The have applied for a CU, BTR and TEP and put the container on axels with ability to move it making is a moveable food truck.  It will fall outside building now and be with zoning.  The also have the DPBR license as a food business.

---

**From:** Cerrato, Julia
**Sent:** Monday, January 29, 2018 3:01 PM
**To:** Camero, Jose <jcamero@miamigov.com>; Dooley, Rachel S. <RSDooley@miamigov.com>
**Cc:** Cejas, Devin <DCejas@miamigov.com>
**Subject:** FW: Sanguich De Miami: BTR / Documents
**Importance:** High

Good afternoon, Jose/Rachel:

Please take a look at the attached pictures and advise if the TEP requirement from Building still applies.

Thank you,




**Julia D. Cerrato, Assistant Director**
City of Miami
Office of Zoning
444 SW 2nd Avenue, 4th Floor
Miami, FL 33130
Telephone:  305-416-1006
jcerrato@miamigov.com

*"Serving, Enhancing, and Transforming our Community"*

---

**From:** Daniel Figueredo [mailto:daniel@sanguich.com]
**Sent:** Friday, January 26, 2018 10:25 AM
**To:** Lopez, Emil <ELopez@miamigov.com>
**Cc:** Cerrato, Julia <JCerrato@miamigov.com>
**Subject:** Sanguich De Miami: BTR / Documents
**Importance:** High

Good morning Emil,

Attached are the documents I promised you. They include:

- Our Insurance policy
- Pictures of the axels on the trailer.
- My License
- DBPR license

Please let me know if these help satisfy our BTR requirements as a mobile food vending unit.

PLAINTIFF'S
EXHIBIT

543

Let us know if we can head to MRC to file. We're eager to open our doors once again.

I appreciate you help.

Cheers,
Daniel


On Jan 25, 2018, at 3:32 PM, Lopez, Emil <ELopez@miamigov.com> wrote:

Hi Daniel & Rosa,
You're most welcome.  I will await the receipt of all the docs we discussed before submitting to the Office of Zoning.  Thanks

Regards,
Emil  Lopez
Finance Manager
Finance Department - Treasury Management
444 SW 2nd Avenue, 6th Floor
Miami, Florida 33130
(305) 416-1945 Office
(305) 416-1390 Fax
elopez@miamigov.com
www.miamigov.com/finance

Tell us how we're doing.  CLICK HERE to complete our Customer Satisfaction Survey.

-----Original Message-----
From: Daniel Figueredo [mailto:daniel@sanguich.com]
Sent: Thursday, January 25, 2018 1:07 PM
To: Lopez, Emil
Subject: DBPR - BRUSH AND BRISTLE CORP; Doing Business As: SANGUICH DE MIAMI, Permanent Food Service

Thank you for meeting with us on such short notice. Below is a link to our DBPR food license.

Daniel y Rosa
Sanguich De Miami


https://urldefense.proofpoint.com/v2/url?u=https-3A__www.myfloridalicense.com_LicenseDetail.asp-3FSID-3D-26id-3D0EAAD55CAF8F2B30CE379D87323A0F63&d=DwIFAg&c=gjoMo4NXMhIb6fFdj3Q8Cw&r=Nm2NJyK3QLETi9Mw_i16iHGf031Au-sNokQN5U8WxMM&m=oXd6RUlZ-Fw4WLP9TuQHZcGnyZYmWS_7MD1Uk0DUqYk&s=VrXt_nmID9dxfcoKMJ6vIJPJ2Cc63Ph9FmilFCKJJzg&e=

Sent from my iPhone

MADROOM0075021

Select Language

# MIAMI-DADE COUNTY
## Christina White, Supervisor of Elections

**Fall Municipal Elections**

(Website last updated on: 08/16/2021 3:24:15 pm)                                    **Election Date:** 11/7/2017

| | |
|---|---|
| **Registered Voters:** 505,215 | **JS/JS7** |
| **Ballots Cast:** 66,867 | **Precincts Reporting:** Completely Reported |
| **Voter Turnout:** 13.17% | **Election Day:** Completely Reported |
| | **Early Votes:** Completely Reported |
| | **Vote By Mail:** Completely Reported |

Results are Official
There was a recount for:
Miami - Commissioner - District 3
See addendum

| Summary Results | Precinct Results | Reports | Favorite Races |
|---|---|---|---|



## MIAMI BEACH: MAYOR
Participating Precincts Reporting: 34 / 34 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| Kenneth B. Burnett II | 4.71% | 528 |
| Dan Gelber | 58.28% | 6,428 |
| Daniel Kahn | 5.86% | 671 |
| June E. Savage | 7.95% | 887 |
| | | 11,446 |

## MIAMI BEACH: GROUP II - COMMISSIONER
Participating Precincts Reporting: 34 / 34 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| Mark Samuelian | 67.82% | 7,530 |
| Rafael A. Velasquez | 32.17% | 3,571 |
| | | 11,115 |

## MIAMI BEACH: GROUP III - COMMISSIONER
Participating Precincts Reporting: 34 / 34 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| Michael Gongora | 64.82% | 7,284 |
| Adrian Gonzalez | 35.18% | 3,954 |
| | | 11,238 |

## HIALEAH: MAYOR
Participating Precincts Reporting: 46 / 46 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| Tania Garcia | 15.62% | 2,307 |
| Carlos Hernandez | 78.80% | 11,636 |
| Juan Santana | 5.57% | 823 |
| | | 14,766 |

## HIALEAH: COUNCILMEMBER - GROUP V
Participating Precincts Reporting: 46 / 46 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| Ernesto Avila | 10.89% | 1,558 |
| Angel Omar Fajardo | 5.36% | 767 |
| Juan Carlos Santana | 8.38% | 1,200 |
| Carl Zogby | 75.37% | 10,784 |
| | | 14,309 |

## HIALEAH: COUNCILMEMBER - GROUP VII
Participating Precincts Reporting: 46 / 46 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| Katherine "Katy" Cue Fuente | 76.36% | 10,408 |
| Rafael L. Gomez | 23.64% | 3,223 |
| | | 13,631 |

## MIAMI: MAYOR
Participating Precincts Reporting: 127 / 127 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| Williams Alfred Armbrister Sr. | 5.47% | 1,355 |
| Christian Camacho | 3.25% | 809 |
| Cynthia Jaquith | 5.47% | 1,384 |
| Francis X. Suarez | 85.81% | 21,856 |
| | | 25,471 |

## MIAMI: COMMISSIONER - DISTRICT 3
Participating Precincts Reporting: 17 / 17 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| Zoraida A. Barreiro | 20.03% | 1,204 |
| Joe Carollo | 30.24% | 1,818 |
| Alex Dominguez | 3.03% | 182 |
| Alfonso "Alfie" Leon | 29.53% | 1,775 |
| Tomas Regalado | 15.03% | 903 |
| Miguel Soliman | 5.94% | 357 |
| Jose Suarez | 4.91% | 295 |
| | | 6,013 |

## MIAMI: COMMISSIONER - DISTRICT 4
Participating Precincts Reporting: 30 / 30 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| Manolo Reyes | 56.74% | 4,263 |
| Ralph Rosado | 36.15% | 2,716 |
| Denise Galvez Turros | 7.11% | 534 |
| | | 7,513 |

## MIAMI: COCONUT GROVE VILLAGE COUNCIL
Participating Precincts Reporting: 26 / 26 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| Johannah Brown | 8.62% | 1,099 |
| Rachel Cardello | 8.69% | 1,108 |
| Steven Strengell | 7.56% | 964 |
| Sacha DuBoarn | 4.87% | 621 |
| Zachary Elliott | 6.92% | 883 |
| Greg Eversole | 6.79% | 867 |
| Marcelo Fernandez | 7.28% | 928 |
| Sergio Grogg | 6.84% | 872 |
| Eduardo Gogt | 6.02% | 813 |
| Cormag Omags | 5.61% | 715 |
| Suzanne Larous Oosis | 6.97% | 889 |
| Henry "Hank" Sanchez-Resich | 8.09% | 1,032 |
| Thaddeus S. Scott | 7.72% | 986 |
| Joel L. Strong | 6.97% | 337 |
| Linda Williams | 8.90% | 1,262 |
| | | 12,757 |

## HOMESTEAD: VICE MAYOR
Participating Precincts Reporting: 22 / 22 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| Elvis Maldonado | 40.07% | 736 |
| Stephen Shelley | 59.93% | 1,101 |
| | | 1,837 |

## HOMESTEAD: COUNCILMEMBER - SEAT 4
Participating Precincts Reporting: 22 / 22 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| Jenifer Bailey | 58.49% | 1,106 |
| Jimmie Lee Williams III | 41.51% | 785 |
| | | 1,891 |

## HOMESTEAD: COUNCILMEMBER - SEAT 5
Participating Precincts Reporting: 22 / 22 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| Maynol Enriquez | 59.82% | 716 |
| Elvis Maldonado | 40.18% | 1,082 |
| | | 1,798 |

## MIAMI BEACH: ALCOHOLIC BEVERAGE SALES TIME
Participating Precincts Reporting: 34 / 34 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| YES | 35.33% | 4,184 |
| NO | 64.67% | 7,658 |
| | | 11,842 |

## MIAMI BEACH: FLOOR AREA RATIO INCREASE
Participating Precincts Reporting: 34 / 34 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| YES | 58.64% | 6,631 |
| NO | 41.36% | 4,677 |
| | | 11,308 |

## HIALEAH: CHARTER AMEND, SALE OF CITY LANDS
Participating Precincts Reporting: 46 / 46 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| YES | 57.36% | 7,307 |
| NO | 42.64% | 5,462 |
| | | 12,769 |

## HIALEAH: SALE OF REAL PROPERTY
Participating Precincts Reporting: 46 / 46 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| YES | 66.26% | 8,363 |
| NO | 33.74% | 4,260 |
| | | 12,623 |

## MIAMI: AUTHORIZING GEN OBLIGATION BONDS
Participating Precincts Reporting: 127 / 127 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| For Bonds | 56.98% | 13,627 |
| Against Bonds | 43.28% | 10,363 |
| | | 23,990 |

## MIAMI: CHARTER AMEND, ALGO BAYSHORE LEASE
Participating Precincts Reporting: 127 / 127 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| YES | 64.21% | 15,014 |
| NO | 35.79% | 8,368 |
| | | 23,382 |

## MIAMI: CHARTER AMEND, DAG UNCLASS SERVICE
Participating Precincts Reporting: 127 / 127 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| YES | 61.90% | 13,407 |
| NO | 38.10% | 8,241 |
| | | 22,048 |

## MIAMI: CHARTER AMEND, IAG EMPLOYEES
Participating Precincts Reporting: 127 / 127 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| YES | 70.14% | 15,341 |
| NO | 29.86% | 6,461 |
| | | 21,802 |

## MIAMI: CHARTER AMEND, FILL VACANCY
Participating Precincts Reporting: 127 / 127 — Precinct Details — Show Detailed View

| Choice | Percent | Vote |
|---|---|---|
| YES | 61.63% | 13,579 |
| NO | 38.97% | 8,660 |
| | | 22,239 |

Select Year:  [2022]  [Go]

# The 2022 Florida Statutes (including 2022 Special Session A and 2023 Special Session B)

Title IX                              Chapter 106                    View Entire Chapter
ELECTORS AND ELECTIONS          CAMPAIGN FINANCING

**106.1435  Usage and removal of political campaign advertisements.**—

(1)  Each candidate, whether for a federal, state, county, or district office, shall make a good faith effort to remove all of his or her political campaign advertisements within 30 days after:

(a)  Withdrawal of his or her candidacy;

(b)  Having been eliminated as a candidate; or

(c)  Being elected to office.

However, a candidate is not expected to remove those political campaign advertisements which are in the form of signs used by an outdoor advertising business as provided in chapter 479. The provisions herein do not apply to political campaign advertisements placed on motor vehicles or to campaign messages designed to be worn by persons.

(2)  If political campaign advertisements are not removed within the specified period, the political subdivision or governmental entity has the authority to remove such advertisements and may charge the candidate the actual cost for such removal. Funds collected for removing such advertisements shall be deposited to the general revenue of the political subdivision.

(3)  Pursuant to chapter 479, no political campaign advertisements shall be erected, posted, painted, tacked, nailed, or otherwise displayed, placed, or located on or above any state or county road right-of-way.

(4)  The officer before whom a candidate qualifies for office shall notify the candidate, in writing, of the provisions in this section.

(5)  This provision does not preclude municipalities from imposing additional or more stringent requirements on the usage and removal of political campaign advertisements.

**History.**—s. 1, ch. 84-221; s. 20, ch. 84-302; s. 14, ch. 87-224; s. 647, ch. 95-147.

Copyright © 1995-2023 The Florida Legislature • Privacy Statement • Contact Us

PLAINTIFF'S
EXHIBIT

545



Select Language

Powered by Google Translate



**MIAMI-DADE COUNTY**
Christina White, Supervisor of Elections

## Miami Run-Off Election

(Website last updated at: 08/16/2021 2:21:27 pm)

**Election Date: 11/21/2017**

| | | | |
|---|---|---|---|
| Registered Voters: | 30,338 | Precincts Reporting: | 17 / 17 |
| Ballots Cast: | 4,587 | Election Day: | Completely Reported |
| Voter Turnout: | 15.12% | Early Votes: | Completely Reported |
| | | Vote By Mail: | Completely Reported |

Results are Official.

| Summary Results | Precinct Results | Reports | Favorite Races |
|---|---|---|---|

Change View

**Vote Type View:** Graphical

☆ **MIAMI: COMMISSIONER - DISTRICT 3**

Participating Precincts Reporting: 17 / 17        *Precinct Details*        Show Detailed View

| Choice | Percent | Votes |
|---|---|---|
| **Joe Carollo** | 52.76% | 2,409 |
| **Alfonso "Alfie" Leon** | 47.24% | 2,157 |
| | | 4,566 |



**CITY OF MIAMI**

Date: July 27, 2018
Owner's Name: TOWER HOTEL, LLC
Owner's Address: 1637 SW 8 ST STE 200, MIAMI, FL 33135

## CERTIFICATE CANCELING THE DECISION ORDER OF THE CITY OF MIAMI UNSAFE STRUCTURES BOARD

CASE REFERENCE NUMBER: BB2018000468
COUNTY OF DADE Folio: 01-4102-006-6280

THIS IS TO CERTIFY that violations of Chapter 8-5 of the Code of Miami-Dade County, and other relating sections of the Florida Building Code have been satisfactorily corrected in connection with the following described property, to wit:

Re: 1460 SW 7 ST
Legal Description: LAWRENCE ESTATE LAND COS SUB PB 2-46 LOT 8 BLK 104 LOT SIZE 6650 SQ FT OR 17240-3627 0496 5 COC 22374-4218 04 2004 4

The Clerk of the Circuit Court is directed to cancel and discharge of the record the Order of the City of Miami Unsafe Structure Board, recorded MARCH 02, 2018 in Official Records Book 30880, Pages 2779-2781 CFN#: 20180123418, relating to the above described property.

per:

Rene Diaz
(305) 416-1177
unsafestructures@miamigov.com



PLAINTIFF'S
EXHIBIT

**548**



# City of Miami

July 27, 2018

### CERTIFICATE CANCELING NOTICE OF LIEN

STATE OF FLORIDA CR: BB2018000468
COUNTY OF DADE Folio: 0141020066280

THIS IS TO CERTIFY that Chapter 8-5 of the Code of Miami-Dade County and other relating sections have been satisfactorily corrected in connection with the following described property, to wit:

TOWER HOTEL LLC

1637 CALLE OCHO STE 200
MIAMI, FL 33135

RE: 1460 SW 7 ST
LAWRENCE ESTATE LAND COS SUB PB 2-46 LOT 8 BLK 104 LOT SIZE 6650 SQ FT OR 17240-3627 0496 5 COC 22374-4218 04
2004 4

The Clerk of the Circuit Court is directed to cancel and discharge of record the Notice of Lien recorded on July 27, 2018 in Official Records Book 31079, Page 916, CFN # , relating to the above described property.

Prepared by: _____
Maurice Pons
(305)416-1170
unsafestructures@miamigov.com
444 SW 2nd Avenue
Miami, Florida 33130



# City of Miami

July 27, 2018

## CERTIFICATE CANCELING NOTICE OF LIEN

STATE OF FLORIDA CR: BB2012010271
COUNTY OF DADE Folio: 0141020066270

THIS IS TO CERTIFY that Chapter 8-5 of the Code of Miami-Dade County and other relating sections have been satisfactorily corrected in connection with the following described property, to wit:

TOWER HOTEL LLC

1637 CALLE OCHO STE 200
MIAMI, FL 33135

RE: 1450 SW 7 ST
LAWRENCE ESTATE LAND COS SUB PB 2-46 LOT 7 BLK 104 LOT SIZE 6650 SQUARE FEET

The Clerk of the Circuit Court is directed to cancel and discharge of record the Notice of Lien recorded on July 27, 2018 in Official Records Book 31079, Page 306, CFN # , relating to the above described property.

Prepared by: _____
Maurice Pons
(305)416-1170
unsafestructures@miamigov.com
444 SW 2nd Avenue
Miami, Florida 33130





# City of Miami

July 27, 2018

### CERTIFICATE CANCELING NOTICE OF LIEN

STATE OF FLORIDA CR: BB2012021798
COUNTY OF DADE Folio: 0141020066260

THIS IS TO CERTIFY that Chapter 8-5 of the Code of Miami-Dade County and other relating sections have been satisfactorily corrected in connection with the following described property, to wit:

TOWER HOTEL LLC

1637 CALLE OCHO STE 200
MIAMI FL 33135

RE: 1444 SW 7 ST
LAWRENCE ESTATE LAND COS SUB PB 2-46 LOT 6 BLK 104 LOT SIZE 6650 SQUARE FEET OR 19247-1043 0800 1

The Clerk of the Circuit Court is directed to cancel and discharge of record the Notice of Lien recorded on July 22, 2013 in Official Records Book 28733, Page 4266, CFN # , relating to the above described property.

Prepared by:
Maurice Pons
(305)416-1170
unsafestructures@miamigov.com
444 SW 2nd Avenue
Miami, Florida 33130



# CITY OF MIAMI

Date: July 27, 2018
Owner's Name: TOWER HOTEL, LLC
Owner's Address: 1637 SW 8 ST STE 200, MIAMI, FL 33135

## CERTIFICATE CANCELING THE DECISION ORDER OF THE
## CITY OF MIAMI UNSAFE STRUCTURES BOARD

CASE REFERENCE NUMBER: BB2012010271
COUNTY OF DADE Folio: 01-4102-006-6270

THIS IS TO CERTIFY that violations of Chapter 8-5 of the Code of Miami-Dade County, and other relating sections of the Florida Building Code have been satisfactorily corrected in connection with the following described property, to wit:

Re: 1450 SW 7 ST
Legal Description: LAWRENCE ESTATE LAND COS SUB PB 2-46 LOT 7 BLK 104 LOT SIZE 6650 SQUARE FEET

The Clerk of the Circuit Court is directed to cancel and discharge of the record the Order of the City of Miami Unsafe Structure Board, recorded MARCH 02, 2018 in Official Records Book 30880, Pages 2801-2803 CFN#: 20180123437, relating to the above described property.

per:

Rene Diaz
(305) 416-1177
unsafestructures@miamigov.com



  

MIAMI-DADE
COMMISSION ON ETHICS & PUBLIC TRUST

In re:                                                                              C 18-14-03

Joe Carollo et al

_____/

## PUBLIC REPORT AND FINAL ORDER

Complainant Bill Fuller (Fuller) filed this complaint against City of Miami
Commissioner Joe Carollo (Carollo), Steve Miro, (Miro), Alberto Parjus (Parjus) and
Mary Lugo (Lugo). The complaint alleged, among other things, that the Respondents
used contacts within City government to target selected businesses owned by a supporter
of Carollo's campaign opponent. Respondents denied the allegations.

On August 6, 2018, the Complainant requested to withdraw the complaint pursuant to
Rule 4.3 of the Ethics Commission's Rules of Procedure.

On August 15, 2018 the Ethics Commission granted the Complainants request to
withdraw the complaint and the complaint was dismissed.

Wherefore it is:

        **ORDERED AND ADJUDGED** that COMPLAINT C18-14-03 against Joe Carollo,

Steve Miro, Alberto Parjus and Mary Lugo is dismissed.



PLAINTIFF'S
EXHIBIT

**551**

C18-14-03                          In re: Carollo et al                          Final Order

**DONE AND ORDERED** by the Miami-Dade County Commission on Ethics & Public Trust in public session on this 15th day of August, 2018.

MIAMI-DADE COUNTY COMMISSION ON ETHICS & PUBLIC TRUST

By:

H. Jeffrey Cutler
Chairman
Signed on : 08/28/2018

C18-28-07                    In re: Michael Etienne                    Final Order

 46   **B Fuller** ›   

Nov 21, 2017 at 4:36 PM

Just saw Carollo at the polls. He said to me where's your "blue and yellow" shirt

Nov 21, 2017 at 7:31 PM





Only absentee

No precincts reporting yet

PLAINTIFF'S
EXHIBIT

553



Close

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 18-24190-CIV-MORENO

**WILLIAM O. FULLER and MARTIN PINILLA II**,
     *Plaintiffs*,

   v.

**JOE CAROLLO, THE CITY OF MIAMI,**
**MARIA LUGO, and JOHN DOES 1-10**,
     *Defendants*.

_____/

**DEFENDANTS' JOINT MOTION TO STAY DISCOVERY PENDING**
**THE COURT'S ORDER ON DEFENDANTS' MOTIONS TO DISMISS,**
**AND SUPPORTING MEMORANDUM OF LAW**

Defendants, Commissioner Joe Carollo, Maria Lugo, and the City of Miami, by and through their undersigned attorneys, pursuant to Fed. R. of Civ. P. 26(c), hereby move this Court for an Order staying merit-based discovery until this Court has ruled upon the Defendants' numerous Motions to Dismiss for lack of standing, failure to state a claim, and qualified immunity, and in support thereof, state as follows:

**SUMMARY OF ARGUMENT**

This lawsuit arises from an alleged effort by Co-Defendants, Joe Carollo, Maria Lugo, and the City of Miami, to retaliate, and/or conspiracy to retaliate, against Plaintiffs William Fuller and Martin Pinilla's First Amendment Rights for their purported support of a political candidate. [DE# 43], (the "Amended Complaint"). The Defendants filed with the Court various Motions to Dismiss setting forth (i) lack of standing over Defendants Joe Carollo, Maria Lugo, and the City of Miami, (ii) failure to state a claim for First Amendment retaliation or conspiracy to retaliate, (iii) the intracorporate conspiracy doctrine, and (iv) qualified immunity, among others. [DE# 53]; [DE#

Page 1 of 11

PLAINTIFF'S
EXHIBIT

**566**

54]; [DE# 64]. On any one of these issues, resolution of the Motions will dispose of the entire case as involving all, or some, of the Defendants.

In light of the status of proceedings and potential disposition of the entire action in favor of the Defendants, the Defendants respectfully move this Court for a stay of merit-based discovery, until such time that this Court has ruled upon the Motions to Dismiss. Requiring the Defendants to otherwise prematurely participate in merit-based discovery before the Motions to Dismiss are ruled upon would impose an undue burden and expense on the Defendants. Especially when such discovery may be unnecessary if the Motions are granted. Further, the Defendants would be prejudiced and subjected to unnecessary and extensive time, cost and expense – a consideration and burden the Court must weigh. Finally, qualified immunity defenses not only protect government employees who perform discretionary functions from liability, but also protect them from the burdens of trial, including discovery, which should also be considered in granting the stay of merit-based discovery. Good cause therefore exists and reasonableness warrant a brief stay of merit-based discovery by the Court until the various Motions to Dismiss are ruled upon.

## MEMORANDUM OF LAW

### I. Legal Standard

Where good cause and reasonableness exist, a stay of discovery by the court is warranted. *See Varga v. Palm Beach Capital Management, LLC*, No. 09-82398-CIV, 2010 WL 8510622, at *1, (S.D. Fla. Sept. 3, 2010) (*citing Bocciolone v. Solowky*, No. 08-20200, 2008 WL 2906719, at *2, (S.D. Fla. July 24, 2008)) (A stay of discovery is appropriate where the movant shows "good cause and reasonableness"). A stay is the proper vehicle to avoid a waste of judicial resources. *Allstate Ins. Co. v. Titusville Total Health Care*, 848 So.2d 1166 (Fla. 5th DCA 2003); *Laurence v. Soler*, 706 So.2d 896 (Fla. 3d DCA 1998).

The moving party bears the burden of showing good cause and reasonableness. *See McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006) (*citing Feldman v. Flood,* 176 F.R.D. 651, 652 (M.D. Fla. 1997)). "[T]he Court inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery. This involves weighing the likely costs and burdens of proceeding with discovery." *Id.*

## II.     Good Cause and Reasonableness Necessitates a Stay of Discovery

Where the motions, if granted by the court, would dispose of the entire action a stay is necessary. *See McCabe*, 233 F.R.D. at 685 (*citing Feldman*, 176 F.R.D. at 652) (A request to stay discovery pending a resolution of a motion is rarely appropriate unless resolution of the motion will dispose of the entire case). Likewise, where the Court's "preliminary peek" at the merits of a dispositive motion shows that the moving party's argument "appears to be clearly meritorious and truly case dispositive," a stay order is warranted. *Id.* (*citing Feldman,* 176 F.R.D. at 652–53). "[T]he Court inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery. This involves weighing the likely costs and burdens of proceeding with discovery." *Id.* (*citing Feldman*, 176 F.R.D. at 652).

A stay of merit-based discovery is suitable here as Defendants' Motions to Dismiss seek to dispose of the entire action as it pertains to the Moving Defendants. *See e.g. Horsley v. Feldt*, 304 F.3d 1125, 1131 n.2 (11th Cir. 2002) (district court did not err in suspending discovery because "there was no need for discovery before the district court ruled on [dispositive] motions"); *Patterson v. U.S. Postal Service*, 901 F.2d 927 (11th Cir. 1990) (where a motion to dismiss was pending, the district court did not abuse its discretion in staying discovery). If the Court dismisses

Page 3 of 11

Plaintiffs' non-meritorious claims before discovery has begun, unnecessary costs to both parties and to the court can be avoided. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997). Conversely, permitting the parties to initiate discovery while the Motions to Dismiss are still pending before the Court imposes unnecessary costs and encourages abusive discovery. *Id.* It increases the costs of the case, does nothing but wastes the resources of all the parties, delays resolution of the disputes, increases the costs potentially to non-parties, and squanders judicial resources. Especially, here, when Plaintiffs have requested nearly one-hundred different discovery requests on Defendants Commissioner Carollo and the City of Miami. (*See* Plaintiffs' Requests for Production on Defendants attached hereto as **Composite Exhibit "A"** and Plaintiffs' Second Request for Production Directed to Commissioner Carollo and the City of Miami attached as **Exhibit "B"**).

First, all Defendants have raised serious concerns regarding the Plaintiffs' standing to assert First Amendment Retaliation claims in this case. The Plaintiffs' issues with standing alone warrants a stay of merit-based discovery. *Varga*, No. 09-82398-CIV-MORENO, 2010 U.S. Dist. LEXIS 144440, at *3 (S.D. Fla. Sep. 2, 2010) (noting that questions of standing "are threshhold legal issues that are case-dispositive. It is appropriate to stay discovery pending resolution of a motion to dismiss where such an issue is raised."). *See also Dayem v. Chavez*, Case No. 17-21289-Civ-WILLIAMS/TORRES, 2014 U.S. Dist. LEXIS 196015, at *1 (S.D. Fla. Mar. 11, 2014) (finding a "stay of discovery . . . warranted" after having "peeked at the several motions to dismiss" raising "lack of subject matter jurisdiction, lack of standing, failure to state a claim upon which relief can be granted, [and] improper venue").

Second, staying discovery is justified based upon the Plaintiffs' failure to sufficiently state a claim for First Amendment retaliation. The Court has previously ruled that motions to dismiss

under Fed. R. Civ. P. 12(b)(6) for a failure to state a claim "filed prior to discovery weigh heavily in favor of issuing a stay" on discovery. *Solar Star Sys., LLC v. BellSouth Telcomms., Inc.*, No. 10-21105-CIV, 2011 U.S. Dist. LEXIS 38150, at *1-2 (S.D. Fla. Mar. 20, 2011). There, the defendant's request for a stay on discovery was granted while its motion to dismiss for a failure to state a claim was pending with the Court. *Id.* at *2. Similarly, here, since "this motion is potentially dispositive of the entire action[,]" the Defendants' motion to stay discovery should likewise be granted. *Id.* As this Court noted, "Federal district courts have wide discretion to limit the scope of discovery or control its timing to protect a party from annoyance, oppression, or undue burden or expense" under Fed. R. Civ. P. 26(c). *Id.* at *1. *Chudasama*, 123 F.3d at 1366 ("Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins."); *see also Cheshire v. Bank of America, NA*, 351 F. App'x 386, 388 (11th Cir. 2009) ("[A] plaintiff has no right to discovery upon the filing of a motion to dismiss that raises a purely legal question . . . . Defendants' motions to dismiss raised only legal questions and, therefore, [plaintiff] had no right to discovery.").

Third, special consideration for a stay on merit-based discovery is further warranted since the defense of qualified immunity is asserted. "The defense of sovereign or qualified immunity protects government officials not only from having to stand trial, but from having to bear the burdens attendant to litigation, including pretrial discovery." *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1252 (11th Cir. 2004). *See Allmond v. City of Jacksonville*, No. 3:07-cv-1139-J-33TEM, 2008 U.S. Dist. LEXIS 57389, at *6 (M.D. Fla. July 8, 2008) (finding that "case precedent exists to protect government officials named as defendants from the discovery process until the issue of immunity is ruled upon once it has been raised."); *see also Elliott v. Perez*, 751 F.2d 1472,

1478 (5th Cir. 1985) ("Subjecting officials to trial, traditional discovery, or both concerning acts for which they are likely immune undercuts the protection from government disruption which official immunity is supposed to afford.").

Therefore, the basis and evidence in support of entry of an Order by this Court on this Motion to Stay Discovery is as follows:

(i)     No discovery is necessary or needed for purposes of standing, failure to state a claim for retaliation, or qualified immunity prior to a ruling on the various motions to dismiss, and if a party seeks such discovery, a stay will not prevent it in assisting the Court's rulings;

(ii)    Merit-based, substantive fact discovery will be a waste of the Court's time and judicial resources;

(iii)   Additional or further discovery will be a waste of the parties' time and expense; and;

(iv)    A stay is the most expeditious way to proceed.

Further, Plaintiffs would not be prejudiced by such as stay order because Defendants are only seeking "a brief stay of discovery pending resolution of the motions to dismiss." *Varga*, No. 09-82398-CIV-MORENO, 2010 U.S. Dist. LEXIS 144440, at *4.

However, the Defendants are greatly prejudiced by these requests. Plaintiffs have directed nearly one-hundred requests for production to Commissioner Carollo and to the City of Miami. *See* **Exhibit A; Exhibit B.** The sheer number and scope of these requests requires an incredible amount of time and expense from the Defendants. Forcing Defendants to expend such resources in responding to the nearly one-hundred discovery requests is unduly prejudicial at the motion to dismiss stage. Indeed, Plaintiffs' discovery requests have no bearing as to the dispositive issues

regarding Plaintiffs' standing, their failure to state a claim for retaliation, and qualified immunity. Good cause therefore exists and reasonableness warrants a stay of merit-based discovery by the Court—especially considering the Plaintiffs' tactics in overwhelming the Defendants with their requests. *See* Fed. R. Civ. P. 26(c) (the "[C]ourt may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…"). The Defendants would otherwise be prejudiced and subjected to unnecessary time, cost and expense, which is a consideration and burden the Court must weigh. *See McCabe*, 233 F.R.D. at 685 (*citing Feldman,* 176 F.R.D. at 652).

Moreover, a stay does not prejudice Plaintiffs as they have requested and received many if not most of their discovery through public record requests under Chapter 119 of the Florida Statutes. (*See* Plaintiffs' Public Record Requests attached as **Exhibit "C"**). At this stage of the litigation, Plaintiffs do not need to burden Defendants with massive amounts of discovery requests when they are using different means to obtain the same requested documents.

Accordingly, forcing participation in time-consuming and costly discovery is highly prejudicial and in error. While permitting Plaintiffs to go on a fishing expedition is improper. When balanced, a stay of discovery would save tremendous time and expense to the benefit of all of the parties and the Court, with little, if any, risk of negative repercussions to Plaintiffs. *See Chudasama*, 123 F.3d at 1368 ("If the district court dismisses a nonmeritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided"); *McCabe*, 233 F.R.D. at 685 (*citing Feldman,* 176 F.R.D. at 652). The entry of a stay is reasonable and necessary. IT will reduce the need for time-consuming and resource-expending discovery disputes in the face of truly meritorious and dispositive Motions to Dismiss.

## **CONCLUSION**

Good cause and reasonableness require a stay of merit-based discovery because the Defendants have truly dispositive motions. To require participation by the Defendants in costly and unduly burdensome merit-based discovery before the Court has ruled on Defendants' Motion to Dismiss is impermissible and can be avoided with little, if any, prejudice to the parties involved. The Court should grant the subject Motion and enter an order staying all merit-based discovery in its entirety. The Moving Defendants further state that the subject Motion is not intended for delaying the action before this Court, but is intended solely for the purposes stated above, including judicial economy. As such, upon the Court's granting of the subject Motion, the Moving Defendants represent that that they are immediately amenable to scheduling a special set hearing on the Motions to Dismiss at a mutually convenient date and time. The entry of a stay will therefore only be for a short and reasonable period of time. If the Motions to Dismiss are denied, Defendants respectfully request this Court to allow thirty (30) days for Defendants to respond to Plaintiffs' discovery requests after this Court has entered an order denying such motions.

WHEREFORE, for the foregoing reasons, Defendants respectfully request this Court enter an Order staying merit-based discovery in its entirety by all parties, and, if the Court denies Defendants' Motions to Dismiss, allow thirty days to respond to such discovery requests after this Court has ruled upon the Motions to Dismiss, and any and all other further relief as this court deems just and proper.

## LOCAL RULE 7.1(a)(3)
## CERTIFICATE OF GOOD FAITH MEET AND CONFER

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel certifies that they conferred with

counsel for Plaintiffs William O. Fuller and Martin Pinilla II regarding the above requested relief,

and was informed that the Plaintiffs oppose this motion.

Respectfully submitted,

By: _s/Thomas E. Scott_
**THOMAS E. SCOTT**
Florida Bar No. 149100
Counsel for Joe Carollo
**COLE, SCOTT & KISSANE**
Cole, Scott & Kissane Building
9150 South Dadeland Blvd., Suite 1400
Miami, Florida 33156
P: 305-350-5381
F: 305-373-2294
Thomas.scott@csklegal.com

and

_S/ Benedict P. Kuehne_
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**MICHAEL T. DAVIS**
Florida Bar No. 63374
**KUEHNE DAVIS LAW, P.A.**
100 SE 2 Street, Suite 3550
Miami, FL 33131-154
Tel: (305) 789-5989
Fax: (305) 789-5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

## CERTIFICATE OF SERVICE

I certify that on March 8, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

By: *s/Thomas Scott*
       Thomas E. Scott

<u>SERVICE LIST</u>

*Attorneys for Plaintiffs*
Brandon Perry Rose, Esq.
<u>Brandon@axslawgroup.com</u>
AXS Law Group PLLC
2121 NW 2nd Avenue, Suite 201
Wynwood, FL 33127 (305)297-1878

and

Jeffrey W. Gutchess
<u>jeff@axslawgroup.com</u>
18150 Purdy Avenue
Miami Beach, FL 33139
(305) 389-3646

*Attorneys for Defendant City of Miami*
Christopher Allan Green, Esq.
<u>cagreen@miamigov.com</u>
Miami City Attorney's Office
444 S.W. 2nd Avenue, Suite 945
Miami, FL 33130-1910
(305)416-1800 (305) 416-1801 (fax)

*Attorneys for Defendant Lugo*
Oscar Marrero, Esq.
oem@marrerolegal.com
Lourdes Espino Wydler, Esq
lew@marrerolegal.com
Alexandra Hayes, Esq
ach@marreroleegal.com
Marrero & Wydler
2600 Douglas Road, PH-4
Coral Gables, FL 33134
(305) 446-5528



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No.: 1:18-cv-24190

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

        Plaintiffs,

    v.

JOE CAROLLO,
THE CITY OF MIAMI,
MARIA LUGO, and
JOHN DOES 1-10,

        Defendants.

_____/

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JOE CAROLLO

Plaintiffs, William O. Fuller and Martin Pinilla, II, pursuant to Rule 34 of the Federal Rules of Civil Procedure, request that Defendant Joe Carollo produce the following documents within thirty (30) days of service at the law offices of AXS Law Group, PLLC, located at 2121 NW 2nd Avenue, Suite 201, Wynwood, Florida 33127.

## DEFINITIONS

1.      All capitalized terms not otherwise defined in these Requests for Production shall have the meaning ascribed to them in the Complaint filed in this action, or the latest amended version thereof if filed, (the "Amended Complaint"), or otherwise shall be given their ordinary meaning.

2.      "Any" means any and all.

3.      The terms "Lawsuit" and "Action" refer the above-caption lawsuit styled *William O. Fuller and Martin Pinilla, II v. Joe Carollo, The City of Miami, Maria Lugo, John Does 1-10*, Case No. 18-cv-24190.

4.      The term " "Amended Complaint" refers to the Plaintiffs' Amended Complaint in the Lawsuit, or the latest version thereof.

5.      The term "Plaintiffs" refers to Plaintiffs in this action, William O. Fuller and Martin Pinilla, II, including any of their agents, officers, employees, and all other persons acting or purporting to act on their behalf.

6.      The term "Fuller" refers to the Plaintiff in this action, William O. Fuller, including any of his agents, officers, employees, and all other acting or purporting to act on his behalf.

7.      The term "Pinilla" refers to the Plaintiff in this action, Martin Pinilla, II, including any of his agents, officers, employees, and all other persons acting or purporting to act on his behalf.

8.      The terms "you," "your," "Carollo" refer to the Defendant in this action, Commissioner Joe Carollo, in both his individual capacity and capacity as a Commissioner, including any of his present and former agents, staff, employees, and all other persons who have acted, are acting or who have purported or are purporting to act on his behalf/at his direction.

9.      The terms "City," or "City of Miami" refer to the Defendant in this action, The City of Miami, including any of its employees, agents, and all other persons acting or purporting to act on its behalf.

10.     The term "Lugo" refers to the Defendant in this action, Maria Lugo, including any of her present and former agents, staff, employees, and all other persons who have acted, are acting or who have purported or are purporting to act on her behalf.

11.     "Communications" shall mean any and all direct and/or indirect transmissions or exchanges of information between two or more individuals and/or entities, or their respective agents or representatives, whether or not reduced to writing, including, without limitation, any meeting, conversation or discussion, whether face-to-face, by means of mail, telephone, telegraph, telex, facsimiles, electronic mail, text message or any other medium.

12.     "Document" or "documents" as used in these Requests for Production shall mean any writing, recording, electronically-stored information, or photograph which pertains directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to the issues in this Lawsuit, or which is itself listed below as a specific document, including, but not limited to: correspondence, memoranda, notes, messages, diaries, minutes, books, reports, charts, ledgers, invoices, computer printouts, microfilms, photographs, videotapes, or tape recordings, or any other type of recording. The term document shall also include any and all communication, including any and all correspondence via electronic mail, electronic message, text message, facsimile, or other similar medium. The terms document or documents shall include a printout or other replication that is perceptible by and comprehensible to human beings without the aid of a machine. Document or documents shall include drafts of documents defined above and all non-identical copies of said documents. Handwritten or other markings or notations of any kind on any copy of a document render it non-identical. A document that "refers to," "pertains to," "relates to," "supports," or "evidences" a given subject

matter means a document that discusses, identifies, comments on, analyzes, states, deals with, responds to, describes, or is any way pertinent to that subject.

13.  "Person" or "persons" mean a natural person, firm, association, organization, partnership, trust, limited liability company, corporation, or any other public or private entity.

14.  "Relating to" means referring, constituting, embodying, concerning, describing, identifying, supporting, discussing, reflecting, studying, commenting or reporting on, analyzing, pertaining to, or mentioning the stated subject matter, in whole or in part, whether directly or indirectly.

15.  Unless otherwise stated, the time period for documents sought by each of the numbered Paragraphs of this First Request for Production of Documents is January 1, 2017 to date.

## INSTRUCTIONS

1.  All non-privileged documents that are in your possession, custody and/or control are to be produced. If, after exercising due diligence to secure the documents requested, you cannot produce all responsive documents, so state, produce to the extent possible, specify the reasons why you are unable to provide a full and complete response, and state what information and knowledge you have concerning the portion not produced.

2.  If you object to any item or category demanded, in whole or in part, your objection must identify with particularity the specific document or evidence demanded as to which the objection is made and must set forth the specific ground for objection.

3.  If you decline to produce any document or part thereof based on a claim of privilege or any other claim, provide with respect to each withheld document: (i) the identity of the person(s) who prepared the document, signed it, or by whose name the document was sent or

issued; (ii) the identity of all person(s) to whom the document was directed; (iii) the identity of all person(s) who received the document; (iv) a description of the nature and substance of the document, with sufficient particularity to enable the court and parties to identify the document and judge the merits of your asserted bases for non-production; (v) the date on which the document was prepared, and any dates indicated on the document; (vi) the number of pages in the document; (vii) the basis upon which the privilege or other protection is claimed; and (viii) copies of all non-privileged or non-protected matter or information included in the document.

## INSTRUCTIONS AS TO ELECTRONICALLY STORED INFORMATION

1.      Produce ESI in single-page 300 DPI GroupIV Monochrome Tagged Image File Format (.TIFF or .TIF) along with a Concordance load file (OPT).

2.      Provide a separate comma delimited metadata loadfile (.DAT) using standard concordance delimiters (Comma ASCII character (020) Quote þ ASCII character (254)) for all metadata fields available including but not limited to the below list:

| FIELD NAME | Description |
|---|---|
| Docid | [Begdoc#] |
| Auxid | [Endoc#] |
| Attachids | Docid of attachment Documents |
| Parentid | Docid for the parent e-mail or document that has an attachment associated with it. |
| Attrange | Docid numbers for Documents attached to a record |
| Pgcount | Number of pages in a document |
| Doctype | Type of document |
| Subject | Subject of document or e-mail |
| From | Author, senders |
| To | Recipients |
| CC | copied recipients |
| Datesent | E-mail sent date |
| Datercvd | E-mail receive date |
| Datecrtd | Date that an attached document was created, typically an e-mail |
| Body | Contents of the e-mail |
| Author | File author |
| Doctitle | Document name or title |

-5-

Doclink                         Path or link to native file

3.      Provide extracted text or OCR as one multipage text file per record. Text files
should be named by BegDoc number and should be referenced in a 'TextPath' field within the
DAT file.

4.      Include all native files (for both emails and email attachments) and as noted above
in the metadata field list, populate the doclink field with the native file path.

5.      When the instructions above would not allow the produced documents to be
reasonably usable by Plaintiffs, Plaintiffs further request that you produce any such documents in
their native format with the file type, MD5 Hash value, and path to the native file.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.  A copy of any document hold notices sent to you regarding the Lawsuit.

2.  All documents and communications that you intend to rely upon in regards to the
    Lawsuit.

3.  All documents and communications supporting, refuting or relating to any allegation in
    the Amended Complaint.

4.  All documents and communications, including documents and communications sent to,
    from, or including you or any other City employee relating to or referencing the Lawsuit,
    Fuller, Pinilla and/or The Barlington Group.

5.  All documents and communications relating to any meetings you had with Fuller
    regarding your campaign for Commission for the City of Miami's District 3.

6.  All documents and communications from or referencing you, Lugo, Stephen Miro, Alfie
    Leon, Fuller or Pinilla, on November 18 or 19, 2017.

7.  All documents and communications referencing or relating to the Alfie Leon rally held at
    120 SW 14th Avenue on November 18 or 19, 2017.

8.  All documents and communications, including documents and communications sent to,
    from, or including you or any other City employee, relating to the raid or otherwise
    investigation or visitation on or about November 26, 2017 by numerous City enforcement
    personnel including police, fire, building and Code Enforcement officers of the business
    Sanguich de Miami.

9.  All documents and communications, including documents and communications sent to, from, or including you or any other City employee, relating to your meeting with Sanguich de Miami's owners, Rosa Romero and Daniel Figuerdo on or about December 6, 2017.

10. All documents and communications, including documents and communications sent to, from, or including you or any other City employee, relating to the Commission hearing on or about December 14, 2017 to remove Temporary Use Permits from District 3.

11. All documents and communications, including documents and communications sent to, from, or including you or any other City employee, relating to any decision to include language regarding the removal of Temporary Use Permits in any legislation.

12. All documents and communications, including documents and communications sent to, from, or including you or any other City employee, relating to any the failure by the City to hold a hearing or provide public notice regarding the removal of Temporary Use Permits on any property, including any property on which Sanguich de Miami was located.

13. All documents and communications, including documents and communications sent to, from, or including you or any other City employee, relating to or reference Sanguich de Miami and Temporary Use Permits.

14. All documents and communications, including documents and communications sent to, from or including you, Yacmany Salvatierra, Building Department Director Jose Camero, and/or any other City employee, relating to the visitation on or about January 6 and 8, 2018, by City Code Enforcement, including Code Enforcement Officer Yacmany Salvatierra.

15. All documents and communications, including documents and communications sent to, from, or including you or any other City employee, relating to the decision to prohibit Sanguich de Miami's reopening on Fuller and Pinilla's property.

16. All documents and communications, including documents and communications sent to, from, or including you relating to Sanguich de Miami.

17. All documents and communications sent to, from, or including you, Lugo, Chief of Code Enforcement Jessica Capo, Assistant City Manager Alberto Parjus, Code Enforcement Officer Orlando Diez, Code Officer Scarlett Morua and/or any other City employee/officer relating to or referencing the December 15, 2017 holiday party at the historic Tower Hotel.

18. All documents and communications relating to the inspection of Sanguich de Miami at the Gay 8 Festival on February 8, 2018, including any documents or communications sent to, from or including you, Stephen Miro, Mr. Carlos Diaz, the Fire Department,

Police Department, the Special Events Department and/or Code Enforcement relating to or referencing Sanguich de Miami at the Gay 8 Festival.

19. All documents and correspondence sent to, from, or including City Attorney Victoria Méndez on February 8, 2018, including but not limited to those referencing Fuller, Sanguich de Miami or the Gay 8 Festival.

20. All documents and communications relating to the raid or otherwise investigation or visitation by you, numerous police officers and City enforcement officers on or about February 10, 2018 of the business Union Beer, which is located at 1547 SW 8th Street ("Union Beer").

21. All documents and communications sent to, from or including you and/or each of the City employees that physically went to Union Beer on or about February 10, 2018, relating to the decision to visit and shut down Union Beer's business.

22. All documents and communications relating to Union Beer.

23. All documents and communications relating to or referencing your, Lugo, Stephen Miro, and/or Mr. Miro's wife's visit/investigation on or about February 18, 2018 of the parking lot located at 1411 SW 11 St., Miami FL 33135, which is leased by a valet operator S.H. Valet, including but not limited to the decision to conduct such a visit/investigation.

24. All documents and communications, including documents and communications sent to, from, or including you or any other City employee relating to Ball & Chain or S.H. Valet.

25. All documents and communications, including documents and communications sent to, from, or including you or any other City employee, relating to or referencing any ride-alongs that you participated and/or joined in and the properties that were identified, targeted or otherwise investigated during those ride alongs, including ride-alongs with Code Enforcement Supervisor Michele Watt, Code Enforcement Officer Dennis Uriarte.

26. All documents and communications, including documents and communications sent to, from or including you or any other City employee, relating to or referencing the Ethics Complaint filed by Fuller c/o The Barlington Group on or about March 12, 2018 or its withdrawal in August 2018, or the Investigative Report released by the Miami-Dade Commission on Ethics and Public Trust in relation to the Ethics Complaint.

27. Any statements, whether sworn or unsworn, that you gave relating to or as part of the investigation for the Ethics Complaint filed by Fuller c/o The Barlington Group on or about March 12, 2018.

28. All documents and communications relating to statements, whether sworn or unsworn, that you gave relating to or as part of the investigation for the Ethics Complaint filed by Fuller c/o The Barlington Group on or about March 12, 2018.

29. All documents and communications, including document and communications sent to, from, or including you or any other City employee, relating to or referencing the "park and walk" that occurred on or about March 14, 2018 arranged by you and conducted by you, and numerous City employees including Mr. Bernat, Code Enforcement personnel, police officers, Sean Moy (President of the AFSCME Union), Ms. Mari Lugo and Mr. Stephen Miro.

30. All documents and communications sent to, from or including you or any other City employee relating to or referencing Stephen Miro's termination from your staff, including documents and communications related to the decision to and reason for terminating Mr. Miro's employment.

31. All documents and communications sent to, from or including you relating to the Calle Ocho Marketplace, located at 1380 SW 8th Street.

32. All documents and communications sent to, from or including you or any other City employee relating to or referencing the notice sent on or about August 20, 2018 by the City to Fuller and Pinilla, which cited a code violation of Section 3.63(g) of Miami 21 at Calle Ocho Marketplace, claimed that the kiosks in the Marketplace constituted equipment and the Marketplace itself constituted a parking facility, and required that Fuller and Pinilla either fasten down the kiosks or remove them no later than August 22, 2018.

33. All documents and communications, including documents and communications sent to, from or including you or any other City employee, relating to the City's filing of an Emergency Motion for Injunctive Relief, on or about August 31, 2018, seeking an order compelling Fuller and Pinilla to remove the kiosks at the Calle Ocho Marketplace, located at 1380 SW 8th Street, or granting the City authority to remove and destroy the kiosks, and/or the court's subsequent denial of that Motion.

34. All documents and communications, including documents and communications sent to, from or including you relating to the decision to revoke Calle Ocho Marketplace's Temporary Use Permit.

35. All documents and communications, including documents and communications sent to, from or including you relating to the letter sent to Fuller and Pinilla, by the City on or about September 4, 2018 regarding the decision to revoke Calle Ocho Marketplace's Temporary Use Permit.

36. All documents and communications, including documents and communications sent to, from or including you relating to the hearing in front of the Code Enforcement Board on or about September 6, 2018 regarding Calle Ocho Marketplace's Temporary Use Permit.

37. All documents and communications, including documents and communications sent to, from or including you relating to the decision at the Code Enforcement Board hearing on

or about September 6, 2018 to give Fuller and Pinilla less than 48 hours to remove the kiosks from the Calle Ocho Marketplace or incur fines of $250 per day.

38. All documents and communications, including documents and communications sent to, from or including you relating to the emergency hearing at the Code Enforcement Board meeting on or about September 12, 2018 regarding Calle Ocho Marketplace.

39. All documents and communications, including all documents and communications sent to, from or including you or any other City employee relating to the noise violation that was posted at the Ball & Chain nightclub on or about September 18, 2018, but was dated September 15, 2018.

40. All documents relating to, referencing or showing the date that the noise violation for Ball & Chain on September 15, 2018 was entered into the City's computer system.

41. All documents photographs, videotapes, recordings and correspondence, including emails and text messages, regarding Ball & Chain nightclub on September 15, 2018.

42. All documents and communications relating to any noise complaint received about Ball & Chain, at any point in time.

43. All documents and communications, including documents and communications sent to, from, or including you and/or any other City employee, relating to or referencing your, Ms. Mari Lugo and/or Code Enforcement Director James Bernat's visitation with residents living near or around the Ball & Chain nightclub.

44. All documents and communications from residents living near or around Ball & Chain relating to or referencing Ball & Chain.

45. All documents and communications relating to City Code Enforcement and police officers' arrival at Ball & Chain on or about September 15, 2018 regarding alleged illegal parking on the parking lot owned by Fuller and/or Pinilla, that is adjacent to Ball & Chain, and the officers' subsequent requirement that Ball & Chain employees remove their cars from the lot.

46. All documents and communications, including documents and communications sent to, from or including you and/or any individual that is a part of his staff and/or working at his direction, or any other City employee, relating to or referencing your, attorney Saul Cimbler, and Code Enforcement Board member Frank Pichel's presence at and around Ball & Chain nightclub, including its parking lots and residences nearby Ball & Chain on or about October 2, 2018.

47. All documents and communications relating to any complaints you made regarding any parking lots owned by Fuller and/or Pinilla, including the parking lot that is adjacent to Ball & Chain.

48. All documents and communications relating to any complaints that you made regarding Fuller, Pinilla, The Barlington Group, any of Fuller and Pinilla's properties or associated businesses, including but not limited to Ball & Chain, Sanguich de Miami and Union Beer.

49. All documents and communications, including documents and communications sent to, from or including you, related to any alleged illegal parking in any lots owned by Fuller and/or Pinilla, located near or adjacent to Ball & Chain.

50. All documents and communications, including documents and communications sent to, from or including you or any other City employee, relating to any interview or public speaking event in which you discussed Fuller, Pinilla, and/or The Barlington Group, including your interviews on the Raul Martinez and Radio Actualidad shows.

51. All documents and communications relating to the closing and/or shutting down of the City Microfiche Room and/or Department in or around October 2018.

52. All documents and communications sent to, from or including you relating to the City Microfiche Room and/or Department.

53. All lists and/or spreadsheets created by or at your direction of identifying Fuller, Pinilla, and/or The Barlington Group's businesses, properties or associated businesses and/or properties.

54. All documents and communications, including documents and communications sent to, from or including you or any other City employee, relating to or referencing any list and/or spreadsheet that was created by or at your direction identifying Fuller, Pinilla, and/or The Barlington Group's businesses, properties or associated businesses and/or properties.

55. All documents and communications, including documents and communications sent to, from or including you or any other City employee, relating to Fuller, Pinilla, and/or The Barlington Group's businesses, properties or associated businesses and/or properties.

56. All documents and communications, including documents and communications sent to, from or including you or any other City employee, including Orlando Diez, the former Director of Code Enforcement and the Construction Manager, relating to any instructions by you to target, investigate, monitor, or otherwise seek violations against Fuller, Pinilla, and/or The Barlington Group's businesses, properties or associated businesses and/or properties.

57. All documents and communications relating to any walk by you, the Mayor, City Manager, Deputy City Manager and Code Enforcement Officer down Calle Ocho in which alleged violations by properties located on Calle Ocho were discussed.

58. All documents and communications relating to any visitation by you of 8th Street to specifically inspect, visit, or otherwise view any properties or businesses owned by or affiliated with Fuller, Pinilla and/or The Barlington Group.

59. All documents and communications relating to the decision to abolish Special Masters in the City of Miami.

60. All documents and communications, including documents and communications sent to, from or including you or any other City employee, relating to the support for, and eventual abolishment of Special Masters in the City of Miami.

61. All documents and communications relating to any requests or applications submitted by or on behalf of you from January 1, 2000 to present for a temporary events permit, special events application or otherwise, for Domino Plaza for the last Friday of each month.

62. All documents and communications relating to any requests or applications submitted by or on behalf of you for a temporary events permit, special events application or otherwise, for Domino Plaza for the second Friday of each month.

63. All documents and communications relating to any requests or applications submitted by or on behalf of you for a temporary events permit, special events application or otherwise for Domino Plaza for any day of any month other than the second and last Fridays of each month.

64. All documents and communications, including documents and communications sent to, from, or including you or any other City employee, referencing or relating to any application for or granting of a temporary events permit, special events application or otherwise, for Domino Plaza.

65. All documents and communications, including documents and communications sent to, from or including you or any other City employee, referencing or relating to Que Pasa Little Havana?, including the formation of any entity responsible for or controlling/organizing that event.

66. All documents and communications, including documents and communications sent to, from, or including you or any other City employee, relating to or referencing Little Havana Fridays, including the formation of any entity responsible for or controlling/organizing that event.

67. All documents and communications relating to the festival known as Viernes Culturales/Cultural Fridays or the non-profit organization Viernes Culturales/Cultural Fridays, Inc.

68. All documents and communications, including documents and communications sent to, from or including you relating to or referencing the festival known as Viernes

Culturales/Cultural Fridays or the non-profit organization Viernes Culturales/Cultural Fridays, Inc.

69. All documents and communications relating to the Ordinance/File 5351 and any revisions and/or amendments to it, including documents and communications sent to, from or including you relating to Ordinance/File 5351 and any revisions and/or amendments to it.

70. All documents and communications between you and Lugo relating to the AFSCME Union.

71. All documents and communications between you and Lugo regarding the Bayfront Park Management Trust.

72. All documents and communications you provided to the City in response to any Public Records Request filed by or on behalf of Plaintiffs.

73. All documents that are reviewed by or relied upon by any witness that you retain as an expert in the Lawsuit.

74. Any and all insurance policies from January 1, 2017 to the present that are covering the Lawsuit.

75. All documents and communications regarding who is paying for your attorneys' fees in the Lawsuit or who will be paying for any damages awarded against you in this Lawsuit.

76. All documents that you receive in response to third-party subpoenas relating to the Lawsuit or claims made in the Complaint.

77. All electronically stored information responsive to any of the above Requests.


Respectfully submitted,

**AXS LAW GROUP, PLLC**
2121 NW 2nd Avenue, Suite 201
Miami, FL 33127
Tel: 305.297.1878

By: /s/ Jeffrey W. Gutchess
Jeffrey W. Gutchess (FBN 702641)
jeff@axslawgroup.com
Brandon Rose (FBN 99984)
brandon@axslawgroup.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

-13-

WE HEREBY CERTIFY that a true and correct copy of the forgoing was served via

CM/ECF on counsel of record in this action on this 13th day of February, 2019:

**Benedict P. Kuehne, Esq.**
Kuehne Davis Law, PA.A.
Miami Tower, Suite 3550
100 SE 2nd Street
Miami, FL 33131-2154
Tel: 305-789-5987
Fax: 305-789-5987
Email: ben.kuehne@kuehnelaw.com
*Counsel for Defendant Carollo*

**Thomas E. Scott, Esq.**
Cole, Scott & Kissane P.A.
Cole, Scott & Kissane Building, Suite 1400
9150 South Dadeland Blvd.
Miami, FL 33156
P: 305-350-5381
F: 305-373-2294
Thomas.scott@csklegal.com
*Counsel for Defendant Carollo*

**Victoria Méndez, Esq**.
**Christopher A. Green, Esq.**
444 S.W. 2nd Avenue, Suite 945
Miami, FL 33130-1910
Tel.: (305) 416-1800
Fax: (305) 416-1801
Email: cagreen@miamigov.com
Secondary Email: dbailey@miamigov.com
*Counsel for Defendant City of Miami*

**Oscar E. Marrero, Esq.**
**Lourdes Espino Wydler, Esq.**
MARRERO & WYDLER
2600 Douglas Road, PH-4
Coral Gables, FL 33134
(305) 446-5528
(305) 445-0995 (fax)
oem@marrerolegal.com
lew@marrerolegal.com
*Counsel for Defendant Lugo*

Intervenor:

**Robert Zarco, Esq.**
**Alejandro Brito, Esq.**
Zarco Einhorn Salkowski & Brito, P.A.
One South Biscayne Tower
2 South Biscayne Boulevard, 34th Floor
Miami, FL 33131
rzarco@zarcolaw.com
abrito@zarcolaw.com
apiriou@zarcolaw.com
*Counsel for Viernes Culturales/Cultural Fridays, Inc.*

*/s/ Jeffrey W. Gutchess, Esq.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:18-cv-24190

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

        Plaintiffs,

    v.

JOE CAROLLO,
THE CITY OF MIAMI,
MARIA LUGO, and
JOHN DOES 1-10,

        Defendants.
_____/

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CITY OF MIAMI

Plaintiffs, William O. Fuller and Martin Pinilla, II, pursuant to Rule 34 of the Federal Rules of Civil Procedure, request that Defendant The City of Miami produce the following documents within thirty (30) days of service at the law offices of AXS Law Group, PLLC, located at 2121 NW 2nd Avenue, Suite 201, Wynwood, Florida 33127.

## DEFINITIONS

1.     All capitalized terms not otherwise defined in these Requests for Production shall have the meaning ascribed to them in the Complaint filed in this action, or the latest amended version thereof if filed, (the "Amended Complaint"), or otherwise shall be given their ordinary meaning.

2.     "Any" means any and all.

3.      The terms "Lawsuit" and "Action" refer the above-caption lawsuit styled *William O. Fuller and Martin Pinilla, II v. Joe Carollo, The City of Miami, Maria Lugo, John Does 1-10,* Case No. 18-cv-24190.

4.      The term " "Amended Complaint" refers to the Plaintiffs' Amended Complaint in the Lawsuit, or the latest version thereof.

5.      The term "Plaintiffs" refers to Plaintiffs in this action, William O. Fuller and Martin Pinilla, II, including any of their agents, officers, employees, and all other persons acting or purporting to act on their behalf.

6.      The term "Fuller" refers to the Plaintiff in this action, William O. Fuller, including any of his agents, officers, employees, and all other persons acting or purporting to act on his behalf.

7.      The term "Pinilla" refers to the Plaintiff in this action, Martin Pinilla, II, including any of his agents, officers, employees, and all other persons acting or purporting to act on his behalf.

8.      The terms "you," "your," "City," or "City of Miami" refer to the Defendant in this action, The City of Miami, including any of its employees, agents, and all other persons acting or purporting to act on its behalf/at its direction.

9.      The term "Carollo" refers to the Defendant in this action, Commissioner Joe Carollo, in both his individual capacity and capacity as a Commissioner, including any of his present and former agents, staff, employees, and all other persons who have acted, are acting or who have purported or are purporting to act on his behalf.

10.     The term "Lugo" refers to the Defendant in this action, Maria Lugo, including any of her present and former agents, staff, employees, and all other persons who have acted, are acting or who have purported or are purporting to act on her behalf.

11.     "Communications" shall mean any and all direct and/or indirect transmissions or exchanges of information between two or more individuals and/or entities, or their respective agents or representatives, whether or not reduced to writing, including, without limitation, any meeting, conversation or discussion, whether face-to-face, by means of mail, telephone, telegraph, telex, facsimiles, electronic mail, text message or any other medium.

12.     "Document" or "documents" as used in these Requests for Production shall mean any writing, recording, electronically-stored information, or photograph which pertains directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to the issues in this Lawsuit, or which is itself listed below as a specific document, including, but not limited to: correspondence, memoranda, notes, messages, diaries, minutes, books, reports, charts, ledgers, invoices, computer printouts, microfilms, photographs, videotapes, or tape recordings, or any other type of recording. The term document shall also include any and all communication, including any and all correspondence via electronic mail, electronic message, text message, facsimile, or other similar medium. The terms document or documents shall include a printout or other replication that is perceptible by and comprehensible to human beings without the aid of a machine. Document or documents shall include drafts of documents defined above and all non-identical copies of said documents. Handwritten or other markings or notations of any kind on any copy of a document render it non-identical. A document that "refers to," "pertains to," "relates to," "supports," or "evidences" a given subject

matter means a document that discusses, identifies, comments on, analyzes, states, deals with, responds to, describes, or is any way pertinent to that subject.

13.     "Person" or "persons" mean a natural person, firm, association, organization, partnership, trust, limited liability company, corporation, or any other public or private entity.

14.     "Relating to" means referring, constituting, embodying, concerning, describing, identifying, supporting, discussing, reflecting, studying, commenting or reporting on, analyzing, pertaining to, or mentioning the stated subject matter, in whole or in part, whether directly or indirectly.

15.     Unless otherwise stated, the time period for documents sought by each of the numbered Paragraphs of this First Request for Production of Documents is January 1, 2017 to date.

## **INSTRUCTIONS**

1.     All non-privileged documents that are in your possession, custody and/or control are to be produced. If, after exercising due diligence to secure the documents requested, you cannot produce all responsive documents, so state, produce to the extent possible, specify the reasons why you are unable to provide a full and complete response, and state what information and knowledge you have concerning the portion not produced.

2.     If you object to any item or category demanded, in whole or in part, your objection must identify with particularity the specific document or evidence demanded as to which the objection is made and must set forth the specific ground for objection.

3.     If you decline to produce any document or part thereof based on a claim of privilege or any other claim, provide with respect to each withheld document: (i) the identity of the person(s) who prepared the document, signed it, or by whose name the document was sent or

issued; (ii) the identity of all person(s) to whom the document was directed; (iii) the identity of

all person(s) who received the document; (iv) a description of the nature and substance of the

document, with sufficient particularity to enable the court and parties to identify the document

and judge the merits of your asserted bases for non-production; (v) the date on which the

document was prepared, and any dates indicated on the document; (vi) the number of pages in

the document; (vii) the basis upon which the privilege or other protection is claimed; and (viii)

copies of all non-privileged or non-protected matter or information included in the document.

### INSTRUCTIONS AS TO ELECTRONICALLY STORED INFORMATION

1.        Produce ESI in single-page 300 DPI GroupIV Monochrome Tagged Image File

Format (.TIFF or .TIF) along with a Concordance load file (OPT).

2.        Provide a separate comma delimited metadata loadfile (.DAT) using standard

concordance delimiters (Comma ASCII character (020) Quote þ ASCII character (254)) for all

metadata fields available including but not limited to the below list:

| FIELD NAME | Description |
|---|---|
| Docid | [Begdoc#] |
| Auxid | [Endoc#] |
| Attachids | Docid of attachment Documents |
| Parentid | Docid for the parent e-mail or document that has an attachment associated with it. |
| Attrange | Docid numbers for Documents attached to a record |
| Pgcount | Number of pages in a document |
| Doctype | Type of document |
| Subject | Subject of document or e-mail |
| From | Author, senders |
| To | Recipients |
| CC | copied recipients |
| Datesent | E-mail sent date |
| Datercvd | E-mail receive date |
| Datecrtd | Date that an attached document was created, typically an e-mail |
| Body | Contents of the e-mail |
| Author | File author |
| Doctitle | Document name or title |

Doclink                         Path or link to native file

3.      Provide extracted text or OCR as one multipage text file per record.  Text files should be named by BegDoc number and should be referenced in a 'TextPath' field within the DAT file.

4.      Include all native files (for both emails and email attachments) and as noted above in the metadata field list, populate the doclink field with the native file path.

5.      When the instructions above would not allow the produced documents to be reasonably usable by Plaintiffs, Plaintiffs further request that you produce any such documents in their native format with the file type, MD5 Hash value, and path to the native file.

## <u>REQUESTS FOR PRODUCTION OF DOCUMENTS</u>

1.  A copy of any document hold notices sent to you regarding the Lawsuit.

2.  All documents and communications that you intend to rely upon in regards to the Lawsuit.

3.  All documents and communications supporting, refuting or relating to any allegation in the Amended Complaint.

4.  All documents and communications, including documents and communications sent to, from, or including Carollo and/or any individual that is/was as a part of his staff and/or working at his direction, or any other City employee, relating to or referencing the Lawsuit, Fuller, Pinilla and/or The Barlington Group.

5.  All documents and communications from or referencing Carollo, Lugo, Stephen Miro, Alfie Leon, Fuller or Pinilla, on November 18 or 19, 2017.

6.  All documents and communciations referencing or relating to the Alfie Leon rally held at 120 SW 14th Avenue on November 18 or 19, 2017.

7.  All documents and communications, including documents and communications sent to, from, or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, relating to the raid or otherwise investigation or visitation on or about November 26, 2017 by numerous City enforcement personnel including police, fire, building and Code Enforcement officers of the business Sanguich de Miami.

8. All documents and communications, including documents and communications sent to, from, or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, relating to the Commission hearing on or about December 14, 2017 to remove Temporary Use Permits from District 3.

9. All documents and communications, including documents and communications sent to, from, or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, relating to any decision to include language regarding the removal of Temporary Use Permits in any legislation.

10. All documents and communications, including documents and communications sent to, from, or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, relating to any the failure by the City to hold a hearing or provide public notice regarding the removal of Temporary Use Permits on any property, including any property on which Sanguich de Miami was located.

11. All documents and communications, including documents and communications sent to, from, or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, relating to or reference Sanguich de Miami and Temporary Use Permits.

12. All documents and communications, including documents and communications sent to, from or including Carollo and/or any individual that is/was a part of this staff and/or working at his direction, Yacmany Salvatierra, Building Department Director Jose Camero, and/or any other City employee, relating to the visitation on or about January 6 and 8, 2018, by City Code Enforcement, including Code Enforcement Officer Yacmany Salvatierra.

13. All documents and communications, including documents and communications sent to, from, or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, relating to the decision to prohibit Sanguich de Miami's reopening on Fuller and Pinilla's property.

14. All documents and communications, including documents and communications sent to, from, or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, relating to Sanguich de Miami.

15. All documents and communications sent to, from, or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, Lugo, Chief of Code Enforcement Jessica Capo, Assistant City Manager Alberto Parjus, Code Enforcement Officer Orlando Diez, Code Officer Scarlett Morua and/or any other City employee/officer relating to or referencing the December 15, 2017 holiday party at the historic Tower Hotel.

16. All documents and communications relating to the inspection of Sanguich de Miami at the Gay 8 Festival on February 8, 2018, including any documents or communications sent to, from or including Carollo, Stephen Miro, and/or any individual that is/was a part of Carollo's staff and/or working at Carollo's direction, Mr. Carlos Diaz, the Fire Department, Police Department, the Special Events Department and/or Code Enforcement relating to or referencing Sanguich de Miami at the Gay 8 Festival.

17. All documents and correspondence sent to, from, or including City Attorney Victoria Méndez on February 8, 2018, including but not limited to those referencing Fuller, Sanguich de Miami or the Gay 8 Festival.

18. All documents and communications relating to the raid or otherwise investigation or visitation by Carollo, numerous police officers and City enforcement officers on or about February 10, 2018 of the business Union Beer, which is located at 1547 SW 8th Street ("Union Beer").

19. All documents and communications sent to, from or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, and/or each of the City employees that physically went to Union Beer on or about February 10, 2018, relating to the decision to visit and shut down Union Beer's business.

20. All documents and communications relating to Union Beer.

21. All documents and communications relating to or referencing Carollo, Lugo, Stephen Miro, and/or Mr. Miro's wife's visit/investigation on or about February 18, 2018 of the parking lot located at 1411 SW 11 St., Miami FL 33135, which is leased by a valet operator S.H. Valet, including but not limited to the decision to conduct such a visit/investigation.

22. All documents and communications sent to, from, or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee relating to Ball & Chain or S.H. Valet.

23. All documents and communications, including documents and communications sent to, from, or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee relating to or referencing any ride-alongs that Carollo participated and/or joined in and the properties that were identified, targeted or otherwise investigated during those ride alongs, including ride-alongs with Code Enforcement Supervisor Michele Watt, Code Enforcement Officer Dennis Uriarte.

24. All documents and communications, including documents and communications sent to, from or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, relating to or referencing the Ethics Complaint filed by Fuller c/o The Barlington Group on or about March 12, 2018 or its withdrawal in August 2018, or the Investigative Report released by the Miami-Dade Commission on Ethics and Public Trust in relation to the Ethics Complaint.

25. Any statements, whether sworn or unsworn, taken by the City relating to or as part of the investigation for the Ethics Complaint filed by Fuller c/o The Barlington Group on or about March 12, 2018.

26. All documents and communications, including document and communications sent to, from, or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, relating to or referencing the "park and walk" that occurred on or about March 14, 2018 arranged by Carollo and conducted by Carollo, and numerous City employees including Mr. Bernat, Code Enforcement personnel, police officers, Sean Moy (President of the AFSCME Union), Ms. Mari Lugo and Mr. Stephen Miro.

27. All documents and communications sent to, from or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee relating to or referencing Stephen Miro's termination from Carollo's staff.

28. All documents and communications sent to, from or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, relating to the Calle Ocho Marketplace, located at 1380 SW 8th Street.

29. All documents and communications sent to, from or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee relating to or referencing the notice sent on or about August 20, 2018 by the City to Fuller and Pinilla, which cited a code violation of Section 3.63(g) of Miami 21 at Calle Ocho Marketplace, claimed that the kiosks in the Marketplace constituted equipment and the Marketplace itself constituted a parking facility, and required that Fuller and Pinilla either fasten down the kiosks or remove them no later than August 22, 2018.

30. All documents and communications, including documents and communications sent to, from or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, relating to the City's filing of an Emergency Motion for Injunctive Relief, on or about August 31, 2018, seeking an order compelling Fuller and Pinilla to remove the kiosks at the Calle Ocho Marketplace, located at 1380 SW 8th Street, or granting the City authority to remove and destroy the kiosks, and/or the court's subsequent denial of that Motion.

31. All documents and communications, including documents and communications sent to, from or including you relating to the decision to revoke Calle Ocho Marketplace's Temporary Use Permit.

32. All documents and communications, including documents and communications sent to, from or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, relating to the letter sent to Fuller and Pinilla, by the City on or

about September 4, 2018 regarding the decision to revoke Calle Ocho Marketplace's Temporary Use Permit.

33. All documents and communications, including documents and communications sent to, from or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, relating to the hearing in front of the Code Enforcement Board on or about September 6, 2018 regarding Calle Ocho Marketplace's Temporary Use Permit.

34. All documents and communications, including documents and communications sent to, from or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, relating to the decision at the Code Enforcement Board hearing on or about September 6, 2018 to give Fuller and Pinilla less than 48 hours to remove the kiosks from the Calle Ocho Marketplace or incur fines of $250 per day.

35. All documents and communications, including documents and communications sent to, from or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, relating to the emergency hearing at the Code Enforcement Board meeting on or about September 12, 2018 regarding Calle Ocho Marketplace.

36. All documents and communications, including all documents and communications sent to, from or including Carollo and/or any individual that is a part of his staff and/or working at his direction, or any other City employee relating to the noise violation that was posted at the Ball & Chain nightclub on or about September 18, 2018, but was dated September 15, 2018.

37. All documents relating to, referencing or showing the date that the noise violation for Ball & Chain on September 15, 2018 was entered into the City's computer system.

38. All documents photographs, videotapes, recordings and correspondence, including emails and text messages, regarding Ball & Chain nightclub on September 15, 2018.

39. All documents and communications relating to any noise complaint received about Ball & Chain, at any point in time.

40. All documents and communications, including documents and communications sent to, from, or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, relating to or referencing Carollo, Ms. Mari Lugo and/or Code Enforcement Director James Bernat's visitation with residents living near or around the Ball & Chain nightclub.

41. All documents and communications from residents living near or around Ball & Chain relating to or referencing Ball & Chain.

42. All documents and communications relating to City Code Enforcement and police officers' arrival at Ball & Chain on or about September 15, 2018 regarding alleged illegal

parking on the parking lot owned by Fuller and/or Pinilla, that is adjacent to Ball &
Chain, and the officers' subsequent requirement that Ball & Chain employees remove
their cars from the lot.

43. All documents and communications sent to, from or including Carollo and/or any
individual that is a part of his staff and/or working at his direction, or any other City
employee, relating to or referencing Carollo, attorney Saul Cimbler, and Code
Enforcement Board member Frank Pichel's presence at and around Ball & Chain
nightclub, including its parking lots and residences nearby Ball & Chain on or about
October 2, 2018.

44. All documents and communications, from any point in time, regarding City Code
Enforcement and/or police officers' authority to require the removal of cars that are
illegally parked.

45. All documents and communications relating to any complaints received by the City about
illegal parking in any lots owned by Fuller and/or Pinilla, including the parking lot that is
adjacent to Ball & Chain.

46. All documents and communications sent to, from or including Carollo and/or any
individual that is/was a part of his staff and/or working at his direction related to alleged
illegal parking in any lots owned by Fuller and/or Pinilla, located near or adjacent to Ball
& Chain.

47. All documents and communications sent to, from or including Carollo and/or any
individual that is/was a part of his staff and/or working at his direction, or any other City
employee relating to any interview or public speaking event in which Carollo discussed
Fuller, Pinilla, and/or The Barlington Group, including Carollo's interviews on the Raul
Martinez and Radio Actualidad shows.

48. All documents and communications relating to the closing and/or shutting down of the
City Microfiche Room and/or Department in or around October 2018, including
documents and communications sent to, from or including Carollo and/or any individual
that is/was a part of his staff and/or working at his direction relating to the City
Microfiche Room and/or Department.

49. All lists and/or spreadsheets created by or at the direction of Carollo identifying Fuller,
Pinilla, and/or The Barlington Group's businesses, properties or associated businesses
and/or properties.

50. All documents and communications, including documents and communications sent to,
from or including Carollo and/or any individual that is/was a part of his staff and/or
working at his direction, or any other City employee, relating to or referencing any list
and/or spreadsheet that was created by or at the direction of Carollo identifying Fuller,
Pinilla, and/or The Barlington Group's businesses, properties or associated businesses
and/or properties.

51. All documents and communications, including documents and communications sent to, from or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, relating to Fuller, Pinilla, and/or The Barlington Group's businesses, properties or associated businesses and/or properties.

52. All documents and communications, including documents and communications sent to, from or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, including Orlando Diez, the former Director of Code Enforcement and the Construction Manager, relating to any instructions from Carollo to target, investigate, monitor, or otherwise seek violations against Fuller, Pinilla, and/or The Barlington Group's businesses, properties or associated businesses and/or properties.

53. All documents and communications relating to any walk by Carollo, the Mayor, City Manager, Deputy City Manager and Code Enforcement Officer down Calle Ocho in which alleged violations by properties located on Calle Ocho were discussed.

54. All documents and communications relating to any visitation of 8th Street to inspect, visit, or otherwise view any properties or businesses owned by or affiliated with Fuller, Pinilla and/or The Barlington Group.

55. All documents and communications relating to the decision to abolish Special Masters in the City of Miami.

56. All documents and communications, including documents and communications sent to, from or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, relating to the support for, and eventual abolishment of Special Masters in the City of Miami.

57. All documents and communications relating to any requests or applications from January 1, 2000 to the present, for a temporary events permit, special events application or otherwise, for Domino Plaza for the last Friday of each month.

58. All documents and communications relating to any requests or applications for a temporary events permit, special events application or otherwise, for Domino Plaza for the second Friday of each month.

59. All documents and communications, including documents and communications sent to, from, or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, referencing or relating to any application for or granting of a temporary events permit, special events application or otherwise, for Domino Plaza, including but not limited to the last Friday of each month.

60. All documents and communications, including documents and communications sent to, from, or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, referencing or relating to Que Pasa

Little Havana?, including the formation of any entity responsible for or controlling/organizing the event.

61. All documents and communications, including documents and communications sent to, from, or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, relating to or referencing Little Havana Fridays, including the formation of any entity responsible for or controlling/organizing the event.

62. All documents and communications relating to the festival known as Viernes Culturales/Cultural Fridays or the non-profit organization Viernes Culturales/Cultural Fridays, Inc..

63. All documents and communications, including documents and communications sent to, from or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, relating to or referencing the festival known as Viernes Culturales/Cultural Fridays or the non-profit organization Viernes Culturales/Cultural Fridays, Inc.

64. All documents and communications relating to the Ordinance/File 5351 and any revisions and/or amendments to it, including documents and communications sent to, from or including Carollo and/or any individual that is/was a part of his staff and/or working at his direction, relating to Ordinance/File 5351 and any revisions and/or amendments to it.

65. All documents and communications, between you and Lugo relating to the AFSCME Union.

66. All documents and communications between you and Lugo relating to the Bayfront Park Management Trust.

67. All documents and communications responsive to any Public Records Request sent to you by or on behalf of Plaintiffs.

68. All documents that are reviewed by or relied upon by any witness that you retain as an expert in the Lawsuit.

69. Any and all insurance policies of the City from January 1, 2017 to the present.

70. All documents that you receive in response to third-party subpoenas relating to the Lawsuit or claims made in the Complaint.

71. All electronically stored information responsive to any of the above Requests.

Respectfully submitted,

**AXS LAW GROUP, PLLC**
2121 NW 2nd Avenue, Suite 201
Miami, FL 33127
Tel:  305.297.1878

By: /s/ Jeffrey W. Gutchess
Jeffrey W. Gutchess (FBN 702641)
jeff@axslawgroup.com
Brandon Rose (FBN 99984)
brandon@axslawgroup.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the forgoing was served via

CM/ECF on counsel of record in this action on this 13th day of February, 2019:

**Benedict P. Kuehne, Esq.**
Kuehne Davis Law, PA.A.
Miami Tower, Suite 3550
100 SE 2nd Street
Miami, FL 33131-2154
Tel: 305-789-5987
Fax: 305-789-5987
Email: ben.kuehne@kuehnelaw.com
*Counsel for Defendant Carollo*

**Thomas E. Scott, Esq.**
Cole, Scott & Kissane P.A.
Cole, Scott & Kissane Building, Suite 1400
9150 South Dadeland Blvd.
Miami, FL 33156
P: 305-350-5381
F: 305-373-2294
Thomas.scott@csklegal.com
*Counsel for Defendant Carollo*

**Victoria Méndez, Esq**.
**Christopher A. Green, Esq.**
444 S.W. 2nd Avenue, Suite 945

Miami, FL 33130-1910
Tel.: (305) 416-1800
Fax: (305) 416-1801
Email: cagreen@miamigov.com
Secondary Email: dbailey@miamigov.com
*Counsel for Defendant City of Miami*

**Oscar E. Marrero, Esq.**
**Lourdes Espino Wydler, Esq.**
MARRERO & WYDLER
2600 Douglas Road, PH-4
Coral Gables, FL 33134
(305) 446-5528
(305) 445-0995 (fax)
oem@marrerolegal.com
lew@marrerolegal.com
*Counsel for Defendant Lugo*

Intervenor:

**Robert Zarco, Esq.**
**Alejandro Brito, Esq.**
Zarco Einhorn Salkowski & Brito, P.A.
One South Biscayne Tower
2 South Biscayne Boulevard, 34th Floor
Miami, FL 33131
rzarco@zarcolaw.com
abrito@zarcolaw.com
apiriou@zarcolaw.com
*Counsel for Viernes Culturales/Cultural Fridays, Inc.*

*/s/ Jeffrey W. Gutchess, Esq.*



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No.: 1:18-cv-24190

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

        Plaintiffs,

    v.

JOE CAROLLO,
THE CITY OF MIAMI,
MARIA LUGO, and
JOHN DOES 1-10,

        Defendants.

_____/

## PLAINTIFFS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS JOE CAROLLO AND THE CITY OF MIAMI

Plaintiffs, William O. Fuller and Martin Pinilla, II, pursuant to Rule 34 of the Federal Rules of Civil Procedure, request that Defendants Joe Carollo and the City of Miami produce the following documents within thirty (30) days of service at the law offices of AXS Law Group, PLLC, located at 2121 NW 2nd Avenue, Suite 201, Wynwood, Florida 33127.

## DEFINITIONS

1.     All capitalized terms not otherwise defined in these Requests for Production shall have the meaning ascribed to them in the Complaint filed in this action, or the latest amended version thereof if filed, (the "Amended Complaint"), or otherwise shall be given their ordinary meaning.

2.     "Any" means any and all.

3.      The terms "Lawsuit" and "Action" refer the above-caption lawsuit styled *William O. Fuller and Martin Pinilla, II v. Joe Carollo, The City of Miami, Maria Lugo, John Does 1-10,* Case No. 18-cv-24190.

4.      The term "Amended Complaint" refers to the Plaintiffs' Amended Complaint in the Lawsuit, or the latest version thereof.

5.      The term "Plaintiffs" refers to Plaintiffs in this action, William O. Fuller and Martin Pinilla, II, including any of their agents, officers, employees, and all other persons acting or purporting to act on their behalf.

6.      The term "Fuller" refers to the Plaintiff in this action, William O. Fuller, including any of his agents, officers, employees, and all other acting or purporting to act on his behalf.

7.      The term "Pinilla" refers to the Plaintiff in this action, Martin Pinilla, II, including any of his agents, officers, employees, and all other persons acting or purporting to act on his behalf.

8.      The terms "you," "your," "Carollo" refer to the Defendant in this action, Commissioner Joe Carollo, in both his individual capacity and capacity as a Commissioner, including any of his present and former agents, staff, employees, and all other persons who have acted, are acting or who have purported or are purporting to act on his behalf/at his direction.

9.      The terms "City," or "City of Miami" refer to the Defendant in this action, The City of Miami, including any of its employees, agents, and all other persons acting or purporting to act on its behalf.

10.     The term "Lugo" refers to the Defendant in this action, Maria Lugo, including any of her present and former agents, staff, employees, and all other persons who have acted, are acting or who have purported or are purporting to act on her behalf.

-2-

11.     "Communications" shall mean any and all direct and/or indirect transmissions or exchanges of information between two or more individuals and/or entities, or their respective agents or representatives, whether or not reduced to writing, including, without limitation, any meeting, conversation or discussion, whether face-to-face, by means of mail, telephone, telegraph, telex, facsimiles, electronic mail, text message or any other medium.

12.     "Document" or "documents" as used in these Requests for Production shall mean any writing, recording, electronically-stored information, or photograph which pertains directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to the issues in this Lawsuit, or which is itself listed below as a specific document, including, but not limited to: correspondence, memoranda, notes, messages, diaries, minutes, books, reports, charts, ledgers, invoices, computer printouts, microfilms, photographs, videotapes, or tape recordings, or any other type of recording. The term document shall also include any and all communication, including any and all correspondence via electronic mail, electronic message, text message, facsimile, or other similar medium. The terms document or documents shall include a printout or other replication that is perceptible by and comprehensible to human beings without the aid of a machine. Document or documents shall include drafts of documents defined above and all non-identical copies of said documents. Handwritten or other markings or notations of any kind on any copy of a document render it non-identical. A document that "refers to," "pertains to," "relates to," "supports," or "evidences" a given subject matter means a document that discusses, identifies, comments on, analyzes, states, deals with, responds to, describes, or is any way pertinent to that subject.

13.     "Person" or "persons" mean a natural person, firm, association, organization, partnership, trust, limited liability company, corporation, or any other public or private entity.

14.     "Relating to" means referring, constituting, embodying, concerning, describing, identifying, supporting, discussing, reflecting, studying, commenting or reporting on, analyzing, pertaining to, or mentioning the stated subject matter, in whole or in part, whether directly or indirectly.

15.     Unless otherwise stated, the time period for documents sought by each of the numbered Paragraphs of this Second Request for Production of Documents is January 1, 2017 to date.

## **INSTRUCTIONS**

1.     All non-privileged documents that are in your possession, custody and/or control are to be produced. If, after exercising due diligence to secure the documents requested, you cannot produce all responsive documents, so state, produce to the extent possible, specify the reasons why you are unable to provide a full and complete response, and state what information and knowledge you have concerning the portion not produced.

2.     If you object to any item or category demanded, in whole or in part, your objection must identify with particularity the specific document or evidence demanded as to which the objection is made and must set forth the specific ground for objection.

3.     If you decline to produce any document or part thereof based on a claim of privilege or any other claim, provide with respect to each withheld document: (i) the identity of the person(s) who prepared the document, signed it, or by whose name the document was sent or issued; (ii) the identity of all person(s) to whom the document was directed; (iii) the identity of all person(s) who received the document; (iv) a description of the nature and substance of the document, with sufficient particularity to enable the court and parties to identify the document and judge the merits of your asserted bases for non-production; (v) the date on which the document was prepared, and

any dates indicated on the document; (vi) the number of pages in the document; (vii) the basis upon which the privilege or other protection is claimed; and (viii) copies of all non-privileged or non-protected matter or information included in the document.

## INSTRUCTIONS AS TO ELECTRONICALLY STORED INFORMATION

1.      Produce ESI in single-page 300 DPI GroupIV Monochrome Tagged Image File Format (.TIFF or .TIF) along with a Concordance load file (OPT).

2.      Provide a separate comma delimited metadata loadfile (.DAT) using standard concordance delimiters (Comma ASCII character (020) Quote þ ASCII character (254)) for all metadata fields available including but not limited to the below list:

| FIELD NAME | Description |
|---|---|
| Docid | [Begdoc#] |
| Auxid | [Endoc#] |
| Attachids | Docid of attachment Documents |
| Parentid | Docid for the parent e-mail or document that has an attachment associated with it. |
| Attrange | Docid numbers for Documents attached to a record |
| Pgcount | Number of pages in a document |
| Doctype | Type of document |
| Subject | Subject of document or e-mail |
| From | Author, senders |
| To | Recipients |
| CC | copied recipients |
| Datesent | E-mail sent date |
| Datercvd | E-mail receive date |
| Datecrtd | Date that an attached document was created, typically an e-mail |
| Body | Contents of the e-mail |
| Author | File author |
| Doctitle | Document name or title |
| Doclink | Path or link to native file |

3.      Provide extracted text or OCR as one multipage text file per record.  Text files should be named by BegDoc number and should be referenced in a 'TextPath' field within the DAT file.

4. Include all native files (for both emails and email attachments) and as noted above in the metadata field list, populate the doclink field with the native file path.

5. When the instructions above would not allow the produced documents to be reasonably usable by Plaintiffs, Plaintiffs further request that you produce any such documents in their native format with the file type, MD5 Hash value, and path to the native file.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. All documents relating to campaign materials, including but not limited to campaign signs, slogans, web postings, social media postings, and interviews provided to news outlets, used during the 2017 race for City Commissioner, including, but not limited to, Carollo's campaign goals, specific objectives, expected outcomes, political proposals, proposed legislative initiatives and political priorities.

2. All documents and communications relating to an email sent by Carollo's chief of staff, Richard Blom, on February 13, 2019, asking the City of Miami's administration to have certain city employees present at the February 14, 2019 City Commission Meeting, including, but not limited to, all communications received by Carollo and/or Mr. Blom in response to Mr. Blom's February 13, 2019 email.

3. All documents and communications relating to Commissioner Carollo's presentation concerning Code Enforcement at the February 14, 2019 City Commission Meeting, including, but not limited to, preparation of the presentation and communications about the presentation with, without limitation, the City Attorney, Police Chief, the Fire Department, the City's Special Events Department, the City's Planning Department, Code Enforcement, the City Manager's Office, and/or any other City of Miami public authority, either before or after the presentation.

4. All documents and communications relating to Carollo's presentation concerning Los Altos, in which Carollo compared promotional photographs of the lounge to plans submitted to the City, including, but not limited to, all documents and communications that provided support to any of Carollo's concerns relating to Los Altos' code compliance.

5. All documents and communications relating to visits and inspections of Tacquiros and Los Altos Cocktail Lounge & Bar, including, but not limited to, the basis for such visits and inspections, and any reports prepared afterwards.

6. All documents and communications relating to the City Commission's Directive, directing "the City Attorney to draft a Resolution creating a Code Enforcement Task Force for consideration at the February 28, 2019 Miami City Commission Meeting."

-6-

7. All documents and communications relating to the Resolution of the Miami City Commission directing the City Attorney to (i) research properties described at the February 14, 2019 City Commission Meeting regarding potential code violations, during the discussion of item "d3.1 – code enforcement" regarding code violations related to no certificate of use, certificate of use obtained under false pretenses, and/or properties with violations that pose life-safety issues, and to (ii) initiate injunctive proceedings against said properties until the properties are brought into compliance.

8. All documents and communications relating to City Attorney Victoria Mendez's email to several city administrators, sent about a week after the February 14, 2019 City Commission Meeting, requesting "new site inspections and review of all city records for comparisons to existing site improvements / site / uses / violations vs. the existing city records . . . we have on file for the sites" relating to all properties discussed during the February 14 Meeting, including, but not limited to, any documents and communications relating to any businesses and/or properties owned by the Plaintiffs, their business partners, or any other businesses associated with Plaintiffs' businesses.

9. All documents and communications relating to the list of properties used by City Attorney Victoria Mendez in her email to several city administrators described in Request No. 8 above, including, but not limited to, all drafts of the list, and the reasons for including each of the properties in said list.

10. All documents and communications relating to any changes made to the list described in Request Nos. 8 and 9 above, including, but not limited to, the reasons for the inclusion of Ball & Chain in the list, considering that Ball & Chain was not mentioned at the February 14, 2019 City Commission Meeting.

11. All documents and communications relating to the February 26, 2019 Joint Inspection conducted by the City's Building, Code Enforcement and Fire Departments of Ball & Chain, located at 1513 SW 8th St, Miami, FL 33135, and La Taqueria, located at 521 SW 8th St, Miami, FL 33130, and of any other properties owned by or associated with the Plaintiffs.

12. All documents and communications relating to the Plaintiffs' letter dated February 26, 2019 in which the Plaintiffs opposed the Join Inspection of their properties mentioned in Request No. 11 above.

13. All documents relating to the February 21, 2019 letter from Jorge Colina, Chief of Police, to the City Manager, Emilio Gonzalez, including, but not limited to, any communications relating to code enforcement activities against any businesses and/or properties owned by or associated with the Plaintiffs.

14. All documents and communications relating to a Resolution of the Miami City Commission establishing the Code Enforcement Task Force, which was included in the City Commission's Agenda for the February 28, 2019 City Commission Meeting, including, but not limited to, any documents received and/or obtained from and/or exchanged with the City Attorney, Police Chief, the Fire Department, City's Special Events

Department, the City's Planning Department, Code Enforcement, City Manager's Office, and/or any other City of Miami public authority.

15. All documents and communications relating to Commissioner Manolo Reyes' Memorandum dated February 28, 2019, calling for a Special City Commission Meeting on Thursday, March 7, 2019 or Friday, March 8, 2019 at 10:00 AM at Miami City Hall.

16. All documents and communications relating to the Resolution of the Miami City Commission establishing a Code Enforcement Task Force, included as Item No. 2 in the agenda of the Special City Commission Meeting scheduled for Thursday, March 7, 2019 or Friday, March 8, 2019 at 10:00 AM at Miami City Hall.

17. All documents and communications relating to all public records requests Carollo has submitted regarding Plaintiffs or properties owned by Plaintiffs, including all documents received in response to those requests.

18. All documents and communications relating to El Pub Restaurant, located at 1548 SW 8th St, Miami, FL 33135, including, but not limited to, any communications related to El Pub's code compliance or code violations.

19. All documents and communications regarding any funding ever sought and/or ever received by "Little Havana Fridays", including, but not limited to, any funding sought and/or received from the Bayfront Trust.

20. All documents and communications relating to AmericaTeve Miami, including, but not limited to, all documents and communications sent to, exchanged with, or received from AmericaTeve Miami regarding Plaintiffs or any properties owned by Plaintiffs.

Respectfully submitted,

**AXS LAW GROUP, PLLC**
2121 NW 2nd Avenue, Suite 201
Miami, FL 33127
Tel: 305.297.1878

By: /s/ Jeffrey W. Gutchess
Jeffrey W. Gutchess (FBN 702641)
jeff@axslawgroup.com
Brandon Rose (FBN 99984)
brandon@axslawgroup.com

*Counsel for Plaintiffs*

-8-

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the forgoing was served via

CM/ECF on counsel of record in this action on this 5th day of March, 2019:


**Benedict P. Kuehne, Esq.**
Kuehne Davis Law, PA.A.
Miami Tower, Suite 3550
100 SE 2nd Street
Miami, FL 33131-2154
Tel: 305-789-5987
Fax: 305-789-5987
Email: ben.kuehne@kuehnelaw.com
*Counsel for Defendant Carollo*

**Thomas E. Scott, Esq.**
Cole, Scott & Kissane P.A.
Cole, Scott & Kissane Building, Suite 1400
9150 South Dadeland Blvd.
Miami, FL 33156
P: 305-350-5381
F: 305-373-2294
Thomas.scott@csklegal.com
*Counsel for Defendant Carollo*

**Victoria Méndez, Esq**.
**Christopher A. Green, Esq.**
444 S.W. 2nd Avenue, Suite 945
Miami, FL 33130-1910
Tel.: (305) 416-1800
Fax: (305) 416-1801
Email: cagreen@miamigov.com
Secondary Email: dbailey@miamigov.com
*Counsel for Defendant City of Miami*

**Oscar E. Marrero, Esq.**
**Lourdes Espino Wydler, Esq.**
MARRERO & WYDLER
2600 Douglas Road, PH-4
Coral Gables, FL 33134
(305) 446-5528
(305) 445-0995 (fax)
oem@marrerolegal.com
lew@marrerolegal.com

*Counsel for Defendant Lugo*

Intervenor:

**Robert Zarco, Esq.**
**Alejandro Brito, Esq.**
Zarco Einhorn Salkowski & Brito, P.A.
One South Biscayne Tower
2 South Biscayne Boulevard, 34th Floor
Miami, FL 33131
rzarco@zarcolaw.com
abrito@zarcolaw.com
apiriou@zarcolaw.com
*Counsel for Viernes Culturales/Cultural Fridays, Inc.*

*/s/ Jeffrey W. Gutchess, Esq.*



**Request #18-1951**

1. All documents relating to any requests or applications for a Temporary Events Permit for Domino Plaza on the second and fourth Fridays of each month;

2. All documents and correspondence, including but not limited to emails and text messages sent to, from, or including Joe Carollo or any City employee, referencing any application for or granting of a temporary events permit, special events application or otherwise, for Domino Plaza, including but not limited to the last Friday of each month.

3. All documents and correspondence, including but not limited to emails and text messages, sent to, from or including Joe Carollo or members of his staff concerning Que Pasa Little Havana?, LLC;

4. All documents relating to Que Pasa Little Havana?, LLC;

5. All documents relating to the festival known as Viernes Culturales/Cultural Fridays or the non-profit organization Viernes Culturales/Cultural Fridays, Inc.;

6. All documents and correspondence, including but not limited to emails and text messages, sent to, from or including Joe Carollo or members of his staff concerning the festival known as Viernes Culturales/Cultural Fridays or the non-profit organization Viernes Culturales/Cultural Fridays, Inc..

Please be advised that as part of your search, personal cell phones or email addresses that also are used to conduct their obligations as a City employee or in furtherance of City related business, must also be included in your search.

**Request #18-2019**

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following information:
1. Please provide all documents, photographs, videotapes, recordings and correspondence, including emails and text messages, sent to, from, or including Commissioner Joe Carollo and/or any individual that is/was a part of his staff and/or working at his direction, Ms.Lugo, Chief of Code Enforcement Jessica Capo, Assistant City Manager Alberto Parjus, Code Enforcement Officer Orlando Diez, Code Officer Scarlett Morua and/or any other City employee/officer regarding the December 15, 2017 holiday party at the historic Tower Hotel.

**Request #18-2020**

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following information:
1. All documents from or referencing Joe Carollo, Mari Lugo, Stephen Miro, Alfie Leon, William ("Bill") O. Fuller or Martin Pinilla, II on November 18 or 19, 2017.
2. All documents referencing or regarding the Alfie Leon rally held at 120 SW 14th Avenue on November 18 or 19, 2017.

**Request #18-2021**

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following information:
1. All documents, photographs, videotapes, recordings and correspondence, including emails and text messages, sent to, from or including Commissioner Joe Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee regarding or referencing Mr. Stephen Miro's termination from Commissioner Carollo's staff.

**Request #18-2024**

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following information:
1. All documents, photographs, videotapes, recordings and correspondence, including emails and text messages, sent to, from or including Commissioner Joe Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee regarding or referencing the Ethics Complaint filed by William ("Bill") O. Fuller c/o The Barlington Group on or about March 12, 2018 or its withdrawal in August 2018, or the Investigative Report released by the Miami-Dade Commission on Ethics and Public Trust in relation to the Ethics Complaint.

**Request #18-2025**

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following information:
1. All documents, photographs, videotapes, recordings and correspondence, including emails and text messages, regarding the raid or otherwise investigation or visitation by Commissioner Joe Carollo, numerous police officers and City enforcement officers on or about February 10, 2018 of the business Union Beer, which is located at 1547 SW 8th Street. This search must include, but should not be limited to, a search for all documents, photos, videotapes, recordings and correspondence, including emails and text messages, sent to, from or including Commissioner Joe Carollo and/or any individual that is/was a part of his staff and/or working at Commissioner Carollo's direction, and/or each of the City officers and enforcement personnel that physically went to Union Beer to shut down Union Beer's business on or about February 10, 2018, including any documents or correspondence regarding the decision to visit and shut down Union Beer's business.

2. All documents, photographs, videotapes, recordings and correspondence, including emails and text messages, regarding Union Beer, which is located at 1547 SW 8th Street.

Please be advised that as part of your search, any personal cell phones or email addresses that also are used to conduct the obligations of a City employee or in furtherance of City related business must also be included in your search.

**Request #18-2026**

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following
information:
1. Please provide all documents, photographs, videotapes, recordings and correspondence, including
emails and text messages, regarding the inspection of Sanguich de Miami at the Gay 8 Festival on
February 18, 2018, including any documents or correspondence including emails and text messages,
sent to, from or including City Commissioner Joe Carollo, Stephen Miro, and/or any individual that
is/was a part of Commissioner Carollo's staff and/or working at Commissioner Carollo's direction, Mr.
Carlos Diaz, the Fire Department, Police Department, the Special Events Department and/or Code
Enforcement regarding or referencing Sanguich at the Gay 8 Festival.

2. All documents and correspondence, including emails and text messages, sent to, from, or including
City Attorney Victoria Méndez on February 8, 2018, including but not limited to those referencing Fuller,
Sanguich de Miami or the Gay 8 Festival

**Request #18-2055**

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following
information:
1. All documents photographs, videotapes, recordings and correspondence, including emails
and text messages, regarding the noise violation that was posted at the Ball & Chain
nightclub on or about September 18, 2018, but was dated September 15, 2018.
2. All documents photographs, videotapes, recordings and correspondence, including emails
and text messages, sent to, from or including Commissioner Joe Carollo and/or any
individual that is a part of his staff and/or working at his direction, or any other City
employee regarding the noise violation that was posted at the Ball & Chain nightclub on
or about September 18, 2018, but was dated September 15, 2018.
3. All documents relating or referencing or showing the date that the noise violation for Ball
& Chain on September 15, 2018 was entered into the City's computer system.
4. All documents photographs, videotapes, recordings and correspondence, including emails
and text messages, regarding Ball & Chain nightclub on September 15, 2018.
5. All documents concerning any noise complaint received about Ball & Chain on any
date.
6. All documents, photographs, videotapes, recordings and correspondence, including
emails and text messages, sent to, from, or including Commissioner Joe Carollo and/or
any individual that is/was a part of his staff and/or working at his direction, or any other
City employee regarding or referencing Carollo, Ms. Mari Lugo and/or Code
Enforcement Director James Bernat's visitation with residents living near or around the
Ball & Chain nightclub.
7. All documents, photographs, videotapes, recordings and correspondence, including
emails and text messages, sent to, from, or including Commissioner Joe Carollo and/or
any individual that is/was a part of his staff, or any other City employee regarding or

referencing complaints (of any issue) from residents living near or around Ball & Chain concerning or referencing the Ball & Chain.

Please be advised that as part of your search, any personal cell phones or email addresses that also are used to conduct the obligations of a City employee or in furtherance of City related business must also be included in your search

**Request #18-2056**

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following information:

1. All documents photographs, videotapes, recordings and correspondence, including emails and text messages, sent to, from or including Commissioner Joe Carollo and/or any individual that is a part of his staff and/or working at his direction, or any other City employee regarding Carollo, attorney Saul Cimbler, and Code Enforcement Board member Frank Pichel's presence at and around Ball & Chain nightclub, including its parking lots and residences nearby the Ball & Chain nightclub on or about October 2, 2018.

2. All documents photographs, videotapes, recordings and correspondence, including emails and text messages, referencing correspondence from Commissioner Joe Carollo and/or any individual that is a part of his staff and/or working at his direction regarding Carollo, attorney Saul Cimbler, and Code Enforcement Board member Frank Pichel's presence at and around Ball & Chain nightclub, including its parking lots and residences nearby the Ball & Chain nightclub on or about October 2, 2018.

Please be advised that as part of your search, any personal cell phones or email addresses that also are used to conduct the obligations of a City employee or in furtherance of City related business must also be included in your search.

**Request #18-2057**

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following information:

1. All documents photographs, videotapes, recordings and correspondence, including emails and text messages, regarding Code Enforcement officers and police officers arrival at the Ball & Chain nightclub on or about September 15, 2018 regarding alleged illegal parking on the parking lot owned by William ("Bill") O. Fuller and/or Martin Pinilla, II, that is adjacent to Ball & Chain, and the officers' subsequent requirement that Ball & Chain employees remove their cars from the lot, including the Code Enforcement's authority (or lack thereof) to enforce such action.

2. All documents photographs, videotapes, recordings and correspondence, including emails and text messages, regarding any complaints about illegal parking in any lots owned by William ("Bill") O. Fuller and/or Martin Pinilla, II located near or adjacent to the Ball & Chain nightclub.

3. All documents photographs, videotapes, recordings and correspondence, including emails and text messages, sent to, from or including Commissioner Joe Carollo and/or any individual that is/was a part of his staff and/or working at his direction regarding alleged

illegal parking in any lots owned by William ("Bill") O. Fuller and/or Martin Pinilla, II
located near or adjacent to the Ball & Chain nightclub.

-2--

Please be advised that as part of your search, any personal cell phones or email addresses that
also are used to conduct the obligations of a City employee or in furtherance of City related
business must also be included in your search.

### Request #18-2058

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following
information:

1. On or about February 18, 2018, Commissioner Joe Carollo, Ms. Mari Lugo, Mr. Stephen
Miro and Mr. Miro's wife entered a parking lot, located at 1411 SW 11 St., Miami FL
33135, which is leased by a valet operator (S.H. Valet) for the nightclub Ball & Chain, a
business affiliated with William ("Bill") O. Fuller and Martin Pinilla, II. During this
visit, Carollo told the valet personnel that Carollo and his associates were conducting an
"official investigation." Accordingly, please provide all documents, photographs,
videotapes, recordings and correspondence, including emails and text messages,
regarding or referencing Commissioner Joe Carollo, Ms. Lugo, Mr. Miro, and/or Mr.
Miro's wife's visit/investigation of S.H. Valet and Ball & Chain's parking lot, including
but not limited to the decision to conduct such a visit/investigation.

2. All documents, photographs, videotapes, recordings and correspondence, including
emails and text messages, sent to, from, or including Commissioner Joe Carollo and/or
any individual that is/was a part of his staff and/or working at his direction, or any other
City employee regarding Ball & Chain or S.H. Valet.

3. All documents, photographs, videotapes, recordings and correspondence, including
emails and text messages, referencing correspondence from Commissioner Joe Carollo
and/or any individual that is/was a part of his staff and/or working at his direction,
regarding Ball & Chain or S.H. Valet.

-2--

Please be advised that as part of your search, any personal cell phones or email addresses that
also are used to conduct the obligations of a City employee or in furtherance of City related
business must also be included in your search.

### Request #18-2059

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following
information:

1. All documents photographs, videotapes, recordings and correspondence, including emails
and text messages, sent to, from or including Commissioner Joe Carollo and/or any
individual that is/was a part of his staff and/or working at his direction, regarding the
Calle Ocho Marketplace, located at 1380 SW 8th Street.

2. All documents photographs, videotapes, recordings and correspondence, including emails
and text messages, including Commissioner Joe Carollo and/or any individual that is/was
a part of his staff and/or working at his direction regarding the Calle Ocho Marketplace,
located at 1380 SW 8th Street.

3. All documents photographs, videotapes, recordings and correspondence, including emails and text messages, sent to, from or including Commissioner Joe Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee regarding or referencing the notice sent on or about August 20, 2018 by the City to William ("Bill") O. Fuller and Martin Pinilla, II claiming a code violation of Section 3.63(g) of Miami 21 at Calle Ocho Marketplace, contending that the kiosks in the Marketplace constituted equipment and the Marketplace itself constituted a parking facility, and requiring that Fuller and Pinilla either fasten down the kiosks or remove them no later than August 22, 2018.

-2--

Please be advised that as part of your search, any personal cell phones or email addresses that also are used to conduct the obligations of a City employee or in furtherance of City related business must also be included in your search.


## Request #18-2060

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following information:

1. All documents, photographs, videotapes, recordings and correspondence, including emails and text messages, sent to, from, or including Commissioner Joe Carollo and/or any individual that is/was as a part of his staff and/or working at his direction, or any other City employee regarding or referencing the litigation filed against him, styled William O. Fuller and Martin Pinilla, II v. Joe Carollo and John Does 1-10, Case No. 18-cv-24190, in the United States District Court of the Southern District of Florida (hereinafter referred to as the "Litigation"), William ("Bill") O. Fuller, Martin Pinilla, II and/or The Barlington Group.

2. All documents, photographs, videotapes, recordings and correspondence, including emails and text messages, referencing correspondence from Commissioner Joe Carollo and/or any individual that is/was a part of his staff and/or working at his direction, regarding the Litigation, William ("Bill") O. Fuller, Martin Pinilla, II and/or The Barlington Group.

Please be advised that as part of your search, any personal cell phones or email addresses that also are used to conduct the obligations of a City employee or in furtherance of City related business must also be included in your search.


## Request #18-2061

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following information:

1. All documents photographs, videotapes, recordings and correspondence, including emails and text messages, sent to, from or including Commissioner Joe Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee regarding any interview or public speaking event in which Carollo discussed

William ("Bill") O. Fuller, Martin Pinilla, II and/or The Barlington Group, including Carollo's interview on the Raul Martinez show and the Radio Actualidad show.

2. All documents photographs, videotapes, recordings and correspondence, including emails and text messages, referencing correspondence from Commissioner Joe Carollo and/or any individual that is/was a part of his staff and/or working at his direction regarding any interview or public speaking event in which Carollo discussed Fuller, Pinilla and/or The Barlington Group, including Carollo's interview on the Raul Martinez show and the Radio Actualidad show.

Please be advised that as part of your search, any personal cell phones or email addresses that also are used to conduct the obligations of a City employee or in furtherance of City related business must also be included in your search.


**Request #18-2062**

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following information:

1. All documents photographs, videotapes, recordings and correspondence, including emails and text messages, regarding the City's filing of an Emergency Motion for Injunctive Relief, on or about August 31, 2018, seeking that the Court force William ("Bill") O. Fuller and Martin Pinilla, II to remove the kiosks at the Calle Ocho Marketplace, located at 1380 SW 8th Street, or to grant the City authority to remove and destroy the kiosks, and/or the court's subsequent denial of that Motion.

2. All documents photographs, videotapes, recordings and correspondence, including emails and text messages, sent to, from or including Commissioner Joe Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee regarding the City's filing of an Emergency Motion for Injunctive Relief, on or about August 31, 2018, seeking that the Court force William ("Bill") O. Fuller and Martin Pinilla, II to remove the kiosks at the Calle Ocho Marketplace, located at 1380 SW 8th Street, or to grant the City authority to remove and destroy the kiosks, and/or the court's subsequent denial of that Motion.

3. All documents photographs, videotapes, recordings and correspondence, including emails and text messages, regarding the City's decision to revoke Calle Ocho Marketplace's Temporary Use Permit, and the letter sent to William ("Bill") O. Fuller and Martin Pinilla, II by the City on or about September 4, 2018 regarding the same.

-2--

4. All documents photographs, videotapes, recordings and correspondence, including emails and text messages, sent to, from or including Commissioner Joe Carollo and/or any individual that is/was a part of his staff and/or working at his direction regarding the City's decision to revoke Calle Ocho Marketplace's Temporary Use Permit, and the letter sent to William ("Bill") O. Fuller and Martin Pinilla, II by the City on or about September 4, 2018 regarding the same.

5. All documents photographs, videotapes, recordings and correspondence, including emails and text messages, regarding the hearing in front of the Code Enforcement Board on or about September 6, 2018 regarding Calle Ocho Marketplace's Temporary Use Permit.

6. All documents photographs, videotapes, recordings and correspondence, including emails
and text messages, sent to, from or including Commissioner Joe Carollo and/or any
individual that is/was a part of his staff and/or working at his direction regarding the
hearing in front of the Code Enforcement Board on or about September 6, 2018 regarding
Calle Ocho Marketplace's Temporary Use Permit.

7. All documents photographs, videotapes, recordings and correspondence, including emails
and text messages, regarding the Code Enforcement Board's decision at the hearing on or
about September 6, 2018 to give William ("Bill") O. Fuller and Martin Pinilla, II less
than 48 hours to remove the kiosks from the Calle Ocho Marketplace or else incurring
fines of $250 per day.

8. All documents photographs, videotapes, recordings and correspondence, including emails
and text messages, sent to, from or including Commissioner Joe Carollo and/or any
individual that is/was a part of his staff and/or working at his direction regarding the
Code Enforcement Board's decision at the hearing on or about September 6, 2018 to give
William ("Bill") O. Fuller and Martin Pinilla, II less than 48 hours to remove the kiosks
from the Calle Ocho Marketplace or else incurring fines of $250 per day.

9. All documents photographs, videotapes, recordings and correspondence, including emails
and text messages, regarding the emergency hearing at the Code Enforcement Board
meeting on or about September 12, 2018 regarding Calle Ocho Marketplace.

10. All documents photographs, videotapes, recordings and correspondence, including emails
and text messages, sent to, from or Commissioner Joe Carollo and/or any individual that
is/was a part of his staff and/or working at his direction regarding the emergency hearing
at the Code Enforcement Board meeting on or about September 12, 2018 regarding Calle
Ocho Marketplace.

Please be advised that as part of your search, any personal cell phones or email addresses that
also are used to conduct the obligations of a City employee or in furtherance of City related
business must also be included in your search.


**Request #18-2063**

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following
information:

1. All lists and/or spreadsheets created by or at the direction of Commissioner Joe Carollo
identifying William ("Bill") O. Fuller, Martin Pinilla, II and/or The Barlington Group's
businesses, properties or associated businesses and/or properties.

2. All documents, photographs, videotapes, recordings and correspondence, including
emails and text messages, sent to, from, or including Commissioner Joe Carollo, and/or
any individual that is/was a part of his staff and/or working at his direction, or any other
City employee regarding or referencing any list and/or spreadsheet that was created by or
at the direction of Carollo identifying William ("Bill") O. Fuller, Martin Pinilla, II and/or
The Barlington Group's businesses, properties or associated businesses and/or properties.

3. All documents, photographs, videotapes, recordings and correspondence, including
emails and text messages, sent to, from, or including Commissioner Joe Carollo, and/or
any individual that is/was a part of his staff and/or working at his direction, or any other

City employee, including Orlando Diez, the former Director of Code Enforcement and the Construction Manager, regarding any instructions from Carollo to target, investigate, monitor, or otherwise seek violations against William ("Bill") O. Fuller, Martin Pinilla, II and/or The Barlington Group's businesses, properties or associated businesses and/or properties.

-2--

4. Stephen Miro, Carollo's top aide, confirmed that Carollo used a spreadsheet containing all of William ("Bill") O. Fuller and Martin Pinilla, II's businesses and properties to point out alleged violations on those properties during a walk with the Mayor, City Manager, Deputy City Manager and Code Enforcement Officer down 8th Street, which is also known as "Calle Ocho." Therefore, please provide all documents, photographs, videotapes, recordings and correspondence, including emails and text messages, sent to, from, or including Commissioner Joe Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee, including the Mayor, City Manager, Deputy City Manager or Code Enforcement Officer regarding any visitation of 8th Street to inspect, visit, or otherwise view any properties or businesses owned by or affiliated with Fuller, Pinilla and/or The Barlington Group.

Please be advised that as part of your search, any personal cell phones or email addresses that also are used to conduct the obligations of a City employee or in furtherance of City related business must also be included in your search.

**Request #18-2064**

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following information:

1. All documents and correspondence, including emails and text messages, sent to, from, or including Commissioner Joe Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee regarding any ride-alongs that Carollo participated and/or joined in and the properties that were identified, targeted or otherwise investigated during those ride alongs, including ride-alongs with Code Enforcement Supervisor Michele Watt, Code Enforcement Officer Dennis Uriarte, as well as correspondence with Code Enforcement Supervisor Daniel Sierra and Code Enforcement Director James Bernat regarding the same, or any citations issued from those ride alongs.

2. All documents, and correspondence, including emails and text messages, referencing correspondence from Commissioner Joe Carollo and/or any individual that is/was a part of his staff and/or working at his direction, regarding any ride-alongs that Carollo participated and/or joined in and the properties that were identified, targeted or otherwise investigated during those ride alongs, including ride-alongs with Code Enforcement Supervisor Michele Watt, Code Enforcement Officer Dennis Uriarte, and/or any citations issued from those ride alongs, or referencing correspondence from Code Enforcement Supervisor Daniel Sierra and Code Enforcement Director James Bernat regarding the same.

-2--

3. All documents, photographs, videotapes, recordings and correspondence, including emails and text messages, sent to, from, or including Commissioner Joe Carollo and/or any individual that is/was a part of his staff and/or working at his direction, or any other City employee regarding or referencing the "park and walk" that occurred on or about March 14, 2018 arranged by Carollo and conducted by Carollo, and numerous City employees including Mr. Bernat, Code Enforcement personnel, police officers, Sean Moy (President of the AFSCME Union), Ms. Mari Lugo and Mr. Stephen Miro.

Please be advised that as part of your search, any personal cell phones or email addresses that also are used to conduct the obligations of a City employee or in furtherance of City related business must also be included in your search.

**Request #18-2065**

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following information:

1. All documents, photographs, videotapes, recordings and correspondence, including emails and text messages, regarding the raid or otherwise investigation or visitation on or about November 26, 2017 by numerous City enforcement personnel including police, fire, building and Code Enforcement officers of the business Sanguich de Miami which was located on William ("Bill") O. Fuller and Martin Pinilla, II's property. This search must include, but should not be limited to, a search for all documents and correspondence, including emails and text messages, sent to, from or including Commissioner Joe Carollo and/or any individual that is/was a part of this staff and/or working at his direction, City Manager Daniel Alfonso and/or any other City employee, including each City Enforcement personnel that physically went to Sanguich de Miami on or about November 26, 2017, regarding the raid or otherwise visitation and/or investigation of Sanguich de Miami.

2. All documents, photographs, videotapes, recordings and correspondence, including emails and text messages, regarding the Commission hearing on or about December 14, 2017 to remove Temporary Use Permits from District 3, including the but not limited to all documents and correspondence, including emails and text messages sent to, from or including Commissioner Joe Carollo and/or any individual that is/was a part of this staff and/or working at his direction the Commission hearing, the decisions to include language regarding the removal of Temporary Use Permits in a separate commissioner's

-2--

legislation, the failure to hold a hearing or provide public notice regarding the removal of Temporary Use Permits and/or any reference to Sanguich de Miami concerning a Temporary Use Permit.

3. All documents, photographs, videotapes, recordings and correspondence, including emails and text messages, regarding the visitation on or about January 6 and 8, 2018, by City Code Enforcement, including Code Enforcement Officer Yacmany Salvatierra, regarding the City's prohibition of Sanguich de Miami's reopening on the William ("Bill") O. Fuller and Martin Pinilla, II's property. This search must include, but should not be limited to, a search for all documents and correspondence, including emails and text messages, sent to, from or including Commissioner Joe Carollo and/or any individual

that is/was a part of this staff and/or working at his direction, Ms. Salvatierra, Building
Department Director Jose Camero, and/or any other City employee, regarding the
decision to, and eventual prohibition of Sanguich de Miami's reopening on the Fuller and
Pinilla property.

4. All documents, photographs, videotapes, recordings and correspondence, including
emails and text messages, sent to, from, or including Commissioner Joe Carollo, and/or
any individual that is/was a part of this staff and/or working at his direction, or any other
City employee regarding Sanguich de Miami.

5. All documents, photographs, videotapes, recordings and correspondence, including
emails and text messages, referencing correspondence from Commissioner Joe Carollo,
and/or any individual that is/was a part of this staff and/or working at his direction,
regarding Sanguich de Miami.

Please be advised that as part of your search, any personal cell phones or email addresses that
also are used to conduct the obligations of a City employee or in furtherance of City related
business must also be included in your search.

**Request #18-2066**

Pursuant to Chapter 119 of the Florida Statutes, we hereby request the following
information:

1. All documents photographs, videotapes, recordings and correspondence, including emails
and text messages regarding the decision to abolish Special Masters in the City of Miami.

2. All documents photographs, videotapes, recordings and correspondence, including emails
and text messages, sent to, from or including Commissioner Joe Carollo and/or any
individual that is/was a part of his staff and/or working at his direction, or any other City
employee, regarding the support for, and eventual abolishment of Special Masters in the
City of Miami.

3. All documents photographs, videotapes, recordings and correspondence, including emails
and text messages, referencing correspondence from Commissioner Joe Carollo and/or
any individual that is/was a part of his staff and/or working at his direction regarding the
support for, and eventual abolishment of Special Masters in the City of Miami.

Please be advised that as part of your search, any personal cell phones or email addresses that
also are used to conduct the obligations of a City employee or in furtherance of City related
business must also be included in your search.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 18-24190-CIV-MORENO

WILLIAM O. FULLER and
MARTIN PINILLA II,
       *Plaintiffs*,

**versus**

JOE CAROLLO, THE CITY OF MIAMI,
MARIA LUGO, and JOHN DOES 1-10,
       *Defendants*.
_____/

**PROPOSED ORDER ON DEFENDANTS' JOINT MOTION TO STAY DISCOVERY
PENDING THE COURT'S ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

       **THIS CAUSE** was considered by the Court on the Join Motion of Defendant Joe Carollo,

the City of Miami, and Maria Lugo, to stay discovery until the Court rules upon the Defendants'

dispositive Motions to Dismiss Plaintiffs' Complaint, and the Court having reviewed the Motion,

and being advised in the premises, it is

       **ORDERED AND ADJUDGED:**

    1) The Motion is **GRANTED**;

    2) Discovery in this case is stayed. Any discovery requests propounded on the Parties
        will be due within thirty [30] days after the Court rules upon the Defendants' Motions
        to Dismiss.

DONE and ORDERED in Chambers in Miami, Florida, this ___ day of March 2019.


                       _____
                       **LAUREN LOUIS**
                       **United States Magistrate Judge**


Copies furnished to: All Counsel of Record