

City of Miami
Building Department
Permit Application

| Plan #: BD18-018072-001-?001 |
| Permit #: _____ |
| Total Due: $ 314.85 |

## Job Location / Owner Lessee Information

| Job Location | Owner Lessee Information |
|---|---|
| Folio Number: 01-4111-014-0170 | Owner: Little OCHO Market Pla |
| Job Address: 1580 SW 8th St    Zip: 33 | Owner's Address: 1380 SW 8th St |
| Legal Address: | Phone:            E-Mail: |
| Unit No: | Lessee: |
| ☒Commercial  ☐ Residential  ☐ Dry Run | Lessee Address: |
| ☐ Owner  ☒Contractor  ☐ Lessee | Phone:            E-Mail: |

## Contractor Information / General Information

| Contractor Information | General Information |
|---|---|
| Contractor's License/Registration No: CGC 022669 | Proposed Use of Building: Restaurant |
| Contractor's Social Security Number: | Current Use: Restaurant |
| Qualifier's Name: Rodely Popa | Job Description: Patio Flight Stanchies |
| Company's Name: Runical Vega's Const | New Construction Total Cost: 2,000.00 |
| Address: 158 S Lake Star Blvd | New Construction Sq. Ft: 4/4 Lineal: |
| City: Lehi City: State: FL Zip: 75858 | Remodeling Total Cost: |
| Phone: 286-382-4844 | Remodeling Sq. Ft:        Lineal Ft: |
| E-Mail: Rodely@HRCFLA.NET | Units:      Floors:      Height:      Gallons: |
| If this is related to another permit, you must provide Master Permit Number: | |

## Threshold Inspector / Bonding Company

| Threshold Inspector | Bonding Company |
|---|---|
| Name: | Name: |
| Address: | Address: |
| Phone: | Phone: |

## Permit Type / Engineer/Architect Information

| Permit Type | | Engineer/Architect Information |
|---|---|---|
| ☐ Building | ☐ Plumbing | Engineer's Name: Leandro Fernandez |
| ☐ Mechanical/AC | ☐ Plumbing/Gas | Address: 571 NE 79th St |
| ☐ Electrical | ☐ Roofing | Phone: 736390-8449 E-Mail: |
| ☐ Landscaping | ☐ Sign | Architect's Name: |
| ☐ Electrical | ☐ Roofing | Address: |
| ☐ Fire | ☐ Mechanical Elevator | Phone:        E-Mail: |

## Change to Existing Permit / Building Permit only

| Change to Existing Permit | Building Permit only |
|---|---|
| ☐ Change of Contractor (CR)  ☐ Change of Qualifier (CQ) | ☐ New Construction      ☐ Addition |
| ☐ Re-certification of Plans (RC)  ☐ Plans revision (RV) | ☐ General Repair/Remodeling  ☐ Misc. Building |
| ☐ Completion Permit (CP) | ☐ Change of Occupancy  ☒Demolition |
| | ☐ Change of Use |

I understand that separate permits must be obtained for other items (i.e. electrical, plumbing, roofing, etc.), unless specifically covered by this permit. In signing this application, I am responsible for the supervision and completion of the construction in accordance with the plans and specifications and for compliance with all federal, state, and county laws applicable.

**Owner's Affidavit:** I certify that all the forgoing information is correct. Owner Certifies that the aforementioned Contractor has the authorization to perform the work as specified above.

**Lessee's Affidavit:** Lessee certifies that he has full consent and authorization from owner of subject property to perform the above-mentioned work and to hire above captioned contractor.

I have read the information contained in this permit and understand that any misrepresentation may constitutes fraud and could void the permit.

Signature of Owner/Lessee                     Signature of Qualifier

Print Name                                    Print Name

State of Florida, County of Miami-Dade        State of Florida, County of Miami-Dade
Sworn to and subscribed before me this 15     Sworn to and subscribed before
Day of ___ 20 18                              Day of Nov
Personally known or Produced Identification,  By _____
Type of Identification produced _____        (SEAL)
                                              Personally known or Produced Identification,
                                              Type of Identification produced _____

ORLANDO PENA
Notary Public - State of Florida
Commission # FF 941677
My Comm. Expires Feb 8, 2020
Bonded through National Notary Assn.

ORLANDO PENA
Notary Public · State of Florida
Commission # FF 941677
My Comm. Expires Feb 8, 2020
Bonded through National Notary Assn.

## FOR BUILDING DEPARTMENT USE ONLY

| Revision: No. of Sheets: _____ | Tracking required: | | | | | | | |
|---|---|---|---|---|---|---|---|---|

Application Received by: _____ Date: _____   Permit Authorized by: MH   Date 2/1/19

PAID 02/04/19

# DEMOLITION PLAN
1380 SW 8th Street
MIAMI, FL 33135

CITY OF MIAMI COPY

## GENERAL NOTES:

### GENERAL:

A. ALL DIMENSIONS ON PLANS ARE SUBJECT TO VERIFICATION IN THE FIELD.
B. IT IS THE INTENT OF THESE PLANS TO BE IN ACCORDANCE WITH APPLICABLE CODES AND AUTHORITIES HAVING JURISDICTION, ANY DISCREPANCIES SHALL BE IMMEDIATELY BROUGHT TO THE ATTENTION OF THE ENGINEER BEFORE PROCEEDING WITH WORK.
C. IT IS THE INTENT OF THESE PLANS AND THE RESPONSIBILITY OF THE CONTRACTOR TO COMPLY WITH LOCAL, STATE AND FEDERAL ENVIRONMENTAL PERMITS ISSUED FOR THIS PROJECT. IT SHALL BE THE CONTRACTORS RESPONSIBILITY TO FAMILIARIZE AND GOVERN HIMSELF BY ALL PROVISIONS OF THESE PERMITS.

### DESIGN:

D. IN ACCORDANCE WITH FLORIDA BUILDING CODE 2017.
DEMOLITION OF ALL STRUCTURES IN ALLEY

## LOCATION MAP
1380 SW 8 ST
MIAMI FL. 33135

## SITE MAP

## SURVEY

## Full Legal Description
11 54 41
HARRISONS RE-SUB PB 4-16
LOT 19 LESS ST & LOT 20 LESS ST
BLK 4 & W1/2 OF ALLEY LYG E &
ADJ CLOSED PER ORD 13492
LOT SIZE 11700 SQ FT M/L

DERM
PLAN REVIEW
FINAL
APPROVAL
DIVISION OF ENVIRONMENTAL
RESOURCES MANAGEMENT
NAME (PRINT)
SIGNATURE         DATE

PROJECT:

# DEMOLITION PLAN
1380 SW 8th Street
MIAMI, FL 33135

## LEAF ENGINEERING
756 NE 79 STREET
MIAMI, FL 33138
PH: 786.390.7493
C.A. 33777

LEANDRO FERNANDEZ, PE
REGISTERED PROFESSIONAL ENGINEER
STATE OF FLORIDA LICENSE #71519

CALLE OCHO MARKETPLACE, LLC
1380 SW 8TH STREET
DEMOLITION PLAN,
GENERAL NOTES, LOCATION,
SURVEY & LEGAL DESCRIPTION

GENERAL CONTRACTOR:
G7 HOLDINGS, INC.

REVISIONS
ISSUE | ISSUE DATE/FOR

PROJECT No.      DRAWN BY JJ
18-007
SCALE AS SHOWN CHECKED BY LF
DATE: 11/15/2018
SHEET NO.
D-1

## DEMOLITION
OF ILLEGAL
STRUCTURE

ONE STORY CBS
COMMERCIAL BLDG. #1380
6,488 sq.ft.

LAYOUT

N

## Southwest 8th Street

AFA &
Company, Inc.

ONE STORY CBS
COMMERCIAL BLDG #1380
6,488 sq.ft.



0001096043

M20190047[illegible]29

DERM
PLAN REVIEW
FINAL
APPROVAL

*JAN — JUNE 2018*

*$650.00*

*JR*

VALET PERMIT APPLICATION OR RENEWAL

## AS PER CITY OF MIAMI CODE, CHAPTER 35, ARTICALE VIII

Valet permits are issued under the provision of the City of Miami Code, Chapter 35, Article VIII, which requires the operations of a business to be in compliance with all City of Miami Code sections. The business location and/or documents will be reviewed by the following departments:

1. Department of Off-Street Parking d/b/a Miami Parking Authority
2. Department of Risk Management
3. Department of Public Works
4. Department of Planning and Zoning
5. Miami Police Department (Special Events)
6. Corresponding NET Office

There is an application fee of $150.00, which is non-refundable. Please contact Ms. Lorena Navarrete at (305)373-6789 Ext. 289, if you have any questions regarding the application requirements of the City Code or if you need further assistance.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Part I – To be completed by Applicant and submitted to Department of Off-Street Parking at 40 NW 3rd Street Miami, FL 33128 (Ground Floor Customer Service Office).

Name of Business/Establishment: *S.H. Valet Service corp. (Ball & chain)*

Address: *1513 sw 8th St. Miami FL 33135*

Valet Owner's Name: *OMAR ROJAS*

Valet Owner's Mailing Address: *P.O. box 9702 Fort Lauderdale FL 33310*

Email Address and Phone Number: *s.h.valetservice @gmail.com 754-244-3336*

This application, along with the following items, is submitted under the following conditions:

*954-479-8501*

1. There is a non-refundable one-time application fee of $150.00.
2. The Permit fee is $500.00 for a six-month period.

Please attach the following documents evidencing current compliance.

1. Liability Insurance (General Liability, Garage Keepers Liability, and Workmen's Comp) naming the City of Miami and the Department of Off-Street Parking as additional/certificate holder insured.
2. Certificate of Use
3. Occupational License
4. Site Plan [See Section 35-305 (a) (6)]
5. Copies of Corporate Bylaws
6. Copy of Agreement for Off-Street Parking Spaces (Storage) *BTR*
7. The Operator of the Valet business needs to obtain a letter of approval from the business where the valet operations will be conducted.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Part II – Certification

I read the city of Miami Code Chapter 35, Article VIIJ, and understand that I shall execute the attached hold harmless/indemnity agreement and provide valid proof of required insurance as a condition precedent to the City's issuance of the herein requested permit.



Valet Permit application Page 2

Furthermore, I shall hold the City of Miami and Department of Off-Street Parking, its officers, agents and employees free and harmless and indemnify same from any claims for damages or losses to persons or property including legal fees and costs of defending any actions or suits thereon, including any appeals therefrom, which may result from the granting of this permit.

S. H. Valet Service Corp.

Name of company/Corporation/Partnership

_____     President          12/20/17.
Signature of Owner/Applicant       Title              Date


Notary:

OMAR ROJAS                    12/20/17.
Print Name                     Date


_____
Notary Signature                        (Imprint Notary Seal)

NOTARY PUBLIC
STATE OF FLORIDA
OMAR HELI ROJAS
MY COMMISSION # FF 150748
EXPIRES: December 13, 2018
Bonded Thru Budget Notary Services

Property Owner's Approval Signature: _____

Property Owner's Address:  1513 Sw 8th Street

Property Owner's Telephone:  305-525-7662

Property Owner's Email Address:  bill@ burlington group. com

# ACORD® CERTIFICATE OF GARAGE INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/13/2017 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Just Insurance Brokers | | |
|---|---|---|---|
| Just Insurance Brokers | PHONE (A/C, No, Ext): (305) 418-4701 | FAX (A/C, No): (305) 418-4706 | |
| 1200 NW 78 Ave Suite 105 | E-MAIL ADDRESS: acamafreita@jibfl.net | | |
| Miami                                            33126 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED | INSURER A: Catlin Specialty Insurance. | | |
| SH Valet Services Corp | INSURER B: THE TRAVELERS INDEMNITY COMPANY OF AMERICA | | |
| PO BOX 9702 | INSURER C: | | |
| | INSURER D: | | |
| | INSURER E: | | |
| Ft Lauderdale                                  33310 | INSURER F: | | |

| COVERAGES | PROD / CUSTOMER ID: | CERTIFICATE #: | REVISION #: |
|---|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GARAGE LIABILITY  [ ] ALL OWNED AUTOS  [ ] HIRED AUTOS ONLY  [X] NON-OWNED AUTOS USED IN GARAGE BUSINESS | | Y | 0901102346 | 09/10/2017 | 09/10/2018 | AUTO ONLY (Each accident) | $ 1,000,000 |
| | | | | | | | OTHER THAN AUTO ONLY  EA ACCIDENT | $ 1,000,000 |
| | | | | | | | AGGREGATE | $ 2,000,000 |
| A | GARAGE KEEPERS LIABILITY  [X] LEGAL LIABILITY  [ ] DIRECT BASIS  [ ] PRIMARY  [ ] EXCESS | | Y | 0901102346 | 09/10/2017 | 09/10/2018 | [X] COMP/ COLL  SPECIFIED PERILS  LOC 1 | $ 1,000,000 |
| | | | | | | | LOC 2 | $ 1,000,000 |
| | | | | | | | [X] COLLISION  LOC 1 | $ 1,000,000 |
| | | | | | | | LOC 2 | $ 1,000,000 |
| A | GENERAL LIABILITY  [X] COMMERCIAL GENERAL LIABILITY  [ ] CLAIMS-MADE  [ ] OCCUR | | Y | 0901102346 | 09/10/2017 | 09/10/2018 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 1,000,000 |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:  [ ] POLICY  [ ] PRO-JECT  [ ] LOC | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | UMBRELLA LIAB  [ ] OCCUR  EXCESS LIAB  [ ] CLAIMS-MADE  [ ] DED  [ ] RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| B | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH)  If yes, describe under REMARKS below  Y/N  N/A | | Y | UB-4G407392-16 | 11/21/2017 | 11/21/2018 | [X] WC STATU-TORY LIMITS  [X] OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| A | Garage Keepers | | Y | 0901102346 | 09/10/2017 | 09/10/2018 | $1,000,000 Max Location  $1,000,000 per Vehicle | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

City of Miami and Miami Parking Authority are named as additional insured with respect to general liability. Insurance is primary and non-contributory.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| City of Miami and Parking Authority (MPA)  444 SW 2nd Ave, Miami, FL 33130      40 NW 3rd Street, Miami, FL 33128 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.  AUTHORIZED REPRESENTATIVE |

© 2010 ACORD CORPORATION. All rights reserved.

ACORD 30 (2010/12)                    The ACORD name and logo are registered marks of ACORD

City of Miami

**THIS IS NOT A BILL**

you relocate, sell the business, or change the type of business a new certificate must be obtained from Building and Zoning at 444 S.W. 2nd Avenue, 4th Floor, Phone: (305)416-1199.

## CERTIFICATE OF USE
### FIRE SAFETY PERMIT

BUSINESS NAME :    S.H. Valet Service Corp
DBA:
DATE ISSUED:    09/23/14
VALID FROM:    10/01/17  TO  09/30/18
ACCOUNT NUMBER:    119927
SERVICE ADDRESS:    1513 SW 8 ST
APPROVED USE:    CU03 -General Commercial
                  Uncovered parking area

COMMENTS:
RESTRICTIONS:

Restrictions on this CU are informational only. For all restrictions, please contact the Office of Zoning

* **PLEASE DISPLAY THIS CERTIFICATE IN A CONSPICUOUS LOCATION AT OCCUPANCY ADDRESS.**
* **FAVOR DE MOSTRAR ESTE CERTIFICADO EN UN SITIO VISIBLE EN LA DIRECCION DEL COMERCIO.**

Please note that this Certificate of Use expires on September 30th of the effective year listed herein. Ensuring renewal by October 1st is the responsibility of the business entity. For further information you may call (305) 416-1570.

Favor de tomar nota que este Certificado de Uso se vence el 30 de Septiembre del año indicado. Asegurar la renovación para el 1ro de Octubre es la responsabilidad del negocio. Para más información puede llamar al (305) 416-1570.

Tanpri note byen sètifika wap itilize-a ap ekspire jou 30 Septam ane sa-a. Se responsabilité met biznis la pou li renouvle-l Premye Oktob ane kap vini-a. Si ou bezwen plis enfòmasyon, ou ka rele nou nan: (305) 416-1570.

# Local Business Tax Receipt
## Miami–Dade County, State of Florida
-THIS IS NOT A BILL - DO NOT PAY-

7175601

**BUSINESS NAME/LOCATION**
S H VALET SERVICE CORP
1513 SW 8 ST
MIAMI, FL  33135

**RECEIPT NO.**
RENEWAL
7455165

**LBT**

EXPIRES
SEPTEMBER 30, 2018
Must be displayed at place of business
Pursuant to County Code
Chapter 8A – Art. 9 & 10

**OWNER**
S H VALET SERVICE CORP
C/O OMAR ROJAS PRES

Employee(s)          2

**SEC. TYPE OF BUSINESS**
213          SERVICE BUSINESS

**PAYMENT RECEIVED BY TAX COLLECTOR**
45.00     08/25/2017
0200-17-005172

This Local Business Tax Receipt only confirms payment of the Local Business Tax. The Receipt is not a license,
permit, or a certification of the holder's qualifications to do business. Holder must comply with any governmental
or nongovernmental regulatory laws and requirements which apply to the business.

The RECEIPT NO. above must be displayed on all commercial vehicles – Miami–Dade Code Sec 8a-276.
For more information, visit www.miamidade.gov/taxcollector





BYLAWS

OF

S.H. Valet Service corp.

A Florida Corporation

## ARTICLE 1 -- SHAREHOLDERS

**1.1 Annual Meeting.** A meeting of shareholders shall be held each year for the election of directors and for the transaction of any other business that may come before the meeting. The board of directors shall designate the time and place of the meeting. F.S. 607.0701

**1.2 Special Meeting.** Special meetings of the shareholders, for any purpose or purposes, shall be held when directed by the (chair of the board/president/board of directors), or at the request of the holders of not less than one tenth of all outstanding shares of the corporation entitled to vote at the meeting. F.S.607.0702

**1.3 Place of Meeting.** The board of directors may designate any place, either in or outside the state of Florida, as the place of meeting for any annual or special meeting of the shareholders. If no designation is made, the place of meeting shall be the corporation's principal office [in the state of Florida]. F.S. 607.0702(2)

**1.4 Action Without a Meeting.** Action required or permitted to be taken at any meeting of the shareholders may be taken without a meeting, without prior notice, and without a vote if the action is taken by the holders of outstanding shares of each voting group entitled to vote on it having not less than the minimum number of votes with respect to each voting group that would be necessary to authorize or take such action at a meeting at which all voting groups and shares entitled to vote were present and voted. To be effective, the action must be evidenced by one or more written consents describing the action taken, dated and signed by approving shareholders having the requisite number of votes of each voting group entitled to vote, and delivered to the corporation at its principal office in Florida or its principal place of business, or to the corporate secretary or another officer or agent of the corporation having custody of the book in which proceedings of meetings of shareholders are recorded. No written consent shall be effective to take corporate action unless, within 60 days of the date of the earliest dated consent delivered in the manner required by this section, written consents signed by the number of holders required to take action are delivered to the corporation.

Any written consent may be revoked before the date that the corporation receives the required number of consents to authorize the proposed action. No revocation is effective unless in writing and until received by the corporation at its principal office or its principal place of business, or received by the corporate secretary or other officer or agent of the corporation having custody of the book in which proceedings of meetings of shareholders are recorded.

27

Within 10 days after obtaining authorization by written consent, notice must be given to those shareholders who have not consented in writing or who are not entitled to vote on the action. The notice shall fairly summarize the material features of the authorized action and, if the action is one for which dissenters' rights are provided under the articles of incorporation or by law, the notice shall contain a clear statement of the right of dissenting shareholders to be paid the fair value of their shares on compliance with applicable law.

A consent signed as required by this section has the effect of a meeting vote and may be described as such in any document.

Whenever action is taken as provided in this section, the written consent of the shareholders consenting or the written reports of inspectors appointed to tabulate such consents shall be filed with the minutes of proceedings of shareholders.

**1.5 Notice of Meeting.** Except as provided in F.S. Chapter 607, the Florida Business Corporation Act, written or printed notice stating the place, day, and hour of the meeting and, in the case of a special meeting, the purpose or purposes for which the meeting is called, shall be delivered not less than 10 nor more than 60 days before the date of the meeting, either personally or by first-class mail, by, or at the direction of, the president or the secretary, or the officer or other persons calling the meeting, to each shareholder of record entitled to vote at the meeting. If the notice is mailed at least 30 days before the date of the meeting, a class of United States mail other than may affect it first-class. If mailed, the notice shall be effective when mailed, if mailed postage prepaid and correctly addressed to the shareholder's address shown in the current record of shareholders of the corporation. F.S. 607.0141(1) & 607.0705(1)

When a meeting is adjourned to another time or place, it shall not be necessary to give any notice of the adjourned meeting if the time and place to which the meeting is adjourned are announced at the meeting at which the adjournment is taken. At the adjourned meeting any business may be transacted that might have been transacted on the original date of the meeting. If, however, after the adjournment the board of directors fixes a new record date for the adjourned meeting, a notice of the adjourned meeting shall be given as provided in this section to each shareholder of record on the new record date entitled to vote at such meeting.

**1.6 Waiver of Notice of Meeting.** Whenever any notice is required to be given to any shareholder, a waiver in writing signed by the person or persons entitled to such notice, whether signed before, during, or after the time of the meeting and delivered to the corporation for inclusion in the minutes or filing with the corporate records, shall be equivalent to the giving of such notice. Attendance of a person at a meeting shall constitute a waiver of (a) lack of or defective notice of the meeting, unless the person objects at the beginning of the meeting to the holding of the meeting or the transacting of any business at the meeting, or (b) lack of or defective notice of a particular matter at a meeting that is not within the purpose or purposes described in the meeting notice, unless the person objects to considering the matter when it is presented. F.S. 607.0706

28

**1.7 Fixing of Record Date.** In order that the corporation may determine the shareholders entitled to notice of, or to vote at, any meeting of shareholders or any adjournment thereof, or to express consent to corporate action in writing without a meeting, or to demand a special meeting, the board of directors may fix, in advance, a record date, not more than 70 days before the date of the meeting or any other action. A determination of shareholders of record entitled to notice of, or to vote at, a meeting of shareholders shall apply to any adjournment of the meeting unless the board fixes a new record date, which it must do if the meeting is adjourned to a date more than 120 days after the date fixed for the original meeting.

If no prior action is required by the board, the record date for determining shareholders entitled to take action without a meeting is the date the first signed written consent is delivered to the corporation under Section 1.4 of these bylaws. F.S. 607.0707

**1.8 Shareholders' List.** After fixing a record date for a meeting of shareholders, the corporation shall prepare an alphabetical list of the names of all its shareholders entitled to notice of the meeting, arranged by voting group with the address of, and the number, class, and series, if any, of shares held by, each shareholder. The shareholders' list must be available for inspection by any shareholder for 10 days before the meeting or such shorter time as exists between the record date and the meeting and continuing through the meeting at the corporation's principal office, at a place identified in the meeting notice in the city where the meeting will be held, or at the office of the corporation's transfer agent or registrar. Any shareholder of the corporation or the shareholder's agent or attorney is entitled on written demand to inspect the shareholders' list (subject to the requirements of F.S. 607.1602(3)) during regular business hours and at the shareholder's expense, during the period it is available for inspection. F.S.607.0720

The corporation shall make the shareholders' list available at the meeting of shareholders, and any shareholder or the shareholder's agent or attorney is entitled to inspect the list at any time during the meeting or any adjournment.

**1.9 Voting Per Share.** Except as otherwise provided in the articles of incorporation or by F.S. 607.0721, each shareholder is entitled to one vote for each outstanding share held by him or her on each matter voted at a shareholders' meeting. F.S. 607.0721(1)

**1.10 Voting of Shares.** Shares standing in the name of another corporation, domestic or foreign, may be voted by the officer, agent, or proxy designated by the bylaws of the corporate shareholder or, in the absence of any applicable bylaw, by a person or persons designated by the board of directors of the corporate shareholder. In the absence of any such designation or, in case of conflicting designation by the corporate shareholder, the chair of the board, the president, any vice president, the secretary, and the treasurer of the corporate shareholder, in that order, shall be presumed to be fully authorized to vote the shares.

29

Administrators, executors, or guardians, may vote as personal representative or conservator, either in person or by proxy, without a transfer of such shares into his or her name. The trustee, either in person or by proxy, may vote shares standing in the name of a trustee but no trustee shall be entitled to vote shares held by him or her without a transfer of such shares into his or her name or the name of his or her nominee.

Shares held by, or under the control of, a receiver, a trustee in bankruptcy proceedings, or an assignee for the benefit of creditors may vote without the transfer into his or her name.

If shares stand of record in the names of two or more persons, whether fiduciaries, members of a partnership, joint tenants, tenants in common, tenants by the entirety, or otherwise, or if two or more persons have the same fiduciary relationship respecting the same shares, unless the secretary of the corporation is given notice to the contrary and is furnished with a copy of the instrument or order appointing them or creating the relationship wherein it is so provided, then acts with respect to voting shall have the following effect: (a) if only one of the persons votes, in person or by proxy, that act binds all; (b) if more than one votes, in person or by proxy, the act of the majority so voting binds all;  if more than one votes, in person or by proxy, but the vote is evenly split on any particular matter, each faction is entitled to vote the share or shares in question proportionally; or (d) if the instrument or order so filed shows that any such tenancy is held in unequal interest, a majority or a vote evenly split for purposes hereof shall be a majority or a vote evenly split in interest. The principles of this paragraph shall apply, as far as possible, to execution of proxies, waivers, consents, or objections and for the purpose of ascertaining the presence of a quorum. F.S.607.0721

**1.11 Proxies.** Any shareholder of the corporation, other person entitled to vote on behalf of a shareholder under F.S. 607.0721, or attorney-in-fact for such persons, may vote the shareholder's shares in person or by proxy. Any shareholder may appoint a proxy to vote or otherwise act for him or her by signing an appointment form, either personally or by an attorney-in-fact. An executed telegram or cablegram appearing to have been transmitted by such person, or a photographic, photo static, or equivalent reproduction of an appointment form, or an electronic transmission shall be deemed a sufficient appointment form.

An appointment of a proxy is effective when received by the secretary of the corporation or such other officer or agent authorized to tabulate votes, and shall be valid for up to 11 months, unless a longer period is expressly provided in the appointment form.

The death or incapacity of the shareholder appointing a proxy does not affect the right of the corporation to accept the proxy's authority unless notice of the death or incapacity is received by the secretary or other officer or agent authorized to tabulate votes before the proxy exercises authority under the appointment.

An appointment of a proxy is revocable by the shareholder unless the appointment form conspicuously states that it is irrevocable and the appointment is coupled with an interest. F.S. 607.0722

30

**1.12 Quorum.** Shares entitled to vote as a separate voting group may take action on a matter at a meeting only if a quorum of those shares exists with respect to that matter. Except as otherwise provided in the articles of incorporation or by law, a majority of the shares entitled to vote on the matter by each voting group, represented in person or by proxy, shall constitute a quorum at any meeting of shareholders. F.S. 607.0725 & 607.0824

Once a share is represented for any purpose at a meeting, it is deemed present for quorum purposes for the remainder of the meeting and for any adjournment of that meeting unless a new record date is or must be set for that adjourned meeting.

**1.13 Effect of Action.** If a quorum is present, action on a matter (other than the election of directors) by a voting group is approved if the vote's cast within the voting group favoring the action exceed the votes cast opposing the action, unless a greater or lesser number of affirmative votes is required by the articles of incorporation or by law. F.S.607.0725 (3)

**1.14 Voting for Directors.** Directors will be elected by a plurality of the votes cast by the shares entitled to vote in the election at a meeting at which a quorum is present. F.S. 607.0728

**1.15 Inspectors of Election.** Before each shareholder's meeting, the board of directors or president shall appoint one or more inspectors of election. On appointment, each inspector shall take and sign an oath to faithfully execute the duties of inspector at the meeting with strict impartiality and to the best of his or her ability. Inspectors shall determine the number of shares outstanding, the number of shares present at the meeting, and whether a quorum is present. The inspectors shall receive votes and ballots and determine all challenges and questions as to the right to vote. The inspectors shall count and tabulate all votes and ballots and determine the result. Inspectors shall perform other duties as are proper to conduct elections of directors and votes on other matters with fairness to all shareholders. Inspectors shall make a certificate of the results of elections of directors and votes on other matters. No inspector shall be a candidate for election as a director of the corporation. F.S. 607.0724(3)

## ARTICLE 2 -- BOARD OF DIRECTORS

**2.1 General Powers.** Except as provided in the articles of incorporation and by law, all corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation shall be managed under the direction of, its board of directors. F.S. 607.0801,607.0732(1), 607.0732(1)(h), 607.0831

31

**2.2 Number, Terms, Classification, and Qualification.** The board of directors of the corporation shall consist of ___2___ (number) persons. The number of directors may at any time and from time to time be increased or decreased by action of either the shareholders or the board of directors, but no decrease in the number of directors shall have the effect of shortening the term of any incumbent director. A director must be a natural person of at least 18 years of age, but need not be a citizen of the United States of America, a resident of Florida, or a shareholder of the corporation. Each director shall hold office until a successor has been elected and qualified or until an earlier resignation, removal from office, or death. F.S. 607.0802, 607.0803, and 607.0805

**2.3 Regular Meetings.** An annual regular meeting of the board of directors shall be held without notice immediately after, and at the same place as, the annual meeting of the shareholders and at such other time and place as may be determined by the board of directors. The board may, at any time and from time to time, provide by resolution the time and place, either within or without the state of Florida, for the holding of the annual regular meeting or additional regular meeting of the board without other notice than the resolution F.S 607.0820 & 607.0822

**2.4 Special Meetings.** The chair of the board, the president, or any two directors may call special meetings of the board of directors.

The person or persons authorized to call special meetings of the board may designate any place, either within or without the state of Florida, as the place for holding any special meeting of the board called by them. If no designation is made, the place of the meeting shall be the principal office of the corporation in Florida.

Notice of any special meeting of the board may be given by any reasonable means, oral or written, and at any reasonable time before the meeting. The reasonableness of notice given in connection with any special meeting of the board shall be determined in light of all pertinent circumstances. It shall be presumed that notice of any special meeting given at least two days before the meeting either orally (by telephone or in person), or by written notice delivered personally or mailed to each director at his or her business or residence address, is reasonable. If mailed, the notice of any special meeting shall be deemed to be delivered on the second day after it is deposited in the United States mail, so addressed, with postage prepaid. Notice by electronic means is written notice. If notice is given by telegram, it shall be deemed delivered when the telegram is delivered to the telegraph company. Neither the business to be transacted at, nor the purpose or purposes of, any special meeting need be specified in the notice or in any written waiver of notice of the meeting. F.S. 607.0820(3), 607.0822, 607.0141, 607.0141(7)

32

**2.5 Waiver of Notice of Meeting.** Notice of a meeting of the board of directors need not be given to any director who signs a written waiver of notice before, during, or after the meeting. Attendance of a director at a meeting shall constitute a waiver of notice of the meeting and a waiver of any and all objections to the place of the meeting, the time of the meeting, and the manner in which it has been called or convened, except when a director states, at the beginning of the meeting or promptly on arrival at the meeting, any objection to the transaction of business because the meeting is not lawfully called or convened. F.S. 607.0823

**2.6 Quorum.** A majority of the number of directors fixed by, or in the manner provided in, these bylaws shall constitute a quorum for the transaction of business; provided, however, that whenever, for any reason, a vacancy occurs in the board of directors, a quorum shall consist of a majority of the remaining directors until the vacancy has been filled. A quorum shall not consist of less than one-third of the directors prescribed by these bylaws or in the Articles of Incorporation. F.S. 607.0824,

**2.7 Effect of Action.** The act of a majority of the directors present at a meeting at which a quorum is present when the vote is taken shall be the act of the board of directors. F.S. 607.0824(3) & 607.0725(2)

**2.8 Presumption of Assent.** A director of the corporation who is present at a meeting of the board of directors or a committee of the board when corporate action is taken shall be presumed to have assented to the action taken, unless he or she objects at the beginning of the meeting, or promptly on arrival, to holding the meeting or transacting specific business at the meeting, or he or she votes against or abstains from the action taken. F.S. 607.0824(4)

**2.9 Action Without a Meeting.** Any action required or permitted to be taken at a meeting of the board of directors or a committee of it may be taken without a meeting if consent in writing, stating the action so taken, is signed by all the directors. Action taken under this section is effective when the last director signs the consent, unless the consent specifies a different effective date. A consent signed under this section shall have the effect of a meeting vote and may be described as such in any document. F.S. 607.0821

**2.10 Meetings by Means of Conference Telephone Call or Similar Electronic Equipment.** Members of the board of directors may participate in a meeting of the board by means of a conference telephone call or similar communications equipment if all persons participating in the meeting can hear each other at the same time. Participation by such means constitutes presence in person at a meeting. FRS. 607.0820(4)

**2.11 Resignation.** Any director may resign at any time by giving written notice to the corporation, the board of directors, or its chair. The resignation of any director shall take effect when the notice is delivered unless the notice specifies a later effective date, in which event the board may fill the pending vacancy before the effective date if it provides that the successor does not take office until the effective date. F.S. 607.0807

33

time, with or without cause, by action of the shareholders. If a director was elected by a voting group of shareholders, only the shareholders of that voting group may participate in the vote to remove that director. The notice of the meeting at which a vote is taken to remove a director must state that the purpose or one of the purposes of the meeting is the removal of the director or directors. F.S. 607.0808

**2.13 Vacancies.** Any vacancy in the board of directors, including any vacancy created by an increase in the number of directors, may be filled by the affirmative vote of a majority of the remaining directors although less than a quorum of the board of directors, or by the shareholders.

**2.14 Compensation.** Each director may be paid the expenses, if any, of attendance at each meeting of the board of directors, and may be paid a stated salary as a director or a fixed sum for attendance at each meeting of the board of directors or both, as may from time to time be determined by action of the board of directors. No such payment shall preclude any director from serving the corporation in any other capacity and receiving compensation for those services. F.S. 607.08101

## ARTICLE 3 -- COMMITTEES OF THE BOARD OF DIRECTORS

The board of directors, by resolution adopted by a majority of the full board, may designate from among its members an executive committee and one or more other committees, each of which, to the extent provided in the resolution, shall have and may exercise all the authority of the board of directors, except as prohibited by F.S. 607.0825(1).

Each committee must have two or more members who serve at the pleasure of the board. The board of directors, by resolution adopted in accordance with this article, may designate one or more directors as alternate members of any committee, who may act in the place and stead of any absent member or members at any meeting of the committee. F.S. 607.0825(3)

## ARTICLE 4 -- OFFICERS

**4.1 Officers.** The officers of the corporation shall be a president, a vice president, a secretary, a treasurer, and any other officers and assistant officers as may be deemed necessary, and as shall be approved, by the board of directors. The same person may hold any two or more offices. F.S. 607.08401

**4.2 Appointments and Term of Office.** The officers of the corporation shall be appointed annually by the board of directors at the first meeting of the board held after the shareholders' annual meeting. If the appointment of officers does not occur at this meeting, the appointment shall occur as soon thereafter as practicable. Each officer shall hold office until a successor has been duly appointed and qualified, or until an earlier resignation, removal from office, or death. This provision is optional.

34

**4.3 Resignation.** Any officer of the corporation may resign from his or her respective office or position by delivering notice to the corporation. The resignation is effective when delivered unless the notice specifies a later effective date. If a resignation is made effective at a later date and the corporation accepts the future effective date, the board of directors may fill the pending vacancy before the effective date if the board provides that the successor does not take office until the effective date. F.S. 607.0842(1)

**4.4 Removal.** Any officer of the corporation may be removed from his or her respective office or position at any time, with or without cause, by the board of directors. F.S. 607.0842(2)

**4.5 President.** The president shall be the chief executive officer of the corporation and shall, subject to the control of the board of directors, generally supervise and control all of the business and affairs of the corporation, and preside at all meetings of the shareholders, the board of directors, and all committees of the board of directors on which he or she may serve. In addition, the president shall possess, and may exercise, such power and authority, and shall perform such duties, as may from time to time be assigned to him or her by the board of directors, and as are incident to the offices of president and chief executive officer.   This provision is optional.

**4.6 Vice Presidents.** Each vice president shall possess, and may exercise, such power and authority, and shall perform such duties, as may from time to time be assigned to him or her by the board of directors. This provision is optional.

**4.7 Secretary.** The secretary shall keep the minutes of the proceedings of the shareholders and of the board of directors in one or more books provided for that purpose; see that all notices are duly given in accordance with the provisions of these bylaws or as required by law; be custodian of the corporate records and the seal of the corporation; and keep a register of the post office address of each shareholder of the corporation. In addition, the secretary shall possess, and may exercise, such power and authority, and shall perform the duties, as may from time to time be assigned to him or her by the board of directors and as are incident to the office of secretary.  This provision is optional.

**4.8 Treasurer.** The treasurer shall have charge and custody of, and be responsible for, all funds and securities of the corporation; receive and give receipts for money due and payable to the corporation from any source whatsoever; and deposit all such money in the name of the corporation in such banks, trust companies, or other depositaries as shall be used by the corporation. In addition, the treasurer shall possess, and may exercise, such power and authority, and shall perform such duties, as may from time to time be assigned to him or her by the board of directors and as are incident to the office of treasurer.  This provision is optional.

**4.9 Other Officers, Employees, and Agents.** Each and every other officer, employee, and agent of the corporation shall possess, and may exercise, such power and authority, and shall perform such duties, as may from time to time be assigned to him or her by the board of directors, the officer appointing him or her, and the officer or officers who may from time to time be designated by the board to exercise supervisory authority. This provision is optional.

**4.10 Compensation.** The board of directors shall fix the compensation of the officers of the corporation from time to time. This provision is optional.

## ARTICLE 5 -- CERTIFICATES OF STOCK

**5.1 Certificates for Shares.** The board of directors shall determine whether shares of the corporation shall be issued with or without certificates. If the shares are issued with certificates representing shares in the corporation, such certificates shall be signed (either manually or by facsimile) by the president or vice president and the secretary or an assistant secretary and may be sealed with the seal of the corporation or a facsimile thereof. A certificate that has been signed by an officer or officers who later cease to hold such office shall be valid. F.S. 607.0625

**5.2 Transfers of Shares; Ownership of Shares.** Transfers of shares of stock of the corporation shall be made only on the stock transfer books of the corporation, and only after the surrender to the corporation of the certificates representing such shares. Except as provided by F.S. 607.0721, the person in whose name shares stand on the books of the corporation shall be deemed by the corporation to be the owner thereof for all purposes, and the corporation shall not be bound to recognize any equitable or other claim to, or interest in, such shares on the part of any other person, whether or not it shall have express or other notice thereof.( This is an optional provision)

**5.3 Lost Certificates.** The corporation shall issue a new stock certificate in the place of any certificate previously issued if the holder of record of the certificate (a) makes proof in affidavit form that the certificate has been lost, destroyed, or wrongfully taken; (b) requests the issuance of a new certificate before the corporation has notice that the lost, destroyed, or wrongfully taken certificate has been acquired by a purchaser for value in good faith and without notice of any adverse claim; at the discretion of the board of directors, gives bond in such form and amount as the corporation may direct, to indemnify the corporation, the transfer agent, and the registrar against any claim that may be made on account of the alleged loss, destruction, or theft of a certificate; and (d) satisfies any other reasonable requirements imposed by the corporation.( This is an optional provision F.S. has no provision for lost, destroyed , or stolen certificates)

36

## ARTICLE 6 -- ACTIONS WITH RESPECT TO SECURITIES
## OF OTHER CORPORATIONS

Unless otherwise directed by the board of directors, the president or a designee of the president shall have power to vote and otherwise act on behalf of the corporation, in person or by proxy, at any meeting of shareholders of, or with respect to any action of shareholders of, any other corporation in which this corporation may hold securities and to otherwise exercise any and all rights and powers that the corporation may possess by reason of its ownership of securities in other corporations. F.S 607.0721(5)

## ARTICLE 7 -- AMENDMENTS

These bylaws may be altered, amended, or repealed, and new bylaws may be adopted, by action of the board of directors, unless the shareholders, in amending or repealing the bylaws generally or a particular bylaw provision, provide expressly that the board may not amend or repeal the bylaws or that bylaw provision. The shareholders of the corporation may alter, amend, or repeal these bylaws or adopt new bylaws even though these bylaws also may be amended or repealed by the board of directors.F.S. 607.1020

## ARTICLE 8 -- CORPORATE SEAL

The board of directors shall provide for a corporate seal that shall be circular and shall have the name of the corporation, the year of its incorporation, and the state of incorporation inscribed on it.

37



M&N
variedades corp.

1753 SW 8TH ST.                    MIAMI,FLORIDA 33135

PHONE : 786-547-5504

march 3, 2018

to whom it may concern:

hereby, we are authorizing  S.H VALET  SERVICE CORP. to use our property located
at 1753 sw 8th st. Miami, FL 33135 For valet services . S.H. VALET SERVICES CORP.
is handling the valet parking for " Ball & Chain " located at 1513 SW 8th Street
miami fl 33135. 305-643-7280

please feel free to contact me at 786-547-5504 or email at  josefausa@gmail.com

Sincerely,

Jose Zevallos,  Manager













20





14



12





4



18



















City of Miami
**THIS IS NOT A BILL**
**CERTIFICATE OF USE**
**FIRE SAFETY PERMIT**

NOTICE: This certificate is Non-Transferable. If you relocate, sell the business, or change the type of business a new certificate must be obtained from Building and Zoning at 444 S.W. 2nd Avenue, 4th Floor, Phone: (305)416-1189.

**BUSINESS NAME**   TODO ES CASH INC
**DBA**   TODO ES CASH INC
**DATE ISSUED:**
**VALID FROM:**   10/01/16  TO  09/30/17
**ACCOUNT NUMBER:**   13045
**SERVICE ADDRESS:**   1747 SW 8 ST
**APPROVED USE:**   CU25 -Industrial - Products & Services
Gift / Jewelry store
**COMMENTS**
**RESTRICTIONS**

Restrictions on this CU are informational only. For all restrictions, please contact the Office of Zoning



City of Miami
**THIS IS NOT A BILL**
**CERTIFICATE OF USE**
**FIRE SAFETY PERMIT**

NOTICE: This certificate is Non-Transferable. If you relocate, sell the business, or change the type of business a new certificate must be obtained from Building and Zoning at 444 S.W. 2nd Avenue, 4th Floor, Phone: (305)416-1189.

**BUSINESS NAME**   SAMMY JEWELRY
**DBA**   SAMMY JEWELRY
**DATE ISSUED:**   06/03/99
**VALID FROM:**   10/01/17  TO  09/30/18
**ACCOUNT NUMBER:**   36453
**SERVICE ADDRESS:**   1755 SW 8 ST
**APPROVED USE:**   CU03 -General Commercial
Gift / Jewelry store
**COMMENTS**
**RESTRICTIONS**

Restrictions on this CU are informational only. For all restrictions, please contact the Office of Zoning



**Javier Armenteros**

| | |
|---|---|
| **From:** | Gomez Jr., Francisco (Frank) <FGomez@miamigov.com> |
| **Sent:** | Tuesday, March 6, 2018 1:29 PM |
| **To:** | Javier Armenteros |
| **Subject:** | RE: Valet Permit Application for Ball & Chain |

Good Afternoon Javier,

The certificate is adequate.

Thanks,

Frank Gomez, PIAM, CPII
Property & Casualty Manager
City of Miami
Risk Management
(305) 416-1740 Office
(305) 416-1760 Fax
fgomez@miamigov.com



*"Serving, Enhancing, and Transforming our Community"*

**From:** Javier Armenteros [mailto:jarmenteros@miamiparking.com]
**Sent:** Tuesday, March 06, 2018 1:25 PM
**To:** Santana Jr., Juvenal <jsantana@miamigov.com>; Gomez Jr., Francisco (Frank) <FGomez@miamigov.com>; Cejas, Devin <DCejas@miamigov.com>; 2369@miamipolice.org; Rodriguez, Ana (NET) <ARodriguez@miamigov.com>; Watts-Slaton, Michele <MWatts@miamigov.com>; Orta, Lazaro <LOrta@miamigov.com>; Gomez Jr., Luis <LGomez@miamigov.com>; Sierra, Daniel <dsierra@miamigov.com>
**Subject:** Valet Permit Application for Ball & Chain

Good afternoon,

Please find attached for your review the valet permit application for Ball & Chain located at 1513 Sw 8 St along with a City of Miami approval/denial form for each department.

Feel to reach me at the number below if you have any questions or concerns.

Thank you,

1

# City of Miami



ARTHUR NORIEGA, V
City Manager

May 12, 2021

Matt Malone
Destileria Caneca, LLC
1380 SW 8 Street
Miami, FL  33135

**Re: Alcohol Reservation Letter for a DD(CD) Manufacturer of Spirits / Craft Distillery Alcohol License located at 1380 SW 8 Street, Suite 3 within the 8th Street Specialty District.**

Dear Mr. Malone:

The Office of Zoning has received your request for an Alcohol Reservation Letter ("Reservation") dated December 11, 2020, for the property located at 1380 SW 8 Street, Suite 3, Miami, FL 33135 for a DD(CD) Manufacturer of Spirits / Craft Distillery Alcohol License within the 8th Street Specialty District.

After a careful review of the liquor survey by the Office of Zoning, your proposed location does not meet the distance separation requirements in Section 4-5 of the Miami Code of Ordinances due to being located within 500' feet from a School, at approximately 405' feet and within 300' of a Religious Facility, at approximately 295' feet.

Please be advised that a reservation for your proposed Alcoholic Beverage Service Establishment cannot be issued at this time and your request is denied.

If you have any questions, please email Mr. Rafael Rodriguez, Jr. at rafaelrodriguez@miamigov.com.

Sincerely,

Daniel S. Goldberg, Esq.
Director // Zoning Administrator

Cc: Zoning Pending Applications File
PZ-21-10195

# City of Miami



March 12, 2019                                          CR:  CE2019004381

LITTLE HAVANA ARTS BLDG LLC                    LITTLE HAVANA ARTS BLDG LLC

1637 SW 8 ST #200                                  1637 SW 8 ST #200
MIAMI, FL  33135                                   MIAMI, FL  33135

1513 SW 8 ST                                       Folio:  0141020066210

## NOTICE OF VIOLATION Potential Property Lien

Subject Property:  1513 SW 8 ST        Folio:  0141020066210

Dear LITTLE HAVANA ARTS BLDG LLC:

You are notified that an inspection of the above property discloses that you are in violation of the following laws, including:
VIOL REF# 2104-WORK PERFORMED WITHOUT A FINALIZED PERMIT        City Code SEC 10-3
(FBC 104, 105)ZON ORD SEC 2102
            Correction: Work completed without a permit (overhang attached to the structure, front windows, interior remodeling, stage/band shell).

You are directed to correct said violation(s) by March 22, 2019 and to notify the Inspector that the violation(s) has been corrected.  If the violation(s) has not been corrected with the approval of the inspector within the specified time period, you will be commanded to appear before the Code Enforcement Board.  If you are found guilty and fail to correct said violation(s), the Code Enforcement Board can impose fines of up to $500.00 per day for each day the violation(s) remains uncorrected beyond the time period provided.

UNPAID FINES WILL BECOME LIENS AGAINST THIS PROPERTY AND ALL PROPERTIES YOU OWN, AND WILL BE RECORDED IN THE PUBLIC RECORDS OF DADE COUNTY.  LIENS WHICH REMAIN UNPAID FOR THREE (3) MONTHS MAY BE FORECLOSED IN COURT.  In addition, the Certificate of Use and Occupational License of any business occupying this property may be suspended or withheld.  Operating a business without all required licenses is illegal under state and city law, and is punishable by criminal arrest and/or closing the business.

Name of Inspector:  Yacmany Salvatierra
Office Address: 444 SW 2 AV Miami, FL 33130
Office Phone Number: (305) 329-4770
Email: Ysalvatierra@miamigov.com

If you have any questions, please contact the inspector at the above listed office phone number Monday to Friday.



_____
Yacmany Salvatierra
City of Miami Code Enforcement Inspector

## City of Miami



March 28, 2019

LA GRAN FIESTA LLC

1637 SW 8 ST 200
MIAMI, FL  33135

521 SW 8 ST

CR:  CE2019005428

LA GRAN FIESTA LLC

1637 SW 8 ST 200
MIAMI, FL  33135

Folio:  0102040801180

### NOTICE OF VIOLATION Potential Property Lien

Subject Property: 521 SW 8 ST       Folio: 0102040801180

Dear LA GRAN FIESTA LLC:

You are notified that an inspection of the above property discloses that you are in violation of the following laws, including:
VIOL REF# 2104-WORK PERFORMED WITHOUT A FINALIZED PERMIT          City Code SEC 10-3
(FBC 104, 105)ZON ORD SEC 2102
          Correction: Must pull/obtain building permit for the work done in the 2nd floor, Contact City of Miami
Building Dept. at 444 SW 2 Av Miami, FL 33130.
VIOL REF# 2212-FAILURE TO PROVIDE THE MINIMUM OFFSTREET PARKING IN SD2 ZONING
DISTRICT.         Miami 21 SEC 3.6.5

You are directed to correct said violation(s) by April 08, 2019 and to notify the Inspector that the violation(s) has been corrected.  If the violation(s) has not been corrected with the approval of the inspector within the specified time period, you will be commanded to appear before the Code Enforcement Board.  If you are found guilty and fail to correct said violation(s), the Code Enforcement Board can impose fines of up to $500.00 per day for each day the violation(s) remains uncorrected beyond the time period provided.

UNPAID FINES WILL BECOME LIENS AGAINST THIS PROPERTY AND ALL PROPERTIES YOU OWN, AND WILL BE RECORDED IN THE PUBLIC RECORDS OF DADE COUNTY.  LIENS WHICH REMAIN UNPAID FOR THREE (3) MONTHS MAY BE FORECLOSED IN COURT.  In addition, the Certificate of Use and Occupational License of any business occupying this property may be suspended or withheld.  Operating a business without all required licenses is illegal under state and city law, and is punishable by criminal arrest and/or closing the business.

Name of Inspector:  Yacmany Salvatierra
Office Address: 444 SW 2 AV Miami, FL 33130
Office Phone Number: (305) 329-4770
Email: Ysalvatierra@miamigov.com

If you have any questions, please contact the inspector at the above listed office phone number Monday to Friday.



Page 1 of 1

Yacmany Salvatierra
City of Miami Code Enforcement Inspector

## City of Miami



July 13, 2021

CR: CE2021013580

LITTLE HAVANA ARTS BLDG LLC

LITTLE HAVANA ARTS BLDG LLC

1637 SW 8 ST #200
MIAMI, FL 33135  33135

1637 SW 8 ST #200
MIAMI, FL 33135  33135

1501 SW 8 ST

Folio: 0141020066210

### NOTICE OF VIOLATION Potential Property Lien

Subject Property:  1501 SW 8 ST       Folio: 0141020066210

Dear LITTLE HAVANA ARTS BLDG LLC:

You are notified that an inspection of the above property discloses that you are in violation of the following laws, including:
VIOL REF# 2164-Erection, construction, posting, etc. of a sign without a FINALIZED PERMIT.   Miami 21 Article 7 and 10
          Correction: Review of property history shows "Ball & Chain" signs constructed without permits. Obtain permits for 2 signs in front and 1 sign along SW 15 Ave.

You are directed to correct said violation(s) by July 23, 2021 and to notify the Inspector that the violation(s) has been corrected.  If the violation(s) has not been corrected with the approval of the inspector within the specified time period, you will be commanded to appear before the Code Enforcement Board.  If you are found guilty and fail to correct said violation(s), the Code Enforcement Board can impose fines of up to $105.00 per day for each day the violation(s) remains uncorrected beyond the time period provided.

UNPAID FINES WILL BECOME LIENS AGAINST THIS PROPERTY AND ALL PROPERTIES YOU OWN, AND WILL BE RECORDED IN THE PUBLIC RECORDS OF DADE COUNTY.  LIENS WHICH REMAIN UNPAID FOR THREE (3) MONTHS MAY BE FORECLOSED IN COURT.  In addition, the Certificate of Use and Occupational License of any business occupying this property may be suspended or withheld.  Operating a business without all required licenses is illegal under state and city law, and is punishable by criminal arrest and/or closing the business.

Name of Inspector:  Kristopher Adams
Office Address: 444 SW 2 AV Miami, FL 33130
Cell Phone Number: (786) 696-0371
Office Phone Number: (305) 416-2087
Email: KAdams@miamigov.com

If you have any questions, please contact the inspector at the above listed office phone number Monday to Friday.





Kristopher Adams
City of Miami Code Enforcement Inspector

ARTICLE IX. - VALET PARKING

> *Footnotes:*
>
> **--- (8) ---**
>
> **Editor's note—** *Ord. No. 13568, § 1, adopted October 22, 2015, redesignated the former article VIII as article IX.    Ord. No. 12588, § 1, adopted September 23, 2004, amended article VIII in its entirety to read as herein set out. Formerly, article VIII pertained to similar subject matter and derived from Ord. No. 11483, § 2, adopted April 10, 1997; Ord. No. 11678, § 2, adopted June 23, 1998; Ord. No. 11812, § 2, adopted July 13, 1999.*

Sec. 35-301. - Purpose; permit and license required.

  (a)  The purpose of this article is to:

      (1)  Reduce the disruption of vehicular and pedestrian traffic that valet parking service operations may create;

      (2)  Minimize hazardous conditions that valet parking service operations may create in order to protect the health, safety and welfare of the public;

      (3)  Promote the safe and legal operation of valet parking services for the use and convenience of businesses and the general public.

  (b)  No person, establishment or entity shall conduct valet parking service on public right-of-way as herein defined without first obtaining a permit from the director of the department of off-street parking and paying the fee therefor to the chief financial officer of DOSP or his/her designee.

  (Ord. No. 12588, § 1, 9-23-04; Ord. No. 13676, § 2, 4-27-17)

Sec. 35-302. - Definitions.

*Department* or *DOSP* means the city department of off-street parking also known as Miami Parking Authority ("MPA").

*Director* means director of the city department of off-street parking.

*Officer* means police, parking enforcement specialist, code enforcement officer.

*Permit* means the receipt of a valet parking permit under the terms and provisions of this article.

*Permittee/operator* means valet company and its employees.

*Tandem parking* means the storage of vehicles, irrespective of how configured, that requires moving at least one other vehicle to reach the vehicle sought.

*Valet parking service area or ramping* means the public right-of-way to be utilized for the valet parking

service. This excludes the use of the T3 transect zone right-of-way areas unless associated with an
accompanying T3 transect zone special event permit as contemplated in section 35-303.

(Ord. No. 12588, § 1, 9-23-04; Ord. No. 14138, § 11, 2-9-23; Ord. No. 14142, § 2, 2-9-23)

### Sec. 35-303. - Boundaries.

Valet parking service shall only be permitted within transect zones T4-L and O, T5-L and O, T6-L and O,
C, and D. Furthermore, a valet parking service shall only be permitted within all T3, T4-R, T5-R and T6-R
transect zones by obtaining a special event temporary permit as referred to in section 35-315. Valet
parking services shall not use the right-of-way in T3 transect zones for the parking of any vehicles from
their stands located in other transect zones unless associated with a special event permit issued for a T3
transect zone event.

(Ord. No. 12588, § 1, 9-23-04; Ord. No. 14142, § 2, 2-9-23)

### Sec. 35-304. - Permit fee; exceptions.

The biannual permit fee for establishing or maintaining a valet parking service shall be $500.00 from
the effective date, paid to the department in the amount of $500.00 plus the following ramping fees:

Ramping fee:

(1) If the operation of the valet parking service requires the rental of metered or non-metered
parking spaces or area, the permittee/operator shall also pay a ramping fee of the rate
established by DOSP per metered parking space or the rate for every 20 linear feet per day
to the department. All rates are stated in section 35-194 of the parking rate ordinance.

(b) The city manager, the director, or their designees, may waive said permit fee and ramping
fee for valet parking service exclusively serving a city-owned and operated facility.

(Ord. No. 12588, § 1, 9-23-04)

### Sec. 35-305. - Permit application.

(a) Application for a permit to conduct a valet parking service shall be made at the department in
a form deemed appropriate by the director and city attorney. Such application shall include,
but not be limited to, the following information:

(1) Name and address of the proposed permittee/operator. If incorporated,
permittee/operator must provide copies of the articles of incorporation and bylaws;

(2) Copy of a valid certificate of use and local business tax receipt issued by the city;

(3) Copy of current liability insurance in accordance with the provisions of section 35-308 of

this code;

    (4)  Site plan (at an appropriate scale) showing the proposed tandem parking arrangement, if any, the lay-out and dimensions of the existing public right-of-way and adjacent private property, proposed location, size of proposed mobile stands, tables, chairs, umbrellas, keybox, location of doorways, location of trees, parking meters, bus shelters, sidewalk benches, trash receptacles, driveways, and any other sidewalk obstruction either existing or proposed within the pedestrian areas. Under no circumstances shall permanent structures or equipment be permitted. The site plan shall clearly identify the valet parking service area, and shall also show the proposed location, number of parking stalls and distance to the off-street parking facility providing the parking spaces for the valet parking service;

    (5)  Photographs, drawings, or manufacturers' brochures fully describing the appearance of all proposed mobile stands, tables, chairs, umbrellas, keybox or other objects related to the valet parking service; and

    (6)  Copy of the agreement/contract for the provision of the off-street parking spaces that includes identification of the location of vehicle storage spaces.

  (b)  Applications shall be accompanied by an annual nonrefundable application fee of $150.00.

  (c)  Applications shall be forwarded by the director to all city departments which may be affected by the granting of the permit, including but not limited to, resilience and public works, building planning and zoning, police, and risk management. The city departments shall review and submit comments on the application(s) to the department within 45 calendar days.

  (d)  Within 50 calendar days of receipt of a completed application, the director shall issue a letter of intent to approve or deny the permit. The director shall provide a copy of the permit approval or denial to the finance department when the decision is made.

(Ord. No. 12588, § 1, 9-23-04; Ord. No. 12885, § 1, 2-8-07; Ord. No. 13792, § 1, 10-11-18; Ord. No. 14138, § 11, 2-9-23)

Sec. 35-306. - Permit requirements, restrictions and when not permitted.

  (a)  Permits shall be issued only for pedestrian areas and public right-of-way under the maintenance jurisdiction of the city.

  (b)  Valet parking service shall be operated only by commercially licensed and insured vendors of parking services holding valid city local business tax receipts.

  (c)  Permits shall be issued only to permittees/operators that provide certification, in a format approved by the director and city attorney, that they have procured sufficient accessible off-street parking spaces for their valet parking services. On-street parking spaces shall not be

included in the computation of sufficient parking spaces for valet parking.

    (d)  A permit shall not be issued when another valet parking permit has already been issued for a valet parking area immediately adjacent to the proposed permit area. Furthermore a permit shall not be issued when the proposed permit area is on the same side of one city block of another valet parking area, unless authorized by the resilience and public works director.

    (e)  Permits or a copy of a valid permit must be at valet ramping area at all times.

(Ord. No. 12588, § 1, 9-23-04; Ord. No. 12885, § 1, 2-8-07; Ord. No. 13792, § 1, 10-11-18)


Sec. 35-307. - Standards and criteria for application review.

The following standards and criteria shall be used in reviewing the application required in section 35-305:

    (1)  The location of the valet parking service area is restricted to existing designated on-street parking spaces.

    (2)  The width of the valet parking service area shall comprise a minimum of three parking spaces (approximately 60 linear feet).

    (3)  Mobile stands, tables, chairs, umbrellas, keyboxes and any other objects necessary for the operation of the valet parking service shall be located on the sidewalk in such a manner that a minimum six-foot wide clear pedestrian path is maintained at all times. In areas of congested pedestrian activity, the director is authorized to require a wider pedestrian path, as circumstances dictate. Under no circumstances shall permanent structures or equipment be permitted, unless authorized by the resilience and public works director.

    (4)  Mobile stands, tables, chairs, umbrellas, keyboxes and any other objects necessary for the operation of the valet parking service shall be of quality, design, materials, and technique, both to ensure the safety and convenience of users, and to enhance the visual and aesthetic quality of the urban environment. Design, materials, and colors shall be sympathetic and harmonious with an urban environment. The city manager's office or its designated city department and the director of the city planning and zoning department shall be responsible for the review and approvals required by this subsection.

    (5)  Permits will not be issued where the drop-off and pick-up of vehicles interferes with the safe operation of driveways, street intersections, crosswalks or other prohibited areas.

    (6)  Permits will not be issued where stacking of drop-off and pick-up of vehicles interferes with the safe traffic operation on adjacent streets or unduly delays normal traffic operations.

    (7)  Tandem storage of vehicles arrangements will be evaluated for meeting technical

standards.

    (8)  The permittee/operator shall abide by the terms and conditions set forth in the guides and standards developed by the department, as amended. The entire permitting process shall be completed within 50 calendar days.

(Ord. No. 12588, § 1, 9-23-04; Ord. No. 13676, § 2, 4-27-17; Ord. No. 13792, § 1, 10-11-18; Ord. No. 14138, § 11, 2-9-23)

Sec. 35-308. - Liability and insurance.

    (a)  Prior to the issuance of a permit, the permittee/operator shall furnish the director with a signed statement, approved by the city attorney, that the permittee/operator shall hold-harmless, indemnify and defend the city, its officers and employees and the department and board of directors, their officers and employees for any claims for damages to property or injury to persons which may be occasioned by any activity carried on under the terms of the permit.

    (b)  Permittee shall furnish and maintain such public liability and property damage insurance to protect from all claims and damage to property or bodily injury, including death, which may arise from operations under the permit or in connection therewith. Such insurance shall be provided from an insurance company with an A.M. Best rating of not less than "A" and a financial strength rating of not less than "X," acceptable to the risk management division, and shall provide coverage of not less than $1,000,000.00 for bodily injury, and property damage respectively per occurrence. Such insurance shall be without prejudice to coverage otherwise existing therein and shall name as additional insured the city, DOSP and board of directors, its officers and employees, and shall further provide that the policy shall not terminate or be canceled prior to the completion of the permit period without 45 days written notice to the risk management division and the director at the address shown in the permit. Additionally, permittee shall provide "garage keepers" legal liability insurance providing collision and comprehensive coverage for vehicles under the control of the valet parking operator with a minimum of $500.000 per location with a maximum self-insured retention (SIR) or deductible of $1,000.00.

    (c)  The permittee/operator shall provide proof of all required insurance prior to receiving the permit.

(Ord. No. 12588, § 1, 9-23-04)

Sec. 35-309. - Form and conditions of permit.

The permit shall be issued on a form deemed suitable by the director and city attorney. In addition to

naming the permittee/operator, the conditions set forth in preceding sections of this article, and any other information deemed appropriate by the director, the permit shall also contain, the following conditions:

(1)  Each permit shall be effective for six months, subject to biannual renewal. Any renewal of a permit shall require compliance with all requirements for permits in the same manner as an original application.

(2)  The permit issued shall be personal to the permittee only and shall not be transferable in any manner.

(3)  The permit may be temporarily suspended by the director for a "community" or "special event." The permittee shall be entitled to a pro rata credit on the next permit payment due for any permit suspended a full business day or longer pursuant solely to this subsection. Advance notice will be provided to permittees whenever practical.

(4)  The director may require the temporary removal or relocation of valet parking service when street, sidewalk, or utility repairs necessitate such action; if not able to relocate, DOSP will credit the permittee/operator for number of days out of service.

(5)  The department of fire-rescue or the police department may immediately remove or relocate all or parts of the valet parking service in emergency situations. Officers of the police department, or such special officers as are assigned by the chief of police or DOSP, are hereby authorized to direct traffic, including drop-off and pick-up vehicles, as conditions may require, notwithstanding the provisions of this chapter or other applicable traffic ordinances.

(6)  Under no circumstances shall the city, the department and the board of directors, and its officers and employees be deemed responsible or liable in any way for any damage or loss resulting from the removal of the permittee/operator equipment and other objects necessary for the operation of the valet parking service during emergencies. Furthermore, the permittee/operator agrees and acknowledges by accepting a permit issued pursuant to this article that the city, the department and the board of directors are to be held harmless in connection with its actions under this section.

(7)  The permit shall be specifically limited to the area shown on the approved site plan attached to and made part of the permit.

(8)  The permittee/operator shall use positive action to assure that its use of the sidewalk in no way interferes with sidewalk users or limits their free unobstructed passage.

(9)  Mobile stands, tables, chairs, umbrellas, keyboxes and any other objects necessary for the operation of the valet parking service shall be maintained with a clean and attractive appearance and shall be in good repair at all times and removed at the close of business

Case 1:18-cv-24190-RS   Document 506-19   Entered on FLSD Docket 06/30/2023   Page 60 of 168

each day.

    (10)  The sidewalk area covered by the permit shall be maintained in a neat and orderly appearance at all times and the area shall be cleared of all debris on a periodic basis during the day, and again at the close of each business day.

    (11)  No advertising signs shall be permitted on the sidewalk or in the public right-of-way, this shall not prohibit the use of one business identification sign located on the sidewalk, bearing no advertising and not exceeding five square feet in area, to be affixed to the valet parking service stand to identify "Valet Parking."

    (12)  No mobile stands, tables chairs, umbrellas, keyboxes nor any other objects necessary for the operation of the valet parking service shall be attached, chained, or in any manner affixed to any tree, post, sign, or other fixtures, curb or sidewalk within or near the permitted area. All valet parking service objects necessary for the operation of the valet parking service, other than required traffic cones, shall be located no closer than 30 inches behind the face of curb on the sidewalk.

    (13)  The permit covers only the pedestrian and public right-of-way. Valet parking services and objects necessary for the operation of the valet parking service located on private property shall be governed by other applicable city regulations.

    (14)  The permittee/operator shall provide written notification to the director and the chief of police when operation of the valet parking service begins. Said notice shall be delivered within 24 hours of such commencement.

    (15)  Tandem parking of vehicles shall be limited to a maximum of three vehicles (i.e. a maximum of two vehicles shall be required to be moved to reach the vehicle sought).

    (16)  The permittee/operator shall have available on-site for display upon request a valid local business tax receipt and valet parking permit issued pursuant to this article.

  (Ord. No. 12588, § 1, 9-23-04; Ord. No. 12885, § 1, 2-8-07)

Sec. 35-310. - Valet permittees/operators code of conduct; required customer protection regulations.

    Permittees/operators shall require their employees and independent contractors to meet the following requirements:

    (1)  All employees who operate motor vehicles shall have in their possession a valid Florida Driver's License in good standing and shall abide by all city, Miami-Dade County and state traffic regulations.

    (2)  All employees shall be in similar uniforms.

    (3)  All employees shall wear on their uniform a name tag identifying the employee's name and

the name of the valet operator/company.

(4) All employees shall perform their duties in a courteous and professional manner.

(5) All employees must comply with the requirements of this article and all applicable laws, statutes, ordinances, rules and regulations relating to traffic safety.

(6) Pricing for services shall be identified on any "signage" used by the valet operator. The size print of the foregoing information shall be equal to the largest size print used on any "signage" used to identify the service or valet operator. Claim tickets shall also indicate the price for the service. The print size of the foregoing shall be equal to that used for any other information displayed on the ticket.

(7) The claim ticket shall identify the valet operator's company name, correspondence address and a phone number for questions/complaints. All of the foregoing print shall be of equal size.

(Ord. No. 12588, § 1, 9-23-04)


Sec. 35-311. - Operational regulations and restrictions for valet parking service.

(a) The public on-street/curbside parking spaces, metered or non-metered, shall only be used for ramping of vehicles. Ramping of vehicles shall consist of allowing the customer to enter or exit a vehicle and to turn it over to or retrieve it from a valet parking operator employee. Ramping shall only be permitted and operated in the public on-street/curbside spaces provided by the department for ramping. There shall be no storage of vehicles in the area used for ramping. A vehicle will be considered stored if it remains in the ramping area for more than ten minutes. Ramping spaces shall not be blocked by any type of sign, structure or other type of object. These spaces shall not be cordoned off by any type of signage, rope or barrier of any kind;

(b) The permittee/operator shall posses a valid local business tax receipt to operate the valet parking service within the city;

(c) The permittee/operator shall maintain a key control booth at all valet parking locations until all cars have been claimed; or the permittee/operator shall have a 24 hour phone number for after hours vehicle pick up information.

(d) The permittee/operator shall not load or unload passengers within traffic lanes that are open to through traffic;

(e) The valet parking service shall not interfere with the regular flow of vehicular or pedestrian traffic.

(Ord. No. 12588, § 1, 9-23-04; Ord. No. 12885, § 1, 2-8-07)


Sec. 35-312. - Department denial, revocation, or suspension of permit; removal of equipment or personal

property of the permittee/operator and storage fees.

(a) The director may deny, revoke, or suspend a permit for any valet parking service authorized in the city if it is found that:

    (1) The permittee/operator has not maintained required insurance;

    (2) The director determines that the operation of a valet parking service, due to changing or changed conditions of pedestrian or vehicular traffic, cause congestion necessitating removal of valet parking service which endangers the health, safety or welfare of persons or property; unreasonably interferes with pedestrian or vehicular traffic; unreasonably interferes with the use of any pole, sign, fire hydrant, traffic signal or other object already permitted at or near the valet parking service area; or otherwise not in the public interest; or

    (3) The permittee/operator has failed to correct violations of this article or conditions of the permit within three days of the Director's notice of same being delivered in writing to the permittee at the address shown on the permit application;

    (4) If permittee/operator is found in violation of the same offense three times within a permit period;

    (5) The permittee/operator made any false statements or omission of material fact on the application, site plan or elsewhere in connection with securing a permit.

    (6) The permittee/operator failed to properly pay and/or report operational, administrative, rental fees, and/or parking facility surcharges pursuant to sections 35-194, 35-311, and 35-346 herein or any other applicable section of this Code.

(b) Stands, tables, chairs, umbrellas, key boxes and other objects necessary for the operation of the valet parking service may be removed by the department or city, and a reasonable fee charged for labor, transportation, and storage, should the permittee/operator fail to remove said items at the close of business on a daily basis. Under no circumstances shall the city, the department and the board of directors, and its officers and employees be deemed responsible or liable in any way for any damage or loss resulting from the removal of the permittee/operator equipment and other objects necessary for the operation of the valet parking service. Furthermore, the permittee/operator agrees and acknowledges by accepting a permit issued pursuant to this article that the city, the department and the board of directors are to be held harmless in connection with its actions under this section.

(c) Upon a finding of a violation by the director based on subsection (a)(6) herein and a finding of guilt after a hearing by the code enforcement board pursuant to chapter 2, article X of the City Code, the permittee/operator shall pay treble fees; shall have its permit, certificate of use, temporary certificate of use, and/or business tax receipt denied, revoked, or suspended for a

period of two years; be subject to any penalties applicable pursuant to section 35-347 herein; and/or be subject to debarment pursuant to section 18-107 of the City Code.

    (d)  Upon denial or revocation, the director shall give notice of such action to the applicant or the permittee/operator in writing stating the action which has been taken and the reason thereof. If the action of the director is based on subsection(s) (a)(1) or (2) of this section, the action shall be effective upon giving such notice to permittee. Otherwise, such notice application shall become effective within ten calendar days unless appeal to the city commission is made.

(Ord. No. 12588, § 1, 9-23-04; Ord. No. 13809, § 2, 11-15-18)

## Sec. 35-313. - Appeals of permit denial or revocation.

    (a)  Appeals shall be initiated within ten days of a permit denial or revocation by filing a written notice of appeal with the city manager, and a copy of same delivered the same day to the director. Any revocation effective immediately may also be appealed to the city commission by such filing within ten calendar days.

    (b)  The city manager shall place the appeal on the first non-planning and zoning city commission agenda for which proper notice can be given to the permittee, and shall notify the director thereof. At the hearing the city commission may modify, grant or deny the appeal, and the decision of the city commission shall be final subject to appeal to the appropriate court of competent jurisdiction, according to the Florida Rules of Civil Procedure.

    (c)  The filing of a notice of appeal by a permittee shall not stay an order by the director to remove valet parking service or parts thereof. Vestiges of the valet parking service shall be removed immediately, pending disposition of the appeal and final decision of the city commission.

(Ord. No. 12588, § 1, 9-23-04)

## Sec. 35-314. - Enforcement; fine schedule and penalty provisions.

    (a)  *Enforcement.* The officers shall enforce the provisions of this article. This shall not preclude other enforcement agencies or regulatory bodies from any action as necessary to ensure compliance with this article and all applicable laws. For any violation of a provision of this article the officer shall issue a notice of violation/citation to the permittee/operator. The notice shall state the nature of the violation, amount of fine, instructions and due date for paying the fine, notice that the violation may be appealed by requesting an administrative hearing within ten calendar days after service of the notice and that failure to appeal the violation within the ten calendar days, shall constitute an admission of the violation and a waiver of the right to appeal.

    (b)  *Additional enforcement.* As an additional means of enforcement, the department may seek

injunctive relief and/or the city may follow procedures to revoke local business tax receipts as set forth elsewhere in the City Code when there are repeat violations of this article. Additionally, the department, may withhold issuance of any new valet permits and suspend current valet parking permits until past due violations are paid in full.

   (c) *Rights of violator: payment of fine; right to appeal.* For civil infractions or notice of violations pursuant to section 2-811 et seq., of the City Code, the citing officer shall issue either a civil infraction or a notice of violation which, upon adjudication by the code enforcement board, can lead to daily fines of up to $1,000.00 per diem for a first-time offender or up to $5,000.00 per diem for a repeat violator.

   (d) *Recovery of unpaid fines.* The department may institute proceedings in a court of competent jurisdiction to compel payment of civil penalties. A certified copy of an order imposing a fine may be recorded in the public records.

   (e) *Civil fines.* The following civil fines shall be imposed for each violation unless a notice of violation is issued. Fines will be paid to the department with one-third remaining with the department and two-thirds being forwarded to the city finance department. To determine the exact nature of the activity prescribed or required the specifics of this article must be examined The below table does not reflect possible per diem fine amounts based upon the issuance of a notice of violation under section 2-814 through 2-820 of the City Code. Civil fines shall issue in the amount as follows and may be issued every 24 hours should the violation remain outstanding:

| | | |
|---|---|---|
| (1) | Unauthorized/illegal ramping | $500.00 per offense |
| (2) | Unauthorized/illegal storage | $500.00 per offense |
| (3) | Lapse of insurance (from date of lapse) | $150.00 per day |
| (4) | Operation without permit | $500.00 per day |
| (5) | No name tag | $100.00 per offense |
| (6) | No uniform | $100.00 per offense |
| (7) | No valid FL drivers license | $500.00 per offense and immediate removal of the employee from service. |

| (8)  Violation of guides and standards | $250.00 per offense |
| (9)  Other violation of this article | $250.00 per offense. |

(Ord. No. 12588, § 1, 9-23-04; Ord. No. 12885, § 1, 2-8-07; Ord. No. 14142, § 2, 2-9-23)

Sec. 35-315. - Special events and residential areas.

(a) *Valet service—special event.* Valet services operating for a special event may apply for a special event permit at DOSP. Special event parking shall be restricted to any event occurring no more than twice per year and lasting no longer than three days in length. The special event permit will allow the valet operator to request from the department, additional ramping and/or storage space, if available, as long as it does not reduce the number of parking spaces needed to serve the general public in the area of the request.

(b) *Valet service—residential.* Valet service may be provided for non-commercial uses, including private functions in residentially zoned areas for a one day. Valet operators must meet the same criteria as a regular day to day valet operation as referenced in the permit application (see section 35-305). Valet operators must complete a temporary valet parking permit form and submit this form to DOSP 14 days prior to the scheduled event.

*Note:* Temporary valet parking permit requests submitted within less than 14 working days of a scheduled event will only be accepted for situations deemed as an emergency. An emergency is defined as a situation or occurrence of a serious nature, developing suddenly and unexpectedly within less than 14 working days of the event and demanding immediate attention.

The following requirements must be satisfied:

(1) *Ramping.* Valet ramping may be provided either on private property at the location to be serviced or on public property but not in a T3 transect zone. Ramping on public property shall not occur in any other location than the public on-street/curbside parking spaces provided for ramping. Ramping from a moving lane of traffic is strictly prohibited unless authorized by the city. The ramping area shall be determined as stated in section 35-304, unless specified otherwise in this article.

(2) *Storage.* Storage of vehicles must be in compliance with section 35-305. Storage of vehicles on public right-of-way is strictly prohibited, unless authorized by DOSP.

a. *Storage on public right-of-way.* Valet operators may request the use of public right-of-

way for storage under the following conditions:

1.  Private or public storage (parking lot and/or garage) is not available within 2,500 feet of the location to be serviced.

2.  All prohibited parking regulations (fire hydrants, crosswalks, etc.) are strictly enforced.

3.  T3 transect zones may not be used for temporary or permanent storage of vehicles.

(Ord. No. 12588, § 1, 9-23-04; Ord. No. 14142, § 2, 2-9-23)

Secs. 35-316—35-340. - Reserved.

ARTICLE X. - PARKING FACILITIES SURCHARGE

> *Footnotes:*
>
> *--- (9) ---*
>
> ***Editor's note—*** *Ord. No. 13568, § 1, adopted October 22, 2015, redesignated the former article IX as article X.   Ord. No. 12563, adopted July 22, 2004, repealed article IX in its entirety, and §§ 3—9 of said ordinance reenacted provisions to read as herein set out. Formerly, article IX pertained to similar subject matter and derived from Ord. No. 11813, §§ 3—9, adopted July 13, 1999.*

Sec. 35-341. - Short title.

This article shall be known and cited as the *"City of Miami Parking Facilities Surcharge Ordinance."*

(Ord. No. 12563, § 3, 7-22-04)

Sec. 35-342. - Intent.

This article is intended to impose and levy a surcharge on the sale, lease or rental of space at parking facilities in the city at the rate of 15 percent of the revenues derived from any fee, charge or exchange for the parking of a motor vehicle in or on any parking facility in the city for which a fee, charge or exchange is made on an hourly, daily, weekly, monthly, yearly, event, validation programs, valet or any other basis. Revenues received as part of a daily, weekly, monthly, yearly, or event based rent without a separate parking fee designation are also subject to this article. The net proceeds of the surcharge collected shall be deposited in the general fund subject to appropriation pursuant to the budget and fiscal provisions of the annual budget process.

(Ord. No. 12563, § 4, 7-22-04; Ord. No. 13063, § 2, 5-14-09)

Sec. 35-343. - Authority.

The city commission is authorized to establish and adopt a surcharge pursuant to the authority granted by F.S. § 166.271. The provisions of this article shall not be construed to limit the power of the city to adopt such ordinance pursuant to any other source of local authority nor to utilize any other methods or powers otherwise available for accomplishing the purposes set forth herein, either in substitution of or in conjunction with this article.

(Ord. No. 12563, § 5, 7-22-04)

Sec. 35-344. - Definitions.

As used in this article the following words and terms shall have the following meanings, unless

another meaning is plainly intended:

*City* means the City of Miami, Florida.

*Daily* means the operation of a facility on any or all of the seven (7) days of the week, inclusive of holidays.

*Fee, charge or exchange* means the consideration paid including any and all compensation received or costs imposed, collected or exacted by the operator for parking in a parking facility including exchange, credit or otherwise. Fee, charge or exchange also means the consideration paid to the operator for goods and services ancillary to parking, if payment for such goods and services is mandatory and not optional to the user entering into a parking transaction. Examples of goods and services that may be considered ancillary to parking include, but are not limited to, food, beverages, air fresheners, windshield cleaning, car wash, tire pressure checks, jump starts, and emergency phone services. The intent of this definition is to impose the surcharge on all consideration paid by the user as a condition of entering into a parking transaction, irrespective of whether particular components of such consideration are characterized as compensation received or cost imposed for goods and services separate and apart from parking in an attempt to evade the surcharge.

*Garage* means any building or other structure in which motor vehicles may be parked, stored, housed, or kept for a fee, charge or exchange.

*Manager* means the city manager of the city or his or her designee.

*Motor vehicle* means any self propelled vehicle operated or suitable for operation in a parking facility.

*Net proceeds* means the amount of the surcharge remitted to the city less the allocable cost of procedures used and expenses incurred by the city to enforce collection of the surcharge in an amount not to exceed five percent (5%).

*Open to the general public* means a facility which charges a fee, charge or exchange for the use of any parking space therein regardless of when or how the fee, charge or exchange is collected. The intent of this definition is to include all parking facilities including parking facilities that are used by anyone, including but not limited to any private tenant, who must pay a fee, charge or exchange to the operator of the parking facility except for those facilities described in section 35-345.

*Operator* means any individual, partnership, association, corporation, or other entity which owns, controls, conducts, leases, operates, or causes to be operated a parking facility which offers parking accommodations for a fee, charge or exchange. The intent of this definition is to place the burden for collection of the surcharge on the owner of the facility and not the entity which operates the facility if different from the owner.

*Parking* means the parking, storing, housing or keeping of a motor vehicle.

*Parking facility* means any use in whole or in part of any space, plot, place, lot, parcel, yard, enclosure, parking lot, garage, street, building or structure that is open to the general public at which motor vehicles may be housed, stored, kept, or parked for which any fee, charge or exchange is made, no matter how the fee, charge or exchange is collected.

*Parking lot* means any outdoor area or space motor vehicles may be parked, stored, housed or kept for a fee, charge or exchange.

*Revenues* means, any and all revenue, to include the entire amount of compensation in whatever form, exchange or otherwise, to be determined according to generally accepted accounting principles, derived directly or indirectly from or in connection with the parking operation of the parking facility.

*Surcharge* means the parking facility's surcharge expressed as a percentage or in dollars.

*Transaction* means the parking, storing, housing or keeping of a motor vehicle in a parking facility, in the city, for a fee, charge or exchange.

(Ord. No. 12563, § 6, 7-22-04; Ord. No. 13063, § 2, 5-14-09)

Sec. 35-345. - Applicability of parking facilities surcharge.

This article shall be uniformly applicable to all parking in parking facilities in the city, exclusive of residential parking of tenants or residents, in apartments, condominiums or co-operatives where parking is provided pursuant to a lease or in a separate writing between the apartment building owner, condominium or cooperative and the tenants or residents, whether a parking charge is payable to the apartment owner, condominium or cooperative or to the operator of a residential parking facility. This article shall not apply to any parking facilities located in any airports, seaports, county administration buildings or other projects defined under F.S. §§ 125.011 and 125.015.

(Ord. No. 12563, § 7, 7-22-04; Ord. No. 13063, § 2, 5-14-09)

Sec. 35-346. - Collection of the parking facilities surcharge.

(a)  Surcharge amounts due pursuant to this article shall be collected by the operator of a parking facility at the time of, and in addition to, collection of any other amounts for the parking of a motor vehicle in a parking facility, whether charge is made on an hourly, daily, weekly, monthly, yearly, event, validation programs, valet or any other basis. All operators shall be required to maintain a valid operational license. The local business tax receipt of an operator shall be revoked upon the failure to remit the surcharge amounts for three (3) consecutive months. No operator shall be permitted to operate the parking facility until all arrears are paid.

(b) The operator of every parking facility shall remit funds collected pursuant to this surcharge, net of refunds, for the preceding calendar month; payments must be received by the city by the 20th day of each calendar month. Each monthly remittance will be accompanied by such reports as may be prescribed by the manager on forms identifying for each parking facility, the name, address, account number, capacity, parking charges or fees, or rate schedule, number and type of transactions and such other information as may be necessary or convenient to fully calculate the surcharge.

(c) Every operator of a parking facility shall keep complete and accurate records, in a manner as set forth by the manager, pursuant to subsection 35-346(f)(1) of this Code, of all motor vehicles parked on an hourly, daily, weekly, monthly, yearly, event, validation programs, valet or any other basis in the parking facility, together with the amount of surcharge collected from all transactions, and shall keep all pertinent records and documents as are necessary to determine the amount of surcharge due for a period of three (3) years subsequent to the year of the transaction. Such records and other pertinent data shall be available for inspection and examination upon the request of and with reasonable notice by the manager. Every operator shall provide access to the parking facility to the manager so the manager can survey the parking activity of said facility.

(d) Whenever any operator fails to keep records from which the surcharge may be accurately computed, the manager may make use of a factor developed by surveying the operator or other operators of a similar type parking facility, or otherwise compute the amount of surcharge due, and this computation shall be prima facie correct.

(e) Whenever any operator fails to collect or remit to the manager the surcharge imposed within the time limit therefor, the manager shall assess the operator the amount of surcharge due, plus interest at the rate of one percent (1%) per month or any fraction thereof, and a penalty of ten percent (10%) of the surcharge due on uncollected or unremitted amounts.

(f) In addition to the powers granted to the manager in connection with the collection of the surcharge, the manager is authorized and empowered:

   (1) To make, adopt and amend such forms, rules and regulations as may be deemed necessary or proper to fully collect the surcharge and to define any terms used in connection with the imposition and collection of the surcharge;

   (2) To compromise disputed claims in connection with the surcharge and for good and sufficient cause shown to waive interest and penalty;

   (3) To delegate any of the duties and functions in connection with the collection of the surcharge and the enforcement of the provisions relating to the manager, provided however, that all regulations promulgated shall be issued by the manager.

(4) To extend, for good cause shown, the time for remitting any surcharge required to be paid for such period of time as may be deemed reasonable by the manager.

(5) To retain the services of persons or entities with parking related collection experience to collect the surcharge subject to competitive procurement procedures.

(6) To enforce any of the penalties described in section 35-347 when an operator of a parking facility fails, neglects or refuses to pay penalties and interest.

(Ord. No. 12563, § 8, 7-22-04; Ord. No. 12885, § 1, 2-8-07; Ord. No. 13063, § 2, 5-14-09; Ord. No. 13257, § 2, 3-10-11)

Sec. 35-347. - Failure to comply; penalties.

(a) The operator of a parking facility who:

(1) Fails, neglects or refuses to collect the surcharge;

(2) Fails, neglects or refuses to remit the surcharge;

(3) Fails, neglects or refuses to keep accurate records;

(4) Submits any incomplete, false or fraudulent return;

(5) Refuses to permit the manager to examine books, records and papers relating to the surcharge; or

(6) Fails to fully comply with any or all rules or regulations promulgated by the manager pursuant to the authority contained herein, or to keep complete and proper records as required, shall be subject to the following penalties for each offense:

(i) Have his or her local business tax receipt revoked;

(ii) Have a lien placed upon the parking facility for the sums owed plus interest pursuant to law;

(iii) Be subject to an administrative fine in the amount of $500.00;

(iv) Be required to comply with stricter reporting requirements; and/or

(v) In addition to any other penalties provided in this section, upon the finding of a violation based on this section, the operator shall pay treble fees; be subject to denial, revocation, or suspension of its permit, certificate of use, temporary certificate of use, and/or business tax receipt for a time period not to exceed two years after a hearing before the code enforcement board pursuant to chapter 2, article X of the City Code; and/or debarment pursuant to section 18-107 of the City Code.

(b) The operator of a parking facility who:

(1) Has outstanding surcharge payments for three months;

(2)

Has outstanding penalty and interest payments for three months;

(3) Fails to maintain complete and accurate records as stipulated by the ordinance;

(4) Fails to comply after receiving two notifications regarding compliance with the ordinance; or

(5) Fails to comply with an audit request after the manager has reasonably attempted to schedule such audit shall be subject to additional reporting requirements including:

   (i) The operator of the parking facility will be required to register parking slips, receipts, chits, tickets or the like with the manager.

   (ii) The operator of the parking facility will be required to complete and submit a "Parking Surcharge Recap Monthly Report."

   (iii) The operator of the parking facility may be required to install parking revenue control equipment in said facility, as approved by the city manager or city commission.

   (iv) The operator of the parking facility may be required to cease operation for a period of 30 days.

   (v) In addition to any other penalties provided in this section, upon the finding of a violation based on this section, the operator shall pay treble fees; be subject to denial, revocation, or suspension of its permit, certificate of use, temporary certificate of use, and/or business tax receipt for a time period not to exceed two years after a hearing before the code enforcement board pursuant to chapter 2, article X of the City Code; or debarment pursuant to the City Code.

(c) Repeat operator violations. The operator of the parking facility who:

   (1) Has been found to have underreported parking revenue or parking surcharge amounts;

   (2) Has been found to not maintain complete and accurate records as stipulated by the ordinance;

   (3) Has been assessed an administrative fine more than once; or

   (4) Has been found violating any part of this section more than once shall be subject to:

      (i) The operator shall continue to be subject to all remedies noted in subsection (a)(6).

      (ii) The operator of the parking facility shall be required to cease operation for a period of 30 days.

      (iii) The operator of the parking facility shall be required to install parking revenue control equipment which will monitor and count the number of vehicles admitted to and leaving from a parking facility. This equipment shall be approved by the city manager or city commission. This type of equipment shall have entrance and exit counters that count every vehicle that enters and exits a parking facility and shall include non-

resettable, continuous counters. The equipment shall be used and effective during
operating hours.

    (d) Further, the city is authorized to seek injunctive or other equitable relief to enforce compliance
with this article.

(Ord. No. 12563, § 9, 7-22-04; Ord. No. 12885, § 1, 2-8-07; Ord. No. 13063, § 2, 5-14-09; Ord. No. 13257, §
2, 3-10-11; Ord. No. 13806, § 2, 11-15-18)



# City of Miami

*City Hall*
*3500 Pan American Drive*
*Miami, FL 33133*
*www.miamigov.com*



# Meeting Minutes

## Thursday, October 11, 2018

### 9:00 AM

### Regular

### City Hall

# <u>City Commission</u>

*Francis Suarez, Mayor*
*Keon Hardemon, Chair*
*Ken Russell, Vice Chair*
*Wifredo (Willy) Gort, Commissioner, District One*
*Joe Carollo, Commissioner, District Three*
*Manolo Reyes, Commissioner, District Four*
*Emilio T. Gonzalez, City Manager*
*Victoria Méndez, City Attorney*
*Todd B. Hannon, City Clerk*

City Commission                           Meeting Minutes                        October 11, 2018

**9:00 AM**        **INVOCATION AND PLEDGE OF ALLEGIANCE**

*Present: Chair Hardemon, Vice Chair Russell, Commissioner Gort, Commissioner Carollo and Commissioner Reyes.*

*On the 11th day of October, 2018 the City Commission of the City of Miami, Florida, met at its regular meeting place in City Hall, 3500 Pan American Drive, Miami, Florida, in regular session. The Commission Meeting was called to order by Chair Hardemon at 9:17 a.m., recessed at 12:18 p.m., reconvened at 2:01 p.m., recessed at 2:11 p.m., reconvened at 2:40 p.m., recessed at 2:41 p.m., reconvened at 3:31 p.m., and adjourned at 8:32 p.m.*

*Note for the Record: Commissioner Reyes entered the Commission chambers at 9:18 a.m., and Commissioner Carollo entered the Commission chambers at 10:37 a.m.*

*ALSO PRESENT:*

*Emilio T. Gonzalez, Ph.D., City Manager*
*Victoria Méndez, City Attorney*
*Todd B. Hannon, City Clerk*

*Chair Hardemon: Welcome to the October 11, 2018 meeting of the Miami City Commission in these historic chambers. The members of the City Commission are Wifredo Gort, Joe Carollo, Manolo Reyes; Ken Russell, the Vice Chair; and me, Keon Hardemon, the Chairman. Also on the dais are Emilio T. Gonzalez, our City Manager; Victoria Méndez, our City Attorney; and Todd Hannon, our City Clerk. The meeting will be opened with a prayer by Commissioner Gort and pledge of allegiance will be led by the Mayor.*

*Commissioner Gort: After the prayer, I'd like to say something.*

*Chair Hardemon: No problem.*

*Commissioner Gort: Good morning.*

*Invocation delivered.*

*Later...*

*Pledge of allegiance delivered.*

*Chair Hardemon: You may now take a seat.*

## PART A - NON-PLANNING AND ZONING ITEM(S)

## PR - PRESENTATIONS AND PROCLAMATIONS

**PR.1**        **PROTOCOL ITEM**

**4924**

| Honoree | Presenter | Protocol Item |
|---|---|---|
| Moment of Silence for the late Rosa Plasencia | Mayor Suarez | Recognition |
| Florida Ombudsman Program Volunteers | Mayor Suarez | Proclamation |
| Lotus House, Domestic Violence Awareness Month | Mayor Suarez | Proclamation |

*Uber, and then take the scooter back. So the whole -- the logistics made so much sense to have a scooter available anywhere that I wasn't using my car at all. And as a business owner, I noticed myself as a consumer going and visiting other businesses that I wouldn't stop my car and park and would visit, but now that I always had the scooter, I was talking to people, meeting neighbors, meeting other business owners, and actually visiting. And as a business owner, I notice that Bird users are much more likely to come over, because they do not have to park, and that made my aware of how bad for business owners it is when, you know, you don't have enough parking for clients. So I know -- I mean, I moved to Miami thinking I was coming, you know, to live in future of the City -- or a city of the future, and I think, you know, new means of transportation, like Uber and scooters and everything, is a way of, you know, being part of this future. So I would love the Commission to consider, you know, making Miami the city of the future and also a mobility park. Thank you very much.*

*Chair Hardemon: Thank you. Sir.*

*Jose Mejia: Jose Mejia (UNINTELLIGIBLE).com. Joe Carollo, I'm a process server; you're being served. United State District Court, William L. Fuller, Martin Pinilla versus Joe Carollo (UNINTELLIGIBLE). I have a summons, a complaint for him. Can I approach the --*

*Commissioner Carollo: Sure.*

*Mr. Mejia: -- hand it to him?*

*Vice Chair Russell: I'm sorry; what's going on?*

*Chair Hardemon: If -- let me say this.*

*Victoria Méndez (City Attorney): Who are you?*

*Chair Hardemon: He's a process server.*

*Ms. Méndez: You're a process server? Get out; you can't do that here. You can wait outside. You can't do that here. Get out.*

*Ms. Mejia: Okay. Can I leave this here?*

*Ms. Méndez: Get out.*

*Ms. Mejia: Thank you.*

*Chair Hardemon: The things we see in the City of Miami. Can you beat that?*

*Commissioner Carollo: You know what this is all about?*

*Chair Hardemon: (UNINTELLIGIBLE).*

*Commissioner Carollo: Characters that want to intimidate me, because I was going to show publicly what's going on in Code and Building violations in my district. This is on the agenda today.*

*Chair Hardemon: You're recognized, sir.*

*Christopher Allen: Good morning. I'm here with the -- representing Bird scooters, and I was a charger when they launched here in Miami. And I think this is just a*

# City of Miami

*City Hall*
*3500 Pan American Drive*
*Miami, FL 33133*
*www.miamigov.com*



# Meeting Minutes

### Thursday, October 11, 2018

### 9:00 AM

### Regular

### City Hall

# City Commission

*Francis Suarez, Mayor*
*Keon Hardemon, Chair*
*Ken Russell, Vice Chair*
*Wifredo (Willy) Gort, Commissioner, District One*
*Joe Carollo, Commissioner, District Three*
*Manolo Reyes, Commissioner, District Four*
*Emilio T. Gonzalez, City Manager*
*Victoria Méndez, City Attorney*
*Todd B. Hannon, City Clerk*

City Commission                                   Meeting Minutes                                   October 11, 2018

**9:00 AM**          **INVOCATION AND PLEDGE OF ALLEGIANCE**

*Present: Chair Hardemon, Vice Chair Russell, Commissioner Gort, Commissioner Carollo and Commissioner Reyes.*

*On the 11th day of October, 2018 the City Commission of the City of Miami, Florida, met at its regular meeting place in City Hall, 3500 Pan American Drive, Miami, Florida, in regular session. The Commission Meeting was called to order by Chair Hardemon at 9:17 a.m., recessed at 12:18 p.m., reconvened at 2:01 p.m., recessed at 2:11 p.m., reconvened at 2:40 p.m., recessed at 2:41 p.m., reconvened at 3:31 p.m., and adjourned at 8:32 p.m.*

*Note for the Record: Commissioner Reyes entered the Commission chambers at 9:18 a.m., and Commissioner Carollo entered the Commission chambers at 10:37 a.m.*

*ALSO PRESENT:*

*Emilio T. Gonzalez, Ph.D., City Manager*
*Victoria Méndez, City Attorney*
*Todd B. Hannon, City Clerk*

*Chair Hardemon: Welcome to the October 11, 2018 meeting of the Miami City Commission in these historic chambers. The members of the City Commission are Wifredo Gort, Joe Carollo, Manolo Reyes; Ken Russell, the Vice Chair; and me, Keon Hardemon, the Chairman. Also on the dais are Emilio T. Gonzalez, our City Manager; Victoria Méndez, our City Attorney; and Todd Hannon, our City Clerk. The meeting will be opened with a prayer by Commissioner Gort and pledge of allegiance will be led by the Mayor.*

*Commissioner Gort: After the prayer, I'd like to say something.*

*Chair Hardemon: No problem.*

*Commissioner Gort: Good morning.*

*Invocation delivered.*

*Later...*

*Pledge of allegiance delivered.*

*Chair Hardemon: You may now take a seat.*

**PART A - NON-PLANNING AND ZONING ITEM(S)**

**PR - PRESENTATIONS AND PROCLAMATIONS**

**PR.1**          **PROTOCOL ITEM**

**4924**

| Honoree | Presenter | Protocol Item |
|---|---|---|
| Moment of Silence for the late Rosa Plasencia | Mayor Suarez | Recognition |
| Florida Ombudsman Program Volunteers | Mayor Suarez | Proclamation |
| Lotus House, Domestic Violence Awareness Month | Mayor Suarez | Proclamation |

*Uber, and then take the scooter back.  So the whole -- the logistics made so much sense to have a scooter available anywhere that I wasn't using my car at all.  And as a business owner, I noticed myself as a consumer going and visiting other businesses that I wouldn't stop my car and park and would visit, but now that I always had the scooter, I was talking to people, meeting neighbors, meeting other business owners, and actually visiting.  And as a business owner, I notice that Bird users are much more likely to come over, because they do not have to park, and that made my aware of how bad for business owners it is when, you know, you don't have enough parking for clients.  So I know -- I mean, I moved to Miami thinking I was coming, you know, to live in future of the City -- or a city of the future, and I think, you know, new means of transportation, like Uber and scooters and everything, is a way of, you know, being part of this future.  So I would love the Commission to consider, you know, making Miami the city of the future and also a mobility park.  Thank you very much.*

*Chair Hardemon:  Thank you.  Sir.*

*Jose Mejia:  Jose Mejia (UNINTELLIGIBLE).com.  Joe Carollo, I'm a process server; you're being served.  United State District Court, William L. Fuller, Martin Pinilla versus Joe Carollo (UNINTELLIGIBLE).  I have a summons, a complaint for him.  Can I approach the --*

*Commissioner Carollo:  Sure.*

*Mr. Mejia:  -- hand it to him?*

*Vice Chair Russell:  I'm sorry; what's going on?*

*Chair Hardemon:  If -- let me say this.*

*Victoria Méndez (City Attorney):  Who are you?*

*Chair Hardemon:  He's a process server.*

*Ms. Méndez:  You're a process server?  Get out; you can't do that here.  You can wait outside.  You can't do that here.  Get out.*

*Ms. Mejia:  Okay.  Can I leave this here?*

*Ms. Méndez:  Get out.*

*Ms. Mejia:  Thank you.*

*Chair Hardemon:  The things we see in the City of Miami.  Can you beat that?*

*Commissioner Carollo:  You know what this is all about?*

*Chair Hardemon:  (UNINTELLIGIBLE).*

*Commissioner Carollo:  Characters that want to intimidate me, because I was going to show publicly what's going on in Code and Building violations in my district.  This is on the agenda today.*

*Chair Hardemon:  You're recognized, sir.*

*Christopher Allen:  Good morning.  I'm here with the -- representing Bird scooters, and I was a charger when they launched here in Miami.  And I think this is just a*









01/08/2018

Sec. 10-101. - Unsafe structures and unsafe structures panel.

    (a)  General.

        (1)  Unsafe structures panel(s) shall hear unsafe structures cases, and appeals of decisions, of the city building official, or designee, declaring properties and their structures and accessory structures to be unsafe where there is a danger to the health, safety, and welfare of the citizens in the community, all in the manner prescribed in this article. If such structure has been designated historic and is under the city's historic preservation jurisdiction, demolition procedures shall, whenever possible, abide by the process as set out in the city's historic preservation ordinance as found in chapter 23 of this Code, unless there is an immediate threat of danger, as determined by the building official, or designee.

        (2)  Buildings or structures that are, or hereafter shall become, unsafe, unsanitary or deficient, and dilapidated facilities, with inadequate means of egress, or which constitute a fire or windstorm hazard, or are otherwise dangerous to human life or public welfare by reason of illegal or improper use, occupancy or maintenance, or which have been substantially damaged by the elements, acts of God, fire, explosion or otherwise, shall be deemed unsafe structures and a permit shall be obtained to demolish the structure, or where specifically allowed by this article, to bring the building into compliance with the applicable codes as provided herein.

        (3)  Incomplete buildings commenced without a permit or for which the permit has expired, or completed buildings commenced without a permit or for which the permit has expired, prior to completion and no certificate of occupancy has been issued, shall be presumed and deemed unsafe and a permit shall be obtained to demolish the structure or bring the building into compliance with the applicable codes as provided herein.

        (4)  Buildings which meet the physical criteria of unsafe structures, set forth in this section, and are ordered to be repaired by the building official, or designee, or the unsafe structures panel, in the manner more particularly set forth below, which are not completed or repaired and brought into full compliance with the building code within the reasonable time allowed by the building official, or designee, or the unsafe structures panel, will be demolished.

        (5)  Swimming pools that contain stagnant water are deemed unsanitary and dangerous to human life and the public welfare. If the stagnant water is not removed and all repairs made and brought into full compliance with the building code within a reasonable time, as allowed by the building official, then these swimming pools will be demolished and filled in.

        (6)  Buildings or structures subject to the recertification requirements in subsection 8-11(f) of the Miami-Dade County Code which the owner fails to timely respond to the notice of required inspection or fails to make all required repairs or modifications found to be necessary

resulting from the recertification inspection by the deadline specified in the Code or any written extension
granted by the building official, or designee, will be demolished.

    (b)  Physical criteria.

      (1)  A building shall be deemed a fire hazard or unsafe when any of the following criteria are met:

        a.  It is vacant, unguarded and open at doors or windows.

        b.  There is an accumulation of debris or other material therein representing a hazard of
combustion.

        c.  The building condition creates hazards with respect to means of egress and fire
protection as provided herein for the particular occupancy.

        d.  It meets the criteria of a vacant and abandoned property under chapter 10 of this Code or
under chapter 8 of the Miami-Dade County Code.

      (2)  A building, or part thereof, shall be presumed to be unsafe if:

        a.  There is a falling away, hanging loose or loosening of any siding, block, brick, or other
building material.

        b.  There is a deterioration of the structure or structural parts.

        c.  The building is partially destroyed.

        d.  There is an unusual sagging or leaning out of plumb of the building or any parts of the
building and such effect is caused by deterioration or over-stressing.

        e.  The electrical or mechanical installations or systems create a hazardous condition
contrary to the standards of the building code.

        f.  An unsanitary condition exists by reason of inadequate or malfunctioning sanitary
facilities or waste disposal systems.

        g.  By reasons of use or occupancy the area, height, type of construction, fire-resistivity,
means of egress, electrical equipment, plumbing, air conditioning or other features
regulated by this Code do not comply with this Code for the use and group or occupancy.

        h.  The construction, installation of electrical, plumbing or other equipment therein or
thereon, or the partial construction or installation of electrical, plumbing or other
equipment has been commenced or completed without a permit therefore having been
obtained or where the permit has expired prior to completion and the issuance of a
certificate of occupancy or certificate of completion.

        i.  The construction, installation of electrical, plumbing or other equipment therein or
thereon, or the partial construction or installation of electrical, plumbing or other
equipment has not been completed.

        j.

The building or structure is vacant and abandoned, and covered at doors or windows with materials not previously approved by the building official, or designee, or for a period exceeding the maximum limitations set forth in this article.

    k. By reason of illegal or improper use, occupancy or maintenance does not comply with the building code, or the code in effect at the time of construction.

    l. The building or part thereof meets the physical criteria of an unsafe structure set forth above and has not been repaired and brought into compliance with the building code following the expiration of the reasonable periods allowed by the building official, or designee, or an unsafe structures panel for such repairs.

(3) Grow houses. A building or structure that has been identified by any law enforcement officer as being used to grow or manufacture controlled substances as defined by F.S. ch. 893 or any drugs, as defined in F.S. ch. 499 (a "grow house") shall be presumed to be unsafe if any one of the following criteria has been satisfied:

    a. There is an open and obvious modification or addition to any of the structure's electrical wiring or electrical components, or there exists any exposed wires or exposed electrical components;

    b. There is an open and obvious modification or addition to any of the structure's plumbing, and/or any discharge of water or other effluent that is not into an ordinarily available drain;

    c. The structure's interior walls have been destroyed, moved, or modified in any way. This may be evidenced by marks on the ceiling and/or floor that are indicative of a wall having been moved or removed, holes or passages in a wall that are not ordinary, and may be unfinished in appearance. This list shall not be considered exhaustive such that any other evidence of walls being destroyed, moved or modified shall be proper;

    d. Any exterior window has been modified or covered in such a way, so as to inhibit or reduce egress or which inhibits or prevents normal use for ventilation purposes; this shall not include curtains and other ordinary window coverings; or

    e. Any of the structure's exterior or interior doors have been modified or covered in such a way to prevent or inhibit ingress or egress.

(c) Upon observation of any one of the above criteria in subsection (b), any city enforcement personnel shall be authorized to post and shall post a notice in a conspicuous location on the building or structure that has been determined to be unsafe.

(1) The posted shall read substantially as follows:

    (i) Unsafe structure(s) meeting criteria for immediate or emergency demolition: "UNSAFE BUILDING. This building or structure is, in the opinion of the City of Miami, unsafe. THIS BUILDING SHALL BE VACATED-SHALL NOT BE OCCUPIED. The owner should contact the

City of Miami Building Department immediately. THIS NOTICE SHALL NOT BE REMOVED EXCEPT BY THE BUILDING OFFICIAL OR DESIGNEE. DATE (insert date posted)." This notice shall also apply to any structure(s) where it is determined by the Building Official or Designee that it is not safe for occupancy until required repairs are completed. This Notice may be appealed to the Unsafe Structure Panel within twenty (20) days of posting."

(ii) Unsafe structure(s) not meeting criteria for immediate demolition: "UNSAFE BUILDING. This building or structure is, in the opinion of the City of Miami unsafe due to conditions or unpermitted work but is not determined to meet criteria for immediate or emergency demolition. The owner should contact the City of Miami Building Department immediately. THIS NOTICE SHALL NOT BE REMOVED EXCEPT BY THE BUILDING OFFICIAL OR DESIGNEE. If the structure(s) are not brought into compliance, the structure(s) may be ordered vacated and demolished. DATE (insert date posted). This Notice may be appealed to the Unsafe Structure Panel within twenty (20) days of posting."

(2) Entry to any structure posted with such a notice under subsection (c)(1)(i) shall be prohibited except by an order issued by a court of competent jurisdiction, until such time as all necessary inspections listed in subsection (4) have been completed.

(3) Within 24 hours of the notice being posted by the building official, or designee, the Miami Police Department shall notify the building department of any trespass violations pursuant to subsection (c)(1)(i). Upon receiving such notification from the Miami Police Department the building department shall immediately send a notice of violation in accordance with the provisions of this article. This notice shall also state that building official, or designee, will conduct an inspection of the structure and issue a notice of violation within five business days.

(4) All structures that meet any of the criteria from subsection (c)(1) above and have been posted with the requisite notice, must be approved by the building department based upon all of the following inspections before the structure can be deemed safe for use:

  a. An electrical inspection;

  b. A plumbing inspection;

  c. An inspection by a certified mold inspector; and

  d. An inspection by a structural engineer.

Upon completion of the inspections described herein, an inspection report shall be filed with the building department for approval. The building director shall proscribe the forms to be used for the inspections described herein and shall be authorized to charge a fee for the review of the inspection reports. Each inspection report shall certify that there is currently no unsafe or hazardous conditions currently existing in the structure, all building code violations corrected and the structure is safe for occupancy. No building deemed unsafe and meeting

criteria for immediate or emergency demolition pursuant to this section shall be occupied. Nothing herein shall relieve the owner from the requirement to obtain permits for any repairs required to meet the requirements of this section.

(d)  Valuation criteria.

(1)  If the cost of completion, alteration, repair and/or replacement of an unsafe building or structure or part thereof exceeds 50 percent of its value, such building shall be demolished and removed from the premises. If the cost of completion, alteration, repair and/or replacement of an unsafe building or structure or part thereof does not exceed 50 percent of its value, such building or structure may be repaired and made safe, as provided herein.

(2)  For purposes of application of this formula, value shall be the estimated cost to replace the building in kind, excluding depreciation. The estimate shall be derived from multiplying the value of the square footage of construction used by the building department to calculate the applicable permit fee. That estimate shall be broken down on a percentage basis into an estimate of the following critical elements of construction, as applicable: structural, roofing, electrical, plumbing and mechanical, and other building components ("valuation of construction components"). The cost of completion, alteration, repair or replacement shall be estimated by application of the percentage of deterioration found on site for each of the critical elements of construction to the valuation of construction components for the structure, to arrive at an overall estimated cost to repair the affected structure. The appointing authority shall by administrative order provide a form for the application of the formula set forth above for the various types of construction.

(3)  If a building or structure may be repaired and made safe pursuant to the valuation criteria set forth above, and the building or structure is otherwise unsafe in accordance with the physical criteria set forth in this article, the building official or designee may order such building or structure to be temporarily secured in the manner and subject to the limitations set forth in this article. Such building must be completed and brought into full compliance with the building code within such time as the building official, or designee, or unsafe structures panel may determine to be reasonable for such completion. If the building or structure is not temporarily secured, completed and brought into full compliance with the building code within the reasonable periods allowed, such building or structure shall be demolished and removed from the premises.

(4)  When any electrical or structural repairs or modifications are required, the responsible engineer or architect who has performed the inspection must provide the building official or designee with a letter indicating whether or not the building or structure may continue to be

occupied while the building or structure is undergoing repairs. Such letter shall be valid for no more than 180 days, and a new letter must be issued if repairs or modifications remain ongoing.

(e)  Inspection of unsafe buildings and structures. The building official, or designee, on their own initiative or as a result of reports by others, shall examine or cause to be examined every building or structure appearing or reported to be unsafe, and if such is found to be an unsafe building or structure as defined in this article, the building official or designee shall proceed in the manner set forth in this article.

(f)  Emergency action.

(1)  When in the opinion of the building official, or designee, there is actual or immediate danger of the failure or collapse of a building or structure, or there is a health, windstorm or fire hazard, he may order the occupants to vacate, temporarily close for use or occupancy the rights-of-way thereto, sidewalks, streets or adjacent buildings or nearby area and institute such other temporary safeguards, including securing the building or structure, as he may deem necessary under the circumstances, and may employ the necessary labor and materials to perform the required work as expeditiously as possible. In such event, the operation of the notice and hearing requirements of this section shall be suspended as reasonably necessary in the opinion of the building official, or designee, to redress the emergency situation. Costs incurred in the performance of such emergency work shall be paid by the appropriate governmental authority and upon the recording in the public records of this county a certificate executed by the building official, or designee, certifying the amount so expended, the same shall become a lien against the property involved.

(2)  For purposes of subsection (f), "owner" shall mean the owner of an apartment building or a condominium/condominium unit.

When the building official or designee orders an occupied residential building, either apartment or condominium, with four or more units to be vacated, as authorized in subsection 10-101(f)(1), and deems that there is an actual or immediate danger of the failure or collapse of a building or structure, or health, windstorm, or fire hazard, which is a result of the negligent or intentional act or failure to act by the owner(s), the owner shall, after posting, within 24 hours make, or cause to be made, all necessary arrangements to relocate the residents of the building into housing that is safe, sanitary, and secure, and the owner shall pay, or cause to be paid, all of the reasonable expenses involved in such relocation. If the owner fails to timely relocate displaced residents, city personnel shall be empowered to assist in the relocation, and the owner shall pay all reasonable expenses incurred by the city, in accordance with the following:

a.

Service of a notice of required payment of costs of resident relocation shall be made upon the owner by posting the notice in a conspicuous location at the premises ordered to be vacated and by mailing the notice certified, return receipt requested through the USPS to the address listed in the records of the property appraiser's office for tax notices for the property and in the case of a condominium, to the condominium board and board president.

    b.  The notice of required payment of costs of resident relocation shall include:

        i.  An affidavit itemizing the city's expenses incurred in the relocation;

        ii.  The date of issuance;

        iii.  The name of the department or division issuing the notice;

        iv.  The obligation to relocate a resident or residents pursuant to subsection 10-101(f) of the City Code;

        v.  The amount of relocation costs for which reimbursement is sought, up to three months, the financial assistance shall be in an amount not to exceed three months' fair market rent, as defined by the United States Department of Housing and Urban Development;

    c.  With respect to apartment rental units, the obligations of owners under this subsection shall only apply to tenancies entered into after the effective date of this subsection.

    d.  Once notice requiring payment of costs accomplished, owner shall have 30 days to pay.

(g)  Unsafe structures meeting valuation criteria for immediate demolition.

  (1)  The provisions below shall apply to buildings or structures meeting the valuation criteria for demolition.

  (2)  The building official, or designee, shall prepare a notice of violation. The building official, or designee, shall prepare a notice of violation. This written notice shall state in summary form:

    (i)  The nature of defects which constitute a violation of this section; and

    (ii)  In such time not to exceed ten days to secure an open structure to the reasonable satisfaction of the building official and time to comply by obtaining an approved permit within 30 days. Failure to comply with any portion of the timeframe provided can result in the matter being set for hearing before the unsafe structure panel;

    (iii)  This notice shall also state that the specific details concerning the violations can be obtained in writing from the building official on request. In addition, this notice will explain the right of appeal of the decision of the building official, or designee, to the unsafe structures panel, in its appellate capacity and also advise that unless there is compliance with the directions of the building official, or designee, a case will be commenced before the unsafe structures panel with the city seeking demolition without further notice.

(3) The notice of violation shall be affixed to the structure concerned. The building official, or designee, shall also affix to the structure notice of the hearing of the unsafe structures panel scheduled to consider any appeal of the decision of the building official in connection with the structure. The notice of hearing shall be issued by the director of the building department or his/her designee for appeals to an unsafe structures panel advising persons to appear before the panel to show cause why the decision of the building official should not be carried out. The hearing shall not be scheduled earlier than 30 days following the date of posting of the notice of hearing and notice of violation.

(4) The building official, or designee, shall post a notice bearing his or her signature in a conspicuous location on the building or structure that has been determined to be unsafe. The posted notice shall read as provided for in subsection (c)(1).

(5) Within ten working days of posting the notice of violation and/or notice of hearing, the building official or designee, shall send written notice of violation to the owner. For hearings, notice shall go to both the owner and any interested party. For these purposes, the owner shall be the taxpayer as reflected in the most recently certified real property ad valorem tax roll of Miami-Dade County; provided however, where the records of the Dade County Property Appraiser indicate that ownership has changed, the owner shall be the taxpayer as reflected in those records. An interested party shall be the owner and any other person or entity who has previously requested real property ad valorem tax notices with respect to the subject property in accordance with F.S. § 197.344, as the same may be renumbered or amended from time to time. The notice of violation and notice of hearing shall be sent by certified or first class mail to all such parties' last known addresses as reflected in the records of the Miami-Dade County Property Appraiser. Failure to receive such notice, or the lack of a signed return receipt shall not invalidate the notice.

(6) Upon expiration of the period of appeal provided in the notice of violation, the building official, or designee, may file an appropriate instrument in the office of the clerk of the circuit court to be recorded in the public records of this county, indicating that the property is in violation of the building code and subject to a pending lien. The recording of the notice shall constitute constructive notice of the violation to all concerned, subsequent purchasers, transferees, mortgagees, lessees, grantees and all persons claiming or acquiring interest in the property. In the event that the violation is corrected, the building official, or designee, shall file proof of the same upon payment for fees incurred.

(7) The building official, or designee, shall publish a notice for two consecutive weeks online via the city's website at www.miamigov.com. The published notice shall contain the address of the subject property and the names of the owner and any interested party, and state that the

subject property has been cited for violations of the building code and subject to demolition. The published notice shall also state the time and place of the hearing scheduled before the unsafe structures panel.

(8)  The notices provided in this section are intended to serve as full and effective notice of the hearing and the violations related to the structure. Failure of one form of notice shall not invalidate or impair the full effectiveness of notice provided by other means pursuant to this section.

(9)  The city may seek collections of any money expended to rehouse occupants of a structure under this subsection pursuant to subsection (f)(2).

(h)  Unsafe structures not meeting the valuation criteria for immediate demolition.

(1)  If a building or structure may be repaired and made safe pursuant to the valuation criteria set forth above, and the building or structure is otherwise unsafe in accordance with the physical criteria set forth in this section, the building official, or designee, may order such building or structure to be temporarily secured in the manner and subject to the limitations set forth in this section. Such building must be completed and brought into full compliance with the building code within such time as the building official, or designee, or the unsafe structures panel may determine to be reasonable for such completion. If the building or structure is not temporarily secured, or once served, not completed and brought into compliance with the building code within the reasonable periods allowed, such building or structure shall be demolished and removed from the premises.

(2)  The building official, or designee, shall prepare a notice of violation. This written notice shall state in summary form:

(i)  The nature of defects which constitute a violation of this section and shall prescribe the action to be taken to comply and the time within which compliance must be accomplished;

(ii)  In such time not to exceed ten days to secure an open structure to the reasonable satisfaction of the building official, or designee, and 60 days to submit plans, 90 days to obtain permits and 120 days to complete and finalize the permit obtained. Failure to comply with any portion of the timeframe provided can result in the matter being set for hearing before the Unsafe Structure Panel;

(iii)  This notice shall also state that the specific details concerning the violations can be obtained in writing from the building official on request. In addition, this notice will explain the right of appeal of the decision of the building official, or designee, to the unsafe structures panel, in its appellate capacity and also advise that unless there is compliance with the directions of the building official, or designee, a case will be commenced before the unsafe structures after time for compliance has expired, or that the building official's order will be enforced.

(3)  The notice of violation shall be affixed to the structure concerned.

(4)  Within ten working days of posting the notice of violation, the building official, or designee, shall send the written notice of violation to the owner, in the same manner provided in above.

(5)  In the event that the building or structure is not secured or brought into compliance with the requirements of the building code within the periods specified in the notice of violation, the building official, or designee, may schedule the case for hearing before the unsafe structures panel to secure an order for demolition of the building or structure or to obtain any other appropriate remedy.

(6)  In the event that the building official, or designee, requests that the director of the building department or his/her designee schedule a hearing, or in the event that the owner or interested party files a timely appeal of the decision of the building official, the director of the building department or his/her designee shall issue a notice of hearing which shall be affixed to the property, mailed to the owner and interested party, in the same manner provided in subsection (g) above. Notice of the hearing shall be published in the same manner provided in subsection (g) above.

(7)  If the property has not been secured or permits for repair obtained in the manner stipulated in the notice, the building official, or designee, may file an appropriate instrument and notice of pending lien in the public records in the manner provided in subsection (g) above. The city may seek collections of any money expended to rehouse occupants of a structure under this subsection pursuant to subsection (f)(2).

(8)  Pre-hearing extension of time. Homestead exempt and/or owner-occupied residential properties may be allowed to request from the building official, prior to hearing before the unsafe structure panel, one extension of time from the original notice of violation compliance requirements. Extensions shall only be provided for those properties who have shown good cause, meaning submission of plans and active participation in the processing of the permits to repair the deficiencies. Extensions shall not apply to structures that meet criteria for immediate demolition. The extension may be no longer than 180 days in total. Governmental owned properties shall also be allowed to request extensions pursuant to this subsection. This subsection shall apply retroactively to all similarly situated properties.

(i)  Public hearing—Unsafe structure panel.

(1)  On the day established in the notice of public hearing the unsafe structures panel shall review all pertinent evidence and hear all testimony from the building official (or designee), the owner and other parties in interest and their respective witnesses.

(2)  The unsafe structures panel may order repair, securing, and/or demolition of the structure upon application of the standards set forth in this article. The unsafe structures panel may modify, rescind, or uphold the decision of the building official as recited in the notice of

violation. The unsafe structures panel shall modify or rescind a decision of the building official only upon a finding that the building official was in error in the interpretation or application of the building code. The unsafe structures panel shall not exceed the time frames allowed for repair and completion of buildings and structures specifically set forth in this article, except where the work involved reasonably requires such additional time.

(3) A copy of the order shall be forwarded to the owner, and all interested parties by U.S. mail, and a copy thereof posted on the property.

(4) If the owner or interested party fails to comply with the order of the unsafe structures panel within the time stipulated therein and such order is to repair, complete or secure the building to make safe, then the building official, or designee, shall cause such building to be vacated, if occupied; and shall through his/her employees or through a contractor enforce the order of the unsafe structures panel or building official. Buildings shall be secured with concrete block or other materials of the same durability as determined by the building official. Swimming pools shall be secured by fencing or by using another approved method as determined by the building official. For failure to comply with the order of the unsafe structure panel, which includes requesting a timely extension of time under subsection 10-101(m), as applicable, the city shall have the authority to move forward with demolition of the property structure, if so ordered by the unsafe structure panel, as it has already been deemed unsafe and in need of immediate repair. The city shall follow the process set forth through subsection (5) below.

(5) If the order of the unsafe structures panel is to demolish the building or structure and to remove or salvage contents, debris and abandoned property from the premises, and the owner or those responsible shall have failed to comply with such order, then the building official, or designee, may do so. Swimming pools shall be demolished by removal of any stagnant water and any above ground parts of the structure, breaking open the bottom and filling with sand or clean fill level to the existing grade.

(j)  Multi-unit structures.

(1) This subsection shall be applicable to all multi-unit structures. As used in this subsection, the term multi-unit structures means all townhouses and other structures which contain units divided by one or more common walls, where the structural integrity of any component unit depends upon the structural integrity of one or more other units in the same structure. In the event that the owner or other interested party fails to comply with any order of the unsafe structures panel in connection with any multi-unit structure, then in addition to any other right or remedy contained in this section, the city shall be authorized, but not required, to secure the structure in the manner set forth in this subsection. In addition, and not in derogation of the use of other methods contemplated by this section for enforcing the building code with respect to any structure, multi-unit structures may be secured by performing whatever work the building official may determine is reasonably necessary to

preserve the structural integrity, water-tightness, or safety of adjacent units or the surrounding community which work may include, but no b limited to roofing, windows, and electrical.

(2)   The procedure for enforcement of this Code set forth above shall be in addition to, and not in derogation of, other procedures available to the building official pursuant to the building code. The provisions of this subsection are not intended to exonerate any owner or other interested party from compliance with the building code or any order of an unsafe structures panel.

(k)   Recovery of cost.

(1)   All costs incurred pursuant to any of the provisions of this section shall be paid by the owner, interested party, or occupant of the premises on which the violation occurred.

(2)   The building official, or designee shall file among their records an affidavit stating with fairness and accuracy the items of expense and the date of execution of actions authorized by this section.

(3)   Any other employee, official or agency who incurs costs while executing any provision within this article shall create an affidavit stating with fairness and accuracy the items of expense and the date of execution of actions authorized by this section. That affidavit shall be given to the building official, or designee, responsible for the unsafe structure at issue and filed among his/her records for that property.

(4)   The enforcing agency may institute a suit to recover such expenses against any liable person or may cause such expenses to be charged against the property on which the violation occurred as a lien or as a special assessment lien collectible according to established procedures.

(5)   Any lien imposed pursuant to this article shall be a lien greater in dignity to all liens, excepting IRS tax liens.

(6)   Liens created pursuant to this section may be discharged and satisfied by paying to the city the amount specified in the notice of lien, together with interest thereon from the date of the filing of the lien computed at the maximum statutory interest rate, together with the administrative costs, filing and recording fees and fees paid to file a satisfaction of the lien in the public records. When any such lien has been discharged, the city shall promptly cause evidence of the satisfaction and discharge of such lien to be recorded in the public records.

(7)   The remedies and procedures for recovery of costs provided in this article shall be in addition to and not in derogation of other provided in the building code or otherwise provided by law.

(l)   Unsafe structure panels. Unsafe structures panels are hereby created to conduct hearings as provided for under this section.

(1)

*Composition.* Unsafe structures panel(s) shall consist of three members from the list of panel members available from the county clerk pursuant to Miami-Dade County Administrative Order No. 2-5, as amended. A building department representative will serve as an ex-officio, non-voting member of each panel, to act as a liaison. The ex-officio member shall not count toward a quorum of the panel.

(2) *Designation.* At the request of the director of the building department, the county clerk shall designate three members to constitute one or more unsafe structures panel(s) to conduct hearings on the dates scheduled by the director of the building department or his/her designee. At least one of the members on each panel shall have knowledge of construction gained from experience as an architect, engineer, general contractor or lawyer. The director of the building department shall not have any input into which members are designated to comprise a particular panel.

(3) *Organization of the unsafe structures panels.*

  a. The director of the building department may utilize one or more unsafe structures panel(s) as needed to conduct hearings.

  b. Quorum. Three unsafe structures panel members must be present to conduct a hearing or take any action.

  c. A majority vote of unsafe structures panel members present and voting shall be sufficient to overrule, modify or affirm any action or decision of the building official or to take any action within the scope of the powers and duties of the panel.

  d. No member of an unsafe structures panel shall sit as a voting member in any hearing on a matter in which he/she has a personal or financial interest.

  e. The director of the city building department, or his/her designee, shall assist the unsafe structures panel, but shall have no vote.

  f. The director of the city building department or his/her designee may call and schedule unsafe structures hearings.

  g. Audio record shall be kept of all unsafe structures hearings and all hearings shall be public.

  h. All hearings shall be open to the public, and any person whose interest may be affected by the matter on appeal shall be given an opportunity to be heard in person, or through his/her attorney.

  i. Witnesses may be sworn and subpoenaed by the unsafe structures panel in a like manner as they are subpoenaed by the court or courts in Miami-Dade County.

  j. The hearings shall be informal and need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence shall be admitted if it is the type of evidence on which responsible persons are accustomed to rely in the conduct of

serious affairs regardless of the existence of any common law or statutory rules which might make improper the admission of such evidence over objection in civil actions.

    k.  Hearsay evidence may be used for the purpose of supplementing or explaining any direct evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions.

    l.  The rules of privilege shall be effective to the same extent that they are now, or hereafter may be, recognized in civil actions; and irrelevant and unduly repetitious evidence shall be excluded.

    m.  The director of the city building department shall provide adequate and competent clerical and administrative personnel and such technical or scientific personnel as may be reasonably required by the unsafe structures panels for the proper performance of their duties, subject to budget limitations. The director of the city building department shall maintain a record of all proceedings, including but not limited to a court reporter's transcript of the proceeding, and may clarify the same as a true copy and make a reasonable charge therefore; provided, the court reporter shall certify the copy of his or her transcript.

    n.  The director of the city building department shall provide a regular meeting place for the panel.

(4)  *Duties, powers and compensation of the unsafe structures panels.* The unsafe structures panels and shall have the following duties, functions, powers and responsibilities:

    a.  Hear and determine appeals from actions and decisions of the building official pursuant to the provisions of this section.

    b.  Hear and review the application of the building official for the review of his or her action where his or her decision as indicated in a notice of violations has not been complied with.

    c.  Affirm, modify or reverse the decision of the building official upon appeal or on application for review.

    d.  In the event of judicial review of an unsafe structure panel order, the director of the city building department or his/her designee shall transmit the records with all exhibits, instruments, papers and transcripts of its proceedings to the reviewing authority if so requested.

    e.  The members of the unsafe structures panels shall be compensated as provided for under Miami-Dade County Administrative Order No. 2-5, as amended. Moreover, the members shall not be employees of the city.

(5)

*Duties of the city attorney.* The city attorney shall either be counsel to the unsafe structures panel or shall represent the city by presenting cases to the unsafe structures panel, but in no case shall the city attorney serve in both capacities.

(m)  Post-hearing extension of time.

(1)  Requests for extensions of time from unsafe structure panel orders. Any owner or interested party may seek an extension of the timeframes set forth in an order of the unsafe structures panel. Such request for a hearing to seek such extension must be in writing, directed to the unsafe structures panel clerk. The unsafe structures panel shall not be authorized to extend any deadline for compliance, set forth in the order, unless the unsafe structures division of the building department, unsafe structure panel clerk receives the written request for extension prior to the deadline specified in the initial order. For example, in the event the unsafe structures panel order states that a permit must be obtained within a specified period, the request for extension of the deadline to obtain the permit must be received prior to the expiration of that specified period. If the same order provides a deadline for completion of the structure, the request for the extension for the deadline of completion must be received prior to the deadline for completion, provided that the applicant has complied with the permit deadline.

(2)  To obtain an extension, the owner or interested party must demonstrate to the reasonable satisfaction of the unsafe structures panel that the structure that is the subject of the order is secure at the time the extension is sought and that the owner or applicant has made a good faith attempt to comply with the order which has been impeded by changed circumstances or other circumstances outside of the owner or applicant's control. As a further condition of the extension, the owner or interested party must submit in writing, together with the petition for an extension, a written timetable for compliance with the substantive provisions of the order and for completion of all necessary repairs. The unsafe structures panel shall not reconsider the order, limiting its consideration of the petition to deciding whether the grounds for an extension have been satisfied in the manner set forth in this subsection.

(3)  Upon adoption of the amendment to this section under [Ord. No. 14085], any homestead exempt and/or owner-occupied residential property currently in default of an order of the unsafe structure panel and who can show they have made a good faith attempt to comply with the order which has been impeded by changed circumstances or other circumstances outside of the owner's control, has been an active participant in the process of legalizing or repairing the determined deficiencies and provides, in writing, what has been done since the date of the unsafe structure panel order and a timetable for compliance of all required repairs shall have 60 days to request a post-hearing extension of time before the unsafe structure panel. Failure to request the post-hearing extension shall leave the original order in full force and effect.

30/04/2023 16:16    Case 1:18-cv-24190-RS   Document 506-19   Entered on FLSD Docket 06/30/2023   Page 101 of
168
Miami ed code of ordinances

(n)  Judicial review.

    (1)  Any owner or interested party aggrieved by a decision of the unsafe structures panel may seek judicial review of that decision in accordance with Rule 9.110(c) of the Florida Rules of Appellate Procedure. Accordingly, any order, requirement, decision, denial of a request for extension of time, or determination of the unsafe structures panel shall be reviewed by the filing of a notice of appeal in the circuit court appellate division of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, within 30 days of rendition of the order.

    (2)  The use of one method of enforcement shall not preclude the use of another method of enforcement including, but not limited to, legal actions filed with the Eleventh Judicial Circuit Court whether the actions are done in a consecutive or concurrent manner.

(o)  Definitions.

*Building* or *structures* shall be synonymous.

*Building code* shall be the Florida Building Code, as amended from time to time.

*Interested parties* shall be defined as stated in chapter 10 of this Code.

All other definitions shall be defined as stated in chapter 10 of this Code or chapter 8 of the Miami-Dade County Code.

(Ord. No. 13295, § 2, 12-15-11; Ord. No. 13422, § 2, 12-12-13; Ord. No. 13580, § 2, 12-10-15; Ord. No. 13676, § 2, 4-27-17; Ord. No. 14085, § 2, 9-13-22)

## City of Miami



June 03, 2017                                             CR: CE2017009953

FULLER, WILLIAM O                          LITTLE HAVANA ARTS BLDG LLC
1637 SW 8TH STREET
200                                                 1637 SW 8 ST #200
Miami, FL  33135                               MIAMI, FL  33135

### TICKET / CITATION

Subject Property:  1501 SW 8 ST        Folio:  0141020066210

Name of Violator(s):  LITTLE HAVANA ARTS BLDG LLC,
Ticket Number:  292899

Location of Violation:  1501 SW 8 ST
Folio:  0141020066210

Legal Description of Property:
LAWRENCE ESTATE LAND COS SUB PB 2-46 LOTS 19 & 20 LESS ST BLK 103 LOT SIZE 100.000 X 125
COC 26115-4771 12 2007 1

Violation Date: Jun 03, 2017  Violation Time: 04:30 PM
Code Section(s) Violated: VIOL REF# 2275-OPERATING JUKEBOXES,RADIOS,MUSICAL INSTRUMENT,
OR ANY OTHER MUSICAL DEVISE AFTER11:00 PM, AND NOT WITHIN ECLOSED BLDG.        City
Code SEC 36-5-

Fine Amount: 200.00 * 1 = 200.00

Name of Inspector:  Osvaldo De La Cruz
Division:  South West
Office Address: 444 SW 2 AV Miami, FL 33130
Office Phone Number: (305) 329-4770
Email: odelacruz@miamigov.com

If you have any questions, please contact the inspector at the above listed office phone number Monday through
Friday.



Osvaldo De La Cruz
City of Miami Code Enforcement Inspector

Page 1 of 1

Appeal Requirements

Payments may be made in person at 444 SW 2 AV to the Cashier's Office 4th Floor, or they may be mailed to the following:

> City Of Miami
> Department of Finance
> PO Box 330708
> Miami Fl 33233-0708
> Phone # 305 416-1570

1) To request an appeal you may send a written request to the Department of Hearing Boards at 444 SW 2 AVE 3rd. Floor or call 305 416-2030 for more information.
2) If payment is not received within ten days or an appeal is not filed within ten days of the citation a lien will be placed on the cited property.
3) If you do request an appeal you will be notified of the hearing and you may appear with or without counsel, and you may produce witnesses on your behalf.
4) You may be liable for reasonable costs of the administrative hearing upon a finding of guilt.
5) Liens in the amount of the unpaid penalties can be filed against any real or personal property and foreclosure action may be taken.

**City of Miami**



June 10, 2017

LITTLE HAVANA ARTS BLDG LLC

1637 SW 8 ST #200
MIAMI, FL  33135

CR: CE2017010342

LITTLE HAVANA ARTS BLDG LLC

1637 SW 8 ST #200
MIAMI, FL  33135

### TICKET / CITATION

Subject Property:  1501 SW 8 ST        Folio:  0141020066210

Name of Violator(s):  LITTLE HAVANA ARTS BLDG LLC,
Ticket Number: 292942

Location of Violation:  1501 SW 8 ST
Folio:  0141020066210

Legal Description of Property:
LAWRENCE ESTATE LAND COS SUB PB 2-46 LOTS 19 & 20 LESS ST BLK 103 LOT SIZE 100.000 X 125
COC 26115-4771 12 2007 1

Violation Date: Jun 10, 2017  Violation Time: 03:48 AM
Code Section(s) Violated: VIOL REF# 2275-OPERATING JUKEBOXES,RADIOS,MUSICAL INSTRUMENT,
OR ANY OTHER MUSICAL DEVISE AFTER11:00 PM, AND NOT WITHIN ECLOSED BLDG.          City
Code SEC 36-5-

Fine Amount: 200.00 * 1 = 200.00

Name of Inspector:  Michael Lytle
Division:  South West
Office Address: 444 SW 2 AV Miami, FL 33130
Office Phone Number: (305) 329-4770
Email: MLytle@miamigov.com

If you have any questions, please contact the inspector at the above listed office phone number Monday through
Friday.



Michael Lytle
City of Miami Code Enforcement Inspector

Appeal Requirements

Payments may be made in person at 444 SW 2 AV to the Cashier's Office 4th Floor, or they may be mailed to the following:

> City Of Miami
> Department of Finance
> PO Box 330708
> Miami Fl 33233-0708
> Phone # 305 416-1570

1) To request an appeal you may send a written request to the Department of Hearing Boards at 444 SW 2 AVE 3rd. Floor or call 305 416-2030 for more information.
2) If payment is not received within ten days or an appeal is not filed within ten days of the citation a lien will be placed on the cited property.
3) If you do request an appeal you will be notified of the hearing and you may appear with or without counsel, and you may produce witnesses on your behalf.
4) You may be liable for reasonable costs of the administrative hearing upon a finding of guilt.
5) Liens in the amount of the unpaid penalties can be filed against any real or personal property and foreclosure action may be taken.

## City of Miami



June 11, 2017

LITTLE HAVANA ARTS BLDG LLC

1637 SW 8 ST #200
MIAMI, FL  33135

CR: CE2017010377

LITTLE HAVANA ARTS BLDG LLC

1637 SW 8 ST #200
MIAMI, FL  33135


### TICKET / CITATION

Subject Property:  1501 SW 8 ST        Folio:  0141020066210

Name of Violator(s):  LITTLE HAVANA ARTS BLDG LLC,
Ticket Number: 292946

Location of Violation:  1501 SW 8 ST
Folio:  0141020066210

Legal Description of Property:
LAWRENCE ESTATE LAND COS SUB PB 2-46 LOTS 19 & 20 LESS ST BLK 103 LOT SIZE 100.000 X 125
COC 26115-4771 12 2007 1

Violation Date: Jun 11, 2017  Violation Time: 01:30 AM
Code Section(s) Violated: VIOL REF# 2276-ESCESSIVE,AND OR LOUD NOISES EMANATINGFROM
RADIOS,OR ANY OTHER MUSIC MAKINGDEVICE,ORCHESTRA,BAND,OR MUSICIAN 100 Ft or more
away from property.          City CODE SEC 36-4

Fine Amount: 500.00 * 1 = 500.00

Name of Inspector:  Osvaldo De La Cruz
Division:  South West
Office Address: 444 SW 2 AV Miami, FL 33130
Office Phone Number: (305) 329-4770
Email: odelacruz@miamigov.com


If you have any questions, please contact the inspector at the above listed office phone number Monday through
Friday.



Osvaldo De La Cruz
City of Miami Code Enforcement Inspector

Page 1 of 1

Appeal Requirements

Payments may be made in person at 444 SW 2 AV to the Cashier's Office 4th Floor, or they may be mailed to the following:

> City Of Miami
> Department of Finance
> PO Box 330708
> Miami Fl 33233-0708
> Phone # 305 416-1570

1) To request an appeal you may send a written request to the Department of Hearing Boards at 444 SW 2 AVE 3rd. Floor or call 305 416-2030 for more information.
2) If payment is not received within ten days or an appeal is not filed within ten days of the citation a lien will be placed on the cited property.
3) If you do request an appeal you will be notified of the hearing and you may appear with or without counsel, and you may produce witnesses on your behalf.
4) You may be liable for reasonable costs of the administrative hearing upon a finding of guilt.
5) Liens in the amount of the unpaid penalties can be filed against any real or personal property and foreclosure action may be taken.

# City of Miami



July 02, 2017

CR: CE2017011914

LITTLE HAVANA ARTS BLDG LLC

LITTLE HAVANA ARTS BLDG LLC

1637 SW 8 ST #200
MIAMI, FL  33135

1637 SW 8 ST #200
MIAMI, FL  33135

## TICKET / CITATION

Subject Property:  1501 SW 8 ST        Folio:  0141020066210

Name of Violator(s):  LITTLE HAVANA ARTS BLDG LLC,
Ticket Number:  293099

Location of Violation:  1501 SW 8 ST
Folio:  0141020066210

Legal Description of Property:
LAWRENCE ESTATE LAND COS SUB PB 2-46 LOTS 19 & 20 LESS ST BLK 103 LOT SIZE 100.000 X 125
COC 26115-4771 12 2007 1

Violation Date: Jul 02, 2017  Violation Time: 12:47 AM
Code Section(s) Violated: VIOL REF# 2275-OPERATING JUKEBOXES,RADIOS,MUSICAL INSTRUMENT,
OR ANY OTHER MUSICAL DEVISE AFTER11:00 PM, AND NOT WITHIN ECLOSED BLDG.         City
Code SEC 36-5-

Fine Amount: 200.00 * 1 = 200.00

Name of Inspector:  Scarlet Morua
Division:  South West
Office Address: 444 SW 2 AV Miami, FL 33130
Office Phone Number: (305) 329-4770
Email: SMorua@miamigov.com

If you have any questions, please contact the inspector at the above listed office phone number Monday through
Friday.



Scarlet Morua
City of Miami Code Enforcement Inspector

Appeal Requirements

Payments may be made in person at 444 SW 2 AV to the Cashier's Office 4th Floor, or they may be mailed to the following:

> City Of Miami
> Department of Finance
> PO Box 330708
> Miami Fl 33233-0708
> Phone # 305 416-1570

1) To request an appeal you may send a written request to the Department of Hearing Boards at 444 SW 2 AVE 3rd. Floor or call 305 416-2030 for more information.
2) If payment is not received within ten days or an appeal is not filed within ten days of the citation a lien will be placed on the cited property.
3) If you do request an appeal you will be notified of the hearing and you may appear with or without counsel, and you may produce witnesses on your behalf.
4) You may be liable for reasonable costs of the administrative hearing upon a finding of guilt.
5) Liens in the amount of the unpaid penalties can be filed against any real or personal property and foreclosure action may be taken.

## City of Miami



February 20, 2018

LITTLE HAVANA ARTS BLDG LLC

1637 SW 8 ST #200
MIAMI, FL 33135

CR: CE2018003334

LITTLE HAVANA ARTS BLDG LLC

1637 SW 8 ST #200
MIAMI, FL 33135

### TICKET / CITATION

Subject Property: 1501 SW 8 ST        Folio: 0141020066210

Name of Violator(s): LITTLE HAVANA ARTS BLDG LLC,
Ticket Number: 294098

Location of Violation: 1501 SW 8 ST
Folio: 0141020066210

Legal Description of Property:
LAWRENCE ESTATE LAND COS SUB PB 2-46 LOTS 19 & 20 LESS ST BLK 103 LOT SIZE 100.000 X 125
COC 26115-4771 12 2007 1

Violation Date: Feb 18, 2018  Violation Time: 01:59 AM
Code Section(s) Violated: VIOL REF# 2276-EXCESSIVE, AND OR LOUD NOISES EMANATING FROM
RADIOS, OR ANY OTHER MUSIC MAKING DEVICE, ORCHESTRA, BAND, OR MUSICIAN 100 Ft or
more away from property.     City CODE SEC 36-4

Fine Amount: 500.00 * 1 = 500.00

Name of Inspector: Juky Ann Jones
Division: South
Office Address: 444 SW 2 AV 7th Floor Miami, FL 33130
Office Phone Number: (305) 329-4770
Email: JaJones@miamigov.com

If you have any questions, please contact the inspector at the above listed office phone number Monday through
Friday.



_____
Juky Ann Jones
City of Miami Code Enforcement Inspector

Case 1:18-cv-24190-RS   Document 506-19   Entered on FLSD Docket 06/30/2023   Page 111 of 168

Page 1 of 1

Appeal Requirements

Payments may be made in person at 444 SW 2 AV to the Cashier's Office 4th Floor, or they may be mailed to the following:

        City Of Miami
        Department of Finance
        PO Box 330708
        Miami Fl 33233-0708
        Phone # 305 416-1570

1) To request an appeal you may send a written request to the Department of Hearing Boards at 444 SW 2 AVE 3rd. Floor or call 305 416-2030 for more information.

2) If payment is not received within ten days or an appeal is not filed within ten days of the citation a lien will be placed on the cited property.

3) If you do request an appeal you will be notified of the hearing and you may appear with or without counsel, and you may produce witnesses on your behalf.

4) You may be liable for reasonable costs of the administrative hearing upon a finding of guilt.

5) Liens in the amount of the unpaid penalties can be filed against any real or personal property and foreclosure action may be taken.

http://lmprod01/cityviewweb/PrintAll/y31rifadymlvglf21bw12w55/Page191_0004.html        12/6/2022



# iBuild Miami

521 sw 8 st

Hi William

| Manage Application ▾ | Manage Permit ▾ | Reports ▾ | Payments ▾ | Help ▾ |

## Review Results: BD18-003183-001 (521 SW 8 ST)

| General | Plan History | Review Status | Result/Remarks | Work Items | AOR/EOR | Contacts |

| Contractors | P&Z | Shop Drawings | Fees | Notes (3) | Documents | Events |

| Date | Plan Status | Plan Status Reason |
|------|-------------|--------------------|
| Mar/05/2018 10:22:00 | Incomplete | Application Intake has not been completed |
| Mar/05/2018 10:24:00 | Incomplete | Application Intake has not been completed |
| Mar/05/2018 10:24:00 | Submitted | Unpaid Upfront Fees |
| Mar/05/2018 10:31:00 | Pending | Plan Acceptance pending |
| Mar/05/2018 10:49:00 | Active | Ready for reviews |
| Mar/05/2018 10:51:00 | Active | Plan Approved |
| Sep/21/2018 12:48:00 | Final | Master permit is final |



COPYRIGHT © 2022 CITY OF MIAMI    Best used with Internet Explorer 11 - Download | Download Acrobat Reader

User Working Online  v.3.2022.511.1

Privacy Policy | Contact Us | Fee Guide

 

## iBuild Miami
521 sw 8 st

Hi William

**Inspections History (521 SW 8 ST)**

### Plan Permits

BD18-003183-001-E001   View Inquire Permits

### General Information

| | | | |
|---|---|---|---|
| Permit Number: | BD18-003183-001-E001 | Permit Type: | ELECTRICAL |
| Job Category: | ELECTRICAL | Pulled By: | RIVERSIDE\RConstantiny |
| Job Address: | 521 SW 8 ST | Issued Date: | Mar/05/2018 |
| Folio Number: | 01-0204-080-1180 | Expiration Date: | Mar/20/2019 |
| Status: | Final | Total Cost: | $10,000.00 |
| Status Reason: | All Inspections are finalized. | | |
| Status Date: | Sep/21/2018 | | |

Permit Work Items:
SERVICE REPAIR

### Permit Holder

| | | | |
|---|---|---|---|
| Qualifier License: | EC13003339 | Company Name: | Manny's Electric Contractor Inc. |
| First Name: | Armando | Last Name: | Saavedra |
| Email: | mannyelectricalcont@yahoo.com | Phone: | (305)685-1946 |

### Inspections History

Print Inspection History

| Division | Insp. Type | Final | Insp. Date | Status | Result | Result Date | Updated By | Inspector Info | Remark |
|---|---|---|---|---|---|---|---|---|---|
| ELECTRICAL | ROUGH/FIRE PENETRATION | ☑ | Sep/21/2018 | Completed | OK | Sep/21/2018 | racosta | Name: Ricardo Acosta Office Ph: (305)416-7187 Mobile Ph: (786)251-7187 | OK for final for 1 meter as per R.W. |

| Insp. Date | Status | Result | Inspector Name | Updated By | Insp. Mobile Ph | Insp. Office Ph | Inspection Remark |
|---|---|---|---|---|---|---|---|
| Sep/21/2018 | Completed | OK | Ricardo Acosta | racosta | (786)251-7187 | | OK for final for 1 meter as per R.W. |
| Aug/13/2018 | Completed | POK | Richard Way | rway | (786)512-4860 | | met with EC |

| Division | Insp. Type | Final | Insp. Date | Status | Result | Result Date | Updated By | Inspector Info | Remark |
|---|---|---|---|---|---|---|---|---|---|
| ELECTRICAL | FINAL ELECTRICAL | ☑ | Sep/21/2018 | Completed | OK | Sep/21/2018 | racosta | Name: Ricardo Acosta Office Ph: (305)416-7187 Mobile Ph: (786)251-7187 | OK for final for 1 meter as per R.W. |

| Insp. Date | Status | Result | Inspector Name | Updated By | Insp. Mobile Ph | Insp. Office Ph | Inspection Remark |
|---|---|---|---|---|---|---|---|
| Sep/21/2018 | Completed | OK | Ricardo Acosta | racosta | (786)251-7187 | | OK for final for 1 meter as per R.W. |

COPYRIGHT © 2022 CITY OF MIAMI   Best used with Internet Explorer 11 - Download | Download Acrobat Reader v.3.2022.511.1

 User Working Online

Privacy Policy | Contact Us | Fee Guide





# iBuild Miami

521 sw 8 st

Hi William

Manage Application ▾ | Manage Permit ▾ | Reports ▾ | Payments ▾ | Help ▾

**Review Results: BD18-003183-001  (521 SW 8 ST)**

General | Plan History | Review Status | Result/Remarks | Work Items | AOR/EOR | Contacts
Contractors | P&Z | Shop Drawings | Fees | Notes (3) | Documents | Events

| | Discipline | Status | Reviewer | Date In | Time In | Complete |
|---|---|---|---|---|---|---|
| ⊟ | (E) - ELECTRICAL | Approved | RW | Mar/05/2018 | 10:52 | Mar/05/2018 10:52 |

| Initials | Status | Completed |
|---|---|---|
| RW | Approved | Mar/05/2018 10:51 |

🖨 Print

COPYRIGHT © 2022 CITY OF MIAMI    Best used with Internet Explorer 11 - Download | Download Acrobat Reader
User Working Online  v.3.2022.511.1
Privacy Policy | Contact Us | Fee Guide

## iBuild Miami

521 sw 8 st

Hi William 

ProjectDox 

| Manage Application ▼ | Manage Permit ▼ | Reports ▼ | Payments ▼ | Help ▼ |

---

### Permit Inquiry: BD18-003183-001-E001 (521 SW 8 ST)

| General Info | Documents | Events | Required Inspections/Documents | Fees | Notes (3) | Certificates |

**General Information**  View Inquire Plan

| | | | |
|---|---|---|---|
| Permit Number: | **BD18-003183-001-E001** | Permit Type: | **ELECTRICAL** |
| Job Category: | **ELECTRICAL** | Pulled By: | **RIVERSIDE\RConstantiny** |
| Job Address: | **521 SW 8 ST** | Issued Date: | **Mar/05/2018** |
| Folio Number: | **01-0204-080-1180** | Expiration Date: | **Mar/20/2019** |
| Status: | **Final** | Total Cost: | **$10,000.00** |
| Status Reason: | **All Inspections are finalized.** | Total SQFT: | **0** |
| Status Date: | **Sep/21/2018** | | |

| Permit Work Items: |
|---|
| SERVICE REPAIR |

**Permit Holder**

| | | | |
|---|---|---|---|
| Qualifier License: | **EC13003339** | Company Name: | **Manny's Electric Contractor Inc.** |
| First Name: | **Armando** | | |
| Email: | **mannyelectricalcont@yahoo.com** | Last Name: | **Saavedra** |
| | | Phone: | **(305)685-1946** |

**Request History**

| Date In | Request Type | Result | Updated By | Status | Status Reason |
|---|---|---|---|---|---|
| No records to display. | | | | | |

 |◀ ◀ [1] ▶ ▶|                    Displaying items 0 - 0 of 0



COPYRIGHT © 2022 CITY OF MIAMI    Best used with Internet Explorer 11 - Download | Download Acrobat Reader
User Working Online    v.3.2022.511.1

Privacy Policy | Contact Us | Fee Guide

# iBuild Miami

521 sw 8 st 🔍 

Hi William 

| Manage Application ▾ | Manage Permit ▾ | Reports ▾ | Payments ▾ | Help ▾ |

## Review Results: BD18-003183-001  (521 SW 8 ST)

General | Plan History | Review Status | Result/Remarks | Work Items | AOR/EOR | Contacts
Contractors | P&Z | Shop Drawings | Fees | Notes (3) | Documents | Events

| | | | |
|---|---|---|---|
| Process Number: | **BD18-003183-001  (Master Plan)** | Plan Status: | **Final** |
| Job Category: | **STAND-ALONE-ELECTRICAL** | Status Reason: | **Master permit is final** |
| Master Permit Type: | **ELECTRICAL** | Application Creation Date: | **Mar/05/2018** |
| Number of Plan Sheets: | **2** | Initial Submission Date: | **Mar/05/2018** |
| Threshold: | **No** | Plan Acceptance Date: | **Mar/05/2018** |
| Required Permits: | **E** | Initial Approved Date: | **Mar/05/2018** |
| Required Disciplines: | **E** | Interior Remodeling: | **No** |
| Required Certificate: | **N/A** | Exterior Remodeling: | **No** |
| Shell Only: | **No** | Permit By Affidavit: | **No** |
| Easy Permit: | **No** | Private Provider: | **No** |
| Electronic Plan: | **No** | Legalization Required: | **No** |
| Number of Fire Alarms: | | Number of Fire Sprinklers: | |
| City Project: | | | |
| Job Address: | **521 SW 8 ST** | Property Type: | **Commercial** |
| Legal Address: | **521 SW 8 ST** | FEMA Flood Zone: | **X** |
| Folio Number: | **0102040801180** | FEMA Elevation: | **-9999** |
| Building Name: | **N/A** | Development Name: | **N/A** |
| Building Number: | **N/A** | Property Additional Info: | **N/A** |
| Net Area: | **LITTLE HAVANA** | Vacant Lot: | **No** |
| Lot Size: | **N/A** | Governing Code: | **FBC 6th Edition (2017)** |

### Building Folio Violations

| Case # | Address | Folio | Violation | Source | Date | |
|---|---|---|---|---|---|---|
| BB2019006401 | 521 SW 8 ST | 0102040801180 | Failure of Owner/Tenant to Obtain Required Permit | CityView | Apr/10/2019 | View Image |

| Case # | Address | Folio | Violation | Source | Date | |
|--------|---------|-------|-----------|--------|------|---|
| BB2019006401 | 521 SW 8 ST | 0102040801180 | Buildings or Structures that are Unsafe, Unsanitary, or Deficient, Constitute a Fire or Windstorm Hazard or are Otherwise | CityView | Apr/10/2019 | View Image |
| BB2020021547 | 521 SW 8 ST | 0102040801180 | Failure to obtain the required 40-50-Year Recertification Process | CityView | Dec/02/2020 | View Image |

**Other Folio Violations**

| Case # | Address | Folio | Division | Violation | Source | Date | |
|--------|---------|-------|----------|-----------|--------|------|---|
| CE2019005428 | 521 SW 8 ST | 0102040801180 | Code Enforcement | Work performed without a permit and/or permit not finalized. | CityView | Mar/27/2019 | View Image |

COPYRIGHT © 2022 CITY OF MIAMI    Best used with Internet Explorer 11 - Download | Download Acrobat Reader
User Working Online  v.3.2022.511.1
Privacy Policy | Contact Us | Fee Guide

**City of Miami**
**Building Department**
**Permit Application**

Plan #: BD 18-003183-001
Permit #: BD 18-003183-001   E001
Total Due: $ 119.65

## Job Location

| | |
|---|---|
| Folio Number: | |
| Job Address: | 521 SW 8 St   Zip: |
| Legal Address: | |
| Unit No: | |
| ☐ Commercial | ☐ Residential   ☐ Dry Run |
| ☐ Owner | ☐ Contractor   ☐ Lessee |

## Owner Lessee Information

| | |
|---|---|
| Owner: | La gran Fiesta LLC   Roy   Rubio. |
| Owner's Address: | 521 SW 8 St, Miami   FL, 33130 |
| Phone: | E-Mail: |
| Lessee: | |
| Lessee Address: | |
| Phone: | E-Mail: |

## Contractor Information

Contractor's License/Registration No.: EC13003339
Contractor's Social Security Number:
Qualifier's Name: ARMANDO SAAVEDRA
Company's Name: MANNYIS ELECT CONT
Address: 6847 SW 37 ST
City: MIAMI   State: FL   Zip: 33155
Phone: 786 443-2703
E-Mail: MANNYELECTRICAL CONT @ YANO

## General Information

Proposed Use of Building:
Current Use:
Job Description: Service Repair
New Construction Total Cost:
New Construction Sq. Ft:   Lineal:
Remodeling Total Cost: $ 10,000
Remodeling Sq. Ft:   Lineal Ft:
Units:   Floors:   Height:   Gallons:

If this is related to another permit, you must provide Master Permit Number:

## Threshold Inspector

| | |
|---|---|
| Name: | |
| Address: | |
| Phone: | |

## Bonding Company

| | |
|---|---|
| Name: | |
| Address: | |
| Phone: | |

## Permit Type

| | |
|---|---|
| ☐ Building | ☐ Plumbing |
| ☐ Mechanical/AC | ☐ Plumbing/Gas |
| ☐ Electrical | ☐ Roofing |
| ☐ Landscaping | ☐ Sign |
| ☐ Electrical | ☐ Roofing |
| ☐ Fire | ☐ Mechanical Elevator |

## Engineer/Architect Information

Engineer's Name:
Address:
Phone:   E-Mail:
Architect's Name:
Address:
Phone:   E-Mail:

## Change to Existing Permit

☐ Change of Contractor (CR)   ☐ Change of Qualifier (CQ)
☐ Re-certification of Plans (RC)   ☐ Plans revision (RV)
☐ Completion Permit (CP)

## Building Permit only

☐ New Construction   ☐ Addition
☐ General Repair/Remodeling   ☐ Misc. Building
☐ Change of Occupancy   ☐ Demolition
☐ Change of Use

I understand that separate permits must be obtained for other items (i.e. electrical, plumbing, roofing, etc.), unless specifically covered by this permit. In signing this application, I am responsible for the supervision and completion of the construction in accordance with the plans and specifications and for compliance with all federal, state, and county laws applicable.

Owner's Affidavit: I certify that all the forgoing information is correct. Owner Certifies that the aforementioned Contractor has the authorization to perform the work as specified above.

Lessee's Affidavit: Lessee certifies that he has full consent and authorization from owner of subject property to perform the above-mentioned work and to hire above captioned contractor.

I have read the information contained in this permit and understand that any misrepresentation may constitutes fraud and could void the permit.

Signature of Owner/Lessee
Print Name: Ry Rivo

Signature of Qualifier
Print Name: ARMANDO SAAVEDRA

State of Florida, County of Miami-Dade
Sworn to and subscribed before me this 28
Day of ___, 20___
By
(SEAL)
Personally known or Produced Identification
Type of Identification Produced
FERNANDE JOSEPH
MY COMMISSION # FF940125
EXPIRES January 02, 2020
FOR BUILDING DEPARTMENT USE ONLY

State of Florida, County of Miami-Dade
Sworn to and subscribed before me this
Day of ___, 20___
By
(SEAL)
Personally known or Produced Identification
Type of Identification Produced
FERNANDE JOSEPH
MY COMMISSION # FF940125
EXPIRES January 02, 2020

Revision No. of Sheets:   Tracking required:

Application Received by: Roel   Date: 3-5-18   Permit Authorized by: RC   Date 3-5-18

# 521 SOUTHWEST 8TH STREET

## CONSTRUCTION PLANS

### CITY OF MIAMI
MIAMI, FLORIDA
DECEMBER 2017

Project Located In: 521 SOUTHWEST 8th STREET, MIAMI, FL 33135

**SITE PLAN**

**LOCATION MAP**

**SITE**

**LEGAL DESCRIPTION:**
CITY OF MIAMI SOUTH PB 8-41
LOT 18 LESS ST R/W, & BLK 46
LOT SIZE 60.00 X 140
OR 17295-4597 0382 1
FOLIO No. 01-0204-060-1180

PROPERTY ADDRESS: 521 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33135

**SITE DATA**

**ENGINEER'S CERTIFICATE:**

FBC 2017
(6th Edition)
Effective Dec. 31, 2017

**COVER SHEET**

**PERMIT SET**

PROJECT TITLE
521 SW 8th STREET
MIAMI, FL 33135

C

## GENERAL NOTES

## EARTHWORK NOTES

## REMOVAL NOTES

## PAVING, GRADING, AND DRAINAGE

## ENGINEER'S CERTIFICATE



| PROJECT TITLE | SHEET TITLE | |
|---|---|---|
| | SITE NOTES | |
| 621 SW 8th STREET | | C-0.0 |

PERMIT SET



ELECTRICAL FLOOR PLAN & RISER DIAGRAM

PERMIT SET

E-1.0

CITY OF MIAMI COPY



## City of Miami
### BUILDING DEPARTMENT

# Permit Issuance

Financial Transaction ID: **484092**
LM Reference Number: BD18-003183-001-E001
Job Address: 521 SW 8 ST

## FEE SUMMARY

| Fee Category | Fee Description | Quantity | Unit Type | Amount |
|---|---|---|---|---|
| BASE FEE | ADMINISTRATIVE | | | $4.00 |
| BASE FEE | APPLICATION | | | $40.00 |
| SOLID WASTE | SOLID WASTE COMMERCIAL E/M/P | 10,000.00 | DOLLARS | $57.00 |
| DADE COUNTY | CODE COMPLIANCE | 10,000.00 | DOLLARS | $6.00 |
| STATE OF FLORIDA | BUILDING CODE ADM & INSP | 100.00 | DOLLARS | $2.00 |
| STATE OF FLORIDA | DCA / FLORIDA BUILDING COMMISSION | 100.00 | DOLLARS | $2.00 |
| BUILDING PERMIT | COMMERCIAL PROJECTS UP TO 30 MILLION | 10,000.00 | DOLLARS | $100.00 |
| PERMIT MISC | ENR - BCI INFLATION RATE | 100.00 | DOLLARS | $8.65 |
| CREDIT | Upfront Fees | | | ($100.00) |

**Total:** **$119.65**

Paid on 3-5-2018

Paid on 3-5-2018

Generated on Mar/05/2018 11:18 AM



# City of Miami
**BUILDING DEPARTMENT**

## Data Summary (continued)

Plan Number: **BD18-003183-001**

### Job Description

Job Category: **STANDALONE + ELECTRICAL**

Permit Type: **ELECTRICAL**

Job Description:
**SERVICE REPAIR**

Required Certificate:

Plans Required: **NO**

Plans Review Discipline Tracking List:
**ELECTRICAL**

Applicant Role: **Contractor**

Property Type: **Commercial**

### Project Totals

New/Addition Sq Ft
Remodeling Sq Ft
Total Sq. Ft.

| New/Addition Cost: | | $0.00 |
|---|---|---|
| Remodeling Cost: | + | $0.00 |
| **Total Cost:** | = | **$500.00** |

### Additional Options



## City of Miami
### BUILDING DEPARTMENT

# Data Summary

Plan Number: **BD18-003183-001**

### Job Location

Job Address: **521 SW 8 ST**
Legal Address: **521 SW 8 ST**
Folio Number: **0102040801180**
Additional Address Information:
FEMA Elevation:
Development Name:

Unit / Suite #:
Building Name:
Building #:
FEMA Flood Zone: **X**
M21 Zone: **T6-8-O**

### Owner Information

Name:  **REY RUBIO/AGENT**
Corporation:   **LA GRAN FIESTA LLC**
Address 1:   **521 SW 8 ST**
Address 2:
City, State Zip:   **MIAMI, FL 33130**
Phone:  **(000)000-0000**
Email:

### Tenant/Lessee Information

Name:
Address 1:
Address 2:
City, State Zip:
Phone:
Email:

### Contractor Information

Contractor License: **EC13003339**
Company: **Manny's Electric Contractor Inc.**
Name:   **Armando Saavedra**
Address 1:   **6847 SW 37 St.**
Address 2:
City, State Zip:   **Miami, FL 33155**
Phone:   **(305)858-5737**
Email:   **vallejoje7@yahoo.com**

---

Rev. 12/Mar/2012

Generated on Mar/05/2018 10:24 AM



# City of Miami
**BUILDING DEPARTMENT**

## Transmittal Sheet

**Plan Number: BD18-003183-001**
**Job Address: 521 SW 8 ST**

### For Permit Counter Use Only:

- ☐ (2) Signed and sealed drawings / plans
- ☐ (2) Signed and sealed surveys
- ☐ Application Form / Owner Affidavit

### Contact Information

Name: **SHEEILA BROWN**
Email: **UNKOWN@YAHOO.COM**
Phone: **(954)415-8358**

Number of Plan Sheets:
Comments: **SERVICE REPAIR**

### For Plan Counter Use Only:

| | Date Assigned: | Reviewer: | Date Returned: |
|---|---|---|---|
| ELECTRICAL: (A) R / U | / / | *(signature)* | / / |

Called On Date: ___ / ___ / _____ By: _____ Time: _____

Employee Authorization: _____

Picked Up Date: ___ / ___ / _____ Picked Up By: _____

Signature: _____

## BD18-003183-001
## 521 SW 8 ST





**Miami Police Department**
**Field Operations Division**

**Art Acevedo**
**Chief of Police**



**Business Compliance/Operation Dry Hour**



## SITUATION

On Friday, August 20, 2021, the City of Miami Police Department in conjunction with the City of Miami Code Compliance, Building Department, Fire Department, and the Florida Division of Alcoholic Beverages and Tobacco (ABT) will be conducting business inspections to ensure each establishment is in legal compliance with all laws, codes, and ordinances. Periodically, we team up with the different departments in the city as well as our partners in state law enforcement to conduct these inspections, to ensure that each one of the businesses are operating legally and, within the guidelines of city ordinances. We select our locations based on ongoing issues that may be occurring, as well as complaints received. The mission of the City of Miami Police Department is to ensure a safe environment for all persons that work at or visit these establishments.

## DELIBERATE ACTION PLAN

The City of Miami Police Officers assigned to this operation, will first enter the business establishment. Once the location is deemed safe and illuminated, the City of Miami Fire Department Inspectors, Code Compliance Officers, City of Miami Building Department Inspectors, and the Florida Division of Alcoholic Beverages and Tobacco personnel will enter the establishment to begin their inspection. Once the inspection is completed, if necessary, the owner / manager / designee on scene will be instructed and educated, on what needs to be done to his / her establishment so that they are in compliance with, all Florida State Statutes, and Miami-Dade County and City of Miami Ordinances.

## EVENT INFORMATION

**Date:** August 20, 2021 Friday

**Time:** 2200-0400 Hours

**Operation Commanding Officer:** Sergeant Ryan Rodriguez

**Command Post:** Central District Sub Station 400 NW 2 Avenue

**Roll Call Location:** 444 SW 2 Avenue MRC parking lot

**Communications Channel:** Working Channel and or Dispatch 11 as needed

**Equipment:** Class "B" Uniform

## PERSONNEL ASSIGNMENTS

- Lieutenant - 0
- Sergeant -1
- City of Miami Police Officers – 3
- City of Miami Fire Department - 0
- City of Miami Code Enforcement Officers – 1
- City of Miami Building Department -0
- Florida Division of Alcoholic Beverage and Tobacco (ABT) 0

| Commanding Officer | Unit | IBM | Location | Duty Hours | Detail Assignment |
|---|---|---|---|---|---|
| Sergeant Ryan Rodriguez | 7420 | 41137 | FOD Patrol | 2200-0400 | Sergeant |

| Patrol Officer | Unit | IBM | Location | Duty Hours | Detail Assignment |
|---|---|---|---|---|---|
| Manuel Mora | 7422 | 44331 | SDSS | 2200-0400 | Officer |
| Tania Bauza | 7621 | 42717 | CDSS | 2200-0400 | Officer |
| David Valuja | 7325 | 45401 | CDSS | 2200-0400 | Officer |

| Fire Department | IBM | Duty Hours | Assignment | Contact # |
|---|---|---|---|---|
| N/A | N/A | 2200-0400 | Fire Lieutenant | UNK |
| N/A | N/A | 2200-0400 | Fire Fighter | UNK |

| Code Compliance | IBM | Duty Hours | Assignment | Contact # |
|---|---|---|---|---|
| Gamarra, Daniel | N/A | 2200-0400 | Code Compl. Inspector | UNK |

| Building Department | IBM | Duty Hours | Assignment | Contact # |
|---|---|---|---|---|
| N/A | N/A | 2200-0400 | Building Inspector | 305-413-0733 |

| Alcoholic Beverages & Tobacco | Duty Hours | Assignment | Contact # |
|---|---|---|---|
| N/A | 2200-0400 | ABT Duties | N/A |

## ACTION PLAN

The City of Miami Police Officers will be the first units inside the establishment, to ensure that they are safe for Code Compliance, Building Department, Fire Department and, ABT personnel to enter and conduct inspections. Once the inspection is done, if any arrests are to be made, the detail units will make said arrests and transport the prisoners accordingly. Code Compliance, Building Department, Fire Department, and ABT will have their own reports and citations to issue. The entire detail will then conduct an on scene debriefing to exchange information prior to departing each inspected location.

**Event Locations:**

| | | | |
|---|---|---|---|
| 1. | Los Altos | 521 S.W. 8 Street | Little Havana |
| 2. | Joia Beach | 1111 Parrot Jungle Trail | Downtown |
| 3. | Wharf Miami | 114 S.W. North River Drive | Downtown |
| 4. | Riverside Miami | 25 S.E. 5 Street | Downtown |

**Occupancy Checks by the Fire Department:**

1. None

| | | | |
|---|---|---|---|
| **Prepared by:** | Sergeant R. Rodriguez | I.B.M. # 41137 | Date: 08/20/21 |
| **NET Commander:** | N/A | I.B.M. N/A | Date: N/A |
| **District Major:** | N/A | I.B.M. N/A | Date: N/A |
| **Assistant Chief:** | Manuel A. Morales | I.B.M. # 4886 | Date: 08/20/21 |



## Property Information

Address 1501 SW 8 ST

Owner LITTLE HAVANA ARTS BLDG LLC

Zone 31

Owner Address 1501 SW 8 ST

Folio 0141020066210

Net ID LITTLE HAVANA

Registered ☐     Lot Registered ☐

## Case Information

| Case Number | Status |
|---|---|
| BB2019006397 | Closed |
| CE2019001182 | Closed |
| CE2018019909 | Closed |
| CE2018004915 | Closed |
| CE2018003334 | Closed |
| CE2017014179 | Closed |
| CE2017011914 | Closed |
| CE2017011130 | Closed |
| CE2017010377 | Closed |
| CE2017010342 | Closed |
| CE2017009953 | Closed |

Where on Property?

BALL AND CHAIN
INTERIOR AND EXTERIOR

[New Case]  [Save]

[Add Requestor]

[Move To Legal Folio]

Case Address

1513 SW 8 ST

Right of Way? ☐
Repeat Offence? ☐

Description

4/10/19...1-STORY, CBS, CP...PROPERTY FOUND WITH ALTERATIONS COMPLETED \

311 Tracking

Division Building

Process Unsafe Structure

Source Employee

Request Type Case

Complaint Type Owner/Tenant to Obtain Required (B)

Priority 1

Inspector Ahmed Arafet

☐ Override the Geo Inspector assignment

Received Apr 10, 2019

In Compliance Aug 05, 2020

Service Date Apr 10, 2019

Closed Date Aug 05, 2020

First Inspection Apr 10, 2019

Daily Per Diem

Last Completed Activity Apr 10, 2019

Refer To                    [Refer]

Entered by AArafet on Apr 10, 2019.

Violations

7604 - Buildings or Structures that are Unsafe, Unsanitary, or Deficient, Constitute a Fire or Windstorm Hazard or are Other

7601 - Failure of Owner/Tenant to Obtain Required Permit

Search By: Property Folio

Property_fact Folio Contains:

[GO]

0141020066210, 1501 SW 8 ST
0141020066210, 1503 SW 8 ST
0141020066210, 1505 SW 8 ST
0141020066210, 1513 SW 8 ST

## Case Information

| | | | |
|---|---|---|---|
| **Address** | 1513 SW 8 ST | **Process** | Unsafe Structure |
| **Zone** | 31 | **Case Type** | Owner/Tenant to Obtain Required (B) |
| **Folio** | 0141020066210 | **Status** | Closed |
| **Date Compliance Due** | Apr 22, 2019 | **Tracking Number** | |
| | | **Case Number** | BB2019006397 |

## Violations

New Violation    Save

| Status | Date Complied | Violation | Inspector | Description |
|---|---|---|---|---|
| Complied | Aug 05, 2020 | 7604 | Ahmed Arafet | Buildings or Structures that are Unsafe, Unsanitary, or Deficient, Constitu |
| Complied | Aug 05, 2020 | 7601 | Ahmed Arafet | Failure of Owner/Tenant to Obtain Required Permit |

**Violation** 7604 - Buildings or Structures that are Unsafe, Unsanitary, or Deficient, Constitute a Fire or Windstorm

**Status** Complied

**Inspector** Ahmed Arafet

**Violation Date** Apr 10, 2019

**Violation Time** 02:09 PM

**Fine Amount** 0  x 1  = 0

**Date Issued** Apr 10, 2019

**Time Issued** 02:08 PM

**Ticket Number**

**Required Corrections**

☐ Repeat Offence?   ☐ Right of Way?

**Description** Buildings or Structures that are Unsafe, Unsanitary, or Deficient, Constitute a Fire or Windstorm Hazard or are Otherwise

**Code Section** Chapter 8-5 of the Code of Miami-Dade

**Comments**

Entered by AArafet on Apr 10, 2019.

## Compliance/Extension Dates

New Compliance    Save

**Date Compliance Due** Apr 22, 2019    date format: MM/DD/YYYY

| | |
|---|---|
| 1 | Apr 22, 2019 |

## Process Change

**Explanation**

## Case Information

| | | | |
|---|---|---|---|
| Address | 1513 SW 8 ST | Owner | LITTLE HAVANA ARTS BLDG LLC |
| Folio | 0141020066210 | Zone 31 | Process | Unsafe Structure |
| Sector | Southeast | Service Date Apr 10, 2019 | Case Type | Owner/Tenant to Obtain Required (B) |
| | | Case Number | BB2019006397 | Status | Closed |

## Case Activities

| Due Date | Activity | Status |
|---|---|---|
| Apr 10, 2019 | Inspection Pictures | N/A |
| Apr 10, 2019 | Record Violation(s) | Completed |
| Apr 10, 2019 | Create UW1 | Completed |
| Apr 10, 2019 | Print & Mail Warning Letter | Completed |
| Apr 10, 2019 | Schedule Next Inspection in 30 days | N/A |
| Apr 12, 2019 | Select Ticketing Outcome | Completed |
| Apr 19, 2019 | Initial Inspection | Completed |

Activity: Inspection Pictures
Outcome:
Status: N/A
Assigned To: Ahmed Arafet
Department: Building Department
Position Responsible: Geo Inspector
Comment:

Due Date: Apr 10, 2019
Completed Date: Aug 05, 2020
Activity Type: Document/Picture
Letter Type:
Hearing:

[ New Activity ]   [ Save ]

[ Images ]

Hauler Company:
Number of Containers:
Total Yards:

[ Re-Open Case ]   [ Copy Lot Clearing Case ]   [ New Case at Address ]   [ Create NOV case ]   [ Move to Legal Folio ]

[ Case Pendings ]

Entered by A Arafet on Apr 10, 2019

# City of Miami



April 10, 2019

CR:  BB2019006397

LITTLE HAVANA ARTS BLDG LLC

1637 SW 8 ST #200
MIAMI, FL 33135

LITTLE HAVANA ARTS BLDG LLC

1637 SW 8 ST #200
MIAMI, FL  33135

## UNSAFE STRUCTURE VIOLATION - FIRST NOTICE

RE:  1513 SW 8 ST                                             Folio:  0141020066210
     LAWRENCE ESTATE LAND COS SUB PB 2-46 LOTS 19 & 20 LESS ST BLK 103 LOT SIZE 100.000 X
125 COC 26115-4771 12 2007 1

Dear Owner(s):

Chapter 8-5 of the Code of Miami-Dade County sets criterion by which a building is evaluated to determine
whether or not it is unsafe, constitutes a fire hazard, or is otherwise dangerous to human life or public welfare.  An
inspection of the above revealed that it is in violation of Chapter 8-5 of the Code of Miami-Dade County and the
following defects have been found:

VIOL REF# 7604-Buildings or Structures that are Unsafe, Unsanitary, or Deficient, Constitute a Fire or
Windstorm Hazard or are Otherwise     Chapter 8-5 of the Code of Miami-Dade
VIOL REF# 7601-Failure of Owner/Tenant to Obtain Required Permit          SECTION 104 F.B.C. &
CHAPTER 8-10 OF THE CODE OF MIAMI-DADE COUNTY
     Correction: 4/10/19...1-STORY, CBS, CP...PROPERTY FOUND WITH ALTERATIONS
COMPLETED WITHOUT PERMITS INCLUDING STRUCTURAL, PLUMBING, ELECTRICAL, AND
MECHANICAL WORK. NEED TO SUBMIT DRAWINGS AND OBTAIN PERMITS/INSPECTIONS TO
CORRECT NONCONFORMING ITEMS AND BRING PROPERTY BACK INTO COMPLIANCE AS PER
F.B.C AND LOCAL ORDINANCES.     DOUBLE FEE+$110.00

You are, therefore, requested to repair or demolish this structure.  Please contact the Unsafe Structures Section of
the Building Department, P.O. Box 330708, Miami, Florida, by phone at (786) 575-1023 or by email at
aarafet@miamigov.com, and advise of your intentions.  If either a demolition or building permit is not obtained or
we do not hear from you by April 22, 2019, it will be necessary to move toward demolition of your building in
accordance with the detailed procedure in the Code Miami-Dade County.

Very truly yours,



_____
Ahmed Arafet
City of Miami Unsafe Structures Inspector

Ph: (786) 575-1023





















































16 Existing / Demolition Floor Plan













**City of Miami** 

March 28, 2021                                      CR:  BB2021005979

LITTLE HAVANA ARTS BLDG LLC                LITTLE HAVANA ARTS BLDG LLC

1637 SW 8 ST #200                          1637 SW 8 ST #200
MIAMI, FL 33135  33135                     MIAMI, FL 33135  33135

## UNSAFE STRUCTURE VIOLATION - FIRST NOTICE

RE:  1513 SW 8 ST                              Folio:  0141020066210
     LAWRENCE ESTATE LAND COS SUB  PB 2-46  LOTS 19 & 20 LESS ST BLK 103  LOT SIZE 100.000
X 125  COC 26115-4771 12 2007 1

Dear Owner(s):

Chapter 8-5 of the Code of Miami-Dade County and section 10-101 of the Code of the City of Miami set criterion
by which a building is evaluated to determine whether or not it is unsafe, constitutes a fire hazard, or is otherwise
dangerous to human life or public welfare.  An inspection of the above revealed that it is in violation of Chapter 8-
5 of the Code of Miami-Dade County and section 10-101 of the Code of the City of Miami, and the following
defects have been found:

VIOL REF# 7604-Buildings or Structures that are Unsafe, Unsanitary, or Deficient, Constitute a Fire or
Windstorm Hazard or are Otherwise     Chapter 8-5 of the Code of Miami-Dade

You are, therefore, requested to repair or demolish this structure.  Please contact the Unsafe Structures Section of
the Building Department at 444 SW 2 Ave, Miami, Florida 33130 or by phone at (786) 417-1949 or by email at
RRamos@miamigov.com, and advise of your intentions.  If either a demolition or building permit is not obtained
or we do not hear from you by April 05, 2021, it will be necessary to move toward demolition of your building in
accordance with Chapter 8-5 of the Code of Miami-Dade County and section 10-101 of the Code of the City of
Miami.

Please Be Advised, any property that is found in violation of the Building Code and chapter 10 of the Code of the
City of Miami shall have its Certificate of Use revoked pursuant to Section 2-211 of the Code of the City of
Miami, Florida as amended.

Very truly yours,



———————————————————
Raul Ramos
City of Miami Unsafe Structures Inspector

Ph:  (786) 417-1949
Email:  RRamos@miamigov.com