**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No.: 1:18-cv-24190

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

              Plaintiffs,

     v.

JOE CAROLLO,

              Defendant.
_____/

**NON-PARTY CITY OF MIAMI'S LIMITED APPEARANCE, JURISDICTIONAL
OBJECTIONS, AND MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
<u>MOTION FOR TEMPORARY INJUNCTION [ECF No. 512]</u>**

Non-Party, the City of Miami ("City") hereby enters it limited appearance and asserts its jurisdictional objections and memorandum in opposition to the Motion for Temporary Injunction ("Motion") brought by Plaintiffs William O. Fuller and Martin Pinilla II.[1]  In addition to being premature until the Court determines whether it has jurisdiction over the City, the Motion impermissibly seeks extraordinary and unprecedented relief to enjoin the enforcement of any ordinance, resolution, or measure lawfully enacted by the City based on nothing more than Plaintiffs' say-so that an "unconstitutional retaliatory purpose" exists.  Plaintiffs then seek to deputize this Court as a pseudo-City Manager and to outright prohibit any City employee from taking "adverse action" against Plaintiffs and their businesses – whatever that means – when things don't go their way, even if their properties continue to endanger the safety of the people and patrons of the City.

The Court should not entertain any relief requested in the Motion expressly or impliedly against the City in this proceeding, let alone grant the requested relief on the merits.  Plaintiffs chose to drop the City from this case years ago, and they cannot now use the trial against Commissioner Carollo to obtain the relief that Plaintiffs forfeited through their own litigation strategy – particularly when no factual findings were ever made, nor was a verdict rendered, against the City (who was dropped as a party) in this case.  In the end, the Motion should be seen for what it is: an illegitimate attempt to accelerate the relief that related entities seek against the

---

[1]     The City has also filed and adopts its Limited Appearance and jurisdictional objections in opposition to Plaintiffs' motion to clarify or amend the judgment after Plaintiffs voluntarily dropped the City in their Second Amended Complaint (ECF No. 125).  *See* ECF No. 536. Likewise, the City enters its limited appearance here to preserve its rights against being subjected to the improper exercise of jurisdiction over it or the grant of injunctive relief the Court has no power to award against it.  Because Plaintiffs purport to seek relief against the City independently of their motion to clarify or amend judgment without addressing its non-party status, the City also addresses Plaintiffs' indirect efforts to enjoin the City as a non-party.

City in two other cases pending before two different courts. For these reasons, the Motion should be denied as to the City, and no relief should be granted against Commissioner Carollo regarding his official duties that affects the ability of the City to operate or enforce its laws.

I.   **BACKGROUND**

A.   **Plaintiffs Abandon Their Claim Against the City**

In October 2018, Plaintiffs filed a one-count Complaint against Commissioner Joe Carollo and John Does 1-10, alleging a First Amendment Retaliation claim. ECF No. 1. Months later, on the deadline to join additional parties or to amend, Plaintiffs filed an Amended Complaint to add the City and Maria Lugo, a former Carollo campaign advisor, as parties to this case. ECF No. 43.

Plaintiffs' Amended Complaint asserted a First Amendment Retaliation claim against Commissioner Carollo at Count I, a First Amendment Retaliation claim against the City at Count II, and a Conspiracy claim against the Commissioner and Lugo at Count III. *Id.* The claim against the City sought damages and an injunction to permanently enjoin the City from "further retaliation against [Plaintiffs] and further violations of the Miami City Charter." *Id.*, ¶ 302. The City moved to dismiss the claim against it. ECF No. 54.

This Court thereafter entered a Report and Recommendation ("R&R"), recommending that the City's motion to dismiss be granted. ECF No. 99. As to the injunctive relief sought against the City, the Court deemed Plaintiffs' request "overly broad" in asking that the City be enjoined "from taking further retaliatory action against Plaintiffs." *Id.* at 8. This Court reasoned that, "[a]s it stands, the Amended Complaint essentially asks the Court to prohibit Carollo and the City from performing their official functions if they could affect Plaintiffs. It is impossible for the Court to determine what types of conduct Plaintiffs deem 'retaliatory' for purposes of their request for an injunction." *Id.* The Court therefore recommended that the City's motion be granted on this basis, though with leave to amend. *Id.* The Court further held that Plaintiffs failed to state a claim for

relief against the City and recommended that their First Amendment Retaliation claim against it be dismissed but, again, with leave to amend. *Id.* at 24, 27. Following a *de novo* review, the District Judge affirmed and adopted the R&R. ECF No 118. The Court thus dismissed all claims against the City, but allowed Plaintiffs leave to amend their claims as to the City. *Id.* at 2.

Plaintiffs filed their Second Amended Complaint on June 28, 2019. ECF No. 125. There, Plaintiffs dropped the City (and Lugo) altogether from the case and asserted a single claim: First Amendment Retaliation against Commissioner Carollo in his personal capacity. *Id.* Plaintiffs did not seek to further amend their pleadings at any point during the remainder of the case. And the June 17, 2022 deadline to join additional parties or seek amendment of the pleadings passed without any action by Plaintiffs. ECF No. 235. The City therefore lacked any notice that Plaintiffs would seek damages or relief against the City under an official-capacity claim. In fact, while this case was on appeal on the Commissioner's qualified immunity defense, four entities owned and/or controlled by Plaintiffs sued the City for alleged violations of the federal and state constitution and the City Charter, seeking damages and injunctive relief on their behalf. *See infra*, § I.B.

This case thereafter proceeded to a jury trial on the First Amendment Retaliation claim against Commissioner Carollo personally on April 10, 2023 and lasted for several weeks.

**B.    Fuller-Related Entities File Other Lawsuits Against the City**

In the midst of this case, four entities partially owned by Plaintiff Bill Fuller filed a separate lawsuit against the City in this Court, which remains pending before Judge Altman.[2] *See The Mad Room d/b/a Ball and Chain, et al. v. City of Miami*, 21-cv-23485-RKA (S.D. Fla. filed Sept. 30, 2021). The *Mad Room* Plaintiffs' Amended Complaint alleges constitutional violations against the

---

[2]    Plaintiff Fuller partially owns the four entities that filed suit against the City – Mad Room LLC d/b/a Ball and Chain, Altos Mexicano, LLC d/b/a Taquerias El Mexicano, Little Havana Arts Building, LLC, and La Gran Fiesta, LLC. Plaintiff Pinilla also partially owns two of these entities, Altos Mexicano, LLC d/b/a Taquerias El Mexicano and La Gran Fiesta, LLC.

City and seeks damages as well as permanent injunctive relief (1) compelling the City to issue all entitlements and permits to Plaintiffs; (2) preventing the City from taking any action to prevent Plaintiffs from enjoying their constitutionally protected rights; and (3) preventing the City from allowing the City Commissioners, City Attorney, and City Manager, to further violate the City Charter. *See id.*, ECF No. 212. The *Mad Room* Plaintiffs never moved for a preliminary injunction, despite their pretext for rushed discovery early in the case. *See id.*, ECF No. 9. The City's Motion to Dismiss the Amended Compliant in that case remains pending. *See id.*, ECF No. 208.

Separately, five other Fuller-related entities filed another lawsuit in May 2023 against the City, this time in state court. *See Tower Hotel, LLC, et al. v. City of Miami*, No. 2022-8069-CA-44 (Fla. Cir. Ct. filed May 3, 2022). In the operative Complaint, the *Tower Hotel* Plaintiffs likewise ask the trial court to enter preliminary and permanent injunctive relief, including to prohibit the City from demolishing their properties as unsafe structures or revoking their certificate of use as to one of the properties. *See id*., Corrected Third Amended Complaint. The state court denied the *Tower Hotel* Plaintiffs' motion for preliminary injunction to stop demolition of an unsafe/unpermitted garage. *See* Ex. 1. That order is on appeal to the Third District Court of Appeal, which has ordered the parties to mediation. *See* Ex. 2. Like the *Mad Room* action, that case also remains pending.

### C.   The Court Instructs the Jury on Plaintiffs' Individual Capacity Claim Against Commissioner Carollo

Nowhere in Plaintiffs' proposed jury instructions, ECF Nos. 331, 431, did they request that the Court charge the jury on government entity liability, even though such instructions are readily available, Pattern Civ. Jury Instr. 11th Cir. 5.10.[3] Nor did Plaintiffs' proposed instructions say

---

[3]    The Comments to this instruction state that "[t]his instruction may be incorporated into any applicable § 1983 instructions when there is a claim against an individual defendant or defendants. In such case, jury interrogatories applicable to the government entity should be added if a special

anything about an "official policy or custom" as required to find municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), or to obtain prospective relief against the City, such as the injunction that they now seek here through their Motion. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29 (2010).

Near the end of trial, Judge Smith ordered the parties to submit joint jury instructions by May 24, 2023 for the final charge. ECF No. 441. The parties timely filed their proposed joint jury instructions, with each side offering competing instructions on the elements of the First Amendment Retaliation claim. ECF No. 445. Again, Plaintiffs did not include the Eleventh Circuit's pattern jury instruction on government entity liability in their proposal. And Plaintiffs' instructions make no mention of the City aside from a few passing references. *See, e.g.*, *id.* at 10.

The Court's final instructions on the elements of the First Amendment Retaliation claim likewise did not charge the jury to make any findings as against the City. ECF No. 475. As with the parties' joint proposed instructions, the Court only mentioned the City when reciting Plaintiffs' position that Commissioner Carollo "caus[ed] or commandeer[ed] City [ ] officials to selectively target" them for exercising their First Amendment rights. *Id.* at 7-8. No instruction was given on municipal liability, let alone the Eleventh Circuit's pattern jury instruction for such a claim. *Id.*

### D.      The Jury Returns a Verdict Against the Commissioner Without Any Findings Against the City

The jury returned a verdict on June 1, 2023 seven interrogatories on the verdict form as to each of the two Plaintiffs. ECF No. 470. None of them, however, included a single finding related to the City:

---

verdict form is used." Pattern Civ. Jury Instr. 11th Cir. 5.10 (2022). As explained below, no such interrogatories applicable to the City were used on the verdict form in this case.

1.  Did Joe Carollo intentionally commit acts that violated Bill Fuller's right to free speech or assembly?[4]

2.  Were Joe Carollo's actions done "under color" of state law?

3.  Did Joe Carollo's conduct cause Bill Fuller's injuries?

4.  Would Joe Carollo have taken the same actions toward Bill Fuller even if Bill Fuller had not exercised his First Amendment rights?

5.  Should Bill Fuller be awarded compensatory damages against Joe Carollo?

6.  What amount of nominal damages should Bill Fuller be awarded against Joe Carollo?

7.  Should punitive damages be assessed against Joe Carollo and in favor of Bill Fuller?

*Id.*  The jury answered the same questions as to Pinilla.  *Id.*  Ultimately, the jury awarded Plaintiffs $63,500,000, of which $47,600,000 was for punitive damages.  ECF Nos. 470, 479.  Punitive damages are, of course, not recoverable in official capacity cases.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).  The judgment did not include any liability against the City. Nor could it, as the City was no longer a party nor on notice that damages were sought against it. And neither the jury instructions nor the verdict form mentioned a claim against the City.

The parties thereafter filed post-trial motions, including Plaintiffs' Motion for Temporary Injunction, ECF No. 512 and their Motion to Clarify or Amend Final Judgment, ECF No. 504.

### E.      Plaintiffs Now Seek Injunctive Relief Against the City, a Non-Party

Four years after abandoning their claims against the City, Plaintiffs now attempt to obtain injunctive relief against the City.  The newly requested relief is even broader in scope than the relief originally requested and rejected by this Court as an attempt to prohibit "Carollo and the City from performing their official functions if they could affect Plaintiffs."  ECF No. 99 at 8.

---

[4]      This finding in favor of Plaintiffs alone triggers state law prohibiting the City from paying any portion of compensatory damages awarded Plaintiffs.  *See* Fla. Stat. §111.071(1)(a).

Although styled as a motion for injunctive relief against only Commissioner Carollo, Plaintiffs' requested relief is much broader.  They ask for an injunction enjoining Commissioner Carollo—"including his agents, representatives, servants, employees, attorneys, and all others who are in active concert or participation with him"—from engaging in further First Amendment Retaliation against Plaintiffs for the remainder of his term as Commissioner, including by:

> (a) prohibiting Defendant from taking or continuing any action targeting Plaintiffs either by enacting, implementing, enforcing, or carrying out policies or customs designed to adversely affect Plaintiffs or their associated businesses or properties, or by otherwise selectively enforcing policies or customs adversely to Plaintiffs or their associated businesses or properties relative to other similarly situated individuals or entities;

> (b) prohibiting Defendant from taking any retaliatory or discriminatory measures or other adverse actions with the purpose of precluding, deterring, or discouraging Plaintiffs from exercising their rights under the First Amendment;

> (c) prohibiting Defendant from instructing any City of Miami employee to take any adverse action against Plaintiffs or their associated businesses or properties, and precluding the enforcement of any ordinance, resolution, or other measure enacted by the City of Miami for an unconstitutional retaliatory purpose;

> (d) retaining jurisdiction over this matter for purposes of enforcing or modifying the terms of the injunction; and

> (e) appointing Magistrate Judge Lauren Louis as a Special Master to monitor compliance with the injunction.

ECF No. 512 at 19.  This requested relief no doubt implicates the City, particularly in asking for an injunction to preclude the adoption of and enforcement of the ordinances, resolutions, and other measures that the City lawfully passes.  Not only does the Court lack jurisdiction to grant injunctive relief against the City, but doing so also would set a dangerous precedent and turn City government on its head.  The Motion should be denied as it relates to the City, as well as to the extent that it would impair the City's ability to govern and enforce its laws.

## II.   ARGUMENT

### A.   The Court Lacks Jurisdiction to Enjoin the City in this Proceeding

Generally speaking, "a district court [ ] lacks subject matter jurisdiction to issue injunctive relief against non-parties." *Smith v. United States*, 2009 WL 1942566, at *1 (S.D. Fla. June 30, 2009) (citing *In re Infant Formula Antitrust Litigation, MDL 878 v. Abbott Laboratories*, 72 F.3d 842, 842-43 (11th Cir. 1995)).   Courts around the country therefore routinely deny injunctions where, as here, the movant seeks to enjoin a non-party municipality. *See, e.g.*, *Spraggins v. Walton Cnty.*, 2012 WL 953093, at *5 (N.D. Fla. Mar. 2, 2012), *adopted by,* 2012 WL 953104 (N.D. Fla. Mar. 21, 2012) ("[B]ecause the City of Freeport is not a party to this action, the Court is without jurisdiction to enjoin the City from enforcing the ordinance."); *Mitchell v. Imperato*, 2019 WL 1018696, at *2 (E.D. Cal. Mar. 4, 2019) ("[T]his court could not issue such an order because the city is not a party to this lawsuit.   The court does not have the authority to enter an injunction against a non-party.").   This alone warrants denial of the Motion as it relates to the City.

For their part, Plaintiffs also cannot meet the narrow exceptions to this rule, which can bind "other persons who are in active concert or participation with" the parties or their officers, agents, servants, employees, and attorneys.   Fed. R. Civ. P. 65(d)(2)(A)-(C).   No factual findings were ever made, nor was a verdict rendered, against the City itself in this case, with liability only being found against Commissioner Carollo in his individual capacity.[5]   Plaintiffs concede as much in

---

[5]     The jury's finding that Commissioner Carollo was acting "under color" of state law does not transform this case into an official capacity lawsuit or any finding as against the City.   As one Eleventh Circuit judge has explained the mere fact that a defendant was acting under color of state law does not mean that the claim against him is one of official capacity:

> Both individual capacity and official capacity claims brought under § 1983 require action "under color of state law"—meaning that both types of claims necessarily arise out of conduct that is connected in some way to the state employee's authority as a government official.   But the mere fact that a state employee was acting under color of state law does not mean that a claim against that employee targets him in

their request for a "temporary" injunction that will terminate in two years with the conclusion of Commissioner Carollo's term in office.  *See Attwood*, 818 F. App'x at 873 (Grant, J., concurring in part) (opining that action against state legislator must be in his individual capacity because relief requested concerned personal social media pages and "it would make no sense to have his successor-in-office automatically assume his role in the litigation.").  Plaintiffs likewise never asked the jury to make any findings regarding a City policy or custom, despite their strained efforts now to cobble together snippets of trial testimony to say otherwise.  A finding of a "policy or custom" is, of course, an absolute prerequisite for a plaintiff to recover monetary damages – or obtain prospective relief such as an injunction – against a municipal government like the City.  *See Humphries*, 562 U.S. at 30.  Without this showing, or any of *Monell's* other exceptions, sovereign immunity bars any claims for relief against the City, as this Court has recognized.  ECF No. 99 at 24.  The Court should not credit Plaintiffs' attempt to skip this required showing, particularly when they try to use evidence from a case in which the City was not a party – by Plaintiffs' own making – with no ability to defend itself at trial or contest the evidence that Plaintiffs now waive around.

The City's limited attendance at portions of this case does not alter the outcome, nor does its counsel's presence in the courtroom during trial, as Plaintiffs have repeatedly stated elsewhere. *See* ECF 504 at 7 ("At trial, the City of Miami sent its own in-house attorneys and also its outside counsel from the firm of Buchanan Ingersoll to every single day of the trial.").[6]  As courts in this

---

his official capacity.  That is true even though—again, confusingly—the phrase "acted in an official capacity" is often used interchangeably with "acted under color of state law."  So the term "official capacity" can mean one thing when describing the capacity in which an official acted, and another when describing the capacity in which the official is sued.

*Attwood v. Clemons*, 818 F. App'x 863, 872 (11th Cir. 2020) (Grant, J., concurring in part).

[6]     The witnesses at trial in this case included current and former City employees, ECF No. 480, so the City had no choice but to monitor in light of the pending *Mad Room* and *Tower Hotel*

District have found, this does not mean that the City's "rights and interests have been represented and adjudicated" for purposes of finding privity as a basis for binding a nonparty to an injunction. *RJ's Int'l Trading, L.L.C. v. Crown Castle S., L.L.C.*, 2023 WL 2002372, at *9 (S.D. Fla. Jan. 13, 2023) (citation omitted).  To the contrary, the City's attendance was so limited because "Plaintiff[s] chose to pursue relief from [Commissioner Carollo] alone." *Id.*  And "[counsel's] presence in the courtroom as a representative for [the City] says little about whether [the City] was adequately and fully represented in the proceedings," much less suffices to provide the City with its "own day in court." *Id.*  The Motion should be denied.

### B.     Plaintiffs' Requested Relief Against the City is Incapable of Enforcement

Plaintiffs ask that the Court prohibit City of Miami employees from taking "any adverse action against Plaintiffs or their associated businesses or properties."  Mot. at 19.  They go even further in asking the Court to "preclude[e] the enforcement of any ordinance, resolution, or other measure enacted by the City of Miami for an unconstitutional retaliatory purpose." *Id.*  None of this requested relief is enforceable, and Plaintiffs' so-called "precedent" is anything but that.

### 1.     Plaintiffs' "Obey the Law" Injunction is Overbroad and Vague

"It is well-established in this circuit that an injunction demanding that a party do nothing more specific than 'obey the law' is impermissible." *Am. Fed'n of Lab.-Cong. of Indus. Organizations v. City of Miami*, 2008 WL 11333331, at *3 (S.D. Fla. Sept. 4, 2008) (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999)).  This is because such requests do not satisfy the specificity requirements of Rule 65(d) and would be incapable of enforcement, thus failing the redressability requirements for standing. *Id.*  "Broad, non-specific language that merely

---

cases.  The only limited appearance before now of Buchanan in this action involved representation of City Attorney personnel (not Carollo) called as witnesses in the Carollo Motion for Sanctions against Plaintiffs for their counsels' *ex parte* communications with the former City Manager.  ECF Nos. 288-290.

enjoins a party to obey the law . . . [likewise] does not give the restrained party fair notice of what conduct will risk contempt." *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996).

Courts in this Circuit therefore routinely deny injunctive relief requests that vaguely seek to prohibit municipalities from violating the law, including a parties' constitutional rights. *See, e.g.*, *Burton*, 178 F.3d at 1201 ("[A]n injunction prohibiting the City from discriminating against the Okeechobee Center in future annexation decisions is not an available remedy to redress Appellants' alleged injuries."); *Am. Fed'n of Lab.-Cong. of Indus. Organizations*, 2008 WL 11333331, at *3 ("[T]he injunctive relief that Plaintiffs request–that the Court enjoin Defendants from engaging in conduct that violates Plaintiffs' rights under the First, Fourth, and Fifth Amendments is exactly the sort of nonspecific, 'obey the law' mandate that the Eleventh Circuit forbids."). Indeed, this Court has already dismissed a similarly overbroad request from Plaintiffs: to enjoin the City "from taking further retaliatory action against [them]" – as impossibly overbroad. ECF No. 99 at 8. Plaintiffs' latest request for injunctive relief to prohibit so-called "adverse action" against them and the enforcement of "unconstitutional retaliatory" ordinances is no different.

## 2.     Plaintiffs' Requested Relief Is Legally Unsupported

For their part, Plaintiffs prop up their overbroad request with readily distinguishable authority, as even they must concede. *See, e.g.*, Mot. at 5 (acknowledging the "slightly different context" in which the district court enjoined enforcement of Florida's electioneering communications laws) (citing *Broward Coal. of Condominiums, Homeowners Associations & Cmty. Organizations Inc. v. Browning*, 2008 WL 4791004 (N.D. Fla. Oct. 29, 2008), *order clarified*, 2008 WL 4878917 (N.D. Fla. Nov. 2, 2008)). The issue in *Broward Coalition* was not merely "a slightly different context" – it was an entirely different set of facts and claims. *See id.* at *1. In that case, the plaintiffs sued the Florida Secretary of State and other state employees in their official capacities and challenged a specific provision of the Florida electioneering

11

communication laws as unconstitutional.  The district court granted a preliminary (not permanent) injunction, only after concluding that plaintiffs were likely to succeed on their claims that the electioneering communication laws were unconstitutional.  *Id.* at **4-6.  Even then, the court limited the preliminary injunction and enjoined only the enforcement of the specific law challenged.  *Id.* at *15.  In so doing, the court made clear that the injunction did "not affect any other provisions of Chapter 106" – which were not challenged by plaintiffs.  *Id.*

The four other cases that Plaintiffs call "precedent" (they are not) provide little support for Plaintiffs' Motion.  *See* Mot. at 3-5.  None of these cases concerned a motion for permanent injunction against a non-party governmental entity, let alone one entered after the plaintiffs received a multi-million-dollar damages award against a private individual.  In each of them, the court-issued injunction was narrowly tailored to enjoin only the conduct found to be unconstitutional by the court and did not preclude the day-to-day integrity and function of a municipal government.  For example, in *Bauman v. City of Cumming*, 2007 WL 9710767 (N.D. Ga. Nov. 2, 2007), the court preliminarily enjoined the enforcement of an ordinance regulating public assembly and speech but carefully limited its order to the ordinance challenged by plaintiff and deemed unconstitutional by the court.  *Id.* at *7 (noting nothing in the order precluded the city from amending the ordinance or adopting a new one altogether).

Likewise in *Pryor v. School District No. 1*, 2022 WL 18145414 (D. Colo. Dec. 23, 2022), the court preliminarily enjoined the defendant-school district from enforcing the terms of a letter that prohibited plaintiff from attending schoolboard meetings or public comment sessions and banned him from school property, except during public events and in his capacity as a parent.  The court concluded, after a 7-day hearing, that the restrictions in the letter "are likely the result of improper retaliation" for plaintiffs' Facebook posts.  *Id*. at *15.  But the court denied the full scope

of the requested relief, explaining that the school could still "place some restrictions on him" if based on violations of school policy or other conduct not involving protected speech.  *Id*. at *16.

And, in *Manning v. Powers*, 281 F. Supp. 3d 953 (C.D. Cal. 2017), the court enjoined the enforcement of two conditions of plaintiff's parole (out of almost 100) that barred his access to social media websites and precluded him from attending and preaching at church.  While the court prohibited parole officials from "taking any retaliatory or discriminatory measures or other adverse actions" against plaintiff for participating in the lawsuit, it made clear that "[n]othing in the foregoing restrictions shall prevent the Department of Adult Parole Operations from fulfilling its important supervisorial and public safety functions."  *Id*. at 967.

Finally, in *Hof v. Nye County*, 2018 WL 4107897 (D. Nev. Agu. 28, 2018), county officials denied the renewal of plaintiffs' brothel license after they failed to timely apply for the renewal. The owner-plaintiffs sued the county and two county commissioners (in their individual and official capacities), alleging the county historically permitted all brothels to renew their licenses after expiration and their application was denied in retaliation for three prior lawsuits that they filed against county officials.  Unlike many of Plaintiffs' properties and businesses at issue, the brothel in *Hof* was in full compliance with county codes, *id*. at *7, and it did not pose any threat to the safety or welfare of the public.  After conducting a two-day hearing and finding plaintiffs were likely to succeed on the merits of their First Amendment retaliation claims, the court ordered the county to reinstate plaintiffs' brothel license and also enjoined the two commissioner-defendants from "participating in any decision by the Board in relation to Plaintiffs' brothel license *during* the pendency of this action."  *Id*. at *8 (emphasis added).  But the court did not enjoin the county from taking any action against plaintiffs during the pendency of the action—as they had requested.  The court made clear that the county was entitled to "take any actions it deems appropriate to enforce

13

its own ordinances," so long as it provided written documentation of code violations to plaintiffs before taking action during the pendency of the litigation.  *Id*. at *8.

All of these cases are therefore readily distinguishable from Plaintiffs request here, hardly amounting to their characterization of "federal precedent in similar circumstances."  Mot. at 3.

### C.      Plaintiffs Are Not Entitled to Enjoin the City

A district court may grant permanent injunctive relief only if the plaintiff satisfies a four-factor test, demonstrating "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Ultimately, an injunction "is 'an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion'" as to each of the four prerequisites. *Wilson v. Broward Cnty., Fla.*, 2008 WL 708180, at *2 (S.D. Fla. Mar. 14, 2008) (quoting *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)); *see also Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).  Plaintiffs cannot make that required showing here on each of the four elements to obtain injunctive relief against the City.

### 1.      Plaintiffs Have Not Shown an Irreparable Injury Caused by the City, and They Were Not Without an Adequate Remedy at Law

Plaintiffs spend pages reciting snippets of trial testimony to support the idea that a purported "city policy" or "city custom" exists to retaliate against them for exercising their First Amendment Rights.  To begin, none of the cited trial testimony can bind the City – a non-party dropped from the case. *See Brown v. Buncich*, 2016 WL 5848662, at *2 (N.D. Ind. Oct. 6, 2016) ("Parties can be dropped from a cause of action through the filing of an amended complaint that

does not name the dropped party.").  And nothing in their narrative shows that they suffered an irreparable injury – namely, First Amendment Retaliation – caused by the City itself through an official policy or custom (and, of course, no jury found that to be the case because Plaintiffs never raised it at trial).  Nor do they make any effort to show why they were without an adequate remedy at law – namely, an actual claim against the City before they abandoned that pursuit – had they believed this story to be true.[7]  Because Plaintiffs' Motion is premised on presumed facts that were never found against the City at trial, their requested relief to enjoin the City's enforcement of its laws is legally unsupportable.

In *Los Angeles County, Cal. v. Humphries*, the Supreme Court of the United States held that "*Monell*'s 'policy or custom' requirement applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective."  562 U.S. at 39.  This means that parties, such as Plaintiffs, must prove that their injury was caused by a municipal policy or custom before they may obtain an injunction or a declaratory judgment.  *Id.* at 30.

Plaintiffs have failed to meet that threshold requirement here.  They dropped their claims against the City.  This alone is reason enough.  Further, they did not request a jury instruction on government entity liability or even ask the jury to answer any interrogatory on the special verdict form regarding an "official policy or custom."  The jury therefore made no findings as against the City.  Nor has any court determined that the "ordinances, resolutions, or other measures" vaguely referenced in Plaintiffs' requested relief are unconstitutional infringements on their First Amendment rights, much less were targeted to retaliate against them.  Plaintiffs therefore have no actual evidence against the City, and no amount of self-serving news clippings scattered

---

[7]     To the extent an affiliate of Plaintiffs is subject to an adverse determination by a City agency (such as a code violation), it has the right to pursue administrative remedies, which they have made ample use of.

throughout their Motion, let alone the untested allegations in Fuller's affidavit, can make up for this fatal deficit in the record.  Plaintiffs' repeated emphasis on the presumptions of irreparable harm applicable to First Amendment claims is thus completely irrelevant as to the City when, as here, they lack the very factual predicates required for that precedent to apply.  And this should be unsurprising given that Plaintiffs decided to abandon their claims against the City long ago.

To be clear, Plaintiffs had an adequate remedy at law to redress any purported "policy or custom" of the City to retaliate against them for exercising their constitutional rights: a First Amendment Retaliation claim against the City.  But they dropped the City from this lawsuit more than *four years ago*.  And Plaintiffs know how to sue the City, as shown in the *Mad Room* and *Tower Hotel* cases.  They never bothered to seek injunctive relief against the City in *Mad Room*, and they lost their injunction motion in the *Tower Hotel* case.  Now is not the time, and this is certainly not the mechanism, for Plaintiffs to be given a pass on their own litigation strategy particularly when, again, the City did not participate in the trial against Commissioner Carollo or have any ability to defend itself from the so-called findings that Plaintiffs now rely upon as support.  Because Plaintiffs cannot make the required showing on these necessary elements, their Motion against the City should be denied.

### 2.    The Balancing of Equites and the Public Interest Weigh Against Impermissible Judicial Interference with Local Government

Plaintiffs likewise fail to meet the third and fourth requirements for permanent injunctive relief.  In the Motion, Plaintiffs profess that they are not "asking the Court to enter an onerous and intrusive injunction that would require it to delve into and supervise the minutia of City administrative actions."  Mot. at 3.  But this is exactly what they seek.  And "when a party seeks injunctive relief in federal court against a state or local government or governmental entity, concerns of federalism counsel respect for the 'integrity and function' of those bodies, in other

words, the federal court must be cautious about issuing an injunction against a municipality." *Signature Properties Int'l Ltd. P'ship v. City of Edmond*, 310 F.3d 1258, 1269 (10th Cir. 2002) (citing *Knox v. Salinas*, 193 F.3d 123, 129-30 (2d Cir. 1999)).  Courts therefore reject motions for injunctive relief as against the public interest where, as here, they would unnecessarily intrude on the function of local government with overbroad requests. *See, e.g.*, *George's Place, LLC v. Smith*, 2012 WL 360161, at *11 (M.D. Fla. Feb. 2, 2012) ("The public is best served by law enforcement officers who are not hindered by a necessarily imprecise court order attempting to limit their discretionary duties or enjoin them from acting 'unreasonably.'").

Plaintiffs likewise seek an overly intrusive injunction that would require the Court to supervise the day-to-day operations of City government.  Again, they ask this Court to enjoin City employees from taking "any adverse action against Plaintiffs or their associated businesses or properties," and to preclude "any adverse action against Plaintiffs or their associated businesses or properties."  Mot. at 19.  This is nothing more than a thinly veiled attempt to thwart the City from any future code enforcement action against their related properties, no matter how well-justified the City's action may be.  Worse, Plaintiffs' requested relief also seeks to create two sets of rules for code compliance – one set for only them and one for everyone else – and then burden this Court to oversee and enforce their special rules at every level of City government.  Such an order immunizing Plaintiffs and any business affiliated with them (no matter how loosely) would dismantle the integrity and function of the City as a municipal government.  *See* Ex. 3, (listing dozens of properties known to be affiliated with Plaintiffs).  The City must be able to enforce its laws and regulations without federal judicial pre-clearance when the health, safety, or welfare of its people and patrons are at issue.  Plaintiffs' proposed injunction outright strips the City of its ability to do so.  And, perhaps most importantly, not a single ordinance, resolution, or measure that

Plaintiffs now complain about has been found to have been enacted by the City "for an unconstitutional retaliatory purpose"—the very premise of their requested relief to enjoin the City's enforcement power as to Plaintiffs and their unidentified "associated businesses or properties." Mot. at 19.  The Motion should be denied on this ground as well insofar as Plaintiffs seek relief against the City.

As to the injunctive relief that purports only to be directed at Commissioner Carollo, Plaintiffs again seek to disrupt the function of City government.  The requested relief requires a broad swath of City employees to assess interactions with Commissioner Carollo to determine whether they might be held in contempt of court.  Not only is this unworkable, but it also imposes a significant burden on the City and its taxpayers and prejudices the ability of the City to enforce its own laws.  It further intrudes into the attorney-client relationship that the City Attorney and her office has with every City official, which includes Commissioner Carollo, in advising them on their official functions.  *See City Charter, Sec. 21.*  And forbidding Commissioner Carollo from voting on any resolution or ordinance or matter that comes before the Commission that "might" impact Plaintiffs and their affiliates also places an undue burden on the City, as well as depriving the residents of Commissioner Carollo's district, District 3, from having representation on matters that affect them.  This is especially so because all of the entities Plaintiffs alleged to be affected are based in District 3.  Finally, and not insignificantly, prohibiting Commissioner Carollo from voting on such matters for as long as he holds office also will affect the ability of the City Commission to function.  As a five-member commission, the lack of one commissioner vote can lead to a 2-2 deadlock, paralyzing the City.  Unlike in the case of unelected government officials, a commissioner holds an office whose duties only he can discharge.  The Motion should also be denied on these grounds.

**D.      Plaintiffs' Covert Request for a Mandatory Injunction Should be Denied**

Taken to its logical end, Plaintiffs' requested relief seeks to force the City to issue them entitlements and permits in perpetuity—lest City employees be accused of taking "adverse action" against Plaintiffs and finding themselves in contempt of Plaintiffs' overbroad injunction.  This essentially requires the City to act at Plaintiffs' behest—a disguised attempt to obtain mandatory injunctive relief against the City.  The Court should summarily deny Plaintiffs' request for a mandatory injunction dressed up in different language.

"'[M]andatory injunctions are to be ***sparingly issued*** and upon a ***strong showing*** of necessity and upon equitable grounds which are clearly apparent.'"  *Fernandez v. Bal Harbour Vill.*, 49 F. Supp. 3d 1144, 1151 (S.D. Fla. 2014) (quoting *Fox v. City of W. Palm Beach*, 383 F.2d 189, 194 (5th Cir. 1967)) (emphasis added); *see also Delivery.com Franchising, LLC v. Moore*, 2020 WL 3410347, at \*\*9-10 (S.D. Fla. June 19, 2020), *adopted by* 2020 WL 4464674 (S.D. Fla. July 14, 2020) (observing that "[m]andatory injunctions are extraordinary and drastic remedies" that "courts generally disfavor").  In fact, "[t]he Eleventh Circuit standard for a mandatory injunction is a 'heightened standard' where the party seeking the relief must make a 'clear' showing" on each of the required elements of the injunction.  *Delivery.com Franchising, LLC*, 2020 WL 3410347, at \*9.  The remedy is therefore available only "where a clear legal right has been violated, irreparable harm has been threatened, and there is a lack of an adequate remedy at law." *Fernandez*, 49 F. Supp. 3d at 1151. (citation omitted).  Absent these showings, a request for mandatory injunctive relief should be denied.  *Id.*

As set forth above, Plaintiffs have not made these required showing against the City.  No findings have been made, nor was a verdict rendered, against the City.  Plaintiffs, after all, dropped the City from this case based on their own litigation strategy.  And while Plaintiffs' related entities have pursued different claims against the City in other cases and in other courts – none of those

plaintiffs have successfully enjoined the City's enforcement of its laws or had them deemed unconstitutionally invalid. Plaintiffs are therefore left without any actual, admissible evidence as against the City, including on an official policy or custom, despite what they now say through snippets of testimony from a trial in which the City did not participate, much less defend itself. That sort of last-grasp approach is insufficient to obtain a sparingly used remedy that requires a strong showing of entitlement to relief and should be rejected.

III.    **CONCLUSION**

The Motion is a transparent end-run around Plaintiffs' strategic choices to drop the City from this case, coupled with their unlawful attempt to accelerate the relief that the *Mad Room* and *Tower Hotel* Plaintiffs seek against the City in distinct litigation and separate proceeding involving different claims and parties. This is a gross overreach by them, particularly when no jurisdiction exists and not a single factual finding has been made against the City itself in this case, let alone a jury verdict. Plaintiffs nevertheless seek to immunize themselves from governmental oversight through an overbroad prohibition on any "adverse action" against them and enforcement of the City's laws by its employees. As before, the Court should not allow this. Nor should the Court insert itself into this matter of local governance, as Plaintiffs ask, to become the oversight authority for every noise complaint, code violation, or safety inspection that occurs at their related businesses. This is not the function of federal courts.

For these reasons, the City requests that the Court deny the inappropriate injunctive relief sought against the City in the Motion, as set forth above.

Dated: August 7, 2023.                    Respectfully Submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

By: /s/ *Raquel A. Rodriguez*
Raquel A. Rodriguez (Florida Bar No. 511439)
Daniel R. Lazaro (Florida Bar No. 99021)
Michael E. Dutko, Jr. (Florida Bar No. 72505)
Jesse Stolow (Florida Bar No. 1035214)
2 South Biscayne Boulevard, Suite 1500
Miami, FL 33131
Primary Emails:  raquel.rodriguez@bipc.com
                      dan.lazaro@bipc.com
                      michael.dutko@bipc.com
                      jesse.stolow@bipc.com
Secondary Emails: joshua.king@bipc.com
                      soraya.hamilton@bipc.com
                      marilee.tamesolmedo@bipc.com
                      patricia.delgado@bipc.com

-and-

Victoria Méndez, City Attorney
(Florida Bar No.194931)
Kerri L. McNulty, Senior Asst. City Attorney
(Florida Bar No. 16171)
Kevin R. Jones, Asst. City Attorney
(Florida Bar No. 119067)
Brandon L. Fernandez, Asst. City Attorney
(Florida Bar No. 1002969)
444 S.W. 2nd Avenue, Suite 945
Miami, FL 33130
Primary Emails:  bfernandez@miamigov.com
                      klmcnulty@miamigov.com
                      krjones@miamigov.com
                      vmendez@miamigov.com
Secondary Emails: tmickens@miamigov.com

*Attorneys for Non-Party, City of Miami*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and accurate copy of the foregoing instrument has been

filed with the Court's CM/ECF System on August 7, 2023 and thereby served upon all counsel of

record.

*/s/ Raquel A. Rodriguez*
Raquel A. Rodriguez
