```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                        (FORT LAUDERDALE)
                        CASE NO.  18-CV-24190
 3

 4   WILLIAM FULLER and
     MARTIN PINILLA, II,
 5         Plaintiffs,                  Fort Lauderdale, Florida
     vs.                                May 30, 2023
 6
     JOE CAROLLO,
 7         Defendant.
     --------------------------------------------------------
 8                         Trial Day 22
                   BEFORE THE HONORABLE RODNEY SMITH
 9                  UNITED STATES DISTRICT JUDGE

10   APPEARANCES:
     FOR THE PLAINTIFFS:  AXS LAW GROUP, by:
11                         Jeffrey W. Gutchess, Esq.,
                           Courtney Anne Caprio, Esq.,
12                         Joanna Niworowski, Esq.
                           Amanda Suarez, Esq.
13                         2121 NW 2nd Avenue, Suite 201
                           Miami, Florida  33127
14

15   FOR THE DEFENDANT:  KRINZMAN, HUSS,
                         LUBETSKY, FELDMAN & HOTTE, by:
16                         Mason A. Pertnoy, Esq.,
                           169 E. Flagler Street, Suite 500
17                         Miami, Florida  33131

18                         KUEHNE DAVIS LAW, by:
                           Benedict P. Kuehne, Esq.
19                         100 S.E. 2nd Street, Suite 3105
                           Miami, Florida  33131
20
                           SHUTTS & BOWEN, by:
21                         Marc D. Sarnoff, Esq.
                           200 S. Biscayne Blvd., Suite 4100
22                         Miami, Florida  33131

23

24

25
```

```
 1   APPEARANCES CONTINUED:

 2   FOR THE DEFENDANT:    COLE, SCOTT & KISSANE, by:
                          Thomas E. Scott, Esq.
 3                        Amber C. Dawson, Esq.
                          9150 South Dadeland Blvd., Suite 1400
 4                        Miami, Florida  33156

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**INDEX**

**DEFENDANT'S WITNESSES**:

|  | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| ARTHUR NORIEGA | 38 | 45 | 109 | |

Charge Conference ..................... 132

| **PLAINTIFFS' EXHIBITS** | **RECEIVED** |
|---|---|
| 643 | 55 |
| 720 | 75 |
| 726 | 82 |
| 725 | 84 |
| 584 | 95 |
| 736 | 98 |
| 722 | 101 |

1      **<u>TUESDAY MORNING SESSION, MAY 30, 2023</u>**

2      <u>P-R-O-C-E-E-D-I-N-G-S</u>

3      - - -

4      (Call to the Order of the Court.)

5      THE COURT:  Again, good morning, everyone.  Patricia,

6      you would like to call the case, please.

7      THE COURTROOM DEPUTY:  Yes, sir.  This is Fuller, et

8      al. versus Carollo.  Case number is 18-CV-24190, Smith.

9      Counsel, please state your appearances for the record.

10      MR. GUTCHESS:  Good morning, Your Honor.  Amanda

11      Suarez, Rossana Arteaga-Gomez, Courtney Caprio, and Jeff

12      Gutchess on behalf of the plaintiffs.

13      THE COURT:  Good morning.

14      MR. PERTNOY:  Good morning, Your Honor.  Mason

15      Pertnoy, Leah Gardner, Marc Sarnoff, Ben Kuehne on behalf of

16      Commissioner Joe Carollo.  Per the Court's email of last

17      evening, Amber Dawson has been excused for health reasons.

18      THE COURT:  All right.  Thank you.  With that said,

19      we have the direct -- your witness is present for the direct

20      examination?

21      MR. KUEHNE:  I believe he's outside, Your Honor.

22      THE COURT:  You have 20 minutes remaining total.  You

23      would like to use the entire 20 minutes now or you want to

24      reserve some on redirect?  It's up to you, Mr. Kuehne, how you

25      desire to use those minutes.

```
 1            MR. KUEHNE:  Yes, sir.  I will use some of that time

 2   now and then all of that time --

 3            THE COURT:  Do you want a reminder or are you going

 4   to ask the questions?  I'll leave it up to you.

 5            MR. KUEHNE:  I think I'll be able to keep track.

 6            THE COURT:  I'll defer that to defense.  That's fine.

 7   With that said, also once the witness is done, who's your next

 8   witness?

 9            MR. KUEHNE:  The defense will call Commissioner Joe

10   Carollo.

11            THE COURT:  Okay.  Again, as I mentioned before, you

12   will have up to two hours.  There shall not be any examination

13   that was done during his examination previously as it was

14   stated it was four days of direct and cross-examination, so

15   anything that's new, you may explore but do not reiterate

16   anything that was said during those four days of testimony.

17   So --

18            MS. GOMEZ:  Your Honor, if I may address the Court on

19   that subject matter.  We had asked opposing counsel to send us

20   a list of their topics, the topics they intend to address

21   because as you know, Commissioner Carollo testified for four

22   days, and so in order for us to be able to alert the Court of

23   if they're covering new topics, we would like to be able to

24   first argue that with the Court because we don't want two hours

25   of objections --
```

 1          THE COURT:  Look, if I hear repeated objections that

 2   are being sustained, that's going to be end of the direct

 3   examination.  This is not the opportunity to rehash issues that

 4   was brought on direct.  I think it's most extremely long to

 5   call him out.  I don't know what other topics he's going to

 6   ask, if any.

 7          I think it shouldn't even reach that in that amount of

 8   time.  I don't know what topics Mr. Kuehne intends to ask.

 9   I will give him an opportunity to call him.

10          What topics are you going to explore that was not

11   addressed in direct and cross-examination and redirect

12   throughout these four days of testimony?

13          MR. KUEHNE:  One moment, Your Honor.

14          THE COURT:  After Mr. Carollo testifies, who's next?

15          MR. KUEHNE:  Your Honor, we do not expect any other

16   testimony from a live witness.  We will then make certain that

17   all the exhibits that we intended to enter into evidence are

18   entered into evidence.  We can do that without the jury being

19   here, but we will then, we believe, rest our case for the

20   defense.

21          THE COURT:  All right.

22          MR. KUEHNE:  After Mr. Commissioner Carollo finishes.

23          MR. PERTNOY:  To that effect, Your Honor, I had a

24   conversation with opposing counsel this morning to discuss

25   exactly that with the idea maybe being once the commissioner is

1    done, we do a little housekeeping this afternoon if need be,

2    charging conference tomorrow morning, and then commence

3    midmorning closing arguments.

4         THE COURT:  Charging conference will be done today.

5         MR. PERTNOY:  Then we would -- the thought being to

6    start closing arguments tomorrow morning, and go from there.

7         THE COURT:  I will let the jurors know that we will

8    close tomorrow, as well.  And everything, all housekeeping

9    matters, all motions that are outstanding, I will rule upon

10   them today that are pending.  And, again, we can address

11   everything else today and again have the jurors to be

12   instructed to be able to begin closing argument tomorrow

13   promptly at 8:30 in the morning we'll start.

14        Yes, Mr. Kuehne, sir, you may begin.

15        MR. KUEHNE:  Your Honor, the entirety of Commissioner

16   Carollo's examination is going to focus on the following topics

17   or themes, however we want to describe it.

18        First is his motivation for doing what he did.  It is

19   directly relevant to the defense and the affirmative defenses

20   and his motivation was not the subject of examination by the

21   plaintiff or the cross-examination.

22        THE COURT:  That was brought out, sir, during direct

23   examination extensively, as well.  The record is replete with

24   that, as well.  Again, if you intend to rehash, I mean, I

25   remember this case distinctly.  I take copious notes.  That was

```
 1   brought out.  What you're saying doesn't even make sense as the
 2   whole point of their case.  They brought that out during when
 3   they cross-examined him.  You brought it out on your direct
 4   examination as well.
 5           So next topic, sir?  Again, like I said, it's on the
 6   record.  Clearly, what you had brought out, I don't know.  Any
 7   new questions, I will permit any new question, but not anything
 8   that's going to be repetitive or what was brought out in
 9   testimony during those four days.  So any question that was not
10   said on the record, issues, you're free to explore.
11           MR. KUEHNE:  The next topic is the reason for the
12   information gathering that he passed along to the city function
13   and officials, and why he did that distribution and
14   dissemination of information.
15           MS. GOMEZ:  Your Honor, that was also covered
16   extensively.
17           THE COURT:  I recall that distinctively, as well.
18   That was brought out, too, sir.
19           MR. KUEHNE:  Next, Judge, I intend to ask
20   Commissioner Carollo to detail his background to make certain
21   the jury is aware of his personal background and history as it
22   rose to the level of the District 3 commissioner.
23           THE COURT:  You discussed his background, his
24   history.  I can tell you about his history as well.  You want
25   me to give it?  I can tell you about his history.  I learned
```

 1   more about Commissioner Carollo through your examination of the

 2   witness.  It was brought out.

 3         Do you want me to have Ellie to pull up the record and

 4   pinpoint that to you?

 5         MR. KUEHNE:  Judge, I don't think I'm going to be

 6   redundant but --

 7         THE COURT:  It is.

 8         MR. KUEHNE:  I'll look back at the material.  I don't

 9   believe that we did a full --

10         THE COURT:  Sir, I can have Ellie point that out on

11   the record.

12         MR. KUEHNE:  That might be helpful, Judge.  I've

13   looked at it, but I thought there was an area that --

14         THE COURT:  He brought out his credentials, how his

15   role when he was also mayor, how he saved the City of Miami

16   from bankruptcy.  You brought that out as well.  You brought

17   out ultimate the good deeds he has done in terms of his

18   credentials.  It was done ad nauseam, sir.  You have a whole

19   history.

20         This is not a -- remember, he spoke for four days and

21   I didn't cut anybody off here literally.  So now, again, you

22   can -- again, you have not told this Court anything that is

23   new.

24         MR. KUEHNE:  Your Honor, I intend to ask him about

25   his arrival in the United States as a Pedro Pan.

1            THE COURT:  Sir, that's denied.

2            MR. KUEHNE:  Your Honor, that was not gone into.

3            THE COURT:  That's irrelevant, sir.

4            MR. KUEHNE:  It identifies who he is and what his

5    values are, Your Honor.

6            THE COURT:  Sir, that's irrelevant.

7            MR. KUEHNE:  I did not mean to interrupt, Judge.

8            THE COURT:  I said that is irrelevant.  Next.

9            MR. KUEHNE:  Then I intend to ask him about his

10   growing up in Chicago.

11           THE COURT:  You mentioned that in Chicago, sir.

12           MR. KUEHNE:  United with his family, what he did in

13   Chicago, why he came back to Florida, and how he became

14   involved in public service.  I don't intend to ask him about

15   mayor and that base of business because I believe we covered

16   that on his examination.

17           THE COURT:  Mr. Kuehne, you talked about his

18   upbringing, as well.  That's in the record.

19           MR. KUEHNE:  I next intend to ask him about the

20   relationship that he had with individuals and businesses who

21   did not support him during the campaign and did support him to

22   make clear that the evidence will reflect the city treated

23   everybody identically.

24           THE COURT:  That would be permissible.

25           MS. GOMEZ:  I'm sorry, Your Honor?

 1            THE COURT:  That would be permissible unless that

 2     could be pointed -- I don't know the extent of that.  I think

 3     there was parallel.  I will give caution.

 4            Again, I want to be clear, Mr. Kuehne, when I made my

 5     decisions, I told you what not to explore.  If it's repetitive,

 6     cumulative, you're not asking those same questions.

 7            MR. KUEHNE:  We've combed through the record, and do

 8     not believe any of these topics as limited they are --

 9            THE COURT:  If you find out that this Court is in

10     error, that it was not covered, you have access to the record,

11     I will allow you to do so.  I'm not done -- Mr. Kuehne is not

12     done.

13            MS. GOMEZ:  Sorry, Your Honor.

14            THE COURT:  Are you done, Mr. Kuehne?

15            MR. KUEHNE:  No, Judge.  I'm giving you the topics.

16            THE COURT:  You will have an opportunity to respond.

17     Let Mr. Kuehne present his side first.

18            MR. KUEHNE:  I intend to ask the commissioner about

19     the business groups with which he engaged during the campaign

20     as well as continued to engage as District 3 commissioner.  The

21     business groups, the group of business owners, his relationship

22     with the business community.  I don't believe that's something

23     that we covered on his original examination.

24            And in that regard, I intend to ask the same questions

25     about community groups, community organizations with whom he

```
 1  established relationships during the campaign and how those

 2  relationships continued to this day during the discharge of his

 3  duties and responsibilities as commissioner.

 4          THE COURT:  Any response, counsel?

 5          MS. GOMEZ:  Well, Your Honor, his engagement with

 6  community groups is irrelevant because that's --

 7          THE COURT:  I don't understand with respect to this

 8  charge here, how is that relevant to the plaintiffs' claims?

 9          MR. KUEHNE:  Your Honor, it is directly relevant to

10  the plaintiffs' claims and Commissioner Carollo's defenses in

11  the sense that he will testify that during the course of the

12  campaign continuing to his District 3, he was in touch with

13  virtually all business associations, understood their concerns.

14  He was in touch with not just individuals, but organizations of

15  community citizens, activists.

16          THE COURT:  Mr. Kuehne, if I may, how can someone be

17  in touch with all business associations in Miami?  No one has

18  that ability to be in touch with all business associations.

19          MR. KUEHNE:  He's going to testify that --

20          THE COURT:  With all business associations, sir?

21          MR. KUEHNE:  No, Judge.

22          THE COURT:  You just told me that on the record.

23          MR. KUEHNE:  I apologize for being general.

24          THE COURT:  We need specificity, sir.  Not general.

25          MR. KUEHNE:  Yes, Your Honor.  He's going to testify
```

1    about his involvement and introduction to such business

2    organizations as the Latin Chamber of Commerce, very active in

3    District 3.  The Greater Miami Chamber of Commerce, very active

4    in District 3.  The Latin Builders Association, very active in

5    District 3.  The Little Havana Kiwanis Club, very active in

6    District 3 as business organizations, and that was part of his

7    learning about the district, and then staying in touch with

8    those organizations, whether the organizations supported him or

9    didn't support him to get the pulse of the business community.

10            THE COURT:  The relationship with those organizations

11   is irrelevant to this case, sir.  That's not going to be

12   allowed.  Next, sir.

13            MR. KUEHNE:  Your Honor, I would just note -- and I

14   understand the Court's ruling, but the plaintiff has put into

15   evidence that the defendant Carollo and the city was adverse to

16   his business interests, and we intend to demonstrate that

17   Commissioner Carollo was attentive to all the business

18   interests in his district.

19            THE COURT:  Again, sir --

20            MR. KUEHNE:  Including Little Havana, Calle Ocho.

21            THE COURT:  I understand.  My ruling remains the

22   same.  Next.

23            MR. KUEHNE:  Next, Commissioner Carollo intends to

24   identify with specificity individuals and businesses that were

25   distinctly not supportive of his campaign, and how they were

1    treated during the time he was District 3 commissioner

2    including the city taking action on permits and other aspects,

3    as well as individuals who supported him during his campaign

4    and how they were treated including the city -- the city

5    administration bringing permit issues, and other issues against

6    them to demonstrate the fair and equal treatment by the city of

7    the laws that apply to everyone, not differently because of

8    political affiliation.

9            MS. GOMEZ:  Your Honor, that was already covered.  He

10   mentioned that not only did he not care if people had supported

11   him or not, but he specifically mentioned people like Mayor

12   Suarez who had not supported -- I'm sorry, Jose Suarez who had

13   not supported him, and he didn't care about it.  That topic has

14   already been covered.

15           THE COURT:  I'm aware of that, as well.  So again,

16   Mr. Kuehne has done an extraordinary job combing through

17   conceivably every single thing that could be imaginably done

18   over those four days.

19           Again, to rehash these issues, either directly or

20   indirectly, this is what is another attempt to do so.  So, with

21   respect to that, it's on the record, that that was covered.

22   What's your next -- that will be sustained as well.

23           MR. KUEHNE:  Your Honor, with specific reference to

24   that, I intend to ask about specific businesses, specific

25   people who supported or didn't support him as opposed to the

```
 1   political environment.
 2           THE COURT:  Which specific people are you referring
 3   to, sir?
 4           MR. KUEHNE:  So, Your Honor, I intend to ask
 5   specifically about -- just one moment, Judge.  Individuals such
 6   as Carlos Fausto Miranda who was identified as BID, B-I-D
 7   founder, the Arturo Ortega Gonzalez family identified as part
 8   of the BID, B-I-D.  I intend to ask -- one moment, Judge, as I
 9   go through my notes.  Jennifer Knoll and McCool Marketplace, I
10   intend to ask about Robert Taylor of Velvet Cream, businesses
11   in the district.
12           I intend to ask about Brickell Motors, Pepe Vals.  I
13   think that's a representative example of the specifics that I
14   intend to inquire.
15           THE COURT:  All right.  Let me hear from plaintiff.
16           MS. GOMEZ:  Your Honor, he has already talked --
17   spoken at length about the BID, you know, the Business
18   Improvement District, and we even saw, you know, the flyer that
19   came in.
20           He spoke about Carlos Fausto Miranda, one of the
21   people he mentioned.  Robert Taylor, Your Honor sustained an
22   objection to.  We believe Your Honor sustained an objection to
23   Defense Exhibit 381 and 383 that we tried to introduce because
24   it was hearsay.
25           And so, Your Honor, that has already either been
```

 1    covered or the Court has already determined that it was

 2    inappropriate to bring it in in the way that they were trying

 3    to cover it.

 4           Moreover, none of these people have testified.

 5    There's not going to be an opportunity to cross-examine these

 6    people about anything he says about this.  To the extent he's

 7    going to be talking about what he believes these people thought

 8    or endorsed, it's all speculation and hearsay.

 9           THE COURT:  Look, I heard the testimony about the BID

10    and everything else he has done with respect to that.  I'm

11    sustaining the objection as with respect to that as well.

12           What's the other subject area you intend to cross?

13    Again, Mr. Kuehne, you have done an extraordinary job with

14    presenting your case, as well, and the Court allowed this going

15    even ad nauseam to the point there was no stone unturned.  You

16    went through it over and over again.

17           I made it clear this is not the opportunity again to

18    play the same music that was played throughout this trial,

19    again.  So what is the next topic you intend to address?

20           MR. KUEHNE:  Your Honor, just briefly on that point,

21    I understand the Court's rulings --

22           THE COURT:  Yes, sir.

23           MR. KUEHNE:  The plaintiffs have claimed, we believe

24    inconsistent with the evidence, that Commissioner Carollo took

25    action against virtually everybody associated with them.

1        And it is my intention with Commissioner Carollo's

2   examination to identify people associated with the plaintiffs

3   and not associated with the plaintiffs who received fair

4   treatment, positive or negative.

5        THE COURT:  You said, too, Mr. Kuehne.  If I may, I

6   don't want to belabor this issue with all due respect.  He

7   mentioned -- Mr. Carollo vehemently testified he treated

8   everybody the same, didn't matter who it was.  He made that

9   clear.  There was no doubt about this at all.  He made that

10  clear to this jury before the Court.  That, look, it doesn't

11  matter who you are, I treated everybody the same.  He covered

12  that ad nauseam, sir.

13       MR. KUEHNE:  Your Honor, I just intend to ask

14  specifics so that it's not covered generally but specifics.

15       THE COURT:  Sir, it's getting to the same point.

16  What you're doing, it's like asking the same indirectly, where

17  he said he was vehement about it and you can argue in closing

18  argument.  You can pull up what transcript, what he said.  He

19  treated everybody the same.  It doesn't matter who it was.

20  There was nothing against the plaintiff at all.  It's in the

21  record.  You can blow that up and show it to the jury, this is

22  what he said.  And it's right there on point.  It's not even --

23  it's covered all bases.  It was clear.

24       There was no ambiguity as to how he felt about this

25  case.  He didn't treat anyone in an indiscriminate manner.  He

```
1    was fair to everybody.

2          MR. KUEHNE:  Your Honor, I understand, and it's my

3    intention to identify some discreet examples so that it's not

4    just a generality in the plaintiffs' case, but it's the

5    specifics in the defendant's case as to individuals that Fuller

6    claims are aligned with him and how they were treated

7    individually, as well as business wise.

8          THE COURT:  Well, sir, again, he covered that

9    specifically, sir.  Again, he was adamant about it.  There was

10   no doubt.  There's no room for error that he said otherwise.

11   He was clear about that.

12         MR. KUEHNE:  I intend to ask Commissioner Carollo

13   about his knowledge and understanding of the city conducting

14   valet and parking examinations against numerous valet and other

15   parking operators, not just S & H, what happened with those

16   individuals, his understanding of why it happened with those

17   individuals to directly rebut and to affirmatively assert the

18   defendant's case that there was no targeting of S & H Valet.

19         In fact, it was an issue that applied to all the valet

20   operators and what happened with them distinctly contrary to

21   what the plaintiffs have claimed based on what we believe and

22   objected to as hearsay, that the only one targeted and the only

23   one found to have violations was S & H associated with Ball &

24   Chain.

25         THE COURT:  All right.
```

1          MS. GOMEZ:  Your Honor, he did speak about valets and

2    he spoke about his -- first of all, his understanding of how

3    the city covers valet.  That's not personal knowledge and

4    that's not what he's does as a commissioner.  He did talk about

5    the valet parking complaints and interactions and that's at

6    pages 31 through 33 of the transcript on May 5th.

7          THE COURT:  What does it say specifically as to -- I

8    do remember this topic was explored as well.  Everything that

9    was brought up by the plaintiff as Mr. Kuehne has done an

10   extraordinary job rebutting or exploring every single issue.

11   He left no stone unturned.

12         Again, this is another attempt to reiterate or engage

13   in cumulative evidence, or to start over the same thing that

14   was brought out extensively.

15         So what -- if you can read for the record to

16   Mr. Kuehne those pages because I remember distinctly that was

17   covered as well.

18         MS. GOMEZ:  Your Honor, the pages that we have are

19   pages 31 through 33 of the May 5th transcript and we are

20   pulling it up.  If Your Honor would like me to just read them?

21         THE COURT:  Sure.

22         MS. GOMEZ:  Mr. Kuehne asked:  Valet parking, did you

23   get complaints about valet parking --

24         THE COURT:  Read slow so Ellie can get it.

25         MS. GOMEZ:  Of course.

```
 1                THE COURT:  No one can type 2000 words a minute.

 2                MS. GOMEZ:  I apologize.  So the question was:  Valet

 3    parking?  Did you get complaints about valet parking?

 4                And this is a question by Mr. Kuehne.  And he said

 5    yes.  Did you make inquiry about any or all of the valet

 6    parkers in that area?

 7                Answer:  All that we had there.

 8                Question:  And by the way, who, if you know, in the

 9    city is responsible for regulating, overseeing valet parking?

10                Answer:  Well, it begins with the offstreet parking.

11    Then it has to go to different departments of the city to get

12    signoffs.  The Code Enforcement is one that has a duty if

13    they're violating their codes like parking in residential areas

14    to take action.  And, of course, the Offstreet Parking

15    Authority which is a semi-independent agency of the City of

16    Miami also has authority to make sure that if they gave any

17    permits, they're keeping to the requirements of that permit and

18    if they're parking without permits, to stop it or inform the

19    city so the city could stop it.

20                So it already is covered his understanding of how the

21    City of Miami deals with valet parking.

22                Then he continues:  Was there a parking issue in the

23    business district there?

24                Answer:  There was.

25                Question:  Was there enough parking?
```

1          Answer:  Well, there was not enough parking, there

2     still is not.  It's worse than ever.

3          Question:  And how about with valet parking?  Did you

4     come to understand what time of day most of the complaints

5     involved when it came to valet parking?

6          Answer:  It was all evening.  The complaints, that's

7     when valet was used during those times in the district only in

8     the evening.

9          Question:  And did the valet parking issues affect the

10    residents of that district?

11         Answer:  Very much so.  It was a quality of life

12    issue.

13         Question:  Is valet parking supposed to have an impact

14    on residents?

15         Answer:  No.

16         Question:  And did you at any time in responding to

17    valet parking issues tell administration what they had to do?

18         Answer:  No.  I just reported what I observed or what

19    complaints that came to me and what I observed after the

20    complaints.

21         THE COURT:  Look, the Court, again, is aware.  I've

22    heard enough.  Beyond that, as well, valet parking, all those

23    issues as I told you, Mr. Kuehne did not leave any stone

24    unturned.  Every time he makes a suggestion, that it's refuted

25    by the record that it was, in fact, covered.

1          What is the next subject you would like to inquire

2    about that was not covered during Mr. Carollo's testimony, sir?

3          MR. KUEHNE:  Yes, Your Honor.  Just to make certain

4    the Court understands, and I do understand the Court's ruling

5    with valet parking, I intend to ask specifically about the

6    names of other valet parking companies.  Something that was not

7    gone into, and his understanding as the D3 commissioner what

8    the process was to enforce the valet regulations involving

9    those specific valet companies.

10          And I note, Your Honor, that the plaintiff has made an

11   issue about no other valet company generalized has been subject

12   to the same examination and Commissioner Carollo's testimony,

13   affirmative testimony will be that is not an accurate picture

14   of the valet parking enforcement uniform across the district.

15          THE COURT:  He addressed that.  But, again, I will

16   allow you limited -- you can address a particular parking again

17   that was not mentioned there, if that's the case, but again, he

18   covered that sufficiently, so I will allow that, sir.

19          Again, as I told you, every time you mention, it's

20   something you have left no stone unturned with respect to

21   examining Mr. Carollo with respect to all the issues in this

22   case here.

23          So what's next, Mr. Kuehne?

24          MR. KUEHNE:  In the general framework, and then I'll

25   make it clear on the specific, the role of murals or public

1    artwork in the district and the commissioner's sponsoring for

2    the city of murals, artwork, public displays, including artwork

3    and public displays sponsored by the city under Commissioner

4    Carollo's watch, so to speak, as D3 commissioner.  And

5    placement of murals sponsored by the city on Fuller properties.

6            MS. GOMEZ:  Your Honor, they've already discussed

7    murals on Fuller properties.  That's first.

8            Second, the exhibits that they intend to introduce

9    with respect to the testimony appear to be four pictures of

10   artwork that is hanging in his office, one of which was for

11   Mohammed Ali.

12           To me, that is irrelevant.  It's something that

13   someone has hanging in his office, and has nothing to do with

14   going out in the community and considering what the artwork is

15   in the community.  So the topic has already been covered and

16   what they intend to cover is irrelevant.

17           THE COURT:  Let me hear from Mr. Kuehne.

18           MR. KUEHNE:  I just want to note that that's a

19   different topic that I was going to get to with Commissioner

20   Carollo.

21           THE COURT:  You covered artwork in his office?

22           MR. KUEHNE:  Well, that's a different topic.

23           THE COURT:  No, sir.  Just because it's a different

24   topic, it has to be relevant to the issue at hand.  Artwork in

25   his office of Mohammed Ali, that's not going to be allowed

 1  here, sir.

 2        MR. KUEHNE:  Back to the murals, there has been

 3  testimony that the plaintiff testified that Commissioner

 4  Carollo hated murals.  In fact, there was over major objection,

 5  a racist comment about a mural.

 6        THE COURT:  You addressed that, sir.  I sustained

 7  that objection with respect to that was an expert, not so much

 8  an expert, we covered that issue as well.  This whole mural,

 9  everything was already explored ad nauseam even through other

10  witnesses, sir.

11        MR. KUEHNE:  Not as to the commissioner and the

12  district and the city actively sponsoring the placement of

13  murals in the district.

14        THE COURT:  If you want to ask him this question that

15  he sponsored a mural in the city, that's fine.

16        MS. GOMEZ:  Your Honor, that's actually already been

17  covered.  He testified that he helped to pay for a mural on

18  Mr. Fuller's property.

19        THE COURT:  I know this mural topic, again, which was

20  covered but we can address that, and point it out in the record

21  if he, indeed, sponsored.  If he didn't, that was not covered

22  that he sponsored a mural, he can say that he sponsored a mural

23  with the city, that's fine.

24        MS. GOMEZ:  Your Honor, we are looking for the

25  record.  We do believe that he had testified he paid for a

1  mural on Mr. Fuller's property.  I have it right here.

2          THE COURT:  Read it for the record page and line.

3          MS. GOMEZ:  Page 79 of the transcript on May 1st.  He

4  said:  The murals that we have are murals of great Latin

5  singers, celebrities.  There's even one in one of your client's

6  buildings that I'm glad that he allowed it to be placed there

7  and you know what?  I helped pay for it.

8          THE COURT:  Next topic, sir, Mr. Kuehne.

9          MR. KUEHNE:  Next --

10          THE COURT:  Again, see, as you notice, we're going to

11  go through this ad nauseam.  I gave you all eight to ten days

12  instruction as what will be permitted.  Now we're rehashing

13  verbatim the same thing that has already been done through

14  cross-examination, redirect examination.  We're not here to do

15  that, sir, to play back the same testimony or to emphasize or

16  enhance that.  That was already done throughout this trial.

17          So if you can tell me specifically what other topic

18  that has not been addressed, we can move forward with this case

19  so I can have the jurors to come out here.

20          Everything you're telling me now is redundant and is

21  being refuted on the record that you did cover.  Like I said

22  before, you have done an extraordinary and phenomenal job as an

23  attorney representing your client.

24          MR. KUEHNE:  Thank you, Judge.  I do want to note

25  that I do not believe that any part of the examination done by

1    me of Commissioner Carollo was ad nauseam or done in a negative

2    fashion.

3           THE COURT:  I'm not saying ad nauseam in a negative

4    fashion.  I'm saying to the extent that you left no stone

5    unturned.  You covered everything from A to Z., and every time

6    you said no, I never covered it, it's refuted by the record.  I

7    remember this distinctively.  That's why I'm having the

8    attorneys to read you the record.  I remember those things.

9           MR. KUEHNE:  I understand, Judge.  I'm just making

10   certain that the Court understands that I did not intend to do

11   anything ad nauseam in connection with this case.  I intended

12   to establish directly relevant evidence.

13          THE COURT:  But not everything was relevant and also

14   there was no objection.  That's why it was ad nauseam.

15          MS. GOMEZ:  That is right.  There was no objection

16   from our side.

17          THE COURT:  I know.  That's why I let it go on like a

18   ship sailing never reaching its port.

19          MS. GOMEZ:  They had an opportunity to cover all of

20   these topics --

21          THE COURT:  I understand that.  Let me move on.

22   Mr. Kuehne, what is the next subject that you intend to ask

23   that was not covered?

24          MR. KUEHNE:  Next, I intend to elicit evidence

25   regarding the plaintiffs' exercise of speech and action

1  directly adverse to Commissioner Carollo, including supporting

2  an opponent in the reelection that Commissioner Carollo won

3  handily.  The plaintiffs' active involvement in efforts to

4  recall Commissioner Carollo that was defeated in court.

5       I intend to elicit evidence of the commissioner's

6  awareness of the attacks on him in public press conferences

7  given by, participated in by the plaintiffs in connection with

8  their effort to challenge publicly Commissioner Carollo and his

9  activities.

10       THE COURT:  Response?

11       MS. GOMEZ:  Your Honor, he spoke about the Alfie Leon

12  lawsuit ad nauseam.  He talked about the February 14th meeting.

13  He talked about the press conference.  He talked about the

14  rallies.  All of this was discussed at length during the four

15  days of testimony.

16       THE COURT:  I understand that.  Again, Mr. Kuehne,

17  anything else other than what has been said?  Again, this is

18  now becoming an nauseam before the Court.  Every time I ask you

19  to tell me something else, you give me the same information

20  that was brought out already on direct examination, and

21  redirect, and just now it's ad nauseam.  You keep doing the

22  same thing.

23       MR. KUEHNE:  So Your Honor can appropriately focus,

24  the point that I raised that I don't believe was addressed is

25  participation in a recall, a very specific activity in which

```
 1    the plaintiffs participated, the plaintiffs participated that
 2    was defeated through the legal process, but the plaintiffs had
 3    that opportunity and did engage in that opportunity to
 4    challenge Commissioner Carollo publicly.  That's a recall.
 5            Second --
 6            THE COURT:  That's -- first of all, that's
 7    irrelevant.  That's improper, sir, to do so.  We're not going
 8    to allow that.  Next.
 9            MR. KUEHNE:  Second, Your Honor, also in regard to
10    that, the plaintiffs' active involvement in opposing
11    Commissioner Carollo in his reelection.  Again, their effort to
12    use their political platform at the time they claim that
13    Commissioner Carollo was engaging in retaliation to defeat
14    Commissioner Carollo.
15            THE COURT:  Wasn't it published that they supported
16    Alfie Leon?  That's what the case is about -- let me finish.
17    They supported Alfie Leon, and because also Mr. Carollo became
18    Commissioner Carollo successfully, he defeated Alfie Leon, and
19    now because that Alfie Leon didn't win, now they're saying that
20    here, by supporting Alfie Leon, Mr. Carollo, these attacks he
21    disputed.  Well, no, they're upset because he didn't win and
22    also this is what this case is about, the First Amendment.
23            You're going to try to rehash the same issues either
24    directly or indirectly to intertwine it, sir, and we're going
25    back to spinning our wheels.
```

1          As I mentioned, they allowed you without any objection

2     to go ad nauseam throughout these things.  Everything you're

3     mentioning is on the record.  On the record, sir.

4          Now you may want to pinpoint, cherrypick here or

5     there.  Directly, it's still related.  It's still covered.

6     Next issue.

7          MR. KUEHNE:  Yes, Judge.  In that regard, again, to

8     just pinpoint because I've tried to do that, Alfie Leon was in

9     2017.

10         There's been testimony continuing through and

11    including maybe not the present time, but pretty close to it,

12    in 2021, during the timeframe that the plaintiffs have been

13    able to introduce evidence even though we've objected to that

14    timeframe, there was an additional election.

15         Commissioner Carollo was elected, and the plaintiffs

16    actively engaged in their political participation to defeat

17    Commissioner Carollo.  It was unsuccessful.  I do not believe

18    that's been touched.

19         MS. GOMEZ:  Your Honor, it has.  We're pulling it up

20    right now.

21         THE COURT:  Pull it up right now if that's the case.

22    Again, if my memory serves me correct, that's something that

23    you would not leave out, Mr. Kuehne.  You've done an

24    extraordinary job to defeat their theory.  Everything you

25    brought out, you're saying is what you brought out on direct.

```
 1   For a person as skillful as you are, you're not going to not

 2   address that point before the jury?

 3           MS. GOMEZ:  Your Honor, it was addressed on May 5th

 4   at page 80.  The question by Mr. Kuehne was:  What happened

 5   when you stood for reelection?  And the answer was:  I won by

 6   approximately 65 percent of the vote.

 7           THE COURT:  As I mentioned before, again, Mr. Kuehne,

 8   that everything you're mentioning, you explored those things

 9   vigorously.  There's nothing new under the sun, what you're

10   purporting to allege before this Court.  Next topic, sir.

11           MR. KUEHNE:  I understand that.  My point is

12   plaintiffs' participation in that, that was not covered.  I do

13   not believe I covered that and that --

14           THE COURT:  So the record is in error?

15           MR. KUEHNE:  No.  I asked about his reelection, and

16   he won.  Not about the plaintiffs' involvement in opposing the

17   reelection.

18           MS. GOMEZ:  He made a decision to not cover that

19   topic, Your Honor.  He could have gone into that.  We didn't

20   object.  The Court didn't limit his testimony.  He could have

21   continued asking about that line of questioning.

22           THE COURT:  You know what?  For the sake of moving,

23   he can ask that question.  Next?  All right.  He can explore

24   that.  All right.  Even though that particular -- it's still

25   cumulative in a sense, but I'll let you ask that question right
```

1   there.  We're not going anything beyond that.  Next subject

2   area.

3          MR. KUEHNE:  All right.  Next, I intend to elicit

4   testimony from Commissioner Carollo about the truthfulness, the

5   character traits of truthfulness, integrity of the plaintiffs.

6          THE COURT:  Sir, you know that's improper,

7   Mr. Kuehne.  All right, next?

8          MR. KUEHNE:  As well as the reputation evidence

9   concerning the plaintiffs.

10         THE COURT:  Sir, again, next question.  Next issue.

11         MR. KUEHNE:  Your Honor, respectfully, that was not

12   the subject of the examination.

13         THE COURT:  Sir, you cannot bring Mr. Carollo or any

14   other witness to say his reputation.  There was sustained

15   objections, sustained both where they tried to address any

16   purported name, what he's known by or nickname or reputation,

17   and I sustained that immediately.

18         So now to sit up -- unless you want them to sit up

19   there in cross-examination and ask about what is his

20   reputation, have you heard or do you know that he's been known

21   by this or that.  If you want to go there, you open up the

22   door, I'm going to defer to Mr. Kuehne's trial experience and

23   your strategy if you want to address that.

24         You want to address reputation, they will be given an

25   opportunity where they may want to cross-examine about what

1    they have heard or what they know, if any, about his

2    reputation.

3             MS. GOMEZ:  Your Honor, that's --

4             THE COURT:  Excuse me, I'm not done.  So I will allow

5    Mr. Kuehne to explore those issues about plaintiffs' reputation

6    if they decide to do so, knowing full well that you are waiving

7    any objection to the defendant -- I mean, the plaintiffs'

8    cross-examining the defendant on the same subject area.

9             Because I did exclude those things and sustained the

10   objection which was raised by the defendant on the very same

11   issue.  Now we want to use it as a sword on one hand and a

12   shield.  You if do that, open the door, you're going to take

13   the hinges off which I don't think you want to do.

14            MS. GOMEZ:  Your Honor, to explain to Mr. Kuehne how

15   that would open the door in terms of taking off the hinges, we

16   would bring back Rosa Romero and Art Acevedo to talk about how

17   he gets called Crazy Joe.

18            THE COURT:  They understand that.  If he wants to go

19   there, it's at his own peril.

20            MR. KUEHNE:  Respectfully, Rule 405 and 608 allow

21   those opinions as to truthfulness.

22            THE COURT:  Sir --

23            MR. KUEHNE:  The character trait of truthfulness.

24   That's my intention, not a general reputation.

25            THE COURT:  I understand what you want to

```
1    characterize it as, but no, that's what you want to
2    characterize it as which is not by this Court, all right?
3    Next.
4            MR. KUEHNE:  But that's what the Federal Rules of
5    Evidence --
6            THE COURT:  I understand that's what you want to
7    characterize.  It's not --
8            MR. KUEHNE:  Character trait of the truthfulness.
9    Credibility.
10           THE COURT:  I understand that, sir.  Next?
11           MR. KUEHNE:  Let's see, Judge.
12           THE COURT:  At this point, the jurors have been here
13   since 8:30.  Anything else, Mr. Kuehne?
14           MR. KUEHNE:  I think so, Judge.  Let me just check.
15           MS. GOMEZ:  Your Honor, I've been taking notes
16   throughout this discussion and my notes say that he can ask
17   about the reelection, and that if he wants to ask about the
18   truthfulness and reputation, he's opening the door but those
19   are the only topics that I have written down that the Court
20   will allow inquiry into, and I just wanted to make sure that is
21   correct?
22           THE COURT:  Correct.  Everything has been explored
23   vehemently on cross-examination, and ad nauseam.
24           MS. GOMEZ:  Thank you.
25           MR. KUEHNE:  Yes, Judge.
```

1           THE COURT:  It was days, I mean days, and I'm looking

2      at the plaintiff.  They're not saying anything.  I just sat

3      there.  I didn't want to interject myself, but they let

4      everything go in from under the sun.  Even things that were not

5      relevant.

6           So at this point here, this is not the opportunity to

7      replay the same record that was played, you know, ad nauseam

8      throughout this testimony.  His testimony.

9           MR. KUEHNE:  Yes, Your Honor.  I think the last topic

10     is the commissioner's awareness and acquisition of probable

11     cause for the various violations that he reported or identified

12     pertaining to the individual plaintiff properties, and those

13     would be the Tower Hotel, Sanguich, Union Beer, Los Altos, Ball

14     & Chain, El Taquito, Calle Ocho Marketplace, how his awareness

15     of information established probable cause, reasonable cause for

16     him to report the information to the authorities to take action

17     directly relevant to the plaintiffs' case and the defendant's

18     case.

19          MS. GOMEZ:  Your Honor, the actual term "probable

20     cause" doesn't apply in this instance.  It's completely

21     irrelevant.  That applies if this were a Section 1983 case

22     under, you know, for search and seizure kind of case, for

23     malicious prosecution or, you know, improper arrest.  But

24     that's not the case here.

25          So probable cause in this context would be equivalent,

 1   tantamount to prior restraint on speech but setting that aside,

 2   I think that what they're using probable cause for is a

 3   euphemism for everything that has been discussed in this case.

 4        It's his entire defense that the reason that people

 5   are going to the properties, to Mr. Fuller's properties is

 6   because there are actual code violations and not because of

 7   targeting.

 8        So that topic in particular has been discussed by

 9   every single witness that they've put on and by all of their

10   cross-examinations.

11        THE COURT:  I mean, I agree, as well.  So we're going

12   to sustain that as well.  All right?  That's been explored ad

13   nauseam through every single person who came throughout, the

14   witnesses like playing the same broken record over and over and

15   over and over.  We heard that.

16        MS. GOMEZ:  Thank you, Your Honor.

17        THE COURT:  With that said, let's bring the jurors.

18        MR. KUEHNE:  I think that's covers the topics.  If

19   there are any others I see in my notes, I will advise the Court

20   prior to the commissioner being called.

21        THE COURT:  Also, too, one of the jurors, we have a

22   total of six jurors.  One of the jurors, Ms. Bell,

23   unfortunately had a personal circumstance beyond her control

24   and will not be joining us, so we have the six remaining jurors

25   who are left.  So that means we will proceed with what we have.

```
 1              MR. KUEHNE:  I did not hear the name of that juror.

 2              THE COURT:  Bell.

 3              MR. KUEHNE:  Bell.

 4              THE COURT:  Bring in the jurors, please.  Thank you.

 5    So we can move forward.

 6              THE COURT SECURITY OFFICER:  All rise.

 7              (Thereupon, the jury entered the courtroom.)

 8              THE COURT:  You may be seated, everyone.  Good

 9    morning, ladies and gentlemen of the jury.  How's everyone?

10              A JUROR:  Go Heat.

11              THE COURT:  You sound like something happened good

12    last night.  There's some good news that happened last night?

13    What's that?

14              A JUROR:  The Heat won.

15              THE COURT:  You're the good luck jury for the Miami

16    Heat.  And also I have some great news for you all too, as

17    well.  We will be doing closing arguments tomorrow.  What a

18    relief, I know.

19              I want to sincerely thank you for your patience

20    throughout this process.  I know it's not easy to do, so I want

21    to commend each and every one of you for following my

22    instructions.

23              Everyone has kept my instructions throughout the

24    lengthy break?  Not reading the news?  Watching the Heat, I

25    know.  It was Game 6.  You may be seated, everyone.  I'm
```

 1    talking to the jurors right now.

 2            At any rate, we really appreciate, the parties here as

 3    well, everyone really thanks you for your time and commitment.

 4    It's not easy, but we thank you for what you have done.

 5            With that said, we're going to continue with the

 6    examination.  We only have two witnesses and then we're going

 7    to be in recess.  I have to go through some administrative

 8    issues and we will do closing arguments tomorrow and as I

 9    mentioned, each side will have up to an hour and 45 minutes a

10    piece, so a total of three and a half hours in the morning.

11            The Court will furnish you lunch.  You don't have to

12    buy lunch.  It will be on the Court, as well.  I don't think

13    there's lobster on the menu.  I don't know about that.  I don't

14    control the menu.  It's up to Patricia to give you something

15    nice to eat for tomorrow.  We appreciate you, okay?  All right.

16            Mr. Kuehne, you may continue with your direct

17    examination.

18            MR. KUEHNE:  Yes, Your Honor.  Manager Noriega is on

19    the stand.  If we can call him up.

20            THE COURT:  Sure.

21            THE WITNESS:  Good morning.

22            MR. KUEHNE:  Your Honor, just a procedural matter.

23    In view of the Court's clarification, I've been taking my mask

24    down during examination.

25            THE COURT:  That's fine.  That's fine.  Sure.

```
 1                          -  -  -  -  -

 2            CONTINUED DIRECT EXAMINATION OF ARTHUR NORIEGA

 3    BY MR. KUEHNE:

 4    Q.    Welcome back, Manager.

 5    A.    Good morning.

 6    Q.    When we last broke, I had asked you or introduced the

 7    topic of Los Altos.  Do you remember what I'm talking about?

 8    Los Altos?

 9    A.    Yes.

10    Q.    As city manager, did any matters come to your attention

11    involving Los Altos?

12    A.    Yes.

13    Q.    What were those matters as you understood it as city

14    manager?

15    A.    Initially, a concern over work potentially done without

16    permit and a subsequent investigation into that particularly.

17    Q.    And did you have a participation in any enforcement action

18    pertaining to Los Altos?

19    A.    Not directly.  Indirectly.

20    Q.    Did your subordinates under your authority take action

21    involving Los Altos?

22    A.    Yes.

23    Q.    What was that?

24    A.    To do a review particularly of the work that had been

25    permitted in the past, and subsequently a review of the
```

1    existing facilities as they had been built out and subsequently

2    a -- that review sort of resulted in the evidence that a lot of

3    significant amount of work had been done and done without

4    permit and done not to code.

5    Q.   Under your administration, did you take any steps to move

6    the permitting process for Los Altos along?

7    A.   You might want to --

8    Q.   Rephrase that?

9    A.   Rephrase that for me.

10   Q.   Under your managership, did the city work in any way to

11   attempt to legalize the Los Altos setup?

12             MR. GUTCHESS:  Objection.  Leading.

13             THE COURT:  Sustained.

14   **BY MR. KUEHNE:**

15   Q.   Was there any effort by the city to follow up on the

16   permit process with Los Altos?

17   A.   Yes, we were engaged with the -- with the property owner

18   on a number of occasions specifically to address the issues,

19   and then subsequent to that, plans were created and a permit

20   process was engaged in and as we would with any property owner.

21   We were monitoring that, reviewing, plans, processing the

22   permit, and then obviously subsequently inspecting the work

23   done.

24   Q.   Under your managership, did Commissioner Carollo have any

25   role in the permitting process that you've described?  The

```
 1    investigation as well as the permitting?
 2    A.    No.
 3    Q.    Whose role was that?
 4    A.    That was the administration's role.
 5    Q.    Under your supervision?
 6    A.    Yes.
 7    Q.    Let me ask you, I had asked you on your direct about S & H
 8    Valet.  Remember -- you may not remember but some questions
 9    about S & H Valet?
10    A.    Yes.
11    Q.    This goes back to your time as MPA director, Miami Parking
12    Authority?
13    A.    Yes.
14    Q.    Was a decision, if you know, made to close or shut down
15    the parking at the church lawn?
16    A.    Yes.
17    Q.    Who made that decision?
18    A.    The city did in conjunction with the Parking Authority.
19    Q.    Whose decision was it to make?
20    A.    The city's decision.
21    Q.    Did Commissioner Carollo direct that decision?
22    A.    No.
23    Q.    After S & H was denied -- strike that.
24          Why was S & H not allowed to utilize the church lawn?
25    A.    It wasn't the location that was listed in the permit.
```

```
 1   Q.    After the church lawn was not authorized for S & H, did
 2   you, as MPA director, have the authority to offer a temporary
 3   alternative?
 4   A.    No.
 5   Q.    Did you offer a temporary alternative?
 6   A.    No.
 7   Q.    Did you communicate with the plaintiff about utilizing a
 8   temporary alternative location?
 9            MR. GUTCHESS:  Objection.  Leading.
10            THE COURT:  Sustained.
11   BY MR. KUEHNE:
12   Q.    Was there any process put in place to have an alternative
13   temporary location utilized?
14   A.    No.
15   Q.    Is there such a process as you understand the MPA
16   authority at that time?
17   A.    No.
18   Q.    And who has the authority to approve -- during the time
19   you were MPA director -- to approve a parking facility?
20   A.    It would have been both.  It would have been the City of
21   Miami through the normal permit process and review, and it
22   would have been Zoning, Public Works, Building; would have been
23   a number of disciplines involved.
24   Q.    As MPA director, what was your understanding of the affect
25   of precluding the unpermitted parking on the church lawn?
```

1    A.    They were required to come up with an alternative location

2    and resubmit, which they did.

3    Q.    And as MPA director, did you authorize any valet companies

4    to park on residential lawns?

5    A.    No.

6    Q.    Are you aware whether the city did?

7    A.    I'm not aware.

8    Q.    Would you be aware if that occurred?

9    A.    I may have been.

10   Q.    Let me ask you about Viernes Culturales.  I addressed it

11   briefly in your examination.  Was there an occasion when

12   you were city manager when Viernes Culturales was ordered to

13   cease activity?

14   A.    Yes.

15   Q.    Who made that decision?

16   A.    I did.

17   Q.    Did you have a basis for making that decision?

18   A.    I did.

19   Q.    What was the basis?

20   A.    They weren't in compliance with the parameters of the

21   Special Event Permit.

22   Q.    And what were the terms that were not met?

23   A.    I think there were, if I recall, two which was keeping the

24   event confined to the geographic footprint that was represented

25   in the permit, as well as the alcohol distribution also being

```
1    confined to a specific area within that footprint.

2    Q.   And did you make that determination of violations?

3    A.   I did based on the evidence presented to me, correct.

4    Q.   Was Commissioner Carollo as the District 3 commissioner

5    involved in that in any way?

6    A.   He was not.

7    Q.   With regard to Special Events Permits, are you familiar

8    with that phrase, Special Events Permits?

9    A.   Yes.

10   Q.   Is -- does the city have a requirement that the manager

11   receive notice of every Special Event Permit?

12   A.   Yes.

13   Q.   Does the city have a policy of notifying the district

14   commissioner of -- the respective district commissioner of any

15   application for Special Event Permits?

16             MR. GUTCHESS:  Objection.  Leading.

17             THE COURT:  Sustained.

18   BY MR. KUEHNE:

19   Q.   In addition to your knowledge, is there any distribution

20   of Special Event Permit applications within the district?

21   A.   Yes.

22   Q.   What is that distribution?

23   A.   It's a requirement, policy driven that all special event

24   applications be noticed to the respective district

25   commissioners involved.
```

```
 1    Q.    And is that a policy in place while you are city manager?

 2    A.    Yes.

 3    Q.    What is the purpose for that policy in place?

 4    A.    Awareness.

 5    Q.    Of what?

 6    A.    Of that an event is occurring within your district.

 7              MR. KUEHNE:  Your Honor, could I just have one

 8    moment?

 9              THE COURT:  Sure.

10    BY MR. KUEHNE:

11    Q.    With regard to the testimony you've given regarding the

12    administrative function, permits and violations, ultimately

13    whose decision and authority was utilized for that action?

14    A.    Mine.  City Manager's Office.

15    Q.    And did Commissioner Carollo have any role in that

16    process?

17    A.    He did not.

18              MR. KUEHNE:  No further questions, Your Honor.

19              THE COURT:  All right.  Any redirect?

20              MR. GUTCHESS:  I believe cross, Your Honor.

21              THE COURT:  I'm sorry.  Cross-examination.

22              MR. GUTCHESS:  May I hand the witness a copy of his

23    deposition?

24              THE COURT:  Yes.

25
```

```
 1                      -  -  -  -  -

 2            CROSS EXAMINATION OF ARTHUR NORIEGA

 3   BY MR. GUTCHESS:

 4   Q.   Good morning, Mr. Manager.

 5   A.   Good morning.

 6   Q.   You've known Bill Fuller since Ball & Chain opened in

 7   2014, correct?

 8   A.   I don't recall specifically when we met.  It may have been

 9   around that time.

10   Q.   All right.  And Mr. Fuller's application for the Ball &

11   Chain valet was approved by the city, right?

12   A.   It was.

13   Q.   And it was approved.  It was vetted by the Building

14   Department, right?

15   A.   I believe so.

16   Q.   And by Zoning?

17   A.   Yes.

18   Q.   Public Works?

19   A.   Yes.

20   Q.   And MPA?

21   A.   Yes.

22   Q.   And MPA is the Miami Parking Authority, right?

23   A.   It is.

24   Q.   As of 2018, none of the city departments ever raised any

25   life safety issues with respect to the Ball & Chain valet,
```

```
 1   right?
 2   A.   Not that I'm aware.
 3   Q.   And from 2014 through 2019, you had a good relationship
 4   with Mr. Fuller, right?
 5   A.   I did.
 6   Q.   And you, in fact, invited them to your Christmas parties,
 7   right?
 8   A.   I did.
 9   Q.   Okay.  And prior to speaking with Commissioner Carollo,
10   you never had any reason to believe there were problems with
11   the Ball & Chain's valet, correct?
12   A.   No, never had any reason to believe.
13   Q.   You can't recall anyone aside from Commissioner Carollo
14   ever complaining about Ball & Chain's valet?
15   A.   Not necessarily true.
16   Q.   Take a look at your deposition at page 216.
17            MR. GUTCHESS:  You can put that up, Ms. Cohen.
18   BY MR. GUTCHESS:
19   Q.   I'll read it for you.  You can't recall anyone else aside
20   from Commissioner Carollo that ever made a complaint about Ball
21   & Chain's valet, correct?
22        And your answer was correct, right?
23   A.   What page are you on?
24   Q.   Page 216, sir.
25            MR. GUTCHESS:  Your Honor, may we show it to the
```

```
 1   jury?
 2              THE COURT:  Sure.  Show it to defense counsel and the
 3   witness himself first.
 4              MR. GUTCHESS:  All right.
 5              THE WITNESS:  Yes, sir.  That's what I said in the
 6   depo.
 7   BY MR. GUTCHESS:
 8   Q.   And so before you became city manager, you weren't aware
 9   of any problems with plaintiffs, correct?
10   A.   Not directly, no.
11   Q.   Okay.  Now, when Commissioner Carollo was campaigning in
12   2017, you helped him raise campaign funds, right?
13   A.   I did.
14   Q.   And one of the ways you did that was to introduce him to
15   potential fundraisers, right?
16   A.   No.
17   Q.   Okay.  Well, how did you do it then?
18   A.   Typically, you know, commissioners or elected officials
19   will ask for help.  Those resources typically are done directly
20   by me.  I don't typically involve the commissioners.  I had
21   never gone to fundraisers.  That wasn't sort of my methodology.
22        So with regards to specific introductions, the only
23   introduction I ever made during that campaign was to Bill
24   Fuller directly, but I never solicited anything from Bill
25   specific to a campaign contribution.
```

```
 1   Q.   And you are familiar with Mr. Carollo's Friday night
 2   party, right?
 3   A.   Yes.
 4   Q.   What's it called?
 5   A.   It has a number of different names.  He calls it a couple
 6   different things because he has different events on Fridays.
 7   Q.   Little Havana Nights?
 8   A.   That's one of them, correct.
 9   Q.   Started in December, 2018, right?
10   A.   I don't recall the exact date it began.
11   Q.   Sound about right?
12   A.   I don't recall the exact date it began.
13   Q.   You were still director of Miami Parking Authority?
14   A.   I was if that was the date.
15   Q.   As director of the Miami Parking Authority, you authorized
16   hundreds of thousands of dollars of MPA money to be contributed
17   to funding Mr. Carollo's Little Havana Nights?
18           MR. KUEHNE:  Objection.
19           THE COURT:  Grounds?
20           MR. KUEHNE:  Relevance.  Speculation, and 403.
21           THE COURT:  Overruled.  If he knows.
22   BY MR. GUTCHESS:
23   Q.   Please refer to page 39 of your deposition, sir.  Can you
24   show that to the witness?  Direct you to the question where
25   you were asked:  So if I told you that while you were at MPA,
```

1  you authorized as of September $201,940.00 in contributions to

2  Commissioner Carollo's Little Havana Nights, do you have any

3  reason to believe that's not true?

4       The answer:  No, I don't actually.

5            MR. KUEHNE:  Objection, Your Honor.

6            THE WITNESS:  That's a misread.

7            THE COURT:  Wait, sir.  When there's an objection,

8  don't begin speaking.  First, what's the objection, Mr. Kuehne?

9            MR. KUEHNE:  Objection, Your Honor.  The reading of

10  the transcript portion is not accurate.

11            THE COURT:  Sustained.  Next question.

12  **BY MR. GUTCHESS:**

13  Q.   Sir, could you read that accurately for me?

14  A.   Certainly.  So if I told you that while you were at MPA

15  you authorized as of September, '19, $40,000 in contributions

16  to Commissioner Carollo's Little Havana Nights, would you have

17  any reason to believe that's not true?

18  Q.   So you don't have any reason to believe that's not true,

19  right?

20            MR. KUEHNE:  Objection, Your Honor.  And then the

21  answer for the witness.  That was the question from the lawyer.

22            THE COURT:  I'm sustaining the objection.

23  **BY MR. GUTCHESS:**

24  Q.   Sir, isn't it true you authorized $200,000 to go from the

25  Miami Parking Authority to fund Mr. Carollo's Little Havana

```
 1   Nights?
 2              MR. KUEHNE:  Objection.
 3              THE WITNESS:  No.
 4              THE COURT:  He says no.  Next question.
 5   BY MR. GUTCHESS:
 6   Q.   After contributing however much money you contributed to
 7   Little Havana Nights in 2019, you became city manager, right?
 8   A.   Rephrase the question.
 9   Q.   After you contributed Miami Parking Authority money to
10   fund Carollo's Little Havana Nights throughout 2019, you were
11   appointed city manager?
12   A.   Yes.
13   Q.   Okay.  And you obtained a salary of more than $350,000 per
14   year, right?
15              MR. KUEHNE:  Objection.  Relevance.  Foundation, 403.
16              THE COURT:  Overruled.
17              THE WITNESS:  No.  That's incorrect.
18   BY MR. GUTCHESS:
19   Q.   What is your salary, sir?
20   A.   Current salary is 360, but at the time I was hired, it was
21   not that high.
22   Q.   And you get a private black car and driver, right?
23              MR. KUEHNE:  Objection.  Relevance, 403.
24              THE COURT:  Overruled.
25              THE WITNESS:  I do not.
```

```
1  BY MR. GUTCHESS:

2  Q.   You don't?

3  A.   I do not have a driver.

4  Q.   Okay.

5  A.   I get a city vehicle.

6  Q.   All right.  And you got your city manager position with

7  Mr. Carollo's support, right?

8  A.   I did.

9           MR. KUEHNE:  Objection.

10          THE COURT:  Grounds?

11          MR. KUEHNE:  Foundation.  Speculation.

12          THE COURT:  Overruled.

13  BY MR. GUTCHESS:

14  Q.   And you understand the City Charter, correct?

15  A.   I do.

16  Q.   And you understand your role as city manager under the

17  Charter, right?

18  A.   I do.

19  Q.   You're to give direction to employees, right?

20  A.   I am.

21  Q.   Commissioners are not to give direction, right?

22  A.   They are not.

23  Q.   And you, as city manager, cannot unilaterally just change

24  the Charter, can you?

25  A.   No, I cannot unilaterally change the Charter.
```

```
 1   Q.   You cannot change it to allow Mr. Carollo to give

 2   direction to employees, right?

 3   A.   Incorrect.

 4   Q.   Correct, right?

 5   A.   Incorrect.

 6   Q.   So you can change it?  You can say Mr. Carollo, you can

 7   give direction to city employees?

 8            MR. KUEHNE:  Objection.  Foundation.  Misstates the

 9   Charter.

10            THE COURT:  Overruled.  He can answer if he knows.

11            THE WITNESS:  My ability to allow for the interaction

12   between city staff and the commissioners is mine and solely

13   mine, and I can easily assign individuals under my supervision

14   the ability to interact and exchange of information.  That's a

15   policy decision internally by me and by me solely.

16   BY MR. GUTCHESS:

17   Q.   All right.  So, you're saying that you have allowed

18   Commissioner Carollo to meet directly with your various

19   department heads so Mr. Carollo can give them direction?

20            MR. KUEHNE:  Objection.

21            THE COURT:  Wait.  What's the grounds?

22            MR. KUEHNE:  Misstates the witness' testimony.

23            THE COURT:  Overruled.  He can answer if he knows.

24            THE WITNESS:  So let me create some clarity to that

25   because you're clearly twisting my words.  So, I have the
```

1  ability as manager, right, commissioners are not allowed to

2  give direction to subordinates.  All that information has to

3  come through the city manager, but I certainly authorize my

4  staff to interact with each individual elected official and

5  their respective staffs.  There is no direct orders or

6  directives given to them directly; all comes through my office.

7  **BY MR. GUTCHESS:**

8  Q.   All right.  So in your direct exam, you testified that you

9  attend every City Commission meeting, correct?

10 A.   I do.

11 Q.   And you testified about your authority as city manager

12 over the city employees, right?

13 A.   I do.

14 Q.   You said terminations flow through your office, right?

15 A.   They do.

16 Q.   You said responsibility for termination falls squarely on

17 your shoulders, right?

18 A.   It does.

19 Q.   And you claim that Carollo has not directed you to take

20 any action to terminate any department heads, right?

21 A.   He has not.

22 Q.   Okay.  And you also claim that you're not aware of Carollo

23 giving orders to any city employees, right?

24 A.   He has not.

25 Q.   And those statements leave out a lot of the reality of

```
 1    what goes on, correct?
 2              MR. KUEHNE:  Objection.  Foundation.  Speculation.
 3              THE COURT:  Sustained.
 4    BY MR. GUTCHESS:
 5    Q.   Okay.  The truth is, the entire truth is, Mr. Noriega,
 6    that Carollo has told your employees in front of you that if
 7    they don't do what he wants, Carollo will fire you, the city
 8    manager, right?
 9    A.   No.
10    Q.   Carollo has said, quote, one of us is going to be out of
11    here before the other, and it ain't going to be me.  I have no
12    right to hire or fire any of you or give any directions and I
13    certainly would not do that, but if the manager is one we have
14    the right to hire and fire, I don't need to go any further.
15         Do you recall Carollo saying that to you?
16              MR. KUEHNE:  Objection.  Date, time, place,
17    foundation.
18              THE COURT:  Overruled.  He can answer if he knows.
19              THE WITNESS:  I don't recall that, but if you want to
20    give me a specific example or testimony or deposition, I'm
21    certainly willing to review it.
22              MR. GUTCHESS:  Let's call up Plaintiffs' Exhibit 643.
23    It's a video of the City Commission meeting.
24              Your Honor, this is just Mr. Carollo speaking publicly
25    from the dais.  Request permission to publish to the jury.
```

```
1              THE COURT:  All right.  Granted.  It's in evidence

2   already?

3              MR. GUTCHESS:  Move it into evidence, Your Honor.

4              MR. KUEHNE:  Your Honor, respectfully, I'm not

5   certain what this context is and I do not know if there are any

6   portions that would be subject to the Court's prior rulings

7   with regard to aspects that are not involved in this case.  I'd

8   have to look at my notes to see what this Exhibit 643 is and

9   involves.

10             MR. GUTCHESS:  It's just exactly what I read, Your

11  Honor.

12             THE COURT:  It's exactly what the question is going

13  to purport to say?  The video?

14             MR. GUTCHESS:  Yeah.

15             THE COURT:  You may play it.

16             MR. GUTCHESS:  Thank you.

17                  (Plaintiffs' Exhibit 643 Received.)

18                       (Video played.)

19  BY MR. GUTCHESS:

20  Q.   Mr. Noriega, does that refresh your recollection that

21  Mr. Carollo was directly threatening your employees they better

22  follow his orders or you will be fired?

23  A.   No.

24  Q.   You don't recall that?

25  A.   I recall it.  I recall the conversation and I recall the
```

 1   meeting.  And I recall the subject of it.  It was very clear

 2   that he was holding me and my administration accountable,

 3   right, for the homeless issue, and our interaction with the

 4   homeless issue and his concern over the propensity of it, but

 5   he was holding me accountable for that which is absolutely by

 6   Charter.

 7   Q.   And he was speaking to who?  Milton Vickers?

 8   A.   I don't specifically know who he was speaking to at the

 9   time.  He didn't address anybody in that clip.

10   Q.   Who was head --

11   A.   Could have been anybody that was sitting -- could have

12   been the assistant city manager at the time as well.

13   Q.   Who was Mr. Vickers?

14   A.   Vickers was the director of our Human Services Department.

15   Q.   In charge of your homelessness issues, right?

16   A.   Correct.

17   Q.   That's who he was speaking to?

18   A.   I do not know.

19   Q.   He's no longer employed by the city, is he?

20        MR. KUEHNE:  Objection.  Relevance, foundation.

21        THE COURT:  Sustained.

22   **BY MR. GUTCHESS:**

23   Q.   All right.  You also said that you were good at reading

24   your employees' body language, right?

25   A.   Did I say that?  I don't believe I said that.  When?

1   Q.   Okay.  You also said that you're good at reading

2   employee's tones of voice, right?

3   A.   I don't recall.

4   Q.   Well, you are good at reading their body language and tone

5   of voice, right?

6           MR. KUEHNE:  Objection.  Relevance, foundation.

7           THE COURT:  Sustained.

8   **BY MR. GUTCHESS:**

9   Q.   So, you saw Mr. Carollo in that video.  He was making a

10  threat, right?

11          MR. KUEHNE:  Objection.  Asked and answered.

12  Speculation.

13          THE COURT:  Sustained.

14  **BY MR. GUTCHESS:**

15  Q.   What is more intimidating, have a commissioner threaten a

16  criminal investigation if you don't do what he wants, or

17  threaten to fire the manager if you don't do what he wants?

18          MR. KUEHNE:  Objection.  Hypothetical.

19          THE COURT:  Not a hypothetical, but I will sustain

20  the objection, sir.  Next question.

21  **BY MR. GUTCHESS:**

22  Q.   Mr. Noriega, you can either stand up or appease a bully,

23  right?

24          MR. KUEHNE:  Objection.  Relevance.  Foundation.

25          THE COURT:  Sustained.

 1  **BY MR. GUTCHESS:**

 2  Q.   You know the former city manager, Emilio Gonzalez, chose

 3  to stand up to Mr. Carollo, right?

 4          MR. KUEHNE:  Objection.  States facts not in

 5  evidence.  Predates the manager status.

 6          THE COURT:  Overruled.  He can answer if he knows.

 7          THE WITNESS:  Rephrase the question.

 8  **BY MR. GUTCHESS:**

 9  Q.   You know that the former city manager, Emilio Gonzalez,

10  chose to stand up to Mr. Carollo, right?

11          MR. KUEHNE:  Objection, Your Honor.  Beyond the scope

12  of direct examination.

13          THE COURT:  Overruled.  You can answer.

14          THE WITNESS:  So standing up to something is subject

15  to interpretation.  I wouldn't qualify what he did as standing

16  up to the commissioner.

17  **BY MR. GUTCHESS:**

18  Q.   Well, you've chosen not to stand up to Mr. Carollo, right?

19  You appease him, right?

20          MR. KUEHNE:  Objection.  Form.  Harassment.

21  Hypothetical.

22          THE COURT:  Overruled.  You can answer.

23          THE WITNESS:  So at issue here is --

24  **BY MR. GUTCHESS:**

25  Q.   Well, do you appease him, yes or no?

```
 1   A.    I do not.

 2   Q.    You characterized some of these commission meetings like

 3   the one we just saw as, and I quote "really bad, particularly

 4   bad," right?

 5   A.    I don't recall when I made that statement or if I did, and

 6   what it was in reference to specifically.

 7   Q.    And you gave your staff advice on how to deal with these

 8   situations when the commissioners are intimidating them, right?

 9         MR. KUEHNE:  Objection.  States facts not in

10   evidence.

11         THE COURT:  Overruled.  He can answer.

12         THE WITNESS:  We get inquiries from elected

13   officials --

14   BY MR. GUTCHESS:

15   Q.    Sir --

16   A.    I'm going to answer the question.

17   Q.    No, I want you to answer my question, yes or no?

18   A.    You didn't let me finish answering the question.

19   Q.    It's a yes or no, sir.

20   A.    Rephrase the question.

21   Q.    You gave your staff -- you gave your staff advice on how

22   to deal with these city commission meetings that are really

23   bad, particularly bad?

24         MR. KUEHNE:  Objection.  Foundation.  Speculation,

25   date, time and place.
```

```
 1              THE COURT:  Overruled.  You can answer.

 2              THE WITNESS:  Yes, I counsel my staff.

 3   BY MR. GUTCHESS:

 4   Q.   And your advice was to be a goldfish, right?

 5   A.   No, that wasn't my advice.

 6   Q.   You told them to be a goldfish because the goldfish is the

 7   happiest animal on earth, right?

 8   A.   Not in reference to commission meetings so no, that's

 9   not -- that's taken out of context.  So if you want to ask me

10   specifically when that particular theme arose, I'm happy to

11   give you more information on it, but you're taking it way out

12   of context.

13   Q.   All right.  And you told them that the goldfish was a

14   happiest animal because it had a memory of ten seconds, right?

15              MR. KUEHNE:  Objection.

16              THE COURT:  Grounds?

17              MR. KUEHNE:  Beyond the scope as well as foundation.

18   Speculation, date, time and place.

19              THE COURT:  Overruled.  You can answer.

20              THE WITNESS:  Rephrase the question or restate it.

21   BY MR. GUTCHESS:

22   Q.   You told them that the goldfish is the happiest animal

23   because it only has a memory of ten seconds?

24   A.   That's specifically what I said during a staff retreat,

25   correct.
```

```
 1   Q.   And you actually went out and bought them T-shirts that
 2   said goldfish, right?  Be a goldfish?
 3   A.   Yes.
 4   Q.   So that's so that you could remind them to have a ten
 5   second memory, right?
 6   A.   No, that's not the reference that it was made -- intended
 7   to be made for.  Has nothing to do with the ten second memory.
 8   Has everything to do with taking a difficult situation and
 9   moving past it.  That's specifically how it's referenced.
10   Q.   Let's -- do you mind if we play your podcast where you
11   explain this really bad, particularly bad commission meeting
12   and where you gave this advice?
13              MR. KUEHNE:  Objection.
14              THE COURT:  What's the objection?
15              MR. KUEHNE:  Foundation.  Relevance.  Date, time and
16   place.  A podcast.
17              THE COURT:  Do you have the date and time and place
18   of this podcast you intend to play?
19              MR. GUTCHESS:  I believe it was January 14, 2021.
20              THE COURT:  All right.
21              MR. GUTCHESS:  Can we play it?
22              THE COURT:  Sure.
23                        (Video played.)
24   BY MR. GUTCHESS:
25   Q.   You were here at the beginning when you said that it was a
```

```
 1   really bad, particularly bad commission meeting that left
 2   everybody down, right?
 3   A.    Mm-hmm.
 4             MR. KUEHNE:  Objection.
 5             THE COURT:  What's the objection?
 6             MR. KUEHNE:  Misstates what was just heard by the
 7   jury.
 8             THE COURT:  Overruled.  Next question.
 9   BY MR. GUTCHESS:
10   Q.    And your advice was just forget it, move on, right?  That
11   was your advice, right?
12   A.    Is that a question?
13   Q.    Yes.
14   A.    Or a statement?
15   Q.    Yeah.
16   A.    Yes, that's clearly what I said.
17   Q.    So it's not only you appease Mr. Carollo you're
18   instructing your whole staff just forget about all the bad
19   things, right?
20             MR. KUEHNE:  Objection.  Argumentative.  Misstates
21   the testimony.
22             THE COURT:  Sustained.  Next question.
23   BY MR. GUTCHESS:
24   Q.    Okay.  Mr. Noriega, on your direct examination, you
25   referred to city employees being in the DROP, right?
```

```
 1   A.    Yes.
 2   Q.    And being in the DROP refers to getting their retirement
 3   benefits, right?
 4   A.    Yes.
 5   Q.    And that occurs after only 20 years, right?
 6   A.    Yes.
 7   Q.    And after 20 years, the city employees get paid a
 8   percentage of their salary for the rest of their life, right?
 9   A.    It depends on eligibility.  It's not just based on 20
10   years.  It's based on age plus years of service, not just
11   service years.
12   Q.    Okay.  And that's a huge and financial incentive to keep
13   their jobs, right?
14             MR. KUEHNE:  Objection.  Speculation.  Foundation.
15             THE COURT:  Overruled.  You can answer.
16             THE WITNESS:  No, it's not an incentive for them to
17   keep their jobs.  It's an incentive for them to stay engaged
18   with the city because in a lot of ways, you don't want to lose
19   that institutional memory and that experience.
20   BY MR. GUTCHESS:
21   Q.    And somebody like the current Chief of Police, Manny
22   Morales, he has more than a million dollars at stake in terms
23   of keeping his job for the next couple years, right?
24             MR. KUEHNE:  Objection.  Relevance, foundation.
25   States facts not in evidence.  It's probably confidential.
```

 1              THE COURT:  Sustained.

 2   **BY MR. GUTCHESS:**

 3   Q.   Being a goldfish is particularly important for anyone

 4   who's in the DROP, right?

 5              MR. KUEHNE:  Objection.  Foundation.  Speculation.

 6   Who's the anyone.

 7              THE COURT:  Sustained.

 8   **BY MR. GUTCHESS:**

 9   Q.   Now, shortly after you became city manager, Carollo

10   explained to you his views on the plaintiffs, right?

11   A.   He did not.

12   Q.   Let's refer to page 97 of your deposition transcript.

13              MR. GUTCHESS:  Can we show it to the witness, Your

14   Honor?

15              THE COURT:  Sure.

16   **BY MR. GUTCHESS:**

17   Q.   Do you see where you're asked when did you first discuss

18   with Commissioner Carollo's office --

19              MR. KUEHNE:  Line and page?

20              MR. GUTCHESS:  97, line 14.

21              MR. KUEHNE:  Thank you.

22   **BY MR. GUTCHESS:**

23   Q.   You can go up to the prior page and see whether or not

24   your -- the whole point of the discussion is when you first had

25   discussions with Carollo about Mr. Fuller and Mr. Pinilla.

1  A.   It wasn't about Mr. Fuller and Mr. Pinilla.  It was about

2  specifically properties, not them in particular.

3  Q.   It was their properties, right, sir?

4  A.   But it was about the real estate asset, not the

5  individuals.

6  Q.   Okay.  It was their real estate assets, right?

7  A.   It was their real estate assets.  It's very clear in my

8  deposition.

9  Q.   All right, sir.  And you've had between half a dozen and a

10  dozen conversations with Mr. Carollo concerning Mr. Fuller and

11  Mr. Pinilla's properties, right?

12  A.   I don't recall how many we've had.

13  Q.   Do you recall testifying in your deposition a year ago

14  that it was up to a dozen conversations with Mr. Carollo?

15  A.   I don't recall specifically how many.

16  Q.   Okay.  And you've had another dozen conversations with

17  Mr. Carollo's staff about Mr. Fuller and Mr. Pinilla's

18  properties, right?

19  A.   I don't recall how many.  We've had a number of

20  conversations, correct.

21  Q.   Let's go to page 98 and 99 of your deposition, sir.  All

22  of your conversations that you've had with Mr. Carollo and

23  Mr. Carollo's staff, you don't have any emails, right?

24  A.   I don't recall how many emails may or may not have been

25  exchanged, but with Commissioner Carollo, probably none.

```
 1    Q.   And his staff none also, right?

 2    A.   I exchanged emails with his staff.  My subordinates may

 3    have exchanged emails with them.  I don't recall how many.

 4    Q.   Okay.  Let's go to page 98, sir.

 5         MR. GUTCHESS:  Can we show this to the jury?  Just

 6    his deposition testimony.

 7         MR. KUEHNE:  Objection, Your Honor.  It's in a

 8    completely different case and it's improper impeachment.

 9         THE COURT:  Overruled.

10    BY MR. GUTCHESS:

11    Q.   All right.  So let's look.  Do you see on page 98, line

12    14:  How many conversations did you have with Commissioner

13    Carollo's office regarding these properties?

14         You said probably in total, we've probably discussed it

15    maybe half a dozen to a dozen times, somewhere in that range.

16         Then on 99, that's with Commissioner Carollo himself,

17    correct?  And that's in person, or over the phone.

18         All in person, we rarely talk on the phone.

19         You go up to the next page:  What about over the phone or

20    over email?  No, never by email, over the phone.  Very rarely

21    as well.  Most of those conversations happen in person.

22    Do you see that?

23    A.   I do.

24    Q.   So you said never by email, right?

25    A.   Not that I recall.
```

```
 1   Q.   You also testified in your direct testimony that you want

 2   communications to be as open and transparent as possible,

 3   right?

 4   A.   Yes.

 5   Q.   But your lack of any written communications with

 6   Mr. Carollo or his staff about Fuller's properties is not very

 7   transparent, is it?

 8            MR. KUEHNE:  Objection.  States facts not in

 9   evidence.  Speculation.  Foundation.

10            THE COURT:  Overruled.  He can answer if he knows.

11            THE WITNESS:  There are a number of commissioners and

12   past elected officials that don't necessarily prefer to write

13   emails.  They're a little old school that way.  They really

14   prefer to communicate directly.  He's not the only one.

15   BY MR. GUTCHESS:

16   Q.   Okay.  Shortly after you became manager in February of

17   2020, COVID hits, right?

18   A.   Yes.

19   Q.   It's a true health crisis for the nation, right?

20   A.   It is.

21   Q.   And the City of Miami, right?

22   A.   It was.

23   Q.   Many were dying, right?

24   A.   Yes.

25   Q.   The city shut down?
```

1    A.    Not entirely.

2    Q.    Restaurants and bars were shut down?

3    A.    Yes.

4    Q.    Ball & Chain was shut down?

5    A.    Yes.

6    Q.    Taquerias was shut down, right?

7              MR. KUEHNE:  Objection, Your Honor.  403, relevance.

8    COVID outbreaks.

9              THE COURT:  Sustained.  Next question.

10   **BY MR. GUTCHESS:**

11   Q.   So you thought this was the perfect time to have a lengthy

12   meeting with the Building Director, Code Director and almost

13   the entire City Attorney's Office to discuss Fuller, right?

14   A.   So when is it not appropriate to discuss issues or

15   concerns?  Just because we were in the middle of a pandemic

16   doesn't mean the rest of the city shut down.

17        By the way, we were still fully functioning as the city.

18   The timing of it is really irrelevant.

19   Q.   All right.  So that's your priority during COVID.  Is

20   having a meeting with -- you recall this meeting, right?

21   Lengthy meeting?

22              MR. KUEHNE:  Objection.

23              THE COURT:  Grounds?

24              MR. KUEHNE:  Foundation.  Speculation.

25              THE COURT:  Overruled.

```
 1   BY MR. GUTCHESS:
 2   Q.   Sir, do you recall this lengthy meeting with the Building
 3   Director, Code Director and almost all of the City's Attorney's
 4   Office to discuss Fuller in May, 2020?
 5   A.   Again, we're not discussing Fuller.  We're discussing
 6   specific properties.  So, yes, I recall there was a meeting.
 7   Also to your prior statement --
 8   Q.   Sir --
 9   A.   No, because you asked me the question.  You asked was it a
10   priority.  No, it wasn't a priority.  There was a city to run.
11   A lot of other functions in the city just because I have one
12   meeting doesn't prioritize it.
13   Q.   So let's show you your building director's text message
14   about this meeting.  It's Plaintiffs' Exhibit 601.
15            THE COURT:  Is this in evidence?
16            MR. GUTCHESS:  Already in evidence, sir, Your Honor.
17            THE COURT:  All right.  Also, if anything is not in
18   evidence, please apprise the Court of it, too, as well.
19            MR. GUTCHESS:  Could you enlarge that?
20   BY MR. GUTCHESS:
21   Q.   Mr. Noriega, would you read that into the record?
22   A.   Where do you want me to start?
23   Q.   The 12:19 p.m. NP.  Just had a lengthy meeting?
24   A.   Just had a lengthy meeting with the manager and almost the
25   entire City Attorney's Office plus Adele talking about Bill
```

```
 1    Fuller.  The manager wants us to revise and update our policies
 2    to be more stringent when it comes to work without permit,
 3    clearly define what are unsafe conditions and shut down all
 4    structures that don't comply.
 5    Q.   All right.  You're the manager, right?
 6    A.   I am.
 7    Q.   City Attorney's Victoria Mendez, right?
 8    A.   She is.
 9    Q.   And almost the entire City Attorney Office.  How big is
10    that office?
11    A.   Oh, I don't recall the exact number of attorneys in the
12    office.
13    Q.   And the subject is talking about Bill Fuller, right?
14    A.   According to the Building Director, it is.  I didn't make
15    that statement, he did.
16    Q.   Well, he's your Building Director, and that's what he's
17    putting in writing, right?
18    A.   It is.  Doesn't mean that that was the entirety of the
19    topic of the conversation.
20    Q.   So with respect to Bill Fuller, it says the manager,
21    that's you, wants us to revise and update our policies to be
22    more stringent, right, when it comes to work without permit.
23    Clearly define what are unsafe conditions and shut down all
24    structures that don't comply.  Right?
25    A.   That's what it says.
```

```
 1   Q.   That's your recollection of the meeting as well, sir?
 2   A.   Not specifically.
 3   Q.   Okay.  And you're doing this on your own.  Nothing to do
 4   Mr. Carollo and the discussion he had with you shortly after
 5   you took office and the twelve meetings you had with him,
 6   right?
 7            MR. KUEHNE:  Objection.  Compound question.  States
 8   facts not in evidence.
 9            THE COURT:  Sustained.  Next question.
10   BY MR. GUTCHESS:
11   Q.   Before this, you had a good relationship with Mr. Fuller,
12   right?
13   A.   I did.
14   Q.   And after meeting Mr. Carollo, you were trying to shut
15   down his properties, right?
16            MR. KUEHNE:  Objection.
17            THE COURT:  Grounds?
18            MR. KUEHNE:  States facts not in evidence.
19            THE COURT:  Overruled.  He can answer.
20            THE WITNESS:  That's not what the text message says.
21   BY MR. GUTCHESS:
22   Q.   Okay.  If you go down to the one on the bottom, do you see
23   where Mr. Marrero -- if you read that for the jury?
24   A.   I would like for us to spend the day tomorrow
25   brainstorming about these issues.  We need to circle back with
```

```
 1   Rachel if we need to update any of our ordinances as well.  I
 2   have a follow up meeting with the manager next week to provide
 3   an update on these issues.
 4   Q.   All right.  And you're the manager again, right?  That
 5   they're updating?
 6   A.   I have been throughout this conversation, yes.
 7   Q.   So this -- this group has a lengthy meeting on one day and
 8   the next day, they have an all day meeting, right?  So that's
 9   what I'm talking about priority.
10       This was your priority in May, 2020, right, your Building
11   Department head, your city attorneys, your Director of Code
12   Compliance is all planning ways to pass ordinances to attack
13   Bill Fuller's properties, right?
14           MR. KUEHNE:  Objection.  Foundation, speculation.
15           THE COURT:  Overruled.  He can answer if he knows.
16           THE WITNESS:  First of all, no.  Secondly, this
17   conversation is between two individuals.  So when he's making a
18   reference of we need to meet to update any of our ordinances,
19   he's not including the rest of the group.
20   BY MR. GUTCHESS:
21   Q.   Okay.  And they did update you on their progress, right?
22   A.   I don't recall a subsequent or a follow up meeting.
23   Q.   Do you recall that your employees actually carried out a
24   Carollo investigation into Bill Fuller, right?
25   A.   They did not.
```

1          MR. GUTCHESS:  Okay.  Show you Exhibit 610.  This is

2    already in evidence.  Your Honor, ask to publish to the jury.

3    **BY MR. GUTCHESS:**

4    Q.   Who is Mr. John Porfiri?

5    A.   I don't know.

6    Q.   Who's Mr. Maurice Pons and Mr. Ace Marrero?

7    A.   Both are employees of the Building Department.

8    Q.   And what is the subject line of this?

9    A.   Progress of Carollo investigation.

10   Q.   And if we go to the next page to see what the Carollo

11   investigation is.  Do you recognize these as plaintiffs'

12   properties, sir?

13   A.   I do.

14   Q.   Do you believe it's appropriate for your employees at the

15   City of Miami to be conducting a Carollo investigation on

16   Fuller's properties?

17   A.   Not in context, no.

18   Q.   So you were not the one who gave the order to conduct the

19   Carollo investigation?

20   A.   I have never referenced any due diligence done on any of

21   Bill Fuller's or his partners' properties as a Carollo

22   investigation, so no.

23   Q.   Okay.  Now, you recall some -- you can take that down.

24   You recall some ordinances that were passed in October, 2020,

25   right?

```
 1   A.   A lot of ordinances passed within that range of time.  I'd
 2   need you to be specific.
 3   Q.   So you recall there was an ordinance passed about revoking
 4   a CU, correct?
 5             MR. KUEHNE:  Objection, Your Honor.  Legislative
 6   privilege.
 7             THE COURT:  Overruled.
 8             THE WITNESS:  I'd need to see the specific ordinance
 9   you're referencing.
10   BY MR. GUTCHESS:
11   Q.   You recall there was a noise ordinance passed also that
12   dealt with establishments that had their CUs revoked, right?
13             MR. KUEHNE:  Same objection, Judge.
14             THE COURT:  Overruled.
15             THE WITNESS:  Again, I'd need to see the specific
16   ordinance or legislation you're referring to.
17   BY MR. GUTCHESS:
18   Q.   It was important that a CU for Ball & Chain be revoked
19   before this ordinance was enacted, right?
20             MR. KUEHNE:  Objection.  Foundation.  States facts
21   not in evidence.  The witness stated he needs to see the
22   ordinance.
23             THE COURT:  You can show him the ordinance.
24             MR. GUTCHESS:  Let me go to Exhibit 720 first.
25             THE COURT:  Is this in evidence?
```

 1              MR. GUTCHESS:  It's not in evidence yet, Your Honor,

 2    but this is an email from Mr. Noriega.  Show it to the witness.

 3    **BY MR. GUTCHESS:**

 4    Q.   Do you recognize this email, Mr. Noriega?

 5    A.   I do.

 6              MR. GUTCHESS:  All right.  Your Honor, may we publish

 7    to the jury?

 8              THE COURT:  Yes.

 9              (Plaintiffs' Exhibit 720 Received.)

10              MR. KUEHNE:  Your Honor, when it's published, could

11    we have an instruction that the highlighting is not the

12    witness', it's the lawyer's?

13              THE COURT:  For the record, the highlighting portion

14    is the lawyer's.  As long as it doesn't change the context of

15    the text or anything else, it's just highlighted by the

16    attorney.

17    **BY MR. GUTCHESS:**

18    Q.   Do you see the bottom email is from Victoria Mendez.

19    She's the city attorney, correct?

20    A.   Correct.

21    Q.   What's the subject line?

22    A.   CO/CU 1513 SW 8th Street.

23    Q.   And what does CO/CU, mean?

24    A.   Certificate of Occupancy, Certificate of Use.

25    Q.   And what's that property?

```
 1    A.    1513 SW 8th Street would be Ball & Chain.

 2    Q.    This email is talking about revoking the CU for Ball &

 3    Chain, right?

 4    A.    It is.

 5    Q.    And Ms. Mendez was in the meeting with you in May, 2020?

 6    A.    I believe so.  I don't recall whether she was personally

 7    there or not.

 8    Q.    And this is at 8:30 and you respond at 8:52 a.m. and what

 9    is your response?

10    A.    Let's get this done today before noon.

11    Q.    All right.  So what you want to do, you want to revoke the

12    CU for Ball & Chain before noon on October 22nd, right?

13               MR. KUEHNE:  Objection.

14               THE COURT:  Grounds?

15               MR. KUEHNE:  Foundation.  Misstates the evidence.

16               THE COURT:  Overruled.  You can answer.

17               THE WITNESS:  Yes.  There was a sense of urgency

18    given the time that had elapsed from the initial discovery, the

19    audit, and I felt like we had let a lot of time pass.

20               As I stated in my deposition, government moves slow,

21    and sometimes you need to nudge the process along.

22    BY MR. GUTCHESS:

23    Q.    All right.  So let's take a look at Mr. Carollo's

24    ordinance passed on October 22nd.  It's exhibit --

25               MR. KUEHNE:  Objection.
```

1     MR. GUTCHESS:  -- 620 already in evidence.

2     THE COURT:  Wait, there's an objection.  Yes,

3  Mr. Kuehne?

4     MR. KUEHNE:  Foundation.  States facts not in

5  evidence.  It's not a Commissioner Carollo ordinance.

6     THE COURT:  Sustained as to calling it a Commissioner

7  Carollo ordinance.

8     MR. GUTCHESS:  Show the witness and the jury 620.

9     MR. KUEHNE:  Your Honor, just to make certain,

10  there's a continuing objection based on legislative privilege

11  as we objected previously.

12     THE COURT:  Granted.  It's noted, Mr. Kuehne.  Thank

13  you.

14  **BY MR. GUTCHESS:**

15  Q.   You see the sponsor of this ordinance is Commissioner

16  Carollo?

17  A.   I do.

18  Q.   And this deals with -- what does it deal with?

19  A.   Inclusion of building violations as a reason for

20  revocation of Certificate of Use.

21  Q.   Okay.  And then that's why you wanted to get that done

22  before this ordinance was passed, right, on October 22nd before

23  noon, right?

24  A.   No.

25  Q.   Okay.  And then let's go to Exhibit 721 which is the noise

```
 1   ordinance.
 2            MR. GUTCHESS:  Your Honor, this one isn't in evidence
 3   but it's just another ordinance from the same day.
 4            THE COURT:  Okay.
 5            MR. KUEHNE:  Same objection, Judge, as well as
 6   foundation.
 7            THE COURT:  It's noted.
 8   BY MR. GUTCHESS:
 9   Q.   Sir, do you recall this noise ordinance?
10   A.   I do.
11   Q.   All right.  And this had an exemption for any businesses
12   that were -- had approvals to operate prior to the ordinance
13   being enacted, right?
14   A.   I don't recall.
15            MR. GUTCHESS:  Let's go down to Subsection B,
16   Ms. Cohen.
17   BY MR. GUTCHESS:
18   Q.   Do you see there in Subsection B, sir, it says:  An
19   exemption.  Any establishment operating a sound making device
20   shall be exempted from Subsection B if said establishment had
21   approval prior to this ordinance.  Do you see that?
22   A.   I do.
23   Q.   And so by revoking Ball & Chain's Certificate of Use on
24   October 22nd, enacting the ordinance we just saw and this noise
25   ordinance, you eliminated Ball & Chain's right to play music,
```

 1   right?

 2             MR. KUEHNE:  Objection.  Asks for a legal opinion.

 3             THE COURT:  Overruled.

 4             MR. KUEHNE:  Not within the witness' competence.

 5             THE COURT:  Overruled.  You can answer.

 6             THE WITNESS:  Yeah, I don't know the direct

 7   correlation between this ordinance and this particular

 8   property.  This was a legislative item, so it's the body that

 9   makes the determination and passes legislation.  It has nothing

10   to do with the administration.

11   **BY MR. GUTCHESS:**

12   Q.   Can you explain to the jury what else is exempted from the

13   noise ordinance in that list there?

14   A.   I don't know because the list is -- it's making a

15   reference to Subsection B, and I can't read Subsection B from

16   here.

17   Q.   Can you enlarge that for the witness?  Do you see all of

18   the areas that are exempted?  Anything in the Downtown

19   Development Authority, Redevelopment Authority, Coconut Grove

20   Business District, Wynwood neighborhood, Revitalization,

21   do you see all of these large areas of the city that are

22   exempted from this ordinance, right?

23             MR. KUEHNE:  Objection.

24   **BY MR. GUTCHESS:**

25   Q.   Except for Little Havana?

```
 1              MR. KUEHNE:  Objection.  States facts not in evidence
 2   besides these whatever they are.
 3              THE COURT:  The objection is sustained.
 4   BY MR. GUTCHESS:
 5   Q.   Sir, no other establishment in the entire City of Miami
 6   was impacted by this noise ordinance, right?
 7   A.   I have no idea who was impacted and who wasn't.
 8   Q.   So you're not aware of anyone, right, other than Ball &
 9   Chain?
10   A.   Again, I don't know specifically who was impacted as a
11   result of this legislation.
12   Q.   Okay.  Now there was a second reading for this ordinance
13   on November 19th, right?
14   A.   I have no idea dates, but if you want to make a reference
15   to a specific document or a legislative or something from the
16   clerk's office, I'll be happy to confirm it.
17   Q.   Do you recall that on the second reading -- you can take
18   that down -- that the city received more than 360 voice mails
19   from members of the community protesting this?
20              MR. KUEHNE:  Objection.  Beyond direct.  Legislative
21   privilege.  Foundation.
22              THE COURT:  Sustained as to foundation.  Next
23   question.
24   BY MR. GUTCHESS:
25   Q.   Sir, as city manager, you have 35 departments that report
```

```
 1   to you, right?
 2   A.   I can't give you a very specific number but that sounds
 3   about right.
 4   Q.   4,600 employees, right?
 5   A.   A little over that number, correct.
 6   Q.   You don't normally get involved in liquor licenses for
 7   small establishments, do you?
 8   A.   Not typically.
 9   Q.   Unless it's one of Bill Fuller's properties, right?
10   A.   In this particular case, yes.
11   Q.   And one of the areas where you were looking at for
12   Taquerias was outdoor seating, right?
13   A.   That I was looking into?  No.
14   Q.   All right.  Well, the city was making sure, right, under
15   your -- either your direction or Carollo's direction that they
16   were not allowed outdoor seating, right?
17             MR. KUEHNE:  Objection.  Compound question.
18   Speculation if it has to do with somebody other than the
19   witness.
20             THE COURT:  Overruled.  You can answer.
21             THE WITNESS:  It would not have been under
22   Commissioner Carollo's directive, and I think there needs to be
23   some clarity.
24             The department directors have the ability to enforce
25   the code on their own without specific direction from me, so
```

```
 1   any due diligence done here could have been done directly by a
 2   department director, not a direct direction directly from me.
 3   Department directors have a lot of autonomy to enforce the
 4   code.
 5   BY MR. GUTCHESS:
 6   Q.   Let's show you what your directors were doing in Exhibit
 7   726, email forwarded to you to keep you up to date,
 8   December 14, 2020.
 9            MR. GUTCHESS:  726, can you show it to the witness
10   and opposing counsel?
11   BY MR. GUTCHESS:
12   Q.   Do you recognize this as an email that you received, sir?
13   A.   I do.
14   Q.   And it concerns Los Altos Mexicano, right, Taquerias?
15   A.   It does.
16            MR. GUTCHESS:  Move for admission, Your Honor.
17   Permission to publish?
18            THE COURT:  Granted.
19            MR. KUEHNE:  Objection, Your Honor.  Beyond the scope
20   of the direct.  Beyond the scope of the framework of this case.
21            MR. GUTCHESS:  You just asked him this morning --
22            THE COURT:  I understand.  The objection is noted for
23   the record.  It's overruled.  It's admitted.  Thank you.
24            (Plaintiffs' Exhibit 726 Received.)
25
```

1    **BY MR. GUTCHESS:**

2    Q.    Who's Melissa Fernandez Stiers?

3    A.    She works in my office.

4    Q.    They're talking about the outdoor service and they're

5    talking about AB and T.   That's Alcohol, Beverage and Tobacco?

6    A.    Yes.

7    Q.    It's a separate department, not a city department?

8    A.    Not a city department.

9    Q.    And your senior advisor is advising you that someone at

10   ABT that she spoke to will make sure they do not approve the

11   outdoor seating, the first seating local approval from the city

12   indicating the business is allowed to provide service outside,

13   right?

14          MR. KUEHNE:   Objection, Your Honor.   Hearsay.

15   Statement from a non-present witness.

16          THE COURT:   Overruled.   The document speaks for

17   itself.

18          THE WITNESS:   Document speaks for itself.

19   **BY MR. GUTCHESS:**

20   Q.   Here, your senior advisor is trying to interfere with

21   another state department giving permission for outdoor seating,

22   right?

23          MR. KUEHNE:   Objection.

24          THE WITNESS:   Incorrect.

25          MR. KUEHNE:   Objection.   Speculation, foundation.

```
 1   States facts not in evidence.

 2            THE COURT:  Sustained.  Next question, Mr. Gutchess.

 3   BY MR. GUTCHESS:

 4   Q.   And Mr. Carollo also told you that the parking for Los

 5   Altos and Taquerias was not compliant, right?

 6   A.   I'm not sure we ever had a conversation about parking

 7   relative to Los Altos and Taquerias.

 8            MR. GUTCHESS:  Okay.  Well, let me show you Exhibit

 9   725.  Show it to the witness, Your Honor.

10   BY MR. GUTCHESS:

11   Q.   Do you recognize this as an email from you to one of your

12   assistant managers concerning Taquerias Mexicano parking

13   requirements?

14   A.   Yes.

15            MR. GUTCHESS:  Move to admit and to publish, Your

16   Honor.

17            THE COURT:  Any objection?

18            MR. KUEHNE:  Beyond the scope of direct examination,

19   Your Honor.

20            THE COURT:  Thank you.  The objection is overruled.

21   It's admitted.

22                (Plaintiffs' Exhibit 725 Received.)

23            MR. GUTCHESS:  If we can go down, Ms. Cohen, just to

24   the lower email where Ms. Dooley notes there's compliance.

25
```

1   **BY MR. GUTCHESS:**

2   Q.   Do you see the Zoning Director -- who's the Zoning

3   Director at the time?

4   A.   Joe Ruiz.

5   Q.   Joe Ruiz, Zoning Director.  The applicant has availed

6   themselves for Article 4.  Ms. Dooley says so are they

7   currently in compliance to close out the code issues.

8       We go up to your response, all the way to the top.  You

9   got this update, and you say call me about this when you can.

10  Do not call Joe, call me first, right?

11  A.   I do.

12  Q.   So, Mr. Noriega, as the city manager, you're involved in

13  an issue of parking for Taquerias and you are not happy that

14  your Zoning Director has found them in compliance, right?

15          MR. KUEHNE:  Objection.

16          THE COURT:  What's the grounds?

17          MR. KUEHNE:  Objection.  Foundation.  States facts

18  not in evidence.

19          THE COURT:  Overruled.  You can answer.

20          THE WITNESS:  That's incorrect.

21  **BY MR. GUTCHESS:**

22  Q.   And your statement is "do not call Joe," right?

23  A.   Finish the sentence.  Call me first.

24  Q.   Right.  Call me first, so you didn't want him to call Joe

25  Carollo?

1   A.   I have no idea whether that reference is to Joe, or even

2   Joe Ruiz.  The email chain has Joe in it.  So I doubt it was

3   the commissioner.

4   Q.   Okay.  And Mr. Ruiz was the Zoning Director as of this

5   date, December 23, 2020, right?

6   A.   I believe so, yes.

7   Q.   And he determined that Taquerias was in compliance, right?

8   A.   I'd need to see that email again just to put it into

9   context.

10  Q.   Okay.

11  A.   Thank you.  Yes.

12  Q.   Okay.  And three months later -- you can take that down --

13  you had a new Zoning Director, right?  Mr. Goldberg?

14  A.   Yes.

15  Q.   You didn't even interview Mr. Dan Goldberg, did you?

16  A.   I did not.

17  Q.   All right.  But you knew that Mr. Goldberg's mentor was

18  Mr. Sarnoff, right?

19           MR. KUEHNE:  Objection.  Relevance.  Foundation.

20           THE COURT:  Overruled.  If he knows.

21  **BY MR. GUTCHESS:**

22  Q.   Right?

23  A.   I wasn't aware he was a mentor, no.

24  Q.   Okay.  Mr. Noriega, I want to show you a video that's

25  already introduced into evidence.  It's Exhibit 549.

```
 1                         (Video played.)

 2               THE COURT:  This is in evidence?

 3               MR. GUTCHESS:  Yes, this is in evidence, Your Honor.

 4    BY MR. GUTCHESS:

 5    Q.   Do you see the gentleman walking there?  That is you,

 6    right?

 7    A.   I can't tell if it's me or not.

 8    Q.   Do you see the little stick?  You're walking with the

 9    measuring stick?

10    A.   You're referencing it to me.  I'm not specific as to

11    whether that's me or not.

12    Q.   You can't tell if that's you?

13    A.   I can't tell that's me.  I don't know that I have that

14    gait to it.

15               MR. KUEHNE:  Objection.

16               THE COURT:  Wait.  He said he can't tell.  So I'm

17    going to sustain the objection.  You can ask another question.

18    BY MR. GUTCHESS:

19    Q.   Mr. Noriega, you do recall on Good Friday, April 2, 2021

20    you and Mr. Carollo went to Taquerias and you walked down the

21    street with a little stick measuring the distance between

22    Taquerias and a religious establishment, right?

23    A.   I recall having been out there to measure it.  I also

24    recall that the commissioner and I did not go to Taquerias

25    together, but I was there with a measuring stick.  I'm just
```

```
 1   telling you that doesn't look like me.

 2   Q.   You admit being there on Good Friday, April 2nd?

 3          MR. KUEHNE:  Objection.  I ask that this be taken

 4   down.  There may be an issue as to whether it is in evidence.

 5   It's not marked on our exhibit list.

 6          THE COURT:  You can take it down.  Thank you.

 7   BY MR. GUTCHESS:

 8   Q.   You admit being at Taquerias on April 2, 2021 measuring

 9   the distance between Taquerias and a religious establishment,

10   right?

11   A.   I was there in the public right-of-way measuring with the

12   walking stick, correct.  Not at Taquerias.

13   Q.   Mr. Carollo was there with you?

14   A.   He was not with me while I was measuring, no.

15   Q.   He was down at the corner, right?

16   A.   He was -- he was somewhere parked, but not with me while I

17   was doing the measuring, correct.

18   Q.   Right.  And he was -- you were in the car with him, right?

19   And you had been driving around and he parked, and you did the

20   measurement, right?

21   A.   Correct.

22   Q.   Okay.  And you're the top guy in the city, right?  The

23   C.E.O.?

24   A.   Absolutely.

25   Q.   Good Friday is a holiday at the city?
```

1    A.   Not really many holidays when you're in senior

2    administration so no, it's not a holiday.

3    Q.   Okay.  So that's your priority.  As the city manager with

4    35 departments, 4,000 employees, billion dollar budget is to be

5    out there measuring --

6              THE COURT:  Wait.  What's the objection.

7    Q.   -- Taquerias, right?

8              MR. KUEHNE:  Objection.  Foundation.  Speculation.

9              THE COURT:  Overruled.  He can answer.

10             THE WITNESS:  So I'll say it again.  No, clearly not

11   my priority.  But let's put it also into context of the timing

12   of this, right?  Still early in my tenure as city manager.

13             There was a lot of nuances and aspects of the job that

14   I was still wrapping my arms around.  In particular, the

15   ability to sort of have, you know, some faith and trust of

16   staff at the time, and there were a lot of things I needed to

17   verify myself.

18             This wasn't the only incident of that.  I spent a lot

19   of time in the field especially in the first 18 months,

20   learning all of the various aspects of how the city functioned.

21   How they related to code and I'm a hands-on manager.  I'm not a

22   guy that sits in his office and gives direction from afar.  I'm

23   a guy that's on the street, so that's sort of my style.

24   BY MR. GUTCHESS:

25   Q.   Sir, you are correct about that.  Because the next day,

```
 1  Saturday, April 3rd, you were back at Taquerias again on the
 2  street, right?
 3  A.   I don't recall that.
 4  Q.   Saturday is Holy Saturday, right before Easter?
 5          MR. KUEHNE:  Objection.  Objection.  Relevance.
 6  Object to the religious comment.
 7          THE COURT:  Sustained.
 8  BY MR. GUTCHESS:
 9  Q.   Saturday, April 3rd, sir, you were outside of Taquerias
10  late at night, 11:30 at night watching what I call a raid, what
11  you call an inspection of Taquerias, right?
12  A.   I don't recall the date.
13          MR. KUEHNE:  Objection to the lawyer's reference.
14          THE COURT:  Sustained.
15  BY MR. GUTCHESS:
16  Q.   Sir, do you recall being outside of Taquerias at 11:30 on
17  Saturday -- on a Saturday night in April, 2021?
18  A.   I do recall that.
19  Q.   All right.  And you were there with Mr. Morales, right?
20  Manny?
21  A.   No, sir.  He met me there, correct.
22  Q.   And Mr. Carollo?
23  A.   Mr. Carollo was not there.
24  Q.   And then Mr. Acevedo, the new chief met you there, right?
25  A.   Later.
```

```
 1   Q.   Later that night, right?

 2   A.   Correct.

 3   Q.   Okay.  You had a conversation with Mr. Acevedo, right?

 4   A.   I don't recall specifically whether we spoke that evening

 5   other than by phone.

 6   Q.   When he arrived, you spoke to him when you were there, is

 7   that correct?

 8   A.   I spoke to him when he arrived, correct.

 9   Q.   Right.  And you also told Acevedo that Carollo had a

10   personal issue with Fuller, right?

11   A.   Did not.

12   Q.   You told him it was clearly personal between Carollo and

13   Fuller, right?

14   A.   Did not.

15   Q.   You told him there was bitterness, right?

16   A.   Did not.

17   Q.   And by bitterness, you meant animosity, right?

18   A.   Did not.

19   Q.   And you, yourself, linked Carollo's hatred of Fuller to

20   elections, right?

21   A.   I did not.

22        MR. KUEHNE:  Objection.  States facts not in

23   evidence.  Speculation.

24        THE COURT:  Overruled.  You can continue to question.

25
```

```
 1              MR. GUTCHESS:  Okay.  Let's go to your deposition,
 2    page 188, sir.  Permission to publish to the jury, Your Honor?
 3              THE COURT:  First, show it to the witness and ask him
 4    a question first.
 5    BY MR. GUTCHESS:
 6    Q.   Sir, do you recall having your deposition taken
 7    November 23, 2022?
 8    A.   I do.
 9              THE COURT:  I don't see it on my screen.
10    BY MR. GUTCHESS:
11    Q.   Do you recall being asked:  Do you ever recall talking to
12    former Police Chief Acevedo about Commissioner Carollo's
13    opinion of Fuller?  Do you see that?
14    A.   Yes.
15              MR. GUTCHESS:  And can we show it to the jury, Your
16    Honor?  The whole line of questioning here?
17              THE COURT:  Granted.
18              MR. KUEHNE:  Objection.
19              THE COURT:  What's the grounds?
20              MR. KUEHNE:  Improper impeachment.
21              THE COURT:  Overruled.
22              MR. GUTCHESS:  He just denied everything.
23              THE COURT:  I understand that.  Overruled.
24              THE WITNESS:  Is there a question there?
25
```

1    **BY MR. GUTCHESS:**

2    Q.   Yes.  When you were asked the question:  Do you ever

3    recall talking to former Police Chief Acevedo about

4    Commissioner Carollo's opinion of Mr. Fuller, would you read

5    your response for the jury?

6    A.   I remember talking to Chief Acevedo about the history

7    there with regards to the relationship between Fuller and

8    Commissioner Carollo and they certainly weren't best friends.

9    Q.   You were asked:  What do you mean by that?  And what is

10   your response?

11   A.   I mean, obviously there's been a lot of -- it's become

12   clearly personal between the two, and is tempered by all the

13   litigation and voter recalls.  It's obvious that there is a lot

14   of bitterness between the two of them.

15   Q.   And then you were asked:  When you say bitterness, you

16   mean animosity?  And what do you say?

17   A.   Same thing.

18   Q.   And what do you mean by recalls?

19   A.   There have been -- there was a recall attempting to remove

20   Commissioner Carollo from office.

21   Q.   And you believed that Mr. Fuller and Mr. Pinilla were

22   involved in that recall?

23   A.   It's obvious that they were, yes.

24   Q.   That was a source of the animosity, right?

25   A.   I don't know at this point.  It's all a matter of what

 1   reference you're -- you're making in terms of timing.  If we're

 2   still talking about the weekend of the -- the code enforcement

 3   police action, by then we had not any conversations about it.

 4        If you're talking about subsequent to that, yes, there

 5   would have been conversations relative to specifically what I

 6   referenced in my deposition, but not prior to that weekend.

 7   Q.   All right.  Let's take a look at the video from April 3,

 8   2021 of the police officers at Taquerias.

 9             THE COURT:  Is this in evidence?

10             MR. GUTCHESS:  Yep, this one is in evidence, I

11   believe.

12             THE COURT:  The number?

13             MR. GUTCHESS:  584.  Sorry, it's not in evidence,

14   Your Honor.

15   **BY MR. GUTCHESS:**

16   Q.   Mr. Noriega, you were there in person watching this at

17   Taquerias?

18   A.   I was there, correct.  I wasn't watching the inspection in

19   person.  I was a little further down the street.

20   Q.   From down the street you can see the police officers

21   outside?

22   A.   I could.

23   Q.   Let's show you a video of this, see if this refreshes your

24   recollection.

25                         (Video played.)

```
 1              MR. GUTCHESS:  Stop it there for a second.
 2   BY MR. GUTCHESS:
 3   Q.   Do you recognize any of these police officers, sir?
 4   A.   I don't.
 5   Q.   Does this video appear to be in front of Taquerias and
 6   some of your city employee police officers going in to inspect
 7   it?
 8   A.   It does.
 9              MR. GUTCHESS:  Your Honor, move to admit and
10   permission to publish?
11              THE COURT:  All right.  Any objection?
12              MR. KUEHNE:  Your Honor, no objection to the video.
13   I think there's audio and I object to the audio.
14              THE COURT:  All right.
15              MR. GUTCHESS:  We can play it without audio.  I don't
16   think it's relevant.
17              THE COURT:  It's admitted.
18                 (Plaintiffs' Exhibit 584 Received.)
19                       (Video played.)
20              MR. KUEHNE:  Objection, Your Honor, to this portion.
21   I'm not certain that the witness was present at any of this
22   once they went inside, and I would object to this as beyond the
23   scope of this witness' knowledge.
24              THE COURT:  That's fine.  You can inquire.
25
```

1   **BY MR. GUTCHESS:**

2   Q.   Sir, do you recognize that as Taquerias?

3   A.   I do.

4   Q.   And those are your city police officers, right?

5   A.   They are.

6   Q.   And you were observing them, right?

7   A.   I wasn't observing them directly, no.

8   Q.   Well, you were observing them from down the block, right?

9   A.   I was not observing them directly, so this entire

10  interaction I never witnessed firsthand.

11  Q.   Okay.  But you were there.  What were you doing there,

12  sir?

13  A.   So on a number of occasions, I would go out and sort of do

14  sort of my own sort of field work with a lot of these Dry

15  Hours, especially when we were in the shutdown period.  And

16  when we reopened, it was an opportunity for me to go kind of do

17  walk-alongs with Code and police, especially after hours

18  because typically, that's not my scene.

19       I'm not hanging out at the bars and clubs, so I don't get

20  a firsthand perspective of the work they do.  I don't walk with

21  them into the establishments, I never do, because that's way

22  out of the scope.

23       In a lot of ways, I want to let them do their job, but I

24  had done that at least a half a dozen times since I've been

25  city manager.

```
1   Q.   Sir, in fact, you just didn't want to be seen there,
2   right?
3   A.   No.
4   Q.   You were hiding in the corner, right?
5   A.   I was on the street in the middle of the sidewalk, how
6   could I have been hiding?
7   Q.   Do you recall three weeks later, April 22, 2021, another
8   commission meeting where Mr. Carollo was passing another series
9   of ordinances targeting bars?
10          MR. KUEHNE:  Objection.  Foundation.  Speculation.
11   States facts not in evidence including passing.
12          THE COURT:  Sustained.  Rephrase the question.
13   BY MR. GUTCHESS:
14   Q.   Do you recall on April 22, 2021, Mr. Carollo creating a
15   task force that you were in charge of?
16          MR. KUEHNE:  Objection.  Foundation.  Mr. Carollo
17   creating.
18          THE COURT:  Overruled.  He can answer if he knows.
19          THE WITNESS:  Yeah, I don't recall specifically the
20   date and I don't recall specifically what the instructions
21   were.  If you want to give me some specific body of evidence
22   that I can review, I'm happy to confirm it.
23   BY MR. GUTCHESS:
24   Q.   Do you recall April 22, 2021 was the first commission
25   meeting that Chief Acevedo attended?
```

```
 1   A.   I don't recall that specifically.  I don't recall which

 2   meeting was his first.

 3   Q.   Right.  And then, sir, let's show you a video of that

 4   meeting where Mr. Carollo and you are interacting about direct

 5   communications.

 6            MR. GUTCHESS:  Lina, could you play that.

 7            THE COURT:  Which exhibit is this and is it in

 8   evidence?

 9            MR. GUTCHESS:  No, it is not.  It's Plaintiffs'

10   Exhibit 736.  It's just one of these public commission

11   meetings.  736.

12            THE COURT:  Which number is it?

13            MR. GUTCHESS:  736, right?  736.

14            THE COURT:  All right.

15            MR. KUEHNE:  Your Honor, objection.  Beyond the scope

16   of the direct examination.

17            THE COURT:  All right.  It's overruled.

18            (Plaintiffs' Exhibit 736 Received.)

19                   (Video played.)

20            MR. GUTCHESS:  Can we publish?

21            MR. KUEHNE:  Your Honor, also preserve the

22   legislative privilege objection as a continuing objection.

23            THE COURT:  This is a public meeting hearing,

24   correct?

25            MR. GUTCHESS:  Yeah, it's a public hearing.
```

```
 1                THE COURT:  Overruled.

 2                MR. GUTCHESS:  All right.

 3                          (Video played.)

 4   BY MR. GUTCHESS:

 5   Q.   Sir, did you not just violate the City Charter right

 6   there?

 7                MR. KUEHNE:  Objection.  Improper cross-examination.

 8   Legal opinion.

 9                THE COURT:  Sustained.

10   BY MR. GUTCHESS:

11   Q.   Mr. Carollo just asked you for permission to meet with

12   your chief of police alone to give him a list of places to send

13   the task force, and you said:  Of course I don't have a problem

14   with that, right?

15   A.   He asked permission.

16   Q.   Okay.

17   A.   That's specifically what's allowed per the Charter.  He

18   didn't do it on his own.  He went through the manager's office.

19   That's exactly the way it should happen.

20   Q.   Sir, let's take a look at the City Charter.

21                MR. KUEHNE:  What exhibit is this, please?

22                MR. GUTCHESS:  303.

23   BY MR. GUTCHESS:

24   Q.   Except for purposes of inquiry and as may be necessary as

25   provided in Section 14, the mayor, the city commission, any
```

```
 1    committees and members thereof shall deal with the
 2    administrative service solely through the city manager, right?
 3    And neither the mayor nor the City Commission nor any
 4    committees nor members thereof shall give orders to any of the
 5    subordinates of the city manager, right?
 6         So it's your testimony today that you can just waive that
 7    and you can allow Mr. Carollo to give lists of properties for
 8    the task force to inspect directly to the police chief, right?
 9              MR. KUEHNE:  Objection, Your Honor.  Legal --
10              THE COURT:  Grounds?
11              MR. KUEHNE:  Seeks a legal conclusion by the manager.
12              THE COURT:  Overruled.  You can answer.
13              THE WITNESS:  As long as that inquiry comes through
14    me, and obviously in this particular case, he asked for
15    permission through me directly.  It's absolutely allowable and
16    not in violation of the Charter.
17    BY MR. GUTCHESS:
18    Q.   Sir, you've never refused a request from Mr. Carollo to
19    give directions to your city employees, have you?
20    A.   I don't recall whether I've ever refused to.  He's never
21    crossed the line so I maybe probably wasn't given reason to.
22              MR. GUTCHESS:  All right.  Let's go to Exhibit 722.
23    And this one is not in evidence, but it's a text message
24    between Mr. Manny Morales and Mr. Noriega.
25              MR. KUEHNE:  This is 722?
```

```
 1            MR. GUTCHESS:  Yep.
 2   BY MR. GUTCHESS:
 3   Q.   Do you see the exhibit stamp up there from your deposition
 4   testimony?
 5   A.   I do.
 6   Q.   Do you recognize this text message as a message from
 7   Mr. Morales to you?
 8   A.   I would assume it is, but I can't because I don't see who
 9   it's -- it's from him, I'm assuming it's to my phone, but
10   there's no reference to it here.
11   Q.   You can check your deposition if you want or, I mean, it's
12   just a text message from Mr. Morales.
13            MR. GUTCHESS:  So I'd ask for it to be admitted to
14   save time going through the depo, and to publish to the jury.
15            THE COURT:  Any objection?
16            MR. KUEHNE:  Your Honor, with the lawyer having made
17   the representation that it is a text message with the manager,
18   I'll look at the depo later.  We do not have an objection with
19   that understanding.
20            THE COURT:  Thank you.
21            (Plaintiffs' Exhibit 722 Received.)
22   BY MR. GUTCHESS
23   Q.   Mr. Noriega, Manny Morales is the current Chief of Police,
24   right?
25   A.   He is.
```

1   Q.   He's the one that was present when Mr. Carollo was playing

2   the theme of the Godfather.  You were there too, right?

3   A.   Put a context to that, like where?

4   Q.   When Carollo and the City Commission managed to terminate

5   Mr. Acevedo, they afterwards had a little celebration and

6   played the theme of the Godfather.

7           MR. KUEHNE:  Objection, Your Honor.  Relevance, 403,

8   beyond the scope.

9           THE COURT:  Sustained.  Ask your question.

10  **BY MR. GUTCHESS:**

11  Q.   All right.  What is Mr. Morales telling you from the units

12  that checked the location?  Which location is that?

13  A.   Taquerias.

14  Q.   And what is he explaining to you there?

15  A.   What the individual officers observed when they visited

16  the location.

17  Q.   Could you read that?

18  A.   Sure.  Establishment has outdoor seating, restaurant

19  inside, and the upstairs has a club with hard liquor being

20  sold.  Food can be ordered from downstairs.  The music being

21  played outdoors was low and non-invasive during our

22  surveillance.  Intel received from staff and patrons suggested

23  that Friday nights the establishment is packed and the rest is

24  sort of halfway cut off, and have way bigger crowds.  Task

25  force should revisit on a Friday night to do a follow-up

 1   inspection.  No criminal activity observed.

 2   Q.   Okay.  Do you have any reason to dispute the accuracy of

 3   Mr. Morales' assessment?

 4   A.   I do not.

 5   Q.   You testified I mean earlier about the closing of

 6   Taquerias, right?  You can take that down.  So, you couldn't

 7   close it based upon your measurements, right?

 8              MR. KUEHNE:  Objection.

 9              THE COURT:  Grounds?

10              MR. KUEHNE:  Foundation.  States facts not in

11   evidence.

12              THE COURT:  Overruled.  You can answer the question.

13              THE WITNESS:  No, the measurement had nothing to do

14   with the closure.

15   **BY MR. GUTCHESS:**

16   Q.   You couldn't cut off its parking, right?  They were in

17   compliance?

18              MR. KUEHNE:  Objection.  States facts not in

19   evidence.

20              THE COURT:  Overruled.  He can answer the question.

21              THE WITNESS:  They were compliant in the parking

22   side, as well.

23   **BY MR. GUTCHESS:**

24   Q.   Your own chief of police is telling you that there's no

25   illegal activity going on, right?

```
 1   A.   No criminal activity, correct.
 2   Q.   This is -- we're into 2022 now, and Mr. Carollo's been
 3   targeting Taquerias for four years at this point unable to shut
 4   them down, right?
 5              MR. KUEHNE:  Objection to the timeframe.  States
 6   facts not in evidence.
 7              THE COURT:  All right.  Sustained.
 8   BY MR. GUTCHESS:
 9   Q.   Okay.  And then you testified earlier this morning about
10   the means you eventually had to shut them down.
11              MR. GUTCHESS:  Your Honor, could we move to admit the
12   text message, 722?
13              THE COURT:  It's admitted.
14   BY MR. GUTCHESS:
15   Q.   And there's been talk about a couple of stairwells, right?
16   So there's one stairwell outdoors, right?  That was approved by
17   the city, although incorrectly, right?
18   A.   Correct.
19   Q.   So they decide, okay, well, we made a mistake.  We're no
20   longer allowing that, but -- and that wasn't really the basis
21   that they shut them down.  There's another stairwell inside,
22   right?
23              MR. KUEHNE:  Objection.
24              THE COURT:  Grounds?
25              MR. KUEHNE:  Multiple questions.  States facts not in
```

```
 1   evidence.
 2            THE COURT:  Overruled.  You can answer.
 3            THE WITNESS:  Yeah, there were a number of factors.
 4   I don't recall specifically what was at issue with that
 5   stairwell, so I don't recall.
 6   BY MR. GUTCHESS:
 7   Q.   But this stairwell inside had been there for decades,
 8   right?
 9   A.   I have no direct knowledge of that.
10   Q.   Taquerias had been there since the '80s, right?
11   A.   Again, I had never been inside Taquerias, so I wouldn't
12   know whether that stairwell had been there since its inception,
13   when it was installed, when it was opened.  I don't have any
14   direct knowledge of that.
15   Q.   You never heard of anybody being injured on that
16   stairwell, right?
17            MR. KUEHNE:  Objection.  Hearsay.  Foundation.
18            THE COURT:  Overruled.  If he knows.
19            THE WITNESS:  I have never heard of anybody being
20   hurt on the stairwell, no.
21   BY MR. GUTCHESS:
22   Q.   Okay.  You know that those employees that worked at
23   Taquerias had worked there for a combined 67 years?
24            MR. KUEHNE:  Objection.  Foundation.  Speculation.
25   Rule 403.
```

```
 1              THE COURT:  Overruled.  If he knows.

 2              THE WITNESS:  I do not know.

 3    BY MR. GUTCHESS:

 4    Q.   Do you care?

 5              MR. KUEHNE:  Objection.

 6              THE COURT:  Sustained.  Next question, Mr. Gutchess.

 7    BY MR. GUTCHESS:

 8    Q.   They were left unemployed when Taquerias was shut down?

 9              MR. KUEHNE:  Objection.  Move to strike.  Beyond the

10    testimony.  Speculation, lack of foundation.

11              THE COURT:  Sustained.

12    BY MR. GUTCHESS:

13    Q.   Okay.  Now, I believe you also testified this morning

14    about Viernes Culturales, right?

15    A.   I did.

16    Q.   And what you testified about was that there were people

17    that were attending outside of the little space that they were

18    supposed to be confined to, right?

19    A.   No, that's not what I testified.

20    Q.   So what did you testify to?

21    A.   That the event expanded beyond the footprint of its permit

22    as well as the alcohol distribution.

23    Q.   Okay.

24    A.   So alcohol was being distributed, individuals were leaving

25    the premises with alcohol in their hand, and it wasn't being
```

 1    regulated as was requested as part of their permit.

 2    Q.    That was Bacardi had done a sponsorship, right?

 3    A.    I don't recall the brand, the name of the actual alcohol.

 4    Q.    When you say outside of their footprint, you mean -- does

 5    that mean -- maybe I'm misunderstanding -- when you said

 6    outside of their footprint, I took that to mean there was a

 7    confined space they could have the --

 8    A.    The permit is specific to a location, correct.

 9    Q.    Correct.  And what was the location?

10    A.    The paseo between the Tower Theater and Domino Park.

11    Q.    Okay.  And in that small little area, they went outside

12    that and that's why you shut them down, right?

13    A.    Correct.

14    Q.    Sir, that cultural event had been going on for 22 years

15    and you were the one who put the death knell into it because

16    people expanded outside of the little area you had confined

17    them to?

18                THE COURT:  Mr. Gutchess, there's an objection.

19                MR. KUEHNE:  Objection.  Foundation.  Lack of

20    testimony as well as lawyer's opinion.  Move to strike.

21                THE COURT:  All right.  Stricken.  You can rephrase

22    the question.

23    **BY MR. GUTCHESS:**

24    Q.    Sir, you were the one who finally put an end to Viernes

25    Culturales after 22 years, correct?

1              MR. KUEHNE:  Objection.  Speculation.

2              THE COURT:  Overruled.  He can answer the question.

3              THE WITNESS:  Your clients put an end to Viernes

4    Culturales by not following the parameters of the perimeter.  I

5    did no such thing.

6              In fact, they were warned and then they violated the

7    conditions of the permit again a second time, and then

8    subsequently the event was terminated or seized, correct.

9    **BY MR. GUTCHESS:**

10   Q.   Sir, do you follow the advice that you gave to your

11   employees to be a goldfish?

12             MR. KUEHNE:  Objection.

13             THE COURT:  Overruled.  He can answer that question.

14             THE WITNESS:  I absolutely do.

15             MR. GUTCHESS:  Thank you.  No further questions.

16             THE COURT:  All right.  Mr. Kuehne, you have ten

17   minutes remaining, 30 seconds.

18             MR. KUEHNE:  Yes, Judge.

19             THE COURT:  After that, we'll take a break.  Anyone

20   need a break now or you're fine?  Everyone's fine?  We'll take

21   a break after his testimony.  And ten minutes, 30 seconds to

22   proceed.

23

24

25

```
 1            MR. KUEHNE:  Judge, one moment.

 2                    -  -  -  -  -

 3        REDIRECT EXAMINATION OF ARTHUR NORIEGA

 4   BY MR. KUEHNE:

 5   Q.   Hello, Manager.  You mentioned a number of times the Ted

 6   Lasso show.  Could you remind us what the Ted Lasso show is?

 7   A.   It's a program on Apple T.V.  Like a sitcom.

 8   Q.   Do you find portions of the Ted Lasso show to be helpful

 9   in informing the public or your subordinates about leadership

10   issues?

11   A.   Yes.

12   Q.   So tell us, if you can, what your role is in helping your

13   employees command their positions and take responsibility for

14   their authority and duties?

15   A.   So it was interesting the context that was taken relative

16   to a difficult meeting particularly as a result of this

17   particular reference to be a goldfish.

18        Difficult meetings aren't just about tone.  They're

19   actually about the actual action taken during a meeting.  So in

20   other words, we have a lot of items that we put forth that

21   ultimately don't pass, get deferred, get redirected.

22        And a lot of times, a lot of work and effort is put into

23   that.  Honestly, that's the majority of what I'm referencing

24   when I tell them sometimes you've just got to take a breath,

25   move past it, we'll come back at it again.
```

1    I can give one very clear example which is the

2  Rickenbacker RFP which is an issue that has been gone on for

3  roughly seven, eight, nine years.  I inherited it.  It's gone

4  through two iterations, now through litigation.  We can't quite

5  get that item to a finish line.

6    And I know the amount of work that staff has put into

7  that.  I know how frustrating it is, and a lot of times, that's

8  really what I'm referencing.

9    It's not the tone or tenor.  It's successes and the

10 ability of sort of gets things done and, you know, I have a lot

11 of staff that are very proud of the work they do, and quite

12 frankly, when you don't get to the finish line or have a

13 success on a particular item or issue, that can be frustrating.

14 Q.   In your administration, is your staff empowered to make

15 certain that commissioners don't give them orders?

16 A.   They have a very clear understanding that they are not to

17 take direction from a commissioner directly or their staff.

18 Q.   And in the time that you've been manager, has it come

19 to your attention that any staff member ever took any orders

20 from any commissioner?

21 A.   Yes.

22 Q.   And what was that?

23 A.   Very specific reference, had a staff member of another

24 district during an update on capital projects asked of staff a

25 very particular request that got back to me.  I had a

1    conversation with that particular staff member, and it was

2    understood that he crossed the line on that one.

3    Q.   By any chance was that district Commissioner Joe Carollo?

4    A.   It was not.

5    Q.   You were asked some questions by the plaintiff about the

6    Charter.

7    A.   Yes.

8    Q.   Who, if you know, authorized, approved your statement of

9    the powers you have regarding interaction between commissioner

10   and staff member?

11   A.   Say that again?

12   Q.   Is that the approved city policy?

13   A.   It's built into the Charter with regards to interaction

14   between elected officials and the administration.

15   Q.   Is that historically what the city has done under that

16   Charter?

17            MR. GUTCHESS:  Objection.

18            THE COURT:  What's the objection?

19            MR. GUTCHESS:  Lack of knowledge.

20            THE COURT:  Sustained.

21   **BY MR. KUEHNE:**

22   Q.   When you became city manager, did you determine if your

23   interpretation and policy was consistent with city policy?

24            MR. GUTCHESS:  Objection.

25            THE COURT:  What's the objection?

```
 1              MR. GUTCHESS:  Leading.
 2              THE COURT:  Sustained.
 3   BY MR. KUEHNE:
 4   Q.   How did you go about making your application of Charter
 5   Section 4-D?
 6   A.   Conversations with the law department.  Every manager has
 7   their own philosophy on how to handle that.  A lot of that
 8   comes from experiences and their direct relationships with the
 9   elected officials.
10        So everybody has their own personal preference relative to
11   how communications occur and whether or not you want to
12   authorize communication from various -- at various staff levels
13   directly with department -- or sorry, commission staffs.
14   Q.   The plaintiff showed you a video, Plaintiff Exhibit 643.
15   Just to remind you, January 14, 2021, City Commission meeting.
16   Do you recall that?
17   A.   Yes.
18   Q.   You mentioned the homelessness issue.  Was that a
19   recurring issue for you in the city?
20   A.   It's been a significant issue since the day I took the
21   job, yes.
22   Q.   Was it an important issue for the Commission?
23   A.   Yes, absolutely, as a whole.  In particular, some
24   districts are more impacted by others.
25   Q.   Was District 3 one of those?
```

1    A.    It is impacted, but not the most.

2    Q.    Okay.  And does that City Commission meeting, 643, have

3    anything to do, as you understand it, with Fuller or this case?

4    A.    Nothing.

5    Q.    You were asked about your becoming city manager.  Who

6    appointed you?

7    A.    The mayor.

8    Q.    Was that Francis Suarez?

9    A.    It is.

10   Q.    It is.  And did the Commission act on that?

11   A.    They did.

12   Q.    Was Joe Carollo responsible for you becoming manager?

13   A.    Not directly, no.

14   Q.    Were any commissioners responsible for you becoming

15   manager?

16   A.    Not directly.

17   Q.    Did you have any negative votes by the Commission?

18   A.    I did not.

19   Q.    Five-zero?

20   A.    Yes.

21   Q.    You were asked some questions on cross-examination about

22   retirement.  I'm not really sure what those questions were.

23        Does Joe Carollo have anything to do with retirement of

24   staff members?

25   A.    No.

1   Q.   Is that built into the city employee's salary structure

2   for as long as you know?

3   A.   It is actually a direct reference to labor agreements,

4   those dictate those.

5   Q.   Oh, are those labor agreements approved by the manager,

6   the mayor, and the City Commission by public vote?

7   A.   They are negotiated by the manager and then approved by

8   the City Commission in a public meeting.

9   Q.   Now, you were shown a bunch of transcript references to a

10  deposition.  You understand that deposition to be in the Mad

11  Room case, a completely separate lawsuit, right?

12  A.   Correct.

13  Q.   And did you prepare for that deposition?

14  A.   I did.

15  Q.   What did you understand when you were asked -- answering

16  those questions that the plaintiff asked you about, the Mad

17  Room case involved?

18          MR. GUTCHESS:   Objection.   Beyond the scope.

19  Relevance.

20          THE COURT:   Overruled.

21          THE WITNESS:   Specifically the reference was Mad

22  Room's case against the city, not this case, correct?

23  **BY MR. KUEHNE:**

24  Q.   Right.  And what did you understand as you prepared and

25  answered those questions the Mad Room case against the city

```
 1   involved?

 2   A.   Targeting with regards to very specific properties.

 3   Q.   Okay.  A separate lawsuit?

 4   A.   Correct.

 5   Q.   Now, you were asked about Plaintiff Exhibit 601, and I'm

 6   going to try to get it up on the screen.  601 is a text

 7   message, 5-27-20 sent to Maurice Pons.

 8            MR. KUEHNE:  Could we get that up on the screen?  We

 9   have it as Plaintiffs' Exhibit 601.  5-27-20.

10   BY MR. GUTCHESS:

11   Q.   You were asked the -- you actually quoted the third from

12   the bottom and the last one on the bottom.  Who do you

13   understand those text messages to be between?

14   A.   They're between Maurice Pons and Ace Marrero.

15            THE COURT:  Two minutes remaining.

16   BY MR. KUEHNE:

17   Q.   Did an issue come up when you were city manager about

18   Maurice Pons and his relationship with Fuller?

19   A.   Well, an issue arose with regards to his brother's

20   relationship with Bill Fuller, correct.

21   Q.   And did that cause you as chief administrator some

22   concerns?

23   A.   It did.

24   Q.   And did you take action?

25   A.   I did.
```

```
 1   Q.   Was that action having anything to do with Joe Carollo?
 2   A.   No.
 3   Q.   Was that necessary to fulfill your duties as city manager?
 4   A.   Yes.
 5   Q.   And why did you take action?
 6   A.   Because of the concern over a conflict of interest in
 7   particular.
 8   Q.   Okay.
 9   A.   Because Maurice's brother had spent a significant amount
10   of time advocating, not just on behalf of the plaintiff but on
11   behalf of other clients, and it didn't feel like there was a
12   very clear line drawn with regards to that relationship and
13   Maurice's involvement.
14        THE COURT:  One minute remaining.
15   BY MR. KUEHNE:
16   Q.   You can take that down.  You were asked some questions
17   about Commissioner Carollo at a public meeting asking your
18   permission to provide information to I think somebody in the
19   police department.  Was it the chief or one of the chief's
20   assistants?
21   A.   It was the chief I think directly.
22   Q.   The chief.  You gave permission?
23   A.   I did.
24   Q.   Why?
25   A.   Because I certainly feel that if the commissioner or any
```

1   commissioner or any elected official has a very specific

2   request, and it's not outside the scope of their job in

3   particular, and it was certainly the chief's responsibility

4   as -- since he oversaw Dry Hour to meet with them directly and

5   it was absolutely appropriate to do so.

6           THE COURT:  You may ask another question and we will

7   be done.

8           MR. KUEHNE:  Yes, Your Honor.

9   **BY MR. KUEHNE:**

10  Q.   Did you understand Commissioner Carollo's comments about

11  illegal bars to be one of the reasons you had a Dry Hour

12  inspection at Taquerias?

13  A.   It is directly.

14          THE COURT:  Thank you.

15          MR. KUEHNE:  Thank you, Mr. Manager.

16          THE COURT:  All right.  You're excused.  Have a good

17  day.  Thank you, Mr. Manager.

18          Ladies and gentlemen, we'll be in recess for 15

19  minutes.  Again, do not discuss this case with anyone.  Do not

20  formulate any opinion.  We'll see you at 11 -- quarter to

21  12:00.

22          (Thereupon, the jury exited the courtroom and a

23                  short recess was had.)

24          THE COURT:  All right.  You may be seated, everyone.

25  Court is back in session.  Everyone ready to proceed?

1    MR. KUEHNE:  Judge, I wanted to know if we could have

2  a brief sidebar before we bring the jury in?

3    THE COURT:  Sure.

4    (At the bench.)

5    MR. KUEHNE:  We're going to inform the jury that we

6  are resting our case with the close of Mr. Noriega's testimony.

7    THE COURT:  Okay.

8    MR. KUEHNE:  Given the Court's rulings on my proffer,

9  we determined that it's appropriate to not call the

10 commissioner for those very limited reasons.  I believe I made

11 a significant proffer of the areas.

12    If the Court thinks that I need to make a more

13 detailed proffer, I'm glad to do that at sidebar or in writing.

14    THE COURT:  I will defer that.  It's up to you, sir.

15 It's your case.  I'm not preventing you from calling your

16 witness.  That's fine.  I'll send them home right now.

17    What we'll do, we'll have a break.  I'll come back in

18 an hour and a half to go over all the motions, and also while

19 we're here, I was going to rule on the plaintiffs' sealed

20 emergency motion for sanctions that was denied, obviously,

21 because I would have, as I told you before, I don't punish

22 clients for any behavior the Court may perceive that had

23 occurred before this Court.

24    I treat everyone with the same respect.  I don't

25 believe in doing that, so that will be a moot point anyway.  So

 1    this motion is denied.  This is docket 422, plaintiffs' sealed

 2    emergency motion for sanctions.  I will rule on the rest of the

 3    motions this afternoon.

 4         You want to rest now in front of the jury, I will send

 5    them home and tell them we're going to start closing promptly

 6    at 8:30.

 7         Again, I gave everyone up to an hour 45 minutes.  That

 8    doesn't mean you have to use all of it.  If you decide to do

 9    so, I did have with me your motion last night at 8:00, I think

10    you all sent me or at 8:30 regarding your proposed closing

11    argument.  I don't know who sent it.

12         MR. PERTNOY:  I sent it.  Yes, sir.

13         THE COURT:  I can go over briefly what I find to be

14    not admissible and should be explored.  I don't know whether or

15    not the plaintiff has anything they would like to address as

16    well that you intend to do, we can address that.  I don't want

17    to have any disruption throughout this closing argument

18    necessarily unless there's really a basis to do so.

19         I want each side to present their case so we can move

20    on that.  If you believe there's something that I overlooked

21    that should be objected to, it needs to be with sincerity, not

22    just for the sake of doing that.

23         If I find that out, that's going to be the end of your

24    closing arguments or sanctions.  We're not going to do that.  I

25    have the most respect for this jury.  Let them hear and make

1   that determination.

2         MS. CAPRIO:  Your Honor, we were still working on our

3   closing yesterday.  May we submit it to you by email the way

4   the defense did?  You can read it over?

5         THE COURT:  Look, these rules are in place.  You know

6   the golden rules.  There's certain things in this case here

7   that should not be admitted and vice versa.  I want to make

8   sure we have a clear understanding of that.

9         No disparaging remarks about opposing counsel, things

10   about saying that everybody knew, either, both sides, there

11   have been -- it came out on both sides as well as to that.

12   I will address that first when I come back outside the presence

13   of the jury.  You can give me an idea who is the doing the

14   closing?

15         MS. CAPRIO:  I'm doing the closing.

16         THE COURT:  Entirely?

17         MR. GUTCHESS:  I'll probably do the rebuttal.

18         THE COURT:  You told me both of you guys are going to

19   split.

20         MS. CAPRIO:  We're still working on that, but I think

21   so.

22         THE COURT:  You can decide.  There's only one

23   closing.  Now you use all of your minutes up, that's on you,

24   Mr. Gutchess.  If she speaks an hour, 44 minutes, you've got

25   one minute to say something.

 1            MR. GUTCHESS:  That's all I need, Judge.

 2            MS. CAPRIO:  I know I speak quickly, Judge.

 3            THE COURT:  If you have to rehearse, please do so.

 4    Please, we don't want to have Ellie screaming at you saying

 5    please slow down.  They're not going anywhere.  We came this

 6    far, let's do this the right way and finish it.

 7            MR. KUEHNE:  Judge, with regard to the closing, it

 8    may not matter now that Ms. Dawson is ill, but we were going to

 9    ask the Court if in our affirmative closing, we could spend

10    time with two lawyers doing it on discreet subject matters, not

11    covering double things.  We may have to rethink that because of

12    Ms. Dawson who we were expecting to do part of the closing, if

13    Your Honor permitted that, is not there, so we've got to

14    retool.

15            THE COURT:  On closing, when it's only on rebuttal, I

16    don't allow attorneys to piecemeal, 5, 15 minutes.  If you are

17    a doing it, I will permit that.

18            MR. KUEHNE:  Understood.  We just wanted

19    clarification on that last matter, Your Honor.  We would like

20    permission to file our motion under seal.  I'll tell you what

21    it is we think in an abundance of caution because it refers to

22    the matters that were filed in the sealed documents that Your

23    Honor raised in open court at the end of last week, the end of

24    last week.  We'll call it the sanctions issue for lack -- the

25    photograph issue.

1      We want to file -- permission to file a motion under

2  seal.  The motion is going to be, and we have copies, a motion

3  for mistrial and a motion for disqualification with a

4  supporting affidavit.

5      We think it should be filed under seal.  Your Honor

6  could look at it and decide not to, but it refers to the sealed

7  matters and so we thought in an abundance of caution, to avoid

8  any issues, that we would ask for permission to file it under

9  seal.

10      THE COURT:  You can file it under seal.  That's fine.

11      MR. KUEHNE:  All right.

12      MR. PERTNOY:  Can we have a paperless entry entered

13  so that when we link the filing for the sealing that will -- I

14  think that's what we did the last time.

15      THE COURT:  That's filed under seal.  That's fine.

16      MR. KUEHNE:  Does Your Honor want a courtesy copy

17  now?  I'm glad to do that.

18      THE COURT:  All right.

19      MR. KUEHNE:  Here's the motion.  I have one for them,

20  Your Honor, but the affidavit, I don't have copies yet,

21  although I do have an executed affidavit in support.  So this

22  is unsigned, but I just haven't had a chance to run a photocopy

23  with it signed and executed.  But the filing will have that,

24  Your Honor.

25      THE COURT:  All right.

```
 1              MR. KUEHNE:  I think that covers our sidebar issues,
 2    Your Honor.
 3              THE COURT:  Anything else?
 4              MR. PERTNOY:  No.
 5              MR. KUEHNE:  When you come back, we will announce
 6    that we rest --
 7              THE COURT:  Sure.
 8              MR. KUEHNE:  -- the case in front of the jury.
 9              THE COURT:  Sure.  We can bring in the jurors,
10    please.
11              THE COURT SECURITY OFFICER:  All rise.
12              (Thereupon, the jury entered the courtroom.)
13              THE COURT:  The jurors are present and accounted for.
14    You may be seated, everyone.
15          Mr. Kuehne, you may call your next witness.
16              MR. KUEHNE:  Your Honor, we would like to make an
17    announcement to the Court and to the jury, if we could be so
18    permitted.
19              THE COURT:  Sure.
20              MR. KUEHNE:  Your Honor, at the present time,
21    Commissioner Carollo rests his case subject to making certain
22    that the exhibits are all appropriately identified and put into
23    evidence.
24              THE COURT:  All right.  Fine.  Thank you.  With that
25    said, ladies and gentlemen, you're going to get a chance to go
```

1    home early today.  I need to go -- I see by the smiles on your

2    face as well.  I need to go through the administrative issues

3    and make sure we have everything ready for you tomorrow

4    accordingly.

5            So, therefore, again, do not discuss this case with

6    anyone.  Do not formulate any opinions as well, and I will see

7    you tomorrow morning.  We plan to start at 8:30.

8            I told the attorneys they will each have up to an hour

9    and 45 minutes for closing arguments.  And so -- and also

10   again, we will provide lunch for you.

11           And also now because we're giving them three and a

12   half hours total combined if they use it, if anyone needs to go

13   to the restroom or take any break, please raise your hand, let

14   the lawyers know ahead of time or whatever so we can account

15   for that as well.  Sitting three and a half hours, you may be,

16   so, I don't know.  So you let me know, okay?  Thank you.

17           With that said, we'll see you tomorrow.  Good night.

18           THE COURT SECURITY OFFICER:  All rise.

19           (Thereupon, the jury exited the courtroom.)

20           THE COURT:  All right.  We'll be in recess till about

21   1:30 to go over the previous motions pending and we will have a

22   charge conference and we'll address all those things, as well.

23           MR. KUEHNE:  Yes, Your Honor.  Just a couple clean up

24   the record matters.  One, we would like the opportunity to

25   reserve on motions following the conclusion of all the evidence

 1   the Court's reserved before.  But we would like the opportunity

 2   to reserve that and make it -- make the presentation in writing

 3   or orally as the Court deems fit without otherwise interruption

 4   of the necessary steps we have.

 5          And second, Your Honor, I think that at sidebar, it

 6   was made clear but I did not hear any announcement from the

 7   plaintiffs that they were not intending to call any rebuttal

 8   witnesses.  I think that was clear when we had the sidebar, but

 9   I believe that is in order to make certain the record is clear

10   on that.

11          MS. CAPRIO:  Yes, Your Honor.  Mr Kuehne is correct.

12   Plaintiffs are not calling any rebuttal witnesses, and we also

13   move to conform the pleadings to the evidence that's been

14   presented at this trial.

15          THE COURT:  All right.  Granted.  All right.  Have a

16   good day, everyone.

17          MR. PERTNOY:  To be clear, we oppose the conforming

18   of the evidence as previously --

19          THE COURT:  That's noted.  That's noted as well.

20          MR. KUEHNE:  One last sort of prefatory issue and we

21   may be discussing it later, but does the Court have a

22   preference on when the jury instructions are going to be read

23   to the jury?  Some judges do it before closing, which is what

24   we would ask the Court to do, and we're pleased to present

25   argument on that if the Court needs to do that.

1          THE COURT:  I don't need to hear any arguments

2     because that's what I do consistently.

3          MR. KUEHNE:  Yes, Judge.  Thank you.

4          THE COURT:  Anything else?

5          MS. CAPRIO:  No, Your Honor.

6          THE COURT:  Thank you.

7                    (Luncheon recess.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **<u>TUESDAY AFTERNOON SESSION, MAY 30, 2023</u>**

2    <u>P-R-O-C-E-E-D-I-N-G-S</u>

3    - - -

4    (Call to the Order of the Court.)

5    THE COURT:  You may be seated, everyone.  The Court

6    is back in session.  Will the parties announce their appearance

7    for the record?

8    MS. GOMEZ:  Jeff Gutchess, Amanda Suarez, Roseanna

9    Arteaga-Gomez on behalf of the plaintiffs.

10   MR. PERTNOY:  Good afternoon, Your Honor.  Mason

11   Pertnoy, Leah Gardner, Marc Sarnoff, and Ben Kuehne on behalf

12   of Commissioner Joe Carollo.

13   THE COURT:  All right.  Thank you.  All right.  First

14   things first, a couple motions to address, particularly the

15   plaintiffs' response to the defendant's motion -- trial

16   memorandum regarding hearsay statements and curative

17   instructions.

18   I do agree that it goes to the weight, not to the

19   admissibility, and the fact it was not timely.  However, I will

20   give a general statement that as to what anyone -- everyone

21   says should be excluded because I know there were statements

22   referenced by both sides as well to each other, "everyone said

23   everyone knew," so I'll just give a general statement as to

24   that.  If they heard any statement that was made stating that

25   everyone said -- everyone knew rather about any particular

1   individual shall be stricken so that would cover on both sides

2   there.

3           Any objection to that instruction?

4           MR. GUTCHESS:  Not from plaintiffs, Your Honor.

5           THE COURT:  Defendant?

6           MR. SARNOFF:  No, Your Honor.  We actually had a

7   proposed --

8           THE COURT:  I just gave you mine.  Do you have any

9   objection to what I just said?

10          MR. SARNOFF:  Your instruction is our proposed.

11          MR. PERTNOY:  We're all in agreement, Your Honor.

12          THE COURT:  You read my mind then.  All right.

13  Moving right along.  I'm here to address the motion, the

14  corrected motion for mistrial and before I address that, as

15  well, I have to point out defendant's motion for mistrial,

16  there was a footnote.  One that stated this corrected motion

17  filed under seal corrects several inadvertent errors in the

18  motions filed on April 25, 2023, docket entry 397 and 404.

19          And the Court had to clarify that because I want to be

20  clear.  This is not an inadvertent error for the following

21  reasons.

22          One is that when the motion was first filed, the

23  original, it was this Court who brought it to the defendant's

24  attention that it was misrepresented with evidence.  It was, in

25  essence, fabricated in terms of what this Court had said and

1   that was done right within the hours before this motion was

2   filed, and the defendant did have access to the daily

3   transcripts and record, so when you filed a misrepresentation

4   that was submitted in open court and where it was filed which

5   was released to the media and everyone else, those statements

6   were not true.

7          And then the defendant filed what is purported to be a

8   motion to strike its own motion which the Court denied because

9   we want to make sure the record is clear and not have any

10  ambiguity as to what the Court was doing.

11         And I compared this to if there was a motion for

12  summary judgment and the Court should make a decision what

13  should be admitted and not be admitted, and that individual

14  filed misrepresented facts known before the Court.

15         Now after it was brought to that party's attention

16  states that it is inadvertent.  Nothing could be farther from

17  the truth because it's material and those -- they were not

18  inadvertent.

19         It was done willfully and intentionally after this

20  Court advised both parties of what was proper and they had

21  access to the record.

22         So there was no mistake about it.  It's material

23  because had I granted that as well, it would have resulted in a

24  mistrial, and that would be substantial before this Court, so,

25  therefore, stating that it was inadvertent error as the Court

1   factually concludes that that's not true.  That it was brought

2   with deliberate knowledge and to file those facts in open

3   court, I even asked the defendant did he know how to file a

4   docket under seal.  He says so but chose not to.  So,

5   therefore, what was leaked was a motion to dismiss that was

6   replete with material facts that was false.

7        And including this Court's instructions which was

8   stated that I gave the plaintiff's instructions which is not

9   true as delineated in the plaintiffs' response.  I don't have

10  to go through every single step as I discussed during sidebar.

11  It's replete with the record evidence that I did not adopt

12  solely the plaintiffs' response.  I adopted plaintiffs'

13  response and also part of the defendant's response but because

14  the defendant disagreed, and chose to file a misrepresentation

15  of facts that was material that this Court did something

16  otherwise than that.

17       And because I did not give your curative instruction

18  as you desired, you chose to file facts that are false and now

19  claim that they were in error after I brought it out

20  inadvertently which it was not.  You got access to the daily

21  transcript.  They were false and also you continued to file

22  multiple facts which was not true.

23       And that being said, that when the Court brought it

24  to your attention, you wanted to file a motion under seal to

25  strike it.  The Court denied that motion.  Then now that's why

```
 1   we have this corrected motion for mistrial which the Court will
 2   address but I want to be clear.  It's not inadvertent at all
 3   because you knew about it.  You get daily transcript copies and
 4   I clearly made my record clear.  And you took out all the facts
 5   that were false because you knew they were when they were
 6   submitted at that time.
 7          Now, addressing the motion, the corrected purported to
 8   be motion for a mistrial, the Court will address that where the
 9   defendant cited a 1966 Eleventh Circuit case, where it was
10   Fifth Circuit now which is pretty much the Eleventh Circuit
11   now, and what we have here are apples and oranges that took
12   place.  Not remotely on point on all fours.
13          You have an individual there who allegedly approached
14   a juror in the elevator and also had mentioned his name, his
15   family members, everything else relating to that was not the
16   result of this particular case.
17          What was done was clear on the record, while improper,
18   nowhere mirrored the same facts and circumstances that's
19   purported by what the defendants raised to grant a mistrial.
20          And I can tell you this Court is not going to waste
21   time with that.  If I believed that a mistrial is warranted in
22   a case, I would have granted it because this Court invested a
23   lot of time, energy and also paid for expenses, or at least the
24   jurors' expenses to be transported to and from Miami and I'm
25   not just going to sit up there and withhold and reserve
```

1   judgment for the sake of doing it to see whether or not there's
2   going to be a verdict for the defendant.  If so, then, or not
3   grant a mistrial.  The mistrial is not warranted in this case.
4        This case is clearly not factually on point with what
5   took place at this particular trial.  So, therefore, the
6   mistrial is denied on those grounds.
7        Now, we can address the jury instructions which -- as
8   well and also at the end of this case, I will address outside
9   the presence of everyone, only just the defendant, your
10  instructions as it pertains to your closing arguments so it
11  will be just only be the defendant because it will be under
12  seal and in camera.
13       Only the defendant will remain present so they can
14  hear my rulings on what is permitted during closing arguments.
15       That being said, however, doesn't mean that the
16  plaintiff waives their rights to make any objection they
17  believe there is a reasonable basis to do so, but again,
18  there's some things that I observed that I will make that
19  decision outside the presence of the jury.  I mean, of everyone
20  here in this Court.  Okay?
21                      **CHARGE CONFERENCE**
22       THE COURT:  Now everyone has a copy of the purported
23  jury instructions?
24       MS. GOMEZ:  Yes, Your Honor.
25       THE COURT:  There were some changes.  I did read the

```
 1   defendant's trial memorandum of law, and I do agree with

 2   respect as to the property because the LLC, what I did, it

 3   should be associated with the plaintiffs' properties, not the

 4   plaintiffs' properties themselves because they're not bringing

 5   their -- they're bringing individual personal claims so when

 6   you look at it, I didn't put that there was an attack on the

 7   properties that's associated with it.

 8         You see on page 7?  I think that is appropriate to

 9   purport with this case at trial.

10         MS. GOMEZ:  Your Honor, I'm sorry, what section on

11   page 7?

12         THE COURT:  Go to page 7.  I mean -- one moment.

13   Again, it's throughout.  I left my copy on -- you have an extra

14   copy?  No, here it is.  I wrote it in my notes right here.

15   Great.

16         All right.  Go to page 7.  I'll read it.  It says 5.1,

17   Civil Rights.  Everyone has that?

18         MS. GOMEZ:  Yes.

19         THE COURT:  In this case, Bill Fuller and Martin

20   Pinilla each claim that Joe Carollo, while acting under color

21   of law, retaliated against them in violation of the First

22   Amendment.  Specifically, Bill Fuller and Martin Pinilla allege

23   Joe Carollo retaliated against them by trespassing and lodging

24   fabricated and often anonymous complaints against them by

25   causing or commandeering City of Miami officials to selectively
```

1    target them or properties, businesses, tenants, or events

2    associated with them for inspections.

3         Initially, it was suggested targeted their property or

4    their business because they're bringing a claim under on their

5    own individual rights under the First Amendment, not the

6    businesses themselves.  That's what the changes this Court

7    suggested that is proper and appropriate for this case.

8         If there's any objection from the plaintiff since I

9    changed what you're asking for?

10        MS. GOMEZ:  No, Your Honor.

11        THE COURT:  I agreed, when I did read the defendant's

12   motion, it should not be their property.  I did make that note.

13   I seen they're nodding in the affirmative.  It should not be

14   their property for the business.

15        Any objection, Mr. Sarnoff, Mr. Pertnoy?

16        MR. PERTNOY:  I'm just looking.

17        THE COURT:  It's throughout.  Exact same language to

18   be consistent.  I made it consistent so it's not their

19   properties.  It's associated.

20        MR. PERTNOY:  Just looking for the -- I think that's

21   appropriate, Your Honor.

22        THE COURT:  All right.  With that said, this is the

23   jury instruction I will give.  The verdict form is consistent.

24   Everything comports with the Eleventh Circuit standards.

25        So we have -- they have two separate -- you have

1   claims for Bill Fuller and also you have one separately for --

2          MR. PERTNOY:  Your Honor, sorry.  I thought you were

3   going to go one more piece of the 5.1 on page 7 that is of

4   concern which is where you're going through the -- where it's

5   in the paragraph that says first, you then proceed to say

6   holding rallies on properties associated with them, by filing

7   an ethics complaint against Carollo.  Those are the two things

8   that are alleged in the complaint.

9          But now adding by filing the complaint against Carollo

10  in this case and/or by speaking out against Carollo at a city

11  commission meeting, those were never pled.  Those are not part

12  of the alleged actions of speech that were ever part of this

13  case.  And so by adding this, this now expands the claim to

14  something beyond what was the case.

15         THE COURT:  All right.

16         MS. GOMEZ:  Your Honor, you granted our motion to

17  conform the pleadings to the evidence, and there was evidence

18  of all of that.

19         MR. PERTNOY:  Your Honor, there was not actually any

20  testimony regarding that they filed this very complaint and

21  then received some retaliatory act for filing this complaint,

22  nor did Mr. Fuller ever testify that when he was speaking at

23  the city commission meeting, where he was allegedly trying to

24  stop them from shutting down Taquerias, that then there was

25  some retaliatory acts because the Commission passed some

1    commission activity or some Resolution.

2         Those things were not part of them claiming that's why

3    I'm being retaliated against.  The complaint has been very

4    clear.  We support -- we allegedly supported Alfie Leon, and we

5    filed an ethics complaint.

6         We have issues as we've raised previously with what

7    additional retaliatory acts have been allowed to come into

8    evidence such as Taquerias and Ball & Chain code and all these

9    liquor things which we've raised and have preserved numerous

10   times.

11        But to now add additional elements of speech that were

12   not there present to effectively circumvent the fact as we've

13   set out in our papers that they individually did not speak,

14   this is backdooring their claim where they clearly didn't make

15   their burden to begin with.

16        THE COURT:  All right.  Any response from the

17   plaintiff?

18        MS. GOMEZ:  Yes, Your Honor.  Mr. Fuller did testify

19   that right after that commission meeting when he spoke out,

20   there was a series of retaliatory acts.  There were raids on

21   his businesses or businesses associated with him.  And it was

22   the same with the ethics complaint.  There was testimony that

23   they filed an ethics complaint and the retaliatory acts

24   continued.

25        MR. PERTNOY:  We're not talking about the ethics

1  complaint.  We're talking about the filing of this complaint,

2  the filing of the complaint against Carollo in this case.

3         MS. GOMEZ:  That also was addressed because we

4  continued --

5         THE COURT:  Wait.  Wait.

6         MS. GOMEZ:  The complaint was filed in 2018, and the

7  testimony in this case was all through 2021, so that we weren't

8  talking about all the retaliatory acts that occurred well after

9  the complaint, and it was all due to those acts of expression

10  of protected speech.

11         MR. PERTNOY:  Your Honor, the entire point of a

12  complaint is to set forth these are my elements of speech, here

13  are the reasons I've been retaliated against and then in the

14  middle of trial, after they've reached the very end, to now

15  claim after we've rested, well, hey, we want to add these in in

16  the jury instructions --

17         MS. GOMEZ:  Your Honor --

18         MR. PERTNOY:  -- without any notice.

19         THE COURT:  Wait.  Don't interrupt, Ms. Gomez.

20  Mr. Pertnoy, I'm sorry, you were speaking.  Do not interrupt

21  him.  Let him speak.  Once he's done speaking, you'll have an

22  opportunity to respond.

23         Mr. Pertnoy, could you repeat what you said, sir?

24         MR. PERTNOY:  As I was saying, the adding of these

25  additional allegations of speech and then saying that these are

1   the new reasons for the retaliation is a bridge too far.  You

2   can't do that at the end in the jury instructions.  You need to

3   put us on notice of that.  That's the entire point of the

4   complaint.

5        Their Rule 26 disclosures don't disclose this.

6   Nothing discloses this until they put it in the jury

7   instructions.  This is the very equivalent of not even trial by

8   ambush, but ambush after the trial.

9        MS. GOMEZ:  Your Honor, if I may?

10        THE COURT:  Wait.  He didn't say he was done yet.

11   Are you done, sir?

12        MR. PERTNOY:  Your Honor, I believe that this would

13   be highly prejudicial to allow additional elements of speech

14   that were never identified or set forth until this very moment.

15   That is highly problematic.

16        THE COURT:  All right.  Let me hear from counsel now.

17        MS. GOMEZ:  Your Honor, we're looking at the

18   complaint right now.  We're doing a search so give us some

19   time, but it's our belief that the complaint itself says that

20   the retaliatory acts continued to this day, and in addition to

21   that, we filed --

22        THE COURT:  I want to see that.

23        MS. GOMEZ:  We are looking for that but, Your Honor,

24   in addition to that, we filed this complaint in 2018 and so

25   then after that, there were multiple appeals of the case and

1    there were multiple issues that continued, that dragged this

2    out until today, 2023.

3          They knew that they were continuing to raid Taquerias

4    and Tower Hotel, and so they were aware of the conduct.  They

5    were aware that we were suing because of that conduct.

6          And to say that we are stuck in time to think to

7    things that happened multiple years ago, and the reason why it

8    took so long to get in front of the jury was because of their

9    own actions doesn't make any sense.  We heard evidence from

10   multiple witnesses about the retaliatory actions that occurred

11   after 2018.

12          MR. PERTNOY:  Your Honor --

13          THE COURT:  Wait.  She's not finished.

14          MS. GOMEZ:  No, Your Honor.  We are -- we're looking

15   for that reference, but we're pretty sure that the complaint

16   does say that it continues to this day.

17          THE COURT:  All right.

18          MR. PERTNOY:  We're looking at the complaint.  We do

19   not see that in there.  Beyond that, Your Honor, this is their

20   second amended complaint, number one.

21          And number two is under the trial order that brought

22   us to this trial on this day, I believe the ability to amend

23   the pleadings was -- and I don't have it in front of me, but I

24   believe it was sometime in '21 or '22, that they had the

25   ability to still amend the pleadings, and at no point did they

1   choose to do that.

2          And to now amend the pleadings with the crux of their

3   claim to circumvent the fact that they know that they didn't

4   individually speak at all in order to try to save their case

5   from being wiped out from under them because their corporations

6   spoke, we're not on notice of this until this very moment that

7   would be highly prejudicial because I would have tried a

8   different case.

9          THE COURT:  I'll wait until the plaintiffs -- if they

10  have something that says that, I will take it under advisement.

11         Anything else?

12         MS. GOMEZ:  Yes, Your Honor.  Your Honor, on that

13  same instruction, the fifth point that Joe Carollo acted under

14  color of law, we will be arguing the motions for directed

15  verdict at some point, if not today, tomorrow but part of the

16  argument in that is that it's a -- that is a decision to be

17  made by the Court.  It's a legal conclusion.

18         And they conceded they don't dispute that Carollo was

19  acting under the color of law, so we don't think it's an

20  appropriate consideration for the jury.  That's something that

21  will have already been determined.

22         MR. PERTNOY:  Your Honor, we disputed every single

23  one of their causes of action -- causes of their allegations

24  including the fact -- well, because one, they're saying he

25  acted under the color of law, they're referring to the fact he

1   targeted.  We adamantly refute that.

2          They say that he acted under the color of law when he

3   violated the Charter, and we have absolutely proven that he has

4   not done that, that he never directed or ordered, and there was

5   no evidence of any of that.

6          THE COURT:  First of all, as to what has been proven

7   or not, either the plaintiff or defendant, this is not for this

8   Court to decide with respect to that.  There's the evidence and

9   testimony that would be questions for the jury to decide when

10  it comes to credibility.  I'm not making credibility

11  determinations.

12         MS. GOMEZ:  I'm sorry, they did not dispute it in

13  docket 455, their memorandum in support of a judgment as a

14  matter of law does not once say color of law.  It never uses

15  the terms color of law.  They concede he was acting under color

16  of law.  In fact, their entire defense in this case has been

17  that he has been acting as a commissioner.

18         MR. PERTNOY:  Your Honor, in order for us to succeed

19  on our judgment of as a matter of law, it's whether they met

20  their burden, not whether the commissioner acted under color of

21  law and their burden was to establish most importantly that

22  they each individually spoke, which I think the evidence is

23  abundantly clear that this was all their corporations.

24         More importantly, they had to establish that it was

25  inherently expressive speech where they, themselves, have

1    testified that it was secret and clandestine.

2         Then on top of that, it was the causal connection and

3    I think the evidence has shown that the causal connection has

4    not been established.  We don't even have to touch on color of

5    law.  They failed to meet and establish the burden, including

6    failure that they had to show that their speech wasn't chilled

7    and they, themselves, have admitted as to holding press

8    conferences where Mr. Pinilla testified very clearly I was not

9    chilled by that.

10        And those are the things -- their claim fails for all

11   those reasons.  We don't have to touch on whether he acted

12   under color of law because they didn't meet their elements of

13   establishing that they even engaged in First Amendment

14   protected activity and that there was a causal connection

15   between that alleged speech and the motivations and the actions

16   of the commissioner, let alone the fact that the city and the

17   commissioner had probable cause both, and there was separate

18   motivations.

19        The case law would very clearly support that and I

20   don't think that Carollo acted under color of law is even an

21   issue where they failed to meet their burdens.

22             THE COURT:  All right.  Any response?

23             MS. GOMEZ:  Just that we dispute everything that

24   Mr. Pertnoy just said.

25             THE COURT:  That would be a question for these six

```
 1   individuals who will decide those issues tomorrow.  All right?
 2         Do you have anything you want to show the Court about
 3   the complaint itself and/or speaking out against Carollo at a
 4   city commission meeting?
 5         MS. GOMEZ:  I'm sorry, Your Honor?
 6         THE COURT:  Yeah, you want to address that?  I mean,
 7   not the entire paragraph, only the one that says by filing the
 8   complaint against Carollo in this case and/or speaking out
 9   against Carollo at a city commission meeting.
10         MR. GUTCHESS:  Yes, Your Honor.  I think you'll
11   recall Mr. Fuller's testimony and Mr. Pinilla's testimony where
12   they explained the nature of the targeting and the retaliation
13   that began in 2018, and the way it picked up and one of the
14   ways it picked up was right after the filing of this complaint.
15         That's after Viernes Culturales, that's when he
16   started serving all the public records requests.  That's when
17   he went after Taquerias, that prompted the Valentine's Day
18   massacre which occurred only three and a half months after the
19   filing of this complaint.
20         And then after that, you know, the inspections
21   started, it became official city policy and inspections
22   started, and all that was holding it up was Emilio Gonzalez as
23   the city manager was not allowing the city to take place.
24         Once Gonzalez was gone and Noriega came in, then the
25   whole thing blew up, and then the full force of the city was
```

1    coming on after them.

2         This was an escalating level of harassment and

3    targeting year after year after year, growing worse and worse

4    and worse with more and more power, and Mr. Fuller and

5    Mr. Pinilla both testified extensively about that.

6         Every time they would stand up to them, the hammer

7    would come down harder and harder.  That was vivid testimony.

8    I'm kind of surprised that counsel was surprised today that's

9    part of this case.

10        MR. PERTNOY:  I thought Mr. Gutchess was finished.

11        MS. GOMEZ:  Additionally, we also moved for an

12   injunction that should have put them on notice that we were

13   taking issue with the fact that he continued with his

14   retaliatory acts conduct.

15        We came to the Court and we asked for an injunction to

16   make them stop.  The injunction, even though it wasn't granted,

17   does at least put them on notice that that is our claim that

18   he's continuing this behavior.

19        THE COURT:  Wait a minute.  I'm going to give you an

20   opportunity to speak, Mr. Pertnoy.

21        MR. GUTCHESS:  Judge Moreno, he had two concerns.

22   This was the hearing that led the city attorney to call

23   Mr. Gonzalez to say, hey, what's going on?  Are you going to

24   testify for them, but Judge Moreno said how can I enter an

25   order that's going to restrict this politician?  How can I

1   control his daily activities, but I trust that with this

2   lawsuit pending, Mr. Carollo, on his own, will stop visiting

3   their properties and stop doing this.

4        And then you recall the video where Carollo goes out

5   that night and the gentleman is saying the judge told you not

6   to come here, so they clearly had notice that this was ongoing,

7   continuing, wanted it to stop.  Even though Judge Moreno didn't

8   grant an injunction at that time, he never gave us a full

9   hearing on it.  He specifically told Mr. Carollo to stop doing

10  what he was doing.

11       MR. PERTNOY:  Your Honor, may I respond?

12       THE COURT:  Are you done?  Wait, are you done?  Wait.

13  Once Mr. Pertnoy is speaking, I don't want you to interrupt

14  him, too, so I'm giving you a fair opportunity to be heard.  I

15  just want to make sure that I don't want to be going back and

16  forth like a tennis match, or I want you to tell me what you're

17  saying.

18       Therefore, I'll give Mr. Pertnoy an opportunity to

19  respond and I will make a decision.

20       MS. GOMEZ:  Your Honor, I was just trying to finish

21  up the argument.  I finally found the citation that we said.

22  It's on docket entry 125, paragraph 308.  It's says Carollo's

23  discovery of the Leon rally on plaintiffs' property on

24  November 18th and Carollo's retaliatory campaign of harassment

25  beginning that same day and continuing each day thereafter

1  establishes causation between the exercise of free speech and

2  the retaliation.

3        MR. PERTNOY:  Your Honor, may I respond now?

4        THE COURT:  I mean, are you done?

5        MS. GOMEZ:  Yes.

6        THE COURT:  Yes.

7        MR. PERTNOY:  So they're confusing retaliatory acts

8  with the acts of speech.  In the introduction of the second

9  amended complaint on page 1, Carollo's actions designed to

10  destroy plaintiffs' business and reputation is pure political

11  payback targeting plaintiffs simply because they dared to

12  support Carollo's opponent in a runoff election and because

13  they filed an ethics complaint against Carollo.  That is it.

14        This paragraph, 308, is them saying that, hey, there

15  were additional retaliatory acts that continued, but that is

16  all tied back to based on their complaint the two elements of

17  alleged First Amendment protected activity, the support of Leon

18  and the ethics complaint.  That is it.

19        They don't say at the end of this, and now Carollo --

20  because we exercised our First Amendment speech on

21  February 14th, he has retaliated.  In fact, they say that the

22  February 14th is an additional retaliatory act.

23        THE COURT:  Let me ask you this because unlike in

24  state court where it has to be specific, you just need notice

25  in federal court where there was an injunction filed as well.

1    How does that put you on notice that there was a continuing

2    effort as well as stated in this case in light of the evidence

3    that's been presented, that it was continued beyond that?  The

4    raids did not stop allegedly as alleged by the plaintiff?

5            MR. PERTNOY:  But that is for retaliatory acts based

6    off of the original claimed First Amendment protected activity.

7            I disagree that they can add additional retaliatory

8    acts, but what we're arguing about right now is what is the

9    activity that they engaged in, and they have never changed,

10   faltered or altered from the protected activity that they

11   claim.

12           And that is they supported Leon allegedly, and that

13   they filed the ethics complaint.  Now we've said that this was

14   done by their corporations, but be that as it may, that has

15   always been the speech, the protected activity that they claim

16   has caused this retaliation and the paragraphs that they're

17   reading you are, hey, additional retaliatory acts have

18   occurred.

19           And that is separate from the actual speech and

20   protected activity by the plaintiffs, and so at the end of the

21   day, if they want to add additional retaliatory acts, I object

22   to that, but I understand -- but that is what the Court has

23   continued to allow, but at no point have they been able to or

24   did they ever add additional protected activity that they claim

25   was then retaliated against in this case.

1              And to add it now is to wait until the entire case is

2    over and then say, hey, you tried that case, but now I'm adding

3    in these claims to get around the fact that they did this as

4    their corporations.

5              They did it in secret and because of that, as a matter

6    of law as set forth in our briefing, their claim doesn't clear

7    the first hurdle.  They know that, and that's why they're

8    arguing for their lives right now.

9              MR. GUTCHESS:  Your Honor, if I may --

10             THE COURT:  You don't have to characterize nobody's

11   arguing for lives.  Nothing going to happen to someone's life.

12             MR. PERTNOY:  I apologize for the hyperbole, but you

13   understand my point.

14             MR. GUTCHESS:  Your Honor, if I may.  The Court will

15   recall, we learned a couple new things in the course of this

16   trial, right?

17             One of them today, but the first thing we learned is

18   that Commissioner Carollo blamed Mr. Fuller for financing the

19   Alfie Leon lawsuit and he was very angry about that.  It turned

20   out not to be true, but in December, 2017 and January, 2018

21   when the targeting started, he believed that Fuller was the one

22   financing the lawsuit which is also protected speech.

23             And we learned today from Mr. Noriega that Carollo

24   believed that Fuller and Pinilla were behind the recall

25   efforts, right?  And that was part of the hatred that Carollo

1   had for Fuller.  That was from their own witness and you'll

2   recall Mr. Kuehne also wanting to put Mr. Carollo on the stand

3   to talk about these recalls.

4          So that's the nature of this trial as we've learned a

5   lot more about why Carollo was targeting, and it was all

6   because of these additional free speech issues that the parties

7   had a right to support a recall and not be hated or retaliated

8   against.  They had a right to finance a lawsuit if they were to

9   do that, and not be retaliated against, right?  So they also

10  had the right to file this complaint and not be retaliated

11  against, and also to show up at a commission meeting to

12  challenge Commissioner Carollo.

13         So these are all free speech issues that the

14  plaintiffs engaged in throughout this period.  It's no surprise

15  to anybody.  They've known about it as long as we have.

16  They've known about it longer than we have.

17         MR. PERTNOY:  Your Honor, all those things were prior

18  to this complaint being filed.  All of those things were prior

19  to the deadline to amend the pleadings which was in your order.

20  Neither that order and that deadline has meaning, or then it's

21  just a mere suggestion which would be prejudicial.

22         They didn't identify it in their Rule 26 disclosures.

23  They didn't identify it in any of their disclosures to the

24  Court, and they're asking you do it now because they've seen

25  that we have filed a motion for directed verdict and that

1    directed verdict chops out the first required element of their

2    claim because their property, the LLC was the one that hosted

3    the rally, Jenny Molina, they did it secretly, all of those

4    things defeat their claim and now --

5          THE COURT:  We're only addressing -- not their

6    property, remember?  I just explained to you.  A property

7    associated with them, which is fine, but what you're

8    challenging is the particular language by filing the complaint

9    against Carollo on this issue and/or speaking out against

10   Carollo at a city commission meeting.  Those are the only two

11   issues.

12         MR. PERTNOY:  I understand that, Your Honor.  I

13   still -- I'm still going to challenge through the directed

14   verdict the idea of associated when it's in the sense of the

15   legal requirements because whether they spoke individually,

16   which because it's an individual claim, or which on these two

17   elements of speech, that is a matter of law for this Court to

18   decide.

19         That's what our papers said and so, you know, where we

20   stand, as it stands, this is about whether they supported Leon

21   and did individual actions to support Leon, and whether they

22   filed the ethics complaint.

23         I think the evidence as we saw is that it was not them

24   individually.  It was done secretly.  The complaint, the ethics

25   complaint was filed by the Barlington Group, and so now they're

```
 1   trying to set forth that they filed this complaint and they
 2   said these things at the -- at a commission meeting and all of
 3   this stuff that they're trying to add now was before the second
 4   amended complaint was filed in June of 2019.
 5            THE COURT:  Well, look, I will take it under
 6   advisement.  However, again, this was notice of the injunction
 7   before Judge Moreno.  There's not a dispute.  There was an
 8   ongoing -- when you're dealing with free speech or anything
 9   else, it doesn't stop.  It's 2018, then there was -- there were
10   two appeals both before the Eleventh Circuit affirming this
11   Court's decision.
12            Then there was another effort to appeal before the
13   Supreme Court of United States of America which is under
14   certiorari was denied as well, and there was a freeze, came to
15   a halt here.
16            But at any rate, I will take it under advisement so
17   where is it the evidence as well talking about speaking out
18   against Carollo at the city commission meeting?
19            MS. GOMEZ:  Your Honor, I'm sorry.  Since you're
20   taking it under advisement, I do want to mention one other
21   thing.
22            In our pretrial disclosure, we also said that
23   Carollo's harassment -- pretrial stipulation, we also said that
24   Carollo's harassment, retaliation and targeting plaintiffs and
25   their businesses and their properties has not only continued,
```

```
 1   but has increased since the filing of this action.  So we are

 2   saying that the filing of the action --

 3           THE COURT:  That's in the pretrial statement?

 4           MS. GOMEZ:  In the pretrial stipulation.  That

 5   explicitly puts them on notice that the filing of the action

 6   caused retaliatory conduct, so that's with respect to that.

 7           In terms of speaking out against Carollo at a city

 8   commission meeting, that was testified to in this case.  Not

 9   only did we put them on notice that we were continuing to keep

10   track of all of the retaliatory conduct, but we also discussed

11   the February 14th commission meeting and how Mr. Fuller went to

12   that meeting, addressed Commissioner Carollo from the dais and

13   that that was his protected speech and all of the retaliatory

14   conduct that happened afterward was also testified to so they

15   were on notice of all of this behavior.

16           And to say that they weren't on notice that we were

17   going to raise these issues, that we were going to raise

18   additional issues of protected speech is completely

19   disingenuous.

20           THE COURT:  All right.  At any rate, anything else

21   before I will --

22           MR. PERTNOY:  Your Honor, everything that she just

23   mentioned is about retaliatory acts, not the speech that was

24   causing the retaliatory acts allegedly, and even in their own

25   complaint at page 47, it talks about the Valentine Day
```

 1   commission meeting, and it doesn't say that Fuller was

 2   exercising his speech, and that's on page 47 starting at

 3   paragraph 25.  Nothing says he exercised his free speech and he

 4   was retaliated against for exercising that speech at that

 5   meeting.  There's no allegations to that.

 6        Everything that she -- that the plaintiffs are arguing

 7   to this Court are additional alleged retaliatory acts based on

 8   the fact that they allegedly supported Leon in the runoff, and

 9   they filed an ethics complaint.

10        They can't add to that list, and this is not an

11   instance where they can plead generally.  They have to plead

12   with specificity because this is -- 1983 requires that this be

13   pled with specificity where you specifically say what

14   engagement in protected activity you engaged in.

15        They've picked their two elements of engaged protected

16   activity.  They don't get to add to that now.  They had the

17   opportunity to amend that complaint and to do it after the fact

18   would be an exercise in error.

19        MR. GUTCHESS:  Sir, if I may quickly respond?

20        THE COURT:  Last response.  Again, I'll be in recess

21   for about an hour.  Go ahead, sir.

22        MR. GUTCHESS:  The amended complaint was filed

23   shortly after that Valentine Day massacre.  The amended

24   complaint was filed shortly after that Valentine's Day massacre

25   meeting.

1          We did not know about what retaliation occurred at

2     this point in time.  We only found that out recently when we

3     see Mr. Blom's emails and his testimony about being forced to

4     go even deeper into about the researching all of the

5     properties, spending his weekend researching the properties,

6     part of the reason why he resigned, we didn't know that until

7     this trial when Mr. Blom testified.

8          So, you know, to say that we had notice and didn't

9     include it in our complaint, we filed that complaint and they

10    prevented us from getting any discovery for five years.  We're

11    just learning a lot of this evidence in the past two months.

12         MR. PERTNOY:  With all due respect, that's very

13    convenient seeing they had the benefit of all these depositions

14    that they used from the other litigation and yet, they're

15    learning it here.  This was well known quantity.

16         The other thing I should point out, Your Honor, just

17    to switch gears a little bit is on the verdict form before you

18    take it all under advisement.  There were two questions that we

19    presented on the verdict form concerning the idea of probable

20    cause.

21         Your Honor, the O'Boyle decision from the Eleventh

22    Circuit that we provided you, Your Honor, as well as --

23         THE COURT:  I considered that and also --

24         MR. PERTNOY:  As well as the motivating factor

25    question because the case law we believe requires that

```
 1    regardless, if they find retaliatory intent that those are
 2    affirmative bases that would obviate or would remove it and I
 3    think those questions need to be presented to the jury that
 4    even if they did find that there was retaliatory intent, that
 5    if the probable cause under O'Boyle, that question should be
 6    there, and if there was a motivating factor other than their
 7    claimed First Amendment protected activity, the case law is
 8    clear that those questions should be there for the jury to
 9    consider because the case law allows those to relieve a
10    defendant from liability under those circumstances.
11            So we would ask that those questions be on the verdict
12    form.  That's the whole mixed modes of concept.  The case law
13    is abundant on that.
14            THE COURT:  All right.
15            MS. GOMEZ:  I think we've moved on to a different
16    instruction.  I still have another point with the 5.1.
17            THE COURT:  Okay.  You want to first make your point
18    and then you can respond to Mr. Pertnoy's --
19            MS. GOMEZ:  For 5.1, there was also just on Your
20    Honor's jury -- I'm sorry, standard instruction on page 11, we
21    would just say that the Court add punitive damages may be
22    awarded even if you only award nominal damages.  We do have
23    case law that says that.  I understand that the Court adopted
24    our punitive damage instruction, but we would like just an
25    explicit --
```

```
 1          THE COURT:  The Court looks at the Eleventh Circuit
 2   and sees what does comport, not necessarily adopting yours.  If
 3   it comports with the Eleventh Circuit, it comports with the
 4   Eleventh Circuit.
 5          MS. GOMEZ:  I understand.  We already mention
 6   punitive damages.  I want to make it clear to the jury even if
 7   they give nominal damages, or we could be entitled to punitive.
 8   I do have case law.
 9          THE COURT:  Are you aware of this case law that she's
10   referring to?
11          MR. PERTNOY:  I'm not aware of the case law she's
12   referring to.  If she'd like to share it with us so that you
13   and the Court as well as --
14          MS. GOMEZ:  Your Honor, it's cited --
15          THE COURT:  Which Circuit?
16          MS. GOMEZ:  Eleventh Circuit.
17          THE COURT:  All right.  Let me see it then if it's
18   Eleventh Circuit.
19          MS. GOMEZ:  It is Davis versus Law.  936 F.2d 1208.
20          THE COURT:  All right.  Thank you.
21          MS. GOMEZ:  Your Honor, the relevant language is
22   highlighted.  You'll see that on page 5 of the printout, page
23   1214 of the decision, it does say in this Circuit, punitive
24   damages may be awarded in a Section 1983 action even without
25   actual loss.
```

```
 1          MR. PERTNOY:  Your Honor, I've got yellow flags and a

 2    red flag following that, so I don't know what those subsequent

 3    decisions may say for negative treatment so on the highlighted

 4    sections, so I would just be mindful of wanting to know what

 5    the negative treatment was in regards to that as well as the

 6    red flag treatment in the string cite.

 7          THE COURT:  Because sometimes there may be multiple

 8    issues -- let me finish.  I know.  Let me finish speaking,

 9    please.  Multiple issues that he addresses, others that's not

10    cited, without.

11          Are you referring to see Glover versus Alabama

12    Department of Corrections, 1984?  There's also a Supreme Court

13    case, granted and vacated as well, affirming punitive damages

14    award of $25,000 after jury award of one dollar nominal damages

15    on a Section 1983 claim.  We can look at that as well.  You

16    want to bring it to my attention, those issues because right

17    now, she did cite this case which does authorize punitive

18    damages even if there's an award of one dollar in nominal

19    damages and not compensatory.  You can let me know before.

20    I'll give you time, all right?  So I'll give you at least an

21    hour.

22          Anything else?

23          MS. GOMEZ:  Your Honor, now addressing Mr. Pertnoy's

24    argument about the probable cause.  Your Honor, there are

25    pattern jury instructions for Section 1983 cases under the
```

1    Fourth Amendment and there are separate different pattern jury

2    instructions for Section 1983 cases under the Fourth Amendment.

3    Sorry, the First Amendment.  Fourth Amendment and First

4    Amendment.

5            The Fourth Amendment one includes the language that

6    Mr. Pertnoy wants.  It includes that probable cause could be

7    something that defeats a Section 1983 case in that context.

8            And that makes sense because those Fourth Amendment

9    probable cause cases are about a police officer wrongfully

10   arresting someone, a prosecutor maliciously prosecuting, that

11   is not applicable in a First Amendment retaliation case.

12           And, in fact, it would be improper because it would be

13   tantamount to prior restraint, and the reason it would be

14   tantamount to a prior restraint is because nobody would support

15   a political candidate if they believed that that candidate, if

16   they lose, the other -- the opponent could then retaliate

17   against them.  It would just chill people's speech so that's

18   why probable cause does not apply in a First Amendment case.

19           Additionally, it just doesn't make any sense under the

20   cases that they've cited.  First of all, the cases that they

21   cite are criminal cases, Fourth Amendment cases with the

22   exception of one that is also distinguishable because it has to

23   do with a labor and employment lawsuit where a counterclaim is

24   filed by the employer, and now the plaintiff is claiming that

25   that counterclaim, the retaliation, the Court says no because

litigants can file counterclaims.  So that can't possibly be retaliatory conduct.

All those cases are distinguishable and irrelevant but even under the logic in those cases, it makes no sense to tell the jury to think about probable cause because the probable cause has to relate to the protected speech.

So here, the protected speech is holding the rally or filing the complaint.  Those acts have no relation to going -- to having Code Enforcement then raid.  They're two completely separate activities.

So, for example, the protected speech could never give rise to probable cause, and what they're arguing to you is they're arguing the protected activity is not pulling permits. They're trying to amend our complaint to say that we are claiming that the protected speech is that Bill Fuller and Martin Pinilla did not pull permits, and that's just what we're arguing.

There's no relation between sending Code Enforcement and the protected speech asserted in this case, and if you read their case Nieves versus Bartlett, 139 Supreme Court 1715 at page 722, it's a Supreme Court case from 2019.  It explains that where the Government actor can show that they have probable cause to take legal action against the plaintiff's protected activities, a retaliation claim will fail as a matter of law.  But again, the Government actor has show that the

1    probable cause has something to do with the protected speech.

2    Here, that would never be the case.

3              THE COURT:  All right.

4              MR. PERTNOY:  Your Honor, just to be clear, the

5    O'Boyle case which is a 2023 Circuit case, the O'Boyles filed

6    their claim for 1983 for allegedly retaliating against First

7    Amendment protected activity.

8              And this is very much on all four corners here, and

9    this is why we wanted the instruction because if the

10   commissioner asked for information or asked the city

11   administration to go look at the plaintiffs' properties, and

12   their whole thing is you shut us down, you were doing

13   violations, you were targeting us for speaking, if there was

14   probable cause for the city to independently cite them for

15   violations or for the commissioner to pass along complaints,

16   O'Boyle which is a First Amendment retaliation claim where they

17   were suing the City of Gulf Stream is very much why the

18   probable cause needs to be there, and that's just one half of

19   the coin.

20             The other coin is mixed motive -- motivation because

21   that case law applies absolutely here because if the

22   commissioner, as the evidence has shown, had other motivations

23   for the actions that he took regardless of whether they

24   exercised their free speech, a First Amendment retaliation

25   claim under the case law, under the law cannot stand and here,

```
 1    the commissioner in all of his public speech, in commission, I
 2    don't care if you like me, don't like me, support me, don't
 3    support me, this is about following the rules.
 4         That is an alternative motivation, and that needs to
 5    be on the verdict form because the jury should be able to say
 6    well, they may have done this, but he had a reason separate and
 7    apart and that's what that question is for and the case law
 8    that we presented for you, as well as the question that we
 9    crafted goes directly to that and that is a critical
10    cornerstone foundation of the defense.  And we're entitled for
11    the jury to answer that question.
12         THE COURT:  All right.  Anything else before I will
13    be in recess for about an hour?
14         MS. GOMEZ:  Yes, Your Honor.  I believe the O'Boyle
15    case that Mr. Pertnoy keeps referring to is an Eleventh Circuit
16    case.  It's not a reported decision.  It's 2023 U.S. -- I have
17    here a Lexis cite, 6665 at page 10.
18         That O'Boyle case, if I'm correct, is that the one?
19    Yeah, March, 21, 2023, that O'Boyle case cites the Nieves case,
20    Nieves versus Bartlett case that was explaining to the Court
21    requires -- explains that the protected speech, the retaliatory
22    conduct of -- sorry, the probable cause has to be related to
23    the protected speech.
24         And I think that is key here because we're claiming
25    the protected speech is him holding a rally, filing a
```

1    complaint, speaking out at a commission meeting, those

2    activities would never give Commissioner Carollo cause to

3    have -- or rise to probable cause for Code Enforcement officers

4    to appear at Taquerias or at the Tower Hotel.  Like what does

5    filing a complaint in federal court have to do with sending

6    Code Enforcement to Taquerias multiple times until it gets shut

7    down?

8            MR. PERTNOY:  Your Honor, there's a couple of things

9    there.  Number one is the ethics complaint raises all of these

10   issues that are in this complaint, and so for them to say that

11   we spoke in this ethics complaint about code this and code

12   that, and say that that has nothing to do with if there was

13   probable cause or not is problematic.

14           Then the whole idea of them continuing to raid,

15   Taquerias being shut down, Ball & Chain being shut down, that's

16   highly problematic because as they full well know, the

17   plaintiffs, through their corporate entities, have sued the

18   City of Miami and are seeking specifically those damages in

19   that case with the City of Miami.

20           And so for them to keep interjecting that here this is

21   going to cause error if you allow that type of argument.  They

22   want --

23           THE COURT:  Look, first and foremost, the Eleventh

24   Circuit determines what is error about it.  I understand both

25   parties are making their position.  I don't sit on the Eleventh

1    Circuit.  Neither does anyone in this courtroom.

2           So, again, I heard your arguments.  I'm going to go

3    back and re-read the case law and everything else and I'll see

4    you back around 4:15.

5           MS. GOMEZ:  Your Honor, if I could just cite the

6    Court one more case?

7           THE COURT:  Sure.

8           MS. GOMEZ:  It's Royal Crown Daycare, LLC versus

9    Department of Health and Mental Hygiene of the City of New York

10   at 746 -- sorry, 746 F.3d 538 at 544.  It's a Second Circuit

11   2014 case and it says if Royal Crown can prove First Amendment

12   retaliation even if the measures taken by defendants were

13   otherwise justified.

14          That goes to the motivating factor argument that

15   Mr. Pertnoy was saying.  So even if the defendants were

16   otherwise justified in closing down Royal Crown based on their

17   regulatory responsibilities to enforce the health code does not

18   insulate them from being subject to a claim of improper motive

19   if defendants retained some discretion in how they performed

20   their regulatory enforcement functions.

21          So even if they could go and send Code Enforcement,

22   which we're not conceding because we think Commissioner

23   Carollo -- we have argued repeatedly Commissioner Carollo,

24   under the Charter, is prohibited from deploying Code

25   Enforcement but even if he did, even if he could, if he has a

```
 1   discretion to do it, we can still sustain our First Amendment
 2   retaliation claim, so that is the Royal Crown case.  Your
 3   Honor, we do have other issues that we wanted to raise with the
 4   Court.
 5            MR. PERTNOY:  We would like to see the case.  We
 6   haven't seen the Royal Crown case.
 7            THE COURT:  Make sure anything that you're citing,
 8   make sure each side receives a copy of it.
 9            What is the other issues you would like to address
10   before I take a recess to sort things through?
11            MS. GOMEZ:  So, Your Honor, they also in that
12   proposed jury instruction 5.13 -- I'm sorry, I haven't been
13   able to doublecheck, they wanted some language about that
14   punitive damages award must be reasonable and proportionate to
15   the harm.
16            And I haven't had an opportunity to see if the Court
17   adopted that language.  Actually, Your Honor, I don't think
18   that you did.
19            THE COURT:  All right.
20            MR. PERTNOY:  Your Honor, I would also just raise one
21   last thing in 5.13 with respect to the instruction on Section A
22   of page 10.
23            THE COURT:  Yes.
24            MR. PERTNOY:  Again, I mean, the plaintiffs have made
25   it very clear.  They are solely seeking emotional distress and
```

1    reputational harm.

2         For there to be an instruction about physical injury,

3    ill health, physical pain, disability, disfigurement,

4    discomfort where there's been zero evidence or zero testimony

5    to those things I think would be leading the jury to a place

6    that they're not permitted to go.

7         Whereas Section B, mental and emotional distress and

8    impairment to reputation because those were the exact words

9    that Mr. Gutchess spoke to this Court when he said we're solely

10   seeking emotional distress and reputational harm.

11        MS. GOMEZ:  Your Honor, the emotional distress and

12   reputational harm did lead to Mr. Pinilla developing a skin

13   condition --

14        MR. PERTNOY:  Which was precluded from being --

15        MS. GOMEZ:  He testified to that.  He admitted it.

16   It was admitted.  There was case law that we showed the Court

17   that said that Mr. Pinilla could talk about his health, and he

18   did.  And so Mr. Pinilla testified about how all of the

19   retaliatory conduct had effected --

20        THE COURT:  The word -- all the language that's used

21   is broad.  It says physical injuries, including ill health,

22   physical pain and suffering, disability, disfigurement and

23   discomfort, why would they describe discomfort, all those

24   things can be addressed.  That's going to be a question for the

25   jury.  Thank you.

 1          MR. PERTNOY:  Thank you, Your Honor.

 2          THE COURT SECURITY OFFICER:  All rise.

 3                    (Recess had.)

 4          THE COURT:  The Court is back in session.  Did

 5  everyone have an opportunity to review the proposed

 6  instructions?

 7          MS. GOMEZ:  Your Honor, I'm still reviewing it.  I

 8  did notice -- I just wanted to confirm for the 5.13, we had

 9  provided the Court a case, I believe Davis, that said that we

10  are entitled to nominal damages.  I'm sorry, we're entitled to

11  punitives on nominal damages, and I know that the Court put it

12  on the verdict form sort of allowing it but there's no explicit

13  direction in the instruction.

14          THE COURT:  It is an instruction.

15          MR. PERTNOY:  It's on page 11.

16          THE COURT:  I made sure that was in there.  It says

17  on --

18          MR. PERTNOY:  Page 11, Your Honor.  If you find Bill

19  Fuller acted with malice or reckless indifference, the law

20  allows you in your discretion to award -- I think that's what

21  you added?

22          THE COURT:  Yeah, punitive damages.  You have that.

23          MS. GOMEZ:  I know, but what we're asking Your Honor

24  to explain that punitive damages may be awarded even if you

25  award only nominal damages.

 1            THE COURT:  Yes, you can argue that.  Again, this

 2    is -- I mean, that's sufficient.  I mean, you can argue that.

 3            MS. GOMEZ:  Your Honor, it's just we didn't want the

 4    jury to be confused on that point because if they're awarding

 5    one dollar, it may seem to them that it's disproportionate to

 6    then award also punitive damages given that they're not

 7    awarding more than one dollar, but the case law does allow for

 8    that so we just thought one sentence to explain that they can

 9    award punitive damages.

10            MR. PERTNOY:  I think this is the standard.  I think

11    you've given an additional bit of language and I think it's

12    pretty clear and they get to explain the verdict form in their

13    closing.

14            THE COURT:  Go back on page 10.  You may award one

15    dollar in nominal damages and compensatory damages.  It still

16    says that.  I think it's sufficient to cover it.  There's no

17    issue, no one can argue that you're not entitled -- defense is

18    not going to get up here and say you're not entitled to give

19    them anything beyond that.  That's improper.  You can argue

20    that.

21            I did have an opportunity to review the various cases.

22    With respect to O'Boyle, which clearly which was given to this

23    Court, does not apply for numerous reasons.

24            In that particular case which was cited by the defense

25    here, that the plaintiff sued against the town under Section

1    1983 for allegedly retaliating against their First Amendment

2    protected activity.

3            The parties' stipulation that there was probable cause

4    to charge plaintiff with trespassing and disorderly conduct was

5    fatal to his retaliatory prosecution claim.

6            Again, that was a criminal matter, as well, and it was

7    an Information filed by the State Attorney against O'Boyle for

8    trespass, resisting arrest and disorderly conduct, as well as a

9    stipulation on those facts.

10           With respect to the plaintiff wants the Court to refer

11   to Royal which I did look at the Second Circuit, I believe the

12   Eleventh Circuit case with the instruction is on point.

13   Notwithstanding I did grant the defendant's motion as you saw

14   that for your request as to the motive.

15           MR. PERTNOY:  Understood, Your Honor.

16           THE COURT:  Right.  And because here's why.  It's

17   part of the Eleventh Circuit instruction, and also as a part of

18   the claim, it just says that the plaintiff could still argue

19   that it's a motivating factor, not the motivating factor so

20   again, it's still an affirmative defense which still means that

21   the defendant carries the same burden as the plaintiff.

22           They don't have to believe him.  They don't have to

23   believe the plaintiff.  The jury may believe any, all, part of

24   the evidence, some of it or none of it.  Just because it has

25   that jury instruction, if they find a motivating factor, they

 1   don't have to find for the defense, or they can say we don't

 2   believe that's a motivating factor, period, at all.  We don't

 3   believe the plaintiff.

 4        It's sufficient enough to go before a jury.  Those

 5   instructions comport with the Eleventh Circuit to recite the

 6   Second Circuit pretty much countervailing to what they said.

 7        Again, the way the instructions are written, you just

 8   have to have a motivating factor which is fine and you can

 9   still raise that affirmative defense.

10        It's up to the jury to decide what they want to do in

11   that manner.  That's what my reasoning was for in terms of

12   giving that particular instruction with respect to the

13   defendant and to the plaintiff.

14        Another matter as for tomorrow, I have a hearing that

15   I have to address not relating to this case.  It's about 15

16   minutes from 9:15.  I know I told the jurors 8:30.  I may have

17   to try to have my courtroom deputy to call them to say come

18   around 9:00 because I definitely need to resolve an issue and

19   it should be no more than 15 minutes.  And with that said,

20   you'll be ready to move forward.

21        MR. PERTNOY:  9:00 tomorrow, Your Honor?

22        THE COURT:  Yeah, but I have another case that's

23   going to be here from 9:00 to 9:15.  Let me take care of that.

24   Once they're out of your way, you can move forward.  It

25   shouldn't be more than 15 minutes, but I definitely have to

1    rule on and address it.  That's been pending so I need to move

2    things along here.

3           Now, with that said, let me address outside the

4    presence of anyone except the --

5           MR. PERTNOY:  Your Honor, two things before you do

6    that.  Number one is in the instructions, I didn't see -- we

7    didn't see if you were going to add an instruction on the

8    quote, unquote "everybody knows?"

9           THE COURT:  All right.  Well, I was going to tell

10   them that.  No --

11          MR. PERTNOY:  We just didn't see.  We wanted to raise

12   it to make sure that was being dealt with.

13          THE COURT:  I'll put it right here.  Again, I wrote

14   it down.  I talked to Ellie.  She can print that.  Anything

15   relating to what "everyone knows" shall be disregarded by

16   anyone here.

17          MR. PERTNOY:  And the other thing I was going to

18   point out in the verdict form, question 11, I was asked to

19   point out typos.  It still references Mr. Fuller and that

20   should be Mr. Pinilla on question 11.

21          THE COURT:  Question 11, let me look at that right

22   now.  Question --

23          MR. PERTNOY:  Question 11 of the verdict form.  Page

24   3.  It was just an inadvertent copy and paste.

25          THE COURT:  Where it says Bill Fuller?

```
 1            MR. PERTNOY:  That should be Martin Pinilla at this

 2   point.

 3            THE COURT:  Martin Pinilla.  All right.  Other than

 4   that, are we good with respect to this?

 5            MR. PERTNOY:  Yeah, at least we preserve our position

 6   with respect to O'Boyle.

 7            THE COURT:  I just told you I read O'Boyle.  It was

 8   stipulated to.  As I mentioned on the record, they stipulated

 9   to the probable cause.  It was a criminal matter and it was a

10   trespass.  I read these things here.

11            MR. PERTNOY:  Understood, Your Honor.  I am just

12   making sure on the record it's clear that we're -- we

13   understand that this is the verdict form.  We understand that

14   this is the jury instructions.  I just wanted to make sure the

15   record was clear that, you know, we preserve our positions with

16   respect to that argument but --

17            THE COURT:  That's fine.  It was stipulated.  A

18   summary judgment issue granted.

19            MR. PERTNOY:  Understood.

20            THE COURT:  It was a criminal case involving a

21   trespass and disorderly conduct.  I read it.

22            MR. PERTNOY:  I understand, Your Honor.  Thank you.

23            MS. GOMEZ:  Your Honor, I did just want to mention on

24   page 5, instruction 3.5.2, it just talked about impeachment

25   through a felony conviction.
```

```
 1              THE COURT:  Oh, yeah.

 2              MS. GOMEZ:  It also does it on the second paragraph.

 3   I just thought we should take that out because there was no

 4   such impeachment here.

 5              THE COURT:  Take out the word felony conviction.  It

 6   should read impeachment of witnesses because of inconsistent

 7   statements.  I will strike "or felony conviction."

 8              MS. GOMEZ:  Then on the second paragraph --

 9              THE COURT:  Give me a second.  I've got to finish

10   reading it.  Let's see.  All right.  It says to decide whether

11   you believe -- this is paragraph 2 as it pertains to 3.5.2, to

12   decide whether you believe a witness, you may consider the fact

13   that the witness has been convicted of a felony.  Since there

14   was no testimony relating to that, that will be stricken, so

15   that part will be -- everyone agrees?

16              MR. PERTNOY:  Yes, Your Honor.

17              MS. GOMEZ:  Yes.

18              THE COURT:  And the other one is fine which says but

19   keep in mind that a simple mistake doesn't mean a witness

20   wasn't telling the truth.  That's fine.  All right.  Anything

21   else that I missed?

22              MS. GOMEZ:  I don't believe so, Your Honor.

23              THE COURT:  All right.  If you find something --

24              MS. GOMEZ:  We'll let you know tomorrow morning.

25              THE COURT:  I will continue to look at it as much as
```

```
 1   I can.  Sometimes, I doublecheck, triple check.  There's a typo
 2   here or there, I try my best.  I have wonderful clerks here.
 3   We have four eyes.  No pun intended.
 4          MS. GOMEZ:  Your Honor, will we be arguing the motion
 5   for directed verdict today or tomorrow?
 6          THE COURT:  You can argue it right now.  That's why
 7   we're here.
 8          MR. KUEHNE:  Your Honor, I just wanted to note that
 9   the plaintiffs submitted I think a Dropbox of their authority.
10   We've not even looked at it, and I asked the plaintiff if they
11   had any problem with us raising that tomorrow so we could look
12   at their authority to -- I think they had 25 items.  We really
13   would like to be able to read them.
14          THE COURT:  How long?  Look, I don't want -- like I
15   said, we should not be keeping jurors waiting.  They've been as
16   patient as any jurors could be in this case.  This probably is
17   the longest trial that I've had in my life, I believe.  I see
18   Rita back there, yes, sir.  She's been here with me for a
19   while.
20          And again, you know, we're down here nine jurors to
21   six jurors unless you are going to stipulate, you know, going
22   down to five or four.  Do I hear any stipulation?
23          MR. KUEHNE:  I don't know, Judge.  I don't think it
24   will take long to argue.  We would like the opportunity to read
25   her cases.
```

1          MS. SUAREZ:  I was going to suggest -- I know I also

2     gave Your Honor a little bit ago, any argument they have to

3     make they can make tomorrow while the jury is deliberating and

4     I can just lay my record for what my argument is now.

5          THE COURT:  All right.

6          MR. KUEHNE:  Your Honor, from a defense point of

7     view, we have no problem with reserving to argue until after

8     the jury begins deliberating.  There will be some down time so

9     we're not wasting the jury's time.  I can then present it to

10    Your Honor.

11         THE COURT:  We can wait until that time as well.  I

12    just don't want to waste the juror's time.  We can reserve

13    while they're deliberating.  I'll hear it then.

14         MS. SUAREZ:  The whole argument when they deliberate,

15    Your Honor?

16         MR. PERTNOY:  When I say that, that goes for our

17    directed verdict.

18         THE COURT:  Kill two birds with one stone here.  I've

19    told these good people here that they're going to have this

20    case tomorrow.  I'm not trying to disappoint them.

21         MR. PERTNOY:  We agree, Your Honor.

22         MR. KUEHNE:  Judge, just one technical issue.  I know

23    we're going to start up around 9:15 and the plaintiffs

24    obviously go first.  Would Your Honor give us just a little

25    time to set up because with closing and getting everything

 1   ready, it will take some time?

 2          THE COURT:  You'll have time to set up.

 3          MR. KUEHNE:  Thanks.

 4          MR. PERTNOY:  Just out of curiosity, assuming we

 5   start at 9:15, 9:30, they go for an hour and a half, then

 6   there's a break because I'm concerned about lunch, and then

 7   because if I'm going in the second hour and a half --

 8          THE COURT:  If it's an issue, we will tell them bring

 9   some snacks.  I anticipate they'll get the case around 12:45 or

10   1:00, around that time.  I'll tell Patricia to call them, bring

11   a snack.  I have no problem with that.

12          MR. KUEHNE:  Just to make sure of the schedule when

13   the jury comes, you will instruct the jury, then plaintiff

14   closing first, defense closing, then plaintiff closing second?

15          THE COURT:  Correct.  Whatever time they have left, I

16   don't know how much time they use.  As I mentioned, 144 minutes

17   out of the 145, they have one minute left.

18          MR. KUEHNE:  Of course, Judge.  All right.  Thank

19   you.

20          MS. SUAREZ:  One minor point of clarification for the

21   exhibits for the jury.  Do we put them on a USB drive for them?

22   How does the Court want us to give them to them?

23          THE COURT:  First and foremost, that means the

24   computer will be clean as can be to be on the computer.  It's

25   up to you.  You have the regular exhibits, hand it to them as

```
 1  well?
 2          MS. SUAREZ:  We can do paper or --
 3          THE COURT:  Again, any device, it can't search the
 4  Internet.
 5          MS. SUAREZ:  Right.  Okay.
 6          THE COURT:  So you have a paper copies?
 7          MS. SUAREZ:  We have paper copies.
 8          MR. GUTCHESS:  Just one housekeeping matter.  I
 9  believe the Court reserved on our motion to strike Mr. Ace
10  Marrero's testimony on the basis of him improperly speaking to
11  counsel over the weekend about his testimony, and on the basis
12  that they brought out the Zach Bush intimidation against the
13  Court's orders.  We would just renew that motion.
14          THE COURT:  Also, too, there's not going to be any
15  reference to Zach Bush in closing arguments by anyone.  I'm
16  sure -- look, I've been through this ad nauseam.  I'm not going
17  to revisit this issue.  The motion to strike is denied.
18          MR. GUTCHESS:  Thank you, Your Honor.
19          THE COURT:  Okay.  Anything else from plaintiff
20  first?
21          MR. GUTCHESS:  No, no, nothing.
22          MR. PERTNOY:  We're good, Your Honor.
23          THE COURT:  Have a good day, everyone.  I'll see you
24  tomorrow.
25          MR. PERTNOY:  Your Honor, if I'm not mistaken, you
```

```
 1    wanted us to stay so you can give me your notes on what I had

 2    submitted?

 3              THE COURT:  Exactly.  We can address that now.

 4    Everyone else, you're free to leave.

 5              MR. GUTCHESS:  Your Honor, we had submitted our

 6    closing, as well.  Power Point by email earlier so --

 7              THE COURT:  You did?  I mean, I didn't see it.  I can

 8    address the plaintiff at 8:30 tomorrow on that.  Since I

 9    already read the defendant's, I can do that now, but I can

10    address yours at 8:30 tomorrow morning.

11              MR. GUTCHESS:  Thank you, Your Honor.

12              MR. KUEHNE:  Your Honor, one point of clarity.  It

13    might be very difficult for us to have paper copies of the

14    exhibits.  We had thought that the jurors have a clean and not

15    Internet accessible computer to plug in a thumb drive.

16              THE COURT:  Who would provide that for them?

17              MR. KUEHNE:  I had thought they had it.

18              THE COURT:  No, I'm saying have you seen that done

19    before?

20              MR. KUEHNE:  Yes, Judge.

21              THE COURT:  Who provides that?

22              MR. KUEHNE:  I might be confusing state court with

23    federal court, Judge, but I know that that's what happens with

24    a thumb drive but --

25              THE COURT:  I have seen the prosecutors in cases will
```

1   provide a clean like a CD Rom or something, they would check

2   with the defense and there's nothing on it but exhibits on the

3   thumb drive, if you will, or CD.

4           MR. KUEHNE:  That's probably my recognition, Judge,

5   that we've done it, but the particulars escape me at this

6   stage.

7           MR. PERTNOY:  Because we also have videos which

8   wouldn't be able to be submitted by paper.

9           THE COURT:  Look, if they ask to see it, they would

10  have to come in front of the Court like that.  You say look, if

11  there's any evidence you would like to see, unless you have

12  something that's a clean laptop or something, if you will,

13  because we don't want to risk someone being accused of

14  searching something on the Internet and something pop up here.

15  Now we're back here with some issues that we don't want to open

16  a Pandora's box.  We've come too far here to do something like

17  that.

18          MR. KUEHNE:  Understood, Judge.

19          THE COURT:  All right.  So if you tell me you have an

20  Internet computer that won't have Internet connection and you

21  want to play a video and you both agree, that's fine with the

22  Court.

23          Again, I have seen it, but it's always been the

24  Government will have a device and it will be only an accessible

25  clean hard drive, and there's nothing on there that would show

 1   the defense attorneys say, look, this is what we have for the

 2   evidence and they will see that only.  There's no dispute about

 3   it.  That it's nothing, but they're showing them.

 4         You're now telling me you're giving someone an open

 5   device, anything could happen with respect to that.  You want

 6   to poll the jurors if they see anything else, we're not going

 7   to go down that path.

 8         MR. PERTNOY:  We'll consult with opposing counsel and

 9   coordinate an effort to make sure that the jurors have access

10   to the documents in a way that's fair and clean.

11         THE COURT:  Do it the way I did.  Show a picture or

12   photo or something.

13         MR. GUTCHESS:  Just for the Court's and our Power

14   Point, I believe Ms. Caprio is sending a revised version.  She

15   went home and worked on it.  It's a little updated.  Look out

16   for an email coming in five or ten minutes.

17         THE COURT:  Is this the final one now?

18         MR. GUTCHESS:  Yes.

19         THE COURT:  I'll look at it tonight.

20         MR. GUTCHESS:  Thank you.

21         THE COURT:  All right.

22                      (Plaintiff exited.)

23         (Thereupon, the following was held in camera.)

24         THE COURT:  All right.  We're here in court.  The

25   Court -- the only following issue that the Court -- that shall

```
 1  not be referenced starting on page -- on 3, the name, plaintiff
 2  business as usual, that is improper, not as usual.  You can
 3  talk about their business, but not just using the word "as
 4  usual."
 5          MR. PERTNOY:  May I say they're like their business
 6  practice?
 7          THE COURT:  No, that was getting to -- again, that's
 8  like saying what everybody knew, everybody believed.  That's
 9  totally improper.  You can just point out this is what the
10  evidence has shown.  This is what we have for the plaintiff's
11  case and their businesses, right here.  You can go down a line.
12          And also plaintiff, multimillionaires, real estate
13  developers, that's improper.
14          MR. PERTNOY:  What page?
15          THE COURT:  Page number 5 is improper to say about
16  multimillionaires, real estate developers.  So also say
17  longstanding pattern and practice, anything saying about
18  longstanding pattern and practice, a business practice shall
19  not be mentioned at all.
20          Next --
21          MR. PERTNOY:  Your Honor, just to be clear, the
22  remaining bullet points on page 5, are there any issues there?
23          THE COURT:  I don't see any at this point, but again,
24  still subject to any type of objection that may be raised, as
25  well.
```

1          MR. PERTNOY:  Okay.

2          THE COURT:  All right.  Now, on page 6, anything

3     relating to, again, this is -- it was brought out during the

4     motion in limine.  This is first thing that comes to my mind,

5     the Surfside Tower.

6          When you put that life safety, that prevents a

7     building from falling down or catching on fire, look, you can

8     talk about reasonable safety, but not about buildings falling

9     down, catching on fire.  Those things are not permitted.

10    Again, please do not do this.  This is a serious case.  Until I

11    saw that, that's the first thing that comes to my mind.

12         MR. PERTNOY:  That's why we presented it to Your

13    Honor.

14         THE COURT:  People lost their lives unfortunately and

15    can never get it back under something that probably could have

16    been preventable.  My heart goes out to family members there

17    and, of course, the judge now who retired, Hanzman, who had

18    done a phenomenal job presiding over that particular matter as

19    well.

20         Now, with respect -- again, it's a permitting process

21    and life safety, the statute, the code says reasonable level of

22    safety.  You can put that permitting process equals reasonable

23    level of safety.  You can put that, but not life safety.  Put

24    what the language has in it on page 7 where it says the purpose

25    of this code is to establish the minimum requirements to

1  provide a reasonable level of safety.  You can put that but not

2  life safety.

3          MR. PERTNOY:  I was referring to the testimony of

4  Mr. Marrero right next --

5          THE COURT:  I understand that, sir.  But again, life

6  safety.

7          On page 14, it has fantasy and science fiction.

8  Fiction, that's improper.  You can leave the word "fantasy" if

9  you want to argue with that.  To say something is a fiction,

10  pretty much amounts to something that's a lie or false.

11          MR. PERTNOY:  Fantasy is okay?

12          THE COURT:  I don't see anything -- again, look, I'm

13  just looking at this now here.  You can argue that.  That's

14  fine.

15          MR. PERTNOY:  Your Honor, on page 15, I want to be

16  abundantly clear with the Court.  The first video is a video on

17  the left.  This one is played without sound.  The second video,

18  this is the video of Mr. Bush.  I do not intend to identify

19  him, but it is in evidence and it is in evidence with sound.

20          So I want to be abundantly clear that this is here and

21  they will be played, so I'm giving Your Honor a heads up of

22  that.

23          THE COURT:  Remember, it was admitted into evidence

24  even over the plaintiffs' objection because I didn't know what

25  was going to be on that video.  It should have not been

1   admitted into evidence with respect to that pointing him out or

2   identifying him, but that was because I didn't know that the

3   defense was going to do that to this Court.  I overruled the

4   plaintiff's objections on those grounds.

5         You can play the video.  Just don't reference him or

6   pause and say this is Zach Bush and he has an interest,

7   anything else like that.  It's already in evidence now even

8   though it was contravening to my instructions.  It should not

9   have been.  You can play the video, sir.

10        MR. PERTNOY:  I just wanted to be very candid with

11   the Court so you knew what these were because I know you were

12   looking at a PDF.

13        THE COURT:  All right.  Again, the Court for most of

14   this, I'm still -- again, everything still would be subject to

15   any additional challenges.

16        Likewise, you will have the same rights and privilege

17   to object to plaintiff as well, provided again, they're

18   reasonable.  We're not going to have multiple objections for

19   the sake of doing it.  I will give the plaintiff the same

20   instructions, so when you proceed, I don't want them doing it

21   as well.

22        On page 44, again, plaintiff's fiction, that is

23   akin --

24        MR. PERTNOY:  I'm sorry, page 24?

25        THE COURT:  44.  You can use the word plaintiff's

1   versions or plaintiffs' testimony versus the facts, versus

2   plaintiff's fiction.  Fiction is almost calling the person a

3   liar.  They're not going to be allowed to do the same thing as

4   well if I see that word in the plaintiffs' proposed closing

5   arguments, so you can call it plaintiffs' version or

6   plaintiffs' testimony.

7           MR. PERTNOY:  I can call it plaintiffs' story?

8           THE COURT:  That's fine.  Yeah, that's fine.

9           MR. PERTNOY:  I just want to make sure that I'm

10  complying with the Court's instructions.

11          THE COURT:  That's fine.  Story.  It's universal but

12  it doesn't -- story doesn't mean that it's a lie.

13          Now, again, on page 47, anything relating to business

14  practice, pattern, practice.  Also page -- I think I skipped

15  one, too, as well.  Business as usual on page 46.  47, it also

16  goes to the next page, I think it's on 49.  Anything related to

17  plaintiff's business as usual, practice, improper.

18          MR. PERTNOY:  So I can't say their pattern and

19  practice?

20          THE COURT:  No.  You can say this is what the

21  evidence has shown here.  Violation X, A, B, C and D.  Here's

22  on this date, here's on that day.

23          MR. PERTNOY:  Am I allowed to say the evidence has

24  showed this is how they conduct their business?

25          THE COURT:  Again, it's still the same thing.  We're

```
 1    using semantics here.
 2              MR. PERTNOY:  I'm just trying to make sure I
 3    understand the parameters so that I don't --
 4              THE COURT:  You can argue like what has been shown.
 5    This is the plaintiff's violations they have been cited for.
 6    Work without a permit, Notice of Violation here.  It's right
 7    there.  Just the plaintiffs' business as usual or practice,
 8    that's improper.
 9              Same thing on page 54, plaintiffs' business and
10    practice.  Improper.
11              MR. PERTNOY:  Just so that the Court is aware, for
12    example, these slides that look like this on page 54, there's a
13    few of them, these were presented.  These were part of my
14    opening presentation and showing to the jury and plaintiffs had
15    seen them in advance.  So does that change anything?
16              THE COURT:  They saw it in advance?  Is it in
17    evidence?
18              MR. PERTNOY:  No.  It was a demonstrative that I used
19    in opening where I said plaintiffs' business and practice.
20              THE COURT:  If it's not in evidence, I'm not going to
21    allow it, sir.  The same thing goes if they have something
22    unless they stipulate to it, I have no problem.
23              I'll tell you what we can do.  You want to meet with
24    them tomorrow, you can tell them this is what I want to
25    introduce, do they have any objection.  They may say it doesn't
```

```
 1   matter.  If they say no, fine with this Court here.  Doesn't
 2   matter with me.
 3           Same thing on page -- again, I may be missing some if
 4   you go to do a Google word search with respect to business and
 5   as usual or those things as well.
 6           Moving right along to --
 7           MR. PERTNOY:  Your Honor, just to clarify, may I say
 8   instead of the evidence, the history of this property?
 9           THE COURT:  You can say that.  Exactly.  Beginning
10   with A, B, C, show that.
11           MR. PERTNOY:  All right.
12           THE COURT:  You can just pinpoint to it, what it
13   says.
14           MR. PERTNOY:  Understood.  I'm just making a note of
15   history of the property.
16           THE COURT:  Now, going on page 73, historically bad
17   neighbors.  That's improper.
18           MR. PERTNOY:  Just give me one second, Your Honor,
19   please.
20           THE COURT:  Ball & Chain, historically bad neighbors.
21   That's improper to say.
22           MR. PERTNOY:  May I said bad neighbors or no?
23           THE COURT:  No.  You can't say bad neighbors, sir.
24   Anything, historically bad, no, that's improper.  Repeated
25   through multiple slides.  You can remove anything that says
```

```
 1    historically bad neighbors.

 2              MR. PERTNOY:  Understood.

 3              THE COURT:  Again, like you've got page 78, Bill

 4    Fuller's story, that's perfect.  That's his story.  This is

 5    what he's saying.  I have no issues with that.  Again, on page

 6    81, I see plaintiffs' business as usual.

 7              MR. PERTNOY:  Plaintiffs' history or the property's

 8    history, that's okay?

 9              THE COURT:  That's fine.

10              MR. PERTNOY:  Okay.

11              THE COURT:  You can take out on page 99, probable

12    cause.

13              MR. PERTNOY:  Hold on.  Give me a second, please.

14    You said 99, Your Honor?

15              THE COURT:  Yes, sir.  Says probable cause.

16    Therefore, no cause of action.

17              MR. PERTNOY:  Hold on.  Work without a permit, yeah,

18    I got you.  Am I allowed to say -- am I allowed to say if

19    Carollo had caused to make complaints rather than taking out

20    probable?

21              THE COURT:  No, sir.  You're sticking with the jury

22    instructions just like I gave you your instructions.

23              MR. PERTNOY:  I'm just trying to understand.  Thank

24    you.

25              THE COURT:  Anything relating to probable cause.
```

1   It's on page 104, as well.  Again, if I missed something with

2   respect to those words, do a word search to make sure it's not

3   there.

4            MR. PERTNOY:  Just going back to page 100, because I

5   think this goes now to your instruction --

6            THE COURT:  Okay.

7            MR. PERTNOY:  Because I was going to address

8   everybody knows, so I wanted to know --

9            THE COURT:  It applies to everybody.  Remember, I'm

10  going to give -- so no.

11           MR. PERTNOY:  I understand.  So I'm going to take out

12  the everybody knows portion of it.

13           THE COURT:  See, I missed that.  I'm just trying to

14  read everything that I can.  Yes, exactly.  I want to make sure

15  the plaintiff doesn't have the same thing too.

16           MR. PERTNOY:  That's fine.  That's why I brought you

17  back to that one so that I can make sure we're good to go.  You

18  then said 103 or no --

19           THE COURT:  104, yes, where it says probable cause.

20           MR. PERTNOY:  I've got you.  Okay.

21           THE COURT:  Also on page 107, the bottom sentence.

22  It says plaintiffs' businesses have separately sued the city

23  for these damages.  That's not permissible, sir.

24           However, you're arguing that you can award damage for

25  any losses by plaintiffs' businesses.  They're not seeking

```
 1    business so I mean, you can still -- that's fine.

 2            MR. PERTNOY:  Hold on.  I just --

 3            THE COURT:  The first two are fine.

 4            MR. PERTNOY:  The first two are fine?

 5            THE COURT:  Yes.  Where it says award damage for the

 6    city alleging, all right?  Except the third one, the

 7    plaintiffs' businesses has separately sued the city.

 8            MR. PERTNOY:  Understood.  I've crossed that out.

 9    I will just stick to the first two.  Slide 109, I'm sure there

10    are things here that you want to tell me so --

11            THE COURT:  Wait, I'm not done yet.

12            MR. PERTNOY:  Sorry.

13            THE COURT:  Also, on page -- somehow looked like 56

14    got put in here.  For example, with respect to no medical

15    damage or expert, there was no testimony with respect to that

16    so you don't want to again they have those things.  You don't

17    want to comment on that, because you're looking at a fair reply

18    that was objected to.

19            I found it's inadmissible, the summary charts that

20    they wanted to seek to introduce.  That was excluded by this

21    Court as well, so by calculation of computation, there's not

22    even a need to be addressed because they're not introducing

23    that so don't even argue it.

24            MR. PERTNOY:  To be clear, I cannot indicate that

25    they didn't bring any experts?
```

```
 1              THE COURT:  No, because you objected to it, number

 2    one.

 3              MR. PERTNOY:  They never listed any experts.

 4              THE COURT:  Exactly, but again, for medical as

 5    well --

 6              MR. PERTNOY:  If I just say no experts, am I allowed

 7    to say that?

 8              THE COURT:  That's fine.

 9              MR. PERTNOY:  I'm just making sure.  And then with

10    respect to no calculations and no computations, I cannot say

11    that because they're not going to be --

12              THE COURT:  Relating to expert, there was no experts

13    needed in this case.  What you're doing, you're opening an area

14    that is a nonissue.  They're not even considering that.

15    There's no experts that testified in this trial.

16              MR. PERTNOY:  So but I am allowed to if I choose to

17    say that they did not have any experts with respect to their

18    claims?

19              THE COURT:  As to which particular claim?

20              MR. PERTNOY:  Their damages claim.

21              THE COURT:  Yeah, but they don't need an expert for

22    that.  They don't need an expert.

23              MR. PERTNOY:  Well, I think the law is that they're

24    not required to have one, but they're allowed to have one.

25              THE COURT:  All right.  I mean, that's debatable,
```

```
 1   sir.

 2              MR. PERTNOY:  Then with respect to no calculations

 3   and computations, if I understood you, can I say that because

 4   they're not going to be offering any calculations or

 5   computations?

 6              THE COURT:  You lead yourself down that rabbit hole

 7   opening up the door there.  You don't want to go there.

 8              MR. PERTNOY:  I don't say that they're not offering

 9   any calculations or computations?

10              THE COURT:  I suggest when you see them tomorrow

11   morning to bring that up as well, make sure we're on the same

12   page.  That they're not going to submit some type of summary

13   chart that they wanted to show.  I looked at you when you told

14   me it was improper before they even -- the plaintiff said

15   anything.  Look, look, I have an issue with that.  And that's

16   when Mr. Gutchess, as you recall, withdrew that, sir.

17              MR. PERTNOY:  Understood.  I just wanted to make sure

18   with respect to emotional distress, reputational harm.  I won't

19   say it if they're not opening, so if they're not offering --

20              THE COURT:  I will instruct that.  They don't say

21   anything about summary at all.  It's improper.

22              MR. PERTNOY:  That's fine.

23              THE COURT:  If you want to bring that on the record

24   before they start, say look, I haven't seen their proposed

25   forms, I mean, what you call it, PDF files.  I've got to read
```

```
 1   this stuff tonight.

 2          Hey, look, you saw, for example, when they didn't --

 3   there was a claim for the new complaint and there was a claim

 4   for the Court looked at it, took my time.  I ruled fairly to

 5   exclude that.  It was stricken from that.

 6          I took my time to make sure again there's no such

 7   thing as a perfect trial as the Supreme Court said.  I do take

 8   my time in giving everyone a fair trial.  That's what I believe

 9   I have done throughout this process, even though there's been

10   some turmoil throughout this trial, but, again at the end of

11   the day, my job is to get it right to the best of my ability.

12   That's what I want to do.  Nothing more, nothing less.  I just

13   hope that you guys see that.  That's all.

14          MR. PERTNOY:  Understood, Your Honor.  That's why we

15   took you up on your offer to have this exact in camera thing so

16   that we could be effective in our closing.

17          THE COURT:  Thank you.

18          MR. PERTNOY:  Slide 109, I'm sure you might have some

19   comments so I want to make sure that I stay within your

20   parameters.

21          THE COURT:  No, that's fine.  Did not suffer any

22   reputational harm.  You can argue that.

23          MR. PERTNOY:  Slide 109 is okay?

24          THE COURT:  Yes.  That was admitted into evidence,

25   correct?
```

1      MR. PERTNOY:  Well, the statement is, and then I'm

2  talking about this history with their properties of work

3  without permits.  I'm mentioning some of the properties other

4  than the other ones which have all been part of this evidence.

5      THE COURT:  Just take out the part that says bad

6  neighbors and all those things.

7      MR. PERTNOY:  I will delete that part.

8      THE COURT:  All right.  And let me see what else.  I

9  think everything is fine unless I overlooked -- for the most

10 part, those are the things that came out to my mind at this

11 point.  I'm going to have to now do the same thing with respect

12 to the plaintiff.

13     MR. PERTNOY:  We appreciate the Court's extra time in

14 making sure that we've gone through this with you.  Thank you

15 very much.

16     THE COURT:  When you do your closing argument, I

17 believe that it should be done without interruption and as less

18 as possible objections.  Same thing with both sides.  You want

19 to have it be peaceful and resolve it.

20     MR. PERTNOY:  Understood.  Thank you.

21     THE COURT:  We'll see you tomorrow.

22     MR. PERTNOY:  Understood, Judge.  We'll see you

23 tomorrow.  Have a good evening.

24     (Thereupon, this proceeding was adjourned at 5:03 p.m.)

25

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3         I hereby certify that the foregoing is an accurate

 4   transcription of the proceedings in the above-entitled matter.

 5

 6

 7   AUGUST 9, 2023              /s:/Ellen A. Rassie_____
                                ELLEN A. RASSIE, RMR-CRR
 8                              Official Court Reporter
                                To the Honorable Rodney Smith
 9                              299 East Broward Blvd., Room 202B
                                Fort Lauderdale, Florida  33301
10                              (954)769-5448

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**A JUROR: [2]** 36/10
36/14
**MR. GUTCHESS:**
**[78]** 4/10 39/12 41/9
43/16 44/20 44/22
46/17 46/25 47/4
54/22 55/3 55/10
55/14 55/16 61/19
61/21 64/13 64/20
66/5 69/16 69/19 73/1
74/24 75/1 75/6 77/1
77/8 78/2 78/15 82/9
82/16 82/21 84/8
84/15 84/23 87/3
91/25 92/15 92/22
94/10 94/13 95/1 95/9
95/15 98/6 98/9 98/13
98/20 98/25 99/2
99/22 100/22 101/1
101/13 104/11 108/15
111/17 111/19 111/24
112/1 114/18 120/17
121/1 128/4 143/10
144/21 148/9 148/14
153/19 153/22 176/8
176/18 176/21 177/5
177/11 179/13 179/18
179/20
**MR. KUEHNE: [210]**

**MR. PERTNOY:**
**[120]** 4/14 6/23 7/5
119/12 122/12 123/4
125/17 127/10 128/11
134/16 134/20 135/2
135/19 136/25 137/11
137/18 137/24 138/12
139/12 139/18 140/22
141/18 144/10 145/11
146/3 146/7 147/5
148/12 149/17 150/12
152/22 154/12 154/24
156/11 157/1 160/14
162/8 164/5 164/20
164/24 165/14 166/1
166/15 166/18 167/10
168/15 169/21 170/5
170/11 170/17 170/23
171/1 171/5 171/11
171/19 171/22 172/16
174/14 174/21 175/4
176/22 176/25 178/7
179/8 180/5 180/14
180/21 181/1 181/12
182/3 182/11 182/15
183/10 183/24 184/7
184/9 184/18 184/23
185/2 185/11 185/18
186/7 186/11 186/14
186/18 186/22 187/2

187/7 187/10 187/13
187/17 187/23 188/4
188/7 188/11 188/16
188/20 189/2 189/4
189/8 189/12 189/24
190/3 190/6 190/9
190/16 190/20 190/23
191/2 191/8 191/17
191/22 192/14 192/18
192/23 193/1 193/7
193/13 193/20 193/22
**MR. SARNOFF: [2]**
128/6 128/10
**MS. CAPRIO: [6]**
120/2 120/15 120/20
121/2 125/11 126/5
**MS. GOMEZ: [75]**
5/18 8/15 10/25 11/13
12/5 14/9 15/16 19/1
19/18 19/22 19/25
20/2 23/6 24/16 24/24
25/3 26/15 26/19
27/11 29/19 30/3
30/18 32/3 32/14
33/15 33/24 34/19
35/16 127/8 132/24
133/10 133/18 134/10
135/16 136/18 137/3
137/6 137/17 138/9
138/17 138/23 139/14
140/12 141/12 142/23
143/5 144/11 145/20
146/5 151/19 152/4
155/15 155/19 156/5
156/14 156/16 156/19
156/21 157/23 161/14
163/5 163/8 164/11
165/11 165/15 166/7
166/23 167/3 171/23
172/2 172/8 172/17
172/22 172/24 173/4
**MS. SUAREZ: [6]**
174/1 174/14 175/20
176/2 176/5 176/7
**THE COURT**
**SECURITY**
**OFFICER: [4]** 36/6
123/11 124/18 166/2
**THE COURT: [429]**
**THE COURTROOM**
**DEPUTY: [1]** 4/7
**THE WITNESS: [39]**
37/21 47/5 49/6 50/3
50/17 50/25 52/11
52/24 54/19 58/7
58/14 58/23 59/12
60/2 60/20 63/16
67/11 71/20 72/16
74/8 74/15 76/17 79/6
81/21 83/18 83/24
85/20 89/10 92/24
97/19 100/13 103/13

103/21 105/3 105/19
106/2 108/3 108/14
114/21

**$**

**$200,000 [1]** 49/24
**$201,940.00 [1]**
49/1
**$25,000 [1]** 157/14
**$350,000 [1]** 50/13
**$40,000 [1]** 49/15

**'**

**'19 [1]** 49/15
**'21 [1]** 139/24
**'22 [1]** 139/24
**'80s [1]** 105/10

**/**

**/s:/Ellen [1]** 194/7

**1**

**10 [3]** 161/17 164/22
167/14
**100 [2]** 1/19 188/4
**101 [1]** 3/12
**103 [1]** 188/18
**104 [2]** 188/1 188/19
**107 [1]** 188/21
**109 [3]** 189/9 192/18
192/23
**11 [8]** 117/20 155/20
166/15 166/18 170/18
170/20 170/21 170/23
**11:30 [2]** 90/10
90/16
**1208 [1]** 156/19
**1214 [1]** 156/23
**125 [1]** 145/22
**12:00 [1]** 117/21
**12:19 p.m [1]** 69/23
**12:45 [1]** 175/9
**132 [1]** 3/7
**139 [1]** 159/20
**14 [7]** 61/19 64/20
66/12 82/8 99/25
112/15 182/7
**1400 [1]** 2/3
**144 [1]** 175/16
**145 [1]** 175/17
**14th [4]** 27/12
146/21 146/22 152/11
**15 [6]** 117/18 121/16
169/15 169/19 169/25
182/15
**1513 [2]** 75/22 76/1
**169 [1]** 1/16
**1715 [1]** 159/20
**18 [1]** 89/19
**18-CV-24190 [2]**
1/2 4/8
**188 [1]** 92/2

**18th [1]** 145/24
**1966 [1]** 131/9
**1983 [9]** 34/21
153/12 156/24 157/15
157/25 158/2 158/7
160/6 168/1
**1984 [1]** 157/12
**19th [1]** 80/13
**1:00 [1]** 175/10
**1:30 [1]** 124/21
**1st [1]** 25/3

**2**

**20 [7]** 4/22 4/23 63/5
63/7 63/9 115/7 115/9
**200 [1]** 1/21
**2000 [1]** 20/1
**201 [1]** 1/13
**2014 [3]** 45/7 46/3
163/11
**2017 [3]** 29/9 47/12
148/20
**2018 [8]** 45/24 48/9
137/6 138/24 139/11
143/13 148/20 151/9
**2019 [5]** 46/3 50/7
50/10 151/4 159/21
**2020 [7]** 67/17 69/4
72/10 73/24 76/5 82/8
86/5
**2021 [11]** 29/12
61/19 87/19 88/8
90/17 94/8 97/7 97/14
97/24 112/15 137/7
**2022 [2]** 92/7 104/2
**2023 [9]** 1/5 4/1
127/1 128/18 139/2
160/5 161/16 161/19
194/7
**202B [1]** 194/9
**21 [1]** 161/19
**2121 [1]** 1/13
**216 [2]** 46/16 46/24
**22 [6]** 1/8 97/7 97/14
97/24 107/14 107/25
**22nd [4]** 76/12 76/24
77/22 78/24
**23 [2]** 86/5 92/7
**24 [1]** 183/24
**24190 [2]** 1/2 4/8
**25 [3]** 128/18 153/3
173/12
**26 [2]** 138/5 149/22
**299 [1]** 194/9
**2nd [3]** 1/13 1/19
88/2

**3**

**3.5.2 [2]** 171/24
172/11
**30 [5]** 1/5 4/1 108/17
108/21 127/1

**303 [1]** 99/22
**308 [2]** 145/22
146/14
**31 [2]** 19/6 19/19
**3105 [1]** 1/19
**33 [2]** 19/6 19/19
**33127 [1]** 1/13
**33131 [3]** 1/17 1/19
1/22
**33156 [1]** 2/4
**33301 [1]** 194/9
**35 [2]** 80/25 89/4
**360 [2]** 50/20 80/18
**381 [1]** 15/23
**383 [1]** 15/23
**39 [1]** 48/23
**397 [1]** 128/18
**3rd [2]** 90/1 90/9

**4**

**4,000 [1]** 89/4
**4,600 [1]** 81/4
**4-D [1]** 112/5
**403 [6]** 48/20 50/15
50/23 68/7 102/7
105/25
**404 [1]** 128/18
**405 [1]** 32/20
**4100 [1]** 1/21
**422 [1]** 119/1
**44 [3]** 120/24 183/22
183/25
**45 [3]** 37/9 119/7
124/9
**455 [1]** 141/13
**46 [1]** 184/15
**47 [4]** 152/25 153/2
184/13 184/15
**49 [1]** 184/16
**4:15 [1]** 163/4

**5**

**5-27-20 [2]** 115/7
115/9
**5.1 [4]** 133/16 135/3
155/16 155/19
**5.13 [3]** 164/12
164/21 166/8
**500 [1]** 1/16
**538 [1]** 163/10
**54 [2]** 185/9 185/12
**544 [1]** 163/10
**5448 [1]** 194/10
**549 [1]** 86/25
**55 [1]** 3/9
**56 [1]** 189/13
**584 [3]** 3/11 94/13
95/18
**5:03 [1]** 193/24
**5th [3]** 19/6 19/19
30/3

**6**

**608 [1]** 32/20
**610 [1]** 73/1
**620 [2]** 77/1 77/8
**643 [6]** 3/9 54/22
55/8 55/17 112/14
113/2
**65 percent [1]** 30/6
**6665 [1]** 161/17
**67 [1]** 105/23

**7**

**720 [3]** 3/10 74/24
75/9
**721 [1]** 77/25
**722 [6]** 3/12 100/22
100/25 101/21 104/12
159/21
**725 [3]** 3/11 84/9
84/22
**726 [4]** 3/10 82/7
82/9 82/24
**73 [1]** 186/16
**736 [6]** 3/12 98/10
98/11 98/13 98/13
98/18
**746 [2]** 163/10
163/10
**75 [1]** 3/10
**769-5448 [1]** 194/10
**78 [1]** 187/3
**79 [1]** 25/3

**8**

**80 [1]** 30/4
**81 [1]** 187/6
**82 [1]** 3/10
**84 [1]** 3/11
**8:00 [1]** 119/9
**8:30 [9]** 7/13 33/13
76/8 119/6 119/10
124/7 169/16 177/8
177/10
**8:52 [1]** 76/8
**8th [2]** 75/22 76/1

**9**

**9150 [1]** 2/3
**936 [1]** 156/19
**95 [1]** 3/11
**954 [1]** 194/10
**97 [2]** 64/12 64/20
**98 [4]** 3/12 65/21
66/4 66/11
**99 [4]** 65/21 66/16
187/11 187/14
**9:00 [3]** 169/18
169/21 169/23
**9:15 [4]** 169/16
169/23 174/23 175/5
**9:30 [1]** 175/5

**A**

**a.m [1]** 76/8
**AB [1]** 83/5
**ability [10]** 12/18
52/11 52/14 53/1
81/24 89/15 110/10
139/22 139/25 192/11
**able [10]** 5/5 5/22
5/23 7/12 29/13
147/23 161/5 164/13
173/13 178/8
**about [161]** 8/24
8/25 9/1 9/24 10/9
10/14 10/17 10/19
11/18 11/25 13/1 13/7
14/13 14/24 15/5
15/10 15/12 15/17
15/20 16/6 16/6 16/7
16/9 17/9 17/17 17/24
18/9 18/11 18/13 19/1
19/2 19/4 19/23 20/3
20/5 21/3 22/2 22/5
22/11 24/5 27/11
27/12 27/13 27/13
28/16 28/22 30/15
30/16 30/21 31/4
31/19 31/25 32/1 32/5
32/16 33/17 33/17
37/13 38/7 40/7 40/9
41/7 42/10 46/14
46/20 48/11 53/11
62/18 64/25 65/1 65/1
65/4 65/17 66/19 67/6
69/14 69/25 70/13
71/25 72/9 74/3 76/2
81/3 83/4 83/5 84/6
85/9 89/25 92/12 93/3
93/6 94/2 94/3 94/4
98/4 103/5 104/9
104/15 106/14 106/16
109/9 109/18 109/19
111/5 112/4 113/5
113/21 114/16 115/5
115/17 116/17 117/10
120/9 120/10 124/20
127/25 129/22 131/3
136/25 137/1 137/8
139/10 143/2 144/5
147/8 148/19 149/3
149/5 149/15 149/16
150/20 151/17 152/23
152/25 153/21 154/1
154/3 154/4 157/24
158/9 159/5 161/3
161/13 162/11 162/24
164/13 165/2 165/17
165/18 169/15 171/24
175/6 176/11 179/2
180/3 180/15 180/17
181/8 181/8 191/21
193/2

**above [1]** 194/4
**above-entitled [1]**
194/4
**absolutely [8]** 56/5
88/24 100/15 108/14
112/23 117/5 141/3
160/21
**ABT [1]** 83/10
**abundance [2]**
121/21 122/7
**abundant [1]** 155/13
**abundantly [3]**
141/23 182/16 182/20
**access [5]** 11/10
129/2 129/21 130/20
179/9
**accessible [2]**
177/15 178/24
**According [1]** 70/14
**accordingly [1]**
124/4
**account [1]** 124/14
**accountable [2]**
56/2 56/5
**accounted [1]**
123/13
**accuracy [1]** 103/2
**accurate [3]** 22/13
49/10 194/3
**accurately [1]** 49/13
**accused [1]** 178/13
**Ace [3]** 73/6 115/14
176/9
**Acevedo [9]** 32/16
90/24 91/3 91/9 92/12
93/3 93/6 97/25 102/5
**acquisition [1]**
34/10
**across [1]** 22/14
**act [3]** 113/10
135/21 146/22
**acted [7]** 140/13
140/25 141/2 141/20
142/11 142/20 166/19
**acting [4]** 133/20
140/19 141/15 141/17
**action [21]** 14/2
16/25 20/14 26/25
34/16 38/17 38/20
44/13 53/20 94/3
109/19 115/24 116/1
116/5 140/23 152/1
152/2 152/5 156/24
159/23 187/16
**actions [7]** 135/12
139/9 139/10 142/15
146/9 150/21 160/23
**active [6]** 13/2 13/3
13/4 13/5 27/3 28/10
**actively [2]** 24/12
29/16
**activists [1]** 12/15

**activities [5]** 27/9
145/1 159/10 159/24
162/2
**activity [20]** 27/25
42/13 103/1 103/25
104/1 136/1 142/14
146/17 147/6 147/9
147/10 147/15 147/20
147/24 153/14 153/16
155/7 159/13 160/7
168/2
**actor [2]** 159/22
159/25
**acts [19]** 135/25
136/7 136/20 136/23
137/8 137/9 138/20
144/14 146/7 146/8
146/15 147/5 147/8
147/17 147/21 152/23
152/24 153/7 159/8
**actual [6]** 34/19 35/6
107/3 109/19 147/19
156/25
**actually [10]** 24/16
49/4 61/1 72/23
109/19 114/3 115/11
128/6 135/19 164/17
**ad [16]** 9/18 16/15
17/12 24/9 25/11 26/1
26/3 26/11 26/14
27/12 27/21 29/2
33/23 34/7 35/12
176/16
**adamant [1]** 18/9
**adamantly [1]** 141/1
**add [11]** 136/11
137/15 147/7 147/21
147/24 148/1 151/3
153/10 153/16 155/21
170/7
**added [1]** 166/21
**adding [4]** 135/9
135/13 137/24 148/2
**addition [3]** 43/19
138/20 138/24
**additional [16]**
29/14 136/7 136/11
137/25 138/13 146/15
146/22 147/7 147/17
147/21 147/24 149/6
152/18 153/7 167/11
183/15
**Additionally [2]**
144/11 158/19
**address [32]** 5/18
5/20 7/10 16/19 22/16
24/20 30/2 31/15
31/23 31/24 39/18
56/9 119/15 119/16
120/12 124/22 127/14
128/13 128/14 131/2
131/8 132/7 132/8

**143/6 164/9 169/15
170/1 170/3 177/3
177/8 177/10 188/7
addressed [11]** 6/11
22/15 24/6 25/18
27/24 30/3 42/10
137/3 152/12 165/24
189/22
**addresses [1]** 157/9
**addressing [3]**
131/7 150/5 157/23
**Adele [1]** 69/25
**adjourned [1]**
193/24
**administration [9]**
14/5 21/17 39/5 56/2
79/10 89/2 110/14
111/14 160/11
**administration's [1]**
40/4
**administrative [4]**
37/7 44/12 100/2
124/2
**administrator [1]**
115/21
**admissibility [1]**
127/19
**admissible [1]**
119/14
**admission [1]** 82/16
**admit [5]** 84/15 88/2
88/8 95/9 104/11
**admitted [14]** 82/23
84/21 95/17 101/13
104/13 120/7 129/13
129/13 142/7 165/15
165/16 182/23 183/1
192/24
**adopt [1]** 130/11
**adopted [3]** 130/12
155/23 164/17
**adopting [1]** 156/2
**advance [2]** 185/15
185/16
**adverse [2]** 13/15
27/1
**advice [8]** 59/7
59/21 60/4 60/5 61/12
62/10 62/11 108/10
**advise [1]** 35/19
**advised [1]** 129/20
**advisement [5]**
140/10 151/6 151/16
151/20 154/18
**advising [1]** 83/9
**advisor [2]** 83/9
83/20
**advocating [1]**
116/10
**afar [1]** 89/22
**affect [2]** 21/9 41/24
**affidavit [3]** 122/4

**A**

**affidavit... [2]**
122/20 122/21
**affiliation [1]** 14/8
**affirmative [7]** 7/19
22/13 121/9 134/13
155/2 168/20 169/9
**affirmatively [1]**
18/17
**affirming [2]** 151/10
157/13
**after [40]** 6/14 6/22
21/19 40/23 41/1 50/6
50/9 63/5 63/7 64/9
67/16 71/4 71/14
96/17 107/25 108/19
108/21 129/15 129/19
130/19 136/19 137/8
137/14 137/15 138/8
138/25 139/11 143/14
143/15 143/17 143/18
143/20 144/1 144/3
144/3 153/17 153/23
153/24 157/14 174/7
**afternoon [4]** 7/1
119/3 127/1 127/10
**afterward [1]**
152/14
**afterwards [1]**
102/5
**again [84]** 4/5 5/11
7/10 7/11 7/24 8/5
9/21 9/22 11/4 13/19
14/15 14/19 16/13
16/16 16/17 16/19
18/8 18/9 19/12 21/21
22/15 22/16 22/17
22/19 24/19 25/10
27/16 27/17 28/11
29/7 29/22 30/7 31/10
69/5 72/4 74/15 80/10
86/8 89/10 90/1
105/11 108/7 109/25
111/11 117/19 119/7
124/5 124/10 132/17
133/13 151/6 153/20
159/25 163/2 164/24
167/1 168/6 168/20
169/7 170/13 173/20
176/3 178/23 180/7
180/23 181/3 181/10
181/20 182/5 182/12
183/13 183/14 183/17
183/22 184/13 184/25
186/3 187/3 187/5
188/1 189/16 190/4
192/6 192/10
**against [35]** 14/5
16/25 17/20 18/14
114/22 114/25 133/21
133/23 133/24 135/7

135/9 135/10 136/3
137/2 137/13 143/3
143/8 143/9 146/13
147/25 149/8 149/9
149/11 150/9 150/9
151/18 152/7 153/4
158/17 159/23 160/6
167/25 168/1 168/7
176/12
**age [1]** 63/10
**agency [1]** 20/15
**ago [3]** 65/13 139/7
174/2
**agree [5]** 35/11
127/18 133/1 174/21
178/21
**agreed [1]** 134/11
**agreement [1]**
128/11
**agreements [2]**
114/3 114/5
**agrees [1]** 172/15
**ahead [2]** 124/14
153/21
**ain't [1]** 54/11
**akin [1]** 183/23
**al [1]** 4/8
**Alabama [1]** 157/11
**alcohol [6]** 42/25
83/5 106/22 106/24
106/25 107/3
**alert [1]** 5/22
**Alfie [9]** 27/11 28/16
28/17 28/18 28/19
28/20 29/8 136/4
148/19
**Ali [2]** 23/11 23/25
**aligned [1]** 18/6
**all [190]** 4/18 5/2
6/17 6/21 7/8 7/9
12/13 12/17 12/18
12/20 13/17 15/15
16/8 17/6 17/9 17/20
17/23 18/19 18/25
19/2 20/5 20/7 21/6
21/22 22/21 25/11
26/19 27/14 28/6
30/23 30/24 31/3 31/7
33/2 35/9 35/12 36/6
36/16 37/15 43/23
44/19 45/10 47/4 51/6
52/17 53/2 53/6 53/8
55/1 56/23 60/13
61/20 62/18 65/9
65/21 66/11 66/18
68/19 69/3 69/17 70/3
70/5 70/23 72/4 72/8
72/12 72/16 75/6
76/11 76/23 78/11
79/17 79/21 81/14
85/8 86/17 89/20
90/19 93/12 93/25

94/7 95/11 95/14
98/14 98/17 99/2
100/22 102/11 104/7
107/21 108/16 117/16
117/24 118/18 119/8
119/10 120/23 121/1
122/11 122/18 122/25
123/11 123/22 123/24
124/18 124/20 124/22
124/25 125/15 125/15
127/13 127/13 128/11
128/12 131/2 131/4
131/12 133/16 134/22
135/15 135/18 136/8
136/16 137/7 137/8
137/9 138/16 139/17
140/4 141/6 141/23
142/10 142/22 143/1
143/16 143/22 146/16
149/5 149/13 149/17
149/18 150/3 151/2
152/10 152/13 152/15
152/20 154/4 154/12
154/13 154/18 155/14
156/17 156/20 157/20
158/20 159/3 160/3
160/8 161/1 161/12
162/9 164/19 165/18
165/20 165/23 166/2
168/23 169/2 170/9
171/3 172/10 172/20
172/23 174/5 175/18
178/19 179/21 179/24
180/19 181/2 183/13
186/11 189/6 190/25
191/21 192/13 193/4
193/6 193/8
**allegations [3]**
137/25 140/23 153/5
**allege [2]** 30/10
133/22
**alleged [6]** 135/8
135/12 142/15 146/17
147/4 153/7
**allegedly [9]** 131/13
135/23 136/4 147/4
147/12 152/24 153/8
160/6 168/1
**alleging [1]** 189/6
**allow [16]** 11/11
22/16 22/18 28/8 32/4
32/20 33/20 52/1
52/11 100/7 121/16
138/13 147/23 162/21
167/7 185/21
**allowable [1]** 100/15
**allowed [19]** 11/12
16/14 23/25 25/6 29/1
40/24 52/17 53/1
81/16 83/12 99/17
136/7 184/3 184/23
187/18 187/18 190/6

190/16 190/24
**allowing [3]** 104/20
143/23 166/12
**allows [2]** 155/9
166/20
**almost [5]** 68/12
69/3 69/24 70/9 184/2
**alone [2]** 99/12
142/16
**along [7]** 8/12 39/6
76/21 128/13 160/15
170/2 186/6
**alongs [1]** 96/17
**already [22]** 14/9
14/14 15/16 15/25
16/1 20/20 23/6 23/15
24/9 24/16 25/13
25/16 27/20 55/2
69/16 73/2 77/1 86/25
140/21 156/5 177/9
183/7
**also [63]** 5/7 8/15
9/15 20/16 26/13 28/9
28/17 28/22 35/21
36/16 42/25 53/22
56/23 57/1 66/1 67/1
69/7 69/17 74/11 84/4
87/23 89/11 91/9
98/21 106/13 118/18
124/9 124/11 125/12
130/13 130/21 131/14
131/23 132/8 135/1
137/3 144/11 148/22
149/2 149/9 149/11
151/22 151/23 152/10
152/14 154/23 155/19
157/12 158/22 164/11
164/20 167/6 168/17
172/2 174/1 176/14
178/7 180/12 180/16
184/14 184/15 188/21
189/13
**altered [1]** 147/10
**alternative [6]** 41/3
41/5 41/8 41/12 42/1
161/4
**although [2]** 104/17
122/21
**Altos [12]** 34/13
38/7 38/8 38/11 38/18
38/21 39/6 39/11
39/16 82/14 84/5 84/7
**always [2]** 147/15
178/23
**am [8]** 51/20 70/6
171/11 184/23 187/18
187/18 190/6 190/16
**Amanda [3]** 1/12
4/10 127/8
**Amber [2]** 2/3 4/17
**ambiguity [2]** 17/24
129/10

**ambush [2]** 138/8
138/8
**amend [6]** 139/22
139/25 140/2 149/19
153/17 159/14
**amended [5]** 139/20
146/9 151/4 153/22
153/23
**Amendment [24]**
28/22 133/22 134/5
142/13 146/17 146/20
147/6 155/7 158/1
158/2 158/3 158/3
158/4 158/5 158/8
158/11 158/18 158/21
160/7 160/16 160/24
163/11 164/1 168/1
**America [1]** 151/13
**amount [4]** 6/7 39/3
110/6 116/9
**amounts [1]** 182/10
**angry [1]** 148/19
**animal [3]** 60/7
60/14 60/22
**animosity [3]** 91/17
93/16 93/24
**Anne [1]** 1/11
**announce [2]** 123/5
127/6
**announcement [2]**
123/17 125/6
**anonymous [1]**
133/24
**another [15]** 14/20
19/12 65/16 78/3
83/21 87/17 97/7 97/8
104/21 110/23 117/6
151/12 155/16 169/14
169/22
**answer [40]** 20/7
20/10 20/24 21/1 21/6
21/11 21/15 21/18
30/5 46/22 49/4 49/21
52/10 52/23 54/18
58/6 58/13 58/22
59/11 59/16 59/17
60/1 60/19 63/15
67/10 71/19 72/15
76/16 79/5 81/20
85/19 89/9 97/18
100/12 103/12 103/20
105/2 108/2 108/13
161/11
**answered [2]** 57/11
114/25
**answering [2]** 59/18
114/15
**anticipate [1]** 175/9
**any [125]** 5/12 6/6
6/15 8/6 8/7 8/9 11/8
12/4 20/5 20/16 21/6
21/23 25/25 29/1

**A**

**any... [111]** 31/13
31/15 32/1 32/7 35/19
37/2 38/10 38/17 39/5
39/10 39/15 39/20
39/24 41/12 42/3 43/5
43/14 43/19 44/15
44/19 45/24 46/10
46/12 47/9 49/2 49/17
49/18 53/20 53/20
53/23 54/12 54/12
54/14 55/5 65/23 67/5
72/1 72/18 73/20
73/20 78/11 78/19
82/1 84/17 94/3 95/3
95/11 95/21 99/25
100/3 100/4 101/15
103/2 105/13 110/19
110/19 110/20 111/3
113/14 113/17 116/25
117/1 117/20 118/22
119/17 122/8 124/6
124/13 125/6 125/7
125/12 126/1 127/24
127/25 128/3 128/8
129/9 132/16 134/8
134/15 135/19 136/16
137/18 139/9 141/5
142/22 149/23 151/16
152/20 154/10 158/19
168/23 173/11 173/16
173/22 174/2 176/3
176/14 178/11 180/22
180/23 180/24 183/15
185/25 188/25 189/25
190/3 190/17 191/4
191/9 192/21
**anybody [6]** 9/21
56/9 56/11 105/15
105/19 149/15
**anyone [15]** 17/25
46/13 46/19 64/3 64/6
80/8 108/19 117/19
124/6 124/12 127/20
163/1 170/4 170/16
176/15
**anything [45]** 5/15
5/16 8/7 9/22 16/6
26/11 27/17 31/1
33/13 34/2 47/24
69/17 75/15 79/18
113/3 113/23 116/1
119/15 123/3 126/4
140/11 143/2 151/8
152/20 157/22 161/12
164/7 167/19 170/14
172/20 176/19 179/5
179/6 180/17 181/2
182/12 183/7 184/13
184/16 185/15 186/24
186/25 187/25 191/15

191/21
**anyway [1]** 118/25
**anywhere [1]** 121/5
**apart [1]** 167/7
**apologize [3]** 12/23
20/2 148/12
**appeal [1]** 151/12
**appeals [2]** 138/25
151/10
**appear [3]** 23/9 95/5
162/4
**appearance [1]**
127/6
**appearances [3]**
1/10 2/1 4/9
**appease [4]** 57/22
58/19 58/25 62/17
**Apple [1]** 109/7
**apples [1]** 131/11
**applicable [1]**
158/11
**applicant [1]** 85/5
**application [3]**
43/15 45/10 112/4
**applications [2]**
43/20 43/24
**applied [1]** 18/19
**applies [3]** 34/21
160/21 188/9
**apply [4]** 14/7 34/20
158/18 167/23
**appointed [2]** 50/11
113/6
**appreciate [3]** 37/2
37/15 193/13
**apprise [1]** 69/18
**approached [1]**
131/13
**appropriate [8]**
68/14 73/14 117/5
118/9 133/8 134/7
134/21 140/20
**appropriately [2]**
27/23 123/22
**approval [2]** 78/21
83/11
**approvals [1]** 78/12
**approve [3]** 41/18
41/19 83/10
**approved [7]** 45/11
45/13 104/16 111/8
111/12 114/5 114/7
**approximately [1]**
30/6
**April [11]** 87/19 88/2
88/8 90/1 90/9 90/17
94/7 97/7 97/14 97/24
128/18
**April 25 [1]** 128/18
**are [109]** 5/3 6/2
6/10 6/17 7/9 7/10
10/5 11/8 11/14 15/2

17/11 18/6 19/18
19/19 24/24 25/4 30/1
32/6 33/19 35/5 35/6
35/19 35/25 42/6 43/7
44/1 46/23 47/19 48/1
51/21 51/22 53/1 55/5
55/7 57/4 59/8 59/22
67/11 70/3 70/23 73/7
79/18 79/21 80/2 85/6
85/13 89/25 96/4 96/5
98/4 110/11 110/16
112/24 114/5 114/7
118/6 120/5 120/18
121/16 123/13 123/22
125/12 125/22 130/18
131/11 135/7 135/8
135/11 137/12 137/13
137/25 138/11 138/23
139/6 139/14 142/10
144/23 145/12 145/12
146/4 147/17 149/13
150/10 152/1 153/6
153/7 155/1 156/9
157/11 157/24 158/1
158/9 158/21 159/3
159/14 162/10 162/18
162/25 164/25 166/10
169/7 171/4 173/21
180/22 181/9 189/3
189/4 189/10 193/10
**area [9]** 9/13 16/12
20/6 31/2 32/8 43/1
107/11 107/16 190/13
**areas [5]** 20/13
79/18 79/21 81/11
118/11
**aren't [1]** 109/18
**argue [15]** 5/24
17/17 167/1 167/2
167/17 167/19 168/18
173/6 173/24 174/7
182/9 182/13 185/4
189/23 192/22
**argued [1]** 163/23
**arguing [10]** 140/14
147/8 148/8 148/11
153/6 159/12 159/13
159/17 173/4 188/24
**argument [15]** 7/12
17/18 119/11 119/17
125/25 140/16 145/21
157/24 162/21 163/14
171/16 174/2 174/4
174/14 193/16
**Argumentative [1]**
62/20
**arguments [12]** 7/3
7/6 36/17 37/8 119/24
124/9 126/1 132/10
132/14 163/2 176/15
184/5
**arms [1]** 89/14

**arose [2]** 60/10
115/19
**around [9]** 45/9
88/19 89/14 148/3
163/4 169/18 174/23
175/9 175/10
**arrest [2]** 34/23
168/8
**arresting [1]** 158/10
**arrival [1]** 9/25
**arrived [2]** 91/6 91/8
**Art [1]** 32/16
**Arteaga [2]** 4/11
127/9
**Arteaga-Gomez [2]**
4/11 127/9
**ARTHUR [3]** 38/2
45/2 109/3
**Article [1]** 85/6
**Arturo [1]** 15/7
**artwork [7]** 23/1
23/2 23/2 23/10 23/14
23/21 23/24
**as [258]**
**aside [3]** 35/1 46/13
46/19
**ask [43]** 5/4 6/6 6/8
8/19 9/24 10/9 10/14
10/19 11/18 11/24
14/24 15/4 15/8 15/10
15/12 17/13 18/12
22/5 24/14 26/22
27/18 30/23 30/25
31/19 33/16 33/17
40/7 42/10 47/19 60/9
73/2 87/17 88/3 92/3
101/13 102/9 117/6
121/9 122/8 125/24
146/23 155/11 178/9
**asked [33]** 5/19
19/22 30/15 38/6 40/7
48/25 57/11 64/17
69/9 69/9 82/21 92/11
93/2 93/9 93/15 99/11
99/15 100/14 110/24
111/5 113/5 113/21
114/15 114/16 115/5
115/11 116/16 130/3
144/15 160/10 160/10
170/18 173/10
**asking [7]** 11/6
17/16 30/21 116/17
134/9 149/24 166/23
**Asks [1]** 79/2
**aspects [4]** 14/2
55/7 89/13 89/20
**assert [1]** 18/17
**asserted [1]** 159/19
**assessment [1]**
103/3
**asset [1]** 65/4
**assets [2]** 65/6 65/7

**assign [1]** 52/13
**assistant [2]** 56/12
84/12
**assistants [1]**
116/20
**associated [12]**
16/25 17/2 17/3 18/23
133/3 133/7 134/2
134/19 135/6 136/21
150/7 150/14
**Association [1]** 13/4
**associations [4]**
12/13 12/17 12/18
12/20
**assume [1]** 101/8
**assuming [2]** 101/9
175/4
**at [147]** 7/13 9/8
9/13 15/17 17/19 17/20
19/5 21/16 23/24
27/14 28/12 30/4
32/19 33/12 34/2 34/6
37/2 40/15 41/16
46/16 46/16 48/25
49/14 50/20 55/8 56/8
56/12 56/23 57/1 57/4
58/23 61/25 63/22
73/14 76/8 76/8 76/23
81/11 83/9 85/3 88/8
88/12 88/15 88/25
89/16 90/1 90/10
90/10 90/16 93/25
94/7 94/8 94/16 95/21
96/19 96/24 99/20
101/18 104/3 105/4
105/22 109/25 112/12
116/17 117/12 117/20
118/4 118/13 119/6
119/9 119/10 121/4
121/23 122/6 123/20
124/7 125/5 125/14
131/2 131/6 131/23
132/5 132/8 133/6
133/9 135/10 135/22
138/2 138/17 139/18
139/25 140/4 140/15
143/3 143/9 144/17
145/8 146/19 147/20
147/23 149/11 150/10
151/2 151/2 151/16
151/18 152/7 152/20
152/25 153/2 153/4
154/1 156/1 157/15
157/20 159/20 160/11
161/17 162/1 162/4
162/4 163/10 163/10
168/11 169/2 170/21
171/1 171/5 172/25
173/10 173/12 175/5
177/8 177/10 178/5
179/19 180/19 180/23
182/13 183/12 189/17

**A**

at... [6] 191/13
191/21 192/4 192/10
193/10 193/24
attack [2] 72/12
133/6
attacks [2] 27/6
28/20
attempt [3] 14/20
19/12 39/11
attempting [1]
93/19
attend [1] 53/9
attended [1] 97/25
attending [1] 106/17
attention [6] 38/10
110/19 128/24 129/15
130/24 157/16
attentive [1] 13/17
attorney [6] 25/23
70/9 75/16 75/19
144/22 168/7
Attorney's [4] 68/13
69/3 69/25 70/7
attorneys [6] 26/8
70/11 72/11 121/16
124/8 179/1
audio [3] 95/13
95/13 95/15
audit [1] 76/19
AUGUST [1] 194/7
authorities [1] 34/16
authority [20] 20/15
20/16 38/20 40/12
40/18 41/2 41/16
41/18 44/13 45/22
48/13 48/15 49/25
50/9 53/11 79/19
79/19 109/14 173/9
173/12
authorize [4] 42/3
53/3 112/12 157/17
authorized [6] 41/1
48/15 49/1 49/15
49/24 111/8
autonomy [1] 82/3
availed [1] 85/5
Avenue [1] 1/13
avoid [1] 122/7
award [12] 155/22
157/14 157/14 157/18
164/14 166/20 166/25
167/6 167/9 167/14
188/24 189/5
awarded [3] 155/22
156/24 166/24
awarding [2] 167/4
167/7
aware [16] 8/21
14/15 21/21 42/6 42/7
42/8 46/2 47/8 53/22

80/8 86/23 139/4
139/5 156/9 156/11
185/11
awareness [4] 27/6
34/10 34/14 44/4
AXS [1] 1/10

**B**

B-I-D [2] 15/6 15/8
Bacardi [1] 107/2
back [28] 9/8 10/13
24/2 25/15 28/25
32/16 38/4 40/11
71/25 90/1 109/25
110/25 117/25 118/17
120/12 123/5 127/6
145/15 146/16 163/3
163/4 166/4 167/14
173/18 178/15 181/15
188/4 188/17
backdooring [1]
136/14
background [3] 8/20
8/21 8/23
bad [16] 59/3 59/4
59/23 59/23 61/11
61/11 62/1 62/1 62/18
186/16 186/20 186/22
186/23 186/24 187/1
193/5
Ball [19] 18/23 34/13
45/6 45/10 45/25
46/11 46/14 46/20
68/4 74/18 76/1 76/2
76/12 78/23 78/25
80/8 136/8 162/15
186/20
bankruptcy [1] 9/16
Barlington [1]
150/25
bars [4] 68/2 96/19
97/9 117/11
Bartlett [2] 159/20
161/20
base [1] 10/15
based [10] 18/21
43/3 63/9 63/10 77/10
103/7 146/16 147/5
153/7 163/16
bases [2] 17/23
155/2
basis [7] 42/17 42/19
104/20 119/18 132/17
176/10 176/11
be [202]
became [8] 10/13
28/17 47/8 50/7 64/9
67/16 111/22 143/21
because [110] 5/21
5/24 10/15 12/6 14/7
15/23 19/16 23/23
28/17 28/19 28/21

29/8 32/9 35/6 35/6
48/6 52/25 60/6 60/14
60/23 63/18 68/15
69/9 69/11 79/14
89/25 96/18 96/21
101/8 107/15 116/6
116/9 116/25 118/21
121/11 121/21 124/11
126/2 127/21 128/19
129/8 129/17 129/23
130/13 130/17 131/3
131/5 131/22 132/11
133/2 133/4 134/4
135/25 137/3 139/5
139/8 140/5 140/7
140/24 142/12 146/11
146/12 146/20 146/23
148/5 149/6 149/24
150/2 150/15 150/16
153/12 154/25 155/9
157/7 157/16 158/8
158/12 158/14 158/22
158/25 159/5 160/9
160/20 160/21 161/5
161/24 162/16 163/22
165/8 167/4 168/16
168/24 169/18 172/3
172/6 174/25 175/6
175/7 178/7 178/13
182/24 183/2 183/11
188/4 188/7 189/17
189/22 190/1 190/11
191/3
become [1] 93/11
becoming [4] 27/18
113/5 113/12 113/14
been [81] 4/17 14/14
15/25 22/11 23/15
24/2 24/16 25/13
25/18 27/17 29/10
29/12 29/18 31/20
33/12 33/15 33/22
35/3 35/8 35/12 37/23
38/24 39/1 39/3 41/20
41/20 41/22 41/22
42/9 45/8 56/11 56/12
65/24 72/6 81/21 82/1
87/23 88/19 93/11
93/19 94/5 96/24 97/6
104/2 104/15 105/7
105/10 105/11 105/12
107/14 110/2 110/18
112/20 120/11 125/13
136/3 136/7 137/13
140/21 141/6 141/16
141/17 142/4 147/3
147/15 147/23 164/12
165/4 170/1 172/13
173/15 173/18 176/16
178/23 181/16 182/25
183/9 185/4 185/5
192/9 193/4

Beer [1] 34/13
before [40] 1/8 5/11
17/10 25/22 27/18
30/2 30/7 30/10 47/8
54/11 71/11 74/19
76/10 76/12 77/22
77/22 90/4 118/2
118/21 118/23 125/1
125/23 128/14 129/1
129/14 129/24 151/3
151/7 151/10 151/12
152/21 154/17 157/19
161/12 164/10 169/4
170/5 177/19 191/14
191/24
began [3] 48/10
48/12 143/13
begin [4] 7/12 7/14
49/8 136/15
beginning [3] 61/25
145/25 186/9
begins [2] 20/10
174/8
behalf [6] 4/12 4/15
116/10 116/11 127/9
127/11
behavior [3] 118/22
144/18 152/15
behind [1] 148/24
being [34] 6/2 6/18
6/25 7/5 12/23 25/21
35/20 42/25 62/25
63/2 64/3 78/13 88/2
88/8 90/16 92/11
102/19 102/20 105/15
105/19 106/24 106/25
130/23 132/15 136/3
140/5 149/18 154/3
162/15 162/15 163/18
165/14 170/12 178/13
belabor [1] 17/6
belief [1] 138/19
believe [53] 4/21
6/19 9/9 10/15 11/8
11/22 15/22 16/23
18/21 24/25 25/25
27/24 29/17 30/13
44/20 45/15 46/10
46/12 49/3 49/17
49/18 56/25 61/19
73/14 76/6 86/6 94/11
106/13 118/10 118/25
119/20 125/9 132/17
138/12 139/22 139/24
154/25 161/14 166/9
168/11 168/22 168/23
168/23 169/2 169/3
172/11 172/12 172/22
173/17 176/9 179/14
192/8 193/17
believed [6] 93/21
131/21 148/21 148/24

158/15 180/8
believes [1] 16/7
Bell [3] 35/22 36/2
36/3
Ben [2] 4/15 127/11
bench [1] 118/4
Benedict [1] 1/18
benefit [1] 154/13
benefits [1] 63/3
besides [1] 80/2
best [3] 93/8 173/2
192/11
better [1] 55/21
between [19] 52/12
65/9 72/17 79/7 87/21
88/9 91/12 93/7 93/12
93/14 100/24 107/10
111/9 111/14 115/13
115/14 142/15 146/1
159/18
Beverage [1] 83/5
beyond [19] 21/22
31/1 35/23 58/11
60/17 80/20 82/19
82/20 84/18 95/22
98/15 102/8 106/9
106/21 114/18 135/14
139/19 147/3 167/19
BID [4] 15/6 15/8
15/17 16/9
big [1] 70/9
bigger [1] 102/24
Bill [18] 45/6 47/23
47/24 69/25 70/13
70/20 72/13 72/24
73/21 81/9 115/20
133/19 133/22 135/1
159/15 166/18 170/25
187/3
billion [1] 89/4
birds [1] 174/18
Biscayne [1] 1/21
bit [3] 154/17 167/11
174/2
bitterness [4] 91/15
91/17 93/14 93/15
black [1] 50/22
blamed [1] 148/18
blew [1] 143/25
block [1] 96/8
Blom [1] 154/7
Blom's [1] 154/3
blow [1] 17/21
Blvd [3] 1/21 2/3
194/9
body [4] 56/24 57/4
79/8 97/21
both [15] 31/15
41/20 73/7 120/10
120/11 120/18 127/22
128/1 129/20 142/17
144/5 151/10 162/24

**B**

**both... [2]** 178/21
193/18
**bottom [5]** 71/22
75/18 115/12 115/12
188/21
**bought [1]** 61/1
**BOWEN [1]** 1/20
**box [1]** 178/16
**brainstorming [1]**
71/25
**brand [1]** 107/3
**break [7]** 36/24
108/19 108/20 108/21
118/17 124/13 175/6
**breath [1]** 109/24
**Brickell [1]** 15/12
**bridge [1]** 138/1
**brief [1]** 118/2
**briefing [1]** 148/6
**briefly [3]** 16/20
42/11 119/13
**bring [13]** 16/2
31/13 32/16 35/17
36/4 118/2 123/9
157/16 175/8 175/10
189/25 191/11 191/23
**bringing [4]** 14/5
133/4 133/5 134/4
**broad [1]** 165/21
**broke [1]** 38/6
**broken [1]** 35/14
**brother [1]** 116/9
**brother's [1]** 115/19
**brought [26]** 6/4
7/22 8/1 8/2 8/3 8/6
8/8 8/18 9/2 9/14
9/16 9/16 19/9 19/14
27/20 29/25 29/25
128/23 129/15 130/1
130/19 130/23 139/21
176/12 181/3 188/16
**Broward [1]** 194/9
**budget [1]** 89/4
**Builders [1]** 13/4
**building [11]** 41/22
45/13 68/12 69/2
69/13 70/14 70/16
72/10 73/7 77/19
181/7
**buildings [2]** 25/6
181/8
**built [3]** 39/1 111/13
114/1
**bullet [1]** 180/22
**bully [1]** 57/22
**bunch [1]** 114/9
**burden [5]** 136/15
141/20 141/21 142/5
168/21
**burdens [1]** 142/21

**Bush [4]** 176/12
176/15 182/18 183/6
**business [36]** 10/15
11/19 11/21 11/21
11/22 12/13 12/17
12/18 12/20 13/1 13/6
13/9 13/16 13/17
15/17 18/7 20/23
79/20 83/12 134/4
134/14 146/10 180/2
180/3 180/5 180/18
184/13 184/15 184/17
184/24 185/7 185/9
185/19 186/4 187/6
189/1
**businesses [14]**
10/20 13/24 14/24
15/10 78/11 134/1
134/6 136/21 136/21
151/25 180/11 188/22
188/25 189/7
**but [126]** 5/15 6/19
8/7 9/6 9/13 12/14
13/14 14/11 17/14
18/4 22/15 22/17
24/20 26/13 28/2
29/11 30/25 33/1 33/4
33/18 34/3 34/23 35/1
37/4 40/8 47/24 50/20
53/3 54/13 54/19 56/4
57/19 60/11 65/4
65/25 67/5 75/2 78/3
80/14 81/2 86/17
87/25 88/16 89/11
94/6 96/11 96/23
100/23 101/8 101/9
104/20 105/7 113/1
116/10 120/20 121/8
122/6 122/20 122/22
122/23 125/1 125/6
125/8 125/21 130/4
130/13 131/2 132/17
135/9 136/11 138/8
138/19 138/23 139/15
139/23 140/15 144/24
145/1 146/15 147/5
147/8 147/14 147/22
147/22 147/23 148/2
148/12 148/17 148/20
150/7 151/16 152/1
152/10 155/24 159/3
159/25 161/6 163/25
166/12 166/23 167/7
169/22 169/25 171/16
172/18 177/9 177/23
177/24 178/2 178/5
178/23 179/3 180/3
180/23 181/8 181/23
182/1 182/5 182/19
183/2 184/11 190/4
190/16 190/21 190/24
192/10

**buy [1]** 37/12

**C**

**C-E-R-T-I-F-I-C-A-T
-E [1]** 194/1
**C.E.O [1]** 88/23
**calculation [1]**
189/21
**calculations [4]**
190/10 191/2 191/4
191/9
**call [27]** 4/4 4/6 5/9
6/5 6/9 37/19 54/22
85/9 85/10 85/10
85/22 85/23 85/24
85/24 90/10 90/11
118/9 121/24 123/15
125/7 127/4 144/22
169/17 175/10 184/5
184/7 191/25
**Calle [2]** 13/20 34/14
**called [3]** 32/17
35/20 48/4
**calling [4]** 77/6
118/15 125/12 184/2
**calls [1]** 48/5
**came [11]** 10/13
15/19 21/5 21/19
35/13 120/11 121/5
143/24 144/15 151/14
193/10
**camera [3]** 132/12
179/23 192/15
**campaign [10]**
10/21 11/19 12/1
12/12 13/25 14/3
47/12 47/23 47/25
145/24
**campaigning [1]**
47/11
**can [168]** 6/18 7/10
8/24 8/25 9/10 9/22
12/16 17/17 17/18
17/21 19/15 19/24
20/1 22/16 24/20
24/22 25/17 25/18
25/19 27/23 30/23
30/23 33/16 36/5
37/19 46/17 48/23
51/24 52/6 52/6 52/6
52/10 52/13 52/19
52/23 54/18 57/22
58/6 58/13 58/22
59/11 60/1 60/19
61/21 63/15 64/13
64/23 66/5 67/10
71/19 72/15 73/23
74/23 76/16 79/5
79/12 79/17 80/17
81/20 82/9 84/23 85/9
85/19 86/12 87/17
88/6 89/9 91/24 92/15

94/20 95/15 95/24
97/18 97/22 98/20
100/6 100/7 100/12
101/11 102/20 103/6
103/12 103/20 105/2
107/21 108/2 108/13
109/12 110/1 110/13
116/16 119/13 119/16
119/19 120/4 120/13
120/22 122/10 122/12
123/9 124/14 131/20
132/7 132/13 144/24
144/25 147/7 153/11
155/18 157/15 157/19
159/1 159/22 163/11
164/1 165/24 167/1
167/2 167/8 167/17
167/19 169/1 169/8
169/24 170/14 173/1
173/6 174/3 174/4
174/9 174/11 174/12
175/24 176/2 177/1
177/3 177/7 177/9
177/9 180/2 180/9
180/11 181/7 181/15
181/22 181/23 182/1
182/8 182/13 183/5
183/9 183/25 184/5
184/7 184/20 185/4
185/23 185/24 186/9
186/12 186/25 187/11
188/14 188/17 188/24
189/1 191/3 192/22
**can't [16]** 46/13
46/19 79/15 81/2 87/7
87/12 87/13 87/16
101/8 110/4 138/2
153/10 159/1 176/3
184/18 186/23
**candid [1]** 183/10
**candidate [2]**
158/15 158/15
**cannot [7]** 31/13
51/23 51/25 52/1
160/25 189/24 190/10
**capital [1]** 110/24
**Caprio [3]** 1/11 4/11
179/14
**car [2]** 50/22 88/18
**care [5]** 14/10 14/13
106/4 161/2 169/23
**Carlos [2]** 15/6
15/20
**CAROLLO [136]** 1/6
4/8 4/16 5/10 5/21
6/14 6/22 8/20 9/1
13/15 13/17 13/23
16/24 17/7 18/12
22/21 23/20 24/4 26/1
27/1 27/2 27/4 27/8
28/4 28/11 28/13
28/14 28/17 28/18

28/20 29/15 29/17
31/4 31/13 39/24
40/21 43/4 44/15 46/9
46/13 46/20 47/11
52/1 52/6 52/18 52/19
53/19 53/22 54/6 54/7
54/10 54/15 54/24
55/21 57/9 58/3 58/10
58/18 62/17 64/9
64/25 65/10 65/14
65/22 65/25 66/16
67/6 71/4 71/14 72/24
73/9 73/10 73/15
73/19 73/21 77/5 77/7
77/16 84/4 85/25
87/20 88/13 90/22
90/23 91/9 91/12 93/8
93/20 97/8 97/14
97/16 98/4 99/11
100/7 100/18 102/1
102/4 111/3 113/12
113/23 116/1 116/17
123/21 127/12 133/20
133/23 135/7 135/9
135/10 137/2 140/13
140/18 142/20 143/3
143/8 143/9 145/2
145/4 145/9 146/13
146/19 148/18 148/23
148/25 149/2 149/5
149/12 150/9 150/10
151/18 152/7 152/12
162/2 163/23 163/23
187/19
**Carollo's [31]** 7/16
12/10 17/1 22/2 22/12
23/4 48/1 48/17 49/2
49/16 49/25 50/10
51/7 64/18 65/17
65/23 66/13 76/23
81/15 81/22 91/19
92/12 93/4 104/2
117/10 145/22 145/24
146/9 146/12 151/23
151/24
**carried [1]** 72/23
**carries [1]** 168/21
**case [119]** 1/2 4/6
4/8 6/19 7/25 8/2
13/11 16/14 17/25
18/4 18/5 18/18 22/17
22/22 25/18 26/11
28/16 28/22 29/21
34/17 34/18 34/21
34/22 34/24 35/3 55/7
66/8 81/10 82/20
100/14 113/3 114/11
114/17 114/22 114/22
114/25 117/19 118/6
118/15 119/19 120/6
123/8 123/21 124/5
131/9 131/16 131/22

**C**

**case... [72]** 132/3
132/4 132/8 133/9
133/19 134/7 135/10
135/13 135/14 137/2
137/7 138/25 140/4
140/8 141/16 142/19
143/8 144/9 147/2
147/25 148/1 148/2
152/8 154/25 155/7
155/9 155/12 155/23
156/8 156/9 156/11
157/13 157/17 158/7
158/11 158/18 159/19
159/20 159/21 160/2
160/5 160/5 160/21
160/25 161/7 161/15
161/16 161/18 161/19
161/19 161/20 162/19
163/3 163/6 163/11
164/2 164/5 164/6
165/16 166/9 167/7
167/24 168/12 169/15
169/22 171/20 173/16
174/20 175/9 180/11
181/10 190/13
**cases [12]** 157/25
158/2 158/9 158/20
158/20 158/21 158/21
159/3 159/4 167/21
173/25 177/25
**catching [2]** 181/7
181/9
**causal [3]** 142/2
142/3 142/14
**causation [1]** 146/1
**cause [33]** 34/11
34/15 34/15 34/20
34/25 35/2 115/21
142/17 154/20 155/5
157/24 158/6 158/9
158/18 159/5 159/6
159/12 159/23 160/1
160/14 160/18 161/22
162/2 162/3 162/13
162/21 168/3 171/9
187/12 187/15 187/16
187/25 188/19
**caused [3]** 147/16
152/6 187/19
**causes [2]** 140/23
140/23
**causing [2]** 133/25
152/24
**caution [3]** 11/3
121/21 122/7
**CD [2]** 178/1 178/3
**CD Rom [1]** 178/1
**cease [1]** 42/13
**celebration [1]**
102/5

**celebrities [1]** 25/5
**certain [11]** 6/16
8/20 22/3 26/10 55/5
77/9 95/21 110/15
120/6 123/21 125/9
**certainly [7]** 49/14
53/3 54/13 54/21 93/8
116/25 117/3
**Certificate [4]** 75/24
75/24 77/20 78/23
**certify [1]** 194/3
**certiorari [1]** 151/14
**chain [15]** 18/24
34/14 45/6 45/11
45/25 68/4 74/18 76/1
76/3 76/12 80/9 86/2
136/8 162/15 186/20
**Chain's [5]** 46/11
46/14 46/21 78/23
78/25
**challenge [4]** 27/8
28/4 149/12 150/13
**challenges [1]**
183/15
**challenging [1]**
150/8
**Chamber [2]** 13/2
13/3
**chance [3]** 111/3
122/22 123/25
**change [6]** 51/23
51/25 52/1 52/6 75/14
185/15
**changed [2]** 134/9
147/9
**changes [2]** 132/25
134/6
**character [3]** 31/5
32/23 33/8
**characterize [4]**
33/1 33/2 33/7 148/10
**characterized [1]**
59/2
**charge [7]** 3/7 12/8
56/15 97/15 124/22
132/21 168/4
**charging [2]** 7/2 7/4
**chart [1]** 191/13
**Charter [16]** 51/14
51/17 51/24 51/25
52/9 56/6 99/5 99/17
99/20 100/16 111/6
111/13 111/16 112/4
141/3 163/24
**charts [1]** 189/19
**check [4]** 33/14
101/11 173/1 178/1
**checked [1]** 102/12
**cherrypick [1]** 29/4
**Chicago [3]** 10/10
10/11 10/13
**chief [14]** 63/21

90/24 92/12 93/3 93/6
97/25 99/12 100/8
101/23 103/24 115/21
116/19 116/21 116/22
**chief's [2]** 116/19
117/3
**chill [1]** 158/17
**chilled [2]** 142/6
142/9
**choose [2]** 140/1
190/16
**chops [1]** 150/1
**chose [5]** 58/2 58/10
130/4 130/14 130/18
**chosen [1]** 58/18
**Christmas [1]** 46/6
**church [4]** 40/15
40/24 41/1 41/25
**circle [1]** 71/25
**Circuit [23]** 131/9
131/10 131/10 134/24
151/10 154/22 156/1
156/3 156/4 156/15
156/16 156/18 156/23
160/5 161/15 162/24
163/1 163/10 168/11
168/12 168/17 169/5
169/6
**circumstance [1]**
35/23
**circumstances [2]**
131/18 155/10
**circumvent [2]**
136/12 140/3
**citation [1]** 145/21
**cite [6]** 157/6 157/17
158/21 160/14 161/17
163/5
**cited [6]** 131/9
156/14 157/10 158/20
167/24 185/5
**cites [1]** 161/19
**citing [1]** 164/7
**citizens [1]** 12/15
**city [139]** 8/12 9/15
10/22 13/15 14/2 14/4
14/4 14/6 18/13 19/3
20/9 20/11 20/15
20/19 20/19 20/21
23/2 23/3 23/5 24/12
24/15 24/23 38/10
38/13 39/10 39/15
40/18 41/20 42/6
42/12 43/10 43/13
44/1 44/14 45/11
45/24 47/8 50/7 50/11
51/5 51/5 51/14 51/16
51/23 52/7 52/12 53/3
53/9 53/11 53/12
53/23 54/7 54/23
56/12 56/19 58/2 58/9
59/22 62/25 63/7

63/18 64/9 67/21
67/25 68/13 68/16
68/17 69/10 69/11
69/25 70/7 70/9 72/11
73/15 75/19 79/21
80/5 80/18 80/25
81/14 83/7 83/8 83/11
85/12 88/22 88/25
89/3 89/12 89/20 95/6
96/4 96/25 99/5 99/20
99/25 100/2 100/3
100/5 100/19 102/4
104/7 111/12 111/15
111/22 111/23 112/15
112/19 113/2 113/5
114/1 114/6 114/8
114/22 114/25 115/17
116/3 133/25 135/10
135/23 142/16 143/4
143/9 143/21 143/23
143/23 143/25 144/22
150/10 151/18 152/7
160/10 160/14 160/17
162/18 162/19 163/9
188/22 189/6 189/7
**city's [2]** 40/20 69/3
**Civil [1]** 133/17
**claim [32]** 28/12
53/19 53/22 130/19
133/20 134/4 135/13
136/14 137/15 140/3
142/10 144/17 147/11
147/15 147/24 148/6
150/2 150/4 150/16
157/15 159/24 160/6
160/16 160/25 163/18
164/2 168/5 168/18
190/19 190/20 192/3
192/3
**claimed [4]** 16/23
18/21 147/6 155/7
**claiming [4]** 136/2
158/24 159/15 161/24
**claims [7]** 12/8
12/10 18/6 133/5
133/5 148/3 190/18
**clandestine [1]**
142/1
**clarification [3]**
37/23 121/19 175/20
**clarify [2]** 128/19
186/7
**clarity [3]** 52/24
81/23 177/12
**clean [7]** 124/23
175/24 177/14 178/1
178/12 178/25 179/10
**clear [37]** 10/22 11/4
16/17 17/9 17/10
17/23 18/11 22/25
56/1 65/7 110/1
110/16 116/12 120/8

125/6 125/8 125/9
125/17 128/20 129/9
131/2 131/4 131/17
136/4 141/23 148/6
155/8 156/6 160/4
164/25 167/12 171/12
171/15 180/21 182/16
182/20 189/24
**clearly [15]** 8/6
52/25 62/16 70/3
70/23 89/10 91/12
93/12 131/4 132/4
136/14 142/8 142/19
145/6 167/22
**clerk's [1]** 80/16
**clerks [1]** 173/2
**client [1]** 25/23
**client's [1]** 25/5
**clients [3]** 108/3
116/11 118/22
**clip [1]** 56/9
**close [6]** 7/8 29/11
40/14 85/7 103/7
118/6
**closing [34]** 7/3 7/6
7/12 17/17 36/17 37/8
103/5 119/5 119/10
119/17 119/24 120/3
120/14 120/15 120/23
121/7 121/9 121/12
121/15 124/9 125/23
132/10 132/14 163/16
167/13 174/25 175/14
175/14 175/14 176/15
177/6 184/4 192/16
193/16
**closure [1]** 103/14
**club [2]** 13/5 102/19
**clubs [1]** 96/19
**CO [2]** 75/22 75/23
**CO/CU [2]** 75/22
75/23
**Coconut [1]** 79/19
**code [24]** 20/12 35/6
39/4 68/12 69/3 72/11
81/25 82/4 85/7 89/21
94/2 96/17 136/8
159/9 159/18 162/3
162/6 162/11 162/11
163/17 163/21 163/24
181/21 181/25
**codes [1]** 20/13
**Cohen [3]** 46/17
78/16 84/23
**coin [2]** 160/19
160/20
**COLE [1]** 2/2
**color [12]** 133/20
140/14 140/19 140/25
141/2 141/14 141/15
141/15 141/20 142/4
142/12 142/20

**C**

**combed [1]** 11/7
**combined [2]** 105/23
124/12
**combing [1]** 14/16
**come [17]** 21/4
25/19 38/10 42/1 53/3
109/25 110/18 115/17
118/17 120/12 123/5
136/7 144/7 145/6
169/17 178/10 178/16
**comes [9]** 53/6 70/2
70/22 100/13 112/8
141/10 175/13 181/4
181/11
**coming [2]** 144/1
179/16
**command [1]** 109/13
**commandeering [1]**
133/25
**commence [1]** 7/2
**commend [1]** 36/21
**comment [3]** 24/5
90/6 189/17
**comments [2]**
117/10 192/19
**Commerce [2]** 13/2
13/3
**commission [37]**
53/9 54/23 59/2 59/22
60/8 61/11 62/1 97/8
97/24 98/10 99/25
100/3 102/4 112/13
112/15 112/22 113/2
113/10 113/17 114/6
114/8 135/11 135/23
135/25 136/1 136/19
143/4 143/9 149/11
150/10 151/2 151/18
152/8 152/11 153/1
161/1 162/1
**commissioner [96]**
4/16 5/9 5/21 6/22
6/25 7/15 8/20 8/22
9/1 11/18 11/20 12/3
12/10 13/17 13/23
14/1 16/24 17/1 18/12
19/4 22/7 22/12 23/3
23/4 23/19 24/3 24/11
26/1 27/1 27/2 27/4
27/8 28/4 28/11 28/13
28/14 28/18 29/15
29/17 31/4 35/20
39/24 40/21 43/4 43/4
43/14 43/14 44/15
46/9 46/13 46/20
47/11 49/2 49/16
52/18 57/15 58/16
64/18 65/25 66/12
66/16 77/5 77/6 77/15
81/22 86/3 87/24

92/12 93/4 93/8 93/20
110/17 110/20 111/3
111/9 116/17 116/25
117/1 117/10 118/10
123/21 127/12 141/17
141/20 142/16 142/17
148/18 149/12 152/12
160/10 160/15 160/22
161/1 162/2 163/22
163/23
**commissioner's [3]**
23/1 27/5 34/10
**commissioners [10]**
43/25 47/18 47/20
51/21 52/12 53/1 59/8
67/11 110/15 113/14
**commitment [1]**
37/3
**committees [2]**
100/1 100/4
**communicate [2]**
41/7 67/14
**communication [1]**
112/12
**communications [4]**
67/2 67/5 98/5 112/11
**community [9]**
11/22 11/25 11/25
12/6 12/15 13/9 23/14
23/15 80/19
**companies [3]** 22/6
22/9 42/3
**company [1]** 22/11
**compared [1]**
129/11
**compensatory [2]**
157/19 167/15
**competence [1]**
79/4
**complaining [1]**
46/14
**complaint [55]**
46/20 135/7 135/8
135/9 135/20 135/21
136/3 136/5 136/22
136/23 137/1 137/1
137/2 137/6 137/9
137/12 138/4 138/18
138/19 138/24 139/15
139/18 139/20 143/3
143/8 143/14 143/19
146/9 146/13 146/16
146/18 147/13 149/10
149/18 150/8 150/22
150/24 150/25 151/1
151/4 152/25 153/9
153/17 153/22 153/24
154/9 154/9 159/8
159/14 162/1 162/5
162/9 162/10 162/11
192/3
**complaints [10]**

19/5 19/23 20/3 21/4
21/6 21/19 21/20
133/24 160/15 187/19
**completely [5]**
34/20 66/8 114/11
152/18 159/9
**compliance [7]**
42/20 72/12 84/24
85/7 85/14 86/7
103/17
**compliant [2]** 84/5
103/21
**comply [2]** 70/4
70/24
**complying [1]**
184/10
**comport [2]** 156/2
169/5
**comports [3]** 134/24
156/3 156/3
**Compound [2]** 71/7
81/17
**computation [1]**
189/21
**computations [4]**
190/10 191/3 191/5
191/9
**computer [4]** 175/24
175/24 177/15 178/20
**concede [1]** 141/15
**conceded [1]** 140/18
**conceding [1]**
163/22
**conceivably [1]**
14/17
**concept [1]** 155/12
**concern [4]** 38/15
56/4 116/6 135/4
**concerned [1]** 175/6
**concerning [4]** 31/9
65/10 84/12 154/19
**concerns [5]** 12/13
68/15 82/14 115/22
144/21
**concludes [1]** 130/1
**conclusion [3]**
100/11 124/25 140/17
**condition [1]** 165/13
**conditions [3]** 70/3
70/23 108/7
**conduct [14]** 73/18
139/4 139/5 144/14
152/6 152/10 152/14
159/2 161/22 165/19
168/4 168/8 171/21
184/24
**conducting [2]**
18/13 73/15
**conference [6]** 3/7
7/2 7/4 27/13 124/22
132/21
**conferences [2]**

27/6 142/8
**confidential [1]**
63/25
**confined [5]** 42/24
43/1 106/18 107/7
107/16
**confirm [3]** 80/16
97/22 166/8
**conflict [1]** 116/6
**conform [2]** 125/13
135/17
**conforming [1]**
125/17
**confused [1]** 167/4
**confusing [2]** 146/7
177/22
**conjunction [1]**
40/18
**connection [6]**
26/11 27/7 142/2
142/3 142/14 178/20
**consider [2]** 155/9
172/12
**consideration [1]**
140/20
**considered [1]**
154/23
**considering [2]**
23/14 190/14
**consistent [4]**
111/23 134/18 134/18
134/23
**consistently [1]**
126/2
**consult [1]** 179/8
**context [11]** 34/25
55/5 60/9 60/12 73/17
75/14 86/9 89/11
102/3 109/15 158/7
**continue [4]** 37/5
37/16 91/24 172/25
**continued [15]** 2/1
11/20 12/2 30/21 38/2
130/21 136/24 137/4
138/20 139/1 144/13
146/15 147/3 147/23
151/25
**continues [2]** 20/22
139/16
**continuing [11]**
12/12 29/10 77/10
98/22 139/3 144/18
145/7 145/25 147/1
152/9 162/14
**contrary [1]** 18/20
**contravening [1]**
183/8
**contributed [3]**
48/16 50/6 50/9
**contributing [1]**
50/6
**contribution [1]**

47/25
**contributions [2]**
49/1 49/15
**control [3]** 35/23
37/14 145/1
**convenient [1]**
154/13
**conversation [8]**
6/24 55/25 70/19 72/6
72/17 84/6 91/3 111/1
**conversations [10]**
65/10 65/14 65/16
65/20 65/22 66/12
66/21 94/3 94/5 112/6
**convicted [1]** 172/13
**conviction [3]**
171/25 172/5 172/7
**coordinate [1]** 179/9
**copies [6]** 122/2
122/20 131/3 176/6
176/7 177/13
**copious [1]** 7/25
**copy [7]** 44/22
122/16 132/22 133/13
133/14 164/8 170/24
**corner [2]** 88/15
97/4
**corners [1]** 160/8
**cornerstone [1]**
161/10
**corporate [1]** 162/17
**corporations [4]**
140/5 141/23 147/14
148/4
**correct [47]** 29/22
33/21 33/22 43/3 45/7
46/11 46/21 46/22
47/9 48/8 51/14 52/4
53/9 54/1 56/16 60/25
65/20 66/17 74/4
75/19 75/20 81/5
88/12 88/17 88/21
89/25 90/21 91/2 91/7
91/8 94/18 98/24
104/1 104/18 107/8
107/9 107/13 107/25
108/8 114/12 114/22
115/4 115/20 125/11
161/18 175/15 192/25
**corrected [4]** 128/14
128/16 131/1 131/7
**Corrections [1]**
157/12
**corrects [1]** 128/17
**correlation [1]** 79/7
**could [41]** 11/2
14/17 20/19 30/19
30/20 44/7 49/13
56/11 56/11 61/4
69/19 75/10 82/1
94/22 97/6 98/6
102/17 104/11 107/7

**C**

**could... [22]** 109/6
115/8 118/1 121/9
122/6 123/17 129/16
137/23 156/7 158/6
158/16 159/11 163/5
163/21 163/25 165/17
168/18 173/11 173/16
179/5 181/15 192/16
**couldn't [2]** 103/6
103/16
**counsel [12]** 4/9
5/19 6/24 12/4 47/2
60/2 82/10 120/9
138/16 144/8 176/11
179/8
**counterclaim [2]**
158/23 158/25
**counterclaims [1]**
159/1
**countervailing [1]**
169/6
**couple [7]** 48/5
63/23 104/15 124/23
127/14 148/15 162/8
**course [7]** 12/11
19/25 20/14 99/13
148/15 175/18 181/17
**court [108]** 1/1 4/4
5/18 5/22 5/24 9/22
11/9 16/1 16/14 17/10
21/21 22/4 26/10 27/4
27/18 30/10 30/20
33/2 33/19 35/19
37/11 37/12 69/18
117/25 118/12 118/22
118/23 121/9 121/23
123/17 125/3 125/21
125/24 125/25 127/4
127/5 128/19 128/23
128/25 129/4 129/8
129/10 129/12 129/14
129/20 129/24 129/25
130/3 130/15 130/23
130/25 131/1 131/8
131/20 131/22 132/20
134/6 140/17 141/8
143/2 144/15 146/24
146/25 147/22 148/14
149/24 150/17 151/13
153/7 155/21 155/23
156/1 156/13 157/12
158/25 159/20 159/21
161/20 162/5 163/6
164/4 164/16 165/9
165/16 166/4 166/9
166/11 167/23 168/10
175/22 176/9 177/22
177/23 178/10 178/22
179/24 179/25 179/25
182/16 183/3 183/11

**C** (continued)

183/13 185/11 186/1
189/21 192/4 192/7
194/8
**Court's [14]** 4/16
13/14 16/21 22/4
37/23 55/6 118/8
125/1 130/7 151/11
176/13 179/13 184/10
193/13
**courtesy [1]** 122/16
**Courtney [2]** 1/11
4/11
**courtroom [6]** 36/7
117/22 123/12 124/19
163/1 169/17
**cover [7]** 16/3 23/16
25/21 26/19 30/18
128/1 167/16
**covered [29]** 8/15
10/15 11/10 11/23
14/9 14/14 14/21 16/1
17/11 17/14 17/23
18/8 19/17 20/20
21/25 22/2 22/18
23/15 23/21 24/8
24/17 24/20 24/21
26/5 26/6 26/23 29/5
30/12 30/13
**covering [2]** 5/23
121/11
**covers [3]** 19/3
35/18 123/1
**COVID [3]** 67/17
68/8 68/19
**crafted [1]** 161/9
**Crazy [1]** 32/17
**Cream [1]** 15/10
**create [1]** 52/24
**created [1]** 39/19
**creating [2]** 97/14
97/17
**credentials [2]** 9/14
9/18
**credibility [3]** 33/9
141/10 141/10
**criminal [7]** 57/16
103/1 104/1 158/21
168/6 171/9 171/20
**crisis [1]** 67/19
**critical [1]** 161/9
**cross [18]** 3/4 5/14
6/11 7/21 8/3 16/5
16/12 25/14 31/19
31/25 32/8 33/23
35/10 44/20 44/21
45/2 99/7 113/21
**cross-examination
[9]** 5/14 6/11 7/21
25/14 31/19 33/23
44/21 99/7 113/21
**cross-examinations
[1]** 35/10

**cross-examine [2]**
16/5 31/25
**cross-examined [1]**
8/3
**cross-examining [1]**
32/8
**crossed [3]** 100/21
111/2 189/8
**crowds [1]** 102/24
**Crown [5]** 163/8
163/11 163/16 164/2
164/6
**CRR [1]** 194/7
**crux [1]** 140/2
**CU [6]** 74/4 74/18
75/22 75/23 76/2
76/12
**cultural [1]** 107/14
**Culturales [6]** 42/10
42/12 106/14 107/25
108/4 143/15
**cumulative [3]** 11/6
19/13 30/25
**curative [2]** 127/16
130/17
**curiosity [1]** 175/4
**current [3]** 50/20
63/21 101/23
**currently [1]** 85/7
**CUs [1]** 74/12
**cut [3]** 9/21 102/24
103/16
**CV [1]** 1/2 4/8

**D**

**D3 [2]** 22/7 23/4
**Dadeland [1]** 2/3
**daily [4]** 129/2
130/20 131/3 145/1
**dais [2]** 54/25
152/12
**damage [4]** 155/24
188/24 189/5 189/15
**damages [22]**
155/21 155/22 156/6
156/7 156/24 157/13
157/14 157/18 157/19
162/18 164/14 166/10
166/11 166/22 166/24
166/25 167/6 167/9
167/15 167/15 188/23
190/20
**Dan [1]** 86/15
**dared [1]** 146/11
**date [13]** 48/10
48/12 48/14 54/16
59/25 60/18 61/15
61/17 82/7 86/5 90/12
97/20 184/22
**dates [1]** 80/14
**DAVIS [3]** 1/18
156/19 166/9

**Dawson [4]** 2/3 4/17
121/8 121/12
**day [25]** 1/8 12/2
21/4 71/24 72/7 72/8
72/8 78/3 89/25
112/20 117/17 125/16
138/20 139/16 139/22
143/17 145/25 145/25
147/21 152/25 153/23
153/24 176/23 184/22
192/11
**Daycare [1]** 163/8
**days [11]** 5/14 5/16
5/22 6/12 8/9 9/20
14/18 25/11 27/15
34/1 34/1
**deadline [2]** 149/19
149/20
**deal [4]** 59/7 59/22
77/18 100/1
**dealing [1]** 151/8
**deals [2]** 20/21
77/18
**dealt [2]** 74/12
170/12
**death [1]** 107/15
**debatable [1]**
190/25
**decades [1]** 105/7
**December [4]** 48/9
82/8 86/5 148/20
**December 14 [1]**
82/8
**December 23 [1]**
86/5
**decide [12]** 32/6
104/19 119/8 120/22
122/6 141/8 141/9
143/1 150/18 169/10
172/10 172/12
**decision [18]** 30/18
40/14 40/17 40/19
40/20 40/21 42/15
42/17 44/13 52/15
129/12 132/19 140/16
145/19 151/11 154/21
156/23 161/16
**decisions [2]** 11/5
157/3
**deeds [1]** 9/17
**deems [1]** 125/3
**deeper [1]** 154/4
**defeat [4]** 28/13
29/16 29/24 150/4
**defeated [3]** 27/4
28/2 28/18
**defeats [1]** 158/7
**defendant [21]** 1/7
1/15 2/2 13/15 32/7
32/8 32/10 128/5
129/2 129/7 130/3
130/14 131/9 132/2

**D** (continued)

132/9 132/11 132/13
141/7 155/10 168/21
169/13
**defendant's [12]** 3/3
18/5 18/18 34/17
127/15 128/15 128/23
130/13 133/1 134/11
168/13 177/9
**defendants [4]**
131/19 163/12 163/15
163/19
**defense [20]** 5/6 5/9
6/20 7/19 15/23 35/4
47/2 120/4 141/16
161/10 167/17 167/24
168/20 169/1 169/9
174/6 175/14 178/2
179/1 183/3
**defenses [2]** 7/19
12/10
**defer [3]** 5/6 31/22
118/14
**deferred [1]** 109/21
**define [2]** 70/3
70/23
**definitely [2]** 169/18
169/25
**delete [1]** 193/7
**deliberate [2]** 130/2
174/14
**deliberating [3]**
174/3 174/8 174/13
**delineated [1]** 130/9
**demonstrate [2]**
13/16 14/6
**demonstrative [1]**
185/18
**denied [10]** 10/1
40/23 92/22 118/20
119/1 129/8 130/25
132/6 151/14 176/17
**department [18]**
45/14 52/19 53/20
56/14 72/11 73/7
81/24 82/2 82/3 83/7
83/7 83/8 83/21 112/6
112/13 116/19 157/12
163/9
**departments [4]**
20/11 45/24 80/25
89/4
**depends [1]** 63/9
**deploying [1]** 163/24
**depo [3]** 47/6 101/14
101/18
**deposition [18]**
44/23 46/16 48/23
54/20 64/12 65/8
65/13 65/21 66/6
76/20 92/1 92/6 94/6
101/3 101/11 114/10
114/10 114/13

**D**

**depositions [1]**
154/13
**deputy [1]** 169/17
**describe [2]** 7/17
165/23
**described [1]** 39/25
**designed [1]** 146/9
**desire [1]** 4/25
**desired [1]** 130/18
**destroy [1]** 146/10
**detail [1]** 8/20
**detailed [1]** 118/13
**determination [3]**
43/2 79/9 120/1
**determinations [1]**
141/11
**determine [1]**
111/22
**determined [4]** 16/1
86/7 118/9 140/21
**determines [1]**
162/24
**developers [2]**
180/13 180/16
**developing [1]**
165/12
**Development [1]**
79/19
**device [4]** 78/19
176/3 178/24 179/5
**dictate [1]** 114/4
**did [133]** 7/18 8/13
9/9 10/7 10/12 10/21
10/21 14/10 19/1 19/4
19/22 20/3 20/5 21/3
21/9 21/16 21/23
25/21 26/10 28/3 32/9
36/1 38/10 38/17
38/20 39/5 39/10
39/24 40/18 40/21
41/1 41/5 41/7 42/2
42/3 42/6 42/16 42/17
42/18 43/2 43/3 44/15
44/17 46/5 46/8 47/13
47/14 47/17 51/8
56/25 58/15 59/5
64/11 64/17 66/12
70/15 71/13 72/21
72/25 86/15 86/16
87/24 88/19 91/11
91/14 91/16 91/18
91/21 99/5 106/15
106/20 108/5 111/22
112/4 113/10 113/11
113/17 113/18 114/13
114/14 114/15 114/24
115/17 115/21 115/23
115/24 115/25 116/5
116/23 117/10 119/9
120/4 122/14 125/6

129/2 130/3 130/11
130/15 130/17 132/25
133/2 134/11 134/12
135/22 136/13 136/18
139/25 141/12 147/4
147/24 148/3 148/5
150/3 150/21 152/9
154/1 155/4 157/17
159/16 163/25 164/18
165/12 165/18 166/4
166/8 167/21 168/11
168/13 171/23 177/7
179/11 190/17 192/21
**did you go [1]** 112/4
**didn't [39]** 9/21 13/9
14/13 14/25 17/8
17/25 24/21 28/19
28/21 30/19 30/20
34/3 56/9 59/18 70/14
85/24 86/15 97/1
99/18 116/11 133/6
136/14 138/10 140/3
142/12 145/7 149/22
149/23 154/6 154/8
167/3 170/6 170/7
170/11 177/7 182/24
183/2 189/25 192/2
**different [11]** 20/11
23/19 23/22 23/23
48/5 48/6 48/6 66/8
140/8 155/15 158/1
**differently [1]** 14/7
**difficult [4]** 61/8
109/16 109/18 177/13
**diligence [2]** 73/20
82/1
**direct [32]** 3/4 4/19
4/19 5/14 6/2 6/4
6/11 7/22 8/3 27/20
29/25 37/16 38/2 40/7
40/21 48/24 53/5 53/8
58/12 62/24 67/1 79/6
80/20 82/2 82/20
84/18 98/4 98/16
105/9 105/14 112/8
114/3
**directed [8]** 53/19
140/14 141/4 149/25
150/1 150/13 173/5
174/17
**direction [13]** 51/19
51/21 52/2 52/7 52/19
53/2 81/15 81/15
81/25 82/2 89/22
110/17 166/13
**directions [2]** 54/12
100/19
**directive [1]** 81/22
**directives [1]** 53/6
**directly [31]** 7/19
12/9 14/19 18/17
26/12 27/1 28/24 29/5

34/17 38/19 47/10
47/19 47/24 52/18
53/6 55/21 67/14 82/1
82/2 96/7 96/9 100/8
100/15 110/17 112/13
113/13 113/16 116/21
117/4 117/13 161/9
**director [22]** 40/11
41/2 41/19 41/24 42/3
48/13 48/15 56/14
68/12 68/12 69/3 69/3
70/14 70/16 72/11
82/2 85/2 85/3 85/5
85/14 86/4 86/13
**director's [1]** 69/13
**directors [3]** 81/24
82/3 82/6
**disability [2]** 165/3
165/22
**disagree [1]** 147/7
**disagreed [1]** 130/14
**disappoint [1]**
174/20
**discharge [1]** 12/2
**disciplines [1]** 41/23
**disclose [1]** 138/5
**discloses [1]** 138/6
**disclosure [1]**
151/22
**disclosures [3]**
138/5 149/22 149/23
**discomfort [1]** 165/4
165/23 165/23
**discovery [3]** 76/18
145/23 154/10
**discreet [2]** 18/3
121/10
**discretion [3]**
163/19 164/1 166/20
**discuss [7]** 6/24
64/17 68/13 68/14
69/4 117/19 124/5
**discussed [8]** 8/23
23/6 27/14 35/3 35/8
66/14 130/10 152/10
**discussing [3]** 69/5
69/5 125/21
**discussion [3]** 33/16
64/24 71/4
**discussions [1]**
64/25
**disfigurement [2]**
165/3 165/22
**disingenuous [1]**
152/19
**dismiss [1]** 130/5
**disorderly [3]** 168/4
168/8 171/21
**disparaging [1]**
120/9
**displays [2]** 23/2
23/3

**disproportionate [1]**
167/5
**dispute [6]** 103/2
140/18 141/12 142/23
151/7 179/2
**disputed [2]** 28/21
140/22
**disqualification [1]**
122/3
**disregarded [1]**
170/15
**disruption [1]**
119/17
**dissemination [1]**
8/14
**distance [2]** 87/21
88/9
**distinctively [2]**
8/17 26/7
**distinctly [4]** 7/25
13/25 18/20 19/16
**distinguishable [2]**
158/22 159/3
**distress [5]** 164/25
165/7 165/10 165/11
191/18
**distributed [1]**
106/24
**distribution [5]** 8/13
42/25 43/19 43/22
106/22
**district [32]** 1/1 1/1
1/9 8/22 11/20 12/12
13/3 13/4 13/5 13/6
13/7 13/18 14/1 15/11
15/18 20/23 21/7
21/10 22/14 23/1
24/12 24/13 43/4
43/13 43/14 43/20
43/24 44/6 79/20
110/24 111/3 112/25
**districts [1]** 112/24
**do [197]**
**do you [14]** 58/25
73/11 75/4 81/7 82/12
84/11 93/16 95/3 96/2
101/6 106/4 108/10
109/8 115/12
**do you see [14]**
64/17 66/11 66/22
71/22 75/18 78/18
78/21 79/17 79/21
85/2 87/5 87/8 92/13
101/3
**docket [5]** 119/1
128/18 130/4 141/13
145/22
**document [3]** 80/15
83/16 83/18
**documents [2]**
121/22 179/10
**does [32]** 19/4 19/7

43/10 43/13 53/18
55/20 75/23 77/18
82/15 95/5 95/8 107/4
113/2 113/23 122/16
125/21 139/16 141/14
144/17 147/1 156/2
156/23 157/17 158/18
162/4 163/1 163/17
167/7 167/23 172/2
175/22 185/15
**doesn't [22]** 8/1
17/10 17/19 34/20
68/16 69/12 70/18
75/14 88/1 119/8
132/15 139/9 148/6
151/9 153/1 158/19
172/19 184/12 184/12
185/25 186/1 188/15
**doing [24]** 7/18
17/16 27/21 36/17
71/3 82/6 88/17 96/11
118/25 119/22 120/13
120/15 121/10 121/17
129/10 132/1 138/18
145/3 145/9 145/10
160/12 183/19 183/20
190/13
**dollar [6]** 89/4
157/14 157/18 167/5
167/7 167/15
**dollars [2]** 48/16
63/22
**Domino [1]** 107/10
**don't [134]** 5/24 6/5
6/8 8/6 9/5 9/8 10/14
11/2 11/22 12/7 17/6
27/24 32/13 37/11
37/12 37/13 37/13
45/8 47/20 48/10
48/12 49/4 49/8 49/18
51/2 54/7 54/14 54/19
55/24 56/8 56/25 57/3
57/16 57/17 59/5
63/18 65/12 65/15
65/19 65/23 65/24
66/3 67/12 70/4 70/11
70/24 72/22 73/5 76/6
78/14 79/6 79/14
80/10 81/6 87/13 90/3
90/12 91/4 92/9 93/25
95/4 95/15 96/19
96/20 97/19 97/20
98/1 98/1 99/13
100/20 101/8 105/4
105/5 105/13 107/3
109/21 110/12 110/15
118/21 118/24 119/11
119/14 119/16 121/4
121/16 122/20 124/16
126/1 130/9 137/19
138/5 139/23 140/18
140/19 142/4 142/11

**D**

**don't... [38]** 142/20
145/13 145/15 146/19
148/10 153/16 157/2
161/2 161/2 161/2
162/25 164/17 168/22
168/22 169/1 169/1
169/2 172/22 173/14
173/23 173/23 174/12
175/16 178/13 178/15
180/23 182/12 183/5
183/20 185/3 189/16
189/16 189/23 190/21
190/22 191/7 191/8
191/20
**done [57]** 5/7 5/13
7/1 7/4 9/17 9/18
11/11 11/12 11/14
14/16 14/17 16/10
16/13 19/9 25/13
25/16 25/22 25/25
26/1 29/23 32/4 37/4
38/15 39/3 39/3 39/4
39/23 47/19 73/20
76/10 77/21 82/1 82/1
96/24 107/2 110/10
111/15 117/7 129/1
129/19 131/17 137/21
138/10 138/11 141/4
145/12 145/12 146/4
147/14 150/24 161/6
177/18 178/5 181/18
189/11 192/9 193/17
**Dooley [2]** 84/24
85/6
**door [5]** 31/22 32/12
32/15 33/18 191/7
**double [1]** 121/11
**doublecheck [2]**
164/13 173/1
**doubt [3]** 17/9 18/10
86/2
**down [49]** 33/19
37/24 40/14 62/2
67/25 68/2 68/4 68/6
68/16 70/3 70/23
71/15 71/22 73/23
78/15 80/18 84/23
86/12 87/20 88/4 88/6
88/15 94/19 94/20
96/8 103/6 104/4
104/10 104/21 106/8
107/12 116/16 121/5
135/24 144/7 160/12
162/7 162/15 162/15
163/16 170/14 173/20
173/22 174/8 179/7
180/11 181/7 181/9
191/6
**downstairs [1]**
102/20

**Downtown [1]** 79/18
**dozen [7]** 65/9 65/10
65/14 65/16 66/15
66/15 96/24
**dragged [1]** 139/1
**drawn [1]** 116/12
**drive [5]** 175/21
177/15 177/24 178/3
178/25
**driven [1]** 43/23
**driver [2]** 50/22 51/3
**driving [1]** 88/19
**DROP [3]** 62/25 63/2
64/4
**Dropbox [1]** 173/9
**Dry [3]** 96/14 117/4
117/11
**due [5]** 17/6 73/20
82/1 137/9 154/12
**during [27]** 5/13
5/16 7/22 8/2 8/9
10/21 11/19 12/1 12/2
12/11 14/1 14/3 21/7
22/2 27/14 29/12
37/24 41/18 47/23
60/24 68/19 102/21
109/19 110/24 130/10
132/14 181/3
**duties [3]** 12/3
109/14 116/3
**duty [1]** 20/12
**dying [1]** 67/23

**E**

**each [10]** 36/21 37/9
53/4 119/19 124/8
127/22 133/20 141/22
145/25 164/8
**earlier [3]** 103/5
104/9 177/6
**early [2]** 89/12 124/1
**earth [1]** 60/7
**easily [1]** 52/13
**East [1]** 194/9
**Easter [1]** 90/4
**easy [2]** 36/20 37/4
**eat [1]** 37/15
**effect [1]** 6/23
**effected [1]** 165/19
**effective [1]** 192/16
**effectively [1]**
136/12
**effort [7]** 27/8 28/11
39/15 109/22 147/2
151/12 179/9
**efforts [2]** 27/3
148/25
**eight [2]** 25/11 110/3
**either [7]** 14/19
15/25 28/23 57/22
81/15 120/10 141/7
**El [1]** 34/14

**elapsed [1]** 76/18
**elected [8]** 29/15
47/18 53/4 59/12
67/12 111/14 112/9
117/1
**election [2]** 29/14
146/12
**elections [1]** 91/20
**element [1]** 150/1
**elements [7]** 136/11
137/12 138/13 142/12
146/16 150/17 153/15
**elevator [1]** 131/14
**Eleventh [16]** 131/9
131/10 134/24 151/10
154/21 156/1 156/3
156/4 156/16 156/18
161/15 162/23 162/25
168/12 168/17 169/5
**elicit [3]** 26/24 27/5
31/3
**eligibility [1]** 63/9
**eliminated [1]** 78/25
**Ellen [2]** 194/7 194/7
**Ellie [5]** 9/3 9/10
19/24 121/4 170/14
**else [24]** 7/11 16/10
27/17 27/19 33/13
46/19 75/15 79/12
123/3 126/4 129/5
131/15 140/11 151/9
152/20 157/22 161/12
163/3 172/21 176/19
177/4 179/6 183/7
193/8
**email [17]** 4/16
66/20 66/20 66/24
75/2 75/4 75/18 76/2
82/7 82/12 84/11
84/24 86/2 86/8 120/3
177/6 179/16
**emails [6]** 65/23
65/24 66/2 66/3 67/13
154/3
**emergency [2]**
118/20 119/2
**Emilio [3]** 58/2 58/9
143/22
**emotional [5]**
164/25 165/7 165/10
165/11 191/18
**emphasize [1]** 25/15
**employed [1]** 56/19
**employee [1]** 95/6
**employee's [2]** 57/2
114/1
**employees [18]**
51/19 52/2 52/7 53/12
53/23 54/6 55/21
62/25 63/7 72/23 73/7
73/14 81/4 89/4
100/19 105/22 108/11

**109/13**
**employees' [1]**
56/24
**employer [1]** 158/24
**employment [1]**
158/23
**empowered [1]**
110/14
**enacted [2]** 74/19
78/13
**enacting [1]** 78/24
**end [12]** 6/2 107/24
108/3 119/23 121/23
121/23 132/8 137/14
138/2 146/19 147/20
192/10
**endorsed [1]** 16/8
**energy [1]** 131/23
**enforce [4]** 22/8
81/24 82/3 163/17
**enforcement [11]**
20/12 22/14 38/17
94/2 159/9 159/18
162/3 162/6 163/20
162/21 163/25
**engage [3]** 11/20
19/12 28/3
**engaged [10]** 11/19
29/16 39/17 39/20
63/17 142/13 147/9
149/14 153/14 153/15
**engagement [2]**
12/5 153/14
**engaging [1]** 28/13
**enhance [1]** 25/16
**enlarge [2]** 69/19
79/17
**enough [4]** 20/25
21/1 21/22 169/4
**enter [2]** 6/17
144/24
**entered [4]** 6/18
36/7 122/12 123/12
**entire [13]** 4/23 35/4
54/5 68/13 69/25 70/9
80/5 96/9 137/11
138/3 141/16 143/7
148/1
**entirely [2]** 68/1
120/16
**entirety [2]** 7/15
70/18
**entities [1]** 162/17
**entitled [7]** 156/7
161/10 166/10 166/10
167/17 167/18 194/4
**entry [3]** 122/12
128/18 145/22
**environment [1]**
15/1
**equal [1]** 14/6
**equals [1]** 181/22

**equivalent [2]** 34/25
138/7
**error [9]** 11/10 18/10
30/14 128/20 129/25
130/19 153/18 162/21
162/24
**errors [1]** 128/17
**escalating [1]** 144/2
**escape [1]** 178/5
**especially [3]** 89/19
96/15 96/17
**Esq [9]** 1/11 1/11
1/12 1/12 1/16 1/18
1/21 2/2 2/3
**essence [1]** 128/25
**establish [5]** 26/12
141/21 141/24 142/5
181/25
**established [3]** 12/1
34/15 142/4
**establishes [1]**
146/1
**establishing [1]**
142/13
**establishment [7]**
78/19 78/20 80/5
87/22 88/9 102/18
102/23
**establishments [3]**
74/12 81/7 96/21
**estate [5]** 65/4 65/6
65/7 180/12 180/16
**et [1]** 4/7
**ethics [13]** 135/7
136/5 136/22 136/23
136/25 146/13 146/18
147/13 150/22 150/24
153/9 162/9 162/11
**euphemism [1]** 35/3
**even [41]** 6/7 8/1
15/18 16/15 17/22
24/9 25/5 29/13 30/24
34/4 86/1 86/15 130/3
138/7 142/4 142/13
142/20 144/16 145/7
152/24 154/4 155/4
155/22 156/6 156/24
157/18 159/4 163/12
163/15 163/21 163/25
163/25 166/24 173/10
182/24 183/7 189/22
189/23 190/14 191/14
192/9
**evening [5]** 4/17
21/6 21/8 91/4 193/23
**event [10]** 42/21
42/24 43/11 43/15
43/20 43/23 44/6
106/21 107/14 108/8
**events [4]** 43/7 43/8
48/6 134/1
**eventually [1]**

**E**

**eventually... [1]** 104/10
**ever [13]** 21/2 45/24 46/14 46/20 47/23 84/6 92/11 93/2 100/20 110/19 135/12 135/22 147/24
**every [15]** 14/17 19/10 21/24 22/19 26/5 27/18 35/9 35/13 36/21 43/11 53/9 112/6 130/10 140/22 144/6
**everybody [15]** 10/23 16/25 17/8 17/11 17/19 18/1 62/2 112/10 120/10 170/8 180/8 180/8 188/8 188/9 188/12
**everyone [30]** 4/5 14/7 36/8 36/9 36/23 36/25 37/3 117/24 117/25 118/24 119/7 123/14 125/16 127/5 127/20 127/22 127/23 127/25 127/25 129/5 132/9 132/19 132/22 133/17 166/5 170/15 172/15 176/23 177/4 192/8
**Everyone's [1]** 108/20
**everything [27]** 7/8 7/11 16/10 19/8 24/9 25/20 26/5 26/13 29/2 29/24 30/8 33/22 34/4 35/3 61/8 92/22 124/3 131/15 134/24 142/23 152/22 153/6 163/3 174/25 183/14 188/14 193/9
**evidence [88]** 6/17 6/18 10/22 13/15 16/24 19/13 26/12 26/24 27/5 29/13 31/8 33/5 39/2 43/3 55/1 55/3 58/5 59/10 63/25 67/9 69/15 69/16 69/18 71/8 71/18 73/2 74/21 74/25 75/1 76/15 77/1 77/5 78/2 80/1 84/1 85/18 86/25 87/2 87/3 88/4 91/23 94/9 94/10 94/13 97/11 97/21 98/8 100/23 103/11 103/19 104/6 105/1 123/23 124/25 125/13 125/18 128/24 130/11 135/17 135/17 136/8 139/9

141/5 141/8 141/22 142/3 147/2 150/23 151/17 154/11 160/22 165/4 168/24 178/11 179/2 180/10 182/19 182/19 182/23 183/1 183/7 184/21 184/23 185/17 185/20 186/8 192/24 193/4
**exact [6]** 48/10 48/12 70/11 134/17 165/8 192/15
**exactly [8]** 6/25 55/10 55/12 99/19 177/3 186/9 188/14 190/4
**exam [1]** 53/8
**examination [37]** 4/20 5/12 5/13 5/14 6/3 6/11 7/16 7/20 7/21 7/23 8/4 9/1 10/16 11/23 17/2 22/12 25/14 25/14 25/25 27/20 31/12 31/19 33/23 37/6 37/17 37/24 38/2 42/11 44/21 45/2 58/12 62/24 84/18 98/16 99/7 109/3 113/21
**examinations [2]** 18/14 35/10
**examine [2]** 16/5 31/25
**examined [1]** 8/3
**examining [2]** 22/21 32/8
**example [7]** 15/13 54/20 110/1 159/11 185/12 189/14 192/2
**examples [1]** 18/3
**except [4]** 79/25 99/24 170/4 189/6
**exception [1]** 158/22
**exchange [1]** 52/14
**exchanged [3]** 65/25 66/2 66/3
**exclude [2]** 32/9 192/5
**excluded [2]** 127/21 189/20
**Excuse [1]** 32/4
**excused [2]** 4/17 117/16
**executed [2]** 122/21 122/23
**exempted [4]** 78/20 79/12 79/18 79/22
**exemption [2]** 78/11 78/19
**exercise [3]** 26/25 146/1 153/18

**exercised [3]** 146/20 153/3 160/24
**exercising [2]** 153/2 153/4
**exhibit [27]** 15/23 54/22 55/8 55/17 69/14 73/1 74/24 75/9 76/24 77/25 82/6 82/24 84/8 84/2 86/25 88/5 95/18 98/7 98/10 98/18 99/21 100/22 101/3 101/21 112/14 115/5 115/9
**exhibits [8]** 3/9 6/17 23/8 123/22 175/21 175/25 177/14 178/2
**existing [1]** 39/1
**exited [3]** 117/22 124/19 179/22
**expanded [2]** 106/21 107/16
**expands [1]** 135/13
**expect [1]** 6/15
**expecting [1]** 121/12
**expenses [2]** 131/23 131/24
**experience [2]** 31/22 63/19
**experiences [1]** 112/8
**expert [6]** 24/7 24/8 189/15 190/12 190/21 190/22
**experts [6]** 189/25 190/3 190/6 190/12 190/15 190/17
**explain [6]** 32/14 61/11 79/12 166/24 167/8 167/12
**explained [3]** 64/10 143/12 150/6
**explaining [2]** 102/14 161/20
**explains [2]** 159/21 161/21
**explicit [2]** 155/25 166/12
**explicitly [1]** 152/5
**explore [6]** 5/15 6/10 8/10 11/5 30/23 32/5
**explored [6]** 19/8 24/9 30/8 33/22 35/12 119/14
**exploring [1]** 19/10
**expression [1]** 137/9
**expressive [1]** 141/25
**extensively [4]** 7/23 8/16 19/14 144/5
**extent [3]** 11/2 16/6 26/4

**extra [2]** 133/13 193/13
**extraordinary [5]** 14/16 16/13 19/10 25/22 29/24
**extremely [1]** 6/4
**eyes [1]** 173/3

**F**

**F.2d [1]** 156/19
**F.3d [1]** 163/10
**fabricated [2]** 128/25 133/24
**face [1]** 124/2
**facilities [1]** 39/1
**facility [1]** 41/19
**fact [20]** 18/19 21/25 24/4 46/6 97/1 108/6 127/19 136/12 140/3 140/24 140/25 141/16 142/16 144/13 146/21 148/3 153/8 153/17 158/12 172/12
**factor [8]** 154/24 155/6 163/14 168/19 168/19 168/25 169/2 169/8
**factors [1]** 105/3
**facts [27]** 58/4 59/9 63/25 67/8 71/8 71/18 74/20 77/4 80/1 84/1 85/17 91/22 97/11 103/10 103/18 104/6 104/25 129/14 130/2 130/6 130/15 130/18 130/22 131/4 131/18 168/9 184/1
**factually [2]** 130/1 132/4
**fail [1]** 159/24
**failed [2]** 142/5 142/21
**fails [1]** 142/10
**failure [1]** 142/6
**fair [7]** 14/6 17/3 18/1 145/14 179/10 189/17 192/8
**fairly [1]** 192/4
**faith [1]** 89/15
**falling [2]** 181/7 181/8
**falls [1]** 53/16
**false [5]** 130/6 130/18 130/21 131/5 182/10
**faltered [1]** 147/10
**familiar [2]** 43/7 48/1
**family [4]** 10/12 15/7 131/15 181/16
**fantasy [3]** 182/7 182/8 182/11

**far [3]** 121/6 138/1 178/16
**farther [1]** 129/16
**fashion [2]** 26/2 26/4
**fatal [1]** 168/5
**Fausto [2]** 15/6 15/20
**February [5]** 27/12 67/16 146/21 146/22 152/11
**February 14th [4]** 27/12 146/21 146/22 152/11
**federal [4]** 33/4 146/25 162/5 177/23
**feel [2]** 116/11 116/25
**FELDMAN [1]** 1/15
**felony [4]** 171/25 172/5 172/7 172/13
**felt [2]** 17/24 76/19
**Fernandez [1]** 83/2
**few [1]** 185/13
**fiction [6]** 182/7 182/8 182/9 183/22 184/2 184/2
**field [2]** 89/19 96/14
**fifth [2]** 131/10 140/13
**file [13]** 121/20 122/1 122/1 122/8 122/10 130/2 130/3 130/14 130/18 130/21 130/24 149/10 159/1
**filed [33]** 121/22 122/5 122/15 128/17 128/18 128/22 129/2 129/3 129/4 129/7 129/14 135/20 136/5 136/23 137/6 138/21 138/24 146/13 146/25 147/13 149/18 149/25 150/22 150/25 151/1 151/4 153/9 153/22 153/24 154/9 158/24 160/5 168/7
**files [1]** 191/25
**filing [17]** 122/13 122/23 135/6 135/9 135/21 137/1 137/12 143/7 143/14 143/19 150/8 152/1 152/2 152/5 159/8 161/25 162/5
**final [1]** 179/17
**finally [2]** 107/24 145/21
**finance [1]** 149/8
**financial [1]** 63/12
**financing [2]** 148/18 148/22

**F**

**find [10]** 11/9 109/8 119/13 119/23 155/1 155/4 166/18 168/25 169/1 172/23

**fine [32]** 5/6 24/15 24/23 37/25 37/25 95/24 108/20 108/20 118/16 122/10 122/15 123/24 150/7 169/8 171/17 172/18 172/20 178/21 182/14 184/8 184/8 184/11 186/1 187/9 188/16 189/1 189/3 189/4 190/8 191/22 192/21 193/9

**finish [10]** 28/16 59/18 85/23 110/5 110/12 121/6 145/20 157/8 157/8 172/9

**finished [2]** 139/13 144/10

**finishes [1]** 6/22

**fire [6]** 54/7 54/12 54/14 57/17 181/7 181/9

**fired [1]** 55/22

**first [61]** 5/24 7/18 11/17 19/2 23/7 28/6 28/22 47/3 49/8 64/17 64/24 72/16 74/24 83/11 85/10 85/23 85/24 89/19 92/3 92/4 97/24 98/2 120/12 127/13 127/14 128/22 133/21 134/5 135/5 141/6 142/13 146/17 146/20 147/6 148/7 148/17 150/1 155/7 155/17 158/3 158/3 158/11 158/18 158/20 160/6 160/16 160/24 162/23 163/11 164/1 168/1 174/24 175/14 175/23 176/20 181/4 181/11 182/16 189/3 189/4 189/9

**firsthand [2]** 96/10 96/20

**fit [1]** 125/3

**five [4]** 113/19 154/10 173/22 179/16

**Five-zero [1]** 113/19

**flag [2]** 157/2 157/6

**Flagler [1]** 1/16

**flags [1]** 157/1

**FLORIDA [9]** 1/1 1/5 1/13 1/17 1/19 1/22 2/4 10/13 194/9

**flow [1]** 53/14

**flyer [1]** 15/18

**focus [2]** 7/16 27/23

**follow [6]** 39/15 55/22 72/2 72/22 102/25 108/10

**follow-up [1]** 102/25

**following [9]** 7/16 36/21 108/4 124/25 128/20 157/2 161/3 179/23 179/25

**Food [1]** 102/20

**footnote [1]** 128/16

**footprint [5]** 42/24 43/1 106/21 107/4 107/6

**force [5]** 97/15 99/13 100/8 102/25 143/25

**forced [1]** 154/3

**foregoing [1]** 194/3

**foremost [2]** 162/23 175/23

**forget [2]** 62/10 62/18

**form [11]** 58/20 134/23 154/17 154/19 155/12 161/5 166/12 167/12 170/18 170/23 171/13

**former [4]** 58/2 58/9 92/12 93/3

**forms [1]** 191/25

**formulate [2]** 117/20 124/6

**FORT [3]** 1/2 1/5 194/9

**forth [6]** 109/20 137/12 138/14 145/16 148/6 151/1

**forward [4]** 25/18 36/5 169/20 169/24

**forwarded [1]** 82/7

**found [5]** 18/23 85/14 145/21 154/2 189/19

**foundation [35]** 50/15 51/11 52/8 54/2 54/17 56/20 57/6 57/24 59/24 60/17 61/15 63/14 63/24 64/5 67/9 68/24 72/14 74/20 76/15 77/4 78/6 80/21 80/22 83/25 85/17 86/19 89/8 97/10 97/16 103/10 105/17 105/24 106/10 107/19 161/10

**founder [1]** 15/7

**four [13]** 5/14 5/16 5/21 6/12 8/9 9/20 14/18 23/9 27/14 104/3 160/8 173/3 173/22

**fours [1]** 131/12

**Fourth [6]** 158/1 158/2 158/3 158/5 158/8 158/21

**framework [2]** 22/24 82/20

**Francis [1]** 113/8

**frankly [1]** 110/12

**free [8]** 8/10 146/1 149/6 149/13 151/8 153/3 160/24 177/4

**freeze [1]** 151/14

**Friday [6]** 48/1 87/19 88/2 88/25 102/23 102/25

**Fridays [1]** 48/6

**friends [1]** 93/8

**front [7]** 54/6 95/5 119/4 123/8 139/8 139/23 178/10

**frustrating [2]** 110/7 110/13

**fulfill [1]** 116/3

**full [5]** 9/9 32/6 143/25 145/8 162/16

**FULLER [46]** 1/4 4/7 18/5 23/5 23/7 45/6 46/4 47/24 64/25 65/1 65/10 65/17 68/13 69/4 69/5 70/1 70/13 70/20 71/11 72/24 91/10 91/13 91/19 92/13 93/4 93/7 93/21 113/3 115/18 115/20 135/22 136/18 144/4 148/18 148/21 148/24 149/1 152/11 153/1 159/15 166/19 170/19 170/25

**Fuller's [11]** 24/18 25/1 35/5 45/10 67/6 72/13 73/16 73/21 81/9 143/11 187/4

**fully [1]** 68/17

**function [2]** 8/12 44/12

**functioned [1]** 89/20

**functioning [1]** 68/17

**functions [2]** 69/11 163/20

**fund [2]** 49/25 50/10

**funding [1]** 48/17

**fundraisers [2]** 47/15 47/21

**funds [1]** 47/12

**furnish [1]** 37/11

**further [4]** 44/18 54/14 94/19 108/15

**G**

**gait [1]** 87/14

**Game [1]** 36/25

**Gardner [2]** 4/15 127/11

**gathering [1]** 8/12

**gave [15]** 20/16 25/11 59/7 59/21 59/21 61/12 73/18 108/10 116/22 119/7 128/8 130/8 145/8 174/2 187/22

**gears [1]** 154/17

**general [6]** 12/23 12/24 22/24 32/24 127/20 127/23

**generality [1]** 18/4

**generalized [1]** 22/11

**generally [2]** 17/14 153/11

**gentleman [2]** 87/5 145/5

**gentleman is [1]** 145/5

**gentleman walking [1]** 87/5

**gentlemen [3]** 36/9 117/18 123/25

**geographic [1]** 42/24

**get [30]** 13/9 19/23 19/24 20/3 20/11 23/19 50/22 51/5 59/12 63/7 76/10 77/21 81/6 96/19 109/21 109/21 110/5 110/12 115/6 115/8 123/25 131/3 139/8 148/3 153/16 167/12 167/18 175/9 181/15 192/11

**gets [3]** 32/17 110/10 162/6

**getting [5]** 17/15 63/2 154/10 174/25 180/7

**give [44]** 6/9 8/25 11/3 27/19 37/14 51/19 51/21 52/1 52/7 52/19 53/2 54/12 54/20 60/11 81/2 97/21 99/12 100/4 100/7 100/19 110/1 110/15 120/13 127/20 127/23 130/17 134/23 138/18 144/19 145/18 156/7 157/20 157/20 159/11 162/2 167/18 172/9 174/24 175/22 177/1 183/19 186/18 187/13 188/10

**given [10]** 27/7 31/24 44/11 53/6

**76/18 100/21 118/8 167/6 167/11 167/22**

**gives [1]** 89/22

**giving [9]** 11/15 53/23 83/21 124/11 145/14 169/12 179/4 182/21 192/8

**glad [3]** 25/6 118/13 122/17

**Glover [1]** 157/11

**go [56]** 7/6 15/9 20/11 25/11 26/17 29/2 31/21 32/18 34/4 36/10 37/7 49/24 54/14 64/23 65/21 66/4 66/19 71/22 73/10 74/24 77/25 78/15 84/23 85/8 87/24 92/1 96/13 96/16 100/22 112/4 118/18 119/13 123/25 124/1 124/2 124/12 124/21 130/10 133/12 133/16 135/3 153/21 154/4 160/11 163/2 163/21 165/6 167/14 169/4 174/24 175/5 179/7 180/11 186/4 188/17 191/7

**Godfather [2]** 102/2 102/6

**goes [11]** 40/11 54/1 127/18 145/4 161/9 163/14 174/16 181/16 184/16 185/21 188/5

**going [95]** 5/3 6/2 6/5 6/10 7/16 8/8 9/5 12/19 12/25 13/11 16/5 16/7 16/14 23/14 23/19 23/25 25/10 28/7 28/23 28/24 30/1 31/1 31/22 32/12 35/5 35/11 37/5 37/6 54/10 54/11 55/12 59/16 87/17 95/6 101/14 103/25 107/14 115/6 118/5 118/19 119/5 119/23 119/24 120/18 121/5 121/8 122/2 123/25 125/22 131/20 131/25 132/2 135/3 135/4 144/19 144/23 144/23 144/25 145/15 148/11 150/13 152/17 152/17 159/8 162/21 163/2 165/24 167/18 169/23 170/7 170/9 170/17 173/21 173/21 174/1 174/19 174/23 175/7 176/14 176/16 179/6 182/25 183/3 183/18 184/3 185/20

**G**

**going... [9]** 186/16
188/4 188/7 188/10
188/11 190/11 191/4
191/12 193/11
**Goldberg [2]** 86/13
86/15
**Goldberg's [1]** 86/17
**golden [1]** 120/6
**goldfish [10]** 60/4
60/6 60/6 60/13 60/22
61/2 61/2 64/3 108/11
109/17
**Gomez [3]** 4/11
127/9 137/19
**gone [8]** 10/2 22/7
30/19 47/21 110/2
110/3 143/24 193/14
**Gonzalez [6]** 15/7
58/2 58/9 143/22
143/24 144/23
**good [31]** 4/5 4/10
4/13 4/14 9/17 36/8
36/11 36/12 36/15
37/21 38/5 45/4 45/5
46/3 56/23 57/1 57/4
71/11 87/19 88/2
88/25 117/16 124/17
125/16 127/10 171/4
174/19 176/22 176/23
188/17 193/23
**Google [1]** 186/4
**got [14]** 51/6 85/9
109/24 110/25 120/24
121/13 130/20 157/1
172/9 187/3 187/18
188/20 189/14 191/25
**government [4]**
76/20 159/22 159/25
178/24
**grant [4]** 131/19
132/3 145/8 168/13
**granted [11]** 55/1
77/12 82/18 92/17
125/15 129/23 131/22
135/16 144/16 157/13
171/18
**great [3]** 25/4 36/16
133/15
**Greater [1]** 13/3
**grounds [14]** 48/19
51/10 52/21 60/16
68/23 71/17 76/14
85/16 92/19 100/10
103/9 104/24 132/6
183/4
**group [5]** 1/10 11/21
72/7 72/19 150/25
**groups [4]** 11/19
11/21 11/25 12/6
**Grove [1]** 79/19

**growing [2]** 10/10
144/3
**Gulf [1]** 160/17
**Gutchess [10]** 1/11
4/12 84/2 106/6
107/18 120/24 127/8
144/10 165/9 191/16
**guy [3]** 88/22 89/22
89/23
**guys [2]** 120/18
192/13

**H**

**had [102]** 5/19 6/23
8/6 10/20 14/10 14/12
14/12 20/7 21/17
24/25 26/19 28/2
35/23 38/6 38/24 39/1
39/3 40/7 46/3 46/10
46/12 47/20 60/14
64/24 65/9 65/12
65/16 65/19 65/22
69/23 69/24 71/4 71/5
71/11 74/12 76/18
76/19 78/11 78/12
78/20 84/6 86/13
88/19 91/3 91/9 94/3
96/24 102/5 103/13
104/10 105/7 105/10
105/11 105/12 105/23
107/2 107/14 107/16
110/23 110/25 116/9
117/11 117/23 118/22
122/22 125/8 128/6
128/19 128/25 129/20
129/23 131/14 139/24
141/24 142/6 142/17
144/21 145/6 149/1
149/7 149/8 149/10
153/16 154/8 154/13
160/22 161/6 164/16
165/19 166/3 166/8
173/11 173/12 173/17
177/1 177/5 177/14
177/17 177/17 181/17
185/14 187/19
**half [11]** 37/10 65/9
66/15 96/24 118/18
124/12 124/15 143/18
160/18 175/5 175/7
**halfway [1]** 102/24
**halt [1]** 151/15
**hammer [1]** 144/6
**hand [6]** 23/24 32/11
44/22 106/25 124/13
175/25
**handily [1]** 27/3
**handle [1]** 112/7
**hands [1]** 89/21
**hands-on [1]** 89/21
**hanging [3]** 23/10
23/13 96/19

**Hanzman [1]** 181/17
**happen [4]** 66/21
99/19 148/11 179/5
**happened [8]** 18/15
18/16 18/20 30/4
36/11 36/12 139/7
152/14
**happens [1]** 177/23
**happiest [3]** 60/7
60/14 60/22
**happy [4]** 60/10
80/16 85/13 97/22
**harassment [5]**
58/20 144/2 145/24
151/23 151/24
**hard [2]** 102/19
178/25
**harder [2]** 144/7
144/7
**harm [6]** 164/15
165/1 165/10 165/12
191/18 192/22
**has [93]** 4/17 9/17
12/17 13/14 14/13
14/16 15/16 15/25
16/1 16/10 19/9 20/11
20/12 20/16 22/10
22/11 23/13 23/13
23/15 23/24 24/2
25/13 25/18 27/17
29/19 33/22 35/3 35/8
36/23 41/18 48/5 48/6
53/2 53/19 53/21
53/24 54/6 54/10
60/23 61/7 61/8 63/22
72/7 79/9 81/18 85/5
85/14 86/2 102/18
102/19 110/2 110/6
110/18 111/15 112/6
112/10 117/1 119/15
132/22 133/17 136/3
141/3 141/6 141/16
141/17 142/3 142/3
146/21 146/24 147/14
147/16 147/22 149/20
151/25 152/1 158/22
159/6 159/25 160/1
160/22 161/22 162/12
163/25 168/24 172/13
180/10 181/24 182/7
183/6 184/21 184/23
185/4 189/7
**hated [2]** 24/4 149/7
**hatred [2]** 91/19
148/25
**Havana [10]** 13/5
13/20 48/7 48/17 49/2
49/16 49/25 50/7
50/10 79/25
**have [251]**
**haven't [5]** 122/22
164/6 164/12 164/16

191/24
**having [7]** 26/7
68/20 87/23 92/6
101/16 116/1 159/9
**he [195]**
**he's [20]** 4/21 6/5
12/19 12/25 16/6 19/4
31/16 31/20 33/18
56/19 67/14 70/16
70/16 72/17 72/19
100/20 102/1 137/21
144/18 187/5
**head [2]** 56/10 72/11
**heads [3]** 52/19
53/20 182/21
**health [7]** 4/17
67/19 163/9 163/17
165/3 165/17 165/21
**hear [11]** 6/1 15/15
23/17 36/1 119/25
125/6 126/1 132/14
138/16 173/22 174/13
**heard [12]** 16/9
21/22 31/20 32/1
35/15 62/6 105/15
105/19 127/24 139/9
145/14 163/2
**hearing [5]** 98/23
98/25 144/22 145/9
169/14
**hearsay [6]** 15/24
16/8 18/22 83/14
105/17 127/16
**heart [1]** 181/16
**Heat [4]** 36/10 36/14
36/16 36/24
**held [1]** 179/23
**Hello [1]** 109/5
**help [1]** 47/19
**helped [3]** 24/17
25/7 47/12
**helpful [2]** 9/12
109/8
**helping [1]** 109/12
**her [2]** 35/23 173/25
**here [69]** 6/19 9/21
12/8 22/22 24/1 25/1
25/14 25/19 28/20
29/4 33/12 34/6 34/24
37/2 54/11 58/23
61/25 79/16 82/1
83/20 92/16 101/10
118/19 120/6 128/13
131/11 132/20 133/14
133/14 137/12 145/6
151/15 154/15 159/7
160/2 160/8 160/21
160/25 161/17 161/24
162/20 167/18 167/25
169/23 170/2 170/13
170/16 171/10 172/4
173/2 173/2 173/7

173/18 173/20 174/18
174/19 178/14 178/15
178/16 179/24 180/11
182/13 182/20 184/21
185/1 185/6 186/1
189/10 189/14
**here's [4]** 122/19
168/16 184/21 184/22
**hereby [1]** 194/3
**hey [6]** 137/15
144/23 146/14 147/17
148/2 192/2
**hiding [2]** 97/4 97/6
**high [1]** 50/21
**highlighted [3]**
75/15 156/22 157/3
**highlighting [2]**
75/11 75/13
**highly [4]** 138/13
138/15 140/7 162/16
**him [48]** 6/5 6/9 6/9
8/3 9/24 10/9 10/14
10/19 10/21 10/21
13/8 13/9 14/3 14/11
14/13 14/25 18/6
24/14 27/6 34/16
37/19 47/12 47/14
58/19 58/25 71/5
74/23 82/21 85/24
88/18 91/6 91/8 91/12
91/15 92/3 99/12
101/9 136/21 137/21
137/21 145/14 161/25
168/22 176/10 182/19
183/1 183/2 183/5
**himself [2]** 47/3
66/16
**hinges [2]** 32/13
32/15
**hire [2]** 54/12 54/14
**hired [1]** 50/20
**his [85]** 5/13 7/18
7/20 8/20 8/21 8/23
8/23 8/24 8/25 9/14
9/14 9/17 9/25 10/4
10/9 10/12 10/16
10/17 11/17 11/21
11/23 12/2 12/5 12/12
13/1 13/6 13/16 13/18
13/25 14/3 18/13
18/16 19/2 19/2 20/20
22/7 23/10 23/13
23/21 23/25 27/8
28/11 30/15 30/20
31/14 31/19 32/1
32/19 34/8 34/14 35/4
44/22 55/22 56/4
63/23 64/10 66/1 66/2
66/6 67/6 71/15 73/21
89/22 98/2 99/18
108/21 115/18 115/19
123/21 131/14 131/14

**H**

**his... [14]** 136/21
144/13 145/1 145/2
152/13 152/3 153/3
154/3 154/5 161/1
165/17 168/5 176/11
187/4
**historically [5]**
111/15 186/16 186/20
186/24 187/1
**history [11]** 8/21
8/24 8/24 8/25 9/19
93/6 186/8 186/15
187/7 187/8 193/2
**hits [1]** 67/17
**hmm [1]** 62/3
**Hold [3]** 187/13
187/17 189/2
**holding [7]** 56/2
56/5 135/6 142/7
143/22 159/7 161/25
**hole [1]** 191/6
**holiday [2]** 88/25
89/2
**holidays [1]** 89/1
**Holy [1]** 90/4
**home [4]** 118/16
119/5 124/1 179/15
**homeless [2]** 56/3
56/4
**homelessness [2]**
56/15 112/18
**Honestly [1]** 109/23
**Honor [197]**
**Honor's [1]** 155/20
**HONORABLE [2]** 1/8
194/8
**hope [1]** 192/13
**hosted [1]** 150/2
**Hotel [3]** 34/13
139/4 162/4
**HOTTE [1]** 1/15
**hour [12]** 37/9 117/4
117/11 118/18 119/7
120/24 124/8 153/21
157/21 161/13 175/5
175/7
**hours [8]** 5/12 5/24
37/10 96/15 96/17
124/12 124/15 129/1
**housekeeping [3]**
7/1 7/8 176/8
**how [46]** 4/24 9/14
9/15 10/13 12/1 12/8
12/16 13/25 14/4
17/24 18/6 19/2 20/20
21/3 32/14 32/16
34/14 47/17 59/7
59/21 61/9 65/12
65/15 65/19 65/24
66/3 66/12 70/9 89/20

89/21 97/5 110/7
112/4 112/7 112/11
130/3 144/24 144/25
147/1 152/11 163/19
165/18 173/14 175/16
175/22 184/24
**How's [1]** 36/9
**however [6]** 7/17
50/6 127/19 132/15
151/6 188/24
**huge [1]** 63/12
**Human [1]** 56/14
**hundreds [1]** 48/16
**hurdle [1]** 148/7
**hurt [1]** 105/20
**HUSS [1]** 1/15
**Hygiene [1]** 163/9
**hyperbole [1]**
148/12
**hypothetical [3]**
57/18 57/19 58/21

**I**

**I will [30]** 6/9 7/7
7/9 8/7 11/3 11/11
22/15 22/18 32/4
35/19 57/19 119/2
119/4 120/12 121/17
124/6 127/19 132/8
132/18 134/23 140/10
145/19 151/5 151/16
152/21 172/7 183/19
189/9 191/20 193/7
**I'd [6]** 55/7 74/1
74/8 74/15 86/8
101/13
**I'll [28]** 5/4 5/5 5/6
9/8 22/24 30/25 46/19
80/16 89/10 101/18
118/16 118/17 120/17
121/20 127/23 133/16
140/9 145/18 153/20
157/20 157/20 163/3
170/13 174/13 175/10
176/23 179/19 185/23
**I'm [94]** 9/5 10/25
11/11 11/15 14/12
14/15 16/10 25/6 26/3
26/4 26/7 26/9 31/22
32/4 34/1 36/25 38/7
42/7 44/21 46/2 49/22
54/20 55/4 59/16
60/10 72/9 84/6 87/10
87/16 87/25 89/21
89/21 89/22 95/21
96/19 97/22 101/9
107/5 109/23 110/8
113/22 115/5 118/13
118/15 120/15 122/17
128/13 131/24 133/10
134/16 136/3 137/20
141/10 141/12 143/5

144/8 144/19 145/14
148/2 150/13 151/19
155/20 156/11 161/18
163/2 164/12 166/7
166/10 174/20 175/6
175/7 176/15 176/16
176/25 177/18 182/12
182/21 183/14 183/24
184/9 185/2 185/20
186/14 187/23 188/9
188/11 188/13 189/9
189/11 190/9 192/18
193/1 193/3 193/11
**I've [16]** 9/12 21/21
29/8 33/15 37/23
96/24 100/20 137/13
157/1 172/9 173/17
174/18 176/16 188/20
189/8 191/25
**idea [8]** 6/25 80/7
80/14 86/1 120/13
150/14 159/14 162/14
**identically [1]** 10/23
**identified [5]** 15/6
15/7 34/11 123/22
138/14
**identifies [1]** 10/4
**identify [6]** 13/24
17/2 18/3 149/22
149/23 182/18
**identifying [1]** 183/2
**if [167]** 5/18 5/23
6/1 6/6 7/1 7/24 11/5
11/9 12/16 14/10 17/5
19/15 19/20 20/8
20/12 20/16 20/18
22/17 24/14 24/21
24/21 25/17 29/21
29/22 31/21 31/23
32/1 32/6 32/12 32/18
33/17 34/21 35/18
37/19 40/14 42/8
42/23 48/14 48/21
48/25 49/14 52/10
52/23 54/6 54/13
54/18 54/19 55/5
57/16 57/17 58/6 59/5
60/9 61/10 67/10
69/17 71/22 71/23
72/1 72/15 73/10
78/20 80/14 81/18
84/23 86/20 87/7
87/12 94/1 94/4 94/23
97/18 97/21 101/11
105/18 106/1 109/12
111/8 111/22 116/25
118/1 118/12 119/8
119/20 119/23 120/24
121/3 121/9 121/12
121/16 123/17 124/12
124/12 125/25 127/24
129/11 131/21 132/2

134/8 138/9 140/9
140/15 147/21 148/9
148/14 149/8 153/19
155/1 155/4 155/5
155/6 155/22 156/2
156/6 156/12 156/17
157/18 158/15 158/15
159/19 160/9 160/13
160/21 161/2 161/18
162/12 162/21 163/5
163/11 163/12 163/15
163/19 163/21 163/25
163/25 163/25 164/16
166/18 166/24 167/4
168/25 170/7 172/23
173/10 175/7 175/8
176/25 178/3 178/9
178/10 178/12 178/19
179/6 182/8 184/4
185/20 185/21 186/1
186/3 187/18 188/1
190/6 190/16 191/3
191/19 191/19 191/23
**if you can [2]** 9/15
25/17
**II [1]** 1/4
**ill [3]** 121/8 165/3
165/21
**illegal [2]** 103/25
117/11
**imaginably [1]**
14/17
**immediately [1]**
31/17
**impact [1]** 21/13
**impacted [5]** 80/6
80/7 80/10 112/24
113/1
**impairment [1]**
165/8
**impeachment [5]**
66/8 92/20 171/24
172/4 172/6
**important [3]** 64/3
74/18 112/22
**importantly [2]**
141/21 141/24
**improper [23]** 28/7
31/6 34/23 66/8 92/20
99/7 131/17 158/12
163/18 167/19 180/2
180/9 180/13 180/15
182/8 184/17 185/8
185/10 186/17 186/21
186/24 191/14 191/21
**improperly [1]**
176/10
**Improvement [1]**
15/18
**in [415]**
**inadmissible [1]**
189/19

**inadvertent [7]**
128/17 128/20 129/16
129/18 129/25 131/2
170/24
**inadvertently [1]**
130/20
**inappropriate [1]**
16/2
**incentive [3]** 63/12
63/16 63/17
**inception [1]** 105/12
**incident [1]** 89/18
**include [1]** 154/9
**includes [2]** 158/5
158/6
**including [12]** 13/20
14/2 14/4 23/2 27/1
29/11 72/19 97/11
130/7 140/24 142/5
165/21
**Inclusion [1]** 77/19
**inconsistent [2]**
16/24 172/6
**incorrect [5]** 50/17
52/3 52/5 83/24 85/20
**incorrectly [1]**
104/17
**increased [1]** 152/1
**indeed [1]** 24/21
**independent [1]**
20/15
**independently [1]**
160/14
**INDEX [1]** 2/10
**indicate [1]** 189/24
**indicating [1]** 83/12
**indifference [1]**
166/19
**indirectly [4]** 14/20
17/16 28/24 38/19
**indiscriminate [1]**
17/25
**individual [10]**
34/12 53/4 102/15
128/1 129/13 131/13
133/5 134/5 150/16
150/21
**individually [6]** 18/7
136/13 140/4 141/22
150/15 150/24
**individuals [13]**
10/20 12/14 13/24
14/3 15/5 18/5 18/16
18/17 52/13 65/5
72/17 106/24 143/1
**inform [2]** 20/18
118/5
**information [11]**
8/12 8/14 27/19 34/15
34/16 52/14 53/2
60/11 116/18 160/10
168/7

**I**

informing [1] 109/9
inherently [1] 141/25
inherited [1] 110/3
initial [1] 76/18
Initially [2] 38/15 134/3
injunction [6] 144/12 144/15 144/16 145/8 146/25 151/6
injured [1] 105/15
injuries [1] 165/21
injury [1] 165/2
inquire [3] 15/14 22/1 95/24
inquiries [1] 59/12
inquiry [4] 20/5 33/20 99/24 100/13
inside [5] 95/22 102/19 104/21 105/7 105/11
inspect [2] 95/6 100/8
inspecting [1] 39/22
inspection [4] 90/11 94/18 103/1 117/12
inspections [3] 134/2 143/20 143/21
installed [1] 105/13
instance [2] 34/20 153/11
instead [1] 186/8
institutional [1] 63/19
instruct [2] 175/13 191/20
instructed [1] 7/12
instructing [1] 62/18
instruction [23] 25/12 75/11 128/3 128/10 130/17 134/23 140/13 155/16 155/20 155/24 160/9 164/12 164/21 165/2 166/13 166/14 168/12 168/17 168/25 169/12 170/7 171/24 188/5
instructions [25] 36/22 36/23 97/20 125/22 127/17 130/7 130/8 132/7 132/10 132/23 137/16 138/2 138/7 157/25 158/2 166/6 169/5 169/7 170/6 171/14 183/8 183/20 184/10 187/22 187/22
insulate [1] 163/18
integrity [1] 31/5
Intel [1] 102/22

intend [31] 5/20 7/24 8/19 9/24 10/9 10/14 10/19 11/18 11/24 13/16 14/24 15/4 15/8 15/10 15/12 15/14 16/12 16/19 17/13 18/12 22/5 23/8 23/16 26/10 26/22 26/24 27/5 31/3 61/18 119/16 182/18
intended [4] 6/17 26/11 61/6 173/3
intending [1] 125/7
intends [2] 6/8 13/23
intent [2] 155/1 155/4
intention [3] 17/1 18/3 32/24
intentionally [1] 129/19
interact [2] 52/14 53/4
interacting [1] 98/4
interaction [5] 52/11 56/3 96/10 111/9 111/13
interactions [1] 19/5
interest [2] 116/6 183/6
interesting [1] 109/15
interests [2] 13/16 13/18
interfere [1] 83/20
interject [1] 34/3
interjecting [1] 162/20
internally [1] 52/15
Internet [5] 176/4 177/15 178/14 178/20 178/20
interpretation [2] 58/15 111/23
interrupt [4] 10/7 137/19 137/20 145/13
interruption [2] 125/3 193/17
intertwine [1] 28/24
interview [1] 86/15
intimidating [2] 57/15 59/8
intimidation [1] 176/12
into [28] 6/17 6/18 10/2 13/14 22/7 30/19 33/20 38/16 55/3 69/21 72/24 81/13 86/8 86/25 89/11 96/21 104/2 107/15 109/22 110/6 111/13 114/1 123/22 136/7

154/4 182/23 183/1 192/24
introduce [6] 15/23 23/8 29/13 47/14 185/25 189/20
introduced [2] 38/6 86/25
introducing [1] 189/22
introduction [3] 13/1 47/23 146/8
introductions [1] 47/22
invasive [1] 102/21
invested [1] 131/22
investigation [9] 38/16 40/1 57/16 72/24 73/9 73/11 73/15 73/19 73/22 74/6
invited [1] 46/6
involve [1] 47/20
involved [11] 10/14 21/5 41/23 43/5 43/25 55/7 81/6 85/12 93/22 114/17 115/1
involvement [5] 13/1 27/3 28/10 30/16 116/13
involves [1] 55/9
involving [4] 22/8 38/11 38/21 171/20
irrelevant [11] 10/3 10/6 10/8 12/6 13/11 23/12 23/16 28/7 34/21 68/18 159/3
is [354]
Is it [1] 185/16
isn't [2] 49/24 78/2
issue [40] 17/6 18/19 19/10 20/22 21/12 22/11 23/24 24/8 29/6 31/10 32/11 56/3 56/4 58/23 85/13 88/4 91/10 105/4 110/2 110/13 112/18 112/19 112/20 112/22 115/17 115/19 121/24 121/25 125/20 142/21 144/13 150/9 167/17 169/18 171/18 174/22 175/8 176/17 179/25 191/15
issues [40] 6/3 8/10 14/5 14/5 14/19 21/9 21/17 21/23 22/21 28/23 32/5 37/8 39/18 45/25 56/15 68/14 71/25 72/3 85/7 109/10 122/8 123/1 124/2 136/6 139/1 143/1 149/6 149/13 150/11 152/17 152/18

157/8 157/9 157/16 162/10 164/3 164/9 178/15 180/22 187/5
it [450]
it's [159] 4/24 6/4 8/5 11/5 14/21 16/8 17/14 17/15 17/16 17/20 17/22 17/22 17/23 18/2 18/3 18/4 21/2 21/24 22/19 23/12 23/23 26/6 27/21 29/5 29/5 30/24 32/19 33/7 34/20 35/4 36/20 37/4 37/14 43/23 54/23 55/1 55/10 55/12 59/19 61/9 62/17 63/9 63/10 63/16 63/17 63/25 65/7 66/7 66/8 67/19 69/14 73/14 75/1 75/10 75/12 75/15 76/24 77/5 77/12 78/3 78/7 79/8 79/14 81/9 82/23 82/23 83/7 84/21 86/25 87/7 88/5 89/2 93/11 93/13 93/23 93/25 94/13 95/16 95/17 98/9 98/10 98/17 98/25 100/6 100/15 100/23 101/9 101/9 101/9 101/11 104/13 109/7 110/3 110/9 110/9 111/13 112/20 117/2 118/9 118/14 118/15 121/15 129/17 129/22 130/11 131/2 133/13 134/17 134/18 134/19 135/4 138/19 140/16 140/17 140/19 141/19 145/22 145/22 149/14 149/20 150/14 150/16 151/9 156/14 156/17 159/21 161/16 161/16 163/8 163/10 166/15 167/3 167/5 167/11 167/16 168/16 168/19 168/20 169/4 169/10 169/15 171/12 175/8 175/24 178/23 179/3 179/15 181/20 183/7 184/11 184/12 184/16 184/25 185/6 185/20 188/1 188/2 189/19 191/21
item [3] 79/8 110/5 110/13
items [2] 109/20 173/12
iterations [1] 110/4
its [5] 26/18 103/16 105/12 106/21 129/8

itself [4] 83/17 83/18 138/19 143/3

**J**

January [3] 61/19 112/15 148/20
Jeff [2] 4/11 127/8
Jeffrey [1] 1/11
Jennifer [1] 15/9
Jenny [1] 150/3
Joanna [1] 1/12
job [12] 14/16 16/13 19/10 25/22 29/24 63/23 89/13 96/23 112/21 117/2 181/18 192/11
jobs [2] 63/13 63/17
JOE [20] 1/6 4/16 5/9 32/17 85/4 85/5 85/10 85/22 85/24 86/1 86/2 86/2 111/3 113/12 113/23 116/1 127/12 133/20 133/23 140/13
John [1] 73/4
joining [1] 35/24
Jose [1] 14/12
judge [38] 1/9 8/19 9/5 9/12 10/7 11/15 12/21 15/15 15/8 25/24 26/9 29/7 33/11 33/14 33/25 74/13 78/5 108/18 108/23 118/1 121/1 121/2 121/7 126/3 144/21 144/24 145/5 145/7 151/7 173/23 174/22 175/18 177/20 177/23 178/4 178/18 181/17 193/22
judges [1] 125/23
judgment [5] 129/12 132/1 141/13 141/19 171/18
June [1] 151/4
juror [2] 36/1 131/14
juror's [1] 174/12
jurors [21] 7/7 7/11 25/19 33/12 35/17 35/21 35/22 35/22 123/13 169/16 173/15 173/16 173/20 173/21 177/14 179/6 179/9
jurors' [1] 131/24
jury [69] 6/18 8/21 17/10 17/21 30/2 36/7 36/9 36/15 47/1 54/25 62/7 66/5 71/23 73/2 75/7 77/8 79/12 92/2 92/15 93/5 101/14 117/22 118/2 118/5 119/4 119/25 120/13

**J**

**jury... [42]** 123/8
123/12 123/17 124/19
125/22 125/23 132/7
132/19 132/23 134/23
137/16 138/2 138/6
139/8 140/20 141/9
155/3 155/8 155/20
156/6 157/14 157/25
158/1 159/5 161/5
161/11 164/12 165/5
165/25 167/4 168/23
168/25 169/4 169/10
171/14 174/3 174/8
175/13 175/13 175/21
185/14 187/21
**jury's [1]** 174/9
**just [136]** 12/14
12/22 13/13 15/5
16/20 17/13 18/4
18/15 19/20 21/18
22/3 23/18 23/23 26/9
27/21 29/8 33/14
33/20 34/2 37/22 44/7
51/23 54/24 55/10
59/3 62/6 62/10 62/18
63/9 63/10 66/5 68/15
69/11 69/23 69/24
75/15 77/9 78/3 78/24
82/21 84/23 86/8
87/25 92/22 97/1
98/10 99/5 99/11
100/6 101/12 109/18
109/24 112/15 116/10
119/22 121/18 122/22
124/23 127/23 128/8
128/9 131/25 132/9
132/11 134/16 134/20
142/23 142/24 145/15
145/20 146/24 149/21
150/6 152/22 154/11
154/16 155/19 155/21
155/24 157/4 158/17
158/19 159/16 160/4
160/18 163/5 164/20
166/8 167/3 167/8
168/18 168/24 169/7
170/11 170/24 171/7
171/11 171/14 171/23
171/24 172/3 173/8
174/4 174/12 174/22
174/24 175/4 175/12
176/8 176/13 179/13
180/3 180/9 180/21
182/13 183/5 183/10
184/9 185/2 185/7
185/11 186/7 186/12
186/14 186/18 187/22
187/23 188/4 188/13
189/2 189/9 190/6
190/9 191/17 192/12

193/5
**justified [2]** 163/13
163/16

**K**

**keep [8]** 5/5 27/21
63/12 63/17 82/7
152/9 162/20 172/19
**keeping [4]** 20/17
42/23 63/23 173/15
**keeps [1]** 161/15
**kept [1]** 36/23
**key [1]** 161/24
**Kill [1]** 174/18
**kind [3]** 34/22 96/16
144/8
**KISSANE [1]** 2/2
**Kiwanis [1]** 13/5
**knell [1]** 107/15
**knew [9]** 86/17
120/10 127/23 127/25
131/3 131/5 139/3
180/8 183/11
**Knoll [1]** 15/9
**know [83]** 5/21 6/5
6/8 7/7 8/6 11/2
15/17 15/18 20/8
24/19 25/7 26/17
30/22 31/6 31/20 32/1
34/7 34/22 34/23
36/18 36/20 36/25
37/13 40/14 47/18
55/5 56/8 56/18 58/2
58/9 73/5 79/6 79/14
80/10 87/13 89/15
93/25 105/12 105/22
106/2 110/6 110/7
110/10 111/8 114/2
118/1 119/11 119/14
120/5 121/2 124/14
124/16 124/16 127/21
130/3 140/3 143/20
148/7 150/19 154/1
154/6 154/8 157/2
157/4 157/8 157/19
162/16 166/11 166/23
169/16 171/15 172/24
173/20 173/21 173/23
174/1 174/22 175/16
177/23 182/24 183/2
183/11 188/8
**knowing [1]** 32/6
**knowledge [8]**
18/13 19/3 43/19
95/23 105/9 105/14
111/19 130/2
**known [7]** 31/16
31/20 45/6 129/14
149/15 149/16 154/15
**knows [15]** 48/21
52/10 52/23 54/18
58/6 67/10 72/15

86/20 97/18 105/18
106/1 170/8 170/15
188/8 188/12
**KRINZMAN [1]** 1/15
**KUEHNE [41]** 1/18
1/18 4/15 4/24 6/8
7/14 10/17 11/4 11/11
11/14 11/17 12/16
14/16 16/13 17/5 19/9
19/16 19/22 20/4
21/23 22/23 23/17
25/8 26/22 27/16
29/23 30/4 30/7 31/7
32/5 32/14 33/13
37/16 49/8 77/3 77/12
108/16 123/15 125/11
127/11 149/2
**Kuehne's [1]** 31/22

**L**

**labor [3]** 114/3
114/5 158/23
**lack [5]** 67/5 106/10
107/19 111/19 121/24
**ladies [1]** 36/9
117/18 123/25
**language [11]** 56/24
57/4 134/17 150/8
156/21 158/5 164/13
164/17 165/20 167/11
181/24
**laptop [1]** 178/12
**large [1]** 79/21
**Lasso [3]** 109/6
109/6 109/8
**last [14]** 4/16 34/9
36/12 36/12 38/6
115/12 119/9 121/19
121/23 121/24 122/14
125/20 153/20 164/21
**late [1]** 90/10
**later [6]** 86/12 90/25
91/1 97/7 101/18
125/21
**Latin [3]** 13/2 13/4
25/4
**LAUDERDALE [3]**
1/2 1/5 194/9
**law [40]** 1/10 1/18
112/6 133/1 133/21
140/14 140/19 140/25
141/2 141/14 141/14
141/15 141/16 141/19
141/21 142/5 142/12
142/19 142/20 148/6
150/17 154/25 155/7
155/9 155/12 155/23
156/8 156/9 156/11
156/19 159/25 160/21
160/25 160/25 161/7
163/3 165/16 166/19
167/7 190/23

**lawn [4]** 40/15 40/24
41/1 41/25
**lawns [1]** 42/4
**laws [1]** 14/7
**lawsuit [8]** 27/12
114/11 115/3 145/2
148/19 148/22 149/8
158/23
**lawyer [2]** 49/21
101/16
**lawyer's [4]** 75/12
75/14 90/13 107/20
**lawyers [2]** 121/10
124/14
**lay [1]** 174/4
**lead [2]** 165/12
191/6
**leadership [1]** 109/9
**leading [5]** 39/12
41/9 43/16 112/1
165/5
**Leah [2]** 4/15 127/11
**leaked [1]** 130/5
**learned [5]** 8/25
148/15 148/17 148/23
149/4
**learning [4]** 13/7
89/20 154/11 154/15
**least [5]** 96/24
131/23 144/17 157/20
171/5
**leave [6]** 5/4 21/23
29/23 53/25 177/4
182/8
**leaving [1]** 106/24
**led [1]** 144/22
**left [10]** 19/11 22/20
26/4 35/25 62/1 106/8
133/13 175/15 175/17
182/17
**legal [8]** 28/2 79/2
99/8 100/9 100/11
140/17 150/15 159/23
**legalize [1]** 39/11
**legislation [3]** 74/16
79/9 80/11
**legislative [6]** 74/5
77/10 79/8 80/15
80/20 98/22
**length [2]** 15/17
27/14
**lengthy [7]** 36/24
68/11 68/21 69/2
69/23 69/24 72/7
**Leon [15]** 27/11
28/16 28/17 28/18
28/19 28/20 29/8
136/4 145/23 146/17
147/12 148/19 150/20
150/21 153/8
**less [2]** 192/12
193/17

**let [34]** 7/7 11/17
15/15 23/17 26/17
26/21 28/16 30/25
33/14 34/3 40/7 42/10
52/24 59/18 74/24
76/19 84/8 96/23
119/25 124/13 124/16
137/21 138/16 142/16
146/23 156/17 157/8
157/8 157/19 169/23
170/3 170/21 172/24
193/8
**let's [23]** 33/11
35/17 54/22 61/10
64/12 65/21 66/4
66/11 69/13 76/10
76/23 77/25 78/15
82/6 89/11 92/1 94/7
94/23 98/3 99/20
100/22 121/6 172/10
**level [5]** 8/22 144/2
181/21 181/23 182/1
**levels [1]** 112/12
**Lexis [1]** 161/17
**liability [1]** 155/10
**liar [1]** 184/3
**licenses [1]** 81/6
**lie [2]** 182/10 184/12
**life [10]** 21/11 45/25
63/8 148/11 173/17
181/6 181/21 181/23
182/2 182/5
**light [1]** 147/2
**like [49]** 4/6 4/23
5/23 8/5 14/11 17/16
19/20 20/13 22/1
25/21 26/17 35/14
36/11 59/2 63/21
71/24 76/19 88/1
102/3 109/7 116/11
119/15 121/19 123/16
124/24 125/1 145/16
155/24 156/12 161/2
161/2 162/4 164/5
164/9 173/13 173/14
173/24 178/1 178/10
178/11 178/16 180/5
180/8 183/7 185/4
185/12 187/3 187/22
189/13
**Likewise [1]** 183/16
**limine [1]** 181/4
**limit [1]** 30/20
**limited [3]** 11/8
22/16 118/10
**Lina [1]** 98/6
**line [14]** 25/2 30/21
64/19 64/20 66/11
73/8 75/21 92/16
100/21 110/5 110/12
111/2 116/12 180/11
**link [1]** 122/13

**L**

linked [1] 91/19
liquor [3] 81/6
102/19 136/9
list [6] 5/20 79/13
79/14 88/5 99/12
153/10
listed [2] 40/25
190/3
lists [1] 100/7
literally [1] 9/21
litigants [1] 159/1
litigation [3] 93/13
110/4 154/14
little [24] 7/1 13/5
13/20 48/7 48/17 49/2
49/16 49/25 50/7
50/10 67/13 79/25
81/5 87/8 87/21 94/19
102/5 106/17 107/11
107/16 154/17 174/2
174/24 179/15
live [1] 6/16
lives [3] 148/8
148/11 181/14
LLC [3] 133/2 150/2
163/8
lobster [1] 37/13
local [1] 83/11
location [9] 40/25
41/8 41/13 42/1
102/12 102/12 102/16
107/8 107/9
lodging [1] 133/23
logic [1] 159/4
long [8] 6/4 75/14
100/13 114/2 139/8
149/15 173/14 173/24
longer [3] 56/19
104/20 149/16
longest [1] 173/17
longstanding [2]
180/17 180/18
look [38] 6/1 9/8
16/9 17/10 21/21
46/16 55/8 66/11
76/23 88/1 94/7 99/20
101/18 120/5 122/6
133/6 151/5 157/15
160/11 162/23 168/11
170/21 172/25 173/11
173/14 176/16 178/9
178/10 179/1 179/15
179/19 181/7 182/12
185/12 191/15 191/15
191/24 192/2
looked [5] 9/13
173/10 189/13 191/13
192/4
looking [13] 24/24
34/1 81/11 81/13

134/16 134/20 138/17
138/23 139/14 139/18
182/13 183/12 189/17
looks [1] 156/1
Los [12] 34/13 38/7
38/8 38/11 38/18
38/21 39/6 39/11
39/16 82/14 84/4 84/7
lose [2] 63/18 158/16
loss [1] 156/25
losses [1] 188/25
lost [1] 181/14
lot [23] 39/2 53/25
63/18 69/11 74/1
76/19 82/3 89/13
89/16 89/18 93/11
93/13 96/14 96/23
109/20 109/22 109/22
110/7 110/10 112/7
131/23 149/5 154/11
low [1] 102/21
lower [1] 84/24
LUBETSKY [1] 1/15
luck [1] 36/15
lunch [4] 37/11
37/12 124/10 175/6
Luncheon [1] 126/7

**M**

Mad [4] 114/10
114/16 114/21 114/25
made [24] 11/4
16/17 17/8 17/9 22/10
30/18 40/14 40/17
42/15 46/20 47/23
59/5 61/6 61/7 101/16
104/19 118/10 125/6
127/24 131/4 134/18
140/17 164/24 166/16
mails [1] 80/18
major [1] 24/4
majority [1] 109/23
make [55] 6/16 8/1
8/20 10/22 20/5 20/16
22/3 22/25 33/20
40/19 43/2 70/14 77/9
80/14 83/10 110/14
118/12 119/25 120/7
123/16 124/3 125/2
125/2 125/9 129/9
129/12 132/16 132/18
134/12 136/14 139/9
144/16 145/15 145/19
155/17 156/6 158/19
164/7 164/8 170/12
171/14 174/3 174/3
175/12 179/9 184/9
185/2 187/19 188/2
188/14 188/17 191/11
191/17 192/6 192/19
makes [4] 21/24
79/9 158/8 159/4

making [16] 26/9
42/17 57/9 72/17
78/19 79/14 81/14
94/1 112/4 123/21
141/10 162/25 171/12
186/14 190/9 193/14
malice [1] 166/19
malicious [1] 34/23
maliciously [1]
158/10
managed [1] 102/4
manager [56] 37/18
38/4 38/10 38/14
42/12 43/10 44/1 45/4
47/8 50/7 50/11 51/6
51/16 51/23 53/1 53/3
53/11 54/8 54/13
56/12 57/17 58/2 58/5
58/9 64/9 67/16 69/24
70/1 70/5 70/20 72/2
72/4 80/25 85/12 89/3
89/12 89/21 96/25
100/2 100/5 100/11
101/17 109/5 110/18
111/22 112/6 113/5
113/12 113/15 114/5
114/7 115/17 116/3
117/15 117/17 143/23
manager's [2] 44/14
99/18
managers [1] 84/12
managership [2]
39/10 39/24
manner [2] 17/25
169/11
Manny [4] 63/21
90/20 100/24 101/23
many [8] 65/12
65/15 65/19 65/24
66/3 66/12 67/23 89/1
Marc [3] 1/21 4/15
127/11
March [1] 161/19
marked [1] 88/5
Marketplace [2]
15/9 34/14
Marrero [4] 71/23
73/6 115/14 182/4
Marrero's [1] 176/10
MARTIN [6] 1/4
133/19 133/22 159/16
171/1 171/3
mask [1] 37/23
Mason [3] 1/16 4/14
127/10
massacre [3] 143/18
153/23 153/24
match [1] 145/16
material [5] 9/8
129/17 129/22 130/6
130/15
matter [21] 5/19

17/8 17/11 17/19
37/22 93/25 121/8
121/19 141/14 141/19
148/5 150/17 159/24
168/6 169/14 171/9
176/8 181/18 186/1
186/2 194/4
matters [7] 7/9
38/10 38/13 121/10
121/22 122/7 124/24
Maurice [4] 73/6
115/7 115/14 115/18
Maurice's [2] 116/9
116/13
may [67] 1/5 4/1
5/15 5/18 7/14 12/16
17/5 19/6 19/19 25/3
29/4 30/3 31/25 36/8
36/25 37/16 40/8 42/9
44/22 45/8 46/25
55/15 65/24 65/24
66/2 69/4 72/10 75/6
76/5 88/4 99/24 117/6
117/24 118/22 120/3
121/8 121/11 123/14
123/15 124/15 125/21
127/1 127/5 138/9
145/11 146/3 147/14
148/9 148/14 153/19
155/21 156/24 157/3
157/7 161/6 166/24
167/5 167/14 168/23
169/16 172/12 180/5
180/24 185/25 186/3
186/7 186/22
May 5th [2] 19/19
30/3
may be [14] 36/8
36/25 88/4 99/24
117/24 123/14 124/15
125/21 127/5 155/21
157/7 166/24 180/24
186/3
maybe [5] 6/25
29/11 66/15 100/21
107/5
mayor [7] 9/15
10/15 14/11 99/25
100/3 113/7 114/6
McCool [1] 15/9
me [88] 8/25 9/3
12/22 15/15 19/20
21/19 23/12 23/17
25/17 25/20 26/1
26/21 27/19 27/19
28/16 29/22 32/4
33/14 39/9 40/7 42/10
43/3 47/20 49/13
52/15 52/15 52/24
54/11 54/20 56/2 56/5
59/18 60/9 69/9 69/22
74/24 81/25 82/2 84/8

85/9 85/10 85/23
85/24 87/7 87/10
87/11 87/13 88/1
88/14 88/16 90/21
96/16 97/21 100/14
100/15 110/25 119/9
119/10 120/13 120/18
124/16 138/16 139/23
145/16 146/23 156/17
157/8 157/8 157/19
161/2 161/2 161/2
161/3 169/23 170/3
170/21 172/9 173/18
177/1 178/5 178/19
179/4 186/2 186/18
187/13 189/10 191/14
193/8
mean [32] 7/24 10/7
32/7 34/1 35/11 68/16
70/18 75/23 93/9
93/11 93/16 93/18
101/11 103/5 107/4
107/5 107/6 119/8
132/15 132/19 133/12
143/6 146/4 164/24
167/2 167/2 172/19
177/7 184/12 189/1
190/25 191/25
meaning [1] 149/20
means [4] 35/25
104/10 168/20 175/23
meant [1] 91/17
measure [1] 87/23
measurement [2]
88/20 103/13
measurements [1]
103/7
measures [1] 163/12
measuring [8] 87/9
87/21 87/25 88/8
88/11 88/14 88/17
89/5
media [1] 129/5
medical [2] 189/14
190/4
meet [8] 52/18 72/18
99/11 117/4 142/5
142/12 142/21 185/23
meeting [50] 27/12
53/9 54/23 56/1 61/11
62/1 68/12 68/20
68/20 68/21 69/2 69/6
69/12 69/14 69/23
69/24 71/1 71/14 72/2
72/7 72/8 72/22 76/5
97/8 97/25 98/2 98/4
98/23 109/16 109/19
112/15 113/2 114/8
116/17 135/11 135/23
136/19 143/4 143/9
149/11 150/10 151/2
151/18 152/8 152/11

**M**

**meeting... [5]**
152/12 153/1 153/5
153/25 162/1
**meetings [6]** 59/2
59/22 60/8 71/5 98/11
109/18
**Melissa [1]** 83/2
**member [4]** 110/19
110/23 111/1 111/10
**members [6]** 80/19
100/1 100/4 113/24
131/15 181/16
**memorandum [3]**
127/16 133/1 141/13
**memory [6]** 29/22
60/14 60/23 61/5 61/7
63/19
**Mendez [3]** 70/7
75/18 76/5
**mental [2]** 163/9
165/7
**mention [4]** 22/19
151/20 156/5 171/23
**mentioned [17]** 5/11
10/11 14/10 14/11
15/21 17/7 22/17 29/1
30/7 37/9 109/5
112/18 131/14 152/23
171/8 175/16 180/19
**mentioning [3]** 29/3
30/8 193/3
**mentor [2]** 86/17
86/23
**menu [2]** 37/13
37/14
**mere [1]** 149/21
**message [9]** 69/13
71/20 100/23 101/6
101/6 101/12 101/7
104/12 115/7
**messages [1]** 115/13
**met [5]** 42/22 45/8
90/21 90/24 141/19
**methodology [1]**
47/21
**Mexicano [2]** 82/14
84/12
**Miami [25]** 1/13
1/17 1/19 1/22 2/4
9/15 12/17 13/3 20/16
20/21 36/15 40/11
41/21 45/22 48/13
48/15 49/25 50/9
67/21 73/15 80/5
131/24 133/25 162/18
162/19
**middle [3]** 68/15
97/5 137/14
**midmorning [1]** 7/3
**might [5]** 9/12 39/7

177/13 177/22 192/18
**million [1]** 63/22
**Milton [1]** 56/7
**mind [6]** 61/10
128/12 172/19 181/4
181/11 193/10
**mindful [1]** 157/4
**mine [4]** 44/14 52/12
52/13 128/8
**minimum [1]** 181/25
**minor [1]** 175/20
**minute [5]** 20/1
116/14 120/25 144/19
175/17
**minutes [18]** 4/22
4/23 4/25 37/9 108/17
108/21 115/15 117/19
119/7 120/23 120/24
121/16 124/9 169/16
169/19 169/25 175/16
179/16
**Miranda [2]** 15/6
15/20
**mirrored [1]** 131/18
**misread [1]** 49/6
**misrepresentation
[2]** 129/3 130/14
**misrepresented [2]**
128/24 129/14
**missed [3]** 172/21
188/1 188/13
**missing [1]** 186/3
**Misstates [5]** 52/8
52/22 62/6 62/20
76/15
**mistake [3]** 104/19
129/22 172/19
**mistaken [1]** 176/25
**mistrial [11]** 122/3
128/14 128/15 129/24
131/1 131/8 131/19
131/21 132/3 132/3
132/6
**misunderstanding
[1]** 107/5
**mixed [2]** 155/12
160/20
**Mm [1]** 62/3
**Mm-hmm [1]** 62/3
**modes [1]** 155/12
**Mohammed [2]**
23/11 23/25
**Molina [1]** 150/3
**moment [8]** 6/13
15/5 15/8 44/8 109/1
133/12 138/14 140/6
**money [3]** 48/16
50/6 50/9
**monitoring [1]**
39/21
**months [4]** 86/12
89/19 143/18 154/11

**moot [1]** 118/25
**Morales [7]** 63/22
90/19 100/24 101/7
101/12 101/23 102/11
**Morales' [1]** 103/3
**more [20]** 9/1 50/13
57/15 60/11 63/22
70/2 70/22 80/18
112/24 118/12 135/3
141/24 144/4 144/4
149/5 163/6 167/7
169/19 169/25 192/12
**Moreno [4]** 144/21
144/24 145/7 151/7
**Moreover [1]** 16/4
**morning [22]** 4/1
4/5 4/10 4/13 4/14
6/24 7/2 7/6 7/13
36/9 37/10 37/21 38/5
45/4 45/5 82/21 104/9
106/13 124/7 172/24
177/10 191/11
**most [8]** 6/4 21/4
66/21 113/1 119/25
141/21 183/13 193/9
**motion [35]** 118/20
119/1 119/2 119/9
121/20 121/2 122/2
122/2 122/3 122/19
127/15 128/13 128/14
128/15 128/16 128/22
129/1 129/8 129/8
129/11 130/5 130/24
130/25 131/1 131/7
131/8 134/12 135/16
149/25 168/13 173/4
176/9 176/13 176/17
181/4
**motions [8]** 7/9
118/18 119/3 124/21
124/25 127/14 128/18
140/14
**motivating [8]**
154/24 155/6 163/14
168/19 168/19 168/25
169/2 169/8
**motivation [4]** 7/18
7/20 160/20 161/4
**motivations [3]**
142/15 142/18 160/22
**motive [3]** 160/20
163/18 168/14
**Motors [1]** 15/12
**move [18]** 25/18
26/21 36/5 39/5 55/3
62/10 82/16 84/15
95/9 104/11 105/9
107/20 109/25 119/19
125/13 169/20 169/24
170/1
**moved [2]** 144/11
155/15

**moves [1]** 76/20
**moving [4]** 30/22
61/9 128/13 186/6
**MPA [11]** 40/11 41/2
41/15 41/19 41/24
42/3 45/20 45/22
48/16 48/25 49/14
**Mr [161]** 4/24 6/8
6/14 6/22 7/14 10/17
11/4 11/11 11/14
11/17 12/16 14/16
16/13 17/5 17/7 19/9
19/22 20/4 21/23 22/2
22/21 22/23 23/17
25/1 25/8 27/16 28/17
28/20 29/23 30/4 30/7
31/13 31/22 32/5
32/14 33/13 35/5
37/16 45/4 45/10 46/4
48/1 48/17 49/8 49/25
52/1 52/6 52/19 54/5
54/24 55/20 56/13
57/9 57/22 58/3 58/10
58/18 62/17 62/24
64/25 64/25 65/1 65/1
65/10 65/10 65/14
65/17 65/17 65/22
69/21 71/4 71/11
71/14 71/23 73/4 73/6
73/6 75/2 75/4 76/23
77/12 84/2 84/4 85/12
86/4 86/13 86/15
86/17 86/18 86/24
87/19 87/20 88/13
90/19 90/22 90/23
90/24 91/3 93/4 93/21
93/21 94/16 97/8
97/14 97/16 98/4
99/11 100/7 100/18
100/24 100/24 101/12
101/23 102/1 102/5
102/11 103/3 104/2
106/6 107/18 108/16
117/15 117/17 118/6
120/24 123/15 125/11
134/15 134/15 135/22
136/18 137/23 142/8
143/11 143/11 144/4
144/10 144/20 145/2
145/9 145/13 145/18
148/18 148/23 149/2
149/2 152/11 154/3
154/7 155/18 157/23
158/6 161/15 165/12
165/17 165/18 170/19
170/20 176/9 182/18
191/16
**Mr. [19]** 19/16 24/18
26/22 31/7 51/7 55/21
65/11 65/17 65/23
67/6 77/3 101/7
137/20 142/24 144/5

144/23 163/15 165/9
182/4
**Mr. Carollo [2]**
55/21 67/6
**Mr. Carollo's [3]**
51/7 65/17 65/23
**Mr. Fuller's [1]**
24/18
**Mr. Gonzalez [1]**
144/23
**Mr. Gutchess [1]**
165/9
**Mr. Kuehne [4]**
19/16 26/22 31/7 77/3
**Mr. Marrero [1]**
182/4
**Mr. Morales [1]**
101/7
**Mr. Pertnoy [3]**
137/20 142/24 163/15
**Mr. Pinilla [1]** 144/5
**Mr. Pinilla's [1]**
65/11
**Ms. [11]** 35/22 46/17
76/5 78/16 84/23
84/24 85/6 121/8
121/12 137/19 179/14
**Ms. Bell [1]** 35/22
**Ms. Caprio [1]**
179/14
**Ms. Cohen [3]** 46/17
78/16 84/23
**Ms. Dawson [2]**
121/8 121/12
**Ms. Dooley [2]** 84/24
85/6
**Ms. Gomez [1]**
137/19
**Ms. Mendez [1]** 76/5
**much [11]** 21/11
24/7 50/6 131/10
160/8 160/17 169/6
172/25 175/16 182/10
193/15
**multimillionaires [2]**
180/12 180/16
**multiple [11]** 104/25
130/22 138/25 139/1
139/7 139/10 157/7
157/9 162/6 183/18
186/25
**mural [8]** 24/5 24/8
24/15 24/17 24/19
24/22 24/22 25/1
**murals [9]** 22/25
23/2 23/5 23/7 24/2
24/4 24/13 25/4 25/4
**music [3]** 16/18
78/25 102/20
**must [1]** 164/14
**my [64]** 11/4 13/21
15/9 17/1 18/2 29/22

**M**

**my... [58]** 30/11
32/24 33/16 35/19
36/21 36/23 37/23
47/21 52/11 52/13
52/25 53/3 53/6 55/8
56/2 59/17 60/2 60/5
65/7 66/2 76/20 83/3
89/11 89/12 89/14
89/23 92/9 94/6 96/14
96/18 101/9 118/8
128/12 131/4 132/14
133/13 133/14 137/12
148/13 157/16 169/11
169/17 173/2 173/17
174/4 174/4 178/4
181/4 181/11 181/16
183/8 185/13 192/4
192/6 192/8 192/11
192/11 193/10
**myself [2]** 34/3
89/17

**N**

**name [5]** 31/16 36/1
107/3 131/14 180/1
**names [2]** 22/6 48/5
**nation [1]** 67/19
**nature [2]** 143/12
149/4
**nauseam [17]** 9/18
16/15 17/12 24/9
25/11 26/1 26/3 26/11
26/14 27/12 27/18
27/21 29/2 33/23 34/7
35/13 176/16
**necessarily [4]**
46/15 67/12 119/18
156/2
**necessary [3]** 99/24
116/3 125/4
**need [25]** 7/1 12/24
54/14 71/25 72/1
72/18 74/2 74/8 74/15
76/21 86/8 108/20
118/12 121/1 124/1
124/2 126/1 138/2
146/24 155/3 169/18
170/1 189/22 190/21
190/22
**needed [2]** 89/16
190/13
**needs [7]** 74/21
81/22 119/21 124/12
125/25 160/18 161/4
**negative [6]** 17/4
26/1 26/3 113/17
157/3 157/5
**negotiated [1]** 114/7
**neighborhood [1]**
79/20
**neighbors [6]**

186/17 186/20 186/22
186/23 187/1 193/6
**neither [3]** 100/3
149/20 163/1
**never [27]** 26/6
26/18 46/10 46/12
47/21 47/24 66/20
66/24 73/20 96/10
96/21 100/18 100/20
105/11 105/15 105/19
135/11 138/14 141/4
141/14 145/8 147/9
159/11 160/2 162/2
181/15 190/3
**new [12]** 5/15 5/23
8/7 8/7 9/23 30/9
86/13 90/24 138/1
148/15 163/9 192/3
**news [3]** 36/12
36/16 36/24
**next [49]** 5/7 6/14
8/5 8/11 8/19 10/8
10/19 13/12 13/22
13/23 14/22 16/19
22/1 22/23 25/8 25/9
26/22 26/24 28/8 29/6
30/10 30/23 31/1 31/3
31/7 31/10 31/10 33/3
33/10 49/11 50/4
57/20 62/8 62/22
63/23 66/19 68/9 71/9
72/2 72/8 73/10 80/22
84/2 89/25 106/6
123/15 180/20 182/4
184/16
**nice [1]** 37/15
**nickname [1]** 31/16
**Nieves [3]** 159/20
161/19 161/20
**night [11]** 36/12
36/12 48/1 90/10
90/10 90/17 91/1
102/25 119/9 124/17
145/5
**nights [8]** 48/7
48/17 49/2 49/16 50/1
50/7 50/10 102/23
**nine [2]** 110/3
173/20
**Niworowski [1]** 1/12
**no [143]** 1/2 11/15
12/17 12/21 16/15
17/9 17/24 18/10
18/10 18/18 19/11
20/1 21/15 21/18
22/11 22/20 23/23
26/4 26/6 26/14 26/15
28/21 30/15 33/1 40/2
40/22 41/4 41/6 41/14
41/17 42/5 44/18
46/12 47/10 47/16
49/4 50/3 50/4 50/17

51/25 53/5 54/9 54/11
55/23 56/19 58/25
59/17 59/17 59/19
60/5 60/8 61/6 63/16
66/20 69/9 69/10
72/16 73/17 73/22
77/24 80/5 80/7 80/14
81/13 86/1 88/23
88/14 89/2 89/10
90/21 95/12 96/7 97/3
98/9 101/10 103/1
103/13 103/24 104/1
104/19 105/9 105/20
106/19 108/5 108/15
113/13 113/25 116/2
120/9 123/4 126/5
128/6 129/22 133/14
134/10 139/14 139/25
141/5 147/23 149/14
153/5 158/25 159/4
159/8 159/18 166/12
167/16 167/17 169/19
170/10 172/3 172/14
173/3 174/7 175/11
176/21 176/21 177/18
179/2 180/7 184/20
185/18 185/22 186/1
186/22 186/23 186/24
187/5 187/16 187/21
188/10 188/18 189/14
189/15 190/1 190/6
190/10 190/10 190/12
190/15 191/2 192/6
192/21
**nobody [1]** 158/14
**nobody's [1]** 148/10
**nodding [1]** 134/13
**noise [6]** 74/11
77/25 78/9 78/24
79/13 80/6
**nominal [8]** 155/22
156/7 157/14 157/18
166/10 166/11 166/25
167/15
**non [2]** 83/15 102/21
**non-invasive [1]**
102/21
**non-present [1]**
83/15
**none [5]** 16/4 45/24
65/25 66/1 168/24
**nonissue [1]** 190/14
**noon [3]** 76/10 76/12
77/23
**nor [4]** 100/3 100/3
100/4 135/22
**Noriega [19]** 37/18
38/2 45/2 54/5 55/20
57/22 62/24 69/21
75/2 75/4 85/12 86/24
87/19 94/16 100/24
101/23 109/3 143/24

148/23
**Noriega's [1]** 118/6
**normal [1]** 41/21
**normally [1]** 81/6
**not [370]**
**note [7]** 13/13 22/10
23/18 25/24 134/12
173/8 186/14
**noted [5]** 77/12 78/7
82/22 125/19 125/19
**notes [9]** 7/25 15/9
33/15 33/16 35/19
55/8 84/24 133/14
177/1
**nothing [19]** 17/20
23/13 30/9 61/7 71/3
79/9 103/13 113/4
129/16 138/6 148/11
153/3 162/12 176/21
178/2 178/25 179/3
192/12 192/12
**notice [18]** 25/10
43/11 137/18 138/3
140/6 144/12 144/17
145/6 146/24 147/1
151/6 152/5 152/9
152/15 152/16 154/8
166/8 185/6
**noticed [1]** 43/24
**notifying [1]** 43/13
**Notwithstanding [1]**
168/13
**November [3]** 80/13
92/7 145/24
**November 18th [1]**
145/24
**November 19th [1]**
80/13
**November 23 [1]**
92/7
**now [79]** 4/23 5/2
9/21 25/12 25/20
27/18 27/21 28/19
28/19 29/4 29/20
29/21 31/18 32/11
37/1 47/11 64/9 73/23
80/12 104/2 106/13
108/20 110/4 114/9
115/5 118/16 119/4
120/23 121/8 122/17
124/11 129/15 130/18
130/25 131/7 131/10
131/11 132/7 132/22
135/9 135/13 136/11
137/14 138/16 138/18
140/2 146/3 146/19
147/8 147/13 148/1
148/2 148/8 149/24
150/4 150/25 151/3
153/16 157/17 157/23
158/24 170/3 170/22
173/6 174/4 177/3

177/9 178/15 179/4
179/17 181/2 181/17
181/20 182/13 183/7
184/13 186/16 188/5
193/11
**nowhere [1]** 131/18
**NP [1]** 69/23
**nuances [1]** 89/13
**nudge [1]** 76/21
**number [20]** 4/8
39/18 41/23 48/5
65/19 67/11 70/11
81/2 81/5 94/12 96/13
98/12 105/3 109/5
139/20 139/21 162/9
170/6 180/15 190/1
**numerous [3]** 18/14
136/9 167/23
**NW [1]** 1/13

**O**

**O'Boyle [11]** 154/21
155/5 160/5 160/16
161/14 161/18 161/19
167/22 168/7 171/6
171/7
**O'Boyles [1]** 160/5
**object [6]** 30/20 90/6
95/13 95/22 147/21
183/17
**objected [6]** 18/22
29/13 77/11 119/21
189/18 190/1
**objection [127]**
15/22 15/22 16/11
24/4 24/7 26/14 26/15
29/1 32/7 32/10 39/12
41/9 43/16 48/18 49/5
49/7 49/8 49/9 49/20
49/22 50/2 50/15
50/23 51/9 52/8 52/20
54/2 54/16 56/20 57/6
57/11 57/18 57/20
57/24 58/4 58/11
58/20 59/9 59/24
60/15 61/13 61/14
62/4 62/5 62/20 63/14
63/24 64/5 66/7 67/8
68/7 68/22 71/7 71/16
72/14 74/5 74/13
74/20 76/13 76/25
77/2 77/10 78/5 79/2
79/23 80/1 80/3 80/20
81/17 82/19 82/22
83/14 83/23 83/25
84/17 84/20 85/15
85/17 86/19 87/15
87/17 88/3 89/6 89/8
90/5 90/5 90/13 91/22
92/18 95/11 95/12
95/20 97/10 97/16
98/15 98/22 98/22

**O**

**objection... [30]**
99/7 100/9 101/15
101/18 102/7 103/8
103/18 104/5 104/23
105/17 105/24 106/5
106/9 107/18 107/19
108/1 108/12 111/17
111/18 111/24 111/25
114/18 128/3 128/9
132/16 134/8 134/15
180/24 182/24 185/25
**objections [6]** 5/25
6/1 31/15 183/4
183/18 193/18
**observed [5]** 21/18
21/19 102/15 103/1
132/18
**observing [4]** 96/6
96/7 96/8 96/9
**obtained [1]** 50/13
**obviate [1]** 155/2
**obvious [2]** 93/13
93/23
**obviously [5]** 39/22
93/11 100/14 118/20
174/24
**occasion [1]** 42/11
**occasions [2]** 39/18
96/13
**Occupancy [1]** 75/24
**occur [1]** 112/11
**occurred [7]** 42/8
118/23 137/8 139/10
143/18 147/18 154/1
**occurring [1]** 44/6
**occurs [1]** 63/5
**Ocho [2]** 13/20 34/14
**October [5]** 73/24
76/12 76/24 77/22
78/24
**October 22nd [4]**
76/12 76/24 77/22
78/24
**off [6]** 9/21 32/13
32/15 102/24 103/16
147/6
**offer [3]** 41/2 41/5
192/15
**offering [3]** 191/4
191/8 191/19
**office [21]** 23/10
23/13 23/21 23/25
44/14 53/6 53/14
64/18 66/13 68/13
69/4 69/25 70/9 70/10
70/12 71/5 80/16 83/3
89/22 93/20 99/18
**officer [1]** 158/9
**officers [7]** 94/8
94/20 95/3 95/6 96/4

102/15 162/3
**official [4]** 53/4
117/1 143/21 194/8
**officials [7]** 8/13
47/18 59/13 67/12
111/14 112/9 133/25
**offstreet [2]** 20/10
20/14
**often [1]** 133/24
**Oh [3]** 70/11 114/5
172/1
**okay [59]** 5/11 37/15
46/9 47/11 47/17
50/13 51/4 53/22 54/5
57/1 62/24 63/12 65/6
65/16 66/4 67/16 71/3
71/22 72/21 73/1
73/23 77/21 77/25
78/4 80/12 84/8 86/4
86/10 86/12 86/24
88/22 89/3 91/3 91/25
96/11 99/16 103/2
104/9 104/19 105/22
106/13 106/23 107/11
113/2 115/3 116/8
118/7 124/16 132/20
155/17 176/5 176/19
181/1 182/11 187/8
187/10 188/6 188/20
192/23
**old [1]** 67/13
**on [256]**
**once [8]** 5/7 6/25
95/22 137/21 141/14
143/24 145/13 169/24
**one [96]** 6/13 12/17
15/5 15/8 15/20 18/22
18/23 20/1 20/12
23/10 25/5 25/5 32/11
35/21 35/22 36/21
44/7 47/14 48/8 54/10
54/13 59/3 67/14
69/11 71/22 72/7
73/18 78/2 81/9 81/11
84/11 94/10 98/10
100/23 102/1 104/16
107/15 107/24 109/1
110/1 111/2 112/25
115/12 116/14 116/19
117/11 120/22 120/25
122/19 124/24 125/20
128/16 128/22 133/12
135/1 135/3 139/20
140/23 140/24 143/7
143/13 148/17 148/21
150/2 151/20 157/14
157/18 158/5 158/22
160/18 161/18 162/9
163/6 164/20 167/5
167/7 167/8 167/14
167/17 170/6 172/18
174/18 174/22 175/17

175/20 176/8 177/12
179/17 182/17 184/15
186/18 188/17 189/6
190/2 190/24 190/24
**ones [1]** 193/4
**ongoing [2]** 145/6
151/8
**only [29]** 14/10
18/22 18/22 21/7
33/19 37/6 47/22
60/23 62/17 63/5
67/14 89/18 120/22
121/15 132/9 132/11
132/13 143/7 143/18
150/5 150/10 151/25
152/9 154/2 155/22
166/25 178/24 179/2
179/25
**open [9]** 31/21 32/12
32/15 67/2 121/23
129/4 130/2 178/15
179/4
**opened [2]** 45/6
105/13
**opening [6]** 33/18
185/14 185/19 190/13
191/7 191/19
**operate [1]** 78/12
**operating [1]** 78/19
**operators [2]** 18/15
18/20
**opinion [6]** 79/2
92/13 93/4 99/8
107/20 117/20
**opinions [2]** 32/21
124/6
**opponent [3]** 27/2
146/12 158/16
**opportunity [22]** 6/3
6/9 11/16 16/5 16/17
26/19 28/3 28/3 31/25
34/6 96/16 124/24
125/1 137/22 144/20
145/14 145/18 153/17
164/16 166/5 167/21
173/24
**oppose [1]** 125/17
**opposed [1]** 14/25
**opposing [5]** 5/19
6/24 28/10 30/16
82/10 120/9 179/8
**or [150]** 4/23 5/3
7/17 7/21 8/8 13/8
14/11 14/19 14/25
16/1 16/8 17/4 19/10
19/12 19/13 20/5
20/18 21/18 22/25
25/15 25/15 26/1
28/24 29/4 31/13
31/16 31/16 31/20
31/21 32/1 34/11
34/23 38/6 40/14

47/18 53/5 54/12
54/12 54/20 54/20
55/22 57/16 57/22
58/25 59/5 59/17
59/19 60/20 62/14
64/23 65/24 66/17
66/19 67/6 68/14
72/22 73/21 74/16
75/15 76/7 80/15
80/15 81/15 86/1 87/7
87/11 101/11 108/8
108/20 109/9 110/9
110/12 110/13 110/17
112/11 112/13 113/3
116/19 116/25 117/1
118/13 119/10 119/14
119/24 124/13 124/14
125/3 131/23 132/1
132/2 133/25 134/1
134/1 134/3 135/10
136/1 136/21 138/14
139/24 141/4 141/7
141/7 143/3 143/8
145/16 147/10 147/23
149/7 149/20 150/9
150/16 151/8 155/2
156/7 159/7 160/10
160/15 162/3 162/4
162/13 165/4 166/19
168/24 169/1 172/7
173/2 173/5 173/22
175/9 176/2 178/1
178/3 178/12 179/11
179/12 179/16 181/7
182/10 183/1 183/5
184/1 184/5 185/7
186/5 186/22 187/7
188/18 189/15 191/4
191/9
**orally [1]** 125/3
**oranges [1]** 131/11
**order [11]** 4/4 5/22
73/18 125/9 127/4
139/21 140/4 141/18
144/25 149/19 149/20
**ordered [3]** 42/12
102/20 141/4
**orders [7]** 53/5
53/23 55/22 100/4
110/15 110/19 176/13
**ordinance [24]** 74/3
74/8 74/11 74/16
74/19 74/22 74/23
76/24 77/5 77/7 77/15
77/22 78/1 78/3 78/9
78/12 78/21 78/24
78/25 79/7 79/13
79/22 80/6 80/12
**ordinances [6]** 72/1
72/12 72/18 73/24
74/1 97/9
**organizations [7]**

11/25 12/14 13/2 13/6
13/8 13/8 13/10
**original [3]** 11/23
128/23 147/6
**Ortega [1]** 15/7
**other [35]** 6/5 6/15
14/2 14/5 16/12 18/14
22/6 22/11 24/9 25/17
27/17 31/14 54/11
69/11 80/5 80/8 81/18
91/5 109/20 116/11
127/22 151/20 154/14
154/16 155/6 158/16
160/20 160/22 164/3
164/9 170/17 171/3
172/18 193/3 193/4
**others [3]** 35/19
112/24 157/9
**otherwise [5]** 18/10
125/3 130/16 163/13
163/16
**our [37]** 6/19 26/16
28/25 56/3 56/14 70/1
70/21 72/1 72/18 88/5
102/21 118/6 120/2
121/9 121/20 123/1
128/10 135/16 136/13
138/19 141/19 144/17
146/20 148/6 150/19
151/22 154/9 155/24
159/14 164/1 171/5
171/15 174/16 176/9
177/5 179/13 192/16
**out [75]** 6/5 7/22 8/1
8/2 8/3 8/6 8/8 8/18
9/2 9/10 9/14 9/16
9/17 11/9 19/14 23/14
24/20 25/19 27/20
29/23 29/25 29/25
39/1 53/25 54/10 60/9
60/11 61/1 72/23 85/7
87/23 89/5 96/13
96/19 96/22 119/23
120/11 128/15 130/19
131/4 135/10 136/13
136/19 139/2 140/5
143/3 143/8 145/4
148/20 150/1 150/9
151/17 152/7 154/2
154/16 162/1 169/24
170/18 170/19 172/3
172/5 175/4 175/17
176/12 179/15 180/9
181/3 181/16 183/1
187/11 187/19 188/11
189/8 193/5 193/10
**outbreaks [1]** 68/8
**outdoor [6]** 81/12
81/16 83/4 83/11
83/21 102/18
**outdoors [2]** 102/21
104/16

**O**

outside [15] 4/21
83/12 90/9 90/16
94/21 106/17 107/4
107/6 107/11 107/16
117/2 120/12 132/8
132/19 170/3
outstanding [1] 7/9
over [26] 14/18
16/16 16/16 19/13
24/4 35/14 35/14
35/15 35/15 38/15
53/12 56/4 66/17
66/19 66/20 66/20
81/5 116/6 118/18
119/13 120/4 124/21
148/2 176/11 181/18
182/24
overlooked [2]
119/20 193/9
overruled [48] 48/21
50/16 50/24 51/12
52/10 52/23 54/18
58/6 58/13 58/22
59/11 60/1 60/19 62/8
63/15 66/9 67/10
68/25 71/19 72/15
74/7 74/14 76/16 79/3
79/5 81/20 82/23
83/16 84/20 85/19
86/20 89/9 91/24
92/21 92/23 97/18
98/17 99/1 100/12
103/12 103/20 105/2
105/18 106/1 108/2
108/13 114/20 183/3
oversaw [1] 117/4
overseeing [1] 20/9
own [14] 32/19 71/3
81/25 96/14 99/18
103/24 112/7 112/10
129/8 134/5 139/9
145/2 149/1 152/24
owner [2] 39/17
39/20
owners [1] 11/21

**P**

P-R-O-C-E-E-D-I-N-
G-S [2] 4/2 127/2
p.m [2] 69/23 193/24
packed [1] 102/23
page [61] 25/2 25/3
30/4 46/16 46/23
46/24 48/23 64/12
64/19 64/23 65/21
66/4 66/11 66/19
73/10 92/2 133/8
133/11 133/12 133/16
135/3 146/9 152/25
153/2 155/20 156/22
156/22 159/21 161/17

164/22 166/15 166/18
167/14 170/23 171/24
180/1 180/14 180/15
180/22 181/2 181/24
182/7 182/15 183/22
183/24 184/13 184/14
184/15 184/16 185/9
185/12 186/3 186/16
187/3 187/5 187/11
188/1 188/4 188/21
189/13 191/12
pages [4] 19/6 19/16
19/18 19/19
paid [3] 24/25 63/7
131/23
pain [2] 165/3
165/22
Pan [1] 9/25
pandemic [1] 68/15
Pandora's [1]
178/16
paper [5] 176/2
176/6 176/7 177/13
178/8
paperless [1] 122/12
papers [2] 136/13
150/19
paragraph [8] 135/5
143/7 145/22 146/14
153/3 172/2 172/8
172/11
paragraphs [1]
147/16
parallel [1] 11/3
parameters [4]
42/20 108/4 185/3
192/20
park [2] 42/4 107/10
parked [2] 88/16
88/19
parkers [1] 20/6
parking [42] 18/14
18/15 19/5 19/22
19/23 20/3 20/3 20/9
20/10 20/13 20/14
20/18 20/21 20/22
20/25 21/1 21/3 21/5
21/9 21/13 21/17
21/22 22/5 22/6 22/14
22/16 40/11 40/15
40/18 41/19 41/25
45/22 48/13 48/15
49/25 50/9 84/4 84/6
84/12 85/13 103/16
103/21
part [22] 13/6 15/7
25/25 107/1 121/12
130/13 135/11 135/12
136/2 140/15 144/9
148/25 154/6 168/17
168/17 168/23 172/15
185/13 193/4 193/5

193/7 193/10
participated [3]
27/7 28/1 28/1
participation [4]
27/25 29/16 30/12
38/17
particular [24]
22/16 30/24 35/8
60/10 65/2 79/7 81/10
89/14 100/14 109/17
110/13 110/25 111/1
112/23 116/7 117/3
127/25 131/16 132/5
150/8 167/24 169/12
181/18 190/19
particularly [9]
38/16 38/24 59/3
59/23 61/11 62/1 64/3
109/16 127/14
particulars [1] 178/5
parties [6] 37/2 46/6
127/6 129/20 149/6
162/25
parties' [1] 168/3
partners' [1] 73/21
party [1] 48/2
party's [1] 129/15
paseo [1] 107/10
pass [4] 72/12 76/19
109/21 160/15
passed [8] 8/12
73/24 74/1 74/3 74/11
76/24 77/22 135/25
passes [1] 79/9
passing [2] 97/8
97/11
past [5] 38/25 61/9
67/12 109/25 154/11
paste [1] 170/24
path [1] 179/7
patience [1] 36/19
patient [1] 173/16
Patricia [3] 4/5
37/14 175/10
patrons [1] 102/22
pattern [6] 157/25
158/1 180/17 180/18
184/14 184/18
pause [1] 183/6
pay [2] 24/17 25/7
payback [1] 146/11
PDF [2] 183/12
191/25
peaceful [1] 193/19
Pedro [1] 9/25
pending [4] 7/10
124/21 145/2 170/1
people [14] 14/10
14/11 14/25 15/2
15/21 16/4 16/6 16/7
17/2 35/4 106/16
107/16 174/19 181/14

people's [1] 158/17
Pepe [1] 15/12
per [3] 4/16 50/13
99/17
perceive [1] 118/22
percent [1] 30/6
percentage [1] 63/8
perfect [3] 68/11
187/4 192/7
performed [1]
163/19
peril [1] 32/19
perimeter [1] 108/4
period [3] 96/15
149/14 169/2
permissible [3]
10/24 11/1 188/23
permission [13]
54/25 82/17 83/21
92/2 95/10 99/11
99/15 100/15 116/18
116/22 121/20 122/1
122/8
permit [23] 8/7 14/5
20/17 38/16 39/4
39/16 39/19 39/22
40/25 41/21 42/21
42/25 43/11 43/20
70/2 70/22 106/21
107/1 107/8 108/7
121/17 185/6 187/17
permits [10] 14/2
20/17 20/18 43/7 43/8
43/15 44/12 159/13
159/16 193/3
permitted [7] 25/12
38/25 121/13 123/18
132/14 165/6 181/9
permitting [5] 39/6
39/25 40/1 181/20
181/22
person [8] 30/1
35/13 66/17 66/18
66/21 94/16 94/19
184/2
personal [8] 8/21
19/3 35/23 91/10
91/12 93/12 112/10
133/5
personally [1] 76/6
perspective [1]
96/20
pertaining [2] 34/12
38/18
pertains [2] 132/10
172/11
Pertnoy [13] 1/16
4/15 127/11 134/15
137/20 137/23 142/24
144/20 145/13 145/18
158/6 161/15 163/15
Pertnoy's [1] 155/18

157/23
phenomenal [2]
25/22 181/18
philosophy [1] 112/7
phone [6] 66/17
66/18 66/19 66/20
91/5 101/9
photo [1] 179/12
photocopy [1]
122/22
photograph [1]
121/25
phrase [1] 43/8
physical [4] 165/2
165/3 165/21 165/22
picked [3] 143/13
143/14 153/15
picture [2] 22/13
179/11
pictures [1] 23/9
piece [2] 37/10
135/3
piecemeal [1]
121/16
PINILLA [16] 1/4
64/25 65/1 93/21
133/20 133/22 142/8
144/5 148/24 159/16
165/12 165/17 165/18
165/12 171/1 171/3
Pinilla's [3] 65/11
65/17 143/11
pinpoint [4] 9/4 29/4
29/8 186/12
place [13] 41/12
44/1 44/3 54/16 59/25
60/18 61/16 61/17
120/5 131/12 132/5
143/23 165/5
placed [1] 25/6
placement [2] 23/5
24/12
places [1] 99/12
plaintiff [44] 7/21
13/14 15/15 17/20
19/9 22/10 24/3 34/2
34/12 41/7 111/5
112/14 112/14 114/16
115/5 116/10 119/15
132/16 134/8 136/17
141/7 147/4 158/24
167/25 168/4 168/10
168/18 168/21 168/23
169/3 169/13 173/10
175/13 175/14 176/19
177/8 179/22 180/1
180/12 183/17 183/19
188/15 191/14 193/12
plaintiff's [9] 130/8
159/23 180/10 183/4
183/22 183/25 184/2
184/17 185/5

# P

**plaintiffs [32]** 1/5 1/10 4/12 16/23 17/2 17/3 18/21 27/7 28/1 28/1 28/2 29/12 29/15 31/5 31/9 47/9 64/10 125/7 125/12 127/9 128/4 140/9 146/11 147/20 149/14 151/24 153/6 162/17 164/24 173/9 174/23 185/14

**plaintiffs' [49]** 3/9 12/8 12/10 18/4 26/25 27/3 28/10 30/12 30/16 32/5 32/7 34/17 54/22 55/17 69/14 73/11 75/9 82/24 84/22 95/18 98/9 98/18 101/21 115/9 118/19 119/1 127/15 130/9 130/12 130/12 133/3 133/4 145/23 146/10 160/11 182/24 184/1 184/4 184/5 184/6 184/7 185/7 185/9 185/19 187/6 187/7 188/22 188/25 189/7

**plan [1]** 124/7

**planning [1]** 72/12

**plans [2]** 39/19 39/21

**platform [1]** 28/12

**play [12]** 16/18 25/15 55/15 61/10 61/18 61/21 78/25 95/15 98/6 178/21 183/5 183/9

**played [13]** 16/18 34/7 55/18 61/23 87/1 94/25 95/19 98/19 99/3 102/6 102/21 182/17 182/21

**playing [2]** 35/14 102/1

**plead [2]** 153/11 153/11

**pleadings [6]** 125/13 135/17 139/23 139/25 140/2 149/19

**please [15]** 4/6 4/9 36/4 48/23 69/18 99/21 121/3 121/4 121/5 123/10 124/13 157/9 181/10 186/19 187/13

**pleased [1]** 125/24

**pled [2]** 135/11 153/13

**plug [1]** 177/15

**plus [2]** 63/10 69/25

**podcast [3]** 61/10 61/16 61/18

**point [43]** 8/2 9/10 16/15 16/20 17/15 17/22 24/20 27/24 30/2 30/11 33/12 34/6 64/24 93/25 104/3 118/25 128/15 131/12 132/4 137/11 138/3 139/25 140/13 140/15 147/23 148/13 154/2 154/16 155/16 155/17 167/4 168/12 170/18 170/19 171/2 174/6 175/20 177/6 177/12 179/14 180/9 180/23 193/11

**pointed [1]** 11/2

**pointing [1]** 183/1

**points [1]** 180/22

**police [16]** 63/21 92/12 93/3 94/3 94/8 94/20 95/3 95/6 96/4 96/17 99/12 100/8 101/23 103/24 116/19 158/9

**policies [2]** 70/1 70/21

**policy [9]** 43/13 43/23 44/1 44/3 52/15 111/12 111/23 111/23 143/21

**political [6]** 14/8 15/1 28/12 29/16 146/10 158/15

**politician [1]** 144/25

**poll [1]** 179/6

**Pons [4]** 73/6 115/7 115/14 115/18

**pop [1]** 178/14

**Porfiri [1]** 73/4

**port [1]** 26/18

**portion [4]** 49/10 75/13 95/20 188/12

**portions [2]** 55/6 109/8

**position [3]** 51/6 162/25 171/5

**positions [2]** 109/13 171/15

**positive [1]** 17/4

**possible [2]** 67/2 193/18

**possibly [1]** 159/1

**potential [1]** 47/15

**potentially [1]** 38/15

**power [3]** 144/4 177/6 179/13

**powers [1]** 111/9

**practice [11]** 180/6 180/17 180/18 180/18 184/14 184/14 184/17

**precluded [1]** 165/14

**precluding [1]** 41/25

**Predates [1]** 58/5

**prefatory [1]** 125/20

**prefer [2]** 67/12 67/14

**preference [2]** 112/10 125/22

**prejudicial [3]** 138/13 140/7 149/21

**premises [1]** 106/25

**prepare [1]** 114/13

**prepared [1]** 114/24

**presence [4]** 120/12 132/9 132/19 170/4

**present [13]** 4/19 11/17 29/11 83/15 95/21 102/1 119/19 123/13 123/20 125/24 132/13 136/12 174/9

**presentation [2]** 125/2 185/14

**presented [8]** 43/3 125/14 147/3 154/19 155/3 161/8 181/12 185/13

**presenting [1]** 16/14

**preserve [3]** 98/21 171/5 171/15

**preserved [1]** 136/9

**presiding [1]** 181/18

**press [3]** 27/6 27/13 142/7

**pretrial [4]** 151/22 151/23 152/3 152/4

**pretty [6]** 29/11 131/10 139/15 167/12 169/6 182/10

**preventable [1]** 181/6

**prevented [1]** 154/10

**preventing [1]** 118/15

**prevents [1]** 181/6

**previous [1]** 124/21

**previously [4]** 5/13 77/11 125/18 136/6

**print [1]** 170/14

**printout [1]** 156/22

**prior [13]** 35/1 35/20 46/9 55/6 64/23 69/7 78/12 78/21 94/6 149/17 149/18 158/13 158/14

**prioritize [1]** 69/12

**priority [7]** 68/19 69/10 69/10 72/9 72/10 89/3 89/11

**private [1]** 50/22

**privilege [5]** 74/6 77/10 80/21 98/22 183/16

**probable [29]** 34/10 34/15 34/19 34/25 35/2 142/17 154/19 155/5 157/24 158/6 158/9 158/18 159/5 159/5 159/12 159/23 160/1 160/14 160/18 161/22 162/3 162/13 168/3 171/9 187/11 187/15 187/20 187/25 188/19

**probably [9]** 63/25 65/25 66/14 66/14 100/21 120/17 173/16 178/4 181/15

**problem [5]** 99/13 173/11 174/7 175/11 185/22

**problematic [3]** 138/15 162/13 162/16

**problems [2]** 46/10 47/9

**procedural [1]** 37/22

**proceed [5]** 35/25 108/22 117/25 135/5 183/20

**proceeding [1]** 193/24

**proceedings [1]** 194/4

**process [15]** 22/8 28/2 36/20 39/6 39/16 39/20 39/25 41/12 41/15 41/21 44/16 76/21 181/20 181/22 192/9

**processing [1]** 39/21

**proffer [3]** 118/8 118/11 118/13

**program [1]** 109/7

**progress [2]** 72/21 73/9

**prohibited [1]** 163/24

**projects [1]** 110/24

**prompted [1]** 143/17

**promptly [2]** 7/13 119/5

**propensity [1]** 56/4

**proper [2]** 129/20 134/7

**properties [33]** 23/5 23/7 34/12 35/5 35/5 65/2 65/3 65/11 65/18 66/13 67/6 69/6 71/15 72/13 73/12 73/16 73/21 81/9 100/7 115/2 133/3 133/4

**133/7 134/1 134/19 135/6 145/3 151/25 154/5 154/5 160/11 193/2 193/3**

**property [16]** 24/18 25/1 39/17 39/20 75/25 79/8 133/2 134/3 134/12 134/14 145/23 150/2 150/6 150/6 186/8 186/15

**property's [1]** 187/7

**proportionate [1]** 164/14

**proposed [7]** 119/10 128/7 128/10 164/12 166/5 184/4 191/24

**prosecuting [1]** 158/10

**prosecution [2]** 34/23 168/5

**prosecutor [1]** 158/10

**prosecutors [1]** 177/25

**protected [27]** 137/10 142/14 146/17 147/6 147/10 147/15 147/20 147/24 148/22 152/13 152/18 153/14 153/15 155/7 159/6 159/7 159/11 159/13 159/15 159/19 159/24 160/1 160/7 161/21 161/23 161/25 168/2

**protesting [1]** 80/19

**proud [1]** 110/11

**prove [1]** 163/11

**proven [2]** 141/3 141/6

**provide [7]** 72/2 83/12 116/18 124/10 177/16 178/1 182/1

**provided [4]** 99/25 154/22 166/9 183/17

**provides [1]** 177/21

**public [17]** 10/14 22/25 23/2 23/3 27/6 41/22 45/18 88/11 98/10 98/23 98/25 109/9 114/6 114/8 116/17 143/16 161/1

**publicly [3]** 27/8 28/4 54/24

**publish [9]** 54/25 73/2 75/6 82/17 84/15 92/2 95/10 98/20 101/14

**published [2]** 28/15 75/10

**pull [4]** 9/3 17/18 29/21 159/16

**pulling [3]** 19/20

**P**

**pulling... [2]** 29/19
159/13
**pulse [1]** 13/9
**pun [1]** 173/3
**punish [1]** 118/21
**punitive [12]** 155/21
155/24 156/6 156/7
156/23 157/13 157/17
164/14 166/22 166/24
167/6 167/9
**punitives [1]** 166/11
**pure [1]** 146/10
**purport [2]** 55/13
133/9
**purported [5]** 31/16
129/7 131/7 131/19
132/22
**purporting [1]** 30/10
**purpose [2]** 44/3
181/24
**purposes [1]** 99/24
**put [31]** 13/14 35/9
41/12 46/17 86/8
89/11 102/3 107/15
107/24 108/3 109/20
109/22 110/6 123/22
133/6 138/3 138/6
144/12 144/17 147/1
149/2 152/9 166/11
170/13 175/21 181/6
181/22 181/23 181/23
182/1 189/14
**puts [1]** 152/5
**putting [1]** 70/17

**Q**

**qualify [1]** 58/15
**quality [1]** 21/11
**quantity [1]** 154/15
**quarter [1]** 117/20
**question [64]** 8/7
8/9 20/2 20/4 20/8
20/25 21/3 21/9 21/13
21/16 24/14 30/4
30/23 30/25 31/10
48/24 49/11 49/21
50/4 50/8 55/12 57/20
58/7 59/16 59/17
59/18 59/20 60/20
62/8 62/12 62/22 68/9
69/9 71/7 71/9 80/23
81/17 84/2 87/17
91/24 92/4 92/24 93/2
97/12 102/9 103/12
103/20 106/6 107/22
108/2 108/13 117/6
142/25 154/25 155/5
161/7 161/8 161/11
165/24 170/18 170/20
170/21 170/22 170/23
**questioning [2]**

30/21 92/16
**questions [19]** 5/4
8/7 11/6 11/24 40/8
44/18 104/25 108/15
111/5 113/21 113/22
114/16 114/25 116/16
141/9 154/18 155/3
155/8 155/11
**quickly [2]** 121/2
153/19
**quite [2]** 110/4
110/11
**quote [3]** 54/10 59/3
170/8
**quoted [1]** 115/11

**R**

**rabbit [1]** 191/6
**Rachel [1]** 72/1
**racist [1]** 24/5
**raid [4]** 90/10 139/3
159/9 162/14
**raids [2]** 136/20
147/4
**raise [8]** 47/12
124/13 152/17 152/17
164/3 164/20 169/9
170/11
**raised [8]** 27/24
32/10 45/24 121/23
131/19 136/6 136/9
180/24
**raises [1]** 162/9
**raising [1]** 173/11
**rallies [2]** 27/14
135/6
**rally [4]** 145/23
150/3 159/7 161/25
**range [2]** 66/15 74/1
**rarely [2]** 66/18
66/20
**Rassie [2]** 194/7
194/7
**rate [3]** 37/2 151/16
152/20
**rather [2]** 127/25
187/19
**re [1]** 163/3
**re-read [1]** 163/3
**reach [1]** 6/7
**reached [1]** 137/14
**reaching [1]** 26/18
**read [30]** 19/15
19/20 19/24 25/2 26/8
46/19 49/13 55/10
69/21 71/23 79/15
93/4 102/17 120/4
125/22 128/12 132/25
133/16 134/11 159/19
163/3 171/7 171/10
171/21 172/6 173/13
173/24 177/9 188/14

191/25
**reading [9]** 36/24
49/9 56/23 57/1 57/4
80/12 80/17 147/17
172/10
**ready [4]** 117/25
124/3 169/20 175/1
**real [5]** 65/4 65/6
65/7 180/12 180/16
**reality [1]** 53/25
**really [14]** 37/2 37/3
59/3 59/22 61/11 62/1
67/13 68/18 89/1
104/20 110/8 113/22
119/18 173/12
**reason [14]** 8/11
35/4 46/10 46/12 49/3
49/17 49/18 77/19
100/21 103/2 139/7
154/6 158/13 161/6
**reasonable [8]**
34/15 132/17 164/14
181/8 181/21 181/22
182/1 183/18
**reasoning [1]**
169/11
**reasons [8]** 4/17
117/11 118/10 128/21
137/13 138/1 142/11
167/23
**rebut [1]** 18/17
**rebuttal [4]** 120/17
121/15 125/7 125/12
**rebutting [1]** 19/10
**recall [73]** 8/17 27/4
27/25 28/4 42/23 45/8
46/13 46/19 48/10
48/12 54/15 54/19
55/24 55/25 55/25
55/25 56/1 57/3 59/5
65/12 65/13 65/15
65/19 65/24 66/3
66/25 68/20 69/2 69/6
70/11 72/22 72/23
73/23 73/24 74/3
74/11 76/6 78/9 78/14
80/17 87/19 87/23
87/24 90/3 90/12
90/16 90/18 91/4 92/6
92/11 92/11 93/3
93/19 93/22 97/7
97/14 97/19 97/20
97/24 98/1 98/1
100/20 105/4 105/5
107/3 112/16 143/11
145/4 148/15 148/24
149/2 149/7 191/16
**recalls [3]** 93/13
93/18 149/3
**receive [1]** 43/11
**received [13]** 3/9
17/3 55/17 75/9 80/18

82/12 82/24 84/22
95/18 98/18 101/21
102/22 135/21
**receives [1]** 164/8
**recently [1]** 154/2
**recess [9]** 37/7
117/18 117/23 124/20
126/7 153/20 161/13
164/10 166/3
**recite [1]** 169/5
**reckless [1]** 166/19
**recognition [1]**
178/4
**recognize [7]** 73/11
75/4 82/12 84/11 95/3
96/2 101/6
**recollection [3]**
55/20 71/1 94/24
**record [42]** 4/9 7/23
8/6 8/10 9/3 9/11
10/18 11/7 11/10
12/22 14/21 17/21
19/15 21/25 24/20
24/25 25/2 25/21 26/6
26/8 29/3 29/3 30/14
34/7 35/14 69/21
75/13 82/23 124/24
125/9 127/7 129/3
129/9 129/21 130/11
131/4 131/17 171/8
171/12 171/15 174/4
191/23
**records [1]** 143/16
**RECROSS [1]** 3/4
**recurring [1]** 112/19
**red [2]** 157/2 157/6
**Redevelopment [1]**
79/19
**redirect [7]** 3/4 4/24
6/11 25/14 27/21
44/19 109/3
**redirected [1]**
109/21
**redundant [2]** 9/6
25/20
**reelection [6]** 27/2
28/11 30/5 30/15
30/17 33/17
**refer [3]** 48/23 64/12
168/10
**reference [18]** 14/23
59/6 60/8 61/6 72/18
79/15 80/14 86/1
90/13 94/1 101/10
109/17 110/23 114/3
114/21 139/15 176/15
183/5
**referenced [5]** 61/9
73/20 94/6 127/22
180/1
**references [2]** 114/9
170/19

**referencing [4]** 74/9
87/10 109/23 110/8
**referred [2]** 62/25
**referring [8]** 15/2
74/16 140/25 156/10
156/12 157/11 161/15
182/3
**refers [3]** 63/2
121/21 122/6
**reflect [1]** 10/22
**refresh [1]** 15/10
**refreshes [1]** 94/23
**refused [2]** 100/18
100/20
**refute [1]** 141/1
**refuted [3]** 21/24
25/21 26/6
**regard [7]** 11/24
28/9 29/7 43/7 44/11
55/7 121/7
**regarding [7]** 26/25
44/11 66/13 111/9
119/10 127/16 135/20
**regardless [2]** 155/1
160/23
**regards [7]** 47/22
93/7 111/13 115/2
115/19 116/12 157/5
**regular [1]** 175/25
**regulated [1]** 107/1
**regulating [1]** 20/9
**regulations [1]** 22/8
**regulatory [2]**
163/17 163/20
**rehash [4]** 6/3 7/24
14/19 28/23
**rehashing [1]** 25/12
**rehearse [1]** 121/3
**reiterate [2]** 5/15
19/12
**relate [1]** 159/6
**related [4]** 29/5
89/21 161/22 184/16
**relating [8]** 131/15
169/15 170/15 172/14
181/3 184/13 187/25
190/12
**relation [2]** 159/8
159/18
**relationship [9]**
10/20 11/21 13/10
46/3 71/11 93/7
115/18 115/20 116/12
**relationships [3]**
12/1 12/2 112/8
**relative [4]** 84/7
94/5 109/15 112/10
**released [1]** 129/5
**relevance [13]**
48/20 50/15 50/23
56/20 57/6 57/24
61/15 63/24 68/7

**R**

**relevance... [4]**
86/19 90/5 102/7
114/19

**relevant [10]** 7/19
12/8 12/9 23/24 26/12
26/13 34/5 34/17
95/16 156/21

**relief [1]** 36/18

**relieve [1]** 155/9

**religious [3]** 87/22
88/9 90/6

**remain [1]** 132/13

**remaining [6]** 4/22
35/24 108/17 115/15
116/14 180/22

**remains [1]** 13/21

**remarks [1]** 120/9

**remember [13]** 7/25
9/20 19/8 19/16 26/7
26/8 38/7 40/8 40/8
93/6 150/6 182/23
188/9

**remind [3]** 61/4
109/6 112/15

**reminder [1]** 5/3

**remotely [1]** 131/12

**remove [3]** 93/19
155/2 186/25

**renew [1]** 176/13

**reopened [1]** 96/16

**repeat [1]** 137/23

**repeated [2]** 6/1
186/24

**repeatedly [1]**
163/23

**repetitive [2]** 8/8
11/5

**rephrase [8]** 39/8
39/9 50/8 58/7 59/20
60/20 97/12 107/21

**replay [1]** 34/7

**replete [3]** 7/23
130/6 130/11

**reply [1]** 189/17

**report [2]** 34/16
80/25

**reported [3]** 21/18
34/11 161/16

**Reporter [1]** 194/8

**representation [1]**
101/17

**representative [1]**
15/13

**represented [1]**
42/24

**representing [1]**
25/23

**reputation [11]** 31/8
31/14 31/16 31/20
31/24 32/2 32/5 32/24

**33/18 146/10 165/8

**reputational [5]**
165/1 165/10 165/12
191/18 192/22

**request [5]** 54/25
100/18 110/25 117/2
168/14

**requested [1]** 107/1

**requests [1]** 143/16

**required [3]** 42/1
150/1 190/24

**requirement [2]**
43/10 43/23

**requirements [4]**
20/17 84/13 150/15
181/25

**requires [3]** 153/12
154/25 161/21

**researching [2]**
154/4 154/5

**reserve [5]** 4/24
124/25 125/2 131/25
174/12

**reserved [2]** 125/1
176/9

**reserving [1]** 174/7

**residential [2]** 20/13
42/4

**residents [2]** 21/10
21/14

**resigned [1]** 154/6

**resisting [1]** 168/8

**Resolution [1]** 136/1

**resolve [2]** 169/18
193/19

**resources [1]** 47/19

**respect [36]** 12/7
14/21 16/10 16/11
17/6 22/20 22/21 23/9
24/7 45/25 70/20
118/24 119/25 133/2
141/8 152/6 154/12
164/21 167/22 168/10
169/12 171/4 171/6
183/1 186/4 188/2
189/14 189/15 190/10
190/17 191/2 191/18
193/11

**respectfully [3]**
31/11 32/20 55/4

**respective [3]** 43/14
43/24 53/5

**respond [8]** 11/16
76/8 137/22 145/11
145/19 146/3 153/19
155/18

**responding [1]**
21/16

**response [14]** 12/4
27/10 76/9 85/8 93/5
93/10 127/15 130/9

**130/12 130/13 130/13
136/16 142/22 153/20

**responsibilities [2]**
12/3 163/17

**responsibility [1]**
53/16 109/13 117/3

**responsible [3]** 20/9
113/12 113/14

**restate [1]** 60/20

**restaurant [1]**
102/18

**Restaurants [1]**
68/2

**rested [1]** 137/15

**resting [1]** 118/6

**restraint [3]** 35/1
158/13 158/14

**restrict [1]** 144/25

**restroom [1]** 124/13

**rests [1]** 123/21

**resubmit [1]** 42/2

**result [3]** 80/11
109/16 131/16

**resulted [2]** 39/2
129/23

**retained [1]** 163/19

**retaliate [1]** 158/16

**retaliated [10]**
133/21 133/23 136/3
137/13 146/21 147/25
149/7 149/9 149/10
153/4

**retaliating [2]** 160/6
168/1

**retaliation [14]**
28/13 138/1 143/12
146/2 147/16 151/24
154/1 158/11 158/25
159/24 160/16 160/24
163/12 164/2

**retaliatory [29]**
135/21 135/25 136/7
136/20 136/23 137/8
138/20 139/10 144/14
145/24 146/7 146/15
146/22 147/5 147/7
147/17 147/21 152/6
152/10 152/13 152/23
152/24 153/7 155/1
155/4 159/2 161/21
165/19 168/5

**rethink [1]** 121/11

**retired [1]** 181/17

**retirement [3]** 63/2
113/22 113/23

**retool [1]** 121/14

**retreat [1]** 60/24

**review [8]** 38/24
38/25 39/2 41/21

**54/21 97/22 166/5
167/21

**reviewing [2]** 39/21
166/7

**revise [2]** 70/1 70/21

**revised [1]** 179/14

**revisit [2]** 102/25
176/17

**Revitalization [1]**
79/20

**revocation [1]** 77/20

**revoke [1]** 76/11

**revoked [2]** 74/12
74/18

**revoking [3]** 74/3
76/2 78/23

**RFP [1]** 110/2

**Rickenbacker [1]**
110/2

**right [305]**

**rights [4]** 132/16
133/17 134/5 183/16

**rise [6]** 36/6 123/11
124/18 159/12 162/3
166/2

**risk [1]** 178/13

**Rita [1]** 173/18

**RMR [1]** 194/7

**RMR-CRR [1]** 194/7

**Robert [2]** 15/10
15/21

**RODNEY [2]** 1/8
194/8

**role [8]** 9/15 22/25
39/25 40/3 40/4 44/15
51/16 109/12

**Rom [1]** 178/1

**Romero [1]** 32/16

**room [5]** 18/10
114/11 114/17 114/25
194/9

**Room's [1]** 114/22

**Rosa [1]** 32/16

**rose [1]** 8/22

**Roseanna [1]** 127/8

**Rossana [1]** 4/11

**roughly [1]** 110/3

**Royal [6]** 163/8
163/11 163/16 164/2
164/6 168/11

**Ruiz [4]** 85/4 85/5
86/2 86/4

**rule [8]** 7/9 32/20
105/25 118/19 119/2
138/5 149/22 170/1

**ruled [1]** 192/4

**rules [4]** 33/4 120/5
120/6 161/3

**ruling [3]** 13/14
13/21 22/4

**rulings [4]** 16/21
55/6 118/8 132/14

**run [2]** 69/10 122/22

**runoff [2]** 146/12
153/8

**S**

**S.E [1]** 1/19

**s: [1]** 194/7

**safety [10]** 45/25
181/6 181/8 181/21
181/22 181/23 181/23
182/1 182/2 182/6

**said [66]** 4/18 5/7
5/16 8/5 8/10 10/8
17/5 17/17 17/18
17/22 18/10 20/4 25/4
25/21 26/6 27/17
35/17 37/5 47/5 53/14
53/16 54/10 56/23
56/25 57/1 60/24 61/2
61/25 62/16 66/14
66/24 78/20 87/16
99/13 107/5 123/25
124/17 127/22 127/25
128/9 128/25 130/23
132/15 134/22 137/23
142/24 144/24 145/21
147/13 150/19 151/2
151/22 151/23 165/9
165/17 166/9 169/6
169/19 170/3 173/15
185/19 186/22 187/14
188/18 191/14 192/7

**sailing [1]** 26/18

**sake [4]** 30/22
119/22 132/1 183/19

**salary [5]** 50/13
50/19 50/20 63/8
114/1

**same [42]** 11/6
11/24 13/22 16/18
17/8 17/11 17/15
17/16 17/19 19/13
22/12 25/13 25/15
27/19 27/22 28/23
32/8 32/10 34/7 35/14
74/13 78/3 78/5 93/17
118/24 131/18 134/17
136/22 140/13 145/25
168/21 183/16 183/19
184/3 184/25 185/9
185/21 186/3 188/15
191/11 193/11 193/18

**sanctions [4]** 118/20
119/2 119/24 121/24

**Sanguich [1]** 34/13

**Sarnoff [5]** 1/21
4/15 86/18 127/11
134/15

**sat [1]** 34/2

**Saturday [6]** 90/1
90/4 90/4 90/9 90/17
90/17

**S**

**save [2]** 101/14 140/4
**saved [1]** 9/15
**saw [9]** 15/18 57/9 59/3 78/24 150/23 168/13 181/11 185/16 192/2
**say [66]** 19/7 24/22 31/14 33/16 52/6 55/13 56/25 85/9 89/10 93/15 93/16 107/4 111/11 120/25 135/5 138/10 139/6 139/16 141/2 141/14 144/23 146/19 146/21 148/2 152/16 153/1 153/13 154/8 155/21 156/23 157/3 159/14 161/5 162/10 162/12 167/18 169/1 169/17 174/16 178/10 179/1 180/5 180/15 180/16 182/9 183/6 184/18 184/20 184/23 185/25 186/1 186/7 186/9 186/21 186/23 187/18 187/18 190/6 190/7 190/10 190/17 191/3 191/8 191/19 191/20 191/24
**saying [22]** 8/1 26/3 26/4 28/19 29/25 34/2 52/17 54/15 120/10 121/4 137/24 137/25 140/24 145/5 145/17 146/14 152/2 163/15 177/18 180/8 180/17 187/5
**says [35]** 16/6 50/4 70/20 70/25 71/20 78/18 85/6 127/21 130/4 133/16 135/5 138/19 140/10 143/7 145/22 153/3 155/23 158/25 163/11 165/21 166/16 167/16 168/18 170/25 172/10 172/18 181/21 181/24 186/13 186/25 187/15 188/19 188/22 189/5 193/5
**scene [1]** 96/18
**schedule [1]** 175/12
**school [1]** 67/13
**science [1]** 182/7
**scope [11]** 58/11 60/17 82/19 82/20 84/18 95/23 96/22 98/15 102/8 114/18 117/2
**SCOTT [2]** 2/2 2/2

**screaming [1]** 121/4
**screen [3]** 92/9 115/6 115/8
**seal [10]** 121/20 122/2 122/5 122/9 122/10 122/15 128/17 130/4 130/24 132/12
**sealed [4]** 118/19 119/1 121/22 122/6
**sealing [1]** 122/13
**search [5]** 34/22 138/18 176/3 186/4 188/2
**searching [1]** 178/14
**seated [5]** 36/8 36/25 117/24 123/14 127/5
**seating [6]** 81/12 81/16 83/11 83/11 83/21 102/18
**second [24]** 23/8 28/5 28/9 61/5 61/7 80/12 80/17 95/1 108/7 125/5 139/20 146/8 151/3 163/10 168/11 169/6 172/2 172/8 172/9 175/7 175/14 182/17 186/18 187/13
**Secondly [1]** 72/16
**seconds [4]** 60/14 60/23 108/17 108/21
**secret [2]** 142/1 148/5
**secretly [2]** 150/3 150/24
**section [12]** 34/21 99/25 112/5 133/10 156/24 157/15 157/25 158/2 158/7 164/21 165/7 167/25
**sections [1]** 157/4
**see [65]** 25/10 33/11 35/19 55/8 64/17 64/23 66/11 66/22 71/22 73/10 74/8 74/15 74/21 75/18 77/15 78/18 78/21 79/17 79/21 85/2 86/8 87/5 87/8 92/9 92/13 94/20 94/23 101/3 101/8 117/20 124/1 124/6 124/17 132/1 133/8 138/22 139/19 154/3 156/17 156/22 157/11 163/3 164/5 164/16 170/6 170/7 170/11 172/10 173/17 176/23 177/7 178/9 178/11 179/2 179/6 180/23 182/12 184/4 187/6 188/13 191/10

192/13 193/8 193/21 193/22
**seeing [1]** 154/13
**seek [1]** 189/20
**seeking [4]** 162/18 164/25 165/10 188/25
**Seeks [1]** 100/11
**seem [1]** 167/5
**seen [9]** 97/1 134/13 149/24 164/6 177/18 177/25 178/23 185/15 191/24
**sees [1]** 156/2
**seized [1]** 108/8
**seizure [1]** 34/22
**selectively [1]** 133/25
**semantics [1]** 185/1
**semi [1]** 20/15
**semi-independent [1]** 20/15
**send [5]** 5/19 99/12 118/16 119/4 163/21
**sending [3]** 159/18 162/5 179/14
**senior [3]** 83/9 83/20 89/1
**sense [9]** 8/1 12/11 30/25 76/17 139/9 150/14 158/8 158/19 159/4
**sent [4]** 115/7 119/10 119/11 119/12
**sentence [3]** 85/23 167/8 188/21
**separate [9]** 83/7 114/11 115/3 134/25 142/17 147/19 158/1 159/10 161/6
**separately [3]** 135/1 188/22 189/7
**September [2]** 49/1 49/15
**September $201,940.00 [1]** 49/1
**series [2]** 97/8 136/20
**serious [1]** 181/10
**serves [1]** 29/22
**service [6]** 10/14 63/10 63/11 83/4 83/12 100/2
**Services [1]** 56/14
**serving [1]** 143/16
**session [5]** 4/1 117/25 127/1 127/6 166/4
**set [7]** 136/13 137/12 138/14 148/6 151/1 174/25 175/2
**setting [1]** 35/1

**setup [1]** 39/11
**seven [1]** 110/3
**several [1]** 128/17
**shall [8]** 5/12 78/20 100/1 100/4 128/1 170/15 179/25 180/18
**share [1]** 156/12
**she [10]** 70/8 76/6 83/3 83/10 120/24 152/22 153/6 157/17 170/14 179/14
**she'd [1]** 156/12
**she's [5]** 75/19 139/13 156/9 156/11 173/18
**shield [1]** 32/12
**ship [1]** 26/18
**shirts [1]** 61/1
**short [1]** 117/23
**shortly [5]** 64/9 67/16 71/4 153/23 153/24
**should [26]** 99/19 102/25 119/14 119/21 120/7 122/5 127/21 129/12 129/13 133/3 134/12 134/13 144/12 154/16 155/5 155/8 161/5 169/19 170/20 171/1 172/3 172/6 173/15 182/25 183/8 193/17
**shoulders [1]** 53/17
**shouldn't [2]** 6/7 169/25
**show [32]** 17/21 46/25 47/2 48/24 64/13 66/5 69/13 73/1 74/23 75/2 77/8 82/6 82/9 84/8 84/9 86/24 92/3 92/15 94/23 98/3 109/6 109/6 109/8 142/6 143/2 149/11 159/22 159/25 178/25 179/11 186/10 191/13
**showed [3]** 112/14 165/16 184/24
**showing [2]** 179/3 185/14
**shown [6]** 114/9 142/3 160/22 180/10 184/21 185/4
**shut [18]** 40/14 67/25 68/2 68/4 68/6 68/16 70/3 70/23 71/14 104/3 104/10 104/21 106/8 107/12 160/12 162/6 162/15 162/15
**shutdown [1]** 96/15
**shutting [1]** 135/24
**SHUTTS [1]** 1/20

**side [6]** 11/17 26/16 37/9 103/22 119/19 164/8
**sidebar [6]** 118/2 118/13 123/1 125/5 125/8 130/10
**sides [5]** 120/10 120/11 127/22 128/1 193/18
**sidewalk [1]** 97/5
**signed [1]** 122/23
**significant [4]** 39/3 112/20 116/9 118/11
**signoffs [1]** 20/12
**simple [1]** 172/19
**simply [1]** 146/11
**since [12]** 33/13 45/6 96/24 105/10 105/12 112/20 117/4 134/8 151/19 152/1 172/13 177/8
**sincerely [1]** 36/19
**sincerity [1]** 119/21
**singers [1]** 25/5
**single [6]** 14/17 19/10 35/9 35/13 130/10 140/22
**sir [97]** 4/7 5/1 7/14 7/22 8/5 8/18 9/10 9/18 10/1 10/3 10/6 10/11 12/20 12/24 13/11 13/12 13/19 15/3 16/22 17/12 17/15 18/8 18/9 22/2 22/18 23/23 24/1 24/6 24/10 25/8 25/15 28/7 28/24 29/3 30/10 31/6 31/10 31/13 32/22 33/10 46/24 47/5 48/23 49/7 49/13 49/24 50/19 57/20 59/15 59/19 65/3 65/9 65/21 66/4 69/2 69/8 69/16 71/1 73/12 78/9 78/18 80/5 80/25 82/12 89/25 90/9 90/16 90/21 92/2 92/6 95/3 96/2 96/12 97/1 98/3 99/5 99/20 100/18 107/14 107/24 108/10 118/14 119/12 137/23 138/11 153/19 153/21 173/18 182/5 183/9 185/21 186/23 187/15 187/21 188/23 191/1 191/16
**sit [4]** 31/18 31/18 131/25 162/25
**sitcom [1]** 109/7
**sits [1]** 89/22
**sitting [2]** 56/11 124/15

**S**

**situation [1]** 61/8
**situations [1]** 59/8
**six [4]** 35/22 35/24
142/25 173/21
**skillful [1]** 30/1
**skin [1]** 165/12
**skipped [1]** 184/14
**Slide [3]** 189/9
192/18 192/23
**slides [2]** 185/12
186/25
**slow [3]** 19/24 76/20
121/5
**small [2]** 81/7
107/11
**smiles [1]** 124/1
**SMITH [3]** 1/8 4/8
194/8
**snack [1]** 175/11
**snacks [1]** 175/9
**so [218]**
**sold [1]** 102/20
**solely [6]** 52/12
52/15 100/2 130/12
164/25 165/9
**solicited [1]** 47/24
**some [41]** 4/24 5/1
18/3 36/12 36/16 37/7
40/8 52/24 59/2 73/23
73/24 81/23 89/15
95/6 97/21 111/5
112/23 113/21 115/21
116/16 125/23 132/18
132/25 135/21 135/25
135/25 136/1 138/18
140/15 163/19 164/13
168/24 174/8 175/1
175/9 178/15 186/3
191/12 192/10 192/18
193/3
**somebody [3]** 63/21
81/18 116/18
**somehow [1]** 189/13
**someone [6]** 12/16
23/13 83/9 158/10
178/13 179/4
**someone's [1]**
148/11
**something [31]**
11/22 22/6 22/20
23/12 27/19 29/22
36/11 37/14 58/14
80/15 119/20 120/25
130/15 135/14 140/10
140/20 158/7 160/1
172/23 178/1 178/12
178/12 178/14 178/14
178/16 179/12 181/15
182/9 182/10 185/21
188/1

**sometime [1]** 139/24
**sometimes [4]** 76/21
109/24 157/7 173/1
**somewhere [2]**
66/15 88/16
**sorry [20]** 10/25
11/13 14/12 44/21
94/13 112/13 133/10
135/2 137/20 141/12
143/5 151/19 155/20
158/3 161/22 163/10
164/12 166/10 183/24
189/12
**sort [12]** 39/2 47/21
89/15 89/23 96/13
96/14 96/14 102/24
110/10 125/20 164/10
166/12
**sound [5]** 36/11
48/11 78/19 182/17
182/19
**sounds [1]** 81/2
**source [1]** 93/24
**South [1]** 2/3
**SOUTHERN [1]** 1/1
**space [2]** 106/17
107/7
**speak [7]** 19/1 23/4
121/2 136/13 137/21
140/4 144/20
**speaking [20]** 46/9
49/8 54/24 56/7 56/8
56/17 135/10 135/22
137/20 137/21 143/3
143/8 145/13 150/9
151/17 152/7 157/8
160/13 162/1 176/10
**speaks [3]** 83/16
83/18 120/24
**special [7]** 42/21
43/7 43/8 43/11 43/15
43/20 43/23
**specific [25]** 14/23
14/24 14/24 15/2 22/9
22/25 27/25 43/1
47/22 47/25 54/20
69/6 74/2 74/8 74/15
80/15 81/2 81/25
87/10 97/21 107/8
110/23 115/2 117/1
146/24
**specifically [29]**
14/11 15/5 18/9 19/7
22/5 25/17 39/18 45/8
56/8 59/6 60/10 60/24
61/9 65/2 65/15 71/2
80/10 91/4 94/5 97/19
97/20 98/1 99/17
105/4 114/21 133/22
145/9 153/13 162/18
**specificity [4]** 12/24
13/24 153/12 153/13

**specifics [4]** 15/13
17/14 17/14 18/5
**speculation [20]**
16/8 48/20 51/11 54/2
57/12 59/24 60/18
63/14 64/5 67/9 68/24
72/14 81/18 83/25
89/8 91/23 97/10
105/24 106/10 108/1
**speech [39]** 26/25
35/1 135/12 136/11
137/10 137/12 137/25
138/13 141/25 142/6
142/15 146/1 146/8
146/20 147/15 147/19
148/22 149/6 149/13
150/17 151/8 152/13
152/18 152/23 153/2
153/3 153/4 158/17
159/6 159/7 159/11
159/15 159/19 160/1
160/24 161/1 161/21
161/23 161/25
**spend [2]** 71/24
121/9
**spending [1]** 154/5
**spent [2]** 89/18
116/9
**spinning [1]** 28/25
**split [1]** 120/19
**spoke [14]** 9/20
15/20 19/2 27/11
83/10 91/4 91/6 91/8
136/19 140/6 141/22
150/15 162/11 165/9
**spoken [1]** 15/17
**sponsor [1]** 77/15
**sponsored [6]** 23/3
23/5 24/15 24/21
24/22 24/22
**sponsoring [2]** 23/1
24/12
**sponsorship [1]**
107/2
**squarely [1]** 53/16
**staff [26]** 52/12 53/4
59/7 59/21 59/21 60/2
60/24 62/18 65/17
65/23 66/1 66/2 67/6
89/16 102/22 110/6
110/11 110/14 110/17
110/19 110/23 110/24
111/1 111/10 112/12
113/24
**staffs [2]** 53/5
112/13
**stage [1]** 178/6
**stairwell [7]** 104/16
104/21 105/5 105/7
105/12 105/16 105/20
**stairwells [1]** 104/15
**stake [1]** 63/22

**stamp [1]** 101/3
**stand [9]** 37/19
57/22 58/3 58/10
58/18 144/6 149/2
150/20 160/25
**standard [2]** 155/20
167/10
**standards [1]**
134/24
**standing [2]** 58/14
58/15
**stands [1]** 150/20
**start [9]** 7/6 7/13
19/13 69/22 119/5
124/7 174/23 175/5
191/24
**started [5]** 48/9
143/16 143/21 143/22
148/21
**starting [2]** 153/2
180/1
**state [5]** 4/9 83/21
146/24 168/7 177/22
**stated [6]** 5/14
74/21 76/20 128/16
130/8 147/2
**statement [12]** 59/5
62/14 69/7 70/15
83/15 85/22 111/8
127/20 127/23 127/24
152/3 193/1
**statements [5]**
53/25 127/16 127/21
129/5 172/7
**states [22]** 1/1 1/9
9/25 58/4 59/9 63/25
67/8 71/7 71/18 74/20
77/4 80/1 84/1 85/17
91/22 97/11 103/10
103/18 104/5 104/25
129/16 151/13
**stating [2]** 127/24
129/25
**status [1]** 58/5
**statute [1]** 181/21
**stay [3]** 63/17 177/1
192/19
**staying [1]** 13/7
**step [1]** 130/10
**steps [2]** 39/5 125/4
**stick [6]** 87/8 87/9
87/21 87/25 88/12
189/9
**sticking [1]** 187/21
**Stiers [1]** 83/2
**still [28]** 21/2 29/5
29/5 30/24 48/13
68/17 89/12 89/14
94/2 120/2 120/20
139/25 150/13 150/13
155/16 164/1 166/7
167/15 168/18 168/20

168/20 169/9 170/19
180/24 183/14 183/14
184/25 189/1
**stipulate [2]** 173/21
185/22
**stipulated [3]** 171/8
171/8 171/17
**stipulation [5]**
151/23 152/4 168/3
168/9 173/22
**stone [6]** 16/15
19/11 21/23 22/20
26/4 174/18
**stood [1]** 30/5
**stop [11]** 20/18
20/19 95/1 135/24
144/16 145/2 145/3
145/7 145/9 147/4
151/9
**story [5]** 184/7
184/11 184/12 187/4
187/4
**strategy [1]** 31/23
**Stream [1]** 160/17
**street [10]** 1/16 1/19
75/22 76/1 87/21
89/23 90/2 94/19
94/20 97/5
**stricken [4]** 107/21
128/1 172/14 192/5
**strike [8]** 40/23
106/9 107/20 129/8
130/25 172/7 176/9
176/17
**string [1]** 157/6
**stringent [2]** 70/2
70/22
**structure [1]** 114/1
**structures [2]** 70/4
70/24
**stuck [1]** 139/6
**stuff [2]** 151/3 192/1
**style [1]** 89/23
**Suarez [6]** 1/12 4/11
14/12 14/12 113/8
127/8
**subject [20]** 5/19
7/20 16/12 22/1 22/11
26/22 31/1 31/12 32/8
55/6 56/1 58/14 70/13
73/8 75/21 121/10
123/21 163/18 180/24
183/14
**submit [2]** 120/3
191/12
**submitted [6]** 129/4
131/6 173/9 177/2
177/5 178/8
**subordinates [5]**
38/20 53/2 66/2 100/5
109/9
**Subsection [5]**

**S**

**Subsection... [5]**
78/15 78/18 78/20
79/15 79/15
**subsequent [5]**
38/16 39/19 72/22
94/4 157/2
**subsequently [4]**
38/25 39/1 39/22
108/8
**substantial [1]**
129/24
**succeed [1]** 141/18
**success [1]** 110/13
**successes [1]** 110/9
**successfully [1]**
28/18
**such [7]** 13/1 15/5
41/15 108/5 136/8
172/4 192/6
**sued [4]** 162/17
167/25 188/22 189/7
**suffer [1]** 192/21
**suffering [1]** 165/22
**sufficient [3]** 167/2
167/16 169/4
**sufficiently [1]**
22/18
**suggest [2]** 174/1
191/10
**suggested [3]**
102/22 134/3 134/7
**suggestion [2]**
21/24 149/21
**suing [2]** 139/5
160/17
**Suite [5]** 1/13 1/16
1/19 1/21 2/3
**summary [5]** 129/12
171/18 189/19 191/12
191/21
**sun [2]** 30/9 34/4
**supervision [2]** 40/5
52/13
**support [16]** 10/21
10/21 13/9 14/25 51/7
122/21 136/4 141/13
142/19 146/12 146/17
149/7 150/21 158/14
161/2 161/3
**supported [12]** 13/8
14/3 14/10 14/12
14/13 14/25 28/15
28/17 136/4 147/12
150/20 153/8
**supporting [3]** 27/1
28/20 122/4
**supportive [1]** 13/25
**supposed [2]** 21/13
106/18
**Supreme [5]** 151/13

157/12 159/20 159/21
192/7
**sure [46]** 19/21
20/16 33/20 37/20
37/25 44/9 47/2 61/22
64/15 81/14 83/10
84/6 102/18 113/22
118/3 120/8 123/7
123/9 123/19 124/3
129/9 139/15 145/15
163/7 164/7 164/8
166/16 170/12 171/12
171/14 175/12 176/16
179/9 184/9 185/2
188/2 188/14 188/17
189/9 190/9 191/11
191/17 192/6 192/18
192/19 193/14
**Surfside [1]** 181/5
**surprise [1]** 149/14
**surprised [2]** 144/8
144/8
**surveillance [1]**
102/22
**sustain [4]** 35/12
57/19 87/17 164/1
**sustained [37]** 6/2
14/22 15/21 15/22
24/6 31/14 31/15
31/17 32/9 39/13
41/10 43/17 49/11
54/3 56/21 57/7 57/13
57/25 62/22 64/1 64/7
68/9 71/9 77/6 80/3
80/22 84/2 90/7 90/14
97/12 99/9 102/9
104/7 106/6 106/11
111/20 112/2
**sustaining [2]** 16/11
49/22
**SW [2]** 75/22 76/1
**switch [1]** 154/17
**sword [1]** 32/11

**T**

**T-shirts [1]** 61/1
**T.V [1]** 109/7
**take [41]** 7/25 20/14
32/12 34/16 38/20
39/5 46/16 53/19
73/23 76/23 80/17
86/12 88/6 94/7 99/20
103/6 108/19 108/20
109/13 109/24 110/17
115/24 116/5 116/16
124/13 140/10 143/23
151/5 151/16 154/18
159/23 164/10 169/23
172/3 172/5 173/24
175/1 187/11 188/11
192/7 193/5
**taken [6]** 60/9 88/3

92/6 109/15 109/19
163/12
**taking [9]** 14/2
32/15 33/15 37/23
60/1 61/8 144/13
151/20 187/19
**talk [8]** 19/4 32/16
66/18 104/15 149/3
165/17 180/3 181/8
**talked [7]** 10/17
15/16 27/12 27/13
27/13 170/14 171/24
**talking [19]** 16/7
37/1 38/7 69/25 70/13
72/9 76/2 83/4 83/5
92/11 93/3 93/6 94/2
94/4 136/25 137/1
137/8 151/17 193/2
**talks [1]** 152/25
**tantamount [3]** 35/1
158/13 158/14
**Taquerias [38]** 68/6
81/12 82/14 84/5 84/7
84/12 85/13 86/7
87/20 87/22 87/24
88/8 88/9 88/12 89/7
90/1 90/9 90/11 90/16
94/8 94/17 95/5 96/2
102/13 103/6 104/3
105/10 105/11 105/23
106/8 117/12 135/24
136/8 139/3 143/17
162/4 162/6 162/15
**Taquito [1]** 34/14
**target [1]** 134/11
**targeted [3]** 18/22
134/3 141/1
**targeting [12]** 18/18
35/7 97/9 104/3 115/2
143/12 144/3 146/11
148/21 149/5 151/24
160/13
**task [4]** 97/15 99/13
100/8 102/24
**Taylor [2]** 15/10
15/21
**technical [1]** 174/22
**Ted [3]** 109/5 109/6
109/8
**tell [23]** 8/24 8/25
21/17 25/17 27/19
87/7 87/12 87/13
87/16 109/12 109/24
119/5 121/20 131/20
145/16 159/4 170/9
175/8 175/10 178/19
185/23 185/24 189/10
**telling [6]** 25/20
88/1 102/11 103/24
172/20 179/4
**tempered [1]** 93/12
**temporary [4]** 41/2

41/5 41/8 41/13
**ten [8]** 25/11 60/14
60/23 61/4 61/7
108/16 108/21 179/16
**tenants [1]** 134/1
**tennis [1]** 145/16
**tenor [1]** 110/9
**tenure [1]** 89/12
**term [1]** 34/19
**terminate [2]** 53/20
102/4
**terminated [1]**
108/8
**termination [1]**
53/16
**terminations [1]**
53/14
**terms [9]** 9/17 32/15
42/22 63/22 94/1
128/25 141/15 152/7
169/11
**testified [23]** 5/21
16/4 17/7 24/3 24/17
24/25 53/8 53/11 67/1
103/5 104/9 106/13
106/16 106/19 142/1
142/8 144/5 152/8
152/14 154/7 165/15
165/18 190/15
**testifies [1]** 6/14
**testify [7]** 12/11
12/19 12/25 106/20
135/22 136/18 144/24
**testifying [1]** 65/13
**testimony [45]** 5/16
6/12 6/16 8/9 16/9
22/2 22/12 22/13 23/9
24/3 25/15 27/15
29/10 30/20 31/4 34/8
34/8 44/11 52/22
54/20 62/21 66/6 67/1
100/6 101/4 106/10
107/20 108/21 118/6
135/20 136/22 137/7
141/9 143/11 143/11
144/7 154/3 165/4
172/14 176/10 176/11
182/3 184/1 184/6
189/15
**text [10]** 69/13
71/20 75/15 100/23
101/6 101/12 101/17
104/12 115/6 115/13
**than [17]** 21/2 27/17
50/13 63/22 80/8
80/18 81/18 91/5
130/16 149/16 155/6
167/7 169/19 169/25
171/3 187/19 193/4
**thank [36]** 4/18
25/24 33/24 35/16
36/4 36/19 37/4 55/16

64/21 77/12 82/23
84/20 86/11 88/6
101/20 108/15 117/14
117/15 117/17 123/24
124/16 126/3 126/6
127/13 156/20 165/25
166/1 171/22 175/18
176/18 177/11 179/20
187/23 192/17 193/14
193/20
**thanks [2]** 37/3
175/3
**that [1039]**
**that's [181]** 5/6 5/15
6/2 8/8 10/1 10/3
10/6 10/18 11/22 12/6
13/11 15/13 19/3 19/4
19/5 21/6 22/17 23/7
23/18 23/22 23/25
24/15 24/16 24/23
26/7 26/14 26/17 28/4
28/6 28/6 28/7 28/16
29/18 29/21 29/22
31/6 32/3 32/24 33/1
33/4 33/6 34/24 35/12
35/18 37/25 37/25
47/5 48/8 49/3 49/6
49/17 49/18 50/17
52/14 56/17 60/8 60/9
60/24 61/4 61/6 61/9
62/16 63/12 66/16
66/17 68/19 70/16
70/21 70/25 71/1
71/20 72/8 77/21 83/5
85/20 86/24 87/11
87/12 87/13 89/3
89/23 89/23 95/24
96/18 96/21 99/17
99/19 106/19 107/12
109/23 110/7 118/16
119/23 120/23 121/1
122/10 122/14 122/15
122/15 125/13 125/19
125/19 126/2 130/1
130/25 131/18 133/7
134/6 134/20 136/2
138/3 140/20 143/15
143/15 143/16 144/8
144/25 147/3 148/7
149/4 150/19 152/3
152/6 153/2 154/12
155/12 157/9 158/17
159/16 160/18 161/7
162/15 165/20 165/24
166/20 167/2 167/19
169/2 169/11 169/22
170/1 171/17 172/20
173/6 177/23 178/4
178/12 178/21 179/10
180/7 180/8 180/13
181/11 181/12 182/8
182/10 182/13 184/8

**T**

**that's... [23]** 184/8
184/11 185/8 186/17
186/21 186/24 187/4
187/4 187/8 187/9
188/16 188/16 188/23
189/1 190/8 190/25
191/15 191/22 192/8
192/12 192/13 192/14
192/21
**Theater [1]** 107/10
**their [104]** 5/20 8/2
12/13 20/13 27/8
28/11 28/12 29/16
29/24 35/9 53/5 57/4
63/2 63/8 63/8 63/13
63/17 65/3 65/6 65/7
72/21 74/12 81/25
96/23 106/25 107/1
107/4 107/6 109/13
109/14 110/17 112/7
112/8 112/10 117/2
119/19 127/6 132/16
133/5 134/3 134/4
134/4 134/12 134/14
134/18 136/14 136/15
138/5 139/8 139/19
140/2 140/4 140/5
140/23 140/23 141/13
141/16 141/20 141/21
141/23 142/6 142/10
142/12 142/21 145/3
146/16 147/14 148/4
148/6 148/8 149/1
149/22 149/23 150/1
150/2 150/4 150/5
151/25 151/25 152/24
153/15 155/6 159/20
160/6 160/12 160/24
162/17 162/25 163/16
163/20 167/12 168/1
173/9 173/12 180/3
180/5 180/11 181/14
184/18 184/24 190/17
190/20 191/24 193/2
**them [90]** 7/10 14/6
16/25 18/20 19/20
31/18 46/6 48/8 52/19
53/6 59/8 60/6 60/13
60/22 61/1 61/4 63/16
63/17 65/2 66/3 85/14
93/14 96/6 96/7 96/8
96/9 96/21 96/23
104/4 104/10 104/21
107/12 107/17 109/24
110/15 117/4 118/16
119/5 119/5 119/25
122/19 124/11 133/21
133/23 133/24 134/1
134/2 135/6 135/24
136/2 140/5 144/1

144/6 144/12 144/16
144/17 144/24 146/14
148/17 150/7 150/23
152/5 152/9 158/17
160/14 162/10 162/14
162/20 163/18 167/5
167/19 169/17 170/10
173/13 174/20 175/8
175/10 175/21 175/21
175/22 175/22 175/25
177/16 179/3 183/20
185/13 185/15 185/24
185/24 191/10
**theme [3]** 60/10
102/2 102/6
**themes [1]** 7/17
**themselves [5]** 85/6
133/4 134/6 141/25
142/7
**then [63]** 5/2 6/16
6/19 7/2 7/5 10/9
13/7 20/11 20/22
22/24 37/6 39/19
39/22 47/17 49/20
66/16 77/21 77/25
90/24 93/15 94/3 98/3
104/9 108/6 108/7
114/7 128/12 129/7
130/25 132/2 135/5
135/21 135/24 137/13
137/25 138/25 142/2
143/20 143/24 143/25
145/4 147/25 148/2
149/20 151/9 151/12
155/18 156/17 158/16
159/9 162/14 167/6
172/8 174/9 174/13
175/5 175/6 175/13
175/14 188/18 190/9
191/2 193/1
**theory [1]** 29/24
**there [163]** 5/12 7/6
9/13 11/3 16/15 17/9
17/20 17/22 17/24
18/9 18/18 20/7 20/22
20/23 20/24 20/25
21/1 21/1 22/17 24/2
24/4 25/6 26/14 26/15
29/5 29/14 31/1 31/14
31/19 31/21 32/19
34/3 35/6 35/19 39/15
41/12 41/15 42/11
42/23 43/19 46/10
53/5 55/5 67/11 69/6
69/10 74/3 74/11 76/7
76/17 78/18 79/13
80/12 81/22 87/5
87/23 87/25 88/2 88/4
88/11 88/13 89/5
89/13 89/16 90/19
90/21 90/23 90/24
91/6 91/15 92/24

92/24 93/7 93/13
93/19 93/19 94/4
94/16 94/18 95/1
96/11 96/11 97/1 99/6
101/3 102/2 102/14
105/3 105/7 105/10
105/12 105/23 106/16
107/6 116/11 120/10
121/13 127/21 128/2
128/16 129/11 129/22
131/13 131/25 132/17
132/25 133/6 135/17
135/19 135/24 136/12
136/20 136/20 136/22
138/25 139/1 139/19
141/4 142/14 142/17
146/14 146/25 147/1
151/7 151/9 151/9
151/12 151/14 154/18
155/4 155/6 155/6
155/8 155/19 157/7
157/24 158/1 160/13
160/18 162/9 162/12
165/2 165/16 166/16
168/3 172/3 172/13
173/2 173/18 174/8
178/25 180/22 180/22
181/16 185/7 188/3
189/9 189/15 190/12
191/7 191/7 192/3
192/3
**there's [48]** 16/5
18/10 25/5 29/10 30/9
36/12 37/13 49/7 77/2
77/10 84/24 93/11
95/13 101/10 103/24
104/15 104/16 104/21
107/18 119/18 119/20
120/6 120/22 132/1
132/18 134/8 141/8
151/7 153/5 157/12
157/18 159/18 162/8
165/4 166/12 167/16
173/1 175/6 176/14
178/2 178/11 178/25
179/2 185/12 189/21
190/15 192/6 192/9
**thereafter [1]**
145/25
**therefore [6]** 124/5
129/25 130/5 132/5
145/18 187/16
**thereof [2]** 100/1
100/4
**Thereupon [6]** 36/7
117/22 123/12 124/19
179/23 193/24
**these [44]** 6/12 11/8
14/19 16/4 16/5 16/7
26/20 28/20 29/2 59/2
59/7 59/22 66/13
71/25 72/3 73/11

79/21 80/2 95/3 96/14
98/10 120/5 136/8
137/12 137/15 137/24
137/25 142/25 148/3
149/3 149/6 149/13
150/16 151/2 152/17
154/13 162/9 171/10
174/19 183/11 185/12
185/13 185/13 188/23
**they [216]**
**they'll [1]** 175/9
**they're [53]** 5/23
20/13 20/17 20/18
28/19 28/21 34/2 35/2
67/13 72/5 83/4 83/4
109/18 115/14 121/5
133/4 133/5 134/4
134/13 140/24 140/25
146/7 147/16 148/7
149/24 150/25 151/3
154/14 159/9 159/12
159/13 159/14 165/6
167/4 167/6 169/24
174/13 174/19 179/3
180/5 183/17 184/3
188/25 189/22 190/11
190/14 190/23 190/24
191/4 191/8 191/12
191/19 191/19
**they've [9]** 23/6 35/9
137/14 149/15 149/16
149/24 153/15 158/20
173/15
**thing [25]** 14/17
19/13 25/13 27/22
93/17 108/5 143/25
148/17 151/21 154/16
160/12 164/21 170/17
181/4 181/11 184/3
184/25 185/9 185/21
186/3 188/15 192/7
192/15 193/11 193/18
**things [38]** 26/8
29/2 30/8 32/9 34/4
48/6 62/19 89/16
110/10 120/6 120/9
121/11 124/22 127/14
132/18 135/7 136/2
136/9 139/7 142/10
148/15 149/17 149/18
150/4 151/2 162/8
164/10 165/5 165/24
170/2 170/5 171/10
181/9 186/5 189/10
189/16 193/6 193/10
**think [55]** 5/5 6/4
6/7 9/5 11/2 15/13
32/13 33/14 34/9 35/2
35/18 37/12 42/23
81/22 95/13 95/16
116/18 116/21 119/9
120/20 121/21 122/5

122/14 123/1 125/5
125/8 133/8 134/20
139/6 140/19 141/22
142/3 142/20 143/10
150/23 155/3 155/15
159/5 161/24 163/22
164/17 165/5 166/20
167/10 167/10 167/11
167/16 173/9 173/12
173/23 184/14 184/16
188/5 190/23 193/9
**thinks [1]** 118/12
**third [2]** 115/11
189/6
**this [311]**
**Thomas [1]** 2/2
**those [79]** 4/25 5/16
8/9 11/6 12/1 13/8
13/10 14/18 18/15
18/16 19/16 21/7
21/22 22/9 26/8 30/8
32/5 32/9 32/21 33/18
34/12 38/13 47/19
53/25 66/21 96/4
105/22 112/25 113/22
114/4 114/4 114/5
114/16 114/25 115/13
118/10 124/22 129/5
129/17 130/2 132/6
135/7 135/11 135/11
136/2 137/9 142/10
142/11 143/1 149/17
149/18 150/3 150/10
155/1 155/3 155/8
155/9 155/10 155/11
157/2 157/16 158/8
159/3 159/4 159/8
162/1 162/18 165/5
165/8 165/23 168/9
169/4 181/9 183/4
186/5 188/2 189/16
193/6 193/10
**though [6]** 29/13
30/24 144/16 145/7
183/8 192/9
**thought [11]** 7/5
9/13 16/7 68/11 122/7
135/2 144/10 167/8
172/3 177/14 177/17
**thousands [1]** 48/16
**threat [1]** 57/10
**threaten [2]** 57/15
57/17
**threatening [1]**
55/21
**three [6]** 37/10
86/12 97/7 124/11
124/15 143/18
**through [37]** 9/1
11/7 14/16 15/9 16/16
19/6 19/19 24/9 25/11
25/13 28/2 29/10

**T**

**through... [25]**
35/13 37/7 41/21 46/3
53/3 53/6 53/14 99/18
100/2 100/13 100/15
101/14 110/4 110/4
124/2 130/10 135/4
137/7 150/13 162/17
164/10 171/25 176/16
186/25 193/14
**throughout [17]**
6/12 16/18 25/16 29/2
33/16 34/8 35/13
36/20 36/23 50/10
72/6 119/17 133/13
134/17 149/14 192/9
192/10
**thumb [3]** 177/15
177/24 178/3
**tied [1]** 146/16
**till [1]** 124/20
**time [63]** 5/1 5/2 6/8
14/1 21/4 21/16 21/24
22/19 26/5 27/18
28/12 29/11 37/3
40/11 41/16 41/18
45/9 50/20 54/16 56/9
56/12 59/25 60/18
61/15 61/17 68/11
74/1 76/18 76/19 85/3
89/16 89/19 101/14
108/7 110/18 116/10
121/10 122/14 123/20
124/14 131/6 131/21
131/23 138/19 139/6
144/6 145/8 154/2
157/20 174/8 174/9
174/11 174/12 174/25
175/1 175/2 175/10
175/15 175/16 192/4
192/6 192/8 193/13
**timeframe [3]** 29/12
29/14 104/5
**timely [1]** 127/19
**times [8]** 21/7 66/15
96/24 109/5 109/22
110/7 136/10 162/6
**timing [3]** 68/18
89/11 94/1
**Tobacco [1]** 83/5
**today [12]** 7/4 7/10
7/11 76/10 100/6
124/1 139/2 140/15
144/8 148/17 148/23
173/5
**together [1]** 87/25
**told [24]** 9/22 11/5
12/22 21/23 22/19
48/25 49/14 54/6 60/6
60/13 60/22 84/4 91/9
91/12 91/15 118/21

120/18 124/8 145/5
145/9 169/16 171/7
174/19 191/13
**tomorrow [27]** 7/2
7/6 7/8 7/12 36/17
37/8 37/15 71/24
124/3 124/7 124/17
140/15 143/1 169/14
169/21 172/24 173/5
173/11 174/3 174/20
176/24 177/8 177/10
185/24 191/10 193/21
193/23
**tone [3]** 57/4 109/18
110/9
**tones [1]** 57/2
**tonight [2]** 179/19
192/1
**too [12]** 8/18 17/5
35/21 36/16 69/18
102/2 138/1 145/14
176/14 178/16 184/15
188/15
**took [13]** 16/24 71/5
107/6 110/19 112/20
131/4 131/11 132/5
139/8 160/23 192/4
192/6 192/15
**top [3]** 85/8 88/22
142/2
**topic [18]** 8/5 8/11
14/13 16/19 19/8
23/15 23/19 23/22
23/24 24/19 25/8
25/17 30/10 30/19
34/9 35/8 38/7 70/19
**topics [12]** 5/20 5/20
5/23 6/5 6/8 6/10
7/16 11/8 11/15 26/20
33/19 35/18
**total [5]** 4/22 35/22
37/10 66/14 124/12
**totally [1]** 180/9
**touch [7]** 12/12
12/14 12/17 12/18
13/7 142/4 142/11
**touched [1]** 29/18
**Tower [5]** 34/13
107/10 139/4 162/4
181/5
**town [1]** 167/25
**track [2]** 5/5 152/10
**trait [2]** 32/23 33/8
**traits [1]** 31/5
**transcript [9]** 17/18
19/6 19/19 25/3 49/10
64/12 114/9 130/21
131/3
**transcription [1]**
194/4
**transcripts [1]** 129/3
**transparent [2]** 67/2

67/7
**transported [1]**
131/24
**treat [2]** 17/25
118/24
**treated [7]** 10/22
14/1 14/4 17/7 17/11
17/19 18/6
**treatment [5]** 14/6
17/4 157/3 157/5
157/6
**trespass [3]** 168/8
171/10 171/21
**trespassing [2]**
133/23 168/4
**trial [22]** 1/8 16/18
25/16 31/22 125/14
127/15 132/5 133/1
133/9 137/14 138/7
138/8 139/21 139/22
148/16 149/4 154/7
173/17 190/15 192/7
192/8 192/10
**tried [5]** 15/23 29/8
31/15 140/7 148/2
**triple [1]** 173/1
**true [11]** 46/15 49/3
49/17 49/18 49/24
67/19 129/6 130/1
130/9 130/22 148/20
**trust [2]** 89/15 145/1
**truth [4]** 54/5 54/5
129/17 172/20
**truthfulness [6]**
31/4 31/5 32/21 32/23
33/8 33/18
**try [5]** 28/23 115/6
140/4 169/17 173/2
**trying [12]** 16/2
71/14 83/20 135/23
145/20 151/1 151/3
159/14 174/20 185/2
187/23 188/13
**TUESDAY [2]** 4/1
126/8
**turmoil [1]** 192/10
**turned [1]** 148/19
**twelve [1]** 71/5
**twisting [1]** 52/25
**two [27]** 5/12 5/24
37/6 42/23 72/17
93/12 93/14 110/4
115/15 121/10 134/25
135/7 139/21 144/21
146/16 150/10 150/16
151/10 153/15 154/11
154/18 159/9 170/5
174/18 189/3 189/4
189/9
**type [4]** 20/1 162/21
180/24 191/12
**typically [5]** 47/18

47/19 47/20 81/8
96/18
**typo [1]** 173/1
**typos [1]** 170/19

**U**

**U.S [1]** 161/16
**ultimate [1]** 9/17
**ultimately [2]** 44/12
109/21
**unable [1]** 104/3
**under [54]** 23/3 30/9
34/4 34/22 38/20 39/5
39/10 39/24 40/5
51/16 52/13 81/14
81/21 111/15 121/20
122/1 122/5 122/8
122/10 122/15 128/17
130/4 130/24 132/11
133/20 134/4 134/5
139/21 140/5 140/10
140/13 140/19 140/25
141/2 141/15 141/20
142/12 142/20 151/5
151/13 151/16 151/20
154/18 155/5 155/10
157/25 158/2 158/19
159/4 160/25 160/25
163/24 167/25 181/15
**understand [39]**
12/7 13/14 13/21
16/21 18/2 21/4 22/4
26/9 26/21 27/16
30/11 32/18 32/25
33/6 33/10 41/15
51/14 51/16 82/22
92/23 113/3 114/10
114/15 114/24 115/13
117/10 147/22 148/13
150/12 155/23 156/5
162/24 171/13 171/13
171/22 182/5 185/3
187/23 188/11
**understanding [9]**
18/13 18/16 19/2
20/20 22/7 41/24
101/19 110/16 120/8
**understands [2]**
22/4 26/10
**understood [16]**
12/13 38/13 111/2
121/18 168/15 171/11
171/19 178/18 186/14
187/2 189/8 191/3
191/17 192/14 193/20
193/22
**unemployed [1]**
106/8
**unfortunately [2]**
35/23 181/14
**uniform [1]** 22/14
**unilaterally [2]**

51/23 51/25
**Union [1]** 34/13
**UNITED [5]** 1/1 1/9
9/25 10/12 151/13
**units [1]** 102/11
**universal [1]** 184/11
**unless [8]** 11/1
31/18 81/9 119/18
173/21 178/11 185/22
193/9
**unlike [1]** 146/23
**unpermitted [1]**
41/25
**unquote [1]** 170/8
**unsafe [2]** 70/3
70/23
**unsigned [1]** 122/22
**unsuccessful [1]**
29/17
**until [11]** 138/6
138/14 139/2 140/6
140/9 148/1 154/6
162/6 174/7 174/11
181/10
**unturned [5]** 16/15
19/11 21/24 22/20
26/5
**up [63]** 4/24 5/4
5/12 9/3 10/10 17/18
17/21 19/9 19/20
29/19 29/21 31/18
31/18 31/21 37/9
37/14 37/19 39/15
42/1 46/17 54/22
57/22 58/3 58/10
58/14 58/16 58/18
64/23 65/14 66/19
72/2 72/22 82/7 85/8
101/3 102/25 115/6
115/8 115/17 118/14
119/7 120/23 124/8
124/23 131/25 143/13
143/14 143/22 143/25
144/6 145/21 149/11
167/18 169/10 174/23
174/25 175/2 175/25
178/14 182/21 191/7
191/11 192/15
**upbringing [1]**
10/18
**update [8]** 70/1
70/21 72/1 72/3 72/18
72/21 85/9 110/24
**updated [1]** 179/15
**updating [1]** 72/5
**upon [2]** 7/9 103/7
**upset [1]** 28/21
**upstairs [1]** 102/19
**urgency [1]** 76/17
**us [23]** 5/19 5/22
35/24 54/10 70/1
70/21 71/24 109/6

**U**

us... **[15]** 109/12
138/3 138/18 139/22
141/18 145/8 154/10
156/12 160/12 160/13
173/11 174/24 175/22
177/1 177/13
USB **[1]** 175/21
use **[13]** 4/23 4/25
5/1 28/12 32/11 75/24
77/20 78/23 119/8
120/23 124/12 175/16
183/25
used **[4]** 21/7 154/14
165/20 185/18
uses **[1]** 141/14
using **[3]** 35/2 180/3
185/1
usual **[8]** 180/2
180/2 180/4 184/15
184/17 185/7 186/5
187/6
utilize **[1]** 40/24
utilized **[2]** 41/13
44/13
utilizing **[1]** 41/7

**V**

vacated **[1]** 157/13
Valentine **[2]** 152/25
153/23
Valentine's **[2]**
143/17 153/24
valet **[34]** 18/14
18/14 18/18 18/19
19/3 19/5 19/22 19/23
20/2 20/3 20/5 20/9
20/21 21/3 21/5 21/7
21/9 21/13 21/17
21/22 22/5 22/6 22/8
22/9 22/11 22/14 40/8
40/9 42/3 45/11 45/25
46/11 46/14 46/21
valets **[1]** 19/1
Vals **[1]** 15/12
values **[1]** 10/5
various **[6]** 34/11
52/18 89/20 112/12
112/12 167/21
vehement **[1]** 17/17
vehemently **[2]** 17/7
33/23
vehicle **[1]** 51/5
Velvet **[1]** 15/10
verbatim **[1]** 25/13
verdict **[17]** 132/2
134/23 140/15 149/25
150/1 150/14 154/17
154/19 155/11 161/5
166/12 167/12 170/18
170/23 171/13 173/5
174/17

verify **[1]** 89/17
versa **[1]** 120/7
version **[2]** 179/14
184/5
versions **[1]** 184/1
versus **[8]** 4/8
156/19 157/11 159/20
161/20 163/8 184/1
184/1
very **[37]** 13/2 13/3
13/4 13/5 21/11 27/25
32/10 56/1 65/7 66/20
67/6 81/2 110/1
110/11 110/16 110/23
110/25 115/2 116/12
117/1 118/10 135/20
136/3 137/14 138/7
138/14 140/6 142/8
142/19 148/19 154/12
160/8 160/17 164/25
177/13 183/10 193/15
vetted **[1]** 45/13
vice **[1]** 120/7
Vickers **[3]** 56/7
56/13 56/14
Victoria **[2]** 70/7
75/18
video **[26]** 54/23
55/13 55/18 57/9
61/23 86/24 87/1 94/7
94/23 94/25 95/5
95/12 95/19 98/3
98/19 99/3 112/14
145/4 178/21 182/16
182/16 182/17 182/18
182/25 183/5 183/9
videos **[1]** 178/7
Viernes **[6]** 42/10
42/12 106/14 107/24
108/3 143/15
view **[2]** 37/23 174/7
views **[1]** 64/10
vigorously **[1]** 30/9
violate **[1]** 99/5
violated **[2]** 108/6
141/3
violating **[1]** 20/13
violation **[4]** 100/16
133/21 184/21 185/6
violations **[9]** 18/23
34/11 35/6 43/2 44/12
77/19 160/13 160/15
185/5
virtually **[2]** 12/13
16/25
visited **[1]** 102/15
visiting **[1]** 145/2
vivid **[1]** 144/7
voice **[3]** 57/2 57/5
80/18
vote **[2]** 30/6 114/6
voter **[1]** 93/13

votes **[1]** 113/17

**W**

wait **[17]** 49/7 52/21
77/2 87/16 89/6 137/5
137/5 137/19 138/10
139/13 140/9 144/19
145/12 145/12 148/1
174/11 189/11
waiting **[1]** 173/15
waive **[1]** 100/6
waives **[1]** 132/16
waiving **[1]** 32/6
walk **[2]** 96/17 96/20
walk-alongs **[1]**
96/17
walked **[1]** 87/20
walking **[3]** 87/5
87/8 88/12
want **[92]** 4/23 5/3
5/24 7/17 8/24 9/3
11/4 17/6 23/18 24/14
25/24 29/4 31/18
31/21 31/23 31/24
31/25 32/11 32/13
32/25 33/1 33/6 34/3
36/19 36/20 39/7
54/19 59/17 60/9
63/18 67/1 69/22
76/11 76/11 80/14
85/24 86/24 96/23
97/1 97/21 101/11
112/11 119/4 119/16
119/19 120/7 121/4
122/1 122/16 128/19
129/9 131/2 137/15
138/22 143/2 143/6
145/13 145/15 145/15
145/16 147/21 151/20
155/17 156/6 157/16
162/22 167/3 169/10
171/23 173/14 174/12
175/22 178/13 178/15
178/21 179/5 182/9
182/15 182/20 183/20
184/9 185/23 185/24
188/14 189/10 189/16
189/17 191/7 191/23
192/12 192/19 193/18
wanted **[19]** 33/20
77/21 118/1 121/18
130/24 145/7 160/9
164/3 164/13 166/8
170/11 171/14 173/8
177/1 183/10 188/8
189/20 191/13 191/17
wanting **[2]** 149/2
157/4
wants **[9]** 32/18
33/17 54/7 57/16
57/17 70/1 70/21
158/6 168/10

warned **[1]** 108/6
warranted **[2]**
131/21 132/3
was **[420]**
wasn't **[17]** 28/15
40/25 47/21 60/5 65/1
69/10 80/7 86/23
89/18 94/18 96/7
100/21 104/20 106/25
142/6 144/16 172/20
waste **[2]** 131/20
174/12
wasting **[1]** 174/9
watch **[1]** 23/4
watching **[4]** 36/24
90/10 94/16 94/18
way **[19]** 16/2 20/8
39/10 43/5 60/11
67/13 68/17 85/8
88/11 96/21 99/19
102/24 120/3 121/6
143/13 169/7 169/24
179/10 179/11
ways **[5]** 47/14 63/18
72/12 96/23 143/14
we **[262]**
we'll **[16]** 7/13
108/19 108/20 109/25
117/18 117/20 118/17
118/17 121/24 124/17
124/20 124/22 172/24
179/8 193/21 193/22
we're **[54]** 25/10
25/12 25/14 28/7
28/24 29/19 31/1
35/11 37/5 37/6 69/5
69/5 94/1 104/2
104/19 118/5 118/19
119/5 119/24 120/20
124/11 125/24 128/11
136/25 137/1 138/17
138/18 139/14 139/15
139/18 140/6 147/8
150/5 154/10 159/16
161/10 161/24 163/22
165/9 166/10 166/23
171/12 173/7 173/20
174/9 174/23 176/22
178/15 179/6 179/24
183/18 184/25 188/17
191/11
we've **[17]** 11/7
29/13 65/12 65/19
66/14 121/13 136/6
136/9 136/12 137/15
147/13 149/4 155/15
173/10 178/5 178/16
193/14
week **[3]** 72/2
121/23 121/24
weekend **[4]** 94/2
94/6 154/5 176/11

weeks **[1]** 97/7
weight **[1]** 127/18
Welcome **[1]** 38/4
well **[102]** 7/8 7/23
7/24 8/4 8/17 8/24
9/16 10/18 11/20 12/5
14/3 14/15 14/22
16/11 16/14 18/17 18/8
19/8 19/17 20/10 21/1
21/22 23/22 24/8
28/21 31/8 32/6 35/11
35/12 36/17 37/3
37/12 40/1 42/25
47/17 56/12 57/4
58/18 58/25 60/17
66/21 69/18 70/16
71/1 72/1 78/5 81/14
84/8 96/8 103/22
104/19 106/22 107/20
115/19 119/16 120/11
124/2 124/6 124/15
124/22 125/19 127/22
128/15 129/23 132/8
137/8 137/15 140/24
146/25 147/2 151/5
151/14 151/17 154/15
154/22 154/24 156/13
157/5 157/13 157/15
161/6 161/8 162/16
168/6 168/8 170/9
174/11 176/1 177/6
180/25 181/19 183/17
183/21 184/4 184/15
186/5 188/1 189/21
190/5 190/23 191/11
193/1
went **[9]** 16/16 61/1
87/20 95/22 99/18
107/11 143/17 152/11
179/15
were **[130]** 13/24
13/25 14/4 16/2 18/6
34/4 34/21 38/13
39/17 39/19 39/21
41/19 42/1 42/12
42/22 42/22 42/23
46/10 48/13 48/25
48/25 49/14 50/10
56/23 61/25 67/23
68/2 68/15 68/17
71/14 73/18 73/24
78/12 81/11 81/16
82/6 88/18 89/16 90/1
90/9 90/19 91/6 93/2
93/9 93/15 93/21
93/23 94/16 96/6 96/8
96/11 96/11 96/15
97/4 97/15 97/21
102/2 103/16 103/21
105/3 106/8 106/16
106/17 106/17 106/24
107/15 107/24 108/6

**W**

**were... [62]** 111/5
113/5 113/14 113/21
113/22 114/9 114/15
115/5 115/11 115/17
116/16 120/2 121/8
121/12 121/22 125/7
127/21 129/6 129/17
130/19 130/21 131/5
131/5 131/5 132/25
135/2 135/11 135/12
136/2 136/11 136/20
137/20 138/14 138/25
139/1 139/3 139/4
139/5 139/5 144/12
146/15 148/24 149/8
149/17 149/18 151/9
152/9 152/15 152/16
152/17 154/18 160/12
160/13 160/17 163/12
163/15 165/8 170/7
183/11 183/11 185/13
185/13
**weren't [5]** 42/20
47/8 93/8 137/7
152/16
**what [198]**
**what's [18]** 14/22
16/12 22/23 36/13
48/4 49/8 52/21 61/14
62/5 75/21 75/25
85/16 89/6 92/19
99/17 111/18 111/25
144/23
**whatever [3]** 80/2
124/14 175/15
**wheels [1]** 28/25
**when [80]** 8/2 9/15
11/4 21/5 21/7 30/5
38/6 42/11 42/12 45/8
47/11 49/7 56/25 59/5
59/8 60/10 61/25
64/17 64/24 68/14
70/2 70/22 72/17
75/10 85/9 89/1 91/6
91/6 91/8 93/2 93/15
96/15 96/16 102/1
102/4 102/15 105/13
105/13 106/8 107/4
107/5 109/24 110/12
111/22 114/15 115/17
120/12 121/15 122/13
123/5 125/8 125/22
128/22 129/3 130/23
131/5 133/5 134/11
135/22 136/19 141/2
141/9 143/15 143/16
148/21 150/14 151/8
154/2 154/7 165/9
174/14 174/16 175/12
181/6 183/20 191/10

191/13 191/16 192/2
193/16
**where [41]** 17/16
31/15 31/25 48/24
61/10 61/12 64/17
69/22 71/23 81/11
84/24 97/8 98/4 102/3
129/4 131/8 131/9
135/4 135/4 135/23
136/14 141/25 142/8
142/21 143/11 145/4
146/24 146/25 150/19
151/17 153/11 153/13
158/23 159/22 160/16
165/4 170/25 181/24
185/19 188/19 189/5
**Whereas [1]** 165/7
**whether [22]** 13/8
42/6 64/23 76/6 86/1
87/11 88/4 91/4
100/20 105/12 112/11
119/14 132/1 141/19
141/20 142/11 150/15
150/20 150/21 160/23
172/10 172/12
**which [56]** 11/19
15/2 20/15 23/10
24/19 27/25 32/10
32/13 33/2 42/2 42/23
56/5 77/25 98/1 98/7
98/12 102/12 110/1
110/2 125/23 129/4
129/8 130/7 130/8
130/20 130/22 131/1
131/10 132/7 135/4
136/9 141/22 143/18
148/22 149/19 149/21
150/7 150/16 150/16
151/13 156/15 157/17
160/5 160/16 163/22
165/14 167/22 167/22
167/24 168/11 168/20
169/8 172/18 178/7
190/19 193/4
**while [11]** 44/1
48/25 49/14 88/14
88/16 118/18 131/17
133/20 173/19 174/3
174/13
**who [43]** 10/4 10/20
14/3 14/12 14/12
14/25 15/6 17/3 17/8
17/11 17/19 20/8
35/13 35/25 40/17
41/18 42/15 56/7 56/8
56/10 56/13 56/17
73/4 73/18 80/7 80/7
80/10 101/8 107/15
107/24 111/8 113/5
115/12 119/11 120/13
121/12 128/23 131/13
143/1 177/16 177/21

181/17 181/17
**who's [7]** 5/7 6/14
64/4 64/6 73/6 83/2
85/2
**whole [12]** 8/2 9/18
24/8 62/18 64/24
92/16 112/23 143/25
155/12 160/12 162/14
174/14
**whom [1]** 11/25
**whose [3]** 40/3
40/19 44/13
**why [26]** 8/13 10/13
18/16 26/7 26/14
26/17 40/24 77/21
107/12 116/5 116/24
130/25 136/2 139/7
148/7 149/5 154/6
158/18 160/9 160/17
165/23 168/16 173/6
181/12 188/16 192/14
**will [96]** 5/1 5/9
5/12 6/9 6/16 6/19
7/4 7/7 7/7 7/9 8/7
10/22 11/3 11/11
11/16 12/11 14/22
22/13 22/15 22/18
25/12 31/24 32/4
33/20 35/19 35/24
35/25 36/17 37/8 37/9
37/11 37/12 47/19
54/7 55/22 57/19
83/10 117/6 118/14
118/25 119/2 119/4
120/12 121/17 122/13
122/23 123/5 124/6
124/8 124/10 124/21
127/6 127/19 131/1
131/8 132/8 132/11
132/11 132/13 132/18
134/23 140/10 140/14
140/21 143/1 145/2
145/19 148/14 151/5
151/16 152/21 159/24
161/12 172/7 172/14
172/15 172/25 173/4
173/24 174/8 175/1
175/8 175/13 175/24
177/25 178/3 178/12
178/24 178/24 179/2
182/21 183/16 183/19
189/9 191/20 193/7
**willfully [1]** 129/19
**WILLIAM [1]** 1/4
**willing [1]** 54/21
**win [2]** 28/19 28/21
**wiped [1]** 140/5
**wise [1]** 18/7
**withdrew [1]** 191/16
**withhold [1]** 131/25
**within [7]** 43/1
43/20 44/6 74/1 79/4

129/1 192/19
**without [18]** 6/18
20/18 29/1 38/15 39/3
70/2 70/22 81/25
95/15 125/3 137/18
156/24 157/10 182/17
185/6 187/17 193/3
193/17
**witness [28]** 4/19
5/7 5/8 6/16 9/2
31/14 35/9 44/22 47/3
48/24 49/21 64/13
74/21 75/2 77/8 79/17
81/19 82/9 83/15 84/9
92/3 95/21 118/16
123/15 149/1 172/12
172/13 172/19
**witness' [4]** 52/22
75/12 79/4 95/23
**witnessed [1]** 96/10
**witnesses [8]** 3/3
24/10 35/14 37/6
125/8 125/12 139/10
172/6
**won [4]** 27/2 30/5
30/16 36/14
**won't [2]** 178/20
191/18
**wonderful [1]** 173/2
**word [8]** 165/20
172/5 180/3 182/8
183/25 184/4 186/4
188/2
**words [5]** 20/1 52/25
109/20 165/8 188/2
**work [15]** 38/15
38/24 39/3 39/10
39/22 70/2 70/22
96/14 96/20 109/22
110/6 110/11 185/6
187/17 193/2
**worked [3]** 105/22
105/23 179/15
**working [2]** 120/2
120/20
**works [3]** 41/22
45/18 83/3
**worse [4]** 21/2 144/3
144/3 144/4
**would [82]** 4/6 4/23
5/23 7/5 10/24 11/1
13/13 19/20 22/1
29/23 32/15 32/16
34/13 34/25 39/20
41/20 41/20 41/22
41/22 42/8 49/16
54/13 55/6 69/21
71/24 76/1 81/21 93/4
94/5 95/22 96/13
96/18 118/21 119/15
121/19 122/8 123/16
124/24 125/1 125/24

128/1 129/23 129/24
131/22 138/12 140/7
140/7 141/9 142/19
142/25 144/6 144/7
149/21 153/18 155/2
155/2 155/11 155/21
155/24 157/4 158/12
158/12 158/13 158/14
158/17 160/2 162/2
164/5 164/9 164/20
165/5 165/23 173/13
173/24 174/24 176/13
177/16 178/1 178/9
178/11 178/25 183/14
**wouldn't [3]** 58/15
105/11 178/8
**wrapping [1]** 89/14
**write [1]** 67/12
**writing [3]** 70/17
118/13 125/2
**written [3]** 33/19
67/5 169/7
**wrongfully [1]** 158/9
**wrote [2]** 133/14
170/13
**Wynwood [1]** 79/20

**Y**

**yeah [15]** 55/14
62/15 79/6 97/19
98/25 105/3 143/6
161/19 166/22 169/22
171/5 172/1 184/8
187/17 190/21
**year [5]** 50/14 65/13
144/3 144/3 144/3
**years [13]** 63/5 63/7
63/10 63/10 63/11
63/23 104/3 105/23
107/14 107/25 110/3
139/7 154/10
**yellow [1]** 157/1
**Yep [2]** 94/10 101/1
**yes [96]** 4/7 5/1 7/14
12/25 16/22 20/5 22/3
29/7 33/25 34/9 37/18
38/9 38/12 38/22
39/17 40/6 40/10
40/13 40/16 42/14
43/9 43/12 43/21 44/2
44/24 45/17 45/19
45/21 47/5 48/3 50/12
58/25 59/17 59/19
60/2 61/3 62/13 62/16
63/1 63/4 63/6 67/4
67/18 67/24 68/3 68/5
69/6 72/6 75/8 76/17
77/2 81/10 83/6 84/14
86/6 86/11 86/14 87/3
92/14 93/2 93/23 94/4
108/18 109/11 110/21
111/7 112/17 112/21

**Y**

**yes... [28]** 112/23
113/20 116/4 117/8
119/12 124/23 125/11
126/3 132/24 133/18
136/18 140/12 143/10
146/5 146/6 161/14
164/23 167/1 172/16
172/17 173/18 177/20
179/18 187/15 188/14
188/19 189/5 192/24
**yesterday [1]** 120/3
**yet [5]** 75/1 122/20
138/10 154/14 189/11
**York [1]** 163/9
**you [768]**
**You can [1]** 182/13
**you were [40]** 41/19
42/12 48/13 48/25
48/25 49/14 50/10
61/25 71/14 73/18
81/11 88/18 90/9
90/19 91/6 93/2 93/9
94/16 96/6 96/8 96/11
97/15 102/2 107/15
107/24 111/5 113/5
113/21 114/9 114/15
115/5 115/11 115/17
116/16 135/2 137/20
160/12 160/13 170/7
183/11
**you'll [6]** 137/21
143/10 149/1 156/22
169/20 175/2
**you're [55]** 8/1 8/10
11/6 17/16 25/20
28/23 29/2 29/25 30/1
30/8 30/9 32/12 36/15
51/19 52/17 52/25
53/22 57/1 60/11
62/17 64/17 70/5 71/3
72/4 74/9 74/16 80/8
85/12 87/8 87/10
88/22 89/1 94/1 94/1
94/4 108/20 117/16
123/25 134/9 135/4
145/16 150/7 151/8
151/19 164/7 167/17
167/18 177/4 179/4
179/4 187/21 188/24
189/17 190/13 190/13
**you've [14]** 29/23
39/25 44/11 45/6
58/18 65/9 65/16
65/22 100/18 109/24
110/18 120/24 167/11
187/3
**your [335]**
**yours [2]** 156/2
177/10
**yourself [2]** 91/19

191/6

**Z**

**Zach [3]** 176/12
176/15 183/6
**zero [3]** 113/19
165/4 165/4
**Zoning [8]** 41/22
45/16 85/2 85/2 85/5
85/14 86/4 86/13