**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 18-24190-CIV-SMITH**

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

       Plaintiffs,

v.

JOE CAROLLO,

       Defendant.

_____/

### DEFENDANT JOE CAROLLO, AND NON-PARTY MARJORIE CAROLLO'S *EMERGENCY* MOTION FOR STAY AND ALTERNATIVELY FOR TEMPORARY INJUNCTIVE RELIEF FROM ADVERTISED PENDING SALE OF HOMESTEAD PROPERTY ON *MARCH 19, 2024*

Defendant Joe Carollo ("Mr. Carollo") and Non-Party Marjorie Carollo ("Mrs. Carollo") (collectively, the "Carollos"), pursuant to applicable law, file this *Emergency* Motion for Stay and Alternatively for Temporary Injunctive Relief from Advertised Pending Sale of Homestead Property on March 19, 2024 at 12:00 at a public auction to be conducted by the U.S. Marshal.

Pursuant to a Notice of U.S. Marshals Service Sale dated February 9, 2024 attached as Exhibit 1, the U.S. Marshal will conduct an improper Sale of the Carollos' Constitutionally protected Homestead located at 3230 Morris Lane, Miami Florida 33133 (the "Homestead Property") on March 19, 2024 at 12:00 at a public auction outside the Courthouse at 400 N. Miami Avenue, Miami Florida (the "Sale").

Mr. Carollo and Mrs. Carollo are both under imminent threat of immediate, irreparable harm based on the impending forced sale of their Exempt, Homestead Protected Property and therefore injunctive relief is appropriate. *See, e.g.*, *Sherbill v. Miller Mfg. Co.*, 89 So. 2d 28, 31 (Fla. 1956) ("Under F.S. § 222.09, F.S.A., a court of equity has jurisdiction to enter an injunction preventing the sale of homestead property.").

1

Mr. Carollo and Mrs. Carollo each request a stay of the Sale, or alternatively a temporary injunction to stop the Sale, pending a determination of the homestead status of the Homestead Property.

The status of the Judgment Debtor's marital home as exempt Homestead Property has been noticed to the Court since the inception of the enforcement proceedings in this case. *See, e.g.*, DE 503, 600, 601, 602. Issues of the characterization and exempt status of the Carollos' marital home must be determined before the sale occurs, the result is the dispossession of the marital abode and the forced displacement of the Carollos. Homestead must be determined prior to the irreparable steps the U.S. Marshal will be taking by the sale of Homestead Protected Property set for March 19, 2024.

I.      **Joe Carollo's and Marjorie Carollo's Constitutionally Protected Homestead Property Is Exempt from Levy.**

On February 2, 2024, the U.S. Marshal came to the Carollos' Homestead Property and posted a Notice of U.S. Marshal Levy, attached as Exhibit 2. The Homestead Property is Exempt from Levy because it is Constitutionally Protected under Article X Section 4(a) of the Florida Constitution (emphasis added) which provides that "[t]here shall be **exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon**, … **a homestead**".

The Notice of U.S. Marshal Levy states that the Levy is being "given under and by virtue of a Writ of Execution issued from the United States District Court for the Southern District of Florida" in this case. *See* Exhibit 2. That Writ of Execution is the subject of the pending Motions to Quash and for Protective Order (DE 600, 601, 602), all of which are incorporated herein, and have been referred to the Magistrate Judge (DE 614). Due process dictates that Joe Carollo and Marjorie Carollo each have these matters immediately addressed so as to avoid the immediate,

2

imminent harm that will result from the Sale of their exempt Homestead Property.

**A.  <u>There is a presumption that the Property is the Carollos' Homestead</u>**

Mr. Carollo and Mrs. Carollo have each designated the Property as their Homestead Property under Section 222.01, *et seq.*, Florida Statutes. Both Mr. Carollo and Mrs. Carollo recorded their statutory Notices of Homestead Affidavit pursuant to Chapter 222, Florida Statutes, on February 6, 2024. *See* DE 625 (Notice of Homestead Affidavits of Joe Carollo and Marjorie Carollo recorded in the Official Records Book of Miami-Dade County at Book 34081/Page 4941-4943 and Book 34081/Page 4944-4946, attached as <u>Exhibits 3 and 4</u>).  In accordance with Fed.R.Civ P. 69, the state law of Florida applies to collection proceedings.  Accordingly, under Florida law, any and all efforts to sell the Homestead Property must cease until such time as a final adverse determination has been made regarding both Homestead designations made by Mr. Carollo and Mrs. Carollo. *See* Section 222.01, *et seq.*, Florida Statutes. The statutory procedure for homestead determination under Chapter 222, Florida Statutes, has been invoked and needs to be followed prior to any sale by the U.S. Marshal, to wit a determination of Homestead in accordance with Florida Law. *See, e.g.*, *Sepulveda v. Westport Recovery Corp.*, 145 So.3d 162, 166 (Fla. 3d DCA 2014) ("Once a homeowner has claimed a homestead exemption, the sheriff cannot levy against the property unless the creditor prevails against the homeowner's claimed homestead exemption.").

Now that both Mr. Carollo and Mrs. Carollo have invoked the statutory procedures under Section 222.01, *et seq.*, Florida Statutes, the burden is on Plaintiffs to file an action in the Florida Circuit Court for a "declaratory judgment to determine the constitutional homestead status of the subject property" within forty-five (45) days of February 6, 2024. *See* Section 222.01, *et seq.*, Florida Statutes; *Sepulveda*, 145 So.3d at 166.

A presumption of Homestead Protection exists based on each of the Carollos having recorded their statutory Notices of Homestead Affidavit pursuant to Chapter 222, Florida Statutes, on February 6, 2024. *See* Exhibits 3 and 4. (Homestead Affidavits of Joe Carollo and Marjorie Carollo recorded in the Official Records Book of Miami-Dade County). Both of the Carollos have invoked the statutory presumption of Section 222.02, Florida Statutes, and no sale can take place unless and until there is a final adverse determination as to each of their Homestead designations.

Therefore, the Sale of the Carollos' Homestead Property must be stayed and temporarily enjoined until such time as a final adverse determination on the Carollos' Homestead has been made. The Florida circuit court has exclusive jurisdiction to preside over such proceedings. *See* Section 222.01(2), Florida Statutes; *Sepulveda*, 145 So. 3d at 167 (Fla. 3d DCA 2014) ("The circuit court has exclusive jurisdiction to determine the validity of a claimed homestead exemption.").

Both Carollos designated the Property as Homestead under Section 222.02, Florida Statutes, and therefore a **<u>presumption</u>** exists and the levy cannot proceed unless and until there is a final adverse determination as to the homestead. "Once a homeowner has claimed a homestead exemption, the sheriff cannot levy against the property unless the creditor prevails against the homeowner's claimed homestead exemption." *Sepulveda*, 145 So. 3d at 166. *See also Grant v. Credithrift of Am.*, 402 So. 2d 486, 489 (Fla. 1st DCA 1981) ("Under Chapter 222, the sheriff is a neutral participant in the forced sale process. He may sell only the land that is not designated by properly drawn affidavit as homestead. The statutes give him no authority to presume that the homestead claim is unfounded or to force the parties into court to sort things out after the sale.").

Florida Statutes Section 222.02 provides:

> Designation of homestead after levy.
> Whenever a levy is made upon the lands, tenements, mobile home, or modular home of such person whose homestead has not been set apart and selected, such person, or the person's agent or attorney, may **in writing notify the**

**officer making such levy**, by notice under oath made before any officer of this state duly authorized to administer oaths, **at any time before the day appointed for the sale** thereof, of what such person regards as his or her homestead, with a description thereof; **and the remainder only shall be subject to sale under such levy**. (Emphasis added)

Accordingly, on February 6, 2024, undersigned counsel provided written Notices to the U.S. Marshal pursuant to Florida Statutes Section 222.02, that Mr. Carollo and Mrs. Carollo each claim the Property to be their Homestead Protected Property. *See* Notices to the U.S. Marshal provided via Certified Mail, Email, and attempted Hand Delivery (which was refused), attached as Exhibits 5 and 6. The Notices were provided to the U.S. Marshal well before the Sale date per the statute. Notice was given that the entire Property is regarded and designated by each of the Carollos as their Homestead. Per the statute, only the remainder of the Property – none of the Property in this case – shall be subject to sale.

Again, on February 14, 2024, undersigned counsel provided written Notice to the U.S. Marshal pursuant to Florida Statutes Section 222.02, that Mr. Carollo and Mrs. Carollo each claim the Property to be their Homestead Protected Property. *See* Email Notice to U.S. Marshal Gadyaces S. Serralta with attached recorded Notices of Homestead Affidavits, attached as Exhibit 7. This Notice was again provided to the U.S. Marshal well before the Sale date per the statute. Notice was again given that the entire Property is regarded and designated by each of the Carollos as their Florida Constitutional Homestead.  Per the statute, none of the Property in this case shall be subject to sale.

Following the U.S. Marshal's receipt of the second Notice (*see* Exhibit 7), undersigned counsel spoke with U.S. Marshal Serralta. U.S. Marshal Serralta acknowledged receipt of the Notice and attachments, he acknowledged undersigned counsel's position that Florida law governs and requires a final adverse determination of Mr. Carollo's and Mrs. Carollo's homestead prior to

a sale, and he said he can only stop the Sale upon receipt of a Court Order entered by the Honorable Judge Smith of the Federal Court.

**B.** **Plaintiffs have admitted that the Carollos are living in the Property as their Homestead**

Plaintiffs have **admitted** that the Carollos are living in the Property *as their Homestead Property* and that the Carollos have been living in that Property as their Homestead since well *before the Final Judgment* which was entered on June 1, 2023:

> [O]n April 23, 2023, Mr. Carollo suddenly moved out of his house in Little Havana and moved back into his former home in Coconut Grove. As evidenced by photographs of moving trucks at Carollo's Little Havana home on that date, Carollo is clearly arranging an attempt to move back into his Coconut Grove house seeking to establish a homestead protection for that property.

*See* Plaintiffs' Motion for Proceedings Supplementary at 4 (DE 619).

Plaintiffs' assertion that the Carollos' move into the Property "to establish homestead protection" in April 2023 is an attempt to delay, hinder and defraud creditors is unavailing as to the Homestead-Protected status of the Property. In *Havoco of Am. v. Hill*, 790 So. 2d 1018, 1030 (Fla. 2001) (emphasis added), the Florida Supreme Court held that "a homestead acquired by a debtor with the specific intent to hinder, delay, or defraud creditors **is not excepted from the protection of article X, section 4**."

Plaintiffs' admission is consistent with their acknowledgement during trial that Defendant was already residing in the Property. *See* DE 558 5/5/2023 Tr. 129:13-15 (testimony of Joe Carollo) ("Q. You had moved back into your house in Coconut Grove, right? A. Yes, I have.").

In fact, in March 2022, Plaintiffs acknowledged that if Mr. Carollo moved back into his Morris Lane Property, it would be Homestead Protected and Exempt from levy. *See* Plaintiffs' Verified Emergency Motion for a Temporary Restraining Order and Preliminary Injunction dated March 8, 2022 at 13 (DE 221) ("If the Commission approves the proposed redistricting maps,

Commissioner Carollo will be able to claim homestead exemption on his Coconut Grove home and shield that home from a judgment in this case.").

**C.** **This Court acknowledged Defendant's ability to obtain Homestead Protection for his Property if he moved back into the Property**

This Court previously acknowledged Mr. Carollo's ability to obtain Homestead protection for the Property if he moved into it. *See* Order Denying Motion for Temporary Restraining Order and Preliminary Injunction dated March 9, 2022 at 1-2 (DE 225) ("By including his home in his district, Defendant could obtain homestead protection for his home, thereby protecting it from any money judgment Plaintiffs may obtain in this case.").

**D.** **The Property is Constitutionally Protected Homestead Property**

The Carollos' Homestead Property is Exempt from Levy because, *inter alia*, it is Constitutionally Protected under Article X Section 4 of the Florida Constitution.  When construing homestead protection under Article X Section 4, the Florida Supreme Court "has long emphasized that the homestead exemption is to be liberally construed in the interest of protecting the family home." *Havoco*, 790 So. 2d at 1020. The Court explained, "this Court's homestead exemption jurisprudence has long been guided by a policy favoring the liberal construction of the exemption[.] … A concomitant in harmony with this rule of liberal construction is the rule of strict construction as applied to the exceptions." *Id.* at 1021. The Court emphasized:

> *Most significantly, article X, section 4 expressly provides for three exceptions to the homestead exemption. Forfeiture is not one of them.* According to the plain and unambiguous wording of article X, section 4, a homestead is only subject to forced sale for (1) the payment of taxes and assessments thereon; (2) obligations contracted for the purchase, improvement or repair thereof; or (3) obligations contracted for house, field or other labor performed on the realty. Under the rule "expressio unius est exclusio alterious" --the expression of one thing is the exclusion of another--forfeitures are not excluded from the homestead exemption because they are not mentioned, either expressly or by reasonable implication, in the three exceptions that are expressly stated.

*Id.* at 1022 (citation and quotation omitted) (original emphasis). The Carollos' Homestead Property is Exempt from Levy and Constitutionally Protected under Art. X, § 4, Fla. Const., because none of the exceptions apply.

In fact, the Homestead status of the Property existed well before any lien by Plaintiffs. *See, e.g.*, *Bessemer Properties, Inc. v. Gamble*, 158 Fla. 38, 40 (Fla. 1946) ("It is only necessary that the homestead status attaches prior to the attachment of the creditors' lien. This Court is committed to the doctrine that the transfer of homestead property is not a fraud on creditors. If the homestead status attached prior to proceedings to subject the property to creditors' lien, regardless of where the title is lodged, it is exempt."); *Nationwide Fin. Corp. v. Thompson*, 400 So. 2d 559, 561 (Fla. 1st DCA 1981) ("The material time for determining the priority of a lien over a claim of homestead exemption is the time the lien would have attached if homestead exemption were not applicable. In this case, the validity of the homestead claim must be evaluated with regard to the period of time that Nationwide's judgment was entered and recorded. If the property had attained its homestead status before this period of time, a subsequent sale of the homestead will not give effect to the attempted lien."); *Bendl v. Bendl*, 246 So. 2d 574, 577 (Fla. 3d DCA 1971) (citations omitted) ("The judgment against Charles was recorded in Dade County, Florida after the property was concededly occupied by him as homestead. Such judgments are not liens upon real property which is exempt from forced sale as homestead.").

It is undisputed that Mr. Carollo and Mrs. Carollo each had established the Property as their Homestead prior to the Judgment. Under Florida law, "[t]hree requirements must be satisfied for real property to be impressed  with the characteristics of homestead property under article X, section 4 of the Florida Constitution: (1) the property must be owned by a 'natural person'; (2) the owner must have made, or intend to make the real property his or her permanent residence or that

of his family; and (3) the property must meet the size and contiguity requirements of article X, section 4(a)(1) of the Florida Constitution." *Aronson v. Aronson*, 81 So. 3d 515, 518 (Fla. 3d DCA 2012) (citing *Cutler v. Cutler*, 994 So. 2d 341, 344 (Fla. 3d DCA 2008)).

Each of the Carollos meet these requirements and thus are entitled to Constitutional Homestead Protection as to the Property. The Property is owned by a natural person. Each of the Carollos have made and intended to make the Property their permanent residence; and the Property meets the size and contiguity requirements. It cannot be disputed that prior to entry of judgment on June 1, 2023, both Mr. Carollo and Mrs. Carollo intended to make and had made the Property their permanent residence. Indeed, Plaintiffs ***admit*** this fact. *See* DE 619 at 4. As set forth above, Plaintiffs' admission is consistent with their acknowledgement during trial that Defendant was already residing in the Property, *see* DE 558 5/5/2023 Tr. 129:13-15, and their acknowledgment in March 2022 that if he moved back into the Property, it would be Homestead Protected and Exempt from levy. *See* Plaintiffs' Verified Emergency Motion for a Temporary Restraining Order and Preliminary Injunction at 13 (DE 221).

Each of the Carollos' intent to make the Property their permanent residence is also evidenced by the following, *inter alia*, all of which took place before the judgment: the Carollos moved into and were residing in the Property on a full-time, permanent basis; and they had each identified the Property as their address on their Florida Drivers Licenses and Florida Voters Information and Registration Cards. Accordingly, it is beyond dispute that the Property is Homestead-Protected. *See, e.g.*, *Hillsborough Inv. Co. v. Wilcox*, 152 Fla. 889, 895, 13 So. 2d 448, 452 (Fla. 1943) ("The character of property as a homestead depends upon an actual intention to reside thereon as a permanent place of residence, coupled with the fact of residence."); *Aronson*; *Cutler*.

The fact that each of the Carollos had a clear, undisputed intention to make the family home on Morris Lane their Homestead Property before the Final Judgment should end all inquiry as to the exempt status of the Property under well-established Florida law.

## II.     The Lien upon which Plaintiffs rely is unenforceable against the Homestead Property

Plaintiffs are not entitled to levy on the lien upon which they rely because it does not constitute an enforceable lien under applicable law.

Although "[a] judgment creditor must first perfect a lien against the lands of a judgment debtor before proceeding with final process under section 56.061"(*Diaz v. Plumhoff*, 742 So. 2d 846, 847 (Fla. 2d DCA 1999)), judgment liens do not attach to homestead properties under Florida law. *See, e.g.*, *Suntrust/Miami, N.A. v. Papadopolous*, 740 So. 2d 594, 596 (Fla. 3d DCA 1999) ("Judgment liens do not attach to homestead property and there is no way in which a judgment creditor can compel sale of such property to satisfy its claim."). Moreover, it is axiomatic under Florida law that strict compliance with Section 55.10, Florida Statutes is required to give effect to the plain meaning of the statute's language. *Hott Interiors Inc. v. Fostock*, 721 So. 2d 1236 (Fla. 4th DCA 1998); *Dyer v. Beverly & Tittle, P.A.*, 777 So. 2d 1055 (Fla. 4th DCA 2001).

Therefore, Plaintiffs herein cannot force the sale of the Carollos' Homestead Property as matter of law. *See id.*

## III.     The Notice of Sale is defective and therefore the Sale cannot proceed

The Notice of Sale is defective and therefore the Sale cannot go forward as noticed on March 19, 2024.

The Notice of Sale relies on the Plaintiffs' Levying Creditor Affidavit Pursuant to Florida Statute § 56.27 which contains a material error. As such, a new affidavit would be required to be served and a new notice of sale would need to be served noticing a new sale date.

Specifically, Plaintiffs' Levying Creditor Affidavit Pursuant to Florida Statute § 56.27 dated February 1, 2024 is incorrect in that it contains inaccurate information as to the re-recording of the Judgment. *See* Exhibit 1 at 3 (Levying Creditor Affidavit Pursuant to Florida Statute § 56.27 dated February 1, 2024). The Levying Creditor Affidavit Pursuant to Florida Statute § 56.27 states that the Judgment was recorded at "OR Book 34075, Pages 470-471" which is **not** "true and correct" as required by Section 56.27(4), Florida Statutes.  In fact, the Judgment recorded on February 1, 2024 was recorded at OR Book 34075, Pages 4**0**70-40**7**1. *See* <u>Exhibit 8</u> (Re-recorded Judgment).

Under Section 56.21, Florida Statutes, Plaintiffs must complete the affidavit under Section 56.27(4) as a condition precedent to the sale:

> Notice of all sales under execution shall be given by advertisement once each week for 4 successive weeks in a newspaper published in the county in which the sale is to take place. The time of such notice may be shortened in the discretion of the court from which the execution issued, upon affidavit that the property to be sold is subject to decay and will not sell for its full value if held until date of sale. On or before the date of the first publication or posting of the notice of sale, a copy of the notice of sale shall be furnished by the sheriff by certified mail to the attorney of record of the judgment debtor, or to the judgment debtor at the judgment debtor's last known address if the judgment debtor does not have an attorney of record. Such copy of the notice of sale shall be mailed even though a default judgment was entered. **When levying upon real or personal property**, a notice of such levy and execution sale **and a copy of the affidavit required by s. 56.27(4)** shall be sent by the sheriff to the attorneys of record of all judgment creditors and other lienholders, or to all judgment creditors and other lienholders who do not have an attorney of record, who have acquired a lien as provided in s. 55.10(1) and (2), s. 55.202, s. 55.204(3), or s. 695.01, and whose liens have not lapsed at the time of levy, at the address listed in the judgment lien certificate or other recorded liens, or, if amended, in any amendment thereto, and to all secured creditors who have filed financing statements as provided in part V of chapter 679 in the name of the judgment debtor reflecting a security interest in property of the kind to be sold at the execution sale at the address listed in the financing statement, or, if amended, in any amendment to the financing statement. Such notice shall be made in the same manner as notice is made to any judgment debtor under this section. **When levying upon real property, notice of such levy and execution sale and affidavit required by s. 56.27(4)** shall be made to the

property owner of record in the same manner as notice is made to any judgment debtor pursuant to this section, and shall be made to each other person holding a mortgage or other lien against the real property as disclosed by the affidavit. When selling real or personal property, the sale date shall not be earlier than 30 days after the date of the first advertisement.

*See* Section 56.21, Florida Statutes (emphasis added).

Section 56.27(4), Florida Statutes (emphasis added), provides:

(4) Before the date of the first publication or posting of the notice of sale provided for under s. 56.21, at the time of the levy request to the sheriff, **the levying creditor shall deliver to the sheriff an affidavit** setting forth all of the following as to the judgment debtor:

(a) For a personal property levy, an attestation by the levying creditor or the levying creditor's attorney of record that he or she has reviewed the database or judgment lien records established in accordance with ss. 55.201-55.209 and that the information contained in the affidavit based on that review is true and correct. **For a real property** levy in accordance with s. 55.10(1) and (2), an attestation by the levying creditor or the levying creditor's attorney of record that he or she has reviewed the records of the clerk of the court of the county where the property is situated, or that he or she has performed or reviewed a title search, and **that the information contained in the affidavit**, including a disclosure of all judgment liens, mortgages, financing statements, tax warrants, and other liens against the real property, based on that review or title search **is true and correct**. …

The Levying Creditor Affidavit Pursuant to Florida Statute § 56.27 states that the Judgment was recorded at "OR Book 34075, Pages 470-471" which is **not** "true and correct" as required by Section 56.27(4), Florida Statutes.  In fact, the Judgment recorded on February 1, 2024 was recorded at OR Book 34075, Pages 4**0**70-40**7**1. *See* Exhibit 8 (Re-recorded Judgment).  Therefore, the Notice of Sale, which is based on the erroneous Plaintiffs' Levying Creditor Affidavit Pursuant to Florida Statute § 56.27, is defective, ineffective and void and the Sale on March 19, 2024 cannot go forward. These statutes must be strictly construed. *See, e.g.*, *Menotte v. King*, 463 B.R. 555 (Bankr. S.D. Fla. 2011) (strictly constructing the thirty-day notice language of Section 56.21, Florida Statutes).

**IV.**    **Plaintiffs are not entitled to execution while Defendant's Motion for New Trial is pending and has not been determined**

Florida State procedure in aid of execution governs Plaintiffs' attempts to execute on Defendant's Property in this case. *See* Fed. R. Civ. P. 69.

Under Florida law, "[n]o execution or other final process shall issue until the judgment on which it is based has been recorded nor within the time for serving a motion for new trial or rehearing, and if a motion for new trial or rehearing is timely served, <u>until it is determined</u>; provided execution or other final process may be issued on special order of the court at any time after judgment." Fla. R. Civ. P. 1.550(a) (emphasis added).

Defendant filed his Motion for New Trial on June 28, 2023 (DE 498) and that motion is pending and it has not yet been ruled upon by this Court. Therefore, in accordance with Rule 1.550(a), Fla. R. Civ. P., "[n]o execution or other final process shall issue". *See also Gov't Emples. Ins. Co. v. Mayzenberg*, No. 22-mc-62031-SCOLA/GOODMAN, 2023 U.S. Dist. LEXIS 43760, *6-7,  2023 WL 2524941 (S.D. Fla. Mar. 15, 2023). Accordingly, the judgment is not final and cannot be the basis of a sale of Homestead Property.

**V.**    **Florida Law is Clear that Only Property of the Judgment Debtor is Subject to Execution.**

The Court entered final judgment solely against Joe Carollo in his individual capacity on June 1, 2023 (DE 479).  On January 9, 2024, the Clerk of Court issued a Writ of Execution to be delivered to the U.S. Marshal (DE 599). The Writ of Execution fails to account for the Carollos' Homestead Property and the individual assets of Mrs. Carollo in the Property.

Florida law mandates that only property of the Defendant Judgment Debtor (Joe Carollo) is subject to execution. *See, e.g., Williams v. M&R Constr. of N. Fla., Inc.*, 305 So. 3d 353 (Fla. 1st DCA 2020) ("when property is held as a tenancy by the entireties, only the creditors of both

13

the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf of one spouse alone, and therefore it cannot be reached to satisfy the obligation of only one spouse") (quoting *Beal Bank, SSB v. Almand & Assocs.* 780 So. 2d 45, 53 (Fla. 2001)); *Bridgeview Bank Group v. Callaghan*, 84 So. 3d 1154 (Fla 4th DCA 2012) ("A judgment creditor has no right to property held by the debtor in an estate by the entireties"); *cf.*, *Dillworth v. Hinton*, 378 B.R. 371 (Bankr. M.D. Fla. 2007) (even personal property is presumed to be owned as tenancy by the entirety absent explicit evidence of a different form of ownership).

**VI.** **Permitting a Sale of the Carollos' Homestead Property Prior to Determination of this Emergency Motion and the Pending Motions to Quash the Writ of Execution and Alternatively to Stay the Writ of Execution and for Protective Order and a determination of the Homestead status of the Property will cause irreparable harm.**

Seizure and forced sale are a bell that cannot be "un-rung." Should the U.S. Marshal be granted access to seize and conduct a forced sale of the Homestead Property, both Mr. Carollo and Mrs. Carollo will each suffer imminent irreparable harm, by dispossessing them of their Constitutionally Protected Homestead Property.

The taking of protected Homestead Property is an affront to the Florida Constitution and to do so without a hearing is the highest deprivation of due process that can be imagined in a civil context. The protection of Homestead Property is an unparalleled Constitutional right in the State of Florida. *See, e.g.*, *Sherbill v. Miller Mfg. Co.*, 89 So. 2d 28, 31 (Fla. 1956) ("No policy of this State is more strongly expressed in the constitution, laws and decisions of this State than the policy of our exemption laws."); *Havoco*, 790 So. 2d at 1021, 1028 (citations omitted) ("Organic and statutory provisions relating to homestead exemptions should be liberally construed in the interest of the family home." Court concluded that even a transfer of nonexempt assets into an exempt homestead with the intent to hinder, delay, or defraud creditors is not one of the three exceptions

to the homestead exemption provided in article X, section 4).

Further, absent a protective order, Mr. Carollo and Mrs. Carollo will each be stripped of any semblance of due process with respect to the invasion of the marital home and seizure of the married couple's real Property that is protected from forced sale by, *inter alia*, Article X, Section 4 of the Florida Constitution. The Carollos will suffer irreparable harm as they would then become homeless pending potentially delayed after-the-fact rulings on the Homestead exemption. *See, e.g.*, *Johnson v. United States Dep't of Agriculture*, 734 F.2d 774, 789 (11th Cir. 1984) ("irreparable injury is suffered when one is wrongfully ejected from his home. Real property and especially a home is unique."). *See also*, *Gratchev v. Gratchev*, CASE NO. 20-60022-CIV-SINGHAL/VALLE, 2021 U.S. Dist. LEXIS 210881, *5 (S.D. Fla. July 14, 2021) (Singhal, J.) ("The Court finds that there is a substantial risk of serious injury ripening into actual harm through the potential sale of the home where Igor resides.").

Accordingly, the Court should stay or enjoin the sale on an emergency basis so that a determination can be made ***prior to forced Sale of the Homestead Property set for March 19, 2024,*** to prevent harm and due process deprivations that cannot be remedied, or otherwise appropriately issue an order cancelling said Sale in the interim as the U.S. Marshal is not authorized under applicable law to sell the Property pending ruling on the claimed Florida Homestead exemption. *See, e.g.*, *Sepulveda*, 145 So.3d at 166.

**VII.    <u>Each of the Carollos are entitled to temporary injunctive relief</u>**

Each of the Carollos satisfy the familiar standard for issuance of a temporary injunction in this case. "The grant or denial of a preliminary injunction is a decision within the discretion of the district court. For preliminary injunctive relief to be warranted, the district court must find that the movant has satisfied four prerequisites: (1) a substantial likelihood of success on the merits; (2)

irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, will not disserve the public interest." *Carillon Importers, Ltd. v. Frank Pesce Int'l Grp., Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997).

**A.  Each of the Carollos have a substantial likelihood of success on the merits**

Each of the Carollos have a substantial likelihood of success on the merits because each has designated the Property as their Homestead under Section 222.01, *et seq.*, Florida Statutes, and the presumption of Homestead exists. *See* Exhibits 3 and 4. The Property is both Mr. Carollo's and Mrs. Carollo's Constitutionally Protected Homestead Property, as set forth herein. Even Plaintiffs have admitted that the Carollos are living in the Property *as their Homestead Property* and that the Carollos have been living in that Property as their Homestead since well *before the Final Judgment*. *See* Plaintiffs' Motion for Proceedings Supplementary at 4 (DE 619).

**B.  Each of the Carollos will suffer irreparable injury unless the injunction issues**

Mr. Carollo and Mrs. Carollo will suffer irreparable harm unless the injunction issues because they will become homeless if the Sale goes forward on March 19, 2024 prior to a final adverse determination of the homestead status of their Property. *See*, *Johnson*, *supra* at 789. The harm is irreparable because forcing the Carollos from their Exempt Property and selling it out from under them cannot be undone. Non-party, Mrs. Carollo's due process rights would be lost forever as the damage cannot be remedied after the fact. Once the Carollos are forcibly dispossessed of their home, they cannot be put back to the position they were in before the Sale.

The Carollos' remedies at law will not provide adequate compensation for the injury that will occur if the U.S. Marshal Sale proceeds on March 19, 2024 prior to a final adverse determination of the homestead status of the Carollos' Property. If that happens, Mr. Carollo and

Mrs. Carollo would be forcibly dispossessed of their Exempt Homestead Property without due process of law, and once done, that bell cannot be un-rung. *JetSmarter Inc. v. Benson*, No. 17-62541-CIV-MORENO/SELTZER, 2018 U.S. Dist. LEXIS 60113, *18 (S.D. Fla. April 6, 2018) (citations omitted) (Seltzer, Mag. J.) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies.' Further, the alleged irreparable injury 'must be neither remote nor speculative, but actual and imminent.').

**C.**  **The threatened injury to the Carollos is greater than any damage the proposed injunction may cause Plaintiffs**

The threatened injury to the Carollos is far greater than any damage the proposed temporary injunction may cause the opposing party. Plaintiffs will lose nothing if the Sale is cancelled or otherwise delayed pending ruling on the Homestead status. There is no entitlement to a forced sale of Homestead Protected Property under Florida law.  Rather, a forced sale of exempt real property may be enjoined. *See* Section 222.09, Florida Statutes ("The circuit courts have equity jurisdiction to enjoin the sale of all property, real and personal, that is exempt from forced sale."). Moreover, Plaintiffs have outright acknowledged since March 2022 that Mr. Carollo is entitled to Homestead Protection for the Exempt Property once he moves back into the Property. *See* DE 221 at 13. Plaintiffs were aware that Mr. Carollo had moved into the Property and was entitled to Homestead Protection since before the Judgment, yet, in bad faith, Plaintiffs proceeded to serve their Plaintiffs' Levying Creditor Affidavit Pursuant to Florida Statute § 56.27 dated February 1, 2024 on the U.S. Marshal in order to force an improper Sale of the Homestead Property.

The requested injunction is only temporary pending and until there is a final determination as to the Homestead status of the Property. If there is a final adverse determination on the Carollos' designated Homestead Property, then the sale could proceed after that determination. On balance, an equitable remedy is warranted here in order to protect both Mr. Carollo's and Mrs. Carollo's

Constitutionally Protected Homestead Property.

**D.  <u>The temporary injunction will not disserve the public interest</u>**

Here, the requested injunction will not disserve the public interest. In fact the injunction will serve the public interest because of Florida's strong interest in protecting Constitutional Homestead and Exempt property and preventing homelessness. The protection of Homestead Property is an unparalleled Constitutional right in the State of Florida. *See, e.g.*, *Sherbill*, 89 So. 2d at 31; *Havoco*, 790 So. 2d at 1021, 1028.

Moreover, protecting the due process rights of a non-party whose property would be taken without due process of law serves a public interest. If the Sale goes forward on March 19, 2024 without a final adverse determination of homestead in advance of the Sale, substantial due process rights of Joe Carollo and non-party, Marjorie Carollo will have been trampled on and ignored. Mrs. Carollo's and Mr. Carollo's due process and homestead rights can only be protected by issuance of a stay and temporary injunction as set forth herein.  This instance of the U.S. Marshal continuing with a sale contrary to the express language of Section 222.01, *et seq.*, Florida Statutes, is contrary to public policy, and unless addressed here, is highly likely be repeated in other instances.

**VIII.  <u>Emergency Relief Sought Pursuant to S.D. Fla. L.R. 7.1(d).</u>**

Pursuant to Local Rule 7.1(d), the relief is sought on an emergency basis because, as set forth in the Notice of U.S. Marshals Service Sale dated February 9, 2024 attached as <u>Exhibit 1</u>, the U.S. Marshal will conduct an improper Sale of the Carollos' Constitutionally protected Homestead Property on March 19, 2024 at a public auction. The Carollos are under imminent threat of <u>immediate</u>, <u>irreparable</u> harm based on the impending forced Sale of their exempt, homestead protected Property. Accordingly, there is good cause for the Court to allow this Motion to proceed

on an emergency basis. The Movants request that the Court waive the time requirements of the Local Rule and grant an immediate or expedited hearing on this matter.

WHEREFORE, Movants request that the Court grant this Motion, stay or enjoin the Sale pending a final adverse determination of Homestead in accordance with Florida Law, and such other and further relief as is just, equitable, and proper.

### Certificate pursuant to S.D. Fla. L.R. 7.1(a)(3)

Undersigned counsel for the movants has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so. On February 14, 2024 at 11:26 a.m., defense counsel Mason A. Pertnoy sent an email to Plaintiffs' counsel Jeffrey W. Gutchess advising that Defendant intends to file a Motion seeking a stay and/or injunction regarding any pending sale of the Carollo's Homestead Property, asking if Plaintiffs would agree to the requested relief, and advising that if Plaintiffs' counsel wanted to discuss the details of the stay or injunction, defense counsel is available to discuss at Plaintiffs' counsel's convenience. On February 14, 2024 at 3:45 p.m., defense counsel Mason A. Pertnoy spoke with Plaintiffs' counsel Jeffrey W. Gutchess and Mr. Gutchess advised that Plaintiffs do not agree to the requested relief.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of February 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in this case.

### CERTIFICATION PURSUANT TO S.D. FLA. L.R. 7.1(d)

After reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide

meaningful relief to a critical, non-routine issue after the expiration of seven days. I understand

that an unwarranted certification may lead to sanctions.

Respectfully submitted,

KRINZMAN HUSS LUBETSKY
    FELDMAN & HOTTE
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, Florida 33131
Telephone: (305) 854-9700
Primary email:  map@khllaw.com
Primary email:  mschneider@khllaw.com
Secondary:  eservicemia@khllaw.com

By:  /s/ Mason A. Pertnoy
        Mason A. Pertnoy, Esq.
        Florida Bar No. 18334
And

SHUTTS & BOWEN
200 S. Biscayne Boulevard, Suite 4100
Miami, FL 33131
Telephone: (305) 415-9072
Email: msarnoff@shutts.com

By:  /s/ Marc D. Sarnoff
Marc D. Sarnoff, Esq.
Florida Bar No. 607924

And

KUEHNE DAVIS LAW, P.A.
100 S.E. 2nd Street, Suite 3105
Miami, FL 33131-2154
Telephone: (305)789-5989
Email: ben.kuehne@kuehnelaw.com;
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

By:  /s/ Benedict P. Kuehne
Benedict P. Kuehne, Esq.
Florida Bar No. 233293