UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-24190-CIV-SMITH

WILLIAM O. FULLER, *et al.*,

    Plaintiffs,

v.

JOE CAROLLO,

    Defendant.
_____/

## ORDER DENYING MOTION FOR NEW TRIAL AND RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND DENYING MOTION FOR REMITTITUR

This matter is before the Court on Defendant, Joe Carollo's Sealed Motion for New Trial and Renewed Motion for Judgment as a Matter of Law [DE 498], Plaintiffs' Response [DE 538], Defendant, Joe Carollo's Sealed Alternative Motion for Remittitur [DE 499], and Plaintiffs' Response [DE 539]. On June 1, 2023, after a multi-week trial, the jury returned a verdict finding that Defendant had retaliated against Plaintiffs for exercising their First Amendment rights and awarding Plaintiffs a combined $63.5 million dollars in compensatory and punitive damages. In accordance with the verdict, the Court entered a Final Judgment [DE 479] on the same day. Defendant now seeks a new trial, judgment as a matter of law, and remittitur of the damages awarded. For the reasons that follow, the Motions are denied.

**I.      APPLICABLE STANDARDS**

"A trial judge may grant a motion for a new trial if he believes the verdict rendered by the jury was contrary to the great weight of the evidence." *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982). To grant a motion for a new trial, the court "must find the verdict contrary

to the great, and not merely the greater, weight of the evidence." *Id.* Consideration of a motion for a new trial is guided by Federal Rule of Civil Procedure 61, which states:

> Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Fed. R. Civ. P. 61. Under this standard, the movant "bears the burden of proving that the error probably had a substantial influence on the jury's verdict." *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1352 (11th Cir. 2007) (internal quotations and citation omitted).

The standard for judgment as a matter of law is higher. In the Eleventh Circuit, the standard for judgment as a matter of law is as follows:

> If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. . . . [I]t is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (quoting *Watts v. Great Atl. & Pac. Tea Co.,* 842 F.2d 307, 309–10 (11th Cir. 1988) (per curiam) (citation omitted)). Thus, if Defendant cannot meet the standard for a new trial, his motion for judgment as a matter of law must also fail.

"A remittitur is a substitution of the court's judgment for that of the jury regarding the appropriate award of damages. The court orders a remittitur when it believes the jury's award is *unreasonable* on the facts." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999) (emphasis in original). Thus, remittitur is appropriate when a jury's award exceeds the outer

limit of the amount of damages established by the evidence. *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985) (citation omitted). "To determine whether the damages awarded on a federal claim are excessive, courts look to: (1) the size of the award; (2) the rational relationship between the award and the evidence adduced at trial; and (3) awards in similar cases." *Simmons v. Bradshaw*, No. 14-80425-CIV, 2016 WL 4718410, at *7 (S.D. Fla. May 4, 2016) (citation and internal quotation omitted).

## II.     DISCUSSION

Defendant seeks a new trial and/or judgment as a matter of law because: (1) the verdict is against the weight of evidence; (2) damages are excessive as a result of several errors committed by Plaintiffs; (3) there were substantial errors in the admission and rejection of evidence; (4) there were substantial errors in the jury instructions; (5) the Court erred by denying Defendant's motion for mistrial based on jury tampering; and (6) the Court erred in denying Defendant's motion for mistrial and/or disqualification. Defendant raises similar arguments in his Motion for Remittitur. Defendant maintains that remittitur is required because: (1) the compensatory damages awards are excessive and exceed any amount established by the evidence; and (2) the punitive damages awards are excessive; (3) the damages awards are based on erroneous jury instructions. Because the arguments are the same or similar in both motions, the Court will address them together.

### A.     The Verdict is Supported by the Evidence.

Defendant first argues that the verdict is against the weight of the evidence. In support, Defendant raises three arguments: (1) Plaintiffs failed to prove that they engaged in protected activity; (2) Plaintiffs failed to prove a causal connection; and (3) Plaintiffs failed to introduce evidence of emotional distress or reputational damages other than self-serving testimony.

Defendant contends that Plaintiffs failed to establish that they each individually engaged in constitutionally protected speech because the two instances of protected activity—hosting two political rallies and filing an ethics complaint—were not Plaintiffs' individual speech or activity. The rallies were held on property owned by 1393 LLC, not by Plaintiffs individually, and the ethics complaint was filed by the Barlington Group, LLC, not by Plaintiffs individually. Thus, Defendant maintains that any First Amendment protections belong to 1393 LLC and the Barlington Group, LLC, not Plaintiffs. Plaintiffs respond that there was sufficient evidence presented at trial that Plaintiffs, as well as 1393 LLC and the Barlington Group, LLC, participated in First Amendment protected activities. The Court finds that there was sufficient evidence to support the jury finding that Plaintiffs engaged in constitutionally protected actions and that Plaintiffs were the driving force behind their business entities' exercise of their First Amendment rights. There is also sufficient evidence to find that Defendant perceived Plaintiffs as engaging in free speech and dealt with Plaintiffs on that basis. *See Gazarkiewicz v. Town of Kingsford Heights, Indiana*, 359 F.3d 933, 938 (7th Cir. 2004) (rejecting defendants' claim that plaintiff's actions were not protected speech because he typed up someone else's words and noting that the defendants perceived the plaintiff as engaging in speech and dealt with him on that basis).

Defendant next argues that Plaintiffs have failed to establish that Defendant's retaliatory animus was the cause of Plaintiffs' injuries. Defendant maintains that the evidence showed that the City of Miami ("City") would have taken the same actions notwithstanding Defendant's alleged animus toward Plaintiffs. Contrary to Defendant's assertion that he was just doing his job, multiple witnesses testified that Defendant targeted, or had it out, for Plaintiffs. The Court finds that there was more than sufficient evidence for a jury to find that Defendant's retaliatory animus was the cause of Plaintiffs' injuries.

Lastly, Defendant argues that Plaintiffs failed to produce evidence of emotional distress or reputational damages other than self-serving testimony. Defendant, however, has provided no authority that prohibits a plaintiff from establishing their emotional distress damages through the plaintiff's own testimony. In fact, the Eleventh Circuit has stated that "a plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress based on a constitutional violation," as long as the testimony establishes that "the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005). Here, Plaintiffs testified in detail as to the nature of the emotional distress Defendant's actions caused them. Thus, the evidence was sufficient to establish Plaintiffs suffered damages.

**B.     The Damages Are Not Excessive.**

According to Defendant, a new trial is warranted because the damages awarded are excessive and a product of harmful errors committed by Plaintiffs. Specifically, Defendant argues that: (1) Plaintiffs improperly suggested specific damages amounts to the jury despite never providing a computation; (2) Plaintiffs' closing arguments improperly suggested damages amounts based on "civil rights cases like this"; (3) Plaintiffs' closing arguments improperly made "send a message" arguments; (4) the Court improperly struck defense counsel's statement during closing as to Defendant's salary and refused to give a curative instruction; and (5) the damages are so grossly excessive that they shock the conscience. Further, in the Motion for Remittitur, Defendant argues that the punitive damages violate due process. As set out below, Defendant has failed to meet his burden to show that any error probably had a substantial influence on the jury's verdict. Defendant has also failed to establish that the amount of the damages awarded were excessive or that the punitive damages violate due process.

5

First, Defendant argues that, because Plaintiffs did not present any damages computation, they were precluded from suggesting specific amounts to the jury. In cases involving intangible damages, "some courts have recognized that due to the nature of intangible damages, a computation may not be feasible or necessary." *Carter v. BPCL Mgmt., LLC*, No. 19-60887-CIV, 2021 WL 7502558, at *8 (S.D. Fla. May 10, 2021) (citation omitted). "In such a case, the plaintiff is not required to provide a computation of damages, and it is within the jury's discretion to determine a reasonable amount." *Id.* (citation omitted). Those courts, however, have held that if a plaintiff fails to provide such a computation, a plaintiff may not suggest to the jury an appropriate amount of compensatory damages for emotional distress. *See id.*; *Gray v. Fla. Dep't of Juv. Just.*, No. 306-CV-990J-20MCR, 2007 WL 295514, at *2 (M.D. Fla. Jan. 30, 2007). Thus, if a plaintiff does not disclose an amount in his Rule 26 disclosures, he is prohibited from testifying at trial as to a specific amount of compensatory damages for emotional distress damages. *Gardner v. Madison Cnty. Sch. Bd.*, No. 4:15CV121-MW/CAS, 2015 WL 13561210, at *3-4 (N.D. Fla. July 16, 2015). While the plaintiff is precluded from testifying about the amount of damages, "that does not preclude counsel from making arguments from the evidence. More specifically, even if Plaintiff does not testify to a sum certain or a range, counsel is free to suggest a range or a method of calculation to the jury during closing arguments." *Id.* at *4. Thus, Plaintiffs' counsel's suggestion as to damages amounts made during closing are not improper.

Defendant's next two arguments—that Plaintiffs' closing arguments improperly suggested damages amounts based on "civil rights cases like this" and improperly made "send a message" arguments—are based on allegedly improper statements made by Plaintiffs' counsel during closing. First, the court notes that Defendant did not object to these statements during trial.

6

Second, and more importantly, Defendant has failed to meet his burden of proving that these alleged errors probably had a substantial influence on the jury's verdict.

Next, Defendant argues that the Court erred by striking a statement in defense counsel's closing argument as to the amount of Defendant's salary and by refusing to give a curative instruction. The Court struck the statement about Defendant's salary after Plaintiffs objected that it was not in evidence. Defense counsel argued that it was public record in the City code. During deliberations, the jury asked what evidence it should rely on to determine Defendant's financial resource. Defense counsel pointed out that the salary was in evidence in Plaintiffs' Exhibit 303. The Court then instructed the jury to rely on the evidence. Because the Court instructed the jury to rely on the evidence and Defendant's salary was in evidence, Defendant cannot show that the error—striking the statement about Defendant's salary during closing arguments—probably had a substantial influence on the jury's verdict.

Next, Defendant argues that the damages awarded are so grossly excessive that they shock the conscience. The Court disagrees. The only shock to the conscience here is that Defendant used his position and power to weaponize the City government against Plaintiffs because Plaintiffs chose to exercise their First Amendment rights by supporting Defendant's political opponent.

In addition to these arguments, Defendant's Motion for Remittitur makes the additional argument that the punitive damages awards, of three times the compensatory damages awards, violate due process. The Supreme Court has set out "three guideposts" for considering the constitutionality of a punitive damages award: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State*

*Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003).  The Supreme Court explained that the degree of reprehensibility is the most important factor in determining the reasonableness of a punitive damages award.  *Id.* at 419.  The *Campbell* Court set out several considerations for making this determination:

> We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. . . . The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

*Id.*  Here, almost all of these factors weigh in favor of Plaintiffs and the guideposts also point in favor of Plaintiffs.

As to the first guidepost—degree of reprehensibility—the factors for consideration weigh heavily in favor of finding a high degree of reprehensibility.  While Plaintiffs primarily suffered economic harm, they both testified as to physical effects of the emotional toll Defendant's actions took.  Defendant's actions specifically targeted Plaintiffs' financial vulnerabilities by attempting to shut down their, or their tenants', businesses.  Defendant's actions were continuous and unrelenting.  And Defendant's actions were intentional and malicious.  Further, Defendant's actions continued long after Plaintiffs filed suit.  Thus, the degree of reprehensibility is high.  As to the next guidepost—disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award—the jury awarded punitive damages of three times the amount of

8

compensatory damages.[1]  The Court finds this a reasonable multiplier.  *See id.* at 425 (stating that "single-digit multipliers are more likely to comport with due process[.]" (alterations added; citation omitted)); *Action Marine, Inc. v. Cont'l Carbon Inc.*, 481 F.3d 1302, 1321 (11th Cir. 2007) (affirming a ratio of 5:1).  As to the third guidepost— the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases—the Court finds that while some disparity exists, given the reprehensibility of Defendant's actions and the reasonableness of the multiplier, the amount of the punitive damages awards here are not unconstitutional.  Consequently, neither remittitur nor a new trial is necessary.

      **C.**      **Evidentiary Rulings Do Not Necessitate a New Trial.**

Defendant contends that numerous errors in admitting, or rejecting, evidence necessitate a new trial.  Defendant argues that the numerous errors were substantial and prejudicial.  Defendant points to the following errors: (1) the admission of evidence that Defendant is a racist; (2) the exclusion of Defendant's witnesses; (3) the preclusion of evidence of Plaintiffs' reputations and practices; (4) the admission of the former police chief's testimony; (5) denying Defendant an opportunity to testify during his case-in-chief; (6) the admission of matters not at issue; (7) the admission of prejudicial testimony of Tanjha Quintana; and (8) the disparate treatment of Plaintiffs and Defendant as to evidence.  As discussed below, Defendant has failed to establish that any alleged error, or the combination of errors, probably had a substantial influence on the jury's verdict.

---

[1] Defendant argues in his Motion for Remittitur that Plaintiffs suffered no actual or potential harm because there was no evidence presented at trial establishing a dollar amount of Plaintiffs' harm. However, the jury found that Plaintiffs had suffered actual harm and were able to quantify that harm. Thus, the multiplier of three is based on the jury's findings.

First, Defendant contends that the Court erred by allowing, over objection, testimony that Defendant is a racist. First, no witness testified that Defendant was a racist, although it was a possible implication of some testimony. However, Defendant had an opportunity to address this testimony, both on cross and during his own testimony. Second, much of the testimony that Defendant points to is relevant to the different visions that Plaintiffs and Defendant had for the area of Little Havana and is part of the political dispute that underlies this matter. Thus, the statements were relevant, and Defendant had an opportunity to address them.

Next, Defendant contends that the Court erred by excluding witnesses who had been omitted from Defendant's final witness list submitted before trial, while allowing late disclosed witnesses to testify for Plaintiffs. Plaintiffs' witnesses, however, were on the final pre-trial witness list submitted by the parties. Further, Defendant was given the opportunity to depose the late-disclosed witnesses, despite having conducted few, if any, depositions during discovery. Defendant did not disclose that he wanted to call his excluded witnesses until several weeks into trial. Moreover, Defendant has not demonstrated how the testimony of the excluded witnesses was relevant, and not merely cumulative, to the issues tried. Thus, Defendant has not met his burden of proving that the error probably had a substantial influence on the jury's verdict.

Third, Defendant argues that the Court erred by precluding evidence of Plaintiffs' reputation and practices. Again, Defendant has not demonstrated what this excluded testimony would have established and how it would probably have had a substantial influence on the jury's verdict.

Fourth, Defendant contends that the Court erred by admitting the testimony of former Police Chief Acevedo because he had no personal knowledge of the matters at issue in the operative complaint. Defendant further maintains that Acevedo's testimony caused irreparable

prejudice because he admitted that he had "an axe to grind" against Defendant. The Court first notes that Plaintiffs alleged that Defendant's retaliation was continuing and, thus, Acevedo could speak to his personal knowledge of the Defendant's continuing actions against Plaintiffs. Further, Acevedo admitting on the stand that he had an axe to grind against Defendant enabled the jury to discern Acevedo's bias and take that into account when considering Acevedo's testimony. Thus, Defendant has not met his burden of proving that Acevedo's testimony probably had a substantial influence on the jury's verdict.

Fifth, Defendant asserts that the Court erred by denying Defendant an opportunity to testify in his case-in chief. Contrary to Defendant's assertion, Defendant was not denied an opportunity to testify in his case-in-chief. Defendant had testified on both direct and cross for four days during Plaintiffs' case-in-chief. As a result, to avoid repetition and cumulative testimony, the Court limited any additional testimony by Defendant to new, relevant matters. Defense counsel then chose not to call Defendant as part of his case-in-chief. Thus, Defendant has not shown how the Court erred, what testimony he was precluded from giving, and how that testimony probably would have had a substantial influence on the jury's verdict.

Sixth, Defendant argues that the Court erred by allowing testimony and evidence regarding events that were not included in the Second Amended Complaint or occurred after the Second Amended Complaint was filed. However, Plaintiffs throughout this litigation have made it clear that Defendant's retaliatory actions have continued unabated. Thus, the evidence Defendant challenges was relevant to Plaintiffs' claims. Further, Defendant has not shown how excluding the complained of testimony probably would have had a substantial influence on the jury's verdict.

Seventh, Defendant maintains that the Court erred by permitting the testimony of Tanjha Quintana. However, Defendant was warned that a certain line of questioning would open the door

to the subject of Quintana's testimony. Defendant chose to open the door. Further, Defendant has not shown how excluding the disputed testimony probably would have had a substantial influence on the jury's verdict.

Finally, Defendant contends that the Court erred by treating Defendant and Plaintiffs differently. Again, Defendant has failed to show how this alleged disparate treatment probably had a substantial influence on the jury's verdict. Further, any perceived disparate treatment during the course of litigation was the result of each side's litigation choices and respective compliance with Court orders, federal and local rules, and applicable laws. Having failed to meet his burden to establish that the Court's alleged errors probably had a substantial influence on the jury's verdict, Defendant has failed to establish that justice requires a new trial.

### D. The Jury Instructions Do Not Necessitate a New Trial.

Defendant also maintains that the jury instructions contained substantial errors. Defendant argues that the Court erred by failing to give a probable cause instruction and by including the nature of Defendant's alleged retaliatory acts in the instructions. The Court utilized Instruction 5.1 of the Eleventh Circuit's Pattern Jury Instructions. The instruction specifically has a spot for a description of the defendant's alleged retaliation. The instruction also includes language that addresses a defendant's motivation, which subsumes Defendant's probable cause instruction. Thus, Defendant has failed to establish any error in the instructions.

### E. The Court's Ruling on Defendant's Motion for Mistrial Does Not Necessitate a New Trial.

Finally, Defendant argues that the Court's denial of his Motion for Mistrial, based on jury tampering, necessitates a new trial. The Court denied the Motion for Mistrial after speaking with the juror involved and the jurors with whom the involved juror spoke regarding the alleged

tampering incident. The Court's denial of the Motion for Mistrial was not erroneous and therefore does not necessitate a new trial.

Accordingly, it is

**ORDERED** that:

1. Defendant, Joe Carollo's Sealed Motion for New Trial and Renewed Motion for Judgment as a Matter of Law [DE 498] is **DENIED.**

2. Defendant, Joe Carollo's Sealed Alternative Motion for Remittitur [DE 499] is **DENIED.**

**DONE and ORDERED** in Fort Lauderdale, Florida, this 20th day of February, 2024.

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record