UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 18-24190-CIV-SMITH

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

    Plaintiffs,

v.

JOE CAROLLO,

    Defendant.

_____/

**DEFENDANT JOE CAROLLO, AND NON-PARTY MARJORIE CAROLLO'S REPLY IN SUPPORT OF THEIR EMERGENCY MOTION FOR STAY AND ALTERNATIVELY FOR TEMPORARY INJUNCTIVE RELIEF FROM ADVERTISED PENDING SALE OF <u>HOMESTEAD PROPERTY ON MARCH 19, 2024</u>**

Defendant Joe Carollo ("Mr. Carollo"), and Non-Party Marjorie Carollo ("Mrs. Carollo") (collectively, the "Carollos"), file their Reply in Support of their Emergency Motion for Stay and Alternatively for Temporary Injunctive Relief from Advertised Pending Sale (the "Sale") of Homestead Property on March 19, 2024 (DE 628) (the "Motion") (DE 632) (the "Response").[1]

## I. Introduction

**Plaintiffs have conceded that this Court should expeditiously enter an Order staying the Sale until the homestead status has been determined**. By requesting an evidentiary hearing and discovery on the homestead status of the Carollos' property located at 3230 Morris Lane (the "Homestead Property") and filing an 18-page Response with 170 pages of exhibits arguing about same, Plaintiffs have conceded the relief sought in the Motion. Moreover, Plaintiffs fail to address or rebut that Florida law dictates the sale must be stayed pending determination of the homestead claim. *See* § 222.02, Florida Statutes.  Finally, the Response does not and cannot rebut each of Mr. and Mrs. Carollo's assertions that a stay or temporary injunction is warranted to avoid irreparable harm, is favored by public policy, and that the harm to the Carollos far outweighs any prejudice to Plaintiffs. Accordingly, the Motion must be granted and the Court need look no further into the merits of Mr. and Mrs. Carollo's homestead designations in determining the present Motion.

Plaintiffs' Response misses the point. After conceding the relief sought in the Motion, the Response incorrectly asserts this Court has jurisdiction to determine homestead and neither Mr. nor Mrs. Carollo are entitled to homestead protection. At this time, the only question to be determined by this Court is whether to stay the Sale pending the homestead determination, and since Plaintiffs have conceded the determination must be made, the Court should enter a stay of the Sale. *See* § II, *infra*.

As to Plaintiffs' assertion that this Court can determine homestead, Plaintiffs' assertion is incorrect. Under governing Florida law, the Florida circuit court has exclusive jurisdiction to determine homestead. *See* §§ 222.01(2), 222.08, Florida Statutes; *Sepulveda v. Westport Recovery Corp.*, 145 So.3d 162, 167 (Fla. 3d DCA 2014) ("The circuit court has exclusive jurisdiction to determine the validity of a claimed homestead exemption."). *See* § II, *infra*. Plaintiffs provide no

---

[1] As part of Plaintiffs' Response (DE 632) they filed a combined "Cross-Motion for Expedited Discovery; and Request for Evidentiary Hearing". The Clerk separated Plaintiffs' Motion for Evidentiary Hearing (DE 633), and therefore Defendant will separately respond to same.

contrary authority other than bankruptcy cases in which the debtors voluntarily invoked the bankruptcy court's protection and jurisdiction, which is not the case here.

Moreover, Plaintiffs incorrectly argue that both Mr. and Mrs. Carollo are not entitled to the homestead exemption. First, this is an issue for another day and another court. Second, Plaintiffs' Response misstates Florida law regarding homestead protection and seeks to have this Court create a new exception and answer the wrong questions. Plaintiffs' Response seeks to have this Court answer whether Mr. Carollo abandoned his Homestead Property and whether the City of Miami's legislative function of redrawing district boundaries should result in disqualification and forfeiture of Mr. Carollo's Constitutional homestead protection.

The questions that must be answered by a court with jurisdiction per § 222.01, *et seq.*, are:

1. **On February 1, 2024, assuming that Plaintiffs' recorded judgment was perfected, had Mr. Carollo established the Homestead Property as his homestead?**

2. **On February 1, 2024, assuming that Plaintiffs' recorded judgment was perfected, had Mrs. Carollo established the Homestead Property as her homestead?**

If either or both questions are answered in the affirmative, the Homestead Property is exempt from Plaintiffs' execution.

Florida law is clear that each of the Carollos established the Homestead Property as their Constitutionally protected homestead before February 1, 2024, which is the earliest date an alleged judgment lien could exist. *See, e.g.*, *Bessemer Properties, Inc. v. Gamble*, 158 Fla. 38, 40 (Fla. 1946) ("It is only necessary that the homestead status attaches prior to the attachment of the creditors' lien."); *Nationwide Fin. Corp. v. Thompson*, 400 So. 2d 559, 561 (Fla. 1st DCA 1981); *Bendl v. Bendl*, 246 So. 2d 574, 577 (Fla. 3d DCA 1971).[2]

Plaintiffs' vitriolic accusations against Mr. Carollo of fraud, corruption, deception,

---

[2] The earliest possible alleged judgment lien is February 1, 2024. *See* Plaintiffs' Levying Creditor Affidavit Pursuant to Florida Statute § 56.27 dated February 1, 2024, which is the date that the judgment was re-recorded due to errors with Plaintiffs' initial recording attempt (DE 628-1). By Plaintiffs' own concession in re-recording the judgment, they failed to strictly comply with the statutory requirements of § 55.10 and Chapter 56, Florida Statutes, as required. *See, e.g.*, *Dyer v. Beverly & Tittle, P.A.*, 777 So. 2d 1055, 1058 (Fla. 4th DCA 2001) ("We held that strict compliance with section 55.10(1) was required."); *Menotte v. King*, 463 B.R. 555, 566 (Bankr. S.D. Fla. 2011) ("the thirty day notice requirement in Fla. Stat. § 56.21 must be strictly applied."). Each of the Carollos expressly reserve and do not waive all arguments contesting the February 1, 2024 alleged judgment lien including but not limited to arguments that Plaintiffs have failed to perfect a lien and arguments contesting the validity and propriety of any such lien.

misrepresentation, bad faith, gerrymandering, and misconduct are unavailing. Both Mr. and Mrs. Carollo are each, separately, entitled to homestead protection under the Florida Constitution and there is <u>no exception</u> which applies. Plaintiffs do not and cannot attack Mrs. Carollo for such behavior. Her entitlement to homestead is absolute.

Plaintiffs are attempting to create a new exception to Florida's strong homestead protection that does not exist. Similar arguments have been made by creditors for years and the courts regularly reject these arguments and hold there is <u>no exception</u> in cases involving a debtor's specific intent to defraud a creditor and other such arguments. The Florida Supreme Court made this crystal clear in *Havoco of Am. v. Hill*, 790 So. 2d 1018, 1030 (Fla. 2001) (emphasis added), stating, "a homestead acquired by a debtor with the **specific intent to hinder, delay, or defraud creditors is not excepted from the protection of article X, section 4**."

Moreover, Plaintiffs' exception arguments are based on Mr. Carollo's actions as one of five Commissioners when the Commission passed redistricting legislation. This is a red herring because Mr. Carollo has legislative immunity and therefore his motive is irrelevant. *See, e.g.*, *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citation and internal quote omitted) ("it simply is not consonant with our scheme of government for a court to inquire into the motives of legislators."); *Scott v. Taylor*, 405 F. 3d 1251, 1254 (11th Cir. 2005) (in § 1983 case alleging racial discrimination due to legislature's adoption of new district map, court held the "legislator defendants enjoy legislative immunity protecting them from a suit challenging their actions taken in their official legislative capacities"); *Martin v. Augusta-Richmond County*, 2012 U.S. Dist. LEXIS 169099, *13, 2012 WL 5950408 (S.D. Ga. Nov. 28, 2012) "(The State Defendants' failure to enact a redistricting plan was quintessentially legislative, and the State Defendants are entitled to legislative immunity for this action."). *See* § III, *infra*.

Even if this Court were to assume, *arguendo*, that either or both of Mr. and Mrs. Carollo abandoned the Homestead Property, which they did not, it would be unavailing because each had established and/or had reestablished the Homestead Property as their homestead well before February 1, 2024, as admitted by Plaintiffs (*see* DE 619 at 4). *See, e.g.*, *In re Fling*, 449 B.R. 580, 583 (Bankr. N.D. Fla. 2011) ("CCB has failed to rebut the presumption that Mr. Fling re-established his homestead at the Langston Property"). *See* § IV, *infra*.

**II.** <u>This Court should enter an Order staying the March 19, 2024 Sale pending homestead determination by the Florida circuit court per F. S. § 222.01, *et seq.*</u>

3

By their Response requesting discovery and an evidentiary hearing, Plaintiffs have conceded that this Court should enter an Order staying the Sale until the homestead status has been determined. Accordingly, the Court should expeditiously enter an Order canceling the March 19, 2024 Sale and staying the Sale until a final determination of homestead has been made.

Pursuant to the express provisions of Florida's homestead statutes, the Florida circuit court has exclusive jurisdiction to determine homestead. Section 222.08, Florida Statutes (which Plaintiffs do not address), provides:

> Jurisdiction to set apart homestead and exemption.—The circuit courts have equity jurisdiction to order and decree the setting apart of homesteads and of exemptions of personal property from forced sales.

Furthermore, Section 222.01, Florida Statutes, sets forth the exact language of the statutory Notice of Homestead to creditors and it tells the creditors exactly what they "MUST" do, to wit, they "MUST FILE AN ACTION IN THE CIRCUIT COURT":

> YOU ARE FURTHER NOTIFIED, PURSUANT TO SECTION 222.01 ET SEQ., FLORIDA STATUTES, THAT WITHIN 45 DAYS AFTER THE MAILING OF THIS NOTICE **YOU MUST FILE AN ACTION IN THE CIRCUIT COURT OF   COUNTY, FLORIDA**, FOR A DECLARATORY JUDGMENT TO DETERMINE THE CONSTITUTIONAL HOMESTEAD STATUS OF THE SUBJECT PROPERTY OR TO FORECLOSE YOUR JUDGMENT LIEN ON THE PROPERTY AND RECORD A LIS PENDENS IN THE PUBLIC RECORDS OF THE COUNTY WHERE THE HOMESTEAD IS LOCATED. **YOUR FAILURE TO SO ACT WILL RESULT** IN ANY BUYER OR LENDER, OR HIS OR HER SUCCESSORS AND ASSIGNS, UNDER THE ABOVE-DESCRIBED CONTRACT OF SALE OR LOAN COMMITMENT TO TAKE FREE AND CLEAR OF ANY JUDGMENT LIEN YOU MAY HAVE ON THE PROPERTY.

Mr. and Mrs. Carollo each delivered to each of the Plaintiffs, Fuller and Pinilla, the statutory Notices of Homestead and therefore each of the Plaintiffs are aware that they "MUST FILE AN ACTION IN THE CIRCUIT COURT". *See* DE 628-3, DE 628-4. Plaintiffs are not permitted to bypass or circumvent the required process and procedure.

Plaintiffs address only § 222.10, Florida Statutes, which Plaintiffs quote only in part. *See* Response at 12-13. Section 222.10 works in tandem with the above-quoted §§ 222.01 and 222.08, to effectuate Florida's Constitutional homestead exemption as set forth in § 222.01, *et seq.*

While Plaintiffs acknowledge Rule 69(a), Fed. R. Civ. P., provides that the procedure on execution "must accord with the procedure of the state where the court is located", they are

4

incorrect that Florida law has "nothing to say" about the Florida circuit court having exclusive jurisdiction. *See* Response at 12-13. The Florida procedure is that the circuit court has exclusive jurisdiction to make the homestead determination. *See* Section 222.01, *et seq.*, Florida Statutes. Similarly, Plaintiffs' characterization of *Sepulveda v. Westport Recovery Corp.*, 145 So.3d 162, 166 (Fla. 3d DCA 2014) ("The circuit court has exclusive jurisdiction to determine the validity of a claimed homestead exemption."), as a "lone state-centric case" ignores the mandatory language of the above-quoted §§ 222.01 and 222.08, Florida Statutes. Indeed, Plaintiffs cite no contrary case but rather rely solely on cases arising under federal bankruptcy jurisdiction in which debtors voluntarily invoke the bankruptcy court's protection. *See* Response at 13. That is not the case here. It is noteworthy that Bankruptcy Judge Mark, when presented with a debtor's claim of homestead entitlement contested by a creditor, stated, "Florida law provides for the state circuit court to determine whether property is eligible for the constitutional homestead protection, see Fla. Stat. § 222.08, if, as is the case here, entitlement to the homestead protection is contested by a creditor." *In re Mayhugh*, 427 B.R. 549, 552 (Bankr. S.D. Fla. 2010). Moreover, in *Havoco*, the Eleventh Circuit Court of Appeal, recognizing that homestead determination is a state constitutional issue, referred it to the Florida Supreme Court for determination and response to the certified question. Accordingly, by concession of Plaintiffs, the Sale should be stayed while Plaintiffs attempt to obtain an adverse homestead determination in accordance with § 222.01, *et seq.*, Florida Statutes.

### III. The Homestead Property is each of Mr. Carollo's and Mrs. Carollo's Constitutionally protected Homestead Property and Plaintiffs are not entitled to create a new exception to Article X Section 4 of the Florida Constitution

Mr. and Mrs. Carollo are each entitled to homestead protection. Each of the Carollos established the Homestead Property as their Constitutionally protected homestead before February 1, 2024. *See, e.g.*, *Bessemer Properties, Inc. v. Gamble*, 158 Fla. 38, 40 (Fla. 1946) ("It is only necessary that the homestead status attaches prior to the attachment of the creditors' lien. This Court is committed to the doctrine that the transfer of homestead property is not a fraud on creditors. If the homestead status attached prior to proceedings to subject the property to creditors' lien, regardless of where the title is lodged, it is exempt."); *Nationwide Fin. Corp. v. Thompson*, 400 So. 2d 559, 561 (Fla. 1st DCA 1981) ("The material time for determining the priority of a lien over a claim of homestead exemption is the time the lien would have attached if homestead exemption were not applicable. In this case, the validity of the homestead claim must be evaluated

5

with regard to the period of time that Nationwide's judgment was entered and recorded. If the property had attained its homestead status before this period of time, a subsequent sale of the homestead will not give effect to the attempted lien."); *Bendl v. Bendl*, 246 So. 2d 574, 577 (Fla. 3d DCA 1971) (citations omitted) ("The judgment against Charles was recorded in Dade County, Florida after the property was concededly occupied by him as homestead. Such judgments are not liens upon real property which is exempt from forced sale as homestead.").

Plaintiffs' vitriolic accusations against Mr. Carollo of fraud, corruption, deception, misrepresentation, bad faith, gerrymandering, and misconduct are unavailing as each of the Carollos is entitled to homestead protection under the Florida Constitution and there is <u>no exception</u> which applies. As the Florida Supreme Court has consistently held, "this Court's homestead exemption jurisprudence has long been guided by a policy favoring the liberal construction of the exemption[.] … A concomitant in harmony with this rule of liberal construction is the rule of strict construction as applied to the exceptions." *Havoco of Am. v. Hill*, 790 So. 2d 1018, 1021 (Fla. 2001). In *Havoco*, the debtor filed a voluntary Chapter 7 bankruptcy petition on July 2, 1992 in which he claimed that his Florida real property was exempt as his homestead under article X, section 4 of the Florida Constitution. The debtor had purchased the property on December 30, 1990, three (3) days before the judgment at issue became enforceable on January 2, 1991. *Id.* at 1019. The *Havoco* Court emphasized, *id.* at 1022 (citation and quotation omitted):

> *Most significantly, article X, section 4 expressly provides for three exceptions to the homestead exemption. Forfeiture is not one of them.* According to the plain and unambiguous wording of article X, section 4, a homestead is only subject to forced sale for (1) the payment of taxes and assessments thereon; (2) obligations contracted for the purchase, improvement or repair thereof; or (3) obligations contracted for house, field or other labor performed on the realty. Under the rule "expressio unius est exclusio alterious" --the expression of one thing is the exclusion of another--forfeitures are not excluded from the homestead exemption because they are not mentioned, either expressly or by reasonable implication, in the three exceptions that are expressly stated.

The Carollos' Homestead Property is exempt from levy and Constitutionally protected under Art. X, § 4, Fla. Const., because none of the exceptions apply.

    a. **<u>Plaintiffs are not entitled to create a new exception that does not exist</u>**

Plaintiffs are attempting to create a new exception to Florida's strong homestead protection that does not exist. Again, this a determination for another day and another court. Specifically,

6

Plaintiffs absurdly claim that because Mr. Carollo, in carrying out his legislative duties along with the enter City Commission in redrawing district boundaries, somehow must forfeit or be disqualified from claiming the homestead exemption. Arguments have been made by creditors for decades and the courts regularly reject such arguments and hold that there is <u>no exception</u> in cases involving the debtor's specific intent to defraud the creditor. In *Havoco*, 790 So. 2d at 1030 (emphasis added), the Florida Supreme Court held that "a homestead acquired by a debtor with the **specific intent to hinder, delay, or defraud creditors is not excepted from the protection of article X, section 4**." In fact, notorious wrongdoers whose actions were far more egregious than the acts alleged by Plaintiffs, including Roger Ailes and O.J. Simpson, have enjoyed homestead protection under Article X Section 4 of the Florida Constitution.

In very limited circumstances "only where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead", courts may permit an equitable lien. *Havoco*, 790 So. 2d at 1028. The *Havoco* Court declined to extend its extremely limited equitable lien jurisprudence any further:

> The transfer of nonexempt assets into an exempt homestead with the intent to hinder, delay, or defraud creditors is not one of the three exceptions to the homestead exemption provided in article X, section 4. Nor can we reasonably extend our equitable lien jurisprudence to except such conduct from the exemption's protection. We have invoked equitable principles to reach beyond the literal language of the excepts **only where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead**.

Plaintiffs attempt to create a new exception to the Constitution for an equitable lien "where the 'fraud or outrageous conduct' bears a nexus to the establishment of the homestead." *See* Response at 16. Plaintiffs' alleged fraud and misconduct of Mr. Carollo does not bear any nexus to his establishment of homestead. Importantly, Plaintiffs intentionally omit the Supreme Court's requirement that "**the funds obtained through** fraud or egregious conduct were used to invest in, purchase or improve the homestead." *Havoco*, 790 So. 2d at 1028. Plaintiffs do not claim that any such facts exist, nor could they. In fact, all of the legal authority they cite for an equitable lien is solely in the context of family law, a debtor using homestead protection to avoid alimony and/or child support payments. Again, that is not the case here.

Plaintiffs argue that "an elected official who manipulates his government authority to craft the framework for his own homestead exemption claim forfeits the exemption". *See* Response at

7

16. There is absolutely no such exception and Plaintiffs' argument is based on gross mischaracterization of the facts and wild conspiracy theories.

Mr. and Mrs. Carollo each had established the Homestead Property as their Homestead prior to the June 1, 2023 Judgment and the February 1, 2024 alleged lien. Under Florida law, "[t]hree requirements must be satisfied for real property to be impressed with the characteristics of homestead property under article X, section 4 of the Florida Constitution: (1) the property must be owned by a 'natural person'; (2) the owner must have made, or intend to make the real property his or her permanent residence or that of his family; and (3) the property must meet the size and contiguity requirements of article X, section 4(a)(1) of the Florida Constitution." *Aronson v. Aronson*, 81 So. 3d 515, 518 (Fla. 3d DCA 2012). Each of the Carollos meet these requirements and thus are entitled to Constitutional homestead protection as to the Homestead Property. The Homestead Property is owned by a natural person. Each of the Carollos have made and intended to make the Homestead Property their permanent residence and homestead; and the Homestead Property meets the size and contiguity requirements. Plaintiffs cannot and do not rebut these facts.

Moreover, Plaintiffs admitted that Mr. and Mrs. Carollo are living in the Homestead Property since April 2023, well before February 1, 2024. *See* Motion at 6-7 (citing DE 619 at 4, Plaintiffs' admission, the trial transcript, etc.). Furthermore, the Homestead Property has been Mrs. Carollo's protected homestead since she married Mr. Carollo and obtained an equitable interest in the Homestead Property (*see, e.g.*, § 61.075, Florida Statutes).

Assuming arguendo that Mrs. Carollo obtained her interest in the Homestead Property only via the May 16, 2023 deed, Mrs. Carollo's interest in the Homestead Property would have still pre-existed the February 1, 2024 recordation of any judgment by Plaintiffs. As a matter of law, the subsequent Corrective Deed, dated February 5, 2024, relates back *nunc pro tunc* to May 16, 2023, the date of the initial deed (May 16, 2023). *See, e.g. Sweat v. Yates*, 463 So. 2d 306, 307 (Fla. 1st DCA 1984) ("[A] deed takes effect from the date of delivery, and the recording of a deed is not essential to its validity as between the parties or those taking with notice."). "A reformation relates back to the time the instrument was originally executed and simply corrects the document's language to read as it should have read all along." *Kartzmark v. Kartzmark*, 709 So. 2d 583, 585 (Fla. 4th DCA 1998) (citations and quotations omitted). And a corrective deed issued, even after perfection of a judgment against a judgment debtor, relates back to the date of the original deed, and avoids liability of said real property for any such judgment. *See, e.g.*, *Hurlbert v. Shackleton*,

8

560 So.2d 1276, 1279 (Fla. 1st DCA 1990). Furthermore, given the homestead nature of the real property, Mr. Carollo could transfer the exempt property to his wife, or his wife and himself, at any time and it could not be set aside as a fraudulent conveyance. See, e.g., Bakst v. Levenson (In re Goldberg), 229 B.R. 877, 884 (Bankr. S.D. Fla. 1998) (citations and quotations omitted) ("as a matter of law, the Debtor could not have fraudulently transferred his exempt assets because under Florida law, a homestead cannot be fraudulently transferred.").

### b. Plaintiffs' arguments based on Mr. Carollo's actions in connection with passing legislation are unavailing because Mr. Carollo has absolute legislative immunity

Critically, the sole basis of Plaintiffs' attempt to create a new exception "disqualifying" and "forfeit[ing]" Mr. Carollo's homestead protection is his alleged motive as one of five Commissioners when the Commission passed redistricting legislation. Florida law is clear. First and foremost, redistricting is a legislative act. *Wise v. Lipscomb*, 437 U.S. 535, 539 (1978) ("The Court has repeatedly held that redistricting and reapportioning legislative bodies is a legislative task which the federal courts should make every effort not to pre-empt."). In *Scott*, 405 F. 3d at 1254, a § 1983 case alleging racial discrimination due to legislature's adoption of new district map, the Eleventh Circuit held the "legislator defendants enjoy legislative immunity protecting them from a suit challenging their actions taken in their official legislative capacities". *See also*, *Martin*, 2012 U.S. Dist. LEXIS 169099 at *13 "(The State Defendants' failure to enact a redistricting plan was quintessentially legislative, and the State Defendants are entitled to legislative immunity").

Legislators including Mr. Carollo have absolute immunity and courts will not inquire into the motives of legislators. *See, e.g.*, *Bogan*, *supra*, 523 U.S. at 55; *Yeldell v. Cooper Green Hosp.*, 956 F.2d 1056, 1062 (11th Cir. 1992) (citations omitted) ("Acts such as voting, speech making on the floor of the legislative assembly, preparing committee reports, and participating in committee investigations and proceedings, are generally deemed legislative and, therefore, protected by the doctrine of legislative immunity."). Moreover, the alleged motive relied on by Plaintiffs is years before February 1, 2024 and over a year before the judgment.

Accordingly, Plaintiffs' sole basis to attempt to circumvent the Florida Constitution and *Havoco* categorically fails.

### IV. Each of Mr. and Mrs. Carollo had established and/or had reestablished their Homestead Property before February 1, 2024

9

Neither Mr. nor Mrs. Carollo abandoned the Homestead Property, but that is a question for another court and another day. The questions that must be answered by a court with jurisdiction per Florida Statutes § 222.01, *et seq.*, are: **On February 1, 2024, assuming that Plaintiffs' recorded judgment was perfected, had Mr. Carollo and/or Mrs. Carollo established the Homestead Property as her homestead?** If either or both questions are answered in the affirmative, the Homestead Property is exempt from Plaintiffs' execution. Assuming arguendo that each of the Carollos had abandoned the homestead at some point, which neither of them did,[3] it would be unavailing because each had reestablished the Homestead Property as their homestead before February 1, 2024. *In re Fling*, 449 B.R. at 583 ("CCB has failed to rebut the presumption that Mr. Fling re-established his homestead at the Langston Property, and therefore, CCB has failed to meet its evidentiary burden in objecting to his claim of the homestead exemption.").

Moreover, Florida law is clear that each of the Carollos established the Homestead Property as their Constitutionally protected homestead before February 1, 2024, as of at least April 2023, as admitted by Plaintiffs (DE 619 at 4). *See, e.g.*, *Bessemer*, 158 Fla. at 40; *Nationwide Fin. Corp. v. Thompson*, 400 So. 2d at 561; *Bendl*, 246 So. 2d at 577.

## V.      Conclusion

The Court should expeditiously enter a stay or alternatively a temporary injunction of the Sale of the Homestead Property scheduled for March 19, 2024, pending homestead determination. Mr. and Mrs. Carollo's Constitutional Homestead Property must be protected.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of February 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in this case.

Respectfully submitted,

KRINZMAN HUSS LUBETSKY

---

[3] "In order to show abandonment, it must be shown that both the owner and the owner's family abandoned the property." *Beltran v. Kalb*, 63 So. 3d 783, 787 (Fla. 3d DCA 2011). "Consistent with the special status of Florida homestead, a finding of abandonment requires a 'strong showing' of intent not to return to the homestead." *Yost-Rudge v. A to Z Props.*, 263 So. 3d 95, 97 (Fla. 4th DCA 2019). Plaintiffs have not and cannot satisfy this heavy burden. "There is a presumption against the abandonment of one's homestead". *Burdick v. Burdick*, 399 So. 2d 410, 413 (Fla. 3d DCA 1981). Plaintiffs have not and cannot overcome the presumption.

FELDMAN & HOTTE
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, Florida 33131
Telephone: (305) 854-9700
Primary email:  map@khllaw.com
Primary email:  mschneider@khllaw.com
Secondary:  eservicemia@khllaw.com

By: /s/ *Mason A. Pertnoy*
         Mason A. Pertnoy, Esq.
         Florida Bar No. 18334
And

SHUTTS & BOWEN
200 S. Biscayne Boulevard, Suite 4100
Miami, FL 33131
Telephone: (305) 415-9072
Email: msarnoff@shutts.com

By: /s/ *Marc D. Sarnoff*
Marc D. Sarnoff, Esq.
Florida Bar No. 607924

And

KUEHNE DAVIS LAW, P.A.
100 S.E. 2nd Street, Suite 3105
Miami, FL 33131-2154
Telephone: (305)789-5989
Email: ben.kuehne@kuehnelaw.com;
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

By:  /s/ *Benedict P. Kuehne*
Benedict P. Kuehne, Esq.
Florida Bar No. 233293

11