UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-24190-RS

WILLIAM O. FULLER and
MARTIN PINILLA, II,

    Plaintiffs,

v.

JOE CAROLLO,

    Defendant.
_____/

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon Plaintiffs' Objection to Defendant's Claim of Homestead Exemption (ECF No. 658).[1] In response, Defendant filed a Motion to Dismiss and Alternative Motion for Summary Judgment as to Plaintiffs' Objection to Defendant's Claim of Homestead Exemption (ECF No. 660).[2] Plaintiffs filed a Response, (ECF No. 671), to which Defendant filed a Reply, (ECF No. 674). An evidentiary hearing was held on May 17, 2024. Upon consideration of the Objection, Motion, Response, Reply, and the evidence and argument advanced at the evidentiary hearing, the record as a whole, and being otherwise fully advised in the premises, the undersigned respectfully **RECOMMENDS** that Plaintiffs' Objection be **OVERRULED**.

---

[1] This matter has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Rodney Smith, United States District Judge, for all non-dispositive matters and for a Report and Recommendation on any dispositive matters regarding the Writ of Execution issued on January 9, 2024. (ECF No. 614).

[2] The Court has already ruled on the applicability of Federal Rules of Civil Procedure 12 and 56 to the instant proceedings as raised in Defendant's Motion finding them inapplicable. *See* (ECF No. 687). However, to the extent the Parties raise arguments in that motion practice relevant to considering Plaintiffs' Objection to Defendant's claim of homestead exemption, the undersigned considers the merits of the arguments asserted herein.

1

I. **BACKGROUND**

On June 1, 2023, Plaintiffs obtained a Final Judgment against Joe Carollo ("Defendant") in the amount of $63,500,000.00. (ECF No. 479). On January 9, 2024, a Writ of Execution was issued in favor of Plaintiffs. (ECF No. 599). The Writ provides for the seizure of "goods and chattels, lands and tenements" in this District belonging to Joe Carollo. (*Id.*).

On February 2, 2024, the U.S. Marshals Service (the "Marshals") conducted a levy at 3230 Morris Lane, Miami, Florida 33133 (the "Morris Lane Property"), to partially satisfy the judgment. (ECF No. 617). On February 9, 2024, the Marshals set the sale of the Morris Lane Property for March 19, 2024. (ECF No. 628-1).

Defendant and his wife, Marjorie Carollo ("Mrs. Carollo"), filed affidavits, under oath made before an officer of this state, claiming a homestead interest in the Morris Lane Property and its exemption from forced sale. *See* (ECF Nos. 643-1, 643-2). These Notices were then provided to the Marshals. *See* (ECF Nos. 643-3, 643-4, 643-5). And the Notices were filed on the public docket in this case. (ECF No. 625).

Defendant and Mrs. Carollo, moved to stay, or alternatively, for a temporary injunction of the sale of the Property pending resolution of their claimed homestead exemption to the writ of execution. A hearing was conducted on the Motion on March 1, 2024. At that hearing, Plaintiffs acknowledged that, because of the claim of homestead exemption, the Marshals did not have the authority to presume that the homestead claim is unfounded or to force the sale to go forward. As a result, Plaintiffs represented that they did not intend to go forward with the sale, and would ensure the Marshals' sale of the Property would be canceled pending resolution of the claim of homestead exemption and Plaintiffs' anticipated objection thereto. Ultimately, the scheduled sale of the property was canceled. (ECF No. 649).

Subsequently, Plaintiffs objected to Defendant's claim of homestead exemption over the Morris Lane Property asserting that Defendant abandoned the Property and that Defendant's asserted fraudulent acts as City Commissioner prevented him from being able to exempt the Morris Lane Property as a homestead.

An evidentiary hearing was set on Plaintiffs' Objection.  Plaintiffs called three witnesses: Ken Russell, Miguel De Grandy, and Defendant Joe Carollo.

Ken Russell testified that he served as a City Commissioner for District 2 between 2015 until the end of 2022 and that he was involved in the 2021–2022 redistricting of the City of Miami as one of the five Commissioners who voted on the electoral maps.  Mr. Russell testified that the City of Miami hired Mr. De Grandy to help prepare maps for the redistricting process on which the Commissioners would vote.  Mr. Russell testified that his role as then-Commissioner was to provide input to Mr. DeGrandy on what he felt were the fairest maps that met the required criteria.  Mr. Russell testified that the first version of the map placed the Morris Lane Property in District 2, but in a later redrawn version of the map, the Morris Lane Property was located in District 3, the District of which Defendant is the City Commissioner.  Mr. Russell further testified that he has no personal knowledge of Defendant's intentions or motivations with respect to the Morris Lane Property or establishing it as his homestead.

Mr. De Grandy testified that he was hired as a consultant for the City of Miami.  Mr. De Grandy testified that in drawing the first redistricting map that the Morris Lane Property was not located in District 3, and that a later version of the map included the Property in District 3.  Mr. De Grandy stated that a consideration for redrawing the Morris Lane Property in District 3 was to please Defendant.  Mr. De Grandy testified that Defendant spoke to Mr. De Grandy about how Defendant was considering moving into the Morris Lane Property and claiming homestead.  Mr.

De Grandy further testified that Defendant would be unable to both reside in the Morris Lane Property and remain as Commissioner of District 3 if the map lines did not include the Morris Lane Property in District 3. Mr. De Grandy further testified that he has no personal knowledge of Defendant's intent with respect to establishing his homestead as the Morris Lane Property in April of 2023.

Defendant Joe Carollo testified that he had been the Commissioner of District 3 since December of 2017. Defendant testified that one of the requirements of being the commissioner of a district is residing in the district. At the time Defendant decide to run for Commissioner of District 3, Defendant testified that he moved into an apartment located in District 3 because the Morris Lane Property was located in District 2. Defendant testified that, though he moved to District 3 to run for office, it was always his intention to move back to the Morris Lane Property, which was why he signed a lease for an apartment, in case he was unsuccessful and would then be able to return to the Morris Lane Property. Defendant testified that, even though he was elected the City Commissioner of District 3, he did not know if he would run again nor whether he would be re-elected. Defendant stated it was always his and his wife's intention that once his term ended or he was not re-elected, that they would return to the Morris Lane Property. Defendant testified that he had moved back to the Morris Lane Property a few days before the trial in the instant matter and that, as trial progressed, with the exception of nights he stayed in Fort Lauderdale for trial, he was sleeping at the Morris Lane Property.

Defendant testified that the Morris Lane Property is his and his wife's residence and that they both live there with the full intention that the Morris Lane Property is their permanent residence. Defendant testified that, if the City district map ultimately moves the Morris Lane Property into District 2, he will continue to reside at the Property. Defendant testified that the

4

Property was not rented to anyone else while he rented elsewhere, and the Property was maintained by him at all times. Defendant testified that he replaced his Florida driver's license on April 2, 2023 and it now identifies his residence as the Morris Lane Property. Defendant stated he did so because he had moved back to the Morris Lane Property. Defendant further testified that the address of the Morris Lane Property is further found on his voter identification card, which was issued on April 5, 2023.

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 69(a)(1), proceedings supplementary to and in aid of execution must comply with the procedure of the state where the court is located.

Article 10, Section 4 of the Florida Constitution provides:

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person: (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family . . . .

It is well-settled that a court must liberally construe the homestead exemption in favor of the claimant. *Tramel v. Stewart*, 697 So. 2d 82, 823–24 (Fla. 1997). There "is an overarching public policy that strongly favors preservation of the family dwelling place. In keeping with the strong preference of providing a safety net to a debtor's family unit, the party objecting to the claim of homestead status has the burden of showing that the claimant is not entitled to it." *In re Martinez*, 595 B.R. 912, 920 (Bankr. S.D. Fla. 2019) (citations omitted).

The burden is on Plaintiffs, as the party objecting to the establishment of the homestead, to show that the property in question is not exempt. *Wechsler v. Carrington*, 214 F. Supp. 2d 1348,

5

1351 (S.D. Fla. 2002). "In order to qualify his or her property with homestead status, the party seeking the protection of the exemption must have an actual intent to live permanently on the property *and* actual use and occupancy of the property." *Id.* (emphasis in original). The first test is subjective and looks to the perceived intent of the claimant to reside permanently in the subject property as evidenced by the claimant's actions. *In re Martinez*, 595 B.R. at 919. In addition to testimonial evidence, "courts often look to documentary evidence in the form of driver's license registration, voting registration, mail delivery, and other similar discrete indicators of continued intent to reside at the property claimed as homestead." *Id.* at 919–20; *see, e.g.*, *In re Lloyd*, 394 B.R. 605, 610–12 (Bankr. S.D. Fla. 2008). By contrast, with the second test, proof of actual residence, it can typically be shown through habitation at the property for a significant period, although reference to the same extrinsic markers may be mandated in a handful of unusual situations. *In re Martinez*, 595 B.R. at 920; *see, e.g.*, *Lanier v. Lanier*, 116 So. 867, 868 (1928) (discussing historical status of subject property as the homestead).

If a judgment is recorded prior to the time the debtor has established a homestead, the homestead property is subject to levy under Florida law. *Wechsler*, 214 F. Supp. 2d at 1351–52. As a result, preexisting liens are excepted from Florida's homestead exception. *Id.*

The lien in this case arose on February 1, 2024,[3] when Plaintiffs' lien attached to the Property. The Court's inquiry thus focuses on whether Defendant's Morris Lane Property was his homestead prior to that date.

---

[3] The Parties dispute the date on which Plaintiffs established a valid judgment lien. Defendant argues that Plaintiffs have failed to provide in support of their Objection a valid, perfected judgment lien. In response, Plaintiffs assert that on February 1, 2024, in compliance with Florida Statutes § 55.10, Plaintiffs' lien attached to the Morris Lane Property and attach the relevant judgment and affidavits to their Response. *See* (ECF Nos. 671-1, 671-2, 672-3). Defendant counters that even the attached records fail to demonstrate Plaintiffs have a valid, perfected lien because the judgment and address affidavits were not simultaneously recorded. Because Defendant asserts the Property has been his homestead from April 2023 onward, prior to either of the disputed dates, this dispute is not material for the instant analysis.

### A. Homestead Status

Plaintiffs argue that Defendant abandoned the Property as his homestead in September of 2016 when he moved from the Morris Lane Property to the Brickell Station Lofts apartments (the "Brickell Property"). Plaintiffs represent that Defendant's motive for moving to the Brickell Property was to establish residency in District 3, where he is the City Commissioner, for the duration of his term of office as required by the City of Miami Charter. In moving to the Brickell Property, Plaintiffs assert that Defendant changed his voter registration and driver's license address to his new residence, did not vote in any election thereafter from any different address, and maintained no other residence. Plaintiffs contend that, shortly after taking office in December of 2017, Defendant moved to a property located in Little Havana (the "Little Havana Property") that remained Defendant and Mrs. Carollo's primary and permanent residence throughout the trial and judgment in this case. Plaintiffs further argue that, despite Defendant's contentions, he has no actual intention to reside permanently at the Morris Lane Property. Plaintiffs assert that Defendant's failure to maintain the homestead property tax designation for the Morris Lane Property also demonstrates his abandonment of all homestead protections for the Property.

Defendant asserts that he never abandoned the Morris Lane Property as his homestead. Defendant argues that, even assuming he previously abandoned the Morris Lane Property, Defendant reclaimed the property as his homestead in April of 2023. Defendant further asserts that the Little Havana Property could never have been Defendant's homestead because that property was rented by Defendant and that any failure to maintain a tax designation for the Morris Lane Property does not alter its status as his homestead.

Abandonment occurs "when the owner leaves the home with no intention of returning, takes up permanent abode at another place, and pursues a livelihood in the new area." *In re*

7

*Martinez*, 595 B.R. at 920; *see also Olesky v. Nicholas*, 82 So. 2d 510, 512 (Fla. 1955) ("[W]here a homestead has been acquired it can be waived only by abandonment or by alienation in the manner provided by law."). In the absence of a completed, undisputed transfer of title, the homestead character of a subject property frequently must be determined through fact-based analysis. *See, e.g.*, *Lloyd*, 394 B.R. at 610–12 (evaluating debtor's claim of homestead considering rental of property and debtor's habitation out of state). "Only in light of the totality of circumstances, with all doubts resolved against the moving party, can it be determined that the owner has abandoned the property and abandoned its homestead protections." *Yost-Rudge v. A to Z Properties, Inc.*, 263 So. 3d 95, 97 (Fla. 4th DCA 2019).

Defendant testified that he purchased the Morris Lane Property in 2002. Defendant contends that it has been his homestead since that time. Defendant testified that he rented the Brickell Property in 2016 because he was planning to run as the City Commissioner of District 3, a position to which he was elected in December of 2017. Defendant testified that at that point in time he did not intend to permanently leave the Morris Lane Property. Rather, Defendant stated he always had the intention of returning to the Morris Lane Property because, in the first instance, he was not certain he would be elected, and when he was elected, he was unsure whether he would run again or be re-elected. Defendant testified that, with this uncertainty, he and his wife always had the intention of returning once he was not the City Commissioner of District 3. Indeed, in support of this contention, Defendant has never rented the Morris Lane Property and testified that he consistently maintained the Property.

Though Plaintiffs assert in their written closing that Defendant lacks credibility as a witness, no other evidence was submitted that meaningfully contested Defendant's testimony on the material facts. Plaintiffs cite to Defendant's failure to maintain the homestead tax designation,

but at the hearing Defendant explained that he thought the tax designation could only be utilized if he was currently residing in the Morris Lane Property. Defendant reaffirmed that he always had the intention to return, but he intended to do so when he was no longer a City Commissioner or if he was unable to be re-elected. Likewise, Defendant has never owned another property, has solely rented the other properties he has resided in, and attested that the Morris Lane Property is his biggest asset. *See Matter of Betancourt*, 154 B.R. 90, 92–93 (Bankr. S.D. Fla. 1993) ("There has been no testimony whatsoever that the Debtor did not intend to go back and that was sufficient proof are that it was always her intention to return to the homestead property.").

Moreover, if the evidence did support a finding of abandonment in 2016, the uncontroverted evidence reveals that Defendant (re)established homestead in April of 2023. Defendant testified that shortly before trial he started staying at the Morris Lane Property. Indeed, the Parties do not dispute that a moving truck was rented to return Defendant's belongings to the Morris Lane Property. Defendant submitted evidence that his driver's license and voter information card reflect the address of the Morris Lane Property, and both were issued in April of 2023. Defendant's 2022 and 2023 tax returns and bank statements list the Morris Lane Property as his residence. Further, Defendant provided documentation that he pays utilities for the Morris Lane Property. *See In re Mangieri*, No. 2:20-BK-07403-FMD, 2021 WL 1747422, at *5 (Bankr. M.D. Fla. May 3, 2021) (noting debtor continuing to perform his responsibilities as an owner of the home by paying the mortgage, one-half of the homeowners' association fees, and the cable/internet bill demonstrated that debtor did not intend to abandon his homestead). Thus, on the evidence presented, I find that Defendant had actual occupancy of the Morris Lane Property with the intent to live there permanently by April of 2023. *See In re Fling*, 449 B.R. 580, 583 (Bankr. N.D. Fla. 2011) ("CCB has failed to rebut the presumption that Mr. Fling re-established

his homestead at the Langston Property, and therefore, CCB has failed to meet its evidentiary burden in objecting to his claim of the homestead exemption."). The objective evidence is sufficient to show Defendant's intent to permanently reside at the Morris Lane Property as his homestead. *See Marshall v. Marshall*, 988 So. 2d 644, 649 (Fla. 4th DCA 2008) ("Factors evidencing domicile include: 'income and other tax returns; homestead exemptions; voting registration; driver's license; place of business affairs; use of 'residence'; and number of days in the state.'"). Thus, the Court concludes that Plaintiffs did not meet their burden to prove that Defendant left the Morris Lane Property with no intention of returning or that Defendant established a new permanent residence at another place.[4]

### B. The Asserted Egregious, Bad-Faith, and Fraudulent Misconduct

Plaintiffs argue that, even if Defendant did not abandon the Property, Defendant's egregious, bad-faith, and fraudulent misconduct forfeits the protection of any claim of homestead. Plaintiffs assert two theories, one in the motion practice and the other in their written closings, that Defendant's actions as City Commissioner render it so the Morris Lane Property is not entitled to homestead protections. Plaintiffs first assert that Defendant has manipulated his authority as City Commissioner in order to have the Morris Lane Property located within the confines of District 3, and this misuse of governmental authority cannot now be used to assert a claim of homestead on the Morris Lane Property. Plaintiffs then relatedly argue that Defendant's asserted bad acts as a City Commissioner are directly traceable to his financial windfall that necessarily represents the

---

[4] Plaintiffs assert in their written closing that Defendant in 2018 testified in another suit that the minute that he could sell his home and have the money to buy another one within the district, that's what he intended to do. Plaintiffs argue that Defendant should be judicially estopped from reversing course in this case and arguing he had no intention to abandon the Morris Lane Property. As Defendant notes, this argument was first asserted in the post-hearing closing statements, which denied the Defendant the opportunity to respond to the proffered evidence. Even if the Court accepts the proffered statements attributed to Defendant in those other proceedings, they would not impact the undersigned's finding that Defendant had re-established his homestead at the Morris Lane Property in April of 2023.

source of funding to satisfy his mortgage and retain his ownership and investment in the Morris Lane Property.

Defendant asserts that Plaintiffs' arguments would have this Court create a new exception to the claimed homestead protection not previously recognized by the Florida State Constitution. Defendant asserts that any actions taken with regard to redistricting is a legislative act and is entitled to legislative immunity.  Defendant asserts that the undisputed facts demonstrate that he moved to the Morris Lane Property in April of 2023 with the intent to permanently reside there, and thus the Property is entitled to homestead protection.

"[T]here is little that a homeowner can do under Florida law to lose the protection of homestead." *Pasternack v. Klein*, No. 8:16-CV-482-T-33CPT, 2019 WL 330593, at *6 (M.D. Fla. Jan. 25, 2019) (quoting *In re Bennett*, 395 B.R. 781, 789 (Bankr. M.D. Fla. 2008)); *see also In re Chauncey*, 454 F.3d 1292, 1294 (11th Cir. 2006) (holding the debtor's "blatant[ ] . . . move designed to deceive her creditors and one made in bad faith" was insufficient to find an exception to the homestead exemption).  The Florida Supreme Court "has long emphasized that the homestead exemption is to be liberally construed in the interest of protecting the family home." *Havoco of Am., Ltd. v. Hill*, 790 So. 2d 1018, 1020 (Fla. 2001).  The homestead exemption should not, however, "be so applied as to make it an instrument of fraud or imposition upon creditors." *Id.*  "[W]here equity demands it," the Florida Supreme Court "has not hesitated to permit equitable liens to be imposed on homesteads." *Palm Beach Sav. & Loan Ass'n v. Fishbein*, 619 So. 2d 267, 270 (Fla. 1993).  To obtain an equitable lien on a Florida homestead, a plaintiff must show by a preponderance of the evidence (1) that the defendant engaged in fraudulent or egregious conduct and (2) that the funds from that conduct can be directly traced to the purchase of, investment in, or improvement of the homestead. *In re Fin. Federated Title & Trust, Inc.*, 347 F.3d 880, 888

(11th Cir. 2003); *Fed. Trade Comm'n v. Am. Precious Metals, LLC*, 726 F. App'x 729, 732 (11th Cir. 2018).

In late 2021 to early 2022, the City of Miami engaged in a redistricting process which culminated in the enactment of the 2022 Plan on March 24, 2022. *GRACE, Inc. v. City of Miami*, No. 1:22-CV-24066-KMM, 2024 WL 1563066, at *4 (S.D. Fla. Apr. 10, 2024). This redistricting process became the subject of a lawsuit in this District and resulted in the court finding that the 2022 plan was unconstitutionally racially gerrymandered. *Id.* at *40. Relevant to the instant dispute, Mr. De Grandy and Mr. Russell testified that there were two versions of the map for the redistricting presented to the City Commissioners in February of 2022. The first had the Morris Lane Property in District 2, and the second had it in District 3; the second map was later approved by the City Commissioners.[5] During this process, Defendant initially abstained from voting on the second map, representing that there were concerns of a conflict of interest due to the location of the Morris Lane Property. However, in a later voting on the second map, Defendant decided to vote, which resulted in its approval. Mr. De Grandy testified at the hearing that he knew changing the Morris Lane Property to be in District 3 would please Defendant, but that he had no personal knowledge of Defendant's intent with respect to establishing his homestead in the Morris Lane Property in April of 2023.

Plaintiffs argue that Defendant committed egregious acts as the City Commissioner and these acts should prevent him from claiming the Morris Lane Property as his homestead. Plaintiffs have failed to show, however, the connection between any funds from the alleged egregious conduct that are directly traceable to the Morris Lane Property. Rather, Plaintiffs' argument relies

---

[5] Relevant to the previous finding on abandonment, Plaintiffs urge the Court to discredit Defendant's evidence of intent to live in the Morris Lane Property permanently because they argue the District lines are subject to change as a result of the settlement reached in the *Grace* case. I find this possibility insufficient to overcome Defendant's evidence, including his testimony regarding his belief that he might yet not be affected by the potential changes.

on Defendant's salary as a City Commissioner as the funds obtained from the fraudulent conduct. Plaintiffs then assert these funds were used to pay the mortgage for the Morris Lane Property; hence, the fraudulent acts and the funds received connect to the Morris Lane Property. However, Plaintiffs have not evidenced that Defendant obtained these funds fraudulently. *See, e.g.*, *In re Fin. Federated Title & Tr., Inc.*, 347 F.3d at 889 ("In this case, the majority of funds obtained by [the entity] were undisputedly obtained by fraud."); *Sweeteners Plus, Inc. v. Glob. Supply Source, Inc.*, No. 6:11-CV-1799-ORL, 2013 WL 6890857, at *8 (M.D. Fla. Dec. 31, 2013) ("More than three-quarters of the funds to purchase the [defendant's] homestead were obtained by [defendant] through fraud committed against [plaintiff], and the funds are directly traceable to the fraud of [defendant]."). Indeed, Plaintiffs acknowledge these funds stem from Defendant's salary as a City Commissioner. Plaintiffs have not, for example, shown that Defendant obtained any funds due to the redistricting process within which they allege Defendant acted fraudulently. Merely because Defendant earns a salary as a City Commissioner does not evidence the funds were obtained from fraudulent acts. Thus, without a connection between the asserted egregious conduct and the funds, Plaintiffs have failed to demonstrate by a preponderance of the evidence that they are entitled to an equitable lien on a Florida homestead.

### III. RECOMMENDATIONS

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Plaintiffs' Objection to Defendant's Claim of Homestead Exemption be **OVERRULED**.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable Rodney Smith, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations. Failure to timely file objections will bar a *de novo* determination by the

District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 27th day of July, 2024.

                                                      LAUREN F. LOUIS
                                                      UNITED STATES MAGISTRATE JUDGE

cc:       Honorable Rodney Smith
          Counsel of Record