## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-24190-RS

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

      Plaintiffs,

v.

JOE CAROLLO,

      Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

**THIS CAUSE** is before the Court upon Defendant's Motion to Dissolve Continuing Writ of Garnishment Against Salary or Wages of Joseph X. Carollo to the City of Miami.  (ECF No. 598).  Plaintiffs filed a Response, (ECF No. 608), to which Defendant filed a Reply (ECF No. 610).  This matter has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Rodney Smith, United States District Judge, for all non-dispositive matters and for a Report and Recommendation on any dispositive matters regarding the Writ of Execution issued on January 9, 2024.  (ECF No. 614).  An evidentiary hearing was held on Defendant's Motion on July 26, August 1, and August 8, 2024.  Upon consideration of the Motion, Response, Reply, evidence and argument advanced at the hearing, and being otherwise fully advised in the premises, the undersigned respectfully **RECOMMENDS** the Motion to Dissolve Continuing Writ of Garnishment Against Salary or Wages of Joseph X. Carollo to the City of Miami (ECF No. 598) be **GRANTED**.

1

I.        **BACKGROUND**

On June 1, 2023, Plaintiffs obtained a Final Judgment against Joe Carollo in the amount of $63,500,000.00.   (ECF No. 479).   Plaintiffs moved for issuance of a Continuing Writ of Garnishment Against Salary or Wages directed to the City of Miami one week thereafter.  (ECF No. 487).  On November 28, 2023, the Court issued a Continuing Writ of Garnishment Against Salary or Wages of Joseph X. Carollo.  (ECF No. 587).  The Writ provides that a portion of Defendant's salary or wages, as it becomes due, shall be garnished until the Plaintiffs' judgment is paid in full.  (*Id.*)

Defendant filed a Claim of Exemption, under oath made before an officer of this state, claiming an exemption for head-of-family wages.  (ECF No. 518).  Specifically, Defendant claims that he provides more than one-half of the support for a child or other dependent.  (*Id.*)  Defendant now moves to dissolve the Continuing Writ of Garnishment based on Defendant's Claim of Exemption.  (ECF No. 598).  Plaintiffs filed a Response (ECF No. 608), to which Defendant filed a Reply (ECF No. 610).

An evidentiary hearing was held on July 26, 2024, at which time Mr. Carollo testified. (ECF No. 708.)  The hearing was continued until August 1.  Following Mr. Carollo's testimony, Plaintiffs filed an expedited motion to compel Defendant "to produce complete financial records demonstrating his wife's income and expenses," including MTC Group Inc.'s ("MTC") last two tax returns.  (ECF No. 702).  The undersigned denied Plaintiffs' motion to compel in a paperless order for reasons explained therein.  (ECF No. 703).  The continued evidentiary hearing proceeded on August 1 and 9, 2024.  On August 9, Plaintiffs orally renewed their motion to compel disclosure of MTC's 2021 and 2022 tax returns, which was denied.

## II.    DISCUSSION

Defendant argues that the Continuing Writ of Garnishment to the City of Miami should be dissolved because his salary from the City is exempt as head-of-family wages pursuant to § 222.11(2)(b), Florida Statutes.  Section 222.11(2)(b) provides, "[d]isposable earnings of a head of a family, which are greater than $750 a week, may not be attached or garnished unless such person has agreed otherwise in writing."  A head of family is "any natural person who is providing more than one-half of the support for a child or other dependent."  Fla. Stat. § 222.11(1)(c).  Defendant claims that he is providing more than one-half of the support for his wife, Marjorie Carollo.  In particular, he claims that Mrs. Carollo has "no reportable income" and Defendant's City of Miami salary "pays for all expenses including, but not limited to, the Carollos' mortgage on their marital home, the property taxes on the marital home, electricity, water, utilities, and groceries."  (ECF No. 610).

Plaintiffs' opposing arguments are difficult to pin down.  They clothe what amounts to the same factual contention—that Mrs. Carollo is not truly dependent on Mr. Carollo's salary—in a variety of legal and factual theories.

First, Plaintiffs' Response argues that Defendant's failure to claim Mrs. Carollo as a dependent on his federal tax return serves as an admission that she is not dependent on his salary. (ECF No. 608 at 3).

Next, the Response seems to imply that no spouse of sound mind and able body may constitute a "child or other dependent" within the meaning of § 222.11(1)(c).  (*Id.* at 2–3).

In his closing argument at the evidentiary hearing, Plaintiffs' counsel articulated a similar but distinct argument: that Mrs. Carollo should not be considered a "dependent" because she "created her own dependency."  In Plaintiffs' view, Chapter 222 of the Florida Statutes does not

3

allow a debtor who purposefully arranges his finances so that his income pays for more than half of his spouse's expenses to claim the head of family exemption.

Fourth, the Parties vigorously dispute the time at which Mr. Carollo must be the head of family to prevail on his Motion. Defendant asserts that the Court may only consider the debtor's circumstances at the time the Court issued the Continuing Writ of Garnishment, which occurred in November 2023. (ECF No. 587). Plaintiffs assert that the Court should instead focus its attention on the six months preceding their first Motion for a Writ of Garnishment (ECF No. 487)—in this case, the first half of 2023—because the evidence from this period is not tainted by a debtor's attempts to make himself a head of family. Plaintiffs say that the bank records from January to June 2023 show not only that Mr. Carollo was not the head of family in the first half of 2023, but also that Mrs. Carollo must have been receiving income from an undisclosed source.

Finally, Plaintiffs aver that Defendant's claim of exemption should be disallowed as a matter of public policy because granting Defendant's Motion will allow every debtor to escape garnishment by purposefully availing himself of the head of family exemption.

None of Plaintiffs' legal arguments are persuasive. The undersigned shares Plaintiffs' skepticism of the Carollos' testimony.[1] But after a thorough review of the documentary evidence, the undersigned finds that a preponderance of the evidence supports the claim of exemption. The Court addresses each of Plaintiffs' arguments in turn.

### A.    Plaintiffs' Legal Arguments

### i.    A Spouse May Qualify as a Dependent Under § 222.11(1)(c)

The text and history of § 222.11 belie any contention that the word "dependent" cannot

---

[1] Mr. Carollo's direct examination was heavily led by his counsel and despite that, his testimony failed in several respects to demonstrate his personal knowledge of the facts counsel sought to elicit through him. More significantly, the Carollos' testimony was in some ways contradicted by the financial records and in other respects meaningfully uncorroborated by any records adduced at the hearing.

4

apply to a spouse.  "When interpreting . . . Fla. Stat. § 222.11, we look to the decisions of the state's courts."  *In re Tobkin*, 638 Fed. App'x 822, 824 (11th Cir. 2015) (internal quotations omitted).

The Florida Legislature has amended the text of § 222.11 several times.  Prior to 1981, the statute provided,

> No writ of attachment or garnishment or other process shall issue from any of the courts of this state to attach or delay the payment of any money or other thing due to any person who is the head of a family residing in this state, when the money or other thing is due for the personal labor or services of such person.

Fla. Stat. § 222.11 (1979).  In *Killian v. Lawson*, the Supreme Court of Florida addressed the question of "[w]hether a divorced man, who pays $1,000 a month alimony, which constitutes the sole support of his ex-wife, is entitled to the exemption of wages from garnishment under section 222.11."  387 So. 2d 960, 961 (Fla. 1980).  Interpreting the statute as it was, the Court held that to prove family headship, "a person claiming exemption must show either: (1) a legal duty to maintain arising out of the family relationship at law; and/or (2) continuing communal living by at least two persons with one person recognized as being in charge."  *Id.* at 962.  Under that standard, the debtor was entitled to the exemption.  *Id.*

In 1981, the Legislature added the following sentence to the end of § 222.11:

> As used in this section, the term "head of family" includes any unmarried, divorced, legally separated, or widowed person who is providing more than one-half of the support for a child or other dependent.

Fla. Stat. § 222.11 (1981).  A 1993 amendment replaced "any unmarried, divorced, legally separated or widowed person" with "any natural person."  *See* Fla. Stat. § 222.11(1)(c) (1993).  In defining "head of family," the Legislature displaced *Killian*'s two-prong framework for establishing family headship.  *See In re Holland*, No. 15-bk-3084, 2017 WL 6550493, at *5 (Bankr. M.D. Fla. Apr. 11, 2017) (rejecting debtors' argument that they could qualify as a head of

family under the *Killian* rule).  The sole method by which Defendant can prove his entitlement to the head-of-family exemption is by showing that he provides "more than one-half of the support for a child or other dependent."  Fla. Stat. § 222.11(1)(c) (2024).

To the extent that Plaintiffs argue that a spouse cannot constitute an "other dependent," they cite no authority for such contention.  There is no indication that in amending § 222.11, the Legislature intended to exclude spouses from the exemption's reach.  On the contrary, there is an unbroken pattern of the Legislature expanding the scope of § 222.11, making the exemption available to all types of families regardless of marital or residential status.

The text and history of § 222.11 indicate that the individual's "dependency [on the debtor's support] is the key factor in proving head-of-family status."  *In re Holland*, 2017 WL 6550493, at *3; *see also In re Beckmann*, No. 98-10325, 2000 WL 33722204, at *3 (Bankr. M.D. Fla. June 30, 2000) ("A person qualifies as a dependent under § 222.11 if that person's income is insufficient to sustain him or her without the support of the person claiming him or her as a dependent.").  The caselaw before and after 1981 confirm this understanding of the exemption.  *See Killian*, 387 So. 2d at 962 (debtor whose ex-wife depended on alimony payments was entitled to the exemption); *In re Parker*, 147 B.R. 810, 812 (Bankr. M.D. Fla. 1992) (debtor entitled to exemption because he was the primary source of support for his wife, whose income was "nominal and insufficient"); *Mazzella v. Boinis*, 617 So. 2d 1156, 1158 (Fla. 4th DCA 1993) (debtor's continuing support of her adult son qualified her for the exemption); *In re Beckmann*, 2000 WL 33722204, at *3 (implying that debtor's wife could have qualified as a dependent had she lacked sufficient income); *In re Holland*, 2017 WL 6550493, at *4–5 (same); *Strutton v. Anderson*, No. 22-61294, 2023 WL 9067767, at *1 (S.D. Fla. Nov. 17, 2023) (debtor entitled to exemption because he was the sole provider for himself and his wife).  Therefore, if Mrs. Carollo depends on Defendant's City of

6

Miami salary for more than one-half of her support, then she is a dependent within the meaning of § 222.11(1)(c).

### ii. Becoming a Head of Family with the Purpose of Claiming the Exemption Is Not Grounds for Disallowance

Plaintiffs protest Defendant's claim of exemption because, as they see it, Mr. and Mrs. Carollo have manipulated their financial circumstances to make Mr. Carollo the head of family. They say that in early 2023, Mrs. Carollo and her wholly owned company MTC Group were paying more than half the household expenses, but after the judgment, "all of those expenses were shifted, and now, Mr. Carollo is paying for those expenses." (ECF No. 708 at 18). Further, Mrs. Carollo chose to stop performing services for profit but still provides similar services as a volunteer, which, Plaintiffs say, demonstrates that she will not become a public charge if Mr. Carollo's wages are garnished. Assuming *arguendo* that Plaintiffs' characterization of the Carollos' intent is accurate, nothing in the Florida Statutes prevents a debtor from becoming a head of family for the purpose of avoiding garnishment.

Statutes are interpreted according to their plain meaning. *See, e.g.*, *Koile v. State*, 934 So. 2d 1226, 1230–31 (Fla. 2006). Section 222.11(2)(b) provides, "[d]isposable earnings of a head of a family, which are greater than $750 a week, may not be attached or garnished unless such person has agreed otherwise in writing." Subsection (1)(c) defines "head of family" as "any natural person who is providing more than one-half of the support for a child or other dependent." The plain text of § 222.11 leads to the unambiguous conclusion that the earnings of any person who is providing more than half of the support for a dependent cannot be garnished, unless a codified exception applies.

One such exception to § 222.11(2)(b) is the debtor's written consent. The statute prescribes highly specific requirements for an enforceable agreement waiving the protections of § 222.11:

the waiver language set forth in (2)(b)(3) must appear in all capital letters, 14-point font, and be contained in a separate document that is attached to the contract.  This specificity demonstrates that the Legislature knows how to create exceptions to the head of family exemption when it wants to.  It did not create one for the circumstances Plaintiffs allege.

Plaintiffs emphasize that an exemption from garnishment "is not effective if it results from a fraudulent transfer or conveyance."  Fla. Stat. § 222.29.  But the evidence fails to reveal any transfers of note, let alone a fraudulent one.  In support of their request for the 2021 and 2022 bank records and tax returns of Mrs. Carollo and MTC,[2] Plaintiffs speculate that Mrs. Carollo may have transferred away significant sums to conceal the fact that she has other means of support.  Given that Mr. Carollo's trial took place in May 2023, Plaintiffs' theory rests on the attenuated proposition that Mrs. Carollo saw the writing on the wall more than six months before trial and transferred significant sums to an undisclosed account, knowing that an adverse judgment would be entered against her husband, that Plaintiffs would move to garnish his wages, and that Mr. Carollo would claim the head of family exemption, which requires that he provide more than half of her support.  It also presumes that Mrs. Carollo would be willing to lie under oath.  The undersigned directly asked Mrs. Carollo if she had any other sources of income in 2023 and 2024 besides her husband's salary, a one-time $5,000 payment to MTC, and a $20,000 tax refund.  She swore that she did not.  (ECF No. 704 at 83–84).

The cases that Plaintiffs proffer in support of a contrary view do not stand for the proposition they assert.  Plaintiffs aver that the Court should follow the lead of *In re Beckmann*, in which the bankruptcy court wrote, "Florida exemption law is not to be used as a sword merely to defeat the claims of creditors.  The purpose of the head of family exemption is to preserve the

---

[2] Counsel for Defendant asserts that no such tax returns exist.

home and shelter for the family, so as to prevent the family from becoming a public charge." 2000 WL 33722204, at *3. The *Beckmann* court disallowed the head of family exemption where the debtor maintained that, "*regardless of Mrs. Beckmann's ability to financially support herself*," the fact that he was the "functional head of the family unit" and decided "which bills to pay and when to pay them," entitled him to § 222.11's protection. *Id.* (emphasis added). The court rightfully rejected Mr. Beckmann's claim because his argument for entitlement to the exemption rested on the outdated *Killian* standard. The evidence revealed that in the relevant year, Mrs. Beckmann received $53,500 in salary and $130,000 in capital gains, which far exceeded Mr. Beckmann's $58,000 salary alone. *See id.*

Plaintiffs' reliance on *In re Holland* is similarly misplaced. There too the bankruptcy court denied a husband debtor's claim that his wife was a dependent. After rejecting the debtor's argument that he qualified as a head of family under *Killian*, the court concluded that the debtor did not provide more than half of his wife's support given that he earned only $372.11 more per month than his wife, who had her own salary. 2017 WL 6550493, at *4, 5. Although the debtor provided "slightly more than half of the total family income," he did not provide his wife "with more than half of her own support." *Id.* at *5.

*Beckmann* and *Holland* reached their respective holdings by evaluating the evidence and applying an objective calculation to determine whether the debtor provided more than half of the support for his spouse. That is what the undersigned recommends today. Plaintiffs' suggestion that the exemption should be unavailable to a debtor who becomes a head of family to avoid garnishment, or that a court should instead ask whether, in its subjective view, the claimed dependent will become a public charge, is without merit. "[T]hese arguments implicitly seek to rewrite the statute which neither [Plaintiffs] nor this Court has authority to do." *Id.*

### iii.   A Debtor's Claim of Exemption Under § 222.11 Is Assessed Based on Present Not Historical Circumstances

The Parties offer differing views of the time period during which Mr. Carollo must be the head of family to prevail on his motion.  Defendant contends that the Court may only consider the debtor's circumstances at the time the Court issued the Continuing Writ of Garnishment, which occurred in November 2023.  (ECF No. 587).  Plaintiffs assert that the Court should focus on the six months preceding their first Motion for a Writ of Garnishment (ECF No. 487)—in this case, the first half of 2023—because the evidence from this period is not tainted by a debtor's attempts to make himself a head of family.

Plaintiffs' argument here similarly relies on the proposition that a debtor who purposefully avails himself of the exemption should not be entitled to it.  Because this argument relies on the same extra-statutory logic, it also fails.  When asked to dissolve a writ of garnishment based on the head of family exemption, courts have assessed the claimed dependent's circumstances at the time the writ was served or when the wages were earned.  *See Strutton*, 2023 WL 9067767, at *1 ("[A]t the time the Writ was served, Defendant was the sole provider for both himself and [his wife]."); *Reichenbach v. Chem. Bank of N.J.*, 623 So. 2d 577, 579 (Fla. 3rd DCA 1993) (analyzing whether Reichenbach was entitled to the head of family exemption "at the time the wages were earned").  Whether the Court considers Mrs. Carollo's circumstances when the writ was served on the City of Miami or the months thereafter, Defendant's claim is successful.

### B.   Defendant Provides More Than One-Half of His Wife's Support

A debtor has the burden of proving entitlement to an exemption.  *See Brock v. Westport Recovery Corp.*, 832 So. 2d 209, 211 (Fla. 4th DCA 2002); *Hancock Whitney Bank v. Adams*, 288 So. 3d 759, 761 (Fla. 1st DCA 2020).  To prevail, Defendant must show that his City of Miami salary provides more than one-half of Mrs. Carollo's support.  After thorough review of the

10

testimony and documentary evidence, the undersigned makes the following findings of fact.

At the beginning of January 2023, Mr. Carollo had approximately $30,000 in his bank account and Mrs. Carollo had approximately $35,000 at her disposal, most of which resided in MTC Group's bank account. Testimony and documentary evidence revealed that Mrs. Carollo freely used funds in MTC's account for personal expenses. By May, nearly all of Mrs. Carollo's funds had been exhausted. Mr. Carollo's bank account balance on September 1, 2023 was $995.

The Carollos' 2023 joint tax return reported that the roughly $100,000 Mr. Carollo earned as a Miami City Commissioner was the couple's sole income. Mr. Carollo received his salary once per month. He received $7,787 in salary in the months of July, August, September, and December 2023. Following service of the Writ of Garnishment, he received approximately $4,490 per month.

MTC Group received a one-time payment of $5,000 on May 2, 2023, which Mrs. Carollo testified was compensation for her professional services.

On November 10, 2023, Mrs. Carollo deposited a U.S. Treasury check of $20,000. This was the Carollos' 2022 tax refund, as evidenced by their tax return.

Since May 2023, nearly all deposits into Mrs. Carollo's accounts correspond to preceding withdrawals made from Mr. Carollo's account. For example, on August 1, 2023, Mr. Carollo withdrew $7,462; on August 3, Mrs. Carollo deposited $5,240. On September 1, 2023, Mr. Carollo withdrew $2,500; on September 8, Mrs. Carollo deposited $1,000. And so forth. The Carollos testified that Mr. Carollo would give Mrs. Carollo money to deposit in her accounts for the purpose of paying household expenses.

Bank statements reveal that from April 2023 to July 2024, funds in Mr. and Mrs. Carollo's accounts were used to pay for joint household living expenses. Mr. Carollo made monthly

mortgage payments of approximately $2,600. Quarterly Miami-Dade Water and Sewer Department bills were paid from Mr. Carollo's account. Monthly Florida Power and Light bills were paid from Mr. Carollo's account. Geico insurance payments were paid every other month from Mr. Carollo's account. Monthly AT&T bills were paid from Mr. Carollo's account. Monthly DirecTV bills were paid from both Mr. and Mrs. Carollo's accounts. Instacart and Doordash subscriptions were paid monthly from Mrs. Carollo's account. Defendant produced the image of a November 30, 2023 check in the amount of $10,155.87 drawn from Mrs. Carollo's account and paid to the Miami-Dade Tax Collector with the memo line, "Property Taxes."

As Plaintiffs see it, the fact that from time to time, the Carollos' expenses exceeded Mr. Carollo's salary proves that there must be some undisclosed source of income. But on the contrary, the evidence reveals that to the extent the Carollos are spending more than they are earning, their lifestyle is financed by debt.

Plaintiffs also argue that because Mr. Carollo "has never claimed his wife as a dependent on any of his tax returns[,] . . . [t]his admission alone should stop Defendant's motion." (ECF No. 608 at 3). This argument attempts to impeach the Carollos' tax returns and sworn statements that Mrs. Carollo is dependent on Mr. Carollo's salary. To Plaintiffs' credit, the undersigned afforded little weight to the Carollos' testimony to the extent that it was not corroborated by independent evidence. However, the Carollos' tax returns are merely one piece of evidence among an abundance of documentary evidence, including bank records. They alone are not determinative of the outcome of Defendant's motion.

Defendant has met his burden. The evidence shows that from May 2023 to the present, Mr. Carollo's salary from the City of Miami accounted for nearly all his wife's support.

## III.    RECOMMENDATIONS

Accordingly, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Dissolve Continuing Writ of Garnishment Against Salary or Wages of Joseph X. Carollo to the City of Miami be **GRANTED** and that the Clerk of Court be directed to dissolve the Continuing Writ of Garnishment Against Salary or Wages of Joseph X. Carollo issued as to Garnishee The City of Miami in the amount of $63,500,000.00.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodney Smith, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a de novo determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).  Any response to objections must be filed within seven (7) days of the filed objections.  *See* S.D. Fla. L.R. 4(b).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 14th day of August, 2024.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

cc:    Honorable Rodney Smith
       Counsel of Record

13