**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 18-24190-CIV-SMITH**

WILLIAM O. FULLER and
MARTIN PINILLA, II

       Plaintiffs/Judgment Creditors,

v.

JOE CAROLLO,

       Defendant/Judgment Debtor,

and

CITY OF MIAMI, a municipal corporation,

       Defendant in Proceedings Supplementary.

_____/

### JUDGMENT CREDITORS' MOTION TO INITIATE PROCEEDINGS SUPPLEMENTARY AND TO IMPLEAD THE CITY OF MIAMI

Judgment Creditors, William Fuller and Martin Pinilla (collectively, "Judgment Creditors"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 69(a) and Fla. Stat. § 56.29, move this Court to initiate proceedings supplementary to and in aid of execution of the Final Judgment entered herein, and to implead the City of Miami as a Defendant in Proceedings Supplementary, and state in support:

**I.       Jurisdiction and Authority**

1. Federal Rule of Civil Procedure 69(a)(1) provides that "[t]he procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located." This Court sits in Florida.

2. Florida Statute § 56.29 authorizes a judgment creditor holding an unsatisfied judgment enforceable in this state to initiate proceedings supplementary to reach property of the judgment debtor held by, or debts owed to the judgment debtor by, third parties.

3. This Court has subject matter jurisdiction over these proceedings supplementary as ancillary to the underlying action in which Final Judgment was entered.

## II.      The Judgment and Unsatisfied Execution

4. On June 2, 2023, a jury returned a verdict in favor of Judgment Creditors and against Defendant Joe Carollo ("Judgment Debtor") in the amount of $63,500,000.00, finding that Judgment Creditors were victims of a political retaliation campaign orchestrated by Judgment Debtor.

5. This Court entered Final Judgment on June 1, 2023 (ECF No. [479]) (the "Judgment").

6. On January 9, 2024, the Clerk of this Court issued a Writ of Execution on the Judgment (ECF No. [599]).

7. The Writ of Execution has been delivered to the appropriate sheriff and has been returned wholly or partially unsatisfied.

8. As of the date of this Motion, the Judgment remains unsatisfied. The total amount outstanding, including accrued post-judgment interest pursuant to 28 U.S.C. § 1961 and taxable costs, is approximately $75,000,000.00.

9. Judgment Creditors have been unable to satisfy the Judgment through ordinary execution. Judgment Debtor's Coconut Grove residence has been determined to be exempt under Florida's homestead exemption, Article X, Section 4, Florida Constitution. Judgment Debtor's wages have been shielded from garnishment. The practical effect is that the Judgment is presently uncollectible through standard execution remedies.

**III. The City of Miami's Obligation to Judgment Debtor**

10. The proposed Defendant in Proceedings Supplementary is the City of Miami, a Florida municipal corporation, with its principal offices at Miami City Hall, 3500 Pan American Drive, Miami, Florida 33133 (the "City").

11. In 2006, Judgment Debtor filed suit against the City challenging legislative changes that Judgment Debtor alleged "significantly reduced" his yearly pension benefit as a former elected official. That lawsuit has been pending for approximately twenty years, captioned *Joe Carollo v. City of Miami*, Case No. 2006-014464-CA-01 (the "Pension Lawsuit").

12. In or about May 2026, the Miami City Commission held a closed-door attorney-client session (a "shade meeting") to discuss the Pension Lawsuit, indicating that settlement discussions were underway.

13. The Miami City Commission is now scheduled to vote, as early as May 21, 2026, on a resolution approving a $770,000.00 settlement payment to Judgment Debtor in full resolution of the Pension Lawsuit (the "Settlement").

14. Upon the City Commission's approval of the Settlement, the City will owe a debt of $770,000.00 to Judgment Debtor. This debt constitutes "property, debt, or other obligation due to the judgment debtor" within the meaning of Fla. Stat. § 56.29(6), held by or under the control of the City.

15. On information and belief, the Settlement proceeds will be paid from the City's general fund or other non-pension, non-trust-fund municipal revenues. The Settlement proceeds are not a distribution from any qualified pension plan, retirement trust, or retirement system administered by or on behalf of the City.

**IV. The Settlement Proceeds Are Not Exempt from Execution**

16. Judgment Debtor may contend that the Settlement proceeds are "pension money" or "retirement or profit-sharing benefits" exempt from legal process under Fla. Stat. § 222.21 or other Florida exemption statutes. That contention should be rejected.

17. Florida Statute § 222.21(1) exempts "[m]oney received by any debtor as pensioner of the United States" under certain conditions. Subsection (2)(a) exempts money held in or payable from tax-qualified retirement plans described in the Internal Revenue Code. Neither provision applies here.

18. The Settlement proceeds are not a distribution from any pension fund, retirement trust, or qualified retirement plan. They are payment of a litigation settlement from the City of Miami's general fund in resolution of a breach-of-contract and/or due process claim regarding legislative changes to pension benefit calculations. As such, the Settlement proceeds do not constitute "pension money" or "retirement or profit-sharing benefits" within the meaning of Fla. Stat. § 222.21 or any other exemption statute.

19. The structure of the City's own pension system confirms the non-exempt character of the Settlement. Pension benefits for the City of Miami's elected officials are administered and paid by the City of Miami Elected Officer's Retirement Trust ("EORT"), a separate fiduciary entity with its own Board of Trustees and its own assets. When the EORT distributes pension benefits to a retired elected official, those payments originate from the trust's assets, are reported as pension income, and carry the exempt character conferred by Fla. Stat. § 222.21 and the applicable municipal pension statutes. The Settlement at issue here does not originate from the EORT or any other pension trust. It originates from the City's general fund, authorized by a vote of the City Commission in its legislative capacity. The City is not acting as a fiduciary distributing trust assets;

it is acting as a litigation defendant paying to resolve its own exposure. The payor entity, the source of funds, and the legal basis for the payment are all different from an actual pension distribution. If the Judgment Debtor were receiving his regular pension check from the EORT, that would be exempt. He is not. He is receiving a lump-sum litigation settlement from the City's general revenues, and that payment carries no exemption.

20.     Florida courts consistently hold that a payment's exempt character depends on its actual source and the parties' intent, not on the subject matter of the dispute that generated it. The labeling of a claim as "pension-related" does not transmute general settlement proceeds into exempt pension benefits.

21.     The Middle District of Florida addressed a directly analogous issue in *In re Chesley*, 526 B.R. 888 (Bankr. M.D. Fla. 2014). There, the debtor was injured in an automobile accident that allegedly rendered him disabled. He received a lump-sum settlement from the tortfeasor and claimed the proceeds were exempt "disability income benefits" under Fla. Stat. § 222.18, on the theory that the accident had caused his disability. The court rejected the exemption. The court held that "the mere fact that an automobile accident allegedly rendered the debtor disabled did not mean that the proceeds he received pursuant to a general settlement with the alleged tortfeasor were exempt 'disability income benefits.'" *Id.* at 895. The settlement "did not allocate payments between the debtor's medical expenses and other claims, and the debtor did not demonstrate that the proceeds of the general release were derived from a disability insurance policy or were specifically for disability income benefits." *Id.* at 895-96. The debtor's subsequent use of the funds to pay off his home mortgage, purchase a truck, repair his home, and pay friends and family members further confirmed the non-exempt character of the proceeds. *Id.* at 889.

22. The reasoning of *Chesley* applies with equal force here. Just as a personal injury settlement does not become exempt "disability income benefits" merely because the underlying injury caused a disability, a litigation settlement does not become exempt "pension money" merely because the underlying lawsuit challenged legislative changes to pension benefit calculations. The relevant inquiry is the source and character of the payment, not the subject matter of the claim.

23. The Judgment Debtor's Settlement with the City of Miami fails the *Chesley* test on every measure:

- **Source of the funds**: The Settlement will be paid from the City's general fund or risk management reserves, not from any pension trust, retirement fund, or qualified retirement plan.

- **No allocation to pension benefits**: On information and belief, the Settlement does not allocate the $770,000 between categories of damages (e.g., past pension shortfalls, interest, consequential damages, or other relief). It is a general release of all claims in the Pension Lawsuit for a single lump-sum amount, precisely the structure *Chesley* found insufficient to support an exemption.

- **Payor is not a pension fund**: The City of Miami is paying in its capacity as a litigation defendant, not as a pension fund administrator, trustee, or plan sponsor. The City is not disbursing money held in trust for the benefit of retirees. It is paying to resolve its own litigation exposure for legislative action taken two decades ago.

- **The payment is compensatory, not a pension distribution**: The Judgment Debtor's 2006 complaint alleged that the City's legislation "significantly reduced" his pension benefit. The Settlement compensates for that alleged legislative wrong. It is a claim sounding in breach of contract or due process, not a request for pension distributions.

6

24. The Eleventh Circuit's decision in *In re Solomon*, 95 F.3d 1076 (11th Cir. 1996), reinforces this analysis. In *Solomon*, the debtor received structured payments under a litigation settlement and claimed they were exempt as annuity proceeds under Fla. Stat. § 222.14. The Eleventh Circuit reversed the district court, holding that "the fact that Solomon received a series of payments under the settlement agreement does not necessarily transform the agreement into an annuity contract exempted by section 222.14." *Id.* at 1078-79. The court required "the existence of an actual annuity contract" and evidence that "the parties to the agreement must have intended to create an annuity contract." *Id.* at 1079.

25. The same principle governs here. The mere fact that the Judgment Debtor's litigation concerned pension benefits does not transform the settlement proceeds into pension money any more than the existence of periodic payments transformed the settlement in *Solomon* into an annuity. Courts look to substance, not labels. The substance of this transaction is a municipality paying a lump sum from its general revenues to resolve a twenty-year-old lawsuit. That is a litigation settlement, not a pension distribution.

26. The distinction the Judgment Debtor will attempt to draw with *Zuckerman v. Hofrichter & Quiat, P.A.*, 646 So. 2d 187 (Fla. 1994), only reinforces Judgment Creditors' position. In *Zuckerman*, the Florida Supreme Court extended the disability income exemption to a lump-sum settlement paid by the debtor's own disability insurance carrier to settle the insurance claim itself. The carrier in *Zuckerman* was the entity that owed the exempt benefit, paying the settlement as a substitute for future disability payments under the policy. Here, the City of Miami is not a pension fund or insurance carrier. It did not owe the Judgment Debtor pension benefits. It owed him nothing until the parties agreed to settle the Judgment Debtor's affirmative claim for damages

7

caused by the City's legislative conduct. The Settlement is not a substitute for pension benefits; it is compensation for a legal wrong.

27.     Accordingly, the Settlement proceeds are not exempt from execution under Fla. Stat. § 222.21 or any other Florida exemption statute[1], and should be applied toward partial satisfaction of the Judgment.

28. To the extent the exemption question cannot be resolved on the papers, Judgment Creditors respectfully request an evidentiary hearing at which the Court may examine the source of the Settlement funds, the terms of the Settlement agreement, and the City's pension structure as it pertains to Judgment Debtor.

**V. Authority Under § 56.29 to Reach the Settlement Proceeds**

29. Florida Statute § 56.29(6) provides, in relevant part:

The court may order any property of the judgment debtor, not exempt from execution, or any property, debt, or other obligation due to the judgment debtor, in the hands of or under the control of any person subject to the Notice to Appear, to be levied upon and applied toward the satisfaction of the judgment debt.

30. The City owes Judgment Debtor a debt (the Settlement payment). That debt is non-exempt property of Judgment Debtor within the meaning of the statute. The Court has authority to order that the Settlement proceeds be applied toward satisfaction of the Judgment.

---

[1] The same analysis applies to any other exemption statute Judgment Debtor might invoke. Florida Statute § 121.131, which exempts Florida Retirement System benefits from "attachment, garnishment, or legal process," protects distributions from the FRS trust fund, not general-fund litigation settlements paid by a municipal defendant. Similarly, the protections afforded to benefits under Chapter 112, Part VII, Florida Statutes, and the City of Miami Code provisions establishing the Elected Officers' Retirement Trust, apply to pension benefits paid by or from the trust in the ordinary course, not to lump-sum settlement payments appropriated from the City's general revenues to resolve the City's own litigation exposure. Because the Settlement does not originate from any pension trust or retirement system, and is not paid in the City's capacity as a plan administrator or fiduciary, none of these provisions confer exempt status on the Settlement proceeds.

31. Florida Statute § 56.29(6) further provides: "The court may enter any orders, judgments, or writs required to carry out the purpose of this section, including those orders necessary or proper to subject property or property rights of any defendant to execution."

32. Proceedings supplementary "are equitable in nature and should be liberally construed" to provide the broadest relief to the judgment creditor. *Ferguson v. State Exchange Bank*, 264 So. 2d 867, 868 (Fla. 1st DCA 1972); *Regent Bank v. Woodcox*, 636 So. 2d 885, 886 (Fla. 4th DCA 1994). The Court has discretion in crafting appropriate relief. *Myd Marine Distrib., Inc. v. Int'l Paint Ltd.*, 201 So. 3d 843, 844 (Fla. 4th DCA 2016).

## VI. Compliance with § 56.29 Prerequisites

33. As required by Fla. Stat. § 56.29(2), Judgment Creditors submit contemporaneously herewith an Affidavit setting forth:

a. The names of the Judgment Creditors: William O. Fuller and Martin Pinilla, II;

b. That Judgment Creditors hold the Judgment, which remains unsatisfied;

c. The court that issued the Judgment (this Court), the case number, and the unsatisfied amount of the Judgment including accrued costs and interest; and

d. That execution on the Judgment is valid and outstanding.

34. As required by Fla. Stat. § 56.29(2), the Motion identifies:

a. The non-exempt property at issue: the debt owed by the City of Miami to Judgment Debtor in the amount of $770,000.00, arising from the Settlement of the Pension Lawsuit; and

b. The person in possession or control of the obligation: the City of Miami.

**WHEREFORE**, Judgment Creditors respectfully request that this Court:

(a) Initiate proceedings supplementary pursuant to Fla. Stat. § 56.29;

(b) Implead the City of Miami as a Defendant in Proceedings Supplementary;

9

(c) Issue a Notice to Appear directing the City of Miami to file an affidavit, within the time prescribed by § 56.29(3), explaining why the Settlement proceeds should not be applied toward satisfaction of the Judgment;

(d) Enter a temporary order directing the City of Miami to hold and not disburse any Settlement funds owed or to become owed to Judgment Debtor, and directing Judgment Debtor to refrain from assigning, transferring, encumbering, or otherwise disposing of his right to receive such funds;

(e) Set an expedited hearing on the merits;

(f) After hearing, enter an order directing that the Settlement proceeds be applied toward partial satisfaction of the Judgment; and

(g) Grant such other and further relief as the Court deems just and proper.

**CERTIFICATION PURSUANT TO S.D. Fla. L.R. 7.1(a)(3)**

Due to the emergency nature of the relief sought, undersigned counsel for the movants was unable to confer with opposing counsel prior to filing this motion. Undersigned counsel will confer with opposing counsel this evening in a good faith effort to resolve the issues raised herein.

Respectfully submitted,

**AXS LAW GROUP, PLLC**
2121 NW 2nd Avenue, Suite 201
Miami, FL 33127
Tel: 305.297.1878

By: /s/ Jeffrey W. Gutchess
Jeffrey W. Gutchess
Florida Bar No. 702641
jeff@axslawgroup.com

*Attorneys for Judgment Creditors Bill Fuller
and Martin Pinilla*

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the forgoing was served via CM/ECF on counsel of record in this action on this 27th day of May, 2026.

*/s/ Jeffrey W. Gutchess*
Jeffrey W. Gutchess
